UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| **JAMES CONN, Individually and On Behalf of All Others Similarly Situated,** | |
| Plaintiff, | Civil Action No. 07 Civ. 11626 (LBS) |
| -against- | |
| **MERRILL LYNCH & CO., INC., E. STANLEY O'NEAL, JEFFREY N. EDWARDS, LAWRENCE A. TOSI, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE, and CHARLES O. ROSSOTTI,** | |
| Defendants. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF JAMES CONN'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF FOR THE
FIRST REPUBLIC MERGER CLASS AND APPROVAL OF LEAD COUNSEL**

<br>

| | |
|---|---|
| Stanley M. Grossman | Joseph w. Cotchett |
| Marc I. Gross | Mark C. Molumphy |
| Patrick V. Dahlstrom | Nancy L. Fineman |
| Joshua B. Silverman | Stuart G. Gross |
| **POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP** | **COTCHETT, PITRE & McCARTHY** |
| 100 Park Avenue | San Francisco Airport Office Center |
| New York, New York 10017 | 840 Malcolm Road, Suite 200 |
| Telephone:  (212) 661-1100 | Burlingame, California 94010 |
| Facsimile:  (212) 661-8665 | Telephone:  (650) 697-6000 |
| | Facsimile:  (650) 697-0577 |

**Attorneys for Plaintiff James Conn**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

THE MERGER CLASS CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT

I.     THE MERGER CLASS REQUIRES
SEPARATE REPRESENTATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.    CONN SHOULD BE APPOINTED
LEAD PLAINT OF THE MERGER CLASS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.     Conn Is Willing to Serve as Class Representative . . . . . . . . . . . . . . . . . . . . . . . 10

        B.     Conn Has The Largest Financial Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        C.     Conn Satisfies the Requirements of Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . 11

        D.     Conn Fairly and Adequately Represents the Interests
of the Class and Is Not Subject to Unique Defenses . . . . . . . . . . . . . . . . . . . . . 13

III.   LEAD PLAINTIFF'S SELECTION
OF COUNSEL SHOULD BE APPROVED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Plaintiff James Conn ("Conn") respectfully submits this memorandum of law in support his motion for an Order pursuant to Section 27D(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a) appointing James Conn as Lead Plaintiff for the following class:

All persons and entities who acquired Merrill Lynch & Co., Inc. ("Merrill Lynch") securities as a result of the exchange of First Republic Bank ("First Republic") securities pursuant to the Registration Statement and Proxy/Prospectus, and who were damaged thereby (the "Merger Class");[1] and

(b) approving Lead Plaintiff's selection of Pomerantz Haudek Block Grossman & Gross LLP and Cotchett, Pitre & McCarthy as Lead Counsel for the Merger Class.

## PRELIMINARY STATEMENT

It is anticipated that motions to consolidate and appoint lead plaintiff will be filed by purchasers of Merrill Lynch securities in the open market who have alleged claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Indeed, each of the federal securities class action cases filed to date against Merrill Lynch concerning the subprime mortgage issues allege only Sections 10(b) and 20(a) claims.

The Merger Class is a carefully circumscribed group of purchasers who have claims under Section 11, 12(a)(2) and 15 of the Securities Act. Claims under these sections of the Securities Act are qualitatively different and superior to claims under Section 10(b) of the Exchange Act. Unlike Section 10(b) claims, the Merger Class claims under the Securities Act do not require any proof of intentional misconduct or affirmative proof of reliance and causation,

---

[1] Excluded from the Class are the Individual Defendants, members of the Individual Defendants' immediate families, any entity in which any defendant has a controlling interest, and the legal representatives, heirs, successors or assigns of any such excluded person.

and damages are presumed under a statutory formula.

Although judicial efficiency makes coordination of the Merger Class case and other cases appropriate, for the reasons stated, the Merger Class can only be maintained by plaintiffs having distinct Securities Act claims and should be litigated by a Lead Plaintiff who possess those unique claims. Accordingly, it is submitted that the Merger Class should have its separate identity, with a stand alone complaint, a Lead Plaintiff possessing those unique claims, and Lead Counsel who will represent only the interest of the Merger Class members.

## THE MERGER CLASS CLAIMS

First Republic, founded in San Francisco in 1985, operated as one of the most successful private banks in the United States and achieved profitability in its first year of operation and, within five years, became California's largest private bank. By 2007, First Republic was trading on the NYSE, and had expanded into New York, Massachusetts, Connecticut, Oregon, Nevada, and Washington, with record deposits of $8.9 billion, loan volume of $5.0 billion, and net earnings of $61.7 million.

First Republic shareholders – a substantial percentage of which were bank employees and customers – benefitted from the bank's financial strength, efficient operations and profitability, enjoying consistent earnings per share. In late 2006 and early 2007, Merrill Lynch approached First Republic bank about a possible merger. On January 29, 2007, after a period of negotiations, Merrill Lynch announced that it had reached an agreement to acquire First Republic, subject to shareholder approval, for a total transaction value of $1.8 billion. Under the agreement, First Republic shareholders would receive, at their election, cash or Merrill Lynch common stock having a value equal to $55.00 for each share of First Republic

common stock owned at the completion of the Merger. The aggregate consideration would be paid with 50% cash and 50% Merrill Lynch common stock.

To obtain approval from First Republic's shareholders, Merrill Lynch filed a Registration Statement dated May 8, 2007, as amended on June 8, 2007 and June 21, 2007 (the "Registration Statement"), which became effective on June 22, 2007, and a Proxy Statement and Prospectus dated June 22, 2007 (the "Proxy/Prospectus"). Unbeknownst to First Republic shareholders, the Registration Statement and Proxy/Prospectus were materially false and misleading because, *inter alia*, the discussion of the financial performance and incorporated financial statements in the Registration Statement and Proxy/Prospectus regarding exposure to collateralized debt obligations ("CDO's") did not state:

- that Merrill Lynch was overexposed to risky subprime loans, to the sum of billions of dollars;

- that Merrill Lynch had begun to accumulate a massive directional position in one of the riskiest types of CDOs, ABS [asset-backed securities] CDOs;

- the risks of these CDOs; and

- that CDO positions on Merrill Lynch's balance sheet were incorrectly valued.

In a July 17, 2007 conference call, Merrill Lynch and Defendant Edwards made additional oral misrepresentations regarding Merrill Lynch's risk management, the performance of its CDO positions, and the propriety of the valuations it ascribed to these instruments.

After receiving approval from the First Republic shareholders, the Merger was completed on September 21, 2007. However, just *weeks* after the Merger was completed, and contrary to the representations in the Registration Statement and Proxy/Prospectus, and the oral communications made in the conference call of July 17, 2007, Merrill Lynch's actual exposure

to subprime loans and CDOs began to emerge.

On October 24, 2007, before the market opened, Defendants issued a press release acknowledging that Merrill Lynch's third quarter writedown for CDO and subprime lending losses had ballooned to $7.9 billion. This writedown wiped out all of Merrill Lynch's earnings. In prepared remarks during a conference call that day, Defendant O'Neal stated for the first time that Merrill Lynch was "overexposed to sub-prime" and that its previously touted hedging measures were "not sufficiently aggressive." In response to an analyst's question, Defendant O'Neal admitted that Merrill Lynch's staggering exposure was due to errors in risk management. These crucial facts were never mentioned in the Registration Statement or Proxy/Prospectus.

On November 2, 2007, THE WALL STREET JOURNAL ran an article indicating that Merrill Lynch's exposure to CDOs was even greater than Defendants had acknowledged, noting that Merrill Lynch would likely take an additional $4 billion in writedowns in the fourth quarter related to its CDO portfolio. The article also stated that the SEC had started an informal inquiry into how the company had marked its mortgage securities and whether it had lied to investors regarding the size of its positions. That same day, Deutsche Bank AG analyst Michael Mayo issued a research note stating that Merrill Lynch may have to take an additional $10 billion in writedowns related to its CDO and subprime exposure.

The news was devastating to First Republic's former shareholders, who had just exchanged their valuable shares for Merrill Lynch stock. On September 21, 2007, the Merger closing date, Merrill Lynch stock was trading at approximately $75.00 per share. Thus, First Republic shareholders received approximately 0.7332 shares of Merrill Lynch stock for each share of First Republic stock. However, by November 2, 2007, after Merrill Lynch's massive

CDO exposure had been revealed, the Merrill Lynch shares obtained through the Merger had plummeted to $57.28, a 23% drop, and are presently trading at less than $55.00 per share.

On December 28, 2007, James Conn filed a complaint alleging violations of Sections 11, 12(a)(2), and 15 under the Securities Act of 1933 for the material misrepresentations and omissions contained in the Registration Statement and Proxy/Prospectus related to the Merger (the "Merger Action"). Neither Section 11 nor Section 12(a)(2) require the Merger Class to allege the *scienter*, reliance, or causation elements of a fraud cause of action. *See Herman & McLean v. Huddleston*, 459 U.S. 375, 382 (1983); *In re: Initial Public Offerings Secs. Litig*, 483 F.3d 70, 73 n1 (2d Cir. 2007). Indeed, all that is required is that Conn and the Merger Class allege that a material misrepresentation or omission was contained in the Registration Statement (Section 11) and/or the Proxy/Prospectus (Section 12(a)(2)). *See Herman & McLean v. Huddleston*, 459 U.S. at 382 ("If a plaintiff purchased a security pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case."). Accordingly, unlike the Exchange Act cases, Merrill Lynch and the individual defendants are strictly and absolutely liable to the Merger Class for the material misrepresentations or omissions alleged in the Merger Action complaint.

## ARGUMENT

### I.

### THE MERGER ACTION REQUIRES SEPARATE REPRESENTATION

The PSLRA contemplates consolidation where "more than one action on behalf of a class <u>asserting substantially the same claim or claims</u> arising under this chapter has been filed." 15 U.S.C. § 77z-1(a)(3)(A)(ii). The PSLRA, however, does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a). Here, the Merger Action is the only case before this Court that raises Securities Act claims against Merrill Lynch, and the only action that grounds its allegations on facts related to the Registration Statement and Proxy/Prospectus for the acquisition of First Republic by Merrill Lynch. As such, its claims are not "substantially the same" as the claims in the other cases filed in the Southern District of New York. Indeed, each of the four other federal securities class actions filed in the Southern District of New York allege that Merrill Lych and the individual defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934:

> *Life Enrichment Foundation v. Merrill Lynch & Co.,Inc.*, Civil Action No. 07 Civ. 09633 (LBS);
>
> *Savena v. Merrill Lynch & Co., Inc.*, Civil Action No. 07 Civ. 09837 (LBS);
>
> *Kosseff v. Merrill Lynch & Co., Inc.*, Civil Action No. 07 Civ. 10984 (LBS); and
>
> *Garber v. Merrill Lynch & Co., Inc.*, Civil Action No. 07 Civ. 11080 (LBS).

Each of those four cases, cookie-cutter copies of the first filed complaint, allege similar factual predicates and class periods to ground <u>fraud</u> allegations under Section 10(b) of the Exchange Act; none of them allege any violations related to the acquisition of First Republic by Merrill

Lynch; and none of them allege violations of the Securities Act.[2] The Exchange Act cases, moreover, assert claims over the extended period of November 2006 through November 2007, for which they are required to prove multiple violations, whereas the Merger Class need only assert and prove a single material misrepresentation in the Registration Statement or Proxy/Prospectus to succeed on its claim.

As this Court has heretofore noted, the pleading standards for Section 10(b) complaints and Section 11 complaints are substantially different. *See Nanopierce Technologies, Inc. v. Southridge Capital Mgmt. LLC*, 2003 U.S. Dist. LEXIS 21854, at *29-*30 (S.D.N.Y. Dec. 4, 2003). With respect to a Section 11 claim, a plaintiff "need only provide "'a short and plain statement of the claim that will give the defendants fair notice of what the plaintiffs claim is and the grounds upon which it rests." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *modified on other grounds, Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007)). In short, "[b]ecause a Section 11 claim is not a fraud claim, Rule 8(a) applies." *Id.* (citing *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 342 (S.D.N.Y. 2003). However,

> With respect to the Section 10(b) and common law claims, [plaintiffs] are subject to Fed. R. Civ. P. 9(b), which requires plaintiffs to specify the statements alleged to be fraudulent, indicate where and when they were made, identify the speaker, and explain why the statements were misleading when made.

*Id.* (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Furthermore,

---

[2] Two other actions deemed related to the first filed Exchange Act case by the Clerk's Office are an ERISA action: *Estey v. Merrill Lynch & Co., Inc.*, 07 Civ. 10268 (LBS), and a derivative action removed from state court: *Operative Plasterers & Cement Mason Local 262 Pension and Annuity Funds v. O'Neal*, 07 Civ. 11085 (LBS). Neither of these two cases is contemplated to be consolidated for trial purposes, but can be consolidated for pre-trial purposes under the Master File Docket with separate references in the case caption for filing purposes.

"[plaintiff's] Section 10(b) claim is subject to the pleading requirements of the PSLRA, which also requires plaintiff to 'specify each statement alleged to have been misleading.'" *Id.*, at n.1 (citing 15 U.S.C. § 78u-4(b)(1)).

When Section 11 and 12(a)(2) claims are alleged in the same complaint with a Section 10 claim, the Second Circuit has held that the heightened pleading standard of Rule 9(b) "applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). Moreover, it is not enough to argue that the claims can be argued separately, as the Second Circuit further noted:

> Fraud is not an element or a requisite to a claim under Section 11 or Section 12(a)(2); at the same time, claims under those sections may be - - and often are - - predicated on fraud. The same course of conduct that would support a Rule 10b-5 claim may as well support a Section 11 or a claim under Section 12(a)(2). So while a plaintiff need allege no more than negligence to proceed under Section 11 or Section 12(a)(2), claims that do rely upon averments of fraud are subject to the test of Rule 9(b).

*Id.* In sum, "the application of Rule 9(b) 'is not limited to allegations styled or denominated as fraud or expressed in terms of a fraud cause of action,'" where the claims themselves are predicated on fraud. *SEC v. Power*, 2007 U.S. Dist. LEXIS 87632, at *20 (S.D.N.Y. Nov. 27, 2007) (Sweet, J.).

Here, consolidating the four Exchange Act cases with the Merger Action will prejudice the members of the Merger Class by subjecting their Securities Act claims to the heightened pleading standards of Rule 9(b) and the PSLRA for fraud claims alleged in the Exchange Act cases. The Merger Action complaint does not allege fraud nor does its allegations "sound in fraud." Accordingly, to protect the Merger Class's interests, the Merger Action should not be consolidated with the Exchange Act cases and subjected to the heightened pleading

standard under Rule 9(b) and the PSLRA

In the alternative, the Court may consider formalizing coordination of the cases for discovery without consolidation for trial purposes as Judge Walker of the Northern District of California did under somewhat similar circumstances. In *In re: Patriot American Hospitality Secs. Litig.*, Master File No. MDL-1300, slip op., at 1 (N.D. Cal. Oct. 20, 2000) (annexed as Exhibit A), the court "consolidated for pretrial purposes" but not "for trial" actions that were filed pursuant to the Securities Act with actions filed under the Exchange Act alleging securities fraud violations. In effect, the court coordinated discovery, but allowed a separate complaint and separate identity for the Securities Act claims. The court directed that the Clerk maintain a single master docket for a general case caption, but directed that pleadings and other filings "intended to apply only to "Merger Actions" or "Open Market Actions" . . . indicate in their caption the case number of the case(s) to which they apply." *Id.*, at 2. The same organization of the docket could be applied here to assure that the independent interests and rights of the Merger Class are maintained, while facilitating the docketing with the Court.

## II.

### CONN SHOULD BE APPOINTED LEAD PLAINTIFF OF THE MERGER CLASS

Sections 27(a)(3)(B) of the PSLRA sets forth procedures for the selection of Lead Plaintiffs in class actions brought under the Securities Act. 77 U.S.C. § 77z-1(a)(3)(B). The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 77z-1(a)(3)(B)(i) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

As set forth below, Conn satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff.

### A. **Conn Is Willing to Serve as Class Representative**

On October 30, 2007, counsel in the first filed action against the defendants, referenced above as *Life Enrichment Foundation v. Merrill Lynch & Co.,Inc.*, Civil Action No. 1:07-CV-09633-LBS, caused a notice to be published pursuant to the PSLRA announcing that a securities class action had been filed against the defendants herein, and advising purchasers of Merrill common stock that they "must move the Court no later than 60 days from [October 30, 2007]" to serve as Lead Plaintiff.[3]

Conn filed a complaint to preserve the rights and interests of the Merger class, has filed the instant motion pursuant to the Notice, and has attached his Certification attesting that he is

---

[3] Sixty days from October 30, 2007, is December 29, 2007. December 29 is a Saturday, which under Fed. R. Civ. P. 6(a) is not included in the computation of the 60-day period under the PSLRA. The next day for computation purposes is Monday, December 31, 2007.

willing to serve as a Lead Plaintiff for the Merger Class and is willing to provide testimony at deposition and trial, if necessary.  *See Conn v. Merrill Lynch Co., Inc.*, Civil Action No. 07 Civ. 11626, Dkt. Entry #1.  Accordingly, the Conn satisfies the first requirement to serve as Lead Plaintiff for the Merger Class.

  **B.** **Conn Has The Largest Financial Interest**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii); *see In re Donkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997).

As part of the Merger, Conn acquired 22,634 shares of Merrill common stock in exchange for 30,871 shares of First Republic common stock, and acquired an additional 1,068 shares of Merrill Lynch common stock (plus cash) in exchange for 5,150 shares of First Republic restricted stock.  As a result of this acquisition in the Merger, Conn has suffered statutory losses of at least $349,542.88.  *See* Exhibit B.

Conn is not aware of any other plaintiff who has suffered larger losses in the Merger, and, accordingly, satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the Merger Class.

  **C.** **Conn Satisfies the Requirements of Fed. R. Civ. P. 23**

Section 27D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  77z-1(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative if the

-11-

following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification -- a prima facie showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60, 64 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998).

Conn fulfills all of the requirements of Rule 23. He shares substantially similar questions of law and fact with the members of the Merger Class, and his claims are typical of the members of that Class. Conn, and all members of the Class, allege that defendants violated the Securities Act by disseminating a Registration Statement and Proxy/Prospectus which contained material misrepresentations and/or omissions. Conn, as did all members of the Class, exchanged shares of First Republic common stock for Merrill common stock as part of the Merger. These shared claims also satisfy the requirement that the claims of the representative parties be typical of the claims of the class.

Thus, the close alignment of interests between Conn and the other Merger Class

members, as well as the strong desire of the proposed Lead Plaintiff to prosecute these actions on behalf of the Class, provide ample reasons to grant the Conn's motion to serve as Lead Plaintiff.

### D. Conn Fairly and Adequately Represents the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing the Conn as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

>   (aa)   will not fairly and adequately protect the interest of the class; or
>
>   (bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

Conn received a B.S. in business administration from Santa Clara University in 1959 and has had an impressive career in investments serving in corporate capacities for a number of corporations, including having been the chief investment officer at Transamerica Corp. He currently serves on a number of boards including La Quinta Corp., and a number of Gabelli mutual fund boards. Conn also serves on the boards of the Odell Fund and Basic Fund (Bay Area Scholarships for Inner city Children) a large scholarship fund in the San Francisco Bay Area

Conn also was a member of the First Republic Board of Directors during the Merger. He, like all other Class members, acquired his Merrill Lynch shares in the Merger subject to the Registration Statement and Proxy/Prospectus. Conn was not privy to any information from Merrill Lynch which was not also made public by First Republic to its shareholders. Thus, Conn is not aware of any unique defenses Defendants could raise that would

render him inadequate to represent the Class. Accordingly, Conn should be appointed Lead Plaintiff for the Class.

### III.

### LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 77z-1(a)(3)(B)(v). The Court should only interfere with Lead Plaintiffs' selection when necessary to protect the interests of the class.

Conn has selected the law firms of Pomerantz Haudek Block Grossman & Gross LLP and Cotchett, Pitre and McCarthy as Co-Lead Counsel. The Pomerantz and Cotchett firms are highly experienced in the area of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firm's resume, attached hereto as Exhibits C and D. As a result of their extensive experience in litigation involving issues similar to those raised in this action, Conn's counsel have the skill and knowledge which will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Conn's selection of Co-Lead Counsel, the members of the class will receive the best legal representation available.

**CONCLUSION**

For the foregoing reasons, it is respectfully requested that the Court issue an Order appointing James Conn as Lead Plaintiff of the Merger Class; approving Pomerantz Haudek Block Grossman & Gross LLP and Cotchett, Pitre and McCarthy as Co-Lead Counsel; and granting such other relief as the Court may deem to be just and proper.

Dated: December 31, 2007

Respectfully submitted,

/s *Stanley M. Grossman*

**POMERANTZ HAUDEK BLOCK**
 **GROSSMAN & GROSS LLP**
Stanley M. Grossman
Marc I. Gross
Patrick V. Dahlstrom
Joshua B. Silverman
100 Park Avenue
New York, New York 10017
Telephone:    (212) 661-1100
Facsimile:    (212) 661-8665

**COTCHETT, PITRE & McCARTHY**
Joseph W. Cotchett
Mark C. Molumphy
Nancy L. Fineman
Stuart G. Gross
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California  94010
Telephone:    (650) 697-6000
Facsimile:    (650) 697-0577

**Attorneys for James Conn**