UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIFE ENRICHMENT FOUNDATION, individually and on behalf all others similarly situated, | **ELECTRONICALLY FILED** |
| Plaintiff, | CIVIL ACTION No. 07cv9633 (LBS) |
| v. | |
| MERRILL LYNCH & CO., INC., E. STANLEY O'NEAL, AHMASS L. FAKAHANY, GREGORY J. FLEMING, and JEFFREY N. EDWARDS, | |
| Defendants. | |
| MICHAEL J. SAVENA, individually and on behalf of all others similarly situated, | CIVIL ACTION No. 07cv9837 (LBS) |
| Plaintiff, | |
| v. | |
| MERRILL LYNCH & CO., INC., E. STANLEY O'NEAL, AHMASS L. FAKAHANY, GREGORY J. FLEMING, and JEFFREY N. EDWARDS, | |
| Defendants. | |

[Additional Captions on Following Page]

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE STATE TEACHERS' RETIREMENT SYSTEM OF OHIO FOR (1) CONSOLIDATION; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD PLAINTIFF'S CHOICE OF CO-LEAD COUNSEL**

| | |
|---|---|
| GARY KOSSEFF, individually and on behalf of all others similarly situated, | CIVIL ACTION No. 07cv10984 (LBS) |
| Plaintiff, | |
| v. | |
| MERRILL LYNCH & CO., INC., E. STANLEY O'NEAL, AHMASS L. FAKAHANY, GREGORY J. FLEMING, and JEFFREY N. EDWARDS, | |
| Defendants. | |
| ROBERT R. GARBER, individually and on behalf of all others similarly situated, | CIVIL ACTION No. 07cv11080 (LBS) |
| Plaintiff, | |
| v. | |
| MERRILL LYNCH & CO., INC., E. STANLEY O'NEAL, AHMASS L. FAKAHANY, GREGORY J. FLEMING, and JEFFREY N. EDWARDS, | |
| Defendants. | |
| JAMES CONN, individually and on behalf of all others similarly situated, | CIVIL ACTION No. 07cv11626 (LBS) |
| Plaintiff, | |
| v. | |
| MERRILL LYNCH & CO., INC., E. STANLEY O'NEAL, JEFFREY N. EDWARDS, JEFFREY N. EDWARDS, LAWRENCE A. TOSI, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE, and CHARLES O. ROSSOTTI, | |
| Defendants. | |

# TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.      INTRODUCTION ............................................................................................................ 1

II.     PROCEDURAL BACKGROUND.................................................................................... 3

III.    SUMMARY OF THE PENDING ACTIONS .................................................................. 4

        A.      This Court Should Consolidate the Related Lawsuits ................................................ 7

        B.      Ohio STRS Should Be Appointed Lead Plaintiff ...................................................... 8

                1.      Ohio STRA Believes It Has the Largest Financial Interest in the Relief
                        Sought by the Class.......................................................................................... 8

                2.      Ohio STRS Is Qualified Under Rule 23 .............................................................. 9

                        a.      Ohio STRS's Claims Are Typical of the Claims of the Class .................... 10

                        b.      Ohio STRS Will Fairly and Adequately Represent the Interests of the
                                Class......................................................................................................... 11

                        c.      Ohio STRS Is the Prototypical Lead Plaintiff Envisioned by the PSLRA .. 12

        C.      This Court Should Approve Ohio STRS's Choice of Lead Counsel.......................... 13

V.      CONCLUSION................................................................................................................ 13

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                 **PAGES**

*Albert Fadem Trust v. Citigroup, Inc.,*
   239 F. Supp. 2d 344 (S.D.N.Y. 2002) ................................................................. 7, 9

*Ferrari v. Impath, Inc.,*
   2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004) ..................................... 2, 12

*Halford v. Goodyear Tire & Rubber Co.,*
   161 F.R.D. 13 (W.D.N.Y. 1995) ............................................................................. 11

*In re Cendant Corp. Litig.,*
   264 F.3d 201 (3d Cir. 2001) ................................................................................... 12

*In re Drexel Burnham Lambert Group,*
   960 F.2d 2851 (2d Cir. 1992), *cert. dismissed sub nom.*,
   506 U.S. 1088 (1993) ............................................................................................... 10

*In re Olsten Corp Sec. Litig.,*
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) .............................................................. 7, 9, 12

*In re Oxford Health Plans, Inc. Sec. Litig.,*
   182 F.R.D. 42 (1998) ................................................................................... 2, 10, 12

*In re Waste Mgmt, Inc. Sec. Litig.,*
   128 F. Supp. 2d 401 (S.D. Tex. 2000) ..................................................................... 3

*In re: Fannie Mae Sec. Litig.,*
   355 F. Supp. 2d 261 (D.D.C. 2005) ....................................................................... 12

*Johnson v. Celotex Corp.,*
   899 F.2d 1281 (2d Cir. 1990) ................................................................................... 7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.,*
   229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................... 10

*In re Symbol Techs., Inc. Sec. Litig.,*
   2006 U.S. Dist. LEXIS 24776 (E.D.N.Y. April 26, 2006) ..................................... 10

## STATUTES, RULES AND OTHER AUTHORITIES

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................ 9, 11

15 U.S.C. § 78u-4(a)(3)(B)(v) ...................................................................................... 13

Fed. R. Civ. P. 6(a) ......................................................................................................... 3

Fed. R. Civ. P. 23(a) ..................................................................................................... 10

ii

Fed. R. Civ. P. 42(a)(2)...................................................................................................... 1

H.R. Conf. Rpt. No. 104-369, at 35, 104th Cong. 1st Sess (Nov. 28, 1995) ................................ 13

## I.    INTRODUCTION

Presently pending in this District are at least five related securities class actions (the "Related Actions") brought pursuant to either Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Securities and Exchange Commission ("SEC") Rule 10b-5 or Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"). The pending cases are as follows:

| | Case | Civil No. | Date Filed |
|---|---|---|---|
| 1. | *Life Enrichment Foundation, v. Merrill Lynch & Co., Inc., et al.* | 07cv9633 | 10/30/2007 |
| 2. | *Michael J. Savena v. Merrill Lynch & Co., Inc., et al.* | 07cv9837 | 11/6/2007 |
| 3. | *Gary Kosseff v. Merrill Lynch & Co., Inc, et al.* | 07cv10984 | 12/04/2007 |
| 4. | *Robert R. Garber v. Merrill Lynch & Co., Inc, et al.* | 07cv11080 | 12/07/2007 |
| 5. | *James Conn v. Merrill Lynch & Co., Inc, et al.* | 07cv11626 | 12/28/2007 |

The State Teachers' Retirement System of Ohio ("Ohio STRS") suffered losses of approximately $25.5 million as a result the alleged violations of the federal securities laws by Merrill Lynch & Co., Inc. ("Merrill Lynch") and the other defendants during the period October 17, 2006 through November 7, 2007 (the "Class Period")[1], and respectfully submits this Memorandum of Law in support of its motion: (1) to consolidate the Related Actions[2] pursuant to Fed. R. Civ. P. 42(a)(2); (2) to be appointed lead plaintiff for a class of those who purchased

---

[1]  Ohio STRS has filed herewith a lead plaintiff certification that, among other things, sets forth its transactions in Merrill Lynch during the Class Period.  See Exhibit A of accompanying Declaration of Robert N. Kaplan, dated January 2, 2008 (hereinafter "Kaplan Decl. Ex. ___").  A chart of Ohio STRS's estimated losses in Merrill Lynch during the Class Period is attached as Exhibit B to the Kaplan Decl.  Ohio STRS utilized the "First-In First-Out" (or "FIFO") methodology in determining its losses of over $25 million.  Under the "Last-In First-Out" (or "LIFO") methodology, Ohio STRS suffered losses of approximately $9.1 million.

[2]  In addition to the Related Actions, actions under the Employee Retirement Income Security Act ("ERISA") and at least one derivative action are pending against Merrill Lynch.  These actions are factually related, but allege different legal claims.  As such, Ohio STRS is not seeking to consolidate these actions with the Related Actions. The derivative action is styled *Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds v. O'Neal, et al.*, which was removed from New York State Supreme Court (07cv11085)(LBS) and the first filed

or otherwise acquired Merrill Lynch securities during the Class Period; and (3) for approval of its choice of Co-Lead Counsel.

Ohio STRS is one of the largest pension funds in the nation. Ohio STRS serves approximately 400,000 active, inactive and retired Ohio public educators and has assets of approximately $75 billion. Ohio STRS is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See Ferrari v. Impath, Inc.*, 2004 WL 1637053, at *3 (S.D.N.Y. July 20, 2004) (stating that institutional investors are the type of lead plaintiff that Congress wanted to encourage to participate in the litigation of these actions and exercise control over the selection and actions of plaintiff's counsel); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (1998) (noting the PSLRA encourages institutional investors to take a role in securities class actions). Ohio STRS has extensive experience discharging fiduciary duties in securities class actions. Indeed, Ohio STRS currently serves as lead plaintiff in other securities class actions, including actions in this District. Thus, Ohio STRS has the requisite experience and expertise to vigorously represent the class in leading this action. Moreover, Ohio STRS has authorized the Attorney General of Ohio to bring this action and retain co-lead counsel.

Ohio STRS presently believes that it has the largest financial interest of any movant. As set forth below, Ohio STRS requests consolidation of the Related Actions, appointment as lead plaintiff, and appointment of the law firms of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), Schiffrin Barroway Topaz & Kessler, LLP ("Schiffrin Barroway"), and Berger & Montague, P.C. ("Berger & Montague") as co-lead counsel. Kaplan Fox, Schiffrin Barroway and Berger &

---

ERISA action is styled *Estey v. Merrill Lynch & Co., Inc. et al.* (07cv10268)(J. Sand). Motions to consolidate, appoint a lead plaintiff and lead counsel have been filed in the ERISA actions.

2

Montague have extensive experience in securities and class action litigation.  For these reasons and the reasons discussed below, the Related Actions should be consolidated, Ohio STRS should be appointed lead plaintiff, and Ohio STRS's choice of co-lead counsel should be approved.

## II.     PROCEDURAL BACKGROUND

On October 30, 2007, the first of these related securities class actions was filed in this District.  The action, styled *Life Enhancement Foundation v. Merrill Lynch & Co., Inc., et al.*, 07-cv-9633, was filed on behalf of all persons who purchased or otherwise acquired Merrill Lynch common stock between February 26, 2007 and October 23, 2007. [3]

On October 30, 2007, counsel for plaintiff in the *Life Enhancement* action published a notice to investors in Merrill Lynch common stock with *Business Wire,* as required by the PSLRA (the "Notice").  Kaplan Decl., Ex. C.  The Notice advised investors who purchased or otherwise acquired Merrill Lynch common stock of the existence of a lawsuit and the nature of defendants' statements, omissions and conduct which allegedly artificially inflated the price of Merrill Lynch common stock.  The Notice further advised potential class members of their right to move the Court to be appointed lead plaintiff within 60 days of the publication of the Notice.[4]

Ohio STRS now timely moves this Court to be appointed as the lead plaintiff for the Related Actions.

---

[3]  Subsequently, additional Related Actions were filed against Merrill Lynch and certain of its current and/or former officers and directors.  One action, *Robert R. Garber v. Merrill Lynch & Co., Inc, et al.* (07cv11080)(S.D.N.Y.), alleges the longest class period – October 17, 2006 through November 7, 2007.  On December 7, 2007, a press release was published on *Business Wire* that noticed the filing of *Garber v. Merrill Lynch, et al. See* Kaplan Decl., Ex. D.  The investor ultimately appointed lead plaintiff will have the obligation to determine, based on its investigation, the appropriate class period and particular claims to be asserted in the operative consolidated class action complaint to be filed following appointment by the Court.  *See, e.g., In re Waste Mgmt, Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 407 n.1 (S.D. Tex. 2000).  For purposes of this motion, the longest publicly-noticed period applies.

[4]  The sixty-day period elapsed on Saturday, December 29, 2007.  Under Fed. R. Civ. P. 6(a), the deadline extends to the next day when the Court is open.  Here, since December 31, 2007 and January 1, 2008 were court holidays, the motion deadline is January 2, 2008.

III.     **SUMMARY OF THE PENDING ACTION**

Merrill Lynch, through its subsidiaries and affiliates, is a multifaceted financial services firm that provides capital markets services, investment banking and advisory services, wealth management, asset management, insurance, banking and related products and services worldwide. In December of 2002, defendant E. Stanley O'Neal ("O'Neal") became the Chairman of Merrill Lynch's Board of Directors and Chief Executive Officer ("CEO"). Soon after taking the reins of the Company, O'Neal implemented a strategy to push Merrill Lynch beyond its traditional strengths of wealth management and equities and into riskier businesses that could produce potentially higher returns. O'Neal's strategy involved a greater investment of the Company's own assets and more involvement in fixed-income markets like commodities and mortgages. As O'Neal pursued his goal, the Company became heavily involved in debt financing and derivative instruments, including mortgage-backed securities and "collateralized debt obligation", or "CDO", products.

Although first developed in the late 1980's, CDOs exploded in recent years to become the fastest growing sector of the asset-backed securities market. In fact, annual issuance of CDOs rose from $52 billion in 1999, to approximately $390 billion in 2006. The Company became a dominant player under CEO O'Neal. In the first two years under O'Neal, Merrill Lynch reportedly claimed the top spot in the CDO underwriting tables. During that time, however, the composition of the typical underlying assets of CDOs shifted from securitized commercial loans and corporate bonds, to mostly asset-backed and high-risk mortgage-backed securities. This became known to Merrill Lynch as early as 2006, when signs of trouble in the housing market were already apparent. Yet, Merrill Lynch continued to increase its CDO business, and thus its exposure to a changing credit environment, so that it could continue to collect substantial fees generated from CDOs. Merrill Lynch continued to ramp up its CDO

4

transactions well into 2007, even as a wave of subprime mortgage problems started crashing down on the market.  Merrill Lynch acted like it was immune to the subprime mortgage crisis, and assured investors that it was well positioned in the changing credit environment.

By Friday, October 5, 2007, just weeks before it was expected to report its third quarter earnings, some of the truth was disclosed concerning Merrill Lynch's actual exposure to the subprime mortgage crisis and the effects on Merrill Lynch's position and financial results.  On that day, the Company announced that it would take a $5 billion write-down, including $4.5 billion on CDOs and $463 million worth of leveraged loans, and expected a loss of 50 cents per share for the quarter – its first quarterly loss in six years.  The next trading day, the Company's stock price declined $2.54 per share, from $76.26 per share to close at $73.72 per share, in what would become the first of many declines similarly related to the truth concerning the Company's actual CDO and subprime mortgage exposure.

After the market close on October 17, 2007, Standard & Poor's reduced the ratings on 1,713 classes of securities that were issued in the first half of the year and backed by subprime mortgages.  In response to these events, the price of Merrill Lynch stock experienced a two-day decline of $5.34 per share ($1.55 per share and $3.79 per share, respectively), or 7.5%, from $71.25 per share to $65.91 per share, on heavy volume.

On October 23, 2007, a mere two and a half weeks after priming the market with its pre-earnings announcement, Merrill Lynch indeed reported its first quarterly loss in nearly six years; however, instead of reporting the expected loss of 50 cents per share as a result of $5 billion in write-downs, Merrill Lynch, in fact, reported a loss of $2.82 per share – or a total loss of $2.24 billion, marking the largest quarterly loss in the Company's 93-year history – as a result of $8.4 billion in write-downs.  The write-downs included $7.9 billion of CDO and subprime mortgage assets, which is 75% more than the $4.5 billion amount on October 5, 2007 the Company told

5

investors to expect. As a result of that exposure, and in light of the increased write-down, all three major credit agencies downgraded Merrill Lynch's credit rating. In response to the Company's announcement on October 23, 2007, and the subsequent ratings downgrade, Merrill Lynch stock experienced a two-day decline of $6.19 per share ($3.88 per share and $2.31 per share, respectively), or 9%, from $66.76 per share to $60.57 per share, on extremely heavy volume.

The price per share of Merrill Lynch stock declined again, from its close of $66.02 per share on October 31, 2007 to close at $62.19 per share on November 1, 2007, after Merrill Lynch reportedly forced O'Neal to resign as CEO. Then, on November 2, 2007, *The Wall Street Journal* reported that the SEC is investigating whether Merrill Lynch knew that its mortgage-related problems were bigger than the Company previously indicated. That article also noted that the SEC intended to scrutinize how the Company valued its mortgage-backed securities and CDOs. The SEC investigation also will reportedly cover whether Merrill Lynch improperly engaged in sham transactions to delay realized losses from its exposure to subprime mortgages and securities backed by mortgages including CDOs. In response, on November 2, 2007, Merrill Lynch stock declined an additional $4.91 per share, or 8%, from $62.19 per share to close at $57.28 per share, on heavy volume – marking the largest single-day decline in the stock since the terrorist attacks on September 11, 2001. The price continued to decline the next trading day, declining $1.40 per share, to close at $55.88 per share.

On November 7, 2007, Merrill Lynch further disclosed that its total exposure to risky CDOs and subprime mortgages is actually $6.3 billion more than had been previously reported. That same day, the Company also confirmed the SEC investigation. As a result of this news, Merrill Lynch stock declined an additional $2.38 per share, or 4%, to close at $53.99 per share, on heavy volume. In total, since the first disclosure on October 5, 2007 until the most recent

6

disclosure on November 7, 2007, the price per share of Merrill Lynch stock has declined $22.27 per share, or 29%.

## IV.     ARGUMENT

### A.     This Court Should Consolidate the Related Actions

Rule 42(a) of the Federal Rules of Civil Procedure permits the consolidation of actions that pose common questions of law or fact.  *See* Fed.R.Civ.P. 42(a); *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 (2d Cir. 1990); *Albert Fadem Trust v. Citigroup, Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002).  Judicial economy generally favors consolidation and requires the court to conduct a careful inquiry that balances the prejudice and possible confusion that consolidation might entail against the waste of resources, the burden on the parties, and the risk of inconsistent judgments that separate proceedings would engender.  *See Celotex*, 899 F.2d at 1285; *Albert Fadem Trust*, 239 F. Supp. 2d at 347.  Under Rule 42(a), this Court has broad discretion to consolidate cases pending within its district.  *See Celotex*, 899 F.2d at 1284-85.  Consolidation is generally ordered so long as any confusion or prejudice does not outweigh efficiency concerns. *Id*.

It is also well-recognized that consolidating shareholder class action suits often benefits *both* the court and the parties by expediting pretrial proceedings, reducing case duplication and minimizing the expenditure of time and money by all persons concerned.  *In re Olsten Corp Sec. Litig.*, 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (providing that the court shall not make the lead plaintiff determination until it rules on whether to consolidate).

Consolidation is appropriate in this litigation.  Plaintiffs in the Related Actions have alleged that defendants failed to disclose and misrepresented material facts.  In each of the complaints in the Related Actions, plaintiffs seek to hold similar defendants responsible for the

consequences of their course of conduct and seek relief under claims arising under the federal securities laws. Plaintiffs in each of the cases share a mutual interest in having the Court resolve questions concerning whether defendants made material misstatements and/or omitted material facts, and whether the price of Merrill Lynch securities became artificially inflated as a result.

Because each of the actions pending before this Court presents related factual and legal issues, consolidation is appropriate.

### B. Ohio STRS Should Be Appointed Lead Plaintiff

#### 1. Ohio STRS Believes It Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA sets forth the procedure for the selection of lead plaintiff in "each private action arising under [the securities laws] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Section 21D(a)(3)(A)(i) provides that within twenty days after the date on which a class action is filed:

> the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the Court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Further, Section 21D(a)(3)(B) directs the Court to consider any motions by a plaintiff or purported class member to serve as lead plaintiff in response to any such notice within ninety days after the date of publication of the notice pursuant to Section 21D(a), or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims.

8

Under these sections of the Exchange Act, the court "shall" adopt a presumption that the most adequate plaintiff is the applicant that:

> (aa)    has either filed the complaint or made a motion in response to a notice…;
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)[5]; *Albert Fadem Trust*, 239 F. Supp. 2d at 347.

Thus, the statutory language explicitly provides that the movant with "the largest financial interest" is entitled to presumptive appointment as lead plaintiff.  15 U.S.C. § 78 u-4(a)(3)(B)(iii)(I).  Ohio STRS has estimated losses in Merrill Lynch of approximately $25.5 million. *See* Kaplan Decl. Ex. B.  Therefore, Ohio STRS presently believes that it has the largest financial interest of any lead plaintiff movant and is presumptively entitled to appointment as the lead plaintiff.

2.    **Ohio STRS Is Qualified Under Rule 23**

The PSLRA provides that, in addition to possessing the largest financial interest, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Albert Fadem Trust*, 239 F. Supp. 2d at 347; *In re Olsten Corp. Sec. Litig*, 3 F. Supp. 2d at 294.

Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

---

[5]  For purposes of this Motion, citations to identical portions of the Securities Act have been omitted as redundant.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See In re Symbol Techs., Inc. Sec. Litig.,* 2006 U.S. Dist. LEXIS 24776, at *6 (E.D.N.Y. April 26, 2006); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998). As detailed below, Ohio STRS satisfies the typicality and adequacy requirements of Rule 23(a) and is qualified to be appointed as lead plaintiff.

### a.    Ohio STRS's Claims Are Typical of the Claims of the Class

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group,* 960 F.2d 285, 291 (2d Cir. 1992), *cert. dismissed sub nom.*, 506 U.S. 1088 (1993). However, the claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004). Courts have recognized that typicality exists if claims arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory. *See Drexel,* 960 F.2d at 291.

Ohio STRS's claims are typical of the claims of the members of the proposed class of those who purchased or otherwise acquired the securities of Merrill Lynch during the Class Period. Ohio STRS seeks to represent a class of investors who during the Class Period purchased or otherwise acquired Merrill Lynch securities. Ohio STRS and all class members

10

therefore have identical, non-competing and non-conflicting interests in establishing defendants'

liability.  In sum, Ohio STRS satisfies the typicality requirement because, just like all other class

members, it: (1) purchased or otherwise acquired Merrill Lynch securities during the applicable

period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading

statements and/or omissions; and (3) suffered damages thereby.  Thus, Ohio STRS's claims are

typical of those of other class members since its claims and the claims of other class members

arise out of the same course of events.

**b.     Ohio STRS Will Fairly and Adequately
Represent the Interests of the Class**

Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the

interests of the Class."  The PSLRA directs the Court to limit its inquiry regarding adequacy to:

(1) whether there are any conflicts between the interests of the movant and the members of the

class; (2) whether the movant is an adequate representative of the class; (3) whether the interests

of the movant are aligned with the members of the class; and (4) whether there is evidence of any

antagonism between the interests of the movant and the class.  15 U.S.C. § 78u-4(a)(3)(B)

(iii)(I)(cc).  Adequate representation will be found if the representative is represented by able and

experienced counsel, and the representative has no fundamental conflicts of interest with the

interests of the class as a whole.  *Halford v. Goodyear Tire & Rubber Co.,* 161 F.R.D. 13, 19

(W.D.N.Y. 1995).

Here, Ohio STRS's interests are clearly aligned with the members of the Class, and there

is no evidence of any antagonism between Ohio STRS and the class.  Ohio STRS shares

numerous common questions of law and fact with the members of the class in establishing

defendants' liability and damages, and its claims are typical of the class.  Additionally, Ohio

STRS has retained competent and experienced counsel who are able to conduct this complex

litigation in a professional manner.  Moreover, Ohio STRS's experience serving as lead plaintiff

11

actually makes it an ideal candidate to lead the prosecution of this extremely important litigation.[6]  Thus, the close alignment of interests between Ohio STRS combined with its strong desire to prosecute the Related Actions on behalf of the class, also militates in favor of granting the instant motion.

> ### c.    Ohio STRS Is the Prototypical Lead
> ### Plaintiff Envisioned by the PSLRA

In addition to satisfying the preliminary requirements of Rule 23, the appointment of Ohio STRS as lead plaintiff also satisfies a critical legislative goal behind enacting the PSLRA – to encourage sophisticated institutions with large financial interests to serve as lead plaintiff in securities class actions.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (noting that the legislative intent of the PSLRA is to encourage large institutional investors to serve as lead plaintiff); *see also Olsten*, 3 F. Supp. 2d at 296. (same).

Indeed, Ohio STRS is one of the largest public pension funds in the nation and can both zealously litigate this action and actively supervise class counsel.  Ohio STRS serves approximately 400,000 active, inactive and retired Ohio public educators and has assets of approximately $75 billion.  As such, Ohio STRS is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA.  *See Ferrari*, 2004 WL 1637053, at *3; *see also Oxford*, 182 F.R.D. at 46.  Furthermore, Ohio STRS has extensive experience discharging fiduciary duties in securities class actions.  Ohio STRS currently serves as lead plaintiff in other securities class actions as noted above.  *See, e.g.,* Exhibit A attached to the Kaplan Decl.  Thus, there is no question that Ohio STRS has the requisite experience and expertise to vigorously represent the Class in prosecuting this litigation.

---

[6]  *See, e.g., In re: Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 264 (D.D.C. 2005) (appointing Ohio STRS's lead plaintiff).

**C.  This Court Should Approve Ohio STRS's Choice of Co-Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the plaintiff class." H.R. Conf. Rpt. No. 104-369, at 35, 104th Cong. 1st Sess (Nov. 28, 1995).

Ohio STRS has selected counsel highly experienced in prosecuting securities class actions.  Ohio STRS has retained the law firms of Kaplan Fox, Schiffrin Barroway and Berger & Montague to serve as Co-Lead Counsel.  Each of these firms has extensive experience litigating securities class actions and has successfully prosecuted numerous securities class actions on behalf of injured investors.  Kaplan Decl. Ex. E (firm resume of Kaplan Fox), Ex. F (firm resume of Schiffrin Barroway), and Ex. G (firm resume of Berger & Montague).

**V.      CONCLUSION**

For the above reasons, Ohio STRS respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Ohio STRS as the lead plaintiff in the Related Actions; and (3) approve its choice of Co-Lead Counsel.

DATED:      January 2, 2008
                  New York, New York

                            Respectfully submitted,

                            **KAPLAN FOX & KILSHEIMER LLP**

                            By:_____/s/ Robert N. Kaplan_____
                                Robert N. Kaplan
                                Frederic S. Fox
                                Joel B. Strauss
                                Donald R. Hall
                                Jeffrey P. Campisi
                            850 Third Avenue, 14th Floor
                            New York, NY 10022
                            Telephone:  (212) 687-1980
                            Facsimile:  (212) 687-7714

**SCHIFFRIN BARROWAY TOPAZ &
KESSLER, LLP**
Richard S. Schiffrin
Andrew L. Barroway
Sean M. Handler
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**BERGER & MONTAGUE, P.C.**
Merrill G. Davidoff
Lawrence J. Lederer
Arthur Stock
Lane L. Vines
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

*Proposed Co-Lead Counsel for Lead
Plaintiff Movant the State Teachers'
Retirement System of Ohio and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 2, 2008, I caused to be electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will electronically send notification of such filing to the registered participants and paper copies will be sent via first-class mail postage pre-paid to those indicated as non-registered participants on January 2, 2008.

/s/    Jeffrey P. Campisi
        Jeffrey P. Campisi

January 2, 2008

15