# EXHIBIT G

# BERGER & MONTAGUE, P.C.

Berger & Montague has been engaged in the practice of complex and class action litigation for over 30 years. The firm was founded in 1970 to concentrate on the representation of plaintiffs in a series of antitrust class actions. Since then, the firm has been instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has recovered billions of dollars for its clients. Currently, the firm consists of approximately 70 lawyers, 14 paralegals, and an experienced support staff. Attached at Tab 1 are the biographies of some of the attorneys who will devote their efforts to this engagement.

Berger & Montague has been recognized by courts throughout the country for its ability and experience in handling major complex litigation and has achieved the highest possible rating by its peers and opponents as reported in *Martindale-Hubbell*. (The firm's many plaudits from judges can be found at http://www.bergermontague.com/judicial-praise.cfm. Also attached at Tab 2 is a summary of some judicial praise the firm has received for its prosecution of complex litigation).

The firm was recently included in *The National Law Journal's* "Hot List" of top plaintiffs' law firms for 2007, as it has in years past. See Tab 3 (attaching summaries from *The National Law Journal*). *The National Law Journal* cited the firm's victories in a series of post-trial rulings upholding the $554 million jury verdict in *Rocky Flats*, as well as significant recoveries in securities, antitrust, mass tort and employment fields. The firm has also been singled out by *Chambers USA's America's Leading Business Lawyers*, as one of the top firms in the City of Philadelphia. Chambers "endorsed [the Berger firm] for its work in complex securities, antitrust and mass torts," and reported that the firm is "[c]onsidered by its competitors as a 'leading light on the plaintiffs' side.'" The firm has also repeatedly been named by Securities Class Action Services/Institutional Shareholder Services as a top ten securities class action firm (ranked by total dollar amount of recoveries).

Berger & Montague also has extensive experience actually trying – and prevailing through verdict in – large, complex cases. For example, on February 14, 2006, the jury returned a verdict of $554 million on behalf of thousands of property owners against the former operators of the *Rocky Flats* nuclear weapons plant, located about 17 miles northeast of Denver, Colorado. The verdict against the contractors, Dow Chemical Company and Rockwell International Corporation, is the largest verdict in Colorado history, and the first time a jury has awarded damages to property owners living near one of the nation's nuclear weapons sites. It includes an award of $200 million in punitive damages. According to *The National Law Journal's* "Top 100 Verdicts of 2006," Berger & Montague's victory in the *Rocky Flats* case was the third largest jury verdict in the United States in 2006. The firm was also co-lead counsel in the *Exxon Valdez* case, with the jury returning a $5 billion judgment after 13 years of litigation. Both cases remain pending. In a current survey of the 300 largest U.S. law firms and federal court dockets, published in Competition 360 Online (Portfolio Media, Feb. 14, 2007), Berger & Montague ranked No. 3 among the most frequently hired plaintiffs' antitrust firms measured by new cases filed in 2006.

## QUALIFICATIONS

***Complex Securities Litigation Involving State or Other Municipal Entities.*** Berger & Montague helped pioneer the representation of state entities in securities litigation matters. Today, it is widely recognized as a leader in the field. Representative engagements on behalf of state entities since the passage of the PSLRA in 1995 include the following, all of which included claims arising under the federal securities laws or related state law:

- Currently represents the New Jersey Division of Investment/Department of Treasury in an "opt-out" action against *Qwest Communications* and other defendants. This litigation alleges that Qwest and senior Qwest officials misstated Qwest's financial results over several years. A related class action case was already settled. New Jersey's "opt-out" action has settled for a very substantial and favorable amount.

- Represented the Pennsylvania State Employees' Retirement System as the lead plaintiff in the *CIGNA Securities Litigation* federal securities fraud class action. CIGNA allegedly concealed crucial problems concerning its financial operations, which, once revealed, caused the company's stock price to fall precipitously. The firm obtained a $93 million settlement, which was approved by the Court in May 2007. This is a remarkable settlement because this litigation contained none of the elements that usually lead to large recoveries. For example, there were no restatements, government investigations, typical indicators of financial fraud, or insider trading. Moreover, the case was settled on the eve of trial.

- Represented the City of Philadelphia Board of Pensions and Retirement in several important PSLRA cases. For example, *Waste Management* involved claims arising out of alleged violations of GAAP. The plaintiffs claimed that the company misstated its financial operations and conditions which, in turn, led to financial restatements of its previously reported financial results. Following extensive litigation, the case was settled for $220 million. Similarly, *IKON Office Solutions* also involved claims that the company misstated in reports to investors its financial operations and condition. The case was settled for a $111 million cash recovery. The Berger firm also represented the City of Philadelphia Board of Pensions and retirement in a successful securities law class action case involving *USA Detergents* ($10 million recovery), and currently represents the Board in an action against *KLA-Tencor Corp.* related to the issuance of back-dated stock options.

- Represented the Connecticut Retirement Plans and Trust Funds in *Campbell Soup* ($35 million recovery). This case involved allegations of channel stuffing, *i.e.*, "stuffing" product on to customers to show growth regardless of whether the customer actually wanted, or could sell, the additional product. This recovery was all the more outstanding given that, like *CIGNA*, there were few, if any, of the traditional indicia of fraud. For example, there was no restatement and no insider selling; in fact, insiders had bought the company's stock during the applicable period, and used that as a defense.

- Represented the Teachers' Retirement System of Louisiana in *Micro Warehouse* ($30 million recovery); *Summit Technology* ($10 million recovery); and *Boston Chicken* ($19.4 million recovery). These cases also involved allegations of financial fraud, including misrepresentations and material omissions concerning these companies' financial operations and condition. For example, *Boston Chicken* was one of the original alleged "off-the-book" accounting frauds. The allegation, among others, was that the company concealed operating losses via entities which it did not consolidate in a timely fashion. Following disclosure of these losses, the company's stock price collapsed.

- Represented the New Hampshire Retirement System in *United Healthcare* ($21 million recovery); *SmartTalk* (a partial settlement of $15 million); *Phycor* ($10 million recovery); and *Ashworth* ($15.25 million recovery plus significant corporate governance changes including, among other things, an increase of independent directors, limits on the length directors may serve, retention by senior management of specified amounts of stock, and the establishment and implementation of a Lead Independent Director).

- Represented the Commonwealth of Pennsylvania AG and four public Pennsylvania funds, including Pennsylvania Public School Employees' Retirement System, Pennsylvania State Employees' Retirement System, Pennsylvania State Workers' Insurance Fund and Pennsylvania Tobacco Settlement Investment Board, in *AOL Time Warner* "opt-out" action ($23 million recovery in June 2006). This litigation involved alleged misstatements concerning the revenues booked by AOL both prior to and following its merger with Time Warner, and the case was resolved at a substantial premium over the class settlement.

***Berger & Montague's Expertise in Other Complex Litigation, Class Actions, and Securities Litigation.*** As a pioneer of class action litigation and one of the leading plaintiffs' litigation firms in the country, the Berger firm is particularly well-suited to handle securities litigation on a class or individual basis. In addition to the specific cases discussed above, the Berger firm has vast experience litigating plaintiffs' securities cases and complex litigation

4

throughout the country. The firm's broad experience in many different types of complex litigation bears directly on potential litigation by the Client, and renders Berger & Montague eminently qualified to represent the Client. In sum, the Berger firm has:

- a) extensive experience in all forms of securities litigation for over 30 years and, in particular, concealment involving financial operation and performance;

- b) extensive experience specifically litigating securities claims under the PSLRA;

- c) a record of delivering superior results which outperform the results of the typical securities class action;

- d) substantial experience in bankruptcy litigation in conjunction with securities litigation;

- e) substantial experience in obtaining corporate governance relief, both directly in securities cases and in the derivative litigation context;

- f) direct experience in securities and other litigation involving mortgage lending and related subprime lending, including structured finance, including the precedent-setting case of *In re First Alliance Mortgage Co.* summarized below;

- g) extensive experience in non-securities litigation including the prosecution of landmark consumer, environmental and antitrust cases through trial judgment and appeal; and

- h) extensive experience in electronic and other discovery.

Representative cases include:

- *In re Rite Aid Inc. Securities Litigation*: Berger & Montague, as co-lead counsel, obtained settlements totaling $334 million against Rite Aid's accounting firm and certain of the company's former officers (99 CV 1349 (E.D. Pa. 2001)). This case involved a three year accounting restatement in a retail pharmacy chain. There were more than 20 subtle accounting manipulations alleged, all of which plaintiffs contended led to a gross overstatement of income. However, at the time the case was commenced, there were no restatements. The settlement included a $125 million contribution from KPMG, still one of the largest recoveries ever achieved from an accounting firm. Further, Rite Aid was financially weak and its

officer and director insurance was extremely limited. The Berger firm negotiated a novel settlement which included equity from the company and a senior note that ultimately secured many millions of dollars more for the class. The court stated that counsel "were extraordinarily deft and efficient in handling this most complex matter. . . ." *In re Rite Aid Inc. Sec. Litig.*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003).

- *In re Sunbeam Inc. Securities Litigation*: As co-lead counsel, the Berger firm obtained a settlement on behalf of investors of $142 million in an action against Sunbeam's accounting firm and Sunbeam's officers (98 CV 8258 (S.D. Fla. 2001)). The case also involved a complex financial fraud, including allegations of financial misstatement and material omission concerning Sunbeam's operations and results. Following extensive litigation, final settlements were only achieved on the eve of trial (after the Berger firm had been designated lead trial counsel).

- *Kelly v. McKesson HBOC, Inc.*: Individual "opt-out" action involving a group of four shareholders who sold their companies to a large publicly-held corporation in exchange for $103.5 million in stock. Subsequently, McKesson acquired HBOC; HBOC announced accounting irregularities; and McKesson HBOC's stock price plummeted. This case subsequently settled for a significant, confidential cash recovery following extensive fact discovery (C.A. No. 99C-09-265 WCC, 2002 Del. Super. LEXIS 39 (Del. Super. Ct. Jan. 17, 2002)).

- *Medaphis/Deloitte*: $96.5 million recovery; Medaphis paid $72.5 million with Deloitte, its auditor, paying $24 million; the Berger firm represented a large private institutional investor (Carley Capital), among others.

- *Fleming*: $93.95 million recovery; case involved alleged misstatements concerning Fleming's strategic plan to convert its retail stores from traditional grocery stores to warehouse-type stores. Claims included that Fleming employed improper accounting and reported inflated revenue.

- *Xcel Energy*: $80 million recovery; claim was that Xcel falsely reported certain transactions it entered into with its majority-owned subsidiary, NRG Energy; that Xcel and NRG engaged in certain "round-trip" trades; and that Xcel's revenues and financial results were materially overstated.

- *Alcatel Alsthom*: $75 million recovery; represented a large private institutional investor from Paris, France (ABC Arbitrage); claim was that Alcatel concealed poor operating results and inflated its stock price in connection with Alcatel's merger with DSC Communications.

- *Sotheby's*: $70 million recovery; securities class action arising out of Sotheby's alleged antitrust violations and liabilities concerning same.

- *Melridge*: Jury verdict of $88.2 million with judgment entered on RICO claims for $239 million; ultimately settled for $57.5 million; one of the few securities class actions ever tried to verdict; complex securities fraud claims including financial misstatements and omissions.

- *Walco Investments, Inc., et al. v. Kenneth Thenen, et al. (Premium Sales)*: The Berger firm, as a member of the Plaintiffs' Steering Committee, obtained settlements of $141 million for investors victimized by a Ponzi scheme (reported at 881 F. Supp. 1576 (S.D. Fla. 1995); 168 F.R.D. 315 (S.D. Fla. 1996); 947 F. Supp. 491 (S.D. Fla. 1996)).

- *In re Michael Milken and Associates Securities Litigation*: As court-appointed liaison counsel, the Berger firm was one of four lead counsel who structured the $1.3 billion "global" settlement of all claims pending against Michael R. Milken, over 200 present and former officers and directors of Drexel Burnham Lambert, and more than 350 Drexel/Milken-related entities (MDL No. 924, M21-62-MP (S.D.N.Y. 1993)).

- *RJR Nabisco Securities Litigation*: In this action, Berger & Montague represented individuals who sold RJR Nabisco securities prior to the announcement of a corporate change of control. This securities case settled for $72 million (88 Civ. 7905 MBM (S.D.N.Y. 1992)).

- *Presidential Life Insurance Co. v. Milken*: Approving $50 million settlement in novel "global" class action of all previously unasserted claims against some 500 defendants (946 F. Supp. 267 (S.D.N.Y. 1996)).

- *In re Ivan F. Boesky Securities Litigation*: Affirming approval of "first tier" settlements arising out of the Boesky/Levine insider trading scandal totaling approximately $29 million; related "second tier" class, derivative and other settlements subsequently approved totaling in excess of $200 million (948 F.2d 1358 (2d Cir. 1991)).

Additionally, Berger & Montague has also served as lead counsel in multiple other securities class action cases brought under the PSLRA. Other representative examples of Berger & Montague's service as lead counsel in major securities cases are identified below:

*Advanced Micro Devices* (class settlement of $11.5 million);
*BankAmerica* (derivative settlement of $39.25 million);
*Boston Chicken* (class settlement of $21.5 million);

7

*Bristol-Myers Squibb* (class settlement of $20 million);
*Cephalon* (class settlement of $17 million);
*Coastal Physician Group* (class settlement of $8.15 million);
*Crocker Bank* (class settlement of $35 million);
*Employee Solutions* (class settlement valued at $15 million);
*Fidelity/Micron* (class settlement of $10 million);
*Genentech* (class settlement of $29 million);
*Global Crossing* (class settlement of $444 million (partial));
*Home Shopping Network* (class settlement of $18.2 million);
*Long Island Lighting* (class settlement of $48.5 million);
*Marconi* (class settlement of $7.1 million);
*MicroWarehouse* (class settlement valued at $30 million);
*Motorola* (class settlement of $15 million);
*Oak Industries* (class settlement in excess of $35 million);
*Plains All American Pipeline LP* (class settlement of $24.1 million);
*Policy Management* (class settlement of $32 million);
*Policy Management II* (class settlement of $7.75 million);
*Public Service Company of New Mexico* (class and derivative settlements of $33 million);
*Raychem* (class settlement of $19.5 million);
*Safety-Kleen* (class settlement of $44.5 million achieved two days before trial);
*Shopko Stores* (class settlement of $4.9 million);
*SmithKline Beckman* (class settlement of $22 million);
*Summit Technology* (class settlement of $10 million);
*Sunrise Medical* (class settlement of $20 million);
*Subaru* (class settlement of $70 million);
*Synergen* (class settlement of $28 million);
*U.S. Bioscience* (class settlement valued at $15.25 million);
*United HealthCare* (class settlement of $20.1 million);
*United Telecommunications* (class settlement of $28 million);
*Valujet* (class settlement of $5 million); and
*W.R. Grace* (derivative settlement of $8.5 million).

Notably, Berger & Montague has also obtained some of the largest securities class action recoveries in terms of percentage per damaged share. For example, in *Alcatel* ($75 million total recovery), *Sotheby's* ($70 million total recovery) and *Melridge* ($57.5 million total recovery), the recoveries as a percentage of damages were estimated to be, respectively, 56%, 54% and 76%. According to a report by *NERA Economic Consulting* in February 2005, the median post-PSLRA percentage recovery of estimated damages is less than 4%.

The firm also has particular expertise in securities litigation within the context of bankruptcy proceedings. For example, in *In re The Drexel Burnham Lambert Group, Inc.*, the Berger firm was appointed co-counsel for a mandatory non-opt-out class consisting of all

claimants who had filed billions of dollars in securities litigation-related proofs of claim against The Drexel Burnham Lambert Group, Inc. and/or its subsidiaries. Settlements in excess of $2 billion were approved in August 1991 and became effective upon consummation of Drexel's Plan of Reorganization on April 30, 1992. (90 Civ. 6954 (MP), Chapter 11, Case No. 90 B 10421 (FGC), *Jointly Administered, reported at, inter alia*, 960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) ("*Drexel I*") and 995 F.2d 1138 (2d Cir. 1993) ("*Drexel II*")).

Similarly, in the *Boston Chicken* class action litigation, another accounting fraud case, the Berger firm obtained on behalf of the plaintiff class a recovery from Arthur Andersen and the underwriters of $19.4 million. The company sought bankruptcy protection at the same time that Berger & Montague was continuing to pursue investor claims against the individual officers and directors. Therefore, the plan trustee appointed by the bankruptcy court also initiated claims against Boston Chicken's officers and directors, its accountants and others who were involved in Boston Chicken's public offerings under a "deepening insolvency" theory. Berger & Montague coordinated its litigation against the officers and directors with the Plan Trustee's litigation and succeeded in working through complex issues within the bankruptcy context.

The Berger firm's familiarity with securities actions within the context of bankruptcy has led to its selection in RFPs as counsel for two trustees of liquidating trusts to bring actions against officers and directors as well as accountants. These actions resulted in recoveries of $4.5 million (*Underwriters* and *Arthur Andersen*) and $4 million (*U.S. Aggregates*).

In Berger & Montague's securities class action against *Fleming*, the company declared bankruptcy shortly after the case was filed. Despite the fact that this would normally terminate any claims against the company, Berger & Montague successfully negotiated with the bankruptcy trustee to preserve the class claims against Fleming once it emerged from bankruptcy. In addition, Berger & Montague navigated Fleming's seven separate layers of D&O insurance to achieve a $31.45 million settlement with the company. Berger & Montague also fought off competing claims against the directors and officers' insurance by Fleming's bankruptcy trustee and obtained for the class five times the recovery received by the trustee.

The firm also has extensive experience in shareholder derivative actions. For example, the Berger firm has been involved in derivative actions filed on behalf of *J.P. Morgan Chase, Columbia HCA, FPL Group* and *Tyco Corp.*, as well as actions on behalf of *Bank of America* ($39.25 million recovery) and *W.R. Grace & Co.* ($8.5 million recovery).

Berger & Montague has spent months investigating the subprime lending industry, from loan origination through the sale and securitization of such loans into mortgage-backed securities. We also have substantial experience in related accounting issues and in analyzing "off-balance sheet" entities established to issue mortgage-backed securities. In addition, the firm is currently involved directly in litigation relating to the mortgage industry and has substantial experience with cases involving related consumer protection issues. Representative cases include:

- The firm filed the first action on behalf of an investor in New Century's Series B *Preferred* stock against New Century, certain officers of New Century, and the underwriters of those securities. *Verne v. New Century Financial Corp., et al.*, No. CV07-0320 JVS (C.D. Cal.). The complaint alleges that New Century and the individual defendants artificially inflated the price of New Century's preferred stock through false and misleading statements concerning management of the significant risks inherent in its mortgage lending business, and that the underwriter defendants failed to properly investigate and disclose such practices. On June 26, 2007, the court consolidated the related cases and appointed the New York State Teachers Retirement System as lead plaintiff. The lead plaintiff filed its consolidated amended complaint. On April 6, 2007, New Century filed for bankruptcy, and the case has been stayed as to that defendant as a result of the bankruptcy proceedings, while the claims against the remaining defendants proceed.

- The Berger firm presently represents retail loan officers of two subprime mortgage companies in several Fair Labor Standards Act lawsuits, seeking unpaid overtime compensation, plus interest, attorneys fees, and statutory penalties. *See, e.g., Chabrier, et al. v. Wilmington Finance, Inc.*, Case No. 06-CV-04176 (E.D. Pa.); *Burt, et al. v. Wilmington Finance, Inc.*, Case No. 07-CV-01593 (E.D. Pa.); *Evansin, et al. v. Wilmington Finance, Inc.*, Case No. 07-CV-01559 (E.D. Pa.); *Greene, et al. v. Wilmington Finance, Inc.*, Case No. 07-CV-01699; and *Bochicchio, et al. Equity One, Inc., et al.*, Civil Action No. 07-CV-440(NLH)(AMD) (D.N.J.). On Dec. 13, 2006, the court in the *Chabrier* case declined to certify a national class and instead certified a collective action class of all loan officers who worked in Wilmington Finance's Cincinnati, Ohio office. As a result of these cases, the Berger firm has developed a significant amount of information and sources pertaining specifically to the subprime industry.

- In *In re First Alliance Mortgage Co.*, the Berger firm represented a borrower who filed a class action suit in federal district court in New Jersey, and the case was ultimately transferred to California. The cases were settled for over $80 million, including $10 million from the principal individual defendant. Significantly, the class also obtained a recovery from Lehman Brothers, the primary warehouse lender behind First Alliance, in a landmark case on lender liability that was upheld

- on appeal by the Ninth Circuit. *In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006).

- In *In re Currency Conversion Fee Antitrust Litig.* ("CCF"), MDL 1409 (S.D.N.Y., Pauley, J.), the firm represents credit card consumers in a class action against Visa, MasterCard, Diners Club and (at the time) seven of the largest credit card issuers. Plaintiffs alleged that defendants had conspired in violation of the antitrust laws to artificially set and maintain the level of a fee, referred to as the "foreign transaction fee," incurred when a cardholder uses their card to make a transaction in a foreign country or in a foreign currency. Plaintiffs also alleged that in furtherance of the conspiracy the defendants failed to disclose properly the foreign transaction fee to cardholders in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* Claims for violation of consumer protection statutes of South Dakota were also alleged. The parties reached a $336 million settlement for these claims, which was preliminarily approved by the court on November 8, 2006. (While the original action concerned credit and charge cards, the settlement provided relief for the benefit of debit cardholders as well.) Class notice and claims submission is occurring and a final hearing will be held in 2008.

- A shareholder of the Berger firm was co-lead counsel in a securities class action case against a bankrupt company, Southern Pacific Funding, which securitized subprime mortgages. The case was brought in the District of Oregon, and the plaintiff class in 2001 obtained a $20 million recovery paid by the company's insurance carrier and majority shareholder (a Canadian bank). The company attempted to make money from the small spreads between the interest rates paid on mortgages and the slightly higher interest rate it attempted to earn on mortgage-backed securities, which resulted in the company ultimately losing money. The complaint alleged the defendants had known the company portfolio was imperiled long before they disclosed the truth.

***Berger & Montague's Success in Achieving Corporate Governance Reforms Through Litigation.*** Berger & Montague has also experienced great success in achieving corporate governance reforms through securities litigation. For example, *Klein, et al. v. Broadhead, et al. and FPL Group, Inc.*, Consolidated Case No. 02-20170-CIV-GOLD (S.D. Fla.), involved a case in which shareholders of a Fortune 500 company, suing derivatively, obtained a recovery of $22,250,000 for the benefit of FPL Group plus significant corporate governance reform on

11

claims of excessive management compensation. The corporate governance improvements include, among others: enhanced power to non-management directors; limits on the tenure of certain board members; limits on related party transactions board members may enter into with FPL; and limits on the directorships of public companies that FPL directors may hold. The Berger firm served as co-lead counsel in the derivative litigation.

As co-lead counsel, representing the New Hampshire Retirement System, Berger & Montague also helped secure substantial corporate governance benefits in the *Ashworth Securities Litigation*, Civil Action No. 99-CV-0121-L (S.D. Cal.). In *In re Ashworth*, as in *FPL Group*, a substantial monetary recovery ($15.25 million) was coupled with wide-ranging corporate governance relief crafted to strengthen the power and discretion of the independent members of the Board of Directors, including among other things, an increase of independent directors, limits on the length directors may serve, retention by senior management of specified amounts of stock, and the establishment and implementation of a Lead Independent Director. Plaintiffs sacrificed nothing to secure the corporate governance relief, and the $15.25 million cash settlement amounted to approximately one-half of the recoverable damages.

In *Roger Copland, et al. v. Fischer & Porter Co., et al.*, C.A. No. 93-8366-09-5 (C.C.P., Bucks Cty. (Pa.)), Berger & Montague's clients alleged that the company's president improperly received a premium for the Class A stock he owned, in excess of the value set for the publicly-traded Class B shares in a friendly takeover he had negotiated. The firm discovered that in connection with a divorce many years earlier, the president had filed a valuation with family court valuing the Class A shares he owned at the same price as Class B shares. That valuation constituted the basis for an equitable distribution. Plaintiffs therefore were able to argue that the principle of judicial estoppel precluded the president from presenting any evidence at trial inconsistent with his earlier in-court statement that the Class A and Class B stock were of equal value. The case settled on the eve of trial, while the motion to preclude evidence was still pending. Class members received 46% of the high-end amount of the damage estimate.

*Korman v. InKine Pharmaceutical Co., Inc.*, March Term 2004, No. 04341 (C.C.P., Phila. Cty.), was a stockholder action on behalf of class members who were denied preemptive rights in several securities offerings by InKine. As sole counsel, Berger & Montague secured a settlement of $9 million. The settlement provided substantial compensation for the preemptive rights denied to class members.

***Other Complex Litigation Involving State or Other Municipal Entities.*** Berger & Montague also has a distinguished record of action on behalf of state entities in non-securities cases. For example, the Berger firm was chosen as one of four firms to act as outside counsel to the State Attorney General representing the State of Connecticut in its lawsuit against Philip Morris, Inc. and other major tobacco companies to recover increased health costs and other damages arising from the tobacco companies' decades-long effort to mislead the public about the health hazards of smoking and nicotine. *State of Connecticut v. Philip Morris, Inc., et al.*, No.