# EXHIBIT X

Case 1:07-cv-09633-LBS-DFE    Document 55-25    Filed 07/21/2008    Page 1 of 9

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM 10-Q

(Mark One)

X  **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the quarterly period ended March 30, 2007**

OR

__ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from _____ to _____**

**Commission file number 1-7182**

**MERRILL LYNCH & CO., INC.**

(Exact name of Registrant as specified in its charter)

| **Delaware** | **13-2740599** |
|---|---|
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| **4 World Financial Center, New York, New York** | **10080** |
| (Address of Principal Executive Offices) | (Zip Code) |

**(212) 449-1000**

Registrant's Telephone Number, Including Area Code:

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

X  YES    __ NO

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):

Large Accelerated Filer  X        Accelerated Filer  __        Non-Accelerated Filer  __

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).
__ YES    X  NO

**APPLICABLE ONLY TO CORPORATE ISSUERS:**

Indicate the number of shares outstanding of each of the issuer's classes of common stock, as of the latest practicable date.

868,179,167 shares of Common Stock and 2,623,688 Exchangeable Shares as of the close of business on April 30, 2007. The Exchangeable Shares, which were issued by Merrill Lynch & Co., Canada Ltd. in connection with the merger with Midland Walwyn Inc., are exchangeable at any time into Common Stock on a one-for-one basis and entitle holders to dividend, voting, and other rights equivalent to Common Stock.

those counterparties do not have the right to sell or repledge at March 30, 2007 and December 29, 2006 are as follows:

*(dollars in millions)*

| Trading asset category | Mar. 30, 2007 | Dec. 29, 2006 |
|---|---|---|
| Mortgages, mortgage-backed, and asset-backed securities | $39,476 | $34,475 |
| U.S. Government and agencies | 10,978 | 12,068 |
| Corporate debt and preferred stock | 9,048 | 11,454 |
| Non-U.S. governments and agencies | 6,289 | 4,810 |
| Equities and convertible debentures | 4,525 | 4,812 |
| Municipals and money markets | 200 | 975 |
| **Total** | **$70,516** | **$68,594** |

### Note 5. Investment Securities

Investment securities at March 30, 2007 and December 29, 2006 are presented below:

*(dollars in millions)*

| | Mar. 30, 2007 | Dec. 29, 2006 |
|---|---|---|
| **Investment securities** | | |
| Available-for-sale[1] | $50,286 | $56,292 |
| Trading | 7,229 | 6,512 |
| Held-to-maturity | 264 | 269 |
| Non-qualifying[2] | | |
|   Equity investments[3] | 22,848 | 21,290 |
|   Investments of insurance subsidiaries[4] | 1,256 | 1,360 |
|   Deferred compensation hedges[5] | 1,785 | 1,752 |
|   Investments in trust preferred securities and other investments | 508 | 715 |
| **Total** | **$84,176** | **$88,190** |

(1) At March 30, 2007 and December 29, 2006, includes $3.9 billion and $4.8 billion, respectively, of investment securities reported in cash and securities segregated for regulatory purposes or deposited with clearing organizations.
(2) Non-qualifying for SFAS 115 purposes.
(3) Includes Merrill Lynch's investment in BlackRock.
(4) Primarily represents insurance policy loans.
(5) Represents investments that economically hedge deferred compensation liabilities.

### Note 6. Securitization Transactions and Transactions with Special Purpose Entities ("SPEs")

**Securitizations**

In the normal course of business, Merrill Lynch securitizes: commercial and residential mortgage loans; municipal, government, and corporate bonds; and other types of financial assets. SPEs, often referred to as Variable Interest Entities, or VIEs, are often used when entering into or facilitating securitization transactions. Merrill Lynch's involvement with SPEs used to securitize financial assets includes: structuring and/or establishing SPEs; selling assets to SPEs; managing or servicing assets held by SPEs; underwriting, distributing, and making loans to SPEs; making markets in securities

30

issued by SPEs; engaging in derivative transactions with SPEs; owning notes or certificates issued by SPEs; and/or providing liquidity facilities and other guarantees to, or for the benefit of, SPEs.

Merrill Lynch securitized assets of approximately $66.0 billion and $28.2 billion for the three months ended March 30, 2007 and March 31, 2006, respectively. For the three months ended March 30, 2007 and March 31, 2006, Merrill Lynch received $66.7 billion and $28.4 billion, respectively, of proceeds, and other cash inflows, from securitization transactions, and recognized net securitization gains of $207.2 million and $88.2 million, respectively, in Merrill Lynch's Condensed Consolidated Statements of Earnings.

For the first three months of 2007 and 2006, cash inflows from securitizations related to the following asset types:

*(dollars in millions)*

|  | Three Months Ended | |
|---|---|---|
|  | **Mar. 30, 2007** | **Mar. 31, 2006** |
| **Asset category** | | |
| Residential mortgage loans | $41,559 | $19,705 |
| Municipal bonds | 17,090 | 3,278 |
| Corporate and government bonds | 4,020 | 1,240 |
| Commercial loans and other | 4,034 | 4,172 |
| **Total** | $66,703 | $28,395 |

Retained interests in securitized assets were approximately $8.7 billion and $6.8 billion at March 30, 2007 and December 29, 2006, respectively, which related primarily to residential mortgage loan and municipal bond securitization transactions. The majority of the retained interest balance consists of mortgage-backed securities that have quoted market prices. The majority of these retained interests include mortgage-backed securities that Merrill Lynch expects to sell to investors in the normal course of its underwriting activity, and only a small portion of the retained interests represent residual interests from subprime mortgage securitizations.

The following table presents information on retained interests, excluding the offsetting benefit of financial instruments used to hedge risks, held by Merrill Lynch as of March 30, 2007 arising from Merrill Lynch's residential mortgage loan, municipal bond and other securitization transactions. The

pre-tax sensitivities of the current fair value of the retained interests to immediate 10% and 20% adverse changes in assumptions and parameters are also shown.

*(dollars in millions)*

|  | Residential Mortgage Loans | Municipal Bonds | Other |
|---|---|---|---|
| Retained interest amount | $ 7,258 | $ 889 | $ 561 |
| Weighted average credit losses (rate per annum) | 1.0% | 0.0% | 1.2% |
| Range | 0.0-8.0% | 0.0% | 0.0-2.1% |
| Impact on fair value of 10% adverse change | $ (84) | $ - | $ (1) |
| Impact on fair value of 20% adverse change | $ (153) | $ - | $ (2) |
| Weighted average discount rate | 8.0% | 4.1% | 9.6% |
| Range | 0.0-52.0% | 2.8-8.1% | 0.0-25.1% |
| Impact on fair value of 10% adverse change | $ (227) | $ (102) | $ (10) |
| Impact on fair value of 20% adverse change | $ (423) | $ (175) | $ (20) |
| Weighted average life (in years) | 4.5 | 7.0 | 2.6 |
| Range | 0.0-29.6 | 0.5-12.7 | 0.0-2.6 |
| Weighted average prepayment speed (CPR)[1] | 37.3% | 25.6% | 89.0% |
| Range[1] | 0.0-55.0% | 10.8-27.9% | 0.0-89.0% |
| Impact on fair value of 10% adverse change | $ (143) | $ - | $ (1) |
| Impact on fair value of 20% adverse change | $ (211) | $ - | $ (2) |

*CPR=Constant Prepayment Rate*
*(1) Relates to select securitization transactions where assets are prepayable.*

The preceding sensitivity analysis is hypothetical and should be used with caution. In particular, the effect of a variation in a particular assumption on the fair value of the retained interest is calculated independent of changes in any other assumption; in practice, changes in one factor may result in changes in another, which might magnify or counteract the sensitivities. Further, changes in fair value based on a 10% or 20% variation in an assumption or parameter generally cannot be extrapolated because the relationship of the change in the assumption to the change in fair value may not be linear. Also, the sensitivity analysis does not include the offsetting benefit of financial instruments that Merrill Lynch utilizes to hedge risks, including credit, interest rate, and prepayment risk, that are inherent in the retained interests. These hedging strategies are structured to take into consideration the hypothetical stress scenarios above such that they would be effective in principally offsetting Merrill Lynch's exposure to loss in the event these scenarios occur.

The weighted average assumptions and parameters used initially to value retained interests relating to securitizations that were still held by Merrill Lynch as of March 30, 2007 are as follows:

|  | Residential Mortgage Loans | Municipal Bonds | Other |
|---|---|---|---|
| Credit losses (rate per annum) | 0.8% | 0.0% | 1.3% |
| Weighted average discount rate | 8.5% | 4.0% | 10.3% |
| Weighted average life (in years) | 4.4 | 6.8 | 1.4 |
| Prepayment speed assumption (CPR)[1] | 38.9% | 9.0% | 20.0% |

*CPR=Constant Prepayment Rate*
*(1) Relates to select securitization transactions where assets are prepayable.*

For residential mortgage loan and other securitizations, the investors and the securitization trust generally have no recourse to Merrill Lynch's other assets for failure of mortgage holders to pay when due.

For municipal bond securitization SPEs, in the normal course of dealer market-making activities, Merrill Lynch acts as liquidity provider. Specifically, the holders of beneficial interests issued by municipal bond securitization SPEs have the right to tender their interests for purchase by Merrill

Lynch on specified dates at a specified price. Beneficial interests that are tendered are then sold by Merrill Lynch to investors through a best efforts remarketing where Merrill Lynch is the remarketing agent. If the beneficial interests are not successfully remarketed, the holders of beneficial interests are paid from funds drawn under a standby liquidity letter of credit issued by Merrill Lynch.

In addition to standby letters of credit, in certain municipal bond securitizations, Merrill Lynch also provides default protection or credit enhancement to investors in securities issued by certain municipal bond securitization SPEs. Interest and principal payments on beneficial interests issued by these SPEs are secured by a guarantee issued by Merrill Lynch. In the event that the issuer of the underlying municipal bond defaults on any payment of principal and/or interest when due, the payments on the bonds will be made to beneficial interest holders from an irrevocable guarantee by Merrill Lynch.

The maximum payout under these liquidity and default guarantees totaled $44.2 billion and $38.2 billion at March 30, 2007 and December 29, 2006, respectively. The fair value of the guarantees approximated $18 million and $16 million at March 30, 2007 and December 29, 2006, respectively, which is reflected in the Condensed Consolidated Balance Sheets. Of these arrangements, $6.9 billion at March 30, 2007 and December 29, 2006, represent agreements where the guarantees are provided to the SPE by a third-party financial intermediary and Merrill Lynch enters into a reimbursement agreement with the financial intermediary. In these arrangements, if the financial intermediary incurs losses, Merrill Lynch has up to one year to fund those losses. Additional information regarding these commitments is provided in Note 12 to the Condensed Consolidated Financial Statements and in Note 12 of the 2006 Annual Report.

The following table summarizes the total principal amounts outstanding and delinquencies of securitized financial assets held in SPE's, where Merrill Lynch holds retained interests, as of March 30, 2007 and December 29, 2006:

*(dollars in millions)*

|  | Residential Mortgage Loans | Municipal Bonds | Other |
|---|---|---|---|
| **March 30, 2007** | | | |
| Principal Amount Outstanding | $143,460 | $19,537 | $21,101 |
| Delinquencies | 4,645 | - | 8 |
| **December 29, 2006** | | | |
| Principal Amount Outstanding | $127,482 | $18,986 | $30,337 |
| Delinquencies | 3,493 | - | 10 |

Net credit losses associated with securitized financial assets for the quarters ended March 30, 2007 and March 31, 2006 approximated $61 million and $36 million, respectively.

**Mortgage Servicing Rights**

In connection with its residential mortgage business, Merrill Lynch may retain or acquire servicing rights associated with certain mortgage loans that are sold through its securitization activities. These loan sale transactions create assets referred to as mortgage servicing rights ("MSR"), which are included within other assets on the Condensed Consolidated Balance Sheets.

33

In March 2006 the FASB issued SFAS No. 156, which amends SFAS No. 140, and requires all separately recognized servicing assets and servicing liabilities to be initially measured at fair value, if practicable. SFAS No. 156 also permits servicers to subsequently measure each separate class of servicing assets and liabilities at fair value rather than at the lower of amortized cost or market. Merrill Lynch adopted SFAS No. 156 on December 30, 2006. Merrill Lynch has not elected to subsequently fair value those MSRs held as of the date of adoption or those MSRs acquired or retained after December 30, 2006.

Retained MSRs are initially recorded at fair value and subsequently amortized in proportion to and over the period of estimated future net servicing revenues. MSRs are assessed for impairment, at a minimum, on a quarterly basis. Management's estimates of fair value of MSRs are determined using the net discounted present value of future cash flows, which consists of projecting future servicing cash flows and discounting such cash flows using an appropriate risk-adjusted discount rate. These valuations require various assumptions, including future servicing fees, servicing costs, credit losses, discount rates and mortgage prepayment speeds. Due to subsequent changes in economic and market conditions, these assumptions can, and generally will, change from quarter to quarter.

Changes in Merrill Lynch's MSR balance are summarized below:

*(dollars in millions)*

|  | Carrying Value |
|---|---|
| **Mortgage servicing rights, December 29, 2006** (fair value is $164) | $122 |
| Additions[1] | 356 |
| Amortization | (66) |
| Valuation allowance adjustments | - |
| Other-than-temporary impairments | - |
| **Mortgage servicing rights, March 30, 2007** (fair value is $467 ) | $412 |

(1) Includes MSRs obtained in connection with the acquisition of First Franklin.

The amount of contractually specified revenues, which are included within managed accounts and other fee-based revenues in the Condensed Consolidated Statements of Earnings include:

*(dollars in millions)*

| | |
|---|---|
| Servicing fees | $74 |
| Ancillary and late fees | $14 |
| Total | $88 |

The following table presents Merrill Lynch's key assumptions used in measuring the fair value of MSRs and the pre-tax sensitivity of the fair values to an immediate 10% and 20% adverse change in these assumptions:

*(dollars in millions)*

| | |
|---|---|
| Fair value of capitalized MSRs | $ 467 |
| Weighted average prepayment speed (CPR) | 27.81% |
|    Impact of fair value of 10% adverse change | (31) |
|    Impact of fair value of 20% adverse change | (50) |
| Weighted average discount rate | 17.85% |
|    Impact of fair value of 10% adverse change | (10) |
|    Impact of fair value of 20% adverse change | (19) |

The sensitivity analysis above is hypothetical and should be used with caution. In particular, the effect of a variation in a particular assumption on the fair value of MSRs is calculated independent of

34

changes in any other assumption; in practice, changes in one factor may result in changes in another factor, which may magnify or counteract the sensitivities. Further changes in fair value based on a single variation in assumptions generally cannot be extrapolated because the relationship of the change in a single assumption to the change in fair value may not be linear.

**Variable Interest Entities**

FIN 46R requires that an entity shall consolidate a VIE if that enterprise has a variable interest that will absorb a majority of the VIE's expected losses, receive a majority of the VIE's expected residual returns, or both. QSPEs are a type of VIE that holds financial instruments and distributes cash flows to investors based on preset terms. QSPEs are commonly used in mortgage and other securitization transactions. In accordance with SFAS No. 140 and FIN 46R, Merrill Lynch does not consolidate QSPEs. Information regarding QSPEs can be found in the Securitization section of this Note and the Guarantees section in Note 12 to the Condensed Consolidated Financial Statements.

Where an entity is a significant variable interest holder, FIN 46R requires that entity to disclose its maximum exposure to loss as a result of its interest in the VIE. It should be noted that this measure does not reflect Merrill Lynch's estimate of the actual losses that could result from adverse changes because it does not reflect the economic hedges Merrill Lynch enters into to reduce its exposure.

The following tables summarize Merrill Lynch's involvement with certain VIEs as of March 30, 2007 and December 29, 2006, respectively. The table below does not include information on QSPEs or those VIEs where Merrill Lynch is the primary beneficiary, and holds a majority of the voting interests in the entity.

*(dollars in millions)*

| | Primary Beneficiary | | | Significant Variable Interest Holder | | Other Involvement with VIEs | |
|---|---|---|---|---|---|---|---|
| | Total Asset Size[3] | Net Asset Size[4] | Recourse to Merrill Lynch[5] | Total Asset Size[3] | Maximum Exposure | Total Asset Size[3] | Maximum Exposure |
| **March 30, 2007** | | | | | | | |
| Loan and Real Estate VIEs | $4,323 | $3,593 | $ - | $ 282 | $ 196 | $ - | $ - |
| Guaranteed and Other Funds[1] | 2,009 | 1,564 | 445 | 6,425 | 6,425 | - | - |
| Credit Linked Note and Other VIEs[2] | 842 | 840 | 319 | - | - | 16,109 | 1,071 |
| Tax Planning VIEs | 1 | 1 | - | 483 | 15 | - | - |
| **December 29, 2006** | | | | | | | |
| Loan and Real Estate VIEs | 4,265 | 3,787 | - | 278 | 182 | - | - |
| Guaranteed and Other Funds[1] | 2,476 | 1,913 | 564 | 6,156 | 6,142 | - | - |
| Credit Linked Note and Other VIEs[2] | 748 | 743 | 302 | - | - | 13,288 | 927 |
| Tax Planning VIEs | - | - | - | 483 | 15 | - | - |

(1) The maximum exposure for Guaranteed and Other Funds is the fair value of Merrill Lynch's investment, derivatives entered into with the VIEs if they are in an asset position and any recourse beyond the assets of the entity.
(2) The maximum exposure for Credit-Linked Note and Other VIEs is the fair value of the derivatives entered into with the VIEs if they are in an asset position.
(3) This column reflects the total size of the assets held in the VIE.
(4) This column reflects the size of the assets held in the VIE after accounting for intercompany eliminations and any balance sheet netting of assets and liabilities as permitted by FIN 39.
(5) This column reflects the extent, if any, to which investors have recourse to Merrill Lynch beyond the assets held in the VIE.

**REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM**

To the Board of Directors and Stockholders of Merrill Lynch & Co., Inc.:

We have reviewed the accompanying condensed consolidated balance sheet of Merrill Lynch & Co., Inc. and subsidiaries ("Merrill Lynch") as of March 30, 2007, and the related condensed consolidated statement of earnings and cash flows for the three-month periods ended March 30, 2007 and March 31, 2006. These interim financial statements are the responsibility of Merrill Lynch's management.

We conducted our reviews in accordance with the standards of the Public Company Accounting Oversight Board (United States). A review of interim financial information consists principally of applying analytical procedures and making inquiries of persons responsible for financial and accounting matters. It is substantially less in scope than an audit conducted in accordance with the standards of the Public Company Accounting Oversight Board (United States), the objective of which is the expression of an opinion regarding the financial statements taken as a whole. Accordingly, we do not express such an opinion.

Based on our reviews, we are not aware of any material modifications that should be made to such condensed consolidated interim financial statements for them to be in conformity with accounting principles generally accepted in the United States of America.

As discussed in Notes 1, 3 and 14 to the condensed consolidated interim financial statements, effective first quarter 2007, Merrill Lynch adopted Statement of Financial Accounting Standards No. 157, *Fair Value Measurement*" and Statement of Financial Accounting Standards No. 159, "*The Fair Value Option for Financial Assets and Financial Liabilities — Including an amendment of FASB Statement No. 115,*" and FASB Interpretation No. 48, "*Accounting for Uncertainty in Income Taxes, an Interpretation of FASB Statement No. 109.*"

We have previously audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), the consolidated balance sheet of Merrill Lynch as of December 29, 2006, and the related consolidated statements of earnings, changes in stockholders' equity, comprehensive income and cash flows for the year then ended (not presented herein); and our report dated February 26, 2007 expressed an unqualified opinion on those financial statements and included an explanatory paragraph regarding the change in accounting method in 2006 for share-based payments to conform to Statement of Financial Accounting Standards No. 123 (revised 2004), *Share-Based Payment.* In our opinion, the information set forth in the accompanying condensed consolidated balance sheet as of December 29, 2006 is fairly stated, in all material respects, in relation to the consolidated balance sheet from which it has been derived.

/s/   Deloitte & Touche LLP

New York, New York
May 7, 2007