# TAB 5

LEXSEE 2005 U.S. DIST. LEXIS 38454

**SILVIO AZZOLINI, on behalf of himself and all others similarly situated, Plaintiff v. CORTS TRUST II FOR PROVIDENT FINANCIAL TRUST I, et al., Defendants; HARRIET BERNSTEIN, on behalf of herself and all others similarly situated, Plaintiff v. CORTS TRUST FOR PROVIDENT FINANCING TRUST I, et al., Defendants**

Lead Case No. 1:03-CV-1003, CLASS ACTION, MDL Case No. 1:03-MD-1552, Case No. 1:03-CV-1005, CLASS ACTION, MDL Case No. 1:03-MD-1552

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

*2005 U.S. Dist. LEXIS 38454*

**December 14, 2005, Filed**

**SUBSEQUENT HISTORY:** Class certification granted by *In re UnumProvident Corp. Erisa Benefits Denial Actions*, 2007 U.S. Dist. LEXIS 96984 (E.D. Tenn., Sept. 4, 2007)

**PRIOR HISTORY:** *Azzolini v. Corts Trust II*, 2005 U.S. Dist. LEXIS 31853 (E.D. Tenn., Sept. 16, 2005)

**COUNSEL:** [*1] For Silvio Azzolini, individually and on behalf of all others similarly situated, Plaintiff: Gary S Graifman, Kantrowitz, Goldhamer & Graifman, Montvale, NJ; Edward P Dietrich, Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, San Diego, CA; Pamela E Kulsrud, New York, NY

For CorTS Trust II for Provident Financial Trust I, Defendant: T Maxfield Bahner, Chambliss, Bahner & Stophel, PC Two Union Square, Chattanooga, TN; W Jeffrey Hollingsworth, Chambliss, Bahner & Stophel, PC Two Union Square, Chattanooga, TN

For Unumprovident Corp, Defendant: John P Konvalinka, Grant, Konvalinka & Harrison, PC, Chattanooga, TN

For J Harold Chandler, Defendant: William H Horton, Horton, Maddox & Anderson, PLLC, Chattanooga, TN

For Robert C Greving, Defendant: John P Konvalinka, Grant, Konvalinka & Harrison, PC, Chattanooga, TN

For Salomon Smith Barney, Defendant: T Maxfield Bahner, Chambliss, Bahner & Stophel, PC Two Union Square, Chattanooga, TN; W Jeffrey Hollingsworth, Chambliss, Bahner & Stophel, PC Two Union Square, Chattanooga, TN

For Structured Products Corp., Defendant: T Maxfield Bahner, Chambliss, Bahner & Stophel, PC Two Union Square, Chattanooga, TN; W Jeffrey [*2] Hollingsworth, Chambliss, Bahner & Stophel, PC Two Union Square, Chattanooga, TN

For Harriet Bernstein, Plaintiff: Edward P Dietrich, Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, San Diego, CA; Gary S Graifman, Kantrowitz, Goldhamer & Graifman, Montvale, NJ; Pamela E Kulsrud, New York, NY

For CorTS Trust for Provident Financing Trust I, Defendant: T Maxfield Banner, Chambliss, Banner & Stophel, PC Two Union Square, Chattanooga, TN; W Jeffrey Hollingsworth, Chambliss, Banner & Stophel, PC Two Union Square, Chattanooga, TN

For Unumprovident Corp, Defendant: John P Konvalinka, Grant, Konvalinka & Harrison, PC, Chattanooga, TN

For J Harold Chandler, Defendant: William H Horton, Horton, Maddox & Anderson, PLLC, Chattanooga, TN

For Robert C Greving, Defendant: John P Konvalinka, Grant, Konvalinka & Harrison, PC, Chattanooga, TN

For Salomon Smith Barney, Defendant: T Maxfield Bahner, Chambliss, Bahner & Stophel, PC Two Union Square, Chattanooga, TN; W Jeffrey Hollingsworth,

Chambliss, Bahner & Stophel, PC Two Union Square, Chattanooga, TN

For Structured Products Corp., Defendant: T Maxfield Bahner, Chambliss, Bahner & Stophel, PC Two Union Square, [*3] Chattanooga, TN; W Jeffrey Hollingsworth, Chambliss, Bahner & Stophel, PC Two Union Square, Chattanooga, TN

For Salomon Smith Barney Holdings, Inc., Defendant: T Maxfield Bahner, Chambliss, Bahner & Stophel, PC Two Union Square, Chattanooga, TN; W Jeffrey Hollingsworth, Chambliss, Bahner & Stophel, PC Two Union Square, Chattanooga, TN

**JUDGES:** CURTIS L. COLLIER, CHIEF UNITED STATES DISTRICT JUDGE

**OPINION BY:** CURTIS L. COLLIER

**OPINION**

**MEMORANDUM**

Before the Court is a "Motion to Alter or Amend the Court's Order of September 16, 2005 and for Judgment on the Pleadings" (*Azzolini* Court File No. 50; *Bernstein* Court File No. 60) filed by Defendants Salomon Smith Barney, Inc. ("SSB"); Structured Products Corp. ("SPC"); CorTS Trust For Provident Financing Trust I ("CorTS Trust I"); and CorTS Trust II For Provident Financing Trust I ("CorTS Trust II ")(collectively "SSB Defendants") who were involved in the issuing and underwriting of corporate-backed trust securities ("CorTS") through initial public offerings in early 2001. The Court has previously ruled upon motions to dismiss claims asserted by Plaintiffs Silvio Azzolini ("Azzolini") and Harriet Bernstein ("Bernstein")(collectively [*4] "Plaintiffs")(*Azzolini* Court File Nos. 46,47,48,49; *Bernstein* Court File Nos. 56, 57, 58, 59). In ruling on the current motion, the Court has considered the supporting memorandum of law filed by the SSB Defendants (*Azzolini* Court File No. 52; *Bernstein* Court File No. 62)(hereinafter, "SSB Memorandum"), the joint response in opposition filed by Plaintiffs (*Azzolini* Court File No. 59; *Bernstein* Court File No. 69)(hereinafter, "Plaintiffs' Response"), and the reply brief filed by the SSB Defendants (*Azzolini* Court File No. 60; *Bernstein* Court File No. 70)(hereinafter, "SSB Reply").

After considering the arguments of counsel and the applicable law, the Court, for the following reasons, will **GRANT IN PART** and **DENY IN PART** the SSB Defendants' motion to reconsider and for judgment on the pleadings (*Azzolini* Court File No. 50; *Bernstein* Court File No. 60). The Court will **GRANT** the SSB Defendants' motion for judgment on the pleadings but will **DENY** the SSB Defendants' motion to reconsider.

**I. RELEVANT FACTS**

Most of the relevant facts were laid out in detail in the Court's previous Memorandum. (*Azzolini* Court [*5] File No. 48; *Bernstein* Court File No. 58; *see Azzolini v. Corts Trust II,2005 U.S. Dist. LEXIS 31853, 2005 WL 2253971 at *1-3 (E.D. Tenn. Sept. 16, 2005)*). The Court incorporates those facts as previously stated and will not repeat the majority of them here.

Pursuant to initial public offerings on or about February 8, 2001, and on or about March 21, 2001, securities in two distinct trusts, CorTS I and CorTS II, were issued. The assets of each trust consisted entirely of debentures issued by UnumProvident. On May 8, 2003 Azzolini filed a putative securities fraud class action lawsuit of his own and on behalf of purchasers of the CorTS II Certificates (*Azzolini* Court File No. 1). On July 7, 2003 Bernstein filed a similar lawsuit on behalf of purchasers of the CorTS I Certificates (*Bernstein* Court File No. 1). Plaintiffs claim they suffered losses after UnumProvident announced it had $ 93 million in investment losses (*Azzolini* Complaint, PP 8-10, 126; *Bernstein* Complaint at PP 8-10, 131). UnumProvident's announcement took place on February 5, 2003 and shortly thereafter UnumProvident's stock [*6] significantly decreased in value (*Azzolini* at PP 128-29; *Bernstein* at PP 132-36). After the February 5, 2003 announcement, the losses mounted when Standard & Poors put UnumProvident's credit rating on review for possible downgrade and Moody's Investors Service indicated it would likely downgrade the Company's debt rating to "junk" (*Azzolini* at PP 128-29; *Bernstein* at PP 132-33). [1] Plaintiffs now seek to recover these losses from the SSB Defendants in part because the SSB Defendants made false and misleading statements to the public (*Azzolini* at P 231; *Bernstein* at P 189). Specifically, Plaintiffs claim the SSB Defendants falsely represented SSB had not "made any due diligence inquiry" into UnumProvident when in fact SSB had made a due diligence investigation of UnumProvident at about the same time the CorTS I offering was made (*Azzolini* at PP 181-84; *Bernstein* at PP 176-79). These alleged due diligence misstatements and /or omissions were made in February and March 2001 (*Azzolini* at P 3; *Bernstein* at P 3; Plaintiffs' Response at p. 12). SSB's due diligence investigation of UnumProvident was publicly disclosed on March 2, 2001 when the unrelated [*7] UnumProvident debt offering was made (SSB Memorandum at pp. 4, 14; Plaintiffs' Response at p. 7).

   1  On March 11, 2003, "the CorTS price plummeted to an all-time low of approximately $

13.69" (*Azzolini* Complaint, P 133; *Bernstein* Complaint, P 136).

The Azzolini Plaintiffs claim Defendants SSB, SPC, and CorTS Trust II violated *Section 11 of the Securities Act of 1933* ("1933 Act"), *15 U.S.C. 77a-77z* (*Azzolini* Complaint, PP 221-231). Similarly, Bernstein claims Defendants SSB, SSB Holdings, SPC, and CorTS Trust I violated *Section 11 of the 1933 Act* (*Bernstein* Complaint at PP 190-96) and Defendants SSB, SSB Holdings, SPC, and CorTS Trust I violated *Section 12(a)(2) of the 1933 Act* (*Id.* at PP 197-201).

The SSB Defendants filed a motion to dismiss Plaintiffs' 11 and *12(a)(2)* claims arguing in part Plaintiffs' claims were barred by the applicable statute of limitations (*Azzolini* Court File No. 19; *Bernstein* Court File No. 29). On September 16, 2005 the Court rejected [*8] the SSB Defendants statute of limitations argument (*Azzolini* Court File Nos. 48, 49; *Bernstein* Court File Nos. 58, 59). The SSB Defendants now request the Court to reconsider its decision and dismiss Plaintiffs' 11 and *12(a)(2)* claims against the SSB Defendants under the applicable statute of limitations. In addition, the SSB Defendants contend Plaintiffs' 11 and *12(a)(2)* claims must be dismissed because the alleged due diligence misrepresentations did not cause any loss allegedly suffered by Plaintiffs (SSB Memorandum at p. 2). The Court will address each of these arguments in turn.

## II. STANDARD OF REVIEW

The SSB Defendants' motion to reconsider the Court's previous denial of the SSB Defendants' motion to dismiss is a motion to alter or amend judgment under *Federal Rule of Civil Procedure 59(e)*. Rule 59(e) motions "shall be filed no later than 10 days after entry of the judgment." *Fed. R. Civ. P. 59(e)*. A Rule 59(e) motion can be granted for three reasons:

> (1) To correct a clear error of law;
>
> (2) To account for newly discovered evidence or an intervening change [*9] in the controlling law; or
>
> (3) To otherwise prevent manifest injustice.

*Gen Corp., Inc. v. Amer. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999)*.

The SSB Defendants' motion for judgment on the pleadings in governed by *Rule 12(c)* which states "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." *Fed. R. Civ. P. 12(c)*. A motion for judgment on the pleadings is determined under the same standard of review as a motion to dismiss under *Rule 12(b)(6)*. *Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998)*; *Morgan v. Church's Fried Chicken, 829 F.2d 10, 11 (6th Cir. 1987)*. "The only difference between *Rule 12(c)* and *Rule 12(b)(6)* is the timing of the motion to dismiss." *Hunter v. Ohio Veterans Home, 272 F.Supp. 2d 692, 694 (N.D. Ohio 2003)*. A Rule 12(b)(6) motion is made in a pre-answer motion or in an answer but a *Rule 12(c)* motion is submitted after the defendant has filed an answer. *Id.; Fed. R. Civ. P. 12(b) & 12(c)* [*10] .

A motion to dismiss pursuant to *Rule 12(b)(6)* requires the Court to construe the complaint in the light most favorable to the plaintiff, *Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998)*; *State of Ohio ex rel. Fisher v. Louis Trauth Dairy, Inc., 856 F. Supp. 1229, 1232 (S.D. Ohio 1994)*, accept all the complaint's factual allegations as true, *Bloch, 156 F.3d at 677*; *Broyde v. Gotham Tower, Inc., 13 F.3d 994, 996 (6th Cir. 1994)*, and determine whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957)*; *see also Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 511-12 (6th Cir. 2001)*; *Coffey v. Chattanooga-Hamilton County Hosp. Auth., 932 F. Supp. 1023, 1024 (E.D. Tenn. 1996)*. The Court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995)*(noting that courts should neither weigh evidence nor evaluate [*11] the credibility of witnesses); *Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir. 1990)*. Rather, the Court must liberally construe the complaint in favor of the party opposing the motion and may dismiss the case only where no set of facts could be proved consistent with the allegations which would entitle the plaintiff to a recovery. *Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984)*; *Miller, 50 F.3d at 377*.

In deciding a motion to dismiss, the question is "not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974)*; *see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002)*. However, bare assertions of legal conclusions are insufficient. *Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)*. The "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable [*12] legal theory." *Id.* (emphasis in original).

The Court must ordinarily look to the four corners of the complaint. However, if documents are attached to,

incorporated by, or specifically referred to in the complaint, they are considered part of the complaint and the Court may consider them. *See Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997)*; *Venture Assoc. Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993)*. In addition, the Court may also consider matters outside the complaint of which it would be proper to take judicial notice. *New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003)*; *Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999)*.

### III. DISCUSSION

#### A. Statute of Limitations

The SSB Defendants ask the Court to reconsider its previous decision not to dismiss Plaintiffs' 11 and 12(a)(2) claims under the applicable statute of limitations. For the following reasons the Court will **DENY** the SSB Defendants' motion to reconsider.

As stated above, a motion to reconsider is governed by *Rule 59(e)*. However, [*13] the SSB Defendants do not argue the Court made a manifest error of law, the law has changed, new evidence has been discovered, or the previous denial of the SSB Defendants' motion to dismiss results in manifest injustice. Instead, the SSB Defendants present a new statute of limitations argument. In their original motion to dismiss, the SSB Defendants argued the clock started to run on February 5, 2003 because on that date UnumProvident announced heavy investment losses in response to SEC requests for information (*Azzolini* Court File No. 20, pp. 24-25, *Bernstein* Court File No. 30, pp. 24-25). Now, changing their argument, the SSB Defendants argue the statute of limitations began to run on March 2, 2001. Several courts have rejected similar uses of *Rule 59(e)*. *See, e.g., Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996)*(explaining Rule 59(e) motions do not give a party the opportunity to present new arguments "that could and should have been presented to the district court prior to the judgment"); *National Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 123 (1st Cir. 1990)*(stating "*Rule 59(e)* does not allow the losing [*14] party . . . to raise new legal theories that should have been raised earlier"). The facts and legal issues raised by the SSB Defendants in the current motion to reconsider were available to the SSB Defendants when they filed their motion to dismiss and could have already been presented to the Court. Consequently, the SSB Defendants use of *Rule 59(e)* is improper. With this said, however, the Court will go ahead and address the SSB Defendants' new statute of limitations argument because the SSB Defendants could easily have raised the same argument as part of their motion for judgment on the pleadings pursuant to *Rule 12(c)*. [2]

[2] Foreseeing the possibility that the Court would conclude the SSB Defendants' use of *Rule 59(e)* was improper, the SSB Defendants request in their reply brief that the Court address the new statute of limitations argument "as part of the motion for judgment on the pleadings" (SSB Reply, p. 4, n. 2). This request is well taken because the statute of limitations argument would have properly been raised under *Rule 12(c)* and both sides have fully briefed the issue.

[*15] The SSB Defendants argue SSB's role in the underwriting of an unrelated UnumProvident debt offering was publicly disclosed on March 2, 2001, therefore, any 11 and/or 12(a)(2) claims brought by Plaintiffs based on the alleged due diligence misrepresentations and/or omissions are time barred because Plaintiffs did not file suit until 2003. In response, Plaintiffs contend the fact that SSB was an underwriter in the unrelated UnumProvident debt offering did not put them on inquiry notice and therefore the statute of limitations clock did not start to run on March 2, 2001. Rather, Plaintiffs state the clock started to run in early 2003 when UnumProvident disclosed their losses to the public (Plaintiffs' Response, pp. 7-8).

The statute of limitations for claims under 11 and 12(a)(2) is one year after discovery of the untrue statement or omission is made or one year after discovery should have been made. *See 15 U.S.C. 77m*. At issue here is whether the alleged due diligence misstatements and/or omissions should have been discovered more than one year before Plaintiffs filed suit. The initial Azzolini complaint was filed on May 8, 2003 and the initial Bernstein [*16] complaint was filed on July 7, 2003 (*Azzolini* Court File No. 1; *Bernstein* Court File No. 1). Thus, if Plaintiffs should have discovered the due diligence misstatements and/or omissions before May 8, 2002, their 11 and 12(a)(2) claims are time barred.

In the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") the applicable one year statute of limitations is triggered when the plaintiff has actual or inquiry notice. *New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 500-01 (6th Cir. 2003)*; *Wuliger v. Owens, 365 F. Supp. 2d 838, 844 (N.D. Ohio 2005)*; *see also 15 U.S.C. 77m*. With respect to inquiry notice, the Sixth Circuit explained:

> Knowledge of suspicious facts -- "storm warnings," they are frequently called -- merely triggers a duty to investigate, and [] the limitation period begins to run only when a reasonably diligent investigation

would have discovered the fraud. This view, we believe, reflects an appropriate balance between the staunch federal interest in requiring plaintiffs to bring suit promptly and the equally strong interest in not driving [*17] plaintiffs to bring suit before they are able, in the exercise of reasonable diligence, to discover the facts necessary to support their claims.

*Id. at 501* (internal citations and quotations omitted). Here, the SSB Defendants point to the public disclosure of SSB's involvement with the unrelated UnumProvident debt offering in March 2001 as the point in time when the statute of limitations began to run. In contrast, Plaintiffs argue the first storm warning was UnumProvident's public disclosures in early 2003 therefore the statute of limitations could not have started to run until early 2003. Whether the Plaintiffs in this case were placed on inquiry notice in March 2001 is too much of a factual determination for the Court to make a conclusive decision at this stage of the litigation. *See Azzolini v. Corts Trust II for Provident Fin. Trust I (In re UNUMProvident Corp. Sec. Litig.), 396 F. Supp. 2d 858, 2005 WL 2206727 at *14 (E.D. Tenn. 2005)*. Stated another way, at this point in the litigation the Court cannot definitively say the March 2001 disclosure was a storm warning. Further, even assuming the March 2001 disclosure was a storm warning, the Court similarly cannot make a final determination, at least at this point, [*18] that a reasonably diligent investigation would have started the clock before May 8, 2002. Accordingly, the Court will **DENY** the SSB Defendants' motion to reconsider.

**B. Loss Causation**

The SSB Defendants next ask the Court for a judgment on the pleadings with respect to Plaintiffs' *11* and *12(a)(2)* claims because Plaintiffs "have not and cannot allege that the revelation of the alleged false and misleading statements regarding due diligence was the cause of their purported losses" (SSB Memorandum p. 2). For the reasons discussed below, the Court will **GRANT** the SSB Defendants' motion for judgment on the pleadings.

"To state a claim under *Section 11*, [a plaintiff] must show that [he] purchased securities pursuant to a materially false or misleading registration statement." *In re Adams Golf, Inc. Secs. Litig., 381 F.3d 267, 273 (3d Cir. 2004)*. "To state a claim under *Section 12(a)(2)*, [a plaintiff] must allege that [he] purchased securities pursuant to a materially false or misleading prospectus or oral communication." *Id.* (citation omitted). Unlike *Rule 10b-5* cases brought under the Securities Exchange Act of 1934, *15 U.S.C. 78a -78mm*, [*19] loss causation is not a necessary element of a plaintiff's *11* or *12(a)(2)* claim. *See In re Adams Golf, 381 F.3d at 276*; *15 U.S.C. 77k(a),(e) & 77l*. Instead, a *11* or *12(a)(2)* defendant may assert an affirmative defense of loss causation. *See 15 U.S.C. 77k(e), 77l(b).* [3] This loss causation affirmative defense allows a defendant to avoid liability if the depreciation in the value of the security did not result from any nondisclosure or false statement made in the prospectus or registration statement. *Id.; See, e.g., McMahan & Co. v. Wherehouse Entm't, Inc., 65 F.3d 1044, 1047-48 (2d Cir. 1995)*(stating "where a defendant proves that the decline in the value of the security in question was not caused by the material omissions or misstatements in the registration statement, plaintiff is not entitled to recover any damages").

> 3   The Section 11 affirmative defense reads as follows:
>
>> If the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable.
>
> *15 U.S.C. 77k(e)*. The *Section 12(a)(2)* affirmative defense reads as follows:
>
>> If the person who offered or sold such security proves that any portion or all of the amount recoverable . . . represents other than the depreciation in value of the subject security resulting from such part of the prospectus or oral communication, with respect to which liability of that person is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statement not misleading, then such portion or amount, as the case may be, shall not be recoverable.

Case 1:07-cv-09633-LBS-DFE    Document 57-6    Filed 07/21/2008    Page 7 of 8

Page 6
2005 U.S. Dist. LEXIS 38454, *

*15 U.S.C. 77l(b).*

[*20] In this case both parties agree the SSB Defendants may assert a loss causation affirmative defense (SSB Memorandum, pp. 8-9; Plaintiffs' Response, p. 10). Further, both parries agree the absence of loss causation can be grounds for dismissal under *Rule 12(c)* (*See* SSB Memorandum, pp. 11-13; Plaintiffs' Response, p. 11). If it is apparent on the face of the complaint the decline in share value is not related to any material misstatement and/or omission, dismissal is appropriate. *See Hoover v. Langston Equipment Assoc, Inc., 958 F.2d 742, 744 (6th Cir. 1992); Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74-75 (2d Cir. 1998); In re Merrill Lynch & Co. Research Reports Sec. Litig., 272 F. Supp. 2d 243, (S.D.N.Y. 2003)*; 5 Wright & Miller, Federal Practice and Procedure 1277, 1357 (4th ed. 2004); *see also Stafford v. Bakke,* 2005 WL 1656855 at *5 (S.D. Ind. July 7, 2005)(dismissing plaintiffs' 11 and *12(a)(2)* claims on a *Rule 12(c)* motion because the absence of loss causation was apparent on the face of the complaint); *In re WRT Energy Sec. Litig., 2005 U.S. Dist. LEXIS 1894, 2005 WL 323729 at *12 (S.D.N.Y. Feb. 9, 2005)*(allowing a [*21] defendant to raise the loss causation affirmative defense in a Rule 12(b)(6) motion).

In this case, it appears on the face of the complaint there is no relation between the due diligence misstatements and/or omissions and Plaintiffs' alleged losses. Plaintiffs make clear in their complaints the decline in UnumProvident's [4] stock value started when UnumProvident announced in February 2003 it had $ 93 million in investment losses. Such a decline is logically related to the announcement and the events following the announcement. However, there does not seem to be any relation between the due diligence misstatements and/or omissions and the decline in the CorTS Certificate value. SSB's due diligence investigation of UnumProvident in the unrelated debt offering was made public on March 2, 2001 after the CorTS I offering and before the CorTS II offering. Thus, any due diligence misstatement and/or omission in the CorTS prospectuses or registration statements were revealed two years before Plaintiffs claim they suffered any losses. This gap in time suggests there was no relation between the due diligence misstatements and/or omissions and the losses suffered by Plaintiffs. *See Castellano v. Young & Rubicam, Inc., 257 F.3d 171, 186 (2d Cir. 2001)* [*22] (explaining the lapse of time between the behavior complained of and the loss is a factor to consider in determining whether the loss causation requirement has been met); *see also Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 1632, 161 L. Ed. 2d 577 (2005)*(explaining if a purchaser sells after the truth makes its way into the market there *might* be a related loss but "other things being equal, the longer the time between purchase and sale, the more likely that . . . other factors caused the loss."). In addition, and more importantly, the value of the CorTS securities remained steady over one year *after* SSB's involvement in the unrelated UnumProvident offering was made public (*Azzolini* Court File No. 51, Exh. A; *Bernstein* Court File No. 61, Exh. A; *see also* http://finance.yahoo.com for historical prices). [5] If the due diligence misstatements and/or omissions caused any loss to Plaintiffs the CorTS I Certificates would have declined in value shortly after March 2, 2001 when the investing public learned the true facts (i.e. SSB had conducted due diligence on UnumProvident in an unrelated UnumProvident debt offering near the same time the CorTS offerings were made). [*23] *Cf. D.E. & J L.P. v. Conaway 284 F. Supp. 2d 719, 748-49 (E.D. Mich. 2003), aff'd, 133 Fed. Appx. 994 (6th Cir. 2005)*(explaining where a significant stock price decline immediately follows an announcement revealing prior misinformation to the public, it can reasonably be inferred that decline is fairly attributable to the information disclosed). In short, although Plaintiffs are not required to plead loss causation, the Court concludes there was no connection between the alleged due diligence misstatements and/or omissions and the decline in value of the CorTS Certificates. Accordingly, the Court will **DISMISS** Plaintiffs' 11 and *12(a)(2)* claims.

4   The CorTS Certificates are backed by UnumProvident securities. Thus, when UnumProvident's securities decline in value, the CorTS Certificates decline in value (*Azzolini* Complaint at U 3; *Bernstein* Complaint at K 3).

5   The Court may take judicial notice of well-publicized stock prices and market trends without converting a motion to dismiss into a motion for summary judgment. *D.E.& J Ltd. P'ship v. Conaway, 284 F. Supp. 2d 719, 749, n.26 (E.D. Mich. 2003), aff'd, 133 Fed. Appx. 994 (6th Cir. 2005); Ganino v. Citizens Utils. Co., 228 F.3d 154, 166, n.8 (2d Cir. 2000)*. The CorTS I Certificates trade on the New York Stock Exchange under the symbol "KSA." The CorTS I Certificates were valued at $ 25.14 on February 23, 2001 before the public was made aware of SSB's involvement in the unrelated UnumProvident debt offering. On March 2, 2001, the date the public was made aware of SSB's involvement in the unrelated UnumProvident debt offering, the CorTS I Certificates were valued at $ 25.15. Further, in March 2001 the Certificates were never valued below $ 25.07 and at times were priced higher than $ 25.15. In addition, until October 2002 the CorTS I Certificates were valued at or very near $ 25.00. (*Azzolini* Court File No. 51, Exh. A; *Bernstein* Court File No. 61, Exh. A; http://finance.yahoo.com).

[*24] **IV. CONCLUSION**

For the reasons stated herein, the Court will **GRANT IN PART** and **DENY IN PART** the SSB Defendants' "Motion to Alter or Amend the Court's Order of September 16, 2005 and for Judgment on the Pleadings" (*Azzolini* Court File No. 50; *Bernstein* Court File No. 60). The Court will **GRANT** the SSB Defendants' motion for judgment on the pleadings and **DENY** the SSB Defendants' motion to reconsider.

An Order shall enter.

**CURTIS L. COLLIER**

**CHIEF UNITED STATES DISTRICT JUDGE**

**ORDER**

In accordance with the accompanying Memorandum, the Court hereby orders as follows:

1. In the case of *Azzolini v. CorTS Trust II for Provident Financial Trust I, etal.,* No. 1:03-CV-1003, the Court hereby:

   A. **GRANTS IN PART** the "SSB Defendants' Motion to Alter or Amend the Court's Order of September 16, 2005 and for Judgment on the Pleadings" (Court File No.50); and **DISMISSES** the Third Claim for Relief of the amended consolidated Azzolini class action complaint; and

   B. **DENIES IN PART** the "SSB Defendants' Motion to Alter or Amend the Court's Order of September 16,2005 and for Judgment on the Pleadings" [*25] (Court File No. 50) with respect to the applicable statute of limitations;

2. In the case of *Bernstein v. CorTS Trust for Provident Financing Trust I, et al.,* No. 1:03-CV-1005, the Court hereby:

   A. **GRANTS IN PART** the "SSB Defendants' Motion to Alter or Amend the Court's Order of September 16, 2005 and for Judgment on the Pleadings" (Court File No. 60); and **DISMISSES** Counts I and II of the amended Bernstein class action complaint; and

   B. **DENIES IN PART** the "SSB Defendants' Motion to Alter or Amend the Court's Order of September 16, 2005 and for Judgment on the Pleadings" (Court File No. 60) with respect to the applicable statute of limitations.

**SO ORDERED.**

**ENTER:**

**CURTIS L. COLLIER**

   **CHIEF UNITED STATES DISTRICT JUDGE**