# TAB 12

Case 1:07-cv-09633-LBS-DFE    Document 57-13    Filed 07/21/2008    Page 1 of 6

LEXSEE 2005 U.S. DIST. LEXIS 4743

IN RE FEDERATED DEPARTMENT STORES, INC. SECURITIES LITIGATION

00 CV 6362 (RCC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2005 U.S. Dist. LEXIS 4743; Fed. Sec. L. Rep. (CCH) P93,221

March 23, 2005, Decided
March 25, 2005, Filed

**PRIOR HISTORY:** *In re Federated Dep't Stores, Inc., 2004 U.S. Dist. LEXIS 3769 (S.D.N.Y., Mar. 9, 2004)*

**DISPOSITION:** [*1] Defendants' motion to dismiss granted.

**COUNSEL:** For Samuel Muller, Individually and On Behalf Of All Others Similarly Situated, Plaintiff: Brad Nelson Friedman, Steven G. Schulman, Milberg Weiss Bershad & Schulman LLP, New York, NY; Samuel Howard Rudman, Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP, Melville, NY; Sandy A Liebhard, Bernstein Liebhard & Lifshitz, LLP, New York, NY.

For Federated Department Stores Inc., James M. Zimmerman, Ronald W. Tysoe, Karen M. Hoguet, Defendants: Barbra Spalten Levy, McCarter and English, Newark, NJ; Bonnie L. Hemenway, Jones Day, New York, NY; Gregory J. Ritts, Nixon, Hargrave et al., Rochester, NY; John M. Newman, Jr., JONES, DAY, REAVIS & POGUE, New York, NY.

For Sekuk Global Enterprises, Killian Asset Management Corporation, Linda Lee Alter, Consol Plaintiffs: Brad Nelson Friedman, Steven G. Schulman, Milberg Weiss Bershad & Schulman LLP, New York, NY; Samuel Howard Rudman, Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP, Melville, NY.

For Kendall Trust through Trustee Kenneth Slater, Richard G. Baum, Jeanette Baum, Consol Plaintiffs: Brad Nelson Friedman, Milberg Weiss Bershad & Schulman LLP, New York, NY; Frederick Taylor Isquith, [*2] Sr., Wolf, Haldenstein, Adler, Freeman & Herz, L.L.P., New York, NY.

For Howard Gunty Profit, Michael Caesar, Consol Plaintiffs: Brad Nelson Friedman, Milberg Weiss Bershad & Schulman LLP, New York, NY; Joseph H. Weiss, Weiss & Yourman, New York, NY.

**JUDGES:** Richard Conway Casey, U.S.D.J.

**OPINION BY:** Richard Conway Casey

**OPINION**

**MEMORANDUM & ORDER**

**Richard Conway Casey, U.S.D.J.:**

On March 11, 2004, the Court dismissed without prejudice this putative securities-fraud class action for failure to adequately plead scienter as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *15 U.S.C. § 78u-4(b)(2)*. Plaintiffs, a putative class of investors, then filed a Second Consolidated Class Action Complaint ("SAC") with additional allegations of scienter. Defendants--Federated Department Stores, Inc. ("Federated"), and three Federated directors and officers--filed a motion to dismiss the SAC. For the reasons that follow, the motion is **GRANTED.**

**I. BACKGROUND**

As the Court has already set out the facts in detail, *see In re Federated Department Stores, Inc. Secs. Litig.,*

Case 1:07-cv-09633-LBS-DFE   Document 57-13   Filed 07/21/2008   Page 3 of 6

Page 2
2005 U.S. Dist. LEXIS 4743, *2; Fed. Sec. L. Rep. (CCH) P93,221

*2004 U.S. Dist. LEXIS 3769, No. 00 CV 6362 (RCC), 2004 WL 444559,* [*3] *at *1-*2 (S.D.N.Y. Mar. 11, 2004) ("Federated I"),* it will only recount those facts necessary to resolution of this motion. Facts in the complaint are assumed to be true. *See DeMuria v. Hawkes, 328 F.3d 704, 706 (2d Cir. 2003).*

Plaintiffs are a putative class of investors who purchased common stock in Federated, a corporation that owns over 400 department stores, from February 23, 2000 through July 20, 2000 ("the Class Period"). At the end of fiscal year 2000, Federated had assets of over $ 17 billion and sales of $ 18.4 billion. Defendant James M. Zimmerman was Federated's Chief Executive Officer, Chairman, and a director; Defendants Ronald W. Tysoe and Karen M. Hoguet were Federated Vice Chairmen and directors (together with Federated, "Defendants").

In March 1999, Federated purchased Fingerhut Companies, Inc. ("Fingerhut"), a catalog and Internet retailer, for $ 1.5 billion and $ 200 million of assumed debt with the intent of developing an Internet retail business. Prior to Federated's acquisition, Fingerhut adopted a revolving credit model, which means that customers were given a line of credit without regard to an assessment of their ability to repay. In [*4] addition, Fingerhut erased a database containing the addresses of customers who had previously defaulted on loans. This reduced Fingerhut's ability to perform fraud screening of its customers. Consequentially, Fingerhut had substantial delinquencies in repayment, and had to write-off uncollectible receivables. In 2001, Federated expensed $ 746 million of Fingerhut receivables as uncollectible, which amounted to 34% of Fingerhut's gross receivable balance.

Plaintiffs allege that Defendants caused Fingerhut to reduce its reserves for uncollectible receivables, without disclosing the reduction to investors during the Class Period. The reserve reductions caused Federated to materially overstate its financial success during the Class Period, allegedly in violation of Generally Accepted Accounting Principles ("GAAP"). Defendants also encouraged Fingerhut to loosen its credit-lending policies, by, among other things, offering creditcard customers the opportunity to purchase merchandise without making any payments for six months.

The SAC alleges that Defendants knew of or recklessly ignored Fingerhut's problems. In or about March 1999, prior to Federated's acquisition of Fingerhut, representatives [*5] from Federated performed due diligence of Fingerhut's finances, including its lending practices. During this investigation, the representatives met with Fingerhut's finance department, the department responsible for customer receivables. In August or September 1999, Fingerhut and Federated conducted a joint audit of Fingerhut's finances, including its accounting policies.

Zimmerman, Tysoe, and Hoguet attended quarterly meetings during the Class Period at Fingerhut's headquarters, at which they discussed Fingerhut's receivables, both companies' reserve policies, and Fingerhut's credit strategies. Defendants also received *Flash Reports* and *Weekly Revolving Charge Monitor Reports,* which set out Fingerhut's bad debts and accounts receivables as well as analyzed the receivables' age, size, and delinquency. In particular, the November 24, 1999 *Weekly Revolving Charge Monitor* reported that 27.2% of Fingerhut's receivables were delinquent or at risk. Defendants Tysoe and Hoguet received either summaries of these reports or the reports themselves.

Prior to and during the Class Period, KPMG LLP conducted audits of Fingerhut. After Federated acquired Fingerhut, KPMG conducted quarterly [*6] audits of Fingerhut and held quarterly review meetings at which were discussed Fingerhut's credit policies. Federated's controller, who reported to Defendant Hoguet, attended the meetings. Finally, in April 2000, Figherhut's President of Business told a former Fingerhut employee that he had told Hoguet and Tysoe about Fingerhut's failure to receive payments from many customers. Thereafter, Federated sent KPMG, members of its Internal Audit Department, and what the SAC describes as a "SWAT team" from Fingerhut, to examine the receivables problem.

Despite this alleged knowledge, Defendants made a series of positive statements about Federated's financial performance during the Class Period that allegedly violated Section 10(b) of the Securities Exchange Act of 1934, *15 U.S.C. § 78j(b),* and Rule 10b-5, *17 C.F.R. § 240.10b-5.*

## II. DISCUSSION

### A. Pleading Standard

A complaint alleging securities fraud must state the circumstances of the fraud with particularity. *Ganino v.*

2005 U.S. Dist. LEXIS 4743, *6; Fed. Sec. L. Rep. (CCH) P93,221

*Citizens Utils. Co., 228 F.3d 154, 168 (2d Cir. 2000)*. "To state a cause of action under *section 10(b)* and *Rule 10b-5*, a plaintiff must plead that the defendant [*7] made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury." *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 808 (2d Cir. 1996)*. Scienter, the requisite state of mind under *section 10(b)* and *Rule 10b-5*, is defined as "an intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12, 47 L. Ed. 2d 668, 96 S. Ct. 1375 (1976)*. The Private Securities Litigation Reform Act ("PSLRA") states:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

*15 U.S.C. § 78u-4(b)(2)*. To adequately plead scienter under the PSLRA, Plaintiffs must either allege facts demonstrating a motive and opportunity to commit fraud, or facts constituting strong circumstantial evidence of conscious misbehavior [*8] or recklessness. *Ganino, 228 F.3d at 168-69*. Here, Plaintiffs have done neither.

**B. The SAC Fails to Allege Scienter**

**1. Motive and Opportunity**

Although Plaintiffs contend that they have sufficiently pled motive and opportunity to commit fraud, their arguments are the same ones that the Court rejected on the first motion to dismiss, and are based on the same allegations. Plaintiffs argue that Defendants were motivated to protect and enhance their positions in Federated and to enhance the value of their substantial personal holdings. (SAC P116.) "The motive to maintain the appearance of corporate profitability, or the success of an investment, will naturally involve benefit to a corporation, but does not 'entail concrete benefits.'" *Chill v. GE., 101 F.3d 263, 268 (2d Cir. 1996)*; *see also Acito v. IMCERA Group, 47 F.3d 47, 54 (2d Cir. 1995)* ("Plaintiffs' allegation that defendants were motivated to defraud the public because an inflated stock price would increase their compensation is without merit. If scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn [*9] in stock price could be forced to defend securities fraud actions."). The SAC does not sufficiently plead scienter by motive and opportunity to commit fraud because the allegations would apply to any corporate defendant.

**2. Conscious Misbehavior or Recklessness**

Plaintiffs also fail to allege sufficiently that Defendants knew or should have known about Fingerhut's customer receivables problem. The SAC attempts to correct the previous complaint's deficiency by alleging: (1) Defendants Zimmerman, Tysoe, and Hoguet received the *Flash Reports* and *Weekly Revolving Charge Monitor* (or summaries of them) and attended quarterly meetings at which the receivables issue was discussed; (2) KPMG performed audits of Fingerhut; and (3) the violations of GAAP, the write-off, the importance of the Fingerhut acquisition to Federated, and due diligence and joint audit investigations (all repeated from the previous complaint). These allegations are again insufficiently particular to establish scienter.

The Second Circuit has explained that "securities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of [*10] facts or access to information contradicting their public statements." *Novak v. Kasaks, 216 F.3d 300, 308 (2d Cir. 2000)*. The allegations in the SAC fail to satisfy this standard because they do not state the specific facts to which Defendants had access that contradicted their public statements. Instead, the SAC is replete with conclusory and vague allegations that do not satisfy the PSLRA.

First, the SAC alleges that the *Flash Reports* and *Weekly Revolving Charge Monitor* notified Defendants of Fingerhut's customer receivables problem. The SAC generally states that the *Flash Reports* "displayed growth of active dormant Fingerhut accounts and their portfolio balance for the preceding year, . . . . served as aging reports of Fingerhut's accounts receivable, and showed the sum of the write offs against the sum of collections that had been written off." (SAC P58 (internal quotation marks and alteration omitted).) Similarly, the *Weekly Revolving Charge Monitor* "also contained statistical and financial information regarding receivables." (*Id.*) These

Case 1:07-cv-09633-LBS-DFE   Document 57-13   Filed 07/21/2008   Page 5 of 6

Page 4

2005 U.S. Dist. LEXIS 4743, *10; Fed. Sec. L. Rep. (CCH) P93,221

reports or summaries of them were allegedly provided to Tysoe and Hoguet. Plaintiffs contend these barren [*11] allegations are probative of conscious misbehavior or recklessness. The Court disagrees.

Plaintiffs compare the SAC's allegations about the reports to those that the Second Circuit found sufficient in *In re Scholastic Corp. Securities Litigation, 252 F.3d 63 (2d Cir. 2001)*. Plaintiffs argue that in that case, as in this one, the information available to the defendants was raw data and not specific warnings. But the pleading in *Scholastic Corp.* was much more specific. The defendant corporation, a publishing company, was experiencing a decline in book sales and an increase in returns. *See id. at 70-72*. The scienter allegations in part relied on internal company reports compiled in a "Director's Book," sent each month to members of the board of directors. *Id. at 71*. One of the defendants actually compiled the "Director's Book." *Id.* The reports analyzed sales data and provided commentary on sales figures. *Id.* In addition, the company's sales department received book sales reports on a weekly basis that showed sales title by title. *Id.* The company's warehouse computer system also recorded the number of books returned each [*12] day; this information was then sent to the company's corporate offices each night. *Id.*

The key difference between *Scholastic Corp.* and this case is that the complaint there specifically alleged that the internal company reports showed obvious trends of decreasing sales and increasing returns. Here, the SAC only states that the *Flash Reports* and *Weekly Revolving Charge Monitor* contained unspecified information about Fingerhut's customer receivables, that may or may not have alerted Defendants to the problem. Such vague allegations do not contribute to strong circumstantial evidence of conscious misbehavior or recklessness.

The SAC approaches more specificity with regard to the November 24, 1999 edition of the *Weekly Revolving Charge Monitor,* which showed 27.2% of Fingerhut's customer receivables were delinquent or at risk. (SAC P58.) The SAC also alleges that this edition of the monitor demonstrated a rise in delinquencies. (*Id.* P100.) What the complaint does not allege, however, is that the *Weekly Revolving Charge Monitor* provided any information that Fingerhut's bad-debt reserve was too low to account for the delinquencies. The allegations [*13] concerning the November 24, 1999 report are not enough, by themselves, to create a strong inference of fraudulent intent especially when Plaintiffs have failed to show motive to commit fraud. *See Kalnit v. Eichler, 264 F.3d 131, 143 (2d Cir. 2001)* (holding that where "plaintiff . . . failed to demonstrate that defendants had a motive to defraud . . ., he must produce a stronger inference of recklessness."). Even drawing all reasonable inferences from the information allegedly contained in the November 24, 1999 report, it cannot by itself produce the requisite strong inference of recklessness.

Second, the allegations about quarterly meetings at which Fingerhut's bad debt was discussed are also insufficient. The SAC cites a former Fingerhut Vice-President as the source of allegations that Zimmerman, Tysoe, and Hoguet attended quarterly meetings at which occurred "(a) discussions concerning Fingerhut's receivables; (b) discussions concerning Federated's and Fingerhut's reserve policies, as well as Fingerut's credit strategies; and (c) presentations to Federated's senior management by heads of Fingerhut's Business Units and Divisions." (SAC P56.) That receivables and reserve policies were discussed [*14] in some unspecified manner is not a fact constituting strong circumstantial evidence that Defendants acted recklessly regarding the receivables problem at Fingerhut. These vague allegations of "discussions" do not support an inference that Defendants had access to specific information contradicting their public statements.

Third, the SAC states that Federated had KPMG conduct audits of Fingerhut prior to and after the acquisition, and that Federated formed a "SWAT" team to investigate the receivables problem at Fingerhut. Defendants argue that these allegations rebut an inference of scienter because they demonstrate an attempt to analyze the problem at Fingerhut, rather than to cover it up. In support of their argument, Defendants cite *PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 91 Fed. Appx. 418 (6th Cir. 2004)*. The Sixth Circuit in *Chandler* held that the hiring of an outside consultant to investigate accounting problems did not bolster scienter allegations under the PSLRA. *See id. at 691*. The court first noted that the defendants' hiring of an outside consultant countered the claim that the defendants were trying to keep the problem hidden. *Id. at 692*. [*15] The court then rejected the allegations because they were conclusory, did not specify what the consultant learned or how it was learned, and provided no basis from which to infer that the defendants knew about the accounting problems prior to the time that the problems were made

Case 1:07-cv-09633-LBS-DFE   Document 57-13   Filed 07/21/2008   Page 6 of 6

Page 5

2005 U.S. Dist. LEXIS 4743, *15; Fed. Sec. L. Rep. (CCH) P93,221

public. *Id.*

The Court agrees that the SAC's allegations about the KPMG audits suffer from similar defects. The SAC does not state that KPMG uncovered a problem with the bad-debt reserve or customer receivables, much less that the results of its investigation were made available to Zimmerman, Hoguet, and Tysoe. Accordingly, the "SWAT team" allegations are of no aid to Plaintiffs.

Finally, the allegations that are recycled--the alleged violations of GAAP, the size of the write-off, the importance of the Fingerhut acquisition to Federated, and the due diligence and joint audit investigations--remain insufficient to plead scienter for the same reasons explained in *Federated I. See Federated I, 2004 U.S. Dist. LEXIS 3769, 2004 WL 444559, at *5-*8*. Plaintiffs make the same arguments that the Court rejected in its previous decision. It suffices to state here that GAAP violations without corresponding fraudulent intent [*16] cannot establish scienter. *2004 U.S. Dist. LEXIS 3769, [WL] at *8* (citing *Novak, 216 F.3d at 309*; *Stevelman v. Alias Research Inc., 174 F.3d 79, 84 (2d Cir. 1999)*; and *Chill, 101 F.3d at 270*). Additionally, the size of the write-off and importance of Federated's investment in Fingerhut do not establish that Defendants knew or should have known about Fingerhut's customer receivables problem. *See Federated I 2004 U.S. Dist. LEXIS 3769, [WL] at *5-*6*. The allegations that due diligence and an audit were conducted prior to Federated's acquisition of Fingerhut does not establish that anything negative was actually discovered such that would alert Defendants here to the customer receivables problem. *See 2004 U.S. Dist. LEXIS 3769, [WL] at *6*.

Considering the totality of its allegations, the SAC does not adequately plead scienter by alleging facts constituting strong circumstantial evidence that Defendants knew of, or were reckless toward, Fingerhut's customer receivables problems. Indeed, the SAC contains few new facts not pled in the previous complaint. Defendants' motion to dismiss for failure to sufficiently plead scienter is therefore granted.

**C. Leave to Amend the Complaint Is Denied**

Plaintiffs will not [*17] be permitted to file a third amended complaint. Leave to replead shall be freely granted under *Federal Rule of Civil Procedure 15(a)* unless, among other reasons, the plaintiff has repeatedly failed to cure deficiencies through amendments previously allowed. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)*. The Court will not permit a third bite at the apple. *See, e.g., In re Merrill Lynch & Co. Research Reports Sec. Litig., 289 F. Supp. 2d 416, 429 (S.D.N.Y. 2003)*. Instead, the complaint shall be dismissed with prejudice.

**III. CONCLUSION**

For the foregoing reasons, the motion to dismiss is **GRANTED.** The case is dismissed with prejudice. The Clerk of the Court is directed to remove this case from the Court's active docket.

**Dated: March 23, 2005**

**New York, New York**

**SO ORDERED.**

    **Richard Conway Casey, U.S.D.J.**