# TAB 14

LEXSEE 2002 U.S. DIST. LEXIS 3316

**ROBERT C. GEINKO, MARK PUGH, STEVE FAGERMAN, and KENNETH JANOWSKI, Plaintiffs, v. K. SHAN PADDA, STEVEN L. HOLDEN, JOHN REILLY, WILLIAM D. LAUTMAN, EGS SECURITIES CORP., and KPMG, LLP, Defendants.**

No. 00 C 5070

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2002 U.S. Dist. LEXIS 3316; Fed. Sec. L. Rep. (CCH) P91,711*

**February 26, 2002, Decided
February 27, 2002, Docketed**

**DISPOSITION:** [*1] Court GRANTS the defendants' motions to dismiss on pleading grounds, but Plaintiffs' motion for leave to amend is GRANTED.

**COUNSEL:** For ROBERT C GIENKO, MARK PUGH, STEVE FAGERMAN, KENNETH JANOWSKI, plaintiffs: Alan Scott Gilbert, John Claiborne Koski, Thomas Anthony Andreoli, Wendy N Hayes, Sonnenschein, Nath & Rosenthal, Chicago, IL.

For K SHAN PADDA, defendant: Arthur Weil Friedman, Robert Dickey Hamilton, Stephen J Bisgeier, Michael Scott D'Orsi, Miller, Shakman, Hamilton, Kurtzon & Shlifke, Chicago, IL.

For STEVEN L HOLDEN, defendant: Joseph J. Duffy, Corey B. Rubenstein, Stetler & Duffy, Ltd., Chicago, IL.

For JOHN REILLY, defendant: Nicholas Joseph Etten, Lawrence M. Gavin, Robert MacDonald Moye, Bell, Boyd & Lloyd, Chicago, IL.

For WILLIAM D LAUTMAN, defendant: Terry F. Moritz, Steven A. Levy, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL.

For WILLIAM D LAUTMAN, defendant: Martin I. Kaminsky, Justin Y K Chu, Pollack & Kaminsky, New York, NY.

For EGS SECURITIES CORPORATION, defendant: William J. McKenna, Jr., Foley & Lardner, Chicago, [*2] IL.

For EGS SECURITIES CORPORATION, defendant: Deborah N McFarland, Seward & Kissell, New York, NY.

For KPMG LLP, defendant: William F. Lloyd, Frank B. Vanker, Hille von Rosenvinge Sheppard, David Andrew Gordon, Erika Lynn Pfleger, Sidley Austin Brown & Wood, Chicago, IL.

**JUDGES:** David H. Coar, United States District Judge.

**OPINION BY:** David H. Coar

**OPINION**

**MEMORANDUM OPINION AND ORDER**

This action arises from Plaintiffs' sale of their business, Strategic Reimbursement Services, Inc. ("SRS"), to Sabratek Corporation ("Sabratek") for allegedly overvalued shares of Sabratek stock (the "SRS Transaction"). Plaintiffs sue Sabratek's highest-ranking officers and directors, its investment banking advisor on the SRS Transaction, and its principal accounting firm alleging violations of the securities laws as well as violations under Illinois state law.

On September 28, 2001, this Court dismissed without prejudice Plaintiffs' original complaint against

Case 1:07-cv-09633-LBS-DFE   Document 57-15   Filed 07/21/2008   Page 3 of 8

Page 2

2002 U.S. Dist. LEXIS 3316, *2; Fed. Sec. L. Rep. (CCH) P91,711

these defendants because of Plaintiffs' failure to plead facts sufficient to give rise to a strong inference of scienter under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). See *Geinko v. Padda, 2001 U.S. Dist. LEXIS 15706*, No. 00 C 5070, 2001 WL 1163728, [*3] at *1 (N.D. Ill. Sept. 28, 2001) (hereinafter "Geinko I"). On November 5, 2001, Plaintiffs filed an Amended Complaint and attached copies of the facts alleged in three other independent actions in attempt to cure their pleading deficiencies. [1] On December 13 and 14, 2001, all Defendants moved to dismiss the Amended Complaint for lack of jurisdiction. Defendants Padda, Holden, Reilly, Lautman, and KPMG argue that Plaintiffs' Section 10(b) and *Rule 10b-5* claims are time-barred, in the alternative that the Amended Complaint is defective under *Federal Rule of Civil Procedure 8*, and in the other alternative, along with defendant EGS, that Plaintiffs fail to state a claim under *Federal Rule of Civil Procedure 12(b)(6)* based on the pleading requirements of *Fed. R. Civ. P. 9(b)* and the PSLRA. This Court now considers whether Plaintiffs' Amended Complaint alleges sufficient facts to withstand these motions to dismiss.

> 1   These actions are: (1) a complaint filed by the Securities and Exchange Commission, No. 01 C 7463 (N.D. Ill.) (hereinafter the "SEC Complaint"); (2) a complaint filed by the class action plaintiffs in Brisker, et. al. v. Padda, et. al., No. 00 C 6186 (N.D. Ill.) (hereinafter the "Brisker Complaint"); and (3) a "Motion to Compel Arbitration of Purchase Price Dispute" that was filed by Baxter Healthcare Corporation, an unrelated third party, in a Delaware bankruptcy court (hereinafter the "Baxter Motion").

[*4] **I. Background**

This Court herein incorporates the background facts that it stated in its previous opinion, *Geinko I, 2001 U.S. Dist. LEXIS 15706, 2001 WL 1163728*, at *1-2. While the Amended Complaint is 86 pages (which is 65 pages longer than Plaintiffs' Original Complaint), and while Plaintiffs attach over 300 pages of additional material, there are few new facts that Plaintiffs directly allege themselves. The Amended Complaint provides a summary of the allegations in paragraphs 1-8. Specifically these paragraphs summarize "The Fraudulent Accounting Scheme" and the "Defendants' Direct Misrepresentations." Plaintiffs allege that "within weeks of the closing" the fraudulent scheme and the defendants' misrepresentations "began to be revealed." Plaintiffs outline a time line that indicates when and to what extent they received knowledge of the defendants' fraud:

. On or about late July or early August 1999, Reilly informed Geinko and Plaintiffs' accountant that KPMG's New York office wanted to restate Sabratek's financial statements to correct the improper capitalization of R&D expenses reported as intangible assets in Sabratek's statements. According to Reilly, KPMG's Chicago office, [*5] which had audited Sabratek's financial statements and consulted on the suspect R&D transactions, opposed the restatement.

. On or about August 2, 1999, Sabratek announced that its second-quarter 1999 earnings would be "significantly" below estimated but nonetheless further stated that an "extensive review of its accounting policies" would result in no change in prior periods' reported results. This announcement precipitated a sharp 30% one-day decline in Sabratek's share price to $ 14.46.

. On or about August 13, 1999, Sabratek announced a delay in the release of its second-quarter earnings "pending completion of a review with its independent auditors" (i.e., KPMG), precipitating a further one-day decline in Sabratek's share price of more than 36% to $ 6.97.

. On or about August 23, 1999, Sabratek announced plans for a restructuring and the further delay in its second-quarter earnings release, as well as the resignation of Padda. This announcement triggered a further 57% one-day decline in Sabratek's share price to $ 2.75.

. On October 7, 1999, "any remaining doubts concerning defendants' scheme to defraud plaintiffs were dispelled" by Sabratek's announcement that [*6] Sabratek's audited financial statements for

Case 1:07-cv-09633-LBS-DFE   Document 57-15   Filed 07/21/2008   Page 4 of 8

Page 3

2002 U.S. Dist. LEXIS 3316, *6; Fed. Sec. L. Rep. (CCH) P91,711

the two years ended March 31, 1999 greatly overstated Sabratek's earnings and were materially misstated when issued. The proposed adjustment of approximately $ 39 million, restating as expenses amounts that had been improperly mischaracterized as assets, completely wiped out Sabratek's reported pre-tax earnings for the entire two-year period. In fact, the proposed adjustment was more than double (248%) Sabratek's reported pre-tax earnings for the two-year period. This announcement resulted in a further one-day decline in Sabratek's share price of more than 52% to $ 1.03.

. Based on Plaintiffs' further investigation and analysis, Plaintiffs learned that the material misstatements were even greater than what they announced on October 7, 1999. In total, as of December 31, 1998, the fraudulent scheme at Sabratek resulted in a $ 50-million overstatement in Sabratek's pre-tax earnings for the prior three years--or more than $ 35 million in undisclosed pre-tax losses compared to the approximately $ 15 million in pre-tax profits Sabratek had reported.

. After October 7, 1999, Sabratek was reduced to the status of a penny stock, its shares [*7] were delisted from trading on the NASDAQ, and Sabratek entered bankruptcy liquidation.

Paragraphs 9-10 identify the extraneous material they attach to the Amended Complaint. Plaintiffs state: "in addition to their own investigation, plaintiffs' allegations are based upon facts alleged by other public and private litigants . . . ." The actions whose allegations Plaintiffs refer to are the SEC and Brisker Complaints and the Baxter Motion. [2] Much of the Amended Complaint either sets out established rules of conduct [3] or lists facts and/or conclusions taken from the SEC and Brisker Complaints and the Baxter Motion. [4]

   2  Plaintiffs explain in Paragraph 11 that except where alleged, the underlying information relating to defendants' misconduct is not available to the Plaintiffs, and that it lies within the possession and control of defendants. Plaintiffs assert that they believe that substantial evidentiary support will exist for the allegations set forth in the Amended Complaint after they have a reasonable opportunity for discovery.

   3  Paragraphs 24-50 set out the required disclosures under the Securities Exchange Act of 1934 as well as the general accepted accounting principles ("GAAP") and the general accepted auditing standards ("GAAS"), and paragraphs 62-63 further reiterate GAAP principles.

[*8]

   4  For example, paragraphs 55-61 list the facts alleged in the SEC Complaint and paragraphs 64-80 outline the facts alleged in the SEC Complaint and identifies *red flags* from these facts that were alleged in the SEC Complaint. Similarly, paragraphs 94-101 list "additional allegations" taken from the Baxter Motion and paragraphs 108-109, 111, 113-114, 117, and 121 list allegations in the Brisker Complaint. Further, other paragraphs in the Amended Complaint do not directly cite to these third-party actions, but they indirectly refer to them by citing to the paragraphs in the Amended Complaint that *do* directly cite to the third-party actions. See e.g., PP 138, 141, and 144.

## II. Discussion

A complaint fails to state a claim upon which relief can be granted, see *Fed. R. Civ. P. 12(b)(6)*, only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. The plaintiff gets the benefit of the doubt with ambiguities and [*9] inferences. Also, the Court treats well-pleaded facts as true for purposes of the motion. See, e.g., *Chu v. Sabratek Corp., 100 F. Supp. 2d 815 (N.D. Ill. 2000)* ("Chu I"). In fraud cases, though, *Federal Rule of Civil Procedure 9(b)* requires plaintiffs to state "with particularity" the circumstances constituting the fraud. See *Fed. R. Civ. P. 9(b)*. In Seventh Circuit vernacular, this means that plaintiffs must plead facts related to the "who, what, when, where, how" of the fraud. See *DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1996)*. The PSLRA further requires plaintiffs to "specify each statement alleged to have been misleading, [and] the reason why the statement is

Case 1:07-cv-09633-LBS-DFE    Document 57-15    Filed 07/21/2008    Page 5 of 8

Page 4

2002 U.S. Dist. LEXIS 3316, *9; Fed. Sec. L. Rep. (CCH) P91,711

misleading." *15 U.S.C. § 78u-4(b)(1).*

A.

As a preliminary matter, several of the defendants argue that the Amended Complaint should be dismissed on procedural grounds. First, defendants argue that the Amended Complaint violates *Fed. R. Civ. P. 8(a)* and *(e)*. Specifically, defendants Padda, Holden, Reilly, and KPMG argue that the Amended Complaint does not contain a short and plain statement of the claim and that each averment is not simple, concise, [*10] and direct, as the rule requires. Second, defendants Padda, Holden, Reilly, and KPMG argue that Plaintiffs' section 10(b) claim is time barred.

*1. Fed. R. Civ. P. 8*

Under *Rule 8*, a complaint "must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is." *Vicom, Inc. v. Harbridge Merchant Servs. Inc., 20 F.3d 771, 776 (7th Cir. 1994)*. Defendants argue that because the Amended Complaint is 86 pages, because it is replete with allegations made by third parties in other allegations, and because Plaintiffs also attach copies of these third party actions that consist of approximately 300 additional pages, the Amended Complaint violates *Rule 8*. Plaintiffs, on the other hand, argue that established jurisprudence allows them to attach copies of the complaints filed in other actions and that the Amended Complaint does not violate *Rule 8* because it is well organized and it is not inordinately lengthy given that their Amended Complaint alleges a massive fraudulent scheme involving many defendants.

For support, Plaintiffs cite to *Davis v. Ruby Foods, Inc., 269 F.3d 818, 820 (7th Cir. 2001)*, [*11] in which the Seventh Circuit held that a district court is not authorized to dismiss a complaint merely because it contains repetitious and irrelevant matter and that "it is an abuse of discretion . . . to dismiss a complaint merely because of the presence of superfluous matter." As defendants point out, however, the complaint in Davis was a 20-page *pro se* sexual harassment complaint and the Seventh Circuit expressly recognized that its general rule had exceptions. Id. Two exceptions that the Davis court cited were *In re Westinghouse Securities Litigation, 90 F.3d 696 (3d Cir. 1996)*, which was a 240-page, 600-paragraph securities class action complaint, and *Michaelis v. Nebraska State Bar Ass'n, 717 F.2d 437 (8th Cir. 1983)*, which was a 98-page, 144-paragraph civil rights complaint.

This Court notes that there is some tension between the particularity requirements of pleading fraud under the PSLRA and 9(b) and *Rule 8*, but that these particularity demands do not negate the commands of *Rule 8*. See *Vicom, 20 F.3d at 776*. That being said, this Court does not believe that the Amended Complaint in this case is "prolix and [*12] confusing." While Plaintiffs may have attached superfluous and irrelevant matter to their Amended Complaint, see Section II.B. infra, and while some of the paragraphs serve as background rather than allegations, the Amended Complaint is not an unwieldy,"puzzle-style" complaint. Rather, the Amended Complaint is well organized and Plaintiffs clearly delineate the charges they allege against each individual defendant. This Court therefore declines to dismiss the Amended Complaint on this ground.

*2. Statute of Limitations for Section 10b Claims*

Defendants also move to dismiss the Amended Complaint on grounds that Plaintiffs' Section 10(b) claim is time barred. An action under Section 10(b) must be filed "within one year after the discovery of the facts constituting the violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364, 115 L. Ed. 2d 321, 111 S. Ct. 2773 (1991)*. "Discovery" occurs, and the applicable one-year period begins to run, when the potential plaintiff is put on "inquiry notice." *Fujisawa Pharmaceutical Co. v. Kapoor, 115 F.3d 1332, 1334 (7th Cir. 1997)*. Inquiry notice requires only that plaintiff [*13] have enough facts to prompt a reasonable person to begin investigating. *Kauthar SDV DHD v. Sternberg, 149 F.3d 659, 670 (7th Cir. 1998)*. Whether a plaintiff had sufficient facts to put him on inquiry notice of a securities fraud claim under 10b-5, however, is a question of fact and it therefore is often inappropriate for resolution on a motion to dismiss. *Marks v. CDW Computer Cntrs., Inc., 122 F.3d 363, 367 (7th Cir. 1997)*.

This action was filed on August 18, 2000, and Defendants argue that Plaintiffs were on inquiry notice prior to August 18, 1999. First, on June 7, 1999, the Chu 5 Amended Complaint was filed, of which Plaintiffs admit they were aware at the time it was filed. Defendants argue that while the Chu Amended Complaint by itself would have prompted any reasonable person to conduct further inquiry, there are even more facts that put Plaintiffs on inquiry notice more than a year

Case 1:07-cv-09633-LBS-DFE   Document 57-15   Filed 07/21/2008   Page 6 of 8

Page 5
2002 U.S. Dist. LEXIS 3316, *13; Fed. Sec. L. Rep. (CCH) P91,711

before they filed this action. These facts are: Sabratek's announcement on August 2, 1999 that its second-quarter 1999 earnings would be significantly below estimates; Sabratek's announcement on August 13, 1999 that there would be a delay in the release [*14] of its second-quarter earnings "pending completion of [a] review with its independent auditors . . . ."; Sabratek's stock price dropping in this period from approximately $ 20.66 to $ 6.97 a share, despite Padda's alleged mid-June 1999 statement that the stock would soon be trading at $ 40 per share; and "in late July or early August 1999," plaintiff Geinko was told by a Sabratek officer that KPMG's New York office "demanded" a restatement of Sabratek's financial statements to correct the "improper" capitalization of R&D expenses. Based on these facts, Defendants believe that Plaintiffs were on inquiry notice more than a year before August 18, 2000, when they filed their original complaint.

> 5   *Chu v. Sabratek*, 100 F. Supp. 2d 827, 838 (N.D. Ill. 2000).

Plaintiffs, on the other hand, argue that although they were aware of the delay in the release of the financials and a dispute between KPMG's New York and Chicago offices, "the significance of these matters was not 'confirmed or substantiated' [*15] until October 7, 1999, when Sabratek announced that it intended to restate approximately $ 39 million in assets as expenses." Plaintiffs further argue that even if the July and August facts to which Defendants refer somehow aroused Plaintiffs' suspicions, Plaintiffs were not in a position to acquire the necessary facts to state a meritorious claim within the confines of *Rule 11*.

While a close call, this Court finds that Defendants have not met their burden of showing that the allegations in the Amended Complaint conclusively demonstrate that Plaintiffs were on inquiry notice prior to August 18, 1999. With respect to the Chu Amended Complaint, Defendants point out that Plaintiffs were aware of it when it was filed, but they neglect also to point out that Plaintiffs allegedly were told at least twice that there was no merit to the facts alleged in the Chu Amended Complaint; once in a conference call sometime between June 15 and 20 and again through a press release on June 21, 1999. See Am. Compl. PP 147(a), 148, and 159. Further, in that same press release, Plaintiffs similarly were reassured that the financial statements were prepared in accordance of GAAP, and defendant [*16] Padda stated, "We stand by those financial statements." Am. Compl. P 148. Finally, an additional significant event occurred on or about August 23, 1999, when Sabratek announced plans for a restructuring, a further delay in its second-quarter earnings release, and the resignation of Padda. This announcement triggered a further 57% one-day decline in Sabratek's share price to $ 2.75. The facts to which Defendants point as putting Plaintiffs on inquiry notice must be examined in context. Thus, while inquiry notice may begin before a plaintiff is in possession of all facts sufficient to file a complaint immediately, see *Fujisawa, 115 F.3d at 1336*, in this case, given the sequence of events and the discussion among the parties, it is not clear that Plaintiffs were on inquiry notice prior to August 18, 1999. This Court, therefore, declines to dismiss the Amended Complaint on this ground.

B.

Like the original complaint, Count I of the Amended Complaint alleges securities fraud in direct violation of Section 10b of the Securities Exchange Act and *Rule 10b-5* [6]. The elements of a Section 10(b) claim are: (1) knowing or recklessly indifferent (2) misstatement or omission, [*17] (3) of material fact (4), in connection with the purchase or sale of securities, (5) upon which plaintiff has relied and (6) to the plaintiff's detriment. E.g., In re HealthCare Compare *Corp., 75 F.3d 276, 280 (7th Cir. 1996)*. As with the original complaint, all of the defendants challenge the Amended Complaint for failing to allege any misstatements with sufficient particularity under Rule 9b, and for failing to allege scienter under the PSLRA.

> 6   Count I is a threshold claim because before plaintiffs can state a claim under Section 20(a) of the Securities Exchange Act for "control person liability" (Count II), they must make sufficient allegations of a primary violation under Section 19(b) and 10b-5. See *Geinko I, 2001 U.S. Dist. LEXIS 15706, 2001 WL 1163728*, at *9. Further, Counts III-V are state-law claims and are entertained only if the federal claims to which they are pendent survive. Id.

When this Court dismissed Plaintiffs' original complaint, this Court stated that "if, like the plaintiffs in [*18] Chu, plaintiffs are able to plead more specific facts, including 'red flags' . . . such additional facts would likely mean the survival of their complaint." *Geinko I,*

Case 1:07-cv-09633-LBS-DFE    Document 57-15    Filed 07/21/2008    Page 7 of 8

Page 6

2002 U.S. Dist. LEXIS 3316, *18; Fed. Sec. L. Rep. (CCH) P91,711

*2001 U.S. Dist. LEXIS 15706, 2001 WL 1163728*, at *9 n.8. The Amended Complaint now contains 223 paragraphs and 86 pages (which is 65 pages longer than Plaintiffs' Original Complaint), and Plaintiffs attach over 300 pages of additional material. Defendants, however, argue that by attaching the SEC Complaint, the Brisker Complaint, and the Baxter Motion, that Plaintiffs attempt to piggyback on contested allegations made by third parties in independent actions rather than plead, as this Court instructed, more specific facts as their own allegations. More importantly, by simply attaching complaints filed in other cases, Plaintiffs sidestep the requirements of *Rule 11*. Accordingly, defendants argue that these imported allegations are improper and should be ignored. [7] Thus, the threshold issue before this Court is whether Plaintiffs, in order to allege sufficient facts that provide a basis of scienter, may recite alleged facts extrapolated from other actions against some of the same defendants.

> 7  Even though this Court found that the Amended Complaint does not violate *Rule 8*, it still can ignore superfluous or improper matter that do not amount to allegations.

[*19] Plaintiffs argue that "established jurisprudence" allows them to refer to and attach copies of these independent actions, and they cite *Lewis v. Curtis, 671 F.2d 779, 788 (3d Cir. 1982)* and *In re Livent, Inc. Sec. Litig., 78 F. Supp. 2d 194, 216 (S.D.N.Y. 1999)* for support. These cases, however, hardly support Plaintiffs' proposition. In Lewis, the Third Circuit held that reliance on information printed in the *Wall Street Journal* was sufficient to satisfy the certification requirement of *Fed. R. Civ. P. 23.1*, because "reliance on an article in the *Wall Street Journal* is not reliance on an insubstantial or meaningless investigation" and "plaintiffs and their attorneys need not make further expenditures to prove independently that which may be read with some confidence of truthfulness and accuracy in a respected financial journal." *671 F.2d at 788*. Lewis, however, dealt with *Fed. R. Civ. P. 23.1*, and not with *Rule 11*, which conveys a non-delegable duty upon the signing attorney to conduct his own independent analysis of the facts and law which form the basis of a pleading or motion. See *Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 125-127, 107 L. Ed. 2d 438, 110 S. Ct. 456 (1989)*. [*20] In light of the Supreme Court's ruling in Pavelic, if the signing attorney cannot rely on the analysis of a member of his law firm to have ascertained the facts, it is a non sequitur that he somehow can rely on the analysis of attorneys in *different actions* and who are presumably from different law firms.

In re Livent similarly is inapposite. Plaintiffs rely on that case because it contains the following paragraph: "It is also apparent that much of the Complaint is culled from Livent's SEC filings and the SEC complaint in the separate civil action against several of the Individual Defendants. These sources, and others, are acknowledged in Paragraph 211 of the Complaint, which sufficiently alleges Plaintiffs' sources of information." *In re Livent, 78 F. Supp. 2d at 216*. As defendant KPMG points out, however, in In re Livent, the defendants apparently argued only that the plaintiffs had failed to identify adequately the source for the allegations *that were pleaded* in the complaint. The pervasive defect in the Amended Complaint in this case, however, is that it does not make clear what Plaintiffs directly allege as fact, and what Plaintiffs merely [*21] are asserting that someone else has alleged. In other words, Plaintiffs' attorneys cannot shirk their *Rule 11* obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances by merely stating that "the SEC alleges" certain additional facts. [8]

> 8  Significantly, Plaintiffs do not allege any of these facts as their own. The Amended Complaint refers to the SEC Complaint more than 70 times, the Brisker Complaint 13 times, and the Baxter Motion (or its exhibits) 9 times. Plaintiffs do not attest to independently examining the materials underlying these third-party allegations; they did not contact the attorneys for the plaintiffs in these actions or the witnesses quoted. As defendant KPMG points out, if this Court were to accept Plaintiffs' view of pleading fraud, two plaintiffs could file separate actions each relying on the allegations in the other's complaint and both would state a claim for fraud. Clearly, *Rule 11*'s requirements do not allow this type of pleading loophole.

[*22] In Geinko I, this Court noted that in their original complaint, Plaintiffs had gone so far "as to compare their complaint to the complaint in Chu and suggest that since Judge Castillo found scienter as to certain defendants there, this Court ought to find that the plaintiffs here have adequately plead scienter." *Geinko I, 2001 U.S. Dist. LEXIS 15706, 2001 WL 1163728*, at *5.

Case 1:07-cv-09633-LBS-DFE  Document 57-15  Filed 07/21/2008  Page 8 of 8

Page 7

2002 U.S. Dist. LEXIS 3316, *22; Fed. Sec. L. Rep. (CCH) P91,711

With their Amended Complaint, Plaintiffs have not done better. Essentially, in response to this Court's request that Plaintiffs plead more specific facts, and that they allege "red flags" similar to those alleged in Chu, Plaintiffs merely have recited facts from other actions, attached copies of those actions, and asserted that red flags emerge from those facts. Clearly, this is not enough; the hearsay allegations [9] that Plaintiffs offer in their Amended Complaint are improper, and therefore superfluous, and they will not be considered. This Court gives Plaintiffs 14 days to amend their complaint an additional time in conformance of *Rule 11*. This Court notes, however, that Plaintiffs must do more than merely include the words, "based on information and belief," because alleging fraud on information and belief [*23] is insufficient. See *Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683-84 (7th Cir. 1992)*. While the duty to plead with particularity is relaxed in cases where facts indicating "circumstances constituting fraud" are inaccessible to plaintiff, id., in this case Plaintiffs would need to explain clearly (rather than just conclusively state) why this is the case and cite adequate case law in support. [10] If Plaintiffs fail to amend their complaint satisfactorily within the 14 days, this action will be dismissed with prejudice because the remaining facts in the Amended Complaint do not cure the pleading deficiencies that this Court identified in Geinko I..

> 9  For support that these are hearsay allegations, defendant Padda cites *SSDD Enters., Inc. v. Village of Lansing, 1996 U.S. Dist. LEXIS 6073*, No. 95 C 6064, 1996 WL 238931, at *2 n.7 (N.D. Ill. May 3, 1996), in which the court held that allegations from newspaper articles are hearsay and were made on information and belief, which the court then disregarded as violating *Rule 11*. In this case, while Plaintiffs do not take facts from newspapers but from other complaints in which arguably *Rule 11* applied, it is still hearsay because *Rule 11* imposes a non-delegable duty upon the signing attorney to conduct his own independent analysis. See *Pavelic, 493 U.S. at 125-127*.

[*24]

> 10  For example, Plaintiffs baldly assert that it was appropriate for them to rely upon and submit the third-party actions because they do not have the resources of the SEC or of the class action plaintiffs' counsel.

### III. Conclusion

For the reasons stated herein, this Court GRANTS the defendants motions on pleading grounds, but grants Plaintiffs 14-days leave to amend their complaint to conform to the requirements of *Rule 11*. If Plaintiffs fail to amend their complaint satisfactorily within the 14 days, this action will be dismissed with prejudice and without further notice.

**Enter:**

**David H. Coar**

**United States District Judge**

**Dated: February 26, 2002**