# TAB 26

LEXSEE 2005 U.S. DIST. LEXIS 26332

IN RE TELLIUM, INC. SECURITIES LITIGATION

Civil Action No. 02-cv-5878 (FLW)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

*2005 U.S. Dist. LEXIS 26332; Fed. Sec. L. Rep. (CCH) P93,505*

August 26, 2005, Decided
August 26, 2005, Filed

NOTICE:    [*1] NOT FOR PUBLICATION

PRIOR HISTORY: *In re Tellium , Inc. Sec. Litig., 2005 U.S. Dist. LEXIS 19467 (D.N.J., June 30, 2005)*

COUNSEL: For ROBERT KERWIN ON BEHALF O HIMSELF AND ALL OTHERS SIMILARLY SITUATED, ROBERTO VITALINI, WINSLOW MANAGEMENT COMPANY, Plaintiffs: JOSEPH J. DEPALMA, LITE, DEPALMA, GREENBERG & RIVAS, LLC, NEWARK, NJ.

For JUDITH TRAUBE ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED (FROM CV. 03-103 (MLC), Consol Plaintiff: ROBERT J. BERG, BERNSTEIN LIEBHARD & LIFSHITZ, LLP, FORT LEE, NJ.

For PATRICIA LUM ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED (FROM CV. 02-6177 (MLC)), DARRELL MOREAU INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED (FROM CV. 03-231 (MLC), LEONARD SCHULMAN ON BEHALF INDIVIDUALLY AND ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED (FROM CV. 03-211(MLC), JENNIFER CHANA FINK INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED (CV. 03-379(MLC), Consol Plaintiff: JOSEPH J. DEPALMA, LITE, DEPALMA, GREENBERG & RIVAS, LLC, NEWARK, NJ.

For VIJAY NAIDU INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED (FROM CV. 02-5878), Plaintiff: LEONARD SCHULMAN, SPARTA, NJ.

For TELLIUM, INC., HARRY J. CARR, MICHAEL J. LOSCH, RICHARD W. BARCUS, MICHAEL M. CONNORS, JEFFREY A. FELDMAN, EDWARD F. GLASSMEYER, [*2] RICHARD C. SMITH, JR, WILLIAM A. ROPER, JR, Defendants: JOSEPH T. BOCCASSINI, MCCARTER & ENGLISH LLP, NEWARK, NJ.

For WILLIAM B. BUNTING, Defendant: ANTHONY P. LAROCCO, KIRKPATRICK & LOCKHART, NICHOLSON GRAHAM LLP, NEWARK, NJ.

For MORGAN STANLEY DEAN WITTER, MORGAN STANLEY, TONY M. BAMER, Defendants: ADLAI J.J. SMALL, LATHAM & WATKINS, NEWARK, NJ.

For THOMAS WEISEL PARTNERS, LLC, Defendant: ANTHONY P. LAROCCO, KIRKPATRICK & LOCKHART, NICHOLSON GRAHAM LLP, NEWARK, NJ; CHRISTOPHER A. BARBARISI, KIRKPATRICK & LOCKHART, NICHOLSON GRAHAM LLP, NEWARK, NJ.

JUDGES: WOLFSON, District Judge.

OPINION BY: Freda L. Wolfson

OPINION

OPINION

   WOLFSON, District Judge:

Case 1:07-cv-09633-LBS-DFE    Document 57-27    Filed 07/21/2008    Page 3 of 7

Page 2

2005 U.S. Dist. LEXIS 26332, *2; Fed. Sec. L. Rep. (CCH) P93,505

Presently before the Court is Plaintiff's Motion for Reconsideration, pursuant to *L. Civ. R. 7.1(i)*, of the Court's June 30, 2005 Opinion dismissing Counts IV, V, and VI of Plaintiffs' Second Consolidated and Amended Class Action Complaint ("SAC"), and striking the allegations naming Winslow Management Company and Roberto Vitalini as Lead Plaintiffs in this action. Counts IV, V, and VI of the SAC assert violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), *15 U.S.C. § 78j(b)*; [*3] Rule 10b-5 promulgated thereunder, *17 C.F.R. § 240.10b-5*; and Section 20(a) of the Exchange Act, *15 U.S.C. § 78t(a)*.

## I. BACKGROUND

Following the consolidation of seven related cases on February 27, 2003, Plaintiffs filed their Consolidated and Amended Class Action Complaint on May 19, 2003 ("FAC"). The Court dismissed the FAC in its entirety as set forth in its Memorandum Opinion of March 31, 2004 ("Tellium I"). In Tellium I, Plaintiffs' Exchange Act claims were dismissed for failure to comply with the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). In permitting Plaintiffs an opportunity to amend their Complaint to comply with the PSLRA, I held that I was not prepared at that time to rule that an amended complaint could not demonstrate a set of facts upon which causation could adequately be alleged, and invited Plaintiffs to allege additional facts to satisfy the loss causation element for claims brought under *§ 10(b)* and *Rule 10b-5*. [1] Tellium I at 71. Plaintiff then filed the SAC, which was followed by a second round of Motions to Dismiss. In my *In re Tellium , Inc. Sec. Litig., 2005 U.S. Dist. LEXIS 19467 (D.N.J. June 30, 2005)* Opinion ("Tellium [*4] II"), I held that the SAC adequately pled scienter as to Defendants Carr, Losch, and Tellium solely with respect to Plaintiffs' claims that the sales projections which formed the basis of the "revenue guidances" referred to in numerous public statements were developed using arbitrary numbers. *Tellium II 2005 U.S. Dist. LEXIS 19467 at *79-80*. However, because I found that Plaintiffs in the SAC were proceeding upon a theory of loss causation explicitly rejected by the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 1631, 161 L. Ed. 2d 577 (2005)*, I again dismissed Plaintiffs' Exchange Act claims, this time with prejudice. *2005 U.S. Dist. LEXIS 19467 at *90-91*. Plaintiffs have moved for reconsideration of the Court's loss causation determination, arguing that they have satisfied the loss causation requirement set forth in Dura and the Third Circuit's ruling in *Semerenko v. Cendant Corp., 223 F.3d 165, 185 (3d Cir. 2000)*, which was upheld by Dura, and therefore that the Opinion should be modified to allow Counts IV, V, and VI to go forward. [2]

> 1  To state a claim under *§ 10(b)* and *Rule 10b-5* in cases involving publicly traded securities and purchases or sales in public securities markets, Plaintiffs must allege (1) a material misrepresentation or omission; (2) scienter (3) in connection with the purchase or sale of a security; (4) reliance (or "transaction causation"); (5) economic loss; and (6) loss causation. *Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 1631, 161 L. Ed. 2d 577 (2005)*.

[*5]

> 2  Following the Dura decision, several cases have been decided which confirm this Court's interpretation of the law of loss causation as set forth in Tellium II. None of these recent cases are cited by Plaintiffs in their Motion for Reconsideration, but are referenced by Defendants and by this Court herein.

## II. DISCUSSION

### A. Reconsideration Standard

In the District of New Jersey, *L. Civ. R. 7.1(i)* allows a party to seek reconsideration of a court's decision if there are "matters or controlling decisions which counsel believes the Judge or Magistrate Judge has overlooked." [3] See also *Interfaith Community Organization v. Honeywell Int'l, Inc., 215 F. Supp. 2d 482, 507 n.12 (D.N.J. 2002)*. A motion for reconsideration may only be granted if "(1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice." *Interfaith Community, 215 F. Supp. 2d at 507* (citations omitted). Hence, a "party seeking [*6] reconsideration must show more than a disagreement with the court's decision," *Panna v. Firstrust Sav. Bank, 760 F. Supp. 432, 435 (D.N.J. 1991)*, and will fail to meet its burden if it merely presents "a recapitulation of the cases and arguments considered by [the] Court before rendering its original decision." *Elizabethtown Water Co. v. Hartford Casualty Ins. Co., 18 F.Supp. 2d 464, 466 (D.N.J. 1998)* (quoting *Carteret Sav. Bank, F.A. v. Shushan, 721 F. Supp. 705, 706 (D.N.J. 1989)*).

3   By Order dated February 24, 2005, the Local Civil Rules were amended to repeal the former *L. Civ. R. 7.1(g)*, entitled "Motions for Reargument," and add the current *L. Civ. R. 7.1(i)*, entitled "Motions for Reconsideration." The amended rule is substantively unchanged.

The rule permits a reconsideration only when "dispositive factual matters or controlling decisions of law" were presented to the court but were overlooked. *Resorts Int'l v. Greate Bay Hotel and Casino, 830 F. Supp. 826, 831 (D.N.J. 1992)*; [*7] *Khair v. Campbell Soup Co., 893 F. Supp. 316, 337 (D.N.J.1995)*. Thus, the Court will only grant such a motion if the matters overlooked might reasonably have resulted in a different conclusion. *Bowers v. Nat'l Collegiate Athletic Ass'n, Act, Inc., 130 F. Supp. 2d 610, 613 (D.N.J. 2001)*. In sum, it is improper on a motion for reconsideration to "ask the Court to rethink what it had already thought through--rightly or wrongly." *Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co., 744 F. Supp. 1311, 1314 (D.N.J. 1990)*.

## B. Loss Causation

In Dura, the Supreme Court rejected the Ninth Circuit's interpretation of the *§ 10(b)* and *Rule 10b-5* loss causation requirement: that a plaintiff could sufficiently allege loss causation by stating that the price of the security on the date of the purchase was inflated because of an alleged misrepresentation. As noted, in Tellium II, I held that the SAC failed to comply with Dura and Semerenko because Plaintiffs proceeded on this theory. Plaintiffs argue in their Motion for Reconsideration that the SAC satisfied the standard for loss causation set forth in Dura because they have [*8] alleged that (1) when Plaintiffs purchased their stock, Tellium's price was artificially inflated by the arbitrary and false revenue guidances, and (2) that Plaintiffs continued to hold Tellium stock when Tellium's stock price declined immediately following a corrective disclosure that took place on January 31, 2002.

In Counts IV and V, which set forth Plaintiffs' *§ 10(b)* and *Rule 10b-5* claims, the SAC alleges that "in ignorance of the fact that the market price of Tellium's shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly

disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiffs and members of the Class acquired Tellium common stock during the Class Period at artificially high prices based on their reliance and were damaged thereby." SAC P 170 [Defendants Tellium, Carr, Losch and Barcus], P 178 [Defendant TWP].

Plaintiffs make no allegations in Counts IV and V regarding the economic loss suffered [*9] by Plaintiffs, or the causal connection between that loss and the alleged misrepresentations. In the main section of the SAC setting forth the bulk of the factual allegations, however, Plaintiffs make several allegations regarding the drop in Tellium's stock price in response to public announcements of negative information about Tellium. Plaintiffs argue that the negative information in the market surrounding Tellium's prospects initially did not have a strong impact on the stock price because of Defendants' continued reassurance about Tellium's sales commitments, but the market began to react after Defendant Carr "finally conceded" in a January 31, 2002 conference call with analysts that Tellium needed a new customer in order to achieve its $ 288 million revenue guidance. SAC P 125. At that point, the Tellium stock price dropped 14%. Id. In addition, Plaintiffs allege that on June 24, 2002, following an announcement of "business restructuring," including layoffs of almost half of its employees, Tellium stock dropped below $ 1.00 for the first time, and that on June 28, 2002, following an announcement that second-quarter revenues would only be $ 3 million, its stock price dropped [*10] as low as $ 0.56, closing at $ 0.65 on heavy trading. SAC PP 127, 128.

Plaintiffs argue that the SAC alleges that the January 31, 2002 announcement that Tellium would need a new customer to achieve the $ 288 million revenue guidance figure was a corrective disclosure that caused the price of Tellium stock to fall, and that the SAC therefore satisfies the loss causation requirements of Dura and Semerenko. [4] Plaintiffs assert that the Court overlooked the Bloomberg reports demonstrating the severe decline in Tellium's stock prices in the two trading days following the January 31, 2002 conference call, which "confirm" that Carr's statement "had an enormous and immediate effect on Tellium's stock price." Pl. Br. at 6. Plaintiffs further assert that the certifications submitted by the Lead Plaintiffs, incorporated by reference in the SAC at P 24, demonstrate that the named Plaintiffs actually suffered

2005 U.S. Dist. LEXIS 26332, *10; Fed. Sec. L. Rep. (CCH) P93,505

losses as a result of the stock price decline.

4    Plaintiffs do not argue that the June 28, 2002 announcement that second-quarter revenues would be only $ 3 million was a curative disclosure, despite stating that it was only then that "at last, Tellium had made disclosures indicating to the market that its purported $ 1 billion in committed sales was an illusion." SAC P 128. However, for the reasons discussed herein, the announcement that Tellium would fail to meet revenue projections similarly fails to satisfy Plaintiff's burden of pleading loss causation.

[*11] The Court finds, however, that Plaintiffs have failed to allege a corrective disclosure, or some other corrective event, and that the SAC therefore fails to comply with *Dura* and *Semerenko*. In order to plead loss causation, a Plaintiff must allege "'that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered,' i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell v. Merrill Lynch, 396 F.3d 161, 173 (2d Cir. 2005)* (emphasis in original) (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 95 (2d Cir. 2001)*). In other words, Plaintiffs must allege that at some point, the concealed scheme was disclosed to the market, because "where the alleged misstatement conceals a condition or event which then occurs and causes the plaintiff's loss, it is the materialization of the undisclosed condition or event that causes the loss." *In re Initial Public Offering Sec. Litig. ("In re IPO"), Liu v. Credit Suisse First Boston Corp., 399 F. Supp. 2d 298, 2005 U.S. Dist. LEXIS 12845, 2005 WL 1529659, at *6 (June 28, 2005)* ("Liu Reconsideration [*12] II").

At the heart of Plaintiffs' allegations is that Tellium perpetuated a scheme in which they went public on the basis of false contractual purchase commitments and sales expectations, and that Defendants continued to make statements after the IPO regarding their projected revenues that were not based on any real commitments but were instead based on numbers that were manufactured using an Excel spreadsheet. The January 31, 2002 conference call that Plaintiffs now allege was a "curative disclosure" neither revealed the alleged illusoriness and unenforceability of Tellium's three contracts, nor exposed that the $ 288 million revenue projections were not based upon real contractual

commitments. Plaintiffs have failed to allege that the concealed scheme was *ever* disclosed to the market, thereby affecting the price of Tellium's stock.

Plaintiffs allegations of a drop in stock price following (1) a disclosure that Tellium would need a new customer *in order to meet the projected $ 288 revenue guidance figure,* and (2) a disclosure to the market that second-quarter revenues would be significantly lower than expected, are the type of announcements that courts have found do not [*13] adequately demonstrate a market correction of the artificial inflation caused by defendants' misrepresentations. 5 See e.g., *D.E. & J. Limited P'Ship v. Conaway, 133 Fed. Appx. 994, 2005 WL 1386448, at *5-*6 (6th Cir. 2005)* (holding that Plaintiffs' allegations of a stock price drop following a disclosure that it had filed for bankruptcy reorganization did not distinguish the case from Dura because they did not allege that the announcement disclosed any prior misrepresentation to the market and therefore caused the decline in stock price); *Lentell, 396 F.3d at 175* and n.4 (holding that stock price drop following downgrade of stock did not amount to a corrective disclosure because the downgrades did not reveal to the market the falsity of the prior recommendations); *In re IPO, Liu v. Credit Suisse First Boston Corp., 399 F. Supp. 2d 261, 2005 U.S. Dist. LEXIS 9318, 2005 WL 1162445, at *3 (May 16, 2005)* ("Liu Reconsideration") (holding that a failure to meet earnings forecasts does not have a corrective effect because it does not "disclose the scheme" and therefore "cannot correct the artificial inflation caused by the scheme."). Cf. *Semerenko, 223 F.3d at 171, 186* (holding [*14] that Plaintiffs pled loss causation where they alleged that the stock was allegedly inflated by misrepresentations concerning Cendant's financial condition and its willingness to complete a tender offer and proposed merger, and that it dropped when the truth was made known upon an audit report that included findings of "fraudulent financial reporting" and the announced termination of the planned merger).

5    Indeed, the January 31, 2002 "disclosure" supposes that the $ 288 million figure was not entirely arbitrary, and therefore supports rather than undermines this alleged misrepresentation.

Dura itself makes clear that loss causation is not pled upon allegations of drops in stock price following an announcement of bad news that does not disclose the fraud. In Dura, the complaint alleged that following an

2005 U.S. Dist. LEXIS 26332, *14; Fed. Sec. L. Rep. (CCH) P93,505

announcement that earnings would be lower than expected, Dura's shares fell from $ 39 per share to $ 21 per share. *Dura, 125 S.Ct. at 1630*. The Court held, however, that the complaint [*15] failed to claim "that Dura's share price fell significantly after the truth became known," and thus failed to provide defendants with notice of the causal connection between any economic loss and the alleged misrepresentation. *Id. at 1634*. The SAC suffers from the same defects. [6]

> 6  The Court notes that its statement in Tellium II that "in contrast to the plaintiffs in Dura, who made no attempt to allege that the share price fell significantly after the truth became known, Plaintiffs here do allege that the share price fell," was in error. *Tellium II 2005 U.S. Dist. LEXIS 19467 at *86*. However, the fact that the Plaintiffs in Dura did plead a stock price drop only serves to reinforce the Court's conclusion in Tellium II and in this Opinion: that the Plaintiffs here did not plead a "causal connection" simply by alleging a drop in the price of Tellium stock following various announcements because these announcements did not reveal prior misrepresentations to the market.

Citing *Semerenko, 223 F.3d at 187*, [*16] and *Emergent Capital Inv. Mgmt. LLC v. Stonepath Group, Inc., 343 F.3d 189 (2d Cir. 2003)*, Plaintiffs also argue that the Court erred in accepting Defendants' argument that a general market decline was an intervening cause in the decline of stock prices, since that is an issue for trial that may not be considered on a motion to dismiss. Tellium II did not accept Defendants' argument that a general market decline was an intervening cause, but rather focused on the fact that Plaintiff simply failed to allege the effect on the market of the disclosure of a material misrepresentation, as opposed to the decline in stock prices in general and the telecommunications sector in particular. The Second Circuit in Lentell explicitly recognized that in order to reach the fact-based inquiry discussed in Semerenko and Emergent Capital, Plaintiffs must first allege a corrective disclosure or event that had an effect on the market. The Second Circuit noted that although it held in Emergent Capital that the chain of causation must be proven at trial and not decided on a motion to dismiss, "'when the plaintiff's loss coincides with a marketwide phenomenon causing [*17] comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases,' and a

plaintiff's claim fails when 'it has not adequately ple[]d facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events.'" *Lentell, 396 F.3d at 174* (quoting *First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 772 (2d Cir. 1994))*. Plaintiffs have failed to so plead in the SAC.

Plaintiffs also move for reconsideration of the Court's holding that Winslow Management Company and Roberto Vitalini may no longer serve as Lead Plaintiffs, and that P 24 shall be stricken from the SAC. As I held in Tellium I, because Lead Plaintiffs Winslow Management Company and Roberto Vitalini purchased their shares in the secondary market, rather than pursuant to the IPO, they do not have standing to pursue Plaintiffs' *§ 11* claims. Tellium I at 42-43 (citing *Shapiro v. UJB Fin. Corp., 964 F.2d 272, 286 (3d Cir. 1992))*. Because the Court continues to find that the dismissal of Plaintiffs' Exchange Act claims is appropriate, it also denies reconsideration of its [*18] holding that Winslow Management Company and Vitalini shall be stricken as Lead Plaintiffs.

## IV. CONCLUSION

Because the SAC does not allege that the concealed scheme that forms the basis of their complaint was ever disclosed to the market, Plaintiffs fail to allege loss causation. As such, Plaintiffs' Motion for Reconsideration will be denied.

Dated: August 26, 2005

/s/ Freda L. Wolfson

The Honorable Freda L. Wolfson

United States District Judge

## ORDER

This matter having been opened to the Court by Lite DePalma Greenberg & Rivas, LLC, counsel for Plaintiffs, on a Motion for Reconsideration pursuant to *L. Civ. R. 7.1(i)*; McCarter & English, LLP, counsel for Defendants Tellium, Inc., Richard W. Barcus, Harry J. Carr, Michael M. Connors, Jeffrey A. Feldman, Edward F. Glassmeyer, Michael J. Losch, William A. Roper, Jr., and Richard C. Smith, Jr. ("Tellium Defendants"), having filed opposition thereto; and Kirkpatrick & Lockhart, LLP, counsel for Defendants Thomas Weisel Partners LLC and

2005 U.S. Dist. LEXIS 26332, *18; Fed. Sec. L. Rep. (CCH) P93,505

William B. Bunting ("TWP Defendants"), joining the Opposition to Plaintiffs' Motion for Reconsideration; the Court having considered the papers pursuant to *Fed. R. Civ.* [*19] *P. 78*; for the reasons noted in my written opinion of this date; and for good cause shown,

IT IS on this 26th day of August, 2005,

ORDERED that Plaintiffs' Motion for Reconsideration is DENIED.

/s/ Freda L. Wolfson

The Honorable Freda L. Wolfson

United States District Judge