**TAB 27**

LEXSEE 2001 US DIST. LEXIS 25009

**In re VERSANT OBJECT TECHNOLOGY CORP., SECURITIES LITIGATION;
This Document Relates to: ALL ACTIONS**

**No. C 98-00299 CW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA**

*2001 U.S. Dist. LEXIS 25009*

**December 4, 2001, Decided
December 4, 2001, Filed**

**SUBSEQUENT HISTORY:** *Affirmed by Wilkes v. Versant Object Tech. Corp., 56 Fed. Appx. 322, 2003 U.S. App. LEXIS 1539.*

**DISPOSITION:**    [*1] Defendants' motion to dismiss granted, and Plaintiffs' TACC dismissed with prejudice.

**COUNSEL:** For STEVEN WILKES, Plaintiff: Vahn Alexander, Weiss & Yourman, Los Angeles, CA.

For RICHARD GEFFEN, TAMMY NEWMAN, LOUIS LUU, WILLIAM ARNOUVILLE, Plaintiffs: Jeffrey H. Squire, Louis Sandler, Kirby McInerney & Squire LLP, Mel E. Lifshitz, Bernstein Liebhard & Lifshitz, Kenneth A. Elan, Law Office of Kenneth A. Elan, New York, NY.

For RICHARD GEFFEN, Plaintiff: Todd S. Collins, Jacob A. Goldberg, Berger & Montague, P.C., Philadelphia, PA.

For RICHARD GEFFEN, Plaintiff: Steven J. Toll, Kristopher A. Kincade, Cohen Milstein Hausfeld & Toll PLLC, Seattle, WA.

For RICHARD GEFFEN, TAMMY NEWMAN, LOUIS LUU, WILLIAM ARNOUVILLE, Plaintiffs: Reed R. Kathrein, John K. Grant, Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, CA.

For RICHARD GEFFEN, TAMMY NEWMAN, LOUIS LUU, WILLIAM ARNOUVILLE, Plaintiffs: Stephen R. Basser, Barrack Rodos & Bacine, Blair A. Nicholas, Bernstein Litowitz Berger & Grossmann LLP, William S.

Lerach, Amber L. Eck, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA.

For LOUIS LUU, Plaintiff: Alan Schulman, Bernstein [*2] Litowitz Berger & Grossmann LLP, San Diego, CA.

For VERSANT OBJECT TECHNOLOGY CORPORATION, DAVID BANKS, JAMES R. LOCHRY, LAWRENCE PULKOWNIK, GEORGE FRANZEN, RONALD KOPECK, GARY RHEA, defendants: Melvin R. Goldman, Jordan Eth, Morrison & Foerster LLP, San Francisco, CA.

**JUDGES:** CLAUDIA WILKEN, United States District Judge.

**OPINION BY:** CLAUDIA WILKEN

**OPINION**

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT WITH PREJUDICE

Defendants move to dismiss Plaintiffs' third amended consolidated complaint (TACC) for failure to state a claim for securities fraud. Plaintiffs allege that Defendants engaged in a fraudulent scheme to inflate the value of Versant's stock. In furtherance of this scheme, they allegedly made material misrepresentations about the company's prospects, improperly recognized revenue, and engaged in insider trading. On May 18, 2000, the Court dismissed Plaintiffs' consolidated amended

complaint (CAC) with leave to amend, detailing specific requirements Plaintiffs had to meet to survive another motion to dismiss for failure to state a claim. On March 30, 2001, the Court dismissed Plaintiffs' second amended consolidated complaint [*3] (SACC) with leave to amend, again detailing requirements Plaintiffs still had not met. Having considered the papers filed by the parties and oral argument on the motion, the Court GRANTS Defendants' motion to dismiss Plaintiffs' third amended consolidated complaint (Docket No. 106) with prejudice. Plaintiffs have not plead facts that give rise to a strong inference of deliberate recklessness.

BACKGROUND

Defendant Versant Object Technology, Inc. designs and markets computer software for "high-performance enterprise component management systems for commercial applications in distributed computer environments." Individual Defendants David Banks, James R. Lochry, George C. Franzen, Ronald Kopeck, and Gary Rhea were officers of Versant during the relevant time period. In the Court's order on the motion to dismiss the CAC, the Court found that Plaintiffs had adequately plead that these six individual Defendants qualified as controlling persons.

Plaintiffs are an uncertified class composed of all individuals who purchased or otherwise acquired Versant's common stock between May 15, 1997, and January 13, 1998. Plaintiffs contend that Defendants have violated §§ 10(b) and 20(a) of the Securities [*4] and Exchange Act of 1934 and Securities and Exchange Commission (SEC) *Rule 10b-5*.

Specifically, Plaintiffs allege that, with the intent to inflate and maintain Versant's stock price artificially, Defendants made false and misleading statements regarding the company's business and financial condition. In their TACC, Plaintiffs allege that Defendants' false and misleading statements took the form of: (1) nine press releases issued between June 4, 1997 and January 8, 1998, *see SACC* PP 26 (June 4), 30-31 (July 17), 32-33 (July 30), 36 (July 31), 41 (first Sept. 29 release), 42 (second Sept. 29 release), 45-46 (Oct. 23), 53-54 (Dec. 15), 56-57 (Jan. 8); (2) statements made by Rhea, Banks and unspecified members of "senior management" or "management" that formed the basis, at least in part, for ten third-party analysts' reports issued between June 16, 1997 and January 8, 1998, *see id.* PP 29 (June 16), 35 (July 31), 38-39 (Aug. 27), 40 (Sept. 17), 44 (Oct. 2), 49

(Oct. 24), 50 (Nov. 13), 52 (Dec. 12), 55 (Dec. 18), 58-59 (Jan. 8); and (3) three SEC Form 10-Qs signed by Rhea for the first, second and third quarters of 1997. Plaintiffs further allege that, in addition to being false, [*5] the SEC forms violated Generally Accepted Accounting Principles (GAAP), required by SEC regulations. *See id.* PP 86-101.

In the TACC, Plaintiffs claim that Defendants Franzen and Lochry and non-Defendant insider Pulkownik unlawfully sold a total of 67,457 shares of Versant stock, valued at $ 833,092, based on inside information. *See id.* PP 103-104.

A. Dismissal of the Second Amended Complaint

On March 30, 2001, this Court granted Defendants' motion to dismiss the SACC with leave to amend. The Court found that the SACC suffered from two main problems: (1) Plaintiffs failed to plead their allegations which rely on information and belief with the requisite particularity, and (2) Plaintiffs failed to allege scienter with sufficient particularity. March 30, 2001 Order at 11-12; *see Paracor Fin., Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1157 (9th Cir. 1996)*. More specifically, the Court identified five different areas of the SACC that were plead inadequately: allegations plead on information and belief, press releases, analysts' statements, accounting fraud and scienter. March 30, 2001 Order at 12-22.

DISCUSSION

I. Legal Standard

A. *Rule 12(b)(6)*

[*6] A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle it to relief. *See Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); Fidelity Fin. Corp. v. Fed. Home Loan Bank of San Francisco, 792 F.2d 1432, 1435 (9th Cir. 1986)*. Dismissal of a complaint can be based on either the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)*.

All material allegations in the complaint will be taken as true and construed in the light most favorable to

the plaintiff. *See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986)*. However, "conclusory allegations without more are insufficient to defeat a motion to dismiss." *McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988)*.

Although generally a court may not consider material beyond the pleadings in ruling on a *Rule 12(b)(6)* motion, material which has been properly submitted as part of the complaint may be considered. [*7] *See Cooper v. Pickett, 137 F.3d 616, 623 (9th Cir. 1997); see also Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987)*. Moreover, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a *Rule 12(b)(6)* motion to dismiss." *Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)*. A court may also consider documents which are not expressly incorporated into the complaint, but "upon which the plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998)*.

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave was amend, even if no request to amend the pleading was made, unless amendment would be futile. *See Cook, Perkiss & Liehe, Inc. v. Northern Cal. Coll. Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990)*. In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [*8] [the] original complaint." *Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990)*. Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. *See id. at 296-97*.

B. Pleading Requirements

In 1995, Congress enacted the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. No. 104-67, which amends the Securities Exchange Act of 1934. Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person to "use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." *15 U.S.C. § 78j(b); see also 17 C.F.R. § 240.10b-5 (Rule 10b-5)*. To state a claim under § 10(b), a plaintiff must allege: "(1) a misrepresentation or omission

of material fact, (2) reliance, (3) scienter, and (4) resulting damages." *Paracor, 96 F.3d at 1157; see also McCormick v. Fund Am. Cos., 26 F.3d 869, 875 (9th Cir. 1994)*.

Plaintiffs must plead [*9] securities fraud with particularity, pursuant to *Rule 9(b) of the Federal Rules of Civil Procedure. See In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1543 (9th Cir. 1994)* (en banc) *(GlenFed I)*. Further, although *Rule 9(b)* does not require that scienter be plead with particularity, *see Concha v. London, 62 F.3d 1493, 1503 (9th Cir. 1995)*, the PSLRA does. *See 15 U.S.C. § 78u-4(b)(2)*.

1. Circumstances Constituting Fraud

*Rule 9(b)* provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985)*. The PSLRA requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the [*10] complaint shall state with particularity all facts on which that belief is formed." *15 U.S.C. § 78u-4(b)(1)*.

Except with respect to allegations made on information and belief, the PSLRA pleading standard for allegations about the circumstances constituting fraud is the same as the Ninth Circuit's pre-PSLRA standard. Before the enactment of the PSLRA, plaintiffs already were required to plead specifically the time, place and nature of the alleged misrepresentations, *see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987)*, and to explain why each alleged misstatement or omission was false or misleading when made, *see GlenFed I, 42 F.3d at 1549*.

The PSLRA's requirement regarding allegations plead on information and belief is somewhat stricter than the Ninth Circuit's pre-PSLRA standard. For allegations made on information and belief, pre-PSLRA case law in the Ninth Circuit required "a statement of the facts upon which the belief is founded," *see Wool, 818 F.2d at 1439*, but did not expressly require that plaintiffs

specifically plead *all* facts upon which the belief was based. The PSLRA, however, [*11] requires exactly that. *See 15 U.S.C. § 78u-4(b)(1)*.

2. Scienter

The PSLRA provides that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *15 U.S.C. § 78u-4(b)(2)*. Because the instant action alleges violations of § 10(b), the "required state of mind" is defined by § 10(b). *See In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 975 (9th Cir. 1999)*.

Ninth Circuit case law prior to *Silicon Graphics* made clear that some forms of recklessness are sufficient to satisfy the element of scienter in a § 10(b) action. *See Nelson v. Serwold, 576 F.2d 1332, 1337 (9th Cir. 1978)*. Within the context of § 10(b) claims, the Ninth Circuit defines "recklessness" as

> a highly unreasonable omission [or misrepresentation], involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant [*12] or is so obvious that the actor must have been aware of it.

*Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1569 (9th Cir. 1990)* (en banc) (quoting *Sundstrand Corp. v. Sun Chem. Corp., 553 F.2d 1033, 1045 (7th Cir. 1977))*. As explained by the *Silicon Graphics* court, recklessness, as defined by *Hollinger,* is a form of intentional conduct, not merely an extreme form of negligence. *See 183 F.3d at 976-77*. Thus, although § 10(b) claims can be based on reckless conduct, the recklessness must "reflect[] some degree of intentional or conscious misconduct." *See id. at 977*. The *Silicon Graphics* court refers to this subspecies of recklessness as "deliberate recklessness." *See id. at 977*. [1]

1 At least one district court in this circuit has concluded that the "deliberate recklessness" standard is a more stringent standard than the one set forth in *Hollinger. See In re Southern Pacific Funding Corp. Sec. Litig., 83 F. Supp. 2d 1172,*

*1177 (D. Or. 1999)*. Although it recognized that "there is language in *[Silicon Graphics]* that suggests that it is merely restating the standard set forth in *Hollinger,*" the *Southern Pacific* court concluded that *Silicon Graphics*" raised the substantive standard applicable to § 10(b) claims." *See id.* Read in that manner, *Silicon Graphics* overturns *Hollinger.* Because *Hollinger* was an en banc decision, while *Silicon Graphics* was not, this reading cannot be correct. *See United States v. Aguilar, 883 F.2d 662, 690 n.25 (9th Cir. 1989)* ("a panel not sitting en banc has no authority to overturn Ninth Circuit precedent"). This Court therefore concludes that the "deliberate recklessness" standard in *Silicon Graphics* is the same as the standard discussed in *Hollinger.*

[*13] The PSLRA thus requires that a plaintiff plead with particularity "facts giving rise to a strong inference that the defendant acted with," at a minimum, deliberate recklessness. *See 15 U.S.C. § 78u-4(b)(2)*; *Silicon Graphics, 183 F.3d at 977*. Facts that establish a motive and opportunity, or circumstantial evidence of "simple recklessness," are not sufficient to create a strong inference of deliberate recklessness. *See 183 F.3d at 979*. In order to satisfy the heightened pleading requirement of the PSLRA for scienter, plaintiffs "must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Id.*

II. Third Amended Consolidated Complaint (TACC)

In the TACC, Plaintiffs fail to plead facts that give rise to a strong inference of deliberate recklessness. Plaintiffs also fail, for the most part, adequately to plead that statements in analysts' reports are attributable to Defendants through the conduct theory. [2]

2 Plaintiffs successfully resolved the inadequacy of most, but not all, of their allegations based on information and belief by pleading their sources with more particularity. Because the Court dismisses the TACC for lack of scienter, it does not address this pleading issue.

[*14] A. Scienter

In order to satisfy the heightened pleading requirement of the PSLRA for scienter, plaintiffs "must state facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Silicon Graphics,*

*183 F.3d at 979.*

In the March 30, 2001 Order, the Court found that

> Plaintiffs' allegations of material misrepresentations and accounting fraud suggest the possibility of scienter, but do not give rise to a strong inference of deliberate recklessness. Absent more specific allegations regarding the internal meetings and discussions, the occurrence of such meetings raises no strong inference of deliberate recklessness. The allegations concerning accounting fraud reinforce this inference to a certain extent, but still support only an inference of non-deliberate recklessness.

March 30, 2001 Order at 21-22.

The Court held that "on the facts alleged, it is at least as likely that any false or misleading financial reports were the result of gross negligence or some lesser form of negligence rather than deliberate recklessness." *Id.* at 22. The Court pointed out that deliberate recklessness requires:

> not merely simple, [*15] or even inexcusable negligence, but an extreme departure from the standards of ordinary care, ... which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*Id.* (quoting *Silicon Graphics, 183 F.3d at 976* (quoting *Hollinger, 914 F.2d at 1569*)). The Court concluded: "Even considering all of the allegations concerning internal communications and meetings, improper recognition of revenue and insider sales, the SACC does not give rise to a strong inference of deliberate recklessness." *Id.* at 22.

In the TACC Plaintiffs allege that a strong inference of deliberate recklessness is created because two Defendants sold some of their Versant stock, Defendants attended meetings where the problems of both Versant and its products were discussed, Defendants received e-mails and customer complaints regarding Versant's product troubles, Defendants violated Generally Accepted Accounting Principles (GAAP) in reporting their second and third quarter 1997 results, and Defendants knowingly made false fourth quarter 1997 projections that were contradicted by internal [*16] reports.

The Court will address each of these bases for scienter in turn.

1. Insider Trading

The amount of the alleged sales by individual Defendants is not sufficiently large to create an inference of scienter. Trading by an officer or director raises an inference of scienter only if the trades are "in suspicious amount or at suspicious times" or "dramatically out of line with prior trading practices and at times calculated to maximize personal benefit from undisclosed inside information." *Silicon Graphics, 183 F.3d at 987.*

In the TACC, Plaintiffs have alleged insider trading as to two Defendants, Franzen and Lochry, and an insider non-Defendant, Pulkownik, for a total of 67,457 shares valued at $ 833,092. TACC PP 103-104. Plaintiffs include the sales of non-Defendant Pulkownik, which are irrelevant to alleging scienter against the named Defendants. *See, e.g., Plevy v. Haggerty, 38 F. Supp. 2d 816, 834 n.12 (C.D. Cal. 1998).* Absent Pulkownik's sales, Plaintiffs have alleged that Defendant Franzen sold 6,777 shares during the class period for a total of $ 96,667, and Defendant Lochry sold 29,651 shares for a total of $ 427,202.

The TACC alleges [*17] no sales by Defendants Banks, Rhea, and Kopeck and the sales it does allege (by Franzen and Lochry) amount to less than ten percent of the individual Defendants' pre-class shares during the class period. Plaintiffs allege no sales by the CFO or CEO, who are the speaking Defendants. These allegations of insider trading do not give rise to any inference of scienter. *See, e.g., Ronconi v. Larkin, 253 F.3d 423, 435 (9th Cir. 2001)* (no inference of scienter where the two insiders who made most of the representations at issue sold small percentages of their shares); *Silicon Graphics, 183 F.3d at 987-88* (no inference of scienter where most of insider class sales made by non-speaking defendant).

2. Internal Meetings, E-mails, Customer Complaints

The TACC relies on allegations of internal meetings

and discussions to show that Defendants were deliberately reckless. Absent allegations about the contents and timing of specific meetings, the fact that meetings were held every Monday or Friday to discuss the company and its products does not raise a strong inference of deliberate recklessness. *See* TACC PP 77-78; March 30, 2001 Order at 20.

Plaintiffs claim [*18] that at the one meeting that is specifically alleged, the August, 1997 sales meeting, sales people complained to management, including Banks, Franzen, Kopeck and Rhea, that Versant's products were hard to sell and that the sales force would be unable to make their sales quotas. TACC PP 59(e). But there are no public statements to the contrary alleged by Plaintiffs. Plaintiffs allege that this meeting alerted management that Versant "would not be able to make the quotas upon which management was basing its Plan and projections." *Id.* But these projections were internal only, and Plaintiffs have not alleged that they were made public. It is not fraudulent for a company to use internal financial projections that its sales force questions. This meeting does not even indicate falsity, much less deliberate recklessness.

Plaintiffs also rely on e-mails discussing problems with products, but these e-mails do not give rise to an inference of scienter because "much of any business consists of having problems and dealing with them." *Ronconi, 253 F.3d at 430.* Similarly, customer complaints, such as those Plaintiffs allege that Versant received from Buzzeo, which are received [*19] by every company, do not give rise to a strong inference of deliberate recklessness.

### 3. Violations of GAAP

As noted in this Court's prior order, "Plaintiffs' allegations of GAAP violations do not give rise to a strong inference of deliberate recklessness, even when considered in light of the totality of Plaintiffs' allegations." March 30, 2001 Order at 22. Plaintiffs have plead the accounting fraud allegations with slightly more particularity, but this does not increase the inference of scienter that can be drawn from such allegations. Even if everything occurred as Plaintiffs allege, Defendants' actions regarding the Department of Defense, Buzzeo, and other transactions support allegations of negligence or non-deliberate recklessness, rather than the deliberate recklessness which Plaintiffs must plead.

### 4. Fourth Quarter Projections and Internal Reports

Plaintiffs allege that internal financial reports showing a poor October, 1997, which Plaintiffs attached to the TACC, give rise to a strong inference that Defendants were deliberately reckless in making positive fourth quarter projections. There are several problems with Plaintiffs' theory.

First, Defendants did not make any fourth [*20] quarter projections to the public. All of the fourth quarter projections alleged in the TACC were made by analysts and were clearly the opinion of the analyst, not a statement by any Defendant. TACC PP 49, 50, 52, 55. Because no Defendant made a fourth quarter projection to the public, the internal reports cannot establish the falsity of any statement, much less suggest scienter.

Second, the internal reports attached by Plaintiffs do not give rise to a strong inference of scienter. The Ninth Circuit pointed out in *Ronconi* that the plaintiffs failed to plead facts in the complaint "that would support an inference that the company's more optimistic predictions were known to be false at the time by the people who made them." *Ronconi, 253 F.3d at 430.* [3] Similarly, Plaintiffs here cannot show that Defendants were deliberately reckless, much less had knowledge, that their fourth quarter projections were false. The internal reports at issue are for October, 1997, the first month of Versant's fourth quarter. It is not reasonable to infer that Defendants knew or were deliberately reckless in believing, after one month, that their predictions for the quarter as a whole [*21] were false.

> 3 The Ninth Circuit did not explicitly hold that predictions must be "known to be false at the time" to satisfy the scienter requirement, but this appears to be the import of the decision. Nevertheless, this Court applies the "deliberate recklessness" standard to the projections at issue here.

As illustrated by the argument between the parties as to what the internal reports signify, one can reasonably come to different conclusions about whether the internal reports should have put Defendants on notice that they would not meet their fourth quarter plan. Plaintiffs point out that a document entitled "Consolidated Financial Summary October and Q4 Forecast" shows the Company below its plan after a disappointing October. TACC P 59(a) and Ex. F. Defendants point out that the same

document states that "the business opportunities exist to meet the license sales plan late in the quarter" and "the forecast from services indicates that Q4 revenue plan will be met." TACC Ex. F. This internal report does not [*22] create a strong inference of deliberate recklessness on Defendants' part (even if they had made a public projection), because it indicates both that October was disappointing and also that management was hopeful that Q4 would still come in on plan. [4]

> [4]    The undated "Consolidated Statement of Operations" document also cited by Plaintiffs similarly does not show that Defendants knew their projections for Q4 were false.

B. Analysts' Statements

Plaintiffs' allegations regarding misleading statements made by third-party analysts do not provide, for the most part, any reason to attribute those statements to Defendants. A defendant can be held liable for false or misleading statements made by a third-party analyst if the defendant either expressly or impliedly adopts or endorses the statements, *see In re Syntex Corp. Sec. Litig., 95 F.3d 922, 934 (9th Cir. 1996)*, or provides the analyst with false or misleading information with the intent that the analyst will communicate that information to the market [*23] (the conduit theory), *see Cooper, 137 F.3d at 624*; *Warshaw v. Xoma Corp., 74 F.3d 955, 959 (9th Cir. 1996)*.

Plaintiffs do not plead that Versant endorsed or adopted the analysts' statements, and do not plead the conduit theory with the requisite particularity except in two instances. Plaintiffs necessarily have to plead Defendants' alleged conversations with analysts on information and belief, but Plaintiffs have failed to plead with particularity all facts supporting their belief.

Although Plaintiffs quote the analysts' reports, which contain statements such as "meeting with Management confirms," "Management believes," and "Management indicated," *see, e.g.,* TACC PP 38 & 50, these are not direct statements by Defendants and must still somehow be linked to them. Plaintiffs fail to accomplish this in the TACC for the most part. Rather than provide facts supporting their belief in this information, Plaintiffs rely on boilerplate, stating multiple times that analysts' reports were "based upon conversations with and repeated information provided by Versant's management." *See, e.g.,* TACC PP 29, 35, 38, 40, 44. Plaintiffs' only support

for this [*24] allegation is that Banks and Rhea were the two officers who regularly met with analysts. This is insufficient for information and belief pleading, for every company has officers who are designated to communicate with analysts.

Only two meetings with analysts are plead with sufficient particularity under the conduit theory that statements in the analysts' reports could be attributable to Defendants. Plaintiffs plead:

> On November 12, 1997, Versant executives, including Rhea, met with Brosseau and told him that Versant's business trends were healthy, that the fourth quarter was on track and that the Company was actually pushing out revenue to the next quarter.

TACC P 50. The statements in the ensuing report that explicitly cite the meeting with management are actionable. Similarly, Plaintiffs also plead: "On or about January 8, 1998, Versant management, including Rhea, told Brosseau that overall fourth quarter results and business momentum remained strong." TACC P 58. Again, because Plaintiffs adequately plead that certain officers on a particular date told an analyst particular things, which were then repeated in the analyst's report and attributed to management, such [*25] statements are actionable. However, as stated above, Plaintiffs still have not demonstrated that Defendants made such statements with deliberate recklessness as to their truth or falsity. [5]

> [5]    The statements at issue which have been adequately attributed to Defendants include vague comments such as "[a] quick meeting with Versant management yesterday reiterated several positive themes we've been espousing regarding object DBMS." TACC P 50. Such a statement is not actionable in any event, because it is too vague to be material to a reasonable investor.

CONCLUSION

For the foregoing reasons, Plaintiffs' complaint is dismissed with prejudice. Because the TACC does not adequately plead a § 10(b) violation, it necessarily follows that Plaintiffs have failed adequately to plead § 10(b) liability against any of the individual Defendants. Section 20(a) liability for controlling persons, which the TACC alleges against Versant and all of the individual

2001 U.S. Dist. LEXIS 25009, *25

Defendants, is predicated on the § 10(b) claim. Because Plaintiffs [*26] have not adequately plead their § 10(b) claim, the § 20(b) claim is dismissed. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' TACC (Docket No. 106), and dismisses Plaintiffs' TACC with prejudice.

IT IS SO ORDERED.

Dated: DEC-4 2001

CLAUDIA WILKEN

United States District Judge