UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
                                                      :    **ECF CASE**
In re MERRILL LYNCH & CO., INC.                       :
SECURITIES, DERIVATIVE AND ERISA                      :    MASTER FILE NO.
LITIGATION                                            :    07cv9633 (LBS) (AJP) (DFE)
                                                      :
This Document relates to:                             :
Securities Action, 07cv9633 (LBS) (AJP) (DFE)         :
-----------------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT AHMASS L. FAKAHANY'S MOTION TO DISMISS THE
# CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Milbank, Tweed, Hadley & McCloy LLP
 James N. Benedict
 George S. Canellos
 Andrew W. Robertson
 Michael B. Weiner
One Chase Manhattan Plaza
New York, NY  10005-1413
Telephone:  (212) 530-5000

*Attorneys for Defendant Ahmass L. Fakahany*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................. 2

ARGUMENT .................................................................................................... 3

I.    Plaintiffs Fail to State a Claim Against Fakahany Under Section 10(b) or SEC Rule 10b-5................................................................................................ 3

    A.    Plaintiffs Fail to Plead Fraud with Particularity as to Fakahany. .......................... 3

        1.    The Complaint Fails to Plead Sufficient Specific Facts About Fakahany's Role in the Alleged Fraud....................................................... 4

        2.    Plaintiffs' Apparent Reliance on the Group Pleading Doctrine Is Unavailing.................................................................................. 6

    B.    Plaintiffs Fail to Establish a Strong Inference that Fakahany Acted with Scienter. .................................................................................................. 9

        1.    The Most Compelling Inference Is that Fakahany Acted in Good Faith. .................................................................................... 10

        2.    Plaintiffs Fail to Allege that Fakahany Had a Motive to Commit the Alleged Fraud.................................................................... 11

            a.    Plaintiffs' Allegations Regarding Fakahany's Sales of Stock Are Insufficient to Support an Inference of Scienter......... 11

            b.    Plaintiffs' Remaining Allegations of Motive Are Insufficient to Support an Inference of Scienter. ......................... 14

        3.    Plaintiffs Fail to Allege Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness by Fakahany............................ 15

            a.    Fakahany's Reports to Merrill's Board of Directors and Senior Management Do Not Support an Inference of Scienter. ............................................................................... 15

            b.    Plaintiffs' Group Pleading Allegations Are Insufficient to Support an Inference of Scienter as to Fakahany......................... 17

II.    Plaintiffs Fail to State a Claim Against Fakahany Under Section 20(a)......................... 18

    A.    Plaintiffs Fail to Allege a Primary Violation of the Exchange Act. .................... 18

    B.    Plaintiffs Fail to Allege Culpable Participation by Fakahany. ............................ 18

CONCLUSION................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**CASES**

<u>Acito v. IMCERA Group</u>,
  47 F.3d 47 (2d Cir. 1995) ......................................................................... 11, 12, 14

<u>Beck v. Mfrs. Hanover Trust Co.</u>,
  820 F.2d 46 (2d Cir. 1987) ................................................................................. 15

<u>Boguslavsky v. Kaplan</u>,
  159 F.3d 715 (2d Cir. 1998) ................................................................................ 18

<u>Bond Opportunity Fund v. Unilab Corp.</u>,
  No. 99 Civ. 11074 (JSM), 2003 U.S. Dist. LEXIS 7838 (S.D.N.Y. May 9, 2003) .................. 7

<u>City of Brockton Ret. Sys. v. The Shaw Group Inc.</u>,
  540 F. Supp. 2d 464 (S.D.N.Y. 2008) ................................................................... 13

<u>Denny v. Barber</u>,
  576 F.2d 465 (2d Cir. 1978) .................................................................................. 1

<u>Edison Fund v. Cogent Inv. Strategies Fund, Ltd.</u>,
  No. 06-4045, 2008 U.S. Dist. LEXIS 25917 (S.D.N.Y. Mar. 31, 2008) ................................ 18

<u>Elliott Assocs., L.P. v. Hayes</u>,
  141 F. Supp. 2d 344 (S.D.N.Y. 2000) ..................................................................... 8

<u>Ernst & Ernst v. Hochfelder</u>,
  425 U.S. 185 (1976) ............................................................................................ 9

<u>Faulkner v. Verizon Commc'ns, Inc.</u>,
  156 F. Supp. 2d 384 (S.D.N.Y. 2001) ................................................................... 11

<u>Globis Capital Partners v. Stonepath Group, Inc.</u>,
  No. 06-2560, 2007 WL 1977236 (3d Cir. July 10, 2007) ..................................... 11, 15

<u>Howard v. Everex Sys., Inc.</u>,
  228 F.3d 1057 (9th Cir. 2000) ............................................................................... 7

<u>In re Alstom S.A. Sec. Litig.</u>,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) ................................................................... 18

<u>In re AstraZeneca Sec. Litig.</u>,
  No. 05 Civ. 2688 (TPG), 2008 U.S. Dist. LEXIS 43680
  (S.D.N.Y. Jun 3, 2008) ...................................................................... 9, 12, 13, 17

<u>In re BISYS Sec. Litig.</u>,
  397 F. Supp. 2d 430 (S.D.N.Y. 2005) ................................................................ 7, 17

<u>In re Carter-Wallace, Inc. Sec. Litig.</u>,
  220 F.3d 36 (2d Cir. 2000) ................................................................................. 15

In re Citigroup, Inc. Sec. Litig.,
   330 F. Supp. 2d 367 (S.D.N.Y. 2004) ................................................................ 8

In re Credit Acceptance Corp. Sec. Litig.,
   50 F. Supp. 2d 662 (E.D. Mich. 1999)............................................................... 14

In re Cross Media Mktg. Corp. Sec. Litig.,
   314 F. Supp.2d 256 (S.D.N.Y. 2004) ................................................................. 7

In re Cyberonics Inc. Sec. Litig.,
   523 F. Supp. 2d 547 (S.D. Tex. 2007) .............................................................. 17

In re Duane Reade Inc. Sec. Litig.,
   No. 02 Civ. 6478 (NRB), 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003) ............................ 14

In re Keyspan Corp. Sec. Litig.,
   383 F. Supp. 2d 358 (E.D.N.Y. 2003) ...................................................... 12, 13, 14

In re Vivendi Universal, S.A. Sec. Litig.,
   381 F. Supp. 2d 158 (S.D.N.Y. 2003) ................................................................ 8

In re WRT Energy Sec. Litig.,
   Nos. 96 Civ. 3610 (JFK), 96 Civ. 3611 (JFK), 1997 WL 576023
   (S.D.N.Y. Sept. 15, 1997), vacated on other grounds by 75 F. App'x 839 (2d Cir. 2003) ...... 17

In re Yukos Oil Co. Sec. Litig.,
   No. 04-C5423 (WHP), 2006 U.S. Dist. LEXIS 78067 (S.D.N.Y. Oct. 25, 2006)..................... 9

Kalnit v. Eichler,
   264 F.3d 131 (2d Cir. 2001) ...................................................................... 9, 15

Makor Issues & Rights, Ltd. v. Tellabs, Inc.,
   437 F.3d 588 (7th Cir. 2006),
   vacated on other grounds by 127 S. Ct. 2499 (2007) ................................................ 7

Malin v. XL Capital Ltd.,
   499 F. Supp. 2d 117 (D. Conn. 2007)..................................................... 11, 12, 13, 14

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,
   547 U.S. 71 (2006)................................................................................... 1

Mizzaro v. Home Depot, Inc.,
   No. 1:06-CV-11510, 2007 WL 2254693 (N.D. Ga. July 18, 2007) ................................... 18

Novak v. Kasaks,
   216 F.3d 300 (2d Cir. 2000) .................................................................. 9, 11, 14

Ressler v. Liz Claiborne, Inc.,
   75 F. Supp. 2d 43 (E.D.N.Y. 1998) ................................................................ 13

Rombach v. Chang,
   355 F.3d 164 (2d Cir. 2004) .................................................................... 15, 18

Rothman v. Gregor,
   220 F.3d 81 (2d Cir. 2000) ....................................................................... 12

Schwartz v. Celestial Seasonings, Inc.,
    124 F.3d 1246 (10th Cir. 1997) ......................................................................... 7

Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,
    365 F.3d 353 (5th Cir. 2004) ..................................................................... 4, 7, 12

Stander v. Fin. Clearing & Servs. Corp.,
    718 F. Supp. 1204 (S.D.N.Y. 1989) ................................................................... 4

Steinberg v. Sherman,
    No. 07 Civ. 1001 (WHP), 2008 U.S. Dist. LEXIS 37367 (S.D.N.Y. May 8, 2008) ................. 8

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    127 S. Ct. 2499 (2007) ............................................................................ 1, 9, 10

Winer Family Trust v. Queen,
    503 F.3d 319 (3d Cir. 2007) .................................................................... 4, 6, 7, 8

Yung v. Lee,
    160 F. App'x 37 (2d Cir. 2005) ......................................................................... 7

## STATUTES

15 U.S.C. § 78u-4 .................................................................................... 1, 3, 4, 9

## RULES

Fed. R. Civ. P. 9(b) ....................................................................................... 3

## OTHER AUTHORITIES

Gregory Zuckerman et al.,
    Impact of Mortgage Crisis Spreads, Wall St. J., Aug. 10, 2007 ............................................... 16

Defendant Ahmass L. Fakahany respectfully joins in the motion of Defendant Merrill Lynch & Co., Inc. ("Merrill" or the "Company") to dismiss the Consolidated Amended Class Action Complaint (the "Complaint"), and submits this memorandum of law in support of his own motion to dismiss the claims asserted against him pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.[1]  This memorandum focuses on Plaintiffs' failure to allege with particularity Fakahany's participation in the alleged fraud or to establish the strong inference of scienter mandated by the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4.

## PRELIMINARY STATEMENT

Congress enacted the PSLRA to curb meritless and abusive private lawsuits against companies and their senior management.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2504 (2007); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 81 (2006).  Among the protections created by the PSLRA are the requirements that plaintiffs: (1) plead fraud with particularity, including by specifically identifying each defendant's role in the alleged fraud; and (2) allege specific facts creating a strong inference that each defendant acted with scienter.  See Tellabs, 127 S. Ct. at 2504; Dabit, 547 U.S. at 81-82.  Application of the PSLRA's strict pleading standards is especially important where, as here, the allegations of fraud are based on industry-wide downturns, which are easily susceptible to claims of "fraud by hindsight."  See Denny v. Barber, 576 F.2d 465 (2d Cir. 1978).  (See also Merrill Defs.' Mem. at 18-27 (discussing industry-wide impact of downturn in credit and housing markets in 2007).)

Plaintiffs' allegations concerning Fakahany fail to satisfy the PSLRA's strict pleading standards.  Although three law firms had six months to investigate their claims that Merrill's

---

[1]    Fakahany is not named as a defendant for purposes of Plaintiffs' claims under the Securities Act of 1933 or Section 14(a) of the Exchange Act.

disclosures about its CDO business were false and misleading, the massive Complaint that they have produced contains only <u>five</u> distinct allegations about Fakahany. The allegations consist of a general description of Fakahany's role and responsibilities at Merrill and allegations that he provided reports to Merrill's Board of Directors and other members of senior management about Merrill's CDO business in July and August 2007, that he signed Merrill's Form 10-Q for the third quarter of 2007 in November 2007, that he sold a small percentage of his holdings of Merrill stock, and that he voluntarily resigned from Merrill in February 2008. These five allegations fail to establish what role, if any, Fakahany played in the alleged fraud and do not provide the slightest support for an inference that Fakahany acted with scienter, much less establish the "strong inference" of fraud mandated by the PSLRA.

## <u>BACKGROUND</u>

Fakahany enjoyed a long and distinguished career at Merrill Lynch. He worked at the Company for 20 years and, during that time, served in various senior management positions, most recently as co-President and COO.

Fourteen of the 686 paragraphs in the Complaint mention Fakahany. The essential allegations of these paragraphs are as follows:

- Fakahany was co-President and COO of Merrill during the Class Period and, in that capacity, had various responsibilities for managing the Company, including serving on the Executive Committee and overseeing certain risk-management functions. (Compl. ¶¶ 71, 94.)

- During the third quarter of 2007, Fakahany provided reports to Merrill's Board of Directors and other members of senior management regarding developments in the credit and housing markets and their impact on Merrill's CDO business. (Id. ¶ 112 ("[A]t the end of July 2007, defendant Fakahany . . . warned Merrill's board of directors and [members of senior management] of the mounting risk Merrill faced from CDOs and subprime MBS."); id. ¶ 113 ("On August 9, 2007, Defendants Fakahany and Fleming sent a three-page letter . . . to Merrill's directors [and members of senior management] discussing the mounting losses and troubles facing the Company's CDO exposure and

explaining that significant deterioration in the business had taken place in July."); see also id. ¶¶ 11, 71.)

- Fakahany signed Merrill's Form 10-Q for the third quarter of 2007.[2] (Id. ¶ 325.)

- Fakahany sold a small percentage of his holdings of Merrill stock at the outset of the Class Period. (Id. ¶ 197 (alleging sales of stock by Fakahany in October 2006 and February 2007); see also id. ¶¶ 10, 25, 71.)

- Fakahany voluntarily resigned from Merrill Lynch effective February 1, 2008. (Id. ¶¶ 71, 331.)

The Complaint also includes hundreds of references to the "Exchange Act Defendants," a collective designation for Merrill Lynch and all of the Individual Defendants. (See id. ¶ 14.) It makes various allegations about the Exchange Act Defendants' collective knowledge of certain facts that allegedly made Merrill's disclosures regarding its CDO business misleading, and participation in certain acts in furtherance of the alleged fraud. (See, e.g., id. ¶¶ 116-123.) The Complaint, however, does not specify whether, how, or when Fakahany learned about any of these facts or participated in any of these acts.

## ARGUMENT

I. **PLAINTIFFS FAIL TO STATE A CLAIM AGAINST FAKAHANY UNDER SECTION 10(B) OR SEC RULE 10B-5.**

A. **Plaintiffs Fail to Plead Fraud with Particularity as to Fakahany.**

Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA require that claims for fraud be pled with particularity. See Fed. R. Civ. P. 9(b); 15 U.S.C. § 78u-4(b)(1). Plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on

---

[2]    Fakahany and Defendant Fleming signed the 10-Q for the third quarter of 2007 because Merrill did not have an acting CEO at the time.

information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B).

The PSLRA's particularity requirement extends to each defendant individually, and the complaint must include specific allegations as to each individual defendant's role in the alleged fraud. See Stander v. Fin. Clearing & Servs. Corp., 718 F. Supp. 1204, 1210 (S.D.N.Y. 1989) ("[W]here there are multiple defendants, . . . the complaint must disclose the specific nature of each defendant's participation in the alleged fraud."); Winer Family Trust v. Queen, 503 F.3d 319, 335-36 (3d Cir. 2007) ("The PSLRA requires plaintiffs to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions."); Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 364-65 (5th Cir. 2004) ("[T]he PSLRA requires the plaintiffs to distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud.") (emphasis in original) (quotations omitted).

> 1.    **The Complaint Fails to Plead Sufficient Specific Facts About Fakahany's Role in the Alleged Fraud.**

The Complaint's five allegations about Fakahany are insufficient to establish the role, if any, that Fakahany played in the alleged fraud. Accordingly, they fail to satisfy the requirements of Rule 9(b) and the PSLRA that fraud be pled with particularity.

First, the Complaint's allegations regarding Fakahany's general role and responsibilities as co-President and COO of Merrill (Compl. ¶ 71) are plainly insufficient to satisfy the PSLRA's strict pleading standards. See Southland Sec., 365 F.3d at 365 (mere allegations of an individual defendant's position and job responsibilities do not satisfy the PSLRA). Indeed, the entirety of the relevant allegations is that "Fakahany, along with Edwards, was responsible for and managed the control groups that managed credit and market risk." (Compl. ¶ 71.)

4

Second, that Fakahany provided reports to Merrill's Board of Directors and other members of senior management regarding developments in the credit and housing markets and their impact on Merrill's CDO business in the third quarter of 2007 (id. ¶¶ 112-113) does not establish Fakahany's role in any alleged fraud. There are no details alleged regarding these reports, which were made as the events that ultimately led to the historic credit crisis were unfolding. At best, they show that, at the end of July, there was discussion of unspecified "mounting risk" relating to Merrill's CDOs (id. ¶ 112) and that, in August, there was discussion of unquantified "mounting losses and troubles facing the Company's CDO exposures" and "significant deterioration in this business [that] had taken place in July." (Id. ¶ 113.) Plaintiffs fail to allege any facts connecting Fakahany's reports to the Board and senior management to any of the alleged misrepresentations in the Complaint. For example, they do not allege that Fakahany's reports called into question the accuracy of the Company's prior disclosures or that any specific information discussed in Fakahany's reports should have been, but was not, included in the Company's subsequent disclosures.

Third, that Fakahany signed Merrill's Form 10-Q for the third quarter of 2007 (id. ¶ 325) does not establish his role in the alleged fraud. Notably, Plaintiffs concede that the 10-Q for the third quarter of 2007 included an extensive discussion of Merrill's CDO business and disclosed substantial markdowns in connection with that business, thereby disclosing the facts that Plaintiffs allege to have been undisclosed throughout much of the Class Period. (Id. ¶¶ 321-323.) Indeed, Plaintiffs' only explanation as to why the 10-Q for the third quarter of 2007 was misleading is that Merrill allegedly should have (1) used a different, but unspecified, methodology to value its CDOs, and (2) made certain disclosures with respect to its hedging activities. (Id. ¶ 324.) However, there are no allegations that Fakahany had any role in selecting

the methodology used to value the CDOs or, for that matter, that he was aware of the methodology that was used.  Moreover, as discussed in the Merrill Defendants' brief, these alleged deficiencies are not sufficient to state a claim for fraud in any event.  (See Merrill Defs.' Mem. § I.E.)

Fourth, the Complaint's allegations that Fakahany sold small portions of his holdings of Merrill stock in October 2006 and February 2007 (Compl. ¶ 197) do not shed any light on Fakahany's role in the alleged fraud.  That Fakahany sold stock during the Class Period says nothing about whether or to what extent he was involved in the making of any of the alleged misrepresentations.

Finally, the Complaint's allegations that Fakahany voluntarily resigned from Merrill after the end of the Class Period (id. ¶ 331) does not establish Fakahany's role in the alleged fraud. Indeed, Plaintiffs nowhere allege that Fakahany's departure was related in any way to the alleged fraud.

## 2.    Plaintiffs' Apparent Reliance on the Group Pleading Doctrine Is Unavailing.

Plaintiffs' remaining allegations regarding the collective knowledge and acts of the "Exchange Act Defendants" are not sufficiently particularized to establish Fakahany's role in the alleged fraud.  In making these allegations, Plaintiffs apparently seek to invoke the so-called "group pleading doctrine," which "is a judicial presumption that statements in group-published documents including annual reports and press releases are attributable to officers and directors who have day-to-day control or involvement in regular company operations."  Winer Family Trust, 503 F.3d at 335.

However, a majority of courts — including every Court of Appeals to have directly addressed the issue — have held that the PSLRA's particularity requirements eliminated the

group pleading doctrine.  See id. at 336-37 ("We . . . hold the group pleading doctrine is no longer viable in private securities actions after the enactment of the PSLRA."); Southland Sec., 365 F.3d at 365-66 ("[T]he PSLRA requires the plaintiffs to distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud.") (emphasis in original) (quotations omitted); Makor Issues & Rights, Ltd. v. Tellabs, Inc., 437 F.3d 588, 602-03 (7th Cir. 2006) (following Southland Sec.), vacated on other grounds by 127 S. Ct. 2499, 2510-11 n.6 (2007).[3]  See also In re Cross Media Mktg. Corp. Sec. Litig., 314 F. Supp.2d 256, 262 (S.D.N.Y. 2004); Bond Opportunity Fund v. Unilab Corp., No. 99 Civ. 11074 (JSM), 2003 U.S. Dist. LEXIS 7838, at *14 (S.D.N.Y. May 9, 2003).[4]

This Court should likewise reject Plaintiffs' use of group pleading here.  The allegations in the Complaint about Fakahany are plainly insufficient to establish his role in the alleged fraud.  To nevertheless allow claims for fraud to proceed against him based on the assumption that, because he was a member of senior management, he is somehow responsible for all of the Company's public statements about its vast and complex operations would be entirely inconsistent with the PSLRA's requirement that claims for securities fraud be pled with particularity.

Even if the group pleading doctrine in some form survived the PSLRA, Plaintiffs' allegations with respect to Fakahany would nevertheless fail.  Even the courts that still recognize

---

[3]    The Second Circuit has not yet ruled on the issue, see Yung v. Lee, 160 F. App'x 37, 42 (2d Cir. 2005), and the Ninth and Tenth Circuits have continued to apply the group pleading doctrine without explicitly discussing whether it survives the PSLRA.  See, e.g., Howard v. Everex Sys., Inc., 228 F.3d 1057, 1061-63 (9th Cir. 2000); Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1257 (10th Cir. 1997).

[4]    Although some judges in this District have held that the group pleading doctrine has survived the PSLRA, see In re BISYS Sec. Litig., 397 F. Supp. 2d 430, 439-40 (S.D.N.Y. 2005), we respectfully submit that these cases are incorrectly decided because they fail to give effect to Congress's intent in enacting heightened pleading requirements for cases involving allegations of securities fraud.

it hold that the group pleading doctrine is "extremely limited in scope," Elliott Assocs., L.P. v. Hayes, 141 F. Supp. 2d 344, 354 (S.D.N.Y. 2000), and serves only as "a judicial presumption that statements in group-published documents including annual reports and press releases are attributable to officers and directors who have day-to-day control or involvement in regular company operations." Winer Family Trust, 503 F.3d at 335.

Importantly, the doctrine applies only to "group-published information," such as annual reports, SEC filings, and press releases, and it does not extend to oral statements made by individuals.[5]  At most, therefore, Plaintiffs could invoke the group pleading doctrine to establish a presumption that Fakahany, along with the other Individual Defendants, is responsible for the contents of Merrill's annual reports, SEC filings, and press releases during the Class Period.  The Complaint, however, is replete with allegations of allegedly false or misleading statements made during earnings conference calls, investor conferences, and annual meetings.  (See, e.g., Compl. ¶¶ 203, 214, 219, 229, 245-247, 251, 275, 278-279, 281.)  All of these statements were allegedly made by persons other than Fakahany, and none could be attributed to him under the group pleading doctrine.

Moreover, the group pleading doctrine has never been allowed to fill a gap in pleadings with respect to a defendant's knowledge of information that allegedly renders the company's disclosures false or misleading.  See In re Citigroup, Inc. Sec. Litig., 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004) (explaining that despite the group pleading doctrine, "Plaintiff must also allege facts sufficient to show that the Defendants had knowledge that the statements were false at the

---

[5]      See, e.g., Steinberg v. Sherman, No. 07 Civ. 1001 (WHP), 2008 U.S. Dist. LEXIS 37367, at *12 (S.D.N.Y. May 8, 2008) ("The group pleading exception . . . applies only to group-published documents, such as SEC filings and press releases, and not to oral statements.") (emphasis added) (citations and quotations omitted); In re Vivendi Universal, S.A. Sec. Litig., 381 F. Supp. 2d 158, 192 (S.D.N.Y. 2003) ("I agree, however, that oral statements made by other individual defendants do not fall within the ambit of the group pleading doctrine, and hence, oral statements made by [the CEO] may not be attributed to [the CFO].").

time they were made."). Nor would the group pleading doctrine, if it survives, in any way relieve Plaintiffs of their burden to establish through individualized pleading that Fakahany acted with scienter. See In re AstraZeneca Sec. Litig., No. 05 Civ. 2688 (TPG), 2008 U.S. Dist. LEXIS 43680, at *48 (S.D.N.Y. Jun 3, 2008) ("The group pleading doctrine cannot apply to create a presumption of scienter as to individual defendants."); In re Yukos Oil Co. Sec. Litig., No. 04-C5423 (WHP), 2006 U.S. Dist. LEXIS 78067, at **62-63 (S.D.N.Y. Oct. 25, 2006) ("[T]he group pleading doctrine has no effect on the PSLRA's scienter requirement.") (quotations omitted). Because, as discussed below, the Complaint fails to include particularized allegations with respect to Fakahany's scienter, the Complaint would have to be dismissed even if Plaintiffs could invoke group pleading to attribute certain corporate statements to him.

### B.    Plaintiffs Fail to Establish a Strong Inference that Fakahany Acted with Scienter.

Under the PSLRA, a complaint asserting securities fraud must plead particularized facts giving rise to a strong inference that the defendant acted with scienter. 15 U.S.C. § 78u-4(b)(2); see also Tellabs, 127 S. Ct. at 2504; Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976). An inference of scienter may be established by alleging particularized facts (1) showing that defendant had both motive and opportunity to commit fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness. See Kalnit, 264 F. 3d at 138; Novak v. Kasaks, 216 F.3d 300, 307-10 (2d Cir. 2000).

Regardless of the method of pleading employed, the resulting inference of scienter must be "strong" in order to state a claim. See 15 U.S.C. § 78u-4(b)(2). To be "strong" the inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 127 S. Ct. at 2510 (emphasis added). Indeed, even if the

9

inference of scienter is "reasonable" or "permissible," the court must dismiss the complaint if that inference is less compelling than any opposing non-culpable inference. Id. Plaintiffs' allegations regarding Fakahany are plainly insufficient under this standard.

> 1. **The Most Compelling Inference Is that Fakahany Acted in Good Faith.**

Numerous factors undermine any inference of fraudulent intent and support the contrary inference that Fakahany and the other Defendants acted in good faith. Many of these factors are discussed in the Merrill Defendants' brief. (See, e.g., Merrill Defs.' Mem. § I.C.) As detailed in that brief, for example, the write downs announced by Merrill beginning in October 2007 resulted from a severe market downturn; Merrill voluntarily disclosed information about its CDO business, including announcing significant estimated write downs one month prior to the filing of its financial reports for the third quarter of 2007; and the Company has not been required to restate its financial statements.

Two additional factors further evidence Fakahany's good faith. First, the Complaint acknowledges that, as the events that led to the credit crisis began to unfold in the third quarter of 2007, Fakahany sought to assess the impact of those market developments on Merrill's CDO business and reported his views to the Board and other members of senior management. (Compl. ¶¶ 112-113.) There is no allegation that Fakahany misrepresented his views or the underlying facts or otherwise acted to mislead the Board or senior management. These reports to the Board and senior management suggest a good faith effort by Fakahany to help manage the Company through a difficult market environment.

Second, Fakahany had an unusually strong financial interest in the long-term strength and performance of the Company. Indeed, annual bonuses for Fakahany and other members of senior management were paid primarily in the form of restricted stock, which vested over a

period of <u>four years</u>.  (<u>See</u> Declaration of Jay B. Kasner in Support of the Merrill Defendants'

Motion to Dismiss ("Kasner Decl."), Ex. JJ at 37.)  Moreover, Fakahany owned a substantial

amount of Merrill stock and options, and he retained nearly 90% of his overall holdings

throughout the Class Period.  (<u>See id.</u> at 31 (showing overall holdings of 937,197).)  Merrill's

compensation structure and Fakahany's holdings of Merrill stock aligned his interests with the

interests of shareholders and suggest that he had "every incentive to keep the company

profitable."  <u>Malin v. XL Capital Ltd.</u>, 499 F. Supp. 2d 117, 156 (D. Conn. 2007); <u>see also</u>

<u>Globis Capital Partners v. Stonepath Group, Inc.</u>, No. 06-2560, 2007 WL 1977236, at *4 (3d Cir.

July 10, 2007) ("[B]ecause appellees' interests were at all times tied to the value of their [stock

ownership in the company], we have no basis to infer the sort of conscious disregard and

deliberate ignorance required to plead scienter.") (quotations omitted).

> 2. **Plaintiffs Fail to Allege that Fakahany Had a Motive to Commit the Alleged Fraud.**

To plead scienter based on motive to commit fraud, Plaintiffs must make particularized

factual allegations showing that Fakahany realized "concrete benefits" by virtue of "one or more

of the false statements and wrongful nondisclosures alleged."  <u>Faulkner v. Verizon Commc'ns,</u>

<u>Inc.</u>, 156 F. Supp. 2d 384, 393 (S.D.N.Y. 2001) (citing <u>Novak</u>, 216 F.3d at 307).  Plaintiffs make

no such allegations regarding Fakahany.

> a. **Plaintiffs' Allegations Regarding Fakahany's Sales of Stock Are Insufficient to Support an Inference of Scienter.**

Insider sales of stock give rise to an inference of scienter only if the sales are "unusual."

<u>See</u> <u>Acito v. IMCERA Group</u>, 47 F.3d 47, 54 (2d Cir. 1995); <u>Malin</u>, 499 F. Supp. 2d at 150.  In

determining whether insider sales are unusual, courts consider "the amount of profit, the

percentage of shares sold, the timing of the sales, and the number of insiders trading."

AstraZeneca, 2008 U.S. Dist. LEXIS 43680, at *38 (citing Rothman v. Gregor, 220 F.3d 81, 94 (2d Cir. 2000)).

Plaintiffs allege that Fakahany "sold 66,488 shares of his personal holdings of Merrill on October 24 and 25, 2006 . . . and an additional 77,998 shares between February 5 and 6, 2008 . . . reaping proceeds of more than $13 million." (Compl. ¶ 197.) Tellingly, however, Plaintiffs fail to mention several critical facts that severely undermine any inference of scienter that could be drawn from Fakahany's sales of stock in October 2006 and February 2007.

First, Fakahany retained nearly 90% of his total holdings of stock and options throughout the Class Period. Indeed, each of Fakahany's sales during the Class Period represented less than 8% of his total holdings of stock and options. (See Kasner Decl., Ex. II at 35; Kasner Decl., Ex. JJ at 31.) Fakahany's sales of such a small percentage of his overall holdings cannot support an inference of scienter. See Acito, 47 F.3d at 54 (holding that low percentage of shares sold (11%) militates against an inference of scienter). In fact, courts have held that sales of substantially greater percentages of insiders' holdings were not indicative of scienter. See, e.g., Malin, 499 F. Supp. 2d at 153 (holding that sales of up to 30% of holdings insufficient to establish scienter); Southland Sec., 365 F.3d at 368-69 (holding that sales of 26%-33% of executives' stock did not raise a strong inference of scienter); In re Keyspan Corp. Sec. Litig., 383 F. Supp. 2d 358, 382-83 (E.D.N.Y. 2003) (finding no support for inference of scienter where individual defendants sold less than 20% of their available holdings) (collecting cases).

Second, even after the sales in October 2006 and February 2007, Fakahany continued to hold 937,197 shares of stock and options. (See Kasner Decl., Ex. JJ at 31.) Indeed, because most of Fakahany's performance compensation for the year 2006 consisted of grants of restricted stock, his overall ownership of stock and options increased, notwithstanding his sales during the

Class Period.  (Compare Kasner Decl., Ex. II at 35 (showing total beneficial ownership of stock and options of 833,430 before the sales), with Kasner Decl., Ex. JJ at 31 (showing total beneficial ownership of stock and options of 937,197 after the sales).)  Fakahany's net acquisition of Merrill stock and options undermines any inference of scienter that could be drawn from his sales of stock during the Class Period.  Malin, 499 F. Supp. 2d at 152 (holding that increased total holdings is "a fact wholly inconsistent with fraudulent intent") (quotations omitted); Keyspan, 383 F. Supp. 2d at 383 (citing Ressler v. Liz Claiborne, Inc., 75 F. Supp. 2d 43, 60 (E.D.N.Y. 1998)).

Third, Fakahany's sales of stock occurred at the outset of the alleged Class Period and nearly a year before the alleged fraud was disclosed.  This timing is inconsistent with any inference that Fakahany was motivated to participate in the alleged fraud in order to sell stock at inflated prices.  See City of Brockton Ret. Sys. v. The Shaw Group Inc., 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008) (holding that insider sales more than 10 weeks before the end of a putative class period do not support an inference of scienter).  Plaintiffs offer no explanation for why Fakahany would have participated in an ever-expanding fraud for nearly a year subsequent to his last sales of stock if his objective was to carry out a pump-and-dump scheme.  See AstraZeneca, 2008 U.S. Dist. LEXIS 43680, at **39-40 (refusing to draw inference of scienter where insider sales preceded many of the alleged misrepresentations).

Finally, Defendant Edwards, Merrill's CFO during the Class Period, is not alleged to have sold any of his Merrill stockholdings.  As Plaintiffs allege that Edwards signed many of the allegedly misleading statements and made many of the alleged misrepresentations, Edwards presumably would have wanted to reap the benefits of the alleged fraud by selling some of his own stockholdings.  That Edwards did not sell any stock further erodes any inference of scienter

that could possibly be drawn from Fakahany's sales of relatively small amounts of stock early in the alleged Class Period.  See In re Credit Acceptance Corp. Sec. Litig., 50 F. Supp. 2d 662, 677 (E.D. Mich. 1999) (holding that because "the CFO would have been an essential participant in any fraudulent scheme to defraud the company . . . [t]he fact that he did not sell any shares during the class period undermines the suggestion that the Defendants engaged in securities fraud in order to profit from their own stock sales."); see also Acito, 47 F.3d at 54;  Malin, 499 F. Supp. 2d at 152; Keyspan, 383 F. Supp. 2d at 383-84.

  b.  **Plaintiffs' Remaining Allegations of Motive Are Insufficient to Support an Inference of Scienter.**

  Plaintiffs' remaining allegations with respect to motive are that Fakahany and the other Defendants were motivated:  (1) "to keep Merrill's stock price . . . and its credit rating inflated . . . so that Merrill could issue over $5 billion of Preferred Securities and common stock at artificially inflated prices" (Compl. ¶ 185); and (2) "to conceal Merrill's true financial condition and to maximize their own compensation."  (Id. ¶ 192.)  Courts have consistently rejected such generalized allegations of motive as insufficient as a matter of law.  See, e.g., Novak, 216 F.3d at 307 (holding that a plaintiff cannot base allegations of motive on generic incentives possessed by almost all corporate executives, such as "the desire to maintain a high corporate credit rating . . . or . . . to sustain the appearance of corporate profitability or of the success of an investment . . . , [or] the desire to maintain a high stock price in order to increase executive compensation . . . or prolong the benefits of corporate office") (citations and quotations omitted); see also In re Duane Reade Inc. Sec. Litig., No. 02 Civ. 6478 (NRB), 2003 WL 22801416, at *8 (S.D.N.Y. Nov. 25, 2003) ("The Second Circuit has specifically held that the motive of keeping the corporation's stock price high (even if the point is to increase executive compensation) is not sufficient to sustain a plaintiff's pleading burden.").

Moreover, because the majority of Fakahany's annual performance bonus was paid in the form of restricted stock which vested over four years, he would realize no benefit from a short-term fraud that did long-term damage to the Company, thereby destroying the value of his restricted stockholdings.  See Rombach v. Chang, 355 F.3d 164, 177 (2d Cir. 2004); Globis Capital Partners, 2007 WL 1977236, at *4 ("[B]ecause appellees' interests were at all times tied to the value of their [stock ownership in the company], we have no basis to infer the sort of conscious disregard and deliberate ignorance required to plead scienter.") (quotations omitted).

3.    **Plaintiffs Fail to Allege Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness by Fakahany.**

To plead scienter by alleging "strong circumstantial evidence of conscious misbehavior or recklessness," Plaintiffs must allege particularized facts showing that Fakahany engaged in "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  Kalnit, 264 F.3d at 142 (quoting In re Carter-Wallace, Inc. Sec. Litig., 220 F.3d 36, 39 (2d Cir. 2000)).  Because Plaintiffs have failed to identify any apparent motive for Fakahany to commit the alleged fraud, "'the strength of the circumstantial allegations [of conscious misbehavior] must be correspondingly greater.'"  Id. (quoting Beck v. Mfrs. Hanover Trust Co., 820 F.2d 46, 50 (2d Cir. 1987)).  Plaintiffs' allegations with respect to Fakahany are woefully inadequate to create an inference of scienter under this standard.

a.    **Fakahany's Reports to Merrill's Board of Directors and Senior Management Do Not Support an Inference of Scienter.**

Plaintiffs allege that Fakahany "warned Merrill's board of directors and [members of senior management] of the mounting risk Merrill faced from CDOs and subprime MBS" at the end of July 2007 (Compl. ¶ 112) and that, on August 9, 2007, Fakahany, along with Defendant

Fleming, "sent a three page letter . . . to Merrill's directors [and members of senior management], discussing the mounting losses and troubles facing the Company's CDO exposure and explaining that significant deterioration in this business had taken place in July." (Id. ¶ 113.) These allegations do not give rise to an inference of conscious misbehavior or recklessness by Fakahany.

It is entirely unremarkable that Fakahany provided updates to Merrill's Board of Directors and other members of senior management regarding the adverse developments in the housing and credit markets and their impact on the Company's CDO business during late July and early August 2007. The problems in the credit markets that ultimately led to the credit crisis were unfolding during this period, and those events were the subject of attention from all manner of market participants, including Wall Street banks, ratings agencies, regulators, investors, and the media. See, e.g., Gregory Zuckerman et al., Impact of Mortgage Crisis Spreads, Wall St. J., Aug. 10, 2007, at A1. It is hardly indicative of wrongdoing that Fakahany and other members of Merrill's senior management in this period sought to analyze the impact of these events on the Company, including its CDO business, and updated the Company's Board about the developing problems in the credit sector.

Critically, the Complaint does not include any allegations suggesting that Fakahany's reports to the Board and other members of senior management were anything other than updates regarding market developments and their impact on Merrill's CDO business. The Complaint does not allege that Fakahany suggested in his reports that the Company had acted improperly in connection with the growth and development of its CDO business or that the Company's prior disclosures with respect to its CDO business were false, misleading, or otherwise deficient. Nor does it allege that Merrill's subsequent disclosures failed to report any specific information or

concerns expressed by Fakahany in his reports to the Board and other members of senior management.  As such, Plaintiffs' allegations regarding Fakahany's reports cannot support an inference of scienter.

### b.    Plaintiffs' Group Pleading Allegations Are Insufficient to Support an Inference of Scienter as to Fakahany.

The Complaint includes various allegations that the "Exchange Act Defendants" or unspecified members of "senior management" were aware of facts or events demonstrating that the Company's disclosures regarding its CDO business were false or misleading.  (See, e.g., Compl. ¶¶ 116-123 (alleging that the Exchange Act Defendants were aware of declines in the housing market and increasing defaults among subprime borrowers).)  These allegations, however, do not specify whether or to what extent each Individual Defendant was aware of these facts or events.  Accordingly, these allegations are not sufficiently particularized and cannot establish an inference of scienter on the part of Fakahany.  See AstraZeneca, 2008 U.S. Dist. LEXIS 43680, at *48 ("The group pleading doctrine cannot apply to create a presumption of scienter as to individual defendants."); In re WRT Energy Sec. Litig., Nos. 96 Civ. 3610 (JFK), 96 Civ. 3611 (JFK), 1997 WL 576023, at *14 (S.D.N.Y. Sept. 15, 1997) ("[Rule 9(b)] would too easily be thwarted if plaintiffs could plead scienter against individuals holding senior management positions merely by alleging that due to their positions with [the company] and access to inside information, they must have known about the alleged misrepresentations and omissions.") (quotations omitted), vacated on other grounds by 75 F. App'x 839 (2d Cir. 2003).[6]

---

[6]    Plaintiffs also allege that Fakahany resigned from Merrill effective February 1, 2008 (Compl. ¶ 331); however, Plaintiffs make no claim that Fakahany's resignation was in any way connected to Merrill's CDO business or any wrongdoing on the part of Fakahany.  As such, Fakahany's resignation cannot support an inference of scienter.  See BISYS, 397 F. Supp. 2d at 447 ("[A]bsent any alleged facts linking the two resignations and the alleged fraud, the resignations . . . do not support an inference of conscious misbehavior or recklessness."); see also In re Cyberonics Inc. Sec. Litig., 523 F. Supp. 2d 547, 553 (S.D. Tex. 2007) ("[T]he inference [of scienter based on resignation] is simply not strong enough to

II.    **PLAINTIFFS FAIL TO STATE A CLAIM AGAINST FAKAHANY UNDER SECTION 20(A).**

To state a claim for control person liability under Section 20(a) of the Exchange Act, Plaintiffs must allege:  "(1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation."  Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998) (citations and quotations omitted).  Because Plaintiffs fail to allege these elements, Plaintiffs' claim under Section 20(a) should be dismissed.

A.    **Plaintiffs Fail to Allege a Primary Violation of the Exchange Act.**

For the reasons set forth in the Merrill Defendants' brief, Plaintiffs fail to allege a primary violation of the securities laws by Merrill, the alleged "controlled person."  In the absence of a primary violation by Merrill, Fakahany cannot be found secondarily liable under Section 20(a).  See Rombach, 355 F.3d at 177-78.

B.    **Plaintiffs Fail to Allege Culpable Participation by Fakahany.**

Under Section 20(a), Plaintiffs must allege that Fakahany was "in some meaningful sense a culpable participant in the fraud."  Boguslavsky, 159 F.3d at 720.  This requires particularized allegations supporting an inference that Fakahany acted with scienter.  See Edison Fund v. Cogent Inv. Strategies Fund, Ltd., No. 06-4045, 2008 U.S. Dist. LEXIS 25917, at *46 (S.D.N.Y. Mar. 31, 2008) (collecting cases); In re Alstom S.A. Sec. Litig., 406 F. Supp. 2d 433, 491-92 (S.D.N.Y. 2005).  As discussed above, Plaintiffs make no such particularized allegations with respect to Fakahany.

---

satisfy the PSLRA's standards."); Mizzaro v. Home Depot, Inc., No. 1:06-CV-11510, 2007 WL 2254693, at *11 (N.D. Ga. July 18, 2007) (rejecting allegations of scienter based on resignations as "mere speculation").

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed in its entirety as against Defendant Ahmass L. Fakahany.  Because Plaintiffs have already had the opportunity to correct the pleading deficiencies in the Complaint, the dismissal should be with prejudice.

Dated: July 21, 2008
      New York, New York

By:  __/s/ James N. Benedict_____

Milbank, Tweed, Hadley & McCloy LLP
  James N. Benedict (jbenedict@milbank.com)
  George S. Canellos (gcanellos@milbank.com)
  Andrew W. Robertson (arobertson@milbank.com)
  Michael B. Weiner (mweiner@milbank.com)
One Chase Manhattan Plaza
New York, NY  10005-1413
Telephone:  (212) 530-5000

*Attorneys for Defendant Ahmass L. Fakahany*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 21, 2008.

_____
Andrew W. Robertson