322.    These communications included, but were not limited to, SEC filings, annual reports, and press releases that were incorporated by reference into Plan documents and Plan-related materials and directed to participants through the 401(k) prospectus (which is part of the Summary Plan Description for the SIP) and the Form S-8 pertaining to the SIP, and, thus, were Plan communications undertaken in a fiduciary capacity. These communications by Defendant Merrill Lynch assured the participants that the Company was not unduly exposed to risks related to subprime lending and CDOs, and that the Company's risk management practices were appropriate, when in fact the extent of the risks faced by the Company was unduly minimized and the extent of the Company's risk management practices was overstated.

323.    Against the background of these misleading communications from Defendant Merrill Lynch and Defendant O'Neal, both Defendant Merrill Lynch and the Administrative Committee Defendants, each of which had assigned responsibility for communicating with the Plans' participants (who had the ability to reduce their own exposure to Company stock through the Plans) and the remaining fiduciaries, failed to disclose facts that would have apprised the Plans' participants of the risks presented by Company stock that , in turn, would have allowed them to conclude that their exposure to Company stock through the Plans should be reduced, or that Company stock was not a prudent retirement investment.

324.    Defendants, as the Plans' fiduciaries, knew or should have known certain basic facts about the characteristics and behavior of the Plans' participants, well-recognized in the 401(k) literature and the trade press, concerning investment in company stock, including that:

        (a)    Employees tend to interpret a match in company stock as an endorsement of the company and its stock;

        (b)    Out of loyalty, employees tend to invest in company stock;

        (c)    Employees tend to over-extrapolate from recent returns, expecting high returns to continue or increase going forward;

(d)     Employees tend not to change their investment option allocations in the plan once made;

(e)     No qualified retirement professional would advise rank and file employees to invest more than a modest amount of retirement savings in company stock, and many retirement professionals would advise employees to avoid investment in company stock entirely;

(f)     Lower income employees tend to invest more heavily in company stock than more affluent workers, though they are at greater risk; and

(g)     Even for risk-tolerant investors, the risks inherent to company stock are not commensurate with it rewards.

Bridgitte C. Mandrian and Dennis F. Shea, *The Power of Suggestion: Inertia in 401(k) Participation and Savings Behavior*, 116 Q. J. Econ. 4, 1149 (2001), *available at* http://mitpress.mit.edu/journals/pdf/qjec_116_04_1149_0.pdf; *See also* Nellie Liang & Scott Weisbenner, *Investor Behavior and the Purchase Of Company Stock in 401(k) Plans - the Importance of Plan Design*, Board of Governors for the Federal Reserve System Finance and Economics Discussion Series, No. 2002-36 (2002), *available at* http://www.federalreserve.gov/pubs/feds/ 2002/200236/200236 pap.pdf.

325.    Even though Defendants knew or should have known these facts, and even though Defendants knew of the high concentration of the Plans' funds in Company stock during the Class Period, Defendants failed to take any meaningful ameliorative action to protect the Plans and their participants from their heavy investment in an imprudent retirement vehicle, Merrill Lynch stock.

326.    In addition, Defendants failed to provide participants and beneficiaries, and the market as a whole, with complete and accurate information regarding the true financial condition of the Company.  As such, participants in the Plans could not appreciate the true risks presented by investments in Company stock and therefore could not make informed decisions regarding their investments in Company stock in the Plans.

327.    Specifically, Defendants failed to provide the Plans' participants with complete and accurate information regarding the Company's unduly large and risky subprime and CDO investments, the true impact of such investments on the Company financial condition, and the dire circumstances such investments have created for the Company, and the Plans' investment in Merrill Lynch stock.  As such, the participants were not informed of the true risks of investing their retirement assets in the Plans in Merrill Lynch stock.

328.    Defendant O'Neal in particular (as well as other top-ranking officers of the Company and the Company itself) communicated directly with employees/Plan participants regarding the Company's subprime and CDO market exposure but aggressively and falsely downplayed the risks that this exposure presented to the Company.

329.    Defendant Merrill Lynch and Defendant O'Neal, and on information and belief, certain other Defendants, knew all (in the case of the Company) or a portion of the truth about the Company's financial condition and in particular about the risks posed to the Company by its exposure to CDO securities and other risky and hard to value investments, especially those which exposed the Company to subprime lending, as detailed previously.  On information and belief, these Defendants with knowledge of some or all of the risks posed by the Plans' investment in Company stock failed to disclose this information to their co-fiduciaries who served on the Investment Committees and Administrative Committees of the Plans, and were empowered by the documents governing the Plans and ERISA to protect the Plans and their participants and beneficiaries by eliminating or limiting investment in Company stock, selling Company stock, and making appropriate disclosures to the Plans' participants and beneficiaries.

I.    **Defendants Suffered From Conflicts of Interest.**

330.    As ERISA fiduciaries, Defendants are required to manage the Plans' investments, including the investment in Merrill Lynch stock, solely in the interest of the participants and

101

beneficiaries, and for the exclusive purpose of providing benefits to participants and their beneficiaries. This duty of loyalty requires fiduciaries to avoid conflicts of interest and to resolve them promptly when they occur.

331.    Conflicts of interest abound when a company that invests plan assets in company stock founders. This is because, as the situation deteriorates, plan fiduciaries are torn between their duties as officers and directors for the company on the one hand, and to the plan and plan participants on the other. In this case, a stark conflict of interest was built into the structure of the RAP Plan. Pursuant to Section 3.5 of the RAP Plan Document, the fair market value of stock allocated to the accounts of participants in the Traditional ESOP reduced, by a like amount, the obligation of the Company to contribute to the RAP. Thus, although the fiduciaries of the RAP had a duty to assure that Company stock was not allocated to accounts in the Traditional ESOP at inflated prices, as this would reduce unduly the Company's obligation to the RAP, any steps the fiduciaries took to disclose information that would allow Company stock to be allocated at an appropriate price fully reflecting, inter alia, the CDO and subprime exposure of the Company would injure the Company by increasing its obligation to the RAP. As courts have made clear "'[w]hen a fiduciary has dual loyalties, the prudent person standard requires that he make a careful and impartial investigation of all investment decisions.'" *Martin v. Feilen,* 965 F.2d 660, 670 (8th Cir.1992) (citation omitted). They must avoid "placing themselves in a position where their acts as officers or directors of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees of a pension plan." *Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir. 1982).

332.    Here, the Investment Committee and Administrative Committee Defendants breached this fundamental fiduciary duty of loyalty by failing to conduct a complete and

impartial investigation of the risks presented by Merrill Lynch stock notwithstanding the many red flags indicating that such an investigation was necessary.

333.    For Defendant Merrill Lynch and Defendant O'Neal, the breach of the duty of loyalty was even more stark.  Both Defendants took advantage of the inflated value of Company stock to reduce the Company's obligation to the RAP, when disclosure of the truth about the Company's CDO and subprime exposure would have reduced the market price of the shares and increased the Company's contribution obligation.

334.    Likewise, Defendant O'Neal sold over 474 thousand shares of Merrill Lynch stock that he personally held for proceeds of over $44.5 million dollars during the Class Period. His failure to make disclosures to his co-fiduciaries of any of the Plans facilitated the sale of his own shares at inflated prices, benefiting him at the cost of the Plans.

335.    The injury the Defendants imposed on the Plans by their disloyalty far exceeded any financial benefit to themselves.  As a result of the failures to investigate and as disclose detailed above, the RAP not only did not divest itself of any shares in Company stock during the Class Period, it continued to purchase shares of Company stock at prices far greater than would have been paid had the truth about the Company been made known to the market.  Similarly, the failure of Defendant O'Neal to make disclosure to his co-fiduciaries who served each of the Plans prevented each of them from divesting Company stock, or limiting or eliminating new investments in Company stock at inflated prices.

## VIII.    THE RELEVANT LAW

336.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides, in pertinent part, that a civil action may be brought by a plan participant for relief under ERISA § 409, 29 U.S.C. § 1109.

337.    An individual may be a fiduciary for ERISA purposes either because the plan documents explicitly describe fiduciary responsibilities or because that person functions as a

fiduciary. *See* U.S.C. § 1002(21)(A); *see Concha v. London*, 62 F.3d 1493 (9th Cir. 1995);
*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 124 L. Ed. 2d 161, 113 S. Ct. 2063 (1993).

338.    When fiduciaries put the interests of the company or their own interests ahead of
the interests of the plan participants, they violate ERISA.  A fiduciary may, therefore, be
personally liable to the plan participants for breaching the responsibilities, obligations, or duties
imposed under the plan and must restore any losses to the plan with any profits the fiduciary
made through use of plan assets.  ERISA § 409(a), 29 U.S.C. § 1109(a).

339.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes individual participants to
seek equitable relief from defendants, including, without limitation, injunctive relief and, as
available under applicable law, constructive trust, restitution, and other monetary relief.

340.    ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), provide, in
pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the
interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to
participants and their beneficiaries, and with the care, skill, prudence, and diligence under the
circumstances then prevailing that a prudent man acting in a like capacity and familiar with such
matters would use in the conduct of an enterprise with like aims.

341.    These fiduciary duties under ERISA §§ 404(a)(1)(A) and (B) are referred to as the
duties of loyalty, exclusive purpose and prudence and are the "highest known to the law."
*Bierwirth*, 680 F.2d at 272 n.8.

342.    Withholding information that the fiduciary knows or should know participants
need to make informed choices is a breach of the duty of loyalty.  A fiduciary has the duty to
disclose and inform which encompasses:  (1) a negative duty not to misinform; (2) an affirmative
duty to inform when the fiduciary knows or should know that silence might be harmful; and (3)

(a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries).

343.   A plan fiduciary is also responsible for the investment and monitoring of plan investments, including in this instance the Merrill Lynch Stock Fund, which invested in Merrill Lynch stock, ensuring that only prudent investments are offered as plan options, and monitoring such investments to ensure that they *remain* prudent and suitable for the plan. *In re ADC Telecomm, ERISA Litig.,* No. 03-2989, 2004 U.S. Dist. LEXIS 14383 (D. Minn. July 26, 2004). This includes the duty to conduct an independent and thorough investigation into, and to continually monitor, the merits of all the investment alternatives of a plan, including in this instance the Merrill Lynch Stock Fund, which invested in Merrill Lynch stock, to ensure that each investment is a suitable option for the plan.

344.   A fiduciary must avoid conflicts of interest and resolve them promptly when they do occur.  As such, a plan fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor. *Bierwirth,* 680 F.2d at 271.

345.   ERISA § 405(a), 29 U.S.C. § 1105(a), "Liability for Breach by Co-Fiduciary," provides, in pertinent part:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

346.    Co-fiduciary liability is an important part of ERISA's regulation of fiduciary responsibility.  Because ERISA permits the fractionalization of the fiduciary duty, there may be, as in this case, several ERISA fiduciaries involved in a given issue, such as the role of company stock in a plan.  In the absence of co-fiduciary liability, fiduciaries would be incentivized to limit their responsibilities as much as possible and to ignore the conduct of other fiduciaries.  The result would be a setting in which a major fiduciary breach could occur, but the responsible party could not easily be identified.  Co-fiduciary liability obviates this.  Even if a fiduciary merely knows of a breach, a breach he had no connection with, he must take steps to remedy it:

> [T]he most appropriate steps in th[is] circumstance may be to notify the plan sponsor of the breach, or to proceed to an appropriate Federal court for instructions, or bring the matter to the attention of the Secretary of Labor.  The proper remedy is to be determined by the facts and circumstances of the particular case, and it may be affected by the relationship of the fiduciary to the plan and to the co- fiduciary, the duties and responsibilities of the fiduciary in question, and the nature of the breach.

1974 U.S.C.C.A.N. 5038, 1974 WL 11542, at 5080.

347.    Plaintiffs therefore bring this action under the authority of ERISA § 502(a)(2) for relief under ERISA § 409(a) to recover losses sustained by the Plans arising out of the breaches of fiduciary duties by the Defendants for violations under ERISA § 404(a)(1) and ERISA § 405(a).

## IX.    ERISA § 404(C) DEFENSE INAPPLICABLE

348.    ERISA § 404(c) is an affirmative defense that provides a limited exception to fiduciary liability for losses that result from participants' exercise of control over investment decisions.  In order for § 404(c) to apply, participants must in fact exercise "independent control" over investment decisions, and the fiduciaries must otherwise satisfy the numerous procedural

106

and substantive requirements of ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated under it.

349.    Although both the RAP and the SIP were intended to comply with ERISA § 404(c), the relief provided by that section does not apply here for several reasons.

350.    First, ERISA § 404(c) does not and cannot provide any defense to the fiduciaries' imprudent decision to select and continue offering Merrill Lynch stock as an investment option in the Plans as this is not a decision that was made or controlled by the participants. *See Final Reg. Regarding Participant Directed Individual Account Plans (ERISA Section 404(c) Plans)* ("Final 404(c) Reg."), 57 Fed. Reg. 46906-01, 1992 WL 277875, at *46924 n.27 (Oct. 13, 1992) (codified at 29 C.F.R. pt. 2550) (noting that "the act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA § 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant direction of such plan").

351.    Second, ERISA § 404(c) does not apply to any Merrill Lynch stock in the Traditional ESOP, as Plan participants either do not have any control over the decision to invest Plan assets in Merrill Lynch stock in such Plan or are not presented with a broad range of investment alternatives within the Plan into which they can transfer assets on a regular basis. Instead, the Plan fiduciaries controlled such assets.

352.    Third, even as to participant-directed investment in Merrill Lynch stock, ERISA § 404(c) does not apply because Defendants failed to ensure effective participant control by providing complete and accurate material information to participants regarding Merrill Lynch stock. *See* 29 C.F.R. § 2550.404c-1(b)(2)(i)(B) (the participant must be provided with

"sufficient information to make informed decisions"). Indeed, pursuant to this regulation a participant's control is not independent in fact if " . . . (ii) A plan fiduciary has concealed material non-public facts regarding the investment from the participant or beneficiary [unless such disclosure would violate applicable law]. . . ." Here at least Defendant Merrill Lynch and Defendant O'Neal have concealed such facts, as detailed previously. As a consequence, participants in the Plans did not have informed control over the portion of the Plans' assets that were invested in Merrill Lynch stock as a result of their investment directions, and the Defendants remain entirely responsible for losses that result from such investment.

353.    Fourth, in order to be a § 404(c) plan that provides a participant or beneficiary with an opportunity to exercise control over the assets in his account, an identified plan fiduciary (or a person or persons designated by the plan fiduciary to act on his behalf) must provide participants and beneficiaries, in the case of plans that provide an employer stock investment alternative, "a description of the procedures established to provide for the confidentiality of information relating to the purchase, holding and sale of employer securities, and the exercise of voting, tender and similar rights by participants and beneficiaries, and the name, address and phone number of the plan fiduciary responsible." 29 C.F.R. § 2550.404c-1(b)(2)(B)(1)(vii). On information and belief, no such information was provided to participants of the RAP and the SIP.

354.    Because ERISA § 404(c) does not apply here, the Defendants' liability to the Plans, the Plaintiffs and the Class (as defined below) for losses caused by the Plans' investment in Merrill Lynch stock is established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plans during the Class Period.

### X.    DEFENDANTS' INVESTMENT IN MERRILL LYNCH STOCK IS NOT ENTITLED TO A PRESUMPTION OF PRUDENCE

355.    Some courts have applied a presumption of prudence to decisions by plan fiduciaries to invest plan assets in company stock in plans that qualify as "ESOPs" under the Internal Revenue Code and rules of the Department of the Treasury promulgated thereunder. The presumption is based on the dual purpose of an ESOP to allow employee ownership on the one hand, and save for retirement on the other. *Moench v. Robertson*, 62 F.3d 553, 569, 571 (3d Cir. 1995) (explaining dual purpose of ESOP plans and adopting presumption of prudence to balance these concerns). While Plaintiffs question the appropriateness of such an extension, some courts have extended the presumption to all eligible individual account plans, without regard to whether they are ESOPs.

356.    As these courts have made clear, when a presumption of prudence applies, "Plaintiffs may then rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision." *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995).

357.    If the fiduciaries know or if an adequate investigation would reveal that company stock is no longer a prudent investment for the purported ESOP, the fiduciaries must disregard plan direction to maintain investments in such stock and protect the plan by investing the plan assets in other suitable investments. *See Rankin v. Rots*, 278 F. Supp. 2d 853, 878 (E.D. Mich. 2003) ("A fiduciary is not required to blindly follow the Plan's terms."). Even where a governing plan document requires the investment of plan assets in company stock, such a requirement does "not ipso facto relieve [plan fiduciaries] of their fiduciary obligations." *Id.* at 870.

358.    Here, none of the governing plan documents contain such a requirement.  Neither the RAP nor the SIP requires the Company Stock Fund to be included as a Designated Investment Alternative.  The Investment Committee has the discretion to include Company Stock as a Designated Investment Alternative, and has the discretion to continue the Company Stock Fund as a Designated Investment Alternative.  SIP Plan Document §§ 10.2.3(c) and 11.1.1; (RAP Plan Document §§ 5.1 and 8.3(c).  Additionally, the decision about whether and what portion of a participant's account may be allocated to the Company Stock Fund is left to the discretion of the Administrative Committee.  SIP Plan Document § 11.1.2; RAP Plan Document § 5.1.  Further, pursuant to the RAP Plan Document, the Investment Committee is given the discretion to invest that Company Stock Fund's assets in short term fixed income investments. *Id.*  While the Traditional ESOP states that it is designed to invest primarily in qualifying employer securities, no provision of the Traditional ESOP requires that in all circumstances all or a portion of the Plan's assets must remain invested in employer stock; the Investment Committee is granted responsibility for "the investment of Trust assets" and is required to "establish and carry out a funding policy and method consistent with the objectives of the Plan and the requirements of ERISA."  Traditional ESOP § 10.3.

359.    The *Moench* presumption is an evidentiary presumption, not appropriately applied to the allegations of a Complaint before evidence is adduced.  Nevertheless, some courts have applied the presumption by inquiring whether the facts as alleged in the Complaint are sufficient if taken as true to overcome the presumption.  The facts alleged here meet that test.  As alleged in more detail above, not only was Merrill Lynch stock so risky during the Class Period that it was an inappropriate investment for Plans, but due to undisclosed adverse information, the stock was significantly overpriced.  As that information was revealed, the value of the shares was cut

in half.  It is never appropriate for a fiduciary to permit a plan to overpay for an asset.  Certain

fiduciaries, at least the Company and Defendant O'Neal knew the facts that made it imprudent to

invest in Company stock, the others either knew or were on notice of red flags that should have

triggered an independent investigation that would have revealed risks of investing in Merrill

Lynch stock, particularly in light of the conflicts of interest detailed above that burdened the

decision making process of the Plans' fiduciaries.

360.     The facts supporting the conclusion that Merrill Lynch stock was an inappropriate

and imprudent investment for the Plans include as detailed previously:

- A precipitous stock price decline from over $78.49 to approximately $51.35 during the Class Period;

- Risk of imminent further collapse of the Company's stock price based on the Company's practices as described in detail herein;

- The Company's $90 billion of off-balance sheet exposure and an extremely leveraged balance sheet with a high level of level 3 assets;

- The Company's seriously deteriorating financial condition as well as Defendants' conflicted status as discussed in detail herein;

- Dishonest, misleading and illegal actions set forth above that caused the price of Merrill Lynch stock to be artificially inflated; and

- Serious, if not gross, mismanagement evidenced by, among other things:  (a) the aggressive growth of its CDO business, even after credit markets deteriorated, subprime mortgage defaults increased, and housing prices fell; (b) Merrill Lynch's decision to use its own capital to purchase CDO securities  its customers were rejecting in order to continue collecting additional underwriting fees; (c) the accumulation of $43 billion in exposure to CDOs and subprime related securities, which was greater than the entire book value of the Company (as of June 29, 2007); (d) failure to acknowledge, manage, adequately hedge with creditworthy counterparties and accurately disclose the risks associated with owning such risky and illiquid securities; and (e) inflation of the value of the Company's asset-backed portfolio by mis-marking its subprime and CDO related investments based on assumptions that disregarded the actual housing market, credit market, and liquidity conditions.

361.    While eligible individual account plans, like the Plans here, are excused from the duty to diversify, they are not excused from the duty to invest prudently. A portfolio with an undue percentage of very risky investments, no matter how well diversified, is not a prudent retirement investment. ERISA's exemption from diversification for company stock does not mean that pension plans are free to invest all or any of their assets in company stock so risky that it would be imprudent to make the same investment in a diversified portfolio comprised of assets presenting a similar level of risk. The three Plans here were invested as follows at the end of 2006: Traditional ESOP 99% in Company stock; RAP 38% in Company stock; SIP 28% in Company stock. The facts supporting the extraordinary riskiness of Merrill Lynch stock are set forth in the allegations above. To put these facts in context, the level of leverage and exposure to subprime related securities presented by an investment in Company stock during the Class Period was comparable to that presented by Bear Stearns before its collapse.

362.    The imprudence of continued investment by Defendants in Merrill Lynch stock during the Class Period under the circumstances present here is recognized in DOL regulations:

> [B]ecause every investment necessarily causes a plan to forego other investment opportunities, an investment will not be prudent if it would be expected to provide a plan with a lower rate of return than available alternative investments with commensurate degrees of risk or is riskier than alternative available investments with commensurate rates of return.

29 C.F.R. 2509.94-1.

363.    Defendants had available to them investment alternatives to Merrill Lynch stock that had either a higher rate of return with risk commensurate to Merrill Lynch stock or an expected rate of return commensurate to Merrill Lynch stock but with less risk. *See also In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 547 (S.D. Tex. 2003). Based on these circumstances, and the others alleged herein, it was imprudent and an abuse of discretion for Defendants to continue to make and maintain investment in Merrill Lynch stock,

and, effectively, to do nothing at all to protect the Plan from significant losses as a result of such investment during the Class Period.

## XI.    CAUSES OF ACTION

A.    **Count I:  Failure to Prudently and Loyally Manage the Plans and Assets of the Plans**

364.    Plaintiffs incorporate by this reference the paragraphs above.

365.    This Count alleges fiduciary breach against the following Defendants:  the Investment Committee Defendants with respect to each Plan, the Administrative Committee Defendants with respect to the RAP and the SIP, and Defendant Merrill Lynch with respect to each Plan (collectively, the "Prudence Defendants").

366.    As alleged above, during the Class Period the Prudence Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

367.    As alleged above, the scope of the fiduciary duties and responsibilities of the Prudence Defendants included managing the assets of the Plans for the sole and exclusive benefit of the Plans' participants and beneficiaries, and with the care, skill, diligence, and prudence required by ERISA.  As such, certain of the Prudence Defendants (the Investment Committee Defendants with respect to the RAP and the SIP) were responsible for, among other things, selecting prudent Designated Investment Alternatives and eliminating imprudent Designated Investment Alternatives for the RAP and the SIP.  Further, with respect to the RAP, the Investment Committee was responsible for, among other things, determining whether and to what extent the assets of the Plans (including those that would otherwise be invested in Company stock) should be held in short term low risk investments.  Other Prudence Defendants (the

Administrative Committee Defendants with respect to the RAP and the SIP, respectively) were responsible for determining the extent to which employees would be permitted to invest in those Designated Investment Alternatives (including the Company Stock Fund). With respect to the Traditional ESOP, certain of the Prudence Defendants (the Investment Committee Defendants with respect to the Traditional ESOP) were responsible for the reinvestment of dividends within the Traditional ESOP and whether to liquidate all or a portion of the Plan's investment in Company stock. As alleged previously, the remaining Prudence Defendant (Defendant Merrill Lynch) exercised *de facto* authority and control with respect to the *de jure* responsibilities of the other Prudence Defendants, making itself fully responsible for the prudent and loyal fulfillment of the *de jure* responsibilities assigned by the governing Plan documents to the other Prudence Defendants, without relieving them of any such responsibility. In carrying out these responsibilities, the Prudence Defendants were required to evaluate the merits of the Plans' investments on an ongoing basis and take all necessary steps to ensure that the Plans' assets were invested prudently.

368.    Yet, contrary to their duties and obligations under ERISA, the Prudence Defendants failed to loyally and prudently manage the assets of the Plans. Specifically, during the Class Period, these Defendants knew or should have known that Merrill Lynch common stock was no longer a suitable and appropriate investment for the Plans, but was, instead, a highly speculative, risky investment in light of the Company's improper business practices, serious mismanagement, misstatements and omissions that caused the price of Merrill Lynch stock to be artificially inflated. The impending collapse of the price of the stock resulted from these dire circumstances. Nonetheless, during the Class Period, these Defendants exercised the authority and control that made them fiduciaries to continue to offer Merrill Lynch stock as a

Designated Investment Alternative in the RAP and the SIP without any limitations on new investments or the amounts that could be invested in such the Defendants continued to: (a) fully invest the Employer Stock Funds within these Plans in employer stock; and (b)fully invest the Traditional ESOP in employer stock except as required by the terms of the Plan.

369.    Defendant Merrill Lynch, throughout the Class Period had actual knowledge that its shares had become a risky and inappropriate investment due to facts previously alleged including, but not limited to, the following:  (a) The Company aggressively grew its CDO business, even as credit markets deteriorated, subprime mortgage defaults increased, and housing prices fell; (b) Merrill Lynch used its own capital to purchase CDO securities its customers were rejecting in order to continue collecting additional underwriting fees and in the face of a stagnating CDO market, it was forced to purchase large amounts of CDO issuances; (c) by June 29, 2007, Merrill Lynch accumulated $43 billion in exposure to CDOs and subprime related securities, which was greater than the entire equity value of the Company; (d) Merrill Lynch continued to mis-mark its subprime and CDO related investments throughout 2006 and 2007 based on assumptions that disregarded the actual housing market, credit market, and liquidity conditions; (e) Merrill Lynch's desperation to reduce its CDO and subprime exposure led the Company to purchase costly hedges for its CDO and subprime exposure, which has created potentially higher downside risk because many of its counterparties are insolvent;  (f) Merrill Lynch's increasingly leveraged balance sheet rose steadily from 15.2x in 2003 to 19.9x in 2006 and then steeply increased to 27.8x in 2007; (g) Merrill Lynch's  off-balance sheet exposure was at least $90 billion; and (h) even Merrill Lynch's on-balance sheet assets were becoming increasingly illiquid and more difficult to value, as evidenced by the fact that the Company continued to shift greater assets from Level 2 to Level 3.

370.    Moreover, the Prudence Defendants, other than Defendant Merrill Lynch, knew or should have known of the facts causing an investment in Merrill Lynch stock to be imprudent and would have learned such facts had they conducted an appropriate independent investigation in light of the red flags listed above, and in light of the conflicts of interests that should have made them especially sensitive to the need for such an independent investigation with respect to the RAP where the overvaluation of Merrill Lynch stock effectively reduced the Company's contribution obligation to the RAP.  Further weighing in favor of an independent investigation was the enormous size of the Plans' exposure to Company stock, such that the Prudence Defendant had a heightened duty to assure that this large portion of the Plans' portfolios did not become unduly risky, not as a matter of diversification, but simply because it is never appropriate for a high percentage of pension fund assets to be invested in high risk securities, no matter how well diversified by industry, geography and asset class.  Nevertheless, the Prudence Defendants failed to conduct such an appropriate independent investigation of the merits of continued investment in Merrill Lynch stock in light of the Company's highly risky and inappropriate practices and the particular dangers that these practices posed to the Plans.  Such an investigation would have revealed to a reasonably prudent fiduciary the imprudence of continuing to make and maintain investments in Merrill Lynch stock under these circumstances.

371.    The Prudence Defendants' decisions respecting the Plans' investment in Merrill Lynch stock described above, under the circumstances alleged herein, abused their discretion as ERISA fiduciaries in that a prudent fiduciary acting under similar circumstances would have made different investment decisions.  Specifically, based on the above, a prudent fiduciary could not have reasonably believed that further and continued investment of the Plans' contributions

and assets in Merrill Lynch stock was in keeping with the Plans' settlor's expectations of how a prudent fiduciary would operate.

372.    The Prudence Defendants were obligated to discharge their duties with respect to the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

373.    According to DOL regulations and case law interpreting this statutory provision, a fiduciary's investment or investment course of action is prudent if (a) he has given appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved, including the role the investment or investment course of action plays in that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties; and (b) he has acted accordingly.

374.    Given the conduct of the Company as described above, the Prudence Defendants could not possibly have acted prudently when they continued to invest the Plans' assets in Merrill Lynch stock.

375.    The fiduciary duty of loyalty entails, among other things, a duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with single-minded devotion to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.  On information and belief, the compensation and tenure of the Prudence Defendants was tied to the performance of Merrill Lynch stock and/or the publicly reported financial performance of Merrill Lynch.  More

specifically, as previously alleged, the Prudence Fiduciaries with respect to the RAP were aware that the fair market value of the stock allocated to participants' accounts in the Traditional ESOP reduced the amount of the Company's contribution obligation to the RAP, dollar for dollar. Accordingly, to the extent that Merrill Lynch stock was inflated by the existence of undisclosed material information that upon disclosure would cause the stock to be revalued downward, the RAP and its participants and beneficiaries were injured and the Company benefited. Since the Prudence Defendants, with respect to the RAP, encompass the Company itself and certain of its officers and employees, these fiduciaries faced a stark conflict: exposing the truth about the risks presented by Company stock would benefit the RAP at the expense of the Company. Fiduciaries laboring under such conflicts, must, in order to comply with the duty of loyalty, make special efforts to assure that their decision making process is untainted by the conflict and made in a disinterested fashion, typically by seeking independent financial and legal advice obtained only on behalf of the plan.

376. The Prudence Defendants breached their duty to avoid conflicts of interest and to promptly resolve them by, *inter alia*, failing to engage prudent independent advisors who could make independent judgments concerning the Plans' investment in Merrill Lynch; failing to notify appropriate federal agencies, including the DOL, of the facts and circumstances that made Merrill Lynch stock an unsuitable investment for the Plans; and failing to take such other steps as were necessary to ensure that participants' interests were loyally and prudently served. With respect to each of these above failures, doing so in order to avoid adversely impacting their own compensation or drawing attention to Merrill Lynch's inappropriate practices; and by otherwise placing their own and Merrill Lynch's improper interests above the interests of the participants with respect to the Plans' investment in Merrill Lynch stock.

118

377.    As a consequence of the Prudence Defendants' breaches of fiduciary duties alleged in this Count, the Plans suffered significant losses.  If the Prudence Defendants had discharged their fiduciary duties to prudently invest the Plans' assets, the losses suffered by the Plans would have been minimized or avoided.  Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plans, and indirectly the Plaintiffs and the other Class members, lost over one billion dollars of retirement savings.

378.    Defendant Merrill Lynch profited from its breach of this duty because its failure to perform its duty resulted in a diminution of the contribution obligation it owed to the RAP.

379.    Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), the Prudence Defendants are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

**B.    Count II:  Failure to Monitor Fiduciaries.**

380.    Plaintiffs incorporate by this reference the allegations above.

381.    This Count alleges fiduciary breach against the following Defendants:  Defendant Merrill Lynch and the Senior Vice President, Human Resources Defendants (the "Monitoring Defendants").

382.    As alleged above, during the Class Period the Monitoring Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence set forth in ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

383.    As alleged above, the scope of the fiduciary responsibilities of the Monitoring Defendants included the responsibility to appoint and remove, and thus, monitor the performance

of other fiduciaries, as follows. The Senior Vice President, Human Resources Defendants were responsible for appointing and monitoring the Investment Committee Defendants and the Administrative Committee Defendants with respect to each of the Plans. Defendant Merrill Lynch through its authority to amend the Plans and separately through its authority to name and remove the Senior Vice President, Human Resources Defendants, was responsible for appointing and monitoring the Senior Vice President, Human Resources Defendants. In addition, by dint of exercising *de facto* control over the conduct of the Senior Vice President, Human Resources Defendants, and by actually controlling the appointment of the Investment Committee Defendants, and the Administrative Committee Defendants, Defendant Merrill Lynch became responsible for appointing and monitoring the Investment Committee Defendants and the Administrative Committee Defendants with respect to each of the Plans.

384.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

385.    The monitoring duty further requires that appointing fiduciaries have procedures in place so that on an ongoing basis they may review and evaluate whether the "hands-on" fiduciaries and the appointing fiduciaries whom they appoint are doing an adequate job (for example, by requiring periodic reports on their work and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need). In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and

effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

386.    Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets, or that may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

387.    The Monitoring Defendants breached their fiduciary monitoring duties by, among other things: (a) failing, at least with respect to the Plans' investment in Company stock, to monitor their appointees, to evaluate their performance, or to have any system in place for doing so, and standing idly by as the Plans suffered enormous losses as a result of their appointees' imprudent actions and inaction with respect to Company stock; (b) failing to ensure that the monitored fiduciaries appreciated the true extent of Merrill Lynch's highly risky and inappropriate business practices, and the likely impact of such practices on the value of the Plans' investment in Merrill Lynch stock; (c) to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plans' assets; and (d) failing to remove appointees whose performance was inadequate in that they continued to make and maintain investments in Merrill Lynch stock despite their knowledge of practices that rendered Merrill Lynch stock an imprudent investment during the Class Period for participants' retirement savings in the Plans, and who breached their fiduciary duties under ERISA.

388.    As a consequence of the Monitoring Defendants' breaches of fiduciary duty, the Plans suffered tremendous losses. If the Monitoring Defendants had discharged their fiduciary

monitoring duties as described above, the losses suffered by the Plans would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plans, and indirectly the Plaintiffs and the other Class members, lost over one billion dollars of retirement savings.

389.    Defendant Merrill Lynch profited from its breach of this duty because its failure to perform its duty resulted in a diminution of the contribution obligation it owed to the RAP.

390.    Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), the Monitoring Defendants are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count, to disgorge profits made and to provide other equitable relief as appropriate.

## C.    Count III:  Breach of Fiduciary Duty to Disclose Necessary Information to Co-Fiduciaries.

391.    Plaintiffs incorporate by this reference the allegations above.

392.    This Count alleges fiduciary breach against the following Defendants:  Defendant Merrill Lynch and Defendant O'Neal.

393.    Pursuant to the duties of prudence and loyalty which every ERISA fiduciary owes to the plans that he serves pursuant to ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), such fiduciaries are required to disclose to their co-fiduciaries information that they know is unavailable to their co-fiduciaries, but that such co-fiduciaries need to protect the interests of the plan. *See Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities*, 93 F.3d 1171 (3rd Cir. 1996)

394.    The following fiduciaries of the Plans possessed non-public information during the Class Period about the risks posed by Merrill Lynch stock, which they knew could be used by other fiduciaries of the Plans (in particular the Investment Committee Defendants and the

Administrative Committee Defendants with respect to each Plan) to protect the Plans and their participants and beneficiaries: (1) Defendant Merrill Lynch, which was a *de jure* fiduciary to the Plans by dint of serving as statutory Plan Administrator, as the fiduciary who appointed the Senior Vice President Human Resources Defendants, as well as a *de facto* fiduciary that exercised authority and control over the conduct of the Senior Vice President Human Resources Defendants, the Investment Committee Defendants and the Administrative Committee Defendants; and (2) the Defendant O'Neal who was a fiduciary of the Plans by dint of his authority to appoint and remove the Trustees of the Plans, and as *de facto* fiduciary as a result of his communication directed to plan participants.

395.     As previously alleged, the Investment Committee Defendants and the Administrative Committee Defendants should have sought information concerning the risks posed by an investment in Company stock as part of a thorough and careful investigation of the merits of investment in Company stock during the Class Period, but failed to do so. Nevertheless, those fiduciaries in possession of such knowledge should have supplied that information to the Investment Committee Defendants and the Administrative Committee Defendants voluntarily in the fulfillment of the fiduciary duties they owed to the Plans.

396.     Defendant Merrill Lynch and Defendant O'Neal profited from their breach of this duty.

397.     Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), Defendant Merrill Lynch and the Defendant O'Neal are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count, to disgorge any profits made through their breach and to provide other equitable relief as appropriate.

123

D.    **Count IV:  Breach of Fiduciary Duty – Failure to Provide Complete and Accurate Information to the Plans' Participants and Beneficiaries.**

398.    Plaintiffs incorporate by this reference the allegations above.

399.    This Count alleges fiduciary breach against Defendant Merrill Lynch and the Administrative Committee Defendants with respect to each Plan, and Defendant O'Neal (the "Communications Defendants").

400.    At all relevant times, as alleged above, Defendants listed in this Count were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

401.    At all relevant times, the scope of the fiduciary responsibility of Defendant Merrill Lynch and the Administrative Committee Defendants with respect to each Plan included the communications and material disclosures to the Plans' participants and beneficiaries.  In addition, Defendant O'Neal acted as a *de facto* communicating fiduciary as a result of his extensive communications directly with employees/Plan participants regarding the Company and its likely future prospects.  Defendant O'Neal knew that the employees' retirement savings were invested significantly in Merrill Lynch stock in the Plans, that his communications concerned this investment, and, thus, concerned Plan benefits, and constituted acts of Plan administration under ERISA.

402.    The duty of loyalty under ERISA requires fiduciaries to speak truthfully to participants, not to mislead them regarding the plan or plan assets, and to disclose information that participants need in order to exercise their rights and interests under the plan.  This duty to inform participants includes an obligation to provide participants and beneficiaries of the plan with complete and accurate information, and to refrain from providing false information or concealing material information, regarding plan investment options so that participants can make

375471.2 2

124

informed decisions with regard to the prudence of investing in such options made available under the plan. This duty applies to all of the Plans' investment options, including investment in Merrill Lynch stock.

403.    Because investments in the Plans were not diversified (i.e. the Defendants chose to invest the Plans' assets, and/or allow those assets to be invested heavily in Merrill Lynch stock), such investment carried with it an inherently high degree of risk. This inherent risk made the Defendants' duty to provide complete and accurate information particularly important with respect to Merrill Lynch stock.

404.    The Defendants breached their duty to inform participants by failing to provide complete and accurate information regarding Merrill Lynch's serious mismanagement and improper business practices, public misrepresentations, and the consequential artificial inflation of the value of Merrill Lynch stock, and, generally, by conveying incomplete information regarding the soundness of Merrill Lynch stock and the prudence of investing and holding retirement contributions in Merrill Lynch equity. These failures were particularly devastating to the Plans and their participants; a heavy percentage of the Plans' assets were invested in Merrill Lynch stock during the Class Period and, thus, losses in this investment had a significant impact on the value of participants' retirement assets.

405.    Defendants' omissions clearly were material to participants' ability to exercise informed control over their Plan accounts because, in the absence of the information, participants did not know the true risks presented by the Plans' investment in Merrill Lynch stock. Since disclosures to the Plans' participants and beneficiaries of material information about Merrill Lynch stock would have necessitated broader disclosures to the market under the securities laws, acquisition of shares by the Plans during the Class period would have occurred at a price more

375471.2 2

125

reflective of the information disclosed and the stock allocated to participants' accounts in the Traditional ESOP would have been more fairly valued, resulting in a smaller reduction in Defendant Merrill Lynch's obligation to the RAP.

406.    Defendants' omissions and incomplete statements alleged herein were Plan-wide and uniform in that Defendants failed to provide complete and accurate information to any of the Plans' participants.

407.    Defendant Merrill Lynch was unjustly enriched by the fiduciary breaches described in this Count.

408.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans, and indirectly the Plaintiffs and the Plans' other participants and beneficiaries, lost a significant portion of their retirement investment.

409.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA § 409(a), 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count, and to disgorge any profits made through their breach.

**E.    Count V:  Co-Fiduciary Liability**

410.    Plaintiffs incorporate by this reference the allegations above.

411.    This Count alleges co-fiduciary liability against the following Defendants:  all Defendants (the "Co-Fiduciary Defendants").

412.    As alleged above, during the Class Period the Co-Fiduciary Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

413.     As alleged above, ERISA § 405(a), 29 U.S.C. § 1105(a), imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach. The Co-Fiduciary Defendants breached all three provisions.

414.     **Knowledge of a Breach and Failure to Remedy.** ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. As detailed below, each Defendant knew of certain breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.

415.     The Investment Committee Defendants and the Administrative Committee Defendants were aware of each other's failure to conduct an independent investigation of the merits of the Plans' investments in Company stock. These Defendants were likewise aware of Defendant Merrill Lynch's direction of their activities which resulted in the breach of their own duties, and, at various times in the Class Period, the Company's failure to provide them with information they needed to perform their duties as it related to the Plans' investment in Company stock.

416.     Senior Vice President Human Resources Defendants were aware of the failure of the Investment Committee Defendants and the Administrative Committee Defendants to conduct an independent investigation of the merits of the Plans' investments in Company stock and of Defendant Merrill Lynch's role in the breaches of fiduciary duty of those defendants and its own breaches.

417.    Defendant O'Neal was aware of the failure of the Investment Committee Defendants and the Administrative Committee Defendants to conduct an independent investigation of the merits of the Plans' investments in Company stock.

418.    Defendant Merrill Lynch was aware of the breaches of each of the other fiduciaries.

419.    Because Defendants knew of the breaches of other Defendants detailed above, yet failed to undertake any effort to remedy these breaches, they are each liable for those breaches.

420.    **Knowing Participation in a Breach.** ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach. Defendant Merrill Lynch knowingly participated in the fiduciary breaches of the other Prudence Defendants and the Monitoring Defendants in that it exercised control over their conduct and benefited from the diminution in the contribution obligation to the RAP that resulted from the failure to disclose information which would have resulted in a more proper valuation of the stock allocated to the Traditional ESOP participants' accounts.

421.    **Enabling a Breach.** ERISA § 405(a)(2), 29 U.S.C. § 1105(2), imposes liability on a fiduciary if by failing to comply with ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which gives rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

422.    Each of the Defendants (other than the Investment Committee Defendants and the Administrative Committee Defendants), by committing the breaches described previously,

128

enabled the breaches of the Investment Committee Defendants and the Administrative Committee Defendants.

423.    As a direct and proximate result of the breaches of fiduciary and co-fiduciary duties alleged herein, the Plans, and indirectly the Plaintiffs and the Plans' other participants and beneficiaries, lost over one billion dollars of retirement savings.

424.    Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), the Co-Fiduciary Defendants are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## XII.    CAUSATION

425.    The Plans suffered nearly 1.5 billion dollars in losses because substantial assets of the Plans were imprudently invested or allowed to be invested by Defendants in Merrill Lynch stock during the Class Period, in breach of Defendants' fiduciary duties.

426.    Had the Defendants properly discharged their fiduciary and co-fiduciary duties, including the monitoring and removal of fiduciaries who failed to satisfy their ERISA-mandated duties of prudence and loyalty, eliminating Merrill Lynch stock as an investment alternative when it became imprudent, limiting its availability for investment and/or new investment, and divesting the Plans of Merrill Lynch stock when maintaining such an investment became imprudent, causing the disclosure of complete and accurate material information about Merrill Lynch stock to co-fiduciaries and to participants and beneficiaries the Plans would have avoided some or all of the losses that they and, indirectly, the participants and beneficiaries suffered.

375471.2 2

129

## XIII.   REMEDY FOR BREACHES OF FIDUCIARY DUTY

427.   The Defendants breached their fiduciary duties in that they knew or should have known the facts as alleged above, and therefore knew or should have known that the Plans' assets should not have been invested in Merrill Lynch stock during the Class Period.

428.   As a consequence of the Defendants' breaches, the Plans suffered significant losses.

429.   ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.  Section 409 requires "any person who is a fiduciary…who breaches any of the…duties imposed upon fiduciaries…to make good to such plan any losses to the plan…."  Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate…." and the disgorgement of profits made from a breach.  Here, in addition to causing losses, Defendant Merrill Lynch profited from the its breaches and the breaches of its co-fiduciaries by allowing stock to be allocated to participants' accounts in the Traditional ESOP at prices inflated by the failure to disclose material information, resulting in the reduction of its contribution obligation to the RAP. These profits must be disgorged to the RAP.

430.   With respect to calculation of the losses to the Plans, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Plans would not have made or maintained their investments in the challenged investment and, instead, prudent fiduciaries would have invested the Plans' assets in the most profitable alternative investment available to them.  Alternatively, losses may be measured not only with reference to the decline in stock price relative to alternative investments, but also by calculating the additional shares of Merrill Lynch stock that the Plans would have acquired had the Plans' fiduciaries taken appropriate steps to protect the Plans.  The Court should adopt the measure of loss most

375471.2 2

advantageous to the Plans. In this way, the remedy restores the Plans' lost value and puts the participants in the position they would have been in if the Plans had been properly administered.

431. Plaintiffs and the Class are therefore entitled to relief from the Defendants in the form of: (a) a monetary payment to the Plans to make good to the Plans the losses to the Plans resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a), 502(a)(2) and (3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (3); (c) injunctive and other appropriate equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3), for knowing participation by a non-fiduciary in a fiduciary breach; (d) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (e) taxable costs and interest on these amounts, as provided by law; and (6) such other legal or equitable relief as may be just and proper.

432. Under ERISA, each Defendant is jointly and severally liable for the losses suffered by the Plans in this case.

## XIV.  CLASS ACTION ALLEGATIONS

433. **Class Definition.** Plaintiffs bring this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Plaintiffs and the following class of persons similarly situated (the "Class"):

434. All persons, other than Defendants, who were participants in or beneficiaries of the Plans at any time between September 25, 2006 to May 6, 2008 and whose accounts included investments in Merrill Lynch stock.

435. **Class Period.** The fiduciaries of the Plans knew or should have known at least by September 25, 2006 that the Company's material weaknesses were so pervasive that Merrill

375471.2 2                                                          131

Lynch stock could no longer be offered as a prudent investment for retirement Plans, and/or that corrective disclosures to participants and beneficiaries were required.

436.    **Numerosity.**  The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to the Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are, based on the Plans' Form 5500s for Plan year 2005, over 57 thousand participants or beneficiaries in the SIP, and over 47 thousand participants in both the RAP and the Traditional ESOP.

437.    **Commonality.**  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

whether Defendants each owed a fiduciary duty to Plaintiffs and members of the Class;

whether Defendants breached their fiduciary duties to Plaintiffs and members of the Class by failing to act prudently and solely in the interests of the Plans' participants and beneficiaries;

whether Defendants violated ERISA; and

whether the Plans have suffered losses and, if so, what is the proper measure of damages.

438.    **Typicality.**  Plaintiffs' claims are typical of the claims of the members of the Class because:  (a) to the extent Plaintiffs seek relief on behalf of the Plans pursuant to ERISA § 502(a)(2), their claim on behalf of the Plans is not only typical to, but identical to a claim under this section brought by any Class member; and (2) to the extent Plaintiffs seek relief under ERISA § 502(a)(3) on behalf of themselves for equitable relief, that relief would affect all Class members equally.

439.  **Adequacy.**  Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action, complex, and ERISA litigation.  Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

440.  **Rule 23(b)(1)(B) Requirements.**  Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

441.  **Other Rule 23(b) Requirements.**  Class action status is also warranted under the other subsections of Rule 23(b) because: (1) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; (2) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (3) questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## XV.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

A.  A Declaration that the Defendants, and each of them, have breached their ERISA fiduciary duties to the participants;

B.  A Declaration that the Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

C.     An Order compelling the Defendants to make good to the Plans all losses to the Plans resulting from Defendants' breaches of their fiduciary duties, including losses to the Plans resulting from imprudent investment of the Plans' assets, to restore to the Plans all profits the Defendants made through use of the Plans' assets, and to restore to the Plans all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

D.     Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plans as the result of breaches of fiduciary duty;

E.     An Order requiring Defendants to appoint one or more independent fiduciaries to participate in the management of the Plans' investment in Merrill Lynch stock;

F.     Actual damages in the amount of any losses the Plans suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

G.     An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

H.     An Order awarding attorneys' fees pursuant to the common fund doctrine, 29 U.S.C. § 1132(g), and other applicable law; and

I.     An Order for equitable restitution and other appropriate equitable and injunctive relief against the Defendants.

Dated: May 21, 2008

Respectfully submitted,

**COHEN, MILSTEIN, HAUSFELD & TOLL P.L.L.C.**

By: _/s/ Lynda J. Grant_

Lynda J. Grant (LG-4784)
150 East 52nd Street
Thirtieth Floor
New York, NY 10022
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
lgrant@cmht.com

Bruce F. Rinaldi
Michelle C. Yau
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
brinaldi@cmht.com
myau@cmht.com

Marc I. Machiz
One South Broad Street
Suite 1850
Philadelphia, PA 19170
Telephone: (215) 825-4016
Facsimile: (215) 825-4001
mmachiz@cmht.com

**KELLER ROHRBACK L.L.P.**
Lynn L. Sarko
Derek W. Loeser
Erin M. Riley
1201 Third Avenue
Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
lsarko@kellerrohrback.com
dloeser@kellerrohrback.com
eriley@kellerrohrback.com

375471.2 2

135

**KELLER ROHRBACK P.L.C.**
Gary Gotto
3101 North Central Avenue
Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
ggotto@kellerrohrback.com

*Interim Co-Lead Counsel for Plaintiffs*

**SHALOV STONE BONNER & ROCCO LLP**
Ralph M. Stone
Thomas George Ciarlone, Jr.
Amanda C. Scuder
485 Seventh Avenue, Suite 1000
New York, NY 10018
Phone: 212-239-4340
Fax:     212-239-4310
rstone@lawssb.com
tciarlone@lawssb.com
ascuder@lawssb.com

*Counsel for Plaintiff Mary Gidaro*

**ZIMMERMAN REED, P.L.L.P.**
Carolyn G. Anderson
Timothy J. Becker
Anne T. Regan
Kirsten D. Hedberg
651 Nicollet Mall, Suite 501
Minneapolis, Minnesota 55402
Phone: 612-341-0400
Fax:     612-341-0844
cga@zimmreed.com
tjb@zimmreed.com
atr@zimmreed.com
kdh@zimmreed.com

*Counsel for Plaintiffs Barbara Boland and Alan Maltzman*

375471.2 2

136

*Other Plaintiffs Counsel in Consolidated ERISA Cases:*

LAW OFFICE OF CURTIS V. TRINKO, LLP
Curtis V. Trinko
*Estey v. Merrill Lynch & Co., Inc., et al.,* No. 07-10268
*Moore v. Merrill Lynch & Co., Inc., et al.,* No. 07-10398

HARWOOD FEFFER LLP
Robert I. Harwood
Donlon v. Merrill Lynch & Co., Inc., et al., No. 07-10661

SCHATZ NOBEL IZARD P.C.
Robert A. Izard
Shaughnessey v. Merrill Lynch & Co., Inc., et al., No. 07-10710

ABBEY SPANIER RODD & ABRAMS, LLP
Jill S. Abrams
Summers v. Merrill Lynch & Co., Inc., et al., No. 07-11615

MILBERG L.L.P.
Lori G. Feldman
Eastman v. Merrill Lynch & Co., Inc., et al., No. 08-0058

GAINEY & McKENNA
Thomas J. McKenna
Pascullo v. Merrill Lynch & Co., Inc., et al., No. 08-1116

375471.2 2