## MERRILL LYNCH & CO., INC.
## 401(k) SAVINGS & INVESTMENT PLAN

In accordance with the power reserved to the Company in Section 12.1 of the Merrill Lynch & Co., Inc. 401(k) Savings & Investment Plan (the "Plan"), the Plan is hereby amended, effective January 1, 2007 (except as otherwise provided), as follows:

**1.    The following paragraph is added at the end of the Foreword:**

The Plan was amended and restated, generally effective as of January 1, 2007 (or as otherwise provided in the Plan, as required by law, or as otherwise set forth in a Company action), to comply with certain provisions of the Pension Protection Act of 2006 regarding rollover distributions for non-Spouse Beneficiaries and among other design changes, to implement provisions allowing a Participant to make Roth Elective Deferrals and Roth Catch-Up Contributions. In addition, the Plan was amended to provide clarification regarding the definition of Eligible Employee.

**2.    The following subsections are inserted as Sections 1.50, 1.51, and 1.52 and the remaining subsections are renumbered accordingly:**

1.50    Roth Catch-Up Contributions: Catch-up contributions (as defined in Section 3.2.3) that are: (i) designated irrevocably by the Participant at the time of the 401(k) Election as a Roth Catch-Up Contribution that is being made in lieu of all or a portion of the catch-up contributions the Participant is otherwise eligible to make under the Plan; and (ii) treated by the Employer as includible in the Participant's gross income at the time the Participant would have received that amount in cash if the Participant had not made a 401(k) Election to defer such amount.

1.51    Roth Elective Deferrals: Elective contributions that are: (i) designated irrevocably by the Participant at the time of the 401(k) Election as a Roth Elective Deferral that is being made in lieu of all or a portion of a pre-tax Elective 401(k) Deferral the Participant is otherwise eligible to make under the Plan; and (ii) treated by the Employer as includible in the Participant's income at the time the Participant would have received that amount in cash if the Participant had not made a 401(k) Election.

1.52    Roth Elective Deferral Subaccount:  The subaccount of a SIP Account established for a Participant pursuant to 3.5.8.

**3.    Section 1.53 is amended to read as follows:**

SIP Account:  The Account established for a Participant to hold After-Tax Contributions, Elective 401(k) Deferrals, Employer Contributions, Rollover Contributions, Rollover After-Tax Contributions, Roth Elective Deferrals, Roth Catch-Up Contributions, and Transferred Employer Contributions, and their respective earnings.

4.     **Section 3.3.1(a) is amended, effective for payroll periods beginning after January 1, 2007, to read as follows:**

Subject to the rules set forth in Sections 3.6, 3.7 and 4.4 and the remainder of this Section 3.3.1(a), for each pay period the Employer shall contribute to the Trust an amount equal to 100% of the first 4% (increased from 50% of the first 6% effective January 1, 2007) of a Participant's Eligible Compensation contributed with respect to periods following the Participant's completion of one year of Service pursuant to the 401(k) Election of the Participant.

Notwithstanding the foregoing, effective January 1, 2007, the maximum Employer Contribution a Participant may receive for a Plan Year is set forth in the following table:

| Amount of Eligible Compensation | Maximum Employer Contribution For Current Plan Year |
|---|---|
| Participants who received Eligible Compensation of less than $300,000 during the prior Plan Year. | $3,000 |
| Participants who receive Eligible Compensation of $300,000 or more during the Prior Plan Year. | $2,000 |

For purposes of determining the maximum Employer Contribution that a Participant may receive under this Section 3.3.1.(a), such Participant's Eligible Compensation shall be his or her Eligible Compensation for the Plan Year immediately preceding the Plan Year for which the maximum Employer Contribution is being determined.

If contributions pursuant to a Participant's 401(k) Election are discontinued because the limitation referred to in Section 3.2.1 has been reached, Employer Contributions will continue at the contribution rate reflected on the Administrative Committee's records at the time the Company contribution is calculated, but not greater than the limit described in the first sentence of this section 3.3.1(a) above, so long as the Participant continues to receive Eligible Compensation and has not had his or her contributions to the Plan suspended. No Employer Contribution shall be made with respect to any Participant who at any time during the calendar year is participating in the     Merrill Lynch & Co., Inc. 1986 Employee Stock Purchase Plan, as amended (or any similar arrangement available to Employees of an Employer that is ineligible to participate in such Stock Purchase Plan); provided, however, that the Administrative Committee may elect to waive this restriction on such terms as the Administrative Committee may uniformly prescribe in connection with the admission to participation of a class of Employees pursuant to Section 2.1(b).

As of January 1, 2004, the restriction on Employer Contributions to any Participant who at any time during the calendar year is participating in the Merrill Lynch & Co., Inc., 1986 Employee Stock Purchase Plan or any similar arrangement as described in this Section 3.3.1(a) shall cease to apply.

Notwithstanding anything to the contrary herein, effective for all periods, Employer Contributions shall not be made with respect to After-Tax Contributions.

5.    **The following subsection 3.5.8 is added to the Plan:**

A Roth Elective Deferral Subaccount shall be established for each Participant on whose behalf Roth Elective Deferrals or Roth Catch-Up Contributions are made pursuant to Section 3.11, to which the Administrative Committee shall credit, or cause to be credited, such deferrals and contributions, plus any earnings and minus any losses thereon.

6.    **The following subsections are added to the Plan:**

3.11    Roth Elective Deferrals

3.11.1 Participation. As described below, all Participants who are eligible to make Elective 401(k) Deferrals under the Plan (as defined in Section 2) shall be eligible to make Roth Elective Deferrals, subject to any limitation contained in the Plan, and in accordance with Code section 402A and such eligible Participants may submit a 401(k) Election to the Plan Administrator at any time modifying any previous 401(k) Election to include Roth Elective Deferrals. All Participants who are eligible to make employee deferral contributions under the Plan (as defined in Article II) and who have attained age 50 before the close of the Plan Year shall be eligible to make Roth Catch-Up Contributions under the Plan. Participants shall be eligible to make Roth Elective Deferrals and Roth Catch-Up Contributions for any Plan Year beginning on or after January 1, 2007. Unless specifically stated otherwise, Roth Elective Deferrals will be treated as Elective 401(k) Deferrals for all purposes under the Plan. Unless stated otherwise, Roth Catch-Up Contributions shall be treated as catch-up contributions for all purposes under the Plan.

3.11.2 Separate Accounting. The Plan will maintain a Roth Elective Deferral Subaccount, which will reflect a Participant's Roth Elective Deferrals and Roth Catch-Up Contributions, if any, under the Plan, and income, losses, appreciation and depreciation attributable thereto. No Elective 401(k) Deferrals other than Roth Elective Deferrals and Roth Catch-Up Contributions and properly attributable earnings will be credited to a Participant's Roth Elective Deferral Subaccount. The Plan will maintain a record of the amount of Roth Elective Deferrals and Roth Catch-Up contributions in each Participant's separate Roth Elective Deferral Subaccount. Roth Elective Deferral and Roth Catch-Up Contributions shall not be re-classified at any time as Elective Deferrals and catch-up contributions, respectively. Elective Deferrals and catch-up contributions shall not be re-classified at any time as Roth Elective Deferrals and Roth Catch-Up Contributions, respectively.

3.11.3 Rollovers

(a)    Rollover Contributions.    Notwithstanding Section 3.4 of the Plan, at the direction of the Administrative Committee, and in accordance with such rules as the

Administrative Committee may establish from time to time, the trustee of the Plan may accept a Rollover Contribution to a Roth Elective Deferral Account only if it is a direct rollover from another Roth elective deferral account under an eligible retirement plan described in Code section 402A(e)(1), and the trustee will credit such amounts to the Roth Elective Deferral Account established in the name of the Employee to the extent the Rollover Contribution is permitted under the rules of Code section 402(c). Any amount received by the trustee for an Employee in accordance with the preceding sentence shall be fully vested in the Employee for whom it is held under the Plan.

(b)    Eligible Rollover Distributions.    Notwithstanding Section 5.5 of the Plan, a Participant or other eligible distribute may elect to have an eligible rollover distribution from a Roth Elective Deferral Account under the Plan paid directly to another Roth elective deferral account under an eligible retirement plan described in Code section 402A(e)(1) or to a Roth IRA described in Code section 408A, to the extent the rollover is permitted under the rules of Code section 402(c). Notwithstanding the foregoing, the Plan will not provide for a direct rollover distribution from a Participant's Roth Elective Deferral Account if the amount of the distribution that is an eligible rollover distribution totals $200.00 or less. Any distribution from a Participant's Roth Elective Deferral Account is not taken into account in determining whether distributions from a Participant's Accounts exceed $200.00.

3.11.4 Distributions. Except as provided in Section 3.11, a Participant's vested Roth Elective Deferral Account and Roth Catch-Up Contribution Account shall be distributed in accordance with the rules in Article 6. A qualified distribution is generally a distribution that is made after a Participant has participated in his or her Roth Elective Deferral Account over a five taxable-year period and that is either: (i) made on or after the date the Employee attains age 59 1/2; (ii) made after the Employee's death; or (iii) attributable to the Employee being disabled within the meaning of Code Section 72(m)(7).

3.11.5 Correction of Excess Contributions. In the case of a distribution of excess deferrals that include Roth Elective Deferrals ('excess Elective Deferrals'), a Highly Compensated Employee may designate the extent to which the excess amount is composed of excess Elective 401(k) Deferrals and excess Roth Elective Deferrals, but only to the extent such types of contributions were made by the Participant for the Plan Year. If the Highly Compensated Employee does not designate which type of contributions are to be distributed, the Plan will distribute the excess pre-tax Elective 401(k) Deferrals first.

7.    **Section 4.1.1 is amended to read as follows:**

A Participant shall be 100% vested in the Account Balance of his or her 401(k) Subaccount, Rollover Contributions Subaccount, Deferred Profit Sharing Account, Roth Elective Deferral Subaccount, and Vocon Account at all times. In addition, a Participant shall be 100% vested in all amounts attributable to dividends on Company Stock in his Account that are subject to a Participant's actual or deemed election to reinvest such dividends as described in Section 5.6.

8.     **Section 5.1.1 is amended to read as follows:**

Hardship withdrawals from a SIP Account shall upon notice from the Participant be paid to the Participant only if the Participant demonstrates to the Administrative Committee a "financial hardship" (as described below) warranting such a withdrawal.

     (a) <u>Prior to January 1, 2002</u>:  In order to obtain a hardship withdrawal from his or her SIP Account, the Participant must first withdraw the entire Account Balance of his or her Deferred Profit Sharing and Vocon Accounts.    Each hardship withdrawal from a Participant's SIP Account shall be paid in cash, in accordance with procedures approved by the Administrative Committee, from (i) the Participant's Rollover Contributions Subaccount, (ii) the Participant's Employer Contributions Subaccount (to the extent the Participant is vested in such Subaccount), (iii) the Participant's Transferred Employer Contributions Subaccount (to the extent the Participant is vested in such Subaccount and to the extent that withdrawals may be taken from such Subaccount, as indicated in Appendix II) and (iv) the Participant's Elective 401(k) Deferrals (not including the income attributable thereto or any Qualified Non-elective Contributions (as defined in Section 3.1(h)) and related income) in his or her 401(k) Subaccount; <u>provided</u>, however, that payments shall be made hereunder from the Participant's Elective 401(k) Deferrals only after all amounts available for hardship withdrawal have been paid from the Participant's Rollover Contributions Subaccount, the Participant's Employer Contributions Subaccount and the Participant's Transferred Employer Contributions Subaccount.

     After December 31, 2001:  Effective for distributions after December 31, 2001, in order for a Participant to obtain a hardship withdrawal from his or her SIP Account, the Participant must first (i) withdraw the entire Account Balance of his or her Deferred Profit Sharing Account (under Section 5.2), Vocon Account (under Section 5.3), Rollover Contributions Subaccount, beginning with the portion thereof consisting of Rollover After-Tax Contributions Subaccount (under Section 5.1.2), and After-Tax Contributions Subaccount (under Section 5.1.2) and (ii) withdraw all amounts available under Section 5.1.2 from his or her Employer Contributions Subaccount and Transferred Employer Contributions Subaccount.

9.     **The first paragraph of Section 5.1.3 is amended to read as follows:**

Withdrawals from a SIP Account at or after attainment of age 59½ by a Participant shall upon notice from the Participant be paid in cash (and/or in kind if the Participant has attained age 70½), in accordance with procedures established to administer the Plan, from (i) the Participant's Rollover Contributions Subaccount, including the Participant's Rollover After-Tax Contributions Subaccount, (ii) the Participant's Employer Contributions Subaccount (to the extent the Participant is vested in such Subaccount), (iii) the Participant's Transferred Employer Contributions Subaccount (to the extent the Participant is vested in such Subaccount and to the extent that withdrawals may be taken from such Subaccount, as indicated in Appendix II), (iv)

the Participant's 401(k) Subaccount, (v) Roth Elective Deferral Subaccount, and (vi) the Participant's After-Tax Contributions Subaccount.

**10.    Section 5.1.4 is amended to read as follows:**

During the period of a Participant's Disability, withdrawals from a SIP Account shall upon notice from the Participant be paid in cash, in accordance with procedures approved by the Administrative Committee, from the the Participant's Rollover Contributions Subaccount (including the Participant's Rollover After-Tax Contributions Subaccount), the Participant's Employer Contributions Subaccount (to the extent the Participant is vested in such Subaccount), the Participant's Transferred Employer Contributions Subaccount (to the extent the Participant is vested in such Subaccount and to the extent that withdrawals may be taken from such Subaccount, as indicated in Appendix II), the Participant's After-Tax Contributions Subaccount, the Participant's Roth Elective Deferral Subaccount, and the Participant's 401(k) Subaccount.

**11.    Section 7.1.3 is amended to read as follows:**

A Beneficiary who is the Participant's Spouse (or an alternate payee under a "qualified domestic relations order" as defined in Code section 414(p) who is treated as the Participant's Spouse) who is eligible to receive a distribution from the Plan pursuant to the provisions of this Article VII which constitutes an "eligible rollover distribution," as defined in Code section 402(c)(4) (Code section 402(f)(2)(A), effective January 1, 2002), may direct the Administrative Committee to transfer all or any part of such distribution to an individual retirement account or an individual retirement annuity (or, effective for distributions after December 31, 2001, to an "eligible retirement plan" as defined under Section 5.5 of the Plan). The Administrative Committee shall cause the portion of the distribution which such Spouse has elected to so transfer to be transferred directly to the designated individual retirement account or individual retirement annuity.

Solely to the extent permitted under Code section 402(c)(11) and the regulations and other guidance issued thereunder, with respect to any portion of a distribution from the Plan on behalf of a deceased Participant, pursuant to the provisions of this Article VII, if a direct trustee-to-trustee transfer is made to an individual retirement plan described in Code section 402(c)(8)(B)(i) or (ii), which individual retirement plan is established for the purposes of receiving the distribution on behalf of an individual who is a designated Beneficiary (as defined by Code section 401(a)(9)(E)) of the Participant and who is not the surviving Spouse of the Participant, the transfer shall be treated as an eligible rollover distribution for purposes of this Plan and Code section 402(c). For purposes of this paragraph, to the extent provided in regulations or other guidance prescribed by the Internal Revenue Service under Code section 402(c)(11), a trust maintained for the benefit of one or more designated beneficiaries shall be treated in the same manner as a trust designated beneficiary.

12.     **Section 1.22 is amended as follows:**

Effective for all periods, the first sentence following paragraph (d) of Section 1.22 relating to "foreign employees" assigned to the United States is deleted in its entirety. The following new paragraph following such paragraph (d) is added:

Notwithstanding anything in this Section 1.22 to the contrary, by amending Appendix 1 of the Plan, the Administrative Committee (or its delegatee) may, in its discretion by reference to the jurisdiction in which the individual is employed and/or the payroll from which the individual is paid, designate as Eligible Employees identified groups of international employees and further, notwithstanding anything in this Section 1.22 to the contrary, any Eligible Employee (i) who is otherwise eligible to participate in the Plan, (ii) who is a United States citizen or permanent resident alien and (iii) who is on temporary assignment outside the United States shall be entitled to participate in the Plan during the period of his or her temporary assignment only if the Company determines that it is administratively feasible to permit such employee to actively participate in the Plan during the period of his or her temporary assignment.


        FURTHER RESOLVED, that the proper officers of the Company are hereby authorized and directed in the name of and on behalf of the Company, to execute and deliver such amendment, and to execute any and all such additional documents and amendments that may be otherwise deemed necessary or appropriate to implement the foregoing resolutions and amendment of the Plan.


_Michael Berkowitz_ _____          _May 30, 2007_ _____
Michael Berkowitz, SVP Leadership & Talent Management          Date

MERRILL LYNCH & CO., INC.

401(k) SAVINGS & INVESTMENT PLAN

As restated, including amendments
adopted through December 9, 2005

WDC99 534287-1:047750.0011

401(k) Plan

### MERRILL LYNCH & CO., INC.
### 401(k) SAVINGS & INVESTMENT PLAN
#### (Restated to Include Amendments Through December 9, 2005)

In accordance with the power reserved to the Company in Section 12.1 of the Merrill Lynch & Co., Inc. 401(k) Savings & Investment Plan (the "Plan"), the Plan is hereby amended as follows:

1.      Section 11.1.2 is amended to read as follows (additions bolded, deletions struck-through):

If Designated Investment Alternatives are established, the Administrative Committee may, in its sole discretion, permit Participants and Beneficiaries to determine the portion of their Accounts that shall be invested in each Designated Investment Alternative and shall determine what transfers between Designated Investment Alternatives and other Trust assets shall be permissible. The Plan is then intended to comply with section 404(c) of ERISA, under which Participants and Beneficiaries are responsible for, and bear the consequences of, such investment determinations.

**Subject to Section 11.1.5, and** ~~N~~**n**otwithstanding the foregoing, in no event shall Participants or Beneficiaries be permitted to direct offsetting transactions with respect to a Designated Investment Alternative (other than any Designated Investment Alternative designed to invest in Company Stock or in a money market mutual fund or other Designated Investment Alternative designed to invest in short-term money market instruments) more than once every fifteen (15) business days.

2.      A new Section 11.1.5 is added to read as follows:

The Senior Vice President – Leadership and Talent Management shall have the authority to amend the Plan to implement trading restrictions on Participant or Beneficiary transactions involving Designated Investment Alternatives in a manner consistent with restrictions otherwise imposed by a Designated Investment Alternative provider. Any amendment implemented under this subsection shall remain in effect until otherwise amended by the Senior Vice President – Leadership and Talent Management. Any such amendments may be reflected in communications provided to Participants and Beneficiaries and shall be deemed to constitute part of the Plan and are hereby incorporated by reference.

3.      The foregoing amendments are effective as of October 1, 2006.

FURTHER RESOLVED, that the proper officers of the Company are hereby authorized and directed in the name of and on behalf of the Company, to execute and deliver such amendment, and to execute any and all such additional documents and amendments that may be otherwise deemed necessary or appropriate to implement the foregoing resolutions and amendment of the Plan.

401(k) Plan

_Michael Berkowitz_ (signature)

Michael Berkowitz, SVP Leadership &Talent Management

Sept 18, 2006

Date

# FOREWORD

Effective as of October 1, 1987, Merrill Lynch & Co., Inc. (the "Company") established the Merrill Lynch & Co., Inc. 401(k) Savings & Investment Plan (the "SIP"), a savings plan intended to be qualified pursuant to Section 401(a) and other pertinent Sections of the Internal Revenue Code of 1986, as amended (the "Code"), and to include a cash or deferred arrangement pursuant to Code section 401(k). The Company adopted the Plan in order to provide eligible employees of the Company and its participating affiliates with a supplemental source of retirement income, as well as to provide assistance in other circumstances, such as death.

The Plan was amended and restated, effective as of January 1, 1989, to comply with the Tax Reform Act of 1986 and to make certain other amendments. The Plan was amended and restated, effective as of January 1, 1990, to change the name of the Plan to conform certain provisions to the provisions of the Company's Employee Stock Ownership Plan and Retirement Accumulation Plan and to make certain other amendments. The Plan was amended on October 25, 1991 to comply with Treasury regulations which were promulgated under various Code provisions to provide greater flexibility in the payment of Plan benefits and to make certain other amendments. The Plan was amended on March 10, 1993 to provide for the participation of certain "international" and "foreign" employees. The Plan was amended on October 4, 1993 to change enrollment dates for certain eligible Participants and the Plan's vesting schedule. The Plan was amended and restated, effective as of January 1, 1994, to include provisions required under the Unemployment Compensation Amendments of 1992 (which were effective January 1, 1993) and the Omnibus Budget Reconciliation Act of 1993 and certain other changes.

The Plan was amended, effective December 12, 1994, to include provisions required under the Uniformed Services Employment and Reemployment Rights Act of 1994. The Plan was amended, effective December 1, 1995, to reflect the merger of the Merrill Lynch & Co., Inc. 401(k) Savings & Investment Plan (Puerto Rico) into the Plan effective December 1, 1995. The Plan was amended, effective January 1, 1997, to include provisions required under the Small Business Job Protection Act of 1996 and certain other changes (some of which provided for effective dates other than January 1, 1997). The Plan was amended, effective December 31, 1997, to provide for the rollover or transfer of outstanding loan balances to the Plan. The Plan was amended, effective July 1, 1999, to reflect the cash-out of small benefits provisions available under the Taxpayer Relief Act of 1997 ("TRA 97") (no changes to the Plan were required to comply with TRA 97). The Plan was amended, effective January 1, 2000, to provide for correction of administrative errors, to expand the categories of hardship withdrawal events to include events relating to Participants' domestic partners and reflect certain other changes. The Plan was amended, effective April 7, 2000, to provide that cashless exercises of stock options would be permitted during the 12 months following a hardship withdrawal. The Plan was amended, effective July 1, 2000, to eliminate the service requirement for eligibility (except for eligibility to receive allocations of Employer Contributions) and to provide an increase in the rate of Employer Contributions. The Plan was amended, effective July 3, 2000, to implement a loan program. No amendments were necessary to the language in the Plan

document to comply with the requirements of the General Agreement on Tariffs and Trades ("GATT") or the IRS Restructuring Act of 1998. The Plan was amended, effective August 31, 2001, to provide for an Investment Committee to perform certain functions formerly performed by the Administrative Committee.

The Plan was amended and restated, generally effective as of January 1, 2001 (or such other dates incorporated in the Plan, as required by law, or as otherwise set forth in a Company action), to consolidate the foregoing amendments, to reflect certain provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001, and to reflect certain other changes.

The Plan was amended and restated, generally effective as of January 1, 2005 (or such other dates incorporated in the Plan, as required by law, or as otherwise set forth in a Company action), to incorporate, among other things, certain proposed amendments in accordance with the terms of the favorable determination letter dated July 22, 2002, including a specific definition for eligible compensation and a clarification of the maximum loan amounts that a participant may borrow from the Plan; to permit participants to make catch-up and after-tax contributions and direct after-tax account rollovers; to add a stock bonus and employee stock ownership plan feature to the Plan; to provide for immediate vesting of dividends paid by Company stock; to permit participants who have attained age 59½ to withdraw in-kind all of their account balance invested in Company stock in a lump sum; to permit all participants to defer distribution of their plan benefit to age 70½; to require accounts invested in separate brokerage accounts to be invested only in Plan investment funds; to impose a fifteen (15) business day prohibition on off-setting trades in all investment funds not designed for investment in Company stock or short-term money market instruments; to eliminate the automatic cash-out feature for Plan benefits of less than $5,000; to eliminate the requirement that terminated participants take distribution of their Plan benefit upon attaining age 65; and to reflect certain other changes.

## CERTIFICATE OF ADOPTION

WHEREAS, it is now considered desirable for Merrill Lynch & Co., Inc. (the "Company") to adopt the Merrill Lynch & Co., Inc. 401(k) Savings & Investment Plan, as amended and restated, effective as of January 1, 2005 (or such other dates incorporated in the Plan, as required by law, or as otherwise set forth in a Company action); and

WHEREAS, the Company's Senior Vice President of Human Resources (or his or her functional successor) has the authority to adopt the plan;

NOW, THEREFORE, the Company, acting through its duly authorized representative, hereby adopts the Merrill Lynch & Co., Inc. 401(k) Savings & Investment Plan, as amended and restated, effective as of January 1, 2005 (or such other dates incorporated in the Plan, as required by law, or as otherwise set forth in a Company action) in the form attached hereto.

Dated this _9th_ day of _December_, 2005

MERRILL LYNCH & CO., INC.

By: _____
Chief Administrative Officer, Merrill Lynch & Co., Inc.

iii

# TABLE OF CONTENTS

|  | Page |
|---|---|
| FOREWORD | i |
| CERTIFICATE OF ADOPTION | iii |
| TABLE OF CONTENTS | iv |

ARTICLE I: DEFINITIONS

| | | |
|---|---|---|
| 1.1 | "Account" | 1 |
| 1.2 | "Account Balance" | 1 |
| 1.3 | "Administrative Committee" | 1 |
| 1.4 | "Affiliate" | 1 |
| 1.5 | "After-Tax Contributions" | 1 |
| 1.6 | "After-Tax Contribution Subaccount" | 2 |
| 1.7 | "Beneficiary" | 2 |
| 1.8 | "Benefit Distribution Date" | 2 |
| 1.9 | "Board of Directors" or "Board" | 2 |
| 1.10 | "Code" | 2 |
| 1.11 | "Company" | 2 |
| 1.12 | "Company Stock" | 2 |
| 1.13 | "Deferred Profit Sharing Account" | 2 |
| 1.14 | "Defined Benefit Plan" | 2 |
| 1.15 | "Defined Contribution Plan" | 2 |
| 1.16 | "Designated Investment Alternative" | 2 |
| 1.17 | "Domestic Partner" | 2 |
| 1.18 | "Disability" | 2 |
| 1.19 | "Early Retirement" | 3 |
| 1.20 | "Elective 401(k) Deferrals" | 3 |
| 1.21 | "Eligible Compensation" | 3 |
| 1.22 | "Eligible Employee" | 3 |
| 1.23 | "Eligible Participant" | 4 |
| 1.24 | "Employee" | 4 |
| 1.25 | "Employer" | 5 |
| 1.26 | "Employer Contribution" | 5 |
| 1.27 | "Employer Contributions Subaccount" | 5 |
| 1.28 | "Employment" | 5 |
| 1.29 | "Entry Date" | 5 |
| 1.30 | "ERISA" | 5 |
| 1.31 | "401(k) Election" | 5 |
| 1.32 | "401(k) Subaccount" | 5 |
| 1.33 | "Highly Compensated Employee" | 5 |
| 1.34 | "Hour of Service" | 6 |
| 1.35 | "Investment Committee" | 6 |

WDC99 534287-1.047750.0011

1.36 "Investment Manager"........................................................................... 6
1.37 "Non-Highly Compensated Employee" .................................................. 6
1.38 "Normal Retirement Age" ..................................................................... 6
1.39 "Participant" ......................................................................................... 6
1.40 "Plan" .................................................................................................... 7
1.41 "Plan Benefit"........................................................................................ 7
1.42 "Plan Year"............................................................................................ 7
1.43 "Qualified Joint and Survivor Annuity"................................................ 7
1.44 "Qualified Plan" .................................................................................... 7
1.45 "Retirement" or "Retires"..................................................................... 7
1.46 "Rollover After-Tax Contributions" ..................................................... 7
1.47 "Rollover After-Tax Contributions Subaccount" ................................. 8
1.48 "Rollover Contribution" ........................................................................ 8
1.49 "Rollover Contributions Subaccount".................................................. 8
1.50 "SIP Account" ........................................................................................ 8
1.51 "Self-Directed Assets"........................................................................... 8
1.52 "Service"................................................................................................. 9
1.53  "Spouse" ............................................................................................... 9
1.54 "Termination of Employment"............................................................. 9
1.55 "Testing Compensation" ....................................................................... 10
1.56 "Transferred  Employer Contribution".................................................. 10
1.57 "Transferred Employer Contributions Subaccount" ........................... 10
1.58 "Trust" ................................................................................................... 10
1.59 "Trust Agreement" ................................................................................ 11
1.60 "Trustee"................................................................................................ 11
1.61 "Valuation Date" ................................................................................... 11
1.62 "Vesting Service" ................................................................................... 11
1.63 "Vocon Account" ................................................................................... 11

ARTICLE II: ELIGIBILITY AND PARTICIPATION

2.1    Admission as a Participant.................................................................. 12
2.2    Rehired Employees .............................................................................. 12
2.3    Transfers to or from Non-Covered Status.......................................... 13
2.4    Military Leave....................................................................................... 13

ARTICLE III:  CONTRIBUTIONS

3.1    Definitions   ......................................................................................... 14
3.2    Elective 401(k) Deferrals..................................................................... 15
3.3    Employer Contributions and After-Tax Contributions ...................... 19
3.4    Rollover Contributions/Transferred Amounts .................................... 23
3.5    Establishing of Accounts ..................................................................... 23
3.6    Limitation on Allocations .................................................................... 24
3.7    Combined Plan Limitation................................................................... 26
3.8    Return of Employer Contributions under Special Circumstances ....... 26

3.9  Correction of Administrative Errors ..................................................... 26
3.10  Separate Testing for ESOP ............................................................. 27

ARTICLE IV:  VESTING AND TOP-HEAVY PROVISIONS

4.1  Determination of Vesting................................................................. 28
4.2  Rules for Crediting Vesting Service .................................................. 29
4.3  Employer Contributions Subaccount Forfeitures and Restoration ...................... 29
4.4  Top-Heavy Provisions ................................................................... 30

ARTICLE V:  ACCOUNT WITHDRAWALS DURING EMPLOYMENT

5.1  SIP Account  ............................................................................ 35
5.2  Deferred Profit Sharing Account ....................................................... 39
5.3  Vocon Account .......................................................................... 39
5.4  General Rules ........................................................................... 39
5.5  Direct Rollover Withdrawals ............................................................ 39
5.6  Dividends on Company Stock  ............................................................ 40

ARTICLE VI:  DISTRIBUTION OF ACCOUNTS UPON TERMINATION OF
            EMPLOYMENT OR RETIREMENT

6.1  Amount of Benefits...................................................................... 41
6.2  Forms of Distribution................................................................... 41
6.3  Benefit Distribution Date............................................................... 43
6.4  Minimum Required Distributions .......................................................... 45
6.5  Spousal Consent Requirements ............................................................ 47
6.6  Distribution of 401(k) Elective Deferrals .............................................. 48
6.7  Exclusion of Rollover Contributions Subaccounts from Calculation of
       Cash-out Limit ..................................................................... 49

ARTICLE VII:  DEATH BENEFITS

7.1  Distribution of Account Balances ....................................................... 50
7.2  Beneficiaries .......................................................................... 51
7.3  Investments Prior to Distribution...................................................... 52

ARTICLE VIII:  FIDUCIARIES

8.1  Named Fiduciaries ...................................................................... 53
8.2  Payment of Expenses .................................................................... 53
8.3  Indemnification......................................................................... 53

ARTICLE IX:  TRUSTEE

9.1  Appointment of Trustee ................................................................. 54

vi

ARTICLE X:  PLAN ADMINISTRATION

10.1    The Administrative Committee............................................... 56
10.2    Investment Committee ......................................................... 58
10.3    Claim Procedures ................................................................ 59

ARTICLE XI:  MANAGEMENT, CONTROL AND INVESTMENT OF PLAN ASSETS

11.1    Investment of Plan Assets.................................................... 60
11.2    Self-Directed Assets............................................................ 61
11.3    Company Stock and Designated Investment Alternatives in SIP Accounts.......... 62
11.4    Valuation of Accounts ......................................................... 67
11.5    Insurance Contracts............................................................ 67
11.6    The Investment Manager ..................................................... 67
11.7    Compensation...................................................................... 68
11.8    Loan Program...................................................................... 68

ARTICLE XII:  PLAN ADOPTION, AMENDMENT, TERMINATION AND MERGER

12.1    Plan Amendment.................................................................. 71
12.2    Limitations on Plan Amendment .......................................... 71
12.3    Termination of Plan or Discontinuance of Contributions...................... 72
12.4    Merger, Consolidation or Transfer ....................................... 73
12.5    Bankruptcy   ....................................................................... 74

ARTICLE XIII:  MISCELLANEOUS PROVISIONS

13.1    Exclusive Benefit of Participants   ...................................... 75
13.2    Plan Not a Contract of Employment ..................................... 75
13.3    Source of Benefits................................................................ 75
13.4    Benefits Not Assignable ...................................................... 75
13.5    Domestic Relations Orders ................................................... 75
13.6    Benefits Payable to Minors, Incompetents and Others....................... 76
13.7    Missing Payees.................................................................... 77
13.8    Action by Employer ............................................................ 77
13.9    Provision of Information ..................................................... 77
13.10  Controlling Law .................................................................. 77
13.11  Singular and Plural and Article and Section References ..................... 77

APPENDIX I: DESIGNATION OF ELIGIBLE INTERNATIONAL EMPLOYEES...... A-1

APPENDIX II: VESTING/WITHDRAWAL OF TRANSFERRED AMOUNTS ............ A-2

SUPPLEMENT A:  ADDITIONAL RULES FOR PUERTO RICO PARTICIPANTS....SA-1

WDC99 534287-1.047750.0011

# ARTICLE I

## DEFINITIONS

Each of the following terms shall have the meaning set forth in this Article I for purposes of this Plan and any amendments thereto. Some of the words and phrases used in the Plan are not defined in this Article I, but for convenience, are defined as they are introduced into the text.

1.1    Account:  A separate SIP Account, Deferred Profit Sharing Account, or Vocon Account, as the case may be.

1.2    Account Balance:  The value of an Account or subaccount determined as of the applicable Valuation Date.

1.3    Administrative Committee:  The committee appointed pursuant to, and having the responsibilities specified in, Section 10.1 of the Plan.

1.4    Affiliate:  Any corporation or unincorporated trade or business (other than the Company) while it is:

(a)    a member of a "controlled group of corporations" (within the meaning of Code section 414(b)) of which the Company is a member; provided, however, that for purposes of Sections 3.6 and 3.7, the phrase "more than 50 percent" shall be substituted for the phrase "at least 80 percent" wherever the latter phrase appears in Code section 1563(a)(1);

(b)    a trade or business under "common control" (within the meaning of Code section 414(c)) with the Company; provided, however, that for purposes of Sections 3.6 and 3.7, the phrase "more than 50 percent" shall be substituted for the phrase "at least 80 percent" wherever the latter phrase appears in Code section 1563(a)(1);

(c)    a member of an "affiliated service group" (within the meaning of Code section 414(m)) which includes the Company; or

(d)    any other entity required to be aggregated with the Company pursuant to Code section 414(o).

1.5    After-Tax Contribution:  A contribution received by the Trust of amounts which have been included or were includible in the Participant's taxable income, and which are made in accordance with Section 3.3.

1.6   After-Tax Contributions Subaccount:  The subaccount of a SIP Account established for a Participant pursuant to Section 3.3.

1.7   Beneficiary:  The individual or entity determined in accordance with, and entitled to receive any distribution of benefits pursuant to, Article VII.

1.8   Benefit Distribution Date:  The date determined pursuant to Section 6.3 as of which a Participant receives or has elected to receive a distribution of the balance of his or her Plan Benefit.  In the case of a benefit payable in installments, the Benefit Distribution Date shall be the date as of which the Participant receives (or has elected to receive) the first installment.

1.9   Board of Directors or Board:  The Board of Directors of the Company, or a committee thereof, or any person duly empowered to exercise the powers of the Company with respect to the Plan.

1.10  Code:  The Internal Revenue Code of 1986, as amended from time to time.  References to specific Code provisions shall include the specific provision and any applicable regulations pertaining thereto.

1.11  Company:  Merrill Lynch & Co., Inc. and any successor thereto.

1.12  Company Stock:  Shares of common stock issued by the Company or any Affiliate that is a member of the same controlled group, as defined in Code section 414(b).

1.13  Deferred Profit Sharing Account:  The Account established for a Participant pursuant to Section 3.5.4.

1.14  Defined Benefit Plan:  Any plan of the type defined in Code section 414(j) maintained by the Company or an Affiliate, as applicable.

1.15  Defined Contribution Plan:  Any plan of the type defined in Code section 414(i) maintained by the Company or an Affiliate, as applicable.

1.16  Designated Investment Alternative:  Any investment designated by the Administrative Committee pursuant to Section 11.1 for investment of assets of the Trust.

1.17  Domestic Partner:  With respect to any Participant, an individual who would qualify as the Qualified Adult – Domestic Partner for the Participant under the terms of Merrill Lynch & Co., Inc. Medical Care Plan, regardless of whether the Participant elects coverage for such individual under such plan.

1.18  Disability:  A physical or mental condition that qualifies a Participant to receive total or partial benefit payments under the basic long-term disability plan provided and maintained by such Participant's Employer.  A Participant's Disability shall be deemed

2

to cease at such time as payments under such basic long-term disability plan cease to be payable without taking into consideration any offset against those benefits.

1.19  Early Retirement:  Termination of Employment, other than by reason of death, after attainment of age 55 and completion of ten years of Employment (as determined in accordance with records maintained by the Employer), but prior to Normal Retirement Age.

1.20  Elective 401(k) Deferrals:  Contributions made to the Plan with respect to a Plan Year by the Employer, at the election of the Participant, in lieu of cash compensation, including contributions made pursuant to a salary reduction agreement.

1.21  Eligible Compensation:  With respect to an Employee, the Employee's wages, tips and other compensation shown on the Form W-2 that is furnished to the Employee, i.e., the Employee's "wages" (as defined in Code section 3401(a)), and all other payments of compensation to the Employee by his or her Employer (in the course of the Employer's trade or business) for which the Employer is required to furnish the Employee with a written statement under Code section 6041(d), 6051(a)(3) or 6052.  Notwithstanding the foregoing, Eligible Compensation (i) shall be determined without regard to any rules under Code section 3401(a) that limit the remuneration included in "wages" based on the nature or location of the employment or the services performed, (ii) shall not include any stock-based compensation, deferred compensation (either at the time of deferral or payment), reimbursements, fringe benefits or other expense allowances, moving expenses or welfare benefits (including any payments made under an Employer's severance pay plan) and (iii) shall include  amounts that are not includible in gross income under Code sections 125, 132(a)(5) or  402(e)(3).

Notwithstanding any other provisions of this definition, for Plan Years beginning on or after January 1, 1994, the Eligible Compensation of an Eligible Participant for any Plan Year shall not exceed $150,000  (as adjusted for changes in the cost of living under Code section 401(a)(17) and applicable Treasury regulations and Internal Revenue Service pronouncements).  Effective for Plan Years beginning on or after January 1, 2002, the Eligible Compensation of an Eligible Participant shall not exceed $200,000 (as adjusted for changes in the cost of living under Code section 401(a)(17) and applicable Treasury regulations and Internal Revenue Service pronouncements).

The determination of Eligible Compensation shall be in accordance with records maintained by the Employer and shall be conclusive.

Notwithstanding any other provision of this Plan, any amount paid on or after April 1, 1999 with respect to an Employee or former Employee more than 6 months after such individual's Termination of Employment, Retirement or death, shall be presumed not to be Eligible Compensation unless such individual (or his or her estate) establishes otherwise to the satisfaction of the Administrative Committee.

1.22  Eligible Employee:  All Employees of an Employer other than:

(a) any Employee included in a unit of Employees covered by a collective bargaining agreement between an Employer and Employee representatives in the negotiation of which retirement benefits were the subject of good faith bargaining, unless: (i) such bargaining agreement provides for participation in the Plan, (ii) the Employee representatives represented an organization more than half of whose members are owners, officers or executives of such Employer, or (iii) 2% or more of the Employees who are covered pursuant to that agreement are professionals as defined in Treasury Regulation section 1.410(b)-6(d);

(b) Employees whose principal place of Employment is outside the United States, U.S. Virgin Islands, Guam and Puerto Rico;

(c) "leased employees" within the meaning of Code section 414(n)(2) and any individual who is not treated by an Employer as an employee for federal employment tax withholding purposes at the time he or she performs services for the Employer, regardless of any contrary governmental or judicial determination relating to such employment status or tax withholding; or

(d) such other group or classification of Employees of an Employer as determined by the Administrative Committee.

Any Employees who are "foreign employees" (i.e., non-U.S. citizens and non-U.S. permanent residents) assigned to Employment in the United States, U.S. Virgin Islands, Guam and Puerto Rico who continue to accrue substantial retirement benefits under the plan(s) maintained by their permanent Employer who are not described in clause (b) above, shall not be Eligible Employees. Notwithstanding the foregoing, by amending Appendix I of the Plan the Administrative Committee (or its delegatee) may, in its discretion by reference to the jurisdiction in which the individual is employed and/or the payroll from which the individual is paid, designate as Eligible Employees identified groups of "international employees."

An Eligible Employee shall not become an Eligible Participant or a Participant until he or she has satisfied the applicable requirements of Section 2.1.

1.23   Eligible Participant: Any Eligible Employee who has otherwise met the requirements of Section 2.1 but who has not completed the enrollment process described in Section 2.1.

1.24   Employee: Any individual engaged in rendering personal service under the direction or control of the Company or an Affiliate which shall include a leased employee within the meaning of Code section 414(n)(2). Notwithstanding the foregoing, if leased employees do not constitute more than 20% of the Employer's non-highly compensated work force within the meaning of Code section 414(n)(5)(C)(ii), the term "Employee" shall not include those leased employees covered by a plan described in Code section 414(n)(5).

4

1.25    Employer:  The Company and each Affiliate, except such Affiliates designated from time to time by the Administrative Committee as not participating in this Plan.

1.26    Employer Contribution:  A contribution made by the Employer to Employer Contributions Subaccounts pursuant to Section 3.3.

1.27    Employer Contributions Subaccount:  The subaccount of a SIP Account established for a Participant pursuant to Section 3.5.1.

1.28    Employment:  An Employee's employment with the Company or an Affiliate or, to the extent required under Code section 414(a)(2) or as otherwise specified by the Administrative Committee, any predecessor of any of them.

1.29    Entry Date:  For periods prior to January 1, 1997, the first day of any calendar quarter coincident with or next following the date that the Eligible Employee has satisfied the requirements of Section 2.1.  Effective January 1, 1997, the first day of any calendar month coincident with or next following the date that the Eligible Employee has satisfied the requirements of Section 2.1.  Effective January 1, 2000, except as otherwise provided in Article 2, as soon as practicable following the date that the Eligible Employee has satisfied the requirements of Section 2.1.

1.30    ERISA:  The Employee Retirement Income Security Act of 1974, as amended from time to time.  References to specific ERISA provisions shall include such provision and any applicable regulations pertaining thereto.

1.31    401(k) Election:  The election of Elective 401(k) Deferrals by a Participant in a manner designated by the Administrative Committee.

1.32    401(k) Subaccount:  The subaccount of a SIP Account established for a Participant pursuant to Section 3.5.2.

1.33    Highly Compensated Employee:  An Employee who

        (a)    during the preceding Plan Year:

               (i)    was at any time a "5% owner" (as defined in Code section 416(i)(1)), with respect to the Company or an Affiliate, or

               (ii)   received more than $80,000 of Testing Compensation and was a member of the top paid group (i.e., was one of the top 20% of all Employees of the Company and Affiliates ranked by Testing Compensation); or

        (b)    during the current Plan Year, was a 5% owner at any time

For purposes of this definition, (i) the $80,000 amount is to be adjusted as required under Code section 414 (q) and Internal Revenue Service pronouncements and (ii) the number of Employees who are in the "top paid group" shall be determined by taking into account all Employees of the Company and Affiliates, without regard to any minimum age or service requirements.

1.34　Hour of Service: An Hour of Service shall include for purposes of eligibility and vesting:

(a) each hour for which an Employee is directly or indirectly paid, or entitled to payment, by the Company or an Affiliate for the performance of duties for the Company or an Affiliate, with such Hours of Service being credited to the Employee for the Plan Year or Plan Years in which the duties were performed;

(b) each hour for which an Employee is paid, or entitled to payment, by the Company or an Affiliate on account of a period of time during which no duties are performed (irrespective of whether the Employee's Employment has terminated) due to vacation, holiday, illness, incapacity (including Disability), layoff, jury duty, military duty or leave of absence; and

(c) each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Company or an Affiliate. The same Hours of Service will not be credited both under subparagraph (a) or subparagraph (b), as the case may be, and under this subparagraph (c). These hours will be credited to the Employee for the year of Service or other computation period or periods to which the award or agreement pertains rather than for the year of Service or other computation period in which the award, agreement or payment is made.

Hours of Service under paragraphs (b) and (c) above shall be calculated and credited in accordance with Department of Labor Regulations Sections 2530.200b-2 (b) and (c) which are incorporated herein by reference.

1.35　Investment Committee: The committee appointed pursuant to, and having the responsibilities specified in, Section 10.2 of the Plan.

1.36　Investment Manager: Any person appointed pursuant to Section 11.6 having the power to direct the investment of assets in accordance with that Section.

1.37　Non-Highly Compensated Employee: An Employee of the Company or an Affiliate who is not a Highly Compensated Employee.

1.38　Normal Retirement Age: Age 65.

1.39　Participant: An Eligible Employee who has commenced, but not terminated, participation in the Plan as provided in Article II. An individual with respect to whom

WDC99 534287-1.047750.0011

amounts are transferred to the Trust in accordance with Section 3.4.2 shall be treated as a Participant to the extent necessary under the Plan.

Except with respect to Article III, each Participant shall continue to be such after he or she ceases to be an Eligible Employee until the earliest of:

    (a) his or her Account has been completely distributed (including the application of the Account to the purchase of an annuity which is then distributed to the Participant) at a time when he or she is no longer eligible for future contributions;

    (b) in the case of a Participant with no vested rights to a benefit under the Plan, the date he or she terminates Employment; or

    (c) his or her death.

1.40   <u>Plan</u>:  Merrill Lynch & Co., Inc. 401(k) Savings & Investment Plan as set forth herein or as amended from time to time hereafter.  Effective May 8, 2003 that portion of the Plan invested in Company Stock (other than Company Stock held in an individual brokerage account held for the benefit of a single participant) is both a stock bonus plan and an employee stock ownership plan intended to qualify under Code Section 401(a) and Code Section 4975(e)(7), respectively, and as such, shall comply with Code Section 401(a)(28). The remainder of the Plan is a profit sharing plan intended to qualify under Code section 401(a).

1.41   <u>Plan Benefit</u>:  The sum of the vested portion of each of the Participant's Accounts.

1.42   <u>Plan Year</u>:  The period of October 1, 1987 through December 31, 1987 and each calendar year thereafter.

1.43   <u>Qualified Joint and Survivor Annuity</u>:  In the case of a married Participant, an annuity for the life of the Participant with a survivor annuity for the life of the Participant's spouse which is 50% of the amount of the annuity payable during the joint lives of the Participant and his or her spouse.  If the Participant is unmarried, Qualified Joint and Survivor Annuity shall mean an annuity for the life of the Participant.  In either case, the annuity shall be the amount of benefit which can be purchased with the Participant's Account Balance, or any portion thereof to which this form of benefit is applicable.

1.44   <u>Qualified Plan</u>:  A plan which is qualified under Code section 401(a).

1.45   <u>Retirement</u> or <u>Retires</u>:  A Participant's Termination of Employment other than by reason of death, upon Early Retirement or on or after attainment of Normal Retirement Age.  A Participant "Retires" upon the occurrence of his or her Retirement.

1.46   <u>Rollover After-Tax Contribution</u>:  The portion of any Rollover Contribution transferred consisting of amounts that had been included or were includible in the Participant's taxable income.

7

1.47    Rollover After-Tax Contributions Subaccount:  The subaccount of a SIP Account established for the Participant pursuant to Section 3.5.3.

1.48    Rollover Contribution:  A contribution which is received by the Trust that is:

(a)    an "eligible rollover distribution" made from a Qualified Plan pursuant to Code section 402(c) or made under Code section 403(a) from an "employee annuity" as referred to in that section, or

(b)    a payout or distribution to the Eligible Participant referred to in Code section 408(d)(3)(A)(ii) from an "individual retirement account" or an "individual retirement annuity" described, respectively, in Code sections 408(a) or 408(b).

Effective January 1, 2002, Rollover Contribution shall mean a contribution (excluding after-tax employee contributions) which is received by the Trust that is:

(a)    an "eligible rollover distribution" made from (i) a Qualified Plan or a qualified annuity plan described in Code section 403(a), an annuity contract described in Code section 403(b), or (iii) an eligible plan under Code section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state, or

(b)    a payout or distribution to the Eligible Participant referred to in Code section 408(d)(3)(A)(ii) from an "individual retirement account" or an "individual retirement annuity" described, respectively, in Code sections 408(a) or 408(b).

Effective January 1, 2002, the definition of Rollover Contribution shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order as defined in Code section 414(p).

Effective January 1, 2005, the exclusion of after-tax employee contributions from the meaning of Rollover Contribution shall no longer apply.

1.49    Rollover Contributions Subaccount:  The subaccount of a SIP Account established for a Participant pursuant to Section 3.5.3.

1.50    SIP Account:  The Account established for a Participant to hold After-Tax Contributions, Elective 401(k) Deferrals, Employer Contributions, Rollover Contributions, Rollover After-Tax Contributions, and Transferred Employer Contributions, and their respective earnings.

1.51    Self-Directed Assets:  The assets of an Account which are invested in assets other than Designated Investment Alternatives by the Trustee according to the direction of the Participant or the Participant's Beneficiary, as the case may be, as described in

8

Section 11.2. As of October 1, 2004, such assets may only be invested in Designated Investment Alternatives.

1.52    Service:  The aggregate of the following periods:

(i) the period commencing on the date the Employee first performs an Hour of Service and ending on the date of his or her Termination of Employment, Retirement or death; and

(ii) if the Employee has a Termination of Employment or Retires, the period commencing on the date of his or her Termination of Employment or Retirement and ending on the first date on which he or she again performs an Hour of Service, if such date is within twelve months of the date on which he or she last performed an Hour of Service.

Service shall include the period of a leave of absence and the period of service in the armed forces of the United States as shall be required to be recognized under applicable federal law with respect to military service.  The period of a Participant's Disability shall also be credited as Service for purposes of determining a Participant's Vesting Service.

Notwithstanding the foregoing, the Administrative Committee may:

(i)    credit as Service employment with a predecessor of the Company or an Affiliate or employment with any business acquired by the Company or an Affiliate with respect to all Employees acquired in such acquisition, and

(ii) credit additional Service in the event of a disposition with respect to all Employees affected by such disposition.

Service shall be measured in whole years and fractions of a year in months.  For this purpose, periods of less than a full year shall be aggregated on the basis that 12 months equals a year and in aggregating days representing fractional months into months, thirty days shall equal one month.

Notwithstanding any other provision of this Plan, an individual's Service shall not include any period with respect to which he or she receives payments under the Merrill Lynch & Co., Inc. Severance Pay Plan or other payments in the nature of severance pay from the Employer.

1.53    Spouse:  The person legally married to a Participant pursuant to local law where the Participant resides, but not in violation of federal law (see, *e.g.*, the Defense of Marriage Act (1 U.S.C. Section 7)).

1.54    Termination of Employment:  A Participant's termination of Employment, other than by reason of death or Retirement.  Notwithstanding any other provision of the Plan, a

Participant whose Employment is terminated due to the transfer of certain in-house functions to a service provider which is not an Affiliate shall be treated as having "separated from service" for purposes of Code section 401(k)(2)(B)(i)(I) and as having incurred a termination of Employment for all purposes under the Plan, regardless of whether the Participant is retained by such service provider to perform services for an Employer. Effective for distributions made after December 31, 2001, a Participant's Account attributable to Elective 401(k) Deferrals, Qualified Non-elective Contributions (as defined in section 3.1(h)), plus any earnings and minus any losses attributable to these contributions shall be distributed on account of the Participant's severance from employment. However, such distributions shall be subject to the other provisions of the Plan regarding distributions, other than provisions that require a separation from service before such amounts may be distributed.

1.55    Testing Compensation:  (i) The Employee's wages, tips and other compensation shown on the Form W-2 which is furnished to an Employee, i.e., the Employee's wages, as defined in Code section 3401(a) and all other payments of compensation made to the Employee by the Employer for which the Employer is required to furnish the Employee a written statement under Code sections 6041(d) and 6051(a)(3), (ii) amounts contributed to benefit plans pursuant to Code sections 125, 401(k), 402(h)(1)(B), or 403(b) and (iii) amounts excludable from income under Code section 132(a)(5). Testing Compensation shall be determined without regard to any rules under Code section 3401(a) that limit the remuneration included in wages based on the nature or location of the employment or the services performed, and shall be based upon the Employee's compensation for the entire Plan Year, regardless of whether the Employee participated under the Plan for the entire Plan Year, unless the Administrative Committee (or its delegatee) determines otherwise.

Notwithstanding any other provisions of this definition, the Testing Compensation of an Eligible Participant for any Plan Year shall not exceed the limitation with respect to such Plan Year applicable under Code section 401(a)(17) (as adjusted for changes in the cost of living under Code section 401(a)(17) and applicable Treasury regulations and Internal Revenue Service pronouncements).

The determination of Testing Compensation shall be in accordance with records maintained by the Employer and shall be conclusive.

1.56    Transferred Employer Contribution:  An amount (other than a Rollover Contribution) transferred to the Trust from a trust established under another tax-qualified plan, in accordance with Section 3.4.2, which the Administrative Committee designates as a Transferred Employer Contribution.

1.57    Transferred Employer Contributions Subaccount:  The subaccount of a SIP Account established for a Participant pursuant to Section 3.5.6.

1.58    Trust:  The Trust established under the Plan in which Plan assets are held.

10

1.59    Trust Agreement:  The agreement between the Company and a Trustee with respect to the Trust as the same may be amended from time to time.

1.60    Trustee:   An individual or entity appointed pursuant to Article IX, and any successor trustee.

1.61    Valuation Date:  The last business day of each Plan Year and such other dates as the Administrative Committee shall specify.  The Administrative Committee may, in its discretion, use different Valuation Dates for different purposes under the Plan.

1.62    Vesting Service:  The years of Service credited to a Participant under Section 4.1 for purposes of determining the Participant's vested percentage in the Account Balance of the Employer Contributions Subaccount established for the Participant.

1.63    Vocon Account:  The Account established for a Participant pursuant to Section 3.5.5.

11

## ARTICLE II

## ELIGIBILITY AND PARTICIPATION

2.1     Admission as a Participant

(a)     Each Employee who was an Eligible Participant or a Participant on December 31, 1993 shall continue as such on January 1, 1994, provided that such Employee is an Eligible Employee on that date.

(b)     An Employee who becomes an Eligible Employee by reason of an action taken by the Administrative Committee shall become an Eligible Participant on the first day of the month (or such other date as designated by the Administrative Committee or its delegatee) coinciding with or next following the effective date specified by the Administrative Committee, provided the Employee has satisfied the requirements of Section 2.1(c) on that date. Notwithstanding the foregoing, the Administrative Committee may waive the Service requirement set forth in subsection (c) below with respect to individuals who become Employees in connection with any business acquired by the Company or an Affiliate with respect to all Employees acquired in such acquisition.

(c)     For periods prior to July 1, 2000, and except as otherwise provided in Sections 2.1(a) and (b), (i) an Eligible Employee shall become an Eligible Participant as of the Entry Date coincident with or next following the date on which he or she completes one year of Service and (ii) an Eligible Participant may become a Participant on the first day of any month after such Entry Date upon compliance with the enrollment procedure utilized under the Plan.

(d)     Effective July 1, 2000, an Eligible Employee shall become an Eligible Participant as of the date he or she becomes an Eligible Employee, and an Eligible Participant may become a Participant as soon as administratively practicable upon his or her compliance with the enrollment procedure utilized under the Plan.

2.2     Rehired Employees

An individual who met the requirements of Section 2.1, terminates Employment, and again becomes an Eligible Employee, shall become an Eligible Participant with respect to all future contributions under the Plan as of the first Entry Date after he or she again becomes an Eligible Employee, and shall become a Participant with respect to all future contributions under the Plan upon compliance with the enrollment procedure specified by the Administrative Committee.

If a former Employee who did not meet the requirements of Section 2.1 returns to Employment, he or she shall become an Eligible Participant after meeting the requirements of Section 2.1.

WDC99 534287-1.047750.0011

2.3     <u>Transfers to or from Non-Covered Status</u>

If a Participant ceases to meet the definition of Eligible Employee as set forth in Article I but continues Employment, contributions on his or her behalf shall be suspended.  If during the period of such suspension the Participant has a Termination of Employment, Retires or dies, distribution of his or her Account shall be determined in accordance with the provisions of Article VI or Article VII, as applicable.

If and when the suspended Participant again becomes an Eligible Employee, he or she shall resume participation in the Plan with respect to future contributions under the Plan as of the date he or she again becomes an Eligible Employee and enrolls according to the procedures established to administer the Plan.

2.4     <u>Military Leave</u>

Notwithstanding any other provision of the Plan to the contrary, with regard to an Employee who is reemployed on or after December 12, 1994, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code section 414(u).

WDC99 534287-1.047750.0011

# ARTICLE III

## CONTRIBUTIONS

3.1     Definitions

As used in this Article III, each of the following terms shall have the meaning for that term set forth in this Section 3.1:

(a)     Actual Deferral Percentage means the ratio (expressed as a percentage) of Elective 401(k) Deferrals (other than Excess Deferrals of Non-Highly Compensated Employees made under plans maintained by the Company or an Affiliate) on behalf of the Eligible Participant for the Plan Year to the Eligible Participant's Testing Compensation for the Plan Year.

(b)     Average Actual Deferral Percentage means the average (expressed as a percentage) of the Actual Deferral Percentages of the Eligible Participants in a group, including those Eligible Participants whose Actual Deferral Percentage is zero.

(c)     Average Contribution Percentage means the average (expressed as a percentage) of the Contribution Percentages of the Eligible Participants in a group, including those Eligible Participants whose Contribution Percentage is zero.

(d)     Contribution Percentage means the ratio (expressed as a percentage) of the Employer Contributions (including Employer Contributions distributed or forfeited pursuant to Section 3.3.1(b)) and, beginning January 1, 2005, the After-Tax Contributions, as the case may be, on behalf of the Eligible Participant for the Plan Year to the Eligible Participant's Testing Compensation for the Plan Year.

(e)     Excess Aggregate Contributions means, with respect to any Plan Year, the aggregate amount of Employer Contributions and, beginning January 1, 2005, After-Tax Contributions actually paid to the Trustee for the Plan Year on behalf of Highly Compensated Employees over the maximum amount of such contributions permitted under Section 3.3.3.

(f)     Excess Contributions means, with respect to any Plan Year, the aggregate amount of Elective 401(k) Deferrals actually paid to the Trustee for the Plan Year on behalf of Highly Compensated Employees over the maximum amount of such contributions permitted under Section 3.2.4.

(g)     Excess Deferrals means the amount of Elective 401(k) Deferrals that the Participant allocates to this Plan pursuant to the claim procedure set forth in Section 3.2.5. Excess Deferrals also means the amount of Elective 401(k) Deferrals equal to the amount by which the elective deferrals (as defined in Code section 402(g)(3)) of a Participant under all plans of the Company and its Affiliates

14

exceeds the applicable dollar limit under Code section 402(g) (as adjusted for the cost of living in accordance with applicable Treasury regulations and Internal Revenue Service pronouncements).

(h)  Qualified Non-elective Contributions means contributions by the Employer which are aggregated with Elective 401(k) Deferrals for purposes of the Average Actual Deferral Percentage test or with Employer Contributions for purposes of the Average Contribution Percentage Test, and which are subject to the same vesting and distribution requirements as Elective 401(k) Deferrals.

3.2    Elective 401(k) Deferrals

3.2.1  Subject to the rules set forth in Sections 3.6, 3.7 and 4.4, for each Plan Year the Employer shall contribute to the Trust an amount equal to the aggregate of the deferral percentage elected by each Participant multiplied by each such Participant's Eligible Compensation for each pay period, up to a maximum (under all plans of the Company and its Affiliates) of the applicable dollar limit under Code section 402(g) (as adjusted for the cost of living in accordance with applicable Treasury regulations and Internal Revenue Service pronouncements).

3.2.2  The deferral percentage elected by a Participant cannot be less than 1% or greater than 25% (in 1% increments) of the Participant's Eligible Compensation.  The Administrative Committee may reduce the deferral percentage elected by a Participant, or make such other modifications as necessary, so that the Plan complies with Code provisions.  All contributions pursuant to a 401(k) Election shall be made by reducing the Participant's compensation for each pay period by the amount determined pursuant to the 401(k) Election.  Notwithstanding the foregoing, the Elective 401(k) Deferrals of a Participant who makes a hardship withdrawal shall be suspended for the periods described in section 5.1.1(c)(iii) and (iv).

3.2.3  Effective for contributions made on and after July 1, 2002, all Participants who are eligible to make Elective 401(k) Deferrals under this Plan, pursuant to this section 3.2, and who have attained age 50 before the close of the calendar year shall be eligible to make catch-up contributions in accordance with, and subject to the limitations of, section 414(v) of the Code.  Such catch-up contributions shall not be taken into account for purposes of the provisions of the Plan implementing the required limitations of sections 402(g) and 415 of the Code.  The Plan shall not be treated as failing to satisfy the provisions of the Plan implementing the requirements of section 401(k)(3), 401(k)(11), 401(k)(12), 410(b), or 416 of the Code, as applicable, by reason of the making of such catch-up contributions.  For Plan Years prior to January 1, 2005, amounts contributed as catch-up contributins shall be taken into account as amounts contributed pursuant to a 401(k) Election in determining the amount of Employer Contributions to which the Participant is otherwise entitled under Section 3.3.1(a)

15

3.2.4   For each Plan Year, the amount of Elective 401(k) Deferrals shall be subject to the following:

(a)   The Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year and the Average Actual Deferral Percentage for Eligible Participants who are Non-Highly Compensated Employees for the Plan Year must satisfy one of the following tests:

(i)   The Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Average Actual Deferral Percentage for Eligible Participants who are Non-Highly Compensated Employees for the Plan Year multiplied by 1.25; or

(ii)   The Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Average Actual Deferral Percentage for Eligible Participants who are Non-Highly Compensated Employees for the Plan Year multiplied by 2.0, provided that the Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees does not exceed the Average Actual Deferral Percentage for Eligible Participants who are Non-Highly Compensated Employees by more than two (2) percentage points.

(b)   For purposes of determining the Actual Deferral Percentage of an Eligible Participant for a Plan Year, an Elective 401(k) Deferral shall be taken into account only if such Elective 401(k) Deferral: (i) is attributed to the Eligible Participant's SIP Account as of a date within the Plan Year; (ii) is not contingent upon any subsequent event (except as may be necessary to comply with the Code); (iii) is actually paid to the Trust within one year of the end of the Plan Year; and (iv) relates to Eligible Compensation which would have been received by the Eligible Participant in the Plan Year but for the Eligible Participant's election to defer.  Any Elective 401(k) Deferral that fails to satisfy the foregoing requirements shall be treated as a contribution by the Employer which is not subject to Code section 401(k) or 401(m).

(c)   (i)   For purposes of this Section 3.2.4, the Actual Deferral Percentage for any Eligible Participant who is a Highly Compensated Employee for the Plan Year and who is eligible to have elective deferrals allocated to his or her account under two or more plans or arrangements described in Code section 401(k) that are maintained by the Company or an Affiliate shall be determined as if all such elective deferrals were made under a single arrangement.

(ii)   If two or more plans are aggregated for purposes of Code section 410(b) or 401(a)(4), such plans shall be aggregated for purposes of the Average Actual Deferral Percentage test.

16