(d)  In the event that the Average Actual Deferral Percentage test set forth in this Section 3.2.4 is not satisfied for any Plan Year, the Employer may, in its discretion, make Qualified Non-elective Contributions to the Plan. Such contributions shall be allocated in the manner determined by the Employer in accordance with the final regulations for 401(k) plans issued on December 29, 2004: (i) to Participants or Eligible Participants who are Non-Highly Compensated Employees, (ii) on a per capita basis or in proportion to Testing Compensation, or (iii) on any other nondiscriminatory basis. Qualified Non-elective Contributions made pursuant to this Section shall be aggregated with Elective 401(k) Deferrals for purposes of the Average Actual Deferral Percentage test and shall not be taken into account for purposes of the Average Contribution Percentage test.

### 3.2.5    Distribution of Excess Deferrals

(a)  Notwithstanding any other provision of the Plan, Excess Deferrals for a calendar year plus any earnings or minus any losses allocable thereto shall be distributed to the Participants on whose behalf the Excess Deferrals were made, no later than the April 15 after the end of the calendar year. A Participant's claim of Excess Deferrals which result from contributions to a plan which is not maintained by the Company or its Affiliates: (i) shall be in writing; (ii) shall be submitted to the Administrative Committee not later than such date prior to March 31 as specified by the Administrative Committee; (iii) shall specify the amount of the Participant's Excess Deferrals for the preceding calendar year; and (iv) shall be accompanied by the Participant's written statement that if such amounts are not distributed, such Excess Deferrals, when added to amounts deferred under other plans or arrangements described in Code sections 401(k), 408(k), or 403(b) for the year in which the deferral occurred, will exceed the applicable dollar limit under Code section 402(g) (as adjusted for the cost of living in accordance with applicable Treasury regulations and Internal Revenue Service pronouncements).

(b)  The Excess Deferrals distributed to a Participant with respect to a calendar year shall be be adjusted for any income or loss up to the date of distribution. The income or loss allocable to Excess Deferrals is the sum of income or loss allocable to the Participant's 401(k) Subaccount Account Balance for the Plan Year including the gap period following the close of the Plan Year through the date of distribution, as determined under Section 11.4 of the Plan. Notwithstanding the foregoing, the Plan may use any reasonable method for determining the amount of income or loss allocable to Excess Deferrals that does not violate Code Section 401(a)(4), is used consistently for all Participants and for all corrective distributions under this subsection (b) for the Plan Year, and is used by the Plan for allocating income to Participant's accounts.

(c)  The Elective 401(k) Deferrals returned to a Participant as Excess Deferrals for a calendar year shall be offset by any Elective 401(k) Deferrals previously

WDC99 534287-1.047750.0011

returned to such Participant as Excess Contributions for the Plan Year beginning with or within such calendar year.

3.2.6    Distribution of Excess Contributions

(a)    Notwithstanding any other provision of the Plan, Excess Contributions plus any earnings or minus any losses allocable thereto shall be distributed from the 401(k) Subaccounts to Participants on whose behalf such Excess Contributions were made no later than one year after the last day of the Plan Year for which they were made, except to the extent such Excess Contribution are classified as catch-up contribution (as defined in Section 3.2.3 of Plan). The Excess Contributions with respect to a Highly Compensated Employee shall be determined by reducing Elective 401(k) Deferrals made on behalf of Highly Compensated Employees in order of the dollar amount of such Elective 401(k) Deferrals, beginning with the highest of such dollar amounts. To the extent a Highly Compensated Employee has not reached his or her catch-up contribution limit under the Plan, Excess Contributions allocated to such Highly Compensated Employe shall be treated as catch-up contributions and will not be treated as Excess Contributions.

(b)    The Excess Contributions distributed to a Participant for a Plan Year shall be adjusted for any income or loss up to the date of distribution. The income or loss allocable to Excess Contributions allocated to each participant is the sum of income or loss allocable to the Participant's 401(k) Subaccount Account Balance (and, if applicable, Qualified Non-elective Contributions, if any, taken into account in the Actual Deferral Percentage test in Section 3.2.4) for the Plan Year including the gap period following the close of the Plan Year through the date of distribution, as determined under Section 11.4 of the Plan. Notwithstanding the foregoing, the Plan may use any reasonable method for determining the amount of income or loss allocable to Excess Contributions that does not violate Code section 401(a)(4), is used consistently for all Participants and all corrective distributions under this subsection (b) for the Plan Year, and is used by the Plan for allocating income to Participant's accounts.

Excess Contributions shall be distributed from the portion of the Participant's account attributable to Qualified Non-elective Contribution only to the extent that the Excess Contributions exceed the amount of Excess Contributions attributable to Elective 401(k) Deferrals in the Participant's 401(k) Subaccount Account Balance.

(c)    The Elective 401(k) Deferrals returned to a Participant as Excess Contributions with respect to a Plan Year for which the Excess Contributions were made shall be offset by any Elective 401(k) Deferrals previously returned to such Participant as Excess Deferrals for the Participant's calendar year ending with or within such Plan Year.

18

3.3     Employer Contributions and After-Tax Contributions

3.3.1   Employer Contributions

(a)     Subject to the rules set forth in Sections 3.6, 3.7 and 4.4 and the remainder of this Section 3.3.1(a), for each pay period the Employer shall contribute to the Trust an amount equal to 50% of the first 6% (increased from 4%, effective January 1, 2000) of a Participant's Eligible Compensation contributed with respect to periods following the Participant's completion of one year of Service pursuant to the 401(k) Election of the Participant, up to a maximum of $2,000 (increased from $1,500, effective January 1, 2000) per calendar year. If contributions pursuant to a Participant's 401(k) Election are discontinued because the limitation referred to in Section 3.2.1 has been reached, Employer Contributions will continue at the contribution rate reflected on the Administrative Committee's records at the time the Company contribution is calculated, but not greater than the limit described in the first sentence of this section 3.3.1(a) above, so long as the Participant continues to receive Eligible Compensation and has not had his or her contributions to the Plan suspended. No Employer Contribution shall be made with respect to any Participant who at any time during the calendar year is participating in the Merrill Lynch & Co., Inc. 1986 Employee Stock Purchase Plan, as amended (or any similar arrangement available to Employees of an Employer that is ineligible to participate in such Stock Purchase Plan); provided, however, that the Administrative Committee may elect to waive this restriction on such terms as the Administrative Committee may uniformly prescribe in connection with the admission to participation of a class of Employees pursuant to Section 2.1(b).

As of January 1, 2004, the restriction on Employer Contributions to any Participant who at any time during the calendar year is participating in the Merrill Lynch & Co., Inc., 1986 Employee Stock Purchase Plan or any similar arrangement as described in this Section 3.3.1(a) shall cease to apply.

(b)     Coordination with Excess Deferrals and Excess Contributions

In the event an amount is returned to a Participant as Excess Deferrals or Excess Contributions, any Employer Contributions plus any earnings or minus any losses attributable to the Employer Contributions made with respect to such returned amount shall be forfeited.

3.3.2   After-Tax Contributions

Effective January 1, 2005, and subject to the rules set forth in Sections 3.6 and 4.4 and of this Section 3.3, all Participants shall be eligible to make After-Tax Contributions which cannot be less than 1% or greater than 25% (in 1% increments)

of a Participant's Eligible Compensation, up to a maximum amount of $10,000 per calendar year. Notwithstanding the foregoing, the After-Tax Contributions of a Participant who makes a hardship withdrawal shall be suspended for the periods described in Section 5.1.1(c)(iii).

### 3.3.3 Limit on Employer Contributions

(a) Employer Contributions for each Plan Year must satisfy one of the following tests:

    (i) The Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Average Contribution Percentage for Eligible Participants who are Non-Highly Compensated Employees for the Plan Year multiplied by 1.25; or

    (ii) The Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year shall not exceed the Average Contribution Percentage for Eligible Participants who are Non-Highly Compensated Employees for the Plan Year multiplied by 2.0, provided that the Average Contribution Percentage for Eligible Participants who are Highly Compensated Employees does not exceed the Average Contribution Percentage for Eligible Participants who are Non-Highly Compensated Employees by more than 2 percentage points.

(b) For purposes of determining the Contribution Percentage of an Eligible Participant for a Plan Year, the Eligible Participant's Employer Contributions shall be taken into account only if such Employer Contributions (i) are based on the Eligible Participant's Elective 401(k) Deferrals for such Plan Year, (ii) are attributed to the Eligible Participant's SIP Account as of a date within such Plan Year, and (iii) are paid to the Trust by the end of the twelfth month following the close of such Plan Year. Any Employer Contribution that fails to satisfy the foregoing requirements shall be treated as a contribution which is not subject to Code section 401(m).

Notwithstanding any other provision of this Plan, for purposes of determining the Contribution Percentage and the Average Contribution Percentage of an Eligible Participant, any After-Tax Contributions of the Participant shall also be taken into account after December 31, 2004.

(c) (i) For purposes of this Section 3.3.3, the Contribution Percentage for any Eligible Participant who is a Highly Compensated Employee for the Plan Year and who is eligible to receive Employer contributions or to make Employee after-tax contributions under one or more other plans described in Code section 401(a) that are maintained by the Company or an Affiliate shall be determined as if all such contributions were made under a single plan.

(ii) If two or more plans are aggregated for purposes of Code section 410(b) or 401(a)(4), such plans shall be aggregated for purposes of the Average Contribution Percentage test.

(d) In the event that the Average Contribution Percentage test set forth in Section 3.3.3 is not satisfied for any Plan Year, the Employer may, in its discretion, make Qualified Non-elective Contributions to the Plan. Such contributions shall be allocated in the manner determined by the Employer: (i) to all Participants or Eligible Participants or to only those who are Non-Highly Compensated Employees, (ii) on a per capita basis or in proportion to Testing Compensation, or (iii) on any other nondiscriminatory basis. Qualified Non-elective Contributions made pursuant to this Section shall be aggregated with Employer Contributions and After-Tax Contributions made pursuant to Section 3.3.1 and 3.3.2, respectively, for purposes of the Average Contribution Percentage test and shall not be taken into account for purposes of the Average Actual Deferral Percentage test. Alternatively, the Employer may, in its discretion, increase (on a nondiscriminatory basis) the amount of Employer Contributions made on behalf of those Participants who are Non-Highly Compensated Employees, to the extent necessary to satisfy the Average Contribution Percentage test.

3.3.4   Distribution of Excess Aggregate Contributions

(a) Notwithstanding any other provision of the Plan, Excess Aggregate Contributions plus any earnings or minus any losses allocable thereto shall be distributed to the extent vested, or forfeited to the extent not vested, from the After-Tax Contributions Subaccounts or the Employer Contributions Subaccounts, as the case may be, to Participants on whose behalf such Excess Aggregate Contributions were made no later than one year after the last day of the Plan Year for which they were made. The Excess Aggregate Contributions with respect to a Highly Compensated Employee shall be determined by reducing (i) the After-Tax Contributions made by Highly Compensated Employees and (ii) then, as necessary, the Employer Contributions made on behalf of Highly Compensated Employees in order of the dollar amount of such contributions, beginning with the highest of such dollar amounts.

(b) The Excess Aggregate Contributions distributed to a Participant for a Plan Year shall be adjusted for any income or loss up to the date of distribution. The income or loss allocable to Excess Aggregate Contributions allocated to each Participant is the sum of income or loss allocable to the Participant's After-Tax Contribution Subaccount Account Balance, the Participant's Employer Contribution Subaccount Account Balance, and, if applicable, the Participant's 401(k) Subaccount Account Balance (taking into account any Qualified Non-elective Contributions) for the Plan Year including the gap period following the close of the Plan Year through the date of distribution, as determined under

21

Section 11.4 of the Plan. Notwithstanding the foregoing, the Plan may use any reasonable method for determining the amount of income or loss allocable to Excess Contributions that does not violate Code section 401(a)(4), is used consistently for all Participants and all corrective distributions under this subsection (b) for the Plan Year, and is used by the Plan for allocating income to Participant's accounts.

(c) Notwithstanding anything in the Plan to the contrary, if the rate of Employer Contributions (determined after application of the corrective mechanisms described in Sections 3.2 and 3.3)) discriminates in favor of Highly Compensated Employees, the Employer Contribution attributable to any Excess Contributions or Excess Deferrals of each affected Highly Compensated Employee shall be forfeited so that the rate of Employer Contributions is nondiscriminatory. Any such forfeitures shall be made no later than the end of the Plan Year following the Plan Year for which the contribution was made. Forfeitures, if any, shall be applied as otherwise set forth in the Plan.

### 3.3.5   Multiple Use of Alternative Limitation

If both: (i) the Average Actual Deferral Percentage of the Highly Compensated Employees exceeds 125% of the Average Actual Deferral Percentage of the Non-Highly Compensated Employees, and (ii) the Average Contribution Percentage of the Highly Compensated Employees exceeds 125% of the Average Contribution Percentage of the Non-Highly Compensated Employees, then the sum of the Average Actual Deferral Percentage of the Highly Compensated Employees plus the Average Contribution Percentage of the Highly Compensated Employees shall not exceed the aggregate limit determined as the greater of:

(a) the sum of: (1) 125% of the greater of the Average Actual Deferral Percentage of the Non-Highly Compensated Employees or the Average Contribution Percentage of the Non-Highly Compensated Employees, plus (2) the lesser of 200% of, or 2 percentage points plus, the lesser of the Average Actual Deferral Percentage of the Non-Highly Compensated Employees or the Average Contribution Percentage of the Non-Highly Compensated Employees; or

(b) the sum of: (1) 125% of the lesser of the Average Actual Deferral Percentage of the Non-Highly Compensated Employees or the Average Contribution Percentage of the Non-Highly Compensated Employees, plus (2) the lesser of 200% of, or 2 percentage points plus, the greater of the Average Actual Deferral Percentage of the Non-Highly Compensated Employees or the Average Contribution Percentage of the Non-Highly Compensated Employees.

If the aggregate limit described in the preceding sentence is exceeded, then either the Average Actual Deferral Percentage or the Average Contribution Percentage of the Highly Compensated Employees shall be reduced, and shall result in Excess

Contributions or Excess Aggregate Contributions, respectively, in the manner provided in Section 3.2.6 or 3.3.4 respectively, until the aggregate limit is no longer exceeded. For purposes of this Section 3.3.5, the Average Actual Deferral Percentage and the Average Contribution Percentage of the Highly Compensated Employees shall be determined after any corrections required to satisfy the Average Actual Deferral Percentage and Average Contribution Percentage tests.

Notwithstanding any other provision of this Plan, this Section 3.3.5 shall no longer apply after December 31, 2001.

3.4     Rollover Contributions/Transferred Amounts

3.4.1     Any Participant may make a Rollover Contribution to the Plan in cash (and/or, to the extent permitted in Section 11.8.9, in the form of a loan note) providing such documents as the Administrative Committee may require to demonstrate to its satisfaction that the proposed contribution is a Rollover Contribution; provided, however, all amounts transferred as Rollover After-Tax Contributions shall be transferred only in a trustee-to-trustee transfer and credited to, and separately accounted for in, a Rollover After-Tax Subaccount. In the event that a Participant makes a contribution pursuant to this Section 3.4 intended to be a Rollover Contribution but which the Administrative Committee later concludes did not qualify as a Rollover Contribution, the Trustee shall distribute to the Participant as soon as practicable after that conclusion is reached the amount of such contribution together with any earnings thereon determined as of the Valuation Date coincident with or immediately preceding such conclusion.

3.4.2     In the event that amounts (other than Rollover Contributions) are transferred on behalf of an individual to the Trust from a trust established under another tax-qualified plan, including pursuant to a merger of such plan with the Plan, the individual shall be treated as a Participant to the extent necessary under the Plan and the transferred amounts shall be designated as such types of contributions (including Transferred Employer Contributions and Elective 401(k) Deferrals) and credited to such subaccounts as may be determined by the Administrative Committee. The vesting schedule which shall apply to any such transferred amounts shall be set forth in Appendix II hereto, as may be amended from time to time. Any forms of benefit which were available under such other plan shall be preserved hereunder to the extent necessary to meet the requirements of Code section 411(d)(6).

3.5     Establishing of Accounts

3.5.1     An Employer Contributions Subaccount shall be established for each Participant for whom Employer Contributions are made pursuant to Section 3.3, to which the Administrative Committee shall credit, or cause to be credited, all such amounts allocable to each such Participant, plus any earnings and minus any losses thereon.

23

3.5.2    A 401(k) Subaccount shall be established for each Participant on whose behalf Elective 401(k) Deferrals or Qualified Non-elective Contributions are made pursuant to Section 3.2, to which the Administrative Committee shall credit, or cause to be credited, such deferrals and contributions, plus any earnings and minus any losses thereon.

3.5.3    A Rollover Contributions Subaccount shall be established for each Participant who makes a Rollover Contribution to the Plan pursuant to Section 3.4, to which the Administrative Committee shall credit, or cause to be credited, amounts attributable to such Rollover Contributions made by the Participant, plus any earnings and minus any losses thereon; provided, however, that pursuant to Section 3.4 a Rollover After-Tax Contribution Subaccount shall be established for the portion of such Rollover Contribution that constitutes a Rollover After-Tax Contribution, to which the Administrative Committee shall credit, or cause to be credited, amounts attributable to such Rollover After-Tax Contributions made by the Participant, plus any earnings and minus any losses thereon.

3.5.4    A Deferred Profit Sharing Account shall be established for each Participant who had an account under the Deferred Profit Sharing Plan for Employees of Merrill Lynch, Pierce Fenner & Smith Incorporated and Affiliates, which accounts were transferred to the Plan, to which the Administrative Committee shall credit, or cause to be credited, amounts attributable to such account, plus any earnings and minus any losses thereon.

3.5.5    A Vocon Account shall be established for each Participant who had made voluntary non-deductible contributions under Section 9 of the Pension Plan for Employees of Merrill Lynch & Co., Inc. and Affiliates (adopted effective January 12, 1959 and terminated on December 13, 1988), which amounts plus any earnings and minus any losses thereon were transferred to the Plan, to which the Administrative Committee shall credit, or cause to be credited, amounts attributable to such contributions, plus any earnings and minus any losses thereon.

3.5.6    One or more Transferred Employer Contributions Subaccounts shall be established for each Participant on whose behalf Transferred Employer Contributions are transferred to the Trust, to which the Administrative Committee shall credit, or cause to be credited, all such amounts allocable to each such Participant, plus any earnings and minus any losses thereon.

3.5.7    Pursuant to Section 3.4.2, the Administrative Committee may determine that one or more subaccounts shall be established with respect to individuals on whose behalf amounts are transferred to the Trust and shall designate the types of contributions which such amounts shall be deemed to comprise.

3.6    <u>Limitation on Allocations</u>

24

(a) The limitations of Code section 415 applicable to "defined contribution plans" as defined in Code section 414(i) are hereby incorporated by reference in this Plan; provided, however, that where the Code so provides, contribution limitations in effect under prior law shall be applicable to account balances accrued as of the last effective day of such prior law.

(b) As used in this Section 3.6 and Section 3.7 and for purposes of determining the limits described in Code section 415, each of the following terms shall have the meaning for that term set forth in this subsection (b):

   (i) Annual Addition shall have the meaning set forth in Code section 415(c)(2) and the regulations under Code section 415; provided, however, that 'Annual Addition' shall not include amounts contributed or reallocated under Section 3.9 to the extent attributable to corrections for lost earnings.

   (ii) Limitation Compensation means, for an Employee, Testing Compensation, except that the annual dollar limitation described in Section 1.54 of the Plan shall not apply.

   (iii) Limitation Year means the calendar year.

(c) Annual Additions to the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan and the Merrill Lynch & Co., Inc. Retirement Accumulation Plan shall be reduced before any Annual Additions under this Plan are reduced; provided that, effective for Limitation Years after 1994, Annual Additions under this Plan shall be reduced before any Annual Additions to the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan and the Merrill Lynch & Co., Inc. Retirement Accumulation Plan are reduced.

(d) In the event an Annual Addition has erroneously been credited to a Participant's Account in the Plan in excess of the limitations of Code section 415, the erroneously credited Annual Addition plus any earnings or minus any losses thereon shall be removed from the Participant's Account on a last-in-first-out basis, so that the Participant's Account is restored to what it would have been had the excess Annual Addition never been contributed. The amount so removed shall be used in lieu of contributions which would otherwise have been made to the Plan for allocation to other Participants. Any excess Annual Additions which cannot be so used during the Limitation Year in which they were contributed shall be held unallocated in a suspense account for the Limitation Year and used (subject to the limitations of Code section 415) in accordance with the Plan in the next Limitation Year before any additional contributions may be made to the Plan for that Limitation Year.

(e) Prior to determining the Participant's actual Limitation Compensation for a Limitation Year, the Administrative Committee may determine the amount of permissible Annual Additions to the Participant's Account for the Participant for



the Limitation Year on the basis of a reasonable estimation of the Participant's Limitation Compensation for that Limitation Year. Such estimated Limitation Compensation shall be uniformly determined for all Participants similarly situated.

3.7    Combined Plan Limitation

In addition to the limitations of Section 3.6, if a Participant retains any right to a benefit in the Pension Plan for Employees of Merrill Lynch Co., Inc. and Affiliates and/or retains any right to a benefit in any other Defined Benefit Plan, the overall limitation of Code section 415(e) shall be complied with by first reducing Annual Additions to the Merrill Lynch & Co., Inc. Retirement Accumulation Plan and the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan, and then if necessary, reducing Annual Additions to this Plan; provided that, effective for Limitation Years after 1994, Annual Additions under this Plan shall be reduced before any Annual Additions to the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan and the Merrill Lynch & Co., Inc. Retirement Accumulation Plan are reduced.

Notwithstanding any other provision of this Plan, this Section 3.7 shall no longer apply after December 31, 1999.

3.8    Return of Employer Contributions under Special Circumstances

Notwithstanding any provision of this Plan, a contribution made to the Plan by an Employer may be returned to the Employer if:

(a)  the contribution is made by reason of mistake of fact (for example, incorrect information as to eligibility or compensation of an Employee, a mathematical error, or an erroneous belief that such contribution is consistent with the limitations of Section 3.6); or

(b)  the contribution is conditioned on its deductibility under Code section 404 and unless otherwise explicitly provided in the Plan or by the Employer at the time the contribution is made all contributions made by the Employer to the Plan are conditioned on their deductibility;

provided that such return of contribution is made within one year of the mistaken payment of the contribution or the disallowance of the tax deduction, as the case may be.

3.9    Correction of Administrative Errors

If, with respect to a Plan Year, an administrative error results in a Participant's Account not being properly credited with amounts, or earnings (including dividends) on any such amounts, then any or all of the following corrective actions may be taken to the extent necessary to correct such errors:

WDC99 534287-1.047750.0011

(a)   the Employer may make additional contributions to a Participant's Account;

(b)   forfeitures (including dividends or other earnings thereon) may be reallocated among Participant's Accounts; and

(c)   existing contributions may be reallocated among Participant's Accounts.

In addition, with respect to any Plan Year, if an administrative error results in an amount being credited to a Participant's Account or the account of any other individual who is not otherwise entitled to such amount, corrective action may be taken by the Employer, including, but not limited to, a direction by the Employer to forfeit amounts erroneously credited (with such forfeitures to be used to reduce future contributions or other contributions to the Plan), reallocate such erroneously credited amounts to other Participants' Accounts, or take such other corrective action as necessary under the circumstances.  Any Plan administration error may be corrected using any appropriate correction method permitted under the Employee Plans Compliance Resolution System (or any successor procedure), as determined by the Administrative Committee in its discretion.

3.10   <u>Separate Testing for Employee Stock Ownership Plan Feature</u>

For Plan Years prior to January 1, 2006, the portion of the Plan which constitutes an employee stock ownership plan, which is therefore mandatorily disaggregated from the balance of the Plan pursuant to Treasury Regulation Section 1.401(k)-1(g)(11), 1.401(m)-1(f)(14) and 1.410(b)-7(c)(2), shall be tested separately for the purpose of applying the applicable discrimination tests and other applicable requirements of the Code.

## ARTICLE IV

## VESTING AND TOP-HEAVY PROVISIONS

4.1     Determination of Vesting

4.1.1   A Participant shall be 100% vested in the Account Balance of his or her 401(k) Subaccount, Rollover Contributions Subaccount, Deferred Profit Sharing Account and Vocon Account at all times. In addition, a Participant shall be 100% vested in all amounts attributable to dividends on Company Stock in his Account that are subject to a Participant's actual or deemed election to reinvest such dividends as described in Section 5.6.

4.1.2   A Participant shall be 100% vested in the Account Balance of his or her Employer Contributions Subaccount if he or she:  (i) made a 401(k) Election effective October 1, 1987; (ii) attains Normal Retirement Age prior to his or her Termination of Employment or Retirement; (iii) terminates Employment because of his or her death; or (iv) was an Employee who as of October 1, 1987 had satisfied the service requirements for Plan participation but was otherwise ineligible to participate on that date and made a 401(k) Election effective as of the first Entry Date for which he or she was eligible.

4.1.3   Effective November 1, 1993, a Participant not 100% vested in the Account Balance of his or her Employer Contributions Subaccount pursuant to Section 4.1.2 shall have his or her vested percentage determined in accordance with the following schedule:

| Completed Years of Vesting Service | Vested Percentage |
|:---:|:---:|
| 1 | 20% |
| 2 | 40% |
| 3 | 60% |
| 4 | 80% |
| 5 | 100% |

A Participant not 100% vested in the Account Balance of his or her Employer Contributions Subaccount pursuant to Section 4.1.2 whose Termination of Employment occurred prior to November 1, 1993 shall have his or her vested percentage determined in accordance with the following schedule:

28

| Completed Years of Vesting Service | Vested Percentage |
|:---:|:---:|
| 3 | 50% |
| 4 | 75% |
| 5 | 100% |

4.2     Rules for Crediting Vesting Service

4.2.1   All Service after October 1, 1987 shall be credited for purposes of determining a Participant's Vesting Service, including also the period of a leave of absence; provided, however, that with respect to any Employee who is credited with Service during any period after November 30, 1996, Service prior to October 1, 1987 shall also be credited for such purpose.

4.2.2   A Participant whose Employment terminates and subsequently returns to Employment, shall, with respect to contributions made after the Participant's return to Employment, have credit for Vesting Service for all Service credited for that purpose as of his or her prior date of Termination of Employment.

4.2.3   If a Participant is not 100% vested in the Account Balance of his or her Employer Contributions Subaccount (or Transferred Employer Contributions Subaccount), then for purposes of determining the dollar amount of the Account Balance of the Participant's Employer Contributions Subaccount (or Transferred Employer Contributions Subaccount) which is vested at any time, any previous payments from the Employer Contributions Subaccount (or Transferred Employer Contributions Subaccount) shall be taken into account.

4.3     Employer Contributions Subaccount Forfeitures and Restoration

4.3.1   In the event of a Participant's Termination of Employment, an amount equal to the non-vested percentage of his or her Employer Contributions Subaccount shall be forfeited: (i) as of the Participant's Benefit Distribution Date, for Participants who have elected an immediate Benefit Distribution Date, and (ii) as of the date a deferred Benefit Distribution Date is established, for all other Participants. To the extent that forfeitures have not been reallocated pursuant to Section 3.9, any such forfeitures (and amounts treated as forfeitures as provided under Section 13.7) shall be applied to reduce future Employer Contributions.

4.3.2   In the event of reemployment of a Participant with the Company or an Affiliate within seven years after the Participant's Termination of Employment, any dollar amount in the Employer Contribution Subaccount forfeited by the Participant at his or her Termination of Employment (unadjusted by any subsequent earnings or

29

losses) shall be reinstated as of the first day as of which contributions would be invested in the Participant's SIP Account if the Participant had elected to make contributions following the Participant's resumption of Employment. Notwithstanding the foregoing, in the event a reemployed Participant previously participated in a tax-qualified plan which was merged into the Plan, reinstatement shall be made upon request of the Participant. The amount so restored will be derived from amounts forfeited and not yet applied to reduce future Employer Contributions, and if such amounts are insufficient to make a full restoration, the Company shall make an additional contribution in the amount necessary to complete the restoration.

4.4    Top-Heavy Provisions

4.4.1    The purpose of this Section 4.4 is to conform to the requirements of Code sections 401(a)(10)(B) and 416. This Section shall in no way affect the amount of or eligibility for any benefits provided under the Plan unless and until the Plan becomes a Top-Heavy or a Super Top-Heavy Plan.

4.4.2    As used in this Section 4.4, each of the following terms shall have the meaning for that term set forth in this Section 4.4.2:

(a)    Determination Date means, for any Plan Year subsequent to the first Plan Year, the last day of the preceding Plan Year. For the first Plan Year, Determination Date means the last day of that year.

(b)    Determination Period means the Plan Year containing the Determination Date (and, for Plan Years ending before January 1, 2002, the four preceding Plan Years).

(c)    Key Employee means an Employee or former Employee (and the Beneficiaries of such Employee) who at any time during the Determination Period was:

(i)    an officer of an Employer having an annual Testing Compensation greater than 50% of the dollar limitation under Code section 415(b)(1)(A) for any Plan Year ending before January 1, 2002 (or, for Plan Years beginning after December 31, 2001, greater than $130,000, as adjusted pursuant to Code section 416(i) to reflect changes in the cost of living);

(ii)    for Plan Years ending before January 1, 2002, an owner (or an individual considered an owner under Code section 318) of one of the ten largest interests in an Employer if such individual owns at least a 1/2% interest in the Employer and such individual's Testing Compensation exceeds 100% of the dollar limitation, referred to in clause (i);

(iii)    a "5% owner" (as defined in Code section 416(i)) of an Employer; or

(iv) a "1% owner" (as defined in Code section 416(i)) of an Employer who has a Testing Compensation of more than $150,000.

(d) <u>Limitation Compensation</u> means an amount determined in accordance with Section 3.6(b)(ii).

(e) <u>Non-Key Employee</u> means any Employee who is not a Key Employee.

(f) <u>Permissive Aggregation Group</u> means the Required Aggregation Group of Qualified Plans plus any other Qualified Plans of the Company or an Affiliate which, when considered as a group with the Required Aggregation Group, would continue to satisfy the requirements of Code sections 401(a)(4) and 410.

(g) <u>Required Aggregation Group</u> means: (i) each Qualified Plan of the Company or its Affiliates in which at least one Key Employee participates, and (ii) any other Qualified Plan of the Company or its Affiliates which enables a plan described in (i) to meet the requirements of Code sections 401(a)(4) and 410.

(h) <u>Super Top-Heavy Plan</u> means the Plan, if the Top-Heavy Ratio, determined pursuant to the definition of a Top-Heavy Plan, exceeds 90%.

(i) <u>Top-Heavy Plan</u> means the Plan, if any of the following conditions exists:

(i) if the Top-Heavy Ratio for the Plan exceeds 60% and the Plan is not part of any Required Aggregation Group or Permissive Aggregation Group of plans;

(ii) if the Plan is a part of a Required Aggregation Group of plans but not part of a Permissive Aggregation Group and the Top-Heavy Ratio for the Required Aggregation Group exceeds 60%; or

(iii) if the Plan is a part of a Required Aggregation Group and part of a Permissive Aggregation Group of plans and the Top-Heavy Ratio for the Permissive Aggregation Group exceeds 60%.

(j) <u>Top-Heavy Ratio</u> means:

(i) If the Company or an Affiliate maintains one or more Defined Contribution Plans (including any "simplified employee pension" within the meaning of Code section 408(k)) and the Company or an Affiliate has never maintained any Defined Benefit Plan which during the five-year period ending on the Determination Date has or has had accrued benefits, the Top-Heavy Ratio for this Plan alone or for the Required or Permissive Aggregation Group as appropriate is a fraction, the numerator of which is the sum of the account balances of all Key Employees as of the Determination Date (including any part of any account balance distributed

31

in the five-year period ending on the Determination Date), and the denominator of which is the sum of all account balances (including any part of any account balance distributed in the five-year period ending on the Determination Date) both computed in accordance with Code section 416. Both the numerator and denominator of the Top-Heavy Ratio are adjusted to reflect any contribution not actually made as of the Determination Date, but which is required to be taken into account on that date under Code section 416.

(ii)  If the Company or an Affiliate maintains one or more Defined Contribution Plans (including any "simplified employee pension" within the meaning of Code section 408(k)) and the Company or an Affiliate maintains or has maintained one or more Defined Benefit Plans which during the five-year period ending on the Determination Date has or has had any accrued benefits, the Top-Heavy Ratio for any Required or Permissive Aggregation Group, as appropriate, is a fraction, the numerator of which is the sum of the present value of accrued benefits under the aggregated Defined Benefit Plans for all Key Employees plus the sum of account balances under the aggregated Defined Contribution Plans for all Key Employees, in each case as of the respective Determination Date for each plan (including any part of any accrued benefit or account balance distributed in the five-year period ending on the Determination Date), and the denominator of which is the sum of the present value of all accrued benefits under the aggregated Defined Benefit Plans plus the sum of all account balances under the aggregated Defined Contribution Plans for all Participants, in each case as of the respective Determination Date for each plan (including any part of any accrued benefit or account balance distributed in the five-year period ending on the Determination Date), all determined in accordance with Code section 416.

(iii)  For purposes of (i) and (ii) above, the value of account balances and the present value of accrued benefits will be determined as of the most recent Valuation Date that falls within or ends with the twelve-month period ending on the Determination Date, except as provided in Code section 416 for the first and second Plan Years of a Defined Benefit Plan. The account balances and accrued benefits of a Participant: (1) who is not a Key Employee but who was a Key Employee in a prior year, or (2) who has not been credited with at least one Hour of Service with any Employer at any time during the five-year period (one-year period with respect to Plan Years beginning after December 31, 2001) ending on the Determination Date, will be disregarded. The calculation of the Top-Heavy Ratio, and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with Code section 416. Deductible employee contributions will not be taken into account for purposes of computing the Top-Heavy Ratio. When aggregating plans the value of account balances and accrued benefits will be calculated with reference to

the Determination Dates for the respective aggregated plans that fall within the same calendar year.

    (iv)   Solely for the purpose of determining if the Plan, or any other plan included in a Required Aggregation Group of which this Plan is a part, is Top-Heavy (within the meaning of Code section 416(g)) such determination shall be made under (A) the method, if any, that uniformly applies for accrual purposes under all plans maintained by the Employer, or (B) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional accrual rate of Code section 411(b)(1)(C).

    (v)   Notwithstanding any other provision of the Plan, with respect to Plan Years beginning after December 31, 2001, the present values of accrued benefits and the amounts of account balances of an Employee as of the determination date shall be increased by the distributions made with respect to the Employee under the Plan and any plan aggregated with the Plan under Code section 416(g)(2) during the one-year period ending on the Determination Date. The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the Plan under Code section 416(g)(2)(A)(i). In the case of a distribution made for a reason other than separation from service, death or disability, this provision shall be applied by substituting "five-year period" for "one-year period."

    (k)   <u>Valuation Date</u> means the date as of which account balances, or accrued benefits, are valued for purposes of calculating the Top-Heavy Ratio.

4.4.3   If the Plan is determined to be a Top-Heavy Plan as of any Determination Date, then it shall be subject to the rules set forth in the balance of this Section 4.4, beginning with the first Plan Year commencing after such Determination Date.

4.4.4   (a)   Except as provided in Section 4.4.4(b), and except if any other Defined Contribution Plan or Defined Benefit Plan provides such minimum benefit to the Participant, for any Plan Year in which the Plan is a Top-Heavy Plan, contributions allocated to the Employer Contributions Subaccount of any Eligible Participant who is not a Key Employee, whether or not such Eligible Participant has elected to participate in the Plan, in respect of that Plan Year shall not be less than the smaller of:

    (i)   3% of such Eligible Participant's Limitation Compensation, or

    (ii)   the largest percentage of contributions and forfeitures, as a percentage of the Key Employee's Limitation Compensation, allocated in the aggregate to the Employer Contributions Subaccount and 401(k) Subaccount of any Key Employee for that year;

(b)    The provision in (a) above shall not apply to any Eligible Participant who was not employed by the Company or an Affiliate on the last day of the Plan Year.

(c)    If the Plan is a Top-Heavy Plan, in determining whether the Plan meets the requirements of Section 3.6, the Participant's defined benefit fraction described in Code section 415(e)(2) and defined contribution fraction described in Code section 415(e)(3) shall be determined by substituting "1.0" for "1.25" unless the Plan is not a Super Top-Heavy Plan, and the Administrative Committee increases the minimum benefit provided in Section 4.4.4(a) by 1%.

(d)    Notwithstanding any other provision of the Plan, effective for Plan Years beginning after December 31, 2001, Employer Contributions shall be taken into account for purposes of satisfying the minimum contribution requirements set forth above; any Employer Contributions used to satisfy the minimum contribution requirements shall be treated as matching contributions for purposes of Code section 401(m).

4.4.5    In the event that any provision of this Section 4.4 is no longer required to qualify the Plan under the Code, then such provision shall thereupon be void without the necessity of further amendment of the Plan.

34

ARTICLE V

ACCOUNT WITHDRAWALS DURING EMPLOYMENT

5.1  SIP Account

5.1.1  Hardship Withdrawals

(a) Prior to January 1, 2002: Hardship withdrawals from a SIP Account shall upon notice from the Participant be paid to the Participant only if the Participant demonstrates to the Administrative Committee a "financial hardship" (as described below) warranting such a withdrawal. In order to obtain a hardship withdrawal from his or her SIP Account, the Participant must first withdraw the entire Account Balance of his or her Deferred Profit Sharing and Vocon Accounts. Each hardship withdrawal from a Participant's SIP Account shall be paid in cash, in accordance with procedures approved by the Administrative Committee, from (i) the Participant's Rollover Contributions Subaccount, (ii) the Participant's Employer Contributions Subaccount (to the extent the Participant is vested in such Subaccount), (iii) the Participant's Transferred Employer Contributions Subaccount (to the extent the Participant is vested in such Subaccount and to the extent that withdrawals may be taken from such Subaccount, as indicated in Appendix II) and (iv) the Participant's Elective 401(k) Deferrals (not including the income attributable thereto or any Qualified Non-elective Contributions (as defined in Section 3.1(h)) and related income) in his or her 401(k) Subaccount; provided, however, that payments shall be made hereunder from the Participant's Elective 401(k) Deferrals only after all amounts available for hardship withdrawal have been paid from the Participant's Rollover Contributions Subaccount, the Participant's Employer Contributions Subaccount and the Participant's Transferred Employer Contributions Subaccount.

After December 31, 2001: Effective for distributions after December 31, 2001, in order to obtain a hardship withdrawal, the Participant must first (i) withdraw the entire Account Balance of his or her Deferred Profit Sharing Account (under Section 5.2), Vocon Account (under Section 5.3), Rollover Contributions Subaccount, beginning with the portion thereof consisting of Rollover After-Tax Contributions Subaccount (under Section 5.1.2), and After-Tax Contributions Subaccount (under Section 5.1.2) and (ii) withdraw all amounts available under Section 5.1.2 from his or her Employer Contributions Subaccount and Transferred Employer Contributions Subaccount.

(b) A "financial hardship" shall be deemed to exist only on account of:

(i) expenses for medical care (described in Code section 213(d)) that exceed an amount established by the Administrative Committee that

35

were:  (A) previously incurred by the Participant, the Participant's spouse or Domestic Partner, or any dependents of the Participant (as defined in Code section 152) and not subject to reimbursement or (B) not yet incurred, but which must be paid for those persons to obtain medical care;

(ii) costs directly related to the purchase (excluding mortgage payments) of a principal residence for the Participant;

(iii) payment of tuition, related educational fees and room and board for the next twelve months of postsecondary education for the Participant or the Participant's spouse, Domestic Partner, children, or dependents ;

(iv) prevention of the eviction of the Participant from his or her principal residence or foreclosure on the Participant's mortgage of his or her principal residence;

(v) unreimbursed damages incurred by the Participant or the Participant's spouse, Domestic Partner, or dependents resulting from a natural disaster;

(vi) expenses to provide shelter for the Participant and the members of his or her household where the Participant's primary residence has been made uninhabitable due to a natural disaster, domestic abuse or any other unforeseen event;

(vii) funeral expenses for the Participant's spouse, dependent or Domestic Partner or for a parent or child of the Participant or of the Participant's spouse or Domestic Partner;

(viii) expenses incurred by a Participant that are reimbursable under the Merrill Lynch & Co., Inc. Adoption Assistance Program (or would be reimbursable under that Program except that the Participant is not eligible to participate in that Program) but are in excess of the reimbursement available under the Program, or such expenses as are not yet incurred by the Participant but must be paid in order to complete the adoption; or

(ix) such other financial need which the Commissioner of Internal Revenue, through the publication of revenue rulings, notices and other documents of general applicability, deems to be immediate and heavy.

(c) A withdrawal shall not be paid on account of a financial hardship specified in (b) above unless all of the following requirements are satisfied:

(i) the withdrawal is not in excess of the amount of the financial hardship of the Participant (including for this purpose an amount equal to 33% of the amount of the expense referred to in subsection (b) to enable the

Participant to pay any federal, state or local taxes or penalties reasonably anticipated to result from the withdrawal);

(ii) the Participant has obtained all distributions, other than hardship distributions, and has elected or in accordance with Section 5.6 has been deemed to have elected, to receive all dividends to the extent currently available, as well as all nontaxable loans currently available under all plans maintained by the Company and its Affiliates;

(iii) elective contributions and employee contributions under this Plan and all other plans maintained by the Company and its Affiliates shall be suspended for at least twelve months; provided, however, that this clause (iii) shall only apply if the Participant's Elective 401(k) Deferrals are withdrawn (and further provided that this provision shall not apply to the cashless exercise of any stock options granted by the Company to the Participant); and

(iv) the Plan, and all other plans maintained by the Company and its Affiliates, provide that the Participant may not make elective contributions for the calendar year immediately following the calendar year of the hardship distribution in excess of the applicable dollar limit under Code section 402(g) (as adjusted for the cost of living in accordance with applicable Treasury regulations and Internal Revenue Service pronouncements) for such next calendar year less the amount of such Participant's elective contributions for the calendar year of the hardship distribution; provided, however, that this clause (iv) shall only apply if the Participant's Elective 401(k) Deferrals are withdrawn.

(v) Notwithstanding the foregoing, in the case of a Participant who receives a financial hardship withdrawal attributable to the Participant's Elective 401(k) Deferrals in calendar year 2001, the twelve-month suspension period referred to in subsection (iii) above shall be a period beginning as soon as practicable after the date of the withdrawal and ending at the later of six months from that date or January 1, 2002. In the case of a Participant who receives a financial hardship withdrawal attributable to the Participant's Elective 401(k) Deferrals after December 31, 2001, the twelve-month period referred to in subsection (iii) above shall be a period equal to six months beginning as soon as practicable after the date of the withdrawal. In all events, the provisions of subsection (iv) shall cease to apply with respect to calendar years beginning on and after January 1, 2002.

A Participant shall not fail to be treated as an Eligible Participant for purposes of the Average Actual Deferral Percentage test of Section 3.2.4(a) or the Average Contribution Percentage test of Section 3.3.3(a) merely because his or her Elective 401(k) Deferrals are suspended in accordance with this provision.

WDC99 534287-1.047750.0011

5.1.2   <u>Non-Hardship Withdrawals Prior to Age 59½</u>

Withdrawals from a SIP Account prior to attainment of age 59½ by a Participant shall upon notice from the Participant be paid in cash, in accordance with procedures approved by the Administrative Committee, (i) from the Participant's Rollover Contributions Subaccount, including the Participant's Rollover After-Tax Contributions Subaccount, and the Participant's After-Tax Contributions Subaccount, (ii) from the Participant's Employer Contributions Subaccount if the Participant has completed at least five full years of Plan participation (including prior participation under any tax-qualified plan which is merged into the Plan on or after July 1, 2001) and is 100% vested in such Subaccount, and (iii) from the Participant's Transferred Employer Contributions Subaccount, if any, if the Participant has completed at least five full years of Plan participation and is 100% vested in such Subaccount (in accordance with the applicable vesting schedule set forth in Appendix II), to the extent that withdrawals may be taken from such Subaccount, as indicated in Appendix II.

5.1.3   <u>Non-Hardship Withdrawals After Age 59½</u>

Withdrawals from a SIP Account at or after attainment of age 59½ by a Participant shall upon notice from the Participant be paid in cash (and/or in kind if the Participant has attained age 70½), in accordance with procedures established to administer the Plan, from (i) the Participant's Rollover Contributions Subaccount, , including the Participant's Rollover After-Tax Contributions Subaccount, (ii) the Participant's Employer Contributions Subaccount (to the extent the Participant is vested in such Subaccount), (iii) the Participant's Transferred Employer Contributions Subaccount (to the extent the Participant is vested in such Subaccount and to the extent that withdrawals may be taken from such Subaccount, as indicated in Appendix II), (iv) the Participant's 401(k) Subaccount, and (v) the Participant's After-Tax Contributions Subaccount.

Notwithstanding the foregoing, effective May 8, 2003, a Participant who remains in employment with an Employer following his or her attainment of age 59½ may elect to withdraw in kind all, but not less than all, of his or her vested Account Balance held in Company Stock (other than Company Stock held in an individual brokerage account held for the benefit of a single Participant) in accordance with procedures approved by the Administrative Committee.

5.1.4   <u>Withdrawals During Disability</u>

During the period of a Participant's Disability, withdrawals from a SIP Account shall upon notice from the Participant be paid  in cash, in accordance with procedures approved by the Administrative Committee, from the  the Participant's Rollover Contributions Subaccount (including the Participant's Rollover After-Tax Contributions Subaccount),  the Participant's Employer Contributions Subaccount

(to the extent the Participant is vested in such Subaccount), the Participant's Transferred Employer Contributions Subaccount (to the extent the Participant is vested in such Subaccount and to the extent that withdrawals may be taken from such Subaccount, as indicated in Appendix II), the Participant's After-Tax Contributions Subaccount, and the Participant's 401(k) Subaccount.

### 5.1.5   Special Rules for Certain International Employees

Notwithstanding any other provision of the Plan, no Participant who made Elective 401(k) Deferrals while employed in the United Kingdom shall be permitted to make withdrawals from a SIP Account while employed by the Employer that employed the Participant in the United Kingdom.

### 5.2   Deferred Profit Sharing Account

Withdrawals from a Deferred Profit Sharing Account shall upon notice from the Participant be paid to the Participant in kind and in cash.

### 5.3   Vocon Account

Withdrawals from a Vocon Account shall upon notice from the Participant be paid to the Participant in kind, in cash, or in the form of a Qualified Joint and Survivor Annuity (subject to any minimum amount requirement for the purchase of an annuity established by the Administrative Committee). No withdrawal shall be paid in kind or in cash without the consent of the Participant's spouse, if applicable, in the same manner as provided in Section 6.5.4.

### 5.4   General Rules

(a) No withdrawal from a SIP Account, other than a hardship withdrawal pursuant to Section 5.1.1, shall be made within 12 months of a prior withdrawal from a SIP Account. A hardship withdrawal may be made at any time subject to the requirements of Section 5.1.1. Withdrawals from Deferred Profit Sharing Accounts and Vocon Accounts may be made at any time subject to the requirements of Sections 5.2 and 5.3.

(b) Notwithstanding anything to the contrary in this Article V, withdrawals under this Article V may be made only during a Participant's Employment and no Participant shall be permitted to withdraw any portion of his or her Account which is pledged as security for a loan pursuant to Section 11.8.

### 5.5   Direct Rollover Withdrawals

A Participant who is eligible to receive a withdrawal from the Plan pursuant to the provisions of this Article V which constitutes an "eligible rollover distribution," as

defined in Code section 402(c)(4) (Code section 402(f)(2)(A), effective January 1, 2002), may direct the Administrative Committee to transfer all or any part of such withdrawal to an "eligible retirement plan," as defined in Code section 402(c)(8)(B) (including tax-qualified retirement plans or individual retirement accounts). Effective for distributions made after December 31, 2001, "eligible retirement plan" shall also include an annuity contract described in Code section 403(b) and an eligible plan under Code section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan. Effective for distributions made after December 31, 2001, the definition of "eligible retirement plan" shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Code section 414(p). The Administrative Committee shall cause the portion of the withdrawal which the Participant has elected to so transfer to be transferred directly to the designated "eligible retirement plan."

Effective for distributions made after December 31, 2001, no amount that is withdrawn on account of hardship under Section 5.1.1 shall be eligible for rollover under this Section 5.5.

A portion of a distribution shall not fail to be an eligible rollover distribution merely because the portion consists of After-Tax Contributions. However, such portion may be transferred only to an individual retirement account or annuity described in Code section 408(a) and (b), or to a qualified defined contribution plan described in Code section 401(a) or 403(a) that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

5.6     Dividends on Company Stock

Dividends on Company Stock held in the portion of the Plan that qualifies as employee stock ownership plan shall be distributed to the Participant (or beneficiary of a deceased Participant) or reinvested in Company Stock as the Participant or beneficiary may direct by providing the Administrative Committee with such advance notice, in such manner and at such time, as required by the Administrative Committee. In the absence of a direction, the Participant shall be deemed to have elected that such dividends be reinvested in Company Stock. Notwithstanding the foregoing, a Participant who receives a hardship withdrawal in accordance with Section 5.1.1 shall be deemed to have elected to receive dividends to the extent currently available to the Participant under this section.

## ARTICLE VI

## DISTRIBUTION OF ACCOUNT UPON TERMINATION OF EMPLOYMENT OR RETIREMENT

6.1  Amount of Benefits

Upon a Participant's Retirement or Termination of Employment, the Participant shall be entitled to a distribution of his or her Plan Benefit, subject to the provisions of this Article VI.

6.2  Forms of Distribution

6.2.1  SIP Accounts

Subject to such limitations as may apply under procedures established to administer the Plan, a Participant's benefits in his or her SIP Account shall be paid to the Participant in the normal form of a single sum distribution in cash and/or, if elected by the Participant: (i) in Company Stock (to the extent such Company Stock is held in the Participant's Account), (ii) in kind, and/or (iii) in the form of an annuity if permitted under Section 6.2.4.

6.2.2  Deferred Profit Sharing Accounts

Subject to such limitations as may apply under procedures established to administer the Plan, a Participant's benefits in his or her Deferred Profit Sharing Account shall be paid to the Participant in the normal form of a single sum distribution in kind, in cash, and/or, if elected by the Participant, in the form of an annuity if permitted under Section 6.2.4.

6.2.3  Vocon Accounts

Except for Participants who have a Termination of Employment with a Plan Benefit which does not exceed $3,500 ($5,000, effective July 1, 1999), for whom the portion of the Participant's Plan Benefit attributable to his or her Vocon Account shall be paid in the form of a single sum distribution in kind, a Participant's benefits in his or her Vocon Account shall be paid to the Participant in the normal form of a Qualified Joint and Survivor Annuity (subject to any minimum amount requirement for the purchase of an annuity established by the Administrative Committee). A Participant who Retires or has a Termination of Employment with a Plan Benefit of more than $3,500 ($5,000, effective July 1, 1999) may, however, with spousal consent as provided in Section 6.5.4, elect that his or her Vocon Account be paid in a single sum distribution in kind, in cash, and/or in the form of an annuity described in Section 6.2.4, subject to such limitations as may apply under procedures established to administer the Plan. As of

41

March 28, 2005, any distinctions in this Section 6.2.3 as to the form of distribution based on the amount of the Plan Benefit shall be disregarded and cease to apply.

Alternatively, for distributions commencing prior to January 1, 2002, any Participant upon his or her Retirement may, with spousal consent as provided in Section 6.5.4, elect that his or her Vocon Account be paid in ten annual installments. Each installment (other than the final installment) shall be in an amount equal to the Account Balance of the Participant's Vocon Account as of the last day of the calendar year preceding the payment of that installment, less any withdrawals from the Participant's Vocon Account for the period beginning on the first day of the calendar year of the payment of that installment and ending on the date of payment, divided by the number of installments remaining to be paid (including that installment); provided, however, that no installment shall be less than the minimum required distribution under Code section 401(a)(9). Each such installment shall be paid to the Participant in kind. A Participant who is receiving annual installments under this Section 6.2.3 may, with spousal consent as provided in Section 6.5.4, elect at any time that the entire remaining Account Balance of the Participant's Vocon Account be paid to the Participant in the form of a single sum distribution in kind.

6.2.4    Purchase of Annuities

Subject to the requirements of Section 6.2.3 with respect to Vocon Accounts, any Participant with a Vocon Account, a Deferred Profit Sharing Account, or a SIP Account upon his or her Retirement or Termination of Employment, in each case with respect to a portion of the Participant's Plan Benefit which is more than $3,500 ($5,000, effective July 1, 1999) or such higher amount as required for the purchase of an annuity established by an independent insurance company (for Plan Year 2005, $10,000), may elect to have the entire balance of his or her Vocon Account, Deferred Profit Sharing Account, and/or SIP Account, as applicable, applied to the purchase from an insurance company of any one of the following forms of annuity for the Participant or the Participant and his or her survivor annuitant:

   (i)   a single life annuity;

   (ii)  a 100% joint and survivor annuity;

   (iii) a 50% joint and survivor annuity;

   (iv)  a ten-year term certain annuity; or

   (v)   such other annuity form or forms as may be made available by the Administrative Committee.

6.2.5    Post-Employment Withdrawals

Following his or her Termination of Employment or Retirement, post-employment withdrawals from a Participant's Vocon and Deferred Profit Sharing Accounts consisting of less than the entire Account Balance of the respective Accounts shall upon notice from the Participant be paid to the Participant: (i) in the case of the Vocon Account, in the form of a Qualified Joint and Survivor Annuity (subject to any minimum amount requirement for the purchase of an annuity established by the Administrative Committee), unless with the consent of the Participant's spouse, if applicable, as provided in Section 6.5.4, the Participant elects a distribution in kind, in cash, and (ii) in the case of the Deferred Profit Sharing Account, in kind and/or in cash.

6.2.6    Direct Rollover Distributions

A Participant who is eligible to receive a distribution from the Plan pursuant to the provisions of this Article VI which constitutes an "eligible rollover distribution," as defined in Code section 402(c)(4) (Code section 402(f)(2)(A), effective January 1, 2002), may direct the Administrative Committee to transfer all or any part of such distribution to an "eligible retirement plan," as defined in Code section 402(c)(8)(B) (including tax-qualified retirement plans and individual retirement accounts). Effective for distributions made after December 31, 2001, "eligible retirement plan" shall also include an annuity contract described in Code section 403(b) and an eligible plan under Code section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan. Effective for distributions made after December 31, 2001, the definition of "eligible retirement plan" shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Code section 414(p). The Administrative Committee shall cause the portion of the distribution which the Participant has elected to so transfer to be transferred directly to the designated "eligible retirement plan".

Subject to such limitations as may apply under procedures established to administer the Plan, the Participant may elect to receive the portion of the eligible rollover distribution to be transferred to an eligible retirement plan in any of the alternative forms, if any, otherwise applicable to such distribution, which may be different from the form for the portion of the Plan Benefit that is to be paid directly to the Participant, if any.

6.3    Benefit Distribution Date

6.3.1    If a Participant has a Termination of Employment with a Plan Benefit which does not exceed $3,500 ($5,000, effective July 1, 1999), the Benefit Distribution Date with respect to his or her Accounts shall be as soon as practicable after the

43

Participant's Termination of Employment and no Participant or spousal consent shall be required for such distribution. Notwithstanding anything to the contrary in this Plan, effective January 1, 2005, this Section 6.3.1 shall be disregarded and cease to apply.

6.3.2    If a Participant has a Termination of Employment with a Plan Benefit which exceeds $3,500 ($5,000, effective July 1, 1999) and he or she (and his or her spouse, if required by Section 6.5) consents to a distribution of one or more of his or her Accounts after such Termination of Employment the Benefit Distribution Date with respect to such Accounts shall be as soon as practicable after the Participant's Termination of Employment. Notwithstanding anything to the contrary in this Plan, effective March 28, 2005, any reference in this Section 6.3.2 to the amount of the Plan Benefit (and any distinction based on such amount) shall be disregarded and cease to apply.

6.3.3    If a Participant has a Termination of Employment with a Plan Benefit which exceeds $3,500 ($5,000, effective July 1, 1999) and he or she (and his or her spouse, if required by Section 6.5) does not timely consent to an immediate distribution of one or more of his or her Accounts, the Participant's Benefit Distribution Date with respect to the Accounts for which consent was not received shall be as soon as practicable after the Participant's attainment of Normal Retirement Age. Effective January 1, 2005, if a Participant has a Termination of Employment with a Plan Benefit, except as otherwise provided under Section 6.3.5 of the Plan, the Benefit Distribution Date shall be as soon as practicable after a Participant directs the Administrative Committee to make a distribution with respect to one or more of his or her Accounts: provided, however, where the Administrative Committee is given no such direction, a Participant is deemed to have elected to commence distribution at the maximum time permitted under Section 6.4. Such Participant, with spousal consent if required by Section 6.5, may at any time after Termination of Employment, direct the Administrative Committee to distribute as soon as practicable up to 100% of one or more of his or her vested Accounts prior to attainment of Normal Retirement Age. Notwithstanding anything to the contrary in this Plan, effective March 28, 2005, any reference in this Section 6.3.3 to the amount of the Plan Benefit (and any distinction based on such amount) shall be disregarded and cease to apply.

6.3.4    (a)    If a Participant Retires with any Plan Benefit and consents to an immediate distribution, the Benefit Distribution Date shall be as soon as practicable after the Participant's Retirement.

         (b)    If a Participant Retires with any Plan Benefit and fails to either timely consent to an immediate distribution or elect a deferred distribution with respect to one or more of his or her Accounts, the Benefit Distribution Date with respect to the Accounts for which a consent or an election was not received shall be as soon as practicable after the Participant's attainment of Normal Retirement Age unless, prior to the attainment of Normal Retirement Age, the Participant elects

WDC99 534287-1.047750.0011

to defer his or her distribution until his or her attainment of age 70½. Notwithstanding anything to the contrary in this Plan, effective January 1, 2005, if a Participant Retires and does not elect an immediate distribution with respect to one or more of his or her Accounts, except as otherwise required by Section 6.3.5, the Benefit Distribution Date with respect to such Accounts shall not be earlier than as soon as practicable after the Participant directs the Administrative Committee to make a distribution with respect to one or more of his or her Accounts.

(c)    If a Participant Retires with any Plan Benefit and, he or she timely elects deferred distribution of one or more of his or her Accounts, the Benefit Distribution Date with respect to the Accounts which are the subject of such election shall be as soon as practicable after the Participant's attainment of age 70½. Notwithstanding anything to the contrary in this Plan, effective January 1, 2005, this subsection 6.3.4(c) shall be disregarded and cease to apply.

(d)    Any Participant described in this Section 6.3.4 may, with spousal consent if required by Section 6.5, at any time after Retirement, direct the Administrative Committee to distribute, as soon as practicable up to 100% of one or more of his or her Accounts prior to the Benefit Distribution Date determined, pursuant to subsections (b) or (c) of this Section 6.3.4 for that Account.

6.3.5    Unless a Participant otherwise elects pursuant to this Section 6.3, a Participant shall in no event begin to receive his or her Plan Benefit later than the sixtieth day after the close of the Plan Year in which the latest of the following events occurs:

(i)    the Participant attains his or her Normal Retirement Age;

(ii)    the tenth anniversary of the year in which the Participant commenced participation; or

(iii)    the Participant's Termination of Employment or Retirement.

6.3.6    A Participant shall be permitted to direct the investment of his or her Accounts during the period prior to the actual distribution of the Participant's Plan Benefit from the Plan.

6.4    <u>Minimum Required Distributions</u>

6.4.1    Notwithstanding any other provision of this Plan, distribution of a Participant's Plan Benefit shall commence no later than the required beginning date. The "required beginning date" means the end of the calendar year in which the Participant attains 70½ or, if later, April 1 of the calendar year following the calendar year in which the Participant ceases Employment; <u>provided</u>, however, that in the case of a Participant who is a 5% owner (as defined in Code section 416(i)(1)) such distribution shall commence not later than the April 1 of the calendar year following

45

the calendar year in which the Participant attains age 70½. The distribution of the Plan Benefit of the Participant's designated beneficiary shall commence in accordance with Article VII. All distributions required under this Section 6.4 will be determined and made in accordance with the Treasury regulations under section 401(a)(9) of the Internal Revenue Code.

6.4.2    Unless the Participant's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the required beginning date, as of the first distribution calendar year distributions will be made in accordance with Sections 6.4.3 of this Section 6.4. If the Participant's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Code section 401(a)(9) and the Treasury regulations.

6.4.3    During the Participant's lifetime, the minimum amount that will be distributed for each distribution calendar year is the lesser of:

(a) the quotient obtained by dividing the Participant's Account Balance by the distribution period in the Uniform Lifetime Table set forth in section 1.401(a)(9)-9 of the Treasury regulations, using the Participant's age as of the Participant's birthday in the distribution calendar year; or

(b) if the Participant's sole designated beneficiary for the distribution calendar year is the Participant's Spouse, the quotient obtained by dividing the Participant's Account Balance by the number in the Joint and Last Survivor Table set forth in section 1.401(a)(9)-9 of the Treasury regulations, using the Participant's and Spouse's attained ages as of the Participant's and Spouse's birthdays in the distribution calendar year.

Required minimum distributions will be determined under this Section 6.4.3 beginning with the first distribution calendar year and up to and including the distribution calendar year that includes the Participant's date of death.

6.4.4    Definitions.

(a) Designated beneficiary: The individual who is designated as the Beneficiary under Article VII of the Plan and is the designated beneficiary under section 401(a)(9) of the Internal Revenue Code and section 1.401(a)(9)-1, Q&A-4, of the Treasury regulations.

(b) Distribution calendar year: A calendar year for which a minimum distribution is required. The first distribution calendar year is the calendar year immediately preceding the calendar year which contains the Participant's required beginning date. The required minimum distribution for the Participant's first distribution calendar year will be made on or before the Participant's required beginning date. The required minimum distribution for other distribution calendar years,

46

including the required minimum distribution for the distribution calendar year in which the Participant's required beginning date occurs, will be made on or before December 31 of that distribution calendar year.

(c) Life expectancy: Life expectancy as computed by use of the Single Life Table in section 1.401(a)(9)-9 of the Treasury regulations.

6.4.5 Distributions under Section 6.4 of the Participant's Accounts shall be paid in cash from the SIP Account, in kind or in cash from the Deferred Profit Sharing Account, and either in the form of a Qualified Joint and Survivor Annuity, in cash or in kind from the Vocon Account, at the election of the Participant with spousal consent in accordance with Section 6.5.4.

6.4.6 Distributions under this Article VI of the Participant's Account and any annuity contract purchased therewith shall be paid in accordance with the requirements of Code section 401(a)(9) and the final and proposed regulations thereunder, including the minimum distribution incidental benefit requirement of Treasury Regulation section 1.401(a)(9)-2.

6.5    Spousal Consent Requirements

6.5.1 The provisions of Section 6.5 shall apply to any distribution from a Participant's Vocon Account and any withdrawal or distribution from a Participant's Deferred Profit Sharing Account or SIP Account that is to be paid to the Participant in the form of an annuity (subject to any minimum amount requirement for the purchase of an annuity established by the Administrative Committee). Notwithstanding the foregoing, the provisions of Section 6.5 shall not apply to any Participant who has a Termination of Employment and whose Plan Benefit does not exceed $3,500 ($5,000, effective July 1, 1999); provided, however, that notwithstanding anything to the contrary in the Plan, effective March 28, 2005, this sentence shall cease to apply.

6.5.2 The Administrative Committee shall within a reasonable period of time, but in any event no less than thirty days and no more than ninety days prior to the date of each withdrawal or distribution to which Section 6.5 applies, provide to the Participant a written explanation of:

(i) the terms and conditions of a Qualified Joint and Survivor Annuity;

(ii) the Participant's right to make, and the effect of, an election to waive the Qualified Joint and Survivor Annuity;

(iii) the rights of the Participant's spouse under Section 6.5.4;

(iv) the Participant's right to make, and the effect of, a revocation of a previous election to waive a Qualified Joint and Survivor Annuity, which revocation

47

shall only be effective if made prior to commencement of processing of the respective withdrawal or distribution; and

(v) the material features and relative values of the various optional forms of distribution under the Plan.

The Administrative Committee may provide for such other notices, information or election periods or take such other action as the Administrative Committee considers necessary or appropriate so that this Section 6.5 is implemented in such a manner as to comply with Code sections 401(a)(11) and 417.

6.5.3     A Participant may revoke his or her election to take an optional form of benefit with respect to a withdrawal or distribution, and (with spousal consent, if any benefit form other than a Qualified Joint and Survivor Annuity is elected) elect a different form of distribution, at any time prior to the commencement of processing of such withdrawal or distribution. The number of revocations shall not be limited. A spouse shall have no right to revoke consent given with respect to any withdrawal or distribution.

6.5.4     The election of an optional form of benefit by a Participant must also be a waiver of a Qualified Joint and Survivor Annuity by the Participant. Any waiver of a Qualified Joint and Survivor Annuity shall not be effective unless: (i) the Participant's spouse consents in writing; (ii) the spouse's consent to the waiver is witnessed by a notary public; and (iii) the spouse's consent acknowledges the effect of the election. Additionally, a Participant's waiver of the Qualified Joint and Survivor Annuity will not be effective unless the election designates a form of benefit distribution, which, if the Participant is married, may not be changed without spousal consent. Notwithstanding this consent requirement, if the Participant establishes to the satisfaction of the Administrative Committee that such written consent may not be obtained because there is no spouse or the spouse cannot be located, or because such other circumstances exist as the Administrative Committee may provide in accordance with regulations promulgated by the Internal Revenue Service, the election will be deemed effective. Any effective election under this provision will not be valid with respect to any other spouse. No consent obtained under this provision shall be valid unless the Participant has received notice as provided in Section 6.5.2.

6.6     <u>Distribution of 401(k) Elective Deferrals</u>

Any provision of the Plan to the contrary notwithstanding, other than the provisions of Article III relating to distributions in connection with the limitations contained in Article III, Elective 401(k) Deferrals plus any earnings and minus any losses allocable thereto are not payable to a Participant or his or her Beneficiary earlier than upon the Participant's: separation from service, death, incurring of a Disability, attaining age 59½ or undergoing a "financial hardship" determined in accordance with Section 5.1.1. Such amounts may also be paid upon:

48

(i) termination of the Plan without the establishment of another Defined Contribution Plan other than an employee stock ownership plan, as defined in Code section 4975(e) or 409, or a simplified employee pension plan, as defined in Code section 408(k);

(ii) the disposition by a corporation to an unrelated corporation of substantially all of the assets (within the meaning of Code section 409(d)(2)) used in a trade or business of such corporation if such corporation continues to maintain this Plan after the disposition, but only with respect to employees who continue employment with the corporation acquiring such assets; or

(iii) the disposition by a corporation to an unrelated entity of such corporation's interest in a subsidiary within the meaning of Code section 409(d)(3) if such corporation continues to maintain this Plan, but only with respect to employees who continue employment with such subsidiary.

Notwithstanding the foregoing, effective for distributions made after December 31, 2001, a Participant's Account attributable to Elective 401(k) Deferrals, Qualified Non-elective Contributions (as defined in section 3.1(h)), plus any earnings and minus any losses attributable to these contributions shall be distributed on account of the Participant's severance from employment. However, such distributions shall be subject to the other provisions of the Plan regarding distributions, other than provisions that require a separation from service before such amounts may be distributed.

6.7     Exclusion of Rollover Contributions Subaccounts from Calculation of Cash-out Limit

Notwithstanding any other provision of the Plan, effective for distributions made in Plan Years beginning on and after January 1, 2002, for purposes of calculating the $5,000 cash-out limit under Sections 6.2.3, 6.2.4, 6.3.1, 6.3.2, 6.3.3 and 6.5.1, Rollover Contributions Subaccounts shall be disregarded. Effective March 28, 2005, this Section 6.7 shall be disregarded and of no further force or effect.

WDC99 534287-1.047750.0011

# ARTICLE VII

## DEATH BENEFITS

7.1    Distribution of Account Balances

7.1.1    (a)    Subject to such limitations as may apply under procedures established to administer the Plan, if a Participant dies before the distribution of his or her SIP Account and Deferred Profit Sharing Account has been completed, the Account Balance of the Participant's SIP Account shall be paid as soon as practicable to the Participant's Beneficiary in the normal form of a single sum distribution in cash and/or, if elected by the Beneficiary: in Company Stock (to the extent such Company Stock is held in the Participant's Account) and/or in kind. The Account Balance of the Participant's Deferred Profit Sharing Account, shall be paid as soon as practicable to the Participant's Beneficiary in the normal form of a single sum distribution in kind.

(b)    If a Participant dies before the distribution of his or her Vocon Account has been completed, his or her Vocon Account shall be paid in accordance with the following. If an installment distribution has been paid to the Participant and the Participant who is receiving installments dies prior to the complete distribution of all installments, the Account Balance of the Participant's Vocon Account shall be paid to the Participant's Beneficiary (determined in accordance with Section 7.2) as soon as practicable after the Participant's death in the form of a single sum distribution in kind. If no distribution had been paid to the Participant at the time of the Participant's death, and the Participant's Beneficiary is the Participant's surviving spouse, the Account Balance of the Participant's Vocon Account shall be paid to the Participant's surviving spouse in the form of a single life annuity for the life of the Participant's surviving spouse unless such spouse consents to a single sum distribution in kind. Such annuity shall commence as soon as practicable after the Participant's death. If no distribution had been paid to the Participant at the time of the Participant's death, and the Beneficiary is not Participant's spouse, the Account Balance of the Participant's Vocon Account shall be paid to the Participant's Beneficiary as soon as practicable after the Participant's death in the form of a single sum distribution in kind.

7.1.2    Distribution under this Article VII of the balance of the Participant's Account and any annuity contract purchased therewith shall be paid in accordance with the requirements of Code section 401(a)(9) and the final and proposed regulations thereunder, including the minimum distribution incidental benefit requirement of Proposed Treasury Regulation section 1.401(a)(9)-2.

7.1.3    A Beneficiary who is the Participant's spouse (or an alternate payee under a "qualified domestic relations order" as defined in Code section 414(p) who is

50