treated as the Participant's spouse) who is eligible to receive a distribution from the Plan pursuant to the provisions of this Article VII which constitutes an "eligible rollover distribution," as defined in Code section 402(c)(4) (Code section 402(f)(2)(A), effective January 1, 2002), may direct the Administrative Committee to transfer all or any part of such distribution to an individual retirement account or an individual retirement annuity (or, effective for distributions after December 31, 2001, to an "eligible retirement plan" as defined under Section 5.5 of the Plan). The Administrative Committee shall cause the portion of the distribution which such spouse has elected to so transfer to be transferred directly to the designated individual retirement account or individual retirement annuity.

7.2    Beneficiaries

7.2.1    Subject to the spousal consent requirements specified below, each Participant may designate a Beneficiary, which may be a different Beneficiary for each of his or her Accounts. The designated Beneficiary may be one or more individuals, estates, trusts or other entities; provided, however, if the Participant is married at the time of his or her death, his or her spouse shall automatically be his or her sole Beneficiary unless the spouse had consented, in writing, to a designation of another Beneficiary. Such consent must be witnessed by a notary public and must contain an acknowledgment by the spouse of the effect of the designation.

7.2.2    (a) If a Participant who is unmarried as of the date of his or her death has not designated a Beneficiary and the Participant at that time has coverage in effect under the Company's Basic Group Life Insurance Plan, the Participant's Beneficiary shall be the beneficiary designated by the Participant under that plan and the Participant's interest remaining in the Plan (or in the respective Accounts if different Beneficiaries are designated for different Accounts) shall be paid in accordance with such designation. If: (i) none of the Beneficiaries designated by the Participant with respect to an Account survive the Participant, (ii) the Participant has not designated a Beneficiary under this Plan and no beneficiary designation is then in effect under the Company's Basic Group Life Insurance Plan, or (iii) the Participant has assigned the right to receive his or her death benefit under the Company's Basic Group Life Insurance Plan, the Participant's remaining interest in the Accounts concerned shall be paid to the estate of the Participant.

(b) If a Participant who is married as of the date of his or her death designates one or more Beneficiaries other than his or her spouse pursuant to Section 7.2.1 and each such Beneficiary predeceases the Participant, the Participant's Beneficiary shall be the Participant's surviving spouse and the Participant's interest remaining in the Plan (or in the respective Account if different Beneficiaries are designated for different Accounts) shall be paid to the surviving spouse, or, if such spouse is no longer living, and the Participant at that time has coverage in effect under the Company's Basic Group Life Insurance Plan, the Participant's Beneficiary shall be the beneficiary designated by the Participant under that

51

plan and the Participant's interest remaining in the Plan (or in the respective Account if different Beneficiaries are designated for different Accounts) shall be paid in accordance with such designation.

(c) Notwithstanding the foregoing, if a Participant is married as of the date of his or her death and:

(i) the Participant's deceased spouse was the Participant's designated beneficiary under the Company's Basic Group Insurance Plan, and no other beneficiary designated under the Company's Basic Group Insurance Plan survived the Participant, or

(ii) the Participant assigned the right to receive his or her death benefit under the Company's Basic Group Insurance the Participant's remaining interest in the Plan (or the respective Account, if applicable) shall be paid to the estate of the Participant.

(d) In the case of both married and unmarried Participants, if the Beneficiary and the Participant die simultaneously, or if there is not sufficient evidence to establish which died first, it shall be presumed that the Participant was the survivor.

7.2.3   Subject to the spousal consent requirements of Section 7.2.1, any designation (or change in designation) of a Beneficiary to whom amounts due after the Participant's death shall be paid must be filed in a time and manner determined by the Company, in order to be effective. Any such designation of a Beneficiary may be revoked by filing a later designation or an instrument of revocation, in a time and manner determined by the Company.

7.3   <u>Investments Prior to Distribution</u>

A Beneficiary shall be permitted to direct the investment of the portion of any Account for which he or she is the Beneficiary during the period prior to the distribution of such portion to the Beneficiary.

WDC99 534287-1.047750.0011

ARTICLE VIII

FIDUCIARIES

8.1    Named Fiduciaries

8.1.1    Except as provided in Sections 11.2.1 and 11.3, the Administrative Committee shall be the "named fiduciary" of the Plan (as that term is defined in ERISA section 402(a)(1)), with authority to manage and control the operation and administration of the Plan and the Investment Committee shall be the "named fiduciary" of the Plan with authority to establish Designated Investment Alternatives, manage and control all Trust assets (other than Self-Directed Assets), and appoint one or more Investment Managers pursuant to Section 11.6.

8.1.2    The Company shall be the "administrator" and "plan administrator" with respect to the Plan, as those terms are defined in ERISA section 3(16)(A) and in Code section 414(g), respectively.

8.1.3    Any person or persons may serve in more than one named fiduciary capacity with respect to the Plan, including, without limitation, service as a Trustee, as a member of the Administrative Committee and as a member of the Investment Committee.

8.2    Payment of Expenses

All Plan expenses, including expenses of the Administrative Committee, the Investment Committee, the Trustee, any Investment Manager and any insurance company may be payable from the Trust, and to the extent not paid by the Trust, shall be paid by the Employer. Notwithstanding the foregoing, any investment or transaction expenses relating to Self-Directed Assets and any other expenses to be paid from the Trust that are allocable to one or more but not all Accounts shall be paid and charged solely to the Account or Accounts involved either on a specific or proportionate basis as determined by the Administrative Committee in its sole discretion.

8.3    Indemnification

To the extent permitted by applicable law, no member of the Administrative Committee or the Investment Committee shall be liable for any act or omission of any other member of the Administrative Committee or the Investment Committee nor for any act or omission on his or her own part, other than those acts or omissions attributable to his or her own willful misconduct or gross negligence. To the extent permitted by applicable law, the Company and each other Employer jointly and severally shall indemnify and save harmless the members of the Administrative Committee, the Investment Committee, and other Employees, officers or directors of the Company or an Affiliate who are fiduciaries against any and all demands, suits, proceedings, or claims for liability, loss, damage or expense (including payment of reasonable expenses

53

in connection with defense against any such demands, suits, proceedings or claims) in connection with the Plan and Trust that may be brought by Participants or their Beneficiaries, Employees of participating Employers, or by any other person, corporation, entity, government or agency thereof; provided, however, that such indemnification shall not apply with respect to acts or omissions of willful misconduct or gross negligence. The Board of Directors, at the Company's or any Employer's expense, may settle any such claim or demand asserted, or suit or proceeding brought, against any member of the Administrative Committee or the Investment Committee when such settlement appears to be in the best interest of the Company.

WDC99 534287-1.047750.0011

# ARTICLE IX

## TRUSTEE

9.1     Appointment of Trustee

9.1.1   The Board of Directors shall appoint one or more individuals (or entities) as Trustee(s) who shall serve as trustee(s) of all or a portion of the Trust pursuant to the Trust Agreement. Notwithstanding any other provision of the Plan, the Senior Vice President, Human Resources (or such officer's functional successor), is authorized to appoint one or more individuals who shall serve as Trustee(s) with respect to amounts allocated to Deferred Profit Sharing Accounts and Vocon Accounts, and to remove any such individuals from such service. As of October 1, 2004, the immediately preceding sentence shall be disregarded and of no further force or effect.

9.1.2   Each Trustee shall accept its appointment by executing the Trust Agreement (or, in the case of a Trustee with respect to amounts allocated to Deferred Profit Sharing Accounts and Vocon Accounts, by otherwise accepting the terms of the applicable Trust Agreement as previously executed by other individual Trustees). No other Plan fiduciary shall be liable for any act or omission of any Trustee with respect to any duties delegated to any Trustee.

9.1.3   If individuals are acting as Trustees, the Trustees shall act by a majority of the Trustees at the time in office and such action may be taken either by a vote at a meeting or in writing without a meeting. If less than three individual Trustees are appointed, however, the Trustees shall act only upon the unanimous consent of all of the Trustees. The Trustee(s) may authorize in writing any person to execute any document or documents on the Trustee's (or Trustees') behalf, and any interested person, upon receipt of notice of such authorization directed to it, may thereafter accept and rely upon any document executed by such authorized person until the Trustee(s) shall deliver to such interested person a written revocation of such authorization.

A Trustee who is also a Participant shall not vote or act upon any matter relating to himself or herself, unless such person is the sole Trustee.

WDC99 534287-1.047750.0011

ARTICLE X

PLAN ADMINISTRATION

## 10.1    The Administrative Committee

### 10.1.1    Composition of the Administrative Committee

The Administrative Committee shall consist of not less than one person appointed from time to time by the Senior Vice President, Human Resources (or such officer's functional successor). The members of the Administrative Committee shall serve at the pleasure of the Senior Vice President, Human Resources (or such officer's functional successor) without compensation and, except as required by applicable law, without bond or other security at the pleasure of the Board. Any member of the Administrative Committee may resign by delivering his or her written resignation to the Senior Vice President, Human Resources (or such officer's functional successor) and to the Secretary of the Administrative Committee. Unless the Senior Vice President, Human Resources (or such officer's functional successor) otherwise provides, any member of the Administrative Committee who is an Employee of the Company or an Affiliate and who reports, directly or indirectly, to the Senior Vice President, Human Resources (or such officer's functional successor) at the time of his or her appointment, will be considered to have resigned from the Administrative Committee when he or she ceases to be an Employee or no longer reports, directly or indirectly, to the Senior Vice President, Human Resources (or such officer's functional successor).

### 10.1.2    Administrative Committee Operation and Procedures

The members of the Administrative Committee shall elect a chairperson from their number and a Secretary who may, but need not, be one of the members of the Administrative Committee; may appoint from their number such committees with such powers as they shall determine; may authorize one or more of their number or any agent to execute or deliver any instrument or make any payment on behalf of the Administrative Committee; and may retain counsel, employ agents, and obtain clerical, medical, actuarial and accounting services as the Administrative Committee may require or deem advisable from time to time. All action by the Administrative Committee shall be taken at a meeting or via telephone conference. The Administrative Committee shall hold meetings upon notice, at such place or places, or via telephone conference, and at such time or times as it may from time to time determine. Any action required or permitted to be taken at any meeting of the Administrative Committee may be taken without a meeting, if all the members of the Administrative Committee consent thereto in writing.

If more than one member is appointed, 50% of the members of the Administrative Committee then in office shall constitute a quorum for the transaction of business at any meeting of the Administrative Committee. The vote of a majority of the

56

members present at the time of the vote, if a quorum is present at such time, shall be the act of the Administrative Committee. However, if less than three members are appointed, the Administrative Committee shall act only upon the unanimous consent of its members. A member of the Administrative Committee who is also a Participant shall not vote or act upon any matter relating to himself or herself unless such Participant is the sole member of the Administrative Committee.

10.1.3   Powers and Responsibilities of the Administrative Committee

Subject to Section 8.1, the Administrative Committee shall be responsible for the administration, operation and interpretation of the Plan. It shall have the exclusive authority and right to interpret the Plan provisions and to exercise discretion where necessary or appropriate in the interpretation and administration of the Plan and to decide any and all matters arising thereunder or in connection with the administration of the Plan (including correction of errors and the determination of the eligibility of Participants and Beneficiaries for benefits under the Plan), and it shall endeavor to act, whether by general rules or by particular decisions, so as not to discriminate in favor of any person or class of persons. Such decisions, actions and records of the Administrative Committee shall be conclusive and binding upon the Company, any Employer and all persons having or claiming to have any right or interest in or under the Plan.

The Administrative Committee shall maintain or cause to be maintained accounts to the extent it deems necessary or appropriate showing the fiscal transactions of the Plan.

In addition to the foregoing, the Administrative Committee shall have the following powers and responsibilities:

(a)  The Administrative Committee shall have the power to promulgate such rules and procedures, to maintain or cause to be maintained such records and to issue such forms as it shall deem necessary or desirable for the administration of the Plan.

(b)  Subject to the terms of the Plan and applicable law, the Administrative Committee shall determine the time and manner in which all elections authorized by the Plan shall be made or revoked.

(c)  The Administrative Committee may direct that such amounts be withheld from any payment due under this Plan as required to comply with applicable income tax law.

(d)  The Administrative Committee shall have such other rights, powers, duties and obligations as may be granted or imposed upon it elsewhere in the Plan.

57

(e) The Administrative Committee shall exercise all of its powers and responsibilities in a nondiscriminatory manner.

(f) The Administrative Committee may designate persons, including persons other than "named fiduciaries" (as defined in ERISA section 402(a)(2)), to carry out the specified responsibilities of the Administrative Committee and shall not be liable for any act or omission of a person so designated.

Notwithstanding any other provisions of the Plan, appropriate personnel in the Global Benefits and/or Employee Services departments of the Company (or functionally similar departments of any Affiliate of the Company) are authorized to take action with respect to routine ministerial matters in connection with the Plan and to take action with respect to the transfer and disposition of assets, including those held under the Plan, in connection with acquisitions, divestitures and other corporate transactions.

## 10.2    The Investment Committee

### 10.2.1    Composition of the Investment Committee

The Investment Committee shall consist of not less than one person appointed from time to time by the Senior Vice President, Human Resources (or such officer's functional successor). The members of the Investment Committee shall serve at the pleasure of the Senior Vice President, Human Resources (or such officer's functional successor) without compensation and, except as required by applicable law, without bond or other security. Any member of the Investment Committee may resign by delivering his or her written resignation to the Senior Vice President, Human Resources (or such officer's functional successor) and to the Secretary of the Investment Committee. Unless the Senior Vice President, Human Resources (or such officer's functional successor) otherwise provides, any member of the Investment Committee who is an Employee of the Company or an Affiliate at the time of his or her appointment will be considered to have resigned from the Investment Committee when he or she ceases to be an Employee.

### 10.2.2    Investment Committee Operation and Procedures

The operation and procedures of the Investment Committee shall be the same as the operation and procedures of the Administrative Committee as set forth in Section 10.1.2 above.

### 10.2.3    Powers and Responsibilities of the Investment Committee

Subject to Section 8.1, the Investment Committee shall be responsible for the investment of Trust assets and shall have the following powers and responsibilities:

WDC99 534287-1.047750.0011

(a) The Investment Committee shall establish and carry out a funding policy and method consistent with the objectives of the Plan and the requirements of ERISA.

(b) The Investment Committee shall have the power to direct that assets of the Trust be held in a master trust consisting of assets of qualified plans maintained by the Company or an Affiliate.

(c) The Investment Committee shall have the authority to establish Designated Investment Alternatives and permit the investment of Accounts in Company Stock in accordance with Section 11.1.

(d) The Investment Committee shall have such other rights, powers, duties and obligations as may be granted or imposed upon it elsewhere in the Plan.

(e) The Investment Committee shall exercise all of its powers and responsibilities in a nondiscriminatory manner.

(f) The Investment Committee may designate persons, including persons other than "named fiduciaries" (as defined in ERISA section 402(a)(2)), to carry out the specified responsibilities of the Investment Committee and shall not be liable for any act or omission of a person so designated.

10.3    Claim Procedures

The Administrative Committee shall establish a claims procedure.

WDC99 534287-1.047750.0011

ARTICLE XI

MANAGEMENT, CONTROL AND INVESTMENT OF PLAN ASSETS

11.1    Investment of Plan Assets

11.1.1    The Investment Committee may establish and provide for the investment of Trust assets in such different Designated Investment Alternatives, including Company Stock and funds for which the Company or an Affiliate is a manager or investment adviser, as it shall from time to time determine for the investment of a Participant's SIP Account. Each such Designated Investment Alternative shall have such investment objective as established by the Investment Committee. The Deferred Profit Sharing Accounts and Vocon Accounts shall be invested solely in Self-Directed Assets.

Notwithstanding anything to the contrary in this Section 11.1 or any other provision of the Plan, as of October 1, 2004, the Deferred Profit Sharing Accounts and the Vocon Accounts shall be invested only in Designated Investment Alternatives.

11.1.2    If Designated Investment Alternatives are established, the Administrative Committee may, in its sole discretion, permit Participants and Beneficiaries to determine the portion of their Accounts that shall be invested in each Designated Investment Alternative and shall determine what transfers between Designated Investment Alternatives and other Trust assets shall be permissible. The Plan is then intended to comply with section 404(c) of ERISA, under which Participants and Beneficiaries are responsible for, and bear the consequences of, such investment determinations.

Notwithstanding the foregoing, in no event shall Participants or Beneficiaries be permitted to direct offsetting transactions with respect to a Designated Investment Alternative (other than any Designated Investment Alternative designed to invest in Company Stock or in a money market mutual fund or other Designated Investment Alternative designed to invest in short-term money market instruments) more than once every fifteen (15) business days.

11.1.3    Anything in this Plan to the contrary notwithstanding, the Investment Committee may specify that assets with respect to which investment direction is not received shall be invested as specified by the Investment Committee.

11.1.4    To the extent that the Investment Committee establishes and provides for the investment of Trust assets in Designated Investment Alternatives pursuant to Section 11.1.1, none of the Investment Committee, the Administrative Committee or the Trustee shall:

60

(i) except for the investment of trust assets pending their investment in Designated Investment Alternatives, or in the case of a Participant who has not made a timely election regarding the liquidation of assets held in his or her Account in order for the Participant to receive a distribution required under Section 6.4, or with respect to the charging of expenses (including taxes, if applicable) pursuant to Section 8.2, make any investments or dispose of any investments or exercise any voting rights with respect to any investments of a Participant or Beneficiary's Accounts in a Designated Investment Alternative without the direction of the Participant or Beneficiary for whom an Account is maintained;

(ii) be responsible for reviewing investment directions given by a Participant or Beneficiary with regard to assets held in a Participant or Beneficiary's Accounts invested in a Designated Investment Alternative or for making recommendations on acquiring, retaining or disposing of any assets or otherwise regarding any assets; or

(iii) be liable for any losses incurred therein as a consequence of investments selected by any Participant or Beneficiary or for holding assets uninvested until it receives proper instructions.

11.2    Self-Directed Assets

11.2.1  Self-Directed Assets shall be invested by the Trustee in accordance with the direction from the Participant or, in the event of the Participant's death before an Account is paid, the Participant's Beneficiary with respect to the assets involved. Self-Directed Assets shall be invested in any asset permissible under the Trust Agreement. The investment of Self-Directed Assets shall be made in accordance with such rules and procedures as established by the Administrative Committee. In the exercise of authority and discretion with respect to Self-Directed Assets, each Participant and Beneficiary shall be a "named fiduciary" within the meaning or ERISA section 402(a)(1).

11.2.2  With respect to Self-Directed Assets, none of the Investment Committee, the Administrative Committee or the Trustee shall:

(i) except in the case of a Participant who has not made a timely election regarding the liquidation of assets held in his or her Account in order for the Participant to receive a distribution required under Section 6.4, or with respect to the charging of expenses (including taxes, if applicable) pursuant to Section 8.2, make any investments or dispose of any investments or exercise voting rights with respect to any investments of a Participant's or Beneficiary's account without the direction of the Participant or Beneficiary for whom the Self-Directed Assets are maintained;

61

(ii) be responsible for reviewing the investment direction with respect to Self-Directed Assets or for making recommendations on acquiring, retaining or disposing of any assets or otherwise regarding any assets; or

(iii) be liable for any losses incurred therein as a consequence of investments selected by any Participant or Beneficiary or for holding assets uninvested until it receives proper instructions.

11.2.3    Notwithstanding anything to the contrary in Section 11.2, as of October 1, 2004, this Section 11.2 shall be disregarded and of no further force or effect, and any reference elsewhere in the Plan to the investment of Self-Directed Assets in anything other than Designated Investment Alternatives shall be disregarded and of no further force or effect.

## 11.3    Company Stock and Designated Investment Alternatives in SIP Accounts

### 11.3.1    Participant Direction

Each Participant shall have the authority and discretion specified in this Section 11.3 to direct the Trustee to sell, offer to sell, exchange or otherwise dispose of the shares of Company Stock, if any, allocated to such Participant's SIP Account and to direct the Trustee's voting of such shares with respect to matters submitted to the shareholders of the Company. In the exercise of this authority and discretion, each such Participant shall be a "named fiduciary" within the meaning of ERISA section 403(a)(1). The Trustee shall have no discretion or authority to sell, offer to sell, exchange or otherwise dispose of any shares of Company Stock pursuant to an Offer (as defined in Section 11.3.2), nor to vote Company Stock held in the Trust and allocated to a Participant's SIP Account on any matter presented for a vote by the stockholders of the Company, except in accordance with the provisions of this Section 11.3. The provisions of this Section 11.3 shall not apply to Self-Directed Assets, which shall be governed by Section 11.2.

### 11.3.2    Tender of Company Stock

(a) Subject to the provisions of paragraphs (c) and (d) of this Section 11.3.2, in the event any person, either alone or in conjunction with others, makes a tender offer, exchange offer or otherwise offers to purchase or solicits an offer to sell any shares of Company Stock held in the Trust, (hereinafter referred to as an "Offer"), the Trustee shall be obligated to sell, offer to sell, exchange or otherwise dispose of, in whole or in part, that number of shares of any Company Stock held in the Trust subject to such Offer that are allocated to the SIP Accounts of Participants, to the extent that it is timely so directed by the Participant pursuant to this Section 11.3.

(b) In the event, under the terms of an Offer or otherwise, any shares of Company Stock offered for sale, exchange or other disposition pursuant to such Offer

may be withdrawn from such Offer, the Trustee shall follow the instructions of each Participant respecting the withdrawal of such shares from such Offer in the same manner and in the same proportion that such instructions originally were received by the Trustee from each Participant to sell, offer to sell, exchange or otherwise dispose of such shares pursuant to such Offer.

(c) In the event that an Offer for fewer than all of the shares of Company Stock held in the Trust shall be received, the Trustee shall sell, offer to sell, exchange or otherwise dispose of shares of Company Stock in accordance with this Section 11.3.2. In the event that the aggregate number of shares sold, exchanged or disposed of pursuant to such Offer is less than the aggregate number of shares allocated to SIP Accounts that the Trustee has offered for sale, exchange or other disposition pursuant to this Section 11.3.2, the Trustee shall allocate the proceeds of such sale, exchange or disposition on a pro rata basis among the aggregate shares allocated to SIP Accounts that were offered for sale, exchange or other disposition pursuant to this Section 11.3.2.

(d) In the event that an Offer shall be received and instructions shall be solicited from Participants pursuant to this Section 11.3.2 regarding such Offer, and prior to the termination of such Offer, another Offer is received for the securities subject to the first Offer, the Trustee shall use its best efforts under the circumstances to solicit instructions from each Participant:

    (i) with respect to securities offered for sale, exchange or disposition pursuant to the first Offer, whether to withdraw such offer, if possible, and, if withdrawn, whether to sell, offer to sell, exchange or otherwise dispose of any such securities pursuant to the second Offer, and

    (ii) with respect to securities not offered for sale, exchange or other disposition pursuant to the first Offer, whether to sell, offer to sell, exchange or otherwise dispose of any such securities pursuant to the second Offer.

The Trustee shall follow all such instructions received in a timely manner from Participants in the same manner and in the same proportion as provided in paragraph (a) of this Section 11.3.2. With respect to any further Offer received for any Company Stock and subject to any earlier Offer (including successive Offers from one or more existing offerors), the Trustee shall continue to solicit directions from each Participant in the manner described in this Section 11.3.

(e) Any proceeds received as a result of the sale, exchange or other disposition of shares of Company Stock pursuant to an Offer shall be held in the Trust and invested by the Trustee in Company Stock. If Company Stock is not available for purchase, any proceeds otherwise required to be invested in Company Stock shall be invested in short-term, fixed-income investments selected by the Administrative Committee that have a maturity of not more than two years

WDC99 534287-1.047750.0011

from the time such investment is made, unless and until the Trustee is otherwise directed by the Administrative Committee.

11.3.3  Voting of Company Stock

(a) With respect to shares of Company Stock allocated to the SIP Account of any Participant, on any matter to be presented for a vote by the stockholders of the Company, the Trustee shall vote all such shares in accordance with directions received from each such Participant.

(b) With respect to shares of Company Stock allocated to SIP Accounts for which no instructions were timely received by the Trustee, such shares shall be voted in the same manner and in the same proportion as the shares allocated to SIP Accounts of Participants with respect to which the Trustee received valid voting instructions.

WDC99 534287-1.047750.0011

### 11.3.4 Dissemination of Information

In the event that, as contemplated by Section 11.3.2 or 11.3.3, an Offer for any Company Stock held in the Trust shall be received, or any matter shall be presented for a vote by the shareholders of the Company, and Participants shall be entitled to determine whether to accept, reject or withdraw an acceptance of such Offer, or to determine the manner in which shares of Company Stock shall be voted.

(a) The Company and the Trustee shall not interfere in any manner with the decision of any Participant with respect to such Offer or vote, as the case may be.

(b) The Trustee shall arrange for such investment decision or vote to be made on a confidential basis (including, to the extent the Trustee deems necessary or advisable to preserve such confidentiality, by arranging for the transfer of the recordkeeping functions under the Plan to itself or an independent recordkeeper) and shall not divulge such investment decision or vote to anyone, including the Company, the Administrative Committee, the Investment Committee, or any director, officer, employee or agent of the Company it being the intent of this Section 11.3.4 to ensure that the Company (and its directors, officers, employees and agents) cannot determine the direction given by any Participant.

(c) The Trustee shall use its best efforts to communicate or cause to be communicated to each Participant: (i) the provisions of this Plan and the Trust Agreement relating to the right of each Participant to direct the Trustee with respect to Company Stock subject to such Offer or vote and the obligation of the Trustee to follow such directions, and (ii) the consequences of any failure to provide the Trustee with timely instructions.

(d) The Trustee shall use its best efforts to distribute or cause to be distributed to each Participant all communications directed generally to the owners of Company Stock to whom such Offer is made or is available or who are entitled to vote.

(e) The Trustee shall use its best efforts to distribute or cause to be distributed to each Participant all communications that the Trustee may receive, if any, from the person making the Offer or soliciting proxies or any other interested party (including the Company) relating to the Offer or the matters being presented for a vote by the shareholders of the Company, as the case may be.

The Company and the Administrative Committee shall provide the Trustee with such information and assistance (including the transfer of recordkeeping functions) as the Trustee may reasonably request in connection with any communications or distributions to each Participant.

WDC99 534287-1.047750.0011

### 11.3.5   Invalidation of Participant Direction

In the event a court of competent jurisdiction shall issue an opinion or order to the Plan, the Company or the Trustee, which shall, in the opinion of counsel to the Company or the Trustee, in all circumstances or in any particular circumstances, invalidate any provision or provisions of Section 11.3 or the Trust Agreement regarding the determination of whether Company Stock held in the Trust shall be sold, offered for sale, exchanged or otherwise disposed of pursuant to an Offer, or the manner in which such Company Stock shall be voted, then, upon notice thereof to the Company or the Trustee as the case may be, such invalid provisions shall be given no further force or effect. In such circumstances, the Trustee shall have no discretion to sell, offer for sale, exchange or otherwise dispose of or vote Company Stock held in the Trust unless and to the extent required under such order or opinion, but shall follow any instructions received from a Participant, to the extent such instructions have not been invalidated.

To the extent that the Trustee is required to exercise any residual fiduciary responsibility with respect to any sale, offer to sell, exchange or other disposition of or any vote of Company Stock held in the Trust, the Trustee shall take into account in exercising its fiduciary judgment, unless it is clearly imprudent to do so, any directions timely received from a Participant.

### 11.3.6   Voting of Other Designated Investment Alternatives

On any matter presented for a vote by the shareholders (or unit holders) of a registered investment company, whose shares comprise a Designated Investment Alternative of the Plan, each Participant shall have the authority and discretion to direct the Trustee's voting of, and the Trustee shall vote in accordance with such directions, shares in such Designated Investment Alternative allocated to the SIP Account of such Participant. With respect to shares in Designated Investment Alternatives for which no instructions are timely received by the Trustee, such shares shall be voted in the same manner and in the same proportion as the shares in such Designated Investment Alternative allocated to SIP Accounts of Participants with respect to which the Trustee received valid voting instructions.

In the exercise of the authority and discretion pursuant to this Section 11.3.6, each Participant shall be a "named fiduciary" within the meaning of ERISA section 403(a)(1). The Trustee shall have no discretion to vote shares in any Designated Investment Alternative on any matter presented for a shareholder vote except in accordance with this Section 11.3.6.

WDC99 534287-1.047750.0011

11.4    Valuation of Accounts

For each Valuation Date, the Administrative Committee shall cause each Participant's Account to be adjusted upward to reflect any earnings and downward to reflect any losses attributable to such Account since the preceding Valuation Date. Each distribution, withdrawal or other payment under the Plan shall be made as of the Valuation Date immediately preceding or coincident with such distribution, withdrawal or payment.

11.5    Insurance Contracts

The Investment Committee, or the Participant with respect to Self-Directed Assets, may appoint one or more insurance companies to hold assets of the Plan, and may direct the purchase of insurance contracts or policies from one or more insurance companies with assets of the Trust.

11.6    The Investment Manager

11.6.1   The Investment Committee may, by an instrument in writing, appoint one or more persons as an Investment Manager. Each person so appointed shall be: (a) an investment adviser registered under the Investment Advisers Act of 1940, (b) a bank as defined in that Act, or (c) an insurance company qualified to manage, acquire or dispose of any asset of the Plan under the laws of more than one state.

11.6.2   Each Investment Manager shall acknowledge in writing that it is a fiduciary with respect to the Plan. The Investment Committee shall enter into an agreement with each Investment Manager that it appoints specifying the duties and compensation of such Investment Manager and the other terms and conditions under which such Investment Manager shall be retained. The Investment Committee shall not be liable for any act or omission of any Investment Manager that it appoints and shall not be liable for following the advice of any Investment Manager with respect to any duties delegated to any Investment Manager.

11.6.3   The Investment Committee shall have the power to determine the Trust assets to be invested pursuant to the direction of a designated Investment Manager and to set investment objectives and guidelines for the Investment Manager.

11.6.4   Subject to such restrictions and limitations as the Administrative Committee may impose on each Participant or Beneficiary of a deceased Participant may, by an instrument in writing, appoint one or more persons as an Investment Manager with respect to the Participant's Self-Directed Assets. Each person so appointed shall be an investment adviser registered under the Investment Advisers Act of 1940. None of the Administrative Committee, the Investment Committee, the Trustee or the Company shall be liable for any act or omission of any Investment Manager appointed by a Participant or Beneficiary with respect to Self-Directed Assets and

67

shall not be liable for following the directions of such Investment Manager with respect to any duties delegated to any such Investment Manager. The Participant or Beneficiary of a deceased Participant shall have the power to determine the Self-Directed Assets to be invested pursuant to the direction of a designated Investment Manager and to set investment objectives and guidelines for the Investment Manager.

11.7    Compensation

Each insurance company, Investment Manager and Trustee shall be paid such reasonable compensation, in addition to their expenses, as shall from time to time be agreed to by the Company or other person making such appointment; provided, however, that no such compensation shall be paid to any Investment Manager or Trustee who is an Employee.

11.8    Loan Program

11.8.1    Availability of Loans

Subject to any such procedures as may from time to time be adopted by the Administrative Committee (or its delegatee), loans may be made available to individuals who qualify as "parties in interest" within the meaning of Section 3(14) of ERISA ("Eligible Borrowers"). The Administrative Committee (or its delegatee) may apply different terms and conditions for loans to Eligible Borrowers who are not actively employed by an Employer, or for whom payroll deduction is not available, and the Administrative Committee (or its delegatee) may change to terms of any outstanding loan to the extent required by applicable law. All loans under the Plan shall be considered a fixed income investment of the Trust directed by the borrower. Accordingly, the conditions described in this Section 11.8 shall apply with respect to each such loan.

11.8.2    Amount of Loan

The maximum amount which may be borrowed is the lesser of (i) 50% of the Eligible Borrower's vested interest in his or her Account (other than amounts in the Eligible Borrower's Vocon Account and Deferred Profit Sharing Account), or (ii) $50,000, reduced by the highest outstanding balance of loans under the Plan (and under any tax-qualified plans maintained by Affiliates) to the Eligible Borrower during the twelve-month period ending on the day before the loan is made. The minimum loan shall be determined in accordance with procedures adopted by the Administrative Committee (or its delegatee).

WDC99 534287-1.047750.0011

### 11.8.3  Security

All loans shall be secured by the pledge of such portion of the Eligible Borrower's Account (other than amounts in the Eligible Borrower's Vocon Account and Deferred Profit Sharing Account) as is sufficient to secure repayment of the loan.  An Eligible Borrower shall not be permitted to withdraw any portion of his or her Account which is deemed invested in a loan.

### 11.8.4  Interest Rate and Term of Loan

The interest rate on a loan shall be a reasonable rate of interest as determined under procedures adopted by the Administrative Committee (or its delegatee), which procedures may provide for a repayment term of longer than 5 years for housing loans described under Code section 72(p)(2)(B).  Loans shall be non-renewable and non-extendable.  Notwithstanding the foregoing, with respect to Eligible Borrowers who are on authorized unpaid leaves of absence, the Administrative Committee (or its delegatee) may, in its discretion, elect to implement a procedure under which (in a uniform manner for similarly situated Eligible Borrowers) a waiver of loan repayments for up to 1 year (but no longer than the remaining period of the leave) would be available.  To the extent that such waiver is implemented with respect to a loan, the loan shall be re-amortized and a new payment schedule shall be established pursuant to which the loan shall be repaid in full by the original maturity date of the Eligible Borrower's note.  Loan repayments will also be suspended with respect to periods of qualifying military service, to the extent required under Code section 414(u).

### 11.8.5  Default and Remedies

In the event that an Eligible Borrower incurs a default under the terms of the note, the unpaid balance of the loan, with interest due thereon, shall become immediately due and payable.  In the event that a loan becomes immediately due and payable, the Eligible Borrower (or his or her Beneficiary in the event of his or her death) may satisfy the loan by paying the outstanding balance in full.  Otherwise such outstanding loan or loans (plus interest) shall be deducted from any benefit which is payable to the Eligible Borrower or his or her Beneficiary from the amount of his or her Account pledged as security for the loan.

### 11.8.6  Repayment

Loans shall be repaid in equal installments (not less frequently than quarterly) through payroll withholding or, with respect to an Eligible Borrower for whom payroll withholding is not possible, by certified check or in such other manner as may be directed by the Administrative Committee (or its delegatee).  Loans may be prepaid in full at any time without penalty.  Unless otherwise provided under procedures adopted by the Administrative Committee (or its delegatee), partial repayment is not permitted.

69

11.8.7  Applicable Investment Funds

Loan repayments to the Plan by the Eligible Borrower shall be invested on the basis of the Eligible Borrower's current investment election under this Article XI, or as may otherwise be provided in accordance with procedures adopted by the Administrative Committee (or its delegatee). If no investment election is currently in effect, loan repayments shall be invested as specified under procedures adopted by the Administrative Committee (or its delegatee).

11.8.8  Domestic Relations Orders

No loan shall be made to an Eligible Borrower while a determination is being made as to whether a domestic relations order applicable to the Eligible Borrower's Account qualifies under Code section 414(p). In addition, if a domestic relations order which qualifies under Code section 414(p) is applicable to an Eligible Borrower's Account, the Administrative Committee (or its delegatee) may reject any application for a loan from his or her Account until all rights of the payee entitled to benefits under the order have been fully satisfied. In the event that the Eligible Borrower has an outstanding loan under the Plan, the amount assigned to an alternative payee pursuant to Sections 13.4 and 13.5 shall not exceed the Eligible Borrower's vested Account Balance reduced to reflect any outstanding loan balance.

11.8.9  Transfer of Outstanding Loans

(a)  Subject to any such procedures as may from time to time be adopted by the Administrative Committee (or its delegatee), the Trustee shall accept, at the direction of the Administrative Committee (or its delegatee) and on behalf of an individual who became a Participant as a result of the acquisition of a business by the Company or an Affiliate, as a Rollover Contribution or as part of a transfer of assets and liabilities from a qualified retirement plan, any outstanding loan made to such individual under a qualified retirement plan maintained by the acquired business.

(b)  The interest rate and term of the loan shall be determined under the original loan note; otherwise, the loan shall be treated as a new loan and the conditions described in this Section 11.8 shall apply with respect to the loan.

(c)  The Administrative Committee (or its delegatee) shall have the right to require the Participant to execute a revised promissory note to the extent necessary to comply with ERISA or the Code. In the event the Participant does not execute such revised promissory note by the date prescribed by the Administrative Committee (or its delegatee), the loan shall become due and payable as of such date.

WDC99 534287-1.047750.0011

## ARTICLE XII

## PLAN ADOPTION, AMENDMENT, TERMINATION AND MERGER

12.1    Plan Amendment

The Company shall have the right at any time to amend the Plan through action of the Company's Board of Directors (or the Board's delegatee) by an instrument in writing, effective retroactively or otherwise. The the Board or its delegatee hereby delegates to the Administrative Committee the right at any time, by an instrument in writing, to amend the Plan to provide for the grant of additional "past service" allocations under the Plan to "international employees" (i.e. U.S. citizens and U.S. permanent residents employed outside of the U.S.). No amendment pursuant to this Section 12.1 shall have any of the effects specified in Section 12.2.

12.2    Limitations on Plan Amendment

No amendment (except for amendments to Section 13.5) may:

(a) be made at any time prior to the satisfaction to all liabilities under the Plan with respect to Participants and their beneficiaries which would permit any part of the corpus or income of the Trust to be used for or diverted to purposes other than for the exclusive benefit of such persons under the Plan and the payment of the expenses of the Plan;

(b) decrease the Account Balance of any Participant or his or her Beneficiary under the Plan;

(c) reduce the vested percentage of any Participant;

(d) eliminate an optional form of benefit distribution (unless such elimination conforms with any applicable requirements under the Code); or

(e) change the vesting schedule, either directly or indirectly, unless each Participant having not less than three years of Vesting Service is permitted to elect, within a reasonable period specified by the Administrative Committee after the adoption of such amendment, to have his or her vested percentage computed without regard to such amendment. The period during which the election may be made shall commence with the date the amendment is adopted and shall end as of the later of:

(i) sixty days after the amendment is adopted;

(ii) sixty days after the amendment becomes effective; or

(iii) sixty days after the Participant is issued written notice by the Administrative Committee.

12.3  Termination of Plan or Discontinuance of Contributions

12.3.1  The Plan may be terminated at any time by the Board of Directors, but only upon the condition that such action is taken as shall render it impossible for any part of the corpus or income of the Trust be used for or diverted to purposes other than for the exclusive benefit of the Participants and their beneficiaries under the Plan and for the payment of the expenses of the Plan.

12.3.2  If the Plan is terminated under Section 12.3.1 above or in the event the Plan is terminated by operation of law and the Board of Directors determines that the Trust shall be terminated, the Trust shall be revalued as if the termination date were a Valuation Date, and the current value of all Accounts shall be paid in accordance with Article VI to the extent permissible under applicable law and regulations.

12.3.3  If the Plan is terminated by the Board of Directors but the Board of Directors determines that the Trust shall be continued pursuant to its terms, no further contributions shall be made by either Participants or any Employer, but the Trust shall be administered as though the Plan were otherwise in full force and effect. If the Trust is subsequently terminated, the provisions of Section 12.3.2 above shall then apply.

12.3.4  In addition to the right to amend or terminate the Plan, the Board of Directors or the board of directors of any Employer with respect to that Employer may at any time permanently and completely discontinue contributions under the Plan. If the Company or any Employer completely discontinues contributions under the Plan, either by resolution of the Board of Directors or the board of directors of any Employer, respectively, or for any other reason, the Company or the Employer, as applicable, and the Trustee shall proceed under Sections 12.3.2 or 12.3.3 depending upon whether in connection with such complete discontinuance of contributions the Employer has terminated the Plan and Trust or has terminated the Plan and continued the Trust in effect. If no action has been taken by the Board of Directors or the board of directors of the Employer in connection with a complete discontinuance of contributions to the Plan, it shall be deemed that Section 12.3.3 is applicable.

12.3.5  As of the date of a termination of the Plan, or the complete discontinuance of contributions under the Plan:

(i) if not then fully vested, each affected Participant who is then an Employee shall become 100% vested in his or her Employer Contributions Subaccount;

(ii) no further allocations shall be made after such date; and

(iii)  no Eligible Employee shall become a Participant after such date.

12.3.6   As of the date of a "partial termination" of the Plan:

(i)  if not then fully vested, each affected Participant who is then an Employee shall become 100% vested in his or her Employer Contributions Subaccount; and

(ii)  no further contributions or allocations of forfeitures shall be made after such date with respect to each affected Participant.

12.3.7   All other provisions of the Plan shall remain in effect unless otherwise amended.

12.3.8   Notwithstanding any other provision of this Plan, an individual who terminates Employment and takes a distribution of his or her Employer Contributions Subaccount or who terminates Employment with no vested percentage in the Account Balance of his or her Employer Contributions Subaccount shall have no right to any additional benefit in the event of a complete or partial termination of the Plan.

12.4   <u>Merger, Consolidation or Transfer</u>

The merger or consolidation of the Company with any other person, or the transfer of the assets of the Company to any other person, shall not constitute a termination of the Plan, if provision is made for the continuation of the Plan.

The Plan may not merge or consolidate with, or transfer any assets or liabilities to, any other plan, unless each Participant would (if the Plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he or she would have been entitled to receive immediately before the merger, consolidation or transfer (if the Plan had then terminated).

In the event:  (i) the Administrative Committee designates that an Employer shall after a specified date become an Affiliate that is not participating in the Plan, (ii) an Employer ceases to be an Affiliate, or (iii) all or a portion of an Employer's business is sold or otherwise disposed of, the Administrative Committee may in accordance with such rules and procedures as it may prescribe direct that the balances held in the Accounts of Participants affected by such event be transferred in a trust-to-trust basis to the trust under another plan that satisfies the requirements of Code section 401(a) in which such Participants continue to participate.

WDC99 534287-1.047750.0011

12.5    <u>Bankruptcy</u>

In the event that the Company shall at any time be judicially declared bankrupt or insolvent without any provisions being made for the continuation of this Plan, the Plan shall be completely terminated in accordance with Section 12.3.

74

ARTICLE XIII

<u>MISCELLANEOUS PROVISIONS</u>

13.1    <u>Exclusive Benefit of Participants</u>

The Trust shall be held for the benefit of all persons who shall be entitled to receive payments under the Plan and for payment of Plan expenses.  Subject to Sections 3.8 and 13.5, it shall be prohibited at any time for any part of the Trust (other than such part as is required to pay expenses) to be used for, or diverted to, purposes other than for the exclusive benefit of Participants or their Beneficiaries.

13.2    <u>Plan Not a Contract of Employment</u>

The Plan is not a contract of Employment, and the terms of Employment of any Employee shall not be affected in any way by the Plan or related instruments except as specifically provided therein.

13.3    <u>Source of Benefits</u>

Benefits under the Plan shall be paid or provided for solely from the Trust, and neither the Employer, the Administrative Committee, Trustee, Investment Manager or any insurance company shall assume any liability therefor.

13.4    <u>Benefits Not Assignable</u>

Benefits provided under the Plan may not be assigned or alienated, either voluntarily or involuntarily.  The preceding sentence shall also apply to the creation, assignment or recognition of a right to any benefit payable with respect to a Participant pursuant to a "domestic relations order" (as defined in Code section 414(p)) unless such order is determined by the Administrative Committee to be a "qualified domestic relations order" (as defined in Code section 414(p)).

13.5    <u>Domestic Relations Orders</u>

13.5.1    Any other provision of the Plan to the contrary notwithstanding, the Administrative Committee shall have all powers necessary with respect to the Plan for the proper operation of Code section 414(p) with respect to "qualified domestic relations orders" (or "domestic relations orders" treated as such) referred to in Section 13.4, including, but not limited to, the power to establish all necessary or appropriate procedures, to authorize the establishment of new accounts with respect to such assets and subject to such investment control by the Administrative Committee as the Administrative Committee may deem appropriate, and the Administrative Committee may decide upon and make direct appropriate distributions therefrom.

75

13.5.2   To the extent provided by the applicable qualified domestic relations order, benefits to which the alternate payee is entitled shall be paid prior to the date such benefits would otherwise become payable in accordance with the applicable provisions of the Plan.  Subject to such limitations as may apply under procedures established to administer the Plan, such early distribution of the Account Balances of SIP Accounts shall be payable in the normal form of a single sum distribution in cash, and/or, if elected by the alternate payee:  in Company Stock (to the extent such Company Stock is held in the Participant's Account) and/or in kind.  Such early distribution of the Account Balances of Vocon Accounts and Deferred Profit Sharing Accounts shall be payable in the normal form of a single sum distribution in kind.

13.5.3   An alternate payee who is the Participant's former spouse under a "qualified domestic relations order" as defined in Code section 414(p) who is eligible to receive a distribution from the Plan pursuant to the provisions of this Section 13.5 which constitutes an "eligible rollover distribution," as defined in Code section 402(c)(4) (Code section 402(f)(2)(A), effective January 1, 2002), may direct the Administrative Committee to transfer all or any part of such distribution to an "eligible retirement plan," as defined in Code section 402(c)(8)(B) (including tax-qualified retirement plans and individual retirement accounts) (or, effective for distributions after December 31, 2001, to an "eligible retirement plan" as defined under Section 5.5 of the Plan).  The Administrative Committee shall cause the portion of the distribution which the alternate payee has elected to so transfer to be transferred directly to the designated "eligible retirement plan".

13.6   Benefits Payable to Minors, Incompetents and Others

In the event any benefit is payable to a minor or an incompetent or to a person otherwise under a legal disability, or who, in the sole discretion of the Administrative Committee, is by reason of advanced age, illness or other physical or mental incapacity incapable of handling and disposing of his or her property, or otherwise is in such position or condition that the Administrative Committee believes that he or she could not utilize the benefit for his or her support or welfare, the Administrative Committee shall have discretion to apply the whole or any part of such benefit directly to the care, comfort, maintenance, support, education or use of such person, or pay the whole or any part of such benefit to the parent of such person, the guardian, committee, conservator or other legal representative, wherever appointed, of such person, the person with whom such person is residing, or to any other person having the care and control of such person. The receipt by any such person to whom any such benefit on behalf of any Participant or Beneficiary is paid shall be a sufficient discharge therefor.

WDC99 534287-1.047750.0011

13.7    Missing Payees

If a payment sent by the Trustee to the last known address of a Participant, Beneficiary or alternate payee (as defined in Section 13.5.3), is returned by the United States Postal Service because the addressee cannot be located at such address and if such addressee does not provide a current address to the Trustee or the Employer within 180 days following the date the check was issued (or if payment is not returned but remains uncashed for at least 180 days following the date the check was issued), then the amount payable under the Plan (or, if applicable, qualified domestic relations order) shall be treated as a forfeiture under Section 4.3 as of the date which is 180 days following the date the check was issued; provided, however, that if any such addressee subsequently submits a claim, such amount shall be paid to him or her.

13.8    Action by Employer

Any action required to be taken by an Employer pursuant to the terms of the Plan shall be taken by the board of directors of the Employer or a committee thereof or any person duly empowered to exercise the powers of the Employer with respect to the Plan.

13.9    Provision of Information

For purposes of the Plan, each Employee shall execute such forms and provide such information in such manner as may be reasonably required by the Administrative Committee.

13.10    Controlling Law

The Plan is intended to qualify under Code section 401(a) and to comply with ERISA, and its terms shall be interpreted accordingly. Otherwise, to the extent not preempted by ERISA, the laws of the State of New York shall control the interpretation and performance of the terms of the Plan.

13.11    Singular and Plural and Article and Section References

As used in the Plan, the singular includes the plural, and the plural includes the singular, unless qualified by the context. Titles of Articles and Sections of the Plan are for convenience of reference only and are to be disregarded in applying the provisions of the Plan. Any reference in this Plan to an Article or Section is to the Article or Section so specified of the Plan.

WDC99 534287-1.047750.0011

APPENDIX I

Designation of Eligible International Employees

Pursuant to the definition of "Eligible Employee" in Article I, the Administrative Committee has designated as eligible to participate in the Plan the following groups of Employees:

| Foreign Jurisdiction (Status) | Effective Date |
|---|---|
| Argentina (Temporary Assignee) | April 1, 1997 |
| Australia (Offshore Payroll) | January 1, 1998 |
| Bahrain (Temporary Assignee) | July 1, 1994 |
| Brazil (Temporary Assignee) | April 1, 1997 |
| Canada Offshore Payroll) | April 1, 1999 |
| Chile (Offshore Payroll) | March 1, 1996 |
| Dubai (Temporary Assignee) | July 1, 1994 |
| Hong Kong (Offshore Payroll) | October 1, 1995 |
| India (Offshore Payroll) | January 1, 1996 |
| Indonesia (Offshore Payroll) | January 1, 1996 |
| Ireland (Temporary Assignee) | April 1, 1997 |
| Italy (Offshore Payroll) | January 1, 1999 |
| Japan (Offshore Payroll) | July 1, 1994 |
| Korea (Offshore Payroll) | July 1, 1994 |
| Mexico (Offshore Payroll) | January 1, 1996 |
| Monaco (Temporary Assignee) | January 1, 1998 |
| Russia (Temporary Assignee) | January 1, 2006 |
| Singapore (Offshore Payroll) | July 1, 1995 |
| Switzerland (Temporary Assignee) | April 1, 1998 |
| Thailand (Offshore Payroll) | January 1, 1999 |
| The Netherlands (Temporary Assignee) | February 1, 1998 |
| United Kingdom (BTEX Payroll) | October 1, 1992 |

A-1

APPENDIX II

<u>Vesting/Withdrawal of Transferred Amounts</u>

[INTENTIONALLY LEFT BLANK]

WDC99 534287-1.047750.0011

# MERRILL LYNCH & CO., INC.

## 401(K) SAVINGS & INVESTMENT PLAN

### Supplement A

### Additional Rules for Puerto Rico Participants

A-1  <u>Purpose and Effect</u>  -  This Supplement A is an appendix to the Plan designed to comply with the requirements of Sections 1165(a) and (e) of the Puerto Rico Internal Revenue Code of 1994 (the "PRIRC").  The provisions of this Supplement A shall only apply to each Puerto Rico Employee, as that term is defined below.  All terms and provisions of the Plan shall apply with respect to this Supplement A, except that where the terms and provisions of the Plan and this Supplement A conflict, the terms and provisions of this Supplement A shall govern with respect to Puerto Rico Employees.

A-2  <u>Definitions</u>  -  Each of the following terms shall have the meaning set forth in this paragraph A-2 for purposes of this Supplement A and any amendments thereto:

<u>Puerto Rico Eligible Participant</u>:  Any Eligible Participant who is a Puerto Rico Resident.

<u>Puerto Rico Employee</u>:  Any Employee who is a Puerto Rico Resident.

<u>Puerto Rico Excess Contributions</u>:  The Elective 401(k) Deferrals made on behalf of Puerto Rico Highly Compensated Employees in excess of the limitations of Section A-5 of this Supplement A.

<u>Puerto Rico Highly Compensated Employee</u>:  Any Puerto Rico Eligible Participant who during the Plan Year is more highly compensated than two-thirds of all  Eligible Participants employed by same Employer (determined in accordance with Section 165(a)(3) of PRIRC and Article 1165-3(a)(1) of the Puerto Rico Income Tax Regulations) during the Plan Year.

<u>Puerto Rico Non-Highly Compensated Employee</u>:  Any Puerto Rico Eligible Participant who, during the Plan Year, is other than a Puerto Rico Highly Compensated Employee.

<u>Puerto Rico Participant</u>: Any Participant who is a Puerto Rico Resident.

3

WDC99 534287-1.047750.0011

Puerto Rico Resident:  Any individual who is a resident of the Commonwealth of Puerto Rico within the meaning of Treasury Regulation §1.501(a)-1(e).

A-3   Type of Plan  -  It is the intent of the Company that the Plan be a profit sharing plan as defined in Article 1165-1 of the Puerto Rico Income Tax Regulations and that it include a qualified cash or deferred arrangement pursuant to PRIRC § 1165(e).  Employer Contributions to the Plan and elective deferrals made under the Plan on behalf of Puerto Rico Participants shall be made out of the Employer's current or accumulated profits.

A-4   Elective 401(k) Deferrals  -  A Puerto Rico Participant's Elective 401(k) Deferrals for a calendar year may not exceed in any event the lesser of 10% of the Puerto Rico Participant's Eligible Compensation that is subject to tax in Puerto Rico (except to the extent permitted with respect to any catch-up contributions as defined in Section 3.2.3 of the Plan), or $8,000 (or such higher amount as may be permitted under Puerto Rican laws at such times as Global Benefits finds to be administratively appropriate).

A-5   Average Actual Deferral Percentage Limits  -  With respect to each Employer, in addition to the limitation contained in Section 3.2.3 of the Plan, the Average Actual Deferral Percentage for Puerto Rico Highly Compensated Employees for each Plan Year must satisfy one of the tests described in Section 3.2.3(a) of the Plan after substituting the terms "Puerto Rico Highly Compensated Employees" and "Puerto Rico Non-Highly Compensated Employees" for the terms "Highly Compensated Employees" and "Non-Highly Compensated Employees", respectively, and by taking into consideration only that portion of the Puerto Rico Participant's "wages", as defined in Code § 3401 without exclusions for location, that is subject to tax in Puerto Rico, in determining his or her ADP Compensation.

For purposes of this paragraph A-5, the Actual Deferral Percentage of a Puerto Rico Highly Compensated Employee who is eligible to have elective deferrals allocated to his or her account under two or more plans or arrangements described in PRIRC § 1165(e) that are maintained by his or her Employer shall be determined as if all such elective deferrals were made under a single arrangement.

If two or more plans are aggregated for purposes of the Puerto Rico minimum coverage requirements under PRIRC § 1165(a)(3), such plans shall be aggregated for purposes of the Average Actual Deferral Percentage test.

WDC99 534287-1.047750.0011

A-6    <u>Correction of Puerto Rico Excess Contributions</u> -In the event that the limts described in paragraph A-5 are exceeded in any Plan Year, the Employer shall make Qualified Non-elective Contributions to Puerto Rico Non-Highly Compensated Employees to the extent necessary to satisfy the limits under paragraph A-5, in accordance with Section 3.2(d) of the Plan.

A-7    <u>Rollover Provisions</u>  -  Contributions made under Section 3.4 of the Plan by a Puerto Rico Eligible Participant shall be limited to amounts distributed to the Puerto Rico Eligible Participant from a plan which satisfies the requirements for qualification in both the United States under Code § 401(k) and in Puerto Rico under PRIRC § 1165(a).  No such contribution shall be accepted unless it constitutes 100% of the amount so distributed.

A-8    <u>Payment of Contributions</u>  -  Contributions to the Plan by an Employer doing business in Puerto Rico shall, with respect to Puerto Rico Participants, be made not later than the due date for filing its Puerto Rico Income Tax Return including any extension thereof with respect to the calendar year involved.

A-9    <u>Limitation of After-Tax Contributions -</u> A Puerto Rico Participant's After-Tax Contributions for a Plan Year may not exceed 10% of the Participant's Eligible Compensation for such Year.  Notwithstanding the foregoing, a Participant shall be eligible to make catch-up contributions under paragraph A-11 for a Plan Year in excess of 10% of Eligible Compensation; provided, however, the total of the Participant's After-Tax Contributions and catch-up contributions for that Year and all prior Years shall not exceed 10% of the Participant's total Eligible Compensation for the Plan Years in which he or she has been a Participant.

A-10  <u>Catch-Up Contributions</u> - Eligible Puerto Rico Participants may make catch-up contributions in accordance with Section 3.2.3 of the Plan.  Such catch-up contributions shall be included in a Puerto Rico Participant's income for purposes of Puerto Rico income taxes in the year in which they are made, but the earnings thereon shall be taxed in the year in which they are distributed, as provided in the PRIRC and the Puerto Rico Income Tax Regulations (or subsequent legislation)