# MERRILL LYNCH & CO., INC.
# RETIREMENT ACCUMULATION PLAN

In accordance with the power reserved to the Company in Section 12.1 of the Merrill Lynch & Co., Inc. Retirement Accumulation Plan (the "Plan"), the Plan is hereby amended, effective January 1, 2007 (except as otherwise provided), as follows:

**1.       The following paragraph is added to the end of the Foreword:**

The Plan was amended and restated, generally effective as of January 1, 2007 (or as otherwise provided in the Plan, as required by law, or as otherwise set forth in a Company action), to comply with certain provisions of the Pension Protection Act of 2006 regarding vesting of Company Retirement Contributions and rollover distributions for non-Spouse Beneficiaries.

**2.       The first paragraph of Section 4.1 is amended to read as follows:**

A Participant who has a Termination of Employment with less than three years of Service (five years of Service, effective for Employees who fail to complete one or more hours of service on or after January 1, 2007) shall not be vested in his or her Company Retirement Contribution Account to any extent.

**3.       Section 7.5 is amended to read as follows:**

A Beneficiary who is the Participant's Spouse (or an alternate payee under a "qualified domestic relations order" as defined in Code section 414(p) who is treated as the Participant's Spouse) who is eligible to receive a distribution from the Plan pursuant to the provisions of this Article VII which constitutes an "eligible rollover distribution," as defined in Code section 402(c)(4) (Code section 402(f)(2)(A), effective January 1, 2002), may direct the Administrative Committee to transfer all or any part of such distribution to an individual retirement account or an individual retirement annuity (or, effective for distributions after December 31, 2001, to an "eligible retirement plan" as defined in Section 6.5 of the Plan). The Administrative Committee shall cause the portion of the distribution which such Spouse (or alternate payee under a "qualified domestic relations order" as defined in Code section 414(p) who is treated as the Participant's Spouse) has elected to so transfer to be transferred directly to the designated individual retirement account or individual retirement annuity. The Beneficiary (or alternate payee) may elect to receive the portion of the eligible rollover distribution to be transferred to an eligible retirement plan in any of the forms described in Sections 7.2(a)-(c), which may be different from the form of the portion of the Plan Benefit that is to be paid directly to the Beneficiary (or alternate payee), if any.

Solely to the extent permitted under Code section 402(c)(11) and the regulations and other guidance issued thereunder, with respect to any portion of a distribution from the Plan on behalf of a deceased Participant, pursuant to the provisions of this Article VII, if a direct trustee-to-trustee transfer is made to an individual retirement plan described in Code section 402(c)(8)(B)(i) or (ii), which individual retirement plan is established for the purposes of receiving the distribution on behalf of an individual who is a designated Beneficiary (as defined

by Code section 401(a)(9)(E)) of the Participant and who is not the surviving Spouse of the Participant, the transfer shall be treated as an eligible rollover distribution for purposes of this Plan and Code section 402(c). The non-Spouse Beneficiary may elect to receive the portion of the eligible rollover distribution in either of the forms described in Sections 7.2(a)-(c), which may be different from the form for the portion of the Plan Benefit that is to be paid directly to the non-Spouse Beneficiary, if any. For purposes of this paragraph, to the extent provided in regulations or other guidance prescribed by the Internal Revenue Service under Code section 402(c)(11), a trust maintained for the benefit of one or more designated beneficiaries shall be treated in the same manner as a trust designated beneficiary.

FURTHER RESOLVED, that the proper officers of the Company are hereby authorized and directed in the name of and on behalf of the Company, to execute and deliver such amendment, and to execute any and all such additional documents and amendments that may be otherwise deemed necessary or appropriate to implement the foregoing resolutions and amendment of the Plan.

_____          _____
Michael Berkowitz, SVP Leadership & Talent Management          May 30, 2007
                                                                                          Date

WDC99 1319090-1.047750.0011

Merrill Lynch & Co., Inc.
Retirement Accumulation Plan

As restated, including amendments
adopted through December 9, 2005

RAP

**MERRILL LYNCH & CO., INC.**
**RETIREMENT ACCUMULATION PLAN**
(Restated to Include Amendments Through December 9, 2005)

In accordance with the power reserved to the Company in Section 10.1 of the Merrill Lynch & Co., Inc. Retirement Accumulation Plan (the "Plan"), the Plan is hereby amended as follows:

1.   **The third paragraph of Section 5.1 is amended to read as follows (additions bolded, deletions struck-through):**

   **Subject to Section 11.1.5, and** ~~N~~**n**otwithstanding the foregoing, in no event shall Participants or Beneficiaries be permitted to direct offsetting transactions with respect to a Designated Investment Alternative (other than any Designated Investment Alternative designed to invest in Company Stock or in a money market mutual fund or other Designated Investment Alternative designed to invest in short-term money market instruments) more than once every fifteen (15) business days.

2.   **A new paragraph is added to Section 5.1 to read as follows:**

   The Senior Vice President – Leadership and Talent Management shall have the authority to amend the Plan to implement trading restrictions on Participant or Beneficiary transactions involving Designated Investment Alternatives in a manner consistent with restrictions otherwise imposed by a Designated Investment Alternative provider. Any amendment implemented under this subsection shall remain in effect until otherwise amended by the Senior Vice President – Leadership and Talent Management. Any such amendments may be reflected in communications provided to Participants and Beneficiaries and shall be deemed to constitute part of the Plan and are hereby incorporated by reference.

3.   **The foregoing amendments are effective as of October 1, 2006.**

   FURTHER RESOLVED, that the proper officers of the Company are hereby authorized and directed in the name of and on behalf of the Company, to execute and deliver such amendment, and to execute any and all such additional documents and amendments that may be otherwise deemed necessary or appropriate to implement the foregoing resolutions and amendment of the Plan.


_____          Sept 18 2006
Michael Berkowitz, SVP Leadership &Talent Management          Date

WDC99 1284604-1.047750.0011

## FOREWORD

Effective as of January 1, 1989, Merrill Lynch & Co., Inc. (the "Company") established the Merrill Lynch & Co., Inc. Retirement Accumulation Plan (the "Plan"), a profit-sharing plan, intended to be qualified pursuant to Section 401(a) and other pertinent Sections of the Internal Revenue Code of 1986, as amended (the "Code"). The Company adopted the Plan in order to provide eligible employees of the Company and its participating affiliates with a supplemental source of retirement income, as well as to provide assistance in other circumstances, such as death.

The Plan was amended on October 25, 1991 to comply with Treasury regulations which were promulgated under various Code provisions to provide greater flexibility in the payment of Plan benefits and to make certain other amendments. The Plan was amended on March 10, 1993 to eliminate the requirement under the Plan to "carry over" to subsequent quarters the amount of any allocations under the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan in excess of "Basic Credits" and "Supplemental Credits" (as defined in the Plan) for the quarter under the Plan and to provide for the exclusion from participation of certain "international" and "foreign" employees as provided for by the Administrative Committee. The Plan was amended on August 9, 1994 to provide for the acceptance of direct rollovers of withdrawals from the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan (the "ESOP") and to provide for the suspension of credits under the Plan in the case of certain withdrawals from the ESOP. The Plan was amended and restated effective January 1, 1994, to include provisions required under the Unemployment Compensation Amendments of 1992 (which were effective January 1, 1993) and the Omnibus Budget Reconciliation Act of 1993 and certain other changes.

The Plan was amended, effective December 12, 1994, to include provisions required under the Uniformed Services Employment and Reemployment Rights Act of 1994. The Plan was amended, effective January 1, 1997, to include provisions required under the Small Business Job Protection Act of 1996 and certain other changes (some of which provided for effective dates other than January 1, 1997). The Plan was amended, effective July 1, 1999, to reflect the cash-out of small benefits provisions available under the Taxpayer Relief Act of 1997 ("TRA 97") (no changes to the Plan were required to comply with TRA 97). The Plan was amended, effective January 1, 2000, to provide for correction of administrative errors. No amendments were necessary to the language in the Plan document to comply with the requirements of the General Agreement on Tariffs and Trades ("GATT") or the IRS Restructuring Act of 1998. The Plan was amended, effective August 31, 2001, to provide for an Investment Committee to perform certain functions formerly performed by the Administrative Committee.

The Plan was amended and restated, generally effective as of January 1, 2001 (or as otherwise provided in the Plan, as required by law, or as otherwise set forth in a Company action) to consolidate the foregoing amendments, to provide for the indefinite extension of Supplemental Credits and Additional Supplemental Credits, to provide for certain transfers from the Herzog Heine Geduld Employee Stock Ownership Plan (and to provide for the suspension of credits

under the Plan in the case of such transfers), to reflect certain provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001, and to reflect certain other changes.

The Plan was amended and restated, generally effective as of January 1, 2005 (or as otherwise provided in the Plan, as required by law, or as otherwise set forth in a Company action), to incorporate, among other things, certain proposed amendments in accordance with the terms of the favorable determination letter dated July 22, 2002, including a clarification of the provision defining eligible compensation; to change the timing of contributions of the plan from quarterly to yearly; to eliminate of Supplemental Credits or Additional Supplemental Credits (as defined hereunder); to add a stock bonus and employee stock ownership plan feature; to provide for the immediate vesting of dividends paid on Company Stock; to permit all participants to defer distribution of their plan benefit until age 70½; to impose a fifteen (15) business day prohibition on offsetting trades in all investment funds not designed for investment in Company stock or short-term money market instruments; a new definition of spouse; and to reflect certain other changes.

## CERTIFICATE OF ADOPTION

WHEREAS, it is now considered desirable for Merrill Lynch & Co., Inc. (the "Company") to adopt the Merrill Lynch & Co., Inc. Retirement Accumulation Plan, as amended and restated, effective as of January 1, 2005 (or such other dates incorporated in the Plan, as required by law, or as otherwise set forth in a Company action); and

WHEREAS, the Company's Senior Vice President of Human Resources (or his or her functional successor) has the authority to adopt the plan;

NOW, THEREFORE, the Company, acting through its duly authorized representative, hereby adopts the Merrill Lynch & Co., Inc. Retirement Accumulation Plan, as amended and restated, effective as of January 1, 2005 (or such other dates incorporated in the Plan, as required by law, or as otherwise set forth in a Company action) in the form attached hereto.

Dated this _9th_ day of _December_ 2005

MERRILL LYNCH & CO., INC.

By: _____

Chief Administrative Officer

Table of Contents

                                                                                    Page

FOREWORD .................................................................................................................i

CERTIFICATE OF ADOPTION ...............................................................................iii

TABLE OF CONTENTS ..............................................................................................iv

ARTICLE I    Definitions ..............................................................................................1
    1.1      "Account" .....................................................................................1
    1.2      "Account Balance" .......................................................................1
    1.3      "Additional Supplemental Credit" ..............................................1
    1.4      "Administrative Committee" ........................................................1
    1.5      "Affiliate" .....................................................................................1
    1.6      "Basic Credit" ...............................................................................1
    1.7      "Beneficiary" ................................................................................2
    1.8      "Benefit Commencement Date" ....................................................2
    1.9      "Board of Directors" or "Board" .................................................2
    1.10     "Code" ...........................................................................................2
    1.11     "Company" ....................................................................................2
    1.12     "Company Retirement Contribution" ...........................................2
    1.13     "Company Retirement Contribution Account" .............................2
    1.14     "Company Stock" ..........................................................................2
    1.15     "Defined Benefit Plan" .................................................................2
    1.16     "Defined Contribution Plan" ........................................................2
    1.17     "Designated Investment Alternative" ...........................................2
    1.18     "Disability" ...................................................................................2
    1.19     "Early Retirement" .......................................................................2
    1.20     "Eligible Compensation" ..............................................................3
    1.21     "Eligible Employee" .....................................................................3
    1.22     "Employee" ...................................................................................4
    1.23     "Employer" ....................................................................................4
    1.24     "Employment" ...............................................................................4
    1.25     "Entry Date" ..................................................................................5
    1.26     "ERISA" ........................................................................................5
    1.27     "Highly Compensated Employee" .................................................5
    1.28     "Hours of Service" ........................................................................5
    1.29     "Investment Committee: ...............................................................6
    1.30     "Investment Manager" ..................................................................6
    1.31     "Medical Program" .......................................................................6
    1.32     "Normal Retirement Age" .............................................................6
    1.33     "Participant" ..................................................................................6
    1.34     "Plan" ............................................................................................6
    1.35     "Plan Benefit" ...............................................................................7

| 1.36 | "Plan Year" | 7 |
|------|-------------|---|
| 1.37 | "Qualified Joint and Survivor Annuity" | 7 |
| 1.38 | "Qualified Plan" | 7 |
| 1.39 | "Qualified Preretirement Survivor Annuity" | 7 |
| 1.40 | "Retirement" or "Retires" | 7 |
| 1.41 | "Rollover Contribution" | 7 |
| 1.42 | "Rollover Contribution Account" | 8 |
| 1.43 | "Service" | 8 |
| 1.44 | "Spouse" | 9 |
| 1.45 | "Supplemental Credit" | 9 |
| 1.46 | "Termination of Employment" | 9 |
| 1.47 | "Testing Compensation" | 9 |
| 1.48 | "Transferred Contribution" | 10 |
| 1.49 | "Transferred Contribution Account" | 10 |
| 1.50 | "Trust" | 10 |
| 1.51 | "Trust Agreement" | 10 |
| 1.52 | "Trustee" | 10 |
| 1.53 | "Valuation Date" | 10 |

| ARTICLE II | Eligibility and Participation | 11 |
|------------|------------------------------|----|
| 2.1 | Participants on and after January 1, 1993 | 11 |
| 2.2 | Election upon Becoming a Participant | 11 |
| 2.3 | Beneficiary Designation | 11 |
| 2.4 | Transfers to or from Non-Covered Status | 13 |
| 2.5 | Rehired Employees | 13 |
| 2.6 | Disability and Leaves of Absence | 13 |
| 2.7 | Military Leave | 14 |

| ARTICLE III | Contributions | 15 |
|-------------|---------------|----|
| 3.1 | Company Retirement Contributions | 15 |
| 3.2 | Amount of Basic Credits | 15 |
| 3.3 | Amount of Supplemental Credits and Additional Supplemental Credits | 16 |
| 3.4 | Eligibility for Supplemental Credits and Additional Supplemental Credits Following Breaks in Employment | 17 |
| 3.5 | Coordination of Company Retirement Contributions Between the Plan and the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan | 17 |
| 3.6 | Transfers from Employee Stock Ownership Plan; Suspension of Plan Allocations | 18 |
| 3.7 | Rollover Contributions/Transferred Amounts | 19 |
| 3.8 | Limitation on Allocations | 19 |
| 3.9 | Combined Plan Limitation | 21 |
| 3.10 | Return of Contributions under Special Circumstances | 21 |
| 3.11 | Correction of Administrative Errors | 21 |

| ARTICLE IV | Vesting of Accounts | 23 |

| | | | |
|---|---|---|---|
| 4.1 | Vesting | ............................................................ | 23 |
| 4.2 | Treatment of Forfeitures | ............................................ | 23 |
| 4.3 | Reinstatement of Forfeitures | ...................................... | 24 |

| ARTICLE V | Management, Control and Investment of Plan Assets | ............ | 25 |
|---|---|---|---|
| 5.1 | Investment of Accounts | ............................................. | 25 |
| 5.2 | Tender and Voting of Company Stock -- In General | ............ | 26 |
| 5.3 | Tender of Company Stock | .......................................... | 26 |
| 5.4 | Voting of Company Stock | .......................................... | 28 |
| 5.5 | Dissemination of Information | ....................................... | 28 |
| 5.6 | Invalidation of Participant Direction | ............................ | 29 |
| 5.7 | Voting of Other Designated Investment Alternatives | ........... | 29 |
| 5.8 | Valuation of Accounts | .............................................. | 30 |
| 5.9 | Investment Managers | ............................................... | 30 |
| 5.10 | Compensation | ...................................................... | 31 |

| ARTICLE VI | Distribution Upon Retirement or Termination of Employment and Withdrawals | | 32 |
|---|---|---|---|
| 6.1 | Amount of Distribution | ............................................. | 32 |
| 6.2 | Forms of Distribution | ............................................... | 32 |
| 6.3 | Timing of Distribution | .............................................. | 33 |
| 6.4 | Investments Pending Distribution | ................................. | 34 |
| 6.5 | Direct Rollover Distributions | ...................................... | 34 |
| 6.6 | Minimum Required Distributions | ................................. | 35 |
| 6.7 | Special Rule on Commencement of Benefits | .................... | 36 |
| 6.8 | Annuity Requirements | .............................................. | 36 |
| 6.9 | Dividends on Company Stock | ..................................... | 39 |
| 6.10 | Withdrawals | ....................................................... | 39 |
| 6.11 | Exclusion of Rollover Contributions Subaccounts from Calculation of Cash-out Limit | ................................. | 40 |

| ARTICLE VII | Distribution Upon Death | ......................................... | 41 |
|---|---|---|---|
| 7.1 | Amount of Distribution | ............................................. | 41 |
| 7.2 | Form of Distribution | ................................................ | 41 |
| 7.3 | Timing of Distribution | .............................................. | 42 |
| 7.4 | Investments Prior to Distribution | ................................ | 42 |
| 7.5 | Direct Rollover Distributions | ...................................... | 42 |
| 7.6 | Distributions Shall be Paid in Accordance with the Requirements of Code Section 401(a)(9) | ................................ | 43 |
| 7.7 | Pre-Retirement Death Distributions | .............................. | 43 |

| ARTICLE VIII | Administration of the Plan | ....................................... | 45 |
|---|---|---|---|
| 8.1 | Named Fiduciaries | ................................................. | 45 |
| 8.2 | The Administrative Committee | ................................... | 45 |
| 8.3 | The Investment Committee | ....................................... | 47 |
| 8.4 | Claim Procedures | .................................................. | 48 |

| | | |
|---|---|---|
| 8.5 | Indemnification | 48 |
| 8.6 | Payment of Expenses | 49 |
| | | |
| ARTICLE IX | Operation of the Trust | 50 |
| 9.1 | Trust; Trustee | 50 |
| | | |
| ARTICLE X | Plan Adoption, Amendment, Termination and Merger | 51 |
| 10.1 | Plan Amendment | 51 |
| 10.2 | Limitations on Plan Amendments | 51 |
| 10.3 | Termination of Plan or Discontinuance of Contributions | 52 |
| 10.4 | Merger, Consolidation or Transfer | 53 |
| 10.5 | Bankruptcy | 54 |
| | | |
| ARTICLE XI | Miscellaneous | 55 |
| 11.1 | Exclusive Benefit of Participants | 55 |
| 11.2 | Plan Not a Contract of Employment | 55 |
| 11.3 | Source of Benefits | 55 |
| 11.4 | Benefits Not Assignable | 55 |
| 11.5 | Domestic Relations Orders | 55 |
| 11.6 | Benefits Payable to Minors, Incompetents and Others | 56 |
| 11.7 | Missing Payees | 56 |
| 11.8 | Action by Employer | 57 |
| 11.9 | Provision of Information | 57 |
| 11.10 | Controlling Law | 57 |
| 11.11 | Singular and Plural and Article and Section References | 57 |
| 11.12 | Trust-to-Trust Transfers | 57 |
| | | |
| ARTICLE XII | In the Event the Plan Becomes Top-Heavy | 58 |
| 12.1 | Purpose and Limited Application of this Article | 58 |
| 12.2 | Definitions | 58 |
| 12.3 | Allocation of Contributions for Top-Heavy Plan | 61 |
| 12.4 | Invalidation of Top-Heavy Provisions | 62 |
| | | |
| APPENDIX I | Excluded "Foreign Employees" | |
| | | |
| APPENDIX II | Vesting/Withdrawal of Transferred Amounts | |

# ARTICLE I

## DEFINITIONS

Each of the following terms shall have the meaning set forth in this Article I for purposes of this Plan and any amendments thereto. Some of the words and phrases used in the Plan are not defined in this Article I, but for convenience are defined as they are introduced into the text.

1.1     <u>Account</u>:  A separate Company Retirement Contribution Account, Rollover Contribution Account or Transferred Contribution Account, as the case may be.

1.2     <u>Account Balance</u>:  The value of an Account determined as of the applicable Valuation date.

1.3     <u>Additional Supplemental Credit</u>:  The Company Retirement Contribution allocated to a Participant's Account pursuant to Section 3.3(b).

1.4     <u>Administrative Committee</u>:  The committee appointed pursuant to, and having the responsibility specified in, Section 8.2 of the Plan.

1.5     <u>Affiliate</u>:  Any corporation or unincorporated trade or business (other than the Company) while it is:

(a)     a member of a "controlled group of corporations" (within the meaning of Code section 414(b)) of which the Company is a member; provided, however, that for purposes of Sections 3.8 and 3.9, the phrase "more than 50 percent" shall be substituted for the phrase "at least 80 percent" wherever the latter phrase appears in Code section 1563(a)(1);

(b)     a trade or business under "common control" (within the meaning of Code section 414(c)) with the Company; provided, however, that for purposes of Sections 3.8 and 3.9, the phrase "more than 50 percent" shall be substituted for the phrase "at least 80 percent" wherever the latter phrase appears in Code section 1563(a)(1);

(c)     a member of an "affiliated service group" (within the meaning of Code section 414(m)) which includes the Company; or

(d)     any other person required to be aggregated with the Company pursuant to Code section 414(o).

1.6     <u>Basic Credit</u>:  The Company Retirement Contribution allocated to a Participant's Account pursuant to Section 3.2.

1.7    Beneficiary:  The individual or entity determined in accordance with Section 2.3 and entitled to receive any distribution pursuant to Article VII.

1.8    Benefit Commencement Date:  The first day of the first period for which an amount is paid to a Participant as an annuity or in any other form of distribution.

1.9    Board of Directors or Board:  The Board of Directors of the Company, or a committee thereof, or any person duly empowered to exercise the powers of the Company with respect to the Plan.

1.10   Code:  The Internal Revenue Code of 1986, as amended from time to time.  References to specific Code provisions shall include the specific provision and any applicable regulations pertaining thereto.

1.11   Company:  Merrill Lynch & Co., Inc. and any successor thereto.

1.12   Company Retirement Contribution:  A contribution made by the Employer to the Trust pursuant to Section 3.1.

1.13   Company Retirement Contribution Account:  The Account established for a Participant to hold Company Retirement Contributions and earnings thereon.

1.14   Company Stock:  Shares of common stock issued by the Company or any Affiliate that is a member of the same controlled group as defined in Code section 409(l)(4) that are readily tradable on an established securities market.

1.15   Defined Benefit Plan:  Any plan of the type defined in Code section 414(j) maintained by the Company or an Affiliate, as applicable.

1.16   Defined Contribution Plan:  Any plan of the type defined in Code section 414(i) maintained by the Company or an Affiliate, as applicable.

1.17   Designated Investment Alternative:  Any investment vehicle which the Administration Committee may designate from time to time and in which the assets of the Trust may be invested pursuant to Section 5.1.

1.18   Disability:  A physical or mental condition that qualifies a Participant to receive total or partial benefit payments under the basic long-term disability plan provided and maintained by such Participant's Employer.  A Participant's Disability shall be deemed to cease at such time as payments under such basic long-term disability plan cease to be payable (without taking into consideration any offset against those benefits).

1.19   Early Retirement:  Termination of Employment, other than by reason of death, after attainment of age 55 and completion of ten years of Employment (as determined in

accordance with records maintained by the Employer), but prior to Normal Retirement Age.

1.20    Eligible Compensation:  With respect to an Employee, the Employee's wages, tips and other compensation shown on the Form W-2 that is furnished to the Employee, i.e., the Employee's "wages" (as defined in Code section 3401(a)), and all other payments of compensation to the Employee by his or her Employer (in the course of the Employer's trade or business) for which the Employer is required to furnish the Employee with a written statement under Code section 6041(d), 6051(a)(3) or 6052.  Notwithstanding the foregoing, Eligible Compensation (i) shall be determined without regard to any rules under Code section 3401(a) that limit the remuneration included in "wages" based on the nature or location of the employment or the services performed, (ii) shall not include any stock-based compensation, deferred compensation (either at the time of deferral or payment), reimbursements, fringe benefits or other expense allowances, moving expenses or welfare benefits (including any payments made under an Employer's severance pay plan) and (iii) shall include  amounts that are not includible in gross income under Code sections 125, 132(a)(5) or  402(e)(3).

Notwithstanding any other provisions of this definition, for Plan Years beginning on or after January 1, 1994, the Eligible Compensation of an Eligible Participant for any Plan Year shall not exceed $150,000 (as adjusted for changes in the cost of living under Code section 401(a)(17) and applicable Treasury regulations and Internal Revenue Service pronouncements).  Effective for Plan Years beginning on or after January 1, 2001, the Eligible Compensation of an Eligible Participant shall not exceed $200,000 (as adjusted for changes in the cost of living under Code section 401(a)(17) and applicable Treasury regulations and Internal Revenue Service pronouncements).

Notwithstanding any other provision of this Plan, any amount paid on or after April 1, 1999 with respect to an Employee or former Employee more than 6 months after such individual's Termination of Employment, Retirement or death, shall be presumed not to be Eligible Compensation unless such individual (or his or her estate) establishes otherwise to the satisfaction of the Administrative Committee.

The determination of Eligible Compensation shall be in accordance with records maintained by the Employer and shall be conclusive.

1.21    Eligible Employee:  All Employees of an Employer other than:

(a)    any Employee included in a unit of Employees covered by a collective bargaining agreement between an Employer and Employee representatives in the negotiation of which retirement benefits were the subject of good faith bargaining, unless:  (i) such bargaining agreement provides for participation in the Plan, (ii) the Employee representatives represented an organization more than half of whose members are owners, officers or executives of such Employer, or (iii) 2%

or more of the Employees who are covered pursuant to that agreement are professionals as defined in Treasury Regulation section 1.410(b)-6(d);

(b)     Employees who are neither U.S. citizens nor permanent U.S. residents and whose principal place of Employment is outside the United States, U.S. Virgin Islands, Guam and Puerto Rico;

(c)     "leased employees" within the meaning of Code section 414(n)(2) and any individual who is not treated by an Employer as an Employee for federal employment tax withholding purposes at the time he or she performs services for the Employer, regardless of any contrary governmental or judicial determination relating to such employment status or tax withholding;

(d)     such other group or classification of Employees of an Employer as determined by the Administrative Committee.

Any Eligible Employees who are: (i) "foreign employees" (i.e. non-U.S. citizens and non-U.S. permanent residents) assigned to Employment in the United States, U.S. Virgin Islands, Guam and Puerto Rico who continue to accrue substantial retirement benefits under the plan(s) maintained by their permanent employer or (ii) in a group of "international employees" (i.e., U.S. citizens and U.S. permanent residents employed outside of the United States, U.S. Virgin Islands, Guam and Puerto Rico) identified by reference to the jurisdiction in which the individual is employed and/or the payroll from which the individual is paid who are not treated as Eligible Employees pursuant to clause (d), above, shall be identified in Appendix I.

An Eligible Employee shall not become a Participant until he or she has satisfied the applicable requirements of Section 2.1.

1.22    Employee: Any individual engaged in rendering personal service under the direction or control of the Company or an Affiliate which shall include a leased employee within the meaning of Code section 414(n)(2). Notwithstanding the foregoing, if leased employees do not constitute more than 20% of the Employer's non-highly compensated work force within the meaning of Code section 414(n)(5)(C)(ii), the term "Employee" shall not include those leased employees covered by a plan described in Code section 414(n)(5).

1.23    Employer: The Company and each Affiliate, except Affiliates designated from time to time by the Administrative Committee as not participating in this Plan.

1.24    Employment: An Employee's employment with the Company or an Affiliate or, to the extent required under Code section 414(a)(2) or as otherwise specified by the Administrative Committee, any predecessor of any of them.

1.25    <u>Entry Date</u>: The first day of any calendar month (or, for periods prior to January 1, 1997, the first day of any calendar quarter) and such other date or dates as the Administrative Committee shall specify.

1.26    <u>ERISA</u>:  The Employee Retirement Income Security Act of 1974, as amended from time to time.  References to specific ERISA provisions shall include such provision and any applicable regulations pertaining thereto.

1.27    <u>Highly Compensated Employee</u>:  An Employee who

    (a)  during the preceding Plan Year:

        (i)  was at any time a "5% owner" (as defined in Code section 416(i)(1)), with respect to the Company or an Affiliate, or

        (ii)  received more than $80,000 of Testing Compensation and was a member of the top paid group (i.e., was one of the top 20% of all Employees of the Company and Affiliates ranked by Testing Compensation); or

    (b)  during the current Plan year, was a 5% owner at any time.

For purposes of this definition, (i) the $80,000 amount is to be adjusted as required under Code section 414 (q) and Internal Revenue Service pronouncements and (ii) the number of Employees who are in the "top paid group" shall be determined by taking into account all Employees of the Company and Affiliates, without regard to any minimum age or service requirements.

1.28    <u>Hours of Service</u>: An Hour of Service shall include for the purposes of eligibility and vesting:

    (a)    each hour for which an Employee is directly or indirectly paid, or entitled to payment, by the Company or an Affiliate for the performance of duties for the Company or an Affiliate, with such Hours of Service being credited to the Employee for the Plan Year or Plan Years in which the duties were performed;

    (b)    each hour for which an Employee is paid, or entitled to payment, by the Company or an Affiliate on account of a period of time during which no duties are performed (irrespective of whether the Employee's Employment has terminated) due to vacation, holiday, illness, incapacity (including Disability), layoff, jury duty, military duty or leave of absence; and

    (c)    each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Company or an Affiliate.  The same Hours of Service will not be credited both under subparagraph (a) or (b) as the case may be, and under subparagraph (c).  These hours will be credited to the Employee for the year

of Service or other computation period or periods to which the award pertains rather than for the year of Service or other computation period in which the award, agreement or payment is made.

Hours of Service under paragraphs (b) and (c) above shall be calculated and credited in accordance with Department of Labor Regulations sections 2530.200b-2(b) and (c), which are incorporated herein by reference.

1.29    Investment Committee:  The committee appointed pursuant to, and having the responsibilities specified in, Section 8.3 of the Plan.

1.30    Investment Manager:  Any person appointed pursuant to Section 5.9 having the power to direct the investment of assets in accordance with that Section.

1.31    Medical Program:  The Merrill Lynch & Co., Inc. Medical Care t Program, as amended from time to time, the relevant provisions of which are incorporated herein by reference.

No provision of the Plan shall in any way be construed to preclude the amendment, modification or termination of the Medical Program by the Company and no such amendment, modification or termination of the Medical Program shall be construed as an amendment, modification or termination of the Plan.

1.32    Normal Retirement Age:  Age 65.

1.33    Participant:  An Eligible Employee who has commenced, but not terminated, participation in the Plan as provided in Article II.  In addition, an individual with respect to whom amounts are transferred to the Trust in accordance with Sections 3.7(b) and 11.12 shall be treated as a Participant to the extent necessary under the Plan.

Except with respect to Article III each Participant shall continue to be such after he or she ceases to be an Eligible Employee until the earliest of:

(a)    his or her Account has been completely distributed (including the application of the Account to the purchase of an annuity which is distributed to the Participant) at a time when he or she is no longer eligible for any future contributions,

(b)    in the case of a Participant with no vested rights to a benefit under the Plan, the date of such Participant's Termination of Employment, or

(c)    his or her death.

1.34    Plan:  The Merrill Lynch & Co., Inc. Retirement Accumulation Plan as set forth herein or as amended from time to time hereafter. Effective May 8, 2003, the Plan shall consist of two portions.  The first portion is that part of the Plan that is invested in assets other than Company Stock and is intended to qualify under Code Section 401(a) as a profit

sharing plan. The second portion is that part of the Plan that is invested in Company Stock and is intended to qualify both as a stock bonus plan and an employee stock ownership plan under Code Section 401(a) and Code Section 4975(e)(7), respectively, and as such, shall comply with Code Section 401(a)(28).

1.35    <u>Plan Benefit</u>: The sum of the vested portion of each of the Participant's Accounts.

1.36    <u>Plan Year</u>: The calendar year.

1.37    <u>Qualified Joint and Survivor Annuity</u>: In the case of a married Participant, an annuity for the life of the Participant with a survivor annuity for the life of the Participant's spouse which is 50% of the amount of the annuity payable during the joint lives of the Participant and his or her spouse. If the Participant is unmarried, Qualified Joint and Survivor Annuity shall mean an annuity for the life of the Participant. In either case, the annuity shall be the amount of benefit which can be purchased with the Participant's Account Balance, or any portion thereof to which this form of benefit is applicable.

1.38    <u>Qualified Plan</u>: A plan which is qualified under Code section 401(a).

1.39    <u>Qualified Preretirement Survivor Annuity</u>: A lifetime benefit, payable to the person who was the spouse of the Participant at the time of the Participant's death, where such annuity is payable for the life of such surviving spouse and is in an amount determined by application of the Participant's Account, or any portion thereof to which this form of benefit is applicable, to the purchase of an annuity from an insurance company.

1.40    <u>Retirement</u> or <u>Retires</u>: A Participant's termination of Employment (other than by reason of death) upon Early Retirement or on or after attainment of Normal Retirement Age. A Participant "Retires" upon the occurrence of his or her Retirement.

Notwithstanding any other provision of the Plan, a Participant whose Employment is terminated due to the transfer of certain in-house functions to a service provider which is not an Affiliate shall be treated as having incurred a termination of Employment for all purposes under the Plan, regardless of whether the Participant is retained by such service provider to perform services for an Employer.

1.41    <u>Rollover Contribution</u>: A contribution which is received by the Trust that is:

(a)    an "eligible rollover distribution" made from a Qualified Plan pursuant to Code section 402(c) or made under Code section 403(a) from an "employee annuity" as referred to in that section, or

(b)    a payout or distribution to the Eligible Employee referred to in Code section 408(d)(3)(A)(ii) from an "individual retirement account" or an "individual retirement annuity" described, respectively, in Code sections 408(a) or 408(b).

Effective January 1, 2002, Rollover Contribution shall mean a contribution (excluding after-tax employee contributions) which is received by the Trust that is:

(a) an "eligible rollover distribution" made from (i) a Qualified Plan or a qualified annuity plan described in Code section 403(a), an annuity contract described in Code section 403(b), or (iii) an eligible plan under Code section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state, or

(b) a payout or distribution to the Eligible Participant referred to in Code section 408(d)(3)(A)(ii) from an "individual retirement account" or an "individual retirement annuity" described, respectively, in Code sections 408(a) or 408(b).

Effective January 1, 2002, the definition of Rollover Contribution shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order as defined in Code section 414(p).

1.42    <u>Rollover Contribution Account</u>:  The Account established for a Participant to hold Rollover Contributions and earnings thereon.

1.43    <u>Service</u>:  The aggregate of the following periods:

(a) the period commencing on the date the Employee first performs an Hour of Service and ending on the date of his or her Termination of Employment, Retirement, or death; and

(b) if the Employee has a Termination of Employment or Retires, the period commencing on the date of his or her Termination of Employment or Retirement and ending on the first date on which he or she again performs an Hour of Service, if such date is within twelve months of the date on which he or she last performed an Hour of Service.

Service shall include the period of a leave of absence and the period of service in the armed forces of the United States as shall be required to be recognized under applicable federal law with respect to military service.

Notwithstanding the foregoing, the Administrative Committee may:

(a) credit as Service employment with a predecessor of the Company or an Affiliate or employment with any business acquired by the Company or an Affiliate, with respect to all Employees acquired in such acquisition, and

(b) credit additional Service in the event of a disposition with respect to all Employees affected by such disposition.

Service shall be measured in whole years and fractions of a year in months. For this purpose periods of less than a full year shall be aggregated on the basis that twelve months equal a year, and in aggregating days representing fractional months into months, thirty days shall equal one month.

Notwithstanding any other provision of this Plan, an individual's Service shall not include any period with respect to which he or she receives payments under the Merrill Lynch & Co., Inc. Severance Pay Plan or other payments in the nature of severance pay from the Employer.

1.44    Spouse:  The person legally married to a Participant pursuant to local law where the Participant resides, but not in violation of federal law (see, *e.g.*, the Defense of Marriage Act (1 U.S.C. Section 7)).

1.45    Supplemental Credit:  The Company Retirement Contribution allocated to a Participant's Account pursuant to Section 3.3(a).

1.46    Termination of Employment:  A Participant's termination of Employment other than by reason of death or Retirement.

Notwithstanding any other provision of the Plan, a Participant whose Employment is terminated due to the transfer of certain in-house functions to a service provider which is not an Affiliate shall be treated as having incurred a termination of Employment for all purposes under the Plan, regardless of whether the Participant is retained by such service provider to perform services for an Employer.

1.47    Testing Compensation:  (i) The Employee's wages, tips and other compensation shown on the Form W-2 which is furnished to an Employee, i.e., the Employee's wages, as defined in Code section 3401(a) and all other payments of compensation made to the Employee by the Employer for which the Employer is required to furnish the Employee a written statement under Code sections 6041(d) and 6051(a)(3), (ii) amounts contributed to benefit plans pursuant to Code sections 125, 401(k), 402(h)(1)(B), or 403(b), and (iii) amounts that are not includible in gross income under Code section 132(a)(5). Testing Compensation shall be determined without regard to any rules under Code section 3401(a) that limit the remuneration included in wages based on the nature or location of the employment or the services performed, and shall be based upon the Employee's compensation for the entire Plan Year, regardless of whether the Employee participated under the Plan for the entire Plan Year, unless the Administrative Committee (or its delegatee) determines otherwise.

Notwithstanding any other provisions of this definition, the Testing Compensation of an Eligible Participant for any Plan Year shall not exceed the limitation with respect to such Plan Year applicable under Code section 401(a)(17) (as adjusted for changes in the

cost of living under Code section 401(a)(17) and applicable Treasury regulations and Internal Revenue Service pronouncements).

The determination of Testing Compensation shall be in accordance with records maintained by the Employer and shall be conclusive.

1.48   Transferred Contribution:  An amount (other than a Rollover Contribution) transferred to the Trust from a trust established under another tax-qualified plan, in accordance with Sections 3.7(b) and 11.12.

1.49   Transferred Contribution Account:  The Account established for a Participant pursuant to Sections 3.7(b) and 11.12.

1.50   Trust:  The trust established under the Plan in which trust assets are held.

1.51   Trust Agreement:  The agreement between the Company and the Trustee with respect to the Trust, as the same may be amended from time to time.

1.52   Trustee:  An individual or entity appointed pursuant to Section 9.1 and any successor trustee.

1.53   Valuation Date:  The last business day of each calendar year and such other dates as the Administrative Committee shall specify.  The Administrative Committee may, in its discretion, use different Valuation Dates for different purposes under the Plan.

ARTICLE II

ELIGIBILITY AND PARTICIPATION

2.1    Participants on and after December 31, 1993:

    (a)  Each Employee who was a Participant on December 31, 1993 shall continue as such on January 1, 1994, provided that such Employee is an Eligible Employee on that date.

    (b)  Except as otherwise provided in Section 2.1(a) or Section 2.1 (c), with respect to periods ending prior to January 1, 1997, an Eligible Employee shall become a Participant as of the Entry Date coincident with or next following his or her (i) attainment of age 21 and (ii) completion of one year of Service.  Effective January 1, 1997, an Eligible Employee shall become a Participant as of the Entry Date coincident with or next following his or her completion of one year of Service.

    (c)  Notwithstanding the foregoing, the Administrative Committee may waive the Service requirement set forth in subsection (b) above with respect to individuals who become Employees in connection with any business acquired by the Company or an Affiliate, with respect to all Employees acquired in such acquisition.

2.2    Election upon Becoming a Participant:

An Eligible Employee, upon becoming a Participant, shall make an investment election from among the Designated Investment Alternatives for the purpose of investing any contributions to his or her Account, subject to the requirements of Section 5.1.

2.3    Beneficiary Designation:

Subject to the spousal consent requirements specified below, each Participant may designate a Beneficiary.  The designated Beneficiary may be one or more individuals, estates, trusts or other entities; provided, however, if the Participant is married at the time of his or her death, his or her spouse shall automatically be his or her sole Beneficiary unless the spouse had consented, in writing, to a designation of another Beneficiary.  Such consent must be witnessed by a notary public and must contain an acknowledgment by the spouse of the effect of the designation.

If a Participant who is unmarried as of the date of his or her death has not designated a Beneficiary and the Participant at that time has coverage in effect under the Company's Basic Group Life Insurance Plan, the Participant's Beneficiary shall be the beneficiary designated by the Participant under that plan and the Participant's interest remaining in the Plan shall be paid in accordance with such designation.  If:  (i) none of the Beneficiaries designated by the Participant with respect to his or her Accounts survive

the Participant, (ii) the Participant has not designated a Beneficiary under this Plan and no beneficiary designation made by the Participant is then in effect under the Company's Basic Group Life Insurance Plan, or (iii) the Participant has assigned the right to receive his or her death benefit under the Company's Basic Group Life Insurance, then the Participant's remaining interest in his or her Accounts shall be paid to the estate of the Participant.

If a Participant who is married as of the date of his or her death designates one or more Beneficiaries other than his or her spouse pursuant to this Section 2.3 and each such Beneficiary predeceases the Participant, the Participant's Beneficiary shall be the Participant's surviving spouse and the Participant's interest remaining in the Plan shall be paid to the surviving spouse, or, if such spouse is no longer living, and the Participant at that time has coverage in effect under the Company's Basic Group Life Insurance Plan, the Participant's Beneficiary shall be the beneficiary designated by the Participant under that plan and the Participant's interest remaining in the Plan shall be paid in accordance with such designation.

Notwithstanding the foregoing, if a Participant is married as of the date of his or her death and:

(i)   the Participant's deceased spouse was the Participant's designated beneficiary under the Company's Basic Group Insurance Plan and no other beneficiary designated by the Participant under the Company's Basic Group Insurance Plan survived the Participant, or

(ii)  the Participant assigned the right to receive his or her death benefit under the Company's Basic Group Insurance, then

the Participant's remaining interest in the Plan shall be paid to the estate of the Participant.

In the case of both married and unmarried Participants, if the Beneficiary and the Participant die simultaneously, or if there is not sufficient evidence to establish which died first, it shall be presumed that the Participant was the survivor.

Subject to the spousal consent requirements of this Section 2.3, any designation (or change in designation) of a Beneficiary to whom amounts due after the Participant's death shall be paid must be filed in a time and manner determined by the Company in order to be effective. Any such designation of a Beneficiary may be revoked by filing a later designation or an instrument of revocation, in a time and manner determined by the Company.

2.4    <u>Transfers to or from Non-Covered Status</u>:

If a Participant ceases to meet the definition of Eligible Employee as set forth in Article I but continues Employment, contributions on his or her behalf shall be suspended. If during the period of such suspension the Participant has a Termination of Employment, Retires or dies distribution of his or her Account shall be determined in accordance with the provisions of Article VI or Article VII, as applicable.

If and when the suspended Participant again becomes an Eligible Employee, he or she shall resume participation in the Plan with respect to future contributions under the Plan as of the date he or she again becomes an Eligible Employee.

2.5     Rehired Employees:

If an individual met the requirements of Section 2.1 has a Termination of Employment or Retires and then again becomes an Eligible Employee, he or she shall resume participation in the Plan with respect to future contributions under the Plan as of the date he or she again becomes an Eligible Employee.

If a former Employee who did not meet the requirements of Section 2.1 returns to Employment, he or she shall become a Participant after meeting the requirements of Section 2.1.

2.6     Disability and Leaves of Absence:

(a)     A Participant who has incurred a Disability and is not a Highly Compensated Employee shall be credited with Company Retirement Contributions during the period of such Disability. Effective January 1, 1997, any Participant (regardless of whether he or she is a Highly Compensated Employee) who has incurred a Disability shall be credited with Company Retirement Contributions during the period of such Disability. For purposes of determining the amounts to be credited to such Participant under the Plan, the Participant's Eligible Compensation shall be deemed to be the greatest of:  (i) the Participant's Eligible Compensation paid in the calendar year immediately preceding the calendar year in which the Disability is incurred (with base salary annualized if the Participant's Employment commenced during such year), (ii) the Participant's Eligible Compensation paid in the calendar year in which the Disability is incurred (with base salary annualized if the Participant's Employment commenced during such year), or (iii) the Participant's Eligible Compensation paid in the calendar year in which Disability payments commence or would commence but for an offset against those benefits. Notwithstanding the foregoing, in the case of a Participant who has a partial disability (as that or a similar concept is defined in the basic long term disability plan maintained by the Participant's Employer), Eligible Compensation shall also include actual Eligible Compensation paid to such Participant during the period of such partial disability.

(b)     A Participant on a leave of absence and who is receiving Eligible Compensation from an Employer shall continue to be credited with Company Retirement Contributions under the Plan during the period of such leave of absence.

2.7     <u>Military Leave</u>

Notwithstanding any other provision of the Plan to the contrary, with regard to an Employee who is reemployed on or after December 12, 1994, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code section 414(u).

# ARTICLE III

## CONTRIBUTIONS

3.1    Company Retirement Contributions:

The Employer shall make Company Retirement Contributions to the Plan on behalf of each Participant who is an Eligible Employee during any portion of a calendar year (changed from calendar quarter, for Plan Years beginning on or after January 1, 2004) in the amount specified in this Article III. All Company Retirement Contributions shall consist of the credits described herein for each calendar year (changed from calendar quarter, for Plan Years beginning on or after January 1, 2004) determined in accordance with this Article III.

3.2    Amount of Basic Credits:

Subject to the requirements of Sections 3.5, 3.8 and 3.9, each Participant who is an Eligible Employee at any time during a calendar year (changed from calendar quarter, for Plan Years beginning on or after January 1, 2004) shall receive Basic Credits in an amount equal to a percentage of the Participant's Eligible Compensation for the period during which he or she qualified as a Participant during that year (changed from quarter, for Plan Years beginning on or after January 1, 2004). The amount of Basic Credits shall be based on the Participant's years of Service, determined as of January 4 of that year, as follows:

| Years of Service on Each January 4 | Percentage of Eligible Compensation |
|---|---|
| less than 5 | 2.0% |
| at least 5 but less than 10 | 3.0% |
| at least 10 but less than 15 | 4.0% |
| at least 15 but less than 20 | 5.0% |
| at least 20 but less than 25 | 6.0% |
| at least 25 but less than 30 | 7.0% |
| 30 or more | 8.0% |

Basic Credits shall be allocated to the Participant's Company Retirement Contribution Account as soon as practicable after the end of the calendar year (changed from calendar quarter, for Plan Years beginning on or after January 1, 2004) to which the Basic Credit is applicable.

Notwithstanding the foregoing or anything to the contrary in this Plan, subject to the requirements of Section 3.8 each Participant who Retires, dies or undergoes a

Termination of Employment in connection with a reduction-in-force or divestiture by the Company or any Affiliate shall receive Basic Credits in an amount equal to a percentage of the Participant's Eligible Compensation for the period during which he or she qualified as a Participant during the calendar year in which such Retirement, death or Termination of Employment occurs, with such Basic Credits to be allocated to such Participant's Company Retirement Contribution Account as soon as practicable after the end of the calendar quarter in which the Retirement, death or Termination of Employment occurs.

3.3   Amount of Supplemental Credits and Additional Supplemental Credits:

(a)   Subject to the requirements of Sections 3.4, 3.5, 3.8 and 3.9, each Participant who had both attained age 35 and completed at least five years of Service on January 4, 1989 shall receive Supplemental Credits for any calendar quarter during which the Participant is at any time an Eligible Employee. The Supplemental Credits shall consist of an amount equal to an additional percentage of the Participant's Eligible Compensation for the period in each calendar quarter during which he or she qualified as a Participant, commencing with the calendar quarter ending March 31, 1989, and ending with the calendar quarter in which the Participant ceases to receive Eligible Compensation from an Employer by reason of his or her Termination of Employment or Retirement.

If the Participant had completed at least five years of Service on January 4, 1989, and his or her age on that date equaled or exceeded 35 years but did not exceed 44 years, the additional percentage of Eligible Compensation described in this Section 3.3(a) shall be 2%. If the Participant had completed at least five years of Service on January 4, 1989 and his or her age on that date equaled or exceeded 45 years, the additional percentage of Eligible Compensation described in this Section 3.3(a) shall be 4%.

Supplemental Credits shall be allocated to the Participant's Company Retirement Contribution Account as soon as practicable following the quarter to which the Basic Credit is applicable.

(b)   Subject to the requirements of Sections 3.4, 3.5, 3.8 and 3.9, in addition to receiving the Supplemental Credits described in Section 3.3(a), each Participant who had both attained age 55 and completed at least ten years of Service on January 4, 1989 shall receive, on an annual basis, Additional Supplemental Credits. The Additional Supplemental Credits shall consist of an amount equal to 4% of the Participant's Eligible Compensation for the period in each calendar quarter during which he or she qualified as a Participant, commencing with the calendar quarter ending December 31, 1989, and ending with the calendar quarter in which the Participant ceases to receive Eligible Compensation from an Employer by reason of his or her Termination of Employment or Retirement.

Notwithstanding the foregoing, a Participant shall not be credited with Additional Supplemental Credits for a calendar year unless: (i) such Participant is employed with an Employer on December 31 of that year, and (ii) such Participant's Eligible Compensation (determined without reference to the limitations contained in Code section 401(a)(17)) for such calendar year is equal to or less than 75% of the limitation under Code section 401(a)(17) calculated without regard to the reduction in such limitation enacted in the Omnibus Reconciliation Act of 1993.

Additional Supplemental Credits shall be allocated to the Participant's Company Retirement Contribution Account as soon as practicable following the calendar year for which the Additional Supplemental Credit is applicable.

(c)   Notwithstanding anything to the contrary in Sections 3.3, 3.4 or any other provision of this Plan, effective July 1, 2003, no Supplemental Credits or Additional Supplemental Credits shall be provided to any Participant under this Plan.

3.4    Eligibility for Supplemental Credits and Additional Supplemental Credits Following Breaks in Employment:

An Employee who: (i) has a Termination of Employment or Retires, (ii) ceases to be an Eligible Employee, or (iii) was not employed with an Employer as an Eligible Employee on January 4, 1989, and who subsequently becomes an Eligible Employee shall be eligible for Supplemental Credits and/or Additional Supplemental Credits upon becoming an Eligible Employee, provided that he or she: (i) was receiving Supplemental Credits and/or Additional Supplemental Credits, as the case may be, at the time of his or her Termination of Employment, Retirement or ceasing to be an Eligible Employee, or (ii) would have satisfied the requirements for Supplemental Credits and/or Additional Supplemental Credits, as the case may be, had the Employee been employed by an Employer as an Eligible Employee on January 4, 1989.

3.5    Coordination of Company Retirement Contributions Between the Plan and the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan:

Each calendar year (changed from calendar quarter, for Plan Years beginning on or after January 1, 2004), any Basic and Supplemental Credits (but not Additional Supplemental Credits) otherwise available to a Participant under Sections 3.2, 3.3 and 3.4 for the calendar year (changed from calendar quarter, for Plan Years beginning on or after January 1, 2004) shall be reduced by the fair market value of shares allocated to such Participant's account for the calendar year (changed from calendar quarter, for Plan Years beginning on or after January 1, 2004) under the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan; *provided, however,* no such reduction shall be applied to the Basic Credits of any Participant who during that calendar year Retires, dies or undergoes a Termination of Employment in connection with a reduction-in-force or divestiture by the Company or any Affiliate.. For purposes of this Section 3.5, "fair

market value" shall mean fair market value as defined in Section 4.3 of the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan.

Notwithstanding the foregoing, neither the fair market value of Leveraged Shares released from the Leveraged Share Suspense Account under the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan by reason of the use of dividends (to the extent such dividends are paid on Leveraged Shares or Reversion Shares that have been allocated to the accounts of Participants under such plan) to make payments on an Acquisition Loan under such plan, nor the fair market value of Company Stock required to be allocated to Participants' accounts under the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan pursuant to Code section 404(k)(2)(B), shall reduce the Basic and Supplemental Credits to which a Participant is otherwise entitled under this Article III. As used in this Section 3.5, the terms "Leveraged Shares," "Leveraged Share Suspense Account," "Reversion Share" and "Acquisition Shares" shall have the meanings assigned to those terms in the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan.

3.6 <u>Transfers from Employee Stock Ownership Plan; Suspension of Plan Allocations</u>:

If a Participant who is also a participant in the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan (the "ESOP") (or in the Herzog Heine Geduld Employee Stock Ownership Plan (the "HHG ESOP"), for periods before July 17, 2001) elects a withdrawal of all or part of his or her account balances thereunder pursuant to Section 7.3 of the ESOP (or Section 8.11 of the HHG ESOP), the Participant may elect to transfer all of such withdrawal directly to this Plan. Any amounts transferred from the ESOP (or the HHG ESOP) to this Plan shall be held in the Participant's Company Retirement Contribution Account without distinction from other amounts held in that Account. Notwithstanding the foregoing, effective July 1, 2002, any amounts transferred from the ESOP (or the HHG ESOP) to this Plan shall be held in the Participant's ESOP transfer account, separate and distinct from other amounts held in the Participant's Company Retirement Contribution Account, shall continue to be subject to the same distribution options and rights as provided under the ESOP, which shall be preserved hereunder solely to the extent required by Code section 411(d)(6), and shall otherwise comply with section 411(d)(6) of the Code and any regulations or guidance issued thereunder.

If a Participant elects a withdrawal pursuant to Section 7.3 of ESOP (or Section 8.11 of the HHG ESOP) in any form other than a transfer to this Plan, allocations of Basic Credits, Supplemental Credits and Additional Supplemental Credits pursuant to this Article III that would otherwise have been allocated to the Participant's Company Retirement Contribution Account shall be suspended during the one-year period beginning on the October 1 immediately following the Administrative Committee's acceptance of the Participant's withdrawal election under the ESOP (or, in the case of the HHG ESOP, the one-year period beginning on such date as Global Benefits determines to be administratively practicable). The previous sentence shall not apply to

any transfer to this Plan pursuant to Section 7.1(e) of the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan.

3.7    Rollover Contributions/Transferred Amounts:

(a)    With the approval of the Administrative Committee, any Eligible Employee who was employed with a predecessor of the Company or an Affiliate or with any business acquired by the Company or an Affiliate may make a Rollover Contribution to the Plan, provided that such Rollover Contributions are permitted by the Administrative Committee with respect to all Employees acquired in such acquisition.  A Rollover Contribution shall be in cash only.  The Administrative Committee may condition acceptance of a contribution intended to be a Rollover Contribution upon timely receipt of such documents as it may require to demonstrate that it is a Rollover Contribution.  In the event that an Eligible Employee makes a contribution pursuant to this Section 3.7 intended to be a Rollover Contribution but which the Administrative Committee later concludes did not qualify as a Rollover Contribution, the Trustee shall distribute to the Eligible Employee as soon as practicable after that conclusion is reached the amount of such contribution together with any earnings thereon determined as of the Valuation Date coincident with or immediately preceding such conclusion.

(b)    In the event that amounts (other than Rollover Contributions) are transferred on behalf of an individual to the Trust from a trust established under another tax-qualified plan pursuant to Section 11.12, including pursuant to a merger of such plan with the Plan, the individual shall be treated as a Participant to the extent necessary under the Plan and the transferred amounts shall be designated as such types of contributions (including Transferred Contributions) and credited to such Accounts as may be determined by the Administrative Committee.  The vesting schedule which shall apply to any such transferred amounts shall be set forth in Appendix II hereto, as may be amended from time to time by the Administrative Committee.  Any forms of benefit which were available under such other plan shall be preserved hereunder to the extent necessary to meet the requirements of Code section 411(d)(6).

3.8    Limitation on Allocations:

(a)    The limitations of Code section 415 applicable to "defined contribution plans" as defined in Code section 414(i) are hereby incorporated by reference in this Plan; provided, however, that where the Code so provides, contribution limitations in effect under prior law shall be applicable to account balances accrued as of the last effective day of such prior law.

(b)    As used in this Section 3.8 and Section 3.9 and for purposes of determining the limits described in Code section 415, each of the following terms shall have the meaning for that term set forth in this subsection (b):

WDC99 534290-1.047750.0011

19

(i)    <u>Annual Addition</u> shall have the meaning set forth in Code section 415(c)(2) and the regulations under Code section 415; provided however, that 'Annual Addition' shall not include amounts contributed or reallocated under Section 3.12 to the extent attributable to corrections for lost earnings.

(ii)    <u>Limitation Compensation</u> means, for an Employee, Testing Compensation, except that the annual dollar limitation described in Section 1.50 of the Plan shall not apply.

(iii)    <u>Limitation Year</u> means the calendar year.

(c)    If a Participant is also participating in one or more Defined Contribution Plans, the otherwise applicable limitation on Annual Additions under this Plan and the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan (the "ESOP") shall be reduced, if necessary, in proportion to Annual Additions made under each such plan. If any further reduction is required after reductions under this Plan and the ESOP, the Annual Additions under other Defined Contribution Plans shall then be reduced; <u>provided</u> that, effective for Limitation Years after 1994, Annual Additions under other Defined Contribution Plans shall be reduced to the extent possible before any prorata reductions are applied under this Plan and the ESOP.

(d)    In the event an Annual Addition has erroneously been credited to a Participant's Account in the Plan in excess of the limitations of Code section 415, the erroneously credited Annual Addition and any earnings or losses thereon shall be removed from the Participant's Account on a last-in-first-out basis, so that the Participant's Account is restored to what it would have been had the excess Annual Addition never been contributed. The amount so removed shall be used in lieu of contributions which would otherwise have been made to the Plan for allocation to other Participants. Any excess Annual Additions which cannot be so used during the Limitation Year in which they were contributed shall be held unallocated in a suspense account for the Limitation Year and used (subject to the limitations of Code section 415) in accordance with the Plan in the next Limitation Year before any additional contributions may be made to the Plan for that Limitation Year.

(e)    Prior to determining the Participant's actual Limitation Compensation for a Limitation Year, the Administrative Committee may determine the amount of permissible Annual Additions to the Participant's Account for the Participant for the Limitation Year on the basis of a reasonable estimation of the Participant's Limitation Compensation for that Limitation Year. Such estimated Limitation Compensation shall be uniformly determined for all Participants similarly situated.

3.9    Combined Plan Limitation:

In addition to the limitations of Section 3.8, if a Participant in this Plan retains any right to a benefit in the Pension Plan for Employees of Merrill Lynch & Co., Inc. and Affiliates and/or is a participant or retains any right to a benefit in any other Defined Benefit Plan, the overall limitation of Code section 415(e) shall be complied with by reducing the limitations on Annual Additions under this Plan and the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan, if necessary, in proportion to Annual Additions made under each such plan. If any further reduction is required after reductions under this Plan and the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan, the Annual Additions under other Defined Contribution Plans shall then be reduced; provided that, effective for Limitation Years after 1994, Annual Additions under other Defined Contribution Plans shall be reduced to the extent possible before any prorata reductions are applied under this Plan and the Employee Stock Ownership Plan.

Notwithstanding any other provision of this Plan, this Section 3.9 shall no longer apply after December 31, 1999.

3.10    Return of Contributions Under Special Circumstances:

Notwithstanding any provision of this Plan, a contribution made to the Plan by an Employer may be returned to the Employer if:

(a)    the contribution is made by reason of mistake of fact (for example, incorrect information as to eligibility or compensation of an Employee, a mathematical error, or an erroneous belief that such contribution is consistent with the requirements of Sections 3.5, 3.8, 3.9 and 3.10);

(b)    the contribution is conditioned on its deductibility under Code section 404 and unless otherwise explicitly provided in this Plan or by the Employer at the time the contribution is made, all contributions made by the Employer to the Plan are conditioned on their deductibility;

provided that such return of contribution is made within one year of the mistaken payment of the contribution or the disallowance of the tax deduction, as the case may be.

3.11    Correction of Administrative Errors

If, with respect to a Plan Year, an administrative error results in a Participant's Account not being properly credited with amounts, or earnings (including dividends) on any such amounts, then any or all of the following corrective actions may be taken to the extent necessary to correct such errors:

(a)   the Employer may make additional contributions to a Participant's Account;

(b)   forfeitures (including dividends or other earnings thereon) may be reallocated among Participant's Accounts; and

(c)   existing Company Retirement Contributions and/or Rollover Contributions may be reallocated among Participant's Accounts.

In addition, with respect to any Plan Year, if an administrative error results in an amount being credited to a Participant's Account or the account of any other individual who is not otherwise entitled to such amount, corrective action may be taken by the Employer, including, but not limited to, a direction by the Employer to forfeit amounts erroneously credited (with such forfeitures to be used to reduce future contributions or other contributions to the Plan), reallocate such erroneously credited amounts to other Participants' Accounts, or take such other corrective action as necessary under the circumstances. Any Plan administration error may be corrected using any appropriate correction method permitted under the Employee Plans Compliance Resolution System (or any successor procedure), as determined by the Administrative Committee in its discretion.

ARTICLE IV

VESTING OF ACCOUNTS

4.1    Vesting:

A Participant who has a Termination of Employment with less than five years of Service shall not be vested in his or her Company Retirement Contribution Account to any extent.

Notwithstanding the foregoing, a Participant shall be 100% vested in his or her Company Retirement Contribution Account if he or she: (i) attains Normal Retirement Age prior to his or her Termination of Employment, (ii) terminates Employment because of his or her death, (iii) incurs a Disability, or (iv) completes five years of Service.

A Participant shall be 100% vested in his or her Rollover Contribution Account at all times.

Notwithstanding any other provision of this Plan to the contrary, a Participant who has a Termination of Employment and subsequently returns to Employment shall, with respect to contributions made after the Participant's return to Employment, have credit for all service credited for purposes of vesting as of his or her prior date of Termination of Employment.

In addition, a Participant shall be 100% vested in all amounts attributable to dividends on Company Stock in his Account Balance that are subject to a Participant's actual or deemed election to reinvest such dividends as described in Section 5.6.

4.2    Treatment of Forfeitures:

In the event that a Participant has a Termination of Employment and is not vested, such Participant shall be deemed to have received a total distribution from the Plan, and his or her Company Retirement Contribution Account shall be forfeited after the first Valuation Date coincident with or next following the date of his or her Termination of Employment, and, to the extent that forfeitures have not been reallocated pursuant to Section 3.12, any such forfeitures (and amounts treated as forfeitures as provided under Section 11.7), along with earnings thereon, shall be applied by the Company to reduce future Company Retirement Contributions.

4.3     <u>Reinstatement of Forfeitures:</u>

In the event of reemployment of a Participant with the Company or an Affiliate within seven years after the Participant's Termination of Employment, any dollar amount forfeited by the Participant at his or her Termination of Employment (unadjusted by any subsequent earnings or losses) shall be reinstated in the Participant's Company Retirement Contribution Account as of the first day as of which contributions can be allocated to the Participant's Company Retirement Contribution Account following the Participant's resumption of Employment.  Notwithstanding the foregoing, in the event a reemployed Participant previously participated in a tax-qualified plan which was merged into the Plan, reinstatement shall be made upon request of the Participant.  The amount so restored will be derived from amounts forfeited and not yet applied to reduce future Company Retirement Contributions, and if such amounts are not sufficient to make a full restoration, the Company shall make an additional contribution in the amount necessary to complete the restoration.

ARTICLE V

MANAGEMENT, CONTROL AND INVESTMENT
OF PLAN ASSETS

5.1    Investment of Accounts:

All Company Retirement Contributions and Rollover Contributions made to the Plan on behalf of a Participant shall, as soon as practicable after such contributions are credited to a Participant's Account, be invested as directed by the Participant among such Designated Investment Alternatives as the Investment Committee may specify for the investment of a Participant's Account. Anything in this Plan to the contrary notwithstanding, the Investment Committee may specify that assets with respect to which proper investment direction is not received shall be invested as specified by the Investment Committee.

If Designated Investment Alternatives are established, the Administrative Committee may, in its sole discretion, permit the Participants to determine the portion of their Accounts that shall be invested in each Designated Investment Alternative and shall determine what transfers between Designated Investment Alternatives and other Trust assets shall be permissible. The Plan is then intended to comply with section 404(c) of ERISA, under which Participants and Beneficiaries are responsible for, and bear the consequences of, such investment determinations.

Notwithstanding the foregoing, in no event shall the Participants be permitted to direct offsetting transfers with respect to a Designated Investment Alternative (other than any Designated Investment Alternative designed to invest in Company Stock or a money market mutual fund or another Designated Investment Alternative designed to invest in short term money market instruments) more than once every fifteen (15) business days.

Notwithstanding the foregoing, prior to or after investment in one or more Designated Investment Alternatives, all or a portion of the Trust Fund may be invested, at the direction of the Investment Committee, in short-term securities issued on an interim basis or guaranteed by the United States of America or any agency or instrumentality thereof or any other prudent investments of a short-term nature that earn income. Any earnings or amounts held in the Trust Fund and invested pursuant to this Section 5.1 may be used, at the discretion of the Administrative Committee, to pay reasonable expenses payable from the Trust Fund.

None of the Administrative Committee, the Investment Committee or the Trustee shall:

(i)    except for the investment of trust assets pending their investment in Designated Investment Alternatives, or in the case of a Participant who has not made a timely election regarding the liquidation of assets held in his or her Account in order for

the Participant to receive a distribution required under Section 6.6, or with respect to the charging of expenses (including taxes, if applicable) pursuant to Section 8.5, make any investments or dispose of any investments or exercise any voting rights with respect to any investments of a Participant or Beneficiary's Accounts in a Designated Investment Alternative without the direction of the Participant or Beneficiary for whom an Account is maintained;

(ii) be responsible for reviewing investment directions given by a Participant or Beneficiary with regard to assets held in a Participant or Beneficiary's Accounts invested in a Designated Investment Alternative or for making recommendations on acquiring, retaining or disposing of any assets or otherwise regarding any assets; or

(iii) be liable for any losses incurred therein as a consequence of investments selected by any Participant or Beneficiary or for holding assets uninvested until it receives proper instructions.

5.2    Tender and Voting of Company Stock -- In General:

Each Participant shall have the authority and discretion specified in this Article V to direct the Trustee to sell, offer to sell, exchange or otherwise dispose of the shares of Company Stock, if any, allocated to such Participant's Account and to direct the Trustee's voting of such shares with respect to matters submitted to the shareholders of the Company. In the exercise of this authority and discretion, each such Participant shall be a "named fiduciary" within the meaning of ERISA section 403(a)(1). The Trustee shall have no discretion or authority to sell, offer to sell, exchange or otherwise dispose of any shares of Company Stock pursuant to an Offer (as defined in Section 5.3(a)), nor to vote Company Stock held in Trust and allocated to a Participant's Account on any matter presented for a vote by the stockholders of the Company, except in accordance with the provisions of this Article V.

5.3    Tender of Company Stock:

(a) Subject to the provisions of paragraphs (c) and (d) of this Section 5.3, in the event any person, either alone or in conjunction with others, makes a tender offer, exchange offer or otherwise offers to purchase or solicits an offer to sell any shares of Company Stock held in the Trust, (hereinafter referred to as an "Offer"), the Trustee shall be obligated to sell, offer to sell, exchange or otherwise dispose of, in whole or in part, that number of shares of any Company Stock held in the Trust subject to such Offer that are allocated to the Accounts of Participants, to the extent that it is timely so directed by the Participant pursuant to this Article V.

(b) In the event, under the terms of an Offer or otherwise, any shares of Company Stock offered for sale, exchange or other disposition pursuant to such Offer may be withdrawn from such Offer, the Trustee shall follow the instructions of each

Participant respecting the withdrawal of such shares from such Offer in the same manner and in the same proportion that such instructions originally were received by the Trustee from each Participant to sell, offer to sell, exchange or otherwise dispose of such shares pursuant to such Offer.

(c)    In the event that an Offer for fewer than all of the shares of Company Stock held in the Trust shall be received, the Trustee shall sell, offer to sell, exchange or otherwise dispose of shares of Company Stock in accordance with this Section 5.3. In the event that the aggregate number of shares sold, exchanged or disposed of pursuant to such Offer is less than the aggregate number of shares allocated to Accounts that the Trustee has offered for sale, exchange or other disposition pursuant to this Section 5.3, the Trustee shall allocate the proceeds of such sale, exchange or disposition on a pro rata basis among the aggregate shares allocated to Accounts that were offered for sale, exchange or other disposition pursuant to this Section 5.3.

(d)    In the event that an Offer shall be received and instructions shall be solicited from Participants pursuant to this Section 5.3 regarding such Offer, and prior to the termination of such Offer, another Offer is received for the securities subject to the first Offer, the Trustee shall use its best efforts under the circumstances to solicit instructions from each Participant:

(i)    with respect to securities offered for sale, exchange or disposition pursuant to the first Offer, whether to withdraw such Offer, if possible, and, if withdrawn, whether to sell, offer to sell, exchange or otherwise dispose of any such securities pursuant to the second Offer, and

(ii)    with respect to securities not offered for sale, exchange or other disposition pursuant to the first Offer, whether to sell, offer to sell, exchange or otherwise dispose of any such securities pursuant to the second Offer.

The Trustee shall follow all such instructions received in a timely manner from Participants in the same manner and in the same proportion as provided in paragraph (a) of this Section 5.3. With respect to any further Offer received for any Company Stock and subject to any earlier Offer (including successive Offers from one or more existing offerors), the Trustee shall continue to solicit directions from each Participant in the manner described in this Article V.

(e)    Any proceeds received as a result of the sale, exchange or other disposition of shares of Company Stock pursuant to an Offer shall be held in the Trust and invested by the Trustee in Company Stock. If Company Stock is not available for purchase, such proceeds shall be invested in short-term, fixed-income investments selected by the Administrative Committee that have a maturity of not more than

two years from the time such investment is made, unless and until the Trustee is otherwise directed by the Administrative Committee.

5.4    Voting of Company Stock:

With respect to shares of Company Stock allocated to the Accounts of any Participant, on any matter to be presented for a vote by the stockholders of the Company, the Trustee shall vote all such shares in accordance with directions received from each such Participant.

With respect to shares of Company Stock allocated to Accounts for which no instructions were timely received by the Trustee, such shares shall be voted in the same manner and in the same proportion as the shares allocated to Accounts of Participants with respect to which the Trustee received valid voting instructions.

5.5    Dissemination of Information:

In the event that, as contemplated by Section 5.3 or 5.4, an Offer for any Company Stock held in the Trust shall be received, or any matter shall be presented for a vote by the shareholders of the Company, and Participants shall be entitled to determine whether to accept, reject or withdraw an acceptance of such Offer, or to determine the manner in which shares of Company Stock shall be voted.

(a)    The Company and the Trustee shall not interfere in any manner with the decision of any Participant with respect to such Offer or vote, as the case may be.

(b)    The Trustee shall arrange for such investment decision or vote to be made on a confidential basis (including, to the extent the Trustee deems necessary or advisable to preserve such confidentiality, by arranging for the transfer of the recordkeeping functions under the Plan to itself or an independent recordkeeper) and shall not divulge such investment decision or vote to anyone, including the Company, the Administrative Committee, the Investment Committee, or any director, officer, employee or agent of the Company, it being the intent of this Section 5.5 to ensure that the Company (and its directors, officers, employees and agents) cannot determine the direction given by any Participant.

(c)    The Trustee shall use its best efforts to communicate or cause to be communicated to each Participant: (i) the provisions of this Plan and the Trust Agreement relating to the right of each Participant to direct the Trustee with respect to Company Stock subject to such Offer or vote and the obligation of the Trustee to follow such directions, and (ii) the consequences of any failure to provide the Trustee with timely instructions.

(d)   The Trustee shall use its best efforts to distribute or cause to be distributed to each Participant all communications directed generally to the owners of Company Stock to whom such Offer is made or is available or who are entitled to vote.

(e)   The Trustee shall use its best efforts to distribute or cause to be distributed to each Participant all communications that the Trustee may receive, if any, from the person making the Offer or soliciting proxies or any other interested party (including the Company) relating to the Offer or the matters being presented for a vote by the shareholders of the Company, as the case may be.

The Company and the Administrative Committee shall provide the Trustee with such information and assistance (including the transfer of recordkeeping functions) as the Trustee may reasonably request in connection with any communications or distributions to each Participant.

5.6     Invalidation of Participant Direction:

In the event a court of competent jurisdiction shall issue an opinion or order to the Plan, the Company or the Trustee, which shall, in the opinion of counsel to the Company or the Trustee, in all circumstances or in any particular circumstances, invalidate any provision or provisions of Article V or the Trust Agreement regarding the determination of whether Company Stock held in the Trust shall be sold, offered for sale, exchanged or otherwise disposed of pursuant to an Offer, or the manner in which such Company Stock shall be voted, then, upon notice thereof to the Company or the Trustee as the case may be, such invalid provisions shall be given no further force or effect. In such circumstances, the Trustee shall have no discretion to sell, offer for sale, exchange or otherwise dispose of or vote Company Stock held in the Trust unless and to the extent required under such order or opinion, but shall follow any instructions received from a Participant, to the extent such instructions have not been invalidated.

To the extent that the Trustee is required to exercise any residual fiduciary responsibility with respect to any sale, offer to sell, exchange or other disposition of or any vote of Company Stock held in the Trust, the Trustee shall take into account in exercising its fiduciary judgment, unless it is clearly imprudent to do so, any directions timely received from a Participant.

5.7     Voting of Other Designated Investment Alternatives:

On any matter presented for a vote by the shareholders (or unit holders) of a registered investment company, whose shares comprise a Designated Investment Alternative of the Plan, each Participant shall have the authority and discretion to direct the Trustee's voting of, and the Trustee shall vote in accordance with such directions, shares in such Designated Investment Alternative allocated to the Accounts of such Participant. With respect to shares in Designated Investment Alternatives for which no instructions are timely received by the Trustee, such shares shall be voted in the same manner and in the