same proportion as the shares in such Designated Investment Alternative allocated to Accounts of Participants with respect to which the Trustee received valid voting instructions.

In the exercise of the authority and discretion pursuant to this Section 5.7 each Participant shall be a "named fiduciary" within the meaning of ERISA section 403(a)(1). The Trustee shall have no discretion to vote shares in any Designated Investment Alternative on any matter presented for a shareholder vote except in accordance with this Section 5.7.

5.8     Valuation of Accounts:

Subject to the next paragraph,  for each Valuation Date the Administrative Committee shall cause each Participant's Accounts to be adjusted upward to reflect any earnings, and downward to reflect any losses attributable to such Accounts since the preceding Valuation Date. Each distribution, investment reallocation or other payment under the Plan shall be made as of the Valuation Date immediately preceding or coincident with such distribution, investment reallocation or payment.

If as of any Valuation Date, other than the last day of the Plan Year, only a particular Participant's or a group of Participants' Accounts is affected by a contribution, distribution, investment reallocation or other payment only the Accounts so affected shall be valued by the Administrative Committee and the preceding provisions of this Section 5.8 shall be applied separately to such Accounts.

5.9     Investment Managers:

The Investment Committee may, by an instrument in writing, appoint one or more persons as an Investment Manager. Each person so appointed shall be:  (i) an investment adviser registered under the Investment Advisers Act of 1940, (ii) a bank as defined in that Act, or (iii) an insurance company qualified to manage, acquire or dispose of any asset of the Plan under the laws of more than one state.

Each Investment Manager shall acknowledge in writing that it is a fiduciary with respect to the Plan. The Investment Committee shall enter into an agreement with each Investment Manager that it appoints specifying the duties and compensation of such Investment Manager and the other terms and conditions under which such Investment Manager shall be retained. The Investment Committee shall not be liable for any act or omission of any Investment Manager that it appoints and shall not be liable for following the advice of any Investment Manager with respect to any duties delegated to any Investment Manager.

The Investment Committee shall have the power to determine the Trust assets to be invested pursuant to the direction of a designated Investment Manager and to set investment objectives and guidelines for the Investment Manager.

5.10    <u>Compensation</u>:

Each Investment Manager and Trustee shall be paid such reasonable compensation, in addition to their expenses, as shall from time to time be agreed to by the Company or other person making such appointment; provided, however, that no such compensation shall be paid to any Investment Manager or Trustee who is an Employee.

ARTICLE VI

DISTRIBUTION UPON RETIREMENT OR TERMINATION
OF EMPLOYMENT AND WITHDRAWALS

6.1     Amount of Distribution:

Upon a Participant's Retirement or Termination of Employment the Participant shall be entitled to a distribution of the Participant's Plan Benefit, subject to the provisions of this Article VI.

6.2     Forms of Distribution:

Subject to Section 6.8 and subject to such limitations as may apply under procedures established to administer the Plan, a Participant who either Retires or has a Termination of Employment with a Plan Benefit shall be entitled to elect to have his or her Plan Benefit paid in one or more of the following forms:

(a)     a single sum distribution in cash;

(b)     a single sum distribution in Company Stock to the extent such Company Stock is held in the Participant's Accounts;

(c)     a single sum distribution in kind;

(d)     the application of the Account to the purchase from an insurance company of any one of the following forms of annuities for the Participant or the Participant and his or her survivor annuitant:

   (i)     a single life annuity,

   (ii)    a 100% joint and survivor annuity,

   (iii)   a 50% joint and survivor annuity,

   (iv)    a ten-year term certain annuity, or

   (v)     such other annuity form or forms as may be made available by the Administrative Committee, provided that the Participant shall be permitted to elect that a specific dollar amount of his or her Plan Benefit be distributed under Section 6.2(a), with the remainder to be transferred to an insurance company for the purchase of an available annuity. Notwithstanding this paragraph (d), a Participant's election of an annuity

form of distribution shall be subject to any minimum dollar requirements as may be established by an independent insurance company (for 2005, $10,000); or

(e) deferral by the Participant until the Participant attains age 70-1/2 in the case of Retirement, or until attainment of Normal Retirement Age, in the case of the Participant's Termination of Employment with a Plan Benefit. If the Participant defers distribution under the provisions of this Section 6.2(e), he or she may elect to have his or her Plan Benefit paid in any form described in paragraphs (a) through (d) above at any time on or before attainment of age 70-1/2 or Normal Retirement Age, as applicable.

  (i) If the Participant has attained age 70-1/2 or Normal Retirement Age, as applicable, and has failed to request distribution of his or her Plan Benefit, his or her Plan Benefit shall be paid in the form of a single sum distribution in cash. Effective January 1, 2005, this subparagraph 6.2(e)(i) shall cease to apply.

  (ii) Notwithstanding the foregoing, if a Participant who has a Termination of Employment has elected deferral of his or her Plan Benefit and his or her Plan Benefit is $3,500 ($5,000, effective July 1, 1999) or less on the applicable Valuation Date, distribution of such amount shall not be deferred and shall be paid in a single sum distribution in cash. Effective March 28, 2005, this subparagraph 6.2(e)(ii) shall cease to apply.

Notwithstanding the foregoing in this Section 6.2 or anything to the contrary in this Plan, effective January 1, 2005, in the case of Retirement or Termination of Employment a Participant may defer distribution until the maximum time permitted under Section 6.6.

6.3 **Timing of Distribution:**

The Participant shall be entitled to elect to have his or her Plan Benefit paid in any form of distribution provided under Section 6.2 within the period ending six months following the date of his or her Retirement or Termination of Employment.

(a) In the absence of a distribution election within six months following the date of the Participant's Retirement or Termination of Employment, the Participant's Plan Benefit shall be paid upon attainment of Normal Retirement Age (or in the case of Retirement, if later, upon the expiration of the six-month distribution election period provided above), in the form of a single sum distribution in cash; provided, however, that at any time prior to the Participant's attaining Normal Retirement Age, the Participant may request a distribution pursuant to an option described Sections 6.2(a) through 6.2(e); and, provided, further, that notwithstanding the foregoing or anything to the contrary in this Plan, effective January 1, 2005,

subject to the terms of Section 6.8 of this Plan, all reference in this Section 6.3 to a six-month distribution election period in connection with the Participant's Retirement or Termination of Employment shall be disregarded and the Participant's Benefit Commencement Date shall be no earlier than as soon as practicable after the Participant elects a distribution pursuant to an option described in Sections 6.2(a) through 6.2(e). Where no such election is received by the Administrative Committee, a Participant is deemed to have elected to commence such distribution at the maximum time permitted under Section 6.6.

    (i)    In the case of a Participant who has a Termination of Employment and whose Plan Benefit as of the applicable Valuation Date is $3,500 ($5,000, effective July 1, 1999) or less, the Participant's Plan Benefit shall be paid as soon as practicable in a single sum distribution in cash in an absence of an election by the Participant. Notwithstanding the foregoing or anything to the contrary in this Plan, effective March 28, 2005, this subparagraph 6.3(a)(i) shall cease to apply.

(b)    The value of the Participant's Plan Benefit shall be determined, and distribution of such Plan Benefit pursuant to this Section 6.3 shall be paid, as soon as practicable following such Participant's election pursuant to this Section 6.3 or as soon as practicable following the time otherwise prescribed by this Section 6.3 for distribution of such Participant's Plan Benefit.

6.4    <u>Investments Pending Distribution</u>:

A Participant shall be permitted to direct the investment of his or her Accounts during the period prior to the actual distribution of the Participant's Plan Benefit from the Plan.

6.5    <u>Direct Rollover Distributions</u>:

A Participant who is eligible to receive a distribution from the Plan pursuant to the provisions of this Article VI which constitutes an "eligible rollover distribution," as defined in Code section 402(c)(4) (Code section 402(f)(2)(A), effective January 1, 2002), may direct the Administrative Committee to transfer all or any part of such distribution to an "eligible retirement plan," as defined in Code section 402(c)(8)(B) (including tax-qualified retirement plans and individual retirement accounts). Effective for distributions made after December 31, 2001, "eligible retirement plan" shall also include an annuity contract described in Code section 403(b) and an eligible plan under Code section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan. Effective for distributions made after December 31, 2001, the definition of "eligible retirement plan" shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Code section 414(p). The Administrative Committee shall

cause the portion of the distribution which the Participant has elected to so transfer to be transferred directly to the designated "eligible retirement plan".

Subject to such limitations as may apply under procedures established to administer the Plan, the Participant may elect to receive the portion of the eligible rollover distribution to be transferred to an eligible retirement plan in any of the forms described in Sections 6.2(a)-(c), which may be different from the form for the portion of the Plan Benefit that is to be paid directly to the Participant, if any.

6.6     <u>Minimum Required Distributions</u>:

(a)     Notwithstanding any other provision of this Plan, distribution of a Participant's Plan Benefit shall commence not later than required beginning date. The "required beginning date" means the end of the calendar year in which the Participant attains age 70½ or, if later, April 1 of the calendar year following the calendar year in which the Participant ceases Employment; <u>provided</u>, however, that in the case of a Participant who is a 5% owner (as defined in Code section 416(i)(1)), such distribution shall commence not later than April 1 of the calendar year following the calendar year in which the Participant attains age 70½. The distribution of the Plan Benefit of the Participant's designated beneficiary shall commence in accordance with Article VII. All distributions required under this article will be determined and made in accordance with the Treasury regulations under section 401(a)(9) of the Internal Revenue Code.

(b)     Unless the Participant's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the required beginning date, as of the first distribution calendar year distributions will be made in accordance with Section 6.4(c). If the Participant's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Code section 401(a)(9) and the Treasury regulations.

(c)     During the Participant's lifetime, the minimum amount that will be distributed for each distribution calendar year is the lesser of:

(i)     the quotient obtained by dividing the Participant's Account Balance by the distribution period in the Uniform Lifetime Table set forth in section 1.401(a)(9)-9 of the Treasury regulations, using the Participant's age as of the Participant's birthday in the distribution calendar year; or

(ii)    if the Participant's sole designated beneficiary for the distribution calendar year is the Participant's Spouse, the quotient obtained by dividing the Participant's Account Balance by the number in the Joint and Last Survivor Table set forth in section 1.401(a)(9)-9 of the Treasury regulations, using the Participant's and Spouse's attained ages as of the Participant's and Spouse's

birthdays in the distribution calendar year.

Required minimum distributions will be determined under this Section 6.6(c) beginning with the first distribution calendar year and up to and including the distribution calendar year that includes the Participant's date of death.

(d) Definitions: (i) "Designated beneficiary" means the individual who is designated as the Beneficiary under Article VII of the Plan and is the designated beneficiary under section 401(a)(9) of the Internal Revenue Code and section 1.401(a)(9)-1, Q&A-4, of the Treasury regulations. (ii) "Distribution calendar year" means a calendar year for which a minimum distribution is required. The first distribution calendar year is the calendar year immediately preceding the calendar year which contains the Participant's required beginning date. The required minimum distribution for the Participant's first distribution calendar year will be made on or before the Participant's required beginning date. The required minimum distribution for other distribution calendar years, including the required minimum distribution for the distribution calendar year in which the Participant's required beginning date occurs, will be made on or before December 31 of that distribution calendar year. (iii) "Life expectancy" means such expectancy as computed by use of the Single Life Table in section 1.401(a)(9)-9 of the Treasury regulations.

(e) Any amounts payable over a life expectancy or life expectancies pursuant to this Section 6.6 shall be paid in cash.

(f) Distributions under this Article VI of the Participant's Plan Benefit and any annuity contract purchased therewith shall be paid in accordance with the requirements of Code section 401(a)(9) and the final and proposed regulations thereunder, including the minimum distribution incidental benefit requirement of Treasury Regulation section 1.401(a)(9)-2.

6.7    Special Rule on Commencement of Benefits:

Unless a Participant otherwise elects pursuant to this Article VI, a Participant shall in no event begin to receive his or her Plan Benefit later than the sixtieth day after the close of the Plan Year in which the latest of the following events occur: (a) the Participant attains age 65; (b) the tenth anniversary of the date the Participant commenced participation; or (c) the Participant's Termination of Employment or Retirement.

6.8    Annuity Requirements:

(a) This Section 6.8 shall apply notwithstanding any other provision of this Plan.

(b) Distribution of the Participant's Plan Benefit shall be paid in the form of a Qualified Joint and Survivor Annuity unless some other form of distribution provided for in Section 6.2 is elected by the Participant pursuant to a "qualified

election" in accordance with paragraph (c) of this Section 6.8 within the ninety-day period ending on the Participant's Benefit Commencement Date.

(i)     The Administrative Committee shall within a reasonable period of time, but in any event no less than thirty days and no more than ninety days prior to a Participant's Benefit Commencement Date provide to the Participant a written explanation of:

    (A)     the terms and conditions of a Qualified Joint and Survivor Annuity;

    (B)     the Participant's right to make, and the effect of, an election to waive the Qualified Joint and Survivor Annuity;

    (C)     the rights of the Participant's spouse under paragraph (c) of this Section 6.8;

    (D)     the Participant's right to make, and the effect of, a revocation of a previous election to waive a Qualified Joint and Survivor Annuity, which election shall only be effective if made prior to the Participant's Benefit Commencement Date; and

    (E)     the material features and relative values of the various optional forms of distribution under the Plan.

(ii)    The Administrative Committee may provide for such other notices, information or election periods or take such other action as the Administrative Committee considers necessary or appropriate so that this Section 6.8 is implemented in such a manner as to comply with Code sections 401(a)(11) and 417.

(iii)   Notwithstanding the foregoing:

    (A)     if a Participant who has Retired and has attained age 70-1/2, or a Participant who has had a Termination of Employment and has attained Normal Retirement Age, and in either case has failed to request his or her Plan Benefit, his or her Plan Benefit shall be paid in the form of a Qualified Joint and Survivor Annuity, except with respect to a Participant with a Plan Benefit of $3,500 ($5,000, effective July 1, 1999) or less, whose Plan Benefit shall be paid in the form of a single sum distribution in cash.

    (B)     any distribution under the circumstances described in Section 6.3(a) shall be paid in the form of a Qualified Joint and Survivor Annuity, except with respect to a Participant with a Plan Benefit of

$3,500 ($5,000, effective July 1, 1999) or less, whose Plan Benefit shall be paid in the form of a single sum distribution in cash; provided, however, that at any time prior to the Participant's attaining Normal Retirement Age, the Participant may request another form of distribution provided for in Section 6.2 pursuant to Section 6.8(c) in a "qualified election."

Notwithstanding the foregoing or anything to the contrary in this Plan, effective January 1, 2005, this Section 6.8(b)(iii) shall cease to apply.

(c)   A "qualified election" for purposes of this Section 6.8 shall be a waiver of the Qualified Joint and Survivor Annuity or for the purposes of Section 7.7 shall be a waiver of a Qualified Preretirement Survivor Annuity and the election of another optional form of benefit permitted under Sections 6.2 or 7.2, as applicable.  If the Participant is married at his or her Benefit Commencement Date, this waiver shall not be effective unless his or her spouse:

   (i)   consents in writing;

   (ii)   the consent is witnessed by a notary public; and

   (iii)   the consent acknowledges the effect of the election.

Additionally, a Participant's waiver of the Qualified Joint and Survivor Annuity or the Qualified Preretirement Survivor Annuity will not be effective unless the election designates a form of benefit distribution available under Sections 6.2, 6.6 or 7.2 as relevant, which may not be changed without spousal consent.

Notwithstanding this consent requirement, if the Participant establishes to the satisfaction of the Administrative Committee that such written consent may not be obtained because there is no spouse or the spouse cannot be located, or because such other circumstances exist as the Administrative Committee may provide in accordance with regulations promulgated by the Internal Revenue Service, a waiver will be deemed a "qualified election."  Any "qualified election" under this provision shall not be effective with respect to any other spouse.  No consent obtained under this provision shall be valid unless the Participant has received notice as provided in paragraph (b)(i) of this Section 6.8 or paragraph (ii) of Section 7.7.  A spouse shall have no right to revoke his or her consent to a waiver with respect to any distribution.

A revocation of a prior waiver may be made by a Participant without the consent of the spouse any time before the Participant's Benefit Commencement Date. After such revocation, the Participant may again make (with his or her spouse's consent, if the Participant is married) another "qualified election" at any time prior

to the Participant's Benefit Commencement Date. The number of revocations shall not be limited.

(d)     Notwithstanding the provisions of this Section 6.8, if on the Valuation Date preceding the first distribution from a Participant's Account, the Participant's Plan Benefit is $3,500 ($5,000, effective July 1, 1999) or less, distribution of such Plan Benefit shall be paid in the form elected by the Participant from among the forms described in Sections 6.2(a)-(c) without Spousal Consent. Notwithstanding the foregoing or anything to the contrary in this Plan, effective March 28, 2005, this subparagraph 6.8(d) shall cease to apply.

(e)     Unless a Participant makes a timely election, in accordance with the election requirements of this Section 6.8, to have distributions paid over a period certain not extending beyond the life expectancy (recalculated annually) of the Participant, the provisions of Section 6.6 shall be satisfied with respect to that portion of a Participant's Plan Benefit subject to the annuity requirements of this Section 6.8 by paying that portion of the Participant's Plan Benefit to an insurance company for the purchase of an annuity contract providing for distributions over: (i) the life of the Participant, in the case of a Qualified Joint and Survivor Annuity payable to an unmarried Participant, or (ii) the life of the Participant and his or her spouse, in the case of a Qualified Joint and Survivor Annuity payable to a married Participant.

6.9     Dividends on Company Stock

Dividends on Company Stock shall be distributed to the Participant (or beneficiary of a deceased Participant) or reinvested in Company Stock as the Participant or beneficiary may direct by providing the Administrative Committee with such advance notice, in such manner and at such time, as required by the Administrative Committee. In the absence of a direction, the Participant shall be deemed to have elected that such dividends be reinvested in Company Stock.

6.10     Withdrawals:

A Participant who remains in employment with an Employer following his or her attainment of age 70½, may elect to make one withdrawal in cash of all or a portion of his or her Account during each 12-month period while he or she remains so employed, in accordance with procedures approved by the Administrative Committee. Notwithstanding the foregoing, effective July 1, 2003, a participant who remains in employment with an Employer following his or her attainment of age 59½, may elect to withdraw in kind all, but not less than all, of his or vested Account Balance held in Company Stock in accordance with procedures approved by the Administrative Committee.

6.11    <u>Exclusion of Rollover Contributions Subaccounts from Calculation of Cash-out Limit</u>:

Notwithstanding any other provision of the Plan, effective for distributions made in Plan Years beginning on and after January 1, 2002, for purposes of calculating the $5,000 cash-out limit under Sections 6.2(e)(ii), 6.3(a)(i), 6.8(b)(iii), 6.8(d), and 7.7(c), Rollover Contributions Subaccounts shall be disregarded. Notwithstanding anything to the contrary in this Plan, effective March 28, 2005, this Section 6.11 shall cease to apply.

## ARTICLE VII

### DISTRIBUTION UPON DEATH

7.1    <u>Amount of Distribution</u>:

Upon a Participant's death, his or her Beneficiary shall be entitled to a distribution of the Participant's Plan Benefit, subject to the provisions of this Article VII.

7.2    <u>Form of Distribution</u>:

Subject to Section 7.7 and subject to such limitations as may apply under procedures established to administer the Plan, upon the death of a Participant, his or her Beneficiary shall be entitled to elect to have the Participant's Plan Benefit paid in one or more of the following forms:

(a)    a single sum distribution in cash;

(b)    a single sum distribution in Company Stock to the extent such Company Stock is held in the Participant's Accounts;

(c)    a single sum distribution in kind;

(d)    the application of the Account to the purchase from an insurance company of any one of the following forms of annuities for the Beneficiary:

   (i)    a single life annuity,

   (ii)    a ten-year term certain annuity, or

   (iii)    such other annuity form or forms as may be made available by the Administrative Committee;

provided that the Beneficiary shall be permitted to elect that a specific dollar amount of the Participant's Plan Benefit be paid under Section 7.2(a), with the remainder to be transferred to the insurance company for the purchase of an available annuity for the Beneficiary.  Notwithstanding this paragraph (d), a Beneficiary's election of an annuity form of distribution shall be subject to any minimum dollar requirements as may be established by an independent insurance company (for Plan Year 2005, $10,000).

7.3    Timing of Distribution:

The Beneficiary shall be entitled to elect to have the Participant's Plan Benefit paid in any form of distribution provided under Section 7.2 within the period ending six months following the date of the Participant's death.

(a)    In the absence of a distribution election within six months following the date of the Participant's death, the Participant's Plan Benefit shall be paid in a single sum distribution in cash.

(b)    The value of a Participant's Plan Benefit shall be determined, and distribution of such Plan Benefit to the Beneficiary pursuant to this Section 7.3 shall be paid, as soon as practicable following such Beneficiary's election pursuant to this Section 7.3 or as soon as practicable following the time otherwise prescribed by this Section 7.3 for distribution of such Participant's Plan Benefit.

7.4    Investments Prior to Distribution:

A Beneficiary shall be permitted to direct the investment of the Participant's Accounts during the period prior to the actual distribution of the Plan Benefit from the Plan.

7.5    Direct Rollover Distributions:

A Beneficiary who is the Participant's spouse (or an alternate payee under a "qualified domestic relations order" as defined in Code section 414(p) who is treated as the Participant's spouse) who is eligible to receive a distribution from the Plan pursuant to the provisions of this Article VII which constitutes an "eligible rollover distribution," as defined in Code section 402(c)(4) (Code section 402(f)(2)(A), effective January 1, 2002), may direct the Administrative Committee to transfer all or any part of such distribution to an individual retirement account or an individual retirement annuity (or, effective for distributions after December 31, 2001, to an "eligible retirement plan" as defined in Section 6.5 of the Plan). The Administrative Committee shall cause the portion of the distribution which such spouse (or alternate payee under a "qualified domestic relations order" as defined in Code section 414(p) who is treated as the Participant's spouse) has elected to so transfer to be transferred directly to the designated individual retirement account or individual retirement annuity. The Beneficiary (or alternate payee) may elect to receive the portion of the eligible rollover distribution to be transferred to an eligible retirement plan in any of the forms described in Sections 7.2(a)-(c), which may be different from the form of the portion of the Plan Benefit that is to be paid directly to the Beneficiary (or alternate payee), if any.

7.6    Distributions Shall be Paid in Accordance with the Requirements of Code Section 401(a)(9):

Distribution under this Article VII of the balance of the Participant's Plan Benefit and any annuity contract purchased therewith shall be paid in accordance with the requirements of Code section 401(a)(9) and the final and proposed regulations thereunder, including the minimum distribution incidental benefit requirement of Proposed Treasury Regulation section 1.401(a)(9)-2.

7.7    Pre-Retirement Death Distributions:

(a)    This Section 7.7 shall apply notwithstanding any other provision of this Plan.

(b)    If a married Participant dies before his or her Benefit Commencement Date, then the Participant's Plan Benefit shall be applied toward the purchase of a Qualified Preretirement Survivor Annuity unless waived pursuant to a "qualified election" in accordance with paragraph (c) of Section 6.8 within the "election period" described below. Unless otherwise elected pursuant to this Section 7.7, the Qualified Preretirement Survivor Annuity shall commence within a reasonable time after the death of the Participant. A surviving spouse entitled to have an annuity purchased pursuant to this Section 7.7 may elect to have the distribution paid instead in some other form of benefit prescribed in Section 7.2.

(i)    For purposes of this Section 7.7, the "election period" shall be the period beginning on the first day of the Plan Year in which the Participant attains age 35 and ends on the date of the Participant's death. If a Participant separates from service prior to the first day of the Plan Year in which age 35 is attained, with respect to the Account Balance as of the date of separation, the "election period" shall begin on the date of separation. A Participant who will not yet attain age 35 as of the end of any current Plan Year may make a special qualified election to waive the Qualified Preretirement Survivor Annuity for the period beginning on the date of such election and ending on the first day of the Plan Year in which the Participant will attain age 35. Such election shall not be valid unless the Participant receives a written explanation of the Qualified Preretirement Survivor Annuity in such terms as are comparable to the explanation required under paragraph (b)(i) of Section 6.8. Qualified Preretirement Survivor Annuity coverage will be automatically reinstated as of the first day of the Plan Year in which the Participant attains age 35. Any new waiver on or after such date shall be subject to the full requirements of this Section 7.7.

(ii)    The Administrative Committee shall provide each Participant within the "applicable period" for such Participant a written explanation of:

(A)    the terms and conditions of a Qualified Preretirement Survivor Annuity;

(B)    the Participant's right to make, and the effect of, an election to waive the Qualified Preretirement Survivor Annuity;

(C)    the rights of the Participant's spouse under paragraph (c) of Section 6.8; and

(D)    the Participant's right to make and the effect of, a revocation of a previous election to waive a Qualified Preretirement Survivor Annuity, which election shall only be effective if made prior to the Participant's Benefit Commencement Date.

(iii)    The "applicable period" is whichever of the following periods ends last:

(A)    the period beginning with the first day of the Plan Year in which the Participant attains age 32 and ending with the close of the Plan Year preceding the Plan Year in which the Participant attains age 35; or

(B)    a reasonable period ending after the person becomes a Participant.

Notwithstanding the foregoing, in the case of a Participant who separates from service before the Plan Year in which age 35 is attained, notice shall be provided within the two year period beginning one year prior to separation and ending one year after separation. If the Participant thereafter returns to Employment with the Company, the "applicable period" for such Participant shall be redetermined.

(c)    Notwithstanding any other provision of this Section 7.7, if on the Valuation Date preceding the first distribution from a Participant's Accounts, the Participant's Plan Benefit is $3,500 ($5,000, effective July 1, 1999) or less, distribution of such Plan Benefit to the Participant's Beneficiary shall be paid in the form elected by the Beneficiary from among the forms described in Sections 7.2(a)-(c). Notwithstanding anything to the contrary in this Plan, effective March 28, 2005, this Section 7.7(c) shall be disregarded and cease to apply.

ARTICLE VIII

ADMINISTRATION OF THE PLAN

8.1    Named Fiduciaries:

Except as provided in Sections 5.2 and 5.7, the Administrative Committee shall be the 'named fiduciary' of the Plan (as that term is defined in ERISA section 402(a)(1)) with authority to manage and control the operation and administration of the Plan and the Investment Committee shall be the 'named fiduciary' of the Plan with authority to establish Designated Investment Alternatives, manage and control all Trust assets (other than Self-Directed Assets), and appoint one or more Investment Managers pursuant to Section 5.9.

The Company shall be the "administrator" and "plan administrator" with respect to the Plan, as those terms are defined in ERISA section 3(16)(A) and in Code section 414(g) respectively.

Any person or persons may serve in more than one named fiduciary capacity with respect to the Plan, including, without limitation, service as a Trustee, as a member of the Administrative Committee and as a member of the Investment Committee.

8.2    The Administrative Committee:

The Administrative Committee shall consist of not less than one person appointed from time to time by the Senior Vice President, Human Resources (or such officer's functional successor). The members of the Administrative Committee shall serve at the pleasure of the Senior Vice President, Human Resources (or such officer's functional successor) without compensation and, except as required by applicable law, without bond or other security. Any member of the Administrative Committee may resign by delivering his or her written resignation to the Senior Vice President, Human Resources (or such officer's functional successor) and to the Secretary of the Administrative Committee. Unless the Senior Vice President, Human Resources (or such officer's functional successor) otherwise provides, any member of the Administrative Committee who is an Employee of the Company or an Affiliate and who reports, directly or indirectly, to the Senior Vice President, Human Resources (or such officer's functional successor) at the time of his or her appointment, will be considered to have resigned from the Investment Committee when he or she ceases to be an Employee or no longer reports, directly or indirectly, to the Senior Vice President, Human Resources (or such officer's functional successor).

The members of the Administrative Committee shall elect a chairperson from their number and a Secretary who may, but need not, be one of the members of the

Administrative Committee; may appoint from their number such committees with such powers as they shall determine; may authorize one or more of their number or any agent to execute or deliver any instrument or make any payment on behalf of the Administrative Committee; and may retain counsel, employ agents and obtain clerical, medical, actuarial and accounting services as the Administrative Committee may require or deem advisable from time to time. All action by the Administrative Committee shall be taken at a meeting or via telephone conference. The Administrative Committee shall hold meetings upon notice, at such place or places, or via telephone conference, and at such time or times as it may from time to time determine. Any action required or permitted to be taken at any meeting of the Administrative Committee may be taken without a meeting, if all the members of the Administrative Committee consent thereto in writing.

If more than one member is appointed, 50% of the members of the Administrative Committee then in office shall constitute a quorum for the transaction of business at any meeting of the Administrative Committee. The vote of a majority of the members present at the time of the vote, if a quorum is present at such time, shall be the act of the Administrative Committee. However, if less than three members are appointed, the Administrative Committee shall act only upon the unanimous consent of its members. A member of the Administrative Committee who is also a Participant shall not vote or act upon any matter relating to himself or herself unless such person is the sole member of the Administrative Committee.

Subject to Section 8.1, the Administrative Committee shall be responsible for the administration, operation and interpretation of the Plan. It shall have the exclusive authority and right to interpret the Plan provisions and to exercise discretion where necessary or appropriate in the interpretation and administration of the Plan and to decide any and all matters arising thereunder or in connection with the administration of the Plan (including correction of errors and the determination of the eligibility of Participants and Beneficiaries for benefits under the Plan), and it shall endeavor to act, whether by general rules or by particular decisions, so as not to discriminate in favor of any person or class of persons. Such decisions, actions and records of the Administrative Committee shall be conclusive and binding upon the Company, any Employer and all persons having or claiming to have any right or interest in or under the Plan.

The Administrative Committee shall maintain or cause to be maintained accounts to the extent it deems necessary or appropriate showing the fiscal transactions of the Plan.

In addition to the foregoing, the Administrative Committee shall have the following powers and responsibilities:

(a)    The Administrative Committee shall have the power to promulgate such rules and procedures, to maintain or cause to be maintained such records and to issue such forms as it shall deem necessary or desirable for the administration of the Plan.

(b)  Subject to the terms of the Plan and applicable law, the Administrative Committee shall determine the time and manner in which all elections authorized by the Plan shall be made or revoked.

(c)  The Administrative Committee may direct that such amounts be withheld from any payment due under this Plan as required to comply with applicable income tax law.

(d)  The Administrative Committee shall have such other rights, powers, duties and obligations as may be granted or imposed upon it elsewhere in the Plan.

(e)  The Administrative Committee shall exercise all of its powers and responsibilities in a uniform and nondiscriminatory manner.

(f)  The Administrative Committee may designate persons, including persons other than "named fiduciaries" (as defined in ERISA section 402(a)(2)), to carry out the specified responsibilities of the Administrative Committee and shall not be liable for any act or omission of a person so designated.

Notwithstanding any other provisions of the Plan, appropriate personnel in the Global Benefits and/or Employee Services departments of the Company (or functionally similar departments of any Affiliate of the Company) are authorized to take action with respect to routine ministerial matters in connection with the Plan and to take action with respect to the transfer and disposition of assets, including those held under the Plan, in connection with acquisitions, divestitures and other corporate transactions.

8.3   Investment Committee:

The Investment Committee shall consist of not less than one person appointed from time to time by the Senior Vice President, Human Resources (or such officer's functional successor). The members of the Investment Committee shall serve at the pleasure of the Senior Vice President, Human Resources (or such officer's functional successor) without compensation and, except as required by applicable law, without bond or other security. Any member of the Investment Committee may resign by delivering his or her written resignation to the Senior Vice President, Human Resources (or such officer's functional successor) and to the Secretary of the Investment Committee. Unless the Senior Vice President, Human Resources (or such officer's functional successor) otherwise provides, any member of the Investment Committee who is an Employee of the Company or an Affiliate at the time of his or her appointment will be considered to have resigned from the Investment Committee when he or she ceases to be an Employee.

The operation and procedures of the Investment Committee shall be the same as the operation and procedures of the Administrative Committee as set forth in the second and third paragraphs of Section 8.2 above.

Subject to Section 8.1, the Investment Committee shall be responsible for the investment of Trust assets and shall have the following powers and responsibilities:

   (a) The Investment Committee shall establish and carry out a funding policy and method consistent with the objectives of the Plan and the requirements of ERISA.

   (b) The Investment Committee shall have the power to direct that assets of the Trust be held in a master trust consisting of assets of qualified plans maintained by the Company or an Affiliate.

   (c) The Investment Committee shall have the authority to establish Designated Investment Alternatives in accordance with Section 5.1.

   (d) The Investment Committee shall have such other rights, powers, duties and obligations as may be granted or imposed upon it elsewhere in the Plan.

   (e) The Investment Committee shall exercise all of its powers and responsibilities in a uniform and nondiscriminatory manner.

   (f) The Investment Committee may designate persons, including persons other than "named fiduciaries" (as defined in ERISA section 402(a)(2)), to carry out the specified responsibilities of the Investment Committee and shall not be liable for any act or omission of a person so designated.

8.4    <u>Claim Procedures:</u>

The Administrative Committee shall establish a claims procedure.

8.5    <u>Indemnification:</u>

To the extent permitted by applicable law, no member of the Administrative Committee or the Investment Committee shall be liable for any act or omission of any other member of the Administrative Committee or the Investment Committee nor for any act or omission on his or her own part, other than those acts or omissions attributable to his or her own willful misconduct or gross negligence. To the extent permitted by applicable law, the Company and each other Employer jointly and severally shall indemnify and save harmless the members of the Administrative Committee, the Investment Committee and other Employees, officers or directors of the Company or an affiliate who are fiduciaries against any and all demands, suits, proceedings or claims for liability, loss, damage, or expense (including payment of reasonable expenses in connection with defense against any such demands, suits, proceedings or claims) in connection with the Plan and Trust that may be brought by Participants or their Beneficiaries, Employees of participating Employers, or by any other person,

corporation, entity, government or agency thereof; provided, however, that such indemnification shall not apply with respect to acts or omissions of willful misconduct or gross negligence. The Board of Directors, at the Company's or any Employer's expense, may settle any such claim or demand asserted, or suit or proceeding brought, against any member of the Administrative Committee or the Investment Committee when such settlement appears to be in the best interest of the Company.

8.6     Payment of Expenses:

All Plan expenses, including expenses of the Administrative Committee, the Trustee and any Investment Manager may be payable from the Trust and to the extent not paid by the Trust shall be paid by the Employer.

Notwithstanding the foregoing, if any expenses to be paid from the Trust are allocable to one or more but not all Accounts, such obligations shall be paid from and charged solely to the Account or Accounts involved, either on a specific or proportionate basis as determined by the Administrative Committee in its sole discretion.

## ARTICLE IX

## OPERATION OF THE TRUST

9.1     Trust; Trustee:

All the funds of the Plan shall be held by a Trustee or Trustees, appointed from time to time pursuant to this Section 9.1, in trust under a Trust Agreement adopted, or as amended, by the Board of Directors for use in providing the benefits of the Plan and paying its expenses not paid directly by any Employer.

The Board of Directors shall appoint one or more individuals (or entities) as Trustee(s) who shall serve as trustee(s) of all or a portion of the Trust pursuant to the Trust Agreement.

Each Trustee shall accept its appointment by executing the Trust Agreement.  No other Plan fiduciary shall be liable for any act or omission of any Trustee with respect to any duties delegated to any Trustee.

If individuals are acting as Trustees, the Trustees shall act by a majority of the Trustees at the time in office and such action may be taken either by a vote at a meeting or in writing without a meeting.  If less than three individual Trustees are appointed, however, the Trustees shall act only upon the unanimous consent of all of the Trustees. The Trustee(s) may authorize in writing any person to execute any document or documents on the Trustee's (or Trustees') behalf, and any interested person, upon receipt of notice of such authorization directed to it, may thereafter accept and rely upon any document executed by such authorized person until the Trustee(s) shall deliver to such interested person a written revocation of such authorization.

## ARTICLE X

## PLAN ADOPTION, AMENDMENT, TERMINATION AND MERGER

10.1    <u>Plan Amendment</u>:

The Company shall have the right at any time to amend the Plan through action of the Company's Board of Directors (or theBoard's delegatee) by an instrument in writing, effective retroactively or otherwise. The Board or its delegatee hereby delegates to the Administrative Committee the right at any time, by an instrument in writing, to amend the Plan to provide for the grant of additional "past service" allocations under the Plan to "international employees" (i.e. U.S. citizens and U.S. permanent residents employed outside of the U.S.). No amendment pursuant to this Section 10.1 shall have any of the effects specified in Section 10.2.

10.2    <u>Limitations on Plan Amendments</u>:

No amendment (except for amendments to Section 11.5) may:

(a)    be made at any time prior to the satisfaction of all liabilities under the Plan with respect to Participants and their Beneficiaries which would permit any part of the corpus or income of the Trust to be used for or diverted to purposes other than for the exclusive benefit of such persons under the Plan and the payment of the expenses of the Plan;

(b)    decrease the Account Balance of any Participant or his or her Beneficiary under the Plan;

(c)    reduce the vested percentage of any Participant;

(d)    eliminate an optional form of benefit distribution (unless such elimination conforms with any applicable requirements under the Code); or

(e)    change the vesting schedule, either directly or indirectly, unless each Participant having not less than three years of Service is permitted to elect, within a reasonable period specified by the Administrative Committee after the adoption of such amendment, to have his or her vested percentage computed without regard to such amendment. The period during which the election may be made shall commence with the date the amendment is adopted and shall end as of the later of:

    (i)    sixty days after the amendment is adopted;

    (ii)    sixty days after the amendment becomes effective; or

(iii)   sixty days after the Participant is issued written notice by the Administrative Committee.

10.3   Termination of Plan or Discontinuance of Contributions:

(a)   The Plan may be terminated at any time by the Board of Directors, but only upon the condition that such action is taken as shall render it impossible for any part of the corpus or income of the Trust be used for or diverted to purposes other than for the exclusive benefit of the Participants and their Beneficiaries under the Plan and for the payment of the expenses of the Plan.

(b)   If the Plan is terminated under paragraph (a) above or in the event the Plan is terminated by operation of law and the Board of Directors determines that the Trust shall be terminated, the Trust shall be revalued as if the termination date were a Valuation Date, and the current value of all Accounts shall be paid in accordance with Article VI to the extent permissible under applicable law and regulations.

(c)   If the Plan is terminated by the Board of Directors but the Board of Directors determines that the Trust shall be continued pursuant to its terms, no further contributions shall be made by either Participants or any Employer, but the Trust shall be administered as though the Plan were otherwise in full force and effect. If the Trust is subsequently terminated, the provisions of paragraph (b) above shall then apply.

(d)   In addition to the right to amend or terminate the Plan, the Board of Directors or the board of directors of any Employer with respect to that Employer may at any time permanently and completely discontinue contributions under the Plan. If the Company or any Employer completely discontinues contributions under the Plan, either by resolution of the Board of Directors or the board of directors of any Employer, respectively, or for any other reason, the Company or the Employer, as applicable, and the Trustee shall proceed under paragraphs (b) or (c) depending upon whether in connection with such complete discontinuance of contributions the Employer has terminated the Plan and Trust or has terminated the Plan and continued the Trust in effect. If no action has been taken by the Board of Directors or the board of directors of the Employer in connection with a complete discontinuance of contributions to the Plan, it shall be deemed that paragraph (c) is applicable.

(e)   As of the date of a termination of the Plan, or the complete discontinuance of contributions under the Plan:

(i)   if not then fully vested, each affected Participant who is then an Employee shall become 100% vested in his or her Company Retirement Contribution Account;

      (ii)   no further allocations shall be made after such date; and

      (iii)  no Eligible Employee shall become a Participant after such date.

(f)    As of the date of a "partial termination" of the Plan:

      (i)    if not then fully vested, each affected Participant who is then an Employee shall become 100% vested in his or her Company Retirement Contribution Account; and

      (ii)   no further contributions or allocations of forfeitures shall be made after such date with respect to each affected Participant.

(g)    All other provisions of the Plan shall remain in effect unless otherwise amended.

(h)    Notwithstanding any other provision of this Plan, an individual who has a Termination of Employment or Retires and takes a distribution of his or her Company Retirement Contribution Account or who has a Termination of Employment with no vested percentage in the Account Balance of his or her Company Retirement Contribution Account shall have no right to any additional benefit in the event of a complete or partial termination of the Plan.

10.4    <u>Merger, Consolidation or Transfer</u>:

The merger or consolidation of the Company with any other person, or the transfer of the assets of the Company to any other person, shall not constitute a termination of the Plan, if provision is made for the continuation of the Plan.

The Plan may not merge or consolidate with, or transfer any assets or liabilities to, any other plan, unless each Participant would (if the Plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he or she would have been entitled to receive immediately before the merger, consolidation or transfer (if the Plan had then terminated).

In the event: (i) the Administrative Committee designates that an Employer shall after a specified date become an Affiliate that is not participating in the Plan, (ii) an Employer ceases to be an Affiliate, or (iii) all or a portion of an Employer's business is sold or otherwise disposed of, the Administrative Committee may in accordance with such rules and procedures as it may prescribe direct that the balances held in the Accounts of Participants affected by such event be transferred in a trust-to-trust basis to the trust under another plan that satisfies the requirements of Code section 401(a) in which such Participants continue to participate.

10.5     <u>Bankruptcy</u>:

In the event that the Company shall at any time be judicially declared bankrupt or
insolvent without any provisions being made for the continuation of this Plan, the Plan
shall be completely terminated in accordance with Section 10.3.

ARTICLE XI

MISCELLANEOUS

11.1    Exclusive Benefit of Participants:

The Trust shall be held for the benefit of all persons who shall be entitled to receive payments under the Plan and for payment of Plan expenses.  Subject to Sections 3.10 and 11.5, it shall be prohibited at any time for any part of the Trust (other than such part as is required to pay expenses) to be used for, or diverted to, purposes other than for the exclusive benefit of Participants or their Beneficiaries.

11.2    Plan Not a Contract of Employment:

The Plan is not a contract of Employment, and the terms of Employment of any Employee shall not be affected in any way by the Plan or related instruments except as specifically provided therein.

11.3    Source of Benefits:

Benefits under the Plan shall be paid or provided for solely from the Trust, and neither the Employer, the Administrative Committee, Trustee, Investment Manager or any insurance company shall assume any liability therefor.

11.4    Benefits Not Assignable:

Benefits provided under the Plan may not be assigned or alienated, either voluntarily or involuntarily.  The preceding sentence shall also apply to the creation, assignment or recognition of a right to any benefit payable with respect to a Participant pursuant to a "domestic relations order" (as defined in Code section 414(p)) unless such order is determined by the Administrative Committee to be a "qualified domestic relations order" (as defined in Code section 414(p)).

11.5    Domestic Relations Orders:

Notwithstanding any other provision of this Plan, the Administrative Committee shall have all powers necessary with respect to the Plan for the proper operation of Code section 414(p) with respect to "qualified domestic relations orders" (or "domestic relations orders" treated as such) referred to in Section 11.4, including, but not limited to, the power to establish all necessary or appropriate procedures, to authorize the establishment of new accounts with respect to such assets and subject to such investment control by the Administrative Committee as the Administrative Committee may deem appropriate, and the Administrative Committee may decide upon and make appropriate distributions therefrom.

To the extent provided by the applicable qualified domestic relations order, benefits to which the alternate payee is entitled shall be distributed prior to the date such benefits would otherwise become payable in accordance with the applicable provisions of the Plan. Subject to such limitations as may apply under procedures established to administer the Plan, such early distribution may be payable in one or more of the forms of distribution described in Sections 6.2(a)-(c).

An alternate payee who is the Participant's former spouse under a "qualified domestic relations order" as defined in Code section 414(p) who is eligible to receive a distribution from the Plan pursuant to the provisions of this Section 11.5 which constitutes an "eligible rollover distribution," as defined in Code section 402(c)(4) (Code section 402(f)(2)(A), effective January 1, 2002), may direct the Administrative Committee to transfer all or any part of such distribution to an "eligible retirement plan," as defined in Code section 402(c)(8)(B) (including tax-qualified retirement plans and individual retirement accounts) (or, effective for distributions after December 31, 2001, to an "eligible retirement plan" as defined under Section 6.5 of the Plan). The Administrative Committee shall cause the portion of the distribution which the alternate payee has elected to so transfer to be transferred directly to the designated "eligible retirement plan." The alternate payee may elect to receive the portion of the eligible rollover distribution to be transferred to an eligible retirement plan in any of the forms described in Sections 6.2(a)-(c), which may be different from the form of the portion of the Plan Benefit that is to be paid directly to the alternate payee, if any.

11.6    <u>Benefits Payable to Minors, Incompetents and Others</u>:

In the event any benefit is payable to a minor or an incompetent or to a person otherwise under a legal disability, or who, in the sole discretion of the Administrative Committee, is by reason of advanced age, illness or other physical or mental incapacity incapable of handling and disposing of his or her property, or otherwise is in such position or condition that the Administrative Committee believes that he or she could not utilize the benefit for his or her support or welfare, the Administrative Committee shall have discretion to apply the whole or any part of such benefit directly to the care, comfort, maintenance, support, education or use of such person, or pay the whole or any part of such benefit to the parent of such person, the guardian, committee, conservator or other legal representative, wherever appointed, of such person, the person with whom such person is residing, or to any other person having the care and control of such person. The receipt by any such person to whom any such benefit on behalf of any Participant or Beneficiary is paid shall be a sufficient discharge therefor.

11.7    <u>Missing Payees</u>:

If a payment sent by the Trustee to the last known address of a Participant, Beneficiary or alternate payee (as defined in Section 11.5), is returned by the United States Postal Service because the addressee cannot be located at such address and if such addressee does not provide a current address to the Trustee or the Employer within 180 days

following the date the check was issued (or if payment is not returned but remains uncashed for at least 180 days following the date the check was issued), then the amount payable under the Plan (or, if applicable, qualified domestic relations order) shall be treated as a forfeiture under Section 4.2 as of the date which is 180 days following the date the check was issued; provided, however, that if any such addressee subsequently submits a claim, such amount shall be paid to him or her.

11.8     Action by Employer:

Any action required to be taken by an Employer pursuant to the terms of the Plan shall be taken by the board of directors of the Employer or a committee thereof or any person duly empowered to exercise the powers of the Employer with respect to the Plan.

11.9     Provision of Information:

For purposes of the Plan, each Employee shall execute such forms and provide such information in such manner as may be reasonably required by the Administrative Committee.

11.10    Controlling Law:

The Plan is intended to qualify under Code section 401(a) and to comply with ERISA, and its terms shall be interpreted accordingly. Otherwise, to the extent not preempted by ERISA, the laws of the State of New York shall control the interpretation and performance of the terms of the Plan.

11.11    Singular and Plural and Article and Section References:

As used in the Plan, the singular includes the plural, and the plural includes the singular, unless qualified by the context. Titles of Articles and Sections of the Plan are for convenience of reference only and are to be disregarded in applying the provisions of the Plan. Any reference in this Plan to an Article or Section is to the Article or Section so specified of the Plan.

11.12    Trust-to-Trust Transfers:

The Administrative Committee may, under such circumstances it considers appropriate, permit a trust-to-trust transfer to this Plan under such terms as the Administrative Committee may prescribe.

ARTICLE XII

IN THE EVENT THE PLAN BECOMES TOP-HEAVY

12.1    Purpose and Limited Application of this Article:

The purpose of this Article XII is to conform to the requirements of Code sections 401(a)(10)(B) and 416. This Article shall in no way affect the amount of eligibility for any benefits provided under the Plan unless and until the Plan becomes a Top Heavy or a Super Top-Heavy Plan.

12.2    Definitions:

As used in this Article XII each of the following terms shall have the meaning for that term set forth in this Section 12.2.

(a)    Determination Date means, for any Plan Year subsequent to the first Plan Year, the last day of the preceding Plan Year. For the first Plan Year, Determination Date means the last day of that year.

(b)    Determination Period means the Plan Year containing the Determination Date (and, for Plan Years ending before January 1, 2002) the four preceding Plan Years.

(c)    Key Employee means an Employee or former Employee (and the Beneficiaries of such Employee) who at any time during the Determination Period was:

(i)    an officer of an Employer having an annual Testing Compensation greater than 50% of the dollar limitation under Code section 415(b)(1)(A) for any Plan Year ending before January 1, 2002 (or, for Plan Years beginning after December 31, 2001, greater than $130,000, as adjusted pursuant to Code section 416(i) to reflect changes in the cost of living);

(ii)    for Plan Years ending before January 1, 2002, an owner (or a person considered an owner under Code section 318) of one of the ten largest interests in an Employer if such person owns at least a 1/2% interest in the Employer and such person's Testing Compensation exceeds 100% of the dollar limitation, referred to in clause (i);

(iii)    a "5% owner" (as defined in Code section 416(i)) of an Employer; or

(iv)    a "1% owner" (as defined in Code section 416(i)) of an Employer who has a Testing Compensation of more than $150,000.

(d)   <u>Limitation Compensation</u> means an amount determined in accordance with Section 3.8(b)(ii).

(e)   <u>Non-Key Employee</u> means any Employee who is not a Key Employee.

(f)   <u>Permissive Aggregation Group</u> means the Required Aggregation Group of Qualified Plans plus any other Qualified Plans of the Company or an Affiliate which, when considered as a group with the Required Aggregation Group, would continue to satisfy the requirements of Code sections 401(a)(4) and 410.

(g)   <u>Required Aggregation Group</u> means: (i) each Qualified Plan of the Company or its Affiliates in which at least one Key Employee participates, and (ii) any other Qualified Plan of the Company or its Affiliates which enables a plan described in (i) to meet the requirements of Code sections 401(a)(4) and 410.

(h)   <u>Super Top-Heavy Plan</u> means the Plan, if the Top-Heavy Ratio, determined pursuant to the definition of a Top-Heavy Plan, exceeds 90%.

(i)   <u>Top-Heavy Plan</u> means the Plan, if any of the following conditions exists:

     (i)   if the Top-Heavy Ratio for the Plan exceeds 60% and the Plan is not part of any Required Aggregation Group or Permissive Aggregation Group of plans;

     (ii)   if the Plan is a part of a Required Aggregation Group of plans but not part of a Permissive Aggregation Group and the Top-Heavy Ratio for the Required Aggregation Group exceeds 60%; or

     (iii)   if the Plan is a part of a Required Aggregation Group and part of a Permissive Aggregation Group of plans and the Top-Heavy Ratio for the Permissive Aggregation Group exceeds 60%.

(j)   Top-Heavy Ratio means:

     (i)   If the Company or an Affiliate maintains one or more Defined Contribution Plans (including any "simplified employee pension" within the meaning of Code section 408(k)) and the Company or an Affiliate has never maintained any Defined Benefit Plan which during the five-year period ending on the Determination Date has or has had accrued benefits, the Top-Heavy Ratio for this Plan alone or for the Required or Permissive Aggregation Group as appropriate is a fraction, the numerator of which is the sum of the account balances of all Key Employees as of the Determination Date (including any part of any account balance distributed in the five-year period ending on the Determination Date), and the denominator of which is the sum of all account balances (including any

part of any account balance distributed in the five-year period ending on the Determination Date) both computed in accordance with Code section 416. Both the numerator and denominator of the Top-Heavy Ratio are adjusted to reflect any contribution not actually made as of the Determination Date, but which is required to be taken into account on that date under Code section 416.

(ii)    If the Company or an Affiliate maintains one or more Defined Contribution Plans (including any "simplified employee pension" within the meaning of Code section 408(k)) and the Company or an Affiliate maintains or has maintained one or more Defined Benefit Plans which during the five-year period ending on the Determination Date has or has had any accrued benefits, the Top-Heavy Ratio for any Required or Permissive Aggregation Group, as appropriate, is a fraction, the numerator of which is the sum of the present value of accrued benefits under the aggregated Defined Benefit Plans for all Key Employees plus the sum of account balances under the aggregated Defined Contribution Plans for all Key Employees, in each case as of the respective Determination Date for each plan (including any part of any accrued benefit or account balance distributed in the five-year period ending on the Determination Date), and the denominator of which is the sum of the present value of all accrued benefits under the aggregated Defined Benefit Plans plus the sum of all account balances under the aggregated Defined Contribution Plans for all Participants, in each case as of the respective Determination Date for each plan (including any part of any accrued benefit or account balance distributed in the five-year period ending on the Determination Date), all determined in accordance with Code section 416.

(iii)   For purposes of (i) and (ii) above, the value of account balances and the present value of accrued benefits will be determined as of the most recent Valuation Date that falls within or ends with the twelve-month period ending on the Determination Date, except as provided in Code section 416 for the first and second Plan Years of a Defined Benefit Plan. The account balances and accrued benefits of a Participant: (1) who is not a Key Employee but who was a Key Employee in a prior year, or (2) who has not been credited with at least one Hour of Service with any Employer at any time during the five-year period (one-year period with respect to Plan Years beginning after December 31, 2001) ending on the Determination Date, will be disregarded. The calculation of the Top-Heavy Ratio, and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with Code section 416. Deductible employee contributions will not be taken into account for purposes of computing the Top-Heavy Ratio. When aggregating plans the value of account balances and accrued benefits will be calculated with reference to

the Determination Dates for the respective aggregated plans that fall within the same calendar year.

    (iv)    Solely for the purpose of determining if the Plan, or any other plan included in a Required Aggregation Group of which this Plan is a part, is Top-Heavy (within the meaning of Code section 416(g)) such determination shall be made under (A) the method, if any, that uniformly applies for accrual purposes under all plans maintained by the Employer, or (B) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional accrual rate of Code section 411(b)(1)(C).

    (v)    Notwithstanding any other provision of the Plan, with respect to Plan Years beginning after December 31, 2001, the present values of accrued benefits and the amounts of account balances of an Employee as of the determination date shall be increased by the distributions made with respect to the Employee under the Plan and any plan aggregated with the Plan under Code section 416(g)(2) during the one-year period ending on the Determination Date. The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the Plan under Code section 416(g)(2)(A)(i). In the case of a distribution made for a reason other than separation from service, death or disability, this provision shall be applied by substituting "five-year period" for "one-year period."

(k)    Valuation Date means the date as of which account balances, or accrued benefits, are valued for purposes of calculating the Top-Heavy Ratio.

12.3    Allocation of Contributions for a Top-Heavy Plan:

If the Plan is determined to be a Top-Heavy Plan as of any Determination Date, then it shall be subject to the rules set forth in the balance of this Article XII, beginning with the first Plan Year commencing after such Determination Date.

(a)    Except as provided in Section 12.3(c), and except if any other Defined Benefit Plan provides such minimum benefit to the Participant, for any Plan Year in which the Plan is a Top-Heavy Plan, contributions allocated to the Company Retirement Contributions Account of any Participant who is not a Key Employee, whether or not such Participant has elected to participate in the Plan, in respect of that Plan Year shall not be less than the smaller of:

    (i)    3% of such Participant's Limitation Compensation, or

    (ii)    the largest percentage of contributions and forfeitures, as a percentage of the Key Employee's Limitation Compensation, allocated in the aggregate

to the Company Retirement Contributions Account of any Key Employee for that year; and

(b)     A Participant who has completed three years of service with an Employer shall be 100% vested in his or her Accounts.

(c)     The provision in (a) above shall not apply to any Participant who was not employed by the Company or an Affiliate on the last day of the Plan Year.

(d)     If the Plan is a Top-Heavy Plan, in determining whether the Plan meets the requirements of Section 3.8, the Participant's defined benefit fraction described in Code section 415(e)(2) and defined contribution fraction described in Code section 415(e)(3) shall be determined by substituting "1.0" for "1.25" unless the Plan is a not Super Top-Heavy Plan, and the Administrative Committee increases the minimum benefit provided in Section 12.3(a) by 1%.

12.4     <u>Invalidation of Top-Heavy Provisions</u>:

In the event that any provision of this Article XII is no longer required to qualify the Plan under the Code, then such provision shall thereupon be void without the necessity of further amendment of the Plan.

APPENDIX I

Excluded "Foreign Employees":

Pursuant to the definition of "Eligible Employee" in Article I, the Administrative Committee has designated as ineligible to participate in the Plan the following groups of Employees:

| Classification (Status) | Effective Date |
|---|---|
| Members of the Merrill Lynch Europe Limited Retirement Benefits Plan (Temporary Assignee) | January 1, 1993 |
| Members of the Third Country National Pension Plan for Merrill Lynch International Incorporated and Affiliates (Temporary Assignee) | January 1, 1993 |
| Singapore Nationals who are Members of the Singapore Central Provident Fund (All) | July 1, 1993 |
| Australian Nationals who are Members of the Merrill Lynch Australia Superannuation Fund (Temporary Assignee) | January 1, 1994 |

Excluded "International Employees":

Pursuant to the definition of "Eligible Employee" in Article I, the Administrative Committee has designated as ineligible to participate in the Plan the following groups of Employees:

| Classification (Status) | Effective Date |
|---|---|
| Employed in Germany (Permanent Assignee or Local Hire) | January 1, 1993 |
| Employed in Dubai (Permanent Assignee or Local Hire) | January 1, 1993 |
| Members of the Merrill Lynch Europe Limited Retirement Benefits Plan (Local Hire) | July 1, 1993 |

i

WDC99 574200 1 047750 0011

APPENDIX II

Vesting/Withdrawal of Transferred Amounts

[INTENTIONALLY LEFT BLANK]