

## AMENDMENT TO MERRILL LYNCH & CO., INC.
## EMPLOYEE STOCK OWNERSHIP PLAN

In accordance with the power reserved to the Company in Section 12.1 of the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan (the "Plan"), the Plan is hereby amended, effective January 1, 2007 (except as otherwise provided), as follows:

**1.      The following paragraph is added at the end of the Foreword:**

The Plan was amended and restated, generally effective as of January 1, 2007 (or as otherwise provided in the Plan, as required by law, or as otherwise set forth in a Company action), to comply with certain provisions of the Pension Protection Act of 2006 regarding vesting and rollover distributions for non-Spouse Beneficiaries.

**2.      The first paragraph of Section 5.1 is amended to read as follows:**

A Participant who has a Termination of Employment with less than three years of Service (five years of Service, effective for Employees who fail to complete one or more hours of service on or after January 1, 2007) shall not be vested in his or her Leveraged Share Account and Reversion Share Account to any extent. Notwithstanding the foregoing, a Participant shall be 100% vested in his or her Leveraged Share Account and Reversion Share Account if he or she: (i) attains Normal Retirement Age prior to his or her Termination of Employment, (ii) terminates Employment because of his or her death, (iii) incurs a Disability, or (iv) completes five years of Service.

**3.      Section 9.4 is amended to read as follows:**

A Beneficiary who is the Participant's Spouse (or an alternate payee under a "qualified domestic relations order" as defined in Code section 414(p) who is treated as the Participant's Spouse) who is eligible to receive a distribution from the Plan pursuant to the provisions of this Article IX which constitutes an "eligible rollover distribution," as defined in Code section 402(c)(4) (Code section 402(f)(2)(A), effective January 1, 2002), may direct the Administrative Committee to transfer all or any part of such distribution to an individual retirement account or an individual retirement annuity. The Administrative Committee shall cause the portion of the distribution which such Spouse (or alternate payee under a "qualified domestic relations order" as defined in Code section 414(p) who is treated as the Participant's Spouse) has elected to so transfer to be transferred directly to the designated individual retirement account or individual retirement annuity (or, effective for distributions made after December 31, 2001, to an "eligible retirement plan" as defined under Section 7.4 of the Plan). The Beneficiary (or alternate payee) may elect to receive the portion of the eligible rollover distribution to be transferred to an eligible retirement plan in either of the forms described in Sections 8.2(a)-(b), which may be different from the form for the portion of the Plan Benefit that is to be paid directly to the Beneficiary (or alternate payee), if any.



Solely to the extent permitted under Code section 402(c)(11) and the regulations and other guidance issued thereunder, with respect to any portion of a distribution from the Plan on behalf of a deceased Participant, pursuant to provisions of this Article IX, if a direct trustee-to-trustee transfer is made to an individual retirement plan described in Code section 402(c)(8)(B)(i) or (ii), which individual retirement plan is established for the purposes of receiving the distribution on behalf of an individual who is a designated Beneficiary (as defined by Code section 401(a)(9)(E)) of the Participant and who is not the surviving Spouse of the Participant,  the transfer shall be treated as an eligible rollover distribution for purposes of this Plan and Code section 402(c).  The non-Spouse Beneficiary may elect to receive the portion of the eligible rollover distribution in either of the forms described in Sections 8.2(a)-(b), which may be different from the form for the portion of the Plan Benefit that is to be paid directly to the non-Spouse Beneficiary, if any.  For purposes of this paragraph, to the extent provided in regulations or other guidance prescribed by the Internal Revenue Service under Code section 402(c)(11), a trust maintained for the benefit of one or more designated beneficiaries shall be treated in the same manner as a trust designated beneficiary.


FURTHER RESOLVED, that the proper officers of the Company are hereby authorized and directed in the name of and on behalf of the Company, to execute and deliver such amendment, and to execute any and all such additional documents and amendments that may be otherwise deemed necessary or appropriate to implement the foregoing resolutions and amendment of the Plan.


_Michael Berkowitz_____    _May 30, 2007_____
Michael Berkowitz, SVP Leadership & Talent Management              Date

Merrill Lynch & Co., Inc.
Employee Stock Ownership Plan

As restated, including
amendments
adopted through December 9, 2005

WDC99 534295-2.047750.0011

## FOREWORD

Effective as of July 1, 1989, Merrill Lynch & Co., Inc. (the "Company") established the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan (the "Plan"), a stock bonus plan within the meaning of Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code"), and an employee stock ownership plan within the meaning of Code section 4975(e)(7), which is designed to invest primarily in qualifying employer securities (within the meaning of Code section 4975(e)(8)) and which is intended to be qualified pursuant to the provisions of Code sections 401(a), 4975(e)(7) and other pertinent Code sections. The Company adopted the Plan in order to provide eligible employees of the Company and its participating affiliates with a supplemental source of retirement income, as well as to provide assistance in other circumstances such as death.

The Plan was amended on March 10, 1993 to provide for the exclusion from participation of certain "international" and "foreign" employees as provided for by the Administrative Committee. The Plan was amended on October 12, 1993 to reflect the effect of the two for one stock split declared by the Company's Board of Directors on October 11, 1993. The Plan was amended on August 9, 1994 to provide for in-service withdrawals from the Plan during the period beginning September 30, 1994 and ending September 30, 1997, and to provide for the suspension of allocations under the Plan in the case of certain withdrawals under the Plan. The Plan was amended and restated effective January 1, 1994, to include provisions required under the Unemployment Compensation Amendments of 1992 (which were effective January 1, 1993) and the Omnibus Budget Reconciliation Act of 1993 and certain other changes
The Plan was amended, effective December 12, 1994, to include provisions required under the Uniformed Services Employment and Reemployment Rights Act of 1994. The Plan was amended, effective January 1, 1997, to include provisions required under the Small Business Job Protection Act of 1996 and certain other changes (some of which provided for effective dates other than January 1, 1997). The Plan was amended, effective April 1, 1999, to discontinue to use of dividends on leveraged Shares that had been allocated to Participants' Accounts for repayment of ESOP debt. The Plan was amended, effective July 1, 1999, to reflect the cash-out of small benefits provisions available under the Taxpayer Relief Act of 1997 ("TRA 97") (no changes to the Plan were required to comply with TRA 97) and to provide for correction of administrative errors. No amendments were necessary to the language in the Plan document to comply with the requirements of the General Agreement on Tariffs and Trades ("GATT") or the IRS Restructuring Act of 1998. The Plan was amended, effective February 22, 2000, to provide an election not to participate and an election to diversify (through a transfer of the Participant's entire account balance to the Merrill Lynch & Co., Inc. Retirement Accumulation Plan) for any Participant to the extent necessary to comply with SEC financial reporting independence requirements or similar requirements. The Plan was amended, effective August 31, 2001, to provide for an Investment Committee to perform certain functions formerly performed by the Administrative Committee.

Effective as of July 17, 2001, the assets and liabilities of the Herzog Heine Geduld Employee Stock Ownership Plan (the "HHG ESOP") were merged with and into this Plan, became subject

i

to the terms of this Plan, as amended, and participants under the HHG ESOP became Participants in this Plan.

The Plan was amended and restated, generally effective as of January 1, 2001 (or such other dates incorporated in the Plan, as required by law, or as otherwise set forth in a Company action), to consolidate the foregoing amendments, to provide for the transfer to the Plan of certain shares released from escrow, to provide (effective January 1, 2002) that previous participation under the Herzog Heine Geduld Employee Stock Ownership Plan would be taken into account for purposes of diversification withdrawals under Section 7.1 of the Plan, to reflect certain provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001, and to reflect certain other changes.

The Plan was amended and restated, generally effective as of January 1, 2005 (or as otherwise provided in the Plan, as required by law, or as otherwise set forth in a Company action), to reflect certain changes or clarifications of the Plan: a clarification of the provision defining Eligible Compensation; the immediate vesting of dividends paid on Company Stock and granting participants the right to elect to receive a distribution of such dividends or to elect (or negatively elect) to have it reinvested in Company Stock; permitting all participants to defer distribution of their plan benefit until age 70½; changing to a calendar plan year; changing the timing of contributions of the plan from quarterly to yearly; and adding a year-end employment requirement for allocations.

WDC99 534295-2.047750.0011

## CERTIFICATE OF ADOPTION

WHEREAS, it is now considered desirable for Merrill Lynch & Co., Inc. (the "Company") to adopt the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan, as amended and restated, effective as of January 1, 2005 (or such other dates incorporated in the Plan, as required by law, or as otherwise set forth in a Company action); and

WHEREAS, the Company's Senior Vice President of Human Resources (or his or her functional successor) has the authority to adopt the plan;

NOW, THEREFORE, the Company, acting through its duly authorized representative, hereby adopts the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan, as amended and restated, effective as of January 1,, 2005 (or such other dates incorporated in the Plan, as required by law, or as otherwise set forth in a Company action) in the form attached hereto.

Dated this __9th__ day of __December__, 2005

MERRILL LYNCH & CO., INC.

By: _____
       Chief Administrative Officer

Table of Contents

| | Page |
|---|---|
| FOREWORD | i |
| CERTIFICATE OF ADOPTION | iii |
| TABLE OF CONTENTS | iv |
| ARTICLE I Definitions.......................................................................... | 1 |
| 1.1 "Account"............................................................................... | 1 |
| 1.2 "Account Balance"................................................................. | 1 |
| 1.3 "Acquisition Loan"................................................................ | 1 |
| 1.4 "Administrative Committee"................................................... | 2 |
| 1.5 "Affiliate"............................................................................. | 2 |
| 1.6 "Beneficiary"........................................................................ | 2 |
| 1.7 "Benefit Commencement Date"............................................. | 2 |
| 1.8 "Board of Directors" or "Board"........................................... | 2 |
| 1.9 "Code"................................................................................. | 2 |
| 1.10 "Company".......................................................................... | 2 |
| 1.11 "Company Stock"................................................................. | 3 |
| 1.12 "Defined Benefit Plan"......................................................... | 3 |
| 1.13 "Defined Contribution Plan"................................................. | 3 |
| 1.14 "Disability"........................................................................... | 3 |
| 1.15 "Early Retirement"............................................................... | 3 |
| 1.16 "Eligible Compensation"...................................................... | 3 |
| 1.17 "Eligible Employee".............................................................. | 4 |
| 1.18 "Employee".......................................................................... | 5 |
| 1.19 "Employer"........................................................................... | 5 |
| 1.20 "Employment"...................................................................... | 5 |
| 1.21 "Entry Date"......................................................................... | 5 |
| 1.22 "ERISA"............................................................................... | 5 |
| 1.23 "Highly Compensated Employee"......................................... | 5 |
| 1.24 "Hours of Service"................................................................ | 6 |
| 1.25 "Investment Committee"....................................................... | 6 |
| 1.26 "Investment Manager".......................................................... | 7 |
| 1.27 "Leveraged Share"............................................................... | 7 |
| 1.28 "Leveraged Share Account".................................................. | 7 |
| 1.29 "Leveraged Share Contribution"........................................... | 7 |
| 1.30 "Leveraged Share Suspense Account"................................... | 7 |
| 1.31 "Normal Retirement Age"..................................................... | 7 |
| 1.32 "Participant"......................................................................... | 8 |
| 1.33 "PAYSOP Share"................................................................. | 8 |

| | | |
|---|---|---:|
| 1.34 | "Plan" | 8 |
| 1.35 | "Plan Benefit" | 8 |
| 1.36 | "Plan Year" | 8 |
| 1.37 | "Qualified Plan" | 8 |
| 1.38 | "RAP" | 8 |
| 1.39 | "Retirement" or "Retires" | 8 |
| 1.40 | "Reversion Share" | 8 |
| 1.41 | "Reversion Share Account" | 8 |
| 1.42 | "Reversion Share Contribution" | 9 |
| 1.43 | "Reversion Share Suspense Account" | 9 |
| 1.44 | "Service" | 9 |
| 1.45 | "Spouse" | 9 |
| 1.46 | "Termination of Employment" | 10 |
| 1.47 | "Testing Compensation" | 10 |
| 1.48 | "Transferred Contribution Account" | 10 |
| 1.49 | "Trust" | 10 |
| 1.50 | "Trust Agreement" | 10 |
| 1.51 | "Trustee" | 10 |
| 1.52 | "Valuation Date" | 10 |
| ARTICLE II | Eligibility and Participation | 11 |
| 2.1 | Participants on and after December 31, 1993 | 11 |
| 2.2 | Beneficiary Designation | 11 |
| 2.3 | Transfers to or from Non-Covered Status | 13 |
| 2.4 | Rehired Employees | 13 |
| 2.5 | Disability and Leaves of Absence | 13 |
| 2.6 | Military Leave | 14 |
| ARTICLE III | Contributions | 15 |
| 3.1 | Reversion Share Contributions | 15 |
| 3.2 | Leveraged Share Contributions | 15 |
| 3.3 | Limitation on Allocations | 16 |
| 3.4 | Combined Plan Limitation | 18 |
| 3.5 | Return of Contribution Under Special Circumstances | 18 |
| 3.6 | Correction of Administrative Errors | 19 |
| ARTICLE IV | Crediting to and Allocation of Accounts | 20 |
| 4.1 | Crediting and Allocation of Reversion Shares | 20 |
| 4.2 | Crediting and Allocation of Leveraged Shares | 20 |
| 4.3 | Allocations to Individual Accounts | 21 |
| 4.4 | Escrow Account | 21 |
| 4.5 | Suspension of Allocations upon Withdrawal from HHG ESOP | 22 |
| ARTICLE V | Vesting of Accounts | 23 |
| 5.1 | Vesting | 23 |

WDC99 534295-2.047750.0011

| | | |
|---|---|---|
| 5.2 | Treatment of Forfeitures ........................................................ | 23 |
| 5.3 | Reinstatement of Forfeitures.................................................. | 24 |
| 5.4 | Special Vesting Rules for Certain Former HHG ESOP Participants....... | 24 |
| | | |
| **ARTICLE VI** | Management, Control and Investment of Plan Assets........................ | 26 |
| 6.1 | Investment of Accounts ........................................................ | 26 |
| 6.2 | Tender and Voting of Company Stock -- In General........................... | 27 |
| 6.3 | Tender of Company Stock ..................................................... | 27 |
| 6.4 | Voting of Company Stock ..................................................... | 29 |
| 6.5 | One Share Allocation.......................................................... | 29 |
| 6.6 | Dissemination of Information.................................................. | 29 |
| 6.7 | Invalidation of Participant Direction ........................................ | 30 |
| 6.8 | Valuation of Accounts ........................................................ | 31 |
| 6.9 | Investment Managers .......................................................... | 31 |
| 6.10 | Compensation ................................................................. | 31 |
| | | |
| **ARTICLE VII** | Withdrawals.................................................................... | 32 |
| 7.1 | Diversification of Investments................................................ | 32 |
| 7.2 | Withdrawals with Respect to PAYSOP Shares ................................ | 33 |
| 7.3 | 1994-97 Withdrawals.......................................................... | 34 |
| 7.4 | Direct Rollover Distributions ................................................ | 35 |
| 7.5 | Withdrawals after Age 70½ ................................................... | 35 |
| | | |
| **ARTICLE VIII** | Distribution Upon Retirement or Termination of Employment ............. | 36 |
| 8.1 | Amount of Distribution........................................................ | 36 |
| 8.2 | Forms of Distribution ......................................................... | 36 |
| 8.3 | Timing of Distribution......................................................... | 37 |
| 8.4 | Director Rollover Distributions .............................................. | 38 |
| 8.5 | Minimum Required Distributions ............................................. | 38 |
| 8.6 | Special Rule on Commencement of Benefits ................................. | 40 |
| | | |
| **ARTICLE IX** | Distribution Upon Death....................................................... | 41 |
| 9.1 | Amount of Distribution........................................................ | 41 |
| 9.2 | Form of Distribution........................................................... | 41 |
| 9.3 | Timing of Distribution......................................................... | 42 |
| 9.4 | Director Rollover Distributions .............................................. | 42 |
| 9.5 | Distribution Shall be Paid in Accordance with the Requirements of Code Section 401(a)(9)........................................................ | 42 |
| | | |
| **ARTICLE X** | Administration of the Plan..................................................... | 43 |
| 10.1 | Named Fiduciaries ............................................................ | 43 |
| 10.2 | The Administrative Committee ............................................... | 43 |
| 10.3 | The Investment Committee.................................................... | 45 |
| 10.4 | Claim Procedures .............................................................. | 46 |
| 10.5 | Indemnification ................................................................ | 46 |

vi

| | | |
|---|---|---|
| 10.6 | Payment of Expenses .................................................................. | 47 |
| | | |
| ARTICLE XI | Operation of the Trust.................................................................. | 48 |
| 11.1 | Trust; Trustee............................................................................... | 48 |
| | | |
| ARTICLE XII | Plan Adoption, Amendment, Termination and Merger......................... | 49 |
| 12.1 | Plan Amendment .......................................................................... | 49 |
| 12.2 | Limitations on Plan Amendments ................................................. | 49 |
| 12.3 | Termination of Plan or Discontinuance of Allocations and Contributions............................................................... | 50 |
| 12.4 | Merger, Consolidation or Transfer ............................................... | 51 |
| 12.5 | Bankruptcy................................................................................... | 52 |
| | | |
| ARTICLE XIII | Miscellaneous .............................................................................. | 53 |
| 13.1 | Exclusive Benefit of Participants ................................................. | 53 |
| 13.2 | Plan Not a Contract of Employment ............................................ | 53 |
| 13.3 | Source of Benefits ....................................................................... | 53 |
| 13.4 | Benefits Not Assignable............................................................... | 53 |
| 13.5 | Domestic Relations Orders........................................................... | 53 |
| 13.6 | Benefits Payable to Minors, Incompetents and Others...................... | 54 |
| 13.7 | Missing Payees ............................................................................ | 54 |
| 13.8 | Action by Employer...................................................................... | 55 |
| 13.9 | Provision of Information ............................................................... | 55 |
| 13.10 | Controlling Law............................................................................ | 55 |
| 13.11 | Singular and Plural and Article and Section References ....................... | 55 |
| 13.12 | Trust-to-Trust Transfers ............................................................... | 55 |
| | | |
| ARTICLE XIV | In the Event the Plan Becomes Top-Heavy ............................................ | 56 |
| 14.1 | Purpose and Limited Application of this Article.................................... | 56 |
| 14.2 | Definitions ................................................................................... | 56 |
| 14.3 | Allocation of Contributions for a Top-Heavy Plan................................ | 59 |
| 14.4 | Invalidation of Top-Heavy Provisions.................................................. | 61 |
| | | |
| APPENDIX I | Excluded Foreign and International Employees | |
| | | |
| APPENDIX II | Form of Benefit Distributions | |

WDC99 534295-2.047750.0011

# ARTICLE I

## DEFINITIONS

Each of the following terms shall have the meaning set forth in this Article I for purposes of this Plan and any amendments thereto. Some of the words and phrases used in the Plan are not defined in this Article I, but for convenience are defined as they are introduced into the text.

1.1    Account:  A separate Reversion Share Account, Leveraged Share Account or Transferred Contribution Account as the case may be.

1.2    Account Balance:  The value of an Account determined as of the applicable Valuation Date.

1.3    Acquisition Loan:  The loan from Merrill Lynch Interfunding, Inc. to the Plan in the principal amount of $70,000,000 amendment dated as of September 22, 1989, and any other "acquisition loan" authorized by the Company through the Plan. An "acquisition loan" is a loan or other extension of credit described in Code section 4975(d)(3) that is used to finance the purchase of Leveraged Shares by the Trustee. An "acquisition loan" shall be for a specific term, shall bear a reasonable rate of interest and shall not be payable on demand except in the event of default. An "acquisition loan" may be secured by a pledge of the Leveraged Shares so acquired (or acquired with the proceeds of a prior "acquisition loan" which is being refinanced). Any pledge of Leveraged Shares must provide for the release of the shares so pledged as payments on the Acquisition Loan are made and the Leveraged Shares are allocated to Participants' Leveraged Share Accounts pursuant to Section 4.2. An "acquisition loan" must be without recourse against the Plan, and the only assets of the Plan that may be given as collateral on an "acquisition loan" are Leveraged Shares acquired with the proceeds of the "acquisition loan" and those that were acquired with the proceeds of the "acquisition loan" or used as collateral on a prior "acquisition loan" repaid with the proceeds of the current "acquisition loan." Except as provided by applicable law or regulations, no Leveraged Shares acquired with the proceeds of an Acquisition Loan may be subject to a put, call, or other option, or buy-sell or similar arrangement while held by and distributed from this Plan or any plan, whether or not such plan is an employee stock ownership plan within the meaning of Code section 4975(e)(7). No person entitled to payment under the Acquisition Loan shall have any right to assets of this Plan other than collateral given for the loan, contributions (other than contributions of Leveraged Shares) that are made under the Plan to meet its obligations under the Acquisition Loan, or earnings attributable to such collateral and the investment of such contributions. In the event of default upon an Acquisition Loan, the value of Plan assets transferred in satisfaction of the loan shall not exceed the amount of default. Effective as of July 17, 2001, upon the merger of the Herzog Heine Geduld Employee Stock Ownership Plan (the "HHG ESOP") with and into this Plan, the acquisition loan related to the HHG ESOP became an Acquisition Loan for purposes of this Plan and the shares held in the leveraged share suspense

account under the HHG ESOP were transferred to the Leveraged Share Suspense Account under this Plan. All shares of any Acquisition Loan that are released from the Leveraged Share Suspense Account as payments on an Acquisition Loan are made shall be allocated to Participants' Leveraged Share Accounts pursuant to Section 4.2 and Section 4.3.

1.4    <u>Administrative Committee</u>:  The committee appointed pursuant to, and having the responsibility specified in, Section 10.2 of the Plan.

1.5    <u>Affiliate</u>:  Any corporation or unincorporated trade or business (other than the Company) while it is:

    (a)    a member of a "controlled group of corporations" (within the meaning of Code section 414(b)) of which the Company is a member; provided, however, that for purposes of Sections 3.3 and 3.4, the phrase "more than 50 percent" shall be substituted for the phrase "at least 80 percent" wherever the latter phrase appears in Code section 1563(a)(1);

    (b)    a trade or business under "common control" (within the meaning of Code section 414(c)) with the Company; provided, however, that for purposes of Sections 3.3 and 3.4, the phrase "more than 50 percent" shall be substituted for the phrase "at least 80 percent" wherever the latter phrase appears in Code section 1563(a)(1);

    (c)    a member of an "affiliated service group" (within the meaning of Code section 414(m)) which includes the Company; or

    (d)    any other person required to be aggregated with the Company pursuant to Code section 414(o).

1.6    <u>Beneficiary</u>:  The individual or entity determined in accordance with Section 2.2 and entitled to receive any distribution pursuant to Article IX.

1.7    <u>Benefit Commencement Date</u>:  The first day of the first period for which an amount is paid to a Participant as an annuity or in any other form of distribution.

1.8    <u>Board of Directors</u> or <u>Board</u>:  The Board of Directors of the Company, or a committee thereof, or any person duly empowered to exercise the powers of the Company with respect to the Plan.

1.9    <u>Code</u>:  The Internal Revenue Code of 1986, as amended from time to time.  References to specific Code provisions shall include the specific provision and any applicable regulations pertaining thereto.

1.10    <u>Company</u>:  Merrill Lynch & Co., Inc. and any successor thereto.

1.11   Company Stock:  Shares of common stock issued by the Company or any Affiliate that is a member of the same controlled group as defined in Code section 409(l)(4) that are readily tradable on an established securities market.

1.12   Defined Benefit Plan:  Any plan of the type defined in Code section 414(j) maintained by the Company or an Affiliate, as applicable.

1.13   Defined Contribution Plan:  Any plan of the type defined in Code section 414(i) maintained by the Company or an Affiliate, as applicable.

1.14   Disability:  A physical or mental condition that qualifies a Participant to receive total or partial benefit payments under the basic long-term disability plan provided and maintained by such Participant's Employer.  A Participant's Disability shall be deemed to cease at such time as payments under such basic long-term disability plan cease to be payable (without taking into consideration any offset against those benefits).

1.15   Early Retirement:  Termination of Employment, other than by reason of death, after attainment of age 55 and completion of ten years of Employment (as determined in accordance with records maintained by the Employer), but prior to Normal Retirement Age.

1.16   Eligible Compensation:  With respect to an Employee, the Employee's wages, tips and other compensation shown on the Form W-2 that is furnished to the Employee, i.e., the Employee's "wages" (as defined in Code section 3401(a)), and all other payments of compensation to the Employee by his or her Employer (in the course of the Employer's trade or business) for which the Employer is required to furnish the Employee with a written statement under Code section 6041(d), 6051(a)(3) or 6052.  Notwithstanding the foregoing, Eligible Compensation (i) shall be determined without regard to any rules under Code section 3401(a) that limit the remuneration included in "wages" based on the nature or location of the employment or the services performed, (ii) shall not include any stock-based compensation, deferred compensation (either at the time of deferral or payment), reimbursements, fringe benefits or other expense allowances, moving expenses or welfare benefits (including any payments made under an Employer's severance pay plan) and (iii) shall include  amounts that are not includible in gross income under Code sections 125, 132(a)(5), or  402(e)(3).

Notwithstanding any other provisions of this definition, the Eligible Compensation of an Eligible Participant for any Plan Year shall not exceed $150,000 (as adjusted for changes in the cost of living under Code section 401(a)(17) and applicable Treasury regulations and Internal Revenue Service pronouncements).  Effective for Plan Years beginning on or after January 1, 2002, the Eligible Compensation of an Eligible Participant shall not exceed $200,000 (as adjusted for changes in the cost of living under Code section 401(a)(17) and applicable Treasury regulations and Internal Revenue Service pronouncements).

The determination of Eligible Compensation shall be in accordance with records maintained by the Employer and shall be conclusive.

Notwithstanding any other provision of this Plan, any amount paid on or after April 1, 1999 with respect to an Employee or former Employee more than 6 months after such individual's Termination of Employment, Retirement or death, shall be presumed not to be Eligible Compensation unless such individual (or his or her estate) establishes otherwise to the satisfaction of the Administrative Committee.

If any Plan Year consists of fewer than 12 months, the annual Eligible Compensation limit (described in this Section 1.16) shall be an amount equal to the otherwise applicable annual Eligible Compensation limit multiplied by a fraction, the numerator of which is the number of months in the short Plan Year, and the denominator of which is 12.

1.17    Eligible Employee:  All Employees of an Employer other than:

(a)    any Employee included in a unit of Employees covered by a collective bargaining agreement between an Employer and Employee representatives in the negotiation of which retirement benefits were the subject of good faith bargaining, unless: (I) such bargaining agreement provides for participation in the Plan, (ii) the Employee representatives represented an organization more than half of whose members are owners, officers or executives of such Employer, or (iii) 2% or more of the Employees who are covered pursuant to that agreement are professionals as defined in Treasury Regulation section 1.410(b)-6(d);

(b)    Employees who are neither U.S. citizens nor permanent U.S. residents and whose principal place of Employment is outside the United States, U.S. Virgin Islands Guam and Puerto Rico;

(c)    "leased employees" within the meaning of Code section 414(n)(2) and any individual who is not treated by an Employer as an employee for federal employment tax withholding purposes at the time he or she performs services for the Employer, regardless of any contrary governmental or judicial determination relating to such employment status or tax withholding;

(d)    such other group or classification of Employees of an Employer as determined by the Administrative Committee.

Any Eligible Employees who are:  (i) "foreign employees" (i.e. non-U.S. citizens and non-U.S. permanent residents) assigned to Employment in the United States, U.S., Virgin Islands, Guam and Puerto Rico who continue to accrue substantial retirement benefits under the plan(s) maintained by their permanent Employer or (ii) in a group of "international employees" (i.e., U.S. citizens and U.S. permanent residents employed outside of the United States, U.S. Virgin Islands, Guam and Puerto Rico) identified by

reference to the jurisdiction in which the individual is employed and/or the payroll from which the individual is paid who are not treated as Eligible Employees pursuant to clause (d), above, shall be identified in Appendix I.

An Eligible Employee shall not become a Participant until he or she has satisfied the applicable requirements of Section 2.1.

1.18    Employee:  Any individual engaged in rendering personal service under the direction or control of the Company or an Affiliate which shall include a leased employee within the meaning of Code section 414(n)(2).  Notwithstanding the foregoing, if leased employees do not constitute more than 20% of the Employer's non-highly compensated work force within the meaning of Code section 414(n)(5)(C)(ii), the term "Employee" shall not include those leased employees covered by a plan described in Code section 414(n)(5).

1.19    Employer:  The Company and each Affiliate, except Affiliates designated from time to time by the Administrative Committee as not participating in this Plan.

1.20    Employment:  An Employee's employment with the Company or an Affiliate or, to the extent required under Code section 414(a)(2) or as otherwise specified by the Administrative Committee, any predecessor of any of them.

1.21    Entry Date:  The first day of any calendar month (or, for periods prior to January 1, 1997, the first day of any calendar quarter) and such other date or dates as the Administrative Committee shall specify.

1.22    ERISA:  The Employee Retirement Income Security Act of 1974, as amended from time to time.  References to specific ERISA provisions shall include such provision and any applicable regulations pertaining thereto.

1.23    Highly Compensated Employee:  An Employee who

(1)    during the Look-Back Year:

(i)    was at any time a "5% owner" (as defined in Code section 416(i)(1)), with respect to the Company or an Affiliate, or

(ii)    received more than $80,000 of Testing Compensation and was a member of the top paid group (i.e., was one of the top 20% of all Employees of the Company and Affiliates ranked by Testing Compensation); or

(2)    during the Determination Year, was a 5% owner at any time.

The "Determination Year" shall be the Plan Year for which testing is being performed. The "Look-Back Year" shall be the twelve-month period preceding the Determination Year.  Notwithstanding the foregoing, a calendar year election shall be applied such that

the calendar year beginning within the Look-Back Year shall be treated as the Look-Back Year for purposes of the determination of whether an Employee received more than $80,000 of Testing Compensation and was a member of the top-paid group, as described in Section 1.23(1)(ii) above. For purposes of this definition, (i) the $80,000 amount is to be adjusted as required under Code section 414(q) and Internal Revenue Service pronouncements and (ii) the number of Employees who are in the "top paid group" shall be determined by taking into account all Employees of the Company and Affiliates, without regard to any minimum age or service requirements.

If a Plan Year consists of fewer than 12 months, the Testing Compensation shall be an amount equal to the otherwise applicable annual Testing Compensation multiplied by a fraction, the numerator of which is the number of months in the short Plan Year, and the denominator of which is 12.

1.24    <u>Hours of Service</u>: An Hour of Service shall include for the purposes of eligibility and vesting:

    (a)    each hour for which an Employee is directly or indirectly paid, or entitled to payment, by the Company or an Affiliate for the performance of duties for the Company or an Affiliate, with such Hours of Service being credited to the Employee for the Plan Year or Plan Years in which the duties were performed;

    (b)    each hour for which an Employee is paid, or entitled to payment, by the Company or an Affiliate on account of a period of time during which no duties are performed (irrespective of whether the Employee's Employment has terminated) due to vacation, holiday, illness, incapacity (including Disability), layoff, jury duty, military duty or leave of absences; and

    (c)    each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Company or an Affiliate. The same Hours of Service will not be credited both under subparagraph (a) or (b) as the case may be, and under subparagraph (c). These hours will be credited to the Employee for the year of Service or other computation period or periods to which the award pertains rather than for the year of Service or other computation period in which the award, agreement or payment is made.

Hours of Service under paragraphs (b) and (c) above shall be calculated and credited in accordance with Department of Labor Regulations sections 2530.200b-2(b) and (c), which are incorporated herein by reference.

1.25    <u>Investment Committee</u>: The committee appointed pursuant to, and having the responsibilities specified in, Section 10.3 of the Plan.

1.26    <u>Investment Manager</u>: Any person appointed pursuant to Section 6.9 having the power to direct the investment of assets in accordance with that Section.

1.27    Leveraged Share:  A share of Company Stock that is acquired by the Trustee with the proceeds of an Acquisition Loan.  For purposes of this Plan, all shares of capital stock: (i) issued as a result of any stock dividend, stock split or reclassification with respect to such shares of Company Stock which are Leveraged Shares under the preceding sentence or (ii) issued in exchange for such shares of Company Stock which are Leveraged Shares under the preceding sentence in any merger, consolidation, recapitalization or other reorganization of the Company shall also be considered Leveraged Shares acquired with the proceeds of an Acquisition Loan.

1.28    Leveraged Share Account:  The Account established for a Participant to hold amounts allocated to such Participant pursuant to Section 4.2 and the earnings thereon.

1.29    Leveraged Share Contribution:  A contribution made by the Employer to the Trust pursuant to Section 3.2.

1.30    Leveraged Share Suspense Account:  The Account established pursuant to Section 4.2 to hold Leveraged Shares that are not yet allocated to Participants' Leveraged Share Accounts and the earnings thereon.

1.31    Normal Retirement Age:  Age 65.

1.32    Participant:  An Eligible Employee who has commenced, but not terminated, participation in the Plan as provided in Article II.  Except with respect to Articles III and IV each Participant shall continue to be such after he or she ceases to be an Eligible Employee until the earliest of:

    (i)    his or her Accounts have been completely distributed (including the application of the Accounts to the purchase of an annuity which is distributed to the Participant) at a time when he or she is no longer eligible for any future contributions,

    (ii)    in the case of a Participant with no vested rights to a benefit under the Plan, the date of such Participant's Termination of Employment, or

    (iii)    his or her death.

An individual on whose behalf PAYSOP shares are held shall also be considered a Participant but shall not receive an allocation of Reversion Shares or Leveraged Shares until he or she satisfies the conditions for otherwise becoming a Participant in accordance with Article II.

1.33    PAYSOP Share:  A share that was transferred on a trust-to-trust basis to the Plan from the Payroll-Based Stock Ownership Plan for Employees of Merrill Lynch & Co., Inc. and Affiliates and are held in the Transferred Contribution Account of a Participant.

1.34  Plan:  The Merrill Lynch & Co., Inc. Employee Stock Ownership Plan as set forth herein or as amended from time to time hereafter.

1.35  Plan Benefit:  The sum of the vested portion of each of the Participant's Accounts.

1.36  Plan Year:  The twelve-month period ending on June 30 of each year.  Effective July 1, 2003, the Plan Year shall be the six-month period ending on December 31, 2003. Thereafter, the Plan Year shall be the twelve-month period ending on December 31 of each year.

1.37  Qualified Plan:  A plan which is qualified under Code section 401(a).

1.38  RAP:  The Merrill Lynch & Co., Inc. Retirement Accumulation Plan.

1.39  Retirement or Retires:  A Participant's termination of Employment other than by reason of death upon Early Retirement or on or after attainment of Normal Retirement Age.  A Participant "Retires" upon the occurrence of his or her Retirement.

Notwithstanding any other provision of the Plan, a Participant whose Employment is terminated due to the transfer of certain in-house functions to a service provider which is not an Affiliate shall be treated as having incurred a termination of Employment for all purposes under the Plan, regardless of whether the Participant is retained by such service provider to perform services for an Employer.

1.40  Reversion Share:  A share of Company Stock acquired with residual amounts that are transferred from the Pension Plan for Employees of Merrill Lynch & Co., Inc. and Affiliates to the Trust in accordance with Code section 4980(c)(3).  For purposes of this Plan, all shares of capital stock:  (i) issued as a result of any stock dividend, stock split or reclassification with respect to such shares of Company Stock which are Reversion Shares under the preceding sentence or (ii) issued in exchange for such shares of Company Stock which are Reversion Shares under the preceding sentence in any merger, consolidation, recapitalization or other reorganization of the Company shall also be considered Reversion Shares which were acquired pursuant to the preceding sentence. For purposes of applying the last sentence of the first paragraph of Section 4.1, the amount of Reversion Shares allocated for any period after an event described in the preceding sentence shall be adjusted in a manner that reflects the occurrence of the event.

1.41  Reversion Share Account:  The Account established for a Participant to hold amounts allocated to such Participant pursuant to Section 4.1 and the earnings thereon.

1.42  Reversion Share Contribution:  The residual amount transferred to the Plan pursuant to Section 3.1.

WDC99 534295-2.047750.0011

1.43   Reversion Share Suspense Account:  The Account established pursuant to Section 4.1 to hold Reversion Shares that are not yet allocated to Participants.

1.44   Service:  The aggregate of the following periods:

(i) the period commencing on the date the Employee first performs an Hour of Service and ending on the date of his or her Termination of Employment, Retirement, or death; and

(ii) if the Employee has a Termination of Employment or Retires, the period commencing on the date of his or her Termination of Employment or Retirement and ending on the first date on which he or she again performs an Hour of Service, if such date is within twelve months of the date on which he or she last performed an Hour of Service.

Service shall include the period of a leave of absence and the period of service in the armed forces of the United States as shall be required to be recognized under applicable federal law with respect to military service.

Notwithstanding the foregoing, the Administrative Committee may:

(i) credit as Service employment with a predecessor of the Company or an Affiliate or employment with any business acquired by the Company or an Affiliate with respect to all Employees acquired in such acquisition, and

(ii) credit additional Service in the event of a disposition with respect to all Employees affected by such disposition.

Service shall be measured in whole years and fractions of a year in months.  For this purpose periods of less than a full year shall be aggregated on the basis that twelve months equal a year, and in aggregating days representing fractional months into months, thirty days shall equal one month.

Notwithstanding any other provision of this Plan, an individual's Service shall not include any period with respect to which he or she receives payments under the Merrill Lynch & Co., Inc. Severance Pay Plan or other payments in the nature of severance pay from the Employer.

1.45   Spouse:  The person legally married to a Participant pursuant to local law where the Participant resides, but not in violation of federal law (see, *e.g.*, the Defense of Marriage Act (1 U.S.C. Section 7))..

1.4   Termination of Employment:  A Participant's termination of Employment other than by reason of death or Retirement.

Notwithstanding any other provision of the Plan, a Participant whose Employment is terminated due to the transfer of certain in-house functions to a service provider which is not an Affiliate shall be treated as having incurred a termination of Employment for all purposes under the Plan, regardless of whether the Participant is retained by such service provider to perform services for an Employer.

1.46   Testing Compensation: (i) The Employee's wages, tips and other compensation shown on the Form W-2 which is furnished to an Employee, i.e., the Employee's wages, as defined in Code section 3401(a) and all other payments of compensation made to the Employee by the Employer for which the Employer is required to furnish the Employee a written statement under Code sections 6041(d) and 6051(a)(3), (ii) amounts contributed to benefit plans pursuant to Code sections 125, 401(k), 402(h)(1)(B), or 403(b), and (iii) amounts that are not includible in gross income under Code section 132(a)(5). Testing Compensation shall be determined without regard to any rules under Code section 3401(a) that limit the remuneration included in wages based on the nature or location of the employment or the services performed.

Notwithstanding any other provisions of this definition, the Testing Compensation of an Eligible Participant for any Plan Year shall not exceed the limitation with respect to such Plan Year applicable under Code section 401(a)(17) (as adjusted for changes in the cost of living under Code section 401(a)(17) and applicable Treasury regulations and Internal Revenue Service pronouncements).

The determination of Testing Compensation shall be in accordance with records maintained by the Employer and shall be conclusive.

1.47   Transferred Contribution Account: The Account established for a Participant to hold amounts transferred to the Plan on his or her behalf pursuant to Section 13.12 and the earnings thereon.

1.48   Trust: The trust established under the Plan in which trust assets are held.

1.49   Trust Agreement: The agreement between the Company and the Trustee with respect to the Trust, as the same may be amended from time to time.

1.50   Trustee: An individual or entity appointed pursuant to Section 10.1 and any successor trustee.

1.51   Valuation Date: The last business day of each calendar year and such other dates as the Administrative Committee shall specify. The Administrative Committee may, in its discretion, use different Valuation Dates for different purposes under the Plan.

WDC99 534295-2.047750.0011

# ARTICLE II

## ELIGIBILITY AND PARTICIPATION

2.1     <u>Participants on and after December 31, 1993:</u>

(a)     Each Employee who was a Participant on December 31, 1993 shall continue as such on January 1, 1994, provided that such Employee is an Eligible Employee on that date.

(b)     Except as otherwise provided in Section 2.1(a), with respect to periods ending prior to January 1, 1997, an Eligible Employee shall become a Participant as of the Entry Date coincident with or next following his or her (i) attainment of age 21 and (ii) completion of one year of Service.  Effective January 1, 1997, an Eligible Employee shall become a Participant as of the Entry Date coincident with or next following his or her completion of one year of Service.

(c)     Notwithstanding the foregoing, the Administrative Committee may waive the Service requirement set forth above with respect to individuals who become Employees in connection with any business acquired by the Company or an Affiliate, with respect to all Employees acquired in such acquisition.

(d)     Notwithstanding any other provisions of the Plan, to the extent necessary to comply with Section 602 (Requirements and Interpretations Relating to Independence) of the Securities and Exchange Commission Codification of Financial Reporting Policies or any similar applicable requirements, an Eligible Employee may elect not to participate in the Plan and a Participant may elect, at any time, to discontinue his or her participation under the Plan.  An Eligible Employee or Participant may be required to submit evidence of the need for such election or discontinuance.  In the event a Participant discontinues participation under this subsection (d), the Participant shall no longer be eligible to receive allocations under the Plan, including allocations of forfeitures under Section 5.2.

2.2     <u>Beneficiary Designation:</u>

Subject to the spousal consent requirements specified below, each Participant may designate a Beneficiary.  The designated Beneficiary may be one or more individuals, estates, trusts or other entities; provided, however, if the Participant is married at the time of his or her death, his or her spouse shall automatically be his or her sole Beneficiary unless the spouse had consented, in writing, to a designation of another Beneficiary.  Such consent must be witnessed by a notary public and must contain an acknowledgment by the spouse of the effect of the designation.

WDC99 534295-2.047750.0011

If a Participant who is unmarried as of the date of his or her death has not designated a Beneficiary and the Participant at that time has coverage in effect under the Company's Basic Group Life Insurance Plan, the Participant's Beneficiary shall be the beneficiary designated by the Participant under that plan and the Participant's interest remaining in the Plan shall be paid in accordance with such designation. If: (i) none of the Beneficiaries designated by the Participant with respect to his or her Accounts survive the Participant, (ii) the Participant has not designated a Beneficiary under this Plan and no beneficiary designation made by the Participant is then in effect under the Company's Basic Group Life Insurance Plan, or (iii) the Participant has assigned the right to receive his or her death benefit under the Company's Basic Group Life Insurance Plan, then the Participant's remaining interest in his or her Accounts shall be paid to the estate of the Participant.

If a Participant who is married as of the date of his or her death designates one or more Beneficiaries other than his or her spouse pursuant to this Section 2.2 and each such Beneficiary predeceases the Participant, the Participant's Beneficiary shall be the Participant's surviving spouse and the Participant's interest remaining in the Plan shall be paid to the surviving spouse, or, if such spouse is no longer living, and the Participant at that time has coverage in effect under the Company's Basic Group Life Insurance Plan, the Participant's Beneficiary shall be the beneficiary designated by the Participant under that plan and the Participant's interest remaining in the Plan shall be paid in accordance with such designation.

Notwithstanding the foregoing, if a Participant is married as of the date of his or her death and:

(i)  the Participant's deceased spouse was the Participant's designated beneficiary under the Company's Basic Group Insurance Plan and no other beneficiary designated by the Participant under the Company's Basic Group Insurance Plan survived the Participant, or

(ii)  the Participant assigned the right to receive his or her death benefit under the Company's Basic Group Insurance, then

the Participant's remaining interest in the Plan shall be paid to the estate of the Participant.

In the case of both married and unmarried Participants, if the Beneficiary and the Participant die simultaneously, or if there is not sufficient evidence to establish which died first, it shall be presumed that the Participant was the survivor.

Subject to the spousal consent requirements of this Section 2.2, any designation (or change in designation) of a Beneficiary to whom amounts due after the Participant's death shall be paid must be filed in a time and manner determined by the Company in order to be effective. Any such designation of a Beneficiary may be revoked by filing a

WDC99 534295-2.047750.0011

later designation or an instrument of revocation, in a time and manner determined by the Company.

2.3    Transfers to or from Non-Covered Status:

If a Participant ceases to meet the definition of Eligible Employee as set forth in Article I but continues Employment, contributions on his or her behalf shall be suspended. If during the period of such suspension the Participant has a Termination of Employment, Retires or dies distribution of his or her Accounts shall be determined in accordance with the provisions of Article VIII and Article IX, as applicable.

If and when the suspended Participant again becomes an Eligible Employee, he or she shall resume participation in the Plan with respect to future allocations under the Plan as of the date he or she again becomes an Eligible Employee.

2.4    Rehired Employees:

If an individual met the requirements of Section 2.1 has a Termination of Employment or Retires and then again becomes an Eligible Employee, he or she shall resume participation in the Plan with respect to future allocations under the Plan as of the date he or she again becomes an Eligible Employee.

If a former Employee who did not meet the requirements of Section 2.1 returns to Employment, he or she shall become a Participant after meeting the requirements of Section 2.1.

2.5    Disability and Leaves of Absence:

(a)    A Participant who has incurred a Disability and is not a Highly Compensated Employee shall be credited with allocations under the Plan during the period of such Disability. Effective January 1, 1997, any Participant (regardless of whether he or she is a Highly Compensated Employee) who has incurred a Disability shall be credited with Company Retirement Contributions during the period of such Disability. For purposes of determining the amounts to be credited to such Participant under the Plan, the Participant's Eligible Compensation shall be deemed to be the greatest of: (i) the Participant's Eligible Compensation paid in the calendar year immediately preceding the calendar year in which the Disability is incurred (with base salary annualized if the Participant's Employment commenced during such year), (ii) the Participant's Eligible Compensation paid in the calendar year in which the Disability is incurred (with base salary annualized if the Participant's Employment commenced during such year), or (iii) the Participant's Eligible Compensation paid in the calendar year in which Disability payments commence or would commence but for an offset against those benefits. Notwithstanding the foregoing, in the case of a Participant who has a partial disability, (as that or a similar concept is defined in the basic long term disability

WDC99 534295-2.047750.0011

plan maintained by the Participant's Employer) Eligible Compensation shall also include actual Eligible Compensation paid to such Participant during the period of such partial disability.

(b)    A Participant on a leave of absence and who is receiving Eligible Compensation from an Employer shall continue to be credited with any allocations under the Plan during the period of such leave of absence.

2.6    <u>Military Leave</u>

Notwithstanding any other provision of the Plan to the contrary, with regard to an Employee who is reemployed on or after December 12, 1994, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Internal Revenue Code.

WDC99 534295-2.047750.0011

# ARTICLE III

## CONTRIBUTIONS

3.1    Reversion Share Contributions:

Any residual amounts transferred from the Pension Plan for Employees of Merrill Lynch & Co., Inc. and Affiliates to this Plan pursuant to Code section 4980(c)(3) shall be characterized as Reversion Share Contributions under this Plan and shall, within ninety days after such transfer (or such longer period as may be prescribed by the Secretary of the Treasury or his or her delegate), be invested in Reversion Shares or used to repay loans to purchase such shares pursuant to the provisions of Code section 4980(c)(3).

Subject to the requirements of Section 3.3, the Company shall make allocations of Reversion Shares to Participants' Reversion Share Accounts in accordance with the requirements of Section 4.1.

3.2    Leveraged Share Contributions:

Subject to the requirements of Section 3.3, for any Plan Year during which there are Leveraged Shares in the Leveraged Share Suspense Account, the Company shall make a Leveraged Share Contribution in an amount sufficient to enable the Trustee to pay any currently maturing obligation under an Acquisition Loan after taking into account any other sources of payment on an Acquisition Loan described in this Section 3.2. Leveraged Shares released from the Leveraged Share Suspense Account pursuant to such Leveraged Share Contribution shall be allocated to a Participant's Leveraged Share Account for the Plan Year pursuant to Section 4.3.

Payments of principal and/or interest on an Acquisition Loan shall be made by the Trustee (as directed by the Administrative Committee) only from Leveraged Share Contributions paid to the Trust, from earnings attributable to Leveraged Share Contributions and Reversion Share Contributions, from cash dividends received by the Trust on the Leveraged Shares that have not been allocated to Participants' Leveraged Share Accounts (and, for periods prior to April 1, 1999, from cash dividends on Leveraged Shares that have been allocated to Participants' Leveraged Share Accounts), and cash dividends received by the Trust on the Reversion Shares that have not been allocated to Participants' Reversion Share Accounts. Payments made with respect to an Acquisition Loan for a Plan Year may not exceed the sum of the Leveraged Share Contributions and such earnings and dividends for the Plan Year (and prior Plan Years) less the amount of such payments for prior Plan Years.

Leveraged Shares released from the Leveraged Share Suspense Account pursuant to the use of dividends and earnings on Leveraged Shares and Reversion Shares to make

payments on an Acquisition Loan shall be allocated to a Participant's Leveraged Share Account for the Plan Year pursuant to Section 4.3.

3.3    Limitation on Allocations:

(a)    The limitations of Code section 415 applicable to "defined contribution plans" as defined in Code section 414(i) are hereby incorporated by reference in this Plan; provided, however, that where the Code so provides, contribution limitations in effect under prior law shall be applicable to account balances accrued as of the last effective day of such prior law.

(b)    As used in this Section 3.3 and Section 3.4 and for purposes of determining the limits described in Code section 415, each of the following terms shall have the meaning for that term set forth in this subsection (b):

(i)    Annual Addition means the sum of: (a) all Company or Affiliate contributions, (b) Employee contributions, (c) forfeitures, and (d) amounts described in Code sections 415(l)(1) and 419A(d)(2), including specifically Leveraged Share Contributions used to release Leveraged Shares allocated to a Participant's Leveraged Share Account in accordance with Article IV and Reversion Shares allocated to a Participant's Reversion Share Account in accordance with Article IV. Anything in this Section 3.3 to the contrary notwithstanding, an Annual Addition shall not include: (i) the amount of any dividends paid on Company Stock held in the Trust Fund (whether or not such Company Stock is allocated to a Participant's Account), whether such dividends are allocated to a Participant's Account or used to make payments on an Acquisition Loan, (ii) the fair market value of Company Stock required to be allocated to a Participant's Account pursuant to Code section 404(k)(2)(B), and (iii) any amounts contributed or reallocated under Section 3.6 to the extent attributable to corrections for lost earnings.

In determining the Annual Addition with respect to Reversion Shares allocated to the Reversion Share Account of a Participant pursuant to Section 4.1, the fair market value (as determined under Section 4.3 for such allocation) shall be treated as an Annual Addition, provided that: (i) the Annual Addition shall not exceed the value of such Reversion Shares as of the time such Reversion Shares were credited to the Reversion Share Suspense Account and (ii) in the event capital stock of the Company is issued as a result of a stock dividend, stock split or reclassification of Company Stock or in exchange for Company Stock in any merger, consolidation, recapitalization or other reorganization of the Company, the Annual Addition shall not exceed a pro rata portion (determined in a manner that reflects the occurrence of such event) of the

value (determined under clause (i) above) of the Reversion Shares for which such shares are issued or exchanged.

Notwithstanding the other provisions of this Section 3.3, Annual Additions shall not include any: (i) forfeitures of Leveraged Shares reallocated pursuant to Section 5.2 or (ii) Leveraged Share Contributions that are applied by the Trustee (not later than the due date, including extension for filing the Company's federal tax return for the taxable year which ends with or within the Limitation Year) to pay interest on an Acquisition Loan; provided, however, that this sentence shall not apply in any Limitation Year for which more than one-third of the Leveraged Share Contributions applied to pay interest and principal on an Acquisition Loan are allocated to Highly Compensated Employees.

(ii)  Limitation Compensation means, for an Employee, Testing Compensation, except that the annual dollar limitation described in Section 1.46 of the Plan shall not apply.

(iii)  Limitation Year means the calendar year.

(c)  If a Participant is also participating in one or more Defined Contribution Plans, the otherwise applicable limitation on Annual Additions under this Plan and the RAP shall be reduced, if necessary, in proportion to Annual Additions made under each such plan. If any further reduction is required after reductions under this Plan and the RAP, the Annual Additions under other Defined Contribution Plans shall then be reduced; provided that, effective for Limitation Years after 1994, Annual Additions under other Defined Contribution Plans shall be reduced to the extent possible before any pro rata reductions are applied under this Plan and the RAP.

(d)  In the event an Annual Addition has erroneously been credited to a Participant's Account in the Plan in excess of the limitations of Code section 415, the erroneously credited Annual Addition and any earnings or losses thereon shall be removed from the Participant's Account on a last-in-first-out basis, so that the Participant's Account is restored to what it would have been had the excess Annual Addition never been contributed. The amount so removed shall be used in lieu of contributions which would otherwise have been made to the Plan for allocation to other Participants. Any excess Annual Additions which cannot be so used during the Limitation Year in which they were contributed shall be held unallocated in a suspense account for the Limitation Year and used (subject to the limitations of Code section 415) in accordance with the Plan in the next Limitation Year before any additional contributions may be made to the Plan for that Limitation Year.

17

(e)     Prior to determining the Participant's actual Limitation Compensation for a Limitation Year, the Administrative Committee may determine the amount of permissible Annual Additions to the Participant's Account for the Participant for the Limitation Year on the basis of a reasonable estimation of the Participant's Limitation Compensation for that Limitation Year. Such estimated Limitation Compensation shall be uniformly determined for all Participants similarly situated.

3.4     <u>Combined Plan Limitation</u>:

In addition to the limitations of Section 3.3, if a Participant in this Plan retains any right to a benefit in the Pension Plan for Employees of Merrill Lynch & Co., Inc. and Affiliates and/or is a participant or retains any right to a benefit in any other Defined Benefit Plan, the overall limitation of Code section 415(e) shall be complied with by reducing the Annual Additions under this Plan and the RAP, if necessary, in proportion to Annual Additions made under each such plan. If any further reduction is required after reductions under this Plan and the RAP, the Annual Additions under other Defined Contribution Plans shall then be reduced; <u>provided</u> that, effective for Limitation Years after 1994, Annual Additions under other Defined Contribution Plans shall be reduced to the extent possible before any pro rata reductions are applied under this Plan and the RAP.

Notwithstanding any other provision of this Plan, this Section 3.4 shall no longer apply after December 31, 1999.

3.5     <u>Return of Contributions Under Special Circumstances</u>:

Notwithstanding any provision of this Plan, a contribution made to the Plan by an Employer may be returned to the Employer if:

(a)     the contribution is made by reason of mistake of fact (for example, incorrect information as to eligibility or compensation of an Employee, a mathematical error, or an erroneous belief that such contribution is consistent with the requirements of Sections 3.3 and 3.4);

(b)     the contribution is conditioned on its deductibility under Code section 404 and unless otherwise explicitly provided in this Plan or by the Employer at the time the contribution is made, all contributions made by the Employer to this Plan are conditioned on their deductibility;

provided that such return of contribution is made within one year of the mistaken payment of the contribution or the disallowance of the tax deduction, as the case may be.

WDC99 534295-2.047750.0011

3.6     Correction of Administrative Errors

If , with respect to a Plan Year, an administrative error results in a Participant's Leveraged Share Account or Reversion Share Account not being properly credited with amounts of Leveraged Share Contributions or Reversion Share contributions, or earnings (including dividends) on any such amounts, then any or all of the following corrective actions may be taken to the extent necessary to correct such errors:

(a)     the Employer may make additional contributions to a Participant's Leveraged Share Account and/or Reversion Share Account;

(b)     forfeitures (including dividends or other earnings thereon) may be reallocated among Participants' Accounts; and

(c)     existing Leveraged Share Contributions and/or Reversions Share Contributions may be reallocated among Participants' Accounts.

In addition, with respect to any Plan Year, if an administrative error results in an amount being credited to an Account for a Participant or any other individual who is not otherwise entitled to such amount, corrective action may be taken by the Employer, including, but not limited to, a direction by the Employer to forfeit amounts erroneously credited (with such forfeitures to be used to reduce future contributions to the Plan), reallocate such erroneously credited amounts to other Participants' Accounts, or take such other corrective action as necessary under the circumstances. Any Plan administration error may be corrected using any appropriate correction method permitted under the Employee Plans Compliance Resolution System (or any successor procedure), as determined by the Administrative Committee in its discretion.

## ARTICLE IV

## CREDITING TO AND ALLOCATION OF ACCOUNTS

4.1    Crediting and Allocation of Reversion Shares:

Reversion Shares shall be allocated to Participants' Reversion Share Accounts for the Plan Year of transfer pursuant to this Section 4.1. Reversion Shares not allocated in such Plan Year of transfer shall be credited to the Reversion Share Suspense Account and subsequently allocated to Participants' Reversion Share Accounts. The amount of Reversion Shares allocated to Participants' Reversion Share Accounts for the Plan Year of transfer shall not be less than the lesser of the Annual Additions permitted with respect to Reversion Shares under Section 3.3 or one-eighth of the Reversion Shares acquired in the Plan Year of transfer, as determined by the Administrative Committee. Allocations for Plan Years subsequent to the Plan Year of transfer shall be made ratably over a period of seven years. Twenty percent of the Reversion Shares to be allocated for a Plan Year shall be allocated for each of the first, second and fourth quarters of the Plan Year and forty percent of the Reversion Shares to be allocated for a Plan Year shall be allocated in the third quarter of the Plan Year (so that the largest allocation shall be made for the first calendar quarter to reflect the historical distribution of the payment of Eligible Compensation during the calendar year).

Allocations of Reversion Shares to Participants' Accounts shall be made in the manner described in Section 4.3.

Dividends on Company Stock held in the Reversion Share Suspense Account shall be used to repay any Acquisition Loan.

4.2    Crediting and Allocation of Leveraged Shares:

Any Leveraged Shares shall initially be credited to a Leveraged Share Suspense Account and shall be allocated to Participants' Leveraged Share Accounts only as payments on the Acquisition Loan used to purchase such Leveraged Shares are made by the Trustee. With respect to each Acquisition Loan, the number of Leveraged Shares to be released from the Leveraged Share Suspense Account for allocation to Participants' Leveraged Share Accounts shall be determined by multiplying the number of Leveraged Shares held in the Leveraged Share Suspense Account immediately before release from that account by a fraction. The numerator of the fraction shall be the amount of principal and interest paid on the Acquisition Loan during the year (prior to January 1, 2004, the numerator was the amount of such payments during the quarter). The denominator of the fraction shall be the sum of the numerator plus the total payments of principal and interest on that Acquisition Loan to be paid for all future years (prior to January 1, 2004, the denominator was the sum of the numerator plus such payments for all future quarters) of the Acquisition Loan repayment period.

Allocations of Leveraged Shares to Participants' Accounts shall be made in the manner described in Section 4.3.

Dividends on Company Stock held in the Leveraged Share Suspense Account shall be used to repay any Acquisition Loan.

4.3     <u>Allocations to Individual Accounts</u>:

Except as otherwise provided in this Section 4.3, within a reasonable time after the end of each calendar year, the Leveraged Shares and Reversion Shares released from the Leveraged Share Suspense Account and the Reversion Share Suspense Account for the year shall be allocated among the Leveraged Share Accounts and Reversion Share Accounts of Participants who are Eligible Employees on the last business day of that calendar year. The allocation shall be based on a fraction, the numerator of which is a number equal to the "fair market value" (as defined below) of the total Leveraged Shares and Reversion Shares released from the Leveraged Share Suspense Account and the Reversion Share Suspense Account, and the denominator of which is a number equal to the total of the Basic Credits made on behalf of all Participants under the RAP with respect to that calendar year.  The percentage so determined shall be multiplied by the Basic Credits made on behalf of each individual Participant under such plan for such calendar year and Leveraged Shares and Reversion Shares with a "fair market value" equal to the result so determined shall be allocated to the Leveraged Share Account and the Reversion Share Account, as the case may be, of each such Participant under this Plan.  For purposes of this Section 4.3, "fair market value" shall mean the closing price on the New York Stock Exchange on the last business day preceding the date on which an allocation occurs.

Any amounts allocated to a Participant's Accounts under the first paragraph of this Section 4.3 shall reduce the Basic and Supplemental Credits to which a Participant is otherwise entitled under Sections 3.2 and 3.3 of the RAP (effective July 1, 2003, the RAP does not provide Supplemental Credits).

4.4     <u>Escrow Account</u>:

If, as a result of a release to the Trust from the escrow account maintained pursuant to the Escrow Agreement, dated July 14, 2000, by and among the Company, Herzog, Heine, Geduld, Inc., Donna Connolly as shareholders' representative and The Chase Manhattan Bank as escrow agent, shares of Company Stock are transferred to the Plan, the manner in which such shares are (i) allocated among Accounts (including the Leveraged Share Suspense Account) under the Plan, (ii) vested, and (iii) distributed from the Plan, shall be determined in accordance with procedures implemented to administer the Plan.

4.5    <u>Suspension of Allocations upon Withdrawal from HHG ESOP</u>:

If a Participant elects a withdrawal pursuant to Section 8.11 of the Herzog Heine Geduld Employee Stock Ownership Plan (the "HHG ESOP"), for periods before July 17, 2001, in any form other than a transfer to the RAP, allocations pursuant to Section 4.3 that would otherwise have been allocated to the Participant's Account shall be suspended during the one-year period beginning on such date as Global Benefits determines to be administratively practicable.

WDC99 534295-2.047750.0011

# ARTICLE V

## VESTING OF ACCOUNTS

5.1  Vesting:

A Participant who has a Termination of Employment with less than five years of Service shall not be vested in his or her Leveraged Share Account and Reversion Share Account to any extent. Notwithstanding the foregoing, a Participant shall be 100% vested in his or her Leveraged Share Account and Reversion Share Account if he or she: (i) attains Normal Retirement Age prior to his or her Termination of Employment, (ii) terminates Employment because of his or her death, (iii) incurs a Disability, or (iv) completes five years of Service.

A Participant shall be 100% vested in his or her Transferred Contribution Account at all times.

Effective for dividends paid on or after January 1, 2002, a Participant shall be 100% vested in all amounts attributable to dividends in his Accounts that are subject to a Participant's actual or deemed election to reinvest such dividends as described in Section 6.1(c).

Notwithstanding any other provision of the Plan to the contrary, a Participant who has a Termination of Employment and subsequently returns to Employment shall, with respect to contributions allocated after the Participant's return to Employment, have credit for all Service credited for purposes of vesting as of his or her prior date of Termination of Employment.

5.2  Treatment of Forfeitures:

In the event that a Participant has a Termination of Employment and is not vested in his or her Leveraged Share Account and Reversion Share Account, such Participant shall be deemed to have received a total distribution from the Plan, and his or her Leveraged Share Account and Reversion Share Account shall be forfeited after the first Valuation Date coincident with or next following the date of his or her Termination of Employment.

Any forfeitures arising from a Participant's Leveraged Share Account and Reversion Share Account during a Plan Year shall be transferred to the Forfeiture Account. At least once every Plan Year, to the extent that forfeitures have not been reallocated pursuant to Section 3.6, forfeitures in the Forfeiture Account (and amounts treated as forfeitures as provided under Section 13.7) shall be reallocated to Participants' Reversion Share Accounts and Leveraged Share Accounts, as the case may be, such reallocation to be computed in the same manner as the allocation of Leveraged Shares and Reversion Shares is computed under Section 4.3. In addition, amounts described in the IRS

Compliance Statement issued to the Employer in connection with this Plan, dated August 23, 2001 shall be allocated to Participants' Leveraged Share Accounts as soon as administratively practicable thereafter, such reallocation to be computed in the same manner as the allocation of Leveraged Shares is computed under Section 4.3. All amounts allocated to a Participant's Accounts under this Section 5.2 shall reduce the Basic and Supplemental Credits to which a Participant is otherwise entitled under Sections 3.2 and 3.3 of the RAP (effective July 1, 2003, the RAP does not provide Supplemental Credits).

Any earnings (including dividends and earnings thereon) on amounts held in the Forfeiture Account (and amounts treated as forfeitures as provided under Section 13.7) shall be allocated (in the same manner as described in the immediately preceding paragraph with respect to forfeitures) among Participants' Accounts (including pursuant to Section 3.6) to the extent not used to pay expenses payable from the Trust.

5.3    Reinstatement of Forfeitures:

In the event of reemployment of a Participant with the Company or an Affiliate within seven years after the Participant's Termination of Employment, any dollar amount forfeited by the Participant at his or her Termination of Employment (unadjusted by any subsequent earnings or losses) shall be reinstated in the Participant's Leverage Share Account and Reversion Share Account, as appropriate, as of the first day as of which contributions can be allocated to the Participant's Leverage Share Account and Reversion Share Account, as appropriate, following the Participant's resumption of Employment. Notwithstanding the foregoing, in the event a reemployed Participant previously participated in a tax-qualified plan which was merged into the Plan, reinstatement shall be made upon request of the Participant. The amount so restored will be derived from amounts forfeited that are held in the Forfeiture Account pursuant to Section 5.2, and if such amounts are insufficient to make a full restoration, the Company shall make an additional contribution in the amount necessary to complete the restoration.

5.4    Special Vesting Rules for Certain Former HHG ESOP Participants:

Notwithstanding anything in this Article V to the contrary, in the case of a Participant who was a participant in the Herzog Heine Geduld Employee Stock Ownership Plan (the "HHG ESOP") before July 17, 2001, whose account balance in the HHG ESOP was transferred to this Plan in connection with the merger of the HHG ESOP with this Plan, and who became an actively employed Participant in this Plan immediately thereafter, the vested interest in such Participant's Leveraged Share Account shall be determined in accordance with the following schedule:

| Years of Service | Vested Percentage |
| --- | --- |
| Less than 3 years | 0% |
| 3 years | 20% |

| | |
|---|---|
| 4 years | 40% |
| 5 or more years | 100% |

In addition, a Participant shall be 100% vested in his or her Leveraged Share Account if he or she: (i) attains Normal Retirement Age prior to his or her Termination of Employment, (ii) terminates Employment because of his or her death, or (iii) incurs a Disability.

WDC99 534295-2.047750.0011

## ARTICLE VI

## MANAGEMENT, CONTROL AND INVESTMENT
## OF PLAN ASSETS

6.1   Investment of Accounts:

   (a)   All Reversion Share Contributions shall be invested in Reversion Shares.  All Leveraged Share Contributions made to the Plan shall be used to make payments on an Acquisition Loan the proceeds of which were used to purchase Leveraged Shares.

   (b)   Cash dividends paid on Leveraged Shares that have been allocated to Participants' Accounts shall be used to pay any Acquisition Loan, only to the extent provided under Section 3.2.  Subject to Section 6.1(c), cash dividends allocable to a Participant's Accounts for which no other use is prescribed under the Plan shall be reinvested in Company Stock for the particular Account to which the dividend is allocable in accordance with the Merrill Lynch & Co., Inc. Dividend Reinvestment Plan.

   (c)   Effective with respect to dividends paid on or after January 1, 2002, except with respect to any cash dividends on Company Stock that are used to pay any Acquisition Loan, Participants (and Beneficiaries) may make a dividend election either (1) to receive a distribution of any cash dividends paid with respect to Company Stock allocated to the Participant's or Beneficiary's Accounts as soon as administratively practicable following the date the dividends are paid to the Plan, but in no event later than 90 days after the end of the Plan Year in which the dividends are paid to the Plan, or (2) to have such cash dividends remain in the Participant's or Beneficiary's Accounts, to be reinvested in Company Stock.

   Each Participant's or Beneficiary's dividend election shall be made in the manner prescribed by the Administrative Committee.  A Participant's or Beneficiary's dividend election shall remain in effect until changed by such Participant or Beneficiary.  A Participant or Beneficiary may change his dividend election with respect to any future dividends by filing a notice of change in the manner and within the time established by the Administrative Committee.

   In the absence of a dividend election made in the manner prescribed by the Administrative Committee, the Participant or Beneficiary shall be deemed to have elected to have such cash dividends remain in the Participant's or Beneficiary's Accounts, to be reinvested in Company Stock.

   (d)   Notwithstanding the foregoing, and consistent with the requirements of Code sections 4975(e)(7) and 4980(c)(3) and the regulations thereunder, cash held in

26

the Trust that is not yet invested in Company Stock may be invested, at the direction of the Investment Committee, in short-term securities issued or guaranteed by the United States of America or any agency or instrumentality thereof or any other prudent investments of a short-term nature that earn income. Any earnings on amounts held in the Trust and invested pursuant to this paragraph may be used, at the discretion of the Administrative Committee, to pay reasonable expenses payable from the Trust.

6.2    Tender and Voting of Company Stock -- In General:

Each Participant shall have the authority and discretion specified in this Article VI to direct the Trustee to sell, offer to sell, exchange or otherwise dispose of pursuant to an Offer (as defined in Section 6.3(a)): (i) shares of Company Stock allocated to such Participant's Accounts and (ii) a pro rata portion of the unallocated shares of Company Stock and to direct the Trustee's voting of such shares with respect to matters submitted to the shareholders of the Company. In the exercise of this authority and discretion, each such Participant shall be a "named fiduciary" within the meaning of ERISA section 403(a)(1). The Trustee shall have no discretion or authority to sell, offer to sell, exchange or otherwise dispose of any shares of Company Stock pursuant to an Offer (as defined in Section 6.3(a)), nor to vote Company Stock held in Trust and on any matter presented for a vote by the stockholders of the Company, except in accordance with the provisions of this Article VI.

6.3    Tender of Company Stock:

(a)    Subject to the provisions of paragraphs (c) and (d) of this Section 6.3, in the event any person, either alone or in conjunction with others, makes a tender offer, exchange offer or otherwise offers to purchase or solicits an offer to sell any shares of Company Stock held in the Trust, whether or not allocated to Participants' Accounts (hereinafter referred to as an "Offer"), the Trustee shall be obligated to sell, offer to sell, exchange or otherwise dispose of, in whole or in part, that number of shares of any Company Stock held in the Trust subject to such Offer that are: (i) allocated to Participants' Accounts, to the extent that the Trustee is timely so directed by the Participant pursuant to this Article VI, and (ii) not allocated to any Account (including forfeited shares that have not been reallocated) and are equal to the aggregate number of unallocated shares of Company Stock multiplied by a fraction the numerator of which is the aggregate number of shares of Company Stock allocated to Participants' Accounts for which the Trustee has received valid directions pursuant to this Article VI from such Participants to sell, offer to sell, exchange or otherwise dispose of shares in such Accounts and the denominator of which is the aggregate number of shares of Company Stock allocated to all of Participants' Accounts under the Plan.

(b)    In the event, under the terms of an Offer or otherwise, any shares of Company Stock offered for sale, exchange or other disposition pursuant to such Offer may

be withdrawn from such Offer, the Trustee shall follow the instructions of each Participant respecting the withdrawal of such shares from such Offer in the same manner and in the same proportion that such instructions originally were received by the Trustee from each Participant to sell, offer to sell, exchange or otherwise dispose of such shares pursuant to such Offer.

(c) In the event that an Offer for fewer than all of the shares of Company Stock held in the Trust shall be received, the Trustee shall sell, offer to sell, exchange or otherwise dispose of shares of Company Stock in accordance with this Section 6.3. In the event that the aggregate number of shares sold, exchanged or disposed of pursuant to such Offer is less than the aggregate number of shares allocated to Accounts that the Trustee has offered for sale, exchange or other disposition pursuant to this Section 6.3, the Trustee shall allocate the proceeds of such sale, exchange or disposition on a pro rata basis among the aggregate shares allocated to Accounts that were offered for sale, exchange or other disposition pursuant to this Section 6.3.

(d) In the event that an Offer shall be received and instructions shall be solicited from Participants pursuant to this Section 6.3 regarding such Offer, and prior to the termination of such Offer, another Offer is received for the securities subject to the first Offer, the Trustee shall use its best efforts under the circumstances to solicit instructions from each Participant:

(i) with respect to securities offered for sale, exchange or disposition pursuant to the first Offer, whether to withdraw such Offer, if possible, and, if withdrawn, whether to sell, offer to sell, exchange or otherwise dispose of any such securities pursuant to the second Offer, and

(ii) with respect to securities not offered for sale, exchange or other disposition pursuant to the first Offer, whether to sell, offer to sell, exchange or otherwise dispose of any such securities pursuant to the second Offer.

The Trustee shall follow all such instructions received in a timely manner from Participants in the same manner and in the same proportion as provided in paragraph (a) of this Section 6.3. With respect to any further Offer received for any Company Stock and subject to any earlier Offer (including successive Offers from one or more existing offerors), the Trustee shall continue to solicit directions from each Participant in the manner described in this Article VI.

(e) Any proceeds received as a result of the sale, exchange or other disposition of shares of Company Stock pursuant to an Offer shall be held in the Trust and reinvested by the Trustee in Company Stock, if such securities are available for purchase, and if not, to the extent attributable to unallocated stock in any suspense account, may be used to pay down any Acquisition Loan, and to the extent

attributable to allocated Company Stock, shall be invested in short-term, fixed-income investments selected by the Administrative Committee that have a maturity of not more than two years from the time such investment is made, unless and until the Trustee is otherwise directed by the Administrative Committee.

6.4    <u>Voting of Company Stock</u>:

With respect to shares of Company Stock allocated to the Accounts of any Participant, on any matter to be presented for a vote by the stockholders of the Company, the Trustee shall vote all such shares in accordance with directions received from each such Participant.

With respect to shares of Company Stock that are not allocated to Participants' Accounts (including forfeited shares that have not been reallocated) or with respect to shares of Company Stock allocated to Participants' Accounts for which no instructions were timely received by the Trustee, such shares shall be voted in the same manner and in the same proportion as the shares allocated to Participants' Accounts with respect to which the Trustee received valid voting instructions.

6.5    <u>One Share Allocation</u>:

Solely for purposes of this Article VI, prior to the date upon which the first allocation of Company Stock to Participants under the Plan shall be effective, each Participant shall be deemed to have one share of Company Stock allocated to each such Participant's Account.

6.6    <u>Dissemination of Information</u>:

In the event that, as contemplated by Section 6.3 or 6.4, an Offer for any Company Stock held in the Trust shall be received, or any matter shall be presented for a vote by the shareholders of the Company, and Participants shall be entitled to determine whether to accept, reject or withdraw an acceptance of such Offer, or to determine the manner in which shares of Company Stock shall be voted.

(a)    The Company and the Trustee shall not interfere in any manner with the decision of any Participant with respect to such Offer or vote, as the case may be.

(b)    The Trustee shall arrange for such investment decision or vote to be made on a confidential basis (including, to the extent the Trustee deems necessary or advisable to preserve such confidentiality, by arranging for the transfer of the recordkeeping functions under the Plan to itself or an independent recordkeeper) and shall not divulge such investment decision or vote to anyone, including the Company, the Administrative Committee, the Investment Committee, or any director, officer, employee or agent of the Company, it being the intent of this

Section 6.6 to ensure that the Company (and its directors, officers, employees and agents) cannot determine the direction given by any Participant.

(c)    The Trustee shall use its best efforts to communicate or cause to be communicated to each Participant: (i) the provisions of this Plan and the Trust Agreement relating to the right of each Participant to direct the Trustee with respect to Company Stock subject to such Offer or vote and the obligation of the Trustee to follow such directions, and (ii) the consequences of any failure to provide the Trustee with timely instructions.

(d)    The Trustee shall use its best efforts to distribute or cause to be distributed to each Participant all communications directed generally to the owners of Company Stock to whom such Offer is made or is available or who are entitled to vote.

(e)    The Trustee shall use its best efforts to distribute or cause to be distributed to each Participant all communications that the Trustee may receive, if any, from the person making the Offer or soliciting proxies or any other interested party (including the Company) relating to the Offer or the matters being presented for a vote by the shareholders of the Company, as the case may be.

The Company and the Administrative Committee shall provide the Trustee with such information and assistance (including the transfer of recordkeeping functions) as the Trustee may reasonably request in connection with any communications or distributions to each Participant.

6.7    Invalidation of Participant Direction:

In the event a court of competent jurisdiction shall issue an opinion or order to the Plan, the Company or the Trustee, which shall, in the opinion of counsel to the Company or the Trustee, in all circumstances or in any particular circumstances, invalidate any provision or provisions of this Article VI or the Trust Agreement regarding the determination of whether Company Stock held in the Trust shall be sold, offered for sale, exchanged or otherwise disposed of pursuant to an Offer, or the manner in which such Company Stock shall be voted, then, upon notice thereof to the Company or the Trustee as the case may be, such invalid provisions shall be given no further force or effect. In such circumstances, the Trustee shall have no discretion to sell, offer for sale, exchange or otherwise dispose of or vote Company Stock held in the Trust unless and to the extent required under such order or opinion, but shall follow any instructions received from a Participant, to the extent such instructions have not been invalidated.

To the extent that the Trustee is required to exercise any residual fiduciary responsibility with respect to any sale, offer to sell, exchange or other disposition of or any vote of Company Stock held in the Trust, the Trustee shall take into account in exercising its fiduciary judgment, unless it is clearly imprudent to do so, any directions timely received from a Participant.

WDC99 534295-2.047750.0011