UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x
IN RE MERRILL LYNCH & CO., INC.       :    Master File No.
SECURITIES, DERIVATIVE AND ERISA      :    07-CV-9633(LBS)(AJP)(DFE)
LITIGATION                            :
------------------------------x
This Document Relates to:             :
Securities Action, 07cv9633(LBS)(AJP)(DFE)  :
------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT
GREGORY J. FLEMING TO DISMISS THE CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

*Attorneys for Defendant Gregory J. Fleming*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .......................................................................................................... 3

ARGUMENT ................................................................................................................................ 4

    THE SCIENTER ALLEGATIONS AS TO FLEMING ARE LEGALLY INSUFFICIENT ................................................................................................................. 4

        A.    Fleming's Stock Sales Do Not Evidence Scienter ......................... 4

        B.    The August 2007 Memo Does Not Evidence Scienter .................. 7

        C.    The Credit Suisse Analyst Report Does Not Evidence Scienter.... 9

        D.    Signing the November 2007 Quarterly Filing with the SEC Does Not Evidence Scienter ................................................................. 10

CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

**CASES**                                         **PAGE(S)**

Acito v. IMCERA Group, Inc.,
   47 F.3d 47 (2d Cir. 1995) .................................................................................................5

In re Aegon N.V. Securities Litigation,
   2004 U.S. Dist. LEXIS 11466 (S.D.N.Y. June 23, 2004) .................................................12

In re AstraZeneca Securities Litigation,
   2008 U.S. Dist. LEXIS 43680 (S.D.N.Y. June 3, 2008) ....................................................7

In re Bristol-Myers Squibb Securities Litigation,
   312 F. Supp. 2d 549 (S.D.N.Y. 2004) .........................................................................4, 5, 6

California Public Employees' Retirement System v. Chubb Corp.,
   394 F.3d 126 (3d Cir. 2004) ..........................................................................................8, 9

In re Citigroup, Inc. Securities Litigation,
   330 F. Supp. 2d 367 (S.D.N.Y. 2004), aff'd sub nom. Albert Fadem Trust v.
   Citigroup, Inc., 165 F. App'x 928 (2d Cir. 2006)..............................................................3

City of Brockton Retirement System v. Shaw Group, Inc.,
   540 F. Supp. 2d 464 (S.D.N.Y. 2008) ..............................................................................11

In re Dynex Capital, Inc. Securities Litigation,
   2006 U.S. Dist. LEXIS 4988 (S.D.N.Y. Feb. 10, 2006), vacated on other grounds
   sub nom. Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital,
   Inc., 2008 U.S. App. LEXIS 13449 (2d Cir. June 26, 2008) ......................................11, 12

In re Elan Corp. Securities Litigation,
   543 F. Supp. 2d 187 (S.D.N.Y. 2008) ..............................................................................11

In re Federated Department Stores, Inc. Securities Litigation,
   2005 U.S. Dist. LEXIS 4743 (S.D.N.Y. Mar. 23, 2005) ....................................................9

Garfield v. NDC Health Corp.,
   466 F.3d 1255 (11th Cir. 2006) ........................................................................................11

In re Keyspan Corp. Securities Litigation,
   383 F. Supp. 2d 358 (E.D.N.Y. 2003) ...........................................................................5, 6

Novak v. Kasaks,
   216 F.3d 300 (2d Cir. 2000) .............................................................................................10

Rich v. Maidstone Financial, Inc.,
    2001 U.S. Dist. LEXIS 3167 (S.D.N.Y. Mar. 23, 2001) .........................................................3

In re Take-Two Interactive Securities Litigation,
    2008 U.S. Dist. LEXIS 31463 (S.D.N.Y. April 16, 2008) ....................................................11

Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital Inc.,
    2008 U.S. App. LEXIS 13449 (2d Cir. June 26, 2008) ................................................1, 2, 12

Tellabs, Inc. v. Makor Issues and Rights, Ltd.,
    127 S. Ct. 2499 (2007) ..................................................................................................1, 2, 4

In re Vantive Corp. Securities Litigation,
    283 F.3d 1079 (9th Cir. 2002) ...........................................................................................5, 6

**STATUTES & RULES**

Fed. R. Civ. P. 9(b) ........................................................................................................................2, 3

15 U.S.C. § 78u-4 ..................................................................................................................1, 2, 3, 9

**OTHER AUTHORITIES**

Landon Thomas, Jr. & Jenny Anderson, A Risk-Taker's Reign at Merrill Ends with Swift, Messy
    Fall, N.Y. Times, Oct. 29, 2007, at A1 ....................................................................................8

Defendant Gregory J. Fleming ("Fleming") respectfully submits this memorandum of law in support of his motion to dismiss the Consolidated Amended Class Action Complaint (the "Complaint" or "Compl."). To avoid duplicative briefing, Fleming expressly adopts and incorporates herein the arguments made by defendants Merrill Lynch & Company and the related Merrill entities ("Merrill" or the "Company"), E. Stanley O'Neal ("O'Neil"), Jeffrey N. Edwards ("Edwards") and Ahmass L. Fakahany ("Fakahany") in support of their motions to dismiss also filed today.[1]

## PRELIMINARY STATEMENT

During the first seven months of the alleged class period, Greg Fleming was the head of investment banking at Merrill -- a business that has nothing to do with the allegations made in the Complaint. In about the middle of the class period, in May 2007, <u>after</u> Fleming's only stock sale during the alleged class period, Fleming was named Co-President and Co-Chief Operating Officer of Merrill.[2] Today, Fleming is the President and Chief Operating Officer of Merrill. The Complaint does not allege, nor could it consistent with Rule 11, that Fleming has ever had direct line responsibility for any of the fixed income businesses within the Company that generated the losses from subprime investments at issue here.

As explained in Merrill's motion, Plaintiffs cannot proceed without first alleging particularized facts giving rise to a strong inference of scienter under the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4, specifically, an

---

[1] Exhibits ("Ex. __") referred to in this memorandum of law are attached to the July 21, 2008 Declaration of Jay B. Kasner in Support of the Merrill Defendants' Motion to Dismiss the Consolidated Amended Complaints.

[2] The Complaint incorrectly alleges that Fleming served as President and Chief Operating Officer of Merrill "at all relevant times" (Compl. ¶ 72). He did not. <u>See</u> Ex. UU.

inference that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2504-05 (2007); see also Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 2008 U.S. App. LEXIS 13449, at *9 (2d Cir. June 26, 2008).[3]  And as the Merrill Memorandum demonstrates, despite having months to consolidate the complaints, and despite the length of the final product, Plaintiffs do not come close to making the required showing of scienter.

       The Complaint simply does not allege particularized facts giving rise to a cogent inference -- much less a compelling one -- that Merrill and the other defendants knew, and then purposefully hid from investors, the risks arising from the accumulation of super senior AAA rated tranches of certain collateralized debt obligations ("CDOs"), which contained subprime mortgages.  All of the Complaint's scienter allegations, whether generalized musings concerning a supposed desire to increase compensation or unsuccessful attempts to find "red flags" of fraud, are woefully deficient and Merrill has addressed them one by one in their Memorandum.

       We do not repeat that discussion here.  Instead, we focus below on the handful of allegations directed explicitly at Fleming.  Indeed, the vast majority of the allegations in the Complaint are generically directed at the "Exchange Act Defendants" without regard to how they relate (if at all) to Fleming.  These allegations do not pass muster under the PSLRA or Rule 9(b), both of which require a particularized showing of

---

[3] Fleming is only named as a defendant in Counts I – III, alleging underlying violations of Section 10(b) of the Securities Exchange Act of 1934.  Fleming is not named in any of the counts under the Securities Act of 1933.

scienter as to each individual defendant.[4] In the entire Complaint, there are only four allegations directed specifically to Fleming, and from which Plaintiffs attempt to demonstrate his scienter.

As discussed below, these four allegations misstate facts that can readily be gleaned from the public record, mischaracterize documents, and in any event, are so meager and boilerplate, that they do not come close to meeting the PSLRA's stringent pleading requirements. In short, they provide no support for an inference of fraud that is at least equal to the competing inference that Fleming is an honest senior executive who did the best he could to understand the emerging credit crisis, and when he had the opportunity to do so, reduce the impact of the crisis on Merrill and ensure accurate disclosures.

## STATEMENT OF FACTS

The background facts concerning the unprecedented credit crisis that began last summer, and its impact on Merrill, are described in Merrill's Memorandum as are the general allegations of the Complaint that attack more than ten Merrill disclosures as "misleading." The few allegations attempting to describe Fleming's supposed fraudulent state of mind and wrongdoing come in two varieties: (1) allegations concerning "compensation packages" and stock sales that could be levied against almost any senior executive of any major corporation; and (2) assertions that even a cursory

---

[4] See In re Citigroup, Inc. Sec. Litig., 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004), aff'd sub nom. Albert Fadem Trust v. Citigroup, Inc., 165 F. App'x 928 (2d Cir. 2006) ("Plaintiff must allege facts with regard to each Defendant that give rise to a strong inference of fraudulent intent . . ."); Rich v. Maidstone Fin., Inc., 2001 U.S. Dist. LEXIS 3167, at *17 (S.D.N.Y. Mar. 23, 2001) ("'[w]hen fraud is alleged against multiple defendants, a plaintiff must . . . set[ ] forth separately the acts complained of by each defendant' . . . A complaint may not simply 'clump[ ] defendants together in vague allegations' to meet the pleading requirements") (citations omitted).

review of the public record or document at issue shows are factually flawed in serious ways.

Apart from misstating his title and position during the purported class period (see note 2, supra), the Complaint merely alleges the following to show that Fleming supposedly acted with scienter:

- Fleming received significant compensation packages (never specified), and on February 6, 2007, he sold Merrill stock, realizing $4.2 million. ¶¶ 10, 25, 196;

- Fleming co-authored a single memo, sent to Merrill's directors in August 2007, supposedly showing his awareness of the "mounting" "risks" "losses" and "troubles" supposedly confronting the Company from the CDO investments. ¶¶ 72, 113;

- Fleming attended a single meeting with a stock analyst from Credit Suisse, after which Credit Suisse presented a supposedly misleading report that did not reflect Merrill's true exposure to risk. ¶ 163; and

- Fleming signed a single certification attached to a single quarterly filing with the SEC in November 2007, which, in fact, disclosed $7.9 billion of losses related to the CDO portfolio. ¶¶ 72, 325.

None of this comes close to supporting an inference of fraud, much less the "cogent" and "compelling" inference required under Tellabs. We address each allegation in turn.

## ARGUMENT

### THE SCIENTER ALLEGATIONS AS TO FLEMING ARE LEGALLY INSUFFICIENT

A.  **Fleming's Stock Sales Do Not Evidence Scienter**

Plaintiffs allege that Fleming realized $4.2 million when he sold stock on February 6, 2007. Courts in the Second Circuit recognize that sales by insiders are a common occurrence, and thus insider sales -- even of large amounts of stock -- are by themselves an insufficient basis from which to infer scienter. See In re Bristol-Myers

4

Squibb Sec. Litig., 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004). A finding of motive cannot be predicated solely upon the gross proceeds of alleged insider stock sales. See In re Keyspan Corp. Sec. Litig., 383 F. Supp. 2d 358, 382 (E.D.N.Y. 2003) ("[L]arge dollar amounts, standing alone, typically do not suffice to establish motive").

Only sales that are unusual or suspicious in some specifically pled way can serve to meet the scienter requirement. See id. at 381-83. Here, Plaintiffs make the conclusory and boilerplate assertion that Fleming's sole sale was "unusual and suspicious," but Plaintiffs only offer one alleged fact in support: they compare the 2007 sale to Fleming's supposed 2006 sales of $500,000. Compl. ¶ 196.

There are so many flaws in this allegation it is difficult to know where to begin. First, the Complaint misstates the amount of sales in 2006 -- it was $960,000 and not the $500,000 alleged. See Ex. QQ. Plaintiffs also do not inform the Court that in 2005 Fleming realized $1,547,000 from Merrill stock sales. See id. These public facts place into context the 2007 sales and hardly suggest unusual stock trading as part of a grand conspiracy.

Second, consistent with their "ignore the public facts" approach, Plaintiffs never inform the Court that Fleming's single sale alleged during the class period involved a very small percentage (less than 4.7%) of the total number of Merrill shares beneficially owned by Fleming in 2007. See, e.g., Acito v. IMCERA Group, Inc., 47 F.3d 47, 54 (2d Cir. 1995) (plaintiffs failed to allege unusual stock sales where defendant sold less than 11% of total holdings); In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1092 (9th Cir. 2002) (sales of 38% of defendants' aggregate holdings not sufficient to infer scienter). What Plaintiffs fail to plead -- and what is evident from even the most cursory review of

Fleming's sales -- is that Fleming consistently has retained <u>over 90%</u> of his Merrill holdings. In fact, as reflected on the following chart derived entirely from the public filings, Fleming's total holdings have <u>increased</u> year after year and <u>during</u> the alleged class period.

| Greg Fleming Stock Sales[5] | | | | | |
|---|---|---|---|---|---|
| Year | Shares Sold | Avg. Price | Proceeds | Shares Beneficially Owned (*before* sales) | Percentage of Shares Sold |
| 2005 | 27,590 | $56.08 | $1,547,137 | 545,476 | 5.1% |
| 2006 | 12,846 | 74.70 | 959,591 | 684,319 | 1.9 |
| 2007 | 45,020 | 94.09 | 4,235,785 | 957,924 | 4.7 |

Of course, as a matter of common sense and law, <u>increasing</u> beneficial ownership during an alleged fraud negates a finding of fraudulent intent. See <u>Bristol-Myers</u>, 312 F. Supp. 2d at 561 ("<u>increas[ing]</u> . . . holdings during the class period [is] a fact wholly inconsistent with fraudulent intent") (emphasis in original); <u>see also</u> <u>Keyspan</u>, 383 F. Supp. 2d at 383-84 (retention of shares by key officers inconsistent with an inference of scienter).

Third, Plaintiffs allege that Fleming sold on only one day -- February 6, 2007 -- despite the fact that the alleged class period continued for almost another full year

---

[5] All of the information in the above chart is derived from the Proxy Statements and Form 4s. <u>See</u> Exs. HH-JJ, QQ. (The "Shares Beneficially Owned/Percentage of Shares Sold" columns merely are mathematical calculations derived from the information in the Proxy Statements and Form 4s.)

until January 16, 2008.[6] So, according to Plaintiffs, Fleming had a motive to inflate Merrill's stock price during the <u>entire</u> class period (Compl. ¶¶ 10, 25, 72, 196), yet he sold only once and retained virtually all his Merrill stock throughout the class period and through the steep declines in the wake of the credit crisis. This is not conduct consistent with fraudulent intent. See <u>In re AstraZeneca Sec. Litig.</u>, 2008 U.S. Dist. LEXIS 43680, at *15 (S.D.N.Y. June 3, 2008) ("[T]heory of insider selling as a motive for misrepresentation . . . negated" where defendants made few sales throughout a large portion of the class period).

Finally, the one day on which Fleming sold his stock occurred several months before the May 2007 date on which he was promoted to the position of Co-President, during the time when he was responsible for the investment banking business at Merrill, and during which time he is not alleged to have had any supervisory responsibility over -- or knowledge of -- the fixed income division that is the locus of the alleged fraud. That he chose to sell some stock in February cannot give rise to an inference that he did so in connection with an alleged fraud concerning valuations of products in the fixed income division, for which he had no direct responsibility at that or any other time.

### B.  The August 2007 Memo Does Not Evidence Scienter

Apparently relying entirely on press reports that they never cite, Plaintiffs allege in wholly conclusory terms that a lone August 2007 memorandum entitled "Board

---

[6] There is nothing suspicious about the timing of this sale. The February 2007 sale occurred shortly after January 31, 2007, the date on which shares of restricted stock previously issued to Fleming vested and could be sold. See <u>supra</u> p. 6 and note 5; <u>see also</u> ex. KK at 46. A review of Fleming's sales in 2006 reflects the same pattern of selling in February following Merrill's fourth quarter earnings announcement on January 18, 2007. See <u>supra</u> p.6 and note 5; <u>see also</u> Ex. TT.

Market Update End July Results: Note from Fakahany and Fleming" establishes Fleming's purported knowledge of "mounting losses and troubles facing the Company's CDO exposure." Compl. ¶ 113.[7] According to Plaintiffs, the memorandum "explain[ed] that significant deterioration in this business had taken place in July." Id.

Plaintiffs do not attach the memorandum. Plaintiffs do not quote from it. Plaintiffs do not allege how even an awareness, in August 2007, of some unspecified losses that had been incurred in July is inconsistent with a variety of competing inferences which negate any inference of fraud, including that Fleming believed in August that: (a) Merrill had appropriate risk controls and procedures in place; (b) Merrill as a whole was better positioned than others to weather the market volatility because of its broad array of businesses; (c) Merrill's fixed income business had remained very profitable despite the market volatility; and (d) Merrill's CDO book of business was appropriately marked.

Indeed, Plaintiffs nowhere explain with any particularity how this memorandum demonstrates that Fleming, who had no direct responsibility for the CDO business, supposedly knew in August of the multibillion dollar market valuation losses that would be recognized months later. Nor do Plaintiffs even attempt to explain how, if at all, the information in the August memo contradicted the disclosures that others at Merrill were making to the market at the same time. See CALPERS v. Chubb Corp., 394 F.3d 126, 148 (3d Cir. 2004) ("[B]arebones sketch of this internal memo utterly fails to

---

[7] An October 29, 2007 article published in the New York Times mentions the memorandum and states -- as does the Complaint -- that the memo discussed the "mounting losses and troubles, and explain[ed] that significant deterioration had taken place in July." Landon Thomas Jr. & Jenny Anderson, A Risk-Taker's Reign at Merrill Ends with a Swift, Messy Fall, N.Y. Times, Oct. 29, 2007, at A1.

meet this standard in any respect"); In re Federated Dep't Stores, Inc. Sec. Litig., 2005 U.S. Dist. LEXIS 4743 (S.D.N.Y. March 23, 2005) (allegations regarding internal reports that contained "unspecified information" insufficient to allege recklessness). It bears emphasis that Plaintiffs have not alleged that Fleming made any statements to the market at this time (or any time) relating to Merrill's CDO book of business.

In short, to satisfy their heavy burden of pleading scienter as to Fleming under the PSLRA, Plaintiffs rely on a vague reference to a memo from which they do not quote, let alone attach to the complaint, and which it appears they have never even read. Thus, alluding to a memo they have never seen, at most they allege that Fleming was aware, in August, of unspecified losses in July, which even if true, is not alleged to be inconsistent with any specific statements made by Fleming -- who indeed is not even alleged to have said anything publicly on the subject of CDO losses at any time. This paltry pleading cannot be sufficient.

**C.    The Credit Suisse Analyst Report Does Not Evidence Scienter**

Equally puzzling is the allegation that Fleming knew of significant risks and then misstated them to a market analyst. The Complaint alleges that "[a]fter a meeting with Defendant Fleming and Dow Kim [the Merrill officer in charge of the fixed income business at the time], on February 2, 2007, Credit Suisse stated that while Merrill was taking more risk in many of its businesses, VaR [value at risk] as a percentage of tangible equity was low relative to Merrill's peers." Compl. ¶ 163 (emphasis added); see Ex. VV (the Credit Suisse report). At the time of the meeting, four months before Fleming was appointed Co-President, Fleming was responsible for Merrill's investment banking division and Kim (not Fleming) had responsibility for all trading operations, to which the VaR metric related.

9

Yet Plaintiffs nowhere allege that Fleming even addressed the VaR metric with the analyst or made any misstatement to the analyst that appeared in the published report. See Novak v. Kasaks, 216 F.3d 300, 314 (2d Cir. 2000) (to allege a sufficient claim, the complaint must show that defendant "'intentionally fostered a mistaken belief concerning a material fact'" in the report or placed his "'imprimatur'" on the report) (citation omitted). Further, nothing in the Complaint even provides a basis to say the report is wrong. All the Credit Suisse report says is that the VaR metric for Merrill is lower than it is for some of Merrill's peer financial firms. The report goes on to provide a list of financial firms ranked by VaR. This VaR analysis and ranking is one conducted entirely by Credit Suisse.[8]

In sum, nothing in the Complaint provides any basis to infer that Fleming said anything about the VaR at Merrill, or that Fleming endorsed the report's conclusions, or that the VaR metric as presented by Credit Suisse is wrong, or that the ranking of firms by VaR provided by Credit Suisse is inaccurate in any way. It thus cannot serve as a basis to find scienter against Fleming.

**D.    Signing the November 2007 Quarterly Filing with the SEC Does Not Evidence Scienter**

Plaintiffs' allegation that Fleming signed the Sarbanes-Oxley certification for a single quarterly report on November 7, 2007 hardly merits attention. This report

---

[8] Credit Suisse analyzed Merrill's financials and published their own conclusions. The analysts reported, "[t]here's no doubt that Merrill, like its peers, is taking more risk today in many of its businesses -- trading, principal investments, private equity, etc. As a gauge of trading-related risk taking, we looked at Merrill's trading VaR. VaR as a percentage of tangible equity is low relative to peers -- that's more a function of business mix (i.e. the capital supporting the firm's private client business). On an absolute basis, Merrill's gap to peers has narrowed substantially. We'd argue that despite that narrowing, there's still substantial opportunity." Ex. VV at 4 (emphasis added).

was filed after O'Neal had left Merrill, and contained extensive disclosure (including a $7.9 billion loss) related to the CDO portfolio.

It is well understood by now that a defendant's "Sarbanes-Oxley certification is probative of scienter only if the complaint alleges specific contrary information, such as 'glaring accounting irregularities or other "red flags,"' of which the certifying defendant had 'reason to know.'" In re Take-Two Interactive Sec. Litig., 2008 U.S. Dist. LEXIS 31463, at *160 (S.D.N.Y. April 16, 2008) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1266 (11th Cir. 2006)). Plaintiffs offer nothing, not a single allegation, to show that Fleming knew of any facts contradicting the information contained in the Form 10-Q that Fleming certified. See City of Brockton Ret. Sys. v. Shaw Group Inc., 540 F. Supp. 2d 464, 473-74 (S.D.N.Y. 2008) (granting motion to dismiss where the complaint failed to allege that defendants "were furnished with information that would have allowed them to discern that the financial data [included in the quarterly financial statement] was wrong").

* * *

In the end, Plaintiffs offer no basis to impute scienter to Fleming other than Fleming's corporate position as Merrill's Co-President and Co-Chief Operating Officer for approximately half of the class period. This is not nearly enough to satisfy the PSLRA's requirement that a plaintiff plead at the outset particularized facts supporting a strong inference of scienter as to each defendant. See, e.g., In re Elan Corp. Sec. Litig., 543 F. Supp. 2d 187, 220 (S.D.N.Y. 2008) (allegations that senior management was "intimately involved . . . is far too vague with respect to what information was actually communicated and what conclusions any defendant actually reached"); In re Dynex Capital, Inc. Sec. Litig., 2006 U.S. Dist. LEXIS 4988, at *26 (S.D.N.Y. Feb. 10, 2006)

(to plead scienter, "the allegations leveled against a particular individual must demonstrate that his or her culpability is based upon more than that person's mere position in the corporate hierarchy"), vacated on other grounds sub nom. Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 2008 U.S. App. LEXIS 13449 (2d Cir. June 26, 2008); In re Aegon N.V. Sec. Litig., 2004 U.S. Dist. LEXIS 11466, at *48 (S.D.N.Y. June 23, 2004) (allegations that officers had "access to adverse undisclosed information because of their senior positions with the company" and thus knew or should have known about a fraud "insufficient to establish scienter").

Plaintiffs had to plead facts, not conclusions or generalized allegations, showing that Fleming knew of billions of dollars of unrealized market valuation losses in the CDO portfolio and purposefully (or recklessly) hid those losses from investors through misleading statements. There is not a single allegation that permits such an inference, and each of the four allegations directed at Fleming undercuts any inference of scienter.

## CONCLUSION

For all of the foregoing reasons and those set forth in the Merrill, O'Neil, Edwards and Fakahany Memoranda in support of their motions to dismiss, the Amended Complaint should be dismissed as to Gregory J. Fleming in its entirety with prejudice without leave to replead.

Dated: July 21, 2008
      New York, New York

                                         /s/ Joseph S. Allerhand
                                    Joseph S. Allerhand (JA 3201)
                                    Jonathan D. Polkes (JP 0321)
                                    Erin J. Law (EL 5978)
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    (212) 310-8000

                                    *Attorneys for Defendant Gregory J. Fleming*