UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE MERRILL LYNCH & CO., INC.
SECURITIES, DERIVATIVE AND ERISA
LITIGATION

This Document Relates To:
Securities Action, 07cv9633 (LBS)(AJP)(DFE)

Master File No.:
07cv9633 (LBS)(AJP)(DFE)

**ECF CASE**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DELOITTE & TOUCHE LLP'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Brad S. Karp
Charles E. Davidow
Hallie S. Goldblatt

1285 Avenue of the Americas
New York, New York  10019-6064
Tel.  (212) 373-3000
Fax  (212) 757-3990

1615 L Street, N.W.
Washington, D.C.  20036-5694
Tel.  (202) 223-7300
Fax  (202) 223-7420

*Attorneys for Defendant Deloitte & Touche LLP*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ................................................................................... 4

    The Claims .............................................................................................. 4

    D&T's Role as Outside Auditor ................................................................ 5

    The Allegations in the Complaint ............................................................ 6

ARGUMENT ...................................................................................................... 8

I.     PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AGAINST D&T IN CONNECTION WITH THE MARCH 15, 2007 OFFERING AND THE ISSUANCE OF MERRILL LYNCH PREFERRED SECURITIES ................................ 8

II.    THE COMPLAINT FAILS ADEQUATELY TO ALLEGE THE EXISTENCE OF FALSE OR MISLEADING STATEMENTS ........................................... 10

    A.    Plaintiffs Must Plead Facts Plausibly Demonstrating the Existence of False or Misleading Statements ................................ 10

    B.    The Complaint Does Not Adequately Allege Any Actionable Misstatements by D&T ................................................. 14

           1.    D&T Is Not Liable for Statements It Did Not Audit or Certify.............. 14

           2.    Plaintiffs Have Failed to Allege that Any Statements from the Audited Portions of the 2006 10-K Are False or Misleading .......... 16

           3.    Plaintiffs Have Failed to Allege a Violation of Generally Accepted Auditing Standards or Generally Accepted Accounting Principles........ 20

III.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 14(A) ........... 22

CONCLUSION.................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Adams* v. *Standard Knitting Mills*,
    623 F.2d 422 (6th Cir. 1980) ...............................................................................................23

*In re Alamosa Holdings, Inc. Sec. Litig.*,
    382 F. Supp. 2d 832 (N.D. Tex. 2005) ..............................................................................16

*In re Alcatel Sec. Litig.*,
    382 F. Supp. 2d 513 (S.D.N.Y. 2005)...........................................................12, 15, 20, 21

*In re Alstom SA Sec. Litig.*,
    406 F. Supp. 2d 402 (S.D.N.Y. 2005)................................................................................13

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004)..........................................................................11, 23

*In re AOL Time Warner, Inc. Sec. Litig.*,
    503 F. Supp. 2d 666 (S.D.N.Y. 2007)................................................................................14

*In re Authentidate Holding Corp.*,
    No. 05 Civ 5323, 2006 WL 2034644 (S.D.N.Y. July 14, 2006) ...........................................8

*Bell Atlantic Corp v. Twombly*,
    127 S. Ct. 1955 (2007)...............................................................................10, 11, 13

*Branch v. Tower Air*,
    No. 94 Civ. 6625, 1995 WL 649935 (S.D.N.Y. Nov. 3, 1995) ...........................................23

*Chill* v. *Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996)..............................................................................................21

*In re Clinton Oil Co. Sec. Litig.*,
    M.D.L. Docket No. 137, 1977 WL 1009 (D. Kan. Mar. 18, 1977) ........................................23

*In re Complete Mgmt. Inc. Sec. Litig.*,
    153 F. Supp. 2d 314 (S.D.N.Y. 2001)................................................................................21

*Garber* v. *Legg Mason, Inc.*,
    537 F. Supp. 2d 597 (S.D.N.Y. 2008)................................................................................11

*Gerstle v. Gamble-Skogmo, Inc.*,
    478 F.2d 1281 (2d Cir. 1973)............................................................................................24

*In re Global Crossing, Ltd. Sec. Litig.*,
    322 F. Supp. 2d 319 (S.D.N.Y. 2004)..................................................................14

*Gould v. Am. Hawaiian Steamship Co.*,
    351 F. Supp. 853 (D. Del. 1972)......................................................................23

*Herman & MacLean* v. *Huddleston*,
    459 U.S. 375 (1983).........................................................................................14

*Herskowitz* v. *Nutri/System, Inc.*,
    857 F.2d 179 (3d Cir. 1988)..............................................................................24

*In re IAC/InterActiveCorp Sec. Litig.*,
    478 F. Supp. 2d 574 (S.D.N.Y. 2007)..............................................................13

*In re Initial Pub. Offering Sec. Litig.*,
    214 F.R.D. 117 (S.D.N.Y. 2002) .......................................................................9

*Iqbal* v. *Hasty*,
    490 F.3d 143 (2d Cir. 2007)..............................................................................11

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964).........................................................................................22

*In re JP Morgan Chase Sec. Litig.*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005)..............................................................12

*Kahn* v. *Wien*,
    842 F. Supp. 667 (E.D.N.Y. 1994) ...................................................................23

*Krim* v. *pcOrder.com, Inc.*,
    402 F.3d 489 (5th Cir. 2005) ..............................................................................8

*Lazzaro* v. *Manber*,
    701 F. Supp. 353 (E.D.N.Y. 1988) ...................................................................24

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    536 F. Supp. 2d 313 (S.D.N.Y. 2007)..............................................................12

*Mendell v. Greenberg*,
    612 F. Supp. 1543 (S.D.N.Y. 1985)..................................................................23

*In re Metro. Sec. Litig.*,
    532 F. Supp. 2d 1260 (E.D. Wash. 2007) .......................................................16

*Miller* v. *Lazard, Ltd.*,
    473 F. Supp. 2d 571 (S.D.N.Y. 2007)..............................................................13

*Novak* v. *Kasaks*,
    216 F.3d 300 (2d Cir. 2000)..................................................................21

*Ong* v. *Sears, Roebuck & Co.*,
    388 F. Supp. 2d 871 (N.D. Ill. 2004) .......................................................8

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
    No. 06 Civ. 12967, 2008 WL 650292 (S.D.N.Y. Mar. 11, 2008) ..........................11

*In re Philip Servs. Corp. Sec. Litig.*,
    383 F. Supp. 2d 463 (S.D.N.Y. 2004).......................................................12

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)............................................................12, 13

*In re Salomon Analyst Level 3 Litig.*,
    350 F. Supp. 2d 477 (S.D.N.Y. 2004).........................................................9

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001)................................................................13

*In re Storage Tech. Corp. Sec. Litig.*,
    630 F. Supp. 1072 (D. Colo. 1986)...........................................................8

*In re Ultrafem Sec. Litig.*,
    91 F. Supp. 2d 678 (S.D.N.Y. 2000)........................................................20

*Zatkin* v. *Primuth*,
    551 F. Supp. 39 (S.D. Cal. 1982)..........................................................24

## STATUTES AND RULES

Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k.................................... *passim*

Section 14 of the Securities Exchange Act of 1934, 15 U.S.C. § 78n.................................. *passim*

Rule 14a-9, 17 C.F.R. 240.14a-9 ...........................................................4, 10

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(1) ...................................10, 11, 13

Fed. R. Civ. P. 9(b) .........................................................................1, 10, 11, 12, 13

Fed. R. Civ. P. 12(b)(6).................................................................................1

Defendant Deloitte & Touche LLP ("D&T") submits this memorandum of law in support of its motion, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), to dismiss Plaintiffs' Consolidated Amended Class Action Complaint (the "Complaint").[1]

## PRELIMINARY STATEMENT

The thrust of the Complaint is that, because Merrill Lynch & Co. ("Merrill Lynch") suffered substantial losses on some of its securities positions during the unprecedented and unforeseeable turmoil in the credit markets in 2007, it must have committed securities fraud and filed false disclosure documents. Merrill Lynch allegedly did so, according to Plaintiffs, by hiding its exposure to the subprime market and concealing defects in its internal risk management controls. This sort of fraud-by-hindsight pleading has repeatedly been rejected by the courts of this Circuit.

Plaintiffs' claims against D&T are substantially narrower, and even more clearly defective. Plaintiffs identify a single set of financial statements that D&T audited — Merrill Lynch's 2006 Annual Report on Form 10-K (the "2006 10-K")[2] — and assert that it contained false statements. But with respect to the 2006 10-K, Plaintiffs identify no substantive errors in Merrill Lynch's audited financial statements. They do not allege that revenues or expenses, assets or liabilities, or cash flows — including the amounts at which collateralized debt obligations ("CDOs") were recorded on Merrill Lynch's balance sheet — were inaccurately stated. The Complaint is devoid of any factual allegations supporting a claim that Merrill

---

[1]    Pursuant to Rule 2.D of this Court's Individual Practices, a copy of Plaintiffs' Consolidated Amended Class Action Complaint is attached as Exhibit A to the Declaration of Charles E. Davidow, dated July 21, 2008 (the "Davidow Declaration").

[2]    A copy of the 2006 Annual Report of Merrill Lynch & Co., Inc. on Form 10-K is attached as Exhibit B to the Davidow Declaration.

Lynch's 2006 financial statements, the portion of the 2006 10-K on which D&T opined, were inaccurate or misleading.

Lacking financial statement errors on which to base their claims, Plaintiffs instead pick at descriptions in lengthy textual passages in the 2006 10-K. Nearly all of the passages that Plaintiffs quote and identify as allegedly misleading, however, are taken from portions of the 2006 10-K that D&T did not audit and for which it is not legally responsible. In fact, the only passage Plaintiffs quote from the entire 2006 10-K that is taken from the portion actually audited by D&T consists of *a single sentence*, which is quoted completely out of context in the Complaint. The sentence singled out by Plaintiffs concerns guarantees Merrill Lynch provides to special purpose entities ("SPEs"):

> Further, to protect against declines in the value of the assets held by SPEs, for which Merrill Lynch provides either liquidity facilities or default protection, ***Merrill Lynch economically hedges its exposure through derivative positions that principally offset the risk of loss arising from these guarantees.***

Cmplt. ¶ 511 (emphasis in original). However, Plaintiffs have not explained why this single sentence — which appears in the 10-K a full 61 pages *after* the rest of the text that Plaintiffs quote in paragraph 511 — is either inaccurate or misleading or even relevant to their claims. (*See* 2006 10-K at 53, 114.) The Complaint therefore fails to meet the well-established pleading requirements necessary to state a claim under the federal securities laws.

The Complaint should be dismissed, with prejudice, for the following reasons:[3]

*First*, Plaintiffs lack standing to bring a claim against D&T under Section 11 of the Securities Act of 1933 with respect to Merrill Lynch's March 15, 2007 offering of securities

---

[3]    D&T also joins in the motions to dismiss of the other Defendants, to the extent applicable to the claims asserted against it.

and Merrill Lynch's September 21, 2007 offering of preferred securities in connection with the First Republic acquisition because no named plaintiff in this action is alleged to have purchased or acquired securities in or traceable to those offerings.

*Second*, Plaintiffs do not adequately plead the existence of any false or misleading statements of material fact in the portions of the 2006 10-K actually audited by D&T, a prerequisite to the Section 11 and Section 14(a) claims. Plaintiffs allege that Merrill Lynch failed to disclose "its U.S. subprime ABS CDO exposure to investors" (Cmplt. ¶ 435) and that Merrill Lynch's "risk management systems and controls were insufficient and did not adequately protect the Company against the risks associated with the deteriorating housing market and increasing default rates" (*id.* ¶ 436). In support of their conclusory allegations, Plaintiffs quote numerous lengthy passages from the 2006 10-K. But *all but one* of the purported misrepresentations quoted in Plaintiffs' sprawling Complaint are lifted from the Management's Discussion and Analysis ("MD&A") section of the 2006 10-K, which D&T did not audit or certify, and for which it bears no legal responsibility. Moreover, with respect to that one passage drawn from the Consolidated Financial Statements that D&T actually audited, the Complaint fails altogether to allege a basis for inferring that it is inaccurate or misleading.

Nor do Plaintiffs adequately plead the existence of violations of Generally Accepted Accounting Principles ("GAAP") in the 2006 10-K. While Plaintiffs include in the Complaint a laundry list of 11 GAAP principles and allege generally that the financial statements in the 2006 10-K violated them all (Cmplt. ¶ 559), they make no effort to tie these alleged GAAP violations to any specific statements in the financials.

*Third,* the Complaint fails to state a claim against D&T under Section 14(a) — which is directed only at those who participate in the solicitation of proxies — because that

provision is not applicable to those who play peripheral roles in the proxy solicitation process, such as auditors.

Accordingly, Plaintiffs' Complaint should be dismissed. In the absence of any identification of a misleading statement for which D&T is responsible, the dismissal should be with prejudice.

## STATEMENT OF FACTS

Plaintiffs bring their claims against D&T under Section 11 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77k, and Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a), and Rule 14a-9 thereunder, 17 C.F.R. 240, 14a-9. The claims are asserted on behalf of purchasers and acquirers of Merrill Lynch securities issued under or traceable to certain registration statements and prospectuses filed in connection with four offerings of Merrill Lynch securities, made between March 2007 and September 2007. (Cmplt. ¶¶ 433, 442, 485.)

### *The Claims*

Plaintiffs State Teachers' Retirement System of Ohio ("Ohio STRS") and Gary Kosseff ("Kosseff") have asserted 15 separate claims against various Defendants. Five of those claims — Counts VI, VIII, X, XII, and XV — are asserted against D&T. These five claims are brought on behalf of a putative class of investors who purchased or acquired Merrill Lynch securities issued under or traceable to one of four registration statements and prospectuses:

    a.    Term Sheet and Prospectus for a March 15, 2007 offering of sixty thousand depository shares each representing a 1/1200th interest in a share of Floating Rate Non-Cumulative Preferred Stock, Series 5 (the "March 15, 2007 Offering") (*id.* ¶¶ 450–53);

    b.    Registration Statement Amendment No. 2 and Prospectus Supplement for an April 25, 2007 offering of thirty-six million shares of 6.45% Trust II Preferred Securities (the "April 25, 2007 Offering") (*id.* ¶¶ 454–58);

    c.      Registration Statement Amendment No. 3 and Prospectus Supplement for an August 15, 2007 offering of thirty million shares of 7.375% Trust III Preferred Securities (the "August 15, 2007 Offering") (*id.* ¶¶ 459–63); and

    d.      Registration Statements and Prospectuses for Merrill Lynch securities issued in exchange for First Republic securities (the "First Republic Offering") (*id.* ¶ 464–69).

Plaintiffs assert a claim against D&T under Section 11 of the Securities Act with respect to each of these registration statements and a claim under Section 14(a) of the Exchange Act with respect to the First Republic Offering.

Plaintiff Ohio STRS alleges that it acquired shares of Merrill Lynch common stock pursuant to the First Republic Offering. (*Id.* ¶ 470.) Plaintiff Kosseff alleges that he purchased securities pursuant to the April 25, 2007 Offering and the August 15, 2007 Offering. (*Id.* ¶ 471.) No named plaintiff is alleged to have purchased securities pursuant to the March 15, 2007 Offering or the September 21, 2007 offering of Series 6 and Series 7 preferred securities in connection with the First Republic acquisition.[4] Plaintiffs assert that the value of their Merrill Lynch securities declined as a result of alleged failures to disclose information about, *inter alia*, Merrill Lynch's exposure to subprime mortgages. (*Id.* ¶¶ 443–44.)

### *D&T's Role as Outside Auditor*

D&T audited Merrill Lynch's consolidated financial statements for the year ended December 29, 2006, and issued an unqualified audit opinion with respect to those financial statements. (Cmplt. ¶ 485.) As stated in D&T's Report of Independent Registered Public Accounting Firm, contained in the 2006 10-K, D&T audited only particular portions of the 2006

---

[4]    Plaintiffs define the "First Republic Registration Statement" to include the May 8, 2007 S-4, the June 21, 2007 S-4/A, and the June 22, 2007 Proxy/Prospectus by which Merrill Lynch issued 11.6 million shares of Merrill Lynch common stock in exchange for First Republic stock. (Cmplt. ¶¶ 465, 467.) Plaintiffs' definition of "First Republic Registration Statement" omits the September 21, 2007 Form 8-A by which Merrill Lynch issued Series 6 and Series 7 preferred securities. (*Id.* ¶ 465.)

10-K prepared by Merrill Lynch; specifically, D&T audited: the consolidated balance sheets of Merrill Lynch and its subsidiaries as of December 29, 2006 and December 30, 2005; the related consolidated statements of earnings, changes in stockholders' equity, comprehensive income and cash flows for each of the three years in the period ended December 29, 2006; and the effectiveness of Merrill Lynch's internal control over financial reporting as of December 29, 2006. (*See* 2006 10-K at 70.) D&T neither audited nor certified the MD&A portion of the Merrill Lynch 2006 10-K; Plaintiffs do not allege otherwise. (Cmplt. ¶ 485.)

D&T's audit opinion was included in the 2006 10-K, which Merrill Lynch filed with the United States Securities and Exchange Commission on February 27, 2007. (*Id.* ¶ 502.) The 2006 10-K was incorporated by reference into subsequently filed registration statements and prospectuses that Merrill Lynch issued in connection with four securities offerings in 2007: the March 15, 2007 Offering; the April 25, 2007 Offering; the August 15, 2007 Offering; and the First Republic Offering. (*Id.* ¶¶ 451, 458, 463, 469.)

### *The Allegations in the Complaint*

Plaintiffs allege that, by the end of 2006, Merrill Lynch was "materially exposed" to securitized bundles of debt securities known as CDOs, and that it failed to disclose that exposure. (*Id.* ¶ 435.) In addition, Plaintiffs assert that Merrill Lynch failed to disclose that its risk management systems and controls were insufficient to protect the company "against the risks associated with the deteriorating housing market and increasing [borrower] default rates. (*Id.* ¶ 436.) The Complaint also alleges that, during this period, Merrill Lynch entered into "billions of dollars" of credit default swaps, a type of credit derivative that provides protection on CDOs, with several monoline insurers, which were themselves undercapitalized and unable to provide adequate risk protection. (*Id.* ¶ 439.) Plaintiffs further allege that, between February

6

2007 and June 2007, two indices for mortgage-backed securities and CDOs, the ABX index and the TABX index, declined sharply in value. (*Id.* ¶ 440.) In October 2007, Merrill Lynch announced a series of third- and fourth-quarter write downs, totaling approximately $24 billion, of its U.S. subprime CDO exposure. (*Id.* ¶ 441.)

The first section of the Complaint asserts claims under Sections 10(b) and 20(a) of the Exchange Act, none of which names D&T as a defendant. The second section of the Complaint alleges claims under Sections 11, 12, and 15 of the Securities Act and Section 14(a) of the Exchange Act, five of which do name D&T as a defendant.

All of Plaintiffs' claims against D&T arise out of D&T's audit and certification of a single set of financial statements. Plaintiffs allege that D&T violated Section 11 of the Securities Act and Section 14(a) of the Exchange Act because Merrill Lynch's 2006 10-K, which was incorporated by reference into the offering documents for the four 2007 Merrill Lynch securities offerings, contained misrepresentations and omitted to state material facts about, *inter alia*, Merrill Lynch's exposure to the subprime mortgage market and the effectiveness of its risk management systems. Specifically, the Complaint includes seven paragraphs quoting language from the 2006 10-K that Plaintiffs allege to be actionable misrepresentations. (Cmplt. ¶¶ 504–05, 508–12.) Plaintiffs also allege that D&T did not perform its audit in accordance with Generally Accepted Auditing Standards ("GAAS") (*id.* ¶ 485), and they identify 11 GAAP principles that they assert were violated by Merrill Lynch's 2006 financial statements (*id.* ¶ 559).

## ARGUMENT

## I.

### PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AGAINST D&T IN CONNECTION WITH THE MARCH 15, 2007 OFFERING AND THE ISSUANCE OF MERRILL LYNCH PREFERRED SECURITIES

To have standing to sue under Section 11 of the Securities Act, Plaintiffs must demonstrate that they actually purchased the securities offered by the allegedly misleading registration statement. 15 U.S.C. § 77k(a) (providing Section 11 cause of action to "any person *acquiring*" securities sold pursuant to registration statement containing material misstatements or omissions) (emphasis added).[5] Therefore, a person who did not purchase securities offered pursuant to a given registration statement lacks standing to assert — on his own behalf or as a representative of others — a Section 11 claim based on alleged misrepresentations in that registration statement. *See In re Authentidate Holding Corp.*, No. 05 Civ. 5323, 2006 WL 2034644, at **6–7 (S.D.N.Y. July 14, 2006) (dismissing complaint because plaintiffs failed to allege that they or other named plaintiffs had standing to bring Section 11 claim); *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004) ("[T]he selection of lead plaintiffs does not remove the basic requirement that at least one *named* plaintiff must have standing to pursue each claim alleged.") (emphasis in original).[6]

---

[5]   *See also, e.g., Krim* v. *pcOrder.com, Inc.*, 402 F.3d 489, 495 (5th Cir. 2005) (limiting "putative [Section 11] plaintiffs to the 'narrow class of persons' consisting of 'those who purchase[d] securities that are the direct subject of the prospectus and registration statement'") (quoting *Barnes* v. *Osofsky*, 373 F.2d 269, 273 (2d Cir. 1967)).

[6]   *See also Ong* v. *Sears, Roebuck & Co.*, 388 F. Supp. 2d 871, 891–92 (N.D. Ill. 2004) ("Plaintiffs lack standing to sue on their own behalf with respect to [two named offerings] since they never purchased any securities in those offerings.  The fact that they have filed a class action lawsuit that includes putative class members who did purchase the relevant securities does not confer the necessary standing in this case because none of those putative class members is a named plaintiff."); *In re Storage Tech. Corp. Sec. Litig.*, 630 F. Supp. 1072, 1078 (D. Colo. 1986) (holding that named plaintiffs' failure to allege purchase of specific securities precluded claim upon which relief could be granted on behalf of class).

Plaintiffs here have failed to meet this threshold standing requirement. Plaintiffs purport to bring claims under Section 11 of the Securities Act based on a March 15, 2007 public offering of Merrill Lynch securities and September 21, 2007 issuance of two series of Merrill Lynch preferred securities. (Cmplt. ¶¶ 442, 450–53, 464–69, 498–515, 553–58.) But neither Ohio STRS nor Kosseff is alleged to have purchased or acquired securities in connection with these offerings. Instead, with respect to the March 15, 2007 Offering, Plaintiffs assert a Section 11 claim only on behalf of unnamed "members of the class." (*Id.* ¶ 588; *cf. id.* ¶¶ 470–71.) Similarly, with respect to the First Republic Offering, the Complaint alleges only that Lead Plaintiff Ohio STRS and unnamed class members acquired securities pursuant to the First Republic Registration Statement, which Plaintiffs have defined to include only Merrill Lynch's offering of common stock, but not its issuance of preferred securities. (*Id.* ¶ 647; *cf. id.* ¶ 470.) To bring suit on behalf of all class members, however, Plaintiffs must, at the very least, identify *named* class members who have standing to bring such a claim. *See In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 122 (S.D.N.Y. 2002) ("In order to maintain a class action, Plaintiffs must first establish that they have a valid claim with respect to the shares that they purchased. If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.") (citation omitted).

Plaintiffs here do not allege that they purchased securities offered by the allegedly misleading registration statements. As a result, they do not have standing to bring claims against D&T in connection with either the March 15, 2007 Offering or the issuance of Series 6 and Series 7 preferred securities in connection with the First Republic acquisition. Thus, Counts VI

9

and XII, to the extent they are based on the issuance of the preferred securities, must be dismissed.[7]

## II.

## THE COMPLAINT FAILS ADEQUATELY TO ALLEGE THE EXISTENCE OF FALSE OR MISLEADING STATEMENTS

The Complaint fails to meet the most basic prerequisite of a claim under both Section 11 of the Securities Act and Section 14(a) of the Exchange Act (and Rule 14a-9 thereunder): It fails adequately to allege the existence of "an untrue statement of a material fact or [an omission of] a material fact required to be stated therein or necessary to make the statements therein not misleading" in the Consolidated Financial Statements audited by D&T and contained in the 2006 10-K. 15 U.S.C. §§ 77k(a), 78n(a); 17 C.F.R. 240.14a-9. As a result, each of the counts that names D&T — Counts VI, VIII, X, XII, and XV — should be dismissed.

### A.    Plaintiffs Must Plead Facts Plausibly Demonstrating the Existence of False or Misleading Statements

Each of the claims asserted against D&T must be pleaded with factual support substantially beyond mere notice pleading. This particularized pleading is required by three distinct sources: (1) the Private Securities Litigation Reform Act of 1995 ("PSLRA"), with respect to the Section 14(a) claim, and both (2) the Supreme Court's decision in *Bell Atlantic Corp v. Twombly*, 127 S. Ct. 1955 (2007), and (3) Rule 9(b) of the Federal Rules of Civil Procedure, with respect to all claims.

---

[7]    For the same reasons, Plaintiffs lack standing to assert a claim under Section 14(a) of the Exchange Act based on the issuance of Series 6 and Series 7 preferred securities. Plaintiffs fail to allege that any named plaintiff — or, for that matter, any member of the putative class — acquired preferred securities pursuant to the September 21, 2007 8-A. Instead, their claim is based solely on the issuance of Merrill Lynch common stock.

*First*, Count XV, a claim under the Exchange Act, is subject to the requirements of the PSLRA, which requires that the Complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation…is made on information and belief, the [C]omplaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 213 (S.D.N.Y. 2004).

*Second*, Counts VI, VIII, X, and XII, while not subject to this PSLRA provision, are subject to the pleading requirements recently articulated by the Supreme Court in *Twombly*. Under *Twombly*, a plaintiff must do more than merely allege the existence of a violation; a plaintiff must plead sufficient facts to permit a plausible inference that a violation occurred. 127 S. Ct. at 1965. As interpreted by the Second Circuit, *Twombly* "requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal* v. *Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007) (emphasis in original). Therefore, mere "formulaic recitation of the elements of a cause of action" will not suffice; instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965; *see also Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, No. 06 Civ. 12967, 2008 WL 650292, at *4 (S.D.N.Y. Mar. 11, 2008) (dismissing claims under Section 11 for failure to satisfy *Twombly*'s "plausibility" standard); *Garber* v. *Legg Mason, Inc.*, 537 F. Supp. 2d 597, 609–10 (S.D.N.Y. 2008) (same).

*Third*, because this Complaint — despite Plaintiffs' efforts at artful pleading — sounds in fraud, all of the claims against D&T are subject to the strict pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "[i]n averments of

fraud…the circumstances constituting fraud…shall be stated with particularity." Although fraud is not an essential element of a Section 11 claim, it is well settled in this Circuit that Section 11 claims premised on averments of fraud are subject to the particularity requirements of Rule 9(b). *See Rombach v. Chang*, 355 F.3d 164, 170–71 (2d Cir. 2004) (holding that heightened pleading standard of Rule 9(b) applies to claims brought under Section 11 when those claims "sound in fraud"); *In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 481–82 (S.D.N.Y. 2004) (same); *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 530–31 (S.D.N.Y. 2005) (same).[8] Plaintiffs cannot circumvent the requirements of Rule 9(b) merely by disclaiming reliance on a fraud theory. *See In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005).

To determine if a claim sounds in fraud, a court must look at the substance of plaintiffs' allegations and determine whether "the wording and imputations of the complaint are classically associated with fraud." *Rombach*, 355 F.3d at 172. The Second Circuit has held that a claim sounds in fraud where "the wording and imputations of the complaint are classically associated with fraud: that the Registration statement was 'inaccurate *and* misleading;' that it contained '*untrue* statements of material facts;' and that 'materially *false* and *misleading* written statements' were issued." *Id.* Plaintiffs' claims against D&T repeatedly invoke these terms "classically associated with fraud": "untrue statements of material facts" (Cmplt. ¶¶ 583, 600, 621, 642, 646, 669, 674, 676); "untrue statements and omissions" (*id.* ¶¶ 585, 589, 604, 608, 624, 629, 644, 648); and "materially false and misleading" (*id.* ¶¶ 646, 674). Under *Rombach*, therefore, the claims against D&T sound in fraud and are subject to the requirements of Rule 9(b).

---

[8]    The holding of *Rombach* applies equally to claims under Section 14(a). *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 536 F. Supp. 2d 313, 320–21 (S.D.N.Y. 2007).

Nor may Plaintiffs avoid the requirements of Rule 9(b) by bifurcating their Complaint or by inserting statements disclaiming their fraud-like allegations.[9] (*E.g.*, Cmplt. ¶¶ 432, 581, 598, 619, 640, 668.) The strategy adopted by Plaintiffs here repeatedly has been rejected by courts in this Circuit on the ground that it is a transparent attempt "to retreat [and]…escape the particularity requirements of Federal Rule of Civil Procedure 9(b)." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 402, 410 (S.D.N.Y. 2005). *See also Miller* v. *Lazard, Ltd.*, 473 F. Supp. 2d 571, 585 (S.D.N.Y. 2007) ("[A]lluding to fraud throughout the Complaint in order to allege wrongdoing, only to avoid the pleading consequences of so doing in the end, cannot succeed."). Moreover, several courts in this Circuit have ruled that expressly disclaiming an intent to allege fraud will not save a complaint that sounds in fraud from the pleading requirements of Rule 9(b). *See Rombach*, 355 F.3d at 172; *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 595–96 (S.D.N.Y. 2007); *Miller*, 473 F. Supp. 2d at 585.

Plaintiffs' claims under Section 11 and Section 14(a) against D&T must therefore meet the heightened pleading requirements of Rule 9(b). As a result, Plaintiffs must, among other matters, specify the alleged fraudulent statements and indicate why the statements were fraudulent. *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69–70 (2d Cir. 2001).

Thus, under each of these three federal pleading rules — the PSLRA, *Twombly*, and Rule 9(b), Plaintiffs must specify what is misleading about the statements on which they base their claims against D&T.

---

[9]   Indeed, Plaintiffs' Section 11 allegations mirror the fraud-based allegations brought under the Exchange Act in the first portion of the Complaint. Plaintiffs essentially copied all of the factual allegations related to Merrill Lynch's 2006 10-K from the Exchange Act section of the Complaint, including the same alleged misstatements from the 2006 10-K, and dropped them in the Securities Act and proxy section, along the way altering or editing only the language that alluded to mental state. *Compare, e.g.*, Cmplt. ¶ 232 *with* ¶ 508; *compare generally id.* ¶¶ 226–38 *with* ¶¶ 502–15.

**B.     The Complaint Does Not Adequately Allege
        Any Actionable Misstatements by D&T**

The statements that the Complaint alleges were misleading are overwhelmingly

drawn from portions of the 2006 10-K in which D&T played no role and is not alleged to have

played any role.  The single sentence the Complaint quotes from the Notes to the audited

Consolidated Financial Statements is not adequately alleged to be false or misleading.  And the

Complaint's boilerplate allegation of violations of GAAS and GAAP do not suffice to state a

claim.

**1.     D&T Is Not Liable for Statements It Did Not Audit or Certify**

An auditor may be held liable only for statements that "purport[] to have been

certified by him."  15 U.S.C. 77k(a)(4); *see also Herman & MacLean* v. *Huddleston*, 459 U.S.

375, 386 n.22 (1983) ("[C]ertain individuals who play a part in preparing the registration

statement generally cannot be reached by a Section 11 action.  These include…accountants with

respect to parts of a registration statement which they are not named as having prepared or

certified."); *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 675 (S.D.N.Y. 2007)

(dismissing all Section 11 claims against defendant auditor that were based on alleged

misstatements that were uncertified); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d

319, 348 (S.D.N.Y. 2004) (holding that defendant auditor "argue[d] correctly that section 11

liability is limited to such statements as the registration statement names [the defendant auditor]

as having prepared or certified, and that [the defendant auditor] cannot be liable for any

misleading statements in [the issuer's] pro forma reports").  Indeed, even if an auditor reviews

financial statements or is aware that certain financial statements are not in conformity with

GAAP, liability under the Securities Act does not attach unless the financial statements are

"certified audit opinions."  *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d at 675.

14

The Complaint (¶¶ 504, 505, 508–12) quotes language from the 2006 10-K that it alleges was false and misleading, but makes no effort to identify what portions of that quoted language, if any, is drawn from the audited financial statements — upon which claims against D&T may be predicated — and what portions are not. The task of differentiating language drawn from the financial statements from language drawn from other parts of the 2006 10-K is made substantially more complex as a result of Plaintiffs' pleading tactics. For example, Plaintiffs use ellipses to connect language drawn from different parts of the 2006 10-K that are many pages apart. The language quoted in paragraph 511 of the Complaint is drawn from pages 53 and 114 of the 2006 10-K. The first three paragraphs of the quoted language are from the MD&A section (for which D&T has no legal responsibility), while the last sentence is from a Note to the Consolidated Financial Statements.

This style of pleading makes it nearly impossible to determine what Plaintiffs claim is misleading about the specific passage drawn from the audited financial statements. Plaintiffs follow several paragraphs of lengthy quotations (Cmplt. ¶¶ 508–12) — which consist almost entirely of MD&A language, with one sentence inserted from a Note to the Consolidated Financial Statements — with a terse summary paragraph saying these disclosures are false because they did not disclose Merrill Lynch's accumulated exposure to subprime CDOs and that Merrill Lynch's risk management policies and controls did not function (*id.* ¶ 513).

Plaintiffs' failure to sort the disclosures for which they seek to hold D&T liable from those for which they do not and cannot as a matter of law seek to impose liability, and their failure to specify what is allegedly false or misleading in the disclosures upon which their claims against D&T are predicated, mandate dismissal of their claims against D&T in their entirety. *See In re Alcatel Sec. Litig*, 382 F. Supp. 2d at 534–35 (dismissing plaintiffs' securities fraud claims

on grounds that plaintiffs failed "to make it clear what portion of each quotation constitutes a false representation, or which statements link up with which issues in the laundry list, placing the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts").[10]

### 2. Plaintiffs Have Failed to Allege that Any Statements from the Audited Portions of the 2006 10-K Are False or Misleading

We have attempted to do Plaintiffs' job: determine which excerpts from the allegedly misleading disclosures quoted in the Complaint are drawn from the Consolidated Financial Statements in the 2006 10-K. Plaintiffs appear to have included in their voluminous quotations only *one sentence* from the Notes to the Consolidated Financial Statements. (Cmplt. ¶ 511.)[11]

---

[10] *See also In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1279–80 (E.D. Wash. 2007) (noting that complaint "often rambles through long stretches of material quoted from defendants' public statements…unpunctuated by any specific reasons for falsity"; district court dismissed plaintiffs' claims because (1) "it is difficult and laborious to determine which portions of the Registration Statements are allegedly false and which false statements are attributed to any particular defendant"; (2) "the organization of the complaint often makes the nature of the fraud difficult to define and certainly makes the complaint difficult to respond to"; and (3) the complaint "fails to connect its factual allegations to the elements comprising the Plaintiffs' various claims") (internal quotation marks omitted); *In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832, 857–58 (N.D. Tex. 2005) (where complaint was pleaded as puzzle, *i.e.*, where plaintiffs had "isolat[ed] allegations and elements while leaving it to the Court to infer a connection," district court dismissed claims because "assembling puzzles is not the duty of the Court").

[11] The quotations in the Complaint are drawn from the 2006 10-K as follows:

| Complaint Paragraph | Pages of 2006 10-K |
| --- | --- |
| 504 | 42 |
| 505 | 55 |
| 508 | 41 |
| 509 | 49, 50, 51 |
| 510 | 51–52 |
| 511 | 53, 114 |
| 512 | 59 |

The Consolidated Financial Statements begin at page 71 of the 2006 10-K.

16

Paragraph 511 of the Complaint consists of nearly a page of single-spaced language quoted from the 2006 10-K, only one sentence of which comes from the Consolidated Financial Statements.  The Complaint quotes the 2006 10-K, as follows:

> We have a Global Credit and Commitments Group that assesses the creditworthiness of existing and potential individual clients, institutional counterparties and issuers, and determines firm-wide credit risk levels within the Credit Risk Framework among other tools.  This group reviews and monitors specific transactions as well as portfolio and other credit risk concentrations both within and across businesses.  This group is also responsible for ongoing monitoring of credit quality and limit compliance and actively works with all of our business units to manage and mitigate credit risk.
>
> The Global Credit and Commitments Group uses a variety of methodologies to set limits on exposure and potential loss resulting from an individual, counterparty or issuer failing to fulfill its contractual obligations.  The group performs analyses in the context of industrial, regional, and global economic trends and incorporates portfolio and concentration effects when determining tolerance levels.  Credit risk limits take into account measures of ***both current and potential exposure as well as potential loss and are set and monitored by broad risk type, product type, and maturity.***  Credit risk mitigation techniques include, where appropriate, the right to require initial collateral or margin, the ***right to terminate transactions or to obtain collateral should unfavorable events occur, the right to call for collateral when certain exposure thresholds are exceeded, the right to call for third party guarantees and the purchase of credit default protection.  With senior management involvement, we conduct regular portfolio reviews, monitor counterparty creditworthiness, and evaluate potential transaction risks with a view toward early problem identification and protection against unacceptable credit-related losses.***  We continue to invest additional resources to enhance Merrill Lynch's methods and policies to assist in managing our credit risk and to address evolving regulatory requirements.
>
> Senior members of the Global Credit and Commitments Group chair various commitment committees with membership across business, control and support units.  These committees review and approve commitments, underwritings and syndication strategies related to debt, syndicated loans, equity, real estate and asset-based finance, among other products and activities . . .
>
> <u>Further, to protect against declines in the value of the assets held by SPEs, for which Merrill Lynch provides either liquidity facilities or default</u>

17

> protection, ***Merrill Lynch economically hedges its exposure through***
> ***derivative positions that principally offset the risk of loss arising from***
> ***these guarantees.***

Cmplt. ¶ 511 (bold, italics, and ellipsis in original; underlining added).

All but the last quoted sentence (underlined above) is taken from page 53 of the 2006 10-K, in a portion of the MD&A captioned "Credit Risk," which discusses the assessment of creditworthiness of Merrill Lynch's counterparties. The ellipsis in the quoted language conceals a jump of 61 pages in the document, to page 114 of the 2006 10-K. (*See* 2006 10-K at 53, 114.) The sentence taken from page 114 appears in Note 12 to the Consolidated Financial Statements, discussing guarantees that Merrill Lynch issues to certain types of counterparties. Even if D&T properly could be held responsible for the lengthy statements from page 53 of the unaudited MD&A quoted in paragraph 511, these statements could not form the basis of a claim against D&T because Plaintiffs fail adequately to allege what is false or misleading about *any* portion of this discussion of management methodologies. As a matter of law, however, only the last quoted sentence (the sentence underlined above) — from page 114 of the 2006 10-K — can provide a basis for liability against D&T.

The Complaint does not specify what is misleading about this specific passage. The first part of paragraph 511 of the Complaint — which introduces the lengthy quotation — alleges that all of the quoted statements that follow in the paragraph are misleading because they include misrepresentations concerning the creditworthiness of counterparties. Most of the quoted disclosure discusses the committees and processes by which Merrill Lynch examines the creditworthiness of counterparties, without identifying anything misleading; but the last quoted sentence — from Note 12 to the Consolidated Financial Statements — addresses a different topic entirely. It is drawn from a discussion of how Merrill Lynch hedges its *own* obligations relating

18

to municipal bond securitizations, commercial paper conduits, and equipment leasing entities. It does not concern the creditworthiness of counterparties that have financial obligations to Merrill Lynch (the subject of the rest of paragraph 511).

This allegation — the only allegation in the entire Complaint on which liability on the part of D&T appears to be based — fails to state a claim, for two independent reasons:

*First*, as noted, the quoted passage from Note 12 to the Consolidated Financial Statements has nothing to do with the paragraphs that precede it in paragraph 511 of the Complaint or with what is allegedly misleading about those paragraphs — indeed, it is unclear why Plaintiffs included these unconnected statements in a single paragraph in the Complaint. The quotation from the MD&A section discusses how Merrill Lynch evaluates the creditworthiness of those entities that may owe it money. The quotation from Note 12 discusses how Merrill Lynch hedges its obligations that are in the form of guarantees to special purpose entities. One quotation discusses how Merrill Lynch evaluates the ability of its debtors to pay what they owe; the second discusses how Merrill Lynch hedges its obligations to certain others. The latter topic — the one drawn from Note 12 — bears no relationship to what the Complaint alleges is misleading: protecting against the failure of counterparties to meet their obligations to Merrill Lynch. Plaintiffs' allegations are a complete *non sequitur.*

*Second*, while the Complaint alleges that the passage in paragraph 511 is false and misleading because it fails to disclose Merrill Lynch's exposure to subprime CDOs, the Complaint does not explain how the passage from Note 12 — the only passage upon which D&T's liability may be predicated — is inaccurate or misleading or relevant to Plaintiffs' claims. Plaintiffs do not deny the existence of economic hedges against Merrill Lynch's guarantees of its obligations to SPEs; nor do they identify any respect in which the disclosure about those hedges

is inaccurate or omits material information. An omission can give rise to liability only if the information omitted is "necessary to make the statements therein not misleading." Section 11(a) of the Securities Act, 15 U.S.C. § 77k(a). *See also In re Alcatel Sec. Litig.*, 382 F. Supp. 2d at 532 (noting that "'the presence of an affirmative statement that is made misleading by the material omission' is a 'threshold requirement' under section 11, and a pleading that sets forth only vague assertions that a false and misleading impression was created by alleged omissions is not sufficient"); *In re Ultrafem Sec. Litig.*, 91 F. Supp. 2d 678, 695 (S.D.N.Y. 2000) (dismissing plaintiffs' claims because, *inter alia*, Complaint failed to allege "how the omission of...information [about the results of clinical trials] made statements about [defendant's] consumer use test false and misleading"). Having failed to identify a statement connected to the alleged omission, Plaintiffs have failed to state a claim.

Thus, Plaintiffs have failed to allege that the one statement for which D&T could bear legal responsibility is misleading.

### 3.    Plaintiffs Have Failed to Allege a Violation of Generally Accepted Auditing Standards or Generally Accepted Accounting Principles

The Complaint alleges that D&T "did not perform its audit of Merrill's year end 2006 financial statements in accordance with generally accepted auditing standards and such financial statements were presented in a manner which violated GAAP for the reasons set forth below at paragraph 559." (Cmplt. ¶ 485.) But the Complaint provides no facts supporting these conclusory allegations of GAAS and GAAP violations, and therefore fails to state a claim.

With respect to GAAS violations, the Complaint is completely silent, apart from the general allegation in paragraph 485. It does not identify the particular standards that were allegedly violated; nor does it allege particular facts with respect to the steps taken during the audit that would permit an inference that such a violation occurred. A boilerplate allegation such

as this is plainly insufficient to state a claim. *See In re Complete Mgmt. Inc. Sec. Litig.*, 153 F.

Supp. 2d 314, 334 (S.D.N.Y. 2001) ("It is unambiguously the law that allegations of a violation

of GAAP and GAAS are, without more, insufficient to survive a motion to dismiss.").

In support of its allegation of GAAP violations, the Complaint sets forth a laundry

list of generally accepted accounting principles (Cmplt. ¶ 559) — including that financial

reporting should provide useful information (*id.* ¶ 559(a)); that it should provide information

about a firm's economic resources (*id.* ¶ 559(b)); that it should provide information about the

firm's financial performance during the period (*id.* ¶ 559(c)); that it should be reliable (*id.*

¶ 559(e)); and that it should be verifiable (*id.* ¶ 559(g)). But the Complaint fails to identify any

respect in which the Consolidated Financial Statements violated any of these principles. Indeed,

as previously noted, the Complaint identifies no false or misleading statements in the

Consolidated Financial Statements.

Merely listing applicable principles and then asserting that a defendant violated

them — without more — does not remotely satisfy Plaintiffs' pleading obligations. *See, e.g., In

re Alcatel Sec. Litig.*, 382 F. Supp. 2d at 533 (requiring linkage of alleged violations of GAAP to

specific language in 10-K); *see also Novak* v. *Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)

("[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient

to state a securities fraud claim" unless "such allegations are coupled with evidence of

'corresponding fraudulent intent.'"); *Chill* v. *Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996)

(same). The Complaint is entirely devoid of the necessary linkage and particulars.

In the absence of properly pleaded allegations of any false or misleading

statement for which D&T is responsible, the Complaint should be dismissed.

## III.

## THE COMPLAINT FAILS TO STATE
## A CLAIM UNDER SECTION 14(A)

The Complaint fails to state a claim against D&T under Section 14(a) for the additional reason that D&T did not sufficiently participate in the proxy solicitation to give rise to liability. While a number of courts have concluded that outside parties such as auditors are not covered by this provision at all, even those that have concluded otherwise have in most cases required allegations of intentional misconduct.

Section 14(a), by its terms, makes it unlawful for any person, in violation of rules promulgated by the Securities and Exchange Commission, "to solicit or to permit the use of his name to solicit any proxy or consent or authorization" with respect to a registered security. 15 U.S.C. § 78n(a). There is no express private right of action under this provision, but the courts have implied such a right. *See J.I. Case Co. v. Borak*, 377 U.S. 426 (1964). Absent legislatively enacted contours of the right of action, they have been shaped by the courts.

While the terms of the statute make it clear that those actually soliciting proxies come within the terms of Section 14(a), the statute does not specify what conduct constitutes "permitting the use of his name to solicit" a proxy. In particular, the courts have been reluctant to extend liability to those that, while providing a service used and disclosed by those soliciting proxies, neither recommend how shareholders should vote nor have any stake in the outcome of the solicitation.[12] This issue arises most frequently in the case of auditors and investment

---

[12] The congressional purpose in enacting Section 14(a) was focused on those who sought to benefit improperly from the solicitation of proxies. "It is contemplated that the rules and regulations promulgated by the Commission will protect investors from promiscuous solicitation of their proxies, on the one hand, by irresponsible outsiders seeking to wrest control of a corporation away from honest and conscientious corporation officials; and, on the other hand, by unscrupulous corporate officials seeking to retain control of the

bankers. While we are aware of no binding precedent on this point, many courts have held either that such parties are outside the scope of Section 14(a) altogether, *e.g.*, *Mendell v. Greenberg*, 612 F. Supp. 1543, 1551–52 (S.D.N.Y. 1985) (dismissing claim against investment bank that participated in drafting of proxy because it was not alleged to have directly solicited proxies or been party to such solicitations), *rev'd in part on other grounds*, 927 F.2d 667 (2d Cir. 1991); *In re Clinton Oil Co. Sec. Litig.*, M.D.L. Docket No. 137, 1977 WL 1009, at *22 (D. Kan. Mar. 18, 1977) (finding that Section 14(a) claim may not be asserted against accounting firm whose report was incorporated into proxy solicitation where it "was not involved in the direct solicitation of the proxy nor would it have benefited directly from preparing a false or misleading proxy solicitation"); *Gould v. Am. Hawaiian Steamship Co.*, 351 F. Supp. 853, 865 (D. Del. 1972) ("Section 14(a) imposes liability on individuals soliciting proxies, and not on the attorneys or accountants preparing them."); *cf. Branch v. Tower Air*, No. 94 Civ. 6625, 1995 WL 649935, at *7 (S.D.N.Y. Nov. 3, 1995) ("[A] company's auditors are not normally subject to Section 14(a)."); *Lazzaro v. Manber*, 701 F. Supp. 353, 367 (E.D.N.Y. 1988) (permitting claim to proceed against certain parties but noting that plaintiffs would have to prove "active misconduct by each defendant in connection with the solicitation"),[13] or that they may be sued only in cases where scienter is properly alleged, *Kahn* v. *Wien*, 842 F. Supp. 667, 677 (E.D.N.Y. 1994) (noting that fairness opinion from independent real estate firm may have been actionable if it was knowingly false when made); *see also Adams* v. *Standard Knitting Mills*, 623 F.2d 422 (6th Cir.

---

management by concealing and distorting facts." Senate Comm. on Banking & Currency, S. Rep. No. 1455, 73d Cong., 2d Sess., at 77 (1934).

[13] The court permitted a Section 14(a) claim to proceed against an auditor, without discussion of the issue of whether such claims are within the scope of the statute, in *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 381 F. Supp. 2d 192, 240–42 (S.D.N.Y. 2004).

1980) ("[I]nsofar as accountants' liability is concerned, … an action under 14(a) requires proof of scienter."); *Zatkin* v. *Primuth*, 551 F. Supp. 39, 45 (S.D. Cal. 1982) (dismissing Section 14(a) claim against outside auditor for failure adequately to allege scienter); *but see Herskowitz* v. *Nutri/System, Inc.*, 857 F.2d 179, 190 (3d Cir. 1988) (holding investment bank to negligence standard for fairness opinion issued with proxy).[14]

       Under either approach, Plaintiffs have failed to state a claim against D&T under Section 14(a). There is no allegation that D&T solicited proxies or had a stake in the outcome of the solicitation. Nor is there an allegation that D&T acted with scienter — indeed, Plaintiffs expressly disavow any such allegation. (Cmplt. ¶ 434.) Count XV should therefore be dismissed for this additional reason.

---

[14]   In *Gerstle* v. *Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1300 (2d Cir. 1973), the Second Circuit held that negligence suffices to state a claim under Section 14(a) against those actually soliciting proxies, but expressly limited its holding to situations where "the transaction redounded directly to the benefit of the defendant," distinguishing the situation where a defendant has no pecuniary interest in the transaction, as is the case here. *Id.* at 1300–01.

## CONCLUSION

For the foregoing reasons, D&T's motion to dismiss should be granted and the Complaint dismissed against it in its entirety, with prejudice.

Dated: New York, New York
      July 21, 2008

              PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

              By:_____/s/ Brad S. Karp_____
                    Brad S. Karp
                    Charles E. Davidow
                    Hallie S. Goldblatt

                    1285 Avenue of the Americas
                    New York, New York  10019-6064
                    Tel.  (212) 373-3000
                    Fax  (212) 757-3990
                    bkarp@paulweiss.com
                    hgoldblatt@paulweiss.com

                    1615 L Street, N.W.
                    Washington, D.C.  20036-5694
                    Tel.  (202) 223-7300
                    Fax  (202) 223-7420
                    cdavidow@paulweiss.com

                  *Attorneys for Defendant Deloitte & Touche LLP*