50 of 122 DOCUMENTS

HAMPSHIRE EQUITY PARTNERS II, L.P., Plaintiff, v. TERADYNE, INC. and TERADYNE CONNECTION SYSTEMS DIVISION, Defendants.

04 Civ. 3318 (LAP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2005 U.S. Dist. LEXIS 5261

March 30, 2005, Decided
March 30, 2005, Filed

**SUBSEQUENT HISTORY:** Affirmed by *Hampshire Equity Partners. II, L.P. v. Teradyne, Inc., 2005 U.S. App. LEXIS 28817 (2d Cir. N.Y., Dec. 20, 2005)*

**DISPOSITION:** [*1] Defendants' motion to dismiss [Docket No. 6] granted.

**COUNSEL:** For Hampshire Equity Partners II, L.P., Plaintiff: Michael Jude Lane, Lauren Constance Bisordi, Anderson Kill & Olick, P.C., New York, NY.

For Teradyne, Inc., Teradyne Connection Systems Division, Defendants: Jason D. Frank, Katten Muchin Zavis Rosenman, New York, NY; Anthony L. Paccione, Kirschstein, Ottinger, Israel & Schiffmiller, P.C, New York, NY.

**JUDGES:** Loretta A. Preska, U.S.D.J.

**OPINION BY:** Loretta A. Preska

**OPINION**

MEMORANDUM AND ORDER

LORETTA A. PRESKA, United States District Judge:

The plaintiff in this case claims to have lost a $ 55 million investment based on a single phone call. Hampshire Equity Partners II, L.P. ("Plaintiff") alleges that it was fraudulently encouraged by Mark Emerson, an executive at Teradyne Inc. ("Teradyne") and Teradyne Connection Systems Division ("TSC") (collectively, "Defendants"), to invest $ 55 million in Connector Services Corporation ("CSC") in November 2000 and that it lost that investment when CSC declared bankruptcy in 2003. Presently before the Court is Defendants' motion to dismiss the Complaint pursuant to *Fed. R. Civ. P. 9(b)* and *12(b)(6)* [*2] .

I. *Background*

Plaintiff is a private equity firm that "invests in middle-market companies with the goal of helping them to execute their growth plans and enhance their value." (Compl., P10.) During the second half of 2000, Plaintiff explored an investment in CSC, a provider of "out-source component manufacturing for electronic connector companies such as Teradyne." (*Id.*) Plaintiff conducted due diligence on CSC, hiring LEK Consulting ("LEK") to assist it in that effort. LEK "provides clients with strategic advice and commercial support on major decisions and investments." (Compl. P12.) As part of its work for Plaintiff, LEK contacted various CSC customers, including Teradyne, to gather information. (Compl. P13.)

On November 3, 2000, LEK interviewed Mark Emerson ("Emerson"), an executive and agent of Teradyne and TCS, over the telephone. (Compl. PP1, 14.) Plaintiff describes Emerson as CSC's "main contact" at Teradyne and TSC. (*Id.*) During this phone call, Plaintiff alleges that Emerson described CSC as: (1) having a "very strong" business relationship with TCS; (2) poised for "increased growth . . . in the future" with TCS; (3) among "the top two" of TCS' suppliers; [*3] (4) among "the best suppliers out there"; (5) likely going to receive 75% of TCS' future business; and (6) likely to preserve a business relationship with TCS even in the event of an economic downturn. (Compl. PP16-19.)

However, Plaintiff also alleges that, at the time of the interview, Emerson: (1) knew his growth numbers were grossly inflated and inaccurate; (2) knew that CSC was only TCS's third largest supplier; (3) knew that if Plaintiff did not invest in CSC it would file for bankruptcy, and TCS needed CSC to stay in business in the event there was

Case 1:07-cv-09633-LBS-DFE   Document 84-3   Filed 07/21/2008   Page 2 of 6

Page 2
2005 U.S. Dist. LEXIS 5261, *

an increase in TCS' volume; and (4) was looking to eliminate CSC as one of TCS' suppliers. (Compl. PP17-21.)

On January 18, 2001, Emerson participated in a conference call with Plaintiff, Teradyne, and CSC in which Emerson confirmed his prior positive statements about CSC and stated that CSC "would be in a league of its own." (Compl. P22.) On February 21, 2001, Plaintiff entered into an agreement with CSC, investing approximately $ 55 million and becoming CSC's majority owner. (Compl. PP26-27.) Thereafter, TCS' business with CSC declined dramatically. (Compl. P29.) More than two years later, on September 24, 2003, CSC filed for bankruptcy. [*4] (Compl. P30.)

Plaintiff filed a six-count complaint ("Complaint") on April 30, 2004, seeking to hold Defendants responsible for the entire $ 55 million loss on each individual count. The specific counts of the Complaint are: (1) fraud; (2) fraudulent inducement; (3) fraudulent concealment; (4) fraudulent misrepresentation; (5) intentional interference with economic opportunity; and (6) negligent misrepresentation. Each of these claims fails to satisfy *Rule 9(b)*'s heightened pleading standard. Therefore, Defendants' motion to dismiss is granted. [1]

> 1 Because Plaintiff's complaint is appropriately dismissed under *Rule 9(b)*, I need not reach Defendant's *Rule 12(b)(6)* motion. However, I have considered the 12(b)(6) motion and I find it equally persuasive. *See* IV, *infra*.

II. *Standard for Dismissal Under Rule 9(b)*

*Rule 9(b)* requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Fed. R. Civ. P. 9(b)* [*5] . In addition, a complaint alleging fraud must "'(1) specify the statements that plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Novak v. Kasaks, 216 F.3d 300, 306* (quoting *Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)* (quoting *Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993))).*

*Rule 9(b)* also provides that "malice, intent, knowledge, and other condition of mind may be averred generally." *Fed. R. Civ. P. 9(b)*. Explaining the construction of *Rule 9(b)*, the Court of Appeals in *Shields* noted that:

> Since *Rule 9(b)* is intended "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit . . . , the relaxation of *Rule 9(b)*'s specificity requirement for scienter '"must not be mistaken for license to base claims of fraud on speculation and conclusory allegations."'

*Shields, 25 F.3d at 1128* [*6] (internal quotations omitted). Therefore, a fraud plaintiff must "allege facts that give rise to a strong inference of fraudulent intent." Plaintiffs can establish the requisite "strong inference of fraudulent intent" either by demonstrating "that defendants had both motive and opportunity to commit fraud, or [] by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Kalnit v. Eichler, 264 F.3d 131, 138-39 (2d Cir. 2001)*.

III. *Discussion*

As a threshold matter, I note that *Rule 9(b)* applies to Plaintiff's fraud claims (Counts One through Four) in addition to Plaintiff's claims for intentional interference with economic opportunity (Count Five) and negligent misrepresentation (Count Six). *See Frota v. Prudential-Bache Securities, 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986)* ("*Rule 9(b)* extends to all averments of fraud or mistake, whatever may be the theory of legal duty -- statutory, common law, tort, contractual or fiduciary."); *Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 500 (S.D.N.Y. 2002)* (applying *Rule 9(b)* to tortious interference claim that sounded in fraud); *Simon v. Castello, 172 F.R.D. 103, 105-106 (S.D.N.Y. 1997)* [*7] (applying *Rule 9(b)* to negligent misrepresentation claim that sounded in fraud). [2]

> 2 Plaintiff argues that *Rule 9(b)* does not apply to Count Five, intentional interference with economic opportunity. In support of that argument, Plaintiff cites *P.A. Bergner v. Martinez, 823 F. Supp. 151, 163 (S.D.N.Y. 1993)*, claiming that Defendants rely on the case in their moving brief. As an initial matter, Defendants do not cite *Bergner* anywhere in their opening brief. More importantly, in *Bergner*, the Court ruled that the complaint at issue satisfied *Rule 9(b)*'s pleading requirements, and hence did not address the question of whether *Rule 9(b)* applies to a claim of intentional interference with economic opportunity that sounds in fraud. *Id.*

There is no doubt that Counts Five and Six are based on the same allegedly fraudulent conduct as Counts One through Four, that is, on the same "averments of fraud." In fact, the Complaint repeats and realleges in Counts Five and Six the same facts that provide [*8] the basis for the four preceding fraud claims. (Compl. PP60, 65.) Accordingly, all of Plaintiff's claims are subject to the strict

pleading requirements of *Rule 9(b)*. As more fully described below, Plaintiff's claims fail to meet those strict pleading requirements with respect to scienter and causation.

A. *Scienter*

Scienter may be adequately plead by alleging motive and opportunity to commit fraud or specific facts giving rise to strong circumstantial evidence of conscious misbehavior or recklessness. *Kalnit, 264 F.3d at 138-39*. Plaintiff has failed to satisfy this requirement. The Complaint does not allege any legally cognizable theory of motive or any specific facts giving rise to a strong inference that any allegedly fraudulent statement was knowingly false when made.

In terms of motive, the Complaint states that Defendants intended to defraud Plaintiff because Defendants feared that CSC would go bankrupt, leaving them without a major supplier to handle the increase in projected production and sales. For this reason, Plaintiff claims that Defendants concealed from Plaintiff their intent to terminate CSC as a supplier. To that end, the Complaint reads: [*9]

> The reality was that TCS had widespread, long-standing problems with CSC's products and services . . . . Emerson knew at the time that he was speaking to LEK, that if Hampshire did not invest in CSC, CSC would likely file for bankruptcy protection. Emerson purposely made these representations because TCS needed CSC to stay in business in the event that there was an increase in TCS' business. . . . At the time of Emerson's interview with LEK, TCS was looking to eliminate CSC as one of its suppliers.
>
> When confronted about why he gave a fraudulent due diligence interview, Emerson stated he did it to preserve an alternate source of supply, because TCS "needed a deep pocket investor" for CSC, in order to keep CSC's business operating, particularly in the event TCS' business increased in 2001 as expected.

(Compl. PP20, 21, 31.) Therefore, according to Plaintiff, Defendants had long-standing problems with CSC's products and services and had no intention of keeping CSC as a supplier but were simultaneously motivated to engage in fraud because Defendants needed CSC as a healthy supplier in the future.³

3   Plaintiff objects to this reading of the Complaint and describes Defendants as "hedging their bets" and attempting to preserve an alternate supply "in the event that Defendants enjoyed an increase in demand the following year." (Pl's. Br. at 21.) This recharacterization of the allegations in the Complaint does not resolve the inconsistency -- describing Defendants' intention to retain CSC as a potential supplier plainly conflicts with the assertion that Defendants were planning to terminate CSC as a supplier.

[*10] As a matter of law, such allegations of irrational motive cannot support a fraud claim under *Rule 9(b)*. *In re 1993 Corning Secs. Litig., No. 93 Civ. 7015, 1996 U.S. Dist. LEXIS 6601, at *21 (S.D.N.Y. May 15, 1996)* (granting motion to dismiss where plaintiff's theory of motive was illogical); *see also Kalnit, 264 F.3d at 140-41* (affirming dismissal of fraud complaint where plaintiffs' view defies economic reason); *Atlantic Gypsum Co. v. Lloyds Int'l Corp., 753 F. Supp. 505, 514 (S.D.N.Y. 1990)* (dismissing fraud claims where plaintiff's view of the facts defies economic reason and therefore does not yield a reasonable inference of intent). Plaintiff has not alleged any legally cognizable theory of motive to commit fraud; therefore, I find that Plaintiff has not adequately pled scienter through motive and opportunity.

The Complaint also fails adequately to plead **scienter** because it does not contain any specific facts giving rise to a strong inference that any challenged statement was knowingly false when made. Vague and conclusory allegations that a defendant allegedly had **access** to non-public information, including matters discussed [*11] at internal meetings or contained in unspecified internal reports and documents, do not suffice. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Cos., 75 F.3d 801, 812 (2d Cir. 1996)* ("Plaintiffs' unsupported general claim of the existence of confidential company sales reports that revealed a larger decline in sales is insufficient to survive a motion to dismiss."); *Ressler v. Liz Claiborne, Inc., 75 F. Supp. 2d 43, 52-53 (E.D.N.Y. 1999)* (holding that an unsupported general claim of the existence of confidential company reports containing adverse information is insufficient to survive a motion to dismiss).

In this regard, not only does the Complaint fail to describe any documents, reports, or conversations that would give rise to an inference of scienter, the Complaint alleges almost no supporting facts at all.⁴ The sole reference to any facts supporting an inference that Emerson knew his statements were false when he made them is the following allegation:

> Senior executives of Teradyne and TCS were made aware of the false and fraudu-

2005 U.S. Dist. LEXIS 5261, *

lent statements Emerson made on defendants' behalf. They did nothing to correct [*12] the Report or to give truthful information to LEK or Hampshire.

(Compl. P23.) This allegation is conclusory and is unsupported by a single additional reference in the Complaint. There is no basis, therefore, to draw any inference that Defendants made the allegedly fraudulent statements knowing they were false. For this reason as well, the Complaint fails adequately to plead scienter with the specificity required under *Rule 9(b)*.

> 4  This omission is probably attributable to the fact that half of Emerson's allegedly fraudulent statements are forecasts of future TCS business prospects (Compl. PP16, 17, 19) and the other half are opinions about CSC's business (Compl. PP19, 22), both of which courts have routinely held cannot support a fraud claim. *See In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 558 (S.D.N.Y. 2004)* (conference call statements regarding future growth of pharmaceutical product are plainly opinions, not guarantees and not actionable); *Bavaria Int'l Aircraft Leasing GmbH v. Clayton, Dubilier & Rice, Inc., No. 03 Civ. 0377, 2003 U.S. Dist. LEXIS 13197, at *17 (S.D.N.Y. July 30, 2003)* (alleged fraudulent statement was nothing more than an expression of corporate optimism); *Dooner v. Keefe, Bruyette & Woods, Inc., 157 F. Supp. 2d 265, 280 (S.D.N.Y. 2001)* (fraud allegation based on prediction or promise of future IPO not actionable); *DH Cattle Holdings Co. v. Smith, 195 A.D.2d 202, 607 N.Y.S.2d 227, 231 (App. Div. 1st Dept. 1994)* (statement that a tax shelter was a safe investment found to be non-actionable as mere opinion and puffery).

[*13] B. *Causation*

A failure to adequately plead causation is "fatal to a common law fraud claim under New York law." *Bennett v. United States Trust Co. of N.Y., 770 F.2d 308, 316 (2d Cir. 1985)*. A complaint shall be dismissed if "the plaintiffs have completely failed to show how they were damaged by the alleged fraud, a showing required by *Rule 9(b)*." *Aquino v. Trupin, 833 F. Supp. 336, 342 (S.D.N.Y. 1993)*. To establish causation, "a plaintiff must allege . . . that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 95 (2d Cir. 2001)*. In other words, "the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the [investment]." *Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 173 (2d Cir. 2005)*. If the relationship between the plaintiff's loss and the information misstated or concealed by the defendant is "attenuated, or if the plaintiff fails to demonstrate a causal connection between the content of the alleged mistatements or omissions and [*14] the harm actually suffered, a fraud claim will not lie." *Id. at 174* (internal citations omitted). Therefore, the fraud and injury "must be connected; it must appear in an appreciable sense that the damage flowed from fraud as proximate and not remote cause." *Citibank, N.A. v. K-H Corp., 968 F.2d 1489, 1496 (2d Cir. 1992)*.

Plaintiff's Complaint makes only a feeble attempt to show that the alleged fraud proximately caused the loss of the $ 55 million investment. The Complaint reads, in part:

> Eventually, TCS' use of CSC as a supplier of connectors declined dramatically. On or about September 24, 2003, CSC filed for bankruptcy protection.

(Compl. PP29-30.) These statements hardly draw a causal link between the alleged decline in CSC's business with TCS and CSC's 2003 bankruptcy, much less draw any link to the allegedly fraudulent comments made by Emerson in 2000, some three years earlier. As in the Citibank case, Plaintiff "suggests no reason why the investment was wiped out. [Plaintiff] has alleged the cause of [its] entering into the transaction in which [Plaintiff] lost money, but not the cause of the transaction's turning out [*15] to be a losing one." *Citibank, 968 F.2d at 1495*, see also *Lentell, 396 F.3d at 176-78*) (no proximate cause for loss other than direct intervention of a market collapse). [5]

> 5  Plaintiff cites to *Marbury Mgmt., Inc. v. Kohn, 629 F.2d 705 (2d Cir. 1980)*, and *Fogarazzo v. Lehman Bros., Inc., 341 F. Supp. 2d 274 (S.D.N.Y. 2004)*, to support the contention that "but for" causation, *i.e.*, that Plaintiff would not have made the transaction "but for" the alleged fraudulent statements, satisfies the causation requirement of *Rule 9(b)*.
>
> However, both cases are distinguishable from the present facts. In *Marbury*, the plaintiff was induced to purchase securities when an individual falsely represented that he was a licensed broker. *Marbury, 629 F.2d at 707*. No similar representation was made here, and thus it is factually inapplicable. In *Fogarazzo*, loss causation was pleaded where defendants allegedly lied about the financial health of a company which ultimately failed because of the very facts defendants misrepresented. *Fogarazzo, 341 F. Supp. 2d at 286*. Here, not only has Plaintiff failed to create an inference

of dishonesty in any of Defendants' optimistic statements about future business, but there is simply no allegation to connect Defendants' alleged misrepresentations to the loss of Plaintiff's investment three years later.

[*16] Furthermore, when a plaintiff's loss coincides with a market-wide phenomenon causing comparable losses to other investors, the probability that the loss was caused by an alleged fraud decreases. *First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 772 (2d Cir. 1994)*. Although I need not reach the existence of causation, it is infinitely more probable that the proximate cause of CSC's bankruptcy and Plaintiff's loss of its $ 55 million investment was the overall decline in the high-tech market rather than any collection of optimistic statements from a single telephone call on November 3, 2000. Here, Plaintiff has not pled any facts to support an alternate theory. I find that Plaintiff has not adequately pled causation and that the Complaint must be dismissed under *Rule 9(b)*.

C. *Leave to Amend the Complaint*

The decision whether to grant Plaintiff leave to amend the Complaint rests "within the sound discretion of the court." *American Stock Exch., LLC v. Mopex, Inc., 230 F. Supp. 2d 333, 335 (S.D.N.Y. 2002)*. In general, leave to replead should be "freely given when justice so requires." *Fed. R. Civ. P. 15(a)* [*17] ; *see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)*. Nevertheless, leave to replead may be denied if repleading would be futile. *See Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002)* ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.") (internal quotation marks omitted).

Permitting Plaintiff to replead its fraud claims would be futile. No amount of repleading will allow a sophisticated investor like Plaintiff to convert one customer of its investee into a guarantor of its $ 55 million investment for "the small price of a phone call." *See Security Pacific Business Credit, Inc. v. Peat Marwick Main & Co., 79 N.Y.2d 695, 705-706, 597 N.E.2d 1080, 586 N.Y.S.2d 87 (1992)*. Accordingly, Plaintiff cannot overcome either: (1) the illogical nature of the described fraud -- Emerson's encouraging Plaintiff to invest in CSC to preserve CSC for future business while simultaneously planning to sever all ties with CSC; or (2) the forward-looking nature of the alleged fraudulent statements -- Emerson's comments are non-actionable projections of future TCS business [*18] and opinions as to CSC's financial prospects, not statements of fact based on inside information. Therefore, repleading will not allow Plaintiff to satisfy *Rule 9(b)*'s scienter requirement.

Plaintiff will also be unable to replead to satisfy *Rule 9(b)*'s causation requirement. While repleading would allow Plaintiff to supplement its Complaint with information establishing the connection between CSC's bankruptcy and the decline in TCS' business, creating a connection between Emerson's phone call and Plaintiff's loss of its investment three years later after the high-tech bubble burst is another matter entirely. On the record before me, I find that Plaintiff cannot plead the required causation. For these reasons, Plaintiff's request to replead is denied.

IV. *Defendants' Rule 12(b)(6) Motion*

As previously noted, because I dismiss Plaintiff's Complaint pursuant to *Rule 9(b)*, I need not directly address Defendants' *Rule 12(b)(6)* motion. However, having considered Defendants' *Rule 12(b)(6)* arguments, I find them as persuasive as Defendants' *Rule 9(b)* arguments. Regarding Plaintiff's Counts One through Four and Six, Defendants' allegedly fraudulent statements are not actionable [*19] as they either concern future business, are opinions about CSC's financial condition, or are simply unsupported. [6] On Count Three, the Complaint does not allege any special relationship between Teradyne and Plaintiff sufficient to sustain a fraudulent concealment claim, and the commercial relationship they shared is insufficient. Count Six, the negligent misrepresentation claim, suffers from the same weakness. Finally, Count Five, Plaintiff's claim for intentional interference with economic opportunity, is fundamentally flawed, as Defendants simply did not disturb, sever, or adversely affect the business relationship between Plaintiff and CSC in any way. Accordingly, I find that Defendants' 12(b)(6) motion to dismiss would also succeed. [7]

---

6  By 'unsupported,' I refer to the lack of any financial justification to show that Emerson's statement that CSC was "among TCS' top two suppliers" was inaccurate or fraudulent in any way. (Compl. P18.)

7  As further justification for denial of Plaintiff's request to replead, "an amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)*." *Lucente, 310 F.3d at 258* (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002))*.

[*20] V. *Conclusion*

For these reasons, Defendants' motion to dismiss [Docket No. 6] is granted. The Clerk of the Court shall mark this matter closed and all pending motions denied as moot.

**SO ORDERED**

2005 U.S. Dist. LEXIS 5261, *

March 30, 2005                                    Loretta A. Preska, U.S.D.J.