LEXSEE 1993 U.S. DIST. LEXIS 10064

IN RE USF&G CORPORATION SECURITIES LITIGATION; THIS DOCUMENT RELATES TO CIVIL NOS. B-90-2928, B-90-2932, B-90-2992, B-90-3023, B-90-3025, B-90-3070, B-90-3074, B-90-3075, B-90-3082, B-90-3103, B-90-3104

MASTER FILE NO. B-90-2928

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

*1993 U.S. Dist. LEXIS 10064*

February 11, 1993, Decided
February 11, 1993, Filed; February 18, 1993, Entered

**DISPOSITION:** [*1] For all of the foregoing reasons, the Court grants the motions to dismiss filed by defendants James A. Flick, Jr., Jack Moseley, Paul J. Scheel, and USF&G Corporation, Accordingly, the Court dismisses the consolidated and amended complaint.

**JUDGES:** Black, Jr.

**OPINION BY:** WALTER E. BLACK, JR.

**OPINION**

*MEMORANDUM OPINION*

Presently pending before the Court are motions to dismiss plaintiffs' consolidated and amended class action complaint, filed on behalf of defendants James A. Flick, Jr. (Paper 19), Jack Moseley (Paper 21), Paul J. Scheel (Paper 22), and USF&G Corporation (Paper 26). In this securities fraud case, plaintiffs originally filed eleven separate actions that were consolidated by the Court under the lead case of *Eliezer Rabinovits, et al. v. USF&G Corporation, et al.*, Civil No. 8-90-2928. Count I of the consolidated complaint [hereinafter, the "complaint"] asserts that defendants intentionally and recklessly misrepresented or omitted material facts about USF&G's financial condition and dividend policy, thus violating *15 U.S.C. § 78j(b)* [or, Securities Exchange Act of 1934, § 10(b)] and *17 C.F.R. § 240.10b-5* [or, Securities Exchange Commission *Rule 10b-5*]. In addition [*2] to this federal law count, the complaint contains three state law counts relating to breach of contract and negligent misrepresentation. With respect to all counts, plaintiffs claim that they were misled by the misrepresentations made by defendants between March 7, 1990, and November 7, 1990. As a result, plaintiffs assert that they purchased and/or retained USF&G common stock at artificially inflated prices.

Defendants move to dismiss Count I, and hence the entire complaint, [1] under *Rules 9(b)* and *12(b)(6) of the Federal Rules of Civil Procedure*. *Rule 9(b)* provides for dismissal of a complaint for failure to plead fraud with particularity, and *Rule 12(b)(6)* provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. After the parties exhaustively briefed the issue, the Court held a hearing on August 21, 1992. [2] Having considered the memoranda as well as oral arguments, the Court is now prepared to resolve the instant motions.

  1  Because jurisdiction in this case is based solely on federal question grounds, the Court should not retain jurisdiction over state law claims if the federal claims are dismissed. *28 U.S.C. § 1367(c)(3)*. See *United Mine Workers v. Gibbs, 383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966); Augenstein v. McCormick & Co., 581 F. Supp. 452, 462 (D. Md. 1984).*

[*3]

  2  While the litigants in the eleven consolidated actions were represented at the hearing, the newly-joined plaintiffs in *Vincent A. Chiappardi v. USF&G Corp., et al.*, Civil No. B-92-104, were absent. They were apparently absent because they did not receive notice of the hearing, despite the obligation of co-liaison counsel in the consolidated action to keep them so advised. As the Court indicated in its letter of August 28, 1992, it intends to schedule a hearing on the *Chiappardi* case after resolving the instant motions to dismiss.

I

Because the Court has not considered any materials outside of the pleadings, this motion will be addressed under *Rule 12(b)(6) of the Federal Rules of Civil Procedure*. The Rule provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Due to the severe impact of dismissals, the Court will grant such motions sparingly and with caution. *Jones v. Board of Com'rs of Ala. State Bar, 737 F.2d 996, 997 (11th Cir. 1984)*; *Rennie & Laughlin, Inc. v. Chrysler Corp., 242 F.2d 208 (9th Cir. 1957).* [*4]

As the Rule has been interpreted, a claim should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)*; *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); see also, Caddell v. Singer, 652 F.2d 393 (4th Cir. 1981)*. In reviewing these facts, the Court must liberally construe the complaint in its entirety and accept the allegations contained therein as true. *California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 515, 30 L. Ed. 2d 642, 92 S. Ct. 609 (1972); Grant v. Allison, 616 F. Supp. 1219, 1220 (D. Md. 1985)*. To state a claim under § 10(b) of the Securities Exchange Act and *Rule 10b-5* promulgated thereunder,³ a complaint must allege that defendants made material misstatements or omissions of fact indicating an intent to defraud in connection with the sale or purchase of a security. *Ernst & Ernst v. Hochfelder, 425 U.S. 185, 47 L. Ed. 2d 668, 96 S. Ct. 1375 (1976)*. In particular, there are five requisite elements in proving a violation of [*5] § 10(b): 1) damage to plaintiff, 2) caused by reliance on defendants' misrepresentations or omissions of material facts, or on a scheme by defendants to defraud, 3) made with scienter (i.e., an intent to deceive, manipulate, or defraud), 4) in connection with the purchase or sale of securities, and 5) furthered by defendants' use of the mails or any facility of a national securities exchange. *Citibank, N.A. v. K-H Corp., 968 F.2d 1489, 1494 (2d Cir. 1992); Royal American Managers, Inc. v. IRC Holding Corp., 885 F.2d 1011, 1015 (2d Cir. 1989)*.

---

3   Section 10(b) of the Securities Exchange Act, or 15 U.S.C. § 78(j)(b), provides the following:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange --
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

*Rule 10b-5*, or *17 C.F.R. § 240.10b-5*, provides the following:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

---

[*6] This Court has recognized that, because such claims involve allegations of fraud, the complaint must satisfy the requirements of *Rule 9(b) of the Federal Rules of Civil Procedure*. *Gollomp v. MNC Financial, Inc., 756 F. Supp. 228, 232 (D. Md. 1991)*. *Rule 9(b)* provides that:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

In interpreting this Rule, courts have held that plaintiffs must make particular allegations of the time, place, speaker, and contents of the allegedly false statements. *Windsor Assocs., Inc. v. Greenfeld, 564 F. Supp. 273, 280*

*(D. Md. 1983)*. The requirement also applies to the manner in which the statements are false and the specific facts raising an inference of fraud. *Hammerman v. Peacock, 607 F. Supp. 911, 915-16 (D.D.C. 1985)*. This rule of particularity must not be applied too strictly, however. Instead, *Rule 9(b)* must be read in conjunction with *Rule 8(a) of the Federal Rules of Civil Procedure,* [*7] which requires a "short and plain statement" of plaintiffs' claim for relief. *Windsor Assocs., 564 F. Supp. at 280*.

The courts have identified the following three reasons for requiring particularity: 1) to provide defendants with fair notice of plaintiffs' claim; 2) to protect defendants from harm to their reputation or good will; and 3) to reduce the number of nuisance or "strike" suits. *Gollomp, 756 F. Supp. at 232*. These concerns are especially warranted in cases alleging securities fraud. For example, in *Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 740, 44 L. Ed. 2d 539, 95 S. Ct. 1917 (1975)*, the U.S. Supreme Court expressed its concern that

> in the field of federal securities laws governing disclosure of information even a complaint which by objective standards may have very little chance of success at trial has a settlement value to the plaintiff out of any proportion to its prospect of success at trial so long as he may prevent the suit from being resolved against him by dismissal or summary judgment. The very pendency of the lawsuit may frustrate or delay normal business activity of the defendant which [*8] is totally unrelated to the lawsuit.
>
> . . . .
>
> Congress itself recognized the potential for nuisance or "strike" suits in this type of litigation . . . .

In general, therefore, the particularity requirement of *Rule 9(b)* is designed to bar strike suits and allegations of "fraud by hindsight." *Bender v. Rocky Mountain Drilling Associates, 648 F. Supp. 330, 335-36 (D.D.C. 1986)*.

Even if plaintiffs satisfy the particularity requirement of *Rule 9(b)*, their resulting allegation must still constitute a cognizable claim of fraud under *Rule 12(b)(6)*. See *Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 479, 51 L. Ed. 2d 480, 97 S. Ct. 1292 (1977)*. In other words, when these Rules are considered together, plaintiffs are required to state more than just a particular claim. They must state a particular claim of *fraud*. See *Cayman Exploration Corp. v. United Gas Pipeline, 873 F.2d 1357, 1362 & n.5 (10th Cir. 1989); Vicom, Inc. v. Harbridge Merchant Services, Inc., 1993 WL 8340, *3 (N.D. Ill. 1993)*.

II

As one of the largest corporations headquartered in Maryland, USF&G Corporation provides property and casualty insurance as its [*9] primary or core service. Over the past decade, USF&G sought to offset the impact of poor economic trends on this core service by diversifying into life insurance and financial services. This diversification, however, proved too unwieldy for the corporation to handle, especially in combination with the losses afflicting core services. Consequently, on November 7, 1990, USF&G announced a third quarter operating loss of 19 million dollars, reduced its common stock dividend from 73 cents to 25 cents per share, and approved a program to reduce costs by approximately 75 million dollars through layoffs and cutbacks. In addition, USF&G announced the retirement of Jack Moseley, the corporation's President and Chief Executive Officer.

Within 24 hours, plaintiffs filed in this Court the first and lead case of the consolidated group. More than six months later, they filed a consolidated and amended class action complaint spanning 135 pages. In this lengthy submission, plaintiffs principally allege that they were defrauded by defendants USF&G Corporation and three individual officers. In general, plaintiffs' claims of misrepresentation, or failure to disclose, fall into three categories: 1) statements [*10] concerning the condition of USF&G's core services, financial services, and investments; 2) statements concerning the future business prospects of USF&G; and 3) statements concerning the security of USF&G's dividend.

Having considered these allegations, the Court holds that plaintiffs have failed to satisfy the requirements of *Rules 9(b)* and *12(b)(6)*.

III

First, plaintiffs claim that defendants misrepresented or failed to disclose the numerous problems affecting USF&G in core services, financial services, and investments. Regarding core services, plaintiffs allege that defendants concealed the fact that inefficiencies were ubiquitous and were undermining the profitability of the corporation. among the inefficiencies alleged, plaintiffs refer to the overstaffed and overcentralized management, the redundancy of branch offices, the antiquated information and underwriting systems, the failure to price the insurance products competitively, and the unprofitable marketing of insurance in states like Texas and Louisiana.

Plaintiffs also claim that defendants concealed mismanagement in financial services. First, they allege that

the asset management operations were unprofitable due to redundant [*11] and unnecessary costs, among other inefficiencies. Second, and more generally, it is alleged that defendants failed to successfully integrate the financial services division into USF&G's traditional operations.

With respect to corporate investments, plaintiffs generally contend that defendants misled the current and prospective shareholders by characterizing the corporation's investment strategy as "conservative." In actuality, plaintiffs assert, defendants failed to disclose the low quality of USF&G's investment portfolio. Defendants allegedly concealed the fact that the rate of nonperforming real estate doubled from 1989 to 1990, that volatile high yield bonds had a market value of over 50 million dollars less than book value, and that an oil venture would never produce an adequate return.

Plaintiffs, to establish an inference of securities fraud, allude to the changes instituted by the new management upon assuming control of the corporation in November, 1990. In particular, plaintiffs contend that, because the new management eliminated many of the alleged inefficiencies, defendants must have known that the prior method of operation was deficient. Therefore, defendants should [*12] have declared explicitly that corporate operations were inefficient and that investments were of poor quality.

Having considered these allegations, the Court rejects plaintiffs' attempt to use the changes after November 7, 1990, to imply fraud. "Mere temporal proximity between statements stressing the strengths of a corporation . . . and announcements of poor economic performance and depressed earnings does not give rise to an inference that the earlier statements were false . . . ." *In re First Chicago Corp. Securities Litigation, 769 F. Supp. 1444, 1454 (N.D. Ill. 1991).* Second, and more importantly, the Court finds that there is no factual basis for alleging that defendants misrepresented the corporation's financial condition or misled the investors. A review of the Annual Reports, as cited by plaintiffs in the complaint, supports this finding.

With respect to the core and financial services, the Annual Reports reflect caution and candidly reveal the problems of the corporation. In its 1987 Annual Report, USF&G indicated that financial services failed to turn a profit for the year. In 1988, USF&G warned that diversification has its risks. In the [*13] 1989 Annual Report, issued during the period of alleged misrepresentations, USF&G continued to report losses in financial services and referred to 1989 as a difficult year for property and casualty insurance. [4] USF&G even speculated that results in core services could continue to decline in 1990. In addition to these seemingly frank representations, defendants actually recognized that some inefficiencies existed. In both the 1987 and 1988 Annual Reports, defendants alluded to the need to implement cutbacks in problem lines and in problem states. Therefore, defendants disclosed enough somber news to put investors on notice.

   4   Plaintiffs contend that defendants acted misleadingly by attributing the 1989 losses more to one-time catastrophes than to the inefficiencies of the corporation. The 1989 Annual Report, however, expressly indicates that the decline in profitability was "due mainly to strong price competition for commercial insurance lines that began in 1987 coupled with record catastrophe losses and increasing losses from involuntary business." Because the primary emphasis of the report is not on catastrophes, plaintiffs' contention is unpersuasive.

[*14] With respect to investments, the complaint cites to corporate documents which, once again, refute the underlying allegations of fraud. For example, the 1989 Annual Report revealed the fact that 173 million dollars of "high yield" bonds were not even rated. The report also disclosed that the high yield portfolio had a market value of only 94 percent of book value. [5] With respect to real estate, the report warned that the strategy of investing early in a venture carried certain risks. As for the oil and gas investments, the report stated that USF&G suffered a loss of 8 million dollars. [6]

   5   This particular disclosure completely refutes plaintiffs' contention that USF&G did not reveal that the market value of its high yield investments was 50 million dollars less than book value. When the total amount of such investments (922 million dollars, as disclosed) is multiplied by 94 percent, the resulting loss is 55.32 million dollars. With simple arithmetic, therefore, plaintiffs could have determined the loss themselves. *See Data Probe Acquisition Corp. v. Datatab, Inc., 722 F.2d 1, 5 (2d Cir. 1983), cert. denied, 465 U.S. 1052, 79 L. Ed. 2d 722, 104 S. Ct. 1326 (1984)* (defendants did not commit securities fraud by failing to state a conclusion that was "obvious to anyone conversant with elementary mathematics"); *Raybestos-Manhattan, Inc. v. Hi-Shear Industries, Inc., 503 F. Supp. 1122, 1131 (E.D.N.Y. 1980)* ("recitation of the obvious" is not required).

[*15]
   6   Plaintiffs contend that defendants should have disclosed the fact that they had received contradictory reports evaluating the oil reserves at Park Avenue Exploration Corporation. Apparently, one report indicated that the reserves had declined in value by more than 50 million dollars in 1987.

Case 1:07-cv-09633-LBS-DFE    Document 84-6    Filed 07/21/2008    Page 5 of 7

Page 5
1993 U.S. Dist. LEXIS 10064, *

Another report estimated that the reserves were increasing in value. While it is true that defendants did not disclose this contradiction, they did report the oil venture at book value, which was lower than the valuations of both conflicting reports. Therefore, the contradiction is immaterial to the issue of disclosure.

Plaintiffs therefore have improperly construed the securities laws to require defendants to go beyond stating the facts and to state an opinion that any investor could reach; namely, that certain investments were not profitable. The laws do not require a corporation to make investment decisions for purchasers and holders of stock. Instead, a corporation simply must not mislead the investing public. A review of the complaint itself indicates that, as a factual matter, plaintiffs have failed [*16] to allege such a deceptive act on the part of defendants.

As a final matter, plaintiffs' related allegation, that defendants misled investors by describing the investment strategy as conservative, is also defective. Not only is such a characterization a matter of opinion, but this Court has recognized that "the fact that [investments] fail does not itself demonstrate that they constituted unacceptable risks when they were made." *Gollomp*, 756 F. Supp. at 231.

For all of these reasons, the Court finds that plaintiffs have not set forth a cognizable claim of fraud with respect to core services, financial services, and investments. At most, plaintiffs have alleged nothing more than a failure to disclose corporate mismanagement, which is essentially a claim for breach of fiduciary duty. Such a claim is not actionable under the federal securities laws, as held by the courts in *Panter v. Marshall Field & Co.*, 646 F.2d 271, 288-89 (7th Cir. 1981), cert. denied, 454 U.S. 1092, 70 L. Ed. 2d 631, 102 S. Ct. 658 (1981), and *Kas v. Financial General Bankshares, Inc.*, 254 U.S. App. D.C. 217, 796 F.2d 508, 513 (D.C. Cir. 1986). This [*17] legal principle stems from the decision in *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 479, 51 L. Ed. 2d 480, 97 S. Ct. 1292 (1977), holding that corporate mismanagement is not a cognizable claim under securities laws. Likewise, the Fourth Circuit recognized that "federal securities law was not intended to provide a federal forum for every intracorporate squabble or to substitute for the more general state claims . . . ." *Taylor v. First Union Corp.*, 857 F.2d 240, 246 (1988), cert. denied, 489 U.S. 1080, 103 L. Ed. 2d 837, 109 S. Ct. 1532 (1989). The courts in *Panter* and *Kas* provide an important corollary to this rule. They hold that plaintiffs may not circumvent the *Santa Fe* decision simply by alleging that the defendants "failed to disclose" mismanagement or a breach of fiduciary duty. *Panter*, 646 F.2d at 288-89; *Kas*, 796 F.2d at 513. In other words, plaintiffs are prohibited from "bootstrapping" a mismanagement claim into a securities fraud claim.

In the instant case, plaintiffs try to engineer such a "bootstrap" strategy. Essentially, plaintiffs adopt a certain opinion about [*18] how to operate a Fortune 500 company efficiently, elevate that opinion to fact, and contend that defendants' failure to disclose this "fact" constitutes fraud. Plaintiffs can recover on this theory only if the alleged inefficiencies are so apparent as to become facts. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), cert. denied, 498 U.S. 941, 111 S. Ct. 347, 112 L. Ed. 2d 312 (1990). Here, reasonable minds could differ on defendants' decision to keep the current staff size, to maintain traditional underwriting standards, to create a financial services division, and to make certain investments. The very possibility of reasonable disagreement, therefore, undermines plaintiffs' claim that certain facets of USF&G were inefficient as a matter of fact. Accordingly, because plaintiffs' claims involve mismanagement, they are not actionable under the federal securities laws.

IV

The Court shall next consider plaintiffs' challenge to statements made by defendants regarding the future prospects of the corporation. First, they allege that defendants engaged in fraud by offering optimistic assessments of the future. For example, plaintiffs identify fraud [*19] in the 1990 remarks of defendant Moseley, who stated, "I can't remember when I felt more excited -- and more secure -- about the future of USF&G." Second, plaintiffs contend that defendants misleadingly predicted that USF&G would soon recover from the recent economic downturn. In support thereof, plaintiffs point to the 1989 Annual Report, which repeatedly refers to defendants' opinion that "1989 marked the bottom of the current underwriting cycle."

At the outset, the Court recognizes the established rule that economic prognostication is not actionable under the securities laws. *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 117 (2d Cir. 1982); *Polin v. Conductron Corp.*, 552 F.2d 797, 805 (8th Cir. 1977), cert. denied, 434 U.S. 857, 54 L. Ed. 2d 129, 98 S. Ct. 178 (1977). The responsibility for judging the future instead rests on the shoulders of the investors. The securities laws do not provide relief to those who purport to rely solely on the predictions of management but overlook the financial data that was disclosed by management. *See Data Controls North, Inc. v. Financial Corp. of America, Inc.*, 688 F. Supp. 1047, 1052 (D. Md. 1988), [*20] aff'd without opin., 875 F.2d 314 (4th Cir. 1989).

In the instant case, defendants often spoke with caution and disclosed the requisite facts from which an investor could reach an independent conclusion. For example, defendants revealed in the first quarter of 1990 that the soft underwriting cycle was continuing and that losses due to catastrophes amounted to 18 million dollars. In-

Case 1:07-cv-09633-LBS-DFE   Document 84-6   Filed 07/21/2008   Page 6 of 7

Page 6
1993 U.S. Dist. LEXIS 10064, *

deed, defendants even warned that "optimistic expectations for the financial services segment were premature." Therefore, because defendants' predictions bespoke caution and revealed the underlying contingent factors, plaintiffs have not pled a cognizable claim of fraud under *Rule 12(b)(6)*. *Isquith v. Middle South Utilities, Inc., 847 F.2d 186, 204 (5th Cir. 1988), cert. denied, 488 U.S. 926, 102 L. Ed. 2d 329, 109 S. Ct. 310 (1988)*; *Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986)*.

In a similar vein, optimistic opinions are not actionable unless the opinions were issued without genuine belief or reasonable basis. *Herskowitz v. Nutri/System, Inc., 857 F.2d 179, 184-85 (3d Cir. 1988),* [*21] *cert. denied, 489 U.S. 1054, 103 L. Ed. 2d 584, 109 S. Ct. 1315 (1989)*. Here, plaintiffs certainly so allege in broad terms. However, instead of pointing to prior inconsistent statements or other forms of evidence, plaintiffs simply refer to the fact that the newer management disagreed with defendants' opinion of efficiency. Such a proffer of proof is an insufficient basis for making the serious claim that defendants engaged in fraud.

V

Plaintiffs' last category of challenges relates to the statements made by defendants prior to departing from USF&G's historic and consistent issuance of dividends. In 1990, defendants represented that USF&G would not cut its colon stock dividend even though the corporation itself would not earn a dividend. Moreover, defendant Moseley expressly stated that "we have learned over the years that increasing our dividend to our shareholders through both good and bad cycles is sound business practice." Even as late as October, 1990, a senior vice president noted that

> senior management believes that [the dividend] is important to investors . . . . We would not like to do something to alter that record.

Despite these statements, USF&G reduced its dividend [*22] from 73 cents to 25 cents per share on November 7, 1990. In plaintiffs' opinion, this departure was not unforeseen by defendants. Consequently, plaintiffs allege that the repeated statements about the dividend were false and made with no reasonable basis in fact, given the deteriorating financial condition of USF&G.

The Court finds that this allegation fails to state a cognizable claim under the securities laws. Because such an allegation involves opinions or statements about future acts, the case law set forth in the previous section is directly applicable. Moreover, the Court finds instructive the remarkably similar case of *Hershfang v. Citicorp, 767 F. Supp. 1251, 1256 (S.D.N.Y. 1991)*. In that case, certain officers of Citicorp were named as defendants in a securities fraud suit for having stated that Citicorp intended to implement "a customary dividend increase" and that Citicorp planned no dividend cut. *Id. at 1252-53*. The *Hershfang* court held that these statements were merely opinions and

> not, as plaintiff claims a reasonable person should infer, intentional misrepresentations about Citicorp's financial condition [*23] or a guarantee that the bank would not lower its dividend. *Statements about future events that are plainly expressions of opinion and not guarantees are not actionable under the federal securities laws. Friedman v. Mohasco Corp., 929 F.2d 77, 79 (2d Cir. 1991)* . . . .

*Id. at 1256* (emphasis added). This principle of law is sound and properly applies to the instant case.

VI

For all these reasons, the Court dismisses the complaint for failure to set forth cognizable claims of fraud under *Rules 9(b)* and *12(b)(6)*. The complaint is dismissed with respect to all defendants because the alleged misrepresentations are virtually identical in every case. Because dismissal is appropriate on this basis alone, the Court need not address the arguments relating to scienter and reliance.

VII

In their memoranda opposing the instant motions, plaintiffs requested an opportunity to replead if the Court found the complaint insufficient to state a claim. *Rule 15(a) of the Federal Rules of Civil Procedure* provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice [*24] so requires." In *Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)*, the U.S. Supreme Court listed numerous circumstances under which it would be improper to allow repleading:

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment . . . .

More importantly, however, the court noted that plaintiffs' should be allowed the opportunity to test their claim on the merits if the underlying facts or circumstances constitute a proper subject of relief. *Id.*

With respect to the instant case, the Court denies plaintiffs' request to replead. Plaintiffs have requested and received numerous extensions of time for filing an amended complaint, which they submitted more than six months after suit was originally filed. *See Luce, 802 F.2d at 56* (repleading is generally prohibited when plaintiffs have already had one opportunity to plead fraud with greater specificity). Despite the 135-page amended complaint, plaintiffs failed to demonstrate that the [*25] underlying facts set forth a proper subject of relief. Accordingly, plaintiffs cannot rely on *Foman* in arguing for an opportunity to test the merits of their claims. Moreover, another round of repleading would inflict undue prejudice on defendants, whose reputations have suffered under the weight of an unsupported allegation of fraud.

For all of the foregoing reasons, the Court grants the motions to dismiss filed by defendants James A. Flick, Jr., Jack Moseley, Paul J. Scheel, and USF&G Corporation. Accordingly, the Court dismisses the consolidated and amended complaint. A formal order will be entered in conformity with this Memorandum Opinion.

February 11, 1993

Walter E. Black, Jr., Chief Judge

*ORDER* - February 11, 1993, Filed; February 18, 1993, Entered

In accordance with the Memorandum Opinion filed today in the above-captioned case, IT IS, this 11th day of February, 1993, by the United States District Court for the District of Maryland,

ORDERED:

(1) That the Motion to Dismiss the Consolidated and Amended Complaint (Paper 19) filed on behalf of defendant James A. Flick, Jr. BE, and the same hereby IS, GRANTED;

(2) That the Motion to Dismiss the Consolidated and Amended [*26] Complaint (Paper 21) filed on behalf of defendant Jack Moseley BE, and the same hereby IS, GRANTED;

(3) That the Motion to Dismiss the Consolidated and Amended Complaint (Paper 22) filed on behalf of defendant Paul J. Scheel BE, and the same hereby IS, GRANTED;

(4) That the Motion to Dismiss the Consolidated and Amended Complaint (Paper 26) filed on behalf of defendant USF&G Corporation BE, and the same hereby IS, GRANTED;

(5) That plaintiffs' Consolidated and Amended Class Action Complaint (Paper 10) BE, and the same hereby IS, DISMISSED; and

(6) That the Clerk shall mail a copy of this Order and the accompanying Memorandum Opinion forthwith to counsel of record.

Walter E. Black, Jr., Chief Judge