Fiscal Year that Excess Deferred Amounts (or Remaining Excess Deferred Amounts in the case of installment payments) were maintained hereunder. The Annual Charge shall be applied as a pro rata reduction of the portion of the Account Balance indexed to each of the Participant's Selected Benchmark Return Options. In applying the Annual Charge, the pricing principles set forth in Section 3.4(f) will be followed.

(g)    **Rollover Option**. In the discretion of the Administrator or a designee, additional Benchmark Return Options, including illiquid Return Options, may be offered to all Participants under the Plan or to a more limited group of Participants. In such event, Participants will be allowed, in such manner as the Administrator shall determine, to elect that all or a portion of Account Balances be indexed to such Benchmark Return Options. With respect to Benchmark Return Options that do not provide liquidity: (A) except as otherwise provided under the Plan and applicable law, payments under Article V will be made in accordance with a Participant's election at the time of the Participant's original deferral; (B) Participants may be limited in their ability to elect, change or continue their Benchmark Return Options in accordance with such terms and conditions as the Administrator or a designee may determine; and (C) the Annual Charge shall be accrued on Excess Deferred Amounts and paid, when possible, upon liquidation of all or any portion of the Benchmark Return Option, provided that no payment shall be made to a Participant under Article V hereof until all accrued Annual Charges have been paid.

## ARTICLE IV
## STATUS OF DEFERRED AMOUNTS AND ACCOUNT

**4.1  No Trust or Fund Created; General Creditor Status.**

Nothing contained herein and no action taken pursuant hereto will be construed to create a trust or separate fund of any kind or a fiduciary relationship between ML & Co. and any Participant, the Participant's beneficiary or estate, or any other person. Title to and beneficial ownership of any funds represented by the Account Balance will at all times remain in ML & Co.; such funds will continue for all purposes to be a part of the general funds of ML & Co. and may be used for any corporate purpose. No person will, by virtue of the provisions of this Plan, have any interest whatsoever in any specific assets of the Company. TO THE EXTENT THAT ANY PERSON ACQUIRES A RIGHT TO RECEIVE PAYMENTS FROM ML & CO. UNDER THIS PLAN, SUCH RIGHT WILL BE NO GREATER THAN THE RIGHT OF ANY UNSECURED GENERAL CREDITOR OF ML & CO.

**4.2  Non-Assignability.**

The Participant's right or the right of any other person to the Account Balance or any other benefits hereunder cannot be assigned, alienated, sold, garnished, transferred, pledged, or encumbered except by a written designation of beneficiary under this Plan, by written will, or by the laws of descent and distribution.

**4.3  Effect of Deferral on Benefits Under Pension and Welfare Benefit Plans.**

The effect of deferral on pension and welfare benefit plans in which the Participant may participate will depend upon the provisions of each such plan, as amended from time to time.

9

**ARTICLE V**
**PAYMENT OF ACCOUNT**

**5.1    Manner of Payment.**

A Participant's Account Balance will be paid by the Company, as elected by the Participant at the time of his or her deferral election, either in a single payment to be made, or in the number of annual installments (not to exceed 15) chosen by the Participant to commence, (i) in the month following the month of the Participant's Retirement or death, (ii) in any month and year selected by the Participant after the end of 2007, or (iii) in any month in the calendar year following the Participant's Retirement; provided that, if a Participant's election would result in payment (in the case of a single payment) or commencement of payment (in the case of installment payments) after the Participant's 70th birthday, then, notwithstanding the Participant's elections, the Company will pay, or commence payment of, the Participant's Account Balance in the month following the Participant's 70th birthday unless the Participant continues to be an active full time employee at such time, in which case the Company will pay, or commence payment of, the Participant's Account Balance in the month following the Participant's cessation of active service (to the extent payment has not already been made or commenced). The amount of each annual installment, if applicable, shall be determined by multiplying the Account Balance as of the last day of the month immediately preceding the month in which the payment is to be made by a fraction, the numerator of which is one and the denominator of which is the number of remaining installment payments (including the installment payment to be made). Notwithstanding the foregoing, if a Participant indexes any portion of his or her Account Balance to the Income Builder Return Option, the Participant may make separate payment elections with respect to the portion of his or her Account Balance indexed to the Income Builder Return Option and the remainder of such Account Balance.

**5.2    Termination of Employment.**

(a)    **Death, Retirement, Rule of 60**. Subject to Section 5.2(b)(2), upon a Participant's death or Retirement (as defined in this Plan), or termination when the Participant complies with the Rule of 60 (as defined in this Plan) prior to payment, the Account Balance will be paid, in accordance with the Participant's elections and as provided in Section 5.1, to the Participant or to the Participant's beneficiary (in the event of death); provided, however, that (1) in the event that the Participant enters into competition with the business of Merrill Lynch, he or she will not be eligible for Retirement or Rule of 60 treatment under this Section 5.2 (a), and (2) in the event that a beneficiary of the Participant's Account is the Participant's estate or is otherwise not a natural person, the applicable portion of the Account Balance will promptly be paid in a single payment to such beneficiary notwithstanding any election of installment payments.

(b)    **Other Termination of Employment; Treatment of Key Employees**

(1)    Subject to Section 5.2(b)(2), if a Participant's employment terminates at any time for any other reason than those described in Section 5.2(a), then, notwithstanding the Participant's elections hereunder, any Available Balance will be paid to the Participant in a single payment in the month following the month of the Participant's termination.

(2)    If a Participant's employment terminates at any time while the Participant constitutes a specified employee within the meaning of section 409A of the Code, then, notwithstanding the Participant's elections hereunder, any Available Balance will be paid to the Participant (or to the Participant's beneficiary, in the event of death) in a single payment in the month following the earlier of (i) the six-month anniversary of the Participant's termination or (ii) the month of the Participant's death.

10

(c) **Leave of Absence, Transfer or Disability.** The Participant's employment will not be considered as terminated if the Participant (1) is on an approved leave of absence; (2) transfers or is transferred but remains in the employ of the Company or an unconsolidated affiliate; or (3) is eligible to receive disability payments under the ML & Co. Basic Long-Term Disability Plan.

**5.3 Withholding of Taxes.**

ML & Co. will deduct or withhold from any payment to be made or deferred hereunder any U.S. Federal, state or local or foreign income or employment taxes required by law to be withheld or require the Participant or the Participant's beneficiary to pay any amount, or the balance of any amount, required to be withheld.

**5.4 Beneficiary.**

(a) **Designation of Beneficiary.** The Participant may designate, in a writing delivered to the Administrator or his or her designee before the Participant's death, a beneficiary to receive payments in the event of the Participant's death. The Participant may also designate a contingent beneficiary to receive payments in accordance with this Plan if the primary beneficiary does not survive the Participant. The Participant may designate more than one person as the Participant's beneficiary or contingent beneficiary, in which case (i) no contingent beneficiary would receive any payment unless all of the primary beneficiaries predeceased the Participant, and (ii) the surviving beneficiaries in any class shall share in any payments in proportion to the percentages of interest assigned to them by the Participant.

(b) **Change in Beneficiary.** The Participant may change his or her beneficiary or contingent beneficiary (without the consent of any prior beneficiary) in a writing delivered to the Administrator or his or her designee before the Participant's death. Unless the Participant states otherwise in writing, any change in beneficiary or contingent beneficiary will automatically revoke prior such designations of the Participant's beneficiary or of the Participant's contingent beneficiary, as the case may be, under this Plan only; and any designations under other deferral agreements or plans of the Company will remain unaffected.

(c) **Default Beneficiary.** In the event that a Participant does not designate a beneficiary, or no designated beneficiary survives the Participant, the Participant's beneficiary shall be the Participant's surviving spouse, if the Participant is married at the time of his or her death and not subject to a court-approved agreement or court decree of separation, or otherwise the person or persons designated to receive benefits on account of the Participant's death under the ML & Co. Basic Group Life Insurance Plan (the "Life Insurance Plan"). However, if an unmarried Participant does not have coverage in effect under the Life Insurance Plan, or the Participant has assigned his or her death benefit under the Life Insurance Plan, any amounts payable to the Participant's beneficiary under the Plan will be paid to the Participant's estate.

(d) **If the Beneficiary Dies During Payment.** If a beneficiary who is receiving or is entitled to receive payments hereunder dies after the Participant dies, but before all the payments have been made, the portion of the Account Balance to which that beneficiary was entitled will be paid as soon as practicable in one lump sum to such beneficiary's estate and not to any contingent beneficiary the Participant may have designated.

**5.5 Distributions Upon Unforeseeable Emergency.**

ML & Co. has the sole discretion, but shall not be required, to pay to the Participant, on such terms and conditions as the Administrator may establish, such part or all of the Participant's Account Balance as the Administrator determines, based upon substantial evidence submitted by the

11

Participant, is necessary to alleviate an unforeseeable emergency of the Participant. An unforeseeable emergency is defined as a severe financial hardship to the Participant (i) resulting from an illness or accident of the Participant, the Participant's spouse, or a dependent (as defined in section 152(a) of the Code, (ii) loss of the Participant's property due to casualty, or (iii) other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the Participant. The amount of the distribution shall not exceed the amount needed to satisfy the emergency plus taxes reasonably anticipated as a result of the distribution. A distribution shall not be allowed to the extent that the hardship may be relieved through reimbursement or compensation by insurance or otherwise, or by liquidation of the Participant's assets (to the extent such liquidation would not itself cause a severe financial hardship). Such payment will be made only at the Participant's written request and with the express approval of the Administrator and will be made on the date selected by the Administrator in his or her sole discretion. The balance of the Account, if any, will continue to be governed by the terms of this Plan.

**5.6    Domestic Relations Orders.**

Notwithstanding the Participant's elections hereunder, ML & Co. will pay to, or to the Participant for the benefit of, the Participant's spouse or former spouse the portion of the Participant's Account Balance specified in a valid court order entered in a domestic relations proceeding involving the Participant's divorce or legal separation. Such payment will be made in a lump sum and net of any amounts the Company may be required to withhold under applicable federal, state or local law. After such payment, references herein to the Participant's "Deferred Amounts" (except for purposes of determining the Annual Charge applicable to any remaining Account Balance) shall mean the Participant's original Deferred Amounts times an amount equal to one minus a fraction, the numerator of which is the gross amount (prior to withholding) paid pursuant to the order, and the denominator of which is the Participant's Account Balance immediately prior to payment.

**5.7    No Actions Permitted that Would Cause Constructive Receipt or Violate Section 409A of the Code.**

Notwithstanding any provision of the Plan to the contrary, no deferral election, payment election, modification of any election under the Plan or other action with respect to the Plan shall be permitted to the extent that such election, modification or other action would violate any requirement of section 409A of the Code or would cause any Participant or Beneficiary to be in constructive receipt of any amount hereunder.

**ARTICLE VI**
**ADMINISTRATION OF THE PLAN**

**6.1    Powers of the Administrator.**

The Administrator has full power and authority to interpret, construe and administer this Plan so as to ensure that it provides deferred compensation for the Participants as members of a select group of management or highly compensated employees within the meaning of Title I of ERISA. The Administrator's interpretations and construction hereof, and actions hereunder, including any determinations regarding the amount or recipient of any payments, will be binding and conclusive on all persons for all purposes. The Administrator will not be liable to any person for any action taken or omitted in connection with the interpretation and administration of this Plan unless attributable to his or her willful misconduct or lack of good faith. The Administrator may designate persons to carry out the specified responsibilities of the Administrator and shall not be liable for any act or omission of a person as designated.

12

**6.2  Grantor Trust.**

**Creation of Trust.** The Administrator shall be empowered (but shall not be required) to create a grantor trust to hold assets representing the amounts deferred under this Plan on such terms and conditions as the Administrator shall approve. The trustee of the grantor trust shall be a party unaffiliated with the Company.

**6.3  Payments on Behalf of an Incompetent.**

If the Administrator finds that any person who is entitled to any payment hereunder is a minor or is unable to care for his or her affairs because of disability or incompetency, payment of the Account Balance may be made to anyone found by the Administrator to be the committee or other authorized representative of such person, or to be otherwise entitled to such payment, in the manner and under the conditions that the Administrator determines. Such payment will be a complete discharge of the liabilities of ML & Co. hereunder with respect to the amounts so paid.

**6.4  No Right of Set-Off.**

Unless specifically authorized by a Participant, the Company shall have no right of set-off with respect to any Participant's Account Balances or Account under the Plan and unless so authorized, the Company shall not withhold any sums owed to a Participant under the Plan.

**6.5  Corporate Books and Records Controlling.**

The books and records of the Company will be controlling in the event that a question arises hereunder concerning the amount of Adjusted Compensation, Incentive Compensation, Sign-On Bonus, Eligible Compensation, the Deferred Amounts, the Account Balance, the designation of a beneficiary, or any other matters.

**ARTICLE VII**
**MISCELLANEOUS PROVISIONS**

**7.1  Litigation.**

The Company shall have the right to contest, at its expense, any ruling or decision, administrative or judicial, on an issue that is related to the Plan and that the Administrator believes to be important to Participants, and to conduct any such contest or any litigation arising therefrom to a final decision.

**7.2  Headings Are Not Controlling.**

The headings contained in this Plan are for convenience only and will not control or affect the meaning or construction of any of the terms or provisions of this Plan.

**7.3  Governing Law.**

To the extent not preempted by applicable U.S. Federal law, this Plan will be construed in accordance with and governed by the laws of the State of New York as to all matters, including, but not limited to, matters of validity, construction, and performance.

13

**7.4   Amendment and Termination.**

   ML & Co., through the Administrator, reserves the right to amend or terminate this Plan at any time, except that no such amendment or termination shall adversely affect the right of a Participant to his or her Account Balance (as reduced by the Annual Charge or the Debit Balance, as set forth in Section 3.4) as of the date of such amendment or termination.

14

Exhibit 12

Exhibit 12

**MERRILL LYNCH & CO., INC. AND SUBSIDIARIES**
**COMPUTATION OF RATIOS OF EARNINGS TO FIXED CHARGES AND**
**COMBINED FIXED CHARGES AND PREFERRED STOCK DIVIDENDS**
(dollars in millions)

| | Year Ended Last Friday in December | | | | |
|---|---|---|---|---|---|
| | **2006** (52 weeks) | **2005** (52 weeks) | **2004** (53 weeks) | **2003** (52 weeks) | **2002** (52 weeks) |
| Pre-tax earnings(a) | $ 9,929 | $ 6,814 | $ 5,436 | $ 5,040 | $ 2,343 |
| Add: Fixed charges (excluding capitalized interest and preferred security dividend requirements of subsidiaries) | 36,080 | 21,967 | 10,734 | 8,195 | 10,164 |
| Pre-tax earnings before fixed charges | 46,009 | 28,781 | 16,170 | 13,235 | 12,507 |
| Fixed charges: | | | | | |
| Interest | 35,860 | 21,752 | 10,530 | 8,003 | 9,958 |
| Other(b) | 221 | 215 | 204 | 193 | 206 |
| Total fixed charges | 36,081 | 21,967 | 10,734 | 8,196 | 10,164 |
| Preferred stock dividend requirements | 261 | 100 | 54 | 52 | 51 |
| Total combined fixed charges and preferred stock dividends | $ 36,342 | $ 22,067 | $ 10,788 | $ 8,248 | $ 10,215 |
| **Ratio of earnings to fixed charges** | **1.28** | **1.31** | **1.51** | **1.61** | **1.23** |
| **Ratio of earnings to combined fixed charges and preferred stock dividends** | **1.27** | **1.30** | **1.50** | **1.60** | **1.22** |

(a)   Excludes undistributed earnings (loss) from equity investments.

(b)   Other fixed charges consist of the interest factor in rentals, amortization of debt issuance costs, preferred security dividend requirements of subsidiaries, and capitalized interest.

**Exhibit 21**

Exhibit 21

Subsidiaries of the Registrant

The following are subsidiaries of ML & Co. as of December 29, 2006 and the states or jurisdictions in which they are organized. Indentation indicates the principal parent of each subsidiary. Except as otherwise specified, in each case ML & Co. owns, directly or indirectly, at least 99% of the voting securities of each subsidiary. The names of particular subsidiaries have been omitted because, considered in the aggregate as a single subsidiary, they would not constitute, as of the end of the year covered by this report, a "significant subsidiary" as that term is defined in Rule 1.02(w) of Regulation S-X under the Securities Exchange Act of 1934.

| Name | State or Jurisdiction of Entity |
| --- | --- |
| Merrill Lynch & Co., Inc. | Delaware |
|     Merrill Lynch, Pierce, Fenner & Smith Incorporated[1] | Delaware |
|         Merrill Lynch Life Agency Inc.[2] | Washington |
|         Merrill Lynch Professional Clearing Corp.[3] | Delaware |
|         Merrill Lynch Singapore Commodities Pte. Ltd. | Singapore |
|         ML Petrie Parkman Co., Inc. | Delaware |
|     Merrill Lynch Capital Services, Inc. | Delaware |
|         Merrill Lynch Commodities, Inc. | Delaware |
|     Merrill Lynch Government Securities Inc. | Delaware |
|         Merrill Lynch Money Markets Inc. | Delaware |
|     Merrill Lynch Group, Inc. | Delaware |
|         Investor Protection Insurance Company | Vermont |
|         Merrill Lynch Credit Reinsurance Limited | Bermuda |
|         FAM Distributors, Inc. | Delaware |
|         Merrill Lynch Investment Holdings (Mauritius) Limited[4] | Mauritius |
|             Merrill Lynch (Mauritius) Investments Limited | Mauritius |
|             DSP Merrill Lynch Limited[5] | Mumbai, India |
|                 DSP Merrill Lynch Capital Limited | Mumbai, India |
|                 DSP Merrill Lynch Securities Trading Limited | Mumbai, India |
|                 DSP Merrill Lynch Trust Services Limited | Mumbai, India |
|     ML Invest, Inc. | Delaware |
|         Merrill Lynch Investment Managers Group Services Limited | England |
|         Merrill Lynch Investment Managers (Finance) Limited | England |
|             Merrill Lynch Investment Managers Holdings B.V. | Netherlands |
|         Merrill Lynch Portfolio Managers Limited | England |
|     Merrill Lynch Bank & Trust Co., FSB | Federal |
|         Merrill Lynch Mortgage and Investment Corporation[6] | Delaware |
|             Merrill Lynch Community Development Company, LLC | New Jersey |
|         Merrill Lynch Credit Corporation | Delaware |
|         ML Mortgage Holdings Inc. | Delaware |
|     Merrill Lynch Bank USA | Utah |
|         Financial Data Services, Inc. | Florida |
|         Merrill Lynch Business Financial Services Inc.[7] | Delaware |

---

[1] Also conducts business under the name "Merrill Lynch & Co."

[2] Similarly named affiliates and subsidiaries that engage in the sale of insurance and annuity products are incorporated in various other jurisdictions.

[3] The preferred stock of the corporation is owned by an unaffiliated group of investors.

[4] Merrill Lynch Group, Inc. and Merrill Lynch International Incorporated each hold fifty percent of this entity.

[5] Partially held by another indirect subsidiary of ML & Co.

[6] 13.2% of this entity is held by Merrill Lynch Bank USA.

[7] Also conducts business under the name "Merrill Lynch Capital."

| Name | State or Jurisdiction of Entity |
|---|---|
| Merrill Lynch Commercial Finance Corp. | Delaware |
| Merrill Lynch Utah Investment Corporation | Utah |
| ML Private Finance LLC | Delaware |
| MLBUSA Community Development Corp. | Delaware |
| MLBUSA Funding Corporation | Delaware |
| Merrill Lynch NJ Investment Corporation | New Jersey |
| Merrill Lynch Insurance Group, Inc. | Delaware |
| Merrill Lynch Insurance Group Services, Inc. | Delaware |
| Merrill Lynch Life Insurance Company | Arkansas |
| ML Life Insurance Company of New York | New York |
| Roszel Advisors, LLC | Delaware |
| Merrill Lynch European Asset Holdings Inc. | Delaware |
| Merrill Lynch Group Holdings Limited | Ireland |
| Merrill Lynch International Bank Limited[8] | Ireland |
| Majestic Acquisitions Limited | England |
| Mortgage Holdings Limited | England |
| Mortgages plc | England |
| Mortgages 1 Limited | England |
| Merrill Lynch Bank (Suisse) S.A. | Switzerland |
| Merrill Lynch Diversified Investments, LLC | Delaware |
| Merrill Lynch Credit Products, LLC | Delaware |
| Merrill Lynch Mortgage Capital Inc. | Delaware |
| Merrill Lynch Mortgage Lending, Inc. | Delaware |
| Wilshire Credit Corporation | Delaware |
| MLDP Holdings, Inc. | Delaware |
| Merrill Lynch Derivative Products AG | Switzerland |
| ML IBK Positions, Inc. | Delaware |
| Merrill Lynch PCG, Inc. | Delaware |
| Merrill Lynch Capital Corporation | Delaware |
| ML Leasing Equipment Corp.[9] | Delaware |
| Merrill Lynch Canada Holdings Company | Nova Scotia, Canada |
| Merrill Lynch Canada Finance Company[10] | Nova Scotia, Canada |
| Merrill Lynch & Co., Canada Ltd. | Ontario, Canada |
| Merrill Lynch Financial Assets Inc. | Canada |
| Merrill Lynch Canada Inc.[11] | Canada |
| Merrill Lynch International Incorporated | Delaware |
| Merrill Lynch Futures Asia Limited | Taiwan |
| Merrill Lynch Futures (Hong Kong) Limited | Hong Kong |
| Merrill Lynch Reinsurance Solutions LTD | Bermuda |
| Merrill Lynch (Australasia) Pty. Ltd. | New South Wales, Australia |
| Merrill Lynch Finance (Australia) Pty Limited | Victoria, Australia |
| Merrill Lynch Markets (Australia) Pty Limited | New South Wales, Australia |
| Equity Margins Ltd. | Victoria, Australia |
| Merrill Lynch (Australia) Pty Ltd | New South Wales, Australia |
| Merrill Lynch Equities (Australia) Limited | Victoria, Australia |

---

[8]  Held through several intermediate holding companies.
[9]  This corporation has 20 direct or indirect subsidiaries operating in the United States and serving as either general partners or associate general partners of limited partnerships.
[10]  Held through several intermediate holding companies.
[11]  Held through several intermediate holding companies.

| Name | State or Jurisdiction of Entity |
|------|-------------------------------|
| Merrill Lynch Private (Australia) Limited | New South Wales, Australia |
| Berndale Securities Limited | Victoria, Australia |
| Merrill Lynch (Australia) Nominees Pty. Limited | New South Wales, Australia |
| Merrill Lynch International (Australia) Limited | New South Wales, Australia |
| Merrill Lynch (Australia) Futures Limited | New South Wales, Australia |
| Merrill Lynch Japan Securities Co., Ltd. | Japan |
| Merrill Lynch Japan Finance Co., Ltd. | Japan |
| Merrill Lynch International Holdings Inc. | Delaware |
| Merrill Lynch France SAS | France |
| Merrill Lynch Capital Markets (France) SAS | France |
| Merrill Lynch, Pierce, Fenner & Smith SAS | France |
| Merrill Lynch Mexico, S.A. de C.V., Casa de Bolsa | Mexico |
| PT Merrill Lynch Indonesia[12] | Indonesia |
| Merrill Lynch (Asia Pacific) Limited | Hong Kong |
| Merrill Lynch Far East Limited | Hong Kong |
| ML Cayman Holdings Inc. | Cayman Islands, British West Indies |
| Merrill Lynch Bank and Trust Company (Cayman) Limited | Cayman Islands, British West Indies |
| Institucion Financiera Externa Merrill Lynch Bank Uruguay S.A. | Uruguay |
| Merrill Lynch Espanola Agencia de Valores S.A. | Spain |
| Merrill Lynch Capital Markets AG[13] | Switzerland |
| Merrill Lynch Europe PLC | England |
| Merrill Lynch, Pierce, Fenner & Smith Limited | England |
| Merrill Lynch Global Asset Management Limited | England |
| ML UK Capital Holdings[14] | England |
| Merrill Lynch International[15] | England |
| Merrill Lynch Europe Intermediate Holdings | England |
| Merrill Lynch Capital Markets Espana S.A., S.V. | Spain |
| Merrill Lynch Holdings Limited | England |
| Merrill Lynch Commodities (Europe) Holdings Limited | England |
| Merrill Lynch Commodities (Europe) Limited | England |
| Merrill Lynch Commodities (Europe) Trading Limited | England |
| Merrill Lynch Commodities GmbH | England |
| Merrill Lynch (Singapore) Pte. Ltd.[16] | Singapore |
| Merrill Lynch South Africa (Proprietary) Limited[17] | South Africa |
| Merrill Lynch Argentina S.A.[18] | Argentina |
| Merrill Lynch, Pierce, Fenner & Smith de Argentina | Argentina |

---

[12] Merrill Lynch International Holdings Inc. has an 80% stake in this entity through a joint venture.
[13] Also conducts business under the names "Merrill Lynch Capital Markets S.A." and "Merrill Lynch Capital Markets Ltd."
[14] Held through several intermediate holding companies.
[15] Partially owned by another indirect subsidiary of ML & Co.
[16] Held through intermediate subsidiaries.
[17] Held through intermediate subsidiaries.
[18] Partially owned by another direct subsidiary of ML & Co.

| Name | State or Jurisdiction of Entity |
|---|---|
| Sociedad Anonima, Financiera, Mobiliaria y de Mandatos[19] | |
| Banco Merrill Lynch de Investimentos S.A.[20] | Brazil |
|    Merrill Lynch S.A. Corretora de Titulos e Valores Mobiliarios | Brazil |
| Merrill Lynch S.A. | Luxembourg |
| Merrill Lynch Europe Ltd. | Cayman Islands, British West Indies |
| Herzog, Heine, Geduld, LLC | Delaware |
| Merrill Lynch Financial Markets, Inc. | Delaware |
| The Princeton Retirement Group, Inc. | Delaware |

---

[19] Partially owned by another direct subsidiary of ML & Co.
[20] Partially owned by another direct subsidiary of ML & Co.

Exhibit 23

EXHIBIT 23

**CONSENT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM**

We consent to the incorporation by reference in the following Registration Statements of Merrill Lynch & Co., Inc. and subsidiaries ("Merrill Lynch") of our reports dated February 26, 2007, relating to the consolidated financial statements of Merrill Lynch (which report expressed an unqualified opinion on those financial statements and included an explanatory paragraph regarding the change in accounting method in 2006 for share-based payments to conform to Statement of Financial Accounting Standards No. 123 (revised 2004), *Share-Based Payment*), the related financial statement schedule, management's report of the effectiveness of internal control over financial reporting, the information set forth in Exhibit 12 under the captions "Ratio of Earnings to Fixed Charges" and "Ratio of Earnings to Combined Fixed Charges and Preferred Stock Dividends," and the information set forth in the "Selected Financial Data" table under the captions "Results of Operations," "Financial Position" and "Common Share Data," included in and incorporated by reference in this Annual Report on Form 10-K of Merrill Lynch for the year ended December 29, 2006.

Filed on Form S-8:

Registration Statement No. 33-41942 (1986 Employee Stock Purchase Plan)

Registration Statement No. 33-17908 (Incentive Equity Purchase Plan)

Registration Statement No. 33-33336 (Long-Term Incentive Compensation Plan)

Registration Statement No. 33-51831 (Long-Term Incentive Compensation Plan)

Registration Statement No. 33-51829 (401(k) Savings and Investment Plan)

Registration Statement No. 33-54154 (Non-Employee Directors' Equity Plan)

Registration Statement No. 33-54572 (401(k) Savings and Investment Plan
(Puerto Rico))

Registration Statement No. 33-56427 (Amended and Restated 1994 Deferred
Compensation Plan for a Select Group of Eligible Employees)

Registration Statement No. 33-55155 (1995 Deferred Compensation Plan
for a Select Group of Eligible Employees)

Registration Statement No. 33-60989 (1996 Deferred Compensation Plan
for a Select Group of Eligible Employees)

Registration Statement No. 333-00863 (401(k) Savings & Investment Plan)

Registration Statement No. 333-09779 (1997 Deferred Compensation Plan
for a Select Group of Eligible Employees)

Registration Statement No. 333-13367 (Restricted Stock Plan for Former

Employees of Hotchkis and Wiley)

Registration Statement No. 333-15009 (1997 KECALP Deferred Compensation
Plan for a Select Group of Eligible Employees)

Registration Statement No. 333-17099 (Deferred Unit and Stock Unit Plan
for Non-Employee Directors)

Registration Statement No. 333-18915 (Long-Term Incentive Compensation Plan for
Managers and Producers)

Registration Statement No. 333-32209 (1998 Deferred Compensation Plan
for a Select Group of Eligible Employees)

Registration Statement No. 333-33125 (Employee Stock Purchase Plan for Employees
of Merrill Lynch Partnerships)

Registration Statement No. 333-41425 (401(k) Savings & Investment Plan)

Registration Statement No. 333-56291 (Long-Term Incentive Compensation Plan for
Managers and Producers)

Registration Statement No. 333-60211 (1999 Deferred Compensation Plan
for a Select Group of Eligible Employees)

Registration Statement No. 333-62311 (Replacement Options; Midland Walwyn Inc.)

Registration Statement No. 333-85421 (401(k) Savings and Investment Plan)

Registration Statement No. 333-85423 (2000 Deferred Compensation Plan
For a Select Group of Eligible Employees)

Registration Statement No. 333-92663 (Long-Term Incentive Compensation Plan for Managers and Producers)

Registration Statement No. 333-44912 (2001 Deferred Compensation Plan for a Select Group of Eligible Employees)

Registration Statement No. 333-64676 (1986 Employee Stock Purchase Plan)

Registration Statement No. 333-64674 (Long-Term Incentive Compensation Plan for Managers and Producers)

Registration Statement No. 333-68330 (2002 Deferred Compensation Plan for a Select Group of Eligible Employees)

Registration Statement No. 333-99105 (2003 Deferred Compensation Plan for a Select Group of Eligible Employees)

Registration Statement No. 333-108296 (2004 Deferred Compensation Plan for a Select Group of Eligible Employees)

Registration Statement No. 333-109236 (Employee Stock Compensation Plan)

Registration Statement No. 333-118615 (2005 Deferred Compensation Plan for a Select Group of Eligible Employees)

Registration Statement No. 333-125109 (2006 Deferred Compensation Plan for a Select Group of Eligible Employees)

Registration Statement No. 333-125181 (Deferred Stock Unit Plan for Non-Employees)

Registration Statement No. 333-134065 (2007 Deferred Compensation Plan for a Select Group of Eligible Employees)

Filed on Form S-3:

Debt Securities, Warrants, Common Stock, Preferred Securities, and/or Depositary Shares:

Registration Statement No. 33-54218

Registration Statement No. 2-78338

Registration Statement No. 2-89519

Registration Statement No. 2-83477

Registration Statement No. 33-03602

Registration Statement No. 33-17965

Registration Statement No. 33-27512

Registration Statement No. 33-33335

Registration Statement No. 33-35456

Registration Statement No. 33-42041

Registration Statement No. 33-45327

Registration Statement No. 33-45777

Registration Statement No. 33-49947

Registration Statement No. 33-51489

Registration Statement No. 33-52647

Registration Statement No. 33-55363

Registration Statement No. 33-60413

Registration Statement No. 33-61559

Registration Statement No. 33-65135

Registration Statement No. 333-13649

Registration Statement No. 333-16603

Registration Statement No. 333-20137

Registration Statement No. 333-25255

Registration Statement No. 333-28537

Registration Statement No. 333-42859

Registration Statement No. 333-44173

Registration Statement No. 333-59997

Registration Statement No. 333-68747

Registration Statement No. 333-38792

Registration Statement No. 333-52822

Registration Statement No. 333-83374

Registration Statement No. 333-97937

Registration Statement No. 333-105098

Registration Statement No. 333-109802

Registration Statement No. 333-122639

Registration Statement No. 333-132911

Medium Term Notes:

Registration Statement No. 2-96315

Registration Statement No. 33-03079

Registration Statement No. 33-05125

Registration Statement No. 33-09910

Registration Statement No. 33-16165

Registration Statement No. 33-19820

Registration Statement No. 33-23605

Registration Statement No. 33-27549

Registration Statement No. 33-38879

Other Securities:

Registration Statement No. 333-02275 (Long-Term Incentive Compensation Plan)

Registration Statement No. 333-24889 (Long-Term Incentive Compensation Plan, and Long-Term Incentive Compensation Plan for Managers and Producers)

Registration Statement No. 333-36651 (Hotchkis and Wiley Resale)

Registration Statement No. 333-59263 (Exchangeable Shares of Merrill Lynch & Co., Canada Ltd. re: Midland Walwyn Inc.)

Registration Statement No. 333-67903 (Howard Johnson & Company Resale)

Registration Statement No. 333-45880 (Herzog, Heine, Geduld, Inc. Resale)

/s/ Deloitte & Touche LLP

New York, New York
February 26, 2007

**Exhibit 31.1**

Exhibit 31.1

**CERTIFICATION**

I, E. Stanley O'Neal, certify that:

1.  I have reviewed this annual report on Form 10-K for the fiscal year ended December 29, 2006 of Merrill Lynch & Co., Inc.;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.  The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    (a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    (b)  Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    (c)  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    (d)  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    (a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    (b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: February 26, 2007

/s/ E. Stanley O'Neal
E. Stanley O'Neal
Chairman of the Board and
Chief Executive Officer

Exhibit 31.2

Exhibit 31.2

## CERTIFICATION

I, Jeffrey N. Edwards, certify that:

1.   I have reviewed this annual report on Form 10-K for the fiscal year ended December 29, 2006 of Merrill Lynch & Co., Inc.;

2.   Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.   Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.   The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

   (a)   Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

   (b)   Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

   (c)   Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

   (d)   Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.   The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   (a)   All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   (b)   Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: February 26, 2007

/s/ Jeffrey N. Edwards
Jeffrey N. Edwards
Senior Vice President and
Chief Financial Officer

# Exhibit 32.1

Exhibit 32.1

**CERTIFICATION PURSUANT TO**
**18 U.S.C. SECTION 1350,**
**AS ADOPTED PURSUANT TO**
**SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

In connection with the Annual Report of Merrill Lynch & Co., Inc. (the "Company") on Form 10-K for the period ended December 29, 2006 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, E. Stanley O'Neal, Chairman of the Board and Chief Executive Officer of the Company, certify, pursuant to 18 U.S.C. section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that:

(1)    The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)    The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: February 26, 2007

/s/ E. Stanley O'Neal
E. Stanley O'Neal
Chairman of the Board and
Chief Executive Officer

Exhibit 32.2

Exhibit 32.2

**CERTIFICATION PURSUANT TO**
**18 U.S.C. SECTION 1350,**
**AS ADOPTED PURSUANT TO**
**SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

In connection with the Annual Report of Merrill Lynch & Co., Inc. (the "Company") on Form 10-K for the period ended December 29, 2006 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I, Jeffrey N. Edwards, Senior Vice President and Chief Financial Officer of the Company, certify, pursuant to 18 U.S.C. section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that:

(1)   The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)   The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: February 26, 2007

/s/ Jeffrey N. Edwards
Jeffrey N. Edwards
Senior Vice President and
Chief Financial Officer

# Exhibit 99.1

**Merrill Lynch & Co., Inc.**                                                                 Exhibit 99.1

**Reconciliation of Non-GAAP Measures**

Merrill Lynch adopted Statement of Financial Accounting Standards No. 123 (as revised in 2004) for stock-based employee compensation during the first quarter of 2006. Additionally, as a result of a comprehensive review of the retirement provisions in its stock-based compensation plans, Merrill Lynch also modified the retirement eligibility requirements of existing stock awards in order to facilitate transition to more stringent retirement eligibility requirements for future stock awards. These modifications and the adoption of the new accounting standard required Merrill Lynch to accelerate the recognition of compensation expenses for affected stock awards, resulting in the "one-time compensation expenses." These changes represent timing differences and are not economic in substance.

During the third quarter of 2006, Merrill Lynch completed the merger of its Merrill Lynch Investment Managers business with BlackRock, Inc. Merrill Lynch recognized a gain associated with this merger along with other non-recurring expenses, collectively "Impact of BlackRock Merger".

Management believes that while the results excluding these one-time compensation expenses and the impact of the BlackRock merger are considered non-GAAP measures, they depict the operating performance of the company more clearly and enable more appropriate period-to-period comparisons.

**Earnings Summary**

| (in millions, except per share amounts) | For the Year Ended December 29, 2006[1] | | | |
|---|---|---|---|---|
| | Excluding One-time Compensation Expenses & Impact of BlackRock Merger | Impact of One-time Compensation Expenses | Impact of BlackRock Merger | GAAP Basis |
| **Net Revenues (a)** | $  32,690 | $  — | $  1,969 | $  34,659 |
| **Non-Interest Expenses** | | | | |
| Compensation and benefits (b) | 15,100 | 1,759 | 144 | 17,003 |
| Non-compensation expenses (c) | 7,172 | — | 58 | 7,230 |
| **Total Non-Interest Expenses** | 22,272 | 1,759 | 202 | 24,233 |
| **Earnings Before Income Taxes (d)** | 10,418 | (1,759) | 1,767 | 10,426 |
| Income Tax Expense (e) | 2,847 | (582) | 662 | 2,927 |
| **Net Earnings** | $  7,571 | $  (1,177) | $  1,105 | $  7,499 |
| **Preferred Stock Dividends** | $  188 | $  — | $  — | $  188 |
| **Net Earnings Applicable to Common Stockholders** | $  7,383 | $  (1,177) | $  1,105 | $  7,311 |
| **Earnings Per Common Share** | | | | |
| Basic | $  8.52 | $  (1.37)[2] | $  1.27[2] | $  8.42 |
| Diluted | $  7.68 | $  (1.23)[2] | $  1.14[2] | $  7.59 |
| **Average Shares Used in Computing Earnings Per Common Share** | | | | |
| Basic | 866.7 | 1.4 | — | 868.1 |
| Diluted | 961.5 | 1.5 | — | 963.0 |

**Financial Ratios**

| | | For the Year Ended[1] December 29, 2006 | |
| --- | --- | --- | --- |
| | | Excluding One-time Compensation Expenses & Impact of BlackRock Merger | GAAP Basis |
| Ratio of compensation and benefits to net revenues (b)/(a) | | 46.2% | 49.1% |
| Ratio of non-compensation expenses to net revenues (c)/(a) | | 21.9% | 20.9% |
| Effective Tax Rate (e)/(d) | | 27.3% | 28.1% |
| Pre-tax Profit Margin (d)/(a) | | 31.9% | 30.1% |
| Average Common Equity | $ | 34,354 | $ 34,354 |
| Impact of one-time compensation expenses and the BlackRock merger | | (130) | — |
| Average Common Equity | | 34,224 | 34,354 |
| **Return on Average Common Equity** | | **21.6%** | **21.3%** |

_____

(1) For purposes of comparison with previously published results, data excluding the impact of the one-time compensation expenses and the BlackRock merger assumes the impact is limited to the first and third quarter of 2006, respectively.

(2) EPS calculated using weighted average shares for the year.