## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re MERRILL LYNCH & CO, INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION** | **Master File No. 07cv9633 (LBS)(AJP)(DFE)** |

---

**This Document Relates to:**

| | |
|---|---|
| **Derivative Action 07cv9696(LBS)(AJP)(DFE) and N.A. Lambrecht v. O'Neal et al 08cv6582 (LBS)(AJP)(DFE)** | **Civil Action No. 08cv6582 (LBS)(AJP)(DFE)** |

---

## PLAINTIFF LAMBRECHT'S OBJECTION TO THAT PORTION OF THE CONSOLIDATION ORDER OFMARCH 12, 2008 WITH RESPECT TO LEADERSHIP OF THE DERIVATIVE ACTIONS

## TABLE OF CONTENTS

**Background**…………………………………………………………..1

**Plaintiff Lambrecht's "Demand Made" Case is
Legally and Factually Distinct from the Previously
Filed "Demand Futile" Cases**…………………………………………4

**Material Differences Between "Demand Made"
and "Demand Futile" Cases Render Them
Inappropriate for Consolidation**…………………………………………7

**The Consolidated Derivative Complaint  Does
Not Comply With The Demand Requirements of Rule 23.1**…………………12

**There is no PSLRA-Related Requirement for a
Lead Plaintiff in Derivative Litigation**……………………………………14

**The Number of Co-Lead Counsel**……………………………………15

**Merrill Lynch's Views on the Issues Presented are not Relevant**……………16

**Contemporaneous Time and Expense Reports
Should Be Submitted to Lead Counsel Monthly**…………………………17

**Conclusion**…………………………………………………………..18

**Certificate of Service**………………………………………………20

## <u>PLAINTIFF LAMBRECHT'S OBJECTION TO THAT PORTION OF THE CONSOLIDATION ORDER OFMARCH 12, 2008 WITH RESPECT TO LEADERSHIP OF THE DERIVATIVE ACTIONS</u>

### <u>Background</u>

Plaintiff N.A. Lambrecht objects to the nature of the consolidation of her shareholder's derivative Complaint with and as part of the Consolidated Derivative Action (and the Consolidated Derivative Complaint therein) and other provisions of the Court's Order of March 12, 2008 (the "Order"). Plaintiff's objection is based on the simple, but exceedingly important fact, that her circumstances are legally distinct from those of the other derivative plaintiffs, notwithstanding the fact that all of the derivative actions are based upon the same nucleus of operative facts. For this reason, plaintiff Lambrecht does not oppose the coordinated prosecution and defense of the derivative claims generally, as more fully explained below.

Unlike the three pre-existing plaintiffs whose counsel failed to make pre-suit demands as required by Federal Rule of Civil Procedure 23.1 and could not provide adequate reasons why they did not do so when demand was clearly warranted,[1] plaintiff did so and did it professionally and with full notice to the Board of Directors of Nominal Defendant, Merrill Lynch & Co., Inc. ("Merrill Lynch"). A copy of the letter sent to Merrill Lynch's Board by one of plaintiff

---

[1] The Consolidated Derivative Complaint is the subject of a pending Motion to Dismiss principally due to the fact that plaintiffs' various counsel in the three derivative cases could have followed Rule 23.1, but chose not to, and instead filed suit first and decided to deal with the consequences later, as they now must do. Their Consolidated

1

Lambrecht's counsel, Richard D. Greenfield, Esquire, on January 22, 2008 is

attached as an exhibit to her Complaint and submitted herewith as Exhibit "A."

As indicated above, there are pending three "demand futile" derivative

cases. Plaintiffs' counsel in those cases have self-organized and, *de facto*, have

consented to the consolidation of the various related derivative cases encompassed

by the Order. These three law firms have designated themselves as an "Executive

Committee" in the Derivative Actions with the firm of Brower Piven designated as

Liaison Counsel. The Court "So Ordered" counsel's designations as one part of the

more comprehensive Order which, *inter alia*, consolidated related securities,

ERISA and derivative cases.

On August 1, 2008, pursuant to ¶20 of the Order, counsel for Nominal

Defendant Merrill Lynch & Co., Inc., provided a copy of the Order to plaintiff

Lambrecht's counsel. Paragraph 20 of the Order states:

> Each new case that arises out of the subject matter of either the
> Securities Action, the Derivative Action or the ERISA Action which
> is filed in, or transferred to, this Court, shall be consolidated with the
> Securities Action, the Derivative Action or the ERISA Action, as
> appropriate, and this Order shall apply thereto, unless a party objects
> to consolidation, as provided for herein, or any provision of this
> Order, within ten (10) days after the date upon which a copy of this
> Order is served on counsel for such party, by filing an application for
> relief and this Court deems it appropriate to grant such application.

---

Complaint is thus vulnerable to immediate dismissability on this ground alone, while the *Lambrecht* Complaint is
not.

By the instant filing, for the reasons stated below, plaintiff Lambrecht objects to the consolidation of her derivative action with the actions of the three other derivative plaintiffs who failed to make pre-suit demands under and pursuant to Rule 23.1 (the "Demand Futile Plaintiffs"), which actions are vulnerable to summary dismissal, and objects, in particular, to the leadership structure approved by the Court as set forth at ¶5 of the Order.

The significance of plaintiff Lambrecht's written demands on Merrill Lynch's Board cannot be minimized, as set forth more fully in the Motion to Dismiss addressed to the Consolidated Derivative Complaint referred to below. Having taken a wholly diverse position as to whether Merrill Lynch's Board should have been, in the first instance, given the opportunity to act on a shareholder's demands or not, plaintiff Lambrecht proceeds to litigate this case on a much stronger foundation than the three "Demand Futile Plaintiffs." In addition, because of the plaintiffs' material differences in strategic approaches to the claims being asserted derivatively, plaintiff Lambrecht cannot properly consent to her Complaint being swallowed up by the highly vulnerable Consolidated Derivative Complaint or being, *de facto*, represented or even lead by the self-designated "Executive Committee."

**Plaintiff Lambrecht's "Demand Made" Case is Legally and**
**Factually Distinct from the Previously Filed "Demand Futile" Cases**

Although all presently filed actions implicated by this motion are derivative actions asserted on behalf of Merrill Lynch against, among others, certain of its directors and officers. Plaintiff Lambrecht's "Demand Made" case raises completely different core legal issues, with a different factual focus from those raised in the three previously existing cases. This fundamental difference stems from the fact that the "Demand Futile" Consolidated Derivative Complaint states that no pre-suit demand was made upon Merrill Lynch's Board, while Plaintiff Lambrecht made the pre-suit demands required by Rule 23.1, which demands were subsequently wrongfully refused by the Board. Under Delaware law, which is the state of Merrill Lynch's incorporation:

> The focus of a complaint alleging wrongful refusal of demand is different from the focus of a complaint alleging demand futility. The legal issues are different; therefore, the legal standards applied to the complaints are necessarily different. A shareholder plaintiff, by making demand upon a board before filing suit, "tacitly concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation." *Spiegel v. Buntrock,* 571 A.2d 767, 777 (Del. 1990). When a shareholder files a derivative suit asserting a claim of demand futility, hence demand excused, the basis for such a claim is that the board is (1) interested and not independent; and (2) that the transaction attacked is not protected by the business judgment rule. *Aronson v. Lewis,* 473 A.2d 805, 814 (Del. 1984).

4

*Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991); *see also Grobow v. Perot,* 1988 De. Ch. LEXIS 152 at *10-11 (Del. Ch. November 25, 1988) (pivotal focus in demand excused case is the claimed wrongfulness of the underlying challenged transaction, while in demand refused action, focus in on wrongfulness of response to stockholder demand). "Demand Made" cases necessarily focus on the wrongful nature of a Board decision **that is not even at issue** in the three pre-existing "Demand Futile" cases, namely the Merrill Lynch Board's decision to reject pre-suit demands made by shareholders of Merrill Lynch.

It should be noted that plaintiff Lambrecht's Demand letter, specifically disclaimed the purported independence or disinterestedness of Merrill Lynch's Board:

> The demands made herein and the fact that they have been made should not be taken to mean that any of you is independent, disinterested or can properly and objectively deal with such demands, which you cannot. Each of you is personally implicated in the alleged wrongdoing by, *inter alia*, your failure to date to cause Merrill to appropriately pursue all of its claims arising from the matters referred to herein.

It should come as no surprise to anyone that in multi-plaintiff litigation, there will be different claims, different defendants, and indeed, different approaches to the prosecution of the cases. Although it is important, as the Court recognized in signing the tendered Order, to have a structure in place, so that plaintiffs' combined efforts can be properly directed, irreconcilable differences

among plaintiffs and their counsel must be resolved. Plaintiff Lambrecht's

proposed Derivative Action Consolidation Order submitted herewith as Exhibit

"B" ("Proposed Order") recognizes that "one size" does not fit all.

With respect to the issue of leadership, while there is little doubt that all plaintiffs'

counsel can work effectively and efficiently to represent the various interests

involved in this litigation, plaintiff Lambrecht urges the Court to appoint one of her

counsel, Richard D. Greenfield, Esquire, as one of the Co-Lead Counsel for all

derivative plaintiffs together with one member of the so-called "Executive

Committee" as a Co-Lead Counsel. Biographical material with respect to Mr.

Greenfield is submitted herewith as Exhibit "C."[2]  Plaintiff Lambrecht respectfully

contends that her principal counsel fully meets the widely recognized criteria for

appointment as lead counsel. Courts have recognized that the "principal factor to

be considered in making such selection is whether the appointment will serve the

best interests of the shareholders." *Katz v. Clitter*, 396 N.Y.S.2d. 388, 389 (N.Y.

App. Div., 1977) (internal citations omitted). With this in mind, courts have

considered such factors as: "the quality of the pleading that appears best able to

represent the interests of … the derivative plaintiffs"; "the willingness and ability

of all the contestants to litigate vigorously on behalf of an entire class of

shareholders"; and "the enthusiasm or vigor with which the various contestants

have prosecuted the lawsuit." *Hirt v. U.S. Timberlands Service Co., LLC,* 2002 Del. Ch. LEXIS 89 at *5 (Del. Ch. July 3, 2002). Similarly, the credentials of counsel and their experience in similar litigation have figured prominently in such determinations. *See Katz, supra; Sirota v. Solitron Devices, Inc.,* 1975 US DIST Lexis 12471 (S.D.N.Y. 1975)*; In re Conseco, Inc. Securities Litigation and In re Conseco, Inc., Derivative Litigation,* 120 F. Supp.2d 729, 735 (S.D. Ind. 2000).

## Material Differences Between "Demand Made" and "Demand Futile" Cases Render Them Inappropriate for Consolidation

Federal Rule of Civil Procedure 42(a) governs issues relating to consolidation of actions for trial or pretrial purposes. It provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

In considering consolidation, the Court has broad discretion to balance considerations of convenience and economy against the potential for prejudice to any party. *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284-85 (2d Cir. 1990). The Second Circuit has repeatedly cautioned against "the systemic urge to aggregate litigation." *In re Repetitive Stress Injury Litigation*, 11 F.3d 368. 373 (2d Cir. 1993) (internal quotations omitted); *In re Brooklyn Navy Yard Asbestos Litigation,*

---

[2] Mr. Greenfield has more than 35 years of litigation experience specializing in shareholder derivative and class litigation. He is a former member of the Board of Directors of a NYSE-listed bank holding company who has lectured on corporate governance and related disclosure issues, which are at the core of this case.

971 F. 2d 831, 853 (2d Cir. 1992), and has directed that courts must "examine the special underlying facts with close attention before ordering a consolidation." *In re Repetitive Stress Injury Litigation,* 11 F.3d at 373 (internal quotations omitted).

The burden is on the proponent of consolidation to persuade the Court that such treatment is warranted. *MacAlister v. Guterma,* 263 F. 2d 65, 70 (2d Cir. 1958) (denying pretrial consolidation of three stockholder derivative actions); *Solvent Chemical Co. ICC Industries, Inc. v. E.I. Dupont De Nemours & Co.,* 242 F. Supp.2d 196, 221 (W.D.N.Y. 2002). The proponent "must bear the burden of showing the commonality of factual and legal issues in different actions" sufficient to support "precise findings … justifying consolidation." *In re Repetitive Stress Injury Litigation,* 11 F.3d at 373. When the proponent fails to demonstrate that consolidation is warranted, particularly where the party opposing consolidation shows that prejudice would result, consolidation should be denied. *See Schacht v. Javits,* 53 F.R.D. 321, 325 (S.D.N.Y. 1971) (Plaintiff's failure to marshal facts supporting consolidation and the reasoned opposition by four of the defendants are persuasive grounds for denying the motion."); *State Mutual Life Assurance Company of America v. Peat, Marwick, Mitchell 7 Co.,* 49 F.R.D. 202, 210 (S.D.N.Y. 1969) ("[D]espite the desirability of consolidation, it should not be granted where prejudice may result to one or more of the parties.") (internal citation omitted); *Bascum Launder Corp. v. Telecoin Corp.,* 15 F.R.D. 277, 277

(S.D.N.Y. 1953) ("A consolidation of actions may not be granted where it may result in prejudice to one or more of the parties."). Courts have repeatedly recognized that where, after the entry of an order of consolidation, circumstances arise that show prejudice to an affected party, such prejudice may be rectified by appropriate action by the Court. *See, e.g., Fireman's Ins. Co. of Newark, New Jersey v. Keating,* 753 F. Supp. 1137, 1141 (S.D.N.Y.1990); *Katz v. Realty Equities Corporation of New York,* 521 F.2d 1354, 1361 (C.A.N.Y. 1975) (noting, in refusing to overturn district court order requiring consolidated complaint, that district court should "be alert to the possibility of prejudice to them [the objective party] in the future.").

Plaintiff Lambrecht respectfully submits that mandatory consolidation of her case with the "Demand Futile" cases, using the Consolidated Derivative Complaint, would result in exactly the kind of material prejudice these courts warned against.

In two cases that have been litigated within this District, Judges Kram and Sprizzo, respectively, recognized the important distinctions between "demand made" and "demand futile" cases, *In re AOL Time Warner, Inc. Securities & "ERISA" Litigation*, MDL Docket No. 1500 (SDNY), where shareholder plaintiffs who had made demands were given two out of three Lead Counsel positions and *In re Freddie Mac Litigation*, MDL No. 1584 (SDNY), where the shareholder who

argued demand futility and filed its action had it dismissed on demand grounds while the shareholders who had made demands were not even subjected to motions to dismiss. In *AOL Time Warner*, Judge Kram had originally signed an unopposed Pre-Trial Order No. 1 ("PTO No. 1") substantively identical to the *pro forma* consolidation Order provided by counsel to the Court in this litigation. Once a "Demand Made' case was filed by two  AOL Time Warner shareholders who had made demands on its Board of Directors, counsel for the new plaintiffs found the original PTO No.1 unacceptable for  the same legal and factual reasons as are present here. They then sought, by litigated motion, to request that the Court modify PTO No. 1, which it did. Judge Kram's Pretrial Order No. 2 dated May 26, 2004 granted the motion of the "Demand Made" plaintiffs, and is submitted herewith as Exhibit "D."

Judge Kram segregated the "Demand" cases from the "No Demand" cases and appointed separate Lead Counsel for each type of derivative case. Further, in Paragraphs 17 and 18 of her Order, she recognized the important substantive and procedural differences each type of derivative case brought forth.

In an earlier iteration of *Freddie Mac*, a similar case based upon allegations of serious financial wrongdoing comparable with the defendants' activities in the instant litigation, Judge Cacheris (*Henry v. Brendsel,* Case No. 03-1539A (E.D. Va. March 12, 2004)) also ordered separate Lead Counsel for the different types of

derivative claims brought against the senior officers and directors of Freddie Mac. In his Order Appointing Lead Plaintiffs and Lead Counsel of March 12, 2003, (submitted herewith as Exhibit "E"), Judge Cacheris appointed separate "Demand Excused" (*i.e.* "Demand Futile") Lead Plaintiff and Lead Counsel, and "Demand Made" Lead Plaintiff and Lead Counsel, to reflect the divergent positions of the different plaintiffs and their respective counsel.

Since plaintiff Lambrecht is the only one of the Merrill Lynch shareholders who commenced derivative suits to have made a demand on its Board of Directors as required by Rule 23.1, she obviously stands in a different and, indeed, superior, position to each of the Demand Futile Plaintiffs, who are vulnerable to summary dismissal due to their failure to have made pre-suit demands upon Merrill Lynch's Board appropriate to this litigation. Such vulnerability, in fact, is precisely what was manifested in the *Freddie Mac* cases in this District before Judge Sprizzo, where the Court dismissed the Complaint of the plaintiff who had failed to make a demand on Freddie Mac's Board leaving in place the Complaint filed by the shareholders who had made the required demand.[3] In addition, there are important threshold legal and discovery issues that distinguish the two types of cases rendering them in conflict with one another, at least at this stage of the litigation.

---

[3] After such dismissal and after making the required demand on Freddie Mac's Board, months later, the formerly "demand futile" plaintiff, being enlightened by the Court, filed a new Complaint based on the demand made in the interim. Should this Court dismiss the Consolidated Derivative Complaint in this litigation due to the plaintiffs therein having failed to make the required demands, should they become similarly enlightened and make demands

While those plaintiffs whose complaints survive motions to dismiss can ultimately work together to pursue their common objectives, there is a legal impediment at this juncture in them doing so.

**The Consolidated Derivative Complaint  Does Not Comply With The Demand Requirements of Rule 23.1**

The Consolidated Derivative Complaint argues futility as the purported reason why the Demand Futile Plaintiffs did not make the required demands on Merrill Lynch's Board. Plaintiff Lambrecht's well-considered strategic decision to make the required demand in these circumstances would be rendered a nullity if her Complaint were to be swallowed whole by the Consolidated Derivative Complaint. Her claims, despite her having made the required demand, would be rendered vulnerable to dismissal in the face of the pending Motion to Dismiss. She is entitled to have her Complaint considered on its own merits and not be effectively eradicated by the provisions of the Order which, *de facto*, would render it a nullity if her requested relief from the Order is not granted. While there is little doubt that a consolidated complaint which pleads the demand-related issues and facts **in the alternative** can be filed by all of the derivative plaintiffs that encompasses plaintiff Lambrecht's firmly held position, to say the least it would be awkward to do so given the conflicting positions she must take from the positions

---

on Merrill Lynch's Board, they will be free to file Complaints anew but many months in the future. Plaintiff Lambrecht is not so burdened and is prepared to move forward aggressively with her case immediately.

espoused by the other plaintiffs with respect to the issue of demand and the "facts" they argue as why demand on Merrill Lynch's Board was excused at the time they filed their respective Complaints. Plaintiff Lambrecht's Complaint should remain unconsolidated and rise or fall on its own merits.

## **The Fact That the Demand Futile Plaintiffs' Actions were "First Filed" is Irrelevant to a Determination of Appointment of Lead Counsel**

Case law is clear: the fact that the Demand Futile Plaintiffs commenced their derivative actions first should carry no weight in deciding the issue of appointment of lead counsel. *See Sirota,* 1975 US DIST Lexis 12471 at *4 (a rule giving priority of filing primary weight in selection of lead counsel would promote premature filing of suits without adequate investigation; court allows plaintiffs counsel in two of four actions to act as joint "general counsel"); *Hirt,* 2002 Del. Ch. LEXIS 89 at *5 (Del. Ch. July 3, 2002) (in selection of lead counsel, no special weight or status will be accorded to a lawsuit simply by virtue of having been filed earlier than any other pending action); *TCW Technology Limited Partnership v. Intermedia Communications, Inc.,* 2000 Del. Ch. LEXIS 147 at *9 (Del. Ch. October 17, 2000) ("It is not the race to the courthouse door… that impresses the members of this Court when it comes to deciding who should control and coordinate litigation of behalf of the shareholder class.").

This common sense analysis is further buttressed by two important facts here. One obvious fact is that the three Demand Futile Plaintiffs commenced their

cases within a very short period of time and apparently based upon revelations in the news media. A second fact is that the Order as presented to the Court neglected to give consideration to the complexities that surround shareholder derivative litigation. The Proposed Order submitted herewith addresses such complexities as well as the divergent issues relevant to the "Demand Futile" cases and the Lambrecht, "Demand Made," case.

## There is no PSLRA-Related Requirement for a Lead Plaintiff in Derivative Litigation

Although there clearly are a few courts around the country which have appointed lead plaintiffs and, in some cases, have followed the congressional mandate of the PSLRA, the simple fact of the matter is that the PSLRA does not govern derivative litigation, nor is there anything that would indicate that there was any legislative intent to govern shareholder derivative litigation in the same fashion. Indeed, while it is certainly appropriate for the Court to give due consideration to the presence of institutional plaintiffs and their counsel among a multiplicity of cases and lawyers, the simple fact of life is that most shareholders of public companies are more modest in their holdings. More significantly, especially since all of the shareholder plaintiffs and their counsel are before the Court, the Court should look to which counsel are most experienced and have the resources and appropriate level of dedication to represent the interests of Merrill

Lynch and its shareholders in pursuing the varied claims that Merrill Lynch's Board will not pursue on its own.

As indicated in the attached biography, counsel for Ms. Lambrecht is well-qualified to represent those interests. Further, despite any possible concern that counsel for the Demand Futile Plaintiffs cannot work together with counsel for plaintiff Lambrecht, the Court-appointed derivative Liaison Counsel, Brower Piven firm and its predecessors have been co-counsel with Mr. Greenfield in many shareholder cases and there is little doubt they can work together toward common objectives in this litigation if the Demand Futile Plaintiffs' Complaint survives the Motion to Dismiss.

## The Number of Co-Lead Counsel

It is clear that in any complex litigation such as the various Merrill Lynch shareholder cases, there is no "magic number" of lead counsel.  Indeed, the Court has appointed three Co-Lead Counsel for the Securities Actions and two Interim Co-Lead Counsel for the ERISA Actions. The important thing for the Court to consider is whether the designated Co-Lead Counsel (if the Demand Futile Plaintiffs' claims survive), whatever their differences, will be able to work together toward their common objective and effectively deal with defense counsel and the Court.

Plaintiff Lambrecht, through both of her counsel, Greenfield & Goodman, LLC and Cuneo, Gilbert & LaDuca, LLP, have creatively and aggressively pursued the interests of Merrill Lynch and its shareholders. Plaintiff Lambrecht has not filed quickly drafted Complaints which paraphrased newspaper articles, as the Demand Futile Plaintiffs appear to have done. Her counsel have conducted substantial pre-litigation research as evidenced by her Demand Letter, have interviewed knowledgeable people and focused on the issues that are most significant to the case. More significantly, plaintiff Lambrecht has filed a Complaint which is not vulnerable to dismissal on either demand or any other grounds.[4]

## Merrill Lynch's Views on the Issues Presented are not Relevant

Although all derivative plaintiffs are suing on behalf of Merrill Lynch in the litigation, their interests are not coextensive with those of Merrill Lynch as a Nominal Defendant since, *inter alia*, the Company is still within the control of practically all of the directors who have been accused of wrongdoing in all of the derivative cases. Indeed, all derivative plaintiffs, despite the fact that they are pursuing claims on behalf of Merrill Lynch, find themselves in the curious position of facing Merrill Lynch itself seeking to put an end to the very claims that could generate substantial recoveries for it.

───────────────

Realistically, Merrill Lynch should not be permitted to opine on who should be principal opposing counsel or which Complaint should be the operative one. Merrill Lynch, its officers and directors clearly want to defend against the most vulnerable plaintiffs with the weakest Complaint. All defendants, however, are entitled to have as opposing counsel lawyers with whom they can litigate cooperatively and efficiently. In that regard, consistent with the mandate of PTO No. 2 in *AOL Time Warner*, the undersigned have already made progress in discussing with counsel for Merrill Lynch's Board how the derivative cases can be litigated efficiently and productively with minimum burden on the Court. Beyond the right to have an orderly litigation, however, neither Merrill Lynch, nor its defendant Board members should have any role in determining who should be best able to prosecute the Company's claims derivatively and who should be appointed by the Court as opposition counsel.

**<u>Contemporaneous Time and Expense Reports</u>**
**<u>Should Be Submitted to Lead Counsel Monthly</u>**

In multi-plaintiff litigation such as this, where there are already many plaintiffs' counsel, lawyer time and expenses will escalate at a diametric rate. To better avoid unnecessary escalation, it is important for plaintiffs' Lead Counsel to monitor time and expenses on a regular basis. This helps to point out potential duplicative and/or otherwise wasteful expenditures of time and money, which will be hard to recognize after two, three or more years of litigation. While interim

17

Court supervision of time and expenses of plaintiffs' counsel should not be necessary, the possibility of it is a useful deterrent to over-billing, even when inadvertent is indisputable.

To avoid the Court having to oversee plaintiffs' counsel, Plaintiff Lambrecht, in the Proposed Order, has provided a means to efficiently monitor the time and expenses of all derivative plaintiffs' counsel.

## Conclusion

For the foregoing reasons, all of the derivative cases should be consolidated solely for pre-trial purposes. As indicated, because of the material differences in the factual and legal positions of  plaintiff Lambrecht and those advanced by the Demand Futile Plaintiffs, which respective positions are presently irreconcilable, plaintiff Lambrecht is entitled to have her Complaint remain structurally separate from the Consolidated Derivative Complaint as provided in the Proposed Order submitted herewith.

Plaintiff Lambrecht also maintains that Lead Counsel in the Derivative Actions should be designated by the Court in such a fashion that all legitimate interests are presented and that the counsel selected be able to effectively and efficiently pursue those interests. For these reasons, plaintiff Lambrecht respectfully urges the Court to eliminate the self-designated "Executive Committee" and appoint one of its members as Co-Lead Counsel together with

Richard D. Greenfield, Esquire, principal counsel for Ms. Lambrecht. If the Court

is of the view that a single Lead Counsel for the Derivative Actions is the

appropriate way to handle the prosecution of these cases because of her superior

representation of the Merrill Lynch shareholders' interests, she respectfully

suggests that her counsel be appointed as sole Lead Counsel.


Dated: August 8, 2008                    GREENFIELD & GOODMAN, LLC

                                  By:    _____/s/_____
                                         RICHARD D. GREENFIELD (RG 4046)
                                         780 Third Avenue
                                         48th Floor
                                         New York, NY 10017
                                         Telephone: (410) 320-5931


                                         CUNEO, GILBERT & LA DUCA, LLP

                                  By:    _____/s/_____
                                         JONATHAN W. CUNEO (JC 1112)
                                         507 C Street, N.E.
                                         Washington, D.C. 20002
                                         Telephone: (202) 789-3960

                                         *Counsel for Plaintiff Lambrecht*

## <u>CORRECTED[1] CERTIFICATE OF SERVICE</u>

I, William H. Anderson, certify that on August 14, 2008, I served through the Court's ECF system the foregoing Plaintiff Lambrecht's Objection to that Portion of the Consolidation Order of March 12, 2008 with Respect to Leadership of the Derivative Actions upon all counsel registered with that system.

    /s/ William H. Anderson    
William H. Anderson

---

[1] Plaintiff was unable to serve the foregoing document on August 8, 2008, as anticipated at the time the certificate of service was drafted and filed in 08-cv-6582 because the case association between the instant case (08-cv-6582) and the Master File (07-cv-9633) had not yet been made.  As a result, Plaintiff's name was not on the Master File and counsel could not file documents in that case.  Nonetheless, Plaintiff sent copies of the August 8, 2008, filing to the Judge Sand's Chambers via FedEx and to Attorneys Kasner, Farrell and Block via email on August 8, 2008.  After multiple communications with the Clerk's office each business day since August 8, 2008, Plaintiff Lambrecht was added as a Plaintiff on the Master File case August 14, 2008, at approximately 10 AM.