UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ x
IN RE MERRILL LYNCH & CO., INC.           :   Master File No.:
SECURITIES, DERIVATIVE AND ERISA          :   07-CV-9633(JSR)(DFE)
LITIGATION                                :
------------------------------ x
This Document Relates to:                 :
Securities Action, 07cv9633(JSR)(DFE)     :
                                          :
------------------------------ x


# MEMORANDUM OF LAW OF DEFENDANT JEFFREY N. EDWARDS IN REPLY AND FURTHER SUPPORT OF HIS MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

WILLKIE FARR & GALLAGHER LLP
Richard D. Bernstein
Michael R. Young
Mei Lin Kwan-Gett
Frank M. Scaduto
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

Attorneys for Defendant Jeffrey N. Edwards

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ................................................................................................................................2

I.    MR. EDWARDS'S DILIGENCE AS CFO DOES NOT SUPPORT AN INFERENCE OF SCIENTER ......................................................................................2

II.    MR. EDWARDS'S ALLEGED OMISSIONS DO NOT SUPPORT AN INFERENCE OF SCIENTER ......................................................................................5

III.    THE STATUTORY LANGUAGE ALSO SUPPORTS DISMISSAL OF THE CLAIM AGAINST MR. EDWARDS .............................................................................9

CONCLUSION ...........................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

In re Allied Capital Corp. Sec. Litig., No. 02-3812, 2003 U.S. Dist. LEXIS 6962
    (S.D.N.Y. Apr. 25, 2003) .................................................................................................. 5

In re American Express Co. Sec. Litig., No. 02-5533, 2008 U.S. Dist. LEXIS 74372
    (S.D.N.Y. Sept. 26, 2008) ................................................................................................ 4

City of Brockton Ret. Sys. v. Shaw Group, Inc., 540 F. Supp. 2d 464
    (S.D.N.Y. 2008) ........................................................................................................... 2, 3

In re GeoPharma, Inc. Sec. Litig., 411 F. Supp. 2d 434 (S.D.N.Y. 2006) ........................... 6, 7, 8

Good Hill Partners L.P. v. WM Asset Holdings Corp., No. 08-3730, 2008 WL 4761921
    (S.D.N.Y. Oct. 31, 2008) .................................................................................................. 6

Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group Inc., 537 F.3d 527
    (5th Cir. 2008) ................................................................................................................... 5

In re Intelligroup Sec. Litig., 527 F. Supp. 2d 262 (D.N.J. 2007) .............................................. 7

Kalnit v. Eichler, 264 F.3d 131 (2d Cir. 2001) ............................................................................ 6

Medis Investor Group v. Medis Techs., Ltd., No. 07-3230,
    2008 U.S. Dist. LEXIS 62866 (S.D.N.Y. Aug. 18, 2008) ................................................. 7

Metzler Inv. GmbH v. Corinthian Colleges, Inc., 540 F.3d 1049 (9th Cir. 2008) ................. 2-3

In re Novastar Fin., Inc., Sec. Litig., No. 07-0139, 2008 U.S. Dist. LEXIS 44166
    (W.D. Mo. June 4, 2008) .................................................................................................. 3

Podany v. Robertson Stephens, Inc., 318 F. Supp. 2d 146 (S.D.N.Y. 2004) .............................. 5

In re Razorfish, Inc. Sec. Litig., No. 00-9474, 2001 U.S. Dist. LEXIS 14756
    (S.D.N.Y. Sept. 21, 2001) ................................................................................................. 6

In re Salomon Analyst Level 3 Litig., 373 F. Supp. 2d 248 (S.D.N.Y. 2005) .............................. 5

In re Sierra Wireless, Inc. Sec. Litig., 482 F. Supp. 2d 365 (S.D.N.Y. 2007) .............................. 8

Teamsters Local 445 Freight Div. Pension Fund v Dynex Capital, Inc., 531 F.3d 190
    (2d Cir. 2008) .................................................................................................................... 9

Va. Bankshares, Inc. v. Sandberg, 501 U.S. 1083 (1991) ........................................................... 5

**STATUTES**

15 U.S.C. §78u-4(b)(2) ................................................................................................................. 9

17 CFR § 240.10b-5(b) ................................................................................................................. 6


**OTHER AUTHORITIES**

Alfred L. Malabre, Lost Prophets: An Insider's History of the
    Modern Economists 220 (1994) ........................................................................................ 2

Joseph E. Stiglitz, Towards a New Economic Global Compact (Oct. 30, 2008), available at
    http://www.un.org/ga/president/63/interactive/gfc/joseph_p.pdf .................................... 10

Senator John McCain, Remarks On Reforming Our Financial Markets (Sept. 19, 2008),
    available at http://i.usatoday.net/news/politics/election2008/pdf/
    mccain-on-economy-9-19-2008.pdf ............................................................................... 10

Defendant Jeffrey N. Edwards joins the arguments of the other defendants and submits this reply memorandum of law in support of his motion to dismiss.

**PRELIMINARY STATEMENT**

The essential, specific alleged facts pertinent to Mr. Edwards's motion are few and indisputable: (1) Plaintiffs' 268-page Complaint does not contain a single specific allegation that Mr. Edwards personally said anything privately or received information contradicting any of Merrill's or his public statements. (2) Far from acting like "Merrill's ship was sinking" (Opp'n at 2), Mr. Edwards did not sell any of his 780,000 shares of Merrill stock and options during the class period, but rather significantly increased his holdings of Merrill stock during that time. (3) There is an industry-wide subprime crisis that has resulted in over 130 companies taking writedowns and over 125 securities class actions like this one. (4) With Mr. Edwards as CFO, Merrill was one of the first companies voluntarily to announce substantial writedowns – indeed, Merrill's early writedowns in October 2007 came three weeks before a required reporting deadline and during a still-robust stock market.[1]

Despite all this, Plaintiffs raise two arguments for inferring scienter against Mr. Edwards. First, they argue that Mr. Edwards's diligence in carrying out his duties as Merrill's CFO supports an inference that he must have been aware of "red flags." (Opp'n at 42-43.) Second, they argue that although Mr. Edwards's statements in earnings conference calls were literally true, Mr. Edwards omitted other allegedly material facts, such as the amount of Merrill's AAA CDO assets. (Id. at 23-28, 72.)

This Court must assess which of two inferences is stronger. The defendant's inference is that Mr. Edwards honestly believed both in the valuation of Merrill's AAA CDO

---

[1] The S&P 500 closed at an all-time high of 1565.15 on October 9, 2007, see Wall St. J., Oct. 10, 2007, four days after Merrill initially disclosed large subprime writedowns.

portfolio and that there was no requirement to disclose the total amount of that portfolio separately at a point when it was not expected to suffer material losses, and his opinions honestly changed when the unprecedented credit crisis occurred. The Plaintiffs' inference is that by July 2007, Mr. Edwards was informed of and chose to conceal material valuation and risk problems with Merrill's AAA CDO portfolio – even though no person or document specifically suggests this.

The defendant's inference is far stronger. It is not even cogent, much less compelling, to infer that Mr. Edwards knowingly engaged in an alleged scheme from which he reaped substantial personal financial losses, and which he helped disclose voluntarily in October 2007 without any pressure from Merrill's outside auditor or anyone else. The more compelling inference is that Mr. Edwards and Merrill believed that changed circumstances, caused by the unprecedented industry-wide credit freeze that began in the third quarter of 2007, supported both writedowns in Merrill's CDOs and the disclosure of the size of Merrill's CDO assets. Public policy does not support scapegoating an executive who honestly recognized changed economic circumstances. As John Maynard Keynes famously stated during the Great Depression, "When the facts change, I change my mind. What do you do, sir?" Alfred L. Malabre, Lost Prophets: An Insider's History of the Modern Economists 220 (1994).

## ARGUMENT

### I. MR. EDWARDS'S DILIGENCE AS CFO DOES NOT SUPPORT AN INFERENCE OF SCIENTER

Contrary to Plaintiffs' argument, being a diligent CFO who tries to keep informed of the company's business activities is not a basis to infer scienter. See, e.g., City of Brockton Ret. Sys. v. Shaw Group, Inc., 540 F. Supp. 2d 464, 473 (S.D.N.Y. 2008) (defendants' "purported status as 'hands on' senior executives" was insufficient to infer their knowledge of accounting improprieties); accord Metzler Inv. GmbH v. Corinthian Colleges, Inc., 540 F.3d

1049, 1068 (9th Cir. 2008) ("corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter – at least absent some additional allegation of specific information conveyed to management and related to the fraud"). "It is not enough for a post-Tellabs plaintiff to allege that, because executives like the Individual Defendants were 'closely involved' in [their company's] business, one can strongly infer that they 'were furnished with financial data which contained the "errors" that later required restatement.'" City of Brockton, 540 F. Supp. 2d at 473.

        In Novastar, plaintiffs alleged that the CFO of a subprime mortgage originator must have known about and concealed subprime problems because he diligently viewed regular reports and attended regularly scheduled meetings. In re Novastar Fin., Inc., Sec. Litig., No. 07-0139, 2008 U.S. Dist. LEXIS 44166, at *14 (W.D. Mo. June 4, 2008). The court dismissed: "This conduct is normal and expected, and does not indicate fraudulent intent. Management is supposed to review results and search for ways to improve operations, and this customary endeavor does not indicate an intent to deceive when positive information is disseminated." Id. at *14-15. Indeed, it would be terrible public policy to suggest that scienter is more easily inferred against diligent executives rather than against poorly informed executives.

        But that is exactly the position the Plaintiffs take. Plaintiffs inappropriately argue that Mr. Edwards must have had scienter because he was diligent in carrying out his duties as CFO in seeking information about the many and varied aspects of Merrill's trillion dollar balance sheet. (Opp'n at 42-43.) Specifically, Plaintiffs argue that "it is as least as likely as not that Edwards, as the Company's CFO, is among the 'senior managers' that received [internal] warnings" (id. at 75 n.49, see also id. at 44-46), because Mr. Edwards kept apprised of Merrill's acquisition of a mortgage originator, First Franklin (id. at 48), and attended regularly scheduled meetings in which counterparty risk was monitored (id. at 51), and because he "claimed specific

- 3 -

knowledge of the process Merrill used in 'marking' or valuing its U.S. subprime ABS CDOs" (id. at 53). These allegations suggest nothing more than that Mr. Edwards was diligently doing his job. They do not permit an inference that he actually became aware of warnings or other adverse facts and did nothing to reconcile Merrill's disclosures with that information.

Moreover, even if Plaintiffs adequately alleged a basis to infer that Mr. Edwards knew about warnings regarding risk, nothing about such warnings contradicted any of Merrill's or Mr. Edwards's public statements. For example, Plaintiffs rely heavily on Mr. Kronthal's alleged warning in July 2006 about potential risk if Merrill increased its holding of AAA CDOs. (Opp'n at 44-45.) But Mr. Kronthal is not alleged to have said anything about valuation or disclosure. Another court in this district recently rejected almost identical "warning" allegations as a basis to infer scienter. In In re American Express Co. Securities Litigation, No. 02-5533, 2008 U.S. Dist. LEXIS 74372 (S.D.N.Y. Sept. 26, 2008), plaintiffs alleged that American Express and its CFO concealed the extent of American Express's exposure to high-yield debt investments (including CDOs), misrepresented the true value of those investments, and failed to disclose lapses in risk management. Id. at *2, 7. The court dismissed, holding:

> None of the confidential sources specifically states that any Individual Defendant had information or access to information indicating that Amex was not properly valuing the High Yield Debt, that its risk control policies were inadequate, that Amex was violating GAAP, or that contradicted the Company's statements in 2001. Allegations that Hubers and senior management were warned of the risks or that senior management should not have been surprised by the charges relating to High Yield Debt show only that the Individual Defendants may have been made aware of the risks associated with the High Yield Debt, not that Amex was not properly valuing the debt or monitoring its risk.

Id. at *20-21 (internal citation omitted).[2]

---

[2] The only alleged red flags that are allegedly related to CDO valuations are the public ABX/TABX indices. But no entity actually used those indices to value a CDO portfolio before

Furthermore, none of the alleged warnings demonstrate that Mr. Edwards did not sincerely believe his publicly stated opinions about Merrill's CDO valuations and risk management efforts. At most, they suggest that others within Merrill might have held different opinions than Mr. Edwards. Differences of opinion among corporate officials, however, are commonplace and thus provide no basis to infer scienter. See, e.g., Edwards Br. at 19; In re Allied Capital Corp. Sec. Litig., No. 02-3812, 2003 U.S. Dist. LEXIS 6962, at *12-13 (S.D.N.Y. Apr. 25, 2003) ("given the difficulty of valuing illiquid securities, and the multitude of factors that may appropriately be taken into account, alleging disagreement with [defendant's] valuations does not equate to alleging fraud").[3]

## II. MR. EDWARDS'S ALLEGED OMISSIONS DO NOT SUPPORT AN INFERENCE OF SCIENTER

Plaintiffs do not dispute that an allegedly false statement by itself does not support an inference of scienter. (Edwards Br. at 10.) They also do not dispute that Mr. Edwards's statements were literally true. (Opp'n at 26, 72.) Nonetheless, Plaintiffs argue that

---

October 2007; the ABX and TABX measure insurance on MBS, not CDOs; and even the creator of the ABX and TABX has warned against their use in valuing CDOs. Thus, they provide no basis to infer scienter. (See Edwards Br. at 14-15.)

[3]   Plaintiffs seek to avoid the strict scienter pleading standard for valuation opinions by arguing that the cases cited by Mr. Edwards are limited to valuations of other companies' assets. (Opp'n at 51 n.27.) Contrary to Plaintiffs' assertion, the core of those cases is whether judgment and choice are involved. See, e.g., In re Salomon Analyst Level 3 Litig., 373 F. Supp. 2d 248, 251-52 (S.D.N.Y. 2005) ("financial valuation models depend so heavily on the discretionary choice of the modeler . . . that the resulting models and their predictions can only fairly be characterized as subjective opinions"). Thus, valuations of a company's own assets are opinions because "sophisticated accounting standards like 'fair value' leave broad scope for judgment and informed estimation." Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group Inc., 537 F.3d 527, 536 (5th Cir. 2008). As the ongoing credit crisis illustrates, a person's statement about the value of his or her home is no less an opinion than a statement about the value of a neighbor's home. Finally, Plaintiffs are incorrect that statements of opinion may be actionable based on unreasonableness alone (Opp'n at 78 n.52). See Va. Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1094 (1991); Podany v. Robertson Stephens, Inc., 318 F. Supp. 2d 146, 155 (S.D.N.Y. 2004) (clarifying the correct interpretation of Virginia Bankshares).

because his statements allegedly omitted important facts, they were misleading half-truths "designed to convince the market that Merrill's exposure to U.S. subprime ABS CDOs was minimal" (id. at 26), and that scienter can be inferred from alleged half-truths alone (id. at 53-54). This argument is contrary to law.

An alleged half-truth violates Rule 10b-5 only because it "omit[s] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 CFR § 240.10b-5(b) (emphasis added). As this Court recently held, when a misleading half-truth is alleged, the complaint must allege additional facts "sufficient to support plaintiff's claim that the alleged non-disclosure was intentional and fraudulent." Good Hill Partners L.P. v. WM Asset Holdings Corp., No. 08-3730, 2008 WL 4761921, at *3-4 (S.D.N.Y. Oct. 31, 2008). To infer scienter about a purported "half truth," courts require "an obvious duty to disclose that [omitted] information." In re GeoPharma, Inc. Sec. Litig., 411 F. Supp. 2d 434, 446 (S.D.N.Y. 2006); accord Kalnit v. Eichler, 264 F.3d 131, 143-44 (2d Cir. 2001). Courts "rigorously apply the standard for pleading intent" when plaintiffs allege half-truths: "if courts are too quick to infer culpability whenever investors are confused by a defendant's statement, the focus of the intent inquiry could shift from that defendant's state of mind to public perceptions." GeoPharma, 411 F. Supp. 2d at 437.[4]

Here, Plaintiffs have not pled that Mr. Edwards had an "obvious duty" to disclose any omitted information, including the amount of Merrill's AAA CDOs prior to the third quarter of 2007. First, GAAP did not require disclosure, as set forth in Merrill's reply brief. (Merrill

---

[4] Thus, Plaintiffs' scienter inference is not strengthened by pointing to analyst shorthand reports of the earnings calls, rather than the transcripts of what Mr. Edwards said or evidence of what he intended. See In re Razorfish, Inc. Sec. Litig., No. 00-9474, 2001 U.S. Dist. LEXIS 14756, at *7 (S.D.N.Y. Sept. 21, 2001) (statements in analyst reports were insufficient basis to infer scienter).

Reply Br. at 6-8, 40-43.) Indeed, despite Plaintiffs' conclusory allegation as to the clarity of GAAP (Opp'n at 30-32), they have not alleged that <u>any</u> other institution disclosed the amount of their exposure to CDOs before the third quarter of 2007 or that Merrill's outside auditor supported disclosure. Following the norm cannot be reckless, even when the norm subsequently changes. See <u>In re Intelligroup Sec. Litig.</u>, 527 F. Supp. 2d 262, 284 (D.N.J. 2007) (scienter not alleged when defendant followed "industry practices"). Second, there is no specific allegation that there were any expectations of potential defaults in Merrill's AAA CDO assets prior to the third quarter of 2007, much less that Mr. Edwards was informed of such expectations. Plaintiffs cannot unilaterally impose an obvious duty to disclose based on Mr. Edwards's alleged awareness of problems in the underlying lower-rated subprime mortgage market (<u>id.</u> at 23-29), because there are no allegations that he had received information suggesting those problems supported material writedowns of much higher-rated AAA CDOs before the third quarter of 2007. Third, rather than seek to mislead investors into believing that Merrill had no or few AAA CDO assets, Mr. Edwards told investors that "the majority of our exposure continues to now be in the highest credit segment of the market" (Compl. ¶ 278). He explained that he could not disclose the specific amount because of Merrill's policy not to disclose "capital allocations against any specific or even broader group" (<u>id.</u> ¶ 279). This disclosed policy provides another reason against inferring scienter. See <u>Medis Investor Group v. Medis Techs., Ltd.</u>, No. 07-3230, 2008 U.S. Dist. LEXIS 62866, at *21 (S.D.N.Y. Aug. 18, 2008) (scienter rejected where "the limited scope of the information in the Press Release was motivated by Company policy").

Plaintiffs simply fail to "allege something more to suggest that [Mr. Edwards] <u>intended</u> to confuse the market by omitting material information." <u>GeoPharma</u>, 411 F. Supp. 2d at 446 (emphasis in original). Most fundamentally, Plaintiffs <u>offer no theory</u> as to why Mr. Edwards would dishonestly conceal Merrill's CDO exposure in April and July 2007 and then

honestly participate in Merrill's announcement of CDO losses and specific exposure in October 2007 if (as plaintiffs suggest) nothing had changed. See id. ("the tenuous plausibility of the alleged scheme substantially weakens the overall strength of plaintiffs' scienter allegations").

Instead, Plaintiffs attempt to contort certain phrases in the April and July conference calls. No item on Plaintiff's laundry list supports scienter because none created an "obvious duty" to disclose omitted information:

- Plaintiffs argue that although Mr. Edwards's statements that "subprime-related activities" were two percent or less of Merrill's net revenues were literally true, they were nonetheless misleading because they implied "that Merrill's exposure to U.S. subprime CDOs was minimal." (Opp'n at 72.) This argument ignores that Mr. Edwards was speaking to a sophisticated audience of securities analysts, and no reasonable analyst would assume that a revenue percentage implied the same percentage of assets. To the contrary, after Mr. Edwards's comments about revenues, he was specifically asked by an analyst about the amount of subprime-related assets, which he expressly declined to comment on because of Company policy. (Compl. ¶ 279.) Plaintiffs also misstate that Mr. Edwards suggested that the proper "context" for Merrill's subprime mortgage business was revenues. (Opp'n at 23.) Mr. Edwards's comment, "Let me put this business into context," followed eight paragraphs of discussion about Merrill's revenues, and thus merely elaborated upon how those company-wide revenues were achieved despite "revenue declines from mortgages." (Kasner Reply Decl. Ex. YY at 2-3.)[5]

- Plaintiffs similarly claim that Mr. Edwards's statement in July that Merrill had reduced its "exposure to lower-rated segments of the market for CDOs and mortgage-backed securities" was deceptive because Merrill could not sell its AAA CDO tranches. (Opp'n at 26.) This is a non-sequitur. AAA CDOs are not "lower-rated segments." Mr. Edwards stated that "the majority of our exposure continues to now be in the highest credit segment of the market" (Compl. ¶ 278). Mr. Edwards similarly stated that "retained interests will be up" because of Merrill's retention of "investment grade rated" CDO securities. (Id. ¶ 247.)

- Plaintiffs argue that when Mr. Edwards said in April 2007 that Merrill was continuing to sell CDOs, he omitted to disclose that some transactions allegedly were not arm's length.

---

[5]    Attached as Exhibits YY and ZZ to the Reply Declaration of Jay B. Kasner are the complete transcripts of the April and July conference calls incorporated in the Complaint by reference. See In re Sierra Wireless, Inc. Sec. Litig., 482 F. Supp. 2d 365, 380 n.4 (S.D.N.Y. 2007) (on motion to dismiss, defendants may submit full transcripts of earnings conference calls that are partially quoted in the complaint).

- 8 -

(Opp'n at 24.) Plaintiffs do not allege any basis to infer that Mr. Edwards knew that any transaction was not arm's length. (Compl. ¶¶ 171-72.)

- Plaintiffs assert that Mr. Edwards misled them by commenting on Merrill's hedging techniques without disclosing that those hedges were with financially unstable monoline insurers. (Opp'n at 52.) There is nothing to suggest, however, that Mr. Edwards's comments were referring to the monolines, rather than other hedging techniques such as focusing on higher-rated segments or shorting. There is also no allegation that he contemporaneously knew about any problems with the monolines.

### III. THE STATUTORY LANGUAGE ALSO SUPPORTS DISMISSAL OF THE CLAIM AGAINST MR. EDWARDS

The statute requires that "the complaint shall, with respect to <u>each act or omission</u> alleged to violate this chapter, state with particularity facts giving rise to a strong inference that <u>the defendant</u> acted with the required state of mind." 15 U.S.C. §78u-4(b)(2) (emphasis added). This reflects the core principle of fairness to each individual based on specific facts. Indeed, even Plaintiffs concede that "group pleading" is not a basis for alleging scienter against individual defendants (Opp'n at 57-58 n.32, 89 & n.69). See also id. at 41 (quoting Dynex, 531 F.3d at 195-46 ("<u>But it is possible to raise the required inference with regard to a corporate defendant without doing so with regard to a specific individual defendant</u>.") (emphasis added by Plaintiffs)). Contrary to their concession, however, <u>the only mention of Mr. Edwards</u> in Plaintiffs' 93-paragraph section about the knowledge of the group of "senior management" and "top executives" (Compl. ¶¶ 92-184) is the insufficient assertion that he was a member of the Executive Committee (id. ¶ 94). In any event, this assertion is unsupported and untrue. (Compare Edwards Br. at 2 n.1 with Opp'n at 51 n.27.)

The statutory language also enables the legal system to play a constructive role in the analysis of the causes of the current crisis in retrospect. Plaintiffs have adopted the simplistic argument that trillions of dollars in every market in the world have been lost because of "bad" executives on Wall Street – who all somehow independently did the same intentionally bad

- 9 -

things at the same time in more than 100 independent companies.  Cf. Senator John McCain, Remarks On Reforming Our Financial Markets (Sept. 19, 2008), available at http://i.usatoday.net/news/politics/election2008/pdf/mccain-on-economy-9-19-2008.pdf ("we are going put an end to the reckless conduct, corruption, and unbridled greed that have caused a crisis on Wall Street").  Scholars, however, suggest that the causes of the worldwide economic meltdown include more systemic bases and thus require changes in regulations and economic policy, such as higher capital requirements or raising middle class income levels.  See, e.g., Joseph E. Stiglitz, Towards a New Economic Global Compact (Oct. 30, 2008), available at http://www.un.org/ga/president/63/interactive/gfc/joseph_p.pdf.  The statutory scienter requirement precludes the scapegoating of individuals that would obscure more systemic causes of the credit crisis.  The claim against Mr. Edwards is exactly the kind of unsupported scapegoating that should be dismissed.

## CONCLUSION

The Complaint against Mr. Edwards should be dismissed without leave to replead.

Dated: November 14, 2008
       New York, New York

                                        Respectfully submitted,

                                        WILLKIE FARR & GALLAGHER LLP

                                        *[signature]*
                                        Richard D. Bernstein (rbernstein@willkie.com)
                                        Michael R. Young (myoung@willkie.com)
                                        Mei Lin Kwan-Gett (mkwangett@willkie.com)
                                        Frank M. Scaduto (fscaduto@willkie.com)
                                        787 Seventh Avenue
                                        New York, New York  10019
                                        (212) 728-8000

                                        Attorneys for Defendant Jeffrey N. Edwards