UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------x
In re: MERRILL LYNCH & CO., INC.,      :     Master File No.:
SECURITIES, DERIVATIVE AND ERISA       :     07 Civ. 9633 (JSR)
LITIGATION                             :
---------------------------------------x
PERTAINS TO *Derivative Action, 07
Civ. 9696* and *Lambrecht v. O'Neal,*          OPINION AND ORDER
*08 Civ. 6582*

JED S. RAKOFF, U.S.D.J.

      Before the Court are a large number of related actions arising from the huge losses experienced by Merrill Lynch & Co., Inc. ("Merrill") as a result of its aggressive investment in collateralized debt obligations and similar mortgage-backed securities.  The actions were originally assigned to the Honorable Leonard B. Sand, who divided most of the actions into three categories – securities class actions, ERISA actions, and derivative actions - and scheduled motion practice on each, but then was obliged to recuse himself after Merrill was acquired by Bank of America Corporation on September 14, 2008.  The cases were then reassigned to the undersigned, who scheduled oral argument on the pending motions; but before oral argument could be heard, a tentative settlement in an amount in excess of $500 million was reached in the securities class actions and the ERISA actions, subject to Court approval and class notification, which are now pending.

      This leaves, inter alia, the derivative actions, which consist of the consolidated lawsuit known as the Derivative Action, 07 Civ. 9696 and the later-filed action, Lambrecht v. O'Neal, 08 Civ. 6582.  Both actions are brought by persons who, at the time of

filing, were Merrill shareholders who sought to recover on behalf of the company from Merrill executives and board members who had allegedly breached their fiduciary duties, wasted corporate assets, and the like, all in violation of Delaware law. The difference between the two actions is that the plaintiffs in the <u>Derivative Action</u> did not make a demand on the Merrill board that it proceed with the action, whereas the plaintiff in <u>Lambrecht</u> did make such a demand, which the Merrill board rejected.

Although the various defendants seek to dismiss both of the pending derivative actions on a variety of grounds, they all move to dismiss the actions on the ground that, as a result of the acquisition of Merrill by Bank of America in a stock-for-stock transaction, the plaintiffs are no longer Merrill shareholders and therefore lack standing to pursue these derivative actions as filed.[1] The Court heard oral argument on the issue of standing on January 14, 2009, and now grants the motion.[2]

The primary issue presented by this motion is whether Delaware law or what plaintiffs call "federal common law" should determine standing to bring a derivative action against a Delaware corporation in federal court. Perhaps predictably, Delaware law

---

[1] In January, 2009, Lambrecht made a demand on the Bank of America board, which, however, has not yet responded to the demand.

[2] Although the Court heard argument on January 20, 2009 on the defendants' other grounds for moving to dismiss, the Court's conclusion that the plaintiffs lack standing makes it unnecessary for the Court to reach any of the other issues at this time.

takes the view that "[a] plaintiff who ceases to be a shareholder, whether by reason of a merger or for any other reason, loses standing to continue a derivative suit." Lewis v. Anderson, 477 A.2d 1040, 1049 (Del. 1984). See also 8 Del.C. § 327. In acquiring Merrill in a stock-for-stock transaction, Bank of America thereby extinguished plaintiffs' standing to bring derivative suits on behalf of Merrill because they no longer own any Merrill stock. Such a result has been affirmed repeatedly. See, e.g., Feldman v. Cutaia, 951 A.2d 727, 731 (Del. 2008); Lewis v. Ward, 852 A.2d 896, 901 (Del. 2004); In re Syncor Int'l Corp. S'holders Litig., 857 A.2d 994, 998 (Del Ch. 2004).

Federal courts have also rigorously applied this "continuing ownership" rule. See, e.g., In re Countrywide Fin. Corp. Deriv. Litig., 581 F. Supp. 2d 650, 652-53 (D. Del. 2008); Fischer v. CF&I Steel Corp., 599 F. Supp. 340, 345-46 (S.D.N.Y. 1984). The only seeming exception is Blasband v. Rales, 971 F.2d 1034 (3d Cir. 1992). There, in a case somewhat similar to the instant one, the Third Circuit, after acknowledging that Delaware law governed and after accurately stating the rule in Lewis v. Anderson, nonetheless chose to preserve plaintiff's standing under its interpretation of the broad leeway provided by Delaware's principles of equity. Id. at 1044. Even then, however, the Third Circuit conceded that "this case may not fit neatly into existing Delaware law," id., and, indeed, Blasband has subsequently been marginalized, if not disapproved, by the Delaware courts themselves. See, e.g., Ward, 852 A.2d at 903 n.30; Lewis v. Ward, C.A. No. 15255, 2003 Del. Ch. LEXIS 111, at *13

n.15 (Del. Ch. October 29, 2003); In re First Interstate Bancorp Consol. S'holder Litig., 729 A.2d 851, 868 & n.18 (Del. Ch. 1998), aff'd sub nom. Bradley v. First Interstate Bancorp, 748 A.2d 913 (Del. 2000); Ash v. McCall, C.A. No. 17132, 2000 WL 1370341, at *13 & n.47 (Del. Ch. Sept. 15, 2000). Blasband, in short, is a tour de force that this Court, not being bound by Third Circuit law, declines to follow.

One of the many reasons for not following Blasband is that the Delaware courts have themselves clearly stated the two circumstances in which the rule of Lewis v. Anderson admits of exception: "(i) if the merger itself is the subject of a claim of fraud, being perpetrated merely to deprive shareholders of the standing to bring a derivative action; or (ii) if the merger is in reality merely a reorganization which does not affect plaintiff's ownership in the business enterprise." Lewis v. Ward, 852 A.2d 896 (Del. 2004) at 902 (citing Kramer v. Western Pac. Indus., Inc., 546 A.2d 348, 354 (Del. 1988)).³ Here, plaintiffs do not even argue that the merger is "merely a reorganization" in which the emergent entity is substantively identical to the pre-merger entity. While they do seek to bring themselves within the so-called "fraud exception" – which requires that "the merger was fraudulent and done merely to eliminate derivative claims," Ward, 852 A.2d at 905 – they do so by alleging in largely conclusory fashion that the individual defendants

---

³ The Third Circuit in Blasband conceded that neither of these exceptions applied to the derivative action brought there, see Blasband at 1041-42, which is why the court fell back on "equitable principles."

4

"[i]n an attempt to eliminate their personal liability for [their prior] wrongdoing, . . . hastily and without appropriate due diligence agreed to sell Merrill to Bank of America for . . . an extreme discount . . . ." Verified Second Amended Shareholder Derivative and Class Action Complaint ("Am. Compl.") at ¶ 1; see also Am. Compl. ¶¶ 14-15, 404. But nowhere do they provide the particularized allegations necessary to substantiate this claim of fraud, see Fed. R. Civ. P. 9(b), contenting themselves, instead, with simply listing standard practices of such a merger, such as indemnification of the acquired company's directors. See Am. Compl. ¶ 404. This is patently inadequate to draw this action within the ambit of the "fraud exception" to the rule of Lewis v. Anderson. See generally Globis Partners, L.P. v. Plumtree Software, Inc., No. 1577-VCP, 2007 Del. Ch. LEXIS 169, at *29 (Del. Ch. Nov. 30, 2007); In re Talley Indus., Inc. S'holders Litig., No. 15961, 1998 Del. Ch. LEXIS 53, at *12 n.1 (Del. Ch. Apr. 13, 1998).

Plaintiffs' primary argument, however, is that "federal common law," rather than Delaware law, should govern the question of standing to bring a derivative action against a Delaware company in federal court, even where, as here, all the claims asserted in the two derivative complaints are for violations of Delaware law. In the plaintiffs' view, the matter of standing in such circumstances is "procedural" and therefore governed by federal law under the doctrine of Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Although it is far from clear that plaintiffs would retain any more standing under federal common law than they would have under Delaware law, the Court

5

is not persuaded that anything other than Delaware law governs the determination of standing to bring a derivative action against a Delaware corporation, even if the action is brought in federal court. Although it appears to the Court that the concept of standing – defined in Black's Law Dictionary (7th ed. 1999) as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right" – does not fit neatly into one or the other divisions of the substance/procedure dichotomy of Erie, the concept is far more akin to a substantive policy determination than to a mere procedural nicety.  "Standing is the key to the courthouse door; those who possess the key, possess power."  Strauss, Rakoff, et al., Administrative Law 1121 (9th ed. 1995).

In support of their contention that standing in this context is no more than procedural in nature, plaintiffs cite no case or treatise but simply point to the requirements of Rule 23.1 of the Federal Rules of Civil Procedure.  But that rule merely states the minimum that must be pleaded to bring a derivative action in federal court (– Delaware, indeed, has a virtually identical rule –) and nowhere purports to set forth the requirements of standing to bring such an action.  By contrast, even Blasband, the case most relied on by plaintiffs, recognizes that state law governs the issue of standing to bring a derivative action against a state-chartered corporation.  The Court concludes that Delaware law governs the issue of standing presented by the instant motion.

It follows from the foregoing that none of the plaintiffs presently has standing to pursue either of the derivative actions

6

against Merrill now pending in this Court.  It remains only to address plaintiffs' fall-back request that, rather than dismiss the actions now, the Court stay its decision until such time, at a minimum, as the Bank of America responds to Lambrecht's pending demand or otherwise evidences that making such a demand is futile.  The Court declines to do so, however, since the Bank of America board is altogether different from the Merrill board and should be allowed to make its determination free from the pressure of pending litigation.  Having so determined, however, the Court notes that its dismissal is without prejudice to plaintiffs' filing with this Court if and when they have standing, a renewed action, recast as a derivative action against Bank of America, or as a so-called "double derivative" action, or otherwise, but based on the same underlying allegations as the actions here dismissed.[4]

For the foregoing reasons, defendants' motion to dismiss actions 07 Civ. 9696 and 08 Civ. 6582 for lack of standing is hereby granted.  Clerk to enter judgment dismissing the actions without prejudice to refiling in the circumstances stated above.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.

Dated: New York, New York
       February 17, 2009

---

[4] As noted above, the Court expresses no opinion on whether those allegations are sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

7