# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION | Master File No. 07-cv-9633 (JSR)(DFE) |
| This Document Relates To: Securities Action, 07cv9633 (JSR)(DFE) | |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS

Kaplan Fox & Kilsheimer LLP
Robert N. Kaplan
Frederic S. Fox
Joel B. Strauss
Donald R. Hall
Jeffrey P. Campisi
Aviah Cohen Pierson
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

Berger & Montague, P.C.
Lawrence J. Lederer
Merrill G. Davidoff
Arthur Stock
Robin Switzenbaum
Gary E. Cantor
Lane L. Vines
1622 Locust Street
Philadelphia, PA 19103-6365
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

Barrack, Rodos & Bacine
M. Richard Komins
Jeffrey A. Barrack
Robert A. Hoffman
Beth T. Seltzer
Julie B. Palley
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838

- and -

Regina M. Calcaterra
1350 Broadway, Suite 1001
New York, NY 10018
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

*Co-Lead Counsel for Lead Plaintiff State Teachers' Retirement System of Ohio and the Settlement Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

I.    PRELIMINARY STATEMENT ......................................................................... 1

II.   FACTUAL BACKGROUND ............................................................................. 1

   A.    Procedural History ................................................................................... 1

   B.    The Settlement ......................................................................................... 4

III.  ARGUMENT ..................................................................................................... 6

   A.    The Class Should Be Certified for Purposes of the Settlement ................. 6

      1.    Numerosity ......................................................................................... 7

      2.    Commonality ...................................................................................... 7

      3.    Typicality ........................................................................................... 8

      4.    Adequacy ............................................................................................ 8

      5.    Predominance and Superiority ............................................................ 9

   B.    The Settlement Notice Was Adequate ..................................................... 10

   C.    The Settlement Warrants Final Approval ................................................. 11

      1.    The Settlement Negotiations Demonstrate Procedural Fairness ........... 12

      2.    The Settlement is Substantively Fair .................................................. 13

         a.    The Complexity, Expense and Likely Duration of the Litigation ............... 14

         b.    The Stage of the Proceedings and Amount of Discovery ......................... 15

         c.    The Risks of Establishing Liability ........................................................... 17

         d.    The Risks of Establishing Damages .......................................................... 19

         e.    The Risks of Maintaining the Class Action Through Trial ........................ 20

         f.    The Ability of Defendants to Withstand a Greater Judgment .................... 21

         g.    The Range of Reasonableness of the Settlement Fund ............................. 22

h.    The Reaction of the Class ........................................................................................... 24

CONCLUSION ................................................................................................................................. 24

## TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997) ........................................................................................... 9

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.,*
    222 F.3d 52 (2d Cir. 2000) ................................................................................ 8

*Carson v. American Brands, Inc.,*
    450 U.S. 79 (1981) ........................................................................................... 17

*Chatelain v. Prudential-Bache Sec., Inc.,*
    805 F. Supp. 209 (S.D.N.Y. 1992) .............................................................. 13, 15

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ......................................................................... 14, 22

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ...................................................................... 12, 14, 21

*DeMarco v. National Collector's Mint, Inc.,*
    229 F.R.D. 73 (S.D.N.Y. 2005) ......................................................................... 7

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006) ............................................................................. 6

*Hicks v. Morgan Stanley & Co.,*
    No. 01-cv-10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................... 12, 22

*Iglesias-Mendoza v. La Belle Farm, Inc.,*
    239 F.R.D. 363 (S.D.N.Y. 2007) ...................................................................... 9

*In re American Bank Note Holographics,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................. 19

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,*
    No. 02-cv-5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................... 12, 20

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................. 17

*In re Blech Sec. Litig.,*
    187 F.R.D. 97 (S.D.N.Y. 1999) ...................................................................... 10

*In re Blech Sec. Litig.*,
   No. 94-cv-7696, 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002)................................. 19

*In re Chambers Dev. Sec. Litig.*,
   912 F. Supp. 822 (W.D. Pa. 1995) ................................................................. 23

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................ *passim*

*In re Lloyd's Am. Trust Fund Litig.*, No. 96-cv-1262, 2002 WL 31663577, at *21 (S.D.N.Y. Nov.
   26, 2002)........................................................................................... 19

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007) ............................................................ *passim*

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008)............................................................ 10, 11, 12

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993)......................................................................... 23

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998)....................................................................... 13

*In re Oxford Health Plans Inc. Sec. Litig.*,
   191 F.R.D. 369 (S.D.N.Y. 2000)......................................................................... 8

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ............... 12, 21

*In re Playmobil Antitrust Litig.*,
   35 F. Supp. 2d 231 (E.D.N.Y. 1998) .................................................................. 7

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999)....................................................................... 15

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 0165 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .................... 12

*In re Veeco Instruments, Inc. Sec. Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2006).................................................................. 7, 8, 9

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ......................................................................... 11

*Malchman v. Davis*,
   706 F.2d 426 (2d Cir. 1983) ...................................................................................... 12

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................... 15, 19

*People United for Children, Inc. v. City of New York*,
   214 F.R.D. 252 (S.D.N.Y. 2003) ................................................................................. 7

*Pollio v. MF Global, Ltd.*,
   No. 08-cv-6858 (JSR), 2009 U.S. Dist. LEXIS 29777 (S.D.N.Y. Apr. 8, 2009) ...................... 14

*Robinson v. Metro North Commuter R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001) ...................................................................................... 8

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ......................................................................... 10, 11, 21

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1983) ...................................................................................... 15

*Weseley v. Spear, Leeds & Kellogg*,
   711 F. Supp. 713 (E.D.N.Y. 1989) ........................................................................... 15

*West Virginia v. Chas. Pfizer & Co.*,
   314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) .................................. 23

*White v. First Am. Registry, Inc.*,
   No. 04-cv-1611, 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007) ..................................................... 14

**Statutes**

Private Securities Litigation Reform Act of 1995,
   15 U.S.C. § 78u-4(a)(3) ............................................................................................. 2

Securities Act of 1933
   Section 11 ................................................................................................................ 2, 17

   Section 12 .................................................................................................................... 17

   Section 12(a)(2) ............................................................................................................ 2

   Section 15 ............................................................................................................... 2, 17

Securities Exchange Act of 1934
   Section 10(b) ................................................................................................................ 2

Section 14 ...................................................................................................... 17

Section 14(a) ..................................................................................................... 2

Section 20(a) ..................................................................................................... 2

## Rules

Federal Rules of Civil Procedure
    Rule 23 ........................................................................................................ 1

    Rule 23(a) ............................................................................................... 6, 10

    Rule 23(a)(1) ............................................................................................... 7

    Rule 23(a)(2) ............................................................................................... 7

    Rule 23(a)(3) ............................................................................................... 8

    Rule 23(a)(4) ............................................................................................... 8

    Rule 23(b)(3) ....................................................................................... 6, 9, 10

    Rule 23(e) ................................................................................................. 11

    Rule 23(g) ................................................................................................... 8

    Rule 41(a) ................................................................................................... 3

    Rule 10b-5 ................................................................................................... 2

    Rule 10b-5(a) ............................................................................................ 17

    Rule 10b-5(c) ............................................................................................ 17

## Other Authorities

Laura E. Simmons & Ellen M. Ryan,
    *Securities Class Action Settlements: 2008 Review and Analysis* ............................................. 22

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff State

Teachers' Retirement System of Ohio ("Lead Plaintiff" or "Ohio STRS"), individually and on

behalf of the Settlement Class,[1] by and through its counsel, submits this memorandum in

support of final approval of the proposed Settlement of this litigation.

## I.    PRELIMINARY STATEMENT

The proposed Settlement provides a recovery for the Settlement Class of $475 million

in an exceedingly complex case. While Lead Plaintiff remains confident as to the merit of the

claims it asserts, the Settlement Class may well recover nothing absent this Settlement. This

extremely favorable Settlement was negotiated at arm's-length by experienced counsel and

was hard fought on both sides. The proposed Settlement represents an excellent recovery for

the Settlement Class, meets all applicable criteria for approval, and should therefore be

approved. If approved, the proposed Settlement will resolve this action against all

Defendants.

## II.    FACTUAL BACKGROUND

### A.    Procedural History

This Action was commenced on October 30, 2007 by the filing of a complaint

captioned *Life Enrichment Foundation v. Merrill Lynch & Co., Inc.,* No. 07-cv-9633

(S.D.N.Y.). Additional complaints were filed thereafter in this Court. These complaints,

variously naming as defendants Merrill Lynch & Co., Inc. ("Merrill"), Merrill Lynch Pierce

Fenner & Smith Incorporated ("MLPFS"), Merrill Lynch Capital Trusts I, II and III, certain

senior Merrill officers and directors, certain underwriters of Merrill Preferred Securities and

---

[1]    Capitalized terms not otherwise defined have the meaning set forth in the Stipulation

1

Merrill's auditor, Deloitte & Touche LLP ("Deloitte"), alleged that defendants violated

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and

Securities and Exchange Commission ("SEC") Rule 10b-5, and/or Sections 11, 12(a)(2) and

15 of the Securities Act of 1933 (the "Securities Act"), by misrepresenting and omitting

material facts concerning Merrill's exposures to subprime mortgages and related assets.

On March 12, 2008, the Court consolidated all of these related actions, and appointed

Ohio STRS as Lead Plaintiff and approved Lead Plaintiff's selection of Co-Lead Counsel in

accordance with the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15

U.S.C. § 78u-4(a)(3).

On May 21, 2008, Lead Plaintiff, together with additional plaintiff Gary Kosseff

(collectively, "Plaintiffs"), filed a consolidated amended class action complaint (the

"Complaint") asserting claims under Sections 10(b), 14(a), and 20(a) of the Exchange Act,

and Sections 11, 12(a)(2), and 15 of the Securities Act. Plaintiffs named as defendants

Merrill, MLPF&S, Merrill Lynch Capital Trusts I, II and III, and Merrill senior officers

O'Neal, Edwards, Fleming and Fakahany (collectively, the "Defendants").[2] Plaintiffs alleged,

among other things, that Defendants caused Merrill to accumulate financial exposures to U.S.

subprime residential mortgage-related assets and asset backed securities ("ABS"), including

collateralized debt obligations ("CDOs"), which reached $40 billion by the end of June 2007.

The Complaint alleged that Defendants did not properly disclose Merrill's exposure to the

risks associated with these financial instruments, which risks were known within Merrill, until

---

and Agreement of Settlement dated as of February 17, 2009 (the "Settlement Stipulation").

[2]    On or about July 28, 2008, Lead Plaintiff entered into a tolling agreement with the
underwriter defendants voluntarily dismissing them in accordance with the tolling agreement

a series of partial disclosures beginning in October 2007, when Merrill began to disclose its exposures and began to write down these assets. By January 17, 2008, Merrill had written down over $24 billion in U.S. subprime ABS CDO exposures. Plaintiffs also alleged: (a) that Defendants sought to minimize and/or obscure Merrill's subprime-related exposures by falsely representing that Merrill's risk controls and hedging techniques were effectively mitigating and minimizing any impact that subprime assets would have on Merrill; (b) that Defendants falsely led investors to believe that the impact of subprime assets would be minimal on Merrill; and (c) that by at least February 2007, Merrill's U.S. subprime ABS CDO exposures had become substantially impaired and should have then been written down.

On July 21, 2008, Defendants filed several motions to dismiss the Complaint. Defendants' motions to dismiss asserted, among other things, that the Complaint failed: to state any actionable claims; to plead scienter with the requisite particularity; to sufficiently plead falsity; and to sufficiently plead loss causation.

On September 19, 2008, Plaintiffs filed a consolidated opposition to Defendants' motions to dismiss. Plaintiffs also filed a Motion to Strike Extrinsic Documents and Certain Arguments made in Defendants' motions to dismiss.

On November 14, 2008, Defendants filed reply memoranda in further support of their motions to dismiss, and in opposition to Plaintiffs' motion to strike. Plaintiffs filed a reply memorandum in further support of their motion to strike on November 14, 2008.

On November 25, 2008, the Court issued an order setting oral argument on the pending motions to dismiss for January 15, 2009. On January 7, 2009, with the motions to

---

and Fed. R. Civ. P. 41(a), which the Court approved on August 5, 2008.

dismiss still pending, the parties agreed in principle to settle this litigation subject to the

approval of the Court. If approved, the Settlement will release all claims that were, or could

have been, asserted in the Complaint relating to Settlement Class Members' purchase or

acquisition of Merrill common stock and Preferred Securities during the Settlement Class

Period.

### B.     The Settlement

Beginning in November 2008, the parties engaged in vigorous good faith, arm's-length

negotiations in an effort to resolve this litigation.[3] The parties met both in person and by

telephone on numerous occasions. *Id.* at ¶ 34. Ultimately, the parties agreed to settle the

claims for $475 million in cash subject to the approval of the Court.[4] If approved, the

proposed Settlement would be the largest recovery thus far in any subprime-related securities

class action case of which we are aware, and among the top 20 largest recoveries in the history

of securities class action litigation under the PSLRA.

Following agreement on the Settlement consideration, the parties negotiated the terms

and exchanged several drafts of the Settlement Stipulation. Co-Lead Counsel also prepared

the printed Settlement Notice and Proof of Claim form, the summary notice, the Final

---

[3]     *See* Joint Declaration of Frederic F. Fox, Lawrence J. Lederer and M. Richard Komins
in Support of Motion for Final Approval of Class Action Settlement and Certification of the
Class; Motion for Approval of Plan of Allocation of Settlement Proceeds, and Motion for an
Award of Attorney Fees and Reimbursement of Expenses (the "Joint Decl.") at ¶ 34.

[4]     The Settlement was funded on February 24, 2009. *See* Declaration of Bill S. McIntyre
at ¶ 2. The Notice and Administration Fund was also established as authorized by paragraph 9
of the Preliminary Order. The Settlement Fund will continue to earn interest until it is paid to
the Settlement Class.

Judgment and the Plan of Allocation,[5] and the Preliminary Order which the Court approved on

March 2, 2009.

Consistent with the Preliminary Order, over 919,000 Settlement Notices were mailed

to Settlement Class Member and potential Settlement Class Members beginning on April 2,

2009, and a summary notice describing the Settlement was published in *The Wall Street*

*Journal* and electronically via *PR Newswire* on April 9, 2009. The Settlement Notice and

other documents are also available via a website established for this litigation,

www.merrilllynchlitigation.com. *See* Ferrara Decl. at ¶ 13. As of June 23, 2009, only 2

objections and 111 requests for exclusion were received. *Id.* at ¶ 20-21; Joint Decl. at ¶ 6.

Requests for exclusions and objections to the Settlement are due on July 6, 2009. Plaintiffs

intend to file, following the July 6 deadline and before the July 27, 2009 hearing, additional

papers addressing objections and opt-outs.

If the Court approves the proposed Settlement, and following payment of all taxes,

fees, costs and expenses as approved by the Court, the Net Settlement Fund will be distributed

to Authorized Claimants in accordance with the Plan of Allocation, and subject to the

approval of the Court. The parties' Settlement Stipulation also contains a release and waiver,

and bars any Settlement Class Members from asserting any of the Released Claims against the

Released Parties.

---

[5]    A copy of the parties' Settlement Stipulation is attached as *Exhibit 1* to the Appendix of Exhibits (the "Appendix"). The printed Notice, Proof of Claim, and summary notice are attached as Exhibits to the Declaration of Charles E. Ferrara (the "Ferrara Decl."). The proposed Final Order and Judgment is attached as Exhibit B to the Stipulation and is also attached as Exhibit 2 to the Appendix.

### III.    ARGUMENT

### A.    The Class Should Be Certified for Purposes of the Settlement

In paragraph one of its March 2, 2009 Preliminary Order, the Court conditionally

certified a class consisting of "[a]ll persons who purchased or acquired" Merrill's common

stock and Preferred Securities during the Settlement Class Period.[6]  Because as detailed below

all the requirements for class certification have been met, and in light of the substantial

benefits the Settlement confers on the Settlement Class, Lead Plaintiff respectfully requests

that the Court now grant final certification of the Class for purposes of the Settlement.

"'Before certification is proper for any purpose – settlement, litigation, or otherwise –

a court must ensure that the requirements of Rule 23(a) and (b) have been met.'"  *In re Merrill*

*Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 163 (S.D.N.Y. 2007) ("*ML*

*Tech*") (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006)).  Rule 23(a)

has four requirements:  numerosity, commonality, typicality, and adequacy.  Rule 23(b)(3)

requires that "[c]ommon questions must 'predominate over any questions affecting only

individual members,'" and that "class resolution must be 'superior to other available methods

for the fair and efficient adjudication of the controversy.'"  Each of these requirements is

satisfied here.

---

[6]    Also as set forth in the Preliminary Order, excluded from the Settlement Class are the Defendants and their affiliates, Temasek Capital (Private) Limited, Davis Selected Advisors L.P. and their affiliates; present and former employees of Merrill and its subsidiaries who acquired Merrill securities through exercise of warrants and/or as compensation; and any Settlement Class Members who exclude themselves by filing a timely, valid request for exclusion.

### 1. Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all

Settlement Class Members is impracticable." No minimum number is required for class

certification. Generally, "courts will find a class sufficiently numerous when it comprises 40

or more members." *DeMarco v. National Collector's Mint, Inc.*, 229 F.R.D. 73, 80 (S.D.N.Y.

2005). The Settlement Notice was mailed to over 919,000 persons, and the Clams

Administrator has received (as of June 23, 2009) 36,016 Proofs of Claim. Ferrara Decl. at ¶

18-19; Joint Decl. at ¶ 6. Hence, the numerosity requirement is satisfied.

### 2. Commonality

Rule 23(a)(2) requires that there be some question of law or fact common to the class.

"So long as the class shares at least one question of fact or law, the commonality requirement

is met." *People United for Children, Inc. v. City of New York*, 214 F.R.D. 252, 257-58

(S.D.N.Y. 2003). The rule is satisfied where, as here, "'all class members are in a

substantially identical factual situation and the questions of law raised by the plaintiff are

applicable to each class member.'" *ML Tech*, 246 F.R.D. at 164 (quoting *In re Playmobil*

*Antitrust Litig.*, 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998)). "The commonality requirement

has been applied permissively in the context of securities fraud litigation." *In re Veeco*

*Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006).

Numerous questions of law <u>and</u> fact common to each Settlement Class Member exist

here. These include, among others: whether the federal securities laws were violated by

Defendants' alleged acts; whether Defendants acted with scienter; whether Settlement Class

Members sustained damages caused by Defendants' conduct; and the proper measure of any

7

such damages. These factual and legal issues satisfy the commonality requirement. *See In re Oxford Health Plans Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("[W]here the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met." (citations omitted)).

### 3.    Typicality

Rule 23(a)(3) is met where, as here, "'the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed Settlement Class Members.'" *ML Tech*, 246 F.R.D. at 164 (quotation omitted); *Robinson v. Metro North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001) (typicality exists if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability") (citation omitted). A proposed class representative's claims satisfy the typicality requirement where, as here, the claims of the plaintiffs are shared by the class. Here, Defendants' omissions and misrepresentations regarding Merrill's exposures to U.S. subprime CDOs are alleged to have similarly damaged the Plaintiffs and the Settlement Class. Hence, the typicality requirement is satisfied.

### 4.    Adequacy

Rules 23(a)(4) and 23(g) require that the plaintiff demonstrate that it will fairly and adequately protect the interests of the class. "This requires a two-part inquiry: (1) whether plaintiff's interests are antagonistic to the interest of other members of the class, and (2) whether plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation." *Veeco*, 235 F.R.D. at 239 (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

8

As discussed above, Plaintiffs' claims arise from the same course of conduct as the claims of the Settlement Class. Far from conflicting in any way, the interests of Plaintiffs and the Settlement Class are the same: to maximize their recoveries. Plaintiffs have asserted the same federal securities law claims which Settlement Class Members have.

In addition, Lead Plaintiff has retained counsel experienced in securities litigation, who have represented ably the interests of the Settlement Class. *See* Appendix at Exhibits 5-10 (attaching Plaintiffs' Counsel's firm resumés). *Cf. Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 375 (S.D.N.Y. 2007) (finding adequacy of counsel under Rule 23(g); "[Counsel] has diligently identified and pursued the claims in this action to date."). Further, representatives of both Lead Plaintiff and the Ohio Attorney General's office have actively supervised this litigation by, *inter alia,* reviewing drafts of key pleadings and briefs and participating in all major strategic decisions, from the filing of the Complaint through the proposed Settlement. *See* Declaration of William J. Neville ("Neville Decl.") at ¶ 3; Declaration of Dennis Smith ("Smith Decl.") at ¶ 2. Thus, the requirements of Rule 23(a)(4) and 23(g) have been met.

### 5. Predominance and Superiority

Rule 23(b)(3) requires "'[1] that common questions of law or fact predominate over individual questions and [2] that a class action is superior to other methods of adjudication.'" *ML Tech*, 246 F.R.D. at 164 (quoting *Veeco*, 235 F.R.D. at 240). "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Common questions predominate where, as here, the issue of a defendant's liability is common among Settlement

9

Class Members. *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999). Here, each

Settlement Class Member would have to allege and prove virtually identical facts, even

assuming it was desirable for them to bring suits individually. Only their damages would

differ depending on when each acquired, sold and/or held their Merrill common stock and/or

Preferred Securities. Hence, common questions predominate.

Given the number of Settlement Class Members and their relative damages, it is also

unlikely that they would want to endure the expense of litigation by bringing their claims

individually. Nor is there any indication that there will be difficulties in administering the

Settlement. *In re Blech*, 187 F.R.D. at 107. Thus, class action treatment here is superior to

any other method.

In sum, all of the requirements of Rules 23(a) and (b)(3) are satisfied. Thus, the Court

should certify the Settlement Class for purposes of the Settlement.

## B.  The Settlement Notice Was Adequate

The adequacy of a class action settlement notice is "measured by reasonableness."

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.,* 396 F.3d 96, 113 (2d Cir. 2005). Notice need not

be perfect or received by every Settlement Class Member, but instead be the best practicable

in the circumstances. *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133

(S.D.N.Y. 2008) (*"In re ML Tyco"*). Additionally, notice is adequate if the average

Settlement Class Member understands the terms of the proposed settlement and the options

they have. *Wal-Mart*, 396 F.3d at 114; *In re ML Tyco*, 249 F.R.D. at 133.

Here, notice of the Settlement was sent via direct mail to all Settlement Class

Members who the Claims Administrator identified with reasonable effort, as the Preliminary

10

Order directed. More than 919,000 Settlement Notices were mailed. Ferrara Decl. at ¶ 18. In addition, the summary notice was timely published in *The Wall Street Journal* and electronically via *PR Newswire* on April 9, 2009 in accordance with the Court's Preliminary Order, and is available via www.merrilllynchlitigation.com. *Id*. at ¶ 13. Both notices summarized in plain language the Settlement and Settlement Class Members' rights. Hence, the notice program here was reasonable.

## C.    **The Settlement Warrants Final Approval**

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be approved by the Court. The determination whether to approve a settlement is committed to the Court's discretion. *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000); *In re ML Tyco*, 249 F.R.D. at 132. As a matter of public policy, courts favor the settlement of disputed claims, particularly in complex class actions. *Wal-Mart*, 396 F.3d at 116 ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'") (citation omitted); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) ("[F]ederal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources. Accordingly, this Court will take into consideration such public policy concerns in exercising its discretion.") (citations omitted).

In addition to the requirements of adequate notice discussed above and a fairness hearing, Rule 23(e) provides that the Court should examine both the negotiating process leading to the Settlement, and the Settlement's substantive terms. *Wal-Mart*, 396 F.3d at 116; *In re ML Tyco*, 249 F.R.D. at 133. The Court may presume that a settlement negotiated at

11

arm's-length by experienced counsel is fair and reasonable. *Id.*; *In re Veeco Instruments Inc.
Sec. Litig.*, No. 05 MDL 0165 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("A
proposed class action settlement enjoys a strong presumption that it is fair, reasonable and
adequate if, as is the case here, it was the product of arm's-length negotiations conducted by
capable counsel, well-experienced in class action litigation arising under the federal securities
laws.") (citation omitted); *In re Global Crossing*, 225 F.R.D. at 461.[7]

### 1.    The Settlement Negotiations Demonstrate Procedural Fairness

The parties here negotiated the Settlement at arm's-length. *See* Joint Decl. at ¶¶ 35-35.
The negotiation process was intense and included extensive "give-and-take" among the
parties. *Id.* These discussions included telephonic and in-person meetings, including directly
with Merrill Lynch's senior "in-house" counsel. *Id.*

Lead Plaintiff also took an active role in this litigation, precisely as the PSLRA
intended. *See* Neville Decl. at ¶ 2; Smith Decl. at ¶ 2;  Joint Decl. at ¶¶ 40-41. *Accord
Global Crossing*, 225 F.R.D. at 462; *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No.
02-cv-5575, 2006 WL 903236, at *7 (S.D.N.Y. Apr. 6, 2006) ("Courts in this District have
also commented on the procedural safeguards inherent in cases subject to the PSLRA, wherein
the lawyers are not 'mere entrepreneurs acting on behalf of purely nominal plaintiffs' ....")
(quoting *Global Crossing*, 225 F.R.D. at 462); *Veeco*, 2007 WL 4115809, at *5 ("Moreover,
under the PSLRA, a settlement reached ... under the supervision and with the endorsement of
a sophisticated institutional investor ... is 'entitled to an even greater presumption of

---

[7]    *Accord Hicks v. Morgan Stanley & Co.*, No. 01-cv-10071 (RJH), 2005 WL 2757792,
at *5 (S.D.N.Y. Oct. 24, 2005); *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983);
*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

reasonableness .... Absent fraud or collusion, the court should be hesitant to substitute its

judgment for that of the parties who negotiated the settlement.") (citation omitted).

Lead Plaintiff also participated in and was kept informed throughout the settlement

negotiation process, and supports the proposed Settlement. *See* Neville Decl. at ¶¶ 3, 7-10;

Smith Decl. at ¶ 2, 6-8; Joint Decl. at ¶¶ 40-41. Further, Co-Lead Counsel, who have

extensive experience prosecuting complex securities class action litigation, submit that the

Settlement is not only fair, reasonable and adequate, but an outstanding result. *See* Joint Decl.

at ¶ 3. Their opinion is entitled to "great weight*. " In re NASDAQ Market-Makers Antitrust*

*Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts have consistently given "'great weight'

... to the recommendations of counsel, who are most closely acquainted with the facts of the

underlying litigation."). *Accord Chatelain v. Prudential-Bache Sec., Inc.,* 805 F. Supp. 209,

212 (S.D.N.Y. 1992).

### 2.    The Settlement is Substantively Fair

An analysis of the well-established factors which the Second Circuit has held are

relevant for considering whether a settlement is fair, reasonable and adequate demonstrate that

the Court should grant final approval. These include: (a) the complexity, expense and likely

duration of the litigation; (b) the stage of the proceedings and the amount of discovery

completed; (c) the risks of establishing liability; (d) the risks of establishing damages; (e) the

risks of maintaining the class action through trial; (f) the ability of the defendants to withstand

a greater judgment; (g) the range of reasonableness of the settlement fund in light of the best

possible recovery; (h) the range of reasonableness of the settlement fund to a possible

recovery in light of all the attendant risks of litigation; and (i) the reaction of the class to the

Settlement. *D'Amato*, 236 F.3d at 86 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448,

463 (2d Cir. 1974)).

"In finding that a settlement is fair, not every factor must weight in favor of settlement,

'rather the court should consider the totality of these factors in light of the particular

circumstances." *Global Crossing*, 225 F.R.D. at 456 (citation omitted). Similarly, a court

"should not attempt to approximate a litigated determination of the merits of the case lest the

process of determining whether to approve a settlement simply substitute one complex, time

consuming and expensive litigation for another." *White v. First Am. Registry, Inc.*, No. 04-cv-

1611, 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007).

### a.     The Complexity, Expense and Likely Duration of the Litigation

This litigation involved multiple complex legal and factual issues. Plaintiffs

encountered, and absent the Settlement would have certainly continued to encounter at

summary judgment and at trial, significant risks in proving falsity, scienter, loss causation and

the other necessary elements to establish violations of the securities laws, among other things.

These obstacles are detailed more fully in ¶¶ 46-57 of the Joint Decl. Any one of these

defenses may have meant no recovery for the Settlement Class. *See, e.g., Pollio v. MF

Global, Ltd.*, No. 08-cv-6858 (JSR), 2009 U.S. Dist. LEXIS 29777, at *24 (S.D.N.Y. Apr. 8,

2009) (Rakoff, J.) (dismissing securities class action with prejudice "for failure to adequately

plead the existence of materially false statements or of scienter").

If not for this Settlement, the case would have continued to be contested fiercely by the

Defendants who have demonstrated a commitment to defend through and beyond trial and are

14

represented by well-respected and highly capable counsel. The legal and factual issues

pertaining to loss causation alone would have involved competing expert testimony and

substantial time and expense. A trial would turn on close questions of evidence and fact. The

costs and duration of motion practice, discovery, trial preparation and trial would likewise

substantially increase. Appeals would likely follow.

The proposed $475 million Settlement provides a substantial and tangible present

recovery, without the attendant further expense, uncertainty and risk of no recovery. Indeed,

class actions "are notoriously complex, protracted, and bitterly fought." *Weseley v. Spear,*

*Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989). *See also In re Sumitomo Copper*

*Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) ("[I]n evaluating the settlement of a securities

class action, federal courts ... 'have long recognized that such litigation is notably difficult and

notoriously uncertain.'") (citation omitted); *Maley v. Del Global Techs. Corp.*, 186 F. Supp.

2d 358, 362 (S.D.N.Y. 2002) ("Settlement at this juncture results in a substantial and tangible

present recovery, without the attendant risk and delay of trial.").

In sum, the complexity, expense and delay of continued litigation would be

substantial. Accordingly, this factor favors approval of the Settlement.

### b.    The Stage of the Proceedings and Amount of Discovery

This factor examines the amount of information available about the claims and

defenses to ensure that the plaintiff was able to properly evaluate his case and to assess the

adequacy of any settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1983);

*Chatelain*, 805 F. Supp. at 213-14; *Global Crossing*, 225 F.R.D. at 458 (this requirement "is

intended to assure the Court 'that counsel for plaintiffs have weighed their position based on a

15

full consideration of the possibilities facing them'") (citation omitted). "Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claim." *Id.*

Here, Lead Plaintiff had the benefit of millions of pages of documents and other information obtained in confirmatory discovery and as a result of Co-Lead Counsel's investigation. This included, among others things: the review of massive databases housing nearly 40 million pages of documents produced by Merrill to the SEC and other regulators and to Co-Lead Counsel here; additional documents produced by Deloitte relating to its audits of Merrill's financial statements during the Settlement Class Period; interviews of each of the individual defendants named in the Complaint and other Merrill officials; a "proffer" with Merrill's senior in-house counsel regarding the status of the regulatory investigations and Merrill's claimed defenses; and Co-Lead Counsel's independent review of numerous additional materials, including Merrill's SEC filings, dozens of CDO prospectuses and other documents such as news, internet and other media reports. Joint Decl. at ¶¶ 18-22; 58-62. Co-Lead Counsel also interviewed informants and consulted with, and obtained reports on damages and loss causation prepared by, Lead Plaintiff's outside experts, and researched the applicable law with respect to Lead Plaintiff's claims and Defendants' potential defenses, among other things. *Id.*

In sum, Lead Plaintiff through Co-Lead Counsel had a full understanding of the strengths and weaknesses of the claims as well as the difficulties the Settlement Class would face in obtaining a favorable jury verdict after a lengthy trial, again even assuming this litigation survived pretrial motion practice. Having sufficient information to fully evaluate the

16

strengths and weaknesses of the Settlement, Lead Plaintiff and Co-Lead Counsel submit they have proposed for the Court's approval a very favorable Settlement.

### c.     The Risks of Establishing Liability

In assessing this factor, the Court is not required to "decide the merits of the case or resolve unsettled legal questions," *Carson v. American Brands, Inc.,* 450 U.S. 79, 88 (1981), or to "foresee with absolute certainty the outcome of the case." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000). "[R]ather, the court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Global Crossing*, 225 F.R.D. at 459.

The Section 10b-5(b) claim in this case focuses on whether Defendants issued false and misleading financial statements with scienter; whether certain of the individual defendants issued false and misleading certificates of compliance with the Sarbanes-Oxley Act; whether the price of Merrill's securities was inflated artificially; and whether Plaintiffs were damaged, among other things.[8]

Defendants have sharply contested the merits of all of the claims. They have asserted that Lead Plaintiff cannot establish the existence of a false or materially misleading statement, scienter, or loss causation. Defendants argued, and we expect would continue to argue, that losses at issue were the result of rapidly changing market conditions and arguably the worst credit crisis since the Great Depression. Defendants have asserted that the principal dates of large declines in the price of Merrill stock correspond to declines in the prices of other

---

[8]     Plaintiffs also alleged 10b-5(a) and (c) claims and non-fraud claims under Sections 11, 12 and 15 of the Securities Act and Section 14 of the Exchange Act. Plaintiffs' non-fraud claims are based on offerings of Preferred Securities and Merrill's acquisition of First

financial industry stocks, and that several of Merrill's competitors, most notably Lehman Brothers, collapsed in this time period.

Defendants also asserted that in addressing Merrill's exposure to subprime-related assets, Merrill in good faith used its business judgment both in engaging in this business and, as market conditions changed, addressing concerns regarding its positions. In addition, Defendants contended that Merrill appropriately marked and accounted for these assets and had adequate risk management functions in place. Moreover, Merrill would likely contend that it properly and timely disclosed its losses, and even that it was among the first financial firms which disclosed subprime-related losses when it pre-announced an estimate of its 2007 Third Quarter results, instead of waiting until its scheduled October 24, 2007 earnings call.

Further, there would be significant risks in establishing loss causation. For example, defendants' position was that in late summer and early fall 2007 a credit crisis of an unprecedented nature impacted all of the financial industry, not just Merrill. Defendants took the position that any drop in the price of Merrill's common stock and Preferred Securities was attributable to that crisis rather than any wrongdoing on their part. Indeed, upon Merrill's pre-announcement of its Third Quarter 2007 results on October 5, 2007, the price of Merrill's common stock actually increased which, the Defendants would likely have asserted, indicated that the market was aware and expecting significant write-downs at that time.[9] *See* Joint Decl. at ¶ 50. In addition, the price of Merrill Lynch stock had been declining throughout most of

---

Republic Bank.

[9]     In particular, Defendants point out that before the markets opened on October 5, 2007, Merrill first disclosed that it expected to report a net third quarter 2007 loss and that it would take a write down of some $4.5 billion for its subprime-related CDOs and related assets. However, the price of Merrill's stock actually *increased* that day, from a close of $74.78/share

the Settlement Class Period. *Id.*

Most fundamentally, Defendants claim to have acted in good faith at all times. While Plaintiffs believe that they had valid responses to these arguments, a jury might ultimately have been persuaded by Defendants' arguments and find in their favor.

Moreover, in attempting to prove to a jury the elements of liability, materiality, causation and scienter -- including the role of specific individual defendants in the alleged fraud, whether their actions violated GAAP and/or the Sarbanes Oxley Act, and whether the decline in Merrill's securities was caused by specific "corrective" disclosures -- Plaintiffs would likely need to rely heavily on the testimony of accounting and damages experts, who would be challenged by Defendants. Therefore, a very lengthy and complex battle of the parties' experts likely would have ensued at trial, with highly unpredictable results. In sum, the risks in demonstrating liability militate in favor of the Settlement. *Maley*, 186 F. Supp. 2d at 364 (noting the many obstacles to plaintiff's ability to prevail on the merits).

Confirmatory discovery has confirmed that Defendants would be able to continue to assert these defenses and that, in Lead Plaintiff's opinion, the proposed Settlement is fair, reasonable and adequate. See Neville Decl. at ¶ 10; accord Joint Decl. at ¶ 3.

### d.    The Risks of Establishing Damages

Plaintiffs also faced substantial risk in proving the existence and amount of damages. Plaintiffs would have to prove that "each class member's damages (if any) resulted from defendants' alleged misconduct, and the amount of any such damages." *Global Crossing*, 225

---

on October 4, 2007, to a close of $76.67/share on October 5, 2007.

F.R.D. at 459. And as noted, Defendants have asserted that the declines in the prices of Merrill securities were attributable to market and other non-culpable factors.

Again assuming this case survived pretrial motions and Plaintiffs proved liability, the economic and securities law issues pertaining to loss causation and damages would have been both complex and hotly contested, requiring expert testimony on sophisticated methodologies, with uncertain results. *See, e.g., In re Lloyd's Am. Trust Fund Litig.*, No. 96-cv-1262, 2002 WL 31663577, at *21 (S.D.N.Y. Nov. 26, 2002) ("The reaction of a jury to such complex expert testimony is highly unpredictable."); *Global Crossing*, 225 F.R.D. at 459; *In re Blech Sec. Litig.*, No. 94-cv-7696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) ("establishing damages from the drop in the relevant stock price, would, Plaintiffs claim, have degenerated into a 'battle of the experts' and thus posed a risk to Plaintiffs"). The jury could be swayed that damages were caused by factors other than Defendants' wrongdoing or, alternatively, that the amount of losses suffered by the class was minimal. *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 427 (S.D.N.Y. 2001).

In sum, while Plaintiffs believe that their claims are meritorious and that the Settlement Class suffered substantial damages, there were no guarantees that Plaintiffs would recover anything.

### e.    The Risks of Maintaining the Class Action Through Trial

The Defendants would also almost certainly have opposed the certification of the Class in continued litigation. Indeed, the Defendants consented to, and the Court in the Preliminary Order approved, certification of the Settlement Class only for purposes of the Settlement. Hence, this factor also supports approval of the Settlement. *See, e.g., In re AOL*, 2006 WL

903236, at *12 (increased risk of obtaining class certification absent the class settlement was a factor favoring approval of the class settlement); *Global Crossing*, 225 F.R.D. at 460.

### f.    The Ability of Defendants to Withstand a Greater Judgment

Settlement discussions began shortly after two of Merrill's competitors, Bear Stearns and Lehman Brothers, essentially collapsed with extraordinary rapidity, and at a time when Merrill's and Bank of America's ("BofA")  stock prices had declined to their lowest levels in over a decade.  Moreover, both Merrill and BofA were also widely rumored to be financially imperiled by the end of 2008, requiring billions of dollars in government funds to stay afloat. The effect on these corporations, and on legal claims against them, of the governmental bailouts was unclear.  Merrill represented that it did not carry insurance covering these claims, and the individual defendants did not have sufficient wealth relative to the potential damages. Joint Decl. at ¶¶ 56-57.  In sum, the uncertainty of Merrill and/or its successor withstanding a judgment following a trial several years in the future remains another factor militating in favor of approving this Settlement.

Indeed, even if a defendant has both legal responsibility and assets to withstand a greater judgment, that does not necessarily render a settlement inadequate. *D'Amato*, 236 F.3d at 86.  It is frequently true in complex securities class action litigation that defendants *could* pay more.  But particularly considering the risks in proving liability and damages in this case, the uncertain ability of Defendants to withstand a greater judgment likewise favors approval of the Settlement.

21

### g.    The Range of Reasonableness of the Settlement Fund

The final *Grinnell* inquiry is whether the settlement amount is reasonable in light of the possible recovery and the risks of litigating the case on the merits.[10] When weighed against the risks of continued litigation, the proposed Settlement compares extremely favorably with the result the Settlement Class could have obtained.

The $475 million all-cash recovery in this action is, by any measure, a substantial sum. Further, in light of the unpredictability of a lengthy and complex trial, and the inevitable appellate process that would follow with the risk of reversal, the $475 million Settlement falls squarely within the" range of reasonableness." *See Wal-Mart*, 396 F.3d at 119 ("there is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion") (citation omitted); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. at 125 ("[f]undamental to analyzing a settlement's fairness is the need to compare the terms of the compromise with the likely rewards of litigation ... this determination is not susceptible of a mathematical equation yielding a particular sum but turns on whether the settlement falls with a range of reasonableness") (citations omitted).

The $475 million proposed Settlement represents a recovery of approximately $.881 per damaged share of common, and $.165 per damaged share of Preferred Securities, for the largest group of shareholders, those who purchased before October 24, 2007 and held through

---

[10]    Courts typically collapse into this inquiry the final two *Grinnell* factors, "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks

August 7, 2008.[11] Joint Decl. at ¶ 42. This is well within the range of reasonableness. *See,*

*e.g.*, *ML Tech*, 246 F.R.D. at 167 ("Thus, the Settlement Fund here represents between

approximately 3% and 7% of the claimed damages. A recovery of between approximately 3%

and 7% of estimated damages is within the range of reasonableness for recovery in the

settlement of large securities class actions.") (citations omitted); *Hicks v. Stanley*, 2005 WL

2757792, at *7 (finding a settlement representing 3.8% of Plaintiffs' estimate to be within the

range of reasonableness).

Published data on securities fraud settlements further confirm the fairness of the

proposed Settlement. The estimated recovery here far exceeds the median percentage

recovery of 0.9% - 1.3% reported by Cornerstone Research for settlements where the

estimated damages were between $1 and $5 billion. *See* Appendix at Exhibit 12 (attaching

Laura E. Simmons & Ellen M. Ryan, *Securities Class Action Settlements: 2008 Review and

Analysis,* at 6).

At bottom, the proposed recovery is an excellent result for the Settlement Class in light

of the range of possible recoveries and the attendant risks of continued litigation. In this

context, "[a] very large bird in the hand in this litigation is surely worth more than whatever

birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838

(W.D. Pa. 1995). As the court stated in *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp.

710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971):

---

of litigation." *Grinnell*, 495 F.2d at 463. *Accord Global Crossing*, 225 F.R.D. at 460.

[11]     For shares purchased after January 16, 2008, the Settlement represents an average
recovery of approximately $.084 per damaged common share and $.007 per damaged share of
Preferred Securities. Joint Decl. at ¶ 42.

It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced. Merely by way of example, two instances in this Court may be cited where offers of settlement were rejected by some plaintiffs and were disapproved by this Court. The trial in each case then resulted unfavorably for plaintiffs, in one case they recovered nothing and in the other they recovered less than the amount which had been offered in settlement.

*See also In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993) ("[i]t must also be recognized that victory even at the trial stage is not a guarantee of ultimate success"; citing case where a "multimillion dollar judgment was reversed").

### h.    The Reaction of the Class

To date the overwhelmingly positive reaction of the Settlement Class also supports approval of the Settlement. Following the mailing of over 919,000 Settlement Notices, only two objections and 111 requests for exclusion (including three duplicates) were received. Joint Decl. at ¶ 6; Ferrara Decl. at ¶¶ 20-21. By contrast, through June 23, 2009, 36,016 Proofs of Claim to share in the Settlement were filed. Ferrara Decl. at ¶ 19. Since the date for objections and requests for exclusions is July 6, Lead Plaintiff will file after that date a further filing addressing any objections and requests for exclusions.

### CONCLUSION

For the reasons set forth above, Lead Plaintiff respectfully requests that the parties' proposed Settlement be approved by the Court as fair, reasonable and adequate and that the Settlement Class be certified for purposes of the proposed Settlement.

Dated: June 26 2009                    Respectfully submitted,


/s/ Frederic S. Fox                    /s/ Lawrence J. Lederer              /s/ M. Richard Komins
Robert N. Kaplan                       Lawrence J. Lederer                  M. Richard Komins
Frederic S. Fox                        Merrill G. Davidoff                  Jeffrey A. Barrack
Joel B. Strauss                        Arthur Stock                        Robert A. Hoffman
Donald R. Hall                         Robin Switzenbaum                   Beth T. Seltzer
Jeffrey P. Campisi                     Gary E. Cantor                      Julie B. Palley
Aviah Cohen Pierson                    Lane L. Vines                       Barrack, Rodos & Bacine
Kaplan Fox & Kilsheimer LLP            Berger & Montague, P.C.             3300 Two Commerce Square
850 Third Avenue, 14th Floor           1622 Locust Street                  2001 Market Street
New York, NY 10022                     Philadelphia, PA 19103-6365         Philadelphia, PA 19103
Telephone: (212) 687-1980              Telephone: (215) 875-3000           Telephone: (215) 963-0600
Facsimile: (212) 687-7714              Facsimile: (215) 875-4604           Facsimile: (215) 963-0838

                                                                           - and -

                                                                           Regina M. Calcaterra
                                                                           1350 Broadway, Suite 1001
                                                                           New York, NY 10018
                                                                           Telephone: (212) 688-0782
                                                                           Facsimile: (212) 688-0783

*Co-Lead Counsel for Lead Plaintiff State Teachers' Retirement System of Ohio*
*and the Settlement Class*

25