UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION | Master File No.: 07cv9633 (LBS)(AJP)(DFE) |
| This Document Relates To: Securities Actions | |

## MEMORANDUM OF LAW IN SUPPORT OF CO-LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND <u>REIMBURSEMENT OF EXPENSES</u>

Kaplan Fox & Kilsheimer LLP
Robert N. Kaplan
Frederic S. Fox
Joel B. Strauss
Donald R. Hall
Jeffrey P. Campisi
Aviah Cohen Pierson
850 Third Avenue, 14th Floor
New York, NY  10022
Telephone: (212) 687-1980
Facsimile:  (212) 687-7714

Berger & Montague, P.C.
Lawrence J. Lederer
Merrill G. Davidoff
Arthur Stock
Robin Switzenbaum
Gary E. Cantor
Lane L. Vines
1622 Locust Street
Philadelphia, PA  19103-6365
Telephone: (215) 875-3000
Facsimile:  (215) 875-4604

Barrack, Rodos & Bacine
M. Richard Komins
Jeffrey A. Barrack
Robert A. Hoffman
Beth T. Seltzer
Julie B. Palley
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Telephone: (215) 963-0600
Facsimile:  (215) 963-0838

- and -

Regina M. Calcaterra
1350 Broadway, Suite 1001
New York, NY  10018
Telephone:  (212) 688-0782
Facsimile:  (212) 688-0783

*Co-Lead Counsel for Lead Plaintiff State Teachers' Retirement System of Ohio
and the Settlement Class*

**TABLE OF CONTENTS**

**PAGE**

I.       INTRODUCTION ...................................................................................................... 1

II.      FACTUAL BACKGROUND ..................................................................................... 4

  A.      Procedural History and Summary of the Case .................................................. 4

  B.      The Settlement .................................................................................................. 5

III.     ARGUMENT .......................................................................................................... 6

  A.      Plaintiffs' Counsel Are Entitled to the Reasonable Fee Requested by this Application . 6

    1.      The Legal Standards Governing Awards of Attorneys' Fees ....................................... 6

    2.      The Fee Award Should Be Based on the Percentage Method ...................................... 8

    3.      The Percentage Fee Requested Is Reasonable and Should Be Approved Under the
        Second Circuit's *Goldberger Factors* ........................................................................ 9

      a.      Co-Lead Counsel Expended a Significant Amount of Time and Labor to Produce an
          Excellent Settlement ................................................................................... 10

      b.      The Complexity, Magnitude and Risks of Litigation Supports the Requested Fee.... 12

      c.      Quality of Legal Representation ................................................................. 15

      d.      The Requested Fee Award Is Reasonable in Relation to the Settlement Amount...... 16

      e.      Public Policy Considerations Fully Support the Requested Fee................................. 17

    4.      A "Cross-Check" of Co-Lead Counsel's Lodestar Demonstrates the Reasonableness
        of the Requested Percentage Fee ................................................................................ 18

  B.      Co-Lead Counsel Should Be Reimbursed for Expenses Reasonably Incurred in
        Connection with this Action ....................................................................................... 22

CONCLUSION.............................................................................................................................. 23

**TABLE OF AUTHORITIES**

**PAGE**

Cases

*Alpine Pharmacy v. Chas. Pfizer & Co., Inc.*,
   481 F.2d 1045 (2d Cir. 1973) ................................................................ 18

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ............................................................. 14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) ........................................................................ 7, 18

*Blum v. Stenson*,
   465 U.S. 886 (1984) ............................................................................. 19

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ............................................................................... 6

*Carlson v. Xerox Corp., et. al*,
   596 F. Supp. 2d 400 (D. Conn. 2009) ................................................ 16

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ........................................................... 13, 14

*Dolgow v. Anderson*,
   43 F.R.D. 472 (E.D.N.Y. 1968), *rev'd on other grounds,* 438 F.2d 825 (2d Cir. 1970)............ 7

*Eltman v. Grandma Lee's, Inc.*,
   No. 82 Civ 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) ................................. 18

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ........................................................... passim

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................. 19

*In re "Agent Orange" Prod. Liab. Litig.*,
   611 F. Supp. 1296, 1306 (E.D.N.Y. 1985), *aff'd in part, rev'd in part*, 818 F.2d 226 (2d Cir. 1987)................................................................................................. 8

*In re Adelphia Communs. Corp. Sec. and Derivative Litig.*,
   No. 03 MDL 1529(LMM), 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) .............................. 17

*In re American Bank Note Holographics,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................................ 7, 8, 14

*In re Apollo Group, Inc. Sec. Litig.,*
  No. 04-2147, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) ...................................................... 14

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001), *cert. denied,* 535 U.S. 929 (2002) ................................................ 9

*In re DaimlerChrysler AG Sec. Litig.,*
  No. Civ. A. 00-993, *slip op.* at 43-50 (D.Del. Feb. 5, 2004) ..................................................... 17

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.,*
  586 F. Supp. 2d 732 (S.D. Tex. 2008) ................................................................................. 9, 17

*In re EVCI Career Colleges Holding Corp. Sec. Litig.,*
  Master File No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. 2007) ........... 21

*In re Freddie Mac Sec. Litig.,*
  No. 03-CV-4261 (JES), *slip op.* at 1 (S.D.N.Y. Oct. 27, 2006) ................................................ 17

*In re Gilat Satellite Networks, Ltd.,*
  No. CV-02-1510 (CPS)(SMG), 2007 U.S. Dist. LEXIS 68964 (S.D.N.Y. Sept. 18, 2007) ..... 22

*In re Global Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................... 9, 16, 21

*In re Indep. Energy Holdings PLC Sec. Litig.,*
  No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 26, 2003) ........................... 20

*In re Independent Energy Holdings PLC Sec. Litig.,*
  302 F. Supp. 2d 180 (S.D.N.Y. 2003) .................................................................................... 23

*In re Interpublic Secs.,*
  CIV 6527, 2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct. 26, 2004) ........................................ 21

*In re KeySpan Corp. Sec. Litig.,*
  CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068 (S.D.N.Y. Aug. 25, 2005) 16, 22

*In re Linerboard Antitrust Litig.,*
  No. MDL No. 1261, 2004 U.S. Dist. LEXIS 10532 (S.D.N.Y. June 2, 2004) ........................ 21

*In re Lloyd's Am. Trust Fund Litig.,*
  No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ............... 14

*In re Lucent Techs., Inc. Sec. Litig.,*
  327 F. Supp. 2d 426 (D.N.J. 2004) ....................................................................................... 2, 9

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Feb. 1, 2007) .................. passim

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007)........................................................................................ passim

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998)........................................................................................ 2, 21

*In re Nortel Networks Corp. Sec. Litig.*,
   539 F.3d 129 (2d Cir. 2008) ...................................................................................................... 9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   No. MDL-1222 (CLB) *slip op.* at 7 (S.D.N.Y. June 12, 2003) .................................................. 17

*In re Priceline.com, Inc. Sec. Litig.*,
   Civ. No. 00-1884(AVC), 2007 WL 2115592 (D.Conn. July 20, 2007) ..................................... 17

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D.Pa.2001).......................................................................................... 17

*In re Rite Aid Corp. Sec. Litig.*,
   362 F. Supp. 2d 587 (E.D.Pa.2005).......................................................................................... 17

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) ........................................................................................ 21

*In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989) .................................................................................... 15, 18

*In re Warner Commc'n. Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) .......................... 12, 15, 16

*In re Williams Sec. Litig.*,
   No. 02-cv-072 (SPF) (FHM), *slip op.* at 2 (N.D. Okla. Feb. 12, 2003) .................................... 17

*In re WorldCom, Inc. Sec. Litig.*,
   Master File 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 22992 (S.D.N.Y. Nov. 12, 2004)... 16

*J. I. Case Co. v. Borak*,
   377 U.S. 426 (1964) ................................................................................................................... 7

*Luciano v. Olsten Corp.*,
   109 F.3d 111 (2d Cir. 1997) .................................................................................................... 19

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................................. 8, 21

*Masters v. Wilhelmina Model Agency, Inc.,*
    473 F.3d 423 (2d Cir. 2007) ................................................................................... 10

*Miltland Raleigh-Durham v. Myers,*
    840 F. Supp. 235 (S.D.N.Y. 1993) ......................................................................... 23

*Missouri v. Jenkins,*
    491 U.S. 274 (1989) ................................................................................................ 19

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey,*
    711 F.2d 1136 (2d Cir. 1983) ................................................................................. 19

*Robbins v. Koger Props. Inc.,*
    116 F.3d 1441 (11th Cir. 1997) .............................................................................. 14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) ................................................................................. 8, 21

**Statutes**

15 U.S.C. §78u-4(a)(4) ................................................................................................ 3

15 U.S.C. §78u-4(a)(6) ......................................................................................... 1, 7, 8

**Rules**

Federal Rules of Civil Procedure
    Rule 23(h) ............................................................................................................. 1, 7

    Rule 54(d)(2) ............................................................................................................. 1

Kaplan Fox & Kilsheimer LLP, Berger & Montague, P.C., and Barrack, Rodos & Bacine (collectively "Co-Lead Counsel"), Co-Lead Counsel for Lead Plaintiff [1] Ohio State Teachers' Retirement System (Ohio "STRS" or "Lead Plaintiff"), submit this memorandum in support of their motion for an award of attorneys' fees and reimbursement of expenses pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), and 15 U.S.C. §78u-4(a)(6).[1] For the reasons set forth herein, Co-Lead Counsel respectfully request that this motion be approved in full.

## I.   INTRODUCTION

Lead Plaintiff and Co-Lead Counsel have succeeded in achieving a proposed Settlement that provides an extraordinary recovery for the Class – the payment of $475 million in cash (the "Settlement Fund") and interest earned thereon.  Co-Lead Counsel seek an award of attorney fees in the amount of $37,125,000 or approximately 7.815 % of the Settlement Fund, plus interest, and $ 1,071,790.55 in reimbursement of costs and expenses Plaintiffs' Counsel incurred in litigating this case on behalf of the Settlement Class.  This fee was based upon a fee agreement approved by the Lead Plaintiff at the onset of the litigation and is supported by Lead Plaintiff.[2] *See* Declaration of William J. Neville ("Neville Decl.") filed herewith.[3]

---

[1]   All capitalized terms not otherwise defined have the meaning set forth in the Stipulation and Agreement of Settlement dated February 17, 2009 (the "Stipulation"). Lead Plaintiff is also filing contemporaneously a motion and accompanying papers seeking final approval of the parties' proposed settlement of this litigation (the "Settlement").

[2]   The fee request is for all Plaintiffs' Counsel which includes Co-Lead Counsel and several non co-lead counsel firms.

[3]   *Accord* Joint Declaration of Frederic F. Fox, Lawrence J. Lederer and M. Richard Komins in Support of Motion for Final Approval of Class Action Settlement and Certification of the Class, Motion for Approval of Plan of Allocation of Settlement

The prosecution of this Action was undertaken by Co-Lead Counsel on an entirely contingent basis. As more fully described below, Plaintiff' Counsel has incurred $1,071,790.55 in expenses and over $16 million of attorney time that would not be compensated or reimbursed unless Co-Lead Counsel achieved a recovery for the benefit of the Settlement Class.

Courts in this District and elsewhere frequently award fees in class actions that amount to far greater percentages of settlement funds than Co-Lead Counsel seek here. *See e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.* ("*ML Tech*"), 246 F.R.D. 156 (S.D.N.Y. 2007) (awarding attorneys' fees of 24% of the settlement fund, or $31.99 million); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 485-488 (S.D.N.Y. 1998) (awarding attorneys' fees of 14% of the settlement fund, or $143 million); and *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426 (D.N.J. 2004) (awarding attorneys' fees of 17% of the $517 million recovery, or $88 million). Here, in contrast, the fee request is for approximately 7.815 % of the Settlement Amount, which is both eminently fair in view of the substantial risks attendant to this litigation and warranted by the results achieved.

The requested fee is also fair under the "lodestar crosscheck" as set forth in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000), and described in detail below. To date, Plaintiffs' Counsel have expended a total of over 40,833 hours in prosecuting this Action on behalf of the Settlement Class, for an aggregate present

---

Proceeds, and Motion for an Award of Attorney Fees and Reimbursement of Expenses (the "Joint Decl.") at ¶ 93.

lodestar of $16,390,771.40.[4]  Accordingly, the requested fee represents a multiplier to counsel's lodestar of approximately 2.26, which is well within the amounts approved by courts in many similarly complex class action cases.  Moreover, the requested compensation is also supported by the facts that this case was litigated on a completely contingent basis, and that the fee was approved early on in the litigation by Lead Plaintiff.

In accordance with the Court's March 2, 2009 Preliminary Order, over 919,000 notices were mailed to potential Settlement Class Members beginning on April 2, 2009, a summary notice was published in *The Wall Street Journal* and via *PR Newswire* on April 9, 2009, and the Settlement Notice is posted on www.merrilllynchlitigation.com.  *See* Declaration of Charles E. Ferrara ("Ferrara Decl.") at ¶¶ 10-13.  Both notices described the proposed Settlement, the maximum attorneys' fees Co-Lead Counsel would seek, and Settlement Class Members' rights.  Notably, only one objection has been received thus far relating to the requested attorneys' fees.[5]  *See* Appendix Exhibit 13.  Moreover, the Lead Plaintiff supports, and approved in advance, the requested attorneys' fees.  *See* Neville Decl. at ¶ 12.  In addition, the Notice advised that Plaintiffs' counsel would seek reimbursement of expenses not to exceed $2,500,000.  Plaintiffs' Counsel seeks reimbursement of expenses of $ 1,071,790.55 - well below this ceiling.

In sum, the proposed Settlement here, which was achieved because of the efforts of Co-Lead Counsel in the face of a vigorous defense, is an excellent result in an

---

[4]     This includes more than 36,696 hours for a lodestar of $ 14,432,139.15 by Co-Lead Counsel.

[5]     The deadline to opt out and file objections is July 6, 2009.  Accordingly, we intend to file additional papers prior to the final "fairness" hearing scheduled for July 27, 2009 to address all objections and opt-outs as necessary.

exceedingly difficult case. Consequently, Co-Lead Counsel's application for attorneys'
fees and reimbursement of expenses should be approved.

## II.     FACTUAL BACKGROUND

### A.     Procedural History and Summary of the Case

Co-Lead Counsel has vigorously litigated this case. As set out in more detail in
the Joint Decl., among numerous other tasks, Lead Plaintiff via Co-Lead Counsel: (i)
conducted an investigation culminating in the filing of the Consolidated Amended Class
Action Complaint ("Amended Complaint") on May 21, 2008, alleging that Defendants
accumulated and failed to disclose at least $40 billion in financial exposure to U.S.
subprime residential mortgage-related assets and asset backed securities ("ABS")
including collateralized debt obligations ("CDOs"); (ii) entered into a tolling agreement
with the Underwriter Defendants; (iii) prepared and served 21 document preservation
subpoenas, and subsequently negotiated the scope of documents to be subject to
preservation with several of the recipients; (iv) filed a consolidated opposition to various
Defendants' motions to dismiss; (v) filed a motion to strike extrinsic documents and
certain arguments made by the Defendants in their motions to dismiss; (vi) reviewed and
analyzed databases consisting of nearly 40 million documents Merrill produced to the
U.S. Securities & Exchange Commission (the "SEC") and New York Attorney General
("NYAG"); (vii) reviewed documents from Deloitte relating to Deloitte's audits of
Merrill's financial statements for fiscal years 2006, 2007 and 2008 (*i.e.,* the entire
Settlement Class Period), as well as additional documents which we requested from
Deloitte consisting of workpapers from Deloitte's 2006 audit relating specifically to
Merrill's valuation of real estate-related securities; (viii) conducted interviews of all four

4

individual defendants and others; (ix) consulted with experts; and (x) engaged in
extensive, arm's-length settlement negotiations that ultimately resulted in the $475
million proposed Settlement presently before the Court. The proposed Settlement
constitutes an outstanding result for the Settlement Class, eliminating the risk of
continued litigation against the Defendants, the outcome of which could not be assured.

**B.    The Settlement**

On January 7, 2009, after vigorous, good faith, arm's-length negotiations the
parties agreed in principle to the basic terms of a settlement of this Action. *See* Joint
Decl. at ¶ 40. The negotiations leading to the Settlement spanned months and involved
multiple in person and telephonic meetings. Ultimately, the parties agreed that, in
exchange for a release of the claims, Defendants would pay the Settlement Class $475
million in cash, with interest on that amount accruing from February 24, 2009. *See* Joint
Decl. at ¶ 44).

Since the time the parties agreed in principle to the proposed Settlement, Co-Lead
Counsel have undertaken numerous other activities on behalf of the Settlement Class,
including negotiating and drafting the parties' Stipulation; drafting the Settlement
notices, Proof of Claim and accompanying documents; responding to inquiries from
investors and other interested parties relating to the Settlement; preparing the papers
seeking preliminary and final approval of the Settlement; and conducting confirmatory
discovery, including the documents housed on databases consisting of nearly 40 million
pages. *See* Joint Decl. at ¶¶ 58-62. Additionally, if the Settlement is approved by the
Court, Co-Lead Counsel anticipate spending many additional hours supervising the

claims administration processes, and preparing and presenting for Court approval the proposed distribution of the net settlement proceeds to eligible claimants.

Importantly, Lead Plaintiff participated actively not only in connection with the Settlement negotiations but also approved, in advance, the requested compensation of $37,125,000 or approximately 7.815 % of the Settlement Fund plus interest, precisely as the PSLRA intended. *See* Joint Decl. at ¶¶ 92-93. Moreover, the reaction of the Settlement Class thus far has been overwhelmingly positive. In particular, while over 919,000 notices were mailed to the Settlement Class by the Claims Administrator, only two objections to the Settlement, including one objection to the requested fee, has been received. *See* Appendix, Exhibit 13.

## III.    ARGUMENT

### A.    Plaintiffs' Counsel Are Entitled to the Reasonable Fee Requested by this Application

#### 1.    The Legal Standards Governing Awards of Attorneys' Fees

It is well-settled that attorneys who represent a class and achieve a benefit for the class members are entitled to be compensated for their services. The Supreme Court has recognized that "a lawyer who recovers a common fund for the benefit of persons other than ... his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Moreover, the Supreme Court has further recognized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary

6

supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964).[6]

This so-called "common fund" doctrine has been adopted by the Second Circuit and this court. *Goldberger*, 209 F.3d at 47 (finding that the common fund doctrine "prevents unjust enrichment of those benefitting [sic] from a lawsuit without contributing to its cost"); *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) (holding that "the costs of litigation should be spread among the fund's beneficiaries"). *See also* Fed. R. Civ. P. 23(h) (providing that "the court may award reasonable attorneys' fees and nontaxable costs authorized by law"); 15 U.S.C. §78u-4(a)(6) (providing that a fee award should constitute "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class").

Courts have used two distinct methods to determine the reasonableness of an attorneys' fee. "The first [method] is the lodestar, under which the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Goldberger*, 209 F.3d at 47. The second, the percentage method, allows the Court to set "some percentage of the recovery as a fee" by considering the "same 'less objective' factors that are used to determine the multiplier for the lodestar." *Id.* The percentage method not only avoids "an unanticipated disincentive to early settlements" created by the lodestar method, but also has been found to be "simpler" and more efficient, because it avoids an otherwise

---

[6] Awards of attorneys' fees from a common fund serve a dual purpose by encouraging representatives to seek redress for damages caused to an entire class of persons and discouraging future misconduct of a similar nature. *Dolgow v. Anderson*, 43 F.R.D. 472, 484-485 (E.D.N.Y. 1968), *rev'd on other grounds,* 438 F.2d 825 (2d Cir. 1970). In the long run, fees that fully reward excellent results encourage the successful prosecution of meritorious cases.

"gimlet-eyed review" of counsel's detailed lodestar. *Id* at 48-49. Moreover, the PSLRA,

which governs this action, supports the percentage method by providing that "[t]otal

attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall

not exceed a reasonable percentage of the amount of any damages and prejudgment

interest actually paid to the class." 15 U.S.C. §78u-4(a)(6). Here, the requested

compensation is squarely supported by both tests.

### 2.    The Fee Award Should Be Based on the Percentage Method

"The trend in the Second Circuit, . . .has been to express attorneys' fees as a

percentage of the total settlement, rather than to use the lodestar method to arrive at a

reasonable fee." *ML Tech*, 246 F.R.D. at 171 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A.*

*Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). *See also Maley v. Del Global Techs. Corp.*, 186

F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *In re American Bank Note*, 127 F. Supp. 2d at 431

(same).

Moreover, from a public policy standpoint, the percentage of the fund approach is

the most efficient means of rewarding the work of class action attorneys. It does not

waste judicial resources analyzing thousands of hours of work, where counsel obtained a

superior result. *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1296, 1306

(E.D.N.Y. 1985) (criticizing lodestar approach as one that "tends to encourage excess

discovery, delays and late settlements, while it discourages rapid, efficient and cheaper

resolution of litigation"), *aff'd in part, rev'd in part*, 818 F.2d 226 (2d Cir. 1987).

Therefore, the requested fee award should be based on the percentage method.

A further factor supporting the percentage method here is that it is the method that

Lead Plaintiff and Co-Lead Counsel agreed to utilize in the retainer agreement as the

primary method for determining the fee that Lead Counsel can seek in this Action. *See*

8

Joint Decl. at ¶ 93; Neville Decl. at ¶ 6. Since passage of the PSLRA, courts have found such an agreement between fully informed lead plaintiffs and their counsel to be presumptively reasonable. *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001), *cert. denied,* 535 U.S. 929 (2002); *accord In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436 (S.D.N.Y. 2004); *In re Lucent Techs. Sec. Litig.,* 327 F. Supp. 2d at 433-34; *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 586 F. Supp. 2d 732, 749 (S.D. Tex. 2008). *See also In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) ("We expect . . . that district courts will give serious consideration to negotiated fees because PSLRA lead plaintiffs often have a significant financial stake in the settlement, providing a powerful incentive to ensure that any fees resulting from that settlement are reasonable."). In enacting the PSLRA, Congress expressed its strong belief that an institutional lead plaintiff would be in a better position than the court to protect the interests of the class by monitoring lead counsel throughout the litigation and by negotiating a reasonable fee for counsel's representation. *Cendant Corp. Litig.*, 264 F.3d at 276. Thus, the court in *Cendant* held that "[T]he lead plaintiff is in the best position, under the PSLRA's scheme, to determine (at least initially) what its lead counsel's fee should be . . . We therefore believe that, under the PSLRA, courts should accord a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel." *Id.* at 282.

### 3.    The Percentage Fee Requested Is Reasonable and Should Be Approved Under the Second Circuit's *Goldberger Factors*

*Goldberger*, 209 F.3d at 50, set forth several factors for courts within this Circuit to consider when examining whether the percentage fee requested is reasonable and

should be approved: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Moreover, a "key consideration required by the PSLRA 'is the result actually achieved for class members, a basic consideration in any case in which fees are sought on the basis of a benefit achieved for class members.'" *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 438 (2d Cir. 2007) (quoting Advisory Comm. Notes to Fed.R.Civ.P. 23, 2003 Amendments).

Here, Co-Lead Counsel seeks an award of approximately 7.815 % of the Settlement Fund in attorneys' fees. As set forth in detail below, this request is reasonable when examined in light of the *Goldberger* factors and should be approved. Indeed, it is in line with or less than awards typically granted in securities class actions in this Circuit, and is particularly fair in light of the substantial contingent risks and excellent results achieved here.

**a.    Co-Lead Counsel Expended a Significant Amount of
Time and Labor to Produce an Excellent Settlement**

The efforts expended by Co-Lead Counsel in the prosecution of this action have been extensive. The Joint Decl. sets forth the myriad tasks undertaken by Co-Lead Counsel, including the time and labor expended. Moreover, Co-Lead Counsel have conducted this litigation in a coordinated and well-organized fashion to ensure efficiency and minimize duplication of work. For instance, Co-Lead Counsel spent considerable time and effort working with accounting, financial, and damages experts in addressing issues central to the establishment of their claims, prepared a comprehensive Amended Complaint, and responded to motions to dismiss made by Merrill, each individual

defendant and Deloitte. In addition, Co-Lead Counsel conducted extensive confirmatory discovery, including reviewing documents in databases consisting of tens of millions of pages and interviewing four of the individual defendants and others.

The negotiation of the proposed Settlement also required extensive efforts on the part of Co-Lead Counsel. Settlement discussions spanned a number of months and required Co-Lead Counsel to expend enormous efforts analyzing the claims and damages and engaging in settlement negotiations with in-house counsel for Merrill and other defendants. *See* Joint Decl. ¶¶ 34-40.

The number of hours spent by Co-Lead Counsel attests to their extensive effort. Co-Lead Counsel and assisting firms have collectively devoted over 40,833 hours to the prosecution of this litigation on behalf of the Lead Plaintiff and the Settlement Class. *See* Joint Decl. ¶ 95. Among other things, Co-Lead Counsel extensively researched, reviewed and analyzed thousands of pages of public filings, articles, analyst reports and other documents concerning Merrill; consulted with experts; participated in numerous in-person and telephonic working and planning meetings about this Action; negotiated the proposed Settlement and prepared the notices and other Settlement documents; responded to inquiries from investors and other interested parties relating to the Settlement; and prepared the papers seeking final approval of the proposed Settlement. *See* Joint Decl. at ¶¶ 9-66.[7]

The significant time and labor expended by Co-Lead Counsel resulting in this proposed Settlement, all of which was undertaken on a wholly contingent basis, strongly

---

[7]    Co-Lead Counsel compiled the hours reported from contemporaneous time records maintained by each attorney affiliated with the firms that participated in the Action. *See* Joint Decl. at ¶ 95, n.14.

supports the requested fee. *In re Warner Commc'n. Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985) ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award.") (citations omitted), *aff'd*, 798 F.2d 35 (2d Cir. 1986). *Accord ML Tech*, 246 F.R.D. 156, 172, (citing the work counsel undertook as supporting the requested fees); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *47 (S.D.N.Y. Feb. 1, 2007) (same) ("*ML Funds*"). Accordingly, the time and labor expended by counsel here amply supports the requested fee.

### b. The Complexity, Magnitude and Risks of Litigation Supports the Requested Fee

The "magnitude and complexities" and the "risk of the litigation" are factors to be considered by the Court in determining the appropriateness of the requested fee. *Goldberger*, 209 F.3d at 50. There can be no dispute as to the magnitude of this Action. This litigation was complex, vigorously defended and fraught with difficult legal and factual issues. In particular, the subject matter involved highly complex and esoteric financial instruments and economic relationships. The Action was prosecuted on behalf of investors in one of the world's leading investment banks and financial management and advisory companies. Certain of Merrill's present and former executives and directors, its outside auditor and underwriters were also defendants, each of whom, like Merrill, was also represented by skilled and resourceful defense counsel.

The claims against Defendants were complex and subject to significant risk. *See* Joint Decl. at ¶¶ 49-57. Plaintiffs encountered, and would have certainly continued to encounter significant risks in proving falsity, scienter, loss causation and other necessary elements to establish violations of the securities laws. In their motions to dismiss,

Defendants vigorously asserted that Lead Plaintiff could not establish the existence of a false or materially misleading statement, scienter or loss causation. Defendants further argued that Merrill's over $40 billion in write-downs were caused by economic events that began in the 2007 and ultimately caused the worldwide collapse in credit markets. Moreover, Lead Plaintiff would have to defeat Defendants' claim that the allegations amounted to nothing more than "fraud by hindsight." While Co-Lead Counsel and Lead Plaintiff believe that they had meritorious responses to these arguments, a jury might have been swayed by Defendants' arguments and find in their favor. *See* Joint Decl. at ¶¶ 49-57 (summarizing contingent risks).

As the Second Circuit recognized in *City of Detroit v. Grinnell Corp.*, "despite the most vigorous and competent of efforts, success is never guaranteed." 495 F.2d 448, 471 (2d Cir. 1974). A trial could turn on close questions of law and fact and also would involve a high degree of risk. The costs and duration of pretrial motion practice, discovery, trial preparation and trial would likely be very substantial, and appeals could follow regardless of the outcome at trial. In sum, this litigation was complex and contained substantial risk– something this Court has stated "to be 'perhaps the foremost factor to be considered in determining' the award of appropriate attorneys' fees." *ML Tech*, 246 F.R.D at 173 (citing cases). *Accord ML Funds*, 2007 U.S. Dist. LEXIS 9450, at *54.

Moreover, counsel's efforts were undertaken from the outset on a wholly contingent basis despite the very real possibility that Lead Plaintiff might not prevail and thus that counsel would receive nothing for their efforts. "The courts of this Circuit, including this district, have expressly recognized that the contingent nature of counsel's

13

fee, with the built-in risk of litigation, is a highly relevant factor in determining the fee to be awarded." *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at \*81 (S.D.N.Y. Nov. 26, 2002). *Accord In re American Bank Note Holographics*, 127 F. Supp. 2d at 430. As the Second Circuit has long recognized:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Grinnell*, 495 F.2d at 470-71 (citation omitted).

Courts have recognized that the risk of non-payment in similarly complex cases is very real and is heightened when, as here, Co-Lead Counsel press to achieve the very best result possible. Indeed, there are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.[8] Thus, taking into account the significant complexity of the issues, the magnitude and the risks of this litigation, and the contingent nature of their representation, the requested fee is reasonable and justified. *Accord ML Tech*, 246 F.R.D. at 172-173 ("Securities class litigation 'is notably difficult and notoriously uncertain'.... The Court agrees here that 'this Case is complex with difficult liability issues.'") (citations omitted); *ML Funds*, 2007 U.S. Dist. LEXIS 9450, at \*47-48 (same).

---

[8]    *See, e.g.*, *In re Apollo Group, Inc. Sec. Litig.*, No. 04-2147, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) (jury verdict of more than $200 million subsequently overturned and case dismissed by District Court on post-trial motion on issue of loss causation); *Robbins v. Koger Props. Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988).

Thus, the magnitude, complexity and risks of this litigation all support approval of the request for attorneys' fees.

### c. Quality of Legal Representation

Another criterion for evaluating the reasonableness of a fee request under *Goldberger* is the quality of the representation. *See In re Warner*, 618 F. Supp. at 748 ("[T]he quality of plaintiffs' counsels' work can be measured by a number of factors, including the benefit obtained for the class, the efficiency of plaintiffs' counsel's activities, and the quality of opposing counsel."). Here, the quality of the representation of Co-Lead Counsel is best evidenced by the significant recovery obtained for the Settlement Class.

The standing and prior experience of plaintiffs' counsel are also relevant in determining fair compensation. *In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*, 724 F. Supp. 160, 165 (S.D.N.Y. 1989). The firm resumes, which demonstrate the background and experience of the Co-Lead Counsel firms, are attached to the Appendix of Exhibits to the Joint Decl.

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered. *See, e.g., In re Warner*, 618 F. Supp. at 749 ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."). Co-Lead Counsel were faced with formidable opposition in this litigation, as Merrill was represented by Skadden, Arps, Slate, Meagher & Flom LLP, one of the country's premier law firms with each of the other defendants also represented by major law firms. That Co-Lead Counsel was able to obtain the substantial Settlement Amount when faced with such formidable opposing counsel is additional confirmation of

15

the quality of the representation, and likewise supports the reasonableness of Co-Lead

Counsel's fee request. *See ML Tech*, 246 F.R.D. at 174 ("The quality of opposing

counsel is also important in evaluating the quality of Class Counsels' [sic] work.")

(quoting *In re KeySpan Corp. Sec. Litig.*, CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist.

LEXIS 29068, at *35 (S.D.N.Y. Aug. 25, 2005)). *Accord ML Funds*, 2007 U.S. Dist.

LEXIS 9450, at *63 (finding that "counsel for the [Merrill Lynch] defendants were

represented by law firms of national repute, and defense counsel provided skilled and

zealous representation"); *In re Warner*, 618 F. Supp. at 749.

### d.     The Requested Fee Award Is Reasonable in Relation to the Settlement Amount

The percentage fee requested by Co-Lead Counsel is eminently fair in relation to

the amount of the Settlement. First, Lead Plaintiff has approved in advance the requested

attorney fees. *See* Neville Decl. at ¶ 6. Under applicable precedent, "in class action cases

under the PSLRA, courts presume fee requests submitted pursuant to a retainer

agreement negotiated at arm's length between lead plaintiff and Lead Counsel are

reasonable." *Global Crossing*, 225 F.R.D. at 466. *See also In re WorldCom, Inc. Sec.*

*Litig.*, Master File 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 22992, at *73 (S.D.N.Y.

Nov. 12, 2004) (applying presumption of reasonableness where the Lead Plaintiff

conscientiously supervised the work of Co-Lead Counsel and endorsed the fee request).

The fee request at issue is in line with or less than fee awards in similar cases in

the Second Circuit. *See, e.g., Carlson v. Xerox Corp., et. al*, 596 F. Supp. 2d 400, 413-

414 (D. Conn. 2009) (awarding fees of 16% of a $750 million settlement); *In re Adelphia*

*Communs. Corp. Sec. and Derivative Litig.*, No. 03 MDL 1529(LMM), 2006 WL

3378705, at *1, *3 (S.D.N.Y. Nov. 16, 2006) (awarding 21.4% of $455 million fund); *In*

*re Freddie Mac Sec. Litig.,* No. 03-CV-4261 (JES), *slip op.* at 1 (S.D.N.Y. Oct. 27, 2006)

(awarding 20% of $410 million fund); *In re Oxford Health Plans, Inc. Sec. Litig.,* No.

MDL-1222 (CLB) *slip op.* at 7 (S.D.N.Y. June 12, 2003) (awarding 28% of $300 million

fund); *In re Priceline.com, Inc. Sec. Litig.*, Civ. No. 00-1884(AVC), 2007 WL 2115592,

at *5 (D.Conn. July 20, 2007) (awarding 30% of $80 million fund).

      Co-Lead Counsel's fee request is also consistent with or less than fee awards in

other jurisdictions. *See, e.g., Enron Corp.* 586 F. Supp. 2d at 749 (awarding fee of 9.52%

of $7.2 billion settlement fund); *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706,

736, n. 44 (E.D.Pa.2001) (awarding 25% of $193 million fund); *In re Rite Aid Corp. Sec.*

*Litig.,* 362 F. Supp. 2d 587, 588-90 (E.D.Pa.2005) (awarding 25% of $125 million fund);

*In re DaimlerChrysler AG Sec. Litig.,* No. Civ. A. 00-993, *slip op.* at 43-50 (D.Del. Feb.

5, 2004)(awarding 22.5% of $300 million fund); *In re Williams Sec. Litig.,* No. 02-cv-072

(SPF) (FHM), *slip op.* at 2 (N.D. Okla. Feb. 12, 2003) (awarding 25% of $311 million

fund).

### e.    Public Policy Considerations Fully Support the Requested Fee

      The Second Circuit has also held that "public policy considerations" should be

afforded weight when determining the fee awarded to plaintiffs' counsel in class actions.

*Goldberger*, 209 F.3d at 50 (citation and internal quotations omitted). *See also ML*

*Funds*, 2007 U.S. Dist. LEXIS 9450, at *69 (holding that "[p]ublic policy concerns favor

the award of reasonable attorneys' fees in class action securities litigation").

      Private lawsuits, such as this, serve to further the objective of the federal

securities laws to protect investors and consumers against fraud and other deceptive

practices. *Eltman v. Grandma Lee's, Inc.*, No. 82 Civ 1912, 1986 WL 53400, at *9

17

(E.D.N.Y. May 28, 1986). *See also Bateman Eichler,* 472 U.S. at 310 (holding that lawsuits brought by investors provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'") (citations omitted). The well-publicized corporate scandals of the last decade, such as WorldCom and Enron, only further highlight the great importance of private enforcement of the federal securities laws.

The Second Circuit has taken into account the social and economic value of class actions and the need to encourage counsel to undertake such litigation. *See e.g., Alpine Pharmacy v. Chas. Pfizer & Co., Inc.*, 481 F.2d 1045, 1050 (2d Cir. 1973). As a practical matter, class actions can be maintained only if competent counsel can be obtained to prosecute them. This will occur if courts award reasonable and adequate compensation for their services where successful results are achieved. As former Chief Judge Brieant stated in *In re Union Carbide*, 724 F. Supp. at 169,

> [a] large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken.

For most Settlement Class Members, this class action was the only hope of obtaining compensation for the losses they suffered as a result of the allegations here. Therefore, a class action was the most efficient manner in which to prosecute the claims of Settlement Class Members.

### 4. A "Cross-Check" of Co-Lead Counsel's Lodestar Demonstrates the Reasonableness of the Requested Percentage Fee

The Second Circuit has encouraged the practice of performing a lodestar "cross-check" on the reasonableness of a fee award based on the percentage approach. "Even in

cases where the court applies the percentage method of fee calculation, documentation of hours remains a useful 'cross-check' on the reasonableness of the requested percentage." *ML Tech*, 246 F.R.D. at 175 -176 (citing *Goldberger*, 209 F.3d at 50); *ML Funds*, 2007 U.S. Dist. LEXIS 9450, at *71 (accord).

The lodestar is calculated by multiplying the number of hours expended on the entire litigation by a particular attorney by his or her current hourly rate. The hourly billing rate to be applied is the hourly rate that is normally charged in the community where the counsel practices, *i.e.*, the "market rate." *See Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983) (Brennan, J., concurring in part, dissenting in part) ("market standards should prevail"); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("[t]he 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'" (citing *Blum*, 465 U.S. at 896 n.11)). In addition, the Supreme Court and other courts have held that the use of *current* rates is proper since such rates more adequately compensate for inflation and loss of use of funds. *Missouri v. Jenkins*, 491 U.S. 274, 283-284 (1989); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1153 (2d Cir. 1983) (use of current rates appropriate where services were provided within two to three years of fee application).

Here, the rates used by Co-Lead Counsel are commensurate with market rates that courts in this district, and around the country, have repeatedly found to be reasonable given the nature of such work and the risks associated with prosecuting class actions on a contingent basis. *See, e.g., In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090, at *30 (S.D.N.Y. Sept. 26, 2003).

The total lodestar for services here, through June 30, 2009, was $16,390,771.40. This represents 40,833.71 hours spent by attorneys and paralegals. *See* Joint Decl. at ¶ 95. The detailed breakdown of all such hours demonstrates that the work was distributed efficiently among partners, associates and paralegals. *See* Appendix, Exhibits 5-10. Moreover, the amount of participation by senior personnel in this litigation is justified "because the large majority of the hours worked were spent on complicated tasks, such as the drafting of pleadings and motions, and conducting extensive settlement negotiations." *ML Tech*, 246 F.R.D. at 176 (finding that "[t]here is no indication that counsel failed to delegate work, where appropriate, to more junior personnel"); *ML Funds*, 2007 U.S. Dist. LEXIS 9450, at *73-74 (same).

"Nevertheless, 'where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case ....'" *Id* at 71. Typically, under the lodestar method of fee computation, a multiplier is applied to the lodestar in order to represent the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors. *Global Crossing,* 225 F.R.D. at 467-68. The Second Circuit has held that the reasonableness of the multiplier is assessed by considering the same factors as those analyzed in order to arrive at a suitable percentage of attorneys' fee. *See Goldberger*, 209 F.3d at 47. As the analysis set forth above demonstrates, Co-Lead Counsel submit that they have produced an excellent result for the Settlement Class in a case fraught with very significant risk.

"Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this

District." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, Master File No. 05 Civ.

10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *56 n.7 (S.D.N.Y. 2007). *Accord Wal-*

*Mart Stores, Inc.*, 396 F.3d at 123 (finding as reasonable lodestar multiplier of 3.5)

(citing *NASDAQ Market-Makers*, 187 F.R.D. at 489 (holding that "multipliers of between

3 and 4.5 have become common")); *In re Linerboard Antitrust Litig.*, No. MDL No.

1261, 2004 U.S. Dist. LEXIS 10532, at *50 (S.D.N.Y. June 2, 2004) (finding that "the

average multiplier approved in common fund class actions was 4.35) (citing Stuart J.

Logan, et al., *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action

Reports 167 (2003)); *In re Interpublic Secs.*, CIV 6527, 2004 U.S. Dist. LEXIS 21429, at

*34 (S.D.N.Y. Oct. 26, 2004) (approving fee award representing multiplier of 3.96);

*Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to 4.65 multiplier and holding that

such was "well within the range awarded by courts in this Circuit and courts throughout

the country"); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999)

(awarding a 27.5% fee and finding multipliers of 3 to 4.5 to be common).

Co-Lead Counsel's requested fee of approximately 7.815 % of the Settlement

Fund, or $37,125,000 plus interest, represents a multiplier of approximately 2.26 times

Plaintiffs' Counsel's aggregate lodestar. As demonstrated above, this is squarely within

the range that has been deemed reasonable by the Second Circuit, this Court, and

numerous other courts. Moreover, Co-Lead Counsel anticipates incurring well in excess

of hundreds of additional hours in attorney time in connection with preparing for the

hearing on the proposed Settlement including any supplemental memoranda following

the July 6, 2009 deadline for objections and exclusions, administering the settlement,

corresponding with investors and others, supervising the claims administration processes, overseeing the distribution of the Settlement Fund, and preparing additional related Court filings. Hence, the requested multiplier ultimately would be lower than 2.26, as counsel will not apply for additional compensation for these additional professional services (but reserves the right to make further application to the Court for reimbursement from the Settlement Fund of any out-of-pocket costs and expenses counsel incurs in connection herewith).

### B.   Co-Lead Counsel Should Be Reimbursed for Expenses Reasonably Incurred in Connection with this Action

In this District, "[c]ourts routinely grant the expense requests of class counsel." *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 U.S. Dist. LEXIS 68964, at *60 (S.D.N.Y. Sept. 18, 2007) (quotations omitted). Moreover, "[g]ranting requests for expenses is consonant with the public policy underlying fee awards in common fund cases." *KeySpan Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 29068, at *59. "Since counsel in a class action will necessarily incur substantial costs and expenses over the course of many years and will presumably have paid the expenses by the time a fee request is considered by the Court, providing for reimbursements of costs and expenses is a component of affording adequate compensation to counsel in order to encourage attorneys to pursue common fund cases." *Id. See also ML Tech*, 246 F.R.D. at 178 ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses") (citing cases); *ML Funds*, 2007 U.S. Dist. LEXIS 9450, at *78-79 (accord); *In re Independent Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients.") (internal quotation

marks omitted); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients") (citation omitted).

Settlement Class Members were informed in the notices that Co-Lead Counsel would also seek up to $2,500,000 of the Settlement Fund for reimbursement of out-of-pocket litigation costs and expenses.  To date, counsel has incurred an aggregate of $1,071,790.55 in expenses in litigating this case.  A detail of expenses is listed in the Appendix at Exhibits 3, 5-10.  Such expenses, which were essential to the successful resolution of this Action, have been audited and approved by Lead Plaintiff for inclusion in this application.

Co-Lead Counsel respectfully submits that all of the foregoing reimbursement request are appropriate, fair and reasonable, and should be approved.  Accordingly, Co-Lead Counsel requests that the Court approve in full reimbursement of such expenses from the Settlement Fund.

## CONCLUSION

For the foregoing reasons, Co-Lead Counsel requests that the Court approve Co-Lead Counsel's application for attorneys' fees and reimbursement of costs and expenses in full.

Dated: June 26 2009               Respectfully submitted,

/s/ Frederic S. Fox
Robert N. Kaplan
Frederic S. Fox
Joel B. Strauss
Donald R. Hall
Jeffrey P. Campisi
Aviah Cohen Pierson
Kaplan Fox & Kilsheimer LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

/s/ Lawrence J. Lederer
Lawrence J. Lederer
Merrill G. Davidoff
Arthur Stock
Robin Switzenbaum
Gary E. Cantor
Lane L. Vines
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103-6365
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

/s/ M. Richard Komins
M. Richard Komins
Jeffrey A. Barrack
Robert A. Hoffman
Beth T. Seltzer
Julie B. Palley
Barrack, Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838

- and -

Regina M. Calcaterra
1350 Broadway, Suite 1001
New York, NY 10018
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

*Co-Lead Counsel for Lead Plaintiff State Teachers' Retirement System of Ohio
and the Settlement Class*

24