# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION<br><br><br><br>This Document Relates To:<br>ERISA ACTION | : Master File No.:<br>: 07cv9633 (JSR)(DFE)<br>:<br>: **CLASS ACTION**<br>:<br>:<br>:<br>: Case No.:<br>: 07-CV-10268 (JSR)(DFE)<br>:<br>: |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     THE SETTLEMENT ........................................................................................... 5

III.    BACKGROUND OF THE CONSOLIDATED ACTIONS ............................................. 6

        A.    Summary of the Action ....................................................................... 6

        B.    Settlement Negotiations and Related Proceedings ............................... 7

        C.    Preliminary Approval and Notice to the Class ..................................... 8

IV.     ARGUMENT ..................................................................................................... 8

        A.    The Applicable Legal Standards ........................................................... 8

        B.    This Settlement Is the Product of a Rigorous and Adversarial
              Process ............................................................................................. 10

        C.    The Settlement is Fair, Reasonable and Adequate Under the
              *Grinnell* Factors .............................................................................. 11

              1.    *Grinnell* Factor One:  The Complexity, Expense and Likely
                    Duration of Litigation ............................................................. 12

              2.    *Grinnell* Factor Two:  The Class's Reaction to the
                    Settlement ............................................................................. 13

              3.    *Grinnell* Factor Three:  The Stage of the Proceedings and
                    Extent of Discovery ............................................................... 15

              4.    *Grinnell* Factors Four through Six:  The Risks of
                    Establishing Liability, Damages, and Maintaining the Class
                    Action Through Trial .............................................................. 17

                    a.    Factor Four: The Risks of Establishing Liability ...................... 17

                    b.    Factor Five:  The Risk of Establishing Damages ...................... 21

                    c.    Factor Six: The Risks of Maintaining the Class
                          Action Through Trial ................................................. 25

              5.    *Grinnell* Factor Seven:  The Ability of Defendants to
                    Withstand a Greater Judgment ................................................ 25

      6.    *Grinnell* Factors Eight and Nine: The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation. ........................................................... 26

V. THE SETTLEMENT CLASS SHOULD BE CERTIFIED ............................................ 28

    A.    The Prerequisites of Rule 23(a) Are Satisfied .................................................... 30

        1.    The Class Satisfies the Numerosity Requirement.................................. 30

        2.    Common Questions of Law and Fact Exist ........................................... 30

        3.    Plaintiffs' Claims Are Typical of the Claims of the Class..................... 31

        4.    Plaintiffs Will Adequately Protect the Interests of the Class................. 32

    B.    The Class Satisfies the Requirements of Rule 23(b)(1)...................................... 33

    C.    The Class Satisfies the Requirements of Rule 23(b)(2)...................................... 35

    D.    The Requirements of Rule 23(g) Are Met ......................................................... 36

VI. THE FORMS AND METHODS OF NOTICE EMPLOYED SATISFY RULE 23 AND DUE PROCESS ...................................................................................... 37

VII. THE PLAN OF ALLOCATION TREATS ALL CLASS MEMBERS FAIRLY AND SHOULD BE APPROVED ..................................................................... 39

VIII. CONCLUSION ........................................................................................................... 42

# **TABLE OF AUTHORITIES**

## **Cases**

*Alvidres v. Countrywide Fin. Corp.*, No. 07-5810, 2008 WL 1766927 (C.D. Cal. Apr. 16, 2008) ............................................................................................... 34

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................ 29, 30

*Babcock v. Computer Assocs., Int'l, Inc.*, 212 F.R.D. 126 (E.D.N.Y. 2003) ........................ 30, 32

*Banyai v. Mazur*, 205 F.R.D. 160 (S.D.N.Y. 2002) ..................................................... 30

*Becher v. Long Island Lighting Co.*, 164 F.R.D. 144 (E.D.N.Y. 1996) ..................................... 35

*Bello v. Integrated Res., Inc.*, No. 88-1214, 1990 WL 200670 (S.D.N.Y. Dec. 4, 1990) ................................................................................................ 25

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) .......................................... passim

*Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006) ........................................................ 29

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ..................................... 30

*Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171 (7th Cir. 1982) ............................................ 39

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................. 10, 14, 15

*DeFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006) ...................................... 19

*Donovan v. Bierwirth,* 754 F.2d 1049 (2d Cir. 1985) ................................................... 22, 24

*Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007) .................................................... 3, 18

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998) .......................................... 29

*Foe v. Cuomo*, 700 F. Supp. 107 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196 (2d Cir. 1989) ................................................................................................ 38

*Gruby v. Brady*, 838 F. Supp. 820 (S.D.N.Y. 1993) .................................................... 30, 34

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), *reh'g and reh'g en banc denied*, Nos. 07-3605, 08-1224 (7th Cir. June 24, 2009) ...................................... 20

*Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................................................................... 11

*In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984) ........................... 27

*In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179 (2d Cir. 1987) ..................................... 39

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418
    (S.D.N.Y. 2001) ......................................................................................................... 40

*In re Amsted Indus. Inc., Litig.*, 263 F. Supp. 2d 1126 (N.D. Ill. 2003) .................................... 29

*In re AOL Time Warner ERISA Litig.*, No. 02-8853, 2006 WL 2789862 (S.D.N.Y.
    Sept. 27, 2006) ................................................................................................ 10, 34, 42

*In re Charter Commc'ns, Inc. Sec. Litig.*, No. 02-1186, 2005 WL 4045741 (E.D.
    Mo. June 30, 2005) ..................................................................................................... 42

*In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228 (5th Cir. 1982) ................................. 39

*In re Delphi ERISA Litig.*, 248 F.R.D. 483  (E.D. Mich. 2008)................................................. 34

*In re Diet Drugs*, No. 99-20593, 2000 WL 1222042 (E.D. Pa. 2000)....................................... 25

*In re Elan Sec. Litig.*, 385 F. Supp. 2d 363 (S.D.N.Y. 2005) .................................................... 16

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.,* 228 F.R.D. 541 (S.D. Tex.
    2005) ................................................................................................................... 12, 28

*In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353 (9th Cir. 1979) ......................... 39

*In re First Am. Corp. ERISA Litig.*, No. 07-01357 (C.D. Cal. June 10, 2009) .......................... 25

*In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436 (S.D.N.Y. 2004) .................. passim

*In re Huntington Bancshares, Inc. ERISA Litig.*, No. 08-165, 2009 WL 819335
    (S.D. Ohio Feb. 9, 2009)............................................................................................ 19

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457 (E.D. Pa. 2000) ............... 29, 33, 34

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 209 F.R.D. 94 (E.D. Pa. 2002) ............................. 12

*In re Ikon Office Solutions, Inc*., *Sec. Litig.,* 194 F.R.D. 166 (E.D. Pa. 2000) .................... 36, 40

*In re Lloyd's Am. Trust Fund Litig.*, No. 96-1262, 2002 WL 31663577 (S.D.N.Y
    Nov. 26, 2002) ........................................................................................................... 15

*In re McKesson HBOC, Inc. ERISA Litig.,* No. 00-20030, 2002 WL 31431588
    (N.D. Cal. Sept. 30, 2002) ......................................................................................... 23

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, Nos. 05-1151, 05-2369,
    2009 WL 331426 (D.N.J. 2009) ........................................................................... 20, 25

*In re Milken & Assocs. Sec. Litig*., 150 F.R.D. 46 (S.D.N.Y. 1993) ............................. 24, 26, 40

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996)....................29

*In re Oracle Sec. Litig.*, No. 90-931, 1994 WL 502054 (N.D. Cal. Jun. 18, 1994) .................40

*In re Oxford Health Plans, Inc.*, 191 F.R.D. 369 (S.D.N.Y. 2000) ...........................32

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997).....................10, 27, 40

*In re Polaroid ERISA Litig.*, 240 F.R.D. 65 (S.D.N.Y. 2006) ....................................32

*In re Priceline.com, Inc. Sec. Litig.*, No. 00-1884, 2007 WL 2115592 (D. Conn. July 20, 2007).......................................................................................11

*In re Providian Fin. Corp.*, No. 02-1001, 2003 WL 22005019 (N.D. Cal. June 30, 2003) ..............................................................................................29

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362 (S.D.N.Y. 1996).......................37

*In re Syncor, ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ........................................19

*In re the Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992) .........................32

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099 (S.D.N.Y. 1989) ................................................................................27

*In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231 (D. Del. 2002)....................................36

*In re WorldCom Inc. ERISA Litig.*, No. 02-4816, 2004 WL 2211664 (S.D.N.Y. Oct. 4, 2004) ..............................................................................29, 32, 34

*In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ...........................................................................passim

*In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267 (S.D.N.Y. 2003)...........................................30

*Int'l Union of Elec., Salaried, Mach., & Furniture Workers v. Unisys Corp.*, 858 F. Supp. 1243 (E.D.N.Y. 1994) ................................................................11

*Kane v. United Indep. Union Welfare Fund*, No. 97-1505, 1998 WL 78985 (E.D. Pa. Feb. 24, 1998) ................................................................................33

*Kayes v. Pac. Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995).........................................................29

*Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008)........................................3, 18

*Koch v. Dwyer*, No. 98-5519, 2001 WL 289972 (S.D.N.Y. Mar. 23, 2001) .............................34

*Kolar v. Rite Aid Corp.,* No. 01-Civ-1229, 2003 WL 1257272 (E.D. Pa. Mar. 11, 2003) ..............................................................................................34

*Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299 (5th Cir. 2007) ..................................... 20, 25

*LaRue v. DeWolff, Boberg, & Assocs., Inc.*, 128 S.Ct. 1020 (2008) .......................................... 25

*Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193 (D. Kan. 2000) ........................ 40

*Lingis v. Motorola, Inc.*, No. 03-5044, 2009 WL 1708097 (N.D. Ill. 2009) .............................. 20

*Malchman v. Davis,* 706 F.2d 426 (2d Cir. 1983) ......................................................................... 9

*Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................... 40, 42

*Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ......................................... 30

*Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134 (1985) ..................................................... 29, 33

*Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995) ..................................................................... 18

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), *aff'd*, 107 F.3d
    3 (2d Cir. 1996)........................................................................................................................ 37

*Piazza v. EBSCO Indus., Inc.*, 273 F.3d 1341 (11th Cir. 2001)........................................... 29, 33

*Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008)................................................................... 19

*Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004) ....................................................... 29, 33, 34

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)...................................................................... 30

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001)............................ 35

*Schneider v. GE Capital Mortgage Servs., Inc.*, No. 09-4651, 1997 WL
    272403 (S.D.N.Y. May 21, 1997)........................................................................................... 39

*Smith v. Aon Corp.*, 238 F.R.D. 609 (N.D. Ill. 2006) ............................................................... 32

*Spann v. AOL Time Warner Inc.,* 02-8238, 2005 WL 1330937 (S.D.N.Y. June 7,
    2005) ..................................................................................................................................... 9, 39

*Specialty Cabinets & Fixtures, Inc., v. Am. Equitable Life Ins. Co.*, 140 F.R.D.
    474 (S.D. Ga. 1991) ................................................................................................................ 33

*Summers v. State St. Bank & Trust Co.*, 453 F.3d 404 (7th Cir. 2006) ..................................... 19

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-11814, 2004 WL 1087261
    (S.D.N.Y. May 14, 2004)........................................................................................................ 16

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) .............................................................................. 29

*Von Moore v. Simpson*, No. 96-2971, 1997 WL 570769 (N.D. Ill. Sept. 10, 1997)................... 31

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ................................. 9, 11

*Weigner v. City of New York*, 852 F.2d 646 (2d Cir. 1988)................................................. 28, 37

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ........................................................... 9, 11

*White v. NFL,* 822 F. Supp. 1389 (D. Minn. 1993), *aff'd*, 41 F.3d 402 (8th Cir. 1994) ....................................................................................................................................... 40

## Statutes

ERISA § 404(a)(2), 29 U.S.C. § 1104(a)(2) ............................................................................. 19

ERISA § 404(c), 29 U.S.C. § 1104(c) ................................................................................. 19, 20

ERISA § 409(a), 29 U.S.C. § 1109(a) ................................................................................. 31, 36

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ....................................................................... 29, 33

## Rules

Fed. R. Civ. P. 23 ........................................................................................... 14, 29, 37, 39

Fed. R. Civ. P. 23(a) ...................................................................................... 1, 29, 30, 43

Fed. R. Civ. P. 23(a)(2) ............................................................................................. 30, 31

Fed. R. Civ. P. 23(a)(3) ............................................................................................. 31, 32

Fed. R. Civ. P. 23(a)(4) ..................................................................................................... 32

Fed. R. Civ. P. 23(b) ................................................................................................... 29, 30

Fed. R. Civ. P. 23(b)(1)............................................................................................... passim

Fed. R. Civ. P. 23(b)(1)(A) ......................................................................................... 33, 34

Fed. R. Civ. P. 23(b)(1)(B) ................................................................................... 29, 33, 34

Fed. R. Civ. P. 23(b)(2)............................................................................................... passim

Fed. R. Civ. P. 23(b)(3)..................................................................................................... 33

Fed. R. Civ. P. 23(c) ......................................................................................................... 43

Fed. R. Civ. P. 23(c)(2) ..................................................................................................... 37

Fed. R. Civ. P. 23(e) ..................................................................................................... 8, 37

Fed. R. Civ. P. 23(g) ........................................................................................ 36, 37

**<u>Other Authorities</u>**

4 William B. Rubenstein, Alba Conte & Herbert B. Newberg, NEWBERG ON
    CLASS ACTIONS § 11:45 (4th ed. 2002 & Supp. 2009). ....................................... 15

5 James Wm. Moore, et al., MOORE'S FEDERAL PRACTICE § 23.161 (3d ed. 2008). .................... 9

Dan Fitzpatrick, Susanne Craig & Carrick Mollenkamp, *Thain Ousted in Clash at*
    *Bank of America:  Surprise Losses at Merrill Unit Led to Former Chief's Fall;*
    *Pressure Is Seen Mounting on CEO Lewis Over Soured Deals*, WSJ, Jan. 23,
    2009 ......................................................................................................................... 4

Grant McCool & Jonathan Stempel , *U.S. Pressured B of A to Complete Merrill*
    *Deal*, Reuters, Apr. 23, 2009 .............................................................................. 4

## I.    INTRODUCTION

Named Plaintiffs Carl Esposito, Barbara Boland, Alan Maltzman and Mary Gidaro respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, which seeks approval of the $75 million cash settlement (the "Settlement")[1] of this consolidated Employee Retirement Income Security Act ("ERISA") class action.[2]  This is an excellent result in light of the factual and legal risks to the Class associated with continued litigation that are discussed in detail below. The Settlement clearly satisfies the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), and, accordingly, should be approved as fair, reasonable and adequate.

At its core, the detailed Consolidated Supplemental Complaint for Violations of the Employee Retirement Income Security Act ("Complaint") (Dkt. No. 64), in this case challenges the prudence of fiduciaries for three Merrill Lynch pension plans—the Merrill Lynch & Co., Inc. 401(k) Savings and Investment Plan, the Merrill Lynch & Co., Inc. Retirement Accumulation Plan, and the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan (the "Plans")—in permitting the Plans to invest and maintain existing investments in Merrill Lynch & Co., Inc. ("Merrill Lynch," "Merrill" or the "Company") common stock in the face of information suggesting both that Merrill's stock price was inflated due to undisclosed information and that the stock investment became increasingly and unacceptably risky.  The Complaint also contains allegations that fiduciaries for the Plans failed in their duty to disclose material information

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement ERISA Action ("Stipulation" or "Stip."). (Dkt. No. 92).

[2] Specifically Plaintiffs seek an order (a) granting final approval of the Settlement of this litigation; (b) granting final approval of the proposed Class under Fed. R. Civ. P. 23(a) and (b)(1) and (b)(2); (c) determining that the forms and methods of notice to the Class were appropriate and sufficient; and (d) approving the proposed Plan of Allocation of the Settlement Fund.  The Parties' [Proposed] Order and Final Judgment is submitted herewith.

bearing on the value of Merrill stock to the Plans' participants. Such disclosures would have allowed participants to fairly evaluate their own investments and would have assured that purchases of Merrill stock by the Plans from September 30, 2006 to December 31, 2008 (the "Class Period") occurred at a fair price.

Defendants vigorously contest liability on all fronts. Defendants assert that Merrill was a well-run company adversely impacted by an unprecedented, and more importantly, unpredictable collapse in financial markets that affected each of Merrill's peers. They contend that Merrill took significant and appropriate steps to limit its exposure to subprime mortgages during the Class Period, including slowing down subprime originations at First Franklin, securitizing Merrill's subprime exposure into collateralized debt obligations ("CDOs"), retaining only the AAA rated tranches of the CDOs, and hedging CDO positions. Defendants believe that if those steps were insufficient, it was because of the extraordinary collapse in the markets, which overwhelmed what appeared to be responsible risk management techniques at the time. As to the argument that Merrill stock was unacceptably risky, Defendants insist that, at most, there was a window of only a few days prior to the agreement to sell Merrill to Bank of America, reached on September 15, 2008, in which a responsible Merrill executive (let alone Plan fiduciary) arguably could have concluded that Merrill was in danger of potential collapse. According to Defendants, because the sale averted this collapse, no losses can be associated with a failure to take action during this narrow window, even if such action had been both practical and legally required.

At the time this case was filed, and increasingly during the pendency of the litigation, the ERISA case law, although containing much that is favorable to the Plaintiffs here, has developed in such a way as to underscore the risks posed to Plaintiffs in this litigation. As explained more fully below, where ERISA plans encourage or require that employer stock be an available plan

2

investment (which Defendants assert is the case here), several courts have applied a presumption that fiduciaries act reasonably by following these plan provisions.[3]  Other cases call into question Plaintiffs' contention that employer stock, even if it is properly priced and the risks appropriately disclosed, may be an imprudent plan investment; Defendants deride this contention as a disguised diversification claim, which is not viable because ERISA carves out employer stock from its diversification requirement.  And assuming that Plaintiffs could prevail on liability, Defendants argue that the breaches of duty alleged either caused no losses or losses that were orders of magnitude smaller than the simple decline in the value of Merrill shares.  After all, they argue, any disclosure would have caused the very loss Plaintiffs sought to avoid in the Plans' holdings, a sale without disclosure would be unlawful, and the largest part of any price decline for shares acquired during the Class Period was suffered by stocks in the financial sector generally and had nothing to do with conditions unique to Merrill.

Although the Settlement in this case came at an early stage, Plaintiffs conducted themselves reasonably in negotiating a settlement, and conducted thorough discovery thereafter which has confirmed the adequacy and reasonableness of the Settlement.  Plaintiffs were acutely aware throughout the negotiations that the lifeline thrown Merrill by Bank of America's September 15, 2008 agreement to buy the Company was a tenuous one.  Continuing financial deterioration for Merrill and a waning determination by the federal government and Bank of America to provide Merrill the liquidity necessary to avoid bankruptcy could easily wipe out the financial value of Plaintiffs' claims against Merrill and the Company's ability to indemnify committee members.  The very riskiness of Merrill's balance sheet identified in Plaintiffs'

---

[3]  *See Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 254 (5th Cir. 2008); *Edgar v. Avaya, Inc.*, 503 F.3d 340, 348-49 (3d Cir. 2007); Defendants' Memorandum of Law in Support of

Complaint,[4] together with the unprecedented turmoil experienced in the financial system, made continuing the litigation a doubtful gamble on Merrill's future. Indeed, revelations that began appearing shortly after the term sheet was executed on January 7, 2009 showed that Merrill teetered on extinction even as the settlement was being negotiated. Without pressure from the federal government (as reported by Bank of America) and a new commitment of enormous federal resources to stand behind Merrill, the Bank of America merger would not have closed and Merrill would likely not have survived in January 2009. Dan Fitzpatrick, Susanne Craig & Carrick Mollenkamp, *Thain Ousted in Clash at Bank of America: Surprise Losses at Merrill Unit Led to Former Chief's Fall; Pressure Is Seen Mounting on CEO Lewis Over Soured Deals*, WSJ, Jan. 23, 2009, at A1; Grant McCool & Jonathan Stempel , *U.S. Pressured B of A to Complete Merrill Deal*, Reuters, Apr. 23, 2009.

Plaintiffs foresaw this weakness. The Complaint lamented the continued riskiness of non-subprime related assets on Merrill's balance sheet and identified the most immediate threat to Merrill's survival as the possibility that the merger with Bank of America might not close. But Merrill's continued existence as a separate entity meant that the merger did not end the risk to Merrill. As a key term of the Settlement, Plaintiffs negotiated the prompt escrow of the settlement consideration to minimize the threat that a Merrill bankruptcy posed to the prospects for a recovery. A decision to delay settling in the hopes of a greater recovery later, whether through settlement or trial, would have been an inappropriately risky bet on Merrill's mid- and long-term survival, one dependent on the shape of future federal strategies to preserve the financial system. Repeatedly, Merrill has shown itself unable to stand on its own feet in the face

---

Motion to Dismiss (Dkt. No. 67) at 17, 19-23; Reply Memorandum of Law in Support of Motion to Dismiss (Dkt. No. 77) at 12-18.

[4] *See, e.g.,* Complaint ¶¶ 122, 125, 142-149.

of deteriorating market conditions without support from both Bank of America (whose capital to support Merrill's illiquid assets is far from unlimited) and the federal government. It would be irresponsible for Plaintiffs to assume that such support will necessarily continue throughout the course of continued litigation which, with appeals, could last many years.

## II.    THE SETTLEMENT

This is a global settlement resulting in a release of claims against all Defendants that will bring this litigation to a close. The principal terms of the Settlement are described in the Settlement Stipulation previously filed with and preliminarily approved by the Court. Briefly, the Parties have agreed to settle all claims arising out of the ERISA action for $75 million on behalf of a class of participants and beneficiaries in the Plans; this money, net of court-approved attorneys' fees and expenses, notice and other expenses described in ¶ 3.3 of the Stipulation will be directed to the accounts of Class members pursuant to the court-approved Plan of Allocation[5] The Settlement is contingent on Co-Lead Counsel's[6] "written confirmation after the completion of…additional confirmatory discovery…that the confirmatory discovery was adequate and that

---

[5] The proceeds of the Settlement are in addition to amounts the Plans might receive pursuant to the settlement of the Securities Action. Stip. ¶ 2.4 ("[a]mounts paid under the *Settlement* shall not constitute an offset or credit with respect to amounts to be paid in settlement of the Securities Action, nor shall amounts paid in settlement of the Securities Action constitute an offset or credit with respect to amounts payable in the Settlement.").

[6] On March 12, 2008, the Court entered the Order Regarding: (1) Consolidation of Securities Actions, Appointment of Lead Plaintiff and Approval of Lead Counsel; (2) Consolidation of Derivative Actions and Appointment of Plaintiffs' Executive Committee and Liaison Counsel; (3) Consolidation of ERISA Actions and Appointment of Interim Co-Lead Counsel; and (4) Scheduling of the Filing of Consolidated Amended Complaints in Each of the Actions and Responses Thereto (the "Consolidation Order"), in which it appointed Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll PLLC as Interim Co-Lead Counsel ("Co-Lead Counsel"), with responsibility, among other things, to lead and coordinate the prosecution of the case.

the Settlement is fair, reasonable and adequate," Stip. ¶ 8.1.3[7], and is contingent on the final

approval of the settlement in the Securities Action.  Stip. ¶ 8.1.6.

### III.  BACKGROUND OF THE CONSOLIDATED ACTIONS

**A.    Summary of the Action**

On May 21, 2008**,** Plaintiffs filed their Consolidated Amended Complaint, consolidating

eleven separate actions and combining their allegations.  (Dkt. No. 41).  Thereafter, on

September 23, 2008, Plaintiffs filed their Consolidated Supplemental Complaint for Violations

of the Employee Retirement Income Security Act (the "Complaint).  (Dkt. No. 64).  This

Complaint alleged that the Plans' fiduciaries violated their fiduciary and co-fiduciary duties

under ERISA by, *inter alia*:  (1) failing to prudently and loyally manage the Plans and the Plans'

assets; (2) failing to properly monitor the performance of their fiduciary appointees, and to

remove and replace those whose performance was inadequate; (3) failing to disclose necessary

information to co-fiduciaries about Merrill stock; (4) failing to provide participants with

complete and accurate information regarding the Merrill stock sufficient to advise participants of

the true risks of investing their retirement savings; (5) assuring that all of the Plans acquired

stock, if at all, at an appropriate price; and (6) breaches of co-fiduciary duty in connection with

the foregoing breaches.  Plaintiffs allege that Defendants knew or should have known that the

Merrill stock was not a prudent retirement investment for the Plans during the Class Period and

that the Defendants acted imprudently by allowing further investment in Merrill stock and not

liquidating those holdings.

---

[7] Written confirmation that confirmatory discovery was complete and such discovery was
adequate and the Settlement is fair, reasonable and adequate was provided to Defense Counsel
on June 26, 2009.

The Defendants vigorously contested the Plaintiffs' allegations from the outset and filed an extensive Motion to Dismiss (*see, e.g.*, Dkt. Nos. 66-68, 77). Before the Motion was argued, however, the Parties informed the Court that a settlement had been reached.

## B.    Settlement Negotiations and Related Proceedings

The Settlement was achieved as a result of hard-fought, arm's-length negotiations, occurring in December of 2008 and the first few days of 2009. A term sheet was executed on January 7, 2009 setting out an agreement in principle, and the Court was informed that a settlement had been reached contingent on the parties' ability to agree to a detailed stipulation of settlement consistent with the term sheet.

Plaintiffs' Co-Lead Counsel learned, on or about December 10, 2008, that Defendants were interested in a potential global settlement of the Securities and ERISA Actions. Plaintiffs insisted that any settlement of the ERISA Action be negotiated independently, including the amount at which it should be settled. Plaintiffs' position was resisted with repeated reminders that Merrill was prepared to settle the Securities Action alone if a satisfactory resolution of the ERISA Action could not be achieved. The ultimate settlements bear out that this was no bluff; the settlement of the Securities Action is not contingent on the final approval of the ERISA Action, but the settlement of the ERISA Action is contingent on the ultimate approval of the Securities Action. Stip. ¶ 8.1.6. However, in order to assure that the ERISA claims were fairly valued, Co-Lead Counsel continued to insist on dealing separately with the Defendants.

ERISA Co-Lead Counsel met separately with representatives of Merrill and the Individual Defendants, arranged for the disclosure of data necessary to estimate damages under a variety of scenarios, and agreed that any resolution would be contingent on Co-Lead Counsels' satisfaction with subsequent confirmatory discovery. A period of intense negotiation ensued. Merrill was steadfast in its insistence that an agreement in principle had to be reached before the

7

end of the year and the scheduled closing of the merger with Bank of America, and, if no such agreement could be reached, that Defendants were prepared to go forward with a separate Securities Settlement if one could be reached; any ERISA settlement, however, had to be contingent on approval of a Securities settlement.

After personal meetings and countless telephone calls, a settlement amount was tentatively agreed to at the end of the year and the term sheet was agreed to a few days later. The Stipulation, itself the result of extensive negotiations of its detailed provisions, was agreed to on February 27, 2009.

## C.    Preliminary Approval and Notice to the Class

On March 16, 2009, this Court issued its "Order Preliminarily Approving Settlement, Preliminarily Certifying Settlement Class, Approving Notice Plan, and Setting Fairness Hearing Date" ("Preliminary Approval Order"). (Dkt. No. 91). In the Preliminary Approval Order, the Court preliminarily approved the Settlement Stipulation and scheduled the Fairness Hearing for July 27, 2009. The Preliminary Approval Order also set forth the required notice procedures. Notice has been provided according to the Order. *See* Declaration of Jennifer M. Keough re: Notice Dissemination and Publication ("Keough Decl."), attached as Exhibit A to the Joint Declaration of Lynn L. Sarko and Marc I. Machiz in Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation and Motion for Award of Attorneys' Fees, Expenses, and Case Contribution Awards ("Joint Declaration" or "Joint Decl.").

## IV.    ARGUMENT

## A.    The Applicable Legal Standards

Plaintiffs present this Settlement for review under Fed. R. Civ. P. 23(e), which requires court approval of class action settlements, the issuance of notice in a reasonable manner to class members who would be bound by the settlement, and a finding by the court following a hearing

that the settlement is reached through arm's-length negotiations, and is fair, reasonable and adequate.

Courts favor the settlement of complex class action litigation because it saves time and money and enables the parties to resolve disputes on their own timetable and terms. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.") (citation and internal quotes omitted); *In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) ("public policy favors settlement, especially in the case of class actions"). "There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Because settlement is a preferred means of dispute resolution, there is a strong presumption in favor of settlement. 5 James Wm. Moore, et al., MOORE'S FEDERAL PRACTICE § 23.161 (3d ed. 2008).

The time-honored standard for reviewing the proposed settlement of a class action in the Second Circuit, as in other circuits, is whether the proposed settlement is "fair, adequate, and reasonable." *Wal-Mart,* 396 F.3d at 116; *Spann v. AOL Time Warner Inc.,* 02-8238, 2005 WL 1330937, at *9 (S.D.N.Y. June 7, 2005). In making that determination, the Court should consider the "substantive terms of the settlement compared to the likely result of a trial." *Malchman v. Davis,* 706 F.2d 426, 433 (2d Cir. 1983) (citations omitted). Although the Court should not "rubber stamp" a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case," *Grinnell*, 495 F.2d at 462, in applying the standards to evaluate procedural and substantive fairness discussed below.

**B.    This Settlement Is the Product of a Rigorous and Adversarial Process**

A district court's consideration of a settlement's fairness begins with an examination of "the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). "A court must ensure that the settlement resulted from 'arm's-length negotiations' and that plaintiff's counsel engaged in the discovery 'necessary to effect representation of the class's interest.'" *WorldCom*, 2004 WL 2338151, at *5 (quoting *D'Amato,* 236 F.3d at 85). The details of the negotiation process are described in the Joint Decl. ¶¶ 22-36.

Although courts have noted that intensive pre-negotiation discovery and motion practice, and the presence of a mediator, demonstrate the absence of fraud or collusion,[8] all of these elements need not be present for a court to conclude that the negotiation of the settlement was at arm's-length. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y. 1997) ("[I]t is assumed that the forces of self-interest and vigorous advocacy will of their own accord produce the best possible result for all sides."), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Here, Plaintiffs and Co-Lead Counsel determined the Settlement value of the ERISA Action, determined an initial demand, and negotiated intensively, albeit over a compressed period of time, for the best possible number that could be achieved at this stage of the litigation consistent with their view of the case. Joint Decl. ¶ 29. Under the circumstances, the Settlement is entitled to a presumption of fairness. *Global Crossing,* 225 F.R.D. at 461.

---

[8] *In re AOL Time Warner ERISA Litig*., No. 02-8853, 2006 WL 2789862, at * 5 (S.D.N.Y. Sept. 27, 2006) (citing *D'Amato*, 236 F.3d at 85 and *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (internal citations and quotations omitted)).

**C.**     **The Settlement is Fair, Reasonable and Adequate Under the *Grinnell* Factors**

In *City of Detroit v. Grinnell Corp.*, the Second Circuit identified the following nine

factors that courts should consider in deciding whether a proposed class action settlement is fair,

reasonable and adequate:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction
> of the class to the settlement, (3) the stage of the proceedings and the amount of
> discovery completed, (4) the risks of establishing liability, (5) the risks of
> establishing damages, (6) the risks of maintaining the class action through the
> trial, (7) the ability of the defendants to withstand a greater judgment, (8) the
> range of reasonableness of the settlement fund in light of the best possible
> recovery, (9) the range of reasonableness of the settlement fund to a possible
> recovery in light of all the attendant risks of litigation.

495 F.2d at 463 (citations omitted); s*ee also Wal-Mart*, 396 F.3d at 117; *In re Priceline.com, Inc.*

*Sec. Litig.*, No. 00-1884, 2007 WL 2115592, at *3 (D. Conn. July 20, 2007).

"To find the settlement fair, the Court need not find that every factor weighs in favor of

the settlement; the court [instead] 'consider[s] the totality of these factors in light of the

particular circumstances.'" *Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2005 WL 2757792, at

*5 (S.D.N.Y. Oct. 24, 2005) (citing *Global Crossing*, 225 F.R.D. at 456, internal quotations

omitted).  Similarly, the court need not apply any "single, inflexible test."  *Int'l Union of Elec.,*

*Salaried, Mach., & Furniture Workers v. Unisys Corp.*, 858 F. Supp. 1243, 1265 (E.D.N.Y.

1994) (citation omitted).  Finally, in applying the *Grinnell* factors, a court should not substitute

its judgment for that of the parties who litigated the case and negotiated the settlement.  *Id*. at

1266.  The court need not conduct a mini-trial of the merits; the purpose of settlement is to avoid

a judicial resolution of contested matters.  *Weinberger*, 698 F.2d at 74.

For the reasons set forth below, the Settlement satisfies all of the *Grinnell* factors, except

an assessment of the Class's reaction where evaluation must await the deadline for objections.

> 1.    *Grinnell* **Factor One:  The Complexity, Expense and Likely Duration of Litigation**

Many courts have recognized the complexity of ERISA breach of fiduciary duty

company stock claims.  In *WorldCom*, upon consideration of a proposed settlement, Judge Cote

noted that there is a "general risk inherent in litigating complex claims such as these to their

conclusion."  *WorldCom*, 2004 WL 2338151, at *6 (approving settlement); *see also In re Enron

Corp. Sec., Derivative & "ERISA" Litig.,* 228 F.R.D. 541, 565 (S.D. Tex. 2005) (finding that the

"complexity, expense and likely duration of the litigation…are self evident and exceptional"); *In

re Ikon Office Solutions, Inc. Sec. Litig.*, 209 F.R.D. 94, 104-107 (E.D. Pa. 2002) (noting the

complexity of similar breach of fiduciary duty claims, as well as the expense of litigation and

risks of establishing liability and damages).  Similarly, in *Global Crossing*, Judge Lynch

explained with respect to similar ERISA claims:

> The ERISA cases would pose additional factual and legal issues.  Fiduciary status, the scope of fiduciary responsibility, the appropriate fiduciary response to the Plans' concentration in company stock and [company] business practices would be issues for proof, and numerous legal issues concerning fiduciary liability in connection with company stock in 401(k) plans remain unresolved.  These uncertainties would substantially increase the ERISA cases' complexity, duration, and expense – and thus militate in favor of settlement approval.

225 F.R.D. at 456.

This case, even more than many other ERISA class action cases, was both enormous in

scope and enormously complicated.  In addition to involving scores of potential witnesses, more

than 70,000 participants in Merrill's three Plans, and over 38 million pages of documents

produced in confirmatory discovery, it presented complex factual and legal issues against the

backdrop of a fast-developing and hotly disputed area of the law.

Plaintiffs' claims raise a host of contested legal and factual issues, each of which would

require extensive lay and esoteric expert discovery and testimony to resolve.  This was true of

both the ERISA issues and the complicated underlying issues surrounding Merrill's exposure to subprime related CDOs, other real estate assets, off balance sheet derivatives and guarantees, as well as credit default swaps ("CDSs"), some of which were used as hedges that turned out, at least in hindsight, to have been ineffective due to counterparty default risk. Fundamental to a resolution of this litigation is a determination of whether Merrill's continued exposure to extraordinarily complex instruments, both on and off-balance sheet, are more appropriately viewed as a reasonable but ultimately unsuccessful risk management strategy, as Defendants contend, or more realistically seen as an independent and inadequately disclosed source of risk to Merrill's balance sheet that contributed to making Merrill shares both inflated in price and inappropriately risky. Likewise, determining the degree to which Merrill's balance sheet as a whole contained unacceptable levels of risk (assuming arguendo that such an allegation is legally viable) promised to be a difficult and hotly contested subject, with Merrill insisting that many of their businesses remained sound, most of their risk was carefully hedged, and that only an unprecedented and unforeseeable collapse of the real estate market that devastated its holdings and counterparties made Merrill appear to be weak.

Co-Lead Counsel briefed the Motion to Dismiss. Assuming that the case survived that Motion, the Parties stood at the very beginning of a long and costly litigation process, with class certification, discovery, motions for summary judgment, trial and appeals all ahead of them.

The complexity, expense and duration of this litigation weigh heavily in favor of approving the Settlement.

### 2.    *Grinnell* Factor Two:  The Class's Reaction to the Settlement

Named Plaintiffs Carl Esposito, Barbara Boland, Alan Maltzman and Mary Gidaro, have been kept informed of the settlement negotiations with the Defendants throughout the negotiating process. They all support the Settlement without qualification. *See* Declarations of Carl

13

Esposito, Barbara Boland, Alan Maltzman and Mary Gidaro, attached as Exhibits B through E to the Joint Declaration.

Pursuant to the notice plan approved by the Court in the Preliminary Approval Order, on April 6, 2009**,** Notice was mailed to more than 70,000 class members at the last known addresses provided by Defendants.  In addition, the Publication Notice was published in the *New York Times* and distributed via *BusinessWire***.**  The notice program was appropriate under the circumstances, consistent with notice programs recently employed in similar class action litigation and fully complied with Rule 23, Fed. R. Civ. P. and Due Process.  Keough Decl., attached as Exhibit A to the Joint Decl.

To date, Plaintiffs have received no objections to the Settlement.[9]  Generally, with a class of over 70,000 people, a small number of objections weighs heavily in favor of approval. *D'Amato*, 236 F.3d at 86-87 (small numbers of comments support finding the settlement fair, reasonable, and adequate); *Global Crossing*, 225 F.R.D. at 457 (same).  Given that the deadline for filing objections has not yet arrived, it is premature to judge whether this factor weighs in favor of approval.

Under the provisions of the Preliminary Approval Order and the Notice, the deadline for filing and service of objections is July 6, 2009.  Plaintiffs will respond to all objections that are filed and served before this deadline, by July 20, 2009 and will post these responses on the Settlement web site.

---

[9] Notice has resulted in only one objection to date, from David A. Cross, to a "27.5% fee request," which is more than the amount of fees that is now requested.  Mr. Cross does not object to the Settlement.  Mr. Cross's letter is submitted as Exhibit F to the Joint Declaration and addressed in Sections IV(B) and VIII(E) therein.

3.    *Grinnell* **Factor Three:  The Stage of the Proceedings and Extent of Discovery**

There is no litmus test for determining how much work needs to be done in a case for the Court to evaluate a settlement and ensure that counsel were in a position to make an intelligent assessment of their prospects before settling.  *See* 4 William B. Rubenstein, Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11:45 (4th ed. 2002 & Supp. 2009).  Where sophisticated counsel enters into an early settlement, subject to extensive confirmatory discovery, this factor can be considered satisfied.  "Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."  *Global Crossing*, 225 F.R.D. at 458 (citations omitted).  There is no requirement of formal discovery, "so long as Plaintiffs' counsel possesses information sufficient to consider fully the strengths and weaknesses of their claims, and thus the relative benefits of litigation and settlement."  *In re Lloyd's Am. Trust Fund Litig.*, No. 96-1262, 2002 WL 31663577, at *15 (S.D.N.Y Nov. 26, 2002) (citing *D'Amato*, 236 F.3d at 87).

In the instant case, the Parties settled early in the litigation, but after the Motion to Dismiss was fully briefed.  Co-Lead Counsel are experienced in ERISA litigation, and have litigated numerous cases involving allegations that investments in employer stock within defined contribution and 401(k) plans were imprudent and inadequately disclosed.  Joint Decl. ¶ 90.  They are well aware of the recurring legal issues presented in cases of this sort, even though class certification and motions for summary judgment remained to be briefed.

Most importantly, Co-Lead Counsel were mindful of the early stage of the litigation at the time the Settlement was reached.  Consequently, the Settlement was made contingent on Co-Lead Counsel's confirmation of the fairness, adequacy, and reasonableness of the Settlement after extensive confirmatory discovery.  Stip. ¶ 8.1.3.  That confirmatory discovery has included

the production and review of over 38 million pages of documents, including those produced by

Merrill in regulatory investigations, materials presented to Merrill's Board of Directors bearing

on the riskiness of Merrill stock, and documents, including minutes and presentations, relating to

the work of the Committees whose members are named as fiduciaries in the Complaint.  In

addition, Co-Lead Counsel participated in a proffer conducted by Merrill's in house counsel

setting out Merrill's view of the evidence, and in interviews of Merrill's CEO, CFO, two Co-

Presidents, the Investment Committee member who our document review indicated was the best

informed about Merrill's financial condition and subprime/CDO exposure, and the individual

who served as Secretary to the Investment Committee, was a member of the Administrative

Committee and performed the duties of the Administrative Committee.   Joint Decl. ¶ 63.

As a consequence, Plaintiffs developed a comprehensive understanding of the key legal

and factual issues in the case, have "a clear view of the strengths and weaknesses of their case[],"

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-11814, 2004 WL 1087261, at *3 (S.D.N.Y.

May 14, 2004) (quotation omitted), and are keenly aware of the range of possible outcomes at

trial.  While this understanding was partial at the time the Settlement was entered into, it was no

longer so when Plaintiffs determined finally to recommend the approval of the Settlement to the

Court.  Accordingly, the stage of the litigation and the amount of discovery completed weigh in

favor of the Settlement, notwithstanding that the Settlement occurred relatively early in the life

of the case. *See In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005) (approving

settlement despite little or no formal discovery when class counsel interviewed former

employees, reviewed documents and deposition summaries from an SEC investigation, hired

forensic accountants to review the financial errors, and retained experts to analyze damages).

4.    *Grinnell* **Factors Four through Six:  The Risks of Establishing Liability,
Damages, and Maintaining the Class Action Through Trial**

The fairness and adequacy of the Settlement are further underscored by taking into

account the obstacles to ultimate success on the merits that the Plaintiffs faced.  The Settlement

is reasonable in light of the many hurdles and risks that the Class would have to overcome in

order to achieve and maintain class certification, defeat summary judgment, and prove liability

and damages at trial and on appeal.

a.        **Factor Four: The Risks of Establishing Liability**

In assessing a proposed settlement, the Court should balance the benefits it provides to

the class, including the immediacy and certainty of a recovery, against the continuing risks of

litigation.  *See Grinnell*, 495 F.2d at 463.

Plaintiffs believe that their claims are well founded and that they ought to prevail on the

merits and in their efforts to prove causation and damages.  In Plaintiffs' view, the Defendants

were Plan fiduciaries who, as a result of their inattention, failed to protect the participants from

preventable losses.  Nonetheless, this case is fraught with risk at every turn.

First, ERISA company stock cases involving 401(k) plans are quite new.  The first

pioneering cases were not filed until the late 1990s.  While a substantial body of opinions have

been issued on motions to dismiss, and motions on class certification have been decided, the

results of these cases are decidedly mixed.  Relatively few cases of this sort have been decided at

the motion for summary judgment stage or have been decided on appeal, and fewer still have

gone to trial.  In those cases that have reached a higher court or have gone to trial, the results for

plaintiffs have, on balance, not been favorable.  Indeed, the types of ERISA claims asserted by

Plaintiffs here have been described as implicating "a rapidly developing, and somewhat esoteric,

area of law."  *Global Crossing*, 225 F.R.D. at 459 n.13 (finding that plaintiffs' significant legal

17

and factual obstacles to proving their case, when viewed against the substantial and certain

benefits of settlement, supported settlement approval).

Second, Defendants have raised and can be expected to raise a host of defenses, any one

of which, if successful, might end or severely limit Plaintiffs' case.  A brief review of some of

Defendants' major contentions, without fully rehearsing Plaintiffs' rebuttal, suffices to illuminate

the serious litigation risks faced by the Class:

> 1.  Defendants maintained with great vigor, that Merrill stock was "hardwired"
> into Merrill's Plans as a matter of plan design, required to be offered as an
> investment alternative, and that because the Defendant fiduciaries had no power
> to remove or restrict it, they could have no liability.  While Plaintiffs disagree
> with the reading of the Plans' documents and argue, with substantial support from
> the caselaw, that plan documents cannot relieve fiduciaries of all responsibility for
> an investment decision, Defendants claim support for their legal position.  *See,*
> *e.g. Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 249-52 (5th Cir. 2008)
> ("Because the Plan's requirements to invest in [company] stock are mandatory
> and were treated as such by [the company and alleged ERISA fiduciaries], we
> agree with the district court that no fiduciary duties are inherent in the Plan other
> than to follow its terms.");
>
> 2.  Defendants argued that the so-called *Moench* presumption poses an
> insurmountable obstacle to Plaintiffs' claims.  The presumption calls for use of an
> abuse of discretion standard in reviewing decisions to continue investing in
> employer stock where the relevant plan document embodies a settlor's intent that
> employer stock continue to be held and offered.  *Moench v. Robertson*, 62 F.3d
> 553, 571 (3d Cir. 1995).[10]  Plaintiffs contend that the presumption, if it applies,
> can be overcome by evidence that stock is inflated by misinformation or evidence
> that the stock is exceptionally risky.  Again, while there is significant authority in
> support of Plaintiffs' position, Defendants claim support for the view, for
> example, in *Kirschbaum, supra*.  There, on review of a district court's grant of
> summary judgment, the Fifth Circuit held that the presumption was not overcome
> even though the stock price in that case fell dramatically upon release of
> information that arguably should have been discovered by plan fiduciaries;
>
> 3.  Defendants contend that the facts pled in the Complaint, particularly as they
> relate to the contention that Merrill stock was inappropriately risky, even if the

---

[10] The Second Circuit has not yet addressed whether it will adopt the *Moench* presumption.
Elsewhere, there is controversy over whether it can be applied on a motion to dismiss, and
Defendants claim to have some support for their position.  Defendants' Memorandum of Law
in Support of Motion to Dismiss (Dkt. No. 67) at 21-26 (citing *Avaya*, 503 F.3d 340); Reply
Memorandum of Law in Support of Motion to Dismiss (Dkt. No. 77) at 13-14 (same).

price was not inflated, amount to little more than a disguised duty to diversify claim foreclosed by ERISA § 404(a)(2), 29 U.S.C. § 1104(a)(2), which generally exempts employer stock from ERISA's diversification requirement.  Plaintiffs argue that the Plans' fiduciaries, even if not subject to a diversification requirement, violated ERISA's prudence standard by continuing to hold Merrill stock and purchasing additional shares when the stock had become inappropriately risky.  Explicit support exists in the case law for the proposition that risk alone is a sufficient reason to forgo an investment in employer stock, *see In re Syncor, ERISA Litig*., 516 F.3d 1095 (9th Cir. 2008), but Defendants would be able to cite authority that they claim casts doubt on Plaintiffs' position.  S*ee e.g., DeFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756, 784 (E.D. Va. 2006); *Summers v. State St. Bank & Trust Co.*, 453 F.3d 404 (7th Cir. 2006);

4.  Defendants also argue that the red flags identified in the Complaint were not, as Plaintiffs argue, sufficient to trigger an investigation by Plan fiduciaries to determine whether Merrill stock was overvalued.  They argue that the red flags involved publicly available information that had been adequately addressed by Merrill in its public disclosures and that the stock price already reflected that information.  Plaintiffs argue that the facts alleged in their detailed Complaint are more than sufficient to withstand a motion to dismiss, but the possibility remains that this Court might agree with Defendants at the motion to dismiss stage or a later stage of the proceedings.  While Plaintiffs contend that the Complaint clearly sets forth reasons why Defendants should have investigated whether Merrill stock was overvalued, Defendants would claim that clear legal guidance is lacking on when "red flags" are sufficient to trigger an investigation.  *See Pugh v. Tribune Co.*, 521 F.3d 686, 700 (7th Cir. 2008); *In re Huntington Bancshares, Inc. ERISA Litig.*, No. 08-165, 2009 WL 819335, at *7 (S.D. Ohio Feb. 9, 2009);

5.  Defendants argue that Plaintiffs' theory of the case would require them to have traded on inside information to liquidate the Plans' holdings of Merrill stock.  While Plaintiffs believe this distorts their position (which would permit Defendants to make any required public disclosure before selling Merrill stock).  Additionally, the potential effect on the price of Merrill stock (and the losses in this case) of any legally required public disclosure is unclear;

6.  Defendants argue that neither Merrill nor Defendant O'Neal acted as a fiduciary.  While Plaintiffs allege that both O'Neal and Merrill were *de facto* fiduciaries, there is  significant risk that the Court either would determine that the proof is insufficient to establish O'Neal and Merrill's fiduciary status or would hold that their fiduciary roles were so limited that they could not be held liable for the violations alleged in the Complaint;

7.  Defendants claim that § 404(c) of ERISA, 29 U.S.C. § 1104(c), which places the responsibility for investment losses on the participants under certain circumstances, was an absolute defense to Plaintiffs' claims relating to removing Company stock as a plan investment option.  Plaintiffs believe that this defense is not applicable to claims that fiduciaries maintained imprudent Plan investment

options and that non-compliance with the specific regulatory requirements of § 404(c) will, in any event, vitiate the defense. However, Defendants would likely cite to recent case law in support of their view that the potential § 404(c) defense is a significant risk to Plaintiffs in this case. *See, e.g., Hecker v. Deere & Co.,* 556 F.3d 575, 587 (7th Cir. 2009), *reh'g and reh'g en banc denied*, Nos. 07-3605, 08-1224 (7th Cir. June 24, 2009); *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 309 (5th Cir. 2007); *Lingis v. Motorola, Inc.*, No. 03-5044, 2009 WL 1708097, at *6 (N.D. Ill. 2009);

8. Defendants claim that Plaintiffs' allegations of improper disclosure to participants, even if proven, support liability only if individual reliance is shown. Again, while Plaintiffs dispute this as a legal matter, Defendants claim that there is support for their position in the case law. *See In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, Nos. 05-1151, 05-2369, 2009 WL 331426, at *5 (D.N.J. 2009).

9. In addition to the foregoing legal arguments, many of which are addressed in detail in the motion to dismiss briefing, in the course of discussions with Co-Lead Counsel, Defendants have outlined a spirited factual defense to Plaintiffs' claims. Defendants insist that Merrill's leadership, as well as the most knowledgeable Investment Committee members, had no reason to think that Merrill's subprime related CDO positions posed a meaningful threat to Merrill's financial condition until around September 2007.

*See* Joint Decl. ¶¶ 67-68.

In summary, while Plaintiffs would dispute Defendants' characterizations of the facts, confirmatory discovery convinces us that Defendants would be able to present a case to support their view. Moreover, although Plaintiffs would seek to show that had the Plans' fiduciaries engaged in a prudent inquiry, which they did not, they would have discovered that Merrill's disclosures were inadequate and misleading long before September 2007, that evidentiary burden is on Plaintiffs and there is risk that the burden will not be met if the case were to go to trial.[11]

Defendants would present evidence that Merrill stock was not so risky as to expose the Plans to "imminent collapse" except for a few days prior to the agreement of sale, and the stock

---

[11] The evidence from confirmatory discovery is generally consistent that the Investment Committee did not understand that considering the Plans' investment in Merrill stock was its responsibility. Defendants claim that this view is consistent with their position that the stock was indeed "hardwired" into the Plans through Plan document provisions.

price recovered after the sale was announced.  Were the case litigated, the Parties would present

dueling experts on the question of when the stock became too risky or ceased being too risky to

serve appropriately as an investment vehicle.  This defense would proceed separately from

Defendants' legal argument that risk is simply irrelevant.  While Plaintiffs assert that Merrill

posed an extraordinary risk throughout the Class Period, Merrill will undoubtedly claim that the

risk was particularly acute only during a short window leading to its sale to Bank of America,

thus suggesting that there was no risk of "imminent collapse" except during that limited time

period.

 In addition to the specific issues discussed above, Plaintiffs would, of course, face the

host of risks presented in any complex litigation of this type if the case were to go forward.

These include, among others, the risk that witnesses will testify adversely, the risk that

documents may turn out not to mean what they seem to say, the risk of an adverse change in the

law, and the risk that the Court may apply the law differently than Plaintiffs envision. Further,

Plaintiffs would face the risks posed by summary judgment, trial, post-trial motions, appeals, and

even a petition for a writ of *certiorari*, or the risks inherent in the delays such proceedings might

occasion.  The Court need accept only one of the Defendants' merits-based arguments for the

case to be lost, or lost in very substantial part.

 While Plaintiffs are confident that they have pled a case that could ultimately be proven,

the risks of the case being lost, delayed, or its value diminished, when weighed against the

substantial immediate benefits of Settlement, compel the conclusion that the Settlement is in the

best interest of the Class.

### b.    Factor Five:  The Risk of Establishing Damages

 Establishing – and quantifying – damages would have presented significant challenges

for Plaintiffs in this litigation.  No ERISA company stock case has been tried to a successful

conclusion, and, accordingly, no court has definitively applied a damage measure to a case such as this after trial. This void, coupled with the Defendants' vigorous dispute of the damage aspects of the case, create risk for the Plaintiffs.

Under *Donovan v. Bierwirth,* 754 F.2d 1049 (2d Cir. 1985), ERISA requires breaching fiduciaries to make good to the plan the difference between the returns of prudent plan alternatives and the challenged imprudent investment. "Where several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these." *Id.* at 1056. Damage calculations under *Donovan* are computer- and expert-intensive. The proof requires a computer model of the plans, tracking the plans' holdings of company stock, often on a daily basis, and the returns those holdings generate. This data is then compared with the performance of alternative investments on specified breach dates, subject to various additional factors and assumptions, such as the size of the plans' holdings compared to the market as a whole. The expert must create the model, test it, use it, and effectively explain it. In addition, in making these calculations, complex determinations need to be made about the precise period during which the investment in employer stock was imprudent, and the proper investment alternative to use as a comparison. *Id.* at 1057. If the case proceeds, Defendants can be expected to raise heated challenges regarding all aspects of Plaintiffs' damage methodology, Plaintiffs recognize that these challenges pose substantial risks.

In addition to challenging Plaintiffs' methodology of computation, Defendants' position, more fundamentally, is that there were no damages attributable to them in this case. According to Defendants, the Plans' losses were not attributable to any misconduct on their part, but to the systemic weaknesses of the financial system that were unpredictable in timing and severity and that undermined the stock price of Merrill just as it undermined the stock price of Merrill's peers

in the financial services industry. The Defendants also argue that, even if the imprudence of

Merrill stock as a Plan investment could be established, the "breach date," or date when the

Defendants knew or should have known that they were acting imprudently by offering Company

stock as a retirement investment, did not occur until August or September 2007 and that any

issue of possible imprudence was resolved by disclosures made by Merrill in October 2007.

Consequently, according to Defendants, the damages in the proposed Class Period would be

minimal or eliminated altogether. With respect to breaches in 2008, Defendants contend that

only during a tiny window of a few days in September 2008 could it plausibly be argued that

Merrill's survival was understood to be at risk so that maintenance of employer stock in the

Plans could be viewed as imprudent. They further argue that the post-sale rebound in the shares

destroys any argument that fiduciary failure to take action during this window caused any loss.

While Plaintiffs maintain that problems with Merrill stock extended throughout the Class Period,

they recognize the risk that the Court might accept Defendants' view

      Another argument that could significantly reduce damages is the contention that "holder"

damages are unavailable. The lion's share of damages sought in this case is for claims that the

Plans should not have continued to hold Merrill stock. ERISA defendants often dispute the

availability of relief for "holder" losses because, in their view, the securities laws would have

prevented them from divesting the plans of the stock without first publicly disclosing the adverse

information making the stock imprudent, and had such disclosure been made, the stock price

would have dropped, and the plans would have suffered the same loss that occurred when the

allegedly improper practices came to light. *See, e.g., In re McKesson HBOC, Inc. ERISA Litig.,*

No. 00-20030, 2002 WL 31431588, at *7 (N.D. Cal. Sept. 30, 2002). Once disclosure is made

and the market reacts, Defendants would argue that the continued holding of the shares could not

be imprudent, so subsequent losses are not, in Defendants' view, causally connected to any imprudence.  Plaintiffs disagree with this analysis as it presumes that ERISA (and the securities laws) countenance the Plans' fiduciaries taking no action to protect the Plans where the shares remain inappropriately risky even after disclosure.  Nonetheless, Plaintiffs recognize that holder damages are sharply attacked by Defendants and that the law is unsettled in this area.

Additionally, Plaintiffs face arguments that damages should be measured using an alternative to the *Donovan* measure - one based on the "price inflation" of Merrill stock in the Class Period – and  that to apply the *Donovan* measure in this case would be punitive or bestow a windfall on the Plaintiffs.  Although Plaintiffs disagree that this alternative measure of damages is appropriate in this case, if Defendants' argument is accepted, Plaintiffs' potential recovery could be reduced significantly or even eliminated.

Named Plaintiffs emphasize that they dispute the Defendants' positions on damages and would resist any effort to decrease the recovery in this case, yet also recognize that their ability to recover the maximum claimed damages in this case is far from certain.  Were Defendants to limit damages strictly to the small window in 2007 when Merrill management clearly realized that Merrill's CDO position was both material and dangerous, but had not yet publicly disclosed the size of the position, and further persuaded the Court that holder damages were inappropriate, Named Plaintiffs' enormous claim for damages might well prove chimerical.  "In short, the legal and factual complexities and uncertainties of [proving] the ERISA damages case also militate in favor of settlement."  *Global Crossing*, 225 F.R.D. at 460; *see also In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement equal to a small percentage of the total damages sought because the magnitude of damages often becomes a "battle of experts…with no guarantee of the outcome").

   c.  **Factor Six: The Risks of Maintaining the Class Action Through Trial**

  Named Plaintiffs strongly believe this case is appropriate for class certification, and many similar cases have been certified.  *See*, *infra* Part V.  Nevertheless, some courts decline to certify disclosure counts.  *See, e.g.*, *Merck*, 2009 WL 331426, at *6.  One court of appeals has identified problems certifying other claims similar to those of the Plaintiffs.  *See, e.g., Elec. Data Sys.*, 476 F.3d 299.  Although Plaintiffs strongly disagree, Defendants in similar cases have also argued that the Supreme Court's decision in *LaRue v. DeWolff, Boberg, & Assocs., Inc.*, 128 S.Ct. 1020 (2008) establishes that claims for losses to 401(k) accounts are inherently individual and should not be certified.  *In re First Am. Corp. ERISA Litig.*, No. 07-01357 (C.D. Cal. June 10, 2009).  While Plaintiffs believe these arguments are incorrect, the risks of failing to obtain class certification, or of obtaining it but failing to maintain the class through trial, also weigh in favor of this Settlement**.**[12]

  5.  *Grinnell* **Factor Seven:  The Ability of Defendants to Withstand a Greater Judgment**

  The Defendants' ability to withstand a greater judgment at trial is a factor in determining whether a settlement is reasonable.  *Bello v. Integrated Res., Inc.*, No. 88-1214, 1990 WL 200670, at *2 (S.D.N.Y. Dec. 4, 1990) (risk that plaintiffs would be unable to recover even if victorious is a strong argument supporting settlement).  Because of a buyout by Bank of America and ongoing support from the federal government for both Bank of America and Merrill Lynch, Merrill Lynch (which indemnified the other Defendants in this case) was in a position to make a payment into the Settlement Fund pursuant to the Stipulation.  In settling the case, however,

---

[12] The standard for determining whether a class should be certified is less stringent when the parties seek approval of a settlement, because many of the issues (such as reliance on misrepresentations) that make class certification difficult are no longer present. *See In re Diet Drugs*, No. 99-20593, 2000 WL 1222042, at *43 (E.D. Pa. 2000) ("Moreover, when taking the

Plaintiffs were mindful that Merrill remains an independent subsidiary of Bank of America that, as a separate entity, can become insolvent even if Bank of America remains an ongoing entity. Consequently, there is a risk that Merrill could fail even if its parent survives. That this risk is real as assessed by the market is illustrated by the sometimes sharply different dividend yields for Merrill preferred stock versus Bank of America preferred stock following the merger (for essentially the same securities with similar terms.[13] *See* Joint Decl. ¶ 83 and Exhibit G: Yield Differential Post Merger between Merrill Lynch (MER-E_ and BofA (BAC-B) Preferred.

**6.      *Grinnell* Factors Eight and Nine: The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.**

The last two *Grinnell* factors consider whether the settlement is within a range of reasonableness compared to a "possible recovery in light of all the attendant risks of litigation." 495 F.2d at 463. The $75 million Settlement is well within the range of reasonableness contemplated by *Grinnell*. The Settlement came in time to avoid the risks posed by a motion to dismiss and provides for the disposition of a $75 million cash settlement fund already paid into escrow.

By the standards of this type of litigation, the recovery here is very sizeable: it is only the fifth ERISA company stock case settlement that exceeds $70 million. *See* www.ERISAsettlements.com. Judged by any standard, however, this is a significant achievement in these trying economic times. In evaluating a settlement, however, a court is not required to engage in a trial on the merits to determine the prospects of success. *Milken & Assocs.*, 150 F.R.D. at 54. "[T]he settlement amount's ratio to the maximum potential recovery

---

settlement into consideration for purposes of determining class certification, individual issues which are normally present in ... litigation become irrelevant ....").

[13] The prospectus for MER-E and BAC-B show that the two securities have the same capital structure and substantially the same terms: (both are callable, have a $25 liquidation amount,

need not be the sole, or even the dominant, consideration when assessing the settlement's fairness." *Global Crossing*, 225 F.R.D. at 460-61. Here, the Court need only determine whether the Settlement falls within a "range of reasonableness" in order to approve it. *PaineWebber*, 171 F.R.D. at 130 (citations omitted). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455; *see also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.") (citing *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984)).

The range of potentially recoverable damages in this case would have been driven, among other factors, by the Court's determination of the "breach" date, discussed above, i.e., when the Defendants knew or should have known that Company stock was an imprudent investment for participants' retirement assets. If the Court were to accept Plaintiffs' proposed breach dates, and accept Plaintiffs' view of recoverable holder damages, thus giving Plaintiffs a total victory on each aspect of damage calculation, damages in this case could have been greater than three billion dollars. If, however, Plaintiffs were unable to establish a breach date until later in the Class Period, if the window for damages was closed in October 2007, and/or if holder damages were disallowed or reduced to reflect the effect of securities-law mandated disclosure, the potential recovery would have dropped dramatically and could have vanished.

---

pay a fixed dividend on a quarterly basis), are cumulative, and are senior to the government's investment.

Considering the time value of money, the probability of lengthy litigation in the absence of a settlement, the risks of establishing liability presented by this case, the range of possible recoveries at trial, and the tenuous financial condition of Merrill Lynch, the Settlement is well within the range of reasonableness. As Judge Harmon aptly put it when approving one of the settlements in the *Enron ERISA Litigation*: "The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand." *Enron*, 228 F.R.D. at 566. *See also Global Crossing*, 225 F.R.D. at 461 ("The prompt, guaranteed payment of the settlement money increases the settlement's value in comparison to some speculative payment of a hypothetically larger amount years down the road.") (citation omitted). This Settlement is a classic "bird in the hand" and more than fair, reasonable and adequate under the circumstances.

## V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

In its Preliminary Approval Order, this Court conditionally certified the following Settlement Class:

> (a) all current and former participants and beneficiaries of any of the Plans whose individual Plan account(s) included investments in Merrill Lynch stock at any time between September 30, 2006 and December 31, 2008, inclusive <u>and</u> (b) as to each Person within the scope of subsection (a) of this Paragraph, his, her or its beneficiaries, alternate payees (including spouses of deceased persons who were participants of one or more of the Plans), Representatives and Successors-In-Interest, provided, however, that the Class shall not include any Defendant or any of their Immediate Family, beneficiaries, alternate payees (including spouses of deceased Persons who were Plan participants), Representatives or Successors-In-Interest, except for spouses and immediate family member who themselves are or were participants in any of the Plans, who shall be considered members of the Class with respect to their own Plan accounts.

Preliminary Approval Order ¶ 2.

While the Parties have stipulated to conditional certification of the Class for settlement purposes, it is, of course, subject to review and, ultimately, final certification by the Court. *Weinberger*, 698 F.2d at 73. The Court should assure itself that certification is proper under

Rules 23(a) and (b).  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 504

(S.D.N.Y. 1996).  A district court "[c]onfronted with a request for settlement-only class

certification,…need not inquire whether the case, if tried, would present…problems, for the

proposal is that there be no trial."  *Global Crossing,* 225 F.R.D. at 451 (quoting *Amchem Prods.*

*Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

Plaintiffs' ERISA claims[14] are particularly well-suited for class action treatment. The

ERISA claims charge the Defendants with breaches of fiduciary duty which are exactly the kinds

of claims that lie at the core of Rule 23 jurisprudence.  *See, e.g., Global Crossing*, 225 F.R.D. at

452-53; *In re WorldCom, Inc. ERISA Litig.,* 2044 WL 2211664, *supra* (certifying for class

treatment virtually identical ERISA claims).  Indeed, the Advisory Committee Notes to the 1996

Amendment of Fed. R. Civ. P. 23(b)(1)(B) specifically state that certification under Rule 23 is

especially appropriate in cases charging breach of trust by a fiduciary to a large class of

beneficiaries.  Moreover, Congress specifically embraced the principle that ERISA claims should

be brought in a representative capacity.  *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142

n.9 (1985) (noting that Congress expressed intent that ERISA "actions for breach of fiduciary

duty be brought in a representative capacity on behalf of the plan as a whole").

---

[14] ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) allows any plan participant or beneficiary to sue
for breach of fiduciary duties "in a representative capacity on behalf of the plan as a whole."
*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n. 9 (1985); *Varity Corp. v. Howe*,
516 U.S. 489, 510 (1996).  Courts have exercised discretion to certify ERISA claims for plan-
wide relief under § 502(a)(2). Class certification under Rule 23 ensures that there is a court-
approved voice for the class and court involvement in case management.  *See, e.g.*, *Coan v.
Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006); *Fallick v. Nationwide Mut. Ins. Co*., 162 F.3d 410
(6th Cir. 1998) (discussing the certification of a § 502(a)(2) class in terms of Rule 23); *Piazza
v. EBSCO Indus., Inc*., 273 F.3d 1341 (11th Cir. 2001) (same); *Kayes v. Pac. Lumber Co*.,
51 F.3d 1449, 1461-63 (9th Cir. 1995) (same); *Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich.
2004) (same); *In re Providian Fin. Corp*., No. 02-1001, 2003 WL 22005019 (N.D. Cal. June
30, 2003) (same); *In re Amsted Indus. Inc., Litig*., 263 F. Supp. 2d 1126, 1129 (N.D. Ill. 2003)
(same); *In re Ikon Office Solutions, Inc*. *Sec. Litig.*, 191 F.R.D. 457 (E.D. Pa. 2000) (same).

**A.     The Prerequisites of Rule 23(a) Are Satisfied**

To proceed as a class action, the litigation must satisfy the four prerequisites of Rule

23(a) – numerosity, commonality, typicality and adequacy – and at least one of the three

requirements of Rule 23(b).  *See Amchem Prods,* 521 U.S. at 614.  Here, the prerequisites of

Rule 23(a) and (b)(1) are easily satisfied.

### 1.     The Class Satisfies the Numerosity Requirement

To demonstrate numerosity, "plaintiffs must show that joinder is 'impracticable,' not that

it is 'impossible.'"  *In re WorldCom, Inc. Sec. Litig*., 219 F.R.D. 267, 279 (S.D.N.Y. 2003)

(citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)); *Global Crossing*, 225 F.R.D. at

451.  "[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde

Park*, 47 F.3d 473, 483 (2d Cir. 1995).  The proposed Class is comprised of more than 70,000

members, easily meeting the numerosity threshold.

### 2.     Common Questions of Law and Fact Exist

The commonality test is whether there are any questions of fact or law that are common

to the class.  Fed. R. Civ. P. 23(a)(2).  A common nucleus of operative facts is usually sufficient

to satisfy the commonality requirement.  *Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 376

(2d Cir. 1997).  Commonality is easily satisfied in ERISA class actions which, by their very

nature, present common questions of law and fact, and are frequently certified as class actions.

*Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) ("In general, the question of defendants'

liability for ERISA violations is common to all class members because a breach of fiduciary duty

affects all participants and beneficiaries.") (citing *Gruby v. Brady*, 838 F. Supp. 820, 828

(S.D.N.Y. 1993)); s*ee also Babcock v. Computer Assocs., Int'l, Inc.,* 212 F.R.D. 126, 130

(E.D.N.Y. 2003) (common questions include "whether the defendants failed to provide class

members with the proper investment options under the Plan" and "whether the defendants failed to diversify the assets of the Plan*")*.

Here, there are numerous questions of law and fact common to the proposed Class. They include: (a) whether Defendants were fiduciaries of the Plans; (b) whether Defendants breached their fiduciary duties; (c) whether the Plans and the participants were injured by such breaches; and (d) whether the Class is entitled to the return of lost investment capital and opportunities, damages and/or injunctive relief.

Because these questions concern the common issues of fiduciary responsibilities owed to the Plans' participants, "[a]ll of these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2)...." *Von Moore v. Simpson*, No. 96-2971, 1997 WL 570769, at *4 (N.D. Ill. Sept. 10, 1997).

### 3. Plaintiffs' Claims Are Typical of the Claims of the Class

Under Rule 23(a)(3), Plaintiffs must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In *Global Crossing,* Judge Lynch held that typicality was met for the ERISA claims because "the class representatives' and class members' claims arise from the same alleged course of conduct and are based on the same legal theories." 225 F.R.D. at 452.

The claims asserted here – that Defendants breached their duties to the Plans and all Plan participants whose accounts held Company stock – are by definition typical because they are the same unitary claim on behalf of the same Plans. Further, Plaintiffs are entitled under ERISA to bring a claim for plan-wide relief. 29 U.S.C. § 1109(a) (liability for breach of fiduciary duty goes to the plan). Plaintiffs and the absent Settlement Class members seek the same relief for the

same wrongs by the same Defendants.  Accordingly, Plaintiffs' claims are typical of the claims of the Class within the meaning of Rule 23(a)(3).[15]

### 4.     Plaintiffs Will Adequately Protect the Interests of the Class

Adequacy of representation involves a two part inquiry, whether:  (1) the class representatives have common interests with unnamed class members; and (2) they will vigorously prosecute the litigation using qualified counsel.  *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006).

Plaintiffs have protected, and will continue to fairly and adequately protect the interests of the Class under Rule 23(a)(4).  *See* Exhibits B through E to the Joint Decl.  First, the claims and interests are congruent with those of the other Class members and Plaintiffs have no interests antagonistic to those of the other Class members.  Plaintiffs and Class members alike seek to prove Defendants' liability on the basis of common facts underlying those claims.  Second, as discussed more fully in the Joint Declaration, Plaintiffs have retained counsel highly experienced in this type of litigation and eminently able to conduct this litigation to protect the interests of the Class.  Joint Decl. ¶¶ 90, 121-138.  The adequacy element is therefore satisfied.  *See Global Crossing*, 225 F.R.D. at 453 (citing *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 376 (S.D.N.Y. 2000) and *In re the Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

---

[15] *See, e.g., Babcock*, 212 F.R.D. at 130-31 (common conduct of ERISA fiduciaries toward all plan participants satisfied typicality requirement); *In re WorldCom Inc. ERISA Litig.*, No. 02-4816, 2004 WL 2211664, at *3 (S.D.N.Y. Oct. 4, 2004) (rejecting defendant's argument regarding commonality, adequacy and typicality on same grounds, i.e., that the "claims belonging to the class are united by, among other things, the class members' purchase of WorldCom stock and WorldCom's own relationship to each of the plans"); *Smith v. Aon Corp.*, 238 F.R.D. 609, 617 (N.D. Ill. 2006) ("no question" that proposed class representatives' claims were typical where they were "pursuing the same legal theory against Defendants:  that Defendants breached their fiduciary duties with regard to investments of Plan assets in Aon stock during the Class Period, thereby causing the Plan as a whole to lose value").

**B.**     **The Class Satisfies the Requirements of Rule 23(b)(1)**

To proceed as a class action under Rule 23(b)(1), the proponent of class certification must satisfy each of the requirements of Rule 23(a) and, in addition, demonstrate that the prosecution of separate actions creates the risk of "inconsistent or varying adjudications with respect to individual class members," Fed. R. Civ. P. 23(b)(1)(A), or the risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).

One participant's claim in this case would, as a practical matter, be dispositive of the interests of fellow members of each Plan because § 502(a)(2) claims must be brought in a representative capacity on behalf of the entire plan and the relief granted by the Court to remedy a breach of fiduciary duty would "inure[ ] to the benefit of the plan as a whole" rather than to the individual plaintiff. *Russell,* 473 U.S. at 134, 140. *See also Rankin,* 220 F.R.D. at 523; *Ikon,* 191 F.R.D. at 466 ("given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief"); *Piazza v. EBSCO Indus., Inc.,* 273 F.3d 1341, 1352-53 (11th Cir. 2001) (district court abused its discretion by certifying a § 502(a)(2) class under Rule 23(b)(3) instead of 23(b)(1)); *Kane v. United Indep. Union Welfare Fund*, No. 97-1505, 1998 WL 78985, at *9 (E.D. Pa. Feb. 24, 1998) (citing *Russell,* 473 U.S. at 140) (certifying class under Rule 23(b)(1)); *Specialty Cabinets & Fixtures, Inc., v. Am. Equitable Life Ins. Co.*, 140 F.R.D. 474, 478 (S.D. Ga. 1991) (same). Here, Named Plaintiffs, Carl Esposito, Barbara Boland, Alan Maltzman, and Mary Gidaro, were participants in one or more of the Plans during the Class Period. Consequently, the claims of each Named Plaintiff would be dispositive of the claims of the Class.

Courts considering ERISA breach of fiduciary duty claims for class certification have consistently followed the reasoning of the drafters of the Federal Rules of Civil Procedure in concluding that subsection 23(b)(1)(B) is the most appropriate basis for class certification. *See* Fed. R. Civ. P. 23(b)(1)(B) (Advisory Committee Note, 1966 Amendment) (stating that certification under 23(b)(1)(B) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries). *See also AOL Time Warner*, 2006 WL 2789862, at *3; *Global Crossing*, 225 F.R.D. at 453; *In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 WL 2211664, at *3 (S.D.N.Y. Oct. 4, 2004); *Koch v. Dwyer*, No. 98-5519, 2001 WL 289972, at *5 (S.D.N.Y. Mar. 23, 2001); *Gruby*, 838 F. Supp. at 828. Certification of the Class as a non-opt-out class under Rule 23(b)(1)(B) is therefore appropriate.[16]

Accordingly, class action treatment under Rule 23(b)(1) is the best way to manage this litigation and ensure that the rights of all the Plans' participants are protected. See *Rankin,* 220 F.R.D. at 522-23; *Ikon,* 191 F.R.D. at 466 (recognizing the difficulty imposed by contradictory dispositions and observing that "contradictory rulings as to whether Ikon had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions"); *Kolar v. Rite Aid Corp.,* No. 01-Civ-1229, 2003 WL 1257272, at *3 (E.D. Pa. Mar. 11, 2003) ("Palpably, inconsistent or varying adjudications would be intolerable for the employees of the same employee benefit plans." (citations omitted)).

---

[16] Certification is also appropriate under 23(b)(1)(A). *See, e.g., Alvidres v. Countrywide Fin. Corp.*, No. 07-5810, 2008 WL 1766927, at *3 (C.D. Cal. Apr. 16, 2008) (certifying class under Rule 23(b)(1)(A)); *In re Delphi ERISA Litig.*, 248 F.R.D. 483, 495 (E.D. Mich. 2008) (finding certification of settlement class proper under Rule 23(b)(1)(A) and (1)(B) and (b)(2)); *Rankin*, 220 F.R.D. at 522-23 (certifying class under Rule 23(b)(1)(A) and (B)).

**C.    The Class Satisfies the Requirements of Rule 23(b)(2)**

Apart from the bases for certification set out in Rule 23(b)(1), a class may be certified

under Rule 23(b)(2) if:

> the party opposing the class has acted or refused to act on grounds that apply
> generally to the class, so that final injunctive relief or corresponding declaratory
> relief is appropriate respecting the class as a whole[.]

Fed. R. Civ. P. 23(b)(2). "The (b)(2) class action is intended for cases where broad, class-wide

injunctive or declaratory relief is necessary to redress a group-wide injury." *Robinson v. Metro-*

*North Commuter R.R. Co.*, 267 F.3d 147, 162 (2d Cir. 2001). As the *Robinson* court further

explained:

> Where class-wide injunctive or declaratory relief is sought in a (b)(2) class action
> for an alleged group harm, there is a presumption of cohesion and unity between
> absent class members and the class representatives such that adequate
> representation will generally safeguard absent class members' interests and
> thereby satisfy the strictures of due process.

*Id*. at 165 (citations omitted).

Plaintiffs' claims rest on Defendants' conduct that is generally applicable to the Class as

a whole, *i.e.*, that Defendants breached their fiduciary duties to Plan participants and caused

losses to the Plan by, inter alia, (1) failing to prudently and loyally manage the Plans' investment

in Merrill stock; (2) failing to provide complete and accurate information to participants and co-

fiduciaries regarding Merrill stock; and (3) failing to appropriately monitor other fiduciaries in

carrying out their ERISA fiduciary responsibilities. These fiduciary breaches affected all of the

Plans' participants and beneficiaries; thus, it cannot be disputed that this conduct was generally

applicable to the class. *Becher v. Long Island Lighting Co*., 164 F.R.D. 144, 153 (E.D.N.Y.

1996), (certifying breach of fiduciary duty claims based on alleged misrepresentations and

concealment under subsection (b)(2)).

35

A declaratory judgment by the Court that Defendants violated ERISA as to any of the Named Plaintiffs would necessarily imply a declaration that Defendants violated ERISA as to all Class members.  Similarly, if Plaintiffs were to prove that Defendants breached their fiduciary duties in the manner alleged and the Court so declares, appropriate declaratory and equitable relief will flow to all Class members.  ERISA § 409(a), 29 U.S.C. § 1109(a).  As set forth in the Complaint, such relief includes "equitable restitution and other appropriate equitable and injunctive relief."  Complaint at page 155 (Prayer for Relief).  Thus Plaintiffs' claims are properly certified under Rule 23(b)(2).

**D.      The Requirements of Rule 23(g) Are Met**

Finally, Fed. R. Civ. P. 23(g) requires the Court to examine the capabilities and resources of counsel to determine whether they will provide adequate representation to the class.  Here, the Settlement was achieved by Co-Lead Counsel who include some of the preeminent ERISA class action attorneys in the country with years of experience in ERISA law and in prosecuting and trying complex actions.  Co-Lead Counsel's experience and skill were demonstrated by the effective prosecution of this action, including their identification, investigation, and prosecution of the claims in this action, and by the substantial Settlement entered into with Defendants.  Joint Decl. ¶ 89.

The result achieved is the clearest reflection of Co-Lead Counsel's skill and expertise. *See In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 261 (D. Del. 2002) (class counsel "showed their effectiveness … through the favorable cash settlement they were able to obtain"); *In re Ikon Office Solutions, Inc.*, *Sec. Litig.,* 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("The most significant factor in this case is the quality of representation, as measured by the `quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel

36

prosecuted the case and the performance and quality of opposing counsel."). Co-Lead Counsel's extensive efforts, and expenditure of substantial time and expenses, in successfully prosecuting this case further confirm that they satisfy Rule 23(g).

## VI.    THE FORMS AND METHODS OF NOTICE EMPLOYED SATISFY RULE 23 AND DUE PROCESS

In accordance with the Preliminary Approval Order, the Class has been provided with ample and sufficient notice of this Settlement, including an appropriate opportunity to voice objections. The notice plan fully informed Class members of the lawsuit and the proposed Settlement, and enabled them to make informed decisions about their rights.

To satisfy due process, notice to class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)), *aff'd*, 107 F.3d 3 (2d Cir. 1996). "It is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected." *Prudential*, 164 F.R.D. at 368; *see also Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988).

To satisfy Rule 23, "[f]or non-opt out cases, such as the ERISA Actions, [all that is required is] such unspecified 'appropriate notice' as 'the court may direct....'" *Global Crossing*, 225 F.R.D. at 448 (quoting Fed. R. Civ. P. 23(c)(2)(A)).

Here, the forms and methods of notice of proposed Settlement that were agreed to by the Parties and provided pursuant to the Preliminary Approval Order satisfy all due process considerations and meet the requirements of Fed. R. Civ. P. 23(c)(2) & (e)(1).

The Parties' notice plan, as approved by the Court and implemented by Co-Lead Counsel, consisted of: (1) mailing the Class Notice on April 6, 2009 to more than 70,000 Class members at their last known addresses provided by Defendants; (2) publishing the Publication Notice in the *New York Times* and distribution via *BusinesWire*; and (3) creating a dedicated website administered by Co-Lead Counsel to provide information to Class members and providing as a toll-free telephone number that participants may call (and in fact, have called) to obtain information regarding the Settlement. *See* Joint Decl. ¶ 44 and Keough Decl., attached as Exhibit A thereto.

The mailed Class Notice provided detailed information about the Settlement, including: (1) a comprehensive summary of its terms; (2) notice of Co-Lead Counsel's intent to request attorneys' fees, reimbursement of expenses, and case contribution awards for the Named Plaintiffs; and (3) detailed information about the Released Claims. In addition, the Class Notice provided information about the Fairness Hearing date, the Class members' rights to object (and deadlines and procedures for objecting), and the procedure to receive additional information. The Class Notice provided Class members with contact information for Co-Lead Counsel, information on the toll-free phone number and an e-mail address for inquiries, and a website address for further information. The Publication Notice summarized the above information for purposes of publication.

The Notice forms and methods employed here are substantially similar to those successfully used in many other ERISA class settlements and "fairly, accurately, and neutrally describe the claims and parties in the litigation[,]…the terms of the proposed settlement and the identity of persons entitled to participate in it." *Foe v. Cuomo*, 700 F. Supp. 107, 113 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196 (2d Cir. 1989); *WorldCom*, 2004 WL 2338151, at *3-4; *Global*

*Crossing,* 225 F.R.D. at 448-49 (noting that a notice plan similar to the one proposed here "went well beyond the requirements for the non-opt-out ERISA classes").  Similar dissemination procedures have been approved by courts in myriad other cases. *See, e.g., Spann*,2005 WL 1330937, at *5-6; *Schneider v. GE Capital Mortgage Servs., Inc.*, No. 09-4651, 1997 WL 272403, at *2 (S.D.N.Y. May 21, 1997). Accordingly, the Notice provided to the Class satisfies the requirements of due process and Fed. R. Civ. P. 23.

### VII.   THE PLAN OF ALLOCATION TREATS ALL CLASS MEMBERS FAIRLY AND SHOULD BE APPROVED

In connection with final approval of the Settlement, Named Plaintiffs also request that the Court approve their proposed Plan of Allocation for the Settlement Fund.  The Plan of Allocation is submitted as Exhibit 2 to the [Proposed] Order and Final Judgment.

A district court has broad supervisory powers with respect to allocating a class action settlement and wide latitude in determining what to consider in approving a settlement allocation.  *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 181 (2d Cir. 1987) (citation omitted); *In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1363 (9th Cir. 1979). The Court has discretion in allocating settlement funds, and an allocation will be upheld unless there has been an abuse of discretion.  *Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171, 175 (7th Cir. 1982).  This is because allocation of a fixed settlement "fund among competing complainants is a traditional equitable function, using 'equity' to denote not a particular type of remedy, procedure, or jurisdiction but a mode of judgment based on broad ethical principles rather than narrow rules." *Curtiss-Wright*, 687 F.2d at 174 (internal citations omitted).

Like the Settlement itself, the Plan of Allocation should be fair, reasonable and adequate. *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 240 (5th Cir. 1982).  A fair, reasonable and adequate plan of allocation has two principal features — it should not be overly complex,

and, it should be responsive to class members' interests in the litigation. Thus, "a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *In re Ikon Office Solutions, Inc., Sec. Litig.,* 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citation omitted); *PaineWebber,* 171 F.R.D. at 133 ("As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information."); *Global Crossing,* 225 F.R.D. at 462 n.14 ("nothing requires a settlement to benefit all class members equally. Such a rule would itself result in an inequitable windfall to certain class members, to the detriment of others"). Courts give "substantial weight to the opinions of experienced counsel" regarding the fairness of an allocation. *Law v. Nat'l Collegiate Athletic Ass'n,* 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000); *Milken & Assocs.,* 150 F.R.D. at 68. "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'" *Global Crossing,* 225 F.R.D. at 462 (citing *In re Am. Bank Note Holographics, Inc. Sec. Litig.,* 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001)); *Law,* 108 F. Supp. 2d at 1196 (internal citations omitted); *see also Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (citing *White v. NFL,* 822 F. Supp. 1389, 1420-24 (D. Minn. 1993), *affd,* 41 F.3d 402 (8th Cir. 1994)); *In re Oracle Sec. Litig.,* No. 90-931, 1994 WL 502054, at *1 (N.D. Cal. Jun. 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").

Here, the Plan of Allocation was designed by experienced Co-Lead Counsel who have prepared similar plans for numerous other cases. The Plan of Allocation reflects Co-Lead Counsel's informed consideration of the relevant legal and factual matters pertaining to the Class members' claims. It provides recovery to Class members, net of administrative expenses and net

of attorneys' fees and expenses that the Court may choose to award, on a *pro rata* basis according to their recognized claims of damages. Furthermore, Defendants had no role in formulating the Plan of Allocation, nor do funds "revert" to Defendants as a result of it.

The Plan of Allocation was described in the Class Notice approved by the Court on March 16, 2009 and mailed to Class members on April 6, 2009, pursuant to the Preliminary Approval Order. As stated in that Class Notice, the Net Proceeds will be allocated to Class members on a *pro rata* basis such that the amount received by each Class member will depend on his or her calculated loss, relative to the losses of other Class members, related to the Plans' investments in Merrill stock. In determining the loss for purposes of the Plan of Allocation, it is assumed that all Merrill stock held by the Plans was liquidated at the outset of the Class Period and yielded to the Plans 84% of the aggregate value of that stock based on its public price on the last day before the commencement of the Class Period.[17] It is further assumed that no further purchases of Merrill stock were made during the Class Period. The deemed liquidation amount and the dollar amount of actual Class Period purchases of Merrill stock are then compared to the actual proceeds received by a participant with respect to his or her investment in Merrill stock during the Class Period plus the value of the Merrill stock held immediately after the end of the Class Period, and any shortfall is the calculated loss.

Payments will be made by crediting the accounts of active Plan participants with the appropriate amount and by creating or re-creating an account for Class members who are no longer active participants, and then crediting their accounts in the same manner. This is substantially the same methodology used in other company stock ERISA cases, including *Enron*,

---

[17] 84% is used rather than 100% to reflect the discount that would result from a sale of a large block of Merrill stock such as that held by the Plans and any associated disclosure. Co-Lead

41

in which the private litigants were joined by the DOL as a plaintiff. In all those cases, the methodology was employed without objection from the DOL and any independent fiduciary, and was approved by the court. *See, e.g.*, *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02-5575, 2006 WL 903236, at *17 (S.D.N.Y. Apr. 6, 2006) (plan of allocation provided "recovery to damaged investors on a pro rata basis according to their recognized claims of damages"); *In re Charter Commc'ns, Inc. Sec. Litig.,* No. 02-1186, 2005 WL 4045741, at *10 (E.D. Mo. June 30, 2005) (plan of allocation approved as fair and reasonable where some shareholders could "benefit more from the Settlement than others depending upon when they purchased [the] shares, and if and when they sold those shares"); *Global Crossing,* 225 F.R.D. at 463 (S.D.N.Y. 2004) (ERISA company stock case plan of allocation approved as fair and reasonable where it allocated "the settlement amount among plan participants based on their losses"); *WorldCom,* 2004 WL 2338151, at *8 (plan of allocation approved as fair, adequate and reasonable where it was based on the "proportional share of the loss of each participant"); *Maley,* 186 F. Supp. 2d at 367 (approving plan of allocation as fair, adequate, and reasonable when it "was devised by experienced [class] counsel … familiar with the … strengths and weaknesses of the potential claims of Class members," and proportionately reimbursed class members based on the extent of their injuries).

Co-Lead Counsel believe that the proposed Plan of Allocation is fair, reasonable and not unduly complicated or expensive and accordingly urge the Court to adopt and approve it.

## VIII.  CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter an order: (a) granting final approval of the Settlement of this litigation; (b) granting certification of

---

Counsel concluded that this discount was reasonable based on consultation with an expert retained to consider the issue.

the proposed Class under Fed. R. Civ. P. 23(a) and (b)(1) and (2); (c) determining that the forms and methods of notice to the Class were appropriate and sufficient; and (d) approving the proposed Plan of Allocation of the Settlement Fund.

Respectfully submitted this 26th day of June, 2009.

/s/ Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
Lynn Lincoln Sarko
Gary A. Gotto
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
lsarko@kellerrohrback.com
ggotto@kellerrohback.com

***Co-Lead Counsel***

COHEN MILSTEIN, SELLERS & TOLL, PLLC
Marc I. Machiz
255 S. 17th Street
Suite 1307
Philadelphia, PA 19103
Telephone: (267) 773-4680
Facsimile: (267) 773-4690
mmachiz@cohenmilstein.com

Michelle C. Yau
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
myau@cohenmilstein.com

***Co-Lead Counsel***