**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | |
|---|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION | : : : : : : : | Master File No.: 1:08-md-01933-JSR **CLASS ACTION** |
| This Document Relates To: ERISA ACTION | : : : : | Case No.: 07-CV-10268  (JSR)(DFE) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF:**


**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION
AND
MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES AND CASE
CONTRIBUTION AWARDS**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................... 1

II.     DISCUSSION ............................................................................................... 2

        A.      The Almost Complete Absence of Objections Supports Approval
                of the Settlement ........................................................................... 2

        B.      The Substance of the Rivas Objection Does Not Warrant
                Settlement Disapproval .................................................................. 4

        C.      The Requested Attorneys' Fees Are Reasonable.................................. 6

                1.      Mr. Rivas Objects to an Amount Greater Than the
                        Requested Fee Award. ........................................................ 6

                2.      Mr. Rivas Applies Incorrect Factors in Assessing Plaintiffs'
                        Fee Request. ..................................................................... 6

                3.      Mr. Rivas Misapprehends the Circumstances of this Case...................... 7

        D.      The Requested Named Plaintiff Case Contribution Awards Are
                Reasonable. .................................................................................. 10

III.    CONCLUSION ............................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

<u>Federal Cases</u>

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .......................................................................... 6

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ............................................. 3, 4, 5

*County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir. 1990) ............................ 7

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ............................................. 6, 7

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418
    (S.D.N.Y. 2001) ................................................................................................................. 3, 4

*In re AOL Time Warner ERISA Litig.*, No. 02-8853, 2006 WL 2789862 (S.D.N.Y.
    Sept. 27, 2006) ...................................................................................................................... 4

*In re Bisys Sec. Litig.*, No. 04-3840, 2007 WL 2049726 (S.D.N.Y. July 16, 2007) .................... 7

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ........................ 3, 9

*In re Host Am. Corp. Sec. Litig.*, No. 05-1250, 2008 WL 659579 (D. Conn. March
    7, 2008) .................................................................................................................................. 3

*In re Huntington Bancshares Inc. ERISA Litig.*, No. 08-0165, 2009 WL 330308
    (S.D. Ohio Feb. 9, 2009) ....................................................................................................... 9

*In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.*, No. 02-5097, 2007
    WL 4526593 (S.D.N.Y. Dec. 20, 2007) ................................................................................ 3

*In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46 (S.D.N.Y. 1993) ......................................... 10

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*,
    117 F.3d 721 (2d Cir. 1997) .............................................................................................. 3, 4

*In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................... 3

*Koch v. Dwyer*, No. 98-5519, slip op. (S.D.N.Y. May 7, 2002) ................................................. 10

*Masters v. Wilhelmina Modeling Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) .................................................................................................. 7

*Rosen v. Rosen*, 696 So. 2d 697 (Fla. 1997) .............................................................................. 7

*Spann v. AOL Time Warner*, No. 02-8238, 2005 WL 1330937 (S.D.N.Y. June 7,
    2005) .................................................................................................................................... 10

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254 (S.D. N.Y. 2003) .................................................................................................................3

*Summers v. State Street Bank & Trust Co.*, 453 F.3d 404 (7th Cir. 2006) ...................................4

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ...................................3, 7

## I.    INTRODUCTION

Plaintiffs respectfully submit this memorandum in further support of their Motions for Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Motion") and Award of Attorneys' Fees, Expenses, and Case Contribution Awards ("Fee Motion").

In accordance with the Order Preliminarily Approving Settlement, Preliminarily Certifying Settlement Class, Approving Notice Plan, and Setting Fairness Hearing Date ("Preliminary Approval Order"), the Class has been provided with notice of the Settlement and an appropriate opportunity to voice objections.  In response to the notice plan, including the more than 70,000 Class Notices mailed to participants,[1] multiple publications, and posting of all Settlement-related documents on the designated website,[2] we have received only two objections, only one of which challenges the adequacy of the Settlement:

(a)    June 27, 2009 letter from Paul A. Rivas.  Mr. Rivas protests the per-participant recovery, contrasting it to the "immense" decline in Merrill stock, which he attributes to the mismanagement of the Company by Defendant Stan O'Neal and his management team.  Based on widely reported facts of Merrill's losses, substantial bonuses to managers, including O'Neal, and the history of its attempted merger with Wachovia and ultimately Bank of America, Mr. Rivas concludes:  "The defendant[s] clearly violated fiduciary duties under the ERISA act of 1974, by allowing the Plans to invest in unsuitable and imprudent Merrill Lynch stock."

---

[1] See Declaration of Jennifer M. Keough re: Notice Dissemination and Publication ¶ 9 ("the Notice has been mailed to 70,321 Class Members") (attached as Exhibit A to the Joint Declaration of Lynn L. Sarko and Marc I. Machiz in Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation and Motion for Award of Attorneys' Fees, Expenses and Case Contribution Awards ("Joint Declaration")).

[2] Supplemental Joint Declaration of Lynn L. Sarko and Marc I. Machiz in Further Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation and Motion for Award of Attorneys' Fees, Expenses and Case Contribution Awards ("Supplemental Declaration") ¶ 4.

1

Mr. Rivas also objects to the requested attorneys' fees and case contribution award amount. We address each of Mr. Rivas's concerns below.

  (b) <u>April 24, 2009 Letter from David A. Cross</u>. Mr. Cross objects to a "27.5% fee request," which was the maximum fee request allowable per the Notice, not the lower fee that is now actually requested. Mr. Cross does not object to the Settlement, and he recognizes that a lodestar multiplier of up to 3 – greater than the 2.7 multiplier sought – is appropriate in complex cases such as this one. Thus, Plaintiffs' fee request appears to satisfy Mr. Cross's objection. Plaintiffs previously submitted Mr. Cross's letter as Exhibit F to the Joint Declaration.

  Mr. Cross failed to file his objection with the Court by the July 6, 2009 deadline provided for by Paragraph 9 of the Preliminary Approval Order and Section 13 of the Class Notice. Thus, while Mr. Cross's objection need not be considered by the Court,[3] we nevertheless addressed it in full in the June 26, 2009 papers filed in support of the Final Approval and Fee Motions and will not further discuss its lack of relevance or merit here. Final Approval Memo at 14 n.9; Fee Memo at 20; Joint Declaration §§ IV(B) and VIII(E).

## II. DISCUSSION

**A.** **The Almost Complete Absence of Objections Supports Approval of the Settlement**

  As reviewed in Plaintiffs' Memorandum of Law In Support of Plaintiffs' Motion for

---

[3] Paragraph 9 of the Preliminary Approval Order states: "The Court will consider comments and/or objections to the Settlement, the Plan of Allocation, or the award of attorneys' fees and reimbursement of expenses or Named Plaintiff case contribution awards, *only if* such comments or objections and any supporting papers are served on or before July 6, 2009, upon each of the . . . [Co-Lead and Defense Counsel] and the objector has filed the objections, papers and briefs, showing due proof of service upon counsel identified above, with the Clerk of the Court . . . ." (emphasis supplied).

Section 13 of the Class Notice similarly provides: "UNLESS OTHERWISE ORDERED BY THE COURT, ANY SETTLEMENT CLASS MEMBER WHO DOES NOT OBJECT IN THE MANNER DESCRIBED HEREIN WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION TO THE PROPOSED SETTLEMENT AND THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND CASE CONTRIBUTION AWARDS."

Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Memo") at 11, courts in the Second Circuit determine whether a class action settlement is fair, reasonable and adequate by employing the nine factor test set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The second *Grinnell* factor examines "the reaction of the class to the settlement." In support of the Final Approval Motion, we noted that since the deadline for objections had not yet passed "it [was] premature to judge whether this factor weighs in favor of approval." Final Approval Memo at 14. We can now assess this factor.

A favorable reception by the Class constitutes strong evidence of the fairness of a proposed settlement and supports judicial approval. *Grinnell*, 495 F.2d at 462; *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Indeed, courts in this Circuit uniformly hold that a very small number of objectors is a strong indicator of the fairness of the settlement. *See, e.g., In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.*, No. 02-5097, 2007 WL 4526593, at *11 (S.D.N.Y. Dec. 20, 2007); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 337-38 (S.D.N.Y. 2005); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457 (S.D.N.Y. 2004); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D. N.Y. 2003); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118-19 (2d Cir. 2005).[4]

The reaction of the Class here is nearly identical to the favorable reaction in the *AOL ERISA Litigation*, in which two objections were filed and only a single objection out of a similarly sized class of 65,000 addressed the merits. The *AOL* court explained:

> The reaction of the class is commonly gauged with reference to the extent of objection to the settlement. Courts in this Circuit have noted that "the lack of objections may well evidence the fairness of the Settlement." *In re Am. Bank Note*

---

[4] Some courts have opined that the class's reaction may be "the most significant factor" to be weighed in approving a class settlement. *See, e.g., In re Host Am. Corp. Sec. Litig.*, No. 05-1250, 2008 WL 659579, at *1 (D. Conn. March 7, 2008) (quoting *In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)).

       *Holographics [Inc., Sec. Litig.]*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001); *see*
       *also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).

*In re AOL Time Warner ERISA Litig.*, No. 02-8853, 2006 WL 2789862, at *6 (S.D.N.Y.

Sept. 27, 2006) (approving settlement). Faced with only a single objection opposing the merits

of the Settlement from a Class of over 70,000, the Court should infer strong Class support for the

Settlement, and weigh this factor in favor of approval.

**B.**     **The Substance of the Rivas Objection Does Not Warrant Settlement Disapproval**

       The Rivas objection focuses on one aspect of the Settlement, the decline in value of Plan

participants' shares (essentially the maximum loss that Plaintiffs might recover), without

acknowledging or in any way addressing the substantial risks to recovery. In particular, *Grinnell*

factor four requires the Court to consider the risks of establishing liability and these risks have

been briefed to the Court in detail. Final Approval Memo at 17-21. Likewise, *Grinnell* factor

five directs the Court to consider risk of establishing damages, discussed in detail at pages 21 to

24 of Plaintiffs' Final Approval Memo.

       In light of the thrust of the Rivas objection, some of these risks deserve to be revisited

briefly. It is true that a recovery of $75 million is a small percentage of a maximum potential

recovery of approximately $3 billion. But the findings necessary to support the proposition that

the Class should recover the entire decline in value of Merrill's stock, in excess of a reasonable

alternative investment, has yet to be adopted by a court in a similar case. In essence, this Court

would have to conclude that, even after Merrill's stock corrected in October 2007 with the

disclosure of Merrill's exposure to subprime through its CDO portfolio, the stock remained so

risky and inappropriate that the Plans should not have, even then, invested in Merrill shares,

notwithstanding ERISA provisions that exempt plan fiduciaries from a failure to diversify. Both

the possibility and the difficulty of making such a finding are discussed in *Summers v. State*

*Street Bank & Trust Co.*, 453 F.3d 404, 410-11 (7th Cir. 2006). Unquestionably the hurdle is a

high one.  Moreover, Defendants will argue that no one in Merrill's top management viewed the

Company's position as so severe that its viability was threatened until days before the sale to

Bank of America.  In sum, while Plaintiffs certainly contend that Merrill stock was unacceptably

risky and should have been sold early in the Class Period, we (as Plaintiffs' Counsel) recognize

the high factual and legal hurdles to achieving the maximum recovery.

      Substantial damages could still be established if Plaintiffs were to show that the Plans

should have refrained from purchasing Merrill shares during the Class Period while the stock

was inflated due to the failure to disclose information.  Substantial risks to proving damages are

presented by defenses based on documents and anticipated testimony that Merrill's management

believed well into the summer of 2007, if not beyond, that their risk management strategies were

adequate, and that Merrill had no significant undisclosed risk associated with its CDO positions.

By presenting evidence that Plan fiduciaries could not have determined that Merrill's stock price

was inflated until a time close to the disclosures of October 2007, and that by arguing once these

disclosures were made there was little basis for concluding that the stock was not fairly priced

even though it continued to decline in value, Defendants might have sharply reduced Plaintiffs'

damages, even assuming other risks to liability could have been overcome.

      Of course, absent a finding of liability, the Class would recover nothing.  The risks to

establishing liability (*Grinnell* factor four), including lack of established case law and the

numerous legal and factual issues raised in Defendants' motion to dismiss, are addressed at

pages 17-21 of the Final Approval Memo.

      In short, simply comparing the magnitude of the Plans' losses to the amount of recovery

in this case presents a partial and misleading picture of the value of Plaintiffs' case.  *Grinnell*

requires a full examination of reasonableness of the Settlement "in light of all the attendant risks

of litigation." *Grinnell*, 495 F.3d at 463.  *See* Final Approval Memo at 26-28.  Plaintiffs

conducted a substantial investigation, as well as extensive confirmatory discovery, and

concluded that the risks to their case based on the record are real, and not simply routine defense

rhetoric.  As counsel experienced in litigation of this type, we are obliged to reiterate our

recommendation to the Court that it approve the Settlement.[5]

**C.    The Requested Attorneys' Fees Are Reasonable.**

      **1.    Mr. Rivas Objects to an Amount Greater Than the Requested Fee Award.**

The facts upon which Mr. Rivas bases his opposition to the requested attorneys' fees are

in error.  Like Mr. Cross, Mr. Rivas objects to an award of $20,625,000, which is more than the

$18,750,000 actually requested by Plaintiffs.

      **2.    Mr. Rivas Applies Incorrect Factors in Assessing Plaintiffs' Fee Request.**

The law is clear in the Second Circuit.  Attorneys who create a settlement fund for the

common benefit of class members are entitled to "a reasonable fee – set by the court – to be

taken from the fund."  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).  "The rationale for the doctrine is an

equitable one:  it prevents unjust enrichment of those benefitting from a lawsuit without

contributing to its cost."  *Goldberger*, 209 F.3d at 47.  Here, Plaintiffs' Counsel successfully

---

[5] Mr. Rivas makes much of the fact that Defendant O'Neal left Merrill with a substantial
severance package including stock and options.  We do not believe this is pertinent to an
evaluation of the settlement.  O'Neal was named as a Defendant not because he was
responsible for the Plans' investments, but because of his statements made to Merrill
employees which, Plaintiffs alleged, falsely reassured Plan participants, and in his capacity as a
fiduciary responsible for appointing the Plans' Trustee, a function peripheral to the case but
which Plaintiffs contend conferred co-fiduciary responsibility for violations known to him.
Apart from questions as to whether O'Neal's statements were made in a fiduciary capacity,
confirmatory discovery suggests that Defendants would present evidence that the statements in
question were made in good faith and represented management's assessment of the Company at
that time.  Further, we note that O'Neal's exposure to Merrill has not served him well.  Forbes
recently noted that O'Neal "was compensated primarily with stock and options when he was at
the helm[] of Merrill]" and that the value of his stake in Merrill "has languished since the
onset of the recession, shoving [his] fortune[] below the $100 million mark."  Matthew Miller,
"The Wealthiest Black Americans," Forbes, May 6, 2009, http://www.forbes.com/2009/05/06/
richest-black-americans-business-billionaires-richest-black-americans.html.

created a common fund of $75 million plus interest, and accordingly are entitled to a reasonable share of that fund as a fee.

A reasonable attorneys' fee in common fund cases may be determined in one of two ways, at the Court's discretion, depending on the circumstances of the case: the "percentage-of-recovery" method or the "lodestar" method. *Wal-Mart*, 396 F.3d at 121; *Goldberger*, 209 F.3d at 50; *In re Bisys Sec. Litig.*, No. 04-3840, 2007 WL 2049726, at *2 (S.D.N.Y. July 16, 2007) (Rakoff, J.). Both approaches have the same basic goal, however: to provide fair and reasonable compensation to class counsel in light of the risks they have taken, the work they have done, and the results they have achieved for their clients. *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1326-27 (2d Cir. 1990). Regardless of the method used, the *Goldberger* factors must be applied to fee requests in this Circuit and ultimately these factors determine what is a reasonable fee. *Masters v. Wilhelmina Modeling Agency, Inc.,* 473 F.3d 423, 436 (2d Cir. 2007).

In his objection, Mr. Rivas completely disregards the *Goldberger* factors, instead citing as authority a Florida case, *Rosen v. Rosen*, 696 So. 2d 697 (Fla. 1997). *Rosen* was neither a class action nor an ERISA case. Rather, *Rosen* pertains to awards in Florida family law cases under a state fee shifting statute; it is not applicable to the award of fees in this case. Further, *Rosen* **does not** apply the five criteria set forth by Mr. Rivas at page 2 of his letter, which we nevertheless discuss in §§3(a)-(e) herein. Under *Rosen*, the primary factor to be considered is the "financial resources of the parties." *Rosen*, 696 So. 2d at 700.

### 3.     Mr. Rivas Misapprehends the Circumstances of this Case.

In his attempt to apply the facts of this case to the criteria he cites, Mr. Rivas disregards all available information, including that contained in the Plaintiffs' briefing and the supporting Joint Declaration. For example:

   a.     **Customary fee for similar cases.** The requested fee is well within the range of

7

fees awarded in similar cases.  *See* Fee Brief at 18-22; Joint Declaration ¶¶142-151.

      **b.**      **Experience and reputation of the lawyers.**  Co-Lead Counsel are national

leaders in pursuing this type of litigation and provided the high quality of services this case

required, employing the expertise they have garnered from many years of spearheading company

stock and other ERISA and class action cases, and providing excellent services to the Class.  *See*

Fee Brief at 17-18; Joint Declaration ¶¶ 90, 121-138.

      **c.**      **Likelihood that the case will preclude the attorneys from other employment.**

Mr. Rivas errs in his presumption that this case would "[n]ot likely" preclude Plaintiffs' Counsel

from other employment.  The circumstances of this case, including the intensity of the defense

and the relatively short time frame allotted for confirmatory discovery, required that Plaintiffs'

Counsel commit significant resources to this single matter, at times pulling staff off of other

cases in order to review documents, prepare for interviews and other time-sensitive activities.  As

of July 15, 2009, Plaintiffs' Counsel had devoted 19,104.35 hours to this case, for a lodestar of

$6,858,872.75.  Supplemental Declaration ¶¶ 9-10, 12.  These hours reasonably and necessarily

led to success in this case.[6]  Speaking at least for Co-Lead Counsel, the enormous investment of

time and resources required by this case forced us to forgo opportunities for other potential cases.

      **d.**      **Time, novelty and complexity of the issues.**  The more than 19,104 hours

devoted by Plaintiffs' Counsel to the successful prosecution of the action was reasonable and

necessary to the success of this action.  *See* Supplemental Declaration ¶¶ 8, 15; Fee Memo at 11,

18-20; Joint Declaration ¶¶ 106, 112, 143.

      Mr. Rivas mischaracterizes this action as a "[n]on-novel[ ]" and "[n]oncomplex" ERISA

---

[6] Contrary to Mr. Rivas's assertion, Plaintiffs' Counsel has done a tremendous amount of work in this case, including but not limited to conducting the initial and ongoing factual investigation, research and drafting of pleadings, opposing Defendants' motion to dismiss, consulting with experts, document discovery and witness interviews  *See* Fee Memo at 3-7; Joint Declaration ¶¶ 6-36.

case.  Nothing could be further from the truth.  ERISA company stock cases involving 401(k) plans are quite new and the results of the cases are decidedly mixed.  Indeed, the types of ERISA claims asserted by Plaintiffs here have been described as implicating "a rapidly developing, and somewhat esoteric, area of law."  *Global Crossing*, 225 F.R.D. at 459 n.13 (significant legal and factual obstacles to proving the case, when viewed against the substantial and certain benefits of settlement, supported settlement approval).  *See* Final Approval Memo at 17-18; Fee Memo at 12-14; Joint Declaration ¶¶ 49, 53, 66; *see also In re Huntington Bancshares Inc. ERISA Litig.*, No. 08-0165, 2009 WL 330308, at *23 (S.D. Ohio Feb. 9, 2009) (dismissing company stock case).

Similarly, the magnitude, complexity, expense, and likely duration of litigation cannot be overstated.  *See* Fee Memo at 11-13; Final Approval Memo at 12-13; Joint Declaration ¶¶ 48-56, 114-116.  In addition to involving scores of potential witnesses, more than 70,000 participants in Merrill's three Plans, and over 38 million pages of documents produced in confirmatory discovery, it presented complex factual and legal issues – each of which would require extensive lay and esoteric expert discovery and testimony to resolve – against the backdrop of a fast-developing and hotly disputed area of the law.  Final Approval Memo at 12.  This was true of both the ERISA issues and the complicated underlying issues surrounding Merrill's exposure to subprime-related CDOs, other real estate assets, off balance sheet derivatives and guarantees, and credit default swaps.  *Id.* at 12-13.

e.      **Results obtained.**  The results obtained, including the reasonableness of the Settlement in light of the best possible recovery and the attendant risks of litigation, are discussed throughout Plaintiffs' papers.  *See* Final Approval Memo at 26-28 (discussing *Grinnell* factors eight and nine).  By the standards of this type of litigation, the recovery here is very sizeable:  it is only the fifth ERISA company stock case settlement that exceeds $70 million – an

even more significant achievement given the current economic climate.

Here, the Court need not engage in a trial on the merits to determine the prospects of success. *In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993). The fact that only one of more than 70,000 Class members has raised an objection to the Settlement further attests to the favorable results obtained.

**D.    The Requested Named Plaintiff Case Contribution Awards Are Reasonable.**

Without explanation, Mr. Rivas asks the Court to increase the case contribution awards to Named Plaintiffs to $10,000, double the requested $5,000. While significantly larger case contribution awards have been made in ERISA cases,[7] Named Plaintiffs believe that the $5,000 requested is reasonable, and ask for an award in that amount.

Mr. Rivas also requests that, in the event his objection is not "resolved favorabl[y]," he be included as a Named Plaintiff in the case and would presumably share in the increased award, if granted. Mr. Rivas had the same opportunity as the other Named Plaintiffs – Carl Esposito, Barbara Boland, Alan Maltzman and Mary Gidaro – to come forward and lead the litigation at the outset of the case. Mr. Rivas chose not to do so and, consequently, there is no reason that he should receive a case contribution award, above and beyond any distribution that he may be entitled to under the proposed Plan of Allocation.

## III.   CONCLUSION

Plaintiffs, therefore, respectfully request that the Court enter an order granting their Motions.

---

[7] *See, e.g., Spann v. AOL Time Warner*, No. 02-8238, 2005 WL 1330937, at *9 (S.D.N.Y. June 7, 2005) (awarding class representatives $10,000 each); *Koch v. Dwyer*, No. 98-5519, slip op. (S.D.N.Y. May 7, 2002) (same).

DATED this 20th day of July, 2009.

Respectfully submitted,

/s/ Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
Lynn Lincoln Sarko
Gary A. Gotto
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone: (206) 623-1900
Facsimile:  (206) 623-3384
lsarko@kellerrohrback.com
ggotto@kellerrohback.com

***Co-Lead Counsel***

COHEN MILSTEIN, SELLERS & TOLL, PLLC
Marc I. Machiz
255 S. 17th Street, Suite 1307
Philadelphia, PA  19103
Telephone:  (267) 773-4680
Facsimile:  (267) 773-4690
mmachiz@cohenmilstein.com

Michelle C. Yau
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699
myau@cohenmilstein.com

***Co-Lead Counsel***