**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. | : |
| SECURITIES, DERIVATIVE AND ERISA | : |
| LITIGATION | : |

Master File No.:
07cv9633 (JSR)(DFE)

ECF CASE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

This Document Relates to:                              :
Derivative Action, 07cv9696 (JSR)(DFE)       :
                                                                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT
JEFFREY N. EDWARDS TO DISMISS THE VERIFIED THIRD AMENDED
SHAREHOLDER DERIVATIVE AND CLASS ACTION COMPLAINT**


WILLKIE FARR & GALLAGHER LLP
Richard D. Bernstein
Michael R. Young
Frank M. Scaduto
787 Seventh Avenue
New York, New York
(212) 728-8000

*Attorneys for Defendant Jeffrey N. Edwards*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS ...........................................................................................................4

ARGUMENT ...............................................................................................................................6

I.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. EDWARDS UNDER RULE 10B-5 ............................................................................................................6

    A.    Plaintiff Alleges No Basis For An Inference Of Scienter Against Mr. Edwards ..........6

    B.    There Are Three Strong Bases Opposing An Inference That Mr. Edwards Had Scienter .................................................................................................................10

    C.    If Plaintiff's Conclusory Scienter Allegations Were Sufficient, Plaintiff Could Not Allege Reliance ...........................................................................................................12

II.    THE COMPLAINT FAILS TO PLEAD A CLAIM AGAINST MR. EDWARDS UNDER DELAWARE LAW ..........................................................................................................13

CONCLUSION.........................................................................................................................17

# TABLE OF AUTHORITIES

CASES                                                                                          Page(s)

Acito v. IMCERA Group, Inc.,
    47 F.3d 47 (2d Cir. 1995) ................................................................................ 9, 10

Air Atlanta Aero Engineering Ltd. v. SP Aircraft Owner I, LLC,
    No. 08 Civ. 8852, 2009 WL 2191318 (S.D.N.Y. July 23, 2009) ......................................14, 15

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009)..........................................................................................14, 15

In re AstraZeneca Securities Litigation,
    559 F. Supp. 2d 453 (S.D.N.Y. 2008)........................................................................10

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)................................................................................................14

In re Bristol-Myers Squibb Securities Litigation,
    312 F. Supp. 2d 549 (S.D.N.Y. 2004)........................................................................10

Caiafa v. Sea Containers Ltd.,
    525 F. Supp. 2d 398 (S.D.N.Y. 2007).........................................................................9

Cinerama, Inc. v. Technicolor, Inc.,
    663 A.2d 1156 (Del. 1995) .....................................................................................13

In re Citigroup Auction Rate Securities Litigation,
    Nos. 08 Civ. 3095, 09 md 2043, 2009 WL 2914370 (S.D.N.Y. Sept. 11, 2009) ....................11

In re Citigroup Inc. Shareholder Derivative Litigation,
    No. 07 Civ. 9841, 2009 WL 2610746 (S.D.N.Y. Aug. 25, 2009) ....................9, 10, 12, 13, 16

City of Brockton Retirement System v. Shaw Group Inc.,
    540 F. Supp. 2d 464 (S.D.N.Y. 2008).........................................................................8

David B. Lilly Co. v. Fisher,
    18 F.3d 1112 (3d Cir. 1994).....................................................................................16

In re Downey Securities Litigation,
    No. CV 08-3261-JFW, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ......................6, 7, 8, 10

Horizon Asset Management Inc. v. H & R Block, Inc.,
    Nos. 08-1593, 08-1670, 2009 WL 2870505 (8th Cir. Sept. 9, 2009) ..................................6, 12

CASES                                                                                          Page(s)

In re Nokia Corp. Securities Litigation,
    No. 96 Civ. 3752, 1998 WL 150963 (S.D.N.Y. April 1, 1998)................................................11

In re NovaGold Resources Inc. Securities Litigation,
    629 F. Supp. 2d 272 (S.D.N.Y. 2009).....................................................................................6

Pfeffer v. Redstone,
    965 A.2d 676 (Del. 2009) ......................................................................................................13

Pittleman v. Impac Mortgage Holdings, Inc.,
    No. SACV 07-0970, 2009 WL 648983 (C.D. Cal. Mar. 9, 2009) ..........................................11

Rombach v. Chang,
    355 F.3d 164 (2d Cir. 2004)...................................................................................................11

Sequential Information Systems, Inc. v. National Westminster Bank USA,
    No. 91 CIV. 3619, 1995 WL 575293 (S.D.N.Y. Sept. 28, 1995)...........................................16

Stanziale v. Nachtomi,
    416 F.3d 229 (3d Cir. 2005)...................................................................................................13

Stavros v. Exelon Corp.,
    266 F. Supp. 2d 833 (N.D. Ill. 2003) .......................................................................................9

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007).........................................................................................................7, 12

In re Zoran Corp. Derivative Litigation,
    511 F. Supp. 2d 986 (N.D. Cal. 2007) ...................................................................................14

Defendant Jeffrey N. Edwards respectfully joins the motions of Defendants Bank of America Corporation ("BofA"), the former directors of Merrill Lynch & Co., Inc. (the "Merrill Director Defendants"), and the other individual defendants to dismiss the Verified Third Amended Shareholder Derivative and Class Action Complaint (the "Complaint"), and submits this memorandum of law in support of his own motion to dismiss. Mr. Edwards joins and will not repeat the reasons set forth in the briefs filed by BofA and the Merrill Director Defendants, which are sufficient to dismiss the Complaint in its entirety. This brief sets forth additional reasons why the Complaint should be dismissed against Mr. Edwards specifically. Many of these additional reasons draw on previous briefing in this matter, which we adopt as indicated herein rather than repeat unnecessarily.

## PRELIMINARY STATEMENT

The Complaint is fatally devoid of factual allegations tying Mr. Edwards to any actionable wrongdoing during his tenure as Merrill's CFO through December 2007. Indeed, most of the conclusory allegations in the Complaint occurred <u>after</u> Mr. Edwards stepped down from management of Merrill in December 2007, or concern a merger in late 2008 that he had nothing to do with. Consequently, the Complaint fails to state a derivative claim on behalf of BofA against Mr. Edwards under either Rule 10b-5 or Delaware common law.

<u>First</u>, the Complaint fails to state a claim under Rule 10b-5 because it does not raise the necessary strong inference that Mr. Edwards acted with scienter. The following facts are indisputable: (a) The Rule 10b-5 claim is based solely on Merrill's repurchase of its own stock in April 2007. (b) The Complaint does not contain a single specific allegation that Mr. Edwards personally said anything privately or received information contradicting any of Merrill's or his public statements. (c) Mr. Edwards did not sell <u>any</u> of his 780,000 shares of Merrill stock and options during the relevant period, but rather significantly <u>increased</u> his

holdings of Merrill stock and options in 2007.  (d) An industry-wide subprime crisis – one whose unique severity was not foreseen as of April 2007 by scores of executives, analysts, ratings agencies, government officials, economics professors, and members of the media – caused hundreds of companies to announce writedowns and spawned hundreds of lawsuits like this one. (e) With Mr. Edwards as CFO, Merrill was one of the first companies voluntarily to announce substantial write-downs for AAA CDOs.  Indeed, Merrill's early writedowns in October 2007 came three weeks before a required reporting deadline and during a still-robust stock market.[1]
(f) No one, including Merrill's subsequent management and its outside auditor, has suggested the need for a restatement of Merrill's financials from Mr. Edwards's tenure.  The Complaint nonetheless attempts to infer scienter from the insufficient bases that Mr. Edwards was an officer and the conclusory allegation that Mr. Edwards must have known by April 2007 about what the effect of a subsequent credit crisis would be on Merrill's AAA CDO assets.

The only plausible inference is that Mr. Edwards honestly believed in the valuation of Merrill's AAA CDO portfolio, and that there was no requirement to disclose the total amount of that portfolio separately in April 2007 when it was not expected to suffer material losses and when Plaintiff does not allege that any other issuer was making such disclosure.  His opinions honestly changed (as did the opinions of many others) when the unprecedented credit crisis occurred.

Plaintiff would implausibly infer that Mr. Edwards knowingly engaged in an alleged scheme from which he reaped substantial personal financial losses as a Merrill shareholder, and which he helped disclose voluntarily in October 2007 without any pressure

---

[1]    The S&P 500 closed at an all-time high of 1565.15 on October 9, 2007, see Wall St. J., Oct. 10, 2007, four days after Merrill initially disclosed large CDO writedowns.

from Merrill's outside auditor or anyone else.  The more compelling and only plausible inference
is that Mr. Edwards believed that circumstances had changed after April 2007, caused by the
subsequent unprecedented credit crisis.  These changed circumstances explain why, with Mr.
Edwards's support, Merrill wrote down CDOs and disclosed the size of Merrill's CDO assets in
October 2007.  Public policy does not support scapegoating an executive because he or she
honestly recognized and reacted to changed economic circumstances.  As John Maynard Keynes
famously said during the Great Depression, "When the facts change, I change my mind.  What
do you do, sir?"  Alfred L. Malabre, Lost Prophets:  An Insider's History of the Modern
Economists 220 (1994).

Second, even assuming that Plaintiff's insufficiently conclusory and collective
scienter allegations were sufficient, those same allegations would require dismissal of the 10b-5
claim for lack of reliance.  Plaintiff alleges that a disinterested majority of the Merrill board
knew about Merrill's CDO problems and approved the stock repurchase at issue anyway.  Under
such circumstances, Plaintiff cannot adequately allege that Merrill relied on any alleged fraud in
connection with the April 2007 stock repurchase.

Third, the Complaint fails to state a claim against Mr. Edwards under Delaware
law for the same reasons that it fails to allege scienter.  Although the Delaware law claims are
not subject to the heightened pleading requirements of the PSLRA, they are subject to the
pleading requirements of Twombly and Iqbal.  The Twombly/Iqbal standard requires plaintiffs to
plead facts plausibly establishing each and every element of their claims, specifically including
knowledge or intent.  Plaintiff here, however, has not pled sufficient facts plausibly establishing
that Mr. Edwards was aware of any of the problems within Merrill that Plaintiff alleges in

conclusory terms. To the contrary, the far more likely explanation is that Mr. Edwards honestly reacted to events concerning Merrill's CDO portfolio as they came to his attention.

## STATEMENT OF FACTS

Since this derivative action was first filed in November 2007, Mr. Edwards stepped down from being Merrill's CFO in December of 2007 and assumed a non-management role in Merrill's Executive Client Coverage Group. He remained in that role until January 2009, at which point he retired from Merrill. He had nothing to do with Merrill's merger with BofA that was announced in September 2008 and consummated on January 1, 2009.

The current Complaint, now in its fourth iteration, asserts seventeen total counts – twelve derivative claims and five class claims – based on events before and after the announcement of the merger. Mr. Edwards is named as a defendant in only seven of the derivative counts (Counts I, III, IV, V, VI, VII and XI).[2] He is not named as a defendant in any of the class claims. Plaintiff does not allege – nor could she allege – that Mr. Edwards was involved in any of the claims arising after he ceased being CFO in December 2007, including those involving the merger and the events following it. Rather, Plaintiff asserts derivative claims against Mr. Edwards under Rule 10b-5 and Delaware common law simply because he was a member of Merrill's "senior management" and based exclusively on Merrill's AAA CDO losses during his tenure as CFO through the end of 2007.

---

[2]     This does not include the derivative unjust enrichment claim (Count XI), which Plaintiff has not asserted against Mr. Edwards. In response to motions to dismiss the Second Amended Derivative Complaint, Plaintiff conceded that an identical version of its current unjust enrichment claim exclusively concerned alleged insider trading by defendants other than Mr. Edwards. (See Pl.'s Opp'n to Defs.' Mot. to Dismiss the Verified 2d Am. Shareholder Derivative and Class Action Compl., dated Dec. 23, 2008, at 63-64 (Master Docket #176).)

The gist of the allegations against Mr. Edwards is that without individual delineation, he and other members of "Merrill Lynch's senior management . . . . concealed the dangers Merrill Lynch faced as a result of its huge exposure to CDOs." (Id. ¶ 21.) Plaintiff alleges that "the Merrill Officer Defendants," which is defined to include Mr. Edwards (id. ¶ 42), violated Rule 10b-5 by "knowingly caus[ing]" Merrill to repurchase its own stock in April 2007 despite being aware that Merrill's stock was overvalued because of the company's supposed CDO problems. (Id. ¶ 454.) Plaintiff also alleges that the "Merrill Officer Defendants" violated various aspects of Delaware corporate law based on their intentional mishandling of Merrill's CDOs.

According to Plaintiff, Merrill's senior management were collectively aware that Merrill was concealing information or misleading investors based on "their positions with Merrill, and their access to material non-public information." (Id. ¶ 43; see also id. ¶¶ 58-59.) Plaintiff further alleges that the "Merrill Officer Defendants . . . knowingly caused Merrill Lynch to waste a substantial amount of capital through the Stock Repurchase Plan at a time when the . . . impact of the impending write-downs should have been readily apparent and approved Merrill's purchase of Merrill securities while they were in possession of material undisclosed information that would have resulted in Merrill paying far less for those shares had the truth been revealed." (Id. ¶ 153.)

Beyond these conclusory and collective allegations, however, the Complaint is essentially silent about Mr. Edwards. It does not allege that any particular information or warning concerning CDOs was given to Mr. Edwards. Indeed, despite having more than two years to investigate its claims, the Complaint does not allege any facts from particular documents, meetings, or witnesses specifically with respect to Mr. Edwards. The Complaint similarly does

not allege any instance in which Mr. Edwards made any private statement that was inconsistent with Merrill's or his public statements.

Finally, Mr. Edwards beneficially owned more than 780,000 shares of Merrill stock and options as of April 2007, including approximately 170,000 shares and options acquired in early 2007.[3]  The Complaint does not allege that Mr. Edwards ever sold any Merrill stock or was protecting any personal compensation package.  (See id. ¶¶ 44, 387.)

## ARGUMENT

I.    **THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. EDWARDS UNDER RULE 10B-5.**

A.    **Plaintiff Alleges No Basis For An Inference Of Scienter Against Mr. Edwards.**

Under the PSLRA, "[a] plaintiff must plead scienter for each defendant."  In re NovaGold Resources Inc. Sec. Litig., 629 F. Supp. 2d 272, 303 (S.D.N.Y. 2009) (emphasis added); accord Horizon Asset Mgmt. Inc. v. H&R Block, Inc., ___ F.3d ___, Nos. 08-1593, 08-1670, 2009 WL 2870505, at *3 (8th Cir. Sept. 9, 2009) (plaintiffs "must . . . raise a strong inference of scienter for each defendant and with respect to each alleged misrepresentation"); In re Downey Sec. Litig., No. CV 08-3261-JFW, 2009 WL 2767670, at *9 n.6 (C.D. Cal. Aug. 21, 2009) ("Plaintiff again fails to allege with particularity what information any Individual Defendant received or reviewed, or how that information demonstrates that any particular alleged false statement was made intentionally or with deliberate recklessness.").  Although this is the Plaintiff's fourth complaint, and approximately two years have passed since Merrill's October 2007 writedowns, the conclusory allegations of the current Complaint do not raise the necessary "strong inference of scienter" against Mr. Edwards.  Plaintiff's inference of scienter is

---

[3]    See Decl. of Jay B. Kasner in Support of the Merrill Defs.' Mots. to Dismiss the Settled Shareholder Class Action, dated July 21, 2008, Exs. JJ & OO (Master Docket #55).

not "at least as compelling as" the inference that Mr. Edwards acted honestly.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007).

Unlike the settled securities class action,[4] which covered a period through December 31, 2008, the current Complaint's 10b-5 claim requires a factual basis to infer scienter in connection with Merrill's stock repurchase in April 2007.  Plaintiffs provide no reason, however, why Mr. Edwards would have questioned Merrill's CDO valuations in April 2007. There is simply no allegation that Mr. Edwards received any information by April 2007 that contradicted any of Merrill's or his public statements about CDOs.  There is also no allegation that Mr. Edwards played any role or made any statements in connection with the April 2007 stock repurchase.  Indeed, Mr. Edwards's name does not even appear in the allegations of the Complaint setting forth the 10b-5 claim.  (Compl. ¶¶ 450-62.)

In lieu of particularized facts regarding Mr. Edwards, Plaintiff resorts to impermissible "puzzle pleading" based on conclusory and collective allegations of scienter scattered throughout the 200-plus-page Complaint.  This alone provides a basis to dismiss the Complaint against Mr. Edwards.  See Downey Sec. Litig., 2009 WL 2767670, at *3 (dismissing the complaint because Plaintiff has "with respect to each of the Individual Defendants, failed to connect the particularized facts demonstrating that each Individual Defendant knew, or was deliberately reckless in not knowing, that a particular statement was false or misleading when

---

[4]    In support of this argument, we fully incorporate our prior briefing and that of Merrill in support of the motions to dismiss the settled 10b-5 shareholder class action.  See Br. in Support of Mr. Edwards's Mot. to Dismiss the Settled Shareholder Class Action, dated July 21, 2008 (Master Docket #66); Reply Br. in Further Support of Mr. Edwards's Mot. to Dismiss the Settled Shareholder Class Action, dated Nov. 14, 2008 (Master Docket #148); Br. in Support of Merrill Defs.' Mot. to Dismiss the Settled Shareholder Class Action, dated July 21, 2008 (Master Docket #87); Merrill Defs.' Reply Br. in Further Support of Their Mot. to Dismiss the Settled Shareholder Class Action, dated Nov. 14, 2008 (Master Docket #151).

made").  Yet even when the disparate pieces of the Complaint are sorted through, the only

potentially pertinent allegations of scienter concerning Mr. Edwards and the April 2007 stock

repurchase are his position as CFO (Compl. ¶¶ 43, 58-59), his alleged "access" to unspecified

corporate information (id.), and collective and conclusory allegations that he and the other

"Merrill Officer Defendants" were aware of "impending write-downs" and "in possession of

material undisclosed information" as of the April 2007 stock repurchase (id. ¶ 153).  Each fails to

provide any basis to infer scienter.

        As demonstrated more fully in our briefing in the settled 10b-5 shareholder class

action, neither a defendant's corporate position nor access to unspecified information are enough

to even raise an inference of scienter in the first place.  "It is not enough for a post-Tellabs

plaintiff to allege that, because executives like the Individual Defendants were 'closely involved'

in [their company's] business, one can strongly infer that they 'were furnished with financial

data which contained the 'errors' that later required restatement.'"  City of Brockton Ret. Sys. v.

Shaw Group, Inc., 540 F. Supp. 2d 464, 473  (S.D.N.Y. 2008) (granting 12(b)(6) dismissal

because defendants' "purported status as 'hands on' senior executives" was insufficient to infer

their knowledge of accounting improprieties); see also Downey Sec. Litig., 2009 WL 2767670,

at *12 ("Plaintiff cannot base an inference of scienter on the Individual Defendant's access to

unspecified documents and conversations.").

        Similarly, Plaintiff alleges no basis whatsoever to infer that Mr. Edwards and

others were aware of "impending write-downs" of Merrill's AAA CDO portfolio as of April

2007.  To the contrary, Plaintiff quotes from an April 16, 2008 investigative article in the Wall

Street Journal that concluded that at least through "early 2007" Merrill's "executives believed

that so long as all they retained on their books were super-senior tranches, they would be

shielded from falls in the prices of mortgage securities." (Compl. ¶ 255.)[5] Nor do Merrill's later

AAA CDO writedowns in October 2007 provide a basis to infer that Mr. Edwards and others

knew by April 2007 of the need for such writedowns. See, e.g., Acito v. IMCERA Group, Inc.,

47 F.3d 47, 53 (2d Cir. 1995) ("[m]ere allegations that statements in one report should have been

made in earlier reports do not make out a claim for securities fraud"); accord Stavros v. Exelon

Corp., 266 F. Supp. 2d 833, 851-52 (N.D. Ill. 2003) (rejecting an inference of scienter from later

writedowns because "for every write-down, there is always someone who says the company

should have acted sooner"); see also Caiafa v. Sea Containers Ltd., 525 F. Supp. 2d 398, 411-12

(S.D.N.Y. 2007) (refusing to infer scienter against individual defendants from "conclusory

allegations of nothing more than purported mismanagement, supposed GAAP violations by the

Company, and other classic indicia of an impermissible attempt to plead 'fraud by hindsight'").

        Indeed, Judge Stein recently dismissed nearly identical scienter allegations in In

re Citigroup Inc. Shareholder Derivative Litigation, No. 07 Civ. 9841, 2009 WL 2610746, at *9-

11 (S.D.N.Y. Aug. 25, 2009) [hereinafter "Citigroup Derivative Litig."]. That case involved

Citigroup's own stock repurchase program during the first quarter of 2007. The plaintiffs there

alleged that the company's officers and directors "'knowingly caused Citi to repurchase its own

shares at an artificially inflated price, when Defendants knew or were already on notice that

Citi's adverse financial exposure to its subprime assets was a material undisclosed fact that

needed to be disclosed.'" Id. at *9. Judge Stein granted dismissal on a number of grounds,

---

[5]    As described in prior briefs, super-senior AAA CDO tranches had many layers beneath
       them that were intended to absorb losses, as well as other credit enhancements. These
       loss-absorption layers and credit enhancements were not part of the much lower-rated
       subprime mortgage securities. (Br. in Support of Merrill Defs.' Mot. to Dismiss the
       Settled Shareholder Class Action at 18-20; Br. in Support of Mr. Edwards's Mot. to
       Dismiss the Settled Shareholder Class Action at 14.)

including failure to plead scienter as to any of the individual defendants because, among other things, scienter cannot be inferred by hindsight from "a downturn in the subprime mortgage industry."  Id. at *10.

**B.      There Are Three Strong Bases Opposing An Inference That Mr. Edwards Had Scienter.**

There are three bases supporting a compelling inference that Mr. Edwards behaved honestly.  Most notably, although Plaintiff conclusorily alleges "the Merrill Defendants' knowledge at the end of 2006 that massive write-downs would be required" (Compl. ¶ 175), Mr. Edwards did not sell any stock during the relevant time period.  In fact, he increased substantially his holdings of Merrill stock in 2007 by 170,000 shares.  Courts have granted dismissal because such a pattern of an officer's acquisitions without sales "negates" and is "wholly inconsistent" with scienter.  See, e.g., Acito, 47 F.3d at 54 ("The fact that the other defendants did not sell their shares during the relevant class period undermines plaintiffs' claim that defendants delayed notifying the public 'so that they could sell their stock at a huge profit.'"); In re AstraZeneca Sec. Litig., 559 F. Supp. 2d 453, 469 (S.D.N.Y. 2008) (paucity of sales near time of misrepresentations "effectively negated" an inference of scienter); In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (dismissing where individual defendants "increased their [stock] holdings during the Class Period – a fact wholly inconsistent with fraudulent intent") (emphasis in original); accord Downey Sec. Litig., 2009 WL 2767670, at *14 ("the substantial losses suffered by [two officers] due to their decision not to sell any stock during the class period negates any inference of scienter").[6]

---

[6]      Indeed, this proposition is so well established that when the Second Circuit recently affirmed a 12(b)(6) dismissal with prejudice, it cited this basis in a summary order.  See Avon Pension Fund v. GlaxoSmithKline PLC, No. 08-4363-cv, 2009 WL 2591173, at *2 (2d Cir. Aug. 24, 2009) (summary order) ("defendants' purchases of even more GSK

Furthermore, Merrill was swept up in an unprecedented industry-wide crisis that caused hundreds of other companies to announce unforeseen losses and become involved in litigation just like this.  This creates an "opposing inference" that supports a Rule 12(b)(6) dismissal of scienter allegations.  In re Citigroup Auction Rate Sec. Litig., No. 08 Civ. 3095, 2009 WL 2914370, at *6 (S.D.N.Y. Sept. 11, 2009) ("the very market conditions –specifically the 'subprime crisis' – that Plaintiff cites in his Complaint in connection with Defendants' intent to continue receiving ARS-related fees, give rise to an opposing inference that Defendants only engaged in bad (in hindsight) business judgments in connection with ARS, and did not engage in the alleged conduct with an intent to deceive investors"); accord, e.g., Pittleman v. Impac Mortg. Holdings, Inc., No. 07-0970, 2009 WL 648983, at *4 (C.D. Cal. Mar. 9, 2009) (granting dismissal of subprime-related Rule 10b-5 claims because of lack of scienter:  "This case is about a company involved in a volatile industry at the onset of a long, destructive economic downturn.").

Finally, while Mr. Edwards was a member of management, Merrill was the first to disclose voluntarily large CDO losses after the credit crisis began, and it did so three weeks before its October 2007 10-Q was due.  The Second Circuit has held that voluntary disclosure of problems prior to a standard reporting deadline supports a Rule 12(b)(6) dismissal of scienter allegations.  See, e.g., Rombach v. Chang, 355 F.3d 164, 176 (2d Cir. 2004) ("[T]he allegation that defendants behaved recklessly is weakened by their disclosure of certain financial problems prior to the deadline to file [the company's] financial statements."); see also In re Nokia Corp. Sec. Litig., No. 96 Civ. 3752, 1998 WL 150963, at *13 (S.D.N.Y. Apr. 1, 1998) ("If anything,

---

stock during the relevant period signals only confidence in the future of their company and, by extension, in the commercial success of Avandia").

the fact that [defendant] voluntarily chose to issue a press release earlier than its standard year-end reporting in February undercuts the allegation that defendants were acting recklessly."); Horizon Asset Mgmt., 2009 WL 2870505, at *5 (defendants' prompt response when problems emerged is "a prudent course of action that weakens rather than strengthens an inference of scienter").

   These undisputed facts support the far more compelling inference that Mr. Edwards behaved honestly when Merrill repurchased its own stock in April 2007, and he honestly and voluntarily disclosed problems with Merrill's AAA CDOs when he became aware of them later on.  It is illogical to infer, as Plaintiff does, that Mr. Edwards knew about these problems with AAA CDOs by "the end of 2006" (Compl. ¶ 175) and, rather than protecting himself from financial harm by selling Merrill stock, he sold no shares and actually increased his holdings in 2007 by 170,000 shares.  It is equally illogical to infer that he kept Merrill's CDO problems secret for many months, only to participate in the <u>voluntary</u> unveiling of them in October 2007.  Plaintiff simply cannot – after four efforts – allege any basis to raise the necessary "strong inference of scienter," <u>Tellabs</u>, 551 U.S. at 341, against Mr. Edwards.

  **C.** **<u>If Plaintiff's Conclusory Scienter Allegations Were Sufficient, Plaintiff Could Not Allege Reliance.</u>**

   Even assuming <u>arguendo</u> that Plaintiff's conclusory and collective allegations of scienter were sufficient, those very same allegations would require dismissal on reliance grounds. The <u>Citigroup Derivative Litigation</u> decision held that reliance, which is another necessary element of a Rule 10b-5 civil action, was not alleged in similar circumstances.  Specifically, the court held that "plaintiffs have failed to allege that Citigroup was deceived as a result of any alleged fraud . . . . because the stock repurchases here were approved by a majority of disinterested directors – and because those directors were, according to plaintiffs, fully informed

of the facts underlying the alleged fraudulent statements." Citigroup Derivative Litig., 2009 WL 2610746, at *10.  The Complaint makes the same allegation of knowledge by the Merrill directors.  (Compl. ¶¶ 456-58.)  The Citigroup Derivative Litigation decision thus provides an additional reason to dismiss the derivative Rule 10b-5 claim against Mr. Edwards.

In sum, the Complaint falls far short of alleging either the necessary strong inference of scienter against Mr. Edwards or reliance.  Accordingly, the derivative Rule 10b-5 claim against him should be dismissed.

## II.    THE COMPLAINT FAILS TO PLEAD A CLAIM AGAINST MR. EDWARDS UNDER DELAWARE LAW.

Plaintiff's derivative claims under Delaware law against Mr. Edwards fail for similar reasons.  Like the derivative 10b-5 claim, all of Plaintiff's derivative claims against Mr. Edwards under Delaware law require an element of awareness or knowledge by Mr. Edwards of problems within the corporation.

As a general matter, officers enjoy the protection of the business judgment rule, which presumes that they "act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company."  See Stanziale v. Nachtomi, 416 F.3d 229, 238 & n.12 (3d Cir. 2005) (emphases added) (citing Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)); see also Cinerama, Inc. v. Technicolor, Inc., 663 A.2d 1156, 1162 (Del. 1995) ("'the business judgment rule attaches to protect corporate officers and directors and the decisions they make, and our courts will not second-guess these business judgments'") (quoting Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361 (Del. 1993)).  Moreover, Count I of the Complaint – for breach of corporate duties based on the alleged concealment of Merrill's supposed CDO problems – requires some specific basis to infer that the defendant knew about those problems.  See, e.g., Pfeffer v. Redstone, 965 A.2d 676, 686-87 (Del. 2009) (affirming dismissal of breach

of fiduciary duty claim based on failure to disclose certain information because plaintiff did not

"offer 'well-pleaded facts from which it can be reasonably inferred that this 'something' was

knowable and that the defendant was in a position to know it'").  Because Counts III ("abuse of

control") and IV ("gross mismanagement") are simply a "repackaging" of the breach of

corporate duties claim and not an independent tort, see In re Zoran Corp. Derivative Litigation,

511 F. Supp. 2d 986, 1019 (N.D. Cal. 2007) (applying Delaware law), they also fail without the

necessary allegation of awareness in corporate wrongdoing.[7]  And finally, the rest of Plaintiff's

Delaware law claims against Mr. Edwards – Counts V (contribution and indemnity), VI (aiding

and abetting breach of fiduciary duty), and VIII (breach of fiduciary duty in connection with the

April 2007 stock repurchase) – are expressly predicated on conclusory allegations of "knowing,

reckless . . . and/or bad faith" misconduct.  (See Compl. ¶¶ 441, 446, 454, 456, 466.)

　　　　Although Plaintiff's claims under Delaware law are not subject to the heightened

pleading requirements of the PSLRA, they must still meet the Twombly/Iqbal plausibility

pleading standard.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (a complaint must

allege "enough facts to state a claim to relief that is plausible on its face"); Ashcroft v. Iqbal, 129

S. Ct. 1937, 1953-54 (2009) (extending Twombly to all federal civil actions).  Twombly and

Iqbal require that for each element of a claim, including knowledge or intent, plaintiffs must

"plead[] factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949; id. at 1954; see also Air Atlanta

Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC, No. 08 Civ. 8852, 2009 WL 2191318, at *13

(S.D.N.Y. July 23, 2009) ("Twombly and Iqbal provide clear instructions that conclusory

---

[7]　　The "abuse of control" and "gross mismanagement" claims thus also fail for the more
fundamental reason that they are not recognized as independent causes of action under
Delaware law, as demonstrated more fully in the Merrill Director Defendants' Brief.

statements about a party's alleged intentions should be accompanied with supporting factual allegations where circumstances so demand."). Thus, a claim based on illicit knowledge or intent is not plausibly pled when there are "more likely explanations" that are consistent with innocent conduct. Iqbal, 129 S. Ct. at 1951 (affirming dismissal where the allegations failed to "plausibly suggest [defendants'] discriminatory state of mind"); Air Atlanta, 2009 WL 2191318, at *13 (granting 12(b)(6) dismissal of state law commercial claims in part because plaintiff's "conclusory allegation as to Ambac's state of mind" was "not a sufficient factual pleading under Iqbal").

            For all the reasons stated above, supra at 6-10, Plaintiff has not pled facts that plausibly suggest that Mr. Edwards was aware of any specific problems with respect to Merrill's AAA CDO portfolio before the credit crisis caused Merrill and numerous other companies to write down their holdings. For that matter, contrary to Twombly and Iqbal, Plaintiff has not alleged any facts whatsoever against Mr. Edwards specifically. See Iqbal, 129 S. Ct. at 1954 ("The Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). Rather, Plaintiff relies on the same conclusory assertions in connection with its Rule 10b-5 claim – Mr. Edwards's position as CFO and his "access" to vague and unspecified corporate information – to implausibly infer that Mr. Edwards must have knowingly abused his business judgment in failing to reveal Merrill's AAA CDO losses and exposure at an earlier time.

            The far "more likely explanations" support that Mr. Edwards behaved honestly throughout his tenure as CFO. Mr. Edwards's lack of stock sales (and increased acquisitions of Merrill stock and options in 2007 after Plaintiff conclusorily alleges he became aware of Merrill's unsoundness by the end of 2006), Merrill's inability to escape the industry-wide credit

crisis, and Mr. Edwards's participation in Merrill's voluntary early announcement of losses

stemming from that crisis suggest a CFO who honestly reacted to events as they unfolded, rather

than one who abdicated his business judgment.  It is highly implausible to infer from these same

facts that Mr. Edwards risked his career and his personal finances by nefariously concealing

Merrill's AAA CDO problems for a few months, only to disclose those problems without

pressure and before virtually all other companies did.  Indeed, if executives like Mr. Edwards

had anticipated problems with AAA CDOs as early as Plaintiff implausibly suggests, they

"presumably would have been . . . taking positions that would have produced a return when the

value of subprime securities dropped."  In re Citigroup Inc. Shareholder Derivative Litig., 964

A.2d 106, 131 n.78 (Del. Ch. Ct. 2009) (rejecting Delaware law claims similar to those here).

Because Plaintiff has not alleged facts plausibly suggesting an essential element of its Delaware

derivative claims against Mr. Edwards, all of those claims should be dismissed.

   Plaintiff's claim for contribution and indemnity should be dismissed for an

additional reason.  Plaintiff alleges only derivative claims on behalf of Merrill as the real plaintiff

against Mr. Edwards.  A contribution or indemnity claim requires that the party suing and the

party sued share "a common liability" to another plaintiff.  David B. Lilly Co. v. Fisher, 18 F.3d

1112, 1123 (3d Cir. 1994).  Because contribution and indemnity claims must satisfy Rule 8, see

Sequential Info. Sys., Inc. v. Nat'l Westminster Bank USA, No. 91 CIV. 3619, 1995 WL

575293, at *2-3 (S.D.N.Y. Sept. 28, 1995) (dismissing such claims for "failure to allege facts in

support" of them), the pleading of such claims must satisfy Twombly and Iqbal.  Thus, Plaintiff

should have alleged factual support for all the elements of the purported common liability,

including:  (a) who is the other plaintiff to whom both Mr. Edwards and Merrill are liable; (b)

what is the common claim against Mr. Edwards and Merrill for which they are liable to this other

plaintiff; and (c) <u>factual content</u> supporting all the elements necessary for both Mr. Edwards and Merrill to be liable to this other plaintiff for the common claim. The Third Amended Complaint does not even attempt to do this, and thus its claim for contribution and indemnity should be dismissed.

## CONCLUSION

Neither federal nor Delaware law, nor fundamental fairness, allows an individual defendant to be dragged into a lawsuit based on conclusory inferences drawn from his or her being an officer of a corporation during a period of economic crisis and substantial losses. But that is all that the Third Amended Complaint alleges against Mr. Edwards. For the foregoing reasons and the reasons stated in the motions to dismiss of BofA, the Merrill Director Defendants, and the other individual defendants, the Court should dismiss the Complaint against Mr. Edwards. Dismissal should be with prejudice, as Plaintiff has already had four opportunities to state a claim against Mr. Edwards for widely-reported events occurring more than two years ago.

Dated: New York, New York
       September 21, 2009

                              Respectfully submitted,

                              WILLKIE FARR & GALLAGHER LLP


                              __/s/ Michael R. Young_____
                              Richard D. Bernstein (rbernstein@willkie.com)
                              Michael R. Young (myoung@willkie.com)
                              Frank M. Scaduto (fscaduto@willkie.com)
                              787 Seventh Avenue
                              New York, New York
                              (212) 728-8000

                              *Attorneys for Defendant Jeffrey N. Edwards*