UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                                        :
IN RE MERRILL LYNCH & CO., INC.                                         :   Master File No.:
SECURITIES, DERIVATIVE AND ERISA                                        :   07-CV-9633 (JSR)
LITIGATION                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                                        :
This Document Relates to: Derivative Action,                            :
07cv9696 (JSR) (DFE)                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

## MEMORANDUM OF LAW IN SUPPORT OF THE FORMER MERRILL LYNCH OUTSIDE DIRECTOR DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' VERIFIED THIRD AMENDED SHAREHOLDER DERIVATIVE AND CLASS ACTION COMPLAINT

CADWALADER, WICKERSHAM & TAFT LLP
Dennis J. Block
Gregory A. Markel
Jason M. Halper
One World Financial Center
New York, New York 10281
(212) 504-6000

Attorneys for Defendants Carol T. Christ, Armando M.
Codina, Virgis W. Colbert, Alberto Cribiore, John D.
Finnegan, Judith Mayhew Jonas, Aulana L. Peters,
Joseph W. Prueher, Ann N. Reese and Charles O.
Rossotti

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES.................................................................................... iii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ...................................................................................4

      A.    The Parties .........................................................................4

      B.    The Alleged Wrongdoing ................................................5

      C.    The Role Of The Merrill Board .......................................6

           1.    Merrill's Monitoring Systems And Controls ....................................6

           2.    The Challenged Transactions Approved By The Merrill Board ..........7

ARGUMENT .......................................................................................................7

POINT I     THE DUE CARE CLAIMS AGAINST MERRILL'S FORMER DIRECTORS SHOULD BE DISMISSED PURSUANT TO MERRILL'S CHARTER .............................................................................7

POINT II    THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM ...................................................9

      A.    The Complaint Does Not State A Claim For Breach Of Oversight..............10

      B.    The Complaint Does Not State A Claim For Aiding And Abetting A Breach Of Fiduciary Duty By The Former Merrill Outside Directors..........12

      C.    The Complaint Does Not State A Claim For Gross Mismanagement Or Abuse Of Control................................................................................13

      D.    The Complaint Does Not State A Claim For Corporate Waste....................13

           1.    Merrill's Investments In CDOs .......................................................14

           2.    The Benefits Received By Mr. O'Neal Upon His Retirement...........14

           3.    Merrill's Acquisition Of First Franklin And First Republic .............15

           4.    Bonuses Paid To Merrill Executives In December 2008...................16

           5.    The Stock Repurchase Plan.............................................................17

**PAGE**

E.     The Complaint Does Not State A Claim For Unjust Enrichment..................19

F.     The Complaint Does Not State A Section 10(b) Claim ...............................19

    1.     The Complaint Fails To Allege That Merrill Was Deceived............21

    2.     The Complaint Fails To Allege That Any Of The Former Merrill Outside Directors Made A False Or Misleading Statement......................................................................................22

    3.     The Complaint Fails To Plead With Particularity That The Former Merrill Outside Directors Acted With Scienter ...................23

G.     The Complaint Fails To State A Claim For Indemnification Or Contribution................................................................................................24

CONCLUSION ..........................................................................................................25

## TABLE OF AUTHORITIES

<u>PAGE(S)</u>

<u>CASES:</u>

Albert v. Alex Brown Mgmt. Servs., Inc.,
  2005 WL 2130607 (Del. Ch. Aug. 26, 2005)................................................................12

Ash v. McCall,
  2000 WL 1370341 (Del. Ch. Sept. 15, 2000).............................................................16

Ashcroft v. Iqbal,
  129 S. Ct. 1937 (2009) ..................................................................................................9

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
  493 F.3d 87 (2d Cir. 2007) ......................................................................................19-20

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)..................................................................................................3, 9

Brehm v. Eisner,
  746 A.2d 244 (Del. 2000)............................................................................................13

Coronel v. Quanta Capital Holdings Ltd.,
  2009 WL 174656 (S.D.N.Y. Jan. 26, 2009).........................................................23, 24

Criden v. Steinberg,
  2000 WL 354390 (Del. Ch. Mar. 23, 2000) ..............................................................13

David B. Lilly Co. v. Fisher,
  18 F.3d 1112 (3d Cir. 1994) .......................................................................................25

Debussy LLC v. Deutsche Bank AG,
  2006 WL 800956 (S.D.N.Y. Mar. 29, 2006), aff'd,
  242 Fed. Appx. 735 (2d Cir. 2007)..............................................................................9

Engel v. Sexton,
  2009 WL 361108 (E.D. La. Feb. 11, 2009)................................................................13

Fadem v. Ford Motor Co.,
  2003 WL 22227961 (S.D.N.Y. Sept. 25, 2003) ........................................................15

Freeman v. McKinnell (In re Pfizer Inc. Deriv. Sec. Litig.),
  307 Fed. Appx. 590 (2d Cir. 2009) (Summary Order)..................................................8

Funke v. Life Fin. Corp.,
  237 F. Supp. 2d 458 (S.D.N.Y. 2002)..........................................................................9

**PAGE(S)**

Ganino v. Citizens Utils. Co.,
 228 F.3d 154 (2d Cir. 2000) ...........................................................................20

Guttman v. Huang,
 823 A.2d 492 (Del. Ch. 2003) .................................................................10, 11

Halpert Enters., Inc. v. Harrison,
 362 F. Supp. 2d 426 (S.D.N.Y. 2005)..................................................................11

In re Bristol-Myers Squibb Sec. Litig.,
 312 F. Supp. 2d 549 (S.D.N.Y. 2004)............................................................ 9-10

In re Caremark Int'l Inc. Deriv. Litig.,
 698 A.2d 959 (Del. Ch. 1996) .................................................................10, 11

In re Citigroup Inc. S'holders Litig.,
 2009 WL 2610746 (S.D.N.Y. Aug. 25, 2009)............................................ 18, 21, 22

In re Citigroup Inc. S'holder Deriv. Litig.,
 964 A.2d 106 (Del. Ch. 2009) ...........................................................................18

In re Cree, Inc. Sec. Litig.,
 333 F. Supp. 2d 461 (M.D.N.C. 2004)..............................................................22

In re Cross Media Mktg. Corp. Sec. Litig.,
 314 F. Supp. 2d 256 (S.D.N.Y. 2004)..............................................................22

In re E.F. Hutton Banking Pracs. Litig.,
 634 F. Supp. 265 (S.D.N.Y. 1986).....................................................................19

In re Evergreen Mut. Funds Fee Litig.,
 423 F. Supp. 2d 249 (S.D.N.Y. 2006)................................................................10

In re Gildan Activewear, Inc. Sec. Litig.,
 2009 WL 1919618 (S.D.N.Y. July 1, 2009).....................................................23, 24

In re Merrill Lynch & Co. Sec., Deriv. & ERISA Litig.,
 597 F. Supp. 2d 427 (S.D.N.Y. 2009)............................................................1, 17

In re Walt Disney Co. Deriv. Litig.,
 731 A.2d 342 (Del. Ch. 1998), aff'd in part, rev'd in part sub nom. on other grounds
 Brehm v. Eisner, 746 A.2d 244 (Del. 2000).........................................................17

In re Zoran Corp. Deriv. Litig.,
 511 F. Supp. 2d 986 (N.D. Cal. 2007) ...........................................................12, 13

iv

**PAGE(S)**

Kalnit v. Eichler,
    264 F.3d 131 (2d Cir. 2001) ...........................................................................23

Kamen v. Kemper Fin. Servs., Inc.,
    500 U.S. 90 (1991)...........................................................................................2

Laties v. Wise,
    2005 WL 3501709 (Del. Ch. Dec. 14, 2005) ...............................................8

Lemond v. Manzulli,
    2009 WL 1269840 (E.D.N.Y. Feb. 9, 2009) ..........................................2, 8

Levine v. Smith,
    591 A.2d 194 (Del. 1991).............................................................................16

Lewis v. Vogelstein,
    699 A.2d 327 (Del. Ch. 1997) .............................................................13, 16

Logicom Inclusive, Inc. v. W.P. Stewart & Co.,
    2004 WL 1781009 (S.D.N.Y. Aug. 10, 2004)..............................................3

Makor Issues & Rts., Ltd. v. Tellabs, Inc.,
    437 F.3d 588 (7th Cir. 2006), vacated on other grounds,
    551 U.S. 308 (2007)......................................................................................22

Maldonado v. Flynn,
    597 F.2d 789 (2d Cir. 1979) ...................................................................21, 22

Malpiede v. Townson,
    780 A.2d 1075 (Del. 2001)............................................................................8

McGowan v. Ferro,
    2002 WL 77712 (Del. Ch. Jan. 11, 2002) ................................................12

Midland Grange No. 27 Patrons of Husbandry v. Walls,
    2008 WL 616239 (Del. Ch. Feb. 28, 2008)...............................................12

Novak v. Kasaks,
    213 F.3d 300 (2d Cir.), cert. denied,
    531 U.S. 1012 (2000).....................................................................20, 22, 23

Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins,
    2004 WL 1949290 (Del. Ch. Aug. 24, 2004)........................................13, 17

Pall v. KPMG, LLP,
    2006 WL 2800064 (D. Conn. Sept. 26, 2006)........................................24-25

**PAGE(S)**

Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.),
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)........................................................................10

Schlaeppi v. Delaware Trust Co.,
    525 A.2d 562 (Del. Ch. 1986), aff'd,
    523 A.2d 981 (Del), cert. denied,
    484 U.S. 826 (1987)......................................................................................................2

Shields v. Citytrust Bancorp, Inc.,
    25 F.3d 1124 (2d Cir. 1994) .......................................................................................23

Silverzweig v. Unocal Corp.,
    1989 WL 3231 (Del. Ch. Jan. 19), aff'd,
    561 A.2d 993 (Del. 1989)...........................................................................................19

Sinclair Oil Corp. v. Levien,
    280 A.2d 717 (Del. 1971)...........................................................................................16

Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,
    365 F.3d 353 (5th Cir. 2004)......................................................................................22

Steinberg v. Ericcson LM Tel. Co.,
    2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008)...........................................................24

Stone ex rel. AmSouth Bancorp. v. Ritter,
    911 A.2d 362 (Del. 2006)......................................................................................10, 12

Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,
    531 F.3d 190 (2d Cir. 2008) ..................................................................................23-24

Tellabs, Inc. v. Makor Issues & Rts., Ltd.,
    551 U.S. 308 (2007)....................................................................................... 20, 23, 24

Total Care Physicians, P.A. v. O'Hara,
    2002 WL 31667901 (Del. Super. Ct. Oct. 29, 2002) .................................................19

Wagner v. Selinger,
    2000 WL 85318 (Del. Ch. Jan. 18, 2000) .................................................................13

White v. Panic,
    783 A.2d 543 (Del. 2001)...........................................................................................17

Winer Family Trust v. Queen,
    503 F.3d 319 (3d Cir. 2007) .......................................................................................22

**PAGE(S)**

Wood v. Baum,
    953 A.2d 136 (Del. 2008)........................................................................................11, 16

Zupnick v. Goizueta,
    698 A.2d 384 (Del. Ch. 1997) .................................................................................17

**STATUTUES & OTHER AUTHORITIES:**

15 U.S.C.:
    § 78u-4(b)(1)..........................................................................................................20
    § 78u-4(b)(2)..........................................................................................................20

Del. Code Ann. tit. 8, § 102(b)(7) .................................................................................8

Jennifer E. Bethel et al.,
    Law & Economic Issues in Subprime Litigation (John M. Olin Ctr. for Law, Econ. &
    Bus., Harv. Univ. Mar. 2008), available at
    http://www.law.harvard.edu/programs/olin_center/papers/pdf/Ferrell_et_al_612.pdf .................5

John C. Dugan, Comptroller of the Currency,
    Remarks before the Global Ass'n of Risk Professionals (Feb. 27, 2008), available at
    http://www.occ.treas.gov/ftp/release/2008-22a.pdf ....................................................5

Defendants Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, and Charles O. Rossotti (collectively, the "Former Merrill Outside Directors"), respectfully submit this memorandum of law, the Declaration of Jason M. Halper, dated September 21, 2009 (the "Halper Decl."), and the exhibits attached thereto, in support of their motion to dismiss Plaintiffs' Verified Third Amended Shareholder Derivative and Class Action Complaint (the "Complaint" or "Compl.").

## PRELIMINARY STATEMENT

In this fourth iteration of Plaintiffs' complaint, now purportedly brought on behalf of both Merrill Lynch & Co., Inc. ("Merrill") and Bank of America Corporation ("BofA"), Plaintiffs seek to turn the Former Merrill Outside Directors – each of whom was an outside, non-employee director when this suit was commenced in 2007 – into guarantors of Merrill's financial performance during troubled economic times.[1]  Since the onset of the global financial crisis in August 2007, when credit markets suddenly froze, virtually every major financial institution has either lost billions of dollars, dramatically changed its form, or both.  Lehman Brothers went bankrupt.  AIG, Fannie Mae and Freddie Mac were effectively nationalized.  A failing Bear Stearns agreed to be acquired by JPMorgan Chase, which soon thereafter similarly acquired financially imperiled Washington Mutual, and Wells Fargo bailed out a distressed Wachovia Bank.  Not surprisingly, Merrill was not immune from these forces.  In response, Merrill merged with BofA, creating the world's leading financial institution.  Instead of recognizing the efforts of the Former Merrill Outside Directors to weather this crisis, Plaintiffs have brought derivative and direct claims against these individuals, as well as John A. Thain, E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards (collectively, the "Former Merrill

---

[1]    On February 17, 2009, this Court dismissed the derivative claims in Plaintiffs' second amended complaint, holding that in light of the merger with BofA, in which Merrill stockholders exchanged their Merrill stock for BofA shares, Plaintiffs no longer were Merrill shareholders and thus did not have standing to assert derivative claims on Merrill's behalf.  See In re Merrill Lynch & Co. Sec., Deriv. & ERISA Litig., 597 F. Supp. 2d 427, 431 (S.D.N.Y. 2009).

1

Officers," and together with the Former Merrill Outside Directors, the "Merrill Defendants"), based on conclusory allegations of wrongdoing devoid of any factual support.

Plaintiffs assert "double derivative" claims on behalf of Merrill and BofA (Counts I through VIII, and XI and XII), including claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), seeking in effect to make the Merrill Defendants personal guarantors of the financial performance of Merrill during this unprecedented financial crisis.[2] These claims generally assert that the Merrill Defendants committed breach of fiduciary duty by permitting Merrill to underwrite and invest in subprime mortgage securities.[3] Plaintiffs also assert a direct class action claim against the Former Merrill Outside Directors and Mr. Thain for allegedly breaching fiduciary duties (and against BofA for aiding and abetting that breach) in connection with approving the Merrill-BofA merger (Counts XIII and XIV).[4] Finally, Plaintiffs assert "double derivative claims" against certain Former Merrill Officers for alleged insider trading (Counts IX and X), and direct class action claims against certain Former Merrill Officers for fraud based on public statements regarding Merrill's prospects (Counts XV through XVII).

---

[2]    BofA and Merrill are submitting separate briefs addressing Plaintiffs' lack of standing to pursue "double derivative" claims for failing, as required by Fed. R. Civ. P. 23.1 and Delaware law, to either make a pre-suit demand on the respective Boards of Merrill and BofA or plead particularized facts demonstrating that such a demand is excused as futile. These arguments are adopted by the Former Merrill Outside Directors and incorporated by reference herein.

[3]    It is well settled that issues concerning corporate governance, including claims brought by shareholders against directors for breach of fiduciary duty, are governed by the law of the state where the corporation is chartered. See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 98-99 (1991); Lemond v. Manzulli, 2009 WL 1269840, at *4 (E.D.N.Y. Feb. 9, 2009). Here, Delaware law applies because Merrill is incorporated under Delaware law. (Compl. ¶ 35.)

[4]    As conceded in Plaintiffs' letter to the Court, dated July 27, 2009, these merger-related claims were subject to a proposed settlement then pending in the Delaware Court of Chancery. See Halper Decl., Ex. 1 (Stipulation of Settlement, dated June 12, 2009, in the action captioned County of York Employees Retirement Plan v. Merrill Lynch & Co.). That proposed settlement was subsequently approved by Vice-Chancellor Noble in an Order and Judgment dated August 31, 2009. See Halper Decl., Ex. 2 (Order and Final Judgment, dated Aug. 31, 2009). As a result, Plaintiffs' merger related claims are "permanently barred" and must be dismissed. See Schlaeppi v. Delaware Trust Co., 525 A.2d 562, 565-66 (Del. Ch. 1986) (claim raised by the same plaintiffs in a prior suit and compromised by judicially approved settlement barred by doctrine of res judicata), aff'd, 523 A.2d 981 (Del), cert. denied, 484 U.S. 826 (1987).

The conclusory allegations in the Complaint fail to state a claim against the Former Merrill Outside Directors, and the Complaint must be dismissed as to these defendants as a matter of law under Fed. R. Civ. P. 12(b)(6), for the following reasons:

First, the due care claims against the Former Merrill Outside Directors (for breach of fiduciary duty, aiding and abetting that breach, gross mismanagement and abuse of control) are barred by Merrill's Certificate of Incorporation. Merrill's shareholders, acting pursuant to Section 102(b)(7) of the Delaware General Corporation Law, voted to amend Merrill's charter in 1987 to eliminate the liability of Merrill's directors to Merrill or its shareholders to the fullest extent permitted by Delaware law. See Declaration of Jay B. Kasner in Support of the Merrill Defendants' Motions to Dismiss the Consolidated Amended Complaints, previously submitted in this action on July 18, 2008 (Docket No. 17, Master Docket No. 55, the "Kasner Decl."), Ex. SS (Merrill Restated Certificate of Incorporation, dated May 3, 2001), Art. XIII.[5] As a result, Merrill's shareholders eliminated the liability of Merrill's directors for duty of care claims (i.e., claims that sound in negligence or gross negligence) – which, at best, describe the claims asserted in the Complaint.[6] See Point I.

Second, as to the Former Merrill Outside Directors, the Complaint is nothing more than a series of conclusory statements and/or quotes from Merrill public filings which must be dismissed under Rule 12(b)(6). These conclusory allegations do not, as required by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), adequately plead "plausible" claims for breach

---

[5]   The Court may take judicial notice of a certificate of incorporation and other documents filed with the Securities and Exchange Commission. See Logicom Inclusive, Inc. v. W.P. Stewart & Co., 2004 WL 1781009, at **1, 3-4 (S.D.N.Y. Aug. 10, 2004).

[6]   The version of Merrill's charter that was operative when this action was commenced provided: "Neither the amendment nor repeal of this Section 1, nor the adoption of any provision of the Certificate of Incorporation inconsistent with this Section 1, shall eliminate or reduce the effect of this Section 1, in respect of any matter occurring, or any cause of action, suit or claim that, but for this Section 1, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision." See Kasner Decl., Ex. SS, Art. XIII, Section 1(b). While Merrill's charter was amended in connection with the BofA merger, Article XIII was not changed. See Halper Decl., Ex. 3 (Merrill Report on Form 8-K, dated January 2, 2009), Item 5.03.

of fiduciary duty, aiding and abetting such a breach, gross mismanagement, abuse of control, waste or unjust enrichment. Given that they fail even under the more lenient pleading standard of Rule 8, these allegations plainly do not meet the heightened pleading requirements imposed by Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA") with respect to Plaintiffs' claim under Section 10(b) of the Exchange Act related to Merrill's repurchase of its own stock in April 2007 (the "Stock Repurchase Plan"). See Point II.

**STATEMENT OF FACTS**

**A.    The Parties**

Plaintiff Miriam Loveman purports to bring this double derivative action on behalf of both Merrill and BofA. (Compl. ¶ 3.)

The Former Merrill Outside Directors – Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti – are former members of Merrill's Board. (Compl. ¶¶ 45-54.)[7] John A. Thain and E. Stanley O'Neal are former directors and officers of Merrill, who were not Board members when these actions were commenced. (Id. ¶¶ 37-38.) Ahmass L. Fakahany, Gregory J. Fleming, and Jeffrey N. Edwards never served on the Merrill Board, but were Merrill officers during the events in dispute. (Id. ¶¶ 39-41.)

When these actions were filed in 2007, none of the Former Merrill Outside Directors was employed by Merrill. Rather, at that time: Ms. Christ was the President of Smith College; Mr. Codina was the President and CEO of Flagler Development Group; Mr. Colbert was a Senior Advisor to the Miller Brewing Company; Mr. Cribiore was the Founder and Managing Principal of Brera Capital Partners LLC; Mr. Finnegan was the Chairman and CEO of Chubb Corporation; Ms. Jonas was a well-regarded British solicitor; Mr. Prueher was a Consulting Professor at Stanford University and a former U.S. Ambassador to China; Ms. Reese was the Co-Founder and Co-Executive Director of the Center for Adoption Policy; Mr. Rossotti

---

[7]    Messrs. Colbert and Rossotti are current members of BofA's Board of Directors.

4

was a Senior Advisor to the Carlyle Group and a former Commissioner of Internal Revenue at the Internal Revenue Service; and Ms. Peters was a retired partner of Gibson, Dunn & Crutcher LLP, a former Commissioner of the Securities and Exchange Commission, and a member of the International Public Interest Oversight Board.  See Kasner Decl., Ex. KK (Merrill Lynch's 2008 Proxy Statement, dated March 14, 2008 (the "2008 Proxy")), at 6-9; Compl. ¶¶ 45-54.

Nominal defendant Merrill is Delaware corporation with its principal place of business in New York.  (Compl. ¶ 35.)  Merrill is now a wholly-owned subsidiary of BofA.  (Id.)  Nominal defendant BofA is a Delaware corporation with its principal place of business in North Carolina.  (Id. ¶ 36.)

## B.    The Alleged Wrongdoing

At the heart of Plaintiffs' claims lies their hindsight-based disagreement with Merrill having become a leading underwriter of collateralized debt obligations ("CDOs"). (Compl. ¶¶ 16-20.)  As a result of drastic changes in the housing and credit markets, Merrill's involvement in the CDO business now has turned out to be unprofitable, and Plaintiffs seek to hold former officers and directors of Merrill liable for those losses.  (Id. ¶¶ 21-22.)[8]

The Complaint acknowledges that prior to August 2007, the CDO business was "very profitable for investment banks . . ." and "a very lucrative business for this industry." (Compl. ¶ 122.)  While Plaintiffs label Merrill's underwriting of and investments in CDOs as "tremendously risky" (id. ¶ 89), there are no allegations indicating that any Merrill Defendants

---

[8]    CDOs are complex securities supported by other assets, such as mortgage-backed securities, which in turn are securities whose cash flows are supported by the payment of principal and interest on a pool of mortgages (including subprime mortgages).  See Jennifer E. Bethel et al., Law & Economic Issues in Subprime Litigation 12 (John M. Olin Ctr. for Law, Econ. & Bus., Harv. Univ. Mar. 2008), available at http://www.law.harvard.edu/programs/olin_center/papers/ pdf/Ferrell_et_al_612.pdf.  CDOs are divided into tranches with senior tranches having priority in terms of repayment.  (Compl. ¶ 99.)  Each tranche is rated by the three major rating agencies, with those receiving AAA ratings from Standard & Poor's Ratings Services or Fitch Ratings (or its equivalent Aaa from Moody's Investors Service) considered low-risk, low-yield securities. See John C. Dugan, Comptroller of the Currency, Remarks before the Global Ass'n of Risk Professionals 4 (Feb. 27, 2008), available at http://www.occ.treas.gov/ftp/release/2008-22a.pdf.

had knowledge concerning purported "excessive risk" associated with such securities, or that Merrill's risk management policies were inadequate. When the demand for CDOs started to slow, Merrill sold the high-risk, high return portions of CDOs, but continued to hold the safer, super-senior tranches of the CDOs, which had priority in terms of repayment and AAA ratings from S&P and Fitch (or an equivalent Aaa rating from Moody's). (Id. ¶¶ 112-13.) As Plaintiffs concede, "executives believed that so long as all they retained on their books were super-senior tranches, they would be shielded from falls in the prices of mortgage securities." (Id. ¶ 255.) Plaintiffs also concede that Merrill's strategy of retaining AAA rated super-senior securities was followed by many of its competitors. (Id. ¶ 236.)

Starting in August 2007, "[a]mid a steep decline in house prices and rising defaults on mortgage loans, the value of subprime-backed securities went into a free fall." (Compl. ¶ 236.) Independent rating agencies "called the subprime deterioration unprecedented and unexpectedly rapid." (Id.) On October 5, 2007, in a pre-release estimate of third-quarter earnings, Merrill announced that, as a result of the downturn in the subprime mortgage market, it expected third quarter results to include write-downs of an estimated incremental $4.5 billion related to CDOs and subprime mortgages. (Id. ¶ 198.) On October 24, 2007, Merrill announced that earnings for the third quarter would include write-downs of $7.9 billion across CDOs and U.S. subprime mortgages. (Id. ¶ 203.) As market conditions continued to worsen, on January 17, 2008, Merrill released year-end 2007 financial statements, which included $23.2 billion in write-downs from CDO and subprime exposure. (Id. ¶ 237.)

**C.    The Role Of The Merrill Board**

Notably absent from the Complaint are anything more than conclusory allegations regarding the participation or knowledge of the Former Merrill Outside Directors in the conduct and/or transactions challenged by the Plaintiffs in this action. The few specific facts alleged in the Complaint actually demonstrate that the Board was discharging its duties appropriately.

**1.    Merrill's Monitoring Systems And Controls**

Although Plaintiffs primarily assert claims against the Former Merrill Outside

Directors for alleged failures of risk management and financial reporting, the Complaint acknowledges the extensive monitoring controls at Merrill in both of these areas. The Merrill Board carried out oversight of Merrill's exposure to market and credit risk through a four-member Finance Committee, which oversaw Merrill's investments, financial and operating plan, balance sheet and capital management, and credit and market risk. (Compl. ¶ 333.) The Finance Committee was required to meet three times per year, and met twelve times in 2007. See id. ¶ 334; see also Kasner Decl., Ex. KK (2008 Proxy) at 18. The Board's Audit Committee exercised oversight related to preparation of the Company's financial statements. (Compl. ¶ 339.) The four-member Audit Committee was required to meet six times per year, and met eleven times in 2007. (Id. ¶ 340; see also Kasner Decl., Ex. KK (2008 Proxy) at 17). The Audit Committee regularly communicated with internal auditors and the Company's independent auditors at Deloitte & Touche, LLP, both with and without management present, on the results of their audits and the overall quality of the Company's financial reporting and internal controls. See Compl. ¶¶ 340-41; Kasner Decl., Ex. KK (2008 Proxy) at 17, 21.

### 2.    **The Challenged Transactions Approved By The Merrill Board**

The Complaint also alleges that the Merrill Defendants breached their fiduciary duties and/or wasted Merrill corporate assets by: (i) authorizing Merrill's acquisition of mortgage originator First Franklin in December 2006; (ii) authorizing the buyback of approximately $6 billion of Merrill stock in April 2007; (iii) "vot[ing] to give O'Neal a retirement package worth $161 million"; and (iv) approving certain bonus compensation in December 2008.

### ARGUMENT

### POINT I

### THE DUE CARE CLAIMS AGAINST MERRILL'S FORMER DIRECTORS SHOULD BE DISMISSED PURSUANT TO MERRILL'S CHARTER

The claims against the Former Merrill Outside Directors for breach of fiduciary duty, aiding and abetting that breach, gross mismanagement and abuse of control should be dismissed because Merrill's Restated Certificate of Incorporation eliminated the possibility of

director personal liability in cases such as this one.  Section 102(b)(7) of the Delaware General Corporation Law permits shareholders to adopt certificate of incorporation provisions "eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director," with the exception of liability (i) for breach of the director's "duty of loyalty to the corporation or its stockholders," (ii) for "acts or omissions not in good faith," or that "involve intentional misconduct or a knowing violation of law," (iii) under Del. Gen. Corp. Law § 174, which prohibits unlawful payments of dividends and unlawful stock purchases and redemptions, and (iv) for "any transaction from which the director derived an improper personal benefit."  Del. Code Ann. tit. 8, § 102(b)(7). Merrill's shareholders voted to amend Merrill's charter in 1987 to provide Merrill's directors with the full statutory protection.  See Kasner Decl., Ex. SS (Merrill Restated Certificate of Incorporation, dated May 3, 2001) Art. XIII.

Delaware courts repeatedly have held that where a certificate of incorporation provision eliminates director liability for breaches of fiduciary duty pursuant to Section 102(b)(7), a complaint alleging breach of fiduciary duty that does not implicate any of the four exceptions must be dismissed.  See, e.g., Malpiede v. Townson, 780 A.2d 1075, 1092-93 (Del. 2001); Laties v. Wise, 2005 WL 3501709, at *2 (Del. Ch. Dec. 14, 2005) (dismissing complaint pursuant to Section 102(b)(7) chart provision where complaint did not plead statutory exception); Lemond, 2009 WL 1269840, at *5 (applying Delaware law and dismissing duty of care claims pursuant to Section 102(b)(7) charter provision); Freeman v. McKinnell (In re Pfizer Inc. Deriv. Sec. Litig.), 307 Fed. Appx. 590, 593 (2d Cir. 2009) (Summary Order) (Section 102(b)(7) charter provision "sets a higher threshold for the plaintiffs, because pleading a substantial likelihood of personal liability for a breach of good faith or the duty of loyalty requires the plaintiffs to allege different, and more culpable, conduct than necessary for a breach of the duty of care").

Here, a breach of the duty of good faith is pled only in the most conclusory terms, with no facts alleged demonstrating that any Former Merrill Outside Director breached such a duty.  While the Complaint vaguely pleads that certain of Merrill's former directors were "aware

of the increased risks to Merrill Lynch's subprime investments (which were not only known within the Company, but which were public knowledge by early 2007) and consciously disregarded these risks and failed to carry out their fiduciary duties to manage such risks" (compl. ¶ 352), it is devoid of any specific facts supporting these allegations. Rather, the Complaint merely speculates that the members of the Merrill Board's Audit and Finance Committees "must have known" of these risks and ignored them.

The Complaint similarly fails to plead that any of the Former Merrill Outside Directors sold Merrill stock on the basis of non-public information or engaged in any other form of self-dealing that would constitute a breach of the duty of loyalty. Because Plaintiffs' allegations are insufficient to plausibly plead a breach of the duty of loyalty or good faith, the claims against the Former Outside Directors for breach of fiduciary duty, aiding and abetting such a breach, gross mismanagement, and abuse of control must be dismissed as a matter of law.

### POINT II

### THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

Following the United States Supreme Court's decision in <u>Twombly</u>, a plaintiff does not adequately plead a claim for relief by merely alleging a "conceivable" basis for that claim. 550 U.S. at 570. Rather, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss pursuant to Rule 12(b)(6). <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory allegations, do not suffice." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).

When deciding a motion to dismiss, the Court must accept as true all well-pled allegations in the Complaint. <u>See</u> <u>Funke v. Life Fin. Corp.</u>, 237 F. Supp. 2d 458, 465 (S.D.N.Y. 2002); <u>Debussy LLC v. Deutsche Bank AG</u>, 2006 WL 800956, at *2 (S.D.N.Y. Mar. 29, 2006), <u>aff'd</u>, 242 Fed. Appx. 735 (2d Cir. 2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Ashcroft</u>, 129 S. Ct. at 1950; <u>see also</u> <u>In re Bristol-Myers Squibb Sec. Litig.</u>, 312 F. Supp. 2d 549, 555

(S.D.N.Y. 2004) (same). Moreover, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.), 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001); see also In re Evergreen Mut. Funds Fee Litig., 423 F. Supp. 2d 249, 255 (S.D.N.Y. 2006) (same).

## A.   The Complaint Does Not State A Claim For Breach Of Oversight

Claims for breach of the duty of oversight are governed by the standard set forth in In re Caremark International Inc. Derivative Litigation, 698 A.2d 959 (Del. Ch. 1996):

> Generally where a claim of directorial liability for corporate loss is predicated upon ignorance of liability creating activities within the corporation . . . only a sustained or systematic failure of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable information and reporting system exits – will establish the lack of good faith that is a necessary condition to liability. Such a test of liability – lack of good faith as evidenced by sustained or systematic failure of a director to exercise reasonable oversight – is quite high.

Id. at 971. Caremark establishes "a standard for liability for failures of oversight that requires a showing that the directors breached their duty of loyalty by failing to attend to their duties in good faith. Put otherwise, the decision premises liability on a showing that the directors were conscious of the fact that they were not doing their jobs." Guttman v. Huang, 823 A.2d 492, 506 (Del. Ch. 2003). The Delaware Supreme Court has explained that a Caremark claim "draws heavily upon the concept of director failure to act in good faith." Stone ex rel. AmSouth Bancorp. v. Ritter, 911 A.2d 362, 369 (Del. 2006) ("AmSouth"). The AmSouth court held that in order to plead a Caremark claim, a complaint must allege that:

> (a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention. In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations.

Id. at 370 (emphasis added; original emphasis omitted).

The Complaint contains no allegations, particularized or otherwise, that could

satisfy either method of pleading a <u>Caremark</u> claim.  First, the Complaint does not allege "an utter failure to attempt" to put a monitoring system in place.  Instead, the Complaint describes rigorous monitoring functions implemented by Merrill's Board.  The Complaint pleads, for instance, that the Board tasked its Audit Committee with ensuring the integrity of Merrill's financial statements (<u>see</u> Compl. ¶¶ 338-39), and its Finance Committee with overseeing Merrill's credit and market risk management policies and procedures.  (<u>Id.</u> ¶¶ 333-35.) Moreover, the Complaint concedes that the Audit Committee was required to meet six times per year and met eleven times in 2007 (<u>see</u> <u>id.</u> ¶ 340; Kasner Decl., Ex. KK (2008 Proxy) at 17), and the Finance Committee was required to meet three times per year and met twelve times in 2007 (<u>see</u> Compl. ¶ 334; Kasner Decl., Ex. KK (2008 Proxy) at 18).  The Complaint thus pleads that Merrill had monitoring systems in place, and Delaware law does not allow shareholder plaintiffs to second guess directors' business judgment about the type of systems and controls needed.  <u>See</u> <u>In re Caremark</u>, 698 A.2d at 970 ("Obviously the level of detail that is appropriate for [a corporate reporting and] information system is a question of business judgment" not subject to second guessing by shareholder plaintiffs); <u>Guttman</u>, 823 A.2d at 506-07 (same).

Second, Plaintiffs have not alleged particularized facts demonstrating that the Former Outside Directors knowingly failed to monitor information generated by Merrill's controls or consciously ignored "red flags" of wrongdoing.  Rather, "the complaint does not plead a single fact suggesting specific red – or even yellow – flags were waved at the outside directors." <u>Guttman</u>, 823 A.2d at 507.  Delaware courts have emphasized that  "red flags" "'are only useful when they are either waved in one's face or displayed so that they are visible to the careful observer.'"  <u>Wood v. Baum</u>, 953 A.2d 136, 143 (Del. 2008) (citation omitted).[9]

Here, the Complaint pleads that Merrill suffered adverse business developments,

---

[9]    <u>See also</u> <u>Halpert Enters., Inc. v. Harrison</u>, 362 F. Supp. 2d 426, 432-33 (S.D.N.Y. 2005) (dismissing oversight claims where complaint "never, except with conclusory allegations, conveys that the scheme occurred with the Board's knowledge or systemic failure to engage in proper oversight," and plaintiff "offered no specific allegations suggesting that the directors knew of the nature of JPM Chase's dealings with Enron, or that they disregarded 'red flags'").

not that the Former Merrill Outside Directors knowingly failed to discharge their fiduciary obligations.  The Delaware Supreme Court emphasized this distinction in <u>AmSouth</u>:

> [W]ith the benefit of hindsight, the plaintiffs' complaint seeks to equate a bad outcome with bad faith.  The lacuna in the plaintiffs argument is a failure to recognize that the directors' good faith exercise of oversight responsibility may not invariably prevent employees from violating criminal laws, or from causing the corporation to incur significant financial liability, or both.

911 A.2d at 373.  Because the Complaint is devoid of allegations suggesting that Merrill lacked reporting systems and controls (and in fact pleads the opposite) or that the Former Outside Directors ignored "red flags" of wrongdoing, Plaintiffs' oversight claims must be dismissed.

**B.     The Complaint Does Not State A Claim For Aiding And Abetting A Breach Of Fiduciary Duty By The Former Merrill Outside Directors**

In order to adequately plead a claim for aiding and abetting a breach of fiduciary duty, a complaint must allege, among other things, knowing participation in that breach "by a defendant who is <u>not a fiduciary</u>."  <u>McGowan v. Ferro</u>, 2002 WL 77712, at *2 (Del. Ch. Jan. 11, 2002) (emphasis added).  This claim "holds a third party, <u>not a fiduciary</u>, responsible for a violation of fiduciary duty."  <u>Albert v. Alex Brown Mgmt. Servs., Inc.</u>, 2005 WL 2130607, at *11 (Del. Ch. Aug. 26, 2005) (emphasis added); <u>see</u> <u>In re Zoran Corp. Deriv. Litig.</u>, 511 F. Supp. 2d 986, 1018 (N.D. Cal. 2007) (dismissing aiding and abetting claim where "Plaintiff has not pled the existence of a defendant who is not already a fiduciary").

The Complaint asserts that all of the Former Merrill Outside Directors owed fiduciary duties to Merrill's shareholders.  (Compl. ¶¶ 9, 392, 417, 445.)  As a result, they cannot be liable under an aiding and abetting theory.  In addition, Plaintiffs' aiding and abetting claim must be dismissed because, as demonstrated above (<u>see</u> Point II.A, <u>supra</u>), there is no underlying breach of fiduciary duty.  <u>See</u> <u>Midland Grange No. 27 Patrons of Husbandry v. Walls</u>, 2008 WL 616239, at *12 (Del. Ch. Feb. 28, 2008) ("Because the Court has concluded that the Officer Respondents did not breach their fiduciary duties, [plaintiff] cannot, as a matter of law, prevail on its aiding and abetting claim").

**C.    The Complaint Does Not State A Claim For Gross Mismanagement Or Abuse Of Control**

Delaware law does not recognize an independent cause of action for gross mismanagement or abuse of control separate from a breach of fiduciary duty claim. See In re Zoran, 511 F. Supp. 2d at 1019 (dismissing claims for gross mismanagement and abuse of control under Delaware law because "these claims are often considered a repackaging of claims for breach of fiduciary duties instead of being a separate tort"); Engel v. Sexton, 2009 WL 361108, at *15 (E.D. La. Feb. 11, 2009) (same).

**D.    The Complaint Does Not State A Claim For Corporate Waste**

In order to state a claim for corporate waste a complaint must plead an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade. See Brehm v. Eisner, 746 A.2d 244, 263 (Del. 2000); Criden v. Steinberg, 2000 WL 354390, at *3 (Del. Ch. Mar. 23, 2000) (plaintiff "must allege facts that, if true, establish that the defendant directors 'authorize[d] an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration'") (citation omitted); Wagner v. Selinger, 2000 WL 85318, at *3 (Del. Ch. Jan. 18, 2000) (to plead waste the transfer in question "must either serve no corporate purpose or be so completely bereft of consideration that the 'transfer is in effect a gift'") (citation omitted). As explained by the Delaware Court of Chancery:

> Most often the claim [for waste] is associated with a transfer of corporate assets that serves no corporate purpose; or for which no consideration at all is received. Such a transfer is in effect a gift. If, however, there is any substantial consideration received by the corporation, and if there is a good faith judgment that in the circumstances the transaction is worthwhile, there should be no finding of waste, even if the fact finder would conclude ex post that the transaction was unreasonably risky. Any other rule would deter corporate boards from the optimal rational acceptance of risk.

Lewis v. Vogelstein, 699 A.2d 327, 336 (Del. Ch. 1997) (emphasis omitted). "Waste is a standard rarely satisfied in Delaware courts." Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins, 2004 WL 1949290, at *17 (Del. Ch. Aug. 24, 2004); see also Criden, 2000 WL 354390, at *3 (same).

13

1.     <u>Merrill's Investments In CDOs</u>

The Complaint alleges that "O'Neal and the Merrill Director Defendants' failure to adequately evaluate and monitor Merrill Lynch's risk in the CDO market constituted a waste of Merrill Lynch's corporate assets." (Compl. ¶ 422.)  These allegations fail under the stringent standard established by Delaware law.  Plaintiffs do not assert that the CDOs and other subprime related securities purchased by Merrill had no value at the time they were purchased.  To the contrary, the Complaint affirmatively alleges these investments were profitable for many years. The Complaint then asserts that there were risks associated with these investments, and that the value of these assets declined over time as borrowers defaulted on their mortgages.  Such allegations plainly fail to plead that these transactions were "bereft of consideration."

2.     <u>The Benefits Received By Mr. O'Neal Upon His Retirement</u>

The Complaint also asserts that "the Merrill Director Defendants committed corporate waste by authorizing and approving O'Neal's exorbitant severance package" because "[t]here was no consideration" for that package.  (Compl. ¶ 423.)  Contrary to this allegation, Merrill's Board did not "vote[] to give Mr. O'Neal a retirement package worth $161 million." (Compl. ¶ 362.)  Rather, the Merrill Board simply recognized that Mr. O'Neal's departure from Merrill qualified as a retirement.  <u>See</u> Kasner Decl., Ex. EE (Merrill Report on Form 8-K, dated Oct. 30, 2007).  At hearings before the U.S. House of Representatives' Committee on Oversight and Government Reform (the "Committee"), John Finnegan (then Chairman of the Merrill Board's Compensation Committee) stated: "[a]side from his base salary, anything else retained by Mr. O'Neal at his departure had been earned and awarded to him in prior years.  <u>The amount disclosed in our public filings and highlighted by the media at the time of his departure relates entirely to compensation and benefits that he earned over the course of his career, and in all events, prior to his separation from the Company</u>."  <u>See</u> Kasner Decl., Ex. E (Statement of John Finnegan before the House Committee on Oversight and Government Reform, Mar. 7, 2008)

(emphasis added).[10]

      In connection with his departure from Merrill, the Complaint alleges that Mr. O'Neal received only two "new" benefits: (i) a reduction in the length of his existing non-compete agreement; and (ii) the use of office space and an executive assistant for a period of three years. (Compl. ¶ 362.) While Plaintiffs assert that Merrill did not receive consideration in exchange for awarding these benefits, Merrill's Form 8-K states that Merrill received concessions from Mr. O'Neal: (i) an agreement not to seek bonus compensation for the 2007 fiscal year (Mr. O'Neal received an $18.5 million cash bonus for fiscal 2006, as well as over $26 million in Merrill stock (see Kasner Decl., Ex. JJ (Merrill Lynch 2007 Proxy Statement, dated Mar. 16, 2007) at 46); and (ii) waiver of the right to six months base compensation under Article 1(A) of his existing non-compete agreement (Mr. O'Neal's base compensation for 2006 was $700,000). See Kasner Decl., Ex. EE (Merrill Form 8-K, dated Oct. 30, 2007).[11] Because Merrill received such consideration, Plaintiffs' conclusory allegations fail to meet the stringent Delaware standard for pleading a claim of corporate waste.

### 3.     Merrill's Acquisition Of First Franklin And First Republic

      The Complaint asserts that Mr. O'Neal and "the Merrill Director Defendants also committed corporate waste by authorizing and approving the acquisitions of First Franklin and First Republic at a time when they knew such companies' assets were significantly overvalued and needed to be materially written down." (Compl. ¶ 424.) The Complaint does not allege that Merrill received "no consideration" when it acquired First Franklin in December 2006. Rather,

---

[10]  The Court may take judicial notice of this testimony because the hearing before the Committee, at which Mr. Finnegan provided this testimony, and the Committee's Memorandum are referred to in the Complaint. See Compl. ¶ 362; Fadem v. Ford Motor Co., 2003 WL 22227961, at *2 (S.D.N.Y. Sept. 25, 2003).

[11]  On or about September 17, 2004, Mr. O'Neal entered into an agreement with Merrill that, among other things, required Mr. O'Neal to give six months advance written notice prior to terminating his employment. See Kasner Decl., Ex. BB (Merrill Report on Form 8-K, dated Sept. 17, 2004), at 4. Pursuant to this agreement, Merrill was required to pay Mr. O'Neal his base salary and certain other benefits during the six month period after receiving such notice.

Plaintiffs assert that the Former Merrill Outside Directors must have committed corporate waste because: (i) several months <u>after</u> the acquisition, Merrill sent a letter to seller National City Bank demanding a purchase price adjustment (<u>id.</u> ¶ 174); and (ii) Merrill discontinued First Franklin's operations approximately fifteen months <u>after</u> the acquisition (<u>id.</u> ¶ 250). However, "the relevant time to measure whether the [defendants] committed 'waste' is <u>at the time they entered into and approved the transaction.</u>" <u>Ash v. McCall</u>, 2000 WL 1370341, at *8 (Del. Ch. Sept. 15, 2000) (emphasis added); <u>see also</u> <u>Wood</u>, 953 A.2d at 142 ("Delaware law on this point is clear: board approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors"). Since Plaintiffs do not plead that First Franklin had no value when it was acquired, the Complaint fails to state a claim for waste.[12]

Moreover, "[i]f a board's decision can be 'attributed to <u>any</u> rational business purpose,' a court will not substitute its judgment for that of a board." <u>Levine v. Smith</u>, 591 A.2d 194, 207 (Del. 1991) (quoting <u>Sinclair Oil Corp. v. Levien</u>, 280 A.2d 717, 720 (Del. 1971)) (emphasis added). Here, the Complaint concedes a rational business purpose for the transaction – Merrill wanted to own a loan originator to ensure continued access to loans needed for the creation of CDOs. (Compl. ¶ 125.). Far from showing that no person of sound business judgment would pursue such a policy, the Complaint concedes that many of Merrill's competitors pursued similar transactions. (<u>Id.</u> ¶¶ 122, 125.)

### 4.    Bonuses Paid To Merrill Executives In December 2008

The Complaint asserts that the Former Merrill Outside Directors committed waste by authorizing bonus compensation for certain Merrill executives in December 2008. (Compl. ¶ 490.) As a threshold matter, these allegations are not properly before the Court. In the Court's

---

[12] Plaintiffs' conclusory allegation that First Republic's assets were "significantly overvalued" has no support in the Complaint. Plaintiffs never allege that First Republic experienced losses during the crisis that began in October 2007, or that it was required to write down any of its assets. In any event, Plaintiffs' have not adequately plead that Merrill received "no consideration" for its First Republic acquisition. <u>See</u> <u>Lewis</u>, 699 A.2d at 336.

February 17, 2009 opinion and order dismissing Plaintiffs' Second Amended Complaint (which was filed on September 23, 2008), the Court stated: "the Court notes that its dismissal is without prejudice to plaintiffs' filing with this Court, if and when they have standing, a renewed action, . . . but based on the same underlying allegations as the actions here dismissed." In re Merrill Lynch, 597 F. Supp. 2d at 431. Plaintiffs' new claim regarding bonuses paid in December 2008 plainly is not "based upon the same underlying allegations" as the claims contained in Plaintiffs' Second Amended Complaint, which was filed several months before such bonuses were paid. Thus, these allegations are not properly before the Court and this claim should be dismissed.

These conclusory allegations also fail to plead waste. First, the claim explicitly relates to compensation paid to "executive officers," and as such the Board's decision is entitled to great deference. See Elkins, 2004 WL 1949290, at *17 ("when dealing with a board's decision on executive compensation, its substantive decision is entitled to great deference"); In re Walt Disney Co. Deriv. Litig., 731 A.2d 342, 362 (Del. Ch. 1998) (Chancery Court's "deference to directors' business judgment is particularly broad in matters of executive compensation"), aff'd in part, rev'd in part sub nom. on other grounds Brehm v. Eisner, 746 A.2d 244 (Del. 2000); White v. Panic, 783 A.2d 543, 553 n.35 (Del. 2001) (noting "board's broad discretion to set executive compensation"). Second, the Complaint fails to plead any facts demonstrating that the payment of these bonuses was so one sided as to constitute waste, and in fact, Delaware law "recognizes that retention of key employees may itself be a benefit to the corporation." Elkins, 2004 WL 1949290, at *18; see also Zupnick v. Goizueta, 698 A.2d 384, 388-89 (Del. Ch. 1997) (plaintiff failed to state a claim for waste based on allegations that corporation awarded stock options to executive for past performance). The Complaint alleges nothing more that that Merrill's directors approved bonuses at a time of financial difficulty, and that allegation is patently deficient to plead a transaction devoid of corporate benefit.

### 5.    The Stock Repurchase Plan

Plaintiffs assert that the Former Merrill Outside Directors committed waste by approving the Stock Repurchase Plan "through which Merrill Lynch purchased its own common

stock in the open market at artificially inflated prices." (Compl. ¶ 465.) Such conclusory allegations of repurchasing stock at supposedly inflated prices fail to plead waste.

In re Citigroup Inc. Shareholder Derivative Litigation, 964 A.2d 106 (Del. Ch. 2009) (hereafter "Montgomery County"), is instructive. There, the plaintiffs alleged that Citigroup's directors were "liable for waste for approving the buyback of over $645 million worth of the Company's shares at artificially inflated prices pursuant to the repurchase program." Id. at 137. In rejecting these allegations as insufficient to plead waste, the court stated:

> Plaintiffs seem to completely ignore the standard governing corporate waste under Delaware law – a standard that requires that plaintiffs plead facts overcoming the presumption of good faith by showing "an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." Plaintiffs attempted to meet this standard by alleging that the director defendants approved a repurchase of Citigroup stock at the market price. <u>Other than a conclusory allegation, plaintiffs have alleged nothing that would explain how buying stock at the market price – the price at which presumably ordinary and rational businesspeople were trading the stock – could possibly be so one sided that no reasonable and ordinary business person would consider it adequate consideration.</u> Again, plaintiffs merely allege "red flags" and then conclude that the board is liable for waste because Citigroup repurchased its stock before the stock dropped in price as a result of Citigroup's losses from exposure to the subprime market. In short, the Complaint states no particularized facts that would lead to any inference that the board's approval of the stock repurchase constituted corporate waste.

Id. (emphasis added; original emphasis omitted); see also In re Citigroup Inc. S'holders Litig., 2009 WL 2610746, at *8 (S.D.N.Y. Aug. 25, 2009) (same).

As in Montgomery County, Plaintiffs have "alleged nothing that would explain how buying stock at the market price . . . could possibly be so one sided that no reasonable and ordinary business person would consider it adequate consideration." 946 A.2d at 137. As explained in greater detail above, the Complaint fails to adequately plead that the Former Merrill Outside Directors were aware of any "red flags" regarding Merrill's subprime exposure when they approved the Stock Repurchase Plan in April 2007. See Point II.A, supra. As such, Plaintiffs have plainly failed to allege that the Former Merrill Directors knew that any such wrongdoing caused Merrill's stock price to be inflated at that time. Thus, Plaintiffs have failed

to state a claim for waste as a matter of law in connection with the Stock Repurchase Plan.

**E.      The Complaint Does Not State A Claim For Unjust Enrichment**

To plead unjust enrichment under Delaware law, a complaint must allege: (i) "'an enrichment'"; (ii) "'an impoverishment'"; (iii) "'a relation between the enrichment and the impoverishment'"; (iv) "'the absence of justification'"; and (v) "'the absence of a remedy at law.'"  Total Care Physicians, P.A. v. O'Hara, 2002 WL 31667901, at *10 (Del. Super. Ct. Oct. 29, 2002) (citation omitted).  Here, the Complaint alleges in conclusory fashion that "[b]y their wrongful acts and omissions, the Merrill Defendants were unjustly enriched at the expense of and to the detriment of Merrill Lynch."  (Compl. ¶ 485.)  However, Plaintiffs do not allege that the Former Outside Directors received any enrichment at all in connection with the challenged conduct.  Rather, the only compensation allegedly received by the Former Outside Directors relates to their services as directors, and Delaware law does not regard ordinary director compensation with suspicion.  See Silverzweig v. Unocal Corp., 1989 WL 3231, at *2 (Del. Ch. Jan. 19) ("the receipt of directors' fees does not constitute a disqualifying interest for purposes of the demand requirement"), aff'd, 561 A.2d 993 (Del. 1989); In re E.F. Hutton Banking Pracs. Litig., 634 F. Supp. 265, 271 (S.D.N.Y. 1986) ("Receipt of director's fees does not suggest a conflict of interest").  Thus, Plaintiffs' unjust enrichment claim should be dismissed.

**F.      The Complaint Does Not State A Section 10(b) Claim**

Plaintiffs assert derivatively that the Former Merrill Outside Directors violated Section 10(b) of the Exchange Act in connection with approving the Stock Repurchase Plan.  Claims under Section 10(b) must meet the heightened pleading requirements imposed by Fed. R. Civ. P. 9(b), which requires that "the circumstances constituting fraud . . . shall be stated with particularity."  This pleading requirement "serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).  Under Rule 9(b), a securities fraud plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

19

statements were made, and (4) explain why the statements were fraudulent." Id.  The PSLRA similarly requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).

> The PSLRA also requires that "with respect to each act or omission alleged to violate this chapter, [the complaint shall] state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. 78u-4(b)(2).  The U.S. Supreme Court has defined this state of mind as "'a mental state embracing intent to deceive, manipulate, or defraud.'"  Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 319 (2007) (citation omitted).  A plaintiff may satisfy this requirement by alleging facts (1) showing that the defendants had both motive and opportunity to commit fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness.  Ganino v. Citizens Utils. Co., 228 F.3d 154, 168-69 (2d Cir. 2000).  To state a claim based on recklessness, the plaintiff must "specifically allege[] defendants' knowledge of facts or access to information contradicting their public statements."  Novak v. Kasaks, 213 F.3d 300, 308 (2d Cir.), cert. denied, 531 U.S. 1012 (2000).  "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences."  Tellabs, 551 U.S. at 323.  For an inference of scienter to qualify as "strong" under the PSLRA, "it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  Id. at 314.

> Plaintiffs assert that the Former Outside Directors violated Section 10(b) because, "[i]n authorizing the Stock Repurchase Plan, the Merrill Director Defendants . . . knowingly caused Merrill Lynch to purchase Merrill Lynch common stock while they were in possession of material undisclosed information that would have resulted in Merrill paying far less for those shares had the truth been revealed."  (Compl. ¶ 454.)  These conclusory allegations fail to meet the heightened pleading requirements imposed by Rule 9(b) and the PSLRA for three reasons.

1.    <u>**The Complaint Fails To Allege That Merrill Was Deceived**</u>

Even if the Complaint adequately pled that the Former Merrill Outside Directors made material misrepresentations or omissions and acted with the required state of mind (it does not, as explained below), the Section 10(b) claim would nonetheless have to be dismissed because Plaintiffs have failed to plead that Merrill, which is the real plaintiff in interest in this derivative action, relied upon and was deceived by the Former Outside Directors' conduct.

<u>Citigroup</u> is instructive.  There, shareholders of Citigroup, Inc. ("Citi") asserted that Citi's directors "'knowingly caused Citi to repurchase its own shares at an artificially inflated price, when Defendants knew or were already on notice that Citi's adverse financial exposure to its subprime assets was a material undisclosed fact that needed to be disclosed.'" 2009 WL 2610746, at *9 (citation omitted).  In dismissing this claim, the court stated:

> plaintiffs have failed to allege that Citigroup was deceived as a result of any alleged fraud . . . [T]he thrust of plaintiffs' claim is that the directors approved the stock repurchases while knowing about the alleged misstatements . . . The Second Circuit has held that where, as here, there are no allegations that the directors were personally interested in the transaction or were dominated by individuals interested in the transaction, 'approval of the transaction by a disinterested majority of the board possessing authority to act and fully informed of all relevant facts will suffice to bar a Rule 10b-5 claim that the corporation or its stockholders were deceived.'  *Maldonado v. Flynn*, 597 F.2d 789, 793 (2d Cir. 1979) . . . . [B]ecause the stock repurchases here were approved by a majority of disinterested directors – and because those directors were, according to plaintiffs, fully informed of the facts underlying the alleged fraudulent statements – plaintiffs cannot show that the directors "engaged in some form of deception". . . .

<u>Id.</u> at *10 (citations omitted; original emphasis omitted).  The <u>Citigroup</u> court relied upon <u>Maldonado</u>, where the Second Circuit held that "[t]he knowledge of the disinterested majority [of the company's directors] must in such event be attributed to the corporation and its stockholders, precluding deception."  597 F.2d at 793.

Here, while Plaintiffs allegations of scienter are insufficient under Rule 9(b) and the PSLRA (<u>see</u> <u>infra</u>, Point II.F.3), the "thrust" of their 10(b) claim, as in <u>Citigroup</u>, is that the Former Merrill Outside Directors approved the Stock Repurchase Plan while knowing that Merrill's stock price was inflated due to alleged misstatements regarding Merrill's subprime

exposure. (Compl. ¶¶ 452-58.) However, since Plaintiffs do not allege that any of the Former Merrill Outside Directors were personally interested in the Stock Repurchase Plan, their alleged knowledge of the alleged misstatements "must in such event be attributed to the corporation and its stockholders." Maldonado, 597 F.2d at 793. Thus, the Former Merrill Outside Directors "informed" approval of the Stock Repurchase Plan "'will suffice as a bar to a Rule 10b-5 claim that [Merrill] or its stockholders were deceived.'" In re Citigroup, 2009 WL 2610746, at *10.

        **2.**       **The Complaint Fails To Allege That Any Of The Former Merrill Outside Directors Made A False Or Misleading Statement**

      As set forth above, under Rule 9(b), a securities fraud claim must: "'"(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."'" Novak, 216 F.3d at 306 (citations omitted). Here, the Complaint does not even attempt to assert that any of the Former Merrill Outside Directors made a false or misleading statement regarding the Stock Repurchase Plan. Thus, Plaintiffs have failed to plead an essential element of their Section 10(b) claim, and that claim must be dismissed.[13]

---

[13] To the extent Plaintiffs attempt to rely upon the "group pleading" doctrine to attribute statements made in Merrill public filings to certain Former Outside Directors, their reliance is misplaced. Each of the appellate courts that has addressed the issue has held that that the "group pleading" doctrine is inconsistent with the PSLRA, and have therefore required plaintiffs to plead misstatements by each defendant. See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 364 (5th Cir. 2004) ("Even if this court were to conclude that the 'group pleading' doctrine existed in the absence of the PSLRA, it cannot withstand the PSLRA's specific requirement that the untrue statements or omissions be set forth with particularity as to 'the defendant'"); Makor Issues & Rts., Ltd. v. Tellabs, Inc., 437 F.3d 588, 602-03 (7th Cir. 2006) (rejecting the "group pleading" doctrine as inconsistent with the PSLRA), vacated on other grounds, 551 U.S. 308 (2007); Winer Family Trust v. Queen, 503 F.3d 319, 337 (3d Cir. 2007) ("We agree [with the Fifth Circuit and the Seventh Circuit] and hold the group pleading doctrine is no longer viable in private securities actions after the enactment of the PSLRA"). These decisions, as well as various district court decisions from both within and outside this District, recognize that the PSLRA requires plaintiffs to specify the role of each defendant in the alleged misstatements. See In re Cross Media Mktg. Corp. Sec. Litig., 314 F. Supp. 2d 256, 262 (S.D.N.Y. 2004) ("The statute's use of the singular 'defendant' counsels against group pleading in actions arising in securities fraud cases since the enactment of the PSLRA"); In re Cree, Inc. Sec. Litig., 333 F. Supp. 2d 461, 475 (M.D.N.C. 2004) (same).

> **3.  The Complaint Fails To Plead With Particularity That The Former Merrill Outside Directors Acted With Scienter**

Plaintiffs' Section 10(b) claim should also be dismissed for failing to plead "with particularity" facts giving rise to a "strong inference" that the Former Merrill Outside Directors acted with the "'intent to deceive, manipulate, or defraud.'" Tellabs, 551 U.S. at 319 (citation omitted). Plaintiffs do not attempt to plead that the Former Merrill Outside Directors had motive and opportunity to commit fraud. There is no allegation that any such director benefitted personally from the Stock Repurchase Plan, or obtained any benefit not shared by all Merrill shareholders. See In re Gildan Activewear, Inc. Sec. Litig., 2009 WL 1919618, at *8 (S.D.N.Y. July 1, 2009) ("To allege Defendants' motive sufficient to raise a strong inference of scienter, Plaintiffs must allege 'concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged'") (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)); Coronel v. Quanta Capital Holdings Ltd., 2009 WL 174656, at *25 (S.D.N.Y. Jan. 26, 2009) ("'plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud'") (quoting Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001)). Nor is there any allegation that any Former Merrill Outside Director sold Merrill stock in the Stock Repurchase Plan.

Instead, Plaintiffs attempt to plead "strong circumstantial evidence of conscious misbehavior or recklessness" by alleging that "the Merrill Defendants knew, or should have known but for their reckless disregard of facts known to them, that the publicly traded shares of Merrill Lynch common stock were inflated due to their failures to fully and completely disclose Merrill's exposure to its subprime portfolios." (Compl. ¶ 456.) It is well settled, however, that "[w]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." Novak, 216 F.3d at 309; see also Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 196 (2d Cir. 2008) (plaintiffs failed to plead scienter where "they have not specifically identified any reports or statements that would have come to light in a reasonable investigation and that would

have demonstrated the falsity of the allegedly misleading statements"); <u>In re Gildan</u>, 2009 WL 1919618, at *8 (plaintiffs failed to adequately plead scienter where they "failed to allege with the requisite specificity exactly what contemporaneous data Defendants had" that "contradicted their bullish statements about projected earnings"); <u>Coronel</u>, 2009 WL 174656, at **16, 27 (same); <u>Steinberg v. Ericcson LM Tel. Co.</u>, 2008 WL 5170640, at *13 (S.D.N.Y. Dec. 10, 2008) (same).

Here, there is no allegation suggesting, let alone specifically identifying, any information in the possession of the Former Merrill Outside Directors that should have led them to conclude that Merrill stock was inflated at the time they approved the Stock Repurchase Plan on or about April 30, 2007.  Plaintiffs also have failed to identify any information available to the Former Merrill Outside Directors in April 2007 that would have put them on notice of the alleged problems relating to Merrill's subprime investments.  Rather, the only relevant allegations demonstrate that the Stock Repurchase Plan, a common strategy to return value to shareholders, was approved for valid business reasons and without any knowledge of wrongdoing on the part of the Former Outside Directors that Merrill stock was supposedly inflated.  (Compl. ¶ 151: Stock Repurchase Plan "will enable [Merrill] to continue to be active and flexible in managing our equity capital. . . to the extent we generate excess capital, we will continue to use share repurchases, as well as cash dividends, to return capital to stockholders").  Thus, Plaintiffs have failed to adequately plead a "cogent" and "compelling" inference of fraudulent intent, and their Section 10(b) claim must be dismissed.  <u>See</u> <u>Tellabs</u>, 551 U.S. at 324.

**G.      The Complaint Fails To State A Claim For Indemnification Or Contribution**

Plaintiffs assert that Merrill is "alleged to be liable to various persons, entities and/or classes by virtue of the same facts or circumstances as are alleged herein that give rise to the Merrill Defendants' liability to Merrill Lynch."  (Compl. ¶ 440.)  Plaintiffs claim that Merrill is therefore entitled to contribution or indemnification from the Merrill Defendants.  (<u>Id.</u> ¶ 441.)

To the extent Plaintiffs are attempting to plead that the Former Merrill Outside Directors are liable for future judgments rendered against Merrill, such speculative claims are not ripe and must be dismissed.  <u>See</u> <u>Pall v. KPMG, LLP</u>, 2006 WL 2800064, at *3 (D. Conn. Sept.

26, 2006) (dismissing derivative claim for contribution under Section 21D of the Exchange Act and common law as not ripe where that claim was "contingent upon a finding of liability in related actions").  To the extent Plaintiffs are attempting to assert that the Former Outside Directors are liable for contribution in connection with a settlement that Merrill has already paid, Plaintiffs do not (and in fact cannot) allege that there has been a judicial finding or admission of liability on the part of any of the Former Outside Directors in connection with such a settlement. Further, for the reasons set forth above, all of Plaintiffs' claims of wrongdoing against the Former Outside Directors in this action must be dismissed.  Thus, Plaintiffs have failed to allege that the Former Outside Directors share a "common liability" with Merrill, and their contribution claim must therefore be dismissed.  See David B. Lilly Co. v. Fisher, 18 F.3d 1112, 1123 (3d Cir. 1994) (action for contribution may not be enforced unless "'the proposed contributor shares with the defendant "a common liability" to the plaintiff'") (citations omitted).

## CONCLUSION

For all the reasons set forth above, the Former Merrill Outside Directors' motion to dismiss the Complaint and each and every claim stated in the Complaint should be granted.

Dated:    New York, New York
          September 21, 2009

                              Respectfully submitted,

                              CADWALADER, WICKERSHAM & TAFT LLP

                              By: _____/s/ Jason M. Halper_____
                              Dennis J. Block (dennis.block@cwt.com)
                              Gregory A. Markel (gregory.markel@cwt.com)
                              Jason M. Halper (jason.halper@cwt.com)
                              One World Financial Center
                              New York, New York 10281
                              (212) 504-6000

                              Attorneys for Defendants Carol T. Christ,
                              Armando M. Codina, Virgis W. Colbert,
                              Alberto Cribiore, John D. Finnegan,
                              Judith Mayhew Jonas, Aulana L. Peters, Joseph W.
                              Prueher, Ann N. Reese and Charles O. Rossotti