UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. | : |
| SECURITIES, DERIVATIVE AND ERISA | : |
| LITIGATION | : |
| | : |
| | : |
| | :  Master File No.: |
| | :  07 cv 9633 (JSR) |
| | : |
| | : |
| | : |
| This Document Relates To: | : |
| Derivative Action, 07 cv 9696 (JSR) (DFE) | : |

---------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## E. STANLEY O'NEAL'S MOTION TO DISMISS THE
## VERIFIED THIRD AMENDED SHAREHOLDER
## <u>DERIVATIVE AND CLASS ACTION COMPLAINT</u>

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone:  (212) 455-2000
Facsimile:  (212) 455-2502

*Attorneys for Defendant E. Stanley O'Neal*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ......................................................................................3

ARGUMENT ......................................................................................................5

I.  PLAINTIFF FAILS TO ALLEGE ANY CLAIM BASED ON ANY PUBLIC
    STATEMENTS BY MR. O'NEAL ....................................................................5

II.  PLAINTIFF FAILS TO STATE ANY CLAIM BASED ON MR. O'NEAL'S
     SALE OF STOCK IN FEBRUARY 2007 ..........................................................10

    A.  The Complaint Fails To Allege That Mr. O'Neal Sold Shares
        While In Possession of Material, Non-Public Information....................11

    B.  Plaintiff has Failed To Plead Fraudulent Intent ....................................11

    C.  The Complaint Fails to Allege Any Damages To Merrill From
        Mr. O'Neal's  Stock Sale .........................................................14

III.  THE DELAWARE LAW CLAIMS FAIL TO STATE ANY PLAUSIBLE
      CLAIM FOR RELIEF AGAINST MR. O'NEAL...............................................15

    A.  Plaintiff's Duty of Care Claims are Barred by Article XIII of Merrill's
        Certificate of Incorporation.....................................................15

    B.  None of the Delaware Law Claims Is Plausible On Its Face ................16

CONCLUSION....................................................................................................18

## TABLE OF AUTHORITIES

### Cases

*Arnold v. Society for Sav. Bancorp, Inc.*, 650 A.2d 1270 (Del. 1994) ......................................... 16

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ............................................................... 3, 17

*ATSI Communications Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ............................. 17

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ........................................................ 3, 15, 16, 17

*City of Brockton Retirement  System v. Shaw Group Inc.*, 540 F. Supp. 2d 464
    (S.D.N.Y. 2008) ................................................................................... 13

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ........................................... 7

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976).................................................... 7

*Fadem v. Ford Motor Co.*, No. 02 Civ. 0680, 2003 WL 22227961
    (S.D.N.Y. Sept. 25, 2003) ....................................................................... 4

*Frankel v. Slotkin*, 795 F. Supp. 76 (E.D.N.Y. 1992)................................................ 14, 15

*Goldman v. Isaacs*, No. CIV. A. 18732, 2001 WL 1671439 (Del. Ch. Dec. 17, 2001) ............... 15

*Guttman v. Huang,* 823 A.2d 492 (Del. Ch. 2003)................................................... 10, 12

*In re Astea International Inc. Securities Litigation*, No. 06 Civ. 1467,
    2007 U.S. Dist. LEXIS 58238 (E.D. Pa. Aug. 8, 2007).......................................... 14

*In re AstraZeneca Securities Litigation*, 559 F. Supp. 2d 453 (S.D.N.Y. 2008) ................... 12

*In re Bristol-Myers Squibb Securities Litigation*, 312 F. Supp. 2d 549 (S.D.N.Y. 2004) ........... 11

*In re Citigroup Inc. S'holder Derivative Litigation*, No. 07 Civ. 9841,
    2009 WL 2610746 (S.D.N.Y. Aug. 25, 2009) ............................................. 2, 8, 9, 17

*In re Citigroup Inc. Shareholder Derivative Litigation*, 964 A.2d 106 (Del. Ch. 2009)............. 17

*In re Credit Acceptance Corp. Securities Litigation*, 50 F. Supp. 2d 662
    (E.D. Mich. 1999) .............................................................................. 14

*In re Downey Sec. Litig.*, No. CV 08-3261-JFW, 2009 WL 2767670
    (C.D. Cal. Aug. 21, 2009) ...................................................................... 9

*In re Dura Pharmaceuticals, Inc. Securities Litigation*, No. 99CV0151-L(NLLS),
    2000 WL 33176043 (S.D. Cal. July 11, 2000) ................................................... 14

*In re KeySpan Corp. Securities Litigation*, 383 F. Supp. 2d 358 (E.D.N.Y. 2003).......... 11, 13, 14

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) ......................... 4

*In re Oracle Corp.*, 867 A.2d 904 (Del. Ch. 2004)................................................................. 10, 15

*In re Sagent Tech., Inc., Derivative Litigation*, 278 F. Supp. 2d 1079 (N.D. Cal. 2003) ............. 11

*In re Washington Mutual, Inc. Sec., Deriv. & ERISA Litig.*, No. 2:08-MD-1919 MJP,
   2009 WL 1393679 (W.D. Wash. May 15, 2009)....................................................................... 9

*Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45 (2d Cir. 1999) ...................... 18

*Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117 (D. Conn. 2007).................................................. 13

*Manbeck v. Micka*, No. 07-CV-2642, 2009 WL 2365243 (S.D.N.Y.  July 30, 2009)................... 5

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006) ................................... 7

*Rattner v. Bidzos*, No. Civ.A. 19700, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) ................ 12

*Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43 (E.D.N.Y. 1999)............................................. 13

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)......................................................................... 12

*S.E.C. v. Lyon*, 605 F. Supp. 2d 531 (S.D.N.Y. 2009)................................................................ 10

*Sachs v. Sprague,* 401 F. Supp. 2d 159 (D. Mass. 2005)............................................................. 10

*Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ............................................. 7, 9, 13

*THC Holdings Corp. v. Chinn*, No. 95 CIV. 4422 (KMW), 1998 WL 50202
   (S.D.N.Y. Feb. 6, 1998) ......................................................................................................... 16

*United States v. O'Hagan,* 521 U.S. 642 (1997) ........................................................................ 10

*Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006).................................... 5

**Statutes**

15 U.S.C. § 78u-4(b)(1) .............................................................................................................. 7

15 U.S.C. § 78u-4(b)(2) .............................................................................................................. 9

**Other Authorities**

R. Franklin Balotti & Jesse A. Finkelstein, Delaware Law of Corp. & Business Org.
   § 4.19 (Supp. 1992).................................................................................................................. 16

## PRELIMINARY STATEMENT

Despite the paucity of factual allegations about E. Stanley O'Neal in its 242 pages, Plaintiff's Verified Third Amended Shareholder Derivative and Class Action Complaint (the "Complaint") asserts a hodgepodge of eleven derivative claims (but no direct class claims) against him.  For all of the reasons set forth in the motion to dismiss concurrently submitted by Bank of America Corporation, in which Mr. O'Neal joins,[1] all of the derivative claims in the Complaint should be dismissed because Plaintiff lacks standing to assert them.  Because Plaintiff cannot demonstrate her entitlement to bring the derivative claims, there is no need for the Court to reach the merits of those claims.  Nonetheless, should the Court determine otherwise, Mr. O'Neal respectfully submits this brief solely to address the substance – or, more directly, the lack of substance – of the allegations against him.

Plaintiff's fourth pleading attempt offers nothing new as to Mr. O'Neal.  Indeed, the few allegations against him are simply cut and pasted from Plaintiff's prior pleadings:

- A number of lengthy quotations from Merrill's public filings or a news article, followed by a single, conclusory paragraph alleging that some unspecified parts of the quotes attributed to Mr. O'Neal were somehow false or misleading.  *See* Compl. ¶¶ 128, 160, 167, 191, 195, 207.

- An allegation that Mr. O'Neal engaged in insider trading when he sold a small percentage of his Merrill holdings in February 2007, fully ***eight months before*** Merrill announced its first write down in October 2007.  *Id.* ¶¶ 383-89.

- A conclusory allegation that Mr. O'Neal "caused Merrill Lynch to ramp up its investments in CDOs" (*id.* ¶ 98) and that, despite supposed later "warnings," Mr.

---

[1]     Mr. O'Neal respectfully moves to dismiss the complaint against him in its entirety.  To avoid burdening the Court with duplicative briefing, Mr. O'Neal limits this brief to certain arguments relating solely to him, and expressly adopts and joins in the motions to dismiss filed by defendants Jeffrey N. Edwards, Gregory J. Fleming, and Ahmass L. Fakahany, the Former Merrill Lynch Outside Director Defendants, and nominal defendant Bank of America Corporation ("Bank of America").

O'Neal and other Merrill executives pursued a "high-risk business strategy" that ultimately resulted in losses for Merrill.  *Id.* ¶ 121.[2]

None of these allegations comes close to stating a valid claim.  First, the Complaint is virtually silent as to which of its counts is actually premised on any alleged false or misleading statements.  Only two counts against Mr. O'Neal – both relating to Merrill's 2007 Stock Repurchase Plan – make any reference to them at all.  Plaintiff's impermissible "puzzle pleading" approach notwithstanding, none of these allegations comes close to meeting the stringent pleading requirements of Federal Rule of Civil Prodcedure 9(b) or the PSLRA, which Plaintiff must satisfy to state any claim based on alleged fraudulent statements.

Second, from her single allegation concerning insider trading, Plaintiff attempts to assert claims for violation of Rule 10b-5 and for breach of fiduciary duty for misappropriation of information from Merrill.  Here too the Complaint fails to meet any of the particularity requirements of Rule 9(b) or the PSLRA.  Plaintiff fails to allege what material, non-public information was purportedly misappropriated, or any facts demonstrating that Mr. O'Neal's stock sale was the least bit out of the ordinary in light of his prior sales.  Furthermore, Plaintiff's Rule 10b-5 claim also fails because Merrill suffered no damages as a result of any stock sale.

Finally, Plaintiff's conclusory statement that Mr. O'Neal pursued a "high-risk business strategy" is simply an impermissible attempt to hold him "personally liable for making (or allowing to be made) business decisions that, in hindsight, turned out poorly" for Merrill Lynch.  *In re Citigroup Inc. S'holder Deriv. Litig.*, No. 07 Civ. 9841, 2009 WL 2610746, at *5 (S.D.N.Y. Aug. 25, 2009) (granting motion to dismiss).  Given the dearth of factual allegations

---

[2]    In addition, the Complaint includes a handful of allegations concerning Mr. O'Neal's departure from Merrill in 2007, including allegations relating to an alleged discussion between him and representatives of Wachovia about a possible merger.  *See* Compl. ¶¶ 212-15, 362-63.  Those allegations are directed at decisions by Merrill's Board of Directors and are not part of any claim asserted against Mr. O'Neal.

in the Complaint, Plaintiff's attempt to assert additional claims against Mr. O'Neal (breach of fiduciary duty, corporate waste, abuse of control, gross mismanagement, contribution, indemnification and declaratory relief, aiding and abetting breach of fiduciary duty and unjust enrichment) also fails under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). In addition, to the extent these claims are premised on allegations that Mr. O'Neal violated a duty of care, the claims are barred by the exculpation provision in Merrill's Certificate of Incorporation. Nothing in the Complaint states a plausible claim against Mr. O'Neal, and accordingly, it should be dismissed with prejudice as to him.

### STATEMENT OF FACTS

Mr. O'Neal is the former Chairman of the Board and Chief Executive Officer of Merrill. Compl. ¶ 37. He left Merrill on October 30, 2007. *Id.* Contrary to the allegations in the Complaint, Merrill's public filings make crystal clear that Mr. O'Neal received *no* severance when he left Merrill.[3] Instead, he expressly *gave up* any claim of entitlement to any severance beyond what he had already earned in base salary for 2007 and what had already been awarded to him in prior years. *See* Decl. of Jay B. Kasner dated July 21, 2008, filed in *In re Merrill Lynch & Co., Inc. Sec. Action*, No. 07cv9633 (JSR) ("Kasner Decl.") (Master Docket # 55), Ex. EE. As a result, Mr. O'Neal did not receive a single additional Merrill share upon his retirement and in fact gave up his remaining cash salary for the final two months of 2007, as well as any claim to any additional cash, bonus or equity payments for all of 2007. At hearings conducted before the United States House of Representatives' Committee on Oversight and Government

---

[3]    Indeed, Plaintiff's "golden goodbye" canard has been fully debunked in the prior briefing in this case. *See, e.g.*, Merrill Lynch's Memorandum of Law in Supp. of its Mot. to Dismiss the Second Am. Deriv. Compl. (Master Docket # 144) at 12 n.7. Plaintiff's continued refusal to accept the indisputable fact that Mr. O'Neal received no severance payments when he left Merrill is inexplicable, particularly in light of Plaintiff's multiple attempts to replead.

Reform in March 2008, the chairman of Merrill's compensation committee testified that "[a]side from his base salary, anything else retained by Mr. O'Neal at his departure had been earned and awarded to him in prior years. The amount disclosed in our public filings and highlighted by the media at the time of his departure relates entirely to compensation and benefits that he earned over the course of his career, and in all events, prior to his separation from the Company."[4] *See id.*, Ex. E. Plaintiff simply ignores these facts.[5]

      The Complaint also incorrectly states that Mr. O'Neal sold 474,335 shares of Merrill stock between February 1 and 7, 2007. Compl. ¶ 387. As explained in Mr. O'Neal's motion to dismiss filed in the securities action (Master Docket #59), this sale consisted of a single "sell" order executed over two days, and comprised 199,887 shares of Merrill stock. *See* Kasner Decl., Ex. RR. The sale consisted of just 5.9% of Mr. O'Neal's beneficial holdings of Merrill stock and options at the time. *Id.*[6]

      Although Plaintiff makes no attempt to allege any facts demonstrating that Mr. O'Neal's sale in 2007 was somehow suspicious or unusual, the publicly available facts show that

---

[4]    The Court may take judicial notice of this testimony because the hearing before the House Committee and the Committee's memorandum are referred to in the Complaint. *See* Compl. ¶ 362; *Fadem v. Ford Motor Co.*, No. 02 Civ. 0680, 2003 WL 22227961, at *2 (S.D.N.Y. Sept. 25, 2003).

[5]    The Court need not accept as true factual allegations in the Complaint that are demonstrably false based on the publicly available facts or filings. *See, e.g.*, *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) (on motion to dismiss, court need not "accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice").

[6]    Prior to the sale, Mr. O'Neal beneficially held 3,414,245 shares and options. *See id.*, Ex. RR. Thus, the sale of 199,887 shares represented 5.9% of his total holdings.

it was a small percentage of his holdings, as well as entirely consistent in amount and timing with his sales in prior years.

As CEO, Mr. O'Neal received the majority of his compensation in the form of restricted shares and stock options. *See, e.g.*, *id.*, Ex. JJ at 35-36. Those restricted shares and options vested over a number of years according to a schedule specified in the grant documents, typically vesting in quarterly installments on the anniversary date of each award. Because Merrill paid its annual incentive compensation in January, one-quarter of each grant would vest every January. *See id.*, Exs. HH-KK. Mr. O'Neal routinely sold a small percentage of his Merrill stock in February of 2005, 2006 and 2007 in order to diversify his assets. On February 28, 2005, Mr. O'Neal sold 98,709 shares, or 3.1% of his Merrill beneficial holdings. *See id.*, Ex. RR. On February 23, 2006, he sold 146,438 shares, or 4.6% of his Merrill beneficial holdings. *See id.*

## ARGUMENT

## I.    PLAINTIFF FAILS TO ALLEGE ANY CLAIM BASED ON ANY PUBLIC STATEMENTS BY MR. O'NEAL

Most of the Complaint's allegations concerning Mr. O'Neal relate to alleged statements attributed to him in Merrill public filings, press releases or news articles. Compl. ¶¶ 128, 160, 167, 191, 207. Yet, of the eleven claims against him, only *two* make any reference at all to "the false and misleading statements alleged above." *See* Compl. ¶¶ 461, 465.[7] Counts

---

[7]    Plaintiff cannot state a viable claim by beginning each count with a sentence that purports to incorporate by reference "each and every allegation" set forth in 415 paragraphs of the "fact" section of the Complaint. This "shotgun" pleading approach has been soundly rejected by numerous courts. *See, e.g., Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (holding that plaintiff had failed to meet the particularity of Rule 9(b) in securities fraud action where "[t]he complaint at issue in this case is a proverbial shotgun pleading [that] incorporate[s] every antecedent allegation by reference into each subsequent claim for relief or affirmative defense"); *Manbeck v. Micka*, No. 07-CV-2642, 2009 WL 2365243, at *10 (S.D.N.Y. July 30, 2009) (rejecting complaint that

VII and VIII of the Complaint purport to assert fraud claims against Mr. O'Neal for violation of

Section 10(b) and Rule 10b-5 of the Exchange Act and for breach of fiduciary duty respectively

as one of the "Merrill Defendants" in connection with Merrill's April 2007 Stock Repurchase

Plan (the "Plan"). *Id.* ¶¶ 450-67. Plaintiff alleges that "the Merrill Defendants induced and

caused Merrill to purchase Merrill common stock in the open-market [*sic*] at artificially inflated

prices which resulted in substantial damage to Merrill Lynch in violation of the federal securities

laws." *Id.* ¶ 456.

As a preliminary matter, Plaintiff cannot assert any claims against Mr. O'Neal in

connection with the Plan simply by defining "Merrill Defendants" to include him. The

Complaint *does not contain even a single well-pled factual allegation* that Mr. O'Neal

recommended that Merrill Lynch implement the Plan or that he made *any statements to anyone*

about or in connection with the Plan. To the contrary, the Complaint alleges that the Plan was

recommended by Merrill's Finance Committee, on which Mr. O'Neal did not serve, and simply

states in passing and without any explanation that the "Merrill Officer Defendants," including

Mr. O'Neal, "orchestrated the Stock Repurchase Plan." *Id.* ¶ 153. For this reason alone,

Plaintiff's claims against Mr. O'Neal relating to the Plan (Counts VII and VIII) both fail as a

matter of law. *See* Mem. of Law in Supp. of the Former Merrill Director Defs' Mot. to Dismiss

at 22 n.13.

In addition, these claims are subject to the heightened pleading requirements of

Rule 9(b) and the PSLRA. Rule 9(b) requires that Plaintiff plead allegations of fraud with

particularity. FED. R. CIV. P. 9(b). Likewise, the PSLRA "requires plaintiffs to state with

---

"sets forth a potpourri of vague and conclusory allegations via the sort of 'shotgun pleading' that illustrates . . . utter disrespect for Rule 8 of the [Federal Rules of Civil Procedure] . . . making it extremely difficult to discern the precise nature of the claims") (internal quotations omitted).

particularity both the facts constituting the alleged violation, and the facts evidencing scienter,

*i.e.,* the defendant's intention 'to deceive, manipulate, or defraud." *Tellabs v. Makor Issues &*

*Rights, Ltd.*, 551 U.S. 308, 313 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194

(1976)).  The PSLRA "insists that securities fraud complaints specify each misleading statement;

that they set forth the facts on which [a] belief that a statement is misleading was formed; and

that they state with particularity facts giving rise to a strong inference that the defendant acted

with the required state of mind."  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S.

71, 81-82 (2006) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (alteration in

original) (internal quotations omitted)); 15 U.S.C. § 78u-4(b)(1)-(2).

Here, Plaintiff has made no attempt to meet this pleading burden.  The Complaint

fails to allege with particularity *which* statements Plaintiff contends were fraudulent or *why*.[8]

Instead, the Complaint simply sets out lengthy quotations without specifying which of the dozens

of statements contained in them are alleged to be fraudulent, and includes one catch-all,

---

[8]     All but one of the statements attributed to Mr. O'Neal in the Complaint were included in
the Consolidated Amended Securities Class Action Complaint in this case (Master
Docket # 42).  In connection with Mr. O'Neal's motion to dismiss that complaint, he
explained why each of those statements was not false or misleading or was otherwise not
actionable.  *See* Master Docket # 59.  To avoid unnecessary repetition, Mr. O'Neal
incorporates those arguments herein by reference and respectfully refers the Court to his
prior brief.  The one statement included in the Complaint here that was omitted from the
securities action is an April 2007 statement attributed to Mr. O'Neal that reports of the
deterioration in the subprime lending business were "exaggerated and misunderstood the
nature of the business and how it's managed . . . and it's not consistent with what I would
assess the state of the business to be."  Compl. ¶ 128.  This is plainly a statement of Mr.
O'Neal's personal opinion, and Plaintiff alleges no facts suggesting that he did not
believe it to be true.  In addition, Plaintiff omits the next paragraph of the news article she
quotes from, which states that "Goldman Sachs analysts have come to O'Neal's defense .
. . upgrad[ing] Merrill to buy from neutral saying the concerns have been overdone."
Declaration of Michael J. Chepiga dated Sept. 21, 2009, Ex. A (David Weidner,
*MarketWatch*, "Merrill Results Could Shed Light on Exposure" (Apr. 12, 2007)).  Clearly
Mr. O'Neal was not the only one that held the opinion in April 2007 that concerns over
the mortgage-backed securities business were exaggerated.

conclusory paragraph alleging that *all* of the various statements quoted in the preceding 194 paragraphs of the Complaint by *all* of the individual defendants are misleading by omission because they failed to disclose that Merrill (1) was "more exposed to CDOs backed by high-risk subprime debt than it publicly disclosed" and (2) "failed to inform the market of the extent of likely write-downs in Merrill Lynch's CDO portfolio due to the deteriorating subprime mortgage market, which caused Merrill Lynch's [CDO] portfolio to be impaired." *Id.* ¶ 195.

In his recent decision in *In re Citigroup Inc. Shareholder Derivative Litigation*, Judge Stein held that plaintiffs had failed "to meet many of the applicable requirements" of Rule 9(b) and the PSLRA because they had employed the same pleading devices as Plaintiff has in this case. 2009 WL 2610746, at *10. First, Judge Stein found that the complaint failed "to allege with specificity which statements plaintiffs contend are fraudulent." *Id.* Instead, as here, "some of the complaint's allegations do not even identify specific statements, and other allegations set out lengthy quotations without specifying which of the scores of statements contained in the quotations plaintiffs allege to be fraudulent." *Id.* Second, Judge Stein found that the complaint failed to allege with specificity *why* any of the alleged misstatements was fraudulent:

> In general terms, plaintiffs' claim is that the statements cited in the complaint were misleading because the statements never "discussed or disclosed" the "extent of Citi's massive subprime risk and impending collapse." But the complaint makes almost no attempt to identify individual statements and specify why information about "Citi's massive subprime risk" was "necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." The complaint's only bow in the direction of specificity is a claim that the statements were misleading because they were "positive" or "championed Citi's financial health." But bare contentions such as those do not, without more, meet the specificity requirements of Rule 9(b), Rule 32.1, and the PSLRA.

*Id*. (citations omitted). Likewise, the Complaint here makes no attempt to explain why information about Merrill's alleged exposure to CDOs was necessary in order to make any alleged statements by Mr. O'Neal not misleading.[9]

Finally, the Complaint fails to "state with particularity facts giving rise to a strong inference that [Mr. O'Neal] acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Indeed, Plaintiff does not even attempt to discern or describe Mr. O'Neal's state of mind at the time of his statements, much less allege with specificity that he had motive and opportunity to commit fraud.[10] Instead, Plaintiff alleges in conclusory fashion that "the Merrill Defendants knew, or should have known but for their reckless disregard of facts known to them, that the publicly trades shares of Merrill Lynch common stock were inflated due to their failures to fully and completely disclose Merrill's exposure to its subprime portfolios." Compl. ¶ 456. This naked conclusion is far from sufficient to state a "cogent" and "compelling" securities fraud claim. *Tellabs*, 551 U.S. at 324; *see also In re Citigroup*, 2009 WL 2610746, at *10 (holding that plaintiffs had failed to allege facts giving rise to a strong inference of fraudulent intent).

---

[9]    Other recent decisions are to the same effect. *See, e.g., In re Downey Sec. Litig.*, No. CV 08-3261-JFW, 2009 WL 2767670, at *3 (C.D. Cal. Aug. 21, 2009) (dismissing complaint because "[p]laintiff has placed the burden on the reader to sort out the statements and match them with the corresponding adverse facts to solve the 'puzzle' of interpreting Plaintiff's claims") (internal quotations omitted); *In re Washington Mut., Inc. Sec., Deriv. & ERISA Litig*., No. 2:08-MD-1919 MJP, 2009 WL 1393679, at *11 (W.D. Wash. May 15, 2009) (disapproving of plaintiffs' "puzzle pleading" approach that "have left it to Defendants and the Court to piece together: (1) the allegedly false statements; (2) allegations as to why those statements are false or misleading; and (3) allegations of scienter").

[10]    To the extent that Plaintiff contends that fraudulent intent can be inferred from Mr. O'Neal's single stock sale in February 2007, that claim should be rejected for the reasons discussed below in Point II.

## II.     PLAINTIFF FAILS TO STATE ANY CLAIM BASED ON MR. O'NEAL'S SALE OF STOCK IN FEBRUARY 2007

Plaintiffs allege two claims against Mr. O'Neal based on his sale of a small percentage of his personal holdings of Merrill stock in February 2007, eight months before Merrill announced its first write down in October:  (1) a securities fraud claim for violation of Section 10(b) the Exchange Act and Rule 10b-5 (Count X); and (2) a claim breach of fiduciary duty for insider selling and misappropriation of information (Count IX).[11]  Section 10(b) and Rule 10b-5 "are violated when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic information."  *S.E.C. v. Lyon*, 605 F. Supp. 2d 531, 541 (S.D.N.Y. 2009) (quoting *United States v. O'Hagan,* 521 U.S. 642, 652 (1997)).  With respect to a breach of fiduciary duty claim premised on insider trading, a plaintiff must show that: (1) the corporate fiduciary possessed material, nonpublic company information; and (2) the corporate fiduciary used that information improperly by making trades because she was motivated, in whole or in part, by the substance of that information.  "To anyone familiar with federal insider trading law, these elements will not look unusual as they more or less track the key requirements to recover against an insider under federal law."  *In re Oracle Corp.*, 867 A.2d 904, 934 (Del. Ch. 2004).  Under these standards, both of Plaintiff's insider trading claims fail.

---

[11]     Because Mr. O'Neal was not on Bank of America's Board when the Complaint was filed, and Plaintiff has not pled facts showing that any (much less a majority) of the Bank of America Board lacked independence from Mr. O'Neal (*see* Mem. of Law in Support of Bank of America's Motion to Dismiss at 17-18), Plaintiffs were required to make a demand on the Board with respect to these claims.  *See Guttman v. Huang,* 823 A.2d 492, 503 n.22 (Del. Ch. 2003) ("[T]he fact that three non-director-defendants, who each engaged in very substantial trades during the Contested Period, are named in the case has little bearing on the demand excusal analysis for an obvious reason: they are not on the board."); *see also Sachs v. Sprague,* 401 F. Supp. 2d 159, 166 n.5 (D. Mass. 2005) (same).

### A. The Complaint Fails To Allege That Mr. O'Neal Sold Shares While In Possession of Material, Non-Public Information

First, the Complaint fails to allege with specificity that Mr. O'Neal was in possession of any material, non-public information at the time of his sale. The Complaint merely cites – incorrectly – Mr. O'Neal's sale of Merrill stock in February 2007, and then alleges in wholly conclusory fashion and without any factual support that this sale was executed while Mr. O'Neal was purportedly in possession of unspecified "material, nonpublic information regarding the Company's true business prospects." Compl. ¶ 387. Absent from the Complaint are particularized facts demonstrating that Mr. O'Neal "possessed any *specific* material, nonpublic information at the time of each of those transactions" or that Mr. O'Neal "traded on the basis of such information." *In re Sagent Tech., Inc., Deriv. Litig.*, 278 F. Supp. 2d 1079, 1092 (N.D. Cal. 2003) (emphasis added).

### B. Plaintiff has Failed To Plead Fraudulent Intent

Second, these claims fail for the same reason that the Stock Repurchase Plan claims fail, as discussed above: Plaintiff has failed to meet its burden under Rule 9(b) and the PSLRA to allege specific facts that give rise to a cogent and compelling inference of fraudulent intent. With respect to the Section 10(b) and Rule 10b-5 claim, it is well-settled that "executive stock sales, standing alone, are insufficient to support a strong inference of fraudulent intent." *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004). "For insider sales to raise an inference of improper motive, they must be 'suspicious or unusual'." *In re KeySpan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 381 (E.D.N.Y. 2003). Likewise, where a complaint fails to plead particularized facts demonstrating that the trades in question were "unusual" in comparison to prior trading periods, courts repeatedly have held that plaintiff failed to plead a breach of fiduciary duty. *See Rattner v. Bidzos*, No. Civ.A. 19700, 2003 WL

11

22284323, at \*12 (Del. Ch. Sept. 30, 2003) (rejecting allegations of insider trading where the complaint "does not assist in determining whether the pattern of executed trades was the product of an orchestrated scheme to defraud the market and the Company's shareholders or good faith adherence to Company policy or consistent with prior individual practices"); *Guttman,* 823 A.2d at 498 (rejecting allegations of insider trading where the complaint lacked allegations as to "[t]he relationship of the defendants' trades . . . to permitted trading periods," as well as "[t]he actual trading patterns of the defendants . . . during the periods preceding the Contested Period").

To determine whether particular sales are "suspicious or unusual," courts examine a number of factors, including the amount and percentage of stockholdings sold, the timing of the sales, and any pattern of prior sales. *See In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 468 (S.D.N.Y. 2008) (citing *Rothman v. Gregor*, 220 F.3d 81, 94 (2d Cir. 2000)). In this case, the Complaint contains no allegations at all indicating that Mr. O'Neal's February 2007 sale was the least bit "unusual" in light of his prior trading history:[12]

| Date of Sale | Number of Shares Sold | Percentage of Beneficial Holdings |
| --- | --- | --- |
| February 28, 2005 | 98,709 | 3.1% |
| February 23, 2006 | 146,438 | 4.6% |
| February 1-7, 2007 | 199,887 | 5.9% |

In all three years, Mr. O'Neal's sales occurred within a few weeks after (1) Merrill announced its earnings for the prior year (so that all material information had been publicly disclosed), and (2) a portion of his prior equity awards vested. *See Bristol-Myers*, 312 F. Supp. 2d at 561 (rejecting stock sales as the basis for a motive allegation where the evidence

---

[12]     *See* Kasner Decl., Ex. RR, Ex. JJ at 31; *see also* Exs. HH-KK.

showed "a consistent pattern of trading"); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 151 (D.

Conn. 2007) ("Plaintiffs fail to provide evidence of Defendants' prior sales of XL stock, which,

if similar to the pattern of sales during the class period, could undermine any inference of fraud

arising from them."). None of Plaintiff's conclusory arguments is as compelling as the

indisputable fact that Mr. O'Neal had a pattern of selling a modest percentage of his overall

holdings in February after Merrill announced year-end earnings and after his holdings vested.

*See Tellabs*, 551 U.S. at 314.

Additionally, Mr. O'Neal's February 2007 sale occurred *eight months before*

Plaintiff claims that defendants' alleged "house of cards began to collapse" when Merrill

announced its first write down in October 2007. Compl. ¶ 24. The substantial amount of time

between Mr. O'Neal's sale and the first negative disclosure by Merrill conclusively refutes any

inference of scienter. *See In re Keyspan*, 383 F. Supp. 2d at 385 (no inference of fraud where

"nothing explains why these sales took place after a year of allegedly fraudulent positive

statements . . . and seven months before any negative public disclosures"); *Ressler v. Liz

Claiborne, Inc.*, 75 F. Supp. 2d 43, 60 (E.D.N.Y. 1999) ("[T]he stock sales at issue took place,

for the most part, over six months prior to the release of the negative disclosure by [defendant].

Such timing does not suggest that the defendants meant to realize profits immediately prior to an

expected and dramatic fall in the stock's price."); *City of Brockton Ret. Sys. v. Shaw Group Inc.*,

540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008) (finding that a "10-plus week gap" between

defendants' sales and the company's disclosure of negative information was "not strongly

suspicious").[13]

---

[13]    Moreover, while Plaintiff alleges that Mr. O'Neal and Defendants Fleming and Fakahany
sold stock in 2007, they do not allege any insider sales by Defendant Edwards, Merrill's
Chief Financial Officer. As explained in Mr. O'Neal's motion to dismiss filed in the

Finally, the amounts he sold were not "unusual" or "suspicious." Courts have held that sales of much *higher* percentages than Mr. O'Neal sold here were not unusual or suspicious. *See, e.g., In re Astea Int'l Inc. Sec. Litig.*, No. 06 Civ. 1467, 2007 U.S. Dist. LEXIS 58238, at *42-44 (E.D. Pa. Aug. 8, 2007) (between 18.9% and 66%); *In re KeySpan*, 383 F. Supp. 2d at 382-83 (less than 20%); *In re Dura Pharm., Inc. Sec. Litig.*, No. 99CV0151-L(NLLS), 2000 WL 33176043, at *10 (S.D. Cal. July 11, 2000) (between 34% and 61%).

## C.    The Complaint Fails to Allege Any Damages To Merrill From Mr. O'Neal's Stock Sale

Plaintiff's Rule 10b-5 insider trading claim must also be dismissed because the Complaint fails to allege that Merrill suffered any damages as a result of Mr. O'Neal's stock sale. As noted above, Plaintiff alleges in conclusory fashion that Mr. O'Neal "misappropriated Merrill Lynch's proprietary information" (Compl. ¶ 477), but "misappropriation of confidential information belonging to the corporation does not give rise to a Rule 10b-5 claim on behalf of the corporation when it was not injured by the fraud." *Frankel v. Slotkin*, 795 F. Supp. 76, 79-80 (E.D.N.Y. 1992). Plaintiff states without any factual basis that "Merrill Lynch suffered damages in connection with the Insider Selling Defendants' deceptive practices and contrivances in the sale of Merrill Lynch common stock during the Relevant Period" (Compl. ¶ 481), but the Complaint is completely silent as to exactly what "damages" Merrill allegedly suffered from Mr. O'Neal's sale in the open market. Critically, Plaintiff does not allege that Mr. O'Neal sold any of his stock **to Merrill**. Accordingly, Merrill could not have suffered any damages from his sale

---

securities action (Master Docket #59), the absence of any stock sales by Merrill's CFO undermines any claim that Mr. O'Neal's stock sales shows intent to defraud. *Id.* at 12 (citing *In re Credit Acceptance Corp. Sec. Litig.*, 50 F. Supp. 2d 662, 677 (E.D. Mich. 1999) (since "the CFO would have been an essential participant in any fraudulent scheme to defraud the company. The fact that he did not sell any shares during the class period undermines the suggestion that the Defendants engaged in securities fraud in order to profit from their own stock sales")).

and Plaintiff's Rule 10b-5 insider trading claim must be dismissed. *See Frankel*, 795 F. Supp. at 80 (dismissing derivative complaint and holding that because corporation "could not recover on its own behalf under Section 10(b) or Rule 10b-5[,] [t]he result is no different when the claim is brought as a shareholder derivative suit").[14]

## III.    THE DELAWARE LAW CLAIMS FAIL TO STATE ANY PLAUSIBLE CLAIM FOR RELIEF AGAINST MR. O'NEAL

Plaintiff also asserts numerous additional claims against Mr. O'Neal for breach of fiduciary duty (Count I); corporate waste (Count II); abuse of control (Count III); gross mismanagement (Count IV); contribution, indemnification and declaratory relief (Count V); aiding and abetting breach of fiduciary duty (Count VI); and unjust enrichment (Count XI) (collectively, the "Delaware Law Claims"). But the Complaint contains no well pled allegations to support any of these claims.

### A.    Plaintiff's Duty of Care Claims are Barred by Article XIII of Merrill's Certificate of Incorporation

To the extent Plaintiff's claims are premised on Mr. O'Neal's alleged breach of the duty of care, they must be dismissed for two independent reasons. First, as demonstrated in the next section below, the Complaint does not contain any well pled facts sufficient to meet Plaintiff's minimum pleading burden under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). Second, Article XIII of Merrill's Restated Certificate of Incorporation, enacted pursuant to Section 102(b)(7) of the Delaware General Corporation Law, fully exculpated Mr. O'Neal as a

---

[14]     In 1949, in *Brophy v. Cities Service Co.*, 70 A.2d 5 (Del. Ch. 1949), the Delaware Court of Chancery recognized a common law cause of action for insider trading, even in the absence of damage to the corporation. In the years since, most states have rejected a common law corporate cause of action against directors and officers for insider trading. Even in Delaware, the continued vitality of *Brophy* is in question. *See, e.g., In re Oracle Corp.*, 867 A.2d at 929-30; *Goldman v. Isaacs*, No. CIV. A. 18732, 2001 WL 1671439, *1 (Del. Ch. Dec. 17, 2001).

director of Merrill from liability for such claims. *See* Mem. of Law in Supp. of the Former

Merrill Lynch Outside Directors Defs' Mot. to Dismiss at 11-13. Under Delaware law, Plaintiff

cannot assert any duty of care claims against Mr. O'Neal unless she alleges specific facts to

show that Mr. O'Neal was acting in his capacity as an officer rather than as a director of Merrill

when he committed the alleged breach. *See THC Holdings Corp. v. Chinn*, No. 95 CIV. 4422

(KMW), 1998 WL 50202, at *8 (S.D.N.Y. Feb. 6, 1998) (Section 102(b)(7) exculpatory

provision in certificate of incorporation barred duty of care claims against officer/director where

complaint failed to allege which actions by defendant were taken in his capacity as an officer

rather than as a director) (citing *Arnold v. Soc'y for Sav. Bancorp, Inc*., 650 A.2d 1270, 1287

(Del. 1994) (embracing view that "where a defendant is a director and officer, only those actions

taken solely in the defendant's capacity as an officer are outside the purview of Section

102(b)(7)")); *see also* R. Franklin Balotti & Jesse A. Finkelstein, Delaware Law of Corp. &

Business Org. § 4.19, at 4-335 (Supp. 1992) (same). Here, Plaintiff has made no attempt to

plead such distinguishing facts and so her duty of care claims against Mr. O'Neal must be

dismissed.

**B.    None of the Delaware Law Claims Is Plausible On Its Face**

In any event, because the Complaint contains no factual allegations concerning

Mr. O'Neal to support the Remaining Claims, Plaintiff has failed to plead "enough facts to state

a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.[15] At bottom, Plaintiff's

conclusory allegation that Mr. O'Neal and other Merrill executives pursued a "high-risk business

strategy" (Compl. ¶ 121) amounts to nothing more than an improper attempt to hold Mr. O'Neal

---

[15]    In addition, Plaintiffs' Remaining Claims against Mr. O'Neal fail for all of the same
reasons why Plaintiff has failed to plead those claims against the Merrill Lynch Outside
Director Defendants, which Mr. O'Neal incorporates by reference. *See* Merrill Def's Br.
at 13-35.

personally liable for failing to adequately protect Merrill from exposure to the subprime lending market. But the Complaint contains no factual allegations at all to rebut the presumption that the protections of the business judgment rule apply to any business strategy decisions made by Mr. O'Neal during his tenure at Merrill. *See* Mem. of Law in Support of Defendant Jeffrey N. Edwards' Mot. to Dismiss at Pt. II. Courts have already rejected precisely these kinds of claims when they are unsupported by any well pled facts. *See In re Citigroup*, 2009 WL 2610746, at *5 (rejecting claim that directors faced substantial likelihood of liability "for 'allowing' Citigroup to pursue 'risky financial investment in subprime mortgages' despite numerous 'red flags' that should have alerted the directors to an impending collapse in the mortgage market").

Moreover, as the Delaware Court of Chancery explained in *In re Citigroup Inc. Shareholder Derivative Litigation*, Plaintiff's basic premise is fundamentally flawed:

> If defendants had been able to predict the extent of the problems in the subprime mortgage market, then they would not only have been able to avoid losses, but presumably would have been able to make significant gains for Citigroup by taking positions that would have produced a return when the value of subprime securities dropped.

964 A.2d 106, 131 n.78 (Del. Ch. 2009). Consequently, the Complaint fails to allege facts concerning Mr. O'Neal that "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks and citations omitted); *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) ("Allegations that are conclusory or unsupported by factual assertions are insufficient.").

## CONCLUSION

For the foregoing reasons, as well as those set forth in the briefs submitted by nominal defendant Bank of America and Messrs. Edwards, Fleming, Fakahany, and the Former Merrill Lynch Outside Directors, Mr. O'Neal respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice.  Because the Complaint has already been amended twice and because it rests on a non-actionable, non-sustainable premise, it should be dismissed without further leave to amend.  *See Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999) ("[A] district court may properly deny leave when amendment would be futile.").

Dated:  New York, New York
      September 21, 2009         SIMPSON THACHER & BARTLETT LLP

                        By:    /s/ Michael J. Chepiga
                               Michael J. Chepiga (mchepiga@stblaw.com)
                               Paul C. Curnin (pcurnin@stblaw.com)
                               Jason S. Stone (jstone@stblaw.com)
                               Sarah L. Dunn (sdunn@stblaw.com)

                               425 Lexington Avenue
                               New York, New York 10017
                               Telephone:  (212) 455-2000
                               Facsimile:  (212) 455-2502

                               **Attorneys for Defendant E. Stanley O'Neal**