UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                            :
IN RE MERRILL LYNCH & CO., INC.                             :    MASTER FILE NO.
SECURITIES, DERIVATIVE AND ERISA                            :    07cv9633 (JSR) (DFE)
LITIGATION                                                  :
                                                            :    **ECF Case**
                                                            :
This Document relates to:                                   :    **Electronically Filed**
Derivative Action, 07cv9696 (JSR) (DFE)                     :
------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT AHMASS L. FAKAHANY'S MOTION TO DISMISS THE
<u>VERIFIED THIRD AMENDED DERIVATIVE AND CLASS ACTION COMPLAINT</u>**

 

Milbank, Tweed, Hadley & McCloy LLP
 James N. Benedict
 Andrew W. Robertson
 Michael B. Weiner
One Chase Manhattan Plaza
New York, NY 10005-1413
Telephone:  (212) 530-5000

*Attorneys for Defendant Ahmass L. Fakahany*

**TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ............................................................................................................................ 2

ARGUMENT .................................................................................................................................. 3

I.   FEDERAL PLEADING STANDARDS REQUIRE PLAINTIFF TO ALLEGE FACTS SUPPORTING A REASONABLE INFERENCE THAT FAKAHANY PARTICIPATED IN SOME ACTIONABLE MISCONDUCT. ........................................ 3

II.  PLAINTIFF FAILS TO STATE A CLAIM THAT FAKAHANY ACTED IMPROPERLY IN CONNECTION WITH MERRILL'S CDO BUSINESS. ................. 5

III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST FAKAHANY IN CONNECTION WITH MERRILL'S STOCK REPURCHASE. ...................................... 7

IV.  PLAINTIFF FAILS TO STATE A CLAIM AGAINST FAKAHANY FOR INSIDER TRADING OR MISAPPROPRIATION OF INFORMATION. ...................... 9

CONCLUSION ............................................................................................................................ 12

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Acito v. IMCERA Group,
  47 F.3d 47 (2d Cir. 1995) .................................................................................................. 11

Ashcroft v. Iqbal,
  129 S. Ct. 1937 (2009) ............................................................................................... 2, 3, 4, 6

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ........................................................................................................... 3, 6

Ernst & Ernst v. Hochfelder,
  425 U.S. 185 (1976) ................................................................................................................ 7

Frankel v. Slotkin,
  795 F. Supp. 76 (E.D.N.Y. 1992) ........................................................................................ 12

Freeman v. Decio,
  584 F.2d 186 (7th Cir. 1978) ............................................................................................... 12

Garber v. Legg Mason, Inc.,
  537 F. Supp. 2d 597 (S.D.N.Y. 2009) .................................................................................. 4

Haberman v. Murchison,
  468 F.2d 1305 (2d Cir. 1972) .............................................................................................. 12

In re AstraZeneca Sec. Litig.,
  559 F. Supp. 2d 453 (S.D.N.Y. 2008) .................................................................................. 8

In re Oracle Corp. Deriv. Litig.,
  867 A.2d 904  (Del. Ch. 2004),
  aff'd mem., 872 A.2d 960 (Del. 2005) ................................................................................. 9

In re Sagent Tech., Inc., Deriv. Litig.,
  278 F. Supp. 2d 1079 (N.D. Cal. 2003) .............................................................................. 10

In re WRT Energy Sec. Litig.,
  Nos. 96 Civ. 3610 (JFK), 96 Civ. 3611 (JFK), 1997 WL 576023 (S.D.N.Y. Sept. 15, 1997),
  vacated on other grounds by 75 F. App'x 839 (2d Cir. 2003) ...................................................... 9

Kalnit v. Eichler,
  264 F. 3d 131 (2d Cir. 2001) ................................................................................................. 8

Keyspan Corp. Sec. Litig.,
  383 F. Supp. 2d 358 (E.D.N.Y. 2003) ................................................................................ 11

Malin v. XL Capital Ltd.,
  499 F. Supp. 2d 117 (D. Conn. 2007) ................................................................................ 11

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,
  126 S. Ct. 1503 (2006) ........................................................................................................ 12

Rattner v. Bidzos,
    No. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ......................................................... 9

Rich v. Maidstone Fin., Inc.,
    No. 98 Civ. 2569 (DAB), 2001 WL 286757 (S.D.N.Y. Mar. 23, 2001) ................................ 4, 5

Searls v. Glasser,
    64 F.3d 1061 (7th Cir. 1995) ................................................................................................ 11

SEC v. Espuelas,
    579 F. Supp. 2d 461 (S.D.N.Y. 2008) .................................................................................... 9

Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,
    365 F.3d 353 (5th Cir. 2004) .................................................................................................. 4

Stander v. Fin. Clearing & Servs. Corp.,
    718 F. Supp. 1204 (S.D.N.Y. 1989) ....................................................................................... 4

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007) ................................................................................................................ 8

Triton Constr. Co., Inc. v. Eastern Shore Elec. Servs., Inc.,
    No. 3290, 2009 Del. Ch. LEXIS 88 (Del. Ch. May 18, 2009) .............................................. 12

Winer Family Trust v. Queen,
    503 F.3d 319 (3d Cir. 2007) ................................................................................................... 4

**STATUTES**

15 U.S.C. § 78u-4(b)(1) ................................................................................................................ 4

15 U.S.C. § 78u-4(b)(2) ............................................................................................................. 4, 7

**RULES**

Fed. R. Civ. P. 8(a) ....................................................................................................................... 2

Fed. R. Civ. P. 9(b) .................................................................................................................... 4, 7

Defendant Ahmass L. Fakahany respectfully joins in the motion of Nominal Defendant Bank of America Corporation to dismiss the Verified Third Amended Derivative and Class Action Complaint (the "Complaint"), as well as those motions submitted by the Former Outside Directors of Merrill Lynch & Co., Inc. ("Merrill" or the "Company") and the other Individual Defendants, and submits this memorandum of law in support of his own motion to dismiss the claims asserted against him pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4.

## PRELIMINARY STATEMENT

Plaintiff's disappointment with the impact of the global financial crisis on Merrill and her hindsight disagreement with management decision-making in the midst of the crisis do not give rise to a cause of action against Fakahany. No matter the length of the Complaint or the variety of claims Plaintiff asserts against Fakahany, the simple truth is that Plaintiff does not and cannot allege any particularized facts supporting a reasonable inference that Fakahany engaged in any actionable misconduct during his service as Merrill's co-President and COO. The total absence of any such factual allegations requires dismissal of Plaintiff's claims against Fakahany in their entirety.

Despite a rambling and repetitive Complaint of more than 200 pages and 500 separately numbered paragraphs, Plaintiff says almost nothing about Fakahany or his involvement in any supposed misconduct. Indeed, the massive Complaint makes **only four** allegations about Fakahany, consisting of a general description of Fakahany's role and responsibilities during his 20-year career at the Company and allegations that he provided reports to Merrill's Board of Directors and other members of senior management about Merrill's CDO business in July and August 2007, that he sold a small percentage of his holdings of Merrill stock in February 2007,

and that he voluntarily resigned from the Company effective February 1, 2008 (many months before the merger with Bank of America). Based on these unremarkable allegations, Plaintiff asserts 11 separate causes of action against Fakahany, ranging from state-law breach of fiduciary duty to federal securities fraud and insider trading.

Plaintiff's claims against Fakahany are exactly the type of "unadorned, the-defendant-unlawfully-harmed-me accusation" that the Supreme Court has rejected as insufficient to state a claim even under Rule 8(a)'s notice pleading standards, let alone the heightened standards that apply to Plaintiff's fraud-based claims. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). The Complaint does not include any factual allegations supporting a reasonable inference that Fakahany engaged in misconduct. As such, Plaintiff's claims against Fakahany are purely speculative and must be dismissed. Id. at 1949-50.

## BACKGROUND

The 242-page, 566-paragraph Complaint barely mentions Fakahany and sheds only the faintest of light on Fakahany's supposed involvement in the alleged misconduct Plaintiff purportedly seeks to redress. In fact, the Complaint makes **only four** allegations specifically about Fakahany:

- Fakahany held a number of senior management positions during his 20-year career at Merrill. During most of the period relevant to Plaintiff's claims, he was Merrill's co-President and COO and, in that capacity, had various responsibilities for managing the Company, including overseeing certain risk-management functions. (See Compl. ¶¶ 39, 246, 247.)

- During the third quarter of 2007, Fakahany provided reports to Merrill's Board of Directors and other members of senior management regarding developments in the credit and housing markets and their impact on Merrill's CDO business. (See id. ¶ 185 ("At the end of July 2007, Fakahany . . . warned Merrill's Board and others, including O'Neal, Rossotti (a director in charge of Merrill's Risk Committee), and Rosemary Berkery (Merrill's General Counsel), of the mounting risk the company faced from CDOs and subprime MBS."); id. ¶ 186 ("[O]n August 9, 2007, Fakahany and Fleming . . . sent a three-page letter to Merrill's

2

> Board warning its members of Merrill's overexposure to CDOs and the subprime mortgage market . . . . The letter discussed the mounting losses and troubles facing Merrill Lynch's CDO exposure and explained that significant deterioration in this business had taken place in July 2007.").)

- Fakahany sold a small percentage of his holdings of Merrill stock in February 2007.  (See id. ¶ 387.)

- In November 2007, Fakahany notified Defendant Thain, then Merrill's CEO, of his intent to resign from Merrill during the first quarter of 2008 and formally resigned from Merrill effective February 1, 2008.  (See id. ¶¶ 39, 555.)

The Complaint also includes scores of references to the "Merrill Defendants," a collective designation for Merrill and all of the Individual Defendants.  (See id. ¶ 57.)  It makes various allegations about the Merrill Defendants' collective knowledge of certain facts and participation in certain acts that Plaintiff now contends constitute actionable misconduct.  (See, e.g., id. ¶¶ 58-59, 89, 91, 93, 118, 149, 155, 196, 382.)  The Complaint, however, does not specify whether, how, or when Fakahany specifically learned about any of these facts or participated in any of these acts.

## ARGUMENT

### I.  FEDERAL PLEADING STANDARDS REQUIRE PLAINTIFF TO ALLEGE FACTS SUPPORTING A REASONABLE INFERENCE THAT FAKAHANY PARTICIPATED IN SOME ACTIONABLE MISCONDUCT.

To survive a motion to dismiss, Plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Iqbal, 129 S. Ct. at 1950 (emphasizing that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").  Instead, the Complaint must plead "[f]actual allegations . . . to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  It will not suffice to establish "a sheer possibility" of unlawful conduct; rather, Plaintiff must "plead[] factual content that allows the

3

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

Because Plaintiff's claims sound in fraud, Rule 9(b) further requires that Plaintiff "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). To satisfy this requirement, the Complaint "must set forth the who, what, when, where, and how" of Fakahany's participation in any supposed misconduct. Garber v. Legg Mason, Inc., 537 F. Supp. 2d 597, 614 (S.D.N.Y. 2009) (citations omitted). In addition, with respect to Plaintiff's claims under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934, the PSLRA requires Plaintiff both to plead fraud with particularity and to "state with particularity facts giving rise to a strong inference that [Fakahany] acted with [scienter]." 15 U.S.C. § 78u-4(b)(1), (2) (emphasis added).

The requirement to plead fraud with particularity extends to each defendant individually, and the Complaint must include specific allegations as to each individual defendant's role in the alleged misconduct. See Rich v. Maidstone Fin., Inc., No. 98 Civ. 2569 (DAB), 2001 WL 286757, at *6 (S.D.N.Y. Mar. 23, 2001) ("[W]hen fraud is alleged against multiple defendants, a plaintiff must . . . set[] forth separately the acts complained of by each defendant.") (quotations omitted); Stander v. Fin. Clearing & Servs. Corp., 718 F. Supp. 1204, 1210 (S.D.N.Y. 1989) ("[W]here there are multiple defendants, . . . the complaint must disclose the specific nature of each defendant's participation in the alleged fraud."); Winer Family Trust v. Queen, 503 F.3d 319, 335-36 (3d Cir. 2007) ("The PSLRA requires plaintiffs to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions."); Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 365 (5th Cir. 2004) ("[T]he PSLRA requires the plaintiffs to distinguish among those they sue and enlighten each defendant

4

as to his or her particular part in the alleged fraud.") (emphasis in original; quotations omitted). Accordingly, Plaintiff's group-pleaded allegations about the collective knowledge and actions of the Merrill Defendants are unavailing. See Rich, 2001 WL 286757, at *7 ("Using the term 'Defendants' to clump all the Defendants together with 'vague allegations' of fraud is insufficient to meet the particularity requirements of Rule 9(b) and the PSLRA.") (citation omitted; alteration in original). Rather, Plaintiff's claims against Fakahany must be assessed in light of the factual allegations specifically about Fakahany.

Because Plaintiff's allegations about Fakahany do not support a reasonable inference that he participated in any actionable misconduct, the claims against him must be dismissed pursuant to Rule 12(b)(6).

## II. PLAINTIFF FAILS TO STATE A CLAIM THAT FAKAHANY ACTED IMPROPERLY IN CONNECTION WITH MERRILL'S CDO BUSINESS.

Plaintiff asserts six derivative common law claims against Fakahany (and other members of Merrill's senior management and Board of Directors) based on losses announced by the Company beginning in October 2007 due to the impact of the global financial crisis on Merrill's CDO business.[1]  The Merrill Defendants' motion to dismiss the Second Amended Complaint in this action sets forth the general deficiencies in Plaintiff's common law claims, and Fakahany incorporates those arguments by reference here. (See Mem. of Law in Support of Defs.' Mot. to Dismiss Pls.' Verified 2d Am. S'holder Deriv. and Class Action Compl. at 36-42 (Master Dkt. No. 144).)  Plaintiff's claims are particularly deficient as to Fakahany, however, because the Complaint does not contain any factual allegations supporting an inference that Fakahany failed

---

[1]  The six claims are for breach of the fiduciary duties of care, loyalty, and good faith (Count I); abuse of control (Count III); gross mismanagement (Count IV); contribution, indemnification, and declaratory relief (Count V); aiding and abetting breach of fiduciary duty (Count VI); and unjust enrichment (Count XI).

5

to act reasonably and prudently in carrying out his responsibilities as Merrill's co-President and COO.

The Complaint provides only minimal information about Fakahany's role in or responsibility for Merrill's CDO business. At most, it alleges that Fakahany had unspecified responsibilities for market risk management. (See, e.g., Compl. ¶ 39.) Critically, however, Plaintiff does not make any factual allegations suggesting that Fakahany failed to carry out his responsibilities in good faith.

For example, Plaintiff nowhere alleges that Fakahany failed to inform himself or failed to act appropriately based on his knowledge. Quite the contrary, the only specific allegation about Fakahany's involvement is that he provided updates to Merrill's Board of Directors and other members of senior management about market developments affecting Merrill's CDO business and warned "of the mounting risk the company faced from CDOs and subprime MBS." (Id. ¶¶ 185-186.) Plaintiff does not allege that Fakahany in any way misrepresented his views or the underlying facts or otherwise acted to mislead the Board or management. Rather, Plaintiff's allegations suggest only that Fakahany provided timely and appropriate updates, including by advising the Board in early August about market developments that "had taken place in July 2007." (Id. ¶ 186 (emphasis added).)

Unable to make factual allegations about Fakahany's involvement in any misconduct, Plaintiff falls back on hindsight, asking the Court to infer that Fakahany must have acted improperly because Merrill suffered losses in connection with its CDO business. This pleading technique cannot be squared with the Supreme Court's articulation of Rule 8 pleading standards in Twombly and Iqbal or Rule 9(b)'s requirement that fraud be pleaded with particularity. The mere fact that Merrill suffered losses in the wake of an unprecedented credit crisis that impacted

6

virtually every major financial institution simply does not give rise to a reasonable inference that those losses resulted from misconduct by Fakahany.

### III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST FAKAHANY IN CONNECTION WITH MERRILL'S STOCK REPURCHASE.

Plaintiff asserts two derivative claims against Fakahany based on Merrill's 2007 stock repurchase (the "Stock Repurchase"), one under Section 10(b) and Rule 10b-5 for alleged misrepresentations or omissions (Count VII), and one common law claim for alleged breaches of the fiduciary duties of care, loyalty, and candor (Count VIII). These claims must be dismissed because the Complaint fails to include particularized factual allegations establishing that Fakahany played any role in the Stock Repurchase or giving rise to the requisite "strong inference" that he acted with scienter.

The Complaint does not contain a single allegation concerning Fakahany's role or participation in the Stock Repurchase. It does not allege that Fakahany participated in the decision to undertake the Stock Repurchase. It does not allege that he drafted, reviewed, commented on, or provided any information for inclusion in the press release announcing the Stock Repurchase. Nor does it allege that Fakahany personally possessed any information that should have been disclosed prior to or in connection with the Stock Repurchase but was not.

Even assuming arguendo that Fakahany played some unspecified role in the Stock Repurchase, Plaintiff's claims fail for the additional reason that the Complaint does not allege facts giving rise to a "strong inference" that Fakahany acted with scienter, as required by the PSLRA. 15 U.S.C. § 78u-4(b)(2). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976). An inference of scienter may be established by alleging particularized facts (1) showing that the defendant had both motive and opportunity to commit fraud or (2) constituting strong circumstantial evidence

of conscious misbehavior or recklessness.  See Kalnit v. Eichler, 264 F. 3d 131, 138 (2d Cir. 2001).  To be "strong," as required by the PSLRA, the inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007) (emphasis added). Plaintiff's allegations fail under these standards.

Perhaps most telling, Plaintiff fails to allege that Fakahany stood to realize any concrete benefits from the Stock Repurchase.  For example, Plaintiff does not allege that Fakahany sold stock in connection with the Stock Repurchase.  Rather, the only alleged stock sales by Fakahany occurred in February 2007, nearly three months before Merrill announced the Stock Repurchase. (See Compl. ¶ 387.)

Because Plaintiff has failed to identify any apparent motive for Fakahany to commit fraud in connection with the Stock Repurchase, "the strength of [any] circumstantial allegations [of conscious misbehavior] must be correspondingly greater" in order to give rise to a strong inference of scienter.  Kalnit, 264 F.3d at 142 (internal quotations omitted).  The Complaint, however, does not allege any facts whatsoever that would support the inference that Fakahany personally was aware of any material misrepresentations or omissions or otherwise acted improperly in connection with the Stock Repurchase.  Indeed, all of Plaintiff's allegations rely on group pleading and, therefore, cannot serve as the basis for an inference of scienter as to Fakahany.  See In re AstraZeneca Sec. Litig., 559 F. Supp. 2d 453, 472 (S.D.N.Y. 2008) ("The group pleading doctrine cannot apply to create a presumption of scienter as to individual defendants."); In re WRT Energy Sec. Litig., Nos. 96 Civ. 3610 (JFK), 96 Civ. 3611 (JFK), 1997 WL 576023, at *14 (S.D.N.Y. Sept. 15, 1997) ("[Rule 9(b)] would too easily be thwarted if plaintiffs could plead scienter against individuals holding senior management positions merely

8

by alleging that due to their positions with [the company] and access to inside information, they must have known about the alleged misrepresentations and omissions.") (quotations omitted), vacated on other grounds by 75 F. App'x 839 (2d Cir. 2003).

## IV.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST FAKAHANY FOR INSIDER TRADING OR MISAPPROPRIATION OF INFORMATION.

Plaintiff brings two derivative claims against Fakahany for insider trading and misappropriation of information under common law (Count IX) and Section 10(b) and Rule 10b-5 (Count X), respectively.  To state a claim for insider trading under Delaware law, Plaintiff must allege facts supporting a reasonable inference that Fakahany (i) "possessed material, non-public . . . information" and (ii) "used that information improperly by making trades because [he] was motivated, in whole or in part, by the substance of that information." In re Oracle Corp. Deriv. Litig., 867 A.2d 904, 934 (Del. Ch. 2004), aff'd mem., 872 A.2d 960 (Del. 2005); Rattner v. Bidzos, No. 19700, 2003 WL 22284323, at *11 (Del. Ch. Oct. 7, 2003) ("[I]t must be shown that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information.") (internal quotations omitted).  Similarly, under Section 10(b) and Rule 10b-5, Plaintiff must allege facts (i) establishing that Fakahany "knowingly possessed" material, non-public information and (ii) giving rise to a strong inference that he acted with scienter in connection with his stock sales.  See SEC v. Espuelas, 579 F. Supp. 2d 461, 483 (S.D.N.Y. 2008).  The Complaint fails to state a claim under these standards.

Plaintiff alleges that Fakahany sold 162,580 shares of his personal holdings of Merrill stock in a series of sales between February 1 and February 7, 2007.  (Compl. ¶ 387.)  As an initial matter, Plaintiff overstates the number of shares sold; Fakahany actually sold 77,998

shares, less than half the number alleged by Plaintiff. (See Kasner Decl. Ex. PP.[2]) More importantly, however, Plaintiff fails to connect Fakahany's sales to his possession of material, adverse, non-public information about Merrill or its CDO business.

Plaintiff makes generic and conclusory assertions that "the Merrill Officer Defendants, as officers of Merrill Lynch, were privy to confidential financial information concerning the company's business, financial condition, future business prospects and outlook" (Compl. ¶ 385), and that "the Insider Selling Defendants knew that Merrill Lynch's assets and revenues were materially overstated and its liabilities understated." (Id. ¶ 478; see also id. ¶ 472.) Totally absent, however, are any particularized factual allegations about Fakahany's personal awareness of any specific material, non-public information at the time of his sales of Merrill stock. See In re Sagent Tech., Inc., Deriv. Litig., 278 F. Supp. 2d 1079, 1092 (N.D. Cal. 2003) (holding plaintiffs must plead that defendants traded with knowledge of "specific material, nonpublic information") (emphasis added). Indeed, the Complaint's only allegations about Fakahany's personal knowledge of adverse developments affecting Merrill's CDO business relate to updates he provided to the Board and other members of senior management in July and August 2007— nearly six months after he sold stock in February.

Further, the details of Fakahany's sales, largely ignored by Plaintiff, do not lend even the slightest support to an inference that he "knowingly possessed" adverse, non-public information about Merrill at the time he transacted, much less a strong inference that he sold stock as part of a fraudulent scheme to take advantage of that information. Fakahany's sales represented less than 10% of his total holdings of Merrill stock and options. (See Kasner Decl., Ex. II at 35;

---

[2]   References in the form "Kasner Decl. Ex. __" are to the July 21, 2008 Declaration of Jay B. Kasner in Support of the Merrill Defendants' Motion to Dismiss the Consolidated Amended Complaint (Master Dkt. No. 55).

10

Kasner Decl., Ex. JJ at 31.)  As such, even after the February 2007 sales, Fakahany retained significant exposure to the long-term prospects of Merrill by continuing to hold 937,197 shares of stock and options.  (See Kasner Decl., Ex. JJ at 31.)  In fact, because most of his performance compensation for the year 2006 consisted of grants of restricted stock, Fakahany's overall ownership of stock and options actually increased, notwithstanding the sales.  (Compare Kasner Decl., Ex. II at 35 (showing total beneficial ownership of stock and options of 833,430 before the sales), with Kasner Decl., Ex. JJ at 31 (showing total beneficial ownership of stock and options of 937,197 after the sales).)

      Had Fakahany been trading with knowledge that the Company was in a "precarious position" due to "improper and unsound business and investment practices" (Compl. ¶ 385), he certainly would have acted more aggressively to reduce his long-term exposure to the Company.  In fact, however, even as the value of Merrill's stock began to decline due to adverse developments in the financial markets—indeed, even after Merrill announced losses in connection with its CDO and other mortgage-related businesses beginning in October 2007—Fakahany maintained significant holdings of Merrill stock and options.  These facts completely undermine any inference that Fakahany traded as part of a fraudulent scheme to take advantage of material, adverse, non-public information.  See Searls v. Glasser, 64 F.3d 1061, 1068 (7th Cir. 1995) (net acquisition of shares was "a position unlikely to be taken by an insider who has unpublished knowledge of the company's slowdown"); see also, e.g., Acito v. IMCERA Group, 47 F.3d 47, 54 (2d Cir. 1995); Malin v. XL Capital Ltd., 499 F. Supp. 2d 117, 150-56 (D. Conn. 2007); In re Keyspan Corp. Sec. Litig., 383 F. Supp. 2d 358, 382-86 (E.D.N.Y. 2003).

      In any event, Plaintiff's federal insider trading claim must be dismissed because Plaintiff cannot allege that either Merrill or Bank of America—on whose behalf the claim is asserted—

suffered any damage as a result of Fakahany's stock sales.  See Frankel v. Slotkin, 795 F. Supp. 76, 79-80 (E.D.N.Y. 1992) ("Misappropriation of confidential information belonging to the corporation does not give rise to a Rule 10b-5 claim on behalf of the corporation when it was not injured by the fraud."); see also Haberman v. Murchison, 468 F.2d 1305, 1312 (2d Cir. 1972) ("While there may be a parallel right, under state law, in the corporation to recover profits from insiders who use inside information to their own advantage, there is no such derivative right under federal law.") (emphasis in original; citations omitted); Freeman v. Decio, 584 F.2d 186, 192 (7th Cir. 1978) (dismissing derivative claim based on allegations of insider trading because "there is no injury to the corporation which can serve as a basis for recognizing a right of recovery in favor of the latter").[3]

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety as against Defendant Ahmass L. Fakahany.  Because Plaintiff has already had multiple opportunities to correct the pleading deficiencies in the Complaint, the dismissal should be with prejudice.

---

[3] Plaintiff also asserts one state-law class action claim against Fakahany for allegedly aiding and abetting and conspiring with Defendant Thain to mislead investors during the period from January 18, 2008 through September 15, 2008 (Count XVII).  Plaintiff has conceded that the class action claim is covered by and subject to the parties' settlement in the litigation before the Delaware Court of Chancery (C.A. No. 4066-VCN) (see July 27, 2009 Letter to the Court from D. Brower), and she will be required to dismiss that claim once the Delaware settlement is final.  In any event, the class action claim should be dismissed because (1) it is precluded by the Securities Litigation Uniform Standards Act of 1998, see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 126 S. Ct. 1503 (2006); and (2) the Complaint fails to allege that Fakahany "knowingly participated" in any conspiracy to mislead investors.  See Triton Constr. Co., Inc. v. Eastern Shore Elec. Servs., Inc., No. 3290, 2009 Del. Ch. LEXIS 88, at *53 (Del. Ch. May 18, 2009).  Indeed, Fakahany resigned from Merrill effective February 1, 2008 and, therefore, was only present for two weeks out of the nine-month Class Period.

Dated: September 21, 2009
New York, NY

By: \_\_/s/ James N. Benedict_____

Milbank, Tweed, Hadley & McCloy LLP
  James N. Benedict (jbenedict@milbank.com)
  Andrew W. Robertson (arobertson@milbank.com)
  Michael B. Weiner (mweiner@milbank.com)
One Chase Manhattan Plaza
New York, NY  10005-1413
Telephone:  (212) 530-5000

*Attorneys for Defendant Ahmass L. Fakahany*

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 21, 2009.

                                          Andrew W. Robertson