UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
IN RE MERRILL LYNCH & CO., INC.     :    Master File No.
SECURITIES, DERIVATIVE AND ERISA  :    07-CV-9633(JSR)
LITIGATION                                :
-------------------------------------------------------- x   **ECF Case**
This Document Relates to:               :
Derivative Action, 07cv9696(JSR)(DFE) :    **Electronically Filed**
-------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GREGORY J. FLEMING'S MOTION TO DISMISS THE VERIFIED THIRD SHAREHOLDER DERIVATIVE AND CLASS ACTION COMPLAINT

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

*Attorneys for Defendant Gregory J. Fleming*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................. 5

I.     PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECTION 10(b) ............... 5

      A.    Plaintiff Fails to State a Claim Based on the April 2007 Stock
           Repurchase Plan ........................................................................................ 6

      B.    Plaintiff Fails to State a Claim Based on Mr. Fleming's Alleged Insider
           Sale .............................................................................................................. 9

      C.    The Allegations Regarding the August 9, 2007 Memo Do Not Support
           Scienter Under Section 10(b) ................................................................... 12

II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER DELAWARE LAW
     AGAINST MR. FLEMING ..................................................................................... 14

      A.    Plaintiff Fails to State Any Claim Against Mr. Fleming Based on the
           Agreement to Pay Bonuses to Merrill Executives in 2008 ..................... 14

      B.    Plaintiff Fails to State a Claim for Breach of Fiduciary Duty Against Mr.
           Fleming Based on the April 2007 Share Repurchase Plan ..................... 17

      C.    Plaintiff Fails to State a Claim for Breach of Fiduciary Duty Against Mr.
           Fleming Based on His February 6, 2007 Stock Sale ............................... 18

III.   COUNT XVII IS PRECLUDED BY THE DELAWARE SETTLEMENT .................... 18

CONCLUSION .............................................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

ATSI Commc'ns Inc. v. Shaar Fund, Ltd.,
 493 F.3d 87 (2d Cir. 2007)....................................................................5, 6

Acito v. IMCERA Group, Inc.,
 47 F.3d 47 (2d Cir. 1995)..........................................................................9

American Centennial Ins. Co. v. Seguros La Republica, S.A.,
 1996 WL 304436 (S.D.N.Y. June 5, 1996) .........................................15

Aronson v. Lewis,
 473 A.2d 805 (Del. 1984), overruled on other grounds,
 Brehm v. Eisner, 746 A.2d 244 (Del. 2000) .....................................17

Ashcroft v. Iqbal,
 129 S. Ct. 1937 (2009)...............................................................................5

Bell Atl. Corp. v. Twombly,
 550 U.S. 544 (2007)....................................................................................5

Bond Opportunity Fund v. Unilab Corp.,
 2003 WL 21058251 (S.D.N.Y. May 12, 2003), aff'd by unpublished
 summary order, 87 Fed. Appx. 772 (2d Cir. 2004)............................7

In re Bristol-Myers Sqibb Sec. Litig.,
 312 F. Supp. 2d 549 (S.D.N.Y. 2004)..................................................10

In re Burlington Coat Factory Sec. Litig.,
 114 F.3d 1410 (3d Cir. 1997).................................................................8

CALPERS v. Chubb Corp.,
 394 F.3d 126 (3d Cir. 2004)..................................................................12

Cede & Co. v. Technicolor, Inc.,
 634 A.2d 345 (Del. 1993), modified on reh'g on
 other grounds, 636 A.2d 956 (Del. 1994) ..........................................17

Cinerama, Inc. v. Technicolor, Inc.,
 663 A.2d 1156 (Del. 1995) .....................................................................17

In re Cross Media Marketing Corp. Sec. Litig.,
 314 F. Supp. 2d 256 (S.D.N.Y. 2004)...................................................7

CTS Corp. v. Dynamics Corp. of Am.,
    481 U.S. 69 (1987)......................................................................................14

Dura Pharms., Inc. v. Broudo,
    544 U.S. 336 (2005)..............................................................................5, 12

Ellison v. Am. Image Motor Co.,
    36 F. Supp. 2d 628 (S.D.N.Y. 1999)...........................................................7

In re Federated Dep't Stores, Inc. Sec. Litig.,
    2005 U.S. Dist. LEXIS 4743 (S.D.N.Y. March 23, 2005) ....................13

Fishbaum v. Liz Claiborne, Inc.,
    1999 U.S. App. LEXIS 18155 (2d Cir. July 27, 1999)..........................11

In re Gildan Activewear, Inc. Sec. Litig.,
    2009 U.S. Dist. LEXIS 55984 (S.D.N.Y. July 1, 2009) ........................11

In re Glenayre Techs., Inc. Sec. Litig.,
    1998 U.S. Dist. LEXIS 20344 (S.D.N.Y. Dec. 30, 1998),
    aff'd, 201 F.3d 431 (2d Cir.1999) ) ..........................................................11

Guttman v. Huang,
    823 A.2d 492 (Del. Ch. 2003)...................................................................18

Hirsch v. Arthur Andersen & Co.,
    72 F.3d 1085 (2d Cir. 1995).......................................................................15

In re Keyspan Corp. Sec. Litig.,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) .....................................................10

In re Merrill Lynch & Co., Inc. Secs., Deriv. & ERISA Litig.,
    597 F. Supp. 2d 427 (S.D.N.Y. 2009)...................................................4, 15

In re Oracle Corp.,
    867 A.2d 904 (Del. Ch. 2004) , aff'd, 872 A.2d 960 (Del. 2005) ...........18

Pac. Elec. Wire & Cable Co., Ltd. v. Set Top Int'l, Inc.,
    2005 WL 578916 (S.D.N.Y. Mar. 11, 2005) ............................................7

Rombach v. Chang,
    355 F.3d 164 (2d Cir. 2004).......................................................................6

Shapiro v. Cantor,
    123 F.3d 717 (2d Cir. 1997).......................................................................8

In re Sina Corp. Sec. Litig.,
    2006 WL 2742048 (S.D.N.Y. Sept. 26, 2006).........................................................13

In re Take-Two Interactive Sec. Litig.,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008).................................................................9

Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,
    531 F.3d 190 (2d Cir. 2008)..........................................................................6

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007)................................................................................5, 12

Trans World Airlines, Inc. v. Hughes,
    449 F.2d 51 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973)..............................15

In re Vantive Corp. Sec. Litig.,
    283 F.3d 1079 (9th Cir. 2002) ........................................................................10

In re Walt Disney Co. Deriv. Litig.,
    906 A.2d 27 (Del. 2006) .............................................................................17

Wright v. Ernst & Young LLP,
    152 F.3d 169 (2d Cir. 1998)..........................................................................8

Zucco Partners, LLC v. Digimarc Corp.,
    2009 U.S. App. LEXIS 7025 (9th Cir. Feb. 10, 2009) .................................................11

**STATUTES**

Fed. R. Civ. P. 9(b) ..........................................................................2, 3, 5, 6, 7, 12

Fed. R. Civ. P. 12(b)(6)  ...........................................................................5

Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(b))........................... passim

Securities Exchange Act of 1934 (15 U.S.C. 78) §10(b).......................................... passim

Securities Litigation Uniform Standards Act of 1998 (15 U.S.C. § 78bb(f)).............................19

Defendant Gregory J. Fleming submits this memorandum of law in support of his motion to dismiss the Verified Third Amended Shareholder Derivative and Class Action Complaint (the "Complaint").[1] This so-called "double derivative" action is brought on behalf of Merrill Lynch & Co., Inc. ("Merrill") and Bank of America Corporation ("BofA") as nominal defendants and against 15 other defendants, including Mr. Fleming. To avoid duplicative briefing, Mr. Fleming expressly adopts and incorporates herein the arguments of all defendants in support of their motions to dismiss, also filed today.

## PRELIMINARY STATEMENT

In its 242 pages, the Complaint strings together block quotes from public company statements and news reports, and recites legal conclusions, but says precious little about Mr. Fleming. Hidden in the mounds of vague allegations regarding what various overlapping groups of people did are only three threadbare allegations directly addressing Mr. Fleming, namely, that he:

- sold $7.5 million of Merrill securities on February 6, 2007, while possessing material non-public information about Merrill's financial condition and future business prospects (Compl. ¶ 387);

- co-authored an internal Merrill memorandum discussing the company's subprime mortgage-related losses in July 2007 and warning that Merrill was overexposed to risky subprime mortgage-related assets (id. ¶¶ 186-87, 356); and

- arranged the payment of bonuses to himself and other Merrill employees in 2008 without disclosing the amount of those bonuses to BofA's board of directors. (Id. ¶¶ 291, 301, 314, 491-93.)

---

[1] Exhibits ("Ex. __") referred to in this memorandum of law are attached to the Declaration of Jonathan D. Polkes in support of this motion ("Polkes Decl.") or the Declaration of Jay B. Kasner in Support of the Merrill Defendants' Motions to Dismiss the Consolidated Amended Complaints, dated July 18, 2008 ("Kasner Decl.").

1

In addition, the Complaint includes one derivative claim against Mr. Fleming in which he is not even referred to individually, but rather only as a member of a group (the so-called "Merrill Officer Defendants"), which asserts that those defendants initiated and orchestrated the April 2007 Stock Repurchase Plan that caused Merrill to repurchase securities at inflated prices. (Id. ¶ 454.)

Mr. Fleming is alleged to have violated Section 10(b) in two respects. First, it is alleged that (as one of the Merrill Officer Defendants) he violated Section 10(b) by initiating and approving the April 2007 Stock Repurchase Plan. But the Complaint does not plead what Mr. Fleming actually did (if anything) in connection with the plan. Indeed, it did not describe why Mr. Fleming, who at the time the plan was approved was the head of the Investment Banking Division of Merrill, even would have been asked to review or comment on the plan, let alone approve it. Nor does it explain why Mr. Fleming would have benefited from a scheme to cause his employer to waste its money on overpriced stock. Most fundamentally, the Complaint does not claim, as it must, that Mr. Fleming made any false or misleading statements to Merrill to induce it to approve the plan, or that he made any statements about the plan to anyone at any time. None of these allegations are pled with anything even approximating the degree of particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (Point I.A.)

Second, the Complaint also charges Mr. Fleming with insider trading under Section 10(b), claiming that he sold stock in February 2007 with inside knowledge of poor financial performance at Merrill. But the Complaint is silent as to what financial information Mr. Fleming had and how he came to have it (especially given that at the time of the sale he was in the Investment Banking Division, which was not the locus of the financial difficulties caused

by subprime mortgages discussed elsewhere in the Complaint). Moreover, the public record demonstrates that Mr. Fleming's sale was de minimis in the context of Mr. Fleming's Merrill stock holdings, that he was in fact a net accumulator of Merrill stock during 2007 and that his February 2007 trade was consistent with his prior trading practice. These facts negate any inference that Mr. Fleming's stock sale was made with scienter. (Point I.B.)

Also presumably to support a finding of scienter in support of the Section 10(b) claims, the Complaint refers obliquely to a memo that Mr. Fleming co-wrote for Merrill's board of directors in August 2007. Plaintiff alleges that the memorandum discusses subprime exposure in July, but she neither attaches the memorandum to the Complaint nor quotes it. Plaintiff provides no detail regarding the document that would allow this Court to assess its probative value. Moreover, the Complaint does not even claim that the memorandum contains falsehoods or otherwise misled the Board – much less does the Complaint identify any false statements with specificity. Most important, this memo was written in August 2007 and concerned Merrill's performance in July, long after the events at issue in <u>both</u> of the Section 10(b) claims: (i) the share repurchase plan was approved in April 2007, and (ii) Mr. Fleming's stock sale was in February 2007. Plaintiff does not and cannot explain how a memo written in August regarding Merrill's subprime exposure in July could reflect on his state of mind regarding actions that took place many months before. Such meager allegations do not satisfy the pleading requirement of the PSLRA and Rule 9(b). (Point I.C.)

The Complaint also attempts to squeeze several Delaware causes of action out of the single allegation that Mr. Fleming arranged for bonuses to be paid to Merrill employees and himself, yet somehow withheld information regarding the bonuses from BofA's board of directors. As a threshold matter, any claims based on the bonus payments are barred by the

Court's February 17, 2009 Opinion and Order in this matter. There this Court granted leave for plaintiff to file a new complaint "based on the same underlying allegations as the actions here dismissed." In re Merrill Lynch & Co., Inc. Secs., Deriv. & ERISA Litig., 597 F. Supp. 2d 427, 431 (S.D.N.Y. 2009). That prior complaint contained no allegations regarding bonuses, and no allegations regarding Mr. Fleming in this regard. Thus these are new allegations which may not be brought here pursuant to this Court's Opinion and Order. Moreover, the plaintiff's allegations are contradicted by other allegations in the same Complaint and by the public record. For example, elsewhere in the Complaint, plaintiff pleads that BofA's board of directors knew of and approved the bonuses to Merrill employees. (Compare Compl. ¶ 491 with id. ¶ 306.) Similarly, the public record demonstrates that Mr. Fleming in fact received no bonus in 2008. Thus these allegations fail to make out a cause of action. (Point II.A.)

Plaintiff also tries to recycle the same allegations underlying the Section 10(b) claims (the approval of the stock repurchase plan and Mr. Fleming's stock sale) as Delaware breach of fiduciary duty claims. These claims, however, fail for the same reasons the Section 10(b) claims fail, as well as because the decision to approve the stock repurchase plan is protected by the business judgment rule. (Point II.B and C.)

Finally, Count XVII for aiding and abetting and conspiracy under Delaware law must be dismissed because the claim is barred by a settlement in the Delaware Court of Chancery. (Point III.)

In sum, because the Complaint does not and cannot allege with particularity that Mr. Fleming individually engaged in any wrongdoing, plaintiff falls back on vague and generalized claims against Mr. Fleming and impermissibly groups him with all the other individual defendants in this case, as to whom the allegations of wrongdoing are equally vague

and conclusory. Such pleading falls far short of stating a claim against a defendant under Section 10(b) or state law.

## ARGUMENT

In deciding a motion to dismiss under Rule 12(b)(6), a court must assume that well-pleaded factual allegations in the complaint are true but need not accept "legal conclusions," "'naked assertions'" without "'factual enhancements,'" conclusory statements or implausible inferences. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.[2]

## I.    PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECTION 10(b)

To state a claim under Section 10(b), a plaintiff must allege: (i) a "material misrepresentation (or omission)," (ii) with "scienter," (iii) a "connection with the purchase or sale of a security," (iv) reasonable "reliance" by the plaintiff on the representation or omission, (v) "economic loss" and (vi) a loss proximately caused by the misrepresentation or omission, i.e., "loss causation." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005). Section 10(b) claims are subject to the heightened pleading standards of the PSLRA and Rule 9(b). ATSI, 493 F.3d at 99. Under the PSLRA, a plaintiff must allege, with particularity, the allegedly misleading statement, why it is misleading, and facts giving rise to a "strong inference" that the

---

[2] When reviewing a motion to dismiss under Rule 12(b)(6) and the PSLRA, a court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). A court may also consider "matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

speaker acted with the required state of mind—scienter—"'a mental state embracing intent to deceive, manipulate, or defraud.'" <u>Teamsters Local 445 Freight Div. Pension Fund</u> v. <u>Dynex Capital Inc.</u>, 531 F.3d 190, 194 (2d Cir. 2008) (citation omitted); 15 U.S.C. § 78u-4(b)(1) and (2). When the complaint contains allegations of fraud, Fed. R. Civ. P. 9(b) "requires that 'the circumstances constituting fraud be stated with particularity.'" <u>ATSI</u>, 493 F.3d at 99 (quoting Fed. R. Civ. P. 9(b)).[3]

The Complaint alleges two counts against Mr. Fleming under Section 10(b). In Count VII, plaintiff alleges that Mr. Fleming is liable under Section 10(b) for "initiat[ing]" and "orchestrating" the April 2007 Stock Repurchase Plan. (Compl. ¶ 454.) In Count X, plaintiff alleges that Mr. Fleming is liable under Section 10(b) for insider trading. (<u>Id.</u> ¶¶ 476-82.) As set forth below, both of these theories fail as a matter of law.

### A.    Plaintiff Fails to State a Claim Based on the April 2007 Stock Repurchase Plan

Plaintiff's Section 10(b) claim based on the April 2007 Stock Repurchase Plan fails as a matter of law because the Complaint alleges no facts establishing that Mr. Fleming initiated or orchestrated the plan. In fact, the Complaint alleges no facts at all describing what, if anything, Mr. Fleming did with respect to the plan. For example, it does not allege that Mr. Fleming participated in the decision to undertake the stock repurchase or that he drafted, reviewed, commented on or provided any information for inclusion in the press release announcing the stock repurchase. He is not even mentioned by name. To the contrary, the

---

[3] Each of plaintiff's claims sounds in fraud. (<u>See</u>, <u>e.g.</u>, Compl. ¶¶ 29, 480, n. 36.) <u>Rombach</u> v. <u>Chang</u>, 355 F.3d 164 (2d Cir. 2004) ("Rule 9(b) applies to 'all averments of fraud'" irrespective of whether fraud is an element of the cause of action). Accordingly, each of plaintiff's claims is subject to Rule 9(b).

Complaint simply asserts that the "Merrill Officer Defendants" initiated and orchestrated the plan. (E.g., Compl. ¶¶ 153, 454.)  Thus, plaintiff impermissibly groups Mr. Fleming with senior Merrill corporate officials who allegedly were involved in the decision to approve the plan. (E.g., id.)  It is well-established, however, that such "group" pleading does not satisfy the requirements for pleading a claim under Section 10(b).  In re Cross Media Marketing Corp. Sec. Litig., 314 F. Supp. 2d 256, 262 (S.D.N.Y. 2004) ("the PSLRA requires that the complaint 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'  The statute's use of the singular 'defendant' counsels against group pleading in actions arising in securities fraud cases since the enactment of the PSLRA."); Bond Opportunity Fund v. Unilab Corp., 2003 WL 21058251, at *4 (S.D.N.Y. May 12, 2003) ("the PSLRA has eliminated the 'group pleading' doctrine" and thus "[p]laintiffs may not impute knowledge to the individual defendants solely on the basis of the positions they held"), aff'd by unpublished summary order, 87 Fed. Appx. 772 (2d Cir. 2004); see also Pac. Elec. Wire & Cable Co., Ltd. v. Set Top Int'l, Inc., 2005 WL 578916, at *15 (S.D.N.Y. Mar. 11, 2005) ("Plaintiffs' lumping together of fraud allegations against the Defendants . . . does not satisfy Rule 9(b)"); Ellison v. Am. Image Motor Co., 36 F. Supp. 2d 628, 640 (S.D.N.Y. 1999) (a plaintiff cannot satisfy Rule 9(b) by filing "a complaint in which 'defendants are clumped together in vague allegations'").

Moreover, there is simply no reason to think that Mr. Fleming would have been involved in the plan.  On April 30, 2007, when the April 2007 Stock Repurchase Plan was announced, Mr. Fleming was still the head of Merrill's Investment Banking Division, which is not alleged to have had any involvement in the plan.  (Compl. ¶ 150.)  Indeed, Mr. Fleming was not named Merrill's President and Chief Operating Officer until May 16, 2007, after the plan was approved—a fact that the Complaint itself acknowledges.  (Id. n. 61, ¶ 150.)  As a business

unit head and not a senior corporate level official, there is no reason in the Complaint to infer that Mr. Fleming would have had any participation in the initiation or orchestration of the plan.

Equally fatal, plaintiff does not and cannot allege that Mr. Fleming stood to benefit from a scheme to repurchase shares at inflated prices. For example, plaintiff does not allege that Mr. Fleming sold stock to the Company in the repurchase plan. To the contrary, the only stock sale that the Complaint alleges against Mr. Fleming is his stock sale in February 2007, nearly three months before Merrill announced the repurchase. (See Compl. ¶¶ 387, 150.)

In any event, plaintiff does not allege that Mr. Fleming made a misstatement, much less an actionable one to Merrill, or to anyone else. As noted, the PSLRA requires that a plaintiff asserting a Section 10(b) claim must allege that "the defendant . . . [m]ade an untrue statement of a material fact." 15 U.S.C. § 78u-4(b)(1) (emphasis added). In Wright v. Ernst & Young LLP, the Second Circuit held that "'a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b).'" 152 F.3d 169, 175 (2d Cir. 1998) (quoting Shapiro v. Cantor, 123 F.3d 717, 720 (2d Cir. 1997)); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1417 (3d Cir. 1997) (same). There simply is no allegation here that Mr. Fleming said anything false to Merrill at any time. Indeed, none of the public statements that plaintiff challenges was signed by or attributed to Mr. Fleming, and plaintiff alleges no facts to the contrary. (E.g., Compl. ¶¶ 160, 166-67, 181-82, 191.) And the Complaint pleads no facts to support an inference that Mr. Fleming would have even seen, much less reviewed or approved, these public statements. As Mr. Fleming is not alleged to have made a statement or have had a statement attributed to him, he cannot be liable under Section 10(b).

**B.**    **Plaintiff Fails to State a Claim Based on Mr. Fleming's Alleged Insider Sale**

Plaintiff's Section 10(b) claim based on Mr. Fleming's February 6, 2007 sale of $7.5 million of shares of Merrill stock also fails to state a claim as a matter of law.  (Compl. ¶¶ 385-87.)[4]  First, plaintiff alleges no facts establishing that on February 6, Mr. Fleming possessed specific material non-public information regarding Merrill's exposure to subprime mortgage-related assets.  See In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247, 310 (S.D.N.Y. 2008) (holding allegations of insider trading insufficient where plaintiffs failed to plead that defendants "possessed [specific] material, nonpublic information").  Rather, plaintiff merely asserts as an ipse dixit that Mr. Fleming possessed such knowledge.  This lack of detail alone is fatal to plaintiff's insider trading allegation.  Moreover, in so doing, the Complaint overlooks the fact that on February 6, Mr. Fleming was still the head of Merrill's Investment Banking Division, which is not alleged to have had any involvement in Merrill's subprime related businesses. There is no reason to infer that at the time of the sale Mr. Fleming had any insider knowledge regarding the state of Merrill's exposure to the subprime mortgage crisis.

Second, the circumstances surrounding Mr. Fleming's sale negate any inference of scienter.  The $4.2 million of Merrill stock that Mr. Fleming sold on February 6 represented less than 4.7% of the Merrill stock that he beneficially owned in 2007, so that, throughout 2007, Mr. Fleming consistently retained over 90% of his Merrill stock holdings.  Far larger percentage stock sales have been held not to give rise to an inference of scienter.  See, e.g., Acito v. IMCERA Group, Inc., 47 F.3d 47, 54 (2d Cir. 1995) (plaintiffs failed to allege unusual stock

---

[4] The Complaint misstates the number of shares that Mr. Fleming sold in February 2007. Plaintiff alleges that Mr. Fleming sold 80,109 shares; in fact, he sold 45,020.  (See Kasner Decl. Ex. QQ.)

sales where defendant sold less than 11% of total holdings); In re Vantive Corp. Sec. Litig., 283

F.3d 1079, 1092 (9th Cir. 2002) (sales of 38% of defendants' total holdings insufficient to infer

scienter).

In fact, as reflected on the following chart, Mr. Fleming's total holdings increased

year after year from 2005 through 2007—even as the value of Merrill's stock began to decline as

a result of adverse developments in the financial markets in 2007 and even after Merrill

announced losses in its subprime related businesses beginning in October 2007:

| Gregory J. Fleming Stock Sales[5] | | | | | |
|---|---|---|---|---|---|
| Year | Shares Sold | Avg. Price | Proceeds | Shares Beneficially Owned (*before* sales) | Percentage of Shares Sold |
| 2005 | 27,590 | $56.08 | $1,547,137 | 545,476 | 5.1% |
| 2006 | 12,846 | 74.70 | 959,591 | 684,319 | 1.9 |
| 2007 | 45,020 | 94.09 | 4,235,785 | 957,924 | 4.7 |

These facts undermine plaintiff's allegation that Mr. Fleming had scienter.  In re Bristol-Myers

Squibb Sec. Litig., 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) ("increas[ing] . . . holdings during

the class period [is] a fact wholly inconsistent with fraudulent intent") (emphasis in original); In

re Keyspan Corp. Sec. Litig., 383 F. Supp. 2d 358, 383-84 (E.D.N.Y. 2003) (retention of shares

by key officers inconsistent with an inference of scienter).

---

[5] All the information in the above chart is derived from the Proxy Statements and Form 4s.
(Kasner Decl. Exs. QQ, II-KK (The "Shares Beneficially Owned/Percentage of Shares Sold"
columns merely are mathematical calculations derived from the information in the Proxy
Statements and Form 4s.).)

Further, there was nothing "unusual" about Mr. Fleming's February 6 sale. Fishbaum v. Liz Claiborne, Inc., 1999 U.S. App. LEXIS 18155, at *13 (2d Cir. July 27, 1999) ("no inference of scienter should be drawn from insider trading activity unless that activity is unusual"). All the shares that Mr. Fleming sold on that date were shares that Merrill had awarded him as employee compensation and that did not vest (i.e., become salable) until January 31, 2007, five business days before Mr. Fleming sold them. (See Kasner Decl. Exs. QQ, KK at 46). The most "cogent" and "compelling" inference that can be drawn from these facts is that Mr. Fleming did not sell stock on February 6 because he wanted to sell Merrill stock before the company first announced subprime related losses in October 2007—270 days after February 6— but because, due to restrictions on the salability of that stock, he was unable to sell it before that date.

Mr. Fleming's February 6, 2007 sale also was not "dramatically out of line" with his prior trading practices. In February 2006, Mr. Fleming also sold Merrill stock, following the January 2006 announcement of Merrill's earnings for the fiscal year-ended December 2005. (See Kasner Decl. Ex. QQ.) In re Gildan Activewear, Inc. Sec. Litig., 2009 U.S. Dist. LEXIS 55984, at *19 (S.D.N.Y. July 1, 2009) ("'Insider stock sales are unusual where the trading was in amounts dramatically out of line with prior trading practices and at times calculated to maximize personal benefit from undisclosed inside information.'") (quoting In re Glenayre Techs., Inc. Sec. Litig., 1998 U.S. Dist. LEXIS 20344, at *11 (S.D.N.Y. Dec. 30, 1998), aff'd, 201 F.3d 431 (2d Cir.1999)); Zucco Partners, LLC v. Digimarc Corp., 2009 U.S. App. LEXIS 7025, at *59 (9th Cir. Feb. 10, 2009) ("insider trading is suspicious only when it is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information") (internal quotation marks and citations omitted).

Finally, plaintiff's Section 10(b) claim against Mr. Fleming for insider trading is brought derivatively on behalf of Merrill and BofA. But plaintiff does not and cannot allege that either Merrill or BofA was damaged by Mr. Fleming's alleged insider sales and thus cannot plead an element of a claim under Section 10(b). See Dura, 544 U.S. at 338 ("A private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss.").

**C.     The Allegations Regarding the August 9, 2007 Memo Do Not Support Scienter Under Section 10(b)**

As noted, scienter is an element of a violation of Section 10(b). (See, supra, p. 5.) The PSLRA provides that a plaintiff suing under Section 10(b) must "state with <u>particularity facts</u> giving rise to a <u>strong inference</u> that the defendant acted with the required state of mind. 15 U.S.C. § 78u-4(b)(2) (emphasis added).[6] As discussed, Mr. Fleming's single stock trade does not support an inference of scienter. Other than this stock trade, plaintiff cites only one allegation about Mr. Fleming that seemingly is intended to support her allegation of scienter: a three page August 2007 memorandum entitled "Board Market Update End July Results: Note from Fakahany and Fleming" that she neither attaches nor quotes, but rather only vaguely characterizes. (Compl. ¶ 186.) Plaintiff's vague characterization of information in Merrill's corporate records is insufficient as a matter of law to give rise to a strong inference of fraudulent intent. CALPERS v. Chubb Corp., 394 F.3d 126, 148 (3d Cir. 2004) ("barebones sketch of this internal memo utterly fails to meet" the pleading "standard[s]" of the PSLRA and Rule 9(b) "in

---

[6] See <u>Tellabs</u>, 551 U.S. at 314, 324 ("[t]o qualify as 'strong'" under <u>Tellabs</u>, the inference of scienter "must be more than merely plausible or reasonable; it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent"; "a complaint will survive. . . only if a reasonable person <u>would</u>"—<u>not</u> just "<u>could</u>"—"deem the inference of scienter cogent and at least as compelling as any opposing inference [of non fraudulent intent] one could draw from the facts alleged") (emphasis added).

any respect"); In re Federated Dep't Stores, Inc. Sec. Litig., 2005 U.S. Dist. LEXIS 4743, at *12 (S.D.N.Y. March 23, 2005) (allegations regarding internal reports that contained "unspecified information" insufficient to allege recklessness).

Even more fundamentally, the only claims of a violation of Section 10(b) against Mr. Fleming involve (1) his February 2007 stock trade and (2) Merrill's April 2007 decision to approve a share repurchase plan.  A memo co-written by Mr. Fleming in August 2007, which concerns Merrill's financial performance in July, could not demonstrate scienter as to either of those claims.  Indeed, when viewed, as it must be, through the lens of the Section 10(b) claims at issue here, the reference to a memo written in August about subprime exposure in July is just a random throw-away allegation of no legal significance.

Finally, to state a claim under Section 10(b), a plaintiff must plead with particularity that the allegedly omitted fact was material, i.e., that "there is a 'substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" In re Sina Corp. Sec. Litig., 2006 WL 2742048, at *8 (S.D.N.Y. Sept. 26, 2006) (citation omitted).  As this Section 10(b) claim is brought derivatively, the Complaint would have to allege that the memo contained falsehoods or omissions or that Mr. Fleming misled Merrill's board of directors, but no such allegation is pled here.  To the contrary, the only inference that can be drawn from August 2007 memorandum is that Mr. Fleming provided Merrill's management timely and appropriate updates, including by advising it in August 2007 about market developments "in July 2007." (Compl. ¶ 186.)  Moreover, plaintiff does not explain how her characterization of this memorandum demonstrates that Mr. Fleming knew (or was reckless in not knowing) that any of the public statements challenged in the Complaint were materially false or misleading.  For

example, the Complaint alleges that the memorandum "warn[ed]" members of "Merrill's Board" that Merrill was "overexpose[ed] to CDOs and the subprime mortgage market" but does not allege that Merrill's overexposure to these instruments or this market was material. (Id.)

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER DELAWARE LAW AGAINST MR. FLEMING

In addition, plaintiff alleges that Mr. Fleming is liable to BofA for corporate waste and breach of fiduciary duty under Delaware law (Counts I, VI, VIII-IX, XII).[7]  In this regard, plaintiff alleges that Mr. Fleming:

- committed corporate waste by "conspiring to obtain BofA's agreement to pay over $3 billion in bonuses (including tens of millions of dollars in bonuses to senior management and themselves) without disclosing the size [of the bonuses] to [BofA's] shareholders" and to BofA's board of directors "because Thain and Fleming knew if they disclosed the actual size of the bonuses, BofA would not agree to allow Merrill to pay them" (Comp. ¶ 492; see also id. ¶¶ 487-91, 493-94);

- breached his duties of care, loyalty and candor by "orchestrating, approving and effectuating the Stock Repurchase Plan through which Merrill Lynch purchased its own common stock in the open market at artificially inflated prices caused by the Merrill Defendants' misrepresentations and omissions" (id. ¶ 465; see also id. ¶¶ 463-64, 466-67); and

- breached his duties of loyalty and good faith by engaging in a one-time sale of Merrill stock while in possession of material non-public information that Merrill's "revenues were materially overstated" on February 6, 2007. (Id. ¶¶ 468-73.)

None of these allegations states a claim for corporate waste or breach of fiduciary duty.

### A.    Plaintiff Fails to State Any Claim Against Mr. Fleming Based on the Agreement to Pay Bonuses to Merrill Executives in 2008

Plaintiff's claim for corporate waste against Mr. Fleming is based on the allegation that he concealed the agreement to pay bonuses to Merrill executives in 2008 from

---

[7] Delaware law applies to these claims because Merrill Lynch and Bank of America are incorporated in the State of Delaware. (Compl. ¶¶ 35-36.) See CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 90 (1987).

BofA's (not Merrill Lynch's) board of directors and BofA's (not Merrill Lynch's) shareholders. As a threshold matter, these claims based on Merrill's payment of bonuses are barred by this Court's February 17, 2009 Opinion and Order in this case which permitted plaintiff to refile a double derivative claim "but based on the same underlying allegation as the action he dismissed." Merrill, 597 F. Supp. 2d at 431. The prior complaint alleged nothing about bonuses. Thus any claims based on bonuses violate this Court's Order and should be dismissed.

But plaintiff's claim also must fail because other allegations in the same Complaint flatly contradict this allegation. Whereas plaintiff pleads in paragraph 492 that Mr. Fleming withheld the size of the bonuses from the BofA board, paragraph 306 of the complaint states that "the Merrill Board and BofA Board had approved previously undisclosed $3.62 billion in bonus compensation to Merrill Lynch employees." (Compl. ¶ 306.) Such contradictory pleadings should be disregarded. American Centennial Ins. Co. v. Seguros La Republica, S.A., 1996 WL 304436 at *50 (S.D.N.Y. June 5, 1996) ("Allegations are not well pleaded if they are 'made indefinite or erroneous by other allegations in the same complaint'") (quoting Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973)); Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1095 (2d Cir. 1995) (affirming dismissal of complaint where "attenuated allegations . . . are contradicted both by more specific allegations in the complaint and by facts of which [the court] may take judicial notice").

Plaintiff's Complaint also fails to state a claim for corporate waste against Mr. Fleming because plaintiff does not, nor could she, allege that Mr. Fleming had any duty or responsibility to disclose information to BofA's board of directors or BofA's shareholders. Mr. Fleming was never, nor is he alleged ever to have been, an officer, director or employee of BofA; to the contrary, in 2007 and 2008, Mr. Fleming was an employee of Merrill Lynch only.

(Compl. ¶ 40.) Indeed, there are no allegations that he had a reporting line to, ever spoke to, or even had access to BofA's board of directors. In short, the Complaint does not explain how Mr. Fleming did or could have withheld information from the board of directors of a company that did not employ him and with which he never is alleged to have communicated.

To the extent that plaintiff bases her corporate waste claim against Mr. Fleming on the allegation that he paid himself a bonus in 2008 (Compl. ¶ 492), plaintiff's claim also must fail because as a matter of public record, Mr. Fleming received no bonus from Merrill in 2008. In fact, at a December 8, 2008 meeting of Merrill's board of directors, Mr. Fleming specifically requested that he "receive no bonus" because he believed that "this [was] the appropriate recommendation to the board for the Merrill Lynch shareholders and Merrill Lynch employees given current economic and market conditions." (Polkes Decl. Ex. A.)

Finally, plaintiff's corporate waste claim against Mr. Fleming fails for additional, independent reasons, set out in the memorandum of law in support of the Former Merrill Lynch Outside Director Defendants' motion to dismiss plaintiff's Complaint (the "Former Merrill Lynch Outside Director Defendants' Brief") at pages 13 through 19. First, the decision to pay Merrill executives bonuses in 2008 is subject to the business judgment rule and is entitled to great deference. (Former Merrill Lynch Outside Director Defendants' Brief at 17-18.) Second, plaintiff's Complaint fails to plead any facts demonstrating that the payment of these bonuses was so one-sided as to constitute waste. (Id.) Because plaintiff alleges nothing more than that Merrill's board of directors approved bonuses at a time of financial difficulty, and that allegation is patently deficient to plead a transaction devoid of corporate benefit, plaintiff's claim for corporate waste must be dismissed. (Id.)

**B.    Plaintiff Fails to State a Claim for Breach of Fiduciary Duty Against Mr. Fleming Based on the April 2007 Share Repurchase Plan**

For the reasons set out above, Mr. Fleming cannot be liable for breach of fiduciary duty based on the April 2007 Share Repurchase Plan.  (See I.A., supra.)  As set forth previously, plaintiff alleges no facts establishing that Mr. Fleming had any involvement in the April 2007 Share Repurchase Plan much less that he had any idea that the plan would somehow deceive or harm Merrill.  But even if the Complaint pled with detail that Mr. Fleming had been involved in the decision to approve the 2007 Share Repurchase Plan—which it does not —that decision is still subject to the business judgment rule and the protections that it affords the business decisions of corporate officers and directors.  Cinerama, Inc. v. Technicolor, Inc., 663 A.2d 1156, 1162 (Del. 1995) ("the business judgment rule attaches to protect corporate officers and directors and the decisions they make, and our courts will not second-guess these business judgments") (quoting Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361 (Del. 1993), modified on reh'g on other grounds, 636 A.2d 956 (Del. 1994)).  Indeed, plaintiff alleges no facts suggesting that any former Merrill officers or directors did not "act[] on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company."  In re Walt Disney Co. Deriv. Litig., 906 A.2d 27, 52 (Del. 2006) (quoting Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000)).  Hence, the decision to approve the 2007 Share Repurchase Program is subject to business judgment rule protection and does not give rise to a claim for breach of fiduciary duty.

C.    **Plaintiff Fails to State a Claim for Breach of Fiduciary Duty Against Mr. Fleming Based on His February 6, 2007 Stock Sale**

Plaintiff alleges that Mr. Fleming breached his fiduciary duties by trading on material non-public information. (Compl. ¶¶ 468-73.) To prevail on such a claim, a plaintiff "must show that: (1) the corporate fiduciary possessed material, nonpublic company information; and (2) the corporate fiduciary used that information improperly by making trades because she was motivated, in whole or in part, by the substance of that information." In re Oracle Corp., 867 A.2d 904, 934 (Del. Ch. 2004), aff'd, 872 A.2d 960 (Del. 2005).

Plaintiff must also allege scienter. Guttman v. Huang, 823 A.2d 492, 505 (Del. Ch. 2003) ("Delaware case law makes the same policy judgment as federal law does, which is that insider trading claims depend importantly on proof that the selling defendants acted with scienter.") "To anyone familiar with federal insider trading law, these elements will not look unusual as they more or less track the key requirements to recover against an insider under federal law." Oracle, 867 A.2d at 934. As set out above in Section I.B., plaintiff fails to allege facts establishing that Mr. Fleming possessed material non-public information when he traded on February 6, 2007, or that his single February 6 trade was unusual in amount or timing. Accordingly, plaintiff's Complaint fails to allege a claim for breach of fiduciary duty based on his February 6 sale.

III.    **COUNT XVII IS PRECLUDED BY THE DELAWARE SETTLEMENT**

As set forth in the brief submitted by BofA, plaintiff's class action claims based on the merger between BofA and Merrill are barred by the release in a settlement agreement in a prior action, County of York Employees Ret. Plan v. Merrill Lynch & Co. Inc., CA. No. 4066-VCN (Del. Ch.). Plaintiff concedes in a letter to Your Honor dated July 27, 2009, that Counts

XIII through XVII are subject to this settlement.  (Polkes Decl. Ex. B.)  On August 31, 2009,

Vice Chancellor Noble approved this settlement, including the release.  (Id. Ex. C.)  Plaintiff's

counsel has informed Wachtell, Lipton, Rosen & Katz that it will move to dismiss this claim.[8]

## CONCLUSION

For all of the foregoing reasons, Mr. Fleming's motion to dismiss should be

granted in its entirety, with prejudice and without leave to amend.

Dated:  September 21, 2009
        New York, New York

/s/ Jonathan Polkes
Joseph S. Allerhand (JA 3201)
Jonathan D. Polkes (JP 0321)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant Gregory J. Fleming*

---

[8] In any event, even if Count XVII was not barred by the settlement, it would be precluded by the Securities Litigation Uniform Standards Act of 1998.  15 U.S.C. § 78bb(f).