UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION | Master File No.: 07cv9633 (JSR) |
| This Document Relates to: Derivative Action, 07cv9696 (JSR) (DFE) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT JOHN A. THAIN'S MOTION TO DISMISS PLAINTIFF'S
VERIFIED THIRD AMENDED SHAREHOLDER DERIVATIVE COMPLAINT**

DECHERT LLP
Andrew J. Levander
David S. Hoffner
Jennie B. Krasner
1095 Avenue of the Americas
New York, New York 10036-6797
(212) 698-3500

*Attorneys for Defendant John A. Thain*

## Table of Contents

Table of Authorities .................................................................................................................. ii
Preliminary Statement ............................................................................................................... 1
Statement of Facts ..................................................................................................................... 3
Argument ................................................................................................................................... 6
POINT I    COUNTS I THROUGH VIII FAIL TO STATE A CLAIM AGAINST THAIN ......... 7
POINT II   COUNTS XI and XII FAIL TO STATE A CLAIM ................................................. 10
Conclusion ............................................................................................................................... 13

# Table of Authorities

**Cases**

ATSI Commc'ns Inc. v. Shaar Fund, Ltd.,
   493 F.3d 87 (2d Cir. 2007) .................................................................................. 8

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (2009) ..................................................................................... 6, 7

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007) ......................................................................................... 6, 7

In re Citigroup Auction Rate Sec. Litig.,
   No. 08 Civ. 3095, 2009 WL 2914370 (S.D.N.Y. Sept. 11, 2009) ...................... 9

In re Citigroup Inc. S'holder Deriv. Litig.,
   No. 07 Civ. 9841, 2009 U.S. Dist. LEXIS 75564 (S.D.N.Y. Aug. 25, 2009) .... 9

In re Citigroup Inc. S'holder Derivative Litig.,
   964 A.2d 106 (Del. Ch. 2009) ............................................................................ 9

Harbor Fin. Partners v. Huizenga,
   751 A.2d 879 (Del. Ch.1999) ........................................................................... 11

In re Lear Corp. S'holder Litig.,
   967 A.2d 640 (Del. Ch. 2008) .......................................................................... 11

Lewis v. Vogelstein,
   699 A.2d 327 (Del. Ch. 1997) .......................................................................... 11

Malone v. Brincat,
   722 A.2d 5 (Del. 1998) ....................................................................................... 9

In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.,
   597 F. Supp. 2d 427 (S.D.N.Y. 2009) ................................................................ 1

In re Merrill Lynch & Co. Research Reports Sec. Litig.,
   02 MDL 1484, 02 Civ. 8472  2008 U.S. Dist. LEXIS 53923
   (S.D.N.Y. June 26, 2008) ................................................................................... 8

O'Reilly v. Transworld Healthcare, Inc.,
   745 A.2d 902 (Del. Ch. 1999) ............................................................................ 9

Panther Partners, Inc. v. Ikanos Comm., Inc.,
   538 F. Supp. 2d 662 (S.D.N.Y. 2008) .............................................................. 10

Rombach v. Chang,
    355 F.3d 164 (2d Cir. 2004) .......................................................................................... 10

Silverzweig v. Unocal Corp.,
    Civ. A. No. 9078, 1989 WL 3231 (Del. Ch. Jan. 19, 1989) ............................................ 12

In re Walt Disney Co. Deriv. Litig.,
    731 A.2d 342 (Del. Ch. 1999) ........................................................................................ 11

In re Zoran Corp. Deriv. Litig.,
    551 F. Supp. 2d 986 (N.D. Cal. 2007) ............................................................................ 11

Zupnick v. Goizueta,
    698 A.2d 384 (Del. Ch. 1997) ........................................................................................ 11

**Statutes and Rules**

Fed. R. Civ. P. 8(a) .......................................................................................................... 6, 7, 8

Fed. R. Civ. P. 9(b) .............................................................................................................. 7, 8

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 6, 7

Del. Gen. C. L. § 102(b)(7) ...................................................................................................... 3

Defendant John A. Thain respectfully submits this memorandum of law in support of his motion to dismiss Plaintiff's Verified Third Amended Shareholder Derivative and Class Action Complaint ("Complaint" or "Compl."). To avoid duplicative briefing, Mr. Thain expressly adopts and incorporates herein the arguments of all defendants in support of their motions to dismiss, including, but not limited to, the argument of Nominal Defendant Bank of America ("BofA") that Plaintiff lacks standing to pursue these double derivative claims.[1]

### Preliminary Statement

This derivative action (now a double-derivative action)[2] was filed on November 1, 2007, a month before Defendant John A. Thain ("Thain") ever became employed at Merrill Lynch & Co., Inc. ("Merrill Lynch" or "Merrill"). Moreover, Plaintiff alleges that it was Merrill's exposure to subprime-backed securities and CDOs that caused "massive damage" to the firm and led to the hiring of Mr. Thain as CEO. Notwithstanding her acknowledgment that Mr. Thain was brought in after -- and to remedy -- the events giving rise to her derivative claims, Plaintiff has named him as a defendant here in a frivolous effort to make him liable for events that long preceded his arrival.

Tellingly, one must wade through more than 230 paragraphs of the massive 242-page Complaint before Thain's name surfaces in any substantive fashion. And, even then, until one gets to the allegations in paragraph 291 related to the BofA merger and Merrill's year-end 2008

---

[1] In addition to derivative claims, the Complaint purports to assert shareholder "class claims" (Counts XIII - XVII). As conceded in Plaintiff's letter to the Court, dated July 27, 2009, these Class Claims are the subject of a settlement in County of York Employees Retirement Plan v. Merrill Lynch & Co. Inc. that was approved by Vice Chancellor Noble of the Delaware Court of Chancery in an Order and Judgment, dated August 31, 2009. As a result, Counts XIII through XVII are permanently barred and must be dismissed as a matter of law.

[2] On February 17, 2009, this Court dismissed the derivative claims in Plaintiffs' second amended complaint under the contemporaneous ownership rule. See In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig., 597 F. Supp. 2d 427 (S.D.N.Y. 2009).

bonuses, the accusations as to Thain relate solely to statements he made in the first three quarters of 2008 regarding Merrill's financial condition and the company's continuing exposure to write-downs related to subprime-backed securities and CDOs. Notably, Plaintiff does not allege that Thain in any way created or exacerbated these exposures or knowingly lied about them.

Hence, apart from the Merrill bonus claim, Plaintiff's alleged breaches of fiduciary duty appear to be premised entirely on her contention, based on 20/20 hindsight, that some of Thain's statements in 2008 regarding the extent of Merrill's financial problems turned out to be overly optimistic. Plaintiff, ignores, however, the extensive warnings regarding Merrill's positions that permeated the company's public filings. Indeed, there are no allegations in the Complaint that Thain's comments were knowingly false. Accordingly, any alleged failure by Thain to gauge the depth of the subprime debacle and to predict the full extent of Merrill's potential balance sheet woes does not, as a matter of law, give rise to a claim for any breach of duty under Delaware law. Accordingly, Counts I-VIII should be dismissed for failure to state a claim. See Point I infra.

Dismissal of the claims premised on alleged mismanagement at Merrill prior to Thain's arrival leaves only Count XII, the claim that Thain and others committed corporate waste by approving 2008 year end bonuses to Merrill employees, and Count XI, to the extent it asserts a claim for unjust enrichment related to the bonuses. As detailed in Point II infra, Thain's actions in connection with the Merrill year-end 2008 bonuses are protected by the business judgment rule and any claim for unjust enrichment is baseless in light of the fact that Thain did not receive

any year-end 2008 bonus.³

## Statement of Facts

John Thain became Merrill Lynch's Chairman of the Board of Directors and Chief Executive Officer on December 1, 2007. Thain replaced Stanley O'Neal, whose resignation on October 30, 2007, Plaintiff alleges was the result of the "massive damage caused to Merrill Lynch and its shareholders by its officers and directors" prior thereto as a result of the subprime meltdown. Compl. ¶18.⁴ Plaintiff alleges that, shortly after his arrival, Thain "expressed dismay in January 2008 at the inappropriate risks taken by his predecessors, stating that: 'They shouldn't be taking risks that wipe out the earnings of the entire firm,'" and "'the firm's earnings performance for [2007] is clearly unacceptable.'" Compl. ¶¶ 18, 237.

Nowhere in the Complaint does Plaintiff allege that Thain was involved in the underwriting and/or accumulation of "collateralized debt offerings ('CDOs') secured by risky, under-collateralized securities" (Compl. ¶ 20) that Plaintiff claims led to the collapse of the

---

³ As previously stated, to avoid duplicative briefing, Mr. Thain expressly adopts and incorporates herein, to the extent applicable, the arguments of each of the defendants in support of their motions to dismiss, including, but not limited to, BofA's standing argument, and the arguments contained in the Memorandum of Law In Support of the Former Merrill Lynch Outside Director Defendants' Motion to Dismiss Plaintiff's Verified Third Amended Shareholder Derivative And Class Action Complaint (the "Outside Directors Memo."), including, but not limited to, the contention that the due care claims are barred by Merrill's Certificate of Incorporation and Section 102(b)(7) of the Delaware General Corporation Laws.

⁴ The Complaint disingenuously attempts to avoid acknowledging that Thain did not join Merrill Lynch until December 1, 2007. See Compl. ¶ 38 (Thain "served as Chairman and Chief Executive Officer of the Company from 2007 until terminated on January 22, 2008 . . ."). Given, however, that the Complaint alleges that Thain was O'Neal's replacement (Complaint ¶ 18) and that O'Neal retired on October 30, 2007 (Compl. ¶ 37), the chronology is clear. The Court may also take judicial notice of Thain's hiring date from Merrill's SEC filings. See Merrill Lynch & Co., Inc. filing on Form 8-K with the Securities and Exchange Commission ("SEC"), dated Nov. 16, 2007 (annexed as Exhibit A to the Declaration of Jennie B. Krasner in Support of Defendant John A. Thain's Motion to Dismiss Plaintiff's Verified Third Amended Shareholder Derivative Complaint, dated September 21, 2009 ("Krasner Decl.")).

3

"Merrill subprime house of cards." Compl. ¶ 24. Nor does Plaintiff allege that Thain was responsible for failing to manage Merrill's risk exposure in this regard. To the contrary, the Complaint repeatedly acknowledges that the seeds of Merrill's financial problems had long been planted when Thain took the reins at the firm. See, e.g., Compl. ¶ 198 ("damage to its business had already been done. On October 5, 2007, Merrill Lynch announced that it would be writing down the value of its CDOs by $4.5 billion. Merrill Lynch further estimated that it would lose as much as 50 cents per share. The comment shocked analysts who had been expecting a profit of around $2 a share." (emphasis in original)); Compl. ¶ 211 ("Merrill Lynch's stock continued to drop over the next days [late October 2007] as rumors swirled regarding O'Neal's future at the company and analysts downgraded the company's stock. News articles chronicled the FICC business' recent personnel changes and documented the risky practices implemented by young bankers who collected tens of millions of dollars in bonuses and fled Merrill Lynch before its actual financial condition was revealed."); Compl. ¶ 221 ("A November 8, 2007 Reuters article announced that Merrill reveals $6.3 billion more in subprime-CDO exposure" (emphasis in original)).

Thus, once one completes the laborious task of parsing through Plaintiff's prolix Complaint, it is clear that Plaintiff's substantive allegations as to Thain relate to only two issues: (1) statements he made during the first three quarters of 2008 regarding Merrill Lynch's financial condition that, with the benefit of 20/20 hindsight, Plaintiff alleges to have been overly optimistic; and (2) Thain's role in connection with the approval of Merrill's year-end 2008 bonuses.

With respect to the former, the Complaint alleges that Thain made a number of forward looking statements during the first three quarters of 2008 regarding his concerns about Merrill

4

Lynch's financial condition and his aspirations for the troubled company. For example, Plaintiff alleges that Thain gave an interview on January 18, 2008 (one day after Merrill Lynch released its fourth quarter 2007 numbers and just six weeks after Thain started at Merrill Lynch), during which he stated, among other things: "we don't really expect there to be further write downs," and "we're now well capitalized to go forward into 2008." Compl. at ¶ 239. Plaintiff fails to disclose, however, that Thain and Merrill contemporaneously disclosed future risks in the unsettled markets. See, e.g., Merrill Lynch & Co., Inc. filing on Form 10-K with the SEC, dated Feb. 25, 2008, 24 (annexed as Exhibit B to Krasner Decl.).

Moreover, the Complaint itself acknowledges that shortly thereafter, in April 2008, following the failure of Bear Stearns & Co., Inc., Thain's public statements were unquestionably pessimistic as the markets faltered. For instance, during Merrill Lynch's first quarter 2008 earnings call, he stated: "[w]e are planning for a slower and more difficult next couple of months and probably next couple of quarters." Compl. ¶ 260; see also Compl. ¶ 261 (addressing credit spreads and writedowns during quarter), ¶ 262 ("'not very likely that [the CDOs] will recover value.'").

Consistent with Thain's assessment, the markets continued to deteriorate during the remainder of 2008. In fact, the Complaint recognizes that "with Lehman Brothers teetering on the brink of bankruptcy, Merrill Lynch and Bank of America's executives along with executives from other major financial institutions" convened on September 13, 2008, at the Federal Reserve Bank of New York. A day later, the Merrill Board of Directors "agreed to sell Merrill Lynch to Bank of America." Compl. ¶ 291.

As part of the merger negotiations with BofA, Merrill Lynch and BofA agreed that Merrill Lynch would have authority to pay bonuses up to an aggregate value of $5.8 billion.

Ultimately, the Merrill Board approved the payment of an aggregate value of $3.6 billion in bonuses. Compl. ¶ 323. As the Complaint acknowledges, Thain made no bonus request for himself (Compl. ¶ 309), and, as a matter of public record, he did not receive any bonus for 2008. See, e.g., Merrill Lynch & Co., Inc. press release entitled, "Merrill Lynch Statement on 2008 Executive Compensation," dated Dec. 8, 2008 (annexed as Exhibit C to Krasner Decl.).

## Argument

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Interpreting Rule 8(a)(2), the Supreme Court recently held that a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). To survive a motion to dismiss, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quotations omitted). Importantly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

As detailed below, Plaintiff's claims against Thain fail to meet these exacting standards. Indeed, Counts I through VIII are baseless on their face given that each is premised on conduct and events that occurred prior to Thain's tenure at Merrill. And, to the extent such claims are based on comments by Thain in 2008 regarding Merrill's financial condition that later allegedly turned out to have been overly optimistic, they fail as a matter of black letter Delaware law.

6

# POINT I

## COUNTS I THROUGH VIII FAIL TO STATE A CLAIM AGAINST THAIN

Counts I through VIII are based on conduct and events that occurred prior to Thain's arrival at Merrill on December 1, 2007. Since Thain cannot, of course, be held responsible for claims that precede his employment, all of these claims are patently implausible and should be dismissed pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. 544 at 555, 570.

A brief survey of the allegations of the Complaint highlights the ludicrousness of Plaintiff's effort to tag Thain for events that occurred before he even walked in the door at Merrill. Count II, for example, which purports to state a claim for corporate waste, seeks to hold Thain responsible for Merrill Lynch's purported "failure to adequately evaluate and monitor Merrill Lynch's risk in the CDO market," "authoriz[ation] and approv[al of] O'Neal's exorbitant severance package," and "the acquisitions of First Franklin and First Republic." Compl. ¶¶ 422-24.

Yet, as Plaintiff acknowledges in the Complaint, Merrill's alleged "high-risk [CDO] business strategy" was in full gear for years prior to Thain's hiring and by mid-2007 had already created the alleged "house of cards" of which Plaintiff complains. See, e.g., Compl. ¶¶ 121, 132-133, 198, 211, 221. Similarly, Plaintiff's claims against Thain with respect to Merrill Lynch's purchases of First Franklin Financial Corp. and First Republic Bank and O'Neal's severance package are frivolous in the extreme. Those transactions occurred in January 2007, September 2007, and October 2007, respectively, before Thain worked at Merrill. Compl. at ¶¶ 124, 135, 215; see also Declaration of Jay B. Kasner, filed in In re Merrill Lynch & Co., Inc. Securities Action, No. 07cv9633 (JSR) (July 21, 2008) (Master Docket # 55), Ex. EE (Merrill's Form 8-K, dated Oct. 30, 2007).

7

Equally sanctionable are Counts VII and VIII, which purport to assert a Section 10(b) claim and a fiduciary duty claim, respectively, against Thain. Remarkably, these claims hinge entirely on the Merrill Board's authorization on April 30, 2007 of a $6 billion stock repurchase plan (Compl. ¶¶ 452-462, 464-467), yet are asserted against Thain, who at the time was still the CEO of the New York Stock Exchange.[5]

Apart from the allegations based on conduct that occurred prior to Thain's employment at Merrill, the only remaining theoretical basis for any breach of duty claim asserted in Counts I through VIII are the Complaint's allegations regarding statements made by Thain in 2008 with respect to Merrill's financial health. Not surprisingly, Plaintiff cherry picks certain statements out of context in an effort to concoct this claim. But even focusing solely on the statements in the Complaint, it is clear that Thain warned the public of ongoing problems, which were the topic of daily public comment. See, e.g., Compl. ¶¶ 238, 260-62, 268, 273, 276. And Plaintiff blithely ignores numerous explicit warnings about the markets in Merrill Lynch's public filings. See, e.g., Merrill Lynch & Co., Inc., filing on Form 10-K with the SEC, dated Feb. 25, 2008, at 24 (annexed as Exhibit B to Krasner Decl.).

In any event, as a matter of law, absent particularized allegations that Thain's alleged misstatements were deliberate (which are not present here), there is absolutely nothing in any of these alleged statements to support a breach of duty claim against Thain. Indeed, it is well

---

[5] The specific paragraphs under the headings of Count I and Counts III through VI fail to detail in any fashion what conduct they purport to reach. On this basis alone, they run afoul of Rules 8(a)(2) and should be dismissed. In addition, the state law claims, which sound in fraud and lack any specificity, violate Rule 9(b) (In re Merrill Lynch & Co. Research Reports Sec. Litig., 02 MDL 1484 (JFK), 02 Civ. 8472 (JFK), 2008 U.S. Dist. LEXIS 53923, 23-24 (S.D.N.Y. June 26, 2008) and the Section 10(b) claims fail, as they must, to plead facts giving rise to a "strong inference" of scienter. ATSI Commc'ns Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). On this basis, too, Counts I through VIII as to Thain should be dismissed.

8

settled that the mere failure to predict accurately the impact of a global financial meltdown -- Plaintiff's 20/20 hindsight notwithstanding -- does not give rise to a breach of duty. See, e.g., In re Citigroup Inc. S'holder Derivative Litig., 964 A.2d 106, 132 (Del. Ch. 2009) (to allege a breach of fiduciary duty based on a director's statements, plaintiff must "show[] that the [director] 'deliberately misinform[ed] shareholders about the business of the corporation, either directly or by a public statement.'") (quoting Malone v. Brincat, 722 A.2d 5, 14 (Del. 1998)). In Citigroup, the Court held that a claim for failure to disclose investment risks did not support a claim for breach of fiduciary duty in light of the fact that "the Complaint does not sufficiently allege that the director defendants had knowledge that any disclosures or omissions were false or misleading or that the director defendants acted in bad faith in not adequately informing themselves." Id. at 134. See also In re Citigroup Inc. S'holder Deriv. Litig., No. 07 Civ. 9841, 2009 U.S. Dist. LEXIS 75564 (S.D.N.Y. Aug. 25, 2009).[6]

Plaintiff's allegations against Thain fail for the same reason; she does not allege any facts whatsoever that would suggest that Thain's statements were deliberately false or in any way made in bad faith.[7] Indeed, in the wake of this subprime crisis, a poor prognostication is entitled to an inference that it was made in good faith. In re Citigroup Auction Rate Sec. Litig., No. 08 Civ. 3095, 2009 WL 2914370, at *6 (S.D.N.Y. Sept. 11, 2009) ("subprime crisis . . . give[s] rise to an opposing and compelling inference that Defendants only engaged in bad (in hindsight)

---

[6] Any claim based on Thain's statements is also barred by the exculpation provision in Merrill's Certificate of Incorporation. See Citigroup, 964 A.2d at 132; Outside Directors Memo. at Point I.

[7] Any attempt to allege a more general fiduciary "duty of disclosure" must fail as well because such a duty only arises under Delaware law when stockholder action is sought or required. O'Reilly v. Transworld Healthcare, Inc., 745 A.2d 902, 916 (Del. Ch. 1999) ("The duty of disclosure is a subset of the more general duties of loyalty, 'good faith,' and care and is implicated only when stockholder action is contemplated, i.e. requested or required."); Malone, 722 A.2d at 10 (same). None of Thain's alleged 2008 statements were made in the context of a request for shareholder action.

9

business judgments..."). Notably, numerous world leaders and global financial experts likewise failed to predict the extent of the economic meltdown in 2008. See, e.g., Michael M. Phillips and Damian Paletta, "Paulson Sees Credit Crisis Waning -- Treasury Secretary Calls Fed's Moves 'Inflection Point,'" The Wall Street Journal, May 7, 2008, at A2 (quoting Treasury Secretary Paulson as stating that "the worst is likely behind us.") (annexed as Exhibit D to Krasner Decl.)

In sum, Plaintiff's conclusory assertion that Thain's forward looking statements were in hindsight too optimistic is fatally flawed and does not state a claim. See, e.g., Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 2004) ("Up to a point, companies must be permitted to operate with a hopeful outlook: People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage." (quotation omitted)); Panther Partners, Inc. v. Ikanos Comm., Inc., 538 F. Supp. 2d 662, 670 (S.D.N.Y. 2008) ("Defendants are not expected to know the un-knowable, nor are they expected to disclose it.").

## POINT II

## COUNTS XI AND XII FAIL TO STATE A CLAIM

Count XII asserts a claim for waste arising out of the Merrill Board's approval of 2008 year-end bonuses. In light of the business judgment rule, Plaintiff's effort to turn her discontent with such bonuses into a legally cognizable claim for waste under Delaware law should be rejected.[8]

---

[8] In addition, Count XII should be dismissed pursuant to Article XIII of Merrill's Certificate of Incorporation. See Outside Directors Memo. at Point I.

10

Delaware law, which is controlling here, sets a high bar for claims sounding in waste:

> The test for corporate waste is a stringent one and requires that the plaintiff plead 'facts showing that no person of ordinary sound business judgment could view the benefits received in the transaction as a fair exchange for the consideration paid by the corporation.' If given the facts pleaded in the complaint, 'any reasonable person might conclude that the deal made sense, then the judicial inquiry ends.'

In re Lear Corp. S'holder Litig., 967 A.2d 640, 656 (Del. Ch. 2008) (quoting Harbor Fin. Partners v. Huizenga, 751 A.2d 879, 892 (Del. Ch.1999)). See also Zupnick v. Goizueta, 698 A.2d 384 (Del. Ch. 1997) (no waste claim stated based on allegations that corporation awarded stock options to executive for past performance).

Plaintiff's allegations regarding Merrill Lynch's 2008 bonuses do not meet this "stringent" burden. "If ... there is any substantial consideration received by the corporation, and if there is a good faith judgment that in the circumstances the transaction is worthwhile, there should be no finding of waste, even if the fact finder would conclude ex post that the transaction was unreasonably risky." Lewis v. Vogelstein, 699 A.2d 327, 336 (Del. Ch. 1997) (emphasis in original). See also In re Walt Disney Co. Deriv. Litig., 731 A.2d 342, 362 (Del. Ch. 1999) ("deference to directors' business judgment is particularly broad in matters of executive compensation").

Here, Plaintiff has failed to allege why the decision to pay 2008 Merrill bonuses was outside of the broad bounds of the business judgment rule. To the contrary, in light of the impending merger with BofA, in an attempt to prevent a flight of talent, paying bonuses to the numerous productive employees at Merrill who were not responsible for the legacy positions giving rise to the huge mark to market losses, was without question a legitimate motivation supporting a finding of good faith. In re Zoran Corp. Deriv. Litig., 551 F. Supp. 2d 986, 1019

(N.D. Cal. 2007) ("Unless there is a reasonable doubt that the board was proceeding in the corporation's best interest, the board's decisions are entitled to deference.").

In fact, the BofA-Merrill Merger Agreement itself required Merrill to "use reasonable best efforts to . . . retain the services of key officers and key employees" (Agreement and Plan of Merger by and between Merrill Lynch & Co., Inc. and Bank of America Corporation, attached as Appendix A to the filing on Schedule 14A with the SEC, dated Nov. 3, 2008 (annexed as Exhibit E to Krasner Decl.) and the firm's 2008 proxy statement made clear that "it was essential that the Company pay many key employees at market levels in order to retain them and avoid long-term damage to the franchise." Merrill Lynch & Co., Inc., filing on Schedule 14A with the SEC, dated March 14, 2008, at 28 (annexed as Exhibit F to Krasner Decl.).

Finally, to the extent Count XI purports to allege a claim for unjust enrichment against Thain arising out of his actions in connection with the approval of Merrill's year-end 2008 bonuses and his receipt of contractual compensation as an officer of Merrill, it should be dismissed as a matter of law. See Outside Directors Memo. at Point IIE (citing, inter alia, Silverzweig v. Unocal Corp., Civ. A. No. 9078, 1989 WL 3231, at *2 (Del. Ch. Jan. 19, 1989)). To the extent it is premised on Thain's purported receipt of a bonus from Merrill at year-end 2008, it is factually baseless and should be dismissed. See Merrill Lynch & Co., Inc., press release entitled, "Merrill Lynch Statement on 2008 Executive Compensation, dated Dec. 8, 2008 (Krasner Decl., Ex. C). Indeed, Plaintiff herself acknowledges that Thain "withdrew his bonus request." Compl. ¶ 309.

12

## **Conclusion**

For all of the forgoing reasons including the reasons set forth in co-defendants' motion to dismiss, Defendant John A. Thain respectfully requests that the Court grant his motion to dismiss the Complaint in its entirety and with prejudice.

Dated: September 21, 2009
      New York, New York

                DECHERT, LLP

                By:   /s/ David S. Hoffner
                     Andrew J. Levander (andrew.levander@dechert.com)
                     David S. Hoffner (david.hoffner@dechert.com)
                     Jennie B. Krasner (jennie.krasner@dechert.com)
                     1095 Avenue of the Americas
                     New York, New York  10036-6797
                     (212) 698-3500

                     *Attorneys for Defendant John A. Thain*