UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                        :

IN RE MERRILL LYNCH & CO., INC.       :         ECF Case/Electronically Filed
SECURITIES, DERIVATIVE AND ERISA  :
LITIGATION                            :
                                         :        Master File No. 07-cv-9633 (JSR)(DFE)
This Document Relates to:  Derivative Action,  :
07cv9696 (JSR)(DFE)                :
                                         :
-------------------------------------------------------- X

**BANK OF AMERICA CORPORATION'S**
**CORRECTED MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION TO DISMISS COUNTS I-XII OF**
**THE VERIFIED THIRD AMENDED SHAREHOLDER**
**DERIVATIVE AND CLASS ACTION COMPLAINT**

Jay B. Kasner                            Eric M. Roth
Scott D. Musoff                        Rodman K. Forter, Jr.
SKADDEN, ARPS, SLATE,          Keola R. Whittaker
    MEAGHER & FLOM LLP        WACHTELL, LIPTON, ROSEN & KATZ
Four Times Square               51 West 52nd Street
New York, New York  10036       New York, New York  10019
Telephone:  (212) 735-3000      Telephone:  (212) 403-1000

*Attorneys for Nominal Defendant*     *Attorneys for Nominal Defendant*
   *Merrill Lynch & Co., Inc.*         *Bank of America Corporation*

Dated:  September 21, 2009

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS ......................................................................................3

    A.   The Parties .............................................................................................3

    B.   Plaintiff's Futility Allegations Regarding the Bank of America Board........................................................................................................4

    C.   Plaintiffs' Futility Allegations Regarding the Merrill Lynch Board ..........6

ARGUMENT..........................................................................................................6

POINT I       PLAINTIFF'S DOUBLE DERIVATIVE CLAIMS MUST BE DISMISSED FOR LACK OF STANDING .............................................. 6

POINT II     PLAINTIFF'S DOUBLE DERIVATIVE CLAIMS SHOULD BE DISMISSED FOR FAILURE TO PLEAD PARTICULARIZED FACTS SHOWING THAT DEMAND UPON THE BANK OF AMERICA BOARD IS EXCUSED........................................................ 9

    A.   The indemnification and insurance provisions of the Merger Agreement do not demonstrate that the majority of Bank of America Board was interested in or lacked independence regarding a demand to sue the Merrill Lynch Defendants.........................................10

    B.   Any potential liability on claims arising out of the Merger does not demonstrate that the Bank of America Board is interested or lacks independence regarding a demand to sue the Merrill Lynch Defendants ..........................................................................................13

    C.   The Complaint's allegations regarding "pre-judgment" of the merits do not demonstrate that the Bank of America Board is interested or lacks independence ............................................................17

    D.   The Complaint's allegations regarding "conflicts of interest" fail to demonstrate that a majority of the Bank of America Board lacks independence ......................................................................................18

    E.   The Bank of America Board's rejection of the Lambrecht demand does not suffice to demonstrate futility here.............................................19

POINT III    THE COMPLAINT FAILS TO PLEAD DEMAND FUTILITY WITH RESPECT TO THE PROPER MERRILL LYNCH BOARD ................................................................................................ 20

    A.   Plaintiff's claims were not validly in litigation .........................................20

B.  Even if the Old Merrill Lynch Board were the relevant board for measuring demand futility, demand would still not be excused................22

1.  The Old Merrill Lynch Board members are immunized for any breach of the duty of the care under Merrill Lynch's Certificate of Incorporation ..........................................22

2.  Even setting aside the exculpatory provision, Plaintiff has failed to plead particularized facts showing that the Old Merrill Lynch Board members faced a "substantial likelihood" of liability..................................................23

CONCLUSION..........................................................................................25

## TABLE OF AUTHORITIES

<u>Cases</u>

*Andreae* v. *Andreae,*
    1992 WL 43924 (Del. Ch. Mar. 3, 1992) .................................................................24

*Aronson* v. *Lewis,*
    473 A.2d 805 (Del. 1984).................................................................9, 10, 23, 24

*Beam ex rel. Martha Stewart Living Omnimedia, Inc.* v. *Stewart,*
    845 A.2d 1040 (Del. 2004)........................................................................ 18-19

*Braddock* v. *Zimmerman,*
    906 A.2d 776 (Del. 2006).........................................20, 20n.11, 21, 21n.13

*Brehm* v. *Eisner,*
    746 A.2d 244 (Del. 2000) ................................................................10, 24

*Carauna* v. *Saligman,*
    1990 WL 212304 (Del. Ch. Dec. 21, 1990).............................................13

*Chaffin* v. *GNI Group, Inc.,*
    1999 WL 721569 (Del. Ch. Sept. 3, 1999)...............................................15

*Drachman* v. *Harvey,*
    453 F.2d 722 (2d Cir. 1971) ...............................................................8n.7

*Feldman* v. *Cutaia,*
    951 A.2d 727 (Del. 2008) ...................................................................6n.6

*Glazer* v. *Zapata,*
    658 A.2d 176 (Del. Ch. 1993) ..............................................................25

*Globis Partners, L.P.* v. *Plumtree Software, Inc.,*
    2007 WL 4292024 (Del. Ch. Nov. 30, 2007) ............................... 11, 15-16

*Guttman* v. *Huang,*
    823 A.2d 492 (Del. Ch. 2003) ..............................................................25

*Halpert Enters. Inc.* v. *Harrison,*
    362 F. Supp. 2d 426 (S.D.N.Y. 2005) ....................................................13

*Hexion Specialty Chems., Inc.* v. *Huntsman Corp.,*
    965 A.2d 715 (Del. Ch. 2008) ..............................................................16

*In re Baxter Int'l, Inc. S'holders Litig.,*
    654 A.2d 1268 (Del. Ch. 1995) ......................................................... 22-23

*In re Caremark Int'l Inc. Deriv. Litig.,*
    698 A.2d 959 (Del. Ch. 1996)................................................................23

*In re CNET Networks, Inc. S'holder Deriv. Litig.,*
    2008 WL 2445200 (N.D. Cal. June 16, 2008)................................20n.11, 21

*In re infoUSA, Inc. S'holders Litig.,*
  953 A.2d 963 (Del. Ch. 2007) ...................................................................16

*In re J.P. Morgan Chase & Co. S'holder Litig.,*
  906 A.2d 808 (Del. Ch. 2005), *aff'd*, 906 A.2d 766 (Del. 2006) ..............24

*In re Merrill Lynch & Co., Inc. Secs., Deriv. & ERISA Litig.,*
  597 F. Supp. 2d 427 (S.D.N.Y. 2009) ................................................ *passim*

*In re Morgan Stanley Deriv. Litig.,*
  542 F. Supp. 2d 317 (S.D.N.Y. 2008) ......................................................23

*In re NYFIX, Inc. Deriv. Litig.,*
  567 F. Supp. 2d 306 (D. Conn. 2008)...........................................20n.11, 21

*In re Pfizer Inc. Deriv. Sec. Litig.,*
  307 Fed. App'x 590 (2d Cir. 2009) ...........................................................19

*In re Sea-Land Corp. S'holders Litig.,*
  642 A.2d 792 (Del. Ch. 1993) ..................................................................12

*In re Syncor Int'l Corp. S'holders Litig.,*
  857 A.2d 994 (Del. Ch. 2004). ............................................................6-7n.6

*In re Talley Indus., Inc. S'holders Litig.,*
  1998 WL 191939 (Del. Ch. Apr. 13, 1998)..............................................11

*Kahn ex rel. DeKalb Genetics Corp. v. Roberts,*
  679 A.2d 460 (Del. 1996).........................................................................24

*Kamen v. Kemper Fin. Servs. Inc.,*
  500 U.S. 90 (1991).............................................................................8, 8n.7

*Kaplan v. Peat, Marwick, Mitchell & Co.,*
  529 A.2d 254 (Del. Ch. 1987), *aff'd in part & rev'd in part on other grounds*, 540 A.2d 726
  (1988)......................................................................................................19

*Lewis v. Anderson,*
  477 A.2d 1040 (Del. 1984) ...............................................................6, 7, 8

*Lewis v. Ward,*
  852 A.2d 896 (Del. 2004) .................................................................6-7n.6

*Louisiana Mun. Police Employees Ret. Sys. v. Pandit,*
  2009 U.S. Dist. LEXIS 82308 (S.D.N.Y. Sept. 10, 2009).........................10

*Malpiede v. Townson,*
  780 A.2d 1075 (Del. 2001) ......................................................................16

*Maurer v. Johnson,*
  1989 WL 99172 (Del. Ch. May 12, 1989).................................................19

*Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins,*
  2004 WL 1949290 (Del. Ch. Aug. 24, 2004) ......................................15, 24

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Lundgren,*
  579 F. Supp. 2d 520, 537 (S.D.N.Y. 2008) ..............................................24

*Rales* v. *Blasband*,
    634 A.2d 927 (Del. 1993) ...................................................................9, 10, 20

*RCM Sec. Fund, Inc.* v. *Stanton*,
    928 F.2d 1318 (2d Cir. 1991) ...............................................................8

*Saito* v. *McCall*,
    2004 Del. Ch. LEXIS 205 (Del. Ch. Dec. 20, 2004) ........................7, 8, 22

*Scalisi* v. *Fund Asset Mgt.*,
    380 F.3d 133 (2d Cir. 2004) .................................................................8

*Spiegel* v. *Buntrock*,
    571 A.2d 767 (Del. 1990) ....................................................................9

*Winters* v. *Stemberg*,
    529 F. Supp. 2d 237 (D. Mass. 2008) ....................................................8

*Wood* v. *Baum*,
    953 A.2d 136 (Del. 2008) ....................................................................9, 22

*Zirn* v. *VLI, Corp.*,
    681 A.2d 1050 (Del. 1996) ..................................................................16

## **Statutes**

8 Del. Code § 102(b)(7) ...............................................................................16

8 Del. Code § 145(b) ...................................................................................12

Sec. Exch. Act of 1934 § 10(b) ...................................................................2, 8

## **Rules**

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 1n.1

Fed. R. Civ. P. 23.1 ............................................................................... *passim*

SEC Rule 10b-5 ...........................................................................................2, 8

## PRELIMINARY STATEMENT

Bank of America Corporation ("Bank of America") respectfully submits this memorandum of law in support of its motion to dismiss Counts I through XII of the Verified Third Amended Shareholder Derivative and Class Action Complaint (the "Complaint") pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure.[1]

In its Opinion and Order dated February 17, 2009, the Court dismissed the derivative claims Plaintiff had previously filed on behalf of Merrill Lynch & Co., Inc. ("Merrill Lynch"). The Court held that Plaintiff's standing to sue on behalf of Merrill Lynch had been extinguished by the stock-for-stock merger between Bank of America and Merrill Lynch because Plaintiff no longer owned Merrill Lynch stock. The Court noted its dismissal was "without prejudice to plaintiffs' filing . . . *if and when they standing*, a renewed action, recast as a derivative action against Bank of America, or as a so-called 'double derivative' action, or otherwise, but *based on the same underlying allegations as the [claims] here dismissed." In re Merrill Lynch & Co. Secs., Deriv. & ERISA Litig.*, 597 F. Supp. 2d 427, 431 (S.D.N.Y. 2009) (emphasis added).

On July 27, 2009, Plaintiff filed the 242-page Complaint. Like its predecessor, the Complaint principally asserts breach of fiduciary duty claims against certain former officers and directors of Merrill Lynch (the "Merrill Lynch Defendants") arising out of that company's underwriting of collateralized debt obligations ("CDOs") prior to its merger with Bank of America (the "Merger"). Whereas the previous complaint asserted these claims derivatively on behalf of Merrill Lynch, Plaintiff now purports to assert these claims double derivatively on behalf of

---

[1]    A copy of the Complaint is annexed as Exhibit A to the Affidavit of Eric M. Roth ("Roth Aff."), filed contemporaneously herewith.

Bank of America. Complaint ¶ 2. The Complaint adds new double derivative claims under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, alleging that: (1) in the spring of 2007, certain of the Merrill Lynch Defendants caused the company to purchase shares of its common stock at prices artificially inflated by certain of Merrill Lynch Defendants' false statements regarding the company's true financial condition; and (2) in February 2007, certain Merrill Lynch Defendants sold shares of Merrill Lynch common stock on the basis of material non-public information in violation of their duties under the federal securities laws to "disclose or abstain." *See id.* ¶¶ 150-55, 378-82, 383-95, 450-62, 474-82. And though the Court granted leave to Plaintiff to replead solely "based on the same underlying allegations" dismissed in its February 17 Opinion and Order, Plaintiff has also added a new double derivative claim for "corporate waste" based on the payment of incentive compensation to Merrill Lynch employees in December 2008. *See id.* ¶¶ 487-94.[2]

As will be demonstrated below, Plaintiff's double derivative claims must be dismissed because:

- Plaintiff has failed to plead facts demonstrating that she has standing to sue "double derivatively" on behalf of Bank of America. In the double derivative context, a plaintiff must allege that she was a shareholder of both the acquiring company and the acquired company at the time of the alleged wrongdoing and that the acquiring company was a shareholder of the acquired company at that time. The Complaint contains no such allegations. *See* Point I, *infra.*

- Alternatively, the Complaint fails to satisfy the requirement that particularized facts be pleaded demonstrating that demand is futile. In the double derivative

---

[2]    Like its predecessor, the Complaint contains class claims (Counts XIII-XVI) which, at the time of the filing of the Complaint, were the subject of a settlement pending before the Delaware Court of Chancery. On August 31, 2009, the Delaware Court approved the settlement and entered its Order and Final Judgment. Under the terms of the Stipulation of Settlement in the Delaware action, Plaintiff will be required to dismiss her class claims in this Court within 10 days after the Order and Final Judgment becomes final and non-appealable. Those class claims are not the subject of this motion.

context, Plaintiff must plead facts showing that demand is excused at both the parent (Bank of America) and the acquired subsidiary (Merrill Lynch) levels. Plaintiff has failed to plead particularized facts demonstrating that the Bank of America Board is either "interested" in the subject matter of this action or lacks "independence" from any interested director. *See* Point II, *infra*.

- As to the Merrill Lynch Board, Plaintiff directs her futility allegations only to the members of the Merrill Lynch Board at the time she filed her *Second Amended Complaint* (September 23, 2008). Because that pleading was dismissed, the governing Delaware law requires Plaintiff to plead facts demonstrating that a demand would have been futile if made on the Merrill Lynch Board in place on July 27, 2009 — the date the *current* Complaint was filed. But the Complaint does not even allege who the members of the current Merrill Lynch Board are. *See* Point III, *infra*.

Accordingly, Counts I through XII of the Complaint should be dismissed.

## STATEMENT OF FACTS

Because this motion to dismiss is directed to Plaintiff's lack of standing and failure to plead facts demonstrating the futility of demand, this Statement of Facts summarizes only the allegations relating to those grounds for dismissal.

### A.    The Parties

Plaintiff purports to bring her derivative claims double derivatively on behalf of Bank of America. Complaint ¶ 2. Plaintiff alleges that "until the Merger, [she] owned Merrill Lynch common stock before and at the beginning of the relevant period and, since the Merger, owns Bank of America stock that she received as Merger Consideration in connection with the combination of [Bank of America] and Merrill Lynch, and she has continuously held the stock." *Id.* ¶ 34. Plaintiff fails to allege that she was a Bank of America shareholder at any time prior to the Merger. As will be shown, this failure is dispositive.

With respect to the double derivative claims, the Complaint names Merrill Lynch and Bank of America as nominal defendants. Complaint ¶¶ 35-36. It names as individual de-

- 3 -

fendants certain former Merrill Lynch officers. *Id.* ¶¶ 37-41.[3]  It also names as defendants the

members of the pre-Merger Merrill Lynch Board of Directors (the "Old Merrill Lynch Board").[4]

In each case, the Complaint alleges that the defendant was a member of the Merrill Lynch Board

"until the merger was consummated on January 1, 2009." *Id.* ¶¶ 45-54.  The Complaint fails to

name as defendants, or even contain any allegations regarding the composition of, the Merrill

Lynch Board on July 27, 2009 — the date the Complaint was filed.

### B.     Plaintiff's Futility Allegations Regarding the Bank of America Board

The Complaint does not name as defendants any Bank of America directors (with

the exceptions of Messrs. Colbert and Rossotti, who became Bank of America directors after the

Merger closed on January 1, 2009 and are named solely in their capacities as former directors of

Merrill Lynch). *See* Complaint ¶¶ 47, 53.  With the exception of the newly added claims relating

to the payment of incentive compensation, the Complaint also does not allege that any other

members of the Bank of America Board) had any involvement in the purported misconduct that

gives rise to the double derivative claims.

The Complaint nonetheless claims that demand on the current Bank of America

Board would be futile because:

---

[3]     The former Merrill Lynch officers named as defendants include:  E. Stanley O'Neal
(former Chairman and Chief Executive Officer), John A. Thain (also former Chairman and Chief
Executive Officer), Ahmass L. Fakahany (a former Co-Chief Operating Officer), Gregory J.
Fleming (former President and Chief Operating Officer) and Jeffrey N. Edwards (former Chief
Financial Officer from 2005 to 2007).

[4]     In addition to Mr. Thain, the Old Merrill Lynch Board members named as defendants in-
clude:  Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Fin-
negan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti and Au-
lana L. Peters.

- a majority of the Bank of America Board[5] caused Bank of America to agree to indemnify the former Merrill Lynch officers and directors for pre-Merger conduct and to agree to keep the current D&O insurance coverage in place for six years after the Merger, and did so "without any consideration of the substance or merits of the claims" asserted by Plaintiff (Complaint ¶¶ 399-400);

- a majority of the Bank of America Board approved the payment of $3.6 billion in bonus payments to Merrill Lynch employees "without determining the amount of such bonuses or to whom they would be awarded" and authorized the issuance of the Proxy Statement for the Merger, which "failed to disclose material facts" concerning the 2008 Merrill bonuses and losses that Merrill Lynch was suffering in the fourth quarter of 2008 (*Id.* ¶¶ 401-03);

- after the "growth in losses at Merrill Lynch following approval of the Merger," a majority of the Bank of America Board chose not to "terminate the Merger as permitted by the Merger Agreement," in response to warnings by then Treasury Secretary Paulson that, if they attempted to do so, the "U.S. Government would remove the current [Bank of America] management" (*Id.* ¶¶ 404-05);

- a majority of the Bank of America Board has purportedly "pre-judged the merits of this action," as evidenced by the disclosure in the Proxy Statement that the *class* claims asserted by Plaintiff were without merit (*Id.* ¶ 407);

- a majority of the Bank of America Board was aware, as set forth in the Proxy Statement, that the former Merrill Lynch Board had already rejected shareholder demands to pursue the claims alleged in this action, and, following consummation of the Merger, the Bank of America Board formally rejected a demand by another shareholder (Nancy Lambrecht) to pursue the claims asserted in this action (*Id.* ¶¶ 408 and 412);

- a majority of the Bank of America Board has been named as defendants in various lawsuits arising out of the Merger (*Id.* ¶ 410); and

- a few of the Bank of America directors could not "consider a demand to sue other members of the [Bank of America] Board due to disabling personal and professional conflicts of interest." (*Id.* ¶ 411).

---

[5]    The Complaint acknowledges that, in addition to Messrs. Colbert and Rossotti, four of the members of the BAC Board as of July 27, 2009 joined the Board *after* the Merger.  Complaint, ¶ 326.  Since the Complaint was filed, two additional new directors have joined the Bank of America Board.

C.     **Plaintiffs' Futility Allegations Regarding the Merrill Lynch Board**

As noted previously, the Complaint does not contain any allegations regarding the membership of the Merrill Lynch Board as of the date the Complaint was filed and thus contains no allegations regarding the futility of making a demand on that Board. The Complaint instead devotes some 28 pages to allegations regarding the futility of making a demand on the members of the Old Merrill Lynch Board — none of whom, the Complaint admits, was still a member of the Merrill Lynch Board on the date when the Complaint was filed. *See* Complaint ¶¶ 328-95. But since that date controls, the Complaint's futility allegations regarding the Merrill Lynch Board miss the point.

## ARGUMENT

### POINT I

### PLAINTIFF'S DOUBLE DERIVATIVE CLAIMS MUST BE DISMISSED FOR LACK OF STANDING

As the Court noted in its February 17 Opinion and Order, "Delaware law takes the view that '[a] plaintiff who ceases to be a shareholder, whether by reason of a merger or any other reason, loses standing to continue a derivative suit.'" *In re Merrill Lynch*, 597 F. Supp. 2d at 429, quoting *Lewis* v. *Anderson*, 477 A.2d 1040, 1049 (Del. 1984).[6]

---

[6]     As this Court recognized in February, this "result has been affirmed repeatedly" by the Delaware courts. *Id.* at 429, citing *Feldman* v. *Cutaia*, 951 A.2d 727, 731 (Del. 2008); *Lewis* v. *Ward*, 852 A.2d 896, 901 (Del. 2004); *In re Syncor Int'l Corp. S'holders Litig.*, 857 A.2d 994, 998 (Del. Ch. 2004). As the Court also observed, Delaware law recognizes only two exceptions to this rule: "'(i) if the merger itself is the subject of a claim of fraud, being perpetrated merely to deprive shareholders of the standing to bring a derivative action; or (ii) if the merger is in reality merely a reorganization which does not affect plaintiff's ownership in the business enterprise.'" *In re Merrill Lynch*, 597 F. Supp. 2d at 430, quoting *Lewis* v. *Ward*, 852 A.2d 896, 902 (Del. 2004). The Court found that Plaintiff's allegations did not fall within either exception in February, *see* 597 F. Supp. 2d at 430. In particular, as the Court concluded in February, Plain-

(footnote continued)

Applying the same principles to double derivative suits, Delaware courts have required that a derivative plaintiff plead continuous ownership in both the parent and the subsidiary at the time of the alleged wrongdoing. In *Saito* v. *McCall*, 2004 Del. Ch. LEXIS 205 (Del. Ch. Dec. 20, 2004), following a stock-for-stock merger in which McKesson acquired HBOC, the surviving company (McKesson HBOC) announced that it had uncovered accounting irregularities at the acquired company. Two former shareholders of HBOC asserted a double derivative claim for breach of fiduciary duty claim against the former directors of HBOC for allegedly failing to monitor its internal accounting practices before the merger and using non-public information for their own financial benefit. *Id.* at *37. The Court of Chancery dismissed the claim for lack of standing:

> [P]laintiffs' effort to circumvent *Lewis* v. *Anderson* by casting Count VI in terms of a double derivative action must fail. It remains the law of Delaware that "a derivative stockholder must not only be a stockholder at the time of the alleged wrong and at the time of commencement of suit but that he must also maintain shareholder status throughout the litigation." Here plaintiffs . . . were not McKesson HBOC shareholders before [the merger], so they cannot bring a derivative suit, double or otherwise.

*Id.* at *41, quoting *Lewis* v. *Anderson*, 477 A.2d at 1046 (footnote omitted). The Court of Chancery further held that the claim "must also fail because plaintiffs have failed to allege that McKesson HBOC was a shareholder of HBOC at the time the alleged harm occurred." *Saito*, 2004 Del. Ch. LEXIS 205, at *42 n.82.

———————————————

(footnote continued)

tiff's allegations regarding the indemnification of Merrill Lynch's directors — "standard practices" for a merger — are "patently inadequate to draw this action within the 'fraud exception' to the rule." *Id.* (citations omitted). The Complaint nowhere alleges that the sole purpose of the Merger was to deprive Merrill Lynch shareholders of derivative standing with respect to any of Plaintiff's double derivative claims, old or new.

Here, as in *Saito*, the Complaint does not allege that Plaintiff was a Bank of America shareholder, or that Bank of America was a Merrill Lynch shareholder, at the time of the alleged wrongdoing. Plaintiff has thus failed to plead facts demonstrating her standing to pursue double derivative claims under Delaware law.

The Complaint asserts two new double derivative 10b-5 claims in an apparent effort to circumvent Delaware's standing requirements, but to no avail. The question of whether a shareholder may assert federal securities law claims derivatively on behalf of a corporation is a matter of state, not federal law. *See Kamen* v. *Kemper Fin. Servs. Inc.*, 500 U.S. 90, 98-99 (1991); *Scalisi* v. *Fund Asset Mgmt.*, 380 F.3d 133, 138 (2d Cir. 2004); *RCM Sec. Fund, Inc.* v. *Stanton*, 928 F.2d 1318, 1326-27 (2d Cir. 1991). Accordingly, Plaintiff's inability to satisfy Delaware law standards for bringing a double derivative claim is fatal to her federal derivative claims as well.[7] *See Winters* v. *Stemberg*, 529 F. Supp. 2d 237, 245-46 (D. Mass. 2008) (because Delaware contemporaneous ownership requirements not met, plaintiffs lacked standing to assert derivative claims under state and federal law challenging the issuance of stock options pursuant to misleading proxy statements issued before they became shareholders).[8]

---

[7]    The Second Circuit's decades-old decision in *Drachman* v. *Harvey*, 453 F.2d 722, 727 (2d Cir. 1971), did not deal with the continuing ownership requirement, but rather with whether a beneficial owner of shares had derivative standing to bring suit for violations of Section 10(b) of the Exchange Act. That decision also pre-dated the Supreme Court's 1991 decision in *Kamen*, which recognized that where a federal securities violation was at issue — and where no clear federal policy to the contrary would be violated — the relevant rule of decision to be adopted under federal common law is the state law (here, Delaware) rule of decision.

[8]    Of course, even if federal law applied to the issue of standing to assert double derivative 10b-5 claims, it is not clear that federal courts addressing the continuous ownership rule would see the standing issue any differently. As this Court noted in its February 17 Opinion and Order: "Federal courts have also rigorously applied this 'continuing ownership' rule" and thus "it is far

(footnote continued)

## POINT II

### PLAINTIFF'S DOUBLE DERIVATIVE CLAIMS SHOULD BE DISMISSED FOR FAILURE TO PLEAD PARTICULARIZED FACTS SHOWING THAT DEMAND UPON THE BANK OF AMERICA BOARD IS EXCUSED

Because a shareholder in a derivative action seeks to assert claims that belong to the corporation, Delaware law requires that the shareholder either make a demand on the board before bringing suit or plead facts demonstrating that doing so would be futile. *Wood* v. *Baum*, 953 A.2d 136, 140 (Del. 2008); *Spiegel* v. *Buntrock*, 571 A.2d 767, 773 (Del. 1990). The demand requirement reflects the basic principles of corporate governance that "directors, rather than shareholders, manage the business and affairs of the corporation," *Aronson* v. *Lewis*, 473 A.2d 805, 811 (Del. 1984), and, accordingly, "[t]he decision to bring a lawsuit on behalf of a corporation" belongs to the corporation's board of directors. *Spiegel*, 571 A.2d at 773.

Since Plaintiff is asserting double derivative claims and has not made a demand on either the Bank of America Board or the Merrill Lynch Board, Plaintiff must plead demand futility with respect to both boards. *See Rales* v. *Blasband*, 634 A.2d 927, 933-35 (Del. 1993). The Complaint asserts causes of action with respect to the Old Merrill Lynch Board, not the Bank of America Board. To demonstrate that demand on the Bank of America Board would be futile, Plaintiff must allege facts "creat[ing] a reasonable doubt that, at the time the complaint is filed, the [Bank of America] board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id.* at 933. "Independence" in this context means that "a director's decision is based on the corporate merits of the subject be-

_____

(footnote continued)

from clear that plaintiffs would retain any more standing under federal common law than they would have under Delaware law." *In re Merrill Lynch*, 597 F. Supp. 2d at 429 (citing cases).

fore the board rather than extraneous considerations or influences." *Id.* at 936, quoting *Aronson*

v. *Lewis*, 473 A.2d at 816. "Disinterestedness" in this context means that "directors can neither

appear on both sides of a transaction nor expect to derive any personal financial benefit" from

the decision whether or not to bring suit. *Aronson*, 473 A.2d at 812. Where plaintiffs assert —

as they almost universally do in derivative cases — that directors are interested because they face

a threat of personal liability, the allegations must show the "potential for liability is not 'a mere

threat' but instead may rise to a 'substantial likelihood.'" *Rales*, 634 A.2d at 936, citing

*Aronson*, 473 A.2d at 815.

       Finally, to demonstrate demand futility, the facts giving rise to a reasonable doubt

regarding the board's lack of independence or disinterestedness must be alleged "with particular-

ity," Fed. R. Civ. P. 23.1(b)(3). It is not enough to formulaically label directors "interested," and

"conclusory statements or mere notice pleading" will not suffice. *Louisiana Mun. Police Em-

ployees Ret. Sys.* v. *Pandit*, 2009 U.S. Dist. LEXIS 82308, at *13 (S.D.N.Y. Sept. 10, 2009),

quoting *Brehm* v. *Eisner*, 746 A.2d 244, 254 (Del. 2000).

       As will now be shown, the Complaint does not satisfy these exacting standards as

to the Bank of America Board.

**A.**    **The indemnification and insurance provisions of the Merger Agreement do not
demonstrate that a majority of the Bank of America Board was interested in or
lacked independence regarding a demand to sue the Merrill Lynch Defendants.**

       Plaintiff alleges that demand on the Bank of America Board was futile because,

pursuant to the Merger Agreement, a majority of the Bank of America Board caused Bank of

America "to agree to indemnify and hold harmless each present and former director and officer

of Merrill Lynch for liability for matters arising out of *or prior to* the completion of the merger

*to the fullest extent provided by applicable law.*" Complaint ¶ 399 (emphasis added in part).

- 10 -

Plaintiff suggests something nefarious in the fact that the Merger Agreement also obligated Bank of America to maintain Merrill Lynch's pre-Merger directors' and officers' insurance coverage for six years. *Id.* Plaintiff asserts that these provisions of the Merger Agreement "effectively waived" Bank of America's ability to pursue the derivative claims in the Complaint. *Id.*

But as the Court concluded in its February 17 Opinion and Order, the indemnification and insurance provisions of the Merger Agreement are "standard" provisions. *In re Merrill Lynch*, 547 F. Supp. 2d at 430, citing *In re Talley Indus., Inc. S'holders Litig.*, 1998 WL 191939, at *4 n.1 (Del. Ch. Apr. 13, 1998) and *Globis Partners, L.P.* v. *Plumtree Software, Inc.*, 2007 WL 4292024, at *2 (Del. Ch. Nov. 30, 2007).

An acquiror's agreement to honor the acquired company's pre-merger indemnification and insurance obligations does not demonstrate that the acquiror's board lacks disinterestedness or independence with respect to demands to sue the acquired company's board, just as the acquired company's board having negotiated for such indemnification and insurance coverage does not constitute grounds for questioning its disinterestedness or independence. *See Talley*, 1998 WL 191939, at *10 n.4 ("The [merger agreement's] indemnification provisions evince no sinister motive on the part of the board."); *Globis Partners*, 2007 WL 4292024, at *8 ("There is no basis for inferring the receipt of indemnification benefits is material, or likely to taint the Individual Defendants' judgment."); *In re Sea-Land Corp. S'holders Litig.*, 642 A.2d 792, 804 (Del. Ch. 1993) ("Normally, the receipt of indemnification is not deemed to taint related director actions with a presumption of self-interest . . . because indemnification has become commonplace in corporate affairs.").

Moreover, Plaintiff's allegation that these provisions constituted an "effective waiver" of Bank of America's ability to prosecute her double derivative claims lacks merit. As

Plaintiff concedes, the indemnification granted to the Merrill Lynch officers and directors is to the "fullest extent provided by the applicable law." Complaint ¶ 399. Section 145(b) of the Delaware General Corporation Law specifically provides that "no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the corporation. . . ." 8 Del. Code § 145(b). If Merrill Lynch's officers and directors were adjudged liable to Merrill Lynch for breach of fiduciary duty, they *would not* be entitled to any indemnification under the Merger Agreement. Thus, the ability to prosecute any action against the Merrill Lynch officer and directors was not "waived" ("effectively" or otherwise) by the indemnification provisions of the Merger Agreement.[9]

Plaintiff further alleges that, by agreeing to maintain insurance coverage for the Merrill Lynch Defendants, the Bank of America Board made Bank of America "directly liable for the costs of recovery on any such claims of Bank of America based on the insured versus insured exclusion contained in typical directors' and officers' insurance policies." Complaint ¶ 399. And while the import of Plaintiff's contention is unclear, it is misplaced in any event. The "insured versus insured exclusion" is irrelevant to the independence of the Bank of America Board members who, with the exception of the two legacy Merrill Lynch directors, are not named as defendants in this action. Moreover, courts routinely reject the argument that, because these insurance policies are typically sold with "insured versus insured" exclusions, "director

---

[9]    Plaintiff also alleges that a majority of the Bank of America Board agreed to the indemnification provisions "without any consideration of the substance or merits of [her double derivative] claims" and thereby rendered themselves "liable to [Bank of America] shareholders." Complaint ¶ 400. This allegation does not suffice to show any lack of disinterestedness or independence on the part of the Bank of America Board. Putting to one side the entirely conclusory nature of the allegation, Plaintiff nowhere explains why — even if the allegation were true — the Bank of America Board would as a result lack any incentive to pursue Plaintiff's claims against the Merrill Lynch Defendants.

interest" is established. *Halpert Enters. Inc.* v. *Harrison*, 362 F. Supp. 2d 426, 433 (S.D.N.Y. 2005) ("That the insurance policy indemnifying defendants would not cover their liability were the corporation itself to bring suit against them is also not a sufficiently particular basis for inferring demand futility."); *Carauna* v. *Saligman*, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990).

**B.    Any potential liability on claims arising out of the Merger does not demonstrate that the Bank of America Board is interested or lacks independence regarding a demand to sue the Merrill Lynch Defendants.**

Plaintiff's challenge to the Bank of America Board's disinterestedness and independence consists principally of a series of allegations that — in connection with its decisions to approve the Merger, the Merger Agreement and the Proxy Statement — a majority of the Board breached its fiduciary duties to *Bank of America's* shareholders.

Thus, Plaintiff alleges that a majority of the Bank of America Board faces "substantial personal liability to [Bank of America] shareholders" by:

- approving the provisions of the Merger Agreement relating to the payment of bonuses to Merrill Lynch employees and allegedly agreeing to pay $3.6 billion in 2008 bonuses "without determining the amount of such bonuses or to whom they would be awarded before approving them" (Complaint ¶ 401);

- authorizing the issuance of the Proxy Statement that allegedly "failed to disclose material facts concerning the 2008 bonuses" and "losses that Merrill Lynch was suffering in the fourth quarter of 2008" (*id.* ¶¶ 402-03); and

- after the "growth in losses at Merrill Lynch following approval of the Merger," choosing not to "terminate the Merger as permitted by the Merger Agreement," in response to warnings by the Secretary of the Treasury that, if they did so, the Government "would remove then current [Bank of America] management" and the Board (*id.* ¶¶ 404-05).

These allegations fail to create any "reasonable doubt" that, at the time the Complaint was filed, the Bank of America Board could have properly exercised disinterested and independent judgment in responding to *a demand to pursue the claims asserted in the Complaint against the Merrill Lynch Defendants.* As noted above, most of the derivative claims asserted

against the Merrill Lynch Defendants relate to pre-Merger conduct. Even if one assumes *arguendo* that the Complaint pleads sufficiently particularized facts demonstrating a "substantial likelihood" of personal liability of Bank of America directors to Bank of America or its shareholders with respect to their Merger-related conduct, Plaintiff nowhere explains why that potential liability would prevent the Bank of America Board from disinterestedly assessing a demand to sue the Merrill Lynch Defendants for their *pre-Merger* conduct.

The Complaint does make the conclusory allegation that pursuit of the derivative claims against the Merrill Lynch Defendants would result in a majority of the Bank of America Board "making themselves liable for . . . violations of the federal securities laws and the common law to [Bank of America] and its shareholders." Complaint ¶ 406; *see id.* ¶¶ 402, 403. But again, this is pure *ipse dixit*: the principal wrongdoing by the Merrill Lynch Defendants alleged in the double derivative claims — which relates to the company's CDO exposure in *2006* and *2007*, to repurchase shares of Merrill Lynch stock in the spring of *2007* or, as to some of them, to sell some of their Merrill Lynch shares in the open market in February *2007* — is completely unrelated to the alleged wrongdoing by the Bank of America Board in connection with the Merger that occurred in September through December *2008*.

Despite the Court's admonition in the February 17 Opinion and Order that any new complaint arise out of the same allegations as the previously dismissed one, Plaintiff chose to add a claim (Count XII) that the Merrill Lynch Board (along with Messrs. Thain and Fleming) committed "corporate waste" by authorizing the payment of $3.62 billion in discretionary incentive compensation to Merrill Lynch employees. Plaintiff alleges that the Bank of America Board is "interested" in this claim and faces potential personal liability to Bank of America shareholders because (1) it approved the provisions of the merger agreement permitting the payment of

bonuses "without determining the amount of such bonuses or to whom they would be awarded" (Complaint ¶ 401); (2) the Joint Proxy Statement allegedly contained material omissions concerning Merrill Lynch's ability to pay year-end discretionary compensation (*id.* ¶ 402); and (3) it failed to terminate the Merger Agreement (*id.* ¶¶ 404-05). Even if this claim were properly before the Court in this litigation — which, given the express terms of the February 17 Opinion and Order, it is not — Plaintiff's allegations fail to demonstrate demand futility.

The gravamen of Plaintiff's allegation is that, because it agreed to permit Merrill Lynch to pay incentive compensation "without determining the amount of such bonuses or to whom they would be awarded," the Bank of America Board breached its duty of care; the Bank of America directors, after all, were not the recipients of that compensation and had no personal financial interest in the business decision to pay it. *See Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc.* v. *Elkins*, 2004 WL 1949290, at *14 (Del. Ch. Aug. 24, 2004) (allegations of lack of diligence in award of compensation "simply not enough to demonstrate a lack of loyalty or good faith"); *Chaffin* v. *GNI Group, Inc.*, 1999 WL 721569, at *5 (Del. Ch. Sept. 3, 1999) ("To establish a breach of duty of loyalty, the plaintiff must show that the directors either stood on both sides of the transaction and dictated its terms in a self-dealing way, or that the directors received in the transaction a personal benefit that was not enjoyed by the shareholders generally.") (citations omitted). Any such breach of care claim is expressly precluded by the Section 102(b)(7) exculpatory provision contained in the Bank of America charter. *See* Roth Aff. Ex. B. at p. 25, ¶ 6. *See also Malpiede* v. *Townson*, 780 A.2d 1075, 1092-93 (Del. 2001).

Regarding the argument that the Bank of America Board faces personal liability for the disclosures made in the Joint Proxy Statement concerning Merrill Lynch's right to pay incentive compensation, Delaware General Corporation Law Section 102(b)(7) likewise "applies

to violations of a director's duty of disclosure," *Globis Partners*, 2007 WL 4292024, at *53, and

"a good faith erroneous judgment as to the proper scope or content of required disclosure impli-

cates the duty of care rather than the duty of disclosure." *Zirn* v. *VLI Corp.*, 681 A.2d 1050,

1062 (Del. 1996). Here, the Complaint contains *no* allegations — let alone the requisite "par-

ticularized" allegations — that the Bank of America Board acted in bad faith in connection with

the allegedly deficient disclosure.[10]

      As to Plaintiff's allegation regarding the Bank of America Board's decision to

proceed with the Merger following Secretary Paulson's warnings that the failure to do so would

result in their removal, Plaintiff has failed to carry her burden of showing that the Board's deci-

sion "*could not have been* a good faith exercise of business judgment." *In re infoUSA, Inc.

S'holders Litig.*, 953 A.2d 963, 972 (Del. Ch. 2007). But even if one were to assume that the

Complaint meets this stringent standard — which it does not, *see Hexion Specialty Chems., Inc.

v. Huntsman Corp.*, 965 A.2d 715, 738 (Del. Ch. 2008) (noting the "heavy burden" a buyer faces

invoking a material adverse effect clause and that "Delaware courts have never found a material

adverse effect to have occurred" — the Complaint nowhere explains why causing Merrill Lynch

to pursue a corporate waste claim for paying incentive compensation would create "substantial

personal liability" on the part of the Bank of America Board for failing to invoke the clause here.

Accordingly, even as to the Merger-related derivative claims, the Complaint fails to establish

demand futility.

---

[10]    Moreover, whether Merrill Lynch's ability to pay incentive compensation was appropri-
ately disclosed by Bank of America is a separate issue from whether the payment of such com-
pensation constituted corporate waste — the sole bonus-related cause of action the Complaint
seeks to assert against any of the Merrill Lynch Defendants. The Complaint nowhere explains
why causing Merrill Lynch to pursue this waste claim would result in the Bank of America
Board "making themselves liable" for violations of federal or state law regarding the disclosure
contained in the Proxy Statement concerning the provisions of the Merger Agreement.

**C.    The Complaint's allegations regarding "pre-judgment" of the merits do not demonstrate that the Bank of America Board is interested or lacks independence.**

The Complaint next alleges, without any factual support, that demand on the Bank of America Board would be futile because a majority of the Board has supposedly "pre-judged the merits of this action and offered their opinion on the merits of this action" in the Proxy Statement. Complaint ¶ 407. The relevant language of the Proxy Statement — which the Complaint quotes verbatim — shows that this allegation is baseless:

> Merrill Lynch and Bank of America believe that the *class claims* asserted by Merrill Lynch stockholders *relating to the merger are without merit* and intend to contest them vigorously. Upon consummation of the merger, the plaintiffs who have asserted derivative claims on behalf of Merrill Lynch *may lose standing* to assert such claims on behalf of Merrill Lynch because they will no longer be Merrill Lynch stockholders.

*Id.* (emphasis added). The only claims that the Proxy Statement asserted were "without merit" were the "class claims asserted by Merrill Lynch stockholders relating to the merger," not the double-derivative claims that are the subject of this motion.

Plaintiff also alleges that the Bank of America Board was aware that the "Merrill Board had already flatly rejected shareholder demands to pursue the claims alleged in this action." Complaint ¶ 408. But this allegation proves nothing. As this Court recognized in its February 17 Opinion and Order, "the Bank of America board is altogether different from the Merrill board," *In re Merrill Lynch*, 597 F. Supp. 2d at 431, and the fact that the Merrill Board already rejected demands to pursue claims similar to those alleged in this action does not demonstrate that the Bank of America Board pre-judged the merits of Plaintiff's double derivative claims.

**D.    The Complaint's allegations regarding "conflicts of interest" fail to demon-
strate that a majority of the Bank of America Board lacks independence.**

The Complaint alleges that "there is a reasonable doubt as to whether the [Bank of
America] directors could independently and disinterestedly consider a demand to sue other
members of the [*Bank of America*] Board due to disabling personal and professional conflicts of
interest." Complaint ¶ 411. The Complaint asserts that this is so because:

- Bank of America director Charles Gifford (not a defendant) serves on the CBS
  Corporation board of directors with Bank of America director Gary Country-
  man (not a defendant) and, *in the past*, served on the CBS board with former
  Merrill Lynch director and named defendant Ann Reese;

- Bank of America director Frank Bramble (not a defendant) served as a senior
  executive of MBNA Corporation when it was acquired by Bank of America
  and received significant compensation from Bank of America; and

- Bank of America directors Gifford (not a defendant), Countryman (not a defen-
  dant) and Thomas May (also not a defendant) serve as trustees of NSTAR, an en-
  ergy utility company, where May also serves as Chairman, President and CEO.

*Id.* ¶ 411(a), (b) and (c).

The business relationships between Bank of America directors is completely ir-
relevant to the issue at hand: whether a majority of the Bank of America Board is sufficiently
independent to bring suit against former officers and directors of *Merrill Lynch*. The sole alleged
relationship between a Bank of America director and any of the Merrill Lynch Defendants — the
simultaneous service of Mr. Gifford (of the Bank of America Board) and Ms. Reese (formerly of
the Merrill Lynch Board) on the board of directors of CBS Corporation — does not suffice to
create a lack of independence on the part of Mr. Gifford, let alone on the part of a majority of the
Bank of America Board. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc.* v. *Stewart*,
845 A.2d 1040 (Del. 2004) ("[T]o render a director unable to consider demand, a relationship
must be of a bias-producing nature. Allegations of mere personal friendship or a mere outside

business relationship, standing alone, are *insufficient* to raise a reasonable doubt about a director's independence.") (emphasis added); *In re Pfizer Inc. Deriv. Sec. Litig.*, 307 Fed. App'x 590, 595 (2d Cir. 2009) ("It is well established under Delaware law that the number of years that defendants have served on a board or multiple boards together cannot suffice as a basis to successfully plead a lack of independence for demand futility purposes.").

**E.    The Bank of America Board's rejection of the Lambrecht demand does not suffice to demonstrate futility here.**

Plaintiff alleges that, after consummation of the Merger, the Bank of America Board "formally rejected" a demand made by another former Merrill Lynch shareholder, Nancy Lambrecht, to pursue the derivative claims asserted in this action. Plaintiff asserts that, as a result, "any question that demand . . . would have been futile has been resolved." Complaint ¶ 412.

The Delaware courts have rejected the convenient yet misleading argument that the refusal of one shareholder's demand to bring suit presumptively demonstrates that a second demand by another shareholder pertaining to the same claims would be futile. *See Maurer* v. *Johnson*, 1989 WL 99172, at *1 (Del. Ch. May 12, 1989) (rejecting argument that demand would have been "futile on its face" because of board's "rejection of a prior demand based upon the same transaction"; plaintiff must show that first refusal was wrongful in order to proceed with suit); *Kaplan* v. *Peat, Marwick, Mitchell & Co.*, 529 A.2d 254, 257 (Del. Ch. 1987), *aff'd in part & rev'd in part on other grounds*, 540 A.2d 726 (1988) (same). Accordingly, because the Complaint does not allege, let alone establish, that the Bank of America Board's rejection of the Lambrecht demand was wrongful, Plaintiff has failed to show that demand on the Bank of America Board is excused.

## POINT III

### THE COMPLAINT FAILS TO PLEAD DEMAND
### FUTILITY WITH RESPECT TO THE PROPER MERRILL LYNCH BOARD

Plaintiff focuses on the wrong Merrill Lynch Board of Directors.  As noted above, in a double derivative action demand futility must be alleged as to the boards of both the parent and subsidiary corporations.  *See Rales*, 634 A.2d at 933-34.  The Complaint devotes some 28 pages and 67 paragraphs to allegations regarding the futility of making demand on the Old Merrill Lynch Board.  *See* Complaint ¶¶ 328-95.  Although the Complaint acknowledges that, upon the consummation of the Merger on January 1, 2009, each of the pre-Merger directors left the Merrill Lynch Board, *see* Complaint ¶¶ 45-54, it does not contain a single allegation regarding the futility of making demand on the Merrill Lynch Board as it existed on July 27, 2009, the date on which the Complaint was filed.

### A.    Plaintiff's claims were not validly in litigation.

In *Braddock* v. *Zimmerman*, 906 A.2d 776 (Del. 2006), the Delaware Supreme Court held that, when an amended derivative complaint is filed, the existence of a new independent board of directors is relevant to a Rule 23.1 demand inquiry as to any claims in the amended complaint that "are not already validly in litigation."  *Id.* at 786 (footnote omitted).  "Validly in litigation" means "a proceeding that can or has survived a motion to dismiss."  *Id.* at 779.  "A fortiori* for Rule 23.1 demand purposes . . . a complaint that has been dismissed is *not* validly in litigation."  *Id.* at 786 (emphasis added in part). [11]  "Consequently, *where a complaint is amended with permission following a dismissal without prejudice,* even if the act or transaction com-

---

[11]    The *Braddock* rule applies in federal court.  *See, e.g.*, *In re NYFIX, Inc. Deriv. Litig.*, 567 F. Supp. 2d 306, 310-11 (D. Conn. 2008); *In re CNET Networks, Inc. S'holder Deriv. Litig.*, 2008 WL 2445280, at *5 (N.D. Cal. June 16, 2008).

plained of in the amendment is essentially the same conduct that was challenged in the original dismissed complaint, *the Rule 23.1 demand inquiry must be assessed by reference to the board in place at the time when the amended complaint is filed.*" *Id.* (emphasis added).

Even though Plaintiff's previous complaint was dismissed without prejudice, *any* dismissal meant that its allegations were no longer "validly in litigation" when the Complaint was filed.[12] The demand futility inquiry must therefore be assessed by reference to the Merrill Lynch Board in place on July 27, 2009 — when the current Complaint was filed. *See, e.g.,* *NYFIX*, 567 F. Supp. 2d at 310-12 (first amended complaint was not "validly in litigation" where "plaintiffs lacked standing to bring the claims asserted"; "proper board of directors for assessing the futility of demand with respect to the plaintiff's claims in the Second Amended Complaint is the board in place at the time that complaint was filed"); *CNET*, 2008 WL 2445200, at *6 (where "plaintiffs' last complaint was fully dismissed" and the "composition of CNET's board significantly changed," plaintiffs "must show that demand would have been futile with respect to the board as composed at the time the [latest] complaint was filed").[13]

Since it does not identify the current members of the Merrill Lynch Board, let alone plead particularized facts showing that demand upon them would be futile, the Complaint

------------------------

[12]    As to Count XII alleging corporate waste with respect to 2008 bonus payments at Merrill Lynch, those claims were never even alleged in the previous Complaint and hence cannot possibly have been "validly in litigation."

[13]    Plaintiff may argue that the claims asserted in her prior complaint were "validly in litigation" at the time the new Complaint was filed because the dismissal was the result of her loss of standing due to the Merger, rather than a judicial determination that the futility allegations in the dismissed pleading were inadequate. But even on this reading of *Braddock*, the derivative claims in Plaintiff's previous complaint were not "validly in litigation" when the new Complaint was filed because, as set forth in the memoranda of law filed by the Merrill Lynch Defendants in support of their motion to dismiss Plaintiff's previous complaint, those claims did not and could not satisfy the test for demand excusal. *See Braddock,* 906 A.2d at 786.

should be dismissed. *See Saito*, 2004 Del. Ch. LEXIS 205, at \*10 (dismissing with prejudice newly pleaded claim that was "not validly in litigation" at prior stages of case because "plaintiffs make no effort to identify the directors who would have received demand for this new claim").

**B.    Even if the Old Merrill Lynch Board were the relevant board for measuring demand futility, demand would still not be excused.**

Even accepting Plaintiff's contention that the relevant Merrill board for demand purposes is the board "at the time the Merger was consummated" (Complaint ¶ 328), Plaintiff's demand futility allegations are insufficient. Plaintiff rests her demand futility argument regarding the Old Merrill Lynch Board on the assertion that its members face a substantial likelihood of liability on the claims asserted against them. *See id.* ¶¶ 329-32. As explained below, the Complaint fails to plead particularized facts to support that conclusory assertion.

**1.    The Old Merrill Lynch Board members are immunized for any breach of the duty of the care under Merrill Lynch's Certificate of Incorporation.**

Merrill Lynch's Certificate of Incorporation immunizes directors from monetary liability for breach of fiduciary duty claims such as those here that are not based on a breach of the duty of loyalty or intentional or bad faith conduct. Thus, as explained more fully in the Merrill Lynch Directors' brief in support of their motion to dismiss, Plaintiff's assertion that a majority of the Old Merrill Lynch Board faces a real and substantial danger of liability is simply false. *See* Merrill Directors Brief In Support of Their Motion To Dismiss at pp. 7-9. "When the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption." *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995); *see also Wood*, 953 A.2d at 141. As the Old Merrill Lynch Board members do not face any likelihood of liability on

- 22 -

these claims, they are "not disable[d] . . . from considering a demand fairly." *In re Baxter*, 654 A.2d at 1270.

> **2.    Even setting aside the exculpatory provision, Plaintiff has failed to plead particularized facts showing that the Old Merrill Lynch Board members faced a "substantial likelihood" of liability.**

Exculpation aside, Plaintiff has failed to plead that the Old Merrill Lynch Board members faced a substantial likelihood of liability for three reasons.

First, as explained in the Merrill Directors' brief in support of their motion to dismiss, the Complaint fails to plead an oversight or "*Caremark*" (*see In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996)) claim. *See* Merrill Directors' Brief at 10-12. *A fortiori*, the Complaint fails to plead a substantial likelihood of liability for such claims based on particularized factual allegations as required by Rule 23.1.[14]

Second, with respect to the four transactions challenged in the Complaint —
(i) Merrill's acquisition of First Franklin in December 2006; (ii) Merrill's acquisition of First Republic Bank in January 2007; (iii) the April 20, 2007 stock repurchase program; and (iv) Mr. O'Neal's retirement agreement — Plaintiff has failed to plead "*particularized facts*" that raise a reasonable doubt as to (a) disinterest or independence by a *majority* of the directors, or
(b) whether the directors exercised proper business judgment in approving the challenged transaction. *Aronson*, 473 A.2d at 814; *In re Morgan Stanley Deriv. Litig.*, 542 F. Supp. 2d 317, 322 (S.D.N.Y. 2008).

---

[14]    Plaintiff also asserts in conclusory fashion that the members of the Old Merrill Lynch Board lacked independence because two out of its ten members had "close personal ties" with Mr. O'Neal. (Complaint ¶¶ 364-65.) Not only is two far less than a majority, but personal and business friendships alone are insufficient to excuse demand. *See* pp. 17-18, *supra*.

The Complaint fails the first prong of *Aronson* because it does not plead that any of the Old Merrill Lynch Board members had a material financial interest in, or expected to derive any personal benefit from, any of the four challenged transactions. *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 821 (Del. Ch. 2005) (director "interest" not pleaded where "none of the outside directors stood on both sides of the transaction nor are they alleged to have received any personal financial benefit from it other than one that devolved on all JPMC stockholders alike"), *aff'd*, 906 A.2d 766 (Del. 2006).

The Complaint fails to satisfy the second prong of *Aronson* because:

- Plaintiff concedes a rational business purpose for the acquisition of First Franklin — it gave Merrill control of a mortgage originator to supply the loans used for the creation of CDOs. (Complaint ¶¶ 124, 125.)

- The Complaint contains no description of the Old Merrill Lynch Board's process or reasoning for the acquisition of First Franklin other than to note that the board decided to acquire "another bank" in January 2007. (*Id.* ¶ 372)

- Plaintiff concedes that the April 2007 stock repurchase program had a rational business purpose: Merrill sought a flexible tool to manage its equity capital. (*Id.* ¶ 151) Courts have repeatedly applied the protection of the business judgment rule to decisions to repurchase company stock. *See Kahn ex rel. DeKalb Genetics Corp.* v. *Roberts*, 679 A.2d 460, 466 (Del. 1996) (stock repurchase protected by the business judgment rule); *Andreae* v. *Andreae*, 1992 WL 43924, at *8 (Del. Ch. Mar. 3, 1992); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust* v. *Lundgren*, 579 F. Supp. 2d 520, 537 (S.D.N.Y. 2008).

- The Complaint fails to allege that the compensation provided to Mr. O'Neal for his service falls outside the extremely wide discretion given to executive compensation decisions under the business judgment rule. *See Brehm*, 746 A.2d at 253, 265-66.

Moreover, as to Count XII, a new claim which alleges that the payment of incentive compensation by Merrill Lynch constituted "corporate waste," the Complaint does not even come close to establishing the high threshold for liability on such a claim. *See Elkins*, 2004 WL 1949290, at *17 ("Waste is a standard rarely satisfied in Delaware courts."). To state a claim for waste, Plaintiff must establish that the defendants "authorize[d] an exchange that is so one sided

- 24 -

that *no business person* of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Glazer* v. *Zapata*, 658 A.2d 176, 183 (Del. Ch. 1993) (emphasis added).  As demonstrated in the brief of the Merrill Directors, at 17-18, the Complaint falls well short of meeting this heavy burden.

Finally, with respect to the alleged insider trading against Messrs. O'Neal, Fakahany and Fleming, demand is not excused because *none* of these individuals was on the Old Merrill Lynch Board.  *See Guttman* v. *Huang*, 823 A.2d 492, 503 n.22 (Del. Ch. 2003) ("[T]he fact that three non-director-defendants, who each engaged in very substantial trades during the Contested Period, are named in the case has little bearing on the demand excusal analysis for an obvious reason:  they are not on the board.").

In sum, even if the Old Merrill Lynch Board were the relevant board for purposes of the demand analysis, Plaintiff has failed to establish demand futility.

## CONCLUSION

For the foregoing reasons, Bank of America's motion to dismiss Counts I through XII of the Complaint should be granted with prejudice.

Dated:  New York, New York
       September 21, 2009

Respectfully submitted,

_Jay Kasner/by consent RKF_
Jay B. Kasner (jay.kasner@skadden.com)
Scott D. Musoff (scott.musoff@skadden.com)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
Telephone:  (212) 735-3000

*Attorneys for Nominal Defendant*
   *Merrill Lynch & Co., Inc.*

/s/ Eric M. Roth
Eric M. Roth (EMRoth@wlrk.com)
Rodman K. Forter, Jr. (RKForter@wlrk.com)
Keola R. Whittaker (KRWhittaker@wlrk.com)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000

*Attorneys for Nominal Defendant*
   *Bank of America Corporation*