UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION

Master File No. 07-cv-9633 (JSR)(DFE)

This Document Relates To:
Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al., 08cv9063 (JSR)(DFE)

**MEMORANDUM OF LAW IN SUPPORT OF BOND PLAINTIFFS' MOTION FOR APPROVAL OF PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS**

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Max W. Berger
Mark Lebovitch
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

***Bond Counsel***

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ iii

I. PRELIMINARY STATEMENT ........ 1

II. THE PROPOSED PLAN OF ALLOCATION SHOULD BE APPROVED ........ 2

A. The General Standards For Approving A Plan Of Allocation ........ 2

B. The Proposed Plan Of Allocation Is Fair And Reasonable And Warrants Approval By The Court ........ 5

1. Considerations Underlying The Structure Of The Proposed Plan of Allocation ........ 5

2. The Terms Of The Plan Of Allocation ........ 6

C. The Reaction Of The Class Supports Approval Of The Plan of Allocation ........ 8

CONCLUSION ........ 9

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aramburu v. Healthcare Financial Services, Inc.*,
No. 02-CV-6535 (MDG), 2009 WL 1086938 (E.D.N.Y. Apr. 22, 2009) ....4

*Beecher v. Able*,
575 F.2d 1010 (2d Cir. 1978)....2

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)....3, 9

*In re Chicken Antitrust Litig.*
669 F.2d 228 (5th Cir. 1982) ....3

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....2

*In re Holocaust Victim Assets Litig.*,
424 F.3d 132 (2d Cir. 2005)....2

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)....3

*In re Lloyd's Am. Trust Fund Litig.*,
No. 96 Civ. 1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002), *aff'd*, No. 03-7011, 2003 WL 21982207 (2d Cir. 2003) (summary order) ....4

*In re Luxottica Group S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006)....3

*In re Merrill Lynch & Co. Shareholders Litig.*,
02 MDL 1484 (JFK), 2007 WL 4526593 (S.D.N.Y Dec. 20, 2007)....8

*In re Merrill Lynch Tyco Research Sec. Litig.*
249 F.R.D. 124 (S.D.N.Y. 2008) ....2, 6

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal 2008) ....7

*In re Openwave Sys. Sec. Litig.*,
07 Civ. 1309 (DLC), Judgment (S.D.N.Y. Feb. 27, 2009) ....8

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997)....3, 7

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................3

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................3, 4

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................3

*Mirfasihi v. Fleet Mortgage Corp.*,
356 F.3d 781 (7th Cir. 2004)....................8

*Silverblatt v. Morgan Stanley*,
524 F. Supp. 2d 425 (S.D.N.Y. 2007)....................3

*White v. NFL*,
822 F. Supp. 1389 (D. Minn. 1993)....................4

**STATUTES**

Section 11 of the Securities Act of 1933 ....................2, 5, 6, 7

Plaintiffs Louisiana Sheriffs' Pension and Relief Fund and Louisiana Municipal Police Employees' Retirement System (the "Bond Plaintiffs") respectfully submit this memorandum of law in support of their motion for final approval of the Plan of Allocation of the Net Settlement Fund.[1]

## I. PRELIMINARY STATEMENT

If approved by the Court, the proposed Plan of Allocation will determine how the net proceeds of the Settlement will be distributed to the members of the Bond Class. The objective of a plan of allocation is to fairly and equitably distribute settlement proceeds by determining the positions of class members in relation to other class members. The proposed Plan of Allocation achieves that objective in clear and reasonable ways.

The terms of the Plan of Allocation, which are set forth at pages 8-12 of the Notice of Pendency of Class Action and Proposed Settlement, Settlement Fairness Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), were developed by

---

[1] Bond Plaintiffs are simultaneously submitting herewith the Declaration of Max W. Berger and Mark Lebovitch in Support of Bond Plaintiffs' Motion for Final Approval of Class Action Settlement and Certification of the Bond Class and Motion for Approval of Plan of Allocation of Settlement Proceeds, and Bond Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Bond Counsel Declaration" or "Bond Counsel Decl."). The Bond Counsel Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action through the submission of the Settlement to the Court; the nature of the claims asserted in the Action; the negotiations leading to the Settlement; the value of the Settlement to the Class, as compared to the risks and uncertainties of continued litigation; the terms of the Plan of Allocation for the Settlement proceeds; and a description of the services Bond Counsel provided for the benefit of the Class. Bond Plaintiffs are also submitting simultaneously herewith a declaration from their damages expert, Chad Coffman (the "Coffman Declaration" or "Coffman Decl."), in support of the Plan of Allocation.

Unless otherwise noted, capitalized terms shall have the meanings set out in the Bond Counsel Declaration and in the Stipulation and Agreement of Settlement dated August 12, 2009 (the "Stipulation") attached as Exhibit 1 to the Bond Counsel Declaration.

Bond Counsel in consultation with Bond Plaintiffs' damages expert. Under the Plan of Allocation, the proceeds of the Net Settlement Fund are allocated among Bond Class Members pursuant to the statutory measure of damages set forth in Section 11 of the Securities Act of 1933 (the "Securities Act"). Among other things, the Plan of Allocation takes into account the strengths of the Bond Class Members' claims and whether the Bond Class Members actually suffered losses on their transactions in the Bond Class Securities attributable to the wrongdoing alleged in the Action. For the reasons set forth herein, in the Bond Counsel Declaration, and in the Coffman Declaration, Bond Plaintiffs and Bond Counsel respectfully submit that the Plan of Allocation provides a fair and reasonable method to efficiently and equitably distribute the Net Settlement Fund to Bond Class Members and, therefore, warrants approval by the Court.

## II. THE PROPOSED PLAN OF ALLOCATION SHOULD BE APPROVED

### A. The General Standards For Approving A Plan Of Allocation

Courts have broad supervisory powers with respect to the allocation of settlement proceeds among the class members. *See In re Holocaust Victim Assets Litig.*, 424 F.3d 132, 146 (2d Cir. 2005) ("[t]he district court has broad supervisory powers with respect to the administration and allocation of settlement funds") (internal quotation marks omitted); *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978) (district courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably").

To warrant approval by the court, a plan of allocation of the settlement proceeds must be fair and reasonable. *See In re Merrill Lynch Tyco Research Sec. Litig.* ("*ML Tyco*"), 249 F.R.D. 124, 135 (S.D.N.Y. 2008); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) ("the plan of allocation must also meet the standards by which the settlement was scrutinized – namely, it must be fair and

adequate") (citation omitted); *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005); *see also In re Chicken Antitrust Litig.* 669 F.2d 228, 238 (5th Cir. 1982); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000).

A plan of allocation need not be perfect, and can never be tailored to each class member with "mathematical precision." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y.) ("At a minimum, it is obvious that in the case of a large class action the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision. To determine precisely 'the distribution of the settlement fund among the myriad claimants' in such a class would require counsel or the district court 'to weigh the strengths and weaknesses of the claims of each class member' and would be an 'almost impossible task.'") (citations omitted), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *accord Silverblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 430 (S.D.N.Y. 2007) ("Exactitude is not required in allocating consideration to the class, providing that the overall result is fair, reasonable and adequate"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) ("An allocation formula need only have a reasonable, rational basis....").

The purpose of a plan of allocation is to equitably distribute limited settlement proceeds to eligible class members. *See Luxottica*, 233 F.R.D. at 316-17 (citing *Beecher*, 575 F.2d at 1016). Generally, a plan of allocation is reasonable if it reimburses class members based on the type and extent of their injuries and the strength of their legal claims. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) ("A reasonable plan may consider the relative strengths and values of different categories of claims."); *Luxottica*, 233 F.R.D. at 317 ("A plan of allocation should be based on the nature and extent of class members' provable damages."); *In re*

*Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 429 (S.D.N.Y. 2001) ("Allocation formulas . . . are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim.").

In assessing whether a proposed plan of allocation is fair and reasonable, courts have given great weight to the opinion of experienced counsel. *Aramburu v. Healthcare Financial Services, Inc.*, No. 02-CV-6535 (MDG), 2009 WL 1086938, at *5 (E.D.N.Y. Apr. 22, 2009) ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.") (citing *PaineWebber*, 171 F.R.D. at 133 ("[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.")); *see In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 RWS, 2002 WL 31663577, *18 (S.D.N.Y. Nov. 26, 2002) ("Class action settlement benefits may be allocated by counsel in any reasonable or rational manner because 'allocation formulas . . . reflect the comparative strengths and values of different categories of the claim.'") (quotation omitted), *aff'd*, No. 03-7011, 2003 WL 21982207 (2d Cir. 2003) (summary order); *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993) (stating that "[t]he court . . . affords considerable weight to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved" in approving distribution of settlement proceeds); *see also WorldCom*, 388 F. Supp. 2d at 344 ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.") (quoting *Maley*, 186 F. Supp. 2d at 367). The proposed Plan of Allocation in this case is recommended by experienced counsel fully informed of the relevant legal and factual issues, and should be approved by the Court.

### B. The Proposed Plan Of Allocation Is Fair And Reasonable And Warrants Approval By The Court

#### 1. Considerations Underlying The Structure Of The Proposed Plan of Allocation

After the Settlement with Defendants was reached, Bond Counsel had numerous discussions with Bond Plaintiffs' damages expert concerning the appropriate structure for the Plan of Allocation. Based on the extensive analyses performed by the damages expert during the course of the litigation and in connection with settlement negotiations, three methods for allocating the Settlement proceeds were discussed: an "index" method, an "event-based" method, and a "Section 11 damages" method.

As described in the Coffman Declaration, both the index approach and the event-based approach were utilized by Bond Plaintiffs' damages expert to assess the extent to which certain declines in security prices were not related to the alleged securities violations – or "negative causation". *See* Bond Counsel Decl. Ex. 4, Coffman Decl. ¶ 15. Although these methods were instructive for the purpose of settlement negotiations, Bond Counsel and the damages expert determined that modeling for negative causation is unnecessary and in many ways unduly complex for a settlement allocation plan. *Id.* at ¶¶ 18-19. Additionally, in light of the complexity of the events in the financial industry during the relevant time period, Bond Plaintiffs' damages expert concluded that it would be speculative and potentially unfair to utilize any particular negative causation model that might significantly alter the *relative* allocation of the Settlement proceeds among the Bond Class Members. *Id.* at ¶ 19.

Accordingly, Bond Counsel, in consultation with Bond Plaintiffs' damages expert, determined that an allocation plan based on the statutory damage formula of Section 11(e) of the Securities Action is an appropriate and efficient method for allocating the Settlement proceeds in this case. The proposed Plan of Allocation developed by Bond Counsel and Bond Plaintiffs'

damages expert establishes the "relative positions" of Bond Class Members pursuant to the Section 11 formula while avoiding any modeling assumptions that could unnecessarily complicate the allocation process. Based on its extensive experience in securities class action litigation and its intimate knowledge of the factual circumstances of this case, Bond Counsel believes that the proposed Plan of Allocation is a fair, reasonable and equitable method for apportioning the Net Settlement Fund among the eligible Bond Class Members.

### 2. The Terms Of The Plan Of Allocation

As discussed above, the Plan of Allocation apportions the Net Settlement Fund among Bond Class Members based on a formula that is consistent with the damage formula set forth in Section 11(e) of the Securities Act. Under the Plan of Allocation formula, the Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim." *See* Notice, attached as Ex. A to Bond Counsel Decl. Ex. 2, at ¶¶ 49, 53. Calculation of the Recognized Claim will depend upon when the securities were purchased during the Class Period, and whether those securities were held until the conclusion of the Class Period or sold during the Class Period, and if so, when. *See* Notice ¶ 50. *See ML Tyco*, 249 F.R.D. at 135 ("The Plan of Allocation calls for the Net Settlement Fund to be distributed on a pro rata basis to valid class members based on their proof of recognized loss, which is a function of the amount of Tyco shares owned by each claimant during the class period and the dates on which the shares were purchased, then sold. A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.")

Under the Plan of Allocation, any Bond Class Securities sold prior to the close of trading on October 24, 2007, the first day that any of the allegedly wrongfully withheld or misrepresented information entered the market, shall have a Recognized Loss/Gain Amount of

"0". *See* Bond Counsel Decl. Ex. 4, Coffman Decl. ¶ 24 n.6; Notice ¶ 50. Since any losses suffered by Bond Class Members with respect to Bond Class Securities sold prior the first alleged corrective disclosure on October 24, 2007 could not have been caused by the alleged wrongdoing, those losses are not are not compensated under the plan. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal 2008) (approving, over an objection, a plan of allocation that excluded recovery for shares purchased during the class period and not held over the purportedly corrective disclosure) (citing *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 342 (2005)).

The Plan of Allocation also takes into account the fact that under Section 11 of the Securities Act, establishing a claim for damages for purchases of the securities ***after the issuer has made generally available an earnings statement covering a period of at least twelve months beginning after the effective date of the registration statement*** imposes an additional burden on plaintiffs not present with respect to earlier purchases of those securities. *See* Notice ¶ 51. In light of the fact that it will be more difficult to establish a claim with respect to these purchases, the Recognized Loss Amount for affected purchases or acquisitions of Bond Class Securities are reduced by 20% under the Plan of Allocation.[2] Bond Counsel submits that the 20% reduction for these transactions is a reasonable discount for the additional risk such purchases/acquisitions would face in achieving any recovery at trial. *See PaineWebber*, 171 F.R.D. at 133 ("[W]hen real and cognizable differences exist between the 'likelihood of ultimate success' for different plaintiffs, 'it is appropriate to weigh "distribution of the settlement . . . in

[2] The affected transactions are: (i) purchases or acquisitions of 6.11% Notes after May 5, 2008; (ii) purchases or acquisitions of 5.70% Notes after August 5, 2008; (iii) purchases or acquisitions of Medium Term Notes after August 5, 2008; (iv) purchases or acquisitions of 6.05% Notes after November 4, 2008; and (v) purchases or acquisitions of 6.40% Notes purchased after November 4, 2008. Notice ¶ 51.

favor of plaintiffs whose claims comprise the set" that was more likely to succeed.'") (citation omitted). In the interests of fairness, the Plan of Allocation also provides that, to the extent a Claimant had an overall market gain with respect to his, her or its Class Period purchases/acquisitions of Bond Class Securities, that person or entity will not be entitled a distribution from the Net Settlement Fund. Notice ¶ 60.

Finally, the Plan of Allocation contains a number of administrative provisions that are typically used in securities class actions, including (i) the application of the First In, First Out ("FIFO") accounting method for matching multiple purchases/acquisitions or sales of Bond Class Securities (Notice ¶ 55); (ii) the treatment of Bond Class Securities received by gift, inheritance or operation of law (Notice ¶ 57); and (iii) the treatment of "short sales" of Bond Class Securities (Notice ¶ 59). Additionally, given the costs involved in the claims administration process and the need to prevent depletion of the Settlement proceeds to pay *de minimis* Claims at the expense of Authorized Claimants who suffered the more substantial losses, the Plan of Allocation contains a $20.00 minimum for distribution payments. *See* Notice ¶ 53.[3]

**C. <u>The Reaction Of The Class Supports Approval Of The Plan of Allocation</u>**

As of October 16, 2009, more than 100,000 copies of the Notice, which contains the Plan of Allocation, and advises Bond Class Members of their right to object to the proposed Plan of Allocation, have been sent to potential Bond Class Members. *See* Affidavit of Richard W.

---

[3] Courts routinely approve allocation plans that require a class member's payment to exceed a minimum threshold in order to recover from a settlement fund. *See, e.g., In re Merrill Lynch & Co. Shareholders Litig.*, 02 MDL 1484 (JFK), 2007 WL 4526593, at *12 (S.D.N.Y Dec. 20, 2007) (approving a plan of allocation providing for a $50 minimum distribution amount and noting that "courts have approved minimum payouts in class action settlements in order to foster the efficient administration of the settlement."); *see also Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 783 (7th Cir. 2004) (Posner, J.) (stating that an allocation plan may give nothing to people with claims "worth too little to justify a distribution").

Simmons of Analytics, Inc. Re: (A) Mailing of the Notice and the Claim Form; (B) Publication of Notice; and (C) Report on Exclusion Requests Received (the "Simmons Affidavit" or "Simmons Aff."), Bond Counsel Decl. Ex. 2, at ¶ 15. The Claims Administrator has received 3,961 Claim Forms as of October 16, 2009. *Id.* at ¶ 26. To date, not a single objection to the Plan of Allocation has been received, a factor that weighs in favor of approval of the proposed Plan. *See Am. Bank Note Holographics,* 127 F. Supp. 2d at 430 ("the lack of any objections suggests that approval of the Plan of Allocation is warranted').[4]

**CONCLUSION**

For all of the reasons set forth herein, in the Bond Counsel Declaration, and in the Coffman Declaration, Bond Plaintiffs respectfully submit that the Plan of Allocation is fair and reasonable and should be approved by the Court.

Dated: New York, New York
October 23, 2009

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ Max W. Berger

By: Max W. Berger
Mark Lebovitch
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

***Bond Counsel***

[4] The deadline for submitting objections to the Plan of Allocation is November 9, 2009. Should any objections to the Plan of Allocation be received, they will be addressed in Bond Plaintiffs' reply papers.

#410722.8