# Exhibit 6

**Merrill Bond Action**
***Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al.,***
**08cv9063 (JSR)(DFE)**

**SCHEDULE OF PLAINTIFFS' COUNSEL'S LODESTAR
AND EXPENSES APPLIED FOR**

| TAB | FIRM | HOURS | LODESTAR | EXPENSES |
|-----|------|-------|----------|----------|
| 6A | Bernstein Litowitz Berger & Grossmann LLP | 23,357.00 | $8,378,061.87 | $454,107.89 |
| 6B | Saxena White PA | 1,888.50 | 707,717.50 | 53,487.28 |
| 6C | Pomerantz Haudek Grosman & Gross, LLP | 1,985.55 | 671,716.50 | 198.90 |
| | | | | |
| | **TOTAL:** | **27,231.05** | **$9,757,495.87** | **$507,794.07** |

# Exhibit 6A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION | Master File No. 07-cv-9633 (JSR)(DFE) |
| This Document Relates To: Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al., 08cv9063 (JSR)(DFE) | |

**DECLARATION OF MAX W. BERGER
IN SUPPORT OF JOINT PETITION FOR ATTORNEYS'
FEES AND REIMBURSEMENT OF EXPENSES FILED ON BEHALF OF
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

MAX W. BERGER, declares as follows:

1.       I am a member of the law firm of Bernstein Litowitz Berger & Grossmann LLP.  I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in the above-captioned class action (the "Merrill Bond Action"), as well as for reimbursement of expenses incurred by my firm in connection with the Merrill Bond Action.  As Court-appointed Bond Counsel, my firm directed and was involved in all aspects of the litigation and its settlement.

2.       The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff of my firm who was involved in this action, and the lodestar calculation based on my firm's current billing rates.  For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which are available at the request of the Court.  Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

3.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted in other securities or shareholder litigation.

4.      The total number of hours expended on this litigation by my firm through September 30, 2009 is 23,357.00.  The total lodestar for my firm is $8,378,061.87, consisting of $8,184,538.12 for attorneys' time and $193,523.75 for professional support staff time.

5.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

6.      As detailed in Exhibit 2, my firm has incurred a total of $454,107.89 in unreimbursed expenses in connection with the prosecution of the Merrill Bond Action.

7.      The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

8.      With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and attorneys in my firm who were principally involved in the Merrill Bond Action.

I declare, under penalty of perjury, that the foregoing facts are true and correct.

Executed on October 23, 2009.

_____
MAX W. BERGER

2

# Exhibit 1

EXHIBIT 1

**Merrill Bond Action**
***Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al.,***
**08cv9063 (JSR)(DFE)**

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**TIME REPORT**

**Inception through September 30, 2009**

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Max Berger | 167.25 | $895.00 | $    149,688.75 |
| John P. Coffey | 42.75 | 850.00 | 36,337.50 |
| Mark Lebovitch | 469.25 | 625.00 | 293,281.25 |
| Gerald Silk | 404.50 | 750.00 | 303,375.00 |
| | | | |
| **Of Counsel** | | | |
| Bruce Bernstein | 441.00 | 550.00 | 242,550.00 |
| Kurt Hunciker | 748.50 | 650.00 | 486,525.00 |
| | | | |
| **Senior Counsel** | | | |
| Rochelle Hansen | 184.75 | 650.00 | 120,087.50 |
| | | | |
| **Associates** | | | |
| Michael Blatchley | 39.00 | 390.00 | 15,210.00 |
| Pat Gillane | 349.25 | 470.00 | 164,147.50 |
| Avi Josefson | 88.25 | 490.00 | 43,242.50 |
| Karine Louis | 493.25 | 450.00 | 221,962.50 |
| John Mills | 147.75 | 490.00 | 72,397.50 |
| Sean O'Dowd | 943.00 | 425.00 | 400,775.00 |
| | | | |
| **Staff Attorney** | | | |
| Matthew Berman | 221.00 | 390.00 | 86,190.00 |
| | | | |
| **Project Associates** | | | |
| Elie Fink | 242.50 | 310.00 | 75,175.00 |
| Colin N. Holmes | 133.00 | 310.00 | 41,230.00 |
| Kyle Johnson | 325.25 | 310.00 | 100,827.50 |
| Robin Smith | 335.50 | 310.00 | 104,005.00 |
| Matthew Spilka | 153.50 | 310.00 | 47,585.00 |
| Andrew Afifian | 341.00 | 310.00 | 105,710.00 |

1

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Joy Amuzie | 725.25 | 310.00 | 224,827.50 |
| Scott Aurnou | 1,593.50 | 310.00 | 493,985.00 |
| Tamara Bedic | 369.50 | 310.00 | 114,545.00 |
| Daniel Besser | 146.00 | 310.00 | 45,260.00 |
| Walter Brown | 129.00 | 310.00 | 39,990.00 |
| Alexa Butler | 800.25 | 310.00 | 248,077.50 |
| George Caballero | 529.00 | 310.00 | 163,990.00 |
| David C. Carlet | 999.00 | 310.00 | 309,690.00 |
| Jenny Chen | 404.25 | 310.00 | 125,317.50 |
| John J. Collins | 374.25 | 310.00 | 116,017.50 |
| David L. Duncan | 46.50 | 310.00 | 14,415.00 |
| Dena Ebright | 661.25 | 310.00 | 204,987.50 |
| Jonathan Fuld | 591.50 | 310.00 | 183,365.00 |
| Mary Hansel | 822.50 | 310.00 | 254,975.62 |
| Mark van der Harst | 351.25 | 310.00 | 108,887.50 |
| Kent Hunter | 541.00 | 310.00 | 167,710.00 |
| Catherine Van Kampen | 767.00 | 310.00 | 237,770.00 |
| Susan Kent | 685.75 | 310.00 | 212,582.50 |
| Donatella Keohane | 231.25 | 310.00 | 71,687.50 |
| William Marino | 523.25 | 310.00 | 162,207.50 |
| Andrew McGoey | 788.00 | 310.00 | 244,280.00 |
| Valerie A. Molinaro | 385.00 | 310.00 | 119,350.00 |
| Spencer Oster | 253.50 | 310.00 | 78,585.00 |
| Amanda Philip | 640.25 | 310.00 | 198,477.50 |
| Loveena Rajanayakam | 647.75 | 310.00 | 200,802.50 |
| Daniel Renehan | 562.50 | 310.00 | 174,375.00 |
| Yasmin Roman | 471.75 | 310.00 | 146,242.50 |
| Robert Stinson | 1,328.50 | 310.00 | 411,835.00 |
|  |  |  |  |
| **Investigators** |  |  |  |
| Amy Bitkower | 35.00 | 425.00 | 14,875.00 |
| Joelle (Sfeir) Landino | 106.25 | 250.00 | 26,562.50 |
|  |  |  |  |
| **Litigation Support** |  |  |  |
| Jesse Baidoe | 3.25 | 220.00 | 715.00 |
| Sheron P. Brathwaite | 1.00 | 250.00 | 250.00 |
|  |  |  |  |
| **Paralegals** |  |  |  |
| Ricia Augusty | 34.25 | 275.00 | 9,418.75 |
| Maureen Duncan | 6.50 | 275.00 | 1,787.50 |
| Amanda Figueroa | 157.50 | 275.00 | 43,312.50 |
| Larry Silvestro | 3.00 | 275.00 | 825.00 |

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Eric Andrieux | 1.00 | 210.00 | 210.00 |
| Ellen Jordan | 144.25 | 210.00 | 30,292.50 |
| | | | |
| **Document Clerk** | | | |
| Michael Andres | 6.25 | 175.00 | 1,093.75 |
| | | | |
| **Financial Analysts** | | | |
| Amanda Beth Hollis | 14.00 | 275.00 | 3,850.00 |
| Rochelle Moses | 47.50 | 275.00 | 13,062.50 |
| Sharon Safran | 48.75 | 275.00 | 13,406.25 |
| Ryan S. Ting | 35.00 | 220.00 | 7,700.00 |
| | | | |
| **Director of Institutional Investor Services** | | | |
| Adam Weinschel | 74.75 | 350.00 | 26,162.50 |
| | | | |
| **TOTAL LODESTAR** | **23,357** | | **$8,378,061.87** |

3

# Exhibit 2

EXHIBIT 2

**Merrill Bond Action**
***Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al.,***
**08cv9063 (JSR)(DFE)**

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

**EXPENSE REPORT**

**Inception through September 30, 2009**

| CATEGORY | AMOUNT |
|---|---|
| Court Fees | $      210.00 |
| Service of Process | 29,144.76 |
| On-Line Legal Research | 39,630.45 |
| Document Management/Litigation Support | 72,000.00 |
| On-Line Factual Research | 7,986.28 |
| Telephones | 178.59 |
| Postage & Express Mail | 296.06 |
| Hand Delivery Charges | 8.95 |
| Local Transportation | 4,084.79 |
| Internal Copying | 8,823.50 |
| Outside Copying | 1,787.06 |
| Working Meals | 4,020.19 |
| Court Reporters and Transcripts | 887.37 |
| Special Publications | 500.00 |
| Staff Overtime | 1,018.14 |
| Experts | 202,825.50 |
| **SUBTOTAL:** | **$373,401.64** |
| | |
| **Outstanding Invoices:** | |
| Experts | 80,706.25 |
| | |
| **TOTAL EXPENSES:** | **$454,107.89** |

1

# Exhibit 3

EXHIBIT 3

# Bernstein Litowitz Berger & Grossmann LLP

# FIRM RESUME

Visit our web site at www.blbglaw.com for the most up-to-date information on the firm, its lawyers and practice groups.

Bernstein Litowitz Berger & Grossmann LLP, a firm of over 50 attorneys in offices located in New York, California and Louisiana, prosecutes class and private actions, nationwide, on behalf of individual and institutional clients. The firm's litigation practice concentrates in the areas of securities class actions in federal and state courts; corporate governance litigation, including claims for breach of fiduciary duty and proxy violations; antitrust; prosecuting violations of federal and state anti-discrimination laws and vindication of employee rights; and consumer class actions. We also handle, on behalf of major institutional clients and lenders, more general complex commercial litigation involving allegations of breach of contract, accountants' liability, breach of fiduciary duty, fraud, and negligence.

We are the nation's leading firm in representing institutional investors in securities fraud class action litigation. The firm's institutional client base includes the New York State Common Retirement Fund, the California Public Employees Retirement System (CalPERS), and the Ontario Teachers' Pension Plan, the largest public pension funds in North America, collectively managing over $300 billion in assets; the Los Angeles County Employees' Retirement Association (LACERA); the Chicago Municipal, Police and Labor Retirement Systems; the State of Wisconsin Investment Board; the Retirement Systems of Alabama; the Connecticut Retirement Plans and Trust Funds; the City of Detroit Pension Systems; the Houston Firefighters' and Municipal Employees' Pension Funds; the Louisiana School, State, Teachers and Municipal Police Retirement Systems; the Public School Teachers' Pension and Retirement Fund of Chicago; the New Jersey Division of Investment of the Department of the Treasury; TIAA-CREF and other private institutions; as well as numerous other public and Taft-Hartley pension entities.

Since its founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has litigated some of the most complex cases in history and has obtained over $20 billion on behalf of investors. Unique among its peers, the firm has negotiated the largest settlements ever agreed to by public companies related to securities fraud, and obtained five of the ten largest securities recoveries in history.

As Co-Lead Counsel for the Class representing Lead Plaintiff the New York State Common Retirement Fund in *In re WorldCom, Inc. Securities Litigation*, arising from the financial fraud and subsequent bankruptcy at WorldCom, Inc., we obtained unprecedented settlements from the investment bank defendants who underwrote WorldCom bonds totaling more than $6 billion, the second largest securities recovery in history. Additionally, all of the former WorldCom Director Defendants agreed to pay over $60 million to settle the claims against them. An unprecedented first for outside directors, $24.75 million of that amount is coming out of the pockets of the individuals—20% of their collective net worth. Also, after four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million. In July 2005, settlements had been reached with the former executives of WorldCom, bringing the total obtained for the Class to over $6.15 billion.

The firm was also Co-Lead Counsel in *In re Cendant Corporation Securities Litigation*, which settled for more than $3 billion in cash. This settlement is the largest ever recovered from a public company and a public accounting firm and includes some of the most significant corporate governance changes ever achieved through securities class action litigation. The firm represented Lead Plaintiffs CalPERS, the New York State Common Retirement Fund, and the New York City Pension Funds on behalf of all purchasers of Cendant securities during the class period. In 2006, the firm also recovered over $1.3 billion for investors in Nortel Networks, and recent settlements in *In re McKesson HBOC Inc. Securities Litigation* total over $1 billion in monies recovered for investors. Additionally, the firm was lead counsel in the celebrated *In re Washington Public Power Supply System Litigation*, which, after seven

years of litigation and three months of jury trial, resulted in what was then the largest securities fraud recovery ever – over $750 million.

A leader in representing institutional shareholders in litigation arising from the widespread stock options backdating scandals of recent years, the firm recovered nearly $920 million in ill-gotten compensation directly from former officers and directors in the *UnitedHealth Group, Inc. Shareholder Derivative Litigation.* The largest derivative recovery in history, the settlement is notable for holding individual wrongdoers accountable for their role in illegally backdating stock options, as well as for the company's agreement to far-reaching reforms to curb future executive compensation abuses. (Court approval of the recovery is pending.)

The firm's prosecution of Arthur Andersen LLP, for Andersen's role in the 1999 collapse of the Baptist Foundation of Arizona ("BFA"), received intense national and international media attention. As lead trial counsel for the defrauded BFA investors, the firm obtained a cash settlement of $217 million from Andersen in May 2002, after six days of what was scheduled to be a three month trial. In combination with prospective BFA asset sales and a settlement with BFA's former law firm, it is expected that the over 11,000 retirees and investors will recover over 70% of their losses. The case was covered in great detail by *The Wall Street Journal, The New York Times, The Washington Post*, "60 Minutes II," National Public Radio, and the BBC, as well as various other international news outlets.

Equally important, Bernstein Litowitz Berger & Grossmann LLP has successfully advanced novel and socially beneficial principles by developing important new law in the areas in which we litigate.

The firm served as co-lead counsel on behalf of Texaco's African-American employees in *Roberts v. Texaco Inc.*, which similarly resulted in the largest settlement ever in a race discrimination case. The creation of a Task Force to oversee Texaco's human resources activities for five years was unprecedented and will, undoubtedly, serve as a model for public companies into the next century.

On behalf of twelve public pension funds, including the New York State Common Retirement Fund, CalPERS, LACERA, and other institutional investors, the firm successfully prosecuted *McCall v. Scott*, a derivative suit filed against the directors and officers of Columbia/HCA Healthcare Corporation, the subject of the largest health care fraud investigation in history. This settlement, announced in February 2003, included a landmark corporate governance plan which went well beyond all recently enacted regulatory reforms, greatly enhancing the corporate governance structure in place at HCA.

In the consumer field, the firm has gained a nationwide reputation for vigorously protecting the rights of individuals and for achieving exceptional settlements. In several instances, the firm has obtained recoveries for consumer classes that represented the entirety of the class' losses – an extraordinary result in consumer class cases. Additionally, the firm has become a leader in the area of Internet Privacy and is counsel in several of the seminal cases that have been brought on behalf of Internet users whose personal information is being intercepted and sent to Web-based companies.

Our firm is dedicated to litigating with the highest level of professional competence, striving to secure the maximum possible recovery for our clients in the most efficient and professionally responsible manner. In those cases where we have served as either lead counsel or as a member of plaintiffs' executive committee, the firm has recovered billions of dollars for our clients.

## THE FIRM'S PRACTICE AREAS

### Securities Fraud Litigation

Securities fraud litigation is the cornerstone of the firm's class action litigation practice. Since its founding, the firm has tried and settled many high profile securities fraud class actions and continues to play a leading role in major securities litigation pending in federal and state courts. Moreover, since passage of the Private Securities Litigation

2

Reform Act of 1995, which sought to encourage institutional investors to become more pro-active in securities fraud class action litigation, the firm has become the nation's leader in representing institutional investors in securities fraud and derivative litigation.

The firm has the distinction of having prosecuted many of the most complex and high-profile cases in securities law history, recovering billions of dollars and obtaining unprecedented corporate governance reforms on behalf of our clients. Several of the firm's high-profile current prosecutions and outstanding accomplishments as class counsel are detailed in our Recent Actions and Significant Recoveries section beginning on page 8.

The attorneys in the securities fraud litigation practice group have extensive experience in the laws that regulate the securities markets and in the disclosure requirements of corporations that issue publicly traded securities. Many of the attorneys in this practice group also have accounting backgrounds and one is a certified public accountant. The group has access to state-of-the-art, online financial wire services and databases, which enable them to instantaneously investigate any potential securities fraud action involving a public company's debt and equity securities.

## Corporate Governance and Shareholders' Rights

The corporate governance and shareholders' rights practice group prosecutes derivative actions, claims for breach of fiduciary duty and proxy violations on behalf of individual and institutional investors in state and federal courts throughout the country. The group has prosecuted actions challenging numerous highly publicized corporate transactions which violated fair process and fair price, and the applicability of the business judgment rule. The group has also addressed issues of corporate waste, shareholder voting rights claims, and executive compensation. As a result of the firm's high profile and widely recognized capabilities, the corporate governance practice group is increasingly in demand by institutional investors who are exercising a more assertive voice with corporate boards regarding corporate governance issues and the board's accountability to shareholders. A major component of the *Cendant* settlement referenced above is Cendant's agreement to adopt the most extensive corporate governance changes in history.

Recent examples of highly successful M&A litigation conducted by Bernstein Litowitz Berger & Grossmann include the widely publicized lawsuit arising from the proposed acquisition of Caremark Corp. by CVS Corp.—which led to an increase of approximately $3.5 billion in the consideration offered to shareholders—as well as the lawsuit over an attempted buyout of Cablevision Corp. by its controlling family—which, although still ongoing, has resulted in an increase of over $2.2 billion in the consideration currently on offer to Cablevision shareholders. The firm is actively involved in litigating numerous cases in this area of law, an area that has become increasingly important in light of efforts by various market participants to buy companies from their public shareholders "on the cheap."

## Employment Discrimination and Civil Rights

The employment discrimination and civil rights practice group prosecutes class and multi-plaintiff actions, and other high impact litigation against employers and other societal institutions that violate federal or state employment, anti-discrimination, and civil rights laws. The practice group represents diverse clients on a wide range of issues including Title VII actions, race, gender, sexual orientation and age discrimination suits, sexual harassment and "glass ceiling" cases in which otherwise qualified employees are passed over for promotions to managerial or executive positions.

Bernstein Litowitz Berger & Grossmann LLP is committed to effecting positive social change in the workplace and in society. The practice group has the necessary financial and human resources to ensure that the class action approach to discrimination and civil rights issues is successful. This litigation method serves to empower employees and other civil rights victims, who are usually discouraged from pursuing litigation because of personal financial limitations, and offers the potential for effecting the greatest positive change for the greatest number of people

affected by discriminatory practice in the workplace.  As stated, the firm's practice group recently settled the *Texaco* racial discrimination lawsuit for $176 million, the largest settlement in the history of employment discrimination cases.

## Consumer Advocacy

The consumer advocacy practice group at Bernstein Litowitz Berger & Grossmann LLP prosecutes cases across the entire spectrum of consumer rights, consumer fraud, and consumer protection issues.  The firm represents victimized consumers in state and federal courts nationwide in individual and class action lawsuits that seek to provide consumers and purchasers of defective products with a means to recover their damages.  The attorneys in this group are well versed in the vast array of laws and regulations that govern consumer interests and are aggressive, effective, court-tested litigators.  The consumer practice advocacy group has recovered hundreds of millions of dollars for millions of consumers throughout the country.  Most notably, in a number of cases, the firm has obtained recoveries for the class that were the entirety of the potential damages suffered by the consumer.  For example, in recent actions against MCI and Empire Blue Cross, the firm recovered all of the damages suffered by the class.
The group has achieved its successes by advancing innovative claims and theories of liabilities, such as obtaining decisions in Pennsylvania and Illinois appellate courts that adopted a new theory of consumer damages in mass marketing cases.  Bernstein Litowitz Berger & Grossmann LLP is, thus, able to lead the way in protecting the rights of consumers.  For example, the firm is a recognized leader in Internet privacy, where it prosecuted several seminal cases on behalf of Web users whose personal information has been unwittingly intercepted and sent to Internet companies in violation of federal statutes and state law.

# THE COURTS SPEAK

Throughout the firm's history, many courts have recognized the professional competence and diligence of the firm and its members.  A few examples are set forth below.

Judge Denise Cote (United States District Court for the Southern District of New York) has noted, several times on the record, the quality of BLB&G's ongoing representation of the Class in *In re WorldCom, Inc. Securities Litigation*.  Judge Cote on December 16, 2003:

> "I have the utmost confidence in plaintiffs' counsel . . . they have been doing a superb job. . . .  The Class is extraordinarily well represented in this litigation."

In granting final approval of the $2.575 billion settlement obtained from the Citigroup Defendants, Judge Cote again praised BLB&G's efforts:

> "The magnitude of this settlement is attributable in significant part to Lead Counsel's advocacy and energy....The quality of the representation given by Lead Counsel...has been superb...and is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation. Lead Counsel has been energetic and creative…. Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions."

\*   \*   \*

In February 2005, at the conclusion of trial of *In re Clarent Corporation Securities Litigation*, The Honorable Charles R. Breyer of the United States District Court for the Northern District of California praised the efforts of counsel: "It was the best tried case I've witnessed in my years on the bench….[A]n extraordinarily civilized way of presenting the issues to you [the jury]….We've all been treated to great civility and the highest professional ethics in the presentation of the case…. The evidence was carefully presented to you….They got dry subject matter and made it interesting… [brought] the material alive… good trial lawyers can do that…. I've had fascinating criminal trials

that were far less interesting than this case. [I]t's a great thing to be able to see another aspect of life… It keeps you young…vibrant… [and] involved in things… These trial lawyers are some of the best I've ever seen."

\* \* \*

In granting the Court's approval of the resolution and prosecution of *McCall v. Scott*, a shareholder derivative lawsuit against certain former senior executives of HCA Healthcare (formerly Columbia/HCA), Senior Judge Thomas A. Higgins (United States District Court, Middle District of Tennessee) said that the settlement "confers an exceptional benefit upon the company and the shareholders by way of the corporate governance plan. . . . Counsel's excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great patience by taking this case on a contingent basis, and despite an early setback they have persevered and brought about not only a large cash settlement but sweeping corporate reforms that may be invaluable to the beneficiaries."

\* \* \*

Judge Walls (District of New Jersey), in approving the $3.2 billion *Cendant* settlement, said that the recovery from all defendants, which represents a 37% recovery to the Class, "far exceeds recovery rates of any case cited by the parties." The Court also held that the $335 million separate recovery from E&Y is "large" when "[v]iewed in light of recoveries against accounting firms for securities damages." In granting Lead Counsel's fee request, the Court determined that "there is no other catalyst for the present settlement than the work of Lead Counsel. . . . This Court, and no other judicial officer, has maintained direct supervision over the parties from the outset of litigation to the present time. In addition to necessary motion practice, the parties regularly met with and reported to the Court every five or six weeks during this period about the status of negotiations between them. . . . [T]he Court has no reason to attribute a portion of the Cendant settlement to others' efforts; Lead Counsel were the only relevant material factors for the settlement they directly negotiated." The Court found that "[t]he quality of result, measured by the size of settlement, is very high. . . . The Cendant settlement amount alone is over three times larger than the next largest recovery achieved to date in a class action case for violations of the securities laws, and approximately ten times greater than any recovery in a class action case involving fraudulent financial statements. . . The E&Y settlement is the largest amount ever paid by an accounting firm in a securities class action." The Court went on to observe that "the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel were high in this action. Lead Counsel are experienced securities litigators who ably prosecuted the action." The Court concluded that this Action resulted in "excellent settlements of uncommon amount engineered by highly skilled counsel with reasonable cost to the class."

\* \* \*

After approving the settlement in *Alexander v. Pennzoil Company*, the Honorable Vanessa D. Gilmore of the United States District Court for the Southern District of Texas ended the settlement hearing by praising our firm for the quality of the settlement and our commitment to effectuating change in the workplace. "… the lawyers for the plaintiffs … did a tremendous, tremendous job. … not only in the monetary result obtained, but the substantial and very innovative programmatic relief that the plaintiffs have obtained in this case … treating people fairly and with respect can only inure to the benefit of everybody concerned. I think all these lawyers did an outstanding job trying to make sure that that's the kind of thing that this case left behind."

\* \* \*

On February 23, 2001, the United States District Court for the Northern District of California granted final approval of the $259 million cash settlement in *In re 3Com Securities Litigation*, the largest settlement of a securities class action in the Ninth Circuit since the Private Securities Litigation Reform Act was passed in 1995, and the fourth largest recovery ever obtained in a securities class action. The district court, in an Order entered on March 9, 2001, specifically commented on the quality of counsel's efforts and the settlement, holding that "counsel's representation

[of the class] was excellent, and ... the results they achieved were substantial and extraordinary." The Court described our firm as "among the most experienced and well qualified in this country in [securities fraud] litigation."

\* \* \*

United States District Judge Todd J. Campbell of the Middle District of Tennessee heard arguments on Plaintiffs' Motion for Preliminary Injunction in *Cason v. Nissan Motor Acceptance Corporation Litigation*, the highly publicized discriminatory lending class action, on September 5, 2001. He exhibited his own brand of candor in commenting on the excellent work of counsel in this matter: "In fact, the lawyering in this case... is as good as I've seen in any case. So y'all are to be commended for that."

\* \* \*

In approving the $30 million settlement in the *Assisted Living Concepts, Inc. Securities Litigation*, the Honorable Ann L. Aiken of the Federal District Court in Oregon, praised the recovery and the work of counsel. She stated that, "...without a doubt...this is a...tremendous result as a result of very fine work...by the...attorneys in this case."

\* \* \*

The Honorable Judge Edward A. Infante of the United States District Court for the Northern District of California expressed high praise for the settlement and the expertise of plaintiffs' counsel when he approved the final settlement in the *Wright v. MCI Communications Corporation* consumer class action. "The settlement. . . . is a very favorable settlement to the class. . . . to get an 85% result was extraordinary, and plaintiffs' counsel should be complimented for it on this record. . . . The recommendations of experienced counsel weigh heavily on the court. The lawyers before me are specialists in class action litigation. They're well known to me, particularly Mr. Berger, and I have confidence that if Mr. Berger and the other plaintiffs' counsel think this is a good, well-negotiated settlement, I find it is." The case was settled for $14.5 million.

\* \* \*

At the *In re Computron Software, Inc. Securities Litigation* settlement hearing, Judge Alfred J. Lechner, Jr. of the United States District Court for the District of New Jersey approved the final settlement and commended Bernstein Litowitz Berger & Grossmann's efforts on behalf of the Class. "I think the job that was done here was simply outstanding. I think all of you just did a superlative job and I'm appreciat[ive] not only for myself, but the court system and the plaintiffs themselves. The class should be very, very pleased with the way this turned out, how expeditiously it's been moved." *In re Computron Software, Inc. Securities Litigation* was a securities fraud class action filed on behalf of shareholders who purchased Computron common stock at inflated prices due to alleged misrepresentation about the company's financial obligation. The case settled for $15 million dollars.

\* \* \*

The *In re Louisiana-Pacific Corporation Securities Litigation*, filed in the United States District Court, District of Oregon, was a securities class action alleging fraud and misrepresentations in connection with the sale of defective building materials. Our firm, together with co-lead counsel, negotiated a settlement of $65.1 million, the largest securities fraud settlement in Oregon history, which was approved by Judge Robert Jones on February 12, 1997. The Court there recognized that ". . . the work that is involved in this case could only be accomplished through the unique talents of plaintiffs' lawyers . . . which involved a talent that is not just simply available in the mainstream of litigators."

\* \* \*

Judge Kimba M. Wood of the United States District Court for the Southern District of New York, who presided over the six-week securities fraud class action jury trial in *In re ICN/Viratek Securities Litigation*, also recently praised our firm for the quality of the representation afforded to the class and the skill and expertise demonstrated throughout the litigation and trial especially. The Court commented that ". . . plaintiffs' counsel did a superb job

6

here on behalf of the class. . .  This was a very hard fought case.  You had very able, superb opponents, and they put you to your task. . .  The trial work was beautifully done and I believe very efficiently done. . ."

\*    \*    \*

Similarly, the Court in the *In re Prudential-Bache Energy Income Partnership Securities Litigation*, United States District Court, Eastern District of Louisiana, recognized Bernstein Litowitz Berger & Grossmann LLP's  ". . . professional standing among its peers."  In that case, which was settled for $120 million, our firm served as Chair of Plaintiffs' Executive Committee.

\*    \*    \*

In the landmark securities fraud case,  *In re Washington Public Power Supply System Litigation* (United States District Court, District of Arizona), the district court called the quality of representation "exceptional," noting that "[t]his was a case of overwhelmingly unique proportions. . . a rare and exceptional case involving extraordinary services on behalf of Class plaintiffs."  The Court also observed that "[a] number of attorneys dedicated significant portions of their professional careers to this litigation, . . . champion[ing] the cause of Class members in the face of commanding and vastly outnumbering opposition. . . [and] in the face of uncertain victory. . . .  [T]hey succeeded admirably."

\*    \*    \*

Likewise, in *In re Electro-Catheter Securities Litigation*, where our firm served as co-lead counsel, Judge Nicholas Politan of the United States District Court for New Jersey said:

> Counsel in this case are highly competent, very skilled in this very specialized area and were at all times during the course of the litigation...always well prepared, well spoken, and knew their stuff and they were a credit to their profession.  They are the top of the line.

\*    \*    \*

In our ongoing prosecution of the *In re Bennett Funding Group Securities Litigation*, the largest "Ponzi scheme" fraud in history, partial settlements totaling over $140 million have been negotiated for the class.  While the action continues to be prosecuted against other defendants, the United States District Court for the Southern District of New York has already found our firm to have been "extremely competent" and of "great skill" in representing the class.

\*    \*    \*

Judge Sarokin of the United States District Court for the District of New Jersey, after approving the $30 million settlement in *In re First Fidelity Bancorporation Securities Litigation*, a case in which were lead counsel, praised the ". . . outstanding competence and performance" of the plaintiffs' counsel and expressed "admiration" for our work in the case.

# RECENT ACTIONS & SIGNIFICANT RECOVERIES

Currently, Bernstein Litowitz Berger & Grossmann LLP is counsel in many diverse nationwide class and individual actions and has obtained many of the largest and most significant recoveries in history. Some examples from our practice groups include:

## Securities Class Actions

*In re WorldCom, Inc. Securities Litigation* --
(United States District Court for the Southern District of New York) The largest securities fraud class action in history. The court appointed BLB&G client the **New York State Common Retirement Fund** as Lead Plaintiff and the firm as Lead Counsel for the class in this securities fraud action arising from the financial fraud and subsequent bankruptcy at WorldCom, Inc. The complaints in this litigation allege that WorldCom and others disseminated false and misleading statements to the investing public regarding its earnings and financial condition in violation of the federal securities and other laws. As a result, investors suffered tens of billions of dollars in losses. The Complaint further alleges a nefarious relationship between Citigroup subsidiary Salomon Smith Barney and WorldCom, carried out primarily by Salomon employees involved in providing investment banking services to WorldCom (most notably, Jack Grubman, Salomon's star telecommunications analyst), and by WorldCom's former CEO and CFO, Bernard J. Ebbers and Scott Sullivan, respectively. On November 5, 2004, the Court granted final approval of the $2.575 billion cash settlement to settle all claims against the Citigroup defendants. In mid-March 2005, on the eve of trial, the 13 remaining "underwriter defendants," including J.P. Morgan Chase, Deutsche Bank and Bank of America, agreed to pay settlements totaling nearly $3.5 billion to resolve all claims against them, bringing the total over $6 billion. Additionally, by March 21, 2005, the day before trial was scheduled to begin, all of the former WorldCom Director Defendants had agreed to pay over $60 million to settle the claims against them. An unprecedented first for outside directors, $24.75 million of that amount is coming out of the pockets of the individuals— 20% of their collective net worth. The case generated headlines across the country—and across the globe—and is changing the way Wall Street does business. In the words of Lynn Turner, a former SEC chief accountant, the settlement sent a message to directors "that their own personal wealth is at risk if they're not diligent in their jobs." After four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million. In July 2005, settlements were reached

with the former executives of WorldCom, bringing the total obtained for the Class to over $6.15 billion.

*In re Cendant Corporation Securities Litigation* --
(United States District Court, District of New Jersey) Securities class action filed against Cendant Corporation, its officers and directors and Ernst & Young, its auditors. Cendant settled the action for $2.8 billion and Ernst & Young settled for $335 million. The settlements are the third largest in history in a securities fraud action. Plaintiffs allege that the company disseminated materially false and misleading financial statements concerning CUC's revenues, earnings and expenses for its 1997 fiscal year. As a result of company-wide accounting irregularities, Cendant has restated its financial results for its 1995, 1996 and 1997 fiscal years and all fiscal quarters therein. The firm represents Lead Plaintiffs **CalPERS - the California Public Employees Retirement System**, the **New York State Common Retirement Fund** and the **New York City Pension Funds**, the three largest public pension funds in America, in this action.

*Baptist Foundation of Arizona v. Arthur Andersen, LLP* -- (Superior Court of the State of Arizona in and for the County of Maricopa) Firm client, the **Baptist Foundation of Arizona Liquidation Trust** ("BFA") filed a lawsuit charging its former auditors, the "Big Five" accounting firm of Arthur Andersen LLP, with negligence in conducting its annual audits of BFA's financial statements for a 15-year period beginning in 1984, and culminating in BFA's bankruptcy in late 1999. Investors lost hundreds of millions of dollars as a result of BFA's demise. The lawsuit alleges that Andersen ignored evidence of corruption and mismanagement by BFA's former senior management team and failed to investigate suspicious transactions related to the mismanagement. These oversights of accounting work, which were improper under generally accepted accounting principles, allowed BFA's undisclosed losses to escalate to hundreds of million of dollars, and ultimately resulted in its demise. On May 6, 2002, after one week of trial, Andersen agreed to pay $217 million to settle the litigation. The court approved the

settlement on September 13, 2002 and, ultimately, investors are expected to recover 70% of their losses.

***In re Nortel Networks Corporation Securities Litigation*** -- ("Nortel II") (United States District Court for the Southern District of New York) Securities fraud class action on behalf of persons and entities who purchased or acquired the common stock of Nortel Networks Corporation.  The action charges Nortel, and certain of its officers and directors, with violations of the Securities Exchange Act of 1934, alleging that the defendants knowingly or, at a minimum, recklessly made false and misleading statements with respect to Nortel's financial results during the relevant period.  BLB&G clients the Ontario Teachers' Pension Plan Board and the Treasury of the State of New Jersey and its Division of Investment were appointed as Co-Lead Plaintiffs for the Class, and BLB&G was appointed Lead Counsel for the Class by the court in July 2004.  On February 8, 2006, BLB&G and Lead Plaintiffs announced that they and another plaintiff had reached an historic agreement in principle with Nortel to settle litigation pending against the Company for approximately $2.4 billion in cash and Nortel common stock (all figures in US dollars). The Nortel II portion of the settlement totaled approximately $1.2 billion.  Nortel later announced that its insurers had agreed to pay $228.5 million toward the settlement, bringing the total amount of the global settlement to approximately $2.7 billion, and the total amount of the Nortel II settlement to over $1.3 billion.

***HealthSouth Corporation Bondholder Litigation*** -- (United States District Court for the Northern District of Alabama {Southern Division}) On March 19, 2003, the investment community was stunned by the charges filed by the Securities and Exchange Commission against Birmingham, Alabama based HealthSouth Corporation and its former Chairman and Chief Executive Officer, Richard M. Scrushy, alleging a "massive accounting fraud." Stephen M. Cutler, the SEC's Director of Enforcement, said "HealthSouth's fraud represents an appalling betrayal of investors." According to the SEC, HealthSouth overstated its earnings by at least $1.4 billion since 1999 at the direction of Mr. Scrushy. Subsequent revelations have disclosed that the overstatement actually exceeded over $2.4 billion, virtually wiping out all of HealthSouth's reported profits for the last five years. A number of executives at HealthSouth, including its most senior accounting officers -- including every chief financial officer in HealthSouth's history -- have pleaded guilty to

criminal fraud charges. In the wake of these disclosures, numerous securities class action lawsuits have been filed against HealthSouth and certain individual defendants. On June 24, 2003, the Honorable Karon O. Bowdre of the District Court appointed the **Retirement Systems of Alabama** to serve as Lead Plaintiff on behalf of a class of all purchasers of HealthSouth bonds who suffered a loss as a result of the fraud. Judge Bowdre appointed BLB&G to serve as Co-Lead Counsel for the bondholder class.  On February 22, 2006, the RSA announced that it and several other institutional plaintiffs leading investor lawsuits arising from the corporate scandal at HealthSouth Corporation had reached a class action settlement with HealthSouth, certain of the company's former directors and officers, and certain of the company's insurance carriers. The total consideration to be paid in the settlement is approximately $445 million.  The action continues against the remaining defendants.

***In re McKesson HBOC, Inc. Securities Litigation*** -- (United States District Court, Northern District of California) Securities fraud litigation filed on behalf of purchasers of HBOC, McKesson and McKesson HBOC securities.  On April 28, 1999, the Company issued the first of several press releases which announced that, due to its improper recognition of revenue from contingent software sales, it would have to restate its previously reported financial results.  Immediately thereafter, McKesson HBOC common stock lost $9 billion in market value.  On July 14, 1999, the Company announced that it was restating $327.8 million of revenue improperly recognized in the HBOC segment of its business during the fiscal years ending March 31, 1997, 1998 and 1999.  The complaint alleges that, during the Class Period, Defendants issued materially false and misleading statements to the investing public concerning HBOC's and McKesson HBOC's financial results, which had the effect of artificially inflating the prices of HBOC's and the Company's securities.  On September 28, 2005, the court granted preliminary approval of a $960 million settlement which BLB&G and its client, Lead Plaintiff the **New York State Common Retirement Fund**, obtained from the company.  On December 19, 2006, defendant Arthur Andersen agreed to pay $72.5 million in cash to settle all claims asserted against it. This settlement brings the total recovery to more than $1 billion for distribution to eligible Settlement Class Members. The action continues against remaining defendant Bear Stearns.

***Ohio Public Employees Retirement System, et al. v. Freddie Mac, et al.*** -- (United States District Court

9

for the Southern District of Ohio {Eastern Division}) Securities fraud class action filed on behalf of the **Ohio Public Employees Retirement System** and the **State Teachers Retirement System of Ohio** against the Federal Home Loan Mortgage Corporation ("Freddie Mac") and certain of its current and former officers. The Class includes all purchasers of Freddie Mac common stock during the period July 15, 1999 through June 6, 2003. The Complaint alleges that Freddie Mac and certain current or former officers of the Company issued false and misleading statements in connection with Company's previously reported financial results. Specifically, the complaint alleges that the defendants misrepresented the Company's operations and financial results by having engaged in numerous improper transactions and accounting machinations that violated fundamental GAAP precepts in order to artificially smooth the Company's earnings and to hide earnings volatility. On November 21, 2003, Freddie Mac restated its previously reported earnings in connection with these improprieties, ultimately restating more than $5.0 billion in earnings. In October 2005, with document review nearly complete, Lead Plaintiffs began deposition discovery. On April 25, 2006, the parties reported to the Court that they had reached an agreement in principle to settle the case for $410 million.  On October 26, 2006, the Court granted final approval of the settlement.

***In re Washington Public Power Supply System Litigation*** -- (United States District Court, District of Arizona)  Commenced in 1983, the firm was appointed Chair of the Executive Committee responsible for litigating the action on behalf of the class.  The action involved an estimated 200 million pages of documents produced in discovery; the depositions of 285 fact witnesses and 34 expert witnesses; more than 25,000 introduced exhibits; six published district court opinions; seven appeals or attempted appeals to the Ninth Circuit; and a three-month jury trial, which resulted in a settlement of over $750 million – then the largest securities fraud settlement ever achieved.

***In re Lucent Technologies, Inc. Securities Litigation*** -- (United States District Court for the District of New Jersey) A securities fraud class action filed on behalf of purchasers of the common stock of Lucent Technologies, Inc. from October 26, 1999 through December 20, 2000. In the action, BLB&G served as Co-Lead Counsel for the shareholders and Lead Plaintiffs, the **Parnassus Fund** and **Teamsters Locals 175 & 505 D&P Pension Trust**, and also represented the **Anchorage Police and Fire**

**Retirement System** and the **Louisiana School Employees' Retirement System**. Lead Plaintiffs' complaint charged Lucent with making false and misleading statements to the investing public concerning its publicly reported financial results and failing to disclose the serious problems in its optical networking business. When the truth was disclosed, Lucent admitted that it had improperly recognized revenue of nearly $679 million in fiscal 2000. On September 23, 2003, the Court granted preliminary approval of the agreement to settle this litigation, a package which is currently valued at approximately $517 million composed of cash, stock and warrants. The appointment of BLB&G as Co-Lead Counsel is especially noteworthy as it marks the first time since the 1995 passage of the Private Securities Litigation Reform Act that a court has reopened the lead plaintiff or lead counsel selection process to account for changed circumstances, new issues and possible conflicts between new and old allegations.

***In re Williams Securities Litigation*** -- (United States District Court for the Northern District of Oklahoma) Securities fraud class action filed on behalf of a class of all persons or entities that purchased or otherwise acquired certain securities of The Williams Companies.   The action alleged securities claims pursuant to Section 10(b) of the Securities Exchange Act of 1934 and Section 11 of the Securities Act of 1933.  After a massive discovery and intensive litigation effort, which included taking more than 150 depositions and reviewing in excess of 18 million pages of documents, BLB&G and its clients, the Arkansas Teacher Retirement System and the Ontario Teachers' Pension Plan Board, announced an agreement to settle the litigation against all defendants for $311 million in cash on June 13, 2006.  The recovery is among the largest recoveries ever in a securities class action in which the corporate defendant did not restate its financial results.

***In re DaimlerChrysler Securities Litigation*** -- (United States District Court for the District of Delaware) A securities class action filed against defendants DaimlerChrysler AG, Daimler-Benz AG and two of DaimlerChrysler's top executives, charging that Defendants acted in bad faith and misrepresented the nature of the 1998 merger between Daimler-Benz AG and the Chrysler Corporation. According to plaintiffs, defendants framed the transaction as a "merger of equals," rather than an acquisition, in order to avoid paying an "acquisition premium." Plaintiffs' Complaint alleges that Defendants made this representation to Chrysler shareholders in the August 6, 1998 Registration

Statement, Prospectus, and Proxy, leading 97% of Chrysler shareholders to approve the merger. BLB&G is court-appointed Co-Lead Counsel for Co-Lead Plaintiffs the **Chicago Municipal Employees Annuity and Benefit Fund** and the **Chicago Policemen's Annuity and Benefit Fund**. BLB&G and the Chicago funds filed the action on behalf of investors who exchanged their Chrysler Corporation shares for DaimlerChrysler shares in connection with the November 1998 merger, and on behalf of investors who purchased DaimlerChrysler shares in the open market from November 13, 1998 through November 17, 2000. On August 22, 2003, BLB&G, as Co-Lead Counsel for Plaintiffs, obtained an agreement in principle to settle the action for $300 million.

*In re Bennett Funding Group Securities Litigation* -- (United States District Court, Southern District of New York). Investor class action involving the sale of $570 million in fraudulent investments, described as the largest "Ponzi" scheme in United States history. The action was prosecuted against over fifty defendants including Bennett's former auditors, insurers and broker-dealers who sold Bennett investment. The class includes all purchasers of Bennett securities from March 29, 1992 through March, 29, 1996. The action settled with multiple defendants for over $165 million.

## Corporate Governance and Shareholders' Rights

*UnitedHealth Group, Inc. Shareholder Derivative Litigation* – (United States District Court, District of Minnesota) -- Shareholder derivative action filed on behalf of Plaintiffs the St. Paul Teachers' Retirement Fund Association, the Public Employees' Retirement System of Mississippi, the Jacksonville Police & Fire Pension Fund, the Louisiana Sheriffs' Pension & Relief Fund, the Louisiana Municipal Police Employees' Retirement System and Fire & Police Pension Association of Colorado ("Public Pension Funds"). The action is brought in the name and for the benefit of UnitedHealth Group, Inc. ("UnitedHealth" or the "Corporation") against certain current and former executive officers and members of the Board of Directors of UnitedHealth. It alleges that defendants obtained, approved and/or acquiesced in the issuance of stock options to senior executives that were unlawfully backdated to provide the recipients with windfall compensation at the direct expense of UnitedHealth and its shareholders. The firm recovered nearly $920 million in ill-gotten compensation directly from the former officer defendants—the largest derivative recovery in history. The settlement is notable for holding these individual wrongdoers accountable for their role in illegally backdating stock options, as well as for the fact that the company agreed to far-reaching reforms to curb future executive compensation abuses. As feature coverage in *The New York Times* indicated, "investors everywhere should applaud [the UnitedHealth settlement]….[T]he recovery sets a standard  of behavior for other companies and boards when performance pay is later shown to have been based on ephemeral  earnings." (Court approval of the recovery is pending.)

*McCall v. Scott* -- (United States District Court,

Middle District of Tennessee). A derivative action filed on behalf of Columbia/HCA Healthcare Corporation -- now "HCA" -- against certain former senior executives of HCA and current and former members of the Board of Directors seeking to hold them responsible for directing or enabling HCA to commit the largest healthcare fraud in history, resulting in hundreds of millions of dollars of loss to HCA. The firm represents the **New York State Common Retirement Fund** as Lead Plaintiff, as well as the **California Public Employees' Retirement System** ("CalPERS"), the **New York City Pension Funds**, the **New York State Teachers' Retirement System** and the **Los Angeles County Employees' Retirement Association** ("LACERA") in this action. Although the district court initially dismissed the action, the United States Court of Appeals for the Sixth Circuit reversed that dismissal and upheld the complaint in substantial part, and remanded the case back to the district court. On February 4, 2003, the Common Retirement Fund, announced that the parties had agreed in principle to settle the action, subject to approval of the district court. As part of the settlement, HCA will adopt a corporate governance plan that goes well beyond the requirements both of the Sarbanes-Oxley Act and of the rules that the New York Stock Exchange has proposed to the SEC, and also enhances the corporate governance structure presently in place at HCA. HCA also will receive $14 million. Under the sweeping governance plan, the HCA Board of Directors will be substantially independent, and will have increased power and responsibility to oversee fair and accurate financial reporting. In granting final approval of the settlement on June 3, 2003, the Honorable Senior Judge Thomas A. Higgins of the District Court said that the settlement "confers an

11

exceptional benefit upon the company and the shareholders by way of the corporate governance plan."

***Official Committee of Unsecured Creditors of Integrated Health Services, Inc. v. Elkins, et al.*** -- (Delaware Chancery Court) The Official Committee of Unsecured Creditors (the "Committee") of Integrated Health Services ("HIS"), filed a complaint against the current and former officers and directors of IHS, a health care provider which declared bankruptcy in January 2000.  The Committee, on behalf of the Debtors Bankruptcy Estates, sought damages for breaches of fiduciary duties and waste of corporate assets in proposing, negotiating, approving and/or ratifying excessive and unconscionable

compensation arrangements for Robert N. Elkins, the Company's former Chairman and Chief Executive Officer, and for other executive officers of the Company. BLB&G is a special litigation counsel to the committee in this action. The Delaware Chancery Court sustained most of Plaintiff's fiduciary duty claims against the defendants, finding that the complaint sufficiently pleaded that the defendants "consciously and intentionally disregarded their responsibilities." The Court also observed that Delaware law sets a very high bar for proving violation of fiduciary duties in the context of executive compensation. Resulting in a multi-million dollar settlement, the Integrated Health Services litigation was one of the few executive compensation cases successfully litigated in Delaware.

## Employment Discrimination and Civil Rights

***Roberts v. Texaco, Inc.*** -- (United States District Court for the Southern District of New York)  Six highly qualified African-American employees filed a class action complaint against Texaco Inc. alleging that the Company failed to promote African-American employees to upper level jobs and failed to compensate them fairly in relation to Caucasian employees in similar positions. Two years of intensive investigation on the part of the lawyers of Bernstein Litowitz Berger & Grossmann LLP, including retaining the services of high level expert statistical analysts, revealed that African-Americans were significantly under-represented in high level management jobs and Caucasian employees were promoted more frequently and at far higher rates for comparable positions within the Company.  Settled for over $170 million. Texaco also agreed to a Task Force to monitor its diversity programs for five years. The settlement has been described as the most significant race discrimination settlement in history.

***GMAC/NMAC/Ford/Toyota/Chrysler Consumer Finance Discrimination Litigation*** The cases involve allegations that the lending practices of General Motors Acceptance Corporation, Nissan Motor Acceptance Corporation, Ford Motor Credit, Toyota Motor Credit and Chrysler Financial cause black and Hispanic car buyers to pay millions of dollars more for car loans than similarly situated white buyers. At issue is a discriminatory kickback system under which minorities typically pay about 50% more in dealer mark-up which is shared by auto dealers with the defendants.  On February 24, 2003, the Honorable Todd J. Campbell of the States District Court for the Middle District of Tennessee granted preliminary approval of the settlement of the class

action pending against Nissan Motor Acceptance Corporation ("NMAC"). Under the terms of the settlement, NMAC will offer pre-approved loans to hundreds of thousands of current and potential black and Hispanic NMAC customers, and will limit how much it raises the interest charged to car buyers above the company's minimum acceptable rate. The company will also contribute $1 million to America Saves, to develop a car financing literacy program targeted toward minority consumers. The settlement also provides for the payment of $5,000 to $20,000 to the 10 people named in the class-action lawsuit. Other car buyers wishing to recover damages will still be able to sue NMAC separately.  BLB&G continues to prosecute the actions against the other auto lenders.

***Alexander v. Pennzoil Company*** -- (United States District Court, Southern District of Texas)  A class action on behalf of all salaried African-American employees at Pennzoil alleging race discrimination in the Company's promotion, compensation and other job related practices.  The action settled for $6.75 million.

***Butcher v. Gerber Products Company*** -- (United States District Court, Southern District of New York) Class action asserting violations of the Age Discrimination in Employment Act arising out of the mass discharging of approximately 460 Gerber sales people, the vast majority of whom were long-term Gerber employees aged 40 and older. Settlement terms are confidential.

## Consumer Class Actions

***E\*Trade Group, Inc.*** -- (Superior Court of California, Santa Clara County)  A class action filed on behalf of all individuals who have or had accounts with E\*Trade from September 1996 to the present. The complaint alleges that E\*Trade's representations to customers regarding the manner in which their accounts would be handled were false and misleading; that the electronic trading systems were inadequate to meet customer demands; and that, as a result of these misrepresentations, customers suffered significant losses and have been deprived of the benefits which E\*Trade had represented they would receive.

***General Motors Corporation*** -- (Superior Court of New Jersey Law Division, Bergen County)  A class action consisting of all persons who owned W-body cars with defective rear disc brake caliper pins which tended to corrode, creating both a safety hazard and premature wearing of the front and rear disc brakes, causing extensive economic damage.  BLB&G is co-lead counsel in this case where a proposed settlement would provide $19.5 million to the class for reimbursement of brake repairs.

***Rent-A-Center*** -- (Supreme Court of the State of New York, Bronx County)  Deceptive sales and marketing in "rent-to-own" transactions.  In this case, BLB&G recently obtained a landmark ruling upholding a rental-purchasers' right to bring suit.

***Empire Blue Cross*** -- (United States District Court, Southern District of New York)  Overcharging health care subscribers.  BLB&G was lead counsel in a recently approved $6.6 million settlement that represented 130% of the class' damages and offered all the overcharged subscribers 100 cents on the dollar repayment.

***DoubleClick*** -- (United States District Court, Southern District of New York).  Internet Privacy.  A class action on behalf of Internet users who have had personal information surreptitiously intercepted and sent to a major Internet advertising agency.  In the settlement agreement reached in this action, DoubleClick commits to a series of industry-leading privacy protections for online consumers while continuing to offer its full range of products and services.  This is likely the largest class action there has ever been - virtually every, if not every, Internet user in the United States.

## Toxic/Mass Torts

***Fen/Phen Litigation ("Diet Drug" Litigation)*** -- (Class action lawsuits filed in 10 jurisdictions including New York, New Jersey, Vermont, Pennsylvania, Florida, Kentucky, Indiana, Arizona, Oregon and Arkansas)  The firm played a prominent role in the nationwide "diet drug" or "fen-phen" litigation against American Home Products for the Company's sale and marketing of Redux and Pondimin. The suits allege that a number of pharmaceutical companies produced these drugs which, when used in combination, can lead to life-threatening pulmonary hypertension and heart valve thickening. The complaint alleges that these manufacturers knew of or should have known of the serious health risks created by the drugs, should have warned users of these risks, knew that the fen/phen combination was not approved by the FDA, had not been adequately studied, and yet was being routinely prescribed by physicians.  This litigation led to one of the largest class action settlements in history, the multi-billion dollar Nationwide Class Action Settlement with American Home Products approved by the United States District Court for the Eastern District of Pennsylvania. In this litigation, BLB&G was involved in lawsuits filed in the 10 jurisdictions and was designated Class Counsel in the Consolidated New York and New Jersey state court litigations. Additionally, the firm was Co-Liaison Counsel in the New York litigations and served as the State Court Certified Class Counsel for the New York Certified Class to the Nationwide Settlement.

# CLIENTS AND FEES

Most of the firm's clients are referred by other clients, law firms and lawyers, bankers, investors and accountants.  A considerable number of clients have been referred to the firm by former adversaries.  We have always maintained a high level of independence and discretion in the cases we decide to prosecute.  As a result, the level of personal satisfaction and commitment to our work is high.

As stated, our client roster includes many large and well known financial and lending institutions and pension funds, as well as privately held corporate entities which are attracted to our firm because of our reputation, particular expertise and fee structure.

We are firm believers in the contingency fee as a socially useful, productive and satisfying basis of compensation for legal services, particularly in litigation.  Wherever appropriate, even with our corporate clients, we will encourage a retention where our fee is at least partially contingent on the outcome of the litigation.  This way, it is not the number of hours worked that will determine our fee but, rather, the result achieved for our client.

# IN THE PUBLIC INTEREST

Bernstein Litowitz Berger & Grossmann LLP is guided by two principles: excellence in legal work and a belief that the law should serve a socially useful and dynamic purpose. Attorneys at the firm are active in academic, community and *pro bono* activities, as well as participating as speakers and contributors to professional organizations. In addition, the firm endows a public interest law fellowship and sponsors an academic scholarship at Columbia Law School.

**The Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship**, Columbia Law School. BLB&G is committed to fighting discrimination and effecting positive social change. In support of this commitment, the firm donated funds to Columbia Law School to create the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship. This newly endowed fund at Columbia Law School will provide Fellows with 100% of the funding needed to make payments on their law school tuition loans so long as such graduates remain in the public interest law field. The Bernstein Litowitz Berger & Grossmann Fellows will be able to leave law school free of any law school debt if they make a long term commitment to public interest law.

**Firm sponsorship of *inMotion***, New York, NY. BLB&G is a sponsor of inMotion, a non-profit organization in New York City dedicated to providing *pro bono* legal representation to indigent women, principally battered women, in connection with the myriad legal problems they face. The organization trains and supports the efforts of New York lawyers, typically associates at law firms or in-house counsel, who provide *pro bono* counsel to these women. Several members and associates of the firm volunteer their time and energies to help women who need divorces from abusive spouses, or representation on legal issues such as child support, custody and visitation. To read more about inMotion and the remarkable services it provides, visit the organization's website at www.inmotiononline.org.

**The Paul M. Bernstein Memorial Scholarship**, Columbia Law School. Paul M. Bernstein was the founding senior partner of the firm. Mr. Bernstein led a distinguished career as a lawyer and teacher and was deeply committed to the professional and personal development of young lawyers. The Paul M. Bernstein Memorial Scholarship Fund is a gift of the firm of Bernstein Litowitz Berger & Grossmann LLP, and the family and friends of Paul M. Bernstein. Established in 1990, the scholarship is awarded annually to one or more second-year students selected for their academic excellence in their first year, professional responsibility, financial need and contributions to fellow students and the community.

**Firm sponsorship of City Year New York**, New York, NY. BLB&G is also an active supporter of City Year New York, a division of AmeriCorps. The program was founded in 1988 as a means of encouraging young people to devote time to public service and unites a diverse group of volunteers for a demanding year of full-time community service, leadership development and civic engagement. Through their service, corps members experience a rite of passage that can inspire a lifetime of citizenship and build a stronger democracy.

15

# THE MEMBERS OF THE FIRM

**MAX W. BERGER**, a founding partner of the firm, supervises the firm's litigation practice and prosecutes class and individual actions on behalf of the firm's clients.

Mr. Berger has litigated many of the firm's most high profile and significant cases. Together, with other partners at the firm, he has obtained five of the largest securities fraud recoveries in history—the $6.15 billion settlement of *In re WorldCom, Inc. Securities Litigation*, the $3.2 billion settlement of *In re Cendant Corporation Securities Litigation*, the $1.3 billion recovery in *In re Nortel Networks Corporation Securities Litigation*, the $1.03 billion partial settlement of *In re McKesson HBOC, Inc. Securities Litigation*, and the over $600 million investor recovery in *In re Lucent Technologies, Inc. Securities Litigation*.

Mr. Berger's role in the *WorldCom* case received extensive media attention and has been the subject of feature articles in numerous major publications including *BusinessWeek* and *The American Lawyer*. For their outstanding efforts on behalf of the *WorldCom* Class, *The National Law Journal* profiled Mr. Berger and his partner Sean Coffey (two of only eleven attorneys selected nationwide) in its special June 2005 "Winning Attorneys" section. Additionally, Mr. Berger was featured in the July 2006 *New York Times* article, "A Class-Action Shuffle," which assessed the evolving landscape of the securities litigation arena.

Mr. Berger is widely recognized for his professional excellence and achievements.  For the second year in a row, he received the top attorney ranking for the "Litigation—Securities Mainly Plaintiff" category by the *Chambers and Partners' 2007 Guide to America's Leading Lawyers for Business*. The inaugural issue of *Benchmark: The Definitive Guide to America's Leading Litigation Firms & Attorneys* (published by Legal Media Group— *Institutional Investor* and *Euromoney*) singled out Mr. Berger as one of a handful of New York's "local litigation stars."  Additionally, he was named a "litigation star" by the 2007 edition of the *US Legal 500*, one of "10 Legal Superstars" by *Securities Law360*, and is consistently named as one of the "500 Leading Lawyers in America" by *Lawdragon* magazine.

Mr. Berger also serves the academic community in numerous capacities as a member of the Dean's Council to Columbia Law School, and as a member of the Board of Trustees of Baruch College. In May 2006, he was presented with the Distinguished Alumnus Award for his many and varied contributions to Baruch College. Mr. Berger has also been selected as an Advisor to the American Law Institute, Restatement Third of Torts, and he currently serves on the Advisory Board of Columbia Law School's Center on Corporate Governance. Additionally, Mr. Berger has taught Profession of Law, an ethics course at Columbia.

Mr. Berger is a past chairman of the Commercial Litigation Section of the Association of Trial Lawyers of America (now known as the American Association for Justice) and lectures for numerous professional organizations. In 1997, Mr. Berger was honored for his outstanding contribution to the public interest by Trial Lawyers For Public Justice, where he was a "Trial Lawyer of the Year" Finalist for his work in *Roberts, et al. v. Texaco*, the celebrated race discrimination case, on behalf of Texaco's African-American employees.

Among numerous charitable and volunteer works, Mr. Berger is an active supporter of City Year New York, a division of AmeriCorps, dedicated to encouraging young people to devote time to public service. In July 2005, he was named City Year New York's "Idealist of the Year," for his long-time service and work in the community.  He and his wife, Dale, have also established the Dale and Max Berger Public Interest Law Fellowship at Columbia Law School and the Max W. Berger Pre-Law Program at Baruch College.

EDUCATION: Baruch College-City University of New York, B.A., Accounting, 1968; President of the student body and recipient of numerous awards.  Columbia Law School, J.D., 1971, Editor of the *Columbia Survey of Human Rights Law*.

16

BAR ADMISSIONS: New York; U.S. District Courts for the Eastern and Southern Districts of New York; U.S. Court of Appeals, Second Circuit; U.S. District Court, District of Arizona; U.S. Supreme Court.

****

**JOHN P. ("SEAN") COFFEY** was a Commissioned Officer in the United States Navy before graduating from law school, where he served as a P-3C Orion patrol plane mission commander, an Intern in the Organization for the Joint Chiefs of Staff, and the personal military aide to Vice President George H.W. Bush. After leaving active duty to pursue his legal career, Mr. Coffey continued to serve in the Navy Reserve, where he commanded a P-3C squadron and the Reserve component of the *Enterprise* carrier battle group staff, and served for four years as a Captain in the Office of the Secretary of Defense at the Pentagon. In August 2004, he retired from the Navy after thirty years of uniformed service.

Mr. Coffey served as an Assistant United States Attorney for the Southern District of New York from 1991 to 1995, where he conducted numerous complex fraud investigations and tried many cases to verdict.

Since joining BLB&G in 1998, Mr. Coffey has served as the lead trial attorney in two of the most notable fraud cases ever to go to trial. In April 2005, Mr. Coffey and his BLB&G team completed their prosecution of the *WorldCom* securities class action—a prosecution that yielded a record-breaking recovery for defrauded investors of over $6.15 billion—by taking the lone non-settling defendant, WorldCom's former auditor Arthur Andersen LLP, to trial. Mr. Coffey's role in the *WorldCom* prosecution was featured in a December 2004 article in *The American Lawyer* entitled "Taking Citi To School" and a November 2005 article in *The American Lawyer* entitled "Breaking The Banks."

In 2002, in another trial against Andersen, this time arising out of the collapse of the Baptist Foundation of Arizona, *BFA Liquidation Trust v. Arthur Andersen LLP*, the largest non-profit bankruptcy in U.S. history, Mr. Coffey obtained a $217 million settlement, one of the largest amounts ever paid by an accounting firm.

Mr. Coffey currently serves as court-appointed Lead Counsel representing investors in the *Schering-Plough*, *HealthSouth*, *Merck*, *Refco*, and *Delphi* litigations, and copyright holders in the *Premier League v. YouTube* class action.

Mr. Coffey has been profiled in *The Wall Street Journal*, *The American Lawyer*, and *BusinessWeek*, and was featured on "The Wall Street Fix" on PBS' *Frontline*. Mr. Coffey and senior BLB&G partner Max Berger were named two of the 2005 "Winning Attorneys of the Year" by the *National Law Journal*, and the September 2005 issue of *Bloomberg Markets* profiled Mr. Coffey as "Wall Street's New Nemesis."

Prior to joining BLB&G, Mr. Coffey was a litigation partner with Latham & Watkins and an Adjunct Professor of Law at Fordham University. He is actively involved with his alma maters, serving as Vice President of the United States Naval Academy Class of 1978 and a member of the Board of Visitors of the Georgetown University Law Center. He is also a member of the Federal Bar Council (where he is a trustee of the Federal Bar Foundation), the American Bar Association, the Association of the Bar of the City of New York (where he is a member of its Securities Litigation Committee), the New York State Bar Association, the American Association for Justice, and the Public Justice Foundation. Mr. Coffey is also a member of the Board of Directors of The Community Fund of Bronxville, Eastchester, Tuckahoe, Inc., in Westchester County, N.Y.

EDUCATION: United States Naval Academy ("U.S.N.A."), B.S., Ocean Engineering, *with merit*, in 1978. Georgetown University Law Center, J.D., *magna cum laude*, 1987; Articles Editor for the *Georgetown Law Journal*; Order of the Coif; Charles A. Keigwin Award.

BAR ADMISSIONS: New York; U.S. District Courts for the Eastern, Southern and Western Districts of New York; U.S. Courts of Appeals for the Second and Third Circuits; New Jersey.

****

**GERALD H. SILK**'s practice focuses on representing institutional investors on matters involving federal and state securities laws, accountants' liability and the fiduciary duties of corporate officials. He also advises creditors on their rights with respect to pursuing affirmative claims against officers and directors, as well as professionals both inside and outside the bankruptcy context. Additionally, Mr. Silk is one of the partners who oversee the firm's new matter department, in which he, along with a group of financial analysts and investigators, counsels institutional clients on potential legal claims. He was the subject of "Picking Winning Securities Cases," a feature article in the June 2005 issue of *Bloomberg Markets* magazine, which detailed his work for the firm in this capacity. He was also named one of the "100 Securities Litigators You Need to Know," one of America's top 500 "rising stars" in the legal profession and one of the 3000 Leading Plaintiffs' Lawyers in America by *Lawdragon* magazine. Additionally, Mr. Silk was selected for inclusion in the list of 2006, 2007 and 2008 *New York Super Lawyers*. In October of 2008, Mr. Silk was named by *Lawdragon* magazine as one of the "500 Leading Lawyers in America."

Mr. Silk is currently representing Ontario Teachers' Pension Plan in a securities class action against American International Group, Inc. (AIG) which alleges that AIG misled investors by misrepresenting the nature of the Company's massive exposure to the subprime crisis, specifically billions in losses in credit default swaps. Mr. Silk is also leading the prosecution of state securities actions on behalf of bond and preferred stock investors in Citigroup and Merrill Lynch. These cases allege that Citigroup and Merrill Lynch issued securities pursuant to prospectuses that were materially false and misleading in that they misrepresented the value of and exposure to mortgage related and subprime securities as well as exposure arising out of their participation in the auction rate securities market. Mr. Silk is also actively involved in the firm's prosecution of highly successful M&A litigation, representing shareholders in widely publicized lawsuits, including the litigation arising from the proposed acquisition of Caremark Rx, Inc. by CVS Corporation - which led to an increase of approximately $3.5 billion in the consideration offered to shareholders.

Mr. Silk was one of the principal attorneys responsible for prosecuting the *In re Independent Energy Holdings Securities Litigation*, a case against the officers and directors of Independent Energy as well as several investment banking firms which underwrote a $200 million secondary offering of ADRs by the U.K.-based Independent Energy. The Independent Energy litigation was resolved for $48 million. Mr. Silk has also prosecuted and successfully resolved several other securities class actions, which resulted in substantial cash recoveries for investors, including *In re Sykes Enterprises, Inc. Securities Litigation* in the Middle District of Florida, and *In re OM Group, Inc. Securities Litigation* in the Northern District of Ohio. He was also a member of the litigation team responsible for the successful prosecution of *In re Cendant Corporation Securities Litigation* in the District of New Jersey, which was resolved for $3.2 billion.

A graduate of the Wharton School of Business, University of Pennsylvania and Brooklyn Law School, in 1995-96, Mr. Silk served as a law clerk to the Hon. Steven M. Gold, U.S.M.J., in the United States District Court for the Eastern District of New York.

Mr. Silk lectures to institutional investors at conferences throughout the country, and has written or substantially contributed to several articles on developments in securities and corporate law, including "The Compensation Game," *Lawdragon*, Fall 2006; "Institutional Investors as Lead Plaintiffs: Is There A New And Changing Landscape?", 75 *St. John's Law Review* 31 (Winter 2001); "The Duty To Supervise, Poser, Broker-Dealer Law and Regulation", 3rd Ed. 2000, Chapter 15; "Derivative Litigation In New York after Marx v. Akers", *New York Business Law Journal,* Vol. 1, No. 1 (Fall 1997).

EDUCATION:   Wharton School of the University of Pennsylvania, B.S., Economics, 1991.  Brooklyn Law School, J.D., *cum laude,* 1995.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

****

**MARK LEBOVITCH** is primarily responsible for the firm's corporate governance litigation practice, focusing on derivative suits and transactional litigation.  Among other things, he is currently prosecuting a case of first impression challenge to the legal validity of "Proxy Puts" – contractual provisions that are common in corporate debt agreements and that allegedly undermine shareholders' fundamental voting rights.  In addition, he is prosecuting the allegedly self-interested termination of a premium acquisition agreement by the CEO of the Landry's Restaurants, Inc., the Emulex board's allegedly bad faith rejection of a premium takeover offer by Broadcom Corporation, the restructuring transactions of DirecTV, and the inclusion in the Atmel Corporation poison pill of vaguely defined derivative securities.

In prior matters, he represented public pension systems seeking to vindicate shareholder voting rights allegedly infringed by Yahoo!, Inc.'s employee severance plan and by unique merger agreement and standstill provisions used in the private equity buyout of Ceridian Corporation.  He recently obtained up to $57 million for shareholders over a year after the closing of the buyout of Dollar General Stores.  He has also helped obtain for shareholders higher prices and meaningful corporate governance improvements in suits arising from, among other things, the hostile takeover battles over Caremark Rx, Inc., CBOT Holdings, Inc., Longs Drug Stores, Inc., and Anheuser-Busch Companies, Inc.

Mr. Lebovitch is also a member of the firm's subprime litigation team, and in that capacity is currently prosecuting *In re MBIA, Inc. Securities Litigation* and *In re Merrill Lynch Bondholders Litigation*, which recently settled for $150 million.

Mr. Lebovitch clerked for Vice Chancellor Stephen P. Lamb on the Court of Chancery of the State of Delaware, and was a litigation associate at Skadden, Arps, Slate, Meagher & Flom in New York, where he represented clients in a variety of corporate governance, commercial and federal securities matters.

Mr. Lebovitch is a member of the Board of Advisors for the Institute for Law and Economics, and an author and frequent speaker at industry events and continuing legal education programs on a wide range of corporate governance and securities related issues.  His publications include "'Novel Issues' or a Return to Core Principles? Analyzing the Common Link Between the Delaware Chancery Court's Recent Rulings in Option Backdating and Transactional Cases" (*NYU Journal of Law & Business*, Volume 4, Number 2); "Calling a Duck a Duck: Determining the Validity of Deal Protection Provisions in Merger of Equals Transactions" (2001 *Columbia Business Law Review* 1) and "Practical Refinement" (*The Daily Deal*, January 2002), each of which discussed evolving developments in the law of directors fiduciary duties.

EDUCATION:  Binghamton University – State University of New York, B.A., *cum laude*, 1996.  New York University School of Law, J.D., *cum laude,* 1999.

BAR ADMISSIONS: New York; U. S. District Courts for the Southern and Eastern Districts of New York.


## OF COUNSEL


**KURT HUNCIKER's** practice is concentrated in complex business and securities litigation. Prior to joining BLB&G, Mr. Hunciker represented clients in a number of class actions and other actions brought under the federal securities laws and the Racketeer Influenced and Corrupt Organizations Act.  He has also represented clients in actions brought under intellectual property laws, federal antitrust laws, and the common law governing business relationships.

Mr. Hunciker served as a member of the trial team for the In re WorldCom, Inc. Securities Litigation and is currently a member of the teams prosecuting the *In re Biovail Corp. Securities Litigation* and *In re Mutual Funds Securities Litigation.*

19

EDUCATION: Stanford University, B.A.; Phi Beta Kappa. Harvard Law School, J.D., Founding Editor of the *Harvard Environmental Law Review*.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern, Eastern and Northern Districts of New York; U.S. Courts of Appeals for the Second, Fourth and Ninth Circuits.

**\*\*\*\***

**BRUCE D. BERNSTEIN** has extensive experience prosecuting securities fraud class actions. He has played a significant role in obtaining substantial recoveries on behalf of investors in numerous matters, including *In re Oxford Health Plans, Inc. Securities Litigation* (total recoveries of $300 million); *In re PNC Financial Services, Inc. Securities Litigation* (total recoveries of $45.675 million); and *In re Martha Stewart Living Omnimedia, Inc. Securities Litigation* (total recoveries of $30 million). In addition, he has worked extensively on appeals resulting in favorable decisions for investors, including *In re Cabletron Systems, Inc. Securities Litigation*, 311 F.3d 11 (1st Cir. 2002), in which the First Circuit interpreted the pleading standards of the Private Securities Litigation Reform Act of 1995. At BLB&G, he is a member of the team prosecuting *In re Merck & Co., Inc. Securities Litigation*.

Mr. Bernstein is also active in the community, having served in various leadership positions for several philanthropic organizations, including UJA-Federation of New York (Co-Chair of Young Lawyers) and Seeds of Peace (Co-Chair of the YLC Benefit).

EDUCATION: University of Vermont, B.A., *with honors,* 1994. George Washington University Law School, J.D.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

## SENIOR COUNSEL

**ROCHELLE FEDER HANSEN** has handled a number of high profile securities fraud cases at the firm, including *In re StorageTek Securities Litigation*, *In re First Republic Securities Litigation*, and *In re RJR Nabisco Litigation*. Ms. Hansen has also acted as Antitrust Program Coordinator for Columbia Law School's Continuing Legal Education Trial Practice Program for Lawyers.

EDUCATION: Brooklyn College of the City University of New York, B.A., 1966; M.S., 1976. Benjamin N. Cardozo School of Law, J.D., *magna cum laude,* 1979; Member, *Cardozo Law Review*.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York; U.S. Court of Appeals, Fifth Circuit.

## ASSOCIATES

**MICHAEL D. BLATCHLEY**'s practice focuses on securities fraud litigation. He is currently a member of the firm's new matter department in which he, along with a team of attorneys, financial analysts, forensic accountants, and investigators, counsels the firm's clients on their legal claims.

While attending Brooklyn Law School, Mr. Blatchley held a judicial internship position for the Honorable David G. Trager, United States District Judge for the Eastern District of New York. In addition, he worked as an intern at The Legal Aid Society's Harlem Community Law Office, as well as at Brooklyn Law School's Second Look and Workers' Rights Clinics, and provided legal assistance to victims of Hurricane Katrina in New Orleans, Louisiana.

20

EDUCATION:  University of Wisconsin, B.A., 2000. Brooklyn Law School, J.D., *cum laude,* 2007; Edward V. Sparer Public Interest Law Fellowship, William Payson Richardson Memorial Prize, Richard Elliott Blyn Memorial Prize, Editor for the *Brooklyn Law Review,* Moot Court Honor Society.

BAR ADMISSION: New Jersey.

**PATRICIA S. GILLANE** is the author of "One Moment in Time: The Second Circuit Ponders Choreographic Photography as a Copyright Infringement: Horgan vs. MacMillan."  She is a member of the American Bar Association and a former member of the Association of the Bar of the City of New York, where she served on the Professional Responsibility Committee.

Together with firm partners Max Berger and Edward Grossmann, Ms. Gillane successfully prosecuted *In re Bennett Funding Group Litigation* which arose out of the largest Ponzi scheme in history.  After years of litigation, the matter settled for a total of over $165 million.

Most recently, she was a member of the team representing the New York State Common Retirement Fund in *In re WorldCom, Inc. Securities Litigation*, which culminated in a five-week trial against Arthur Andersen LLP and a recovery for investors of over $6.15 billion—the second largest securities fraud recovery in history.

EDUCATION: Columbia University, B.A., *cum laude,* 1985. Brooklyn Law School, J.D., 1989; Editor of the *Brooklyn Law Review.*

ADMISSIONS: New York; U.S. District Courts, Southern and Eastern Districts of New York.

**AVI JOSEFSON** prosecutes securities fraud litigation for the firm's institutional investor clients, and has participated in many of the Firm's significant representations, including *In re SCOR Holding (Switzerland) AG Securities Litigation*, which resulted in a recovery worth in excess of $143 million for investors.  He was also a member of the team that litigated the *In re OM Group, Inc. Securities Litigation,* which resulted in a settlement of $92.4 million.  Mr. Josefson is also actively involved in the M&A litigation practice, and represented shareholders in the litigation arising from the proposed acquisitions of Ceridian Corporation and Anheuser-Busch.  A member of the firm's subprime litigation team, he is currently involved in the securities fraud action arising from the collapse of subprime mortgage lender American Home Mortgage and the actions against Lehman Brothers, Citigroup and Merrill Lynch, arising from those banks' multi-billion dollar loss from mortgage-backed investments.  As a member of the firm's new matter department, he counsels institutional clients on potential legal claims.  Mr. Josefson has presented argument in several federal and state courts, including an appeal he argued before the Delaware Supreme Court.

Prior to joining BLB&G, Mr. Josefson was a litigation associate at Sachnoff & Weaver in Chicago, where his practice focused on insurance coverage litigation.

EDUCATION: Brandeis University, B.A., *cum laude,* 1997. Northwestern University, J.D., 2000; *Dean's List*; Justice Stevens Public Interest Fellowship (1999); Public Interest Law Initiative Fellowship (2000).

BAR ADMISSIONS: Illinois, New York.

**KARINE LOUIS** has extensive experience prosecuting a wide variety of patent, securities and commercial litigation.  In particular, she has participated in numerous multi-million dollar patent litigations involving Internet technology.  Her experience also includes arbitration of securities claims, patent infringement and theft of intellectual property.  She is currently a member of the firm's patent litigation team.

EDUCATION:  Colgate University, B.A., *magna cum laude*, 1995.  Brooklyn Law School, J.D., 2003; Moot Court Honor Society; three-time recipient of the Martin Luther King Scholarship.

BAR ADMISSIONS:  New York; New Jersey; U.S. District Courts for the Southern and Eastern Districts of New York; U.S. District Court of New Jersey.

**JOHN J. MILLS**' practice concentrates on Class Action Settlements and Settlement Administration. Mr. Mills also has experience representing large financial institutions in corporate finance transactions.

EDUCATION: Duke University, B.A., 1997. Brooklyn Law School, J.D., *cum laude,* 2000; Member of *The Brooklyn Journal of International Law;* Carswell Merit Scholar recipient.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

**SEAN O'DOWD**  Prior to joining BLB&G, Mr. O'Dowd was an associate at Latham & Watkins LLP, where his practice focused on trial and appellate litigation, including civil and criminal investigations by the Department of Justice and the SEC. In addition, Mr. O'Dowd litigated on behalf of torture victims seeking asylum in the United States and represented domestic violence survivors in proceedings under the Violence Against Women Act.

Following law school, Mr. O'Dowd served as a judicial law clerk to the Honorable William M. Acker, Jr., Senior United States District Judge, Northern District of Alabama.

EDUCATION: Cornell University, B.A., with distinction in all subjects, 2001. Northwestern University, J.D., *cum laude,* 2005; Senior Editor, *Journal of International Law & Business;* Recipient, Francis Kosmerl Merit Scholarship, Rubinowitz Public Interest Fellowship and Public Service Star Award.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

# 415100.1

# Exhibit 6B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION | Master File No. 07-cv-9633 (JSR)(DFE) |
| This Document Relates To: Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al., 08cv9063 (JSR)(DFE) | |

### DECLARATION OF JOSEPH E. WHITE III IN SUPPORT OF JOINT PETITION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES FILED ON BEHALF OF SAXENA WHITE P.A.

I, Joseph E. White III, declares as follows:

1.    I am a shareholder of the law firm of Saxena White PA.  I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in this case, as well as the reimbursement of expenses incurred by my firm in connection with this litigation.  I have personal knowledge of the matters set forth herein.

2.    My firm acted as one of plaintiffs' counsel in this class action.  The tasks undertaken by my firm can be summarized as follows: reviewed all pleadings, communicated with client regarding specific bond offerings and provided client updates throughout the case; reviewed all filings, correspondence and participated in counsel conference calls; and participated in document discovery review.

3.    The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff of my firm who was involved in this litigation, and the lodestar calculation based on my firm's current billing rates.

For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

4.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted in other in other securities or shareholder litigation.

5.      The total number of hours expended on this litigation by my firm through September 30, 2009 is 1,888.50. The total lodestar for my firm is $707,717.50, consisting of $695,356.25 for attorneys' time and $12,361.25 for professional support staff time.

6.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7.      As detailed in Exhibit 2, my firm has incurred a total of $ 53,487.28 in unreimbursed expenses in connection with the prosecution of this litigation.

8.      The expenses incurred in this action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

9.      With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and attorneys in my firm who were principally involved in the Merrill

2

Bond Action.


I declare, under penalty of perjury, that the foregoing facts are true and correct. Executed on the 23rd day of October, 2009.

_____
Joseph E. White III, Esq.

3

# Exhibit 1

EXHIBIT 1

**Merrill Bond Action**
*Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al.,*
08cv9063 (JSR)(DFE)

**SAXENA WHITE PA**

**TIME REPORT**

**Inception through September 30, 2009**

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Joseph E. White III, Esq. | 43.25 | 675.00 | 29,193.75 |
| Maya S. Saxena, Esq. | 59.00 | 675.00 | 39,825.00 |
| Christopher S. Jones, Esq. | 6.00 | 595.00 | 3,570.00 |
| | | | |
| **Associates** | | | |
| Brandon Grzandziel, Esq. | 848.25 | 365.00 | 309,611.25 |
| Lester Hooker, Esq. | 3.75 | 395.00 | 1,481.25 |
| Pamela Itzkowitch, Esq. | 601.50 | 350.00 | 210,525.00 |
| Wynter Galindez, Esq. | 289.00 | 350.00 | 101.150.00 |
| | | | |
| **Professional Support Staff** | | | |
| Gregory Stone | 18.00 | 385.00 | 6,930.00 |
| Stefanie Leverette | 19.75 | 275.00 | 5,431.25 |
| | | | |
| **TOTAL LODESTAR** | **1,888.50** | | **$  707,717.50** |

# Exhibit 2

EXHIBIT 2

**Merrill Bond Action**
*Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al.,*
08cv9063 (JSR)(DFE)

**SAXENA WHITE PA**

**EXPENSE REPORT**

**Inception through September 30, 2009**

| CATEGORY | AMOUNT |
|---|---|
| Expert | 5,000.00 |
| Lodging | 24,399.62 |
| Working Meals | 9,428.77 |
| Parking and Tolls | 101.87 |
| Online Research | 497.59 |
| Telephone, Photocopy, Fax, Print | 3,454.80 |
| Out of Town Travel | 10,604.63 |
|  |  |
| **TOTAL EXPENSES:** | **53,487.28** |

# Exhibit 3



**FIRM RESUME**



2424 North Federal Hwy.
Suite 257
Boca Raton, FL 33431

ph 561.394.3399
fax 561.394.3382

www.saxenawhite.com

## MAYA S. SAXENA

Ms. Saxena is the former Managing Partner of the Boca Raton, Florida office of one of the nation's largest securities litigation firms. Ms. Saxena has been instrumental in recovering nearly $300 million on behalf of investors, including the following cases:

- *Cent. Laborers' Pension Fund v. Sirva, Inc.*, (N.D. Ill.) Obtained a $53.3 million settlement in 2007 after defeating four motions to dismiss;

- *In re Helen of Troy Securities Litigation*, Case No. EP-05-CA-431-H (W.D. Tex.) Defeated motion to dismiss and obtained $4.5 million settlement in 2008;

- *In re Sunbeam Securities Litigation*, 176 F. Supp. 2d 1323 (S.D. Fla. 2002); Defendants' motions to dismiss were denied (two members of the board of directors were dismissed). Significant discovery was undertaken, including the review of approximately one million pages of documents and the depositions of approximately 90 fact witnesses over nearly 200 deposition days. After approximately eight months of negotiations, a settlement was entered into with defendant Arthur Andersen LLP for $110 million - one of the largest settlements ever with an accounting firm - and $31 million from the remaining defendants (including a $15 million personal contribution from former CEO Al Dunlap, agreed to only days prior to the start of trial);

- *In re AFC Enterprises, Inc. Securities Litigation*, No. 1:03-CV-0817-TWT (N.D. Ga. 2003). The majority of defendants' motions to dismiss were denied in this action, which involved a major financial restatement of AFC's previously reported financial results. Co-Lead counsel obtained a settlement of $15 million on behalf of the class;

- *In re Windmere-Durable Holdings, Inc. Sec. Litigation*, No. 98-2273 (S.D. Fla. 2002). Plaintiffs' alleged that defendants failed to reveal material facts concerning a recent acquisition. The case resulted in a settlement of $10.5 million after the conclusion of merits and expert discovery;

- *In re PSINet, Inc. Securities Litigation*, No. 00-1850-A (E.D. Va 2002). Plaintiffs alleged that defendants' failed to reveal the true financial condition of PSINet and one of its recent acquisitions. After the conclusion of merits, class, and expert discovery, the case settled for $17.8 million;

- *In re Pinnacle Holdings Inc. Securities Litigation*, No. 8:01-cv-624 (M.D. Fla. 2002). Co-Lead counsel obtained as settlement of $11 million prior to the commencement of discovery, including significant contributions from the Company's auditor and underwriters;

- *Cheney v. Cyberguard Corp.*, No. 98-6879 (S.D. Fla. 1998). Co-Lead Counsel obtained a settlement of $11 million after the close of discovery;

- *In re Tropical Sportswear Int'l Securities Litigation*, No. 8:03-cv-1958 (M.D. Fla. 2002). Defeated motions to dismiss; $8 million settlement pending despite bankruptcy of the Company.

Prior to joining her previous law firm, Ms. Saxena was employed as an Assistant Attorney General in Ft. Lauderdale, Florida. As an Assistant Attorney General, Ms. Saxena represented the State of Florida, its agencies and officers in civil cases at the appellate and trial level, and prepared *amicus curiae* briefs in support of state policies at issue in state and federal court cases. Ms. Saxena also represented the Florida Highway Patrol and other law enforcement agencies in civil forfeiture trials.

Ms. Saxena graduated from Syracuse University *summa cum laude* in 1993 with a dual degree in policy studies and economics, and graduated from Pepperdine University School of Law in 1996.

Ms. Saxena is a member of the Florida bar, and is admitted to practice before the U.S. District Courts for the Southern, Northern and Middle Districts of Florida, as well as the Eleventh and Fifth Circuit Courts of Appeal. Ms. Saxena was recently recognized in the *South Florida Business Journal's* "Best of the Bar" as one of the top lawyers in South Florida.

Ms. Saxena regularly represents institutional investors in successful shareholder actions involving breaches of fiduciary duty and violations of the federal securities law. Ms. Saxena is a frequent speaker at educational forums involving public pension funds and advises public and multi-employer pension funds on their options for addressing fraud-related losses to their pension portfolios.

## JOSEPH E. WHITE III

Mr. White has represented shareholders as lead counsel in securities fraud class actions against numerous publicly traded companies, yielding multi-million dollar settlements. Cases under his direction that settled in 2007 include: *Cent. Laborers' Pension Fund v. Sirva, Inc.*, ($53.3 million plus corporate governance improvements), *In re Catalina Marketing Corp. Securities Litigation* ($8.5 million), *In re Helen of Troy Securities Litigation* ($4.5 million), *In re Advanced Neuromodulation Systems, Inc. Securities Litigation* ($3 million), and *In re Mikohn Gaming Corp. Securities Litigation* ($2.8 million for Sect. 11 class – a recovery of 63% of the Sect 11 damages). Mr. White's efforts also yielded multi-million settlements in actions against: UniCapital Corp., Hamilton Bancorp, Profit Recovery Group, AES Corp., Tropical Sportswear International Corp., and AFC Corp.

Along with advising public and union pension funds on securities law matters, Mr. White has also assisted shareholders in achieving equitable treatment in minority shareholder

buy-out actions and derivative actions achieving meaningful corporate governance reform. Mr. White's clients include multi-billion dollar private investment funds, union pension, annuity and welfare funds, as well as municipal and county public pension funds. Mr. White regularly lectures on topics of interest to pension trustees, including "The Role of Public Pension Funds in Corporate Governance," "The Benefits of Portfolio Monitoring for Public Pension Funds" and "Tools for Assisting Pension Fund Trustees in Monitoring Securities Litigation." Mr. White is an associate member and educational lecturer for the Florida Public Pension Trustees Association.

Mr. White earned an undergraduate degree in Political Science from Tufts University before obtaining his Juris Doctor from Suffolk University School of Law. Before concentrating his practice in securities fraud, Mr. White represented national insurance companies in pursuit of fraudulent claims from the initial investigations and denial of claims through trial.

Mr. White is a member of the bar of the Commonwealth of Massachusetts and the State of Florida, as well as the United States District Courts for the Southern, Middle and Northern Districts of Florida, and the District of Massachusetts. Mr. White is also a member of the United States Circuit Courts of Appeal for the First and Eleventh Circuits.

### CHRISTOPHER S. JONES

Mr. Jones' practice has focused on class action litigation, including securities class actions, consumer class actions, and corporate derivative litigation for more than a decade. Some of his recent class action victories, settlements, and lead and co-lead counsel positions while at Saxena White include:

- *Cent. Laborers' Pension Fund v. Sirva, Inc.*, (N.D. Ill.) (Lead Counsel) ($53.3 million settlement in 2007; defeating motions to dismiss reported at 2006 U.S. Dist. LEXIS 73375, September 22, 2006);

- *In re Cablevision Systems Options Backdating Litigation*, (Supreme Court of New York, Nassau County, June 2008) (Co-Lead Counsel) ($34.4 million settlement) (See Options Grant to Dead Exec Leads to $34.4 Million Settlement, Wall Street Journal, June 5, 2008);

- *In re Alltel Corp. Shareholders Litigation*, Case No. 07-6406 (Pulaski County, Arkansas) (Co-Lead Counsel) (settlement pending June 2008);

- *In re Helen of Troy Securities Litigation*, Case No. EP-05-CA-431-H (W.D. Tex.) (Lead Counsel) (defeating motions to dismiss; $4.5 million settlement in 2008);

- *In re Friedman's, Inc. Securities Litigation*, 2005 U.S. Dist. LEXIS 19503, 2005 WL 2175936 (N.D. Ga. 2005) (defeating motions to dismiss; $14.9 million settlement in 2008);

Before joining Saxena White, P.A. Mr. Jones was a partner at one of the nation's leading class action law firms, and has actively litigated class actions on both the plaintiff and defense sides since 1996.

Mr. Jones also has extensive experience prosecuting complex corporate derivative actions. Notably, he was one of the lead counsel in the widely reported case involving FPL Group, Inc. (NYSE:FPL), a large public utility holding company. After nearly three years of intense litigation, which included reported victories on Defendants' motions to dismiss (*Klein v. FPL Group, Inc.*, 2004 U.S. Dist. LEXIS 919, 2004 WL 302292 (S.D. Fla. 2004)), and key discovery motions (*Klein v. FPL Group, Inc.*, 2003 U.S. Dist. LEXIS 19979 (S.D. Fla. 2003)), eight FPL executives, and their insurer, returned $22.25 million in compensation to the company. (See FPL Group to receive $22.25 million settlement in shareholder suit, *Knight-Ridder/Tribune Business News*, August 14, 2004). The settlement represents a groundbreaking recovery because it implemented sweeping corporate governance provisions at FPL, and at the time was the largest amount of money ever returned to a public company by members of its management in an executive compensation lawsuit.

Mr. Jones is also the creator and author of *The PSLRA Nugget*, a well known blog which provides cutting edge information and analysis on recent securities class action opinions. Regular Nugget subscribers and readers include hundreds of attorneys from the plaintiff and the defense bars, the Securities and Exchange Commission and other government agencies, economic analysts, D&O insurance companies, university professors, Fortune 500 general counsel, pension funds, and national news organizations.

Prior to practicing at his previous law firm, Mr. Jones was an attorney with a prominent corporate defense firm in St. Louis, Missouri. At that firm, he practiced in a variety of areas, including complex litigation, class actions, and appellate litigation. His reported victories there spanned federal and state courts, including *Clay v. Philip Morris Inc.*, 188 F.R.D. 483 (S.D. Ill. 1999); *West Virginia-Ohio Valley Area I.B.E.W. Welfare Fund v. R.J. Reynolds Tobacco Co.*, 188 F.R.D. 425 (S.D.W. Va. 1999), *Conway v. Royalite Plastics, Inc.*, 12 S.W. 3d 314 (Mo. 2001), and *Fletcher v. Conoco Pipeline Co.*, 129 F. Supp. 2d 1255 (W.D. Mo. 2001), *aff'd* 323 F.3d 661 (8th Cir. 2003).

Mr. Jones graduated from University of Akron, *cum laude*, in 1991 with a Bachelor of Arts in Economics, and earned his law degree from DePaul University in 1996.

Mr. Jones is a member of the state bars of Florida, New York, Illinois, Georgia, and Missouri. He is also admitted to practice before the following United States District Courts: Southern District of Florida, Middle District of Florida, Northern District of Florida, Northern District of Illinois, Southern District of Illinois, Northern District of Georgia, and the Eastern District of Missouri.

## LESTER HOOKER

Mr. Hooker earned his Bachelor's Degree from the University of California at Berkeley in 1999 with a Major in English. Thereafter, Mr. Hooker worked as a writer and editor for various websites, magazines and companies. In 2005, Mr. Hooker earned both a Juris Doctor and a Master's Degree in Business Administration with an emphasis in International Business from the University of San Diego. At USD, Mr. Hooker was awarded the Dean's Outstanding Scholar Scholarship from the law school, as well as the Ahlers Center International Graduate Studies Scholarship from the business school.

Prior to joining Saxena White, Mr. Hooker was an associate at a leading San Diego law firm specializing in consumer class actions, wage & hour disputes, and civil litigation. He currently focuses his practice on securities fraud class actions and consumer class actions. Mr. Hooker is a member of the California and Florida bars.

## PETER A. LAGORIO

Formerly a partner with a firm concentrating in securities and product liability class actions, he has successfully represented investors in a wide variety of complex securities class actions and shareholder derivative suits, obtaining many significant monetary recoveries often under very challenging factual and legal circumstances, including *In re Blech Securities Litigation,* 187 F.R.D. 97 (S.D.N.Y. 1999), 961 F. Supp. 569 (S.D.N.Y. 1997) (co-lead counsel in recovering over $15 million in complex market manipulation case against clearing firm, market makers and affiliates where central participants in scheme were insolvent); *Degulis v. LXR Biotechnology, Inc.,* 928 F. Supp. 1301 (S.D.N.Y. 1996) (companion case); *Hynes v. The Enstar Group, Inc.,* 90-C-1204-N (M.D. Ala.) (co-lead counsel in recovery of over $23 million in complex securities fraud case involving defunct company); *Cooper v. Kana,* 3:98-CV-2804 (N.D. Tex.) (co-lead counsel in recovering large percentage of investors' losses arising out of initial public offering of company that became insolvent due to accounting irregularities); *Lynn v. Infinity Investors Ltd.,* 3:97-CV-226 (E.D. Tenn.) (co-lead counsel in recovering majority of investors' losses against convertible debenture purchasers in market manipulation and breach of contract case despite bankruptcy of securities issuer and plan of reorganization that sought to dismiss the case); *Schulte v. Oxford Development Corp.,* 97-1333 (D. Md. 1998), order approving settlement affirmed, 135 F.3d 770 (4th Cir. 1998) (co-lead counsel in obtaining comprehensive settlement valued at over $11 million on behalf of limited partners in connection with complex real estate partnership restructuring transaction); *Caven v. Miller,* No. H-96-CV-3464 (S.D. Tex.) (co-lead counsel in shareholder derivative action recovering $18 million of benefits on behalf of successor company in merger); *Rosenblum v. Equis Financial Group,* No. 98-8030 (S.D. Fla.) (one of three counsel actively involved in achieving comprehensive class and derivative settlements in connection with

complex equipment leasing partnership restructuring transaction); In re Xchange, Inc. Sec. Litig, 1:01-CV-10322 (D. Mass.) (local counsel actively involved in obtaining $8.5 million settlement in case involving securities of bankrupt software company). Mr. Lagorio has also successfully represented both investors and securities professionals in NASD securities arbitration proceedings. In addition, he has advised securities issuers and investment professionals on various areas of federal and state securities law compliance, including private placements.

Mr. Lagorio has also been actively involved in the successful prosecution of various nationwide class actions arising out of defective product and/or deceptive trade practice claims, including Muccioli v. Sony Computer Entertainment America, Inc., Civil Action No. 413148 (San Mateo County, Cal. Superior Court) (obtaining free service and repairs and extended warranty period and partial cash refunds of past repair costs to purchasers of video game consoles); and Michaels v. Phoenix Home Life Mutual Insurance Co., Index No. 5318-95 (N.Y. Sup. Ct., Albany County), 1997 N.Y. Misc. LEXIS 171 (1996) (approving comprehensive class settlement in litigation involving sale of life insurance policies); Natal v. Transamerica Occidental Life Insurance Co., Index No. 694829 (San Diego, CA Superior Court) (same); Coleman v. GAF Building Materials Corp., CV-96-0954 (Mobile County, Alabama Circuit Court) (defective roofing shingles settlement with benefits estimated at present value of $75 million); Sebago, Inc. v. Beazer East, Inc., No. 96-10069 (D. Mass.) (defective foam roof insulation settlement with benefits estimated at present value of $240 million).

Mr. Lagorio is a 1977 graduate (cum laude) of Boston College where he received a Bachelor of Science degree from the School of Management concentrating in Accounting, and a 1994 graduate of New England School of Law (J.D.). Mr. Lagorio is a member of the bar of the Commonwealth of Massachusetts, the U.S. District Court for the District of Massachusetts and the U.S. Court of Appeals for the First Circuit. He is a member of the American Bar Association, Massachusetts Bar Association and the Boston Bar Association. Prior to practicing law, Mr. Lagorio had several years experience working as a financial analyst, securities broker and investment advisor.

## LYNDA CAREY PARIS

Lynda Carey Paris actively works on various class action cases involving securities, consumer protection, and related matters. Ms. Paris has previously practiced in various areas of insurance defense and personal injury law litigation. Prior to attending law school Ms. Paris worked several years as a legal assistant at a law firm handling patent litigation and prosecution. Ms. Paris is a 1995 graduate (cum laude) of Merrimack College in North Andover, Massachusetts, where she received a Bachelor of Arts degree in History, and a 2001 graduate of Suffolk University Law School (J.D.). Ms. Paris is a member of the bar

of the Commonwealth of Massachusetts and the U.S. District Court for the District of Massachusetts. Ms. Paris is Of Counsel to Saxena White.

## BRANDON GRZANDZIEL

Brandon Grzandziel earned his Bachelor of Arts degree in English from Wake Forest University in Winston-Salem, North Carolina, where he graduated with honors in 2005. In 2008, he received his Juris Doctor from the University of Miami School of Law. While at the University of Miami, Mr. Grzandziel was Executive Editor of the *University of Miami Business Law Review*, and his article, *A New Argument for Fair Use Under the Digital Millennium Copyright Act*, was published in the Spring/Summer 2008 issue. He was also honored with a CALI Award for his research on Shakespeare's use of the law in *Hamlet*. During law school, Mr. Grzandziel worked for a boutique criminal defense firm in Miami, where he gained litigation experience in both federal and state court.

## SCOTT A. MILLER

Mr. Miller recently joined Saxena White as Special Counsel, a newly-created position that is focused on providing broad support to the pension plans represented by Saxena White. Mr. Miller's background is uniquely suited for that purpose – he was most recently in-house legal counsel for the Montana Public Employee Retirement Administration for three years. Prior to that Mr. Miller was in the North Dakota Office of Attorney General for over eight and a half years, representing the North Dakota Public Employees Retirement System, Teachers' Fund for Retirement and State Investment Board. During his tenure in the North Dakota Office of Attorney General Mr. Miller also represented the North Dakota Department of Commerce, Department of Financial Institutions, and the only state-owned bank in the country, the Bank of North Dakota.

Mr. Miller has presented at numerous national legal conferences, including presentations at five National Association of Public Pension Attorney conferences on topics ranging from fiduciary duty to constitutional retirement benefit protections. During his over eleven years as a member of the National Association of Public Pension Attorneys, Mr. Miller served on the Mentor Committee and as the Lead Chair of the Fiduciary and Plan Governance Section. Mr. Miller is also active in the performing arts as both a moving prop and a prop mover in his daughter's ballet school's productions.

Mr. Miller received his Bachelor of Business Administration degree, with a major in economics and a minor in mathematics, from the University of North Dakota. Mr. Miller received his Juris Doctor from the Willamette University College of Law.

Mr. Miller is a member of the bar of the states of Montana, North Dakota and Minnesota, as well as the United States District Courts for the Districts of North Dakota and Montana.

## PAMELA ITZKOWITCH

Pamela Itzkowitch graduated from the University of Miami School of Law in May, 2008. During her law school career, she held several internship positions in the field of criminal law, and also worked briefly in commercial litigation. Ms. Itzkowitch took and passed the July 2008 New York and New Jersey Bar Examinations. She was admitted to the New Jersey Bar in December 2008, and to the New York Bar in July 2009. Since law school, Ms. Itzkowitch worked as a volunteer attorney for the Children's Law Center, and then worked as a contract attorney doing confirmatory discovery for Saxena White. She is currently a volunteer attorney for a solo practitioner, whose practice focuses on real estate and commercial litigation.

## WYNTER V. GALINDEZ

Mr. Galindez graduated from Duke University in 2001 and received his Juris Doctor from Brooklyn School of Law in 2007. He is admitted to practice law in New York, New Jersey, Connecticut and Florida. He practice is focused on complex litigation.

## KYLIE WAGENET

Ms. Wagenet earned her Bachelor's Degree from Boston University in 2004 with a major in Political Science. In 2009, she received her J.D. and M.B.A. from the University of Miami. While at UM, Ms. Wagenet interned with the Eleventh Judicial Circuit Court of Florida, and also worked at a prominent Miami defense firm, where she gained litigation experience in both state and federal court. Ms. Wagenet has also interned for a major investment firm.

## PETER HAPGOOD

### Institutional Investor Services

Peter Hapgood serves as an institutional liaison at the firm. Mr. Hapgood has 29 years of experience working with public funds, including eight years in the management and administration of retirement benefits and ten years in the investment management business working with public employee retirement systems. He began his professional career as a legislative assistant in the Massachusetts House of Representatives and later taught social studies in the Southbridge, Massachusetts, public schools.

Prior to joining Saxena White, Mr. Hapgood was a partner in the public funds practice of Nordea Investment Management Company and he previously served as the national director of public fund marketing for Freedom Capital Management Corporation. Mr. Hapgood's relationship with the public employee retirement industry began when he joined the management staff of the Massachusetts Teachers' Retirement Board (MTRB), where he later served as the Deputy Executive Director. He has been designated a Certified Retirement Administrator and a Certified Retirement Counselor by the International Foundation for Retirement Education and has been designated a Certified Public Pension Trustee by the Florida Public Pension Trustees Association (FPPTA).

Mr. Hapgood is currently an educational consultant and chairman of the Education Committee for the Florida Public Pension Trustees Association. He has been a member of the National Conference on Public Employee Retirement Systems, the National Council on Teacher Retirement and the National Preretirement Education Association. He currently serves as the appointed trustee of the Southbridge, Massachusetts, Contributory Retirement System.

Mr. Hapgood earned a bachelor's degree in Public Administration from Nichols College and earned a master's degree in Education from American International College.

## GREG STONE

### Director of Case Analysis

Mr. Stone is the firm's Director of Case Analysis and was most recently associated with one of the nation's leading securities fraud class action litigation firms in New York. He is responsible for managing the initial quantitative and qualitative analysis provided to Saxena White attorneys on potential violations of federal and state securities laws by public companies.

He earned an undergraduate degree in Accounting from The University of Pennsylvania before obtaining his MBA from UCLA. He has many years of professional financial experience, having worked with a major Big Four accounting firm, major investment brokerage houses, and hedge funds in New York.

### STEFANIE LEVERETTE

Miss Leverette is the Legal Coordinator and Client Liaison.  In this role, she handles the various legal matters integral to the prosecution of the firm's cases.  In addition, Miss Leverette coordinates the firm's client outreach and development programs, and manages the firm's presence at numerous industry conferences.  She earned her undergraduate degree in Business Administration with a focus on Management from the University of Central Florida and is currently working toward her Masters in Business Administration.

# Exhibit 6C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE MERRILL LYNCH & CO., INC.
SECURITIES, DERIVATIVE AND ERISA
LITIGATION

Master File No. 07-cv-9633 (JSR)(DFE)

---

This Document Relates To:
Louisiana Sheriffs' Pension and Relief Fund, et al.
v. Conway, et al., 08cv9063 (JSR)(DFE)

---

### DECLARATION OF MARC I. GROSS
### IN SUPPORT OF JOINT PETITION FOR ATTORNEYS'
### FEES AND REIMBURSEMENT OF EXPENSES FILED ON BEHALF OF
### POMERANTZ HAUDEK GROSSMAN & GROSS, LLP

**MARC I. GROSS**, declares as follows:

1.      I am a member of the law firm of Pomerantz Haudek Grossman & Gross, LLP.  I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in the above-captioned class action (the "Merrill Bond Action"), as well as for reimbursement of expenses incurred by my firm in connection with the Merrill Bond Action.

2.      My firm acted as one of plaintiffs' counsel in the Merrill Bond Action.  In this capacity, my firm performed the following tasks: Investigated claims on behalf of our clients, Iron Workers Local 40, 361, 417 Union Security Funds and Iron Workers Local 580 Joint Funds; assisted Lead Counsel in preparation of the pleadings; and performed extensive analysis of defendants' documents under the supervision of Lead Counsel.

3.      The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff of my firm who was involved in this action, and the lodestar calculation based on my firm's current billing rates.  For

personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

4.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted in other in other securities or shareholder litigation.

5.      The total number of hours expended on this litigation by my firm through September 30, 2009 is 1985.55. The total lodestar for my firm is $671,716.50, consisting of $667,931.50 for attorneys' time and $3,785.00 for professional support staff time.

6.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7.      As detailed in Exhibit 2, my firm has incurred a total of $198.90 in unreimbursed expenses in connection with the prosecution of the Merrill Bond Action.

8.      The expenses incurred in this action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

2

9.      With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and attorneys in my firm who were principally involved in the Merrill Bond Action.

I declare, under penalty of perjury, that the foregoing facts are true and correct.  Executed on October 19, 2009.

_____

Marc I. Gross

3

# Exhibit 1

EXHIBIT 1

**Merrill Bond Action**
*Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al.,*
08cv9063 (JSR)(DFE)

**Pomerantz Haudek Grossman & Gross, LLP**

**TIME REPORT**

**Inception through September 30, 2009**

| NAME | HOURS | HOURLY RATE | LODESTAR |
|------|-------|-------------|----------|
| **Partners** | | | |
| Marc I. Gross | 9 | $775 | $6,975.00 |
| Patrick V. Dahlstrom | 12 | $740 | $8,880.00 |
| Shaheen Rushd | 12 | $740 | $8,880.00 |
| Jason Cowart | 3.2 | $525 | $1,680.00 |
| Murielle Steven Walsh | 1 | $575 | $575.00 |
| **Associates** | | | |
| James R. Hodgson | 1.6 | $440 | $704.00 |
| Jeremy A. Lieberman | 2 | $475 | $950.00 |
| Jessica N. Dell | 728 | $350 | $254,800.00 |
| **Professional Support Staff** | | | |
| Cyril C. Murray, Project Associate | 701.50 | $300 | $210,450.00 |
| Ronald Salley, Project Associate | 497.25 | $350 | $174,037.50 |
| Vincent K. Eng | 1 | $235 | $235.00 |
| Teresa L. Webb | 15 | $210 | $3,150.00 |
| **Paul M. Yamada** | 2 | $200 | $400.00 |
| **TOTAL LODESTAR** | 1985.55 | | $671,716.50 |

# Exhibit 2

EXHIBIT 2

**Merrill Bond Action**
*Louisiana Sheriffs' Pension and Relief Fund, et al. v. Conway, et al.,*
08cv9063 (JSR)(DFE)

**Pomerantz Haudek Grossman & Gross, LLP**

**EXPENSE REPORT**

**Inception through September 30, 2009**

| CATEGORY | AMOUNT |
|---|---|
| **On-Line Legal Research** | $ 40.64 |
| **Hand Delivery Charges** | 10.00 |
| **Working Meals** | 109.02 |
| **Local Transportation** | 32.64 |
| **Internal Copying** | 6.60 |
| **TOTAL EXPENSES:** | **$198.90** |

# Exhibit 3

## POMERANTZ HAUDEK GROSSMAN & GROSS LLP

Pomerantz Haudek Grossman & Gross LLP ("Pomerantz" or "Firm") is one of the nation's foremost specialists in corporate, securities, antitrust and ERISA class litigation.  The Firm was founded in 1936 by the late Abraham L. Pomerantz, one of the "pioneers who developed the class action/derivative action field."[1]  Mr. Pomerantz rose to national prominence as a "champion of the small investor" and a "battler against corporate skullduggery."[2]  Today, senior partners Stanley M. Grossman and Marc I. Gross maintain the commitments to excellence and integrity passed down by our founder. Mr. Grossman has been recognized as one of the top New York City based securities litigators, and has served on the Ethics Committee of the Association of the Bar of the City of New York. Mr. Gross has been litigating securities fraud class actions and derivative cases for over three decades and has been praised by numerous courts for his lawyering.

For over 70 years, the Firm has specialized in representing victims of securities frauds, breaches of fiduciary duty, corporate mismanagement, and price fixing conspiracies.  The Firm also has thriving ERISA, healthcare and consumer litigation practices.  Pomerantz has set important precedents in its practice areas.

**Courts Have Consistently Acknowledged Pomerantz's ability
to Vigorously Pursue the Claims of Investors.**

In granting the fee request in *In re Salomon Brothers Treasury Litigation*, 91 Civ. 5471 (RPP) (S.D.N.Y.), where the Firm, as co-lead,  successfully negotiated a $100 million settlement for the class in a complex antitrust and securities case, Judge Patterson stated:

---

[1] New York Law Journal (August 1, 1983).

[2] Robert J. Cole, *Class Action Dean*, The National Law Journal, Vol. 1 No. 2 at 1 (Sept. 25, 1978).

I am going to approve the settlement, and I am going to approve the attorneys fees that you have requested with cost.

As I am doing it so summarily, does not mean I have not considered it at length. But it does not need that much consideration because I've observed the conduct of the attorneys involved here. They get the work done, and it was a tough one.

I think that there were a lot of people who thought there was going to be no recovery at all in this case.

In appointing Pomerantz Lead Counsel in *American Italian Pasta Co. Sec. Litig.*, No 05-CV0725-W-ODS (W.D. Mo.), a class action which involved a massive fraud and restatements spanning several years, the District Court observed that the Firm "has significant experience (and has been extremely effective) litigating securities class actions, employs highly qualified attorneys, and possesses ample resources to effectively manage the class litigation and protect the class's interests."

In approving a $146.25 million settlement in *In re Charter Communications Sec. Litig.*, 02 Cv1186 (E.D. Mo.), where Pomerantz served as sole lead counsel, the Court praised the Firm's efforts: "This Court believes Lead Plaintiff achieved an excellent result in a complex action, where the risk of obtaining a significantly smaller recovery, if any, was substantial." In awarding fees to Pomerantz, the Court cited "the vigor with which Lead Counsel . . . investigated claims, briefed the motions to dismiss, and negotiated the settlement . . .." And in *In re Wiring Devices Antitrust Litigation*, MDL Docket No. 331 (E.D.N.Y. Sept. 9, 1980), where the Firm was again lead counsel, then Chief Judge Jack B. Weinstein stated:

Counsel for the plaintiffs I think did an excellent job . . . . They are outstanding and skillful. The litigation was and is extremely complex. They assumed a great deal of responsibility. They recovered a very large amount given the possibility of no recovery here which was in my opinion substantial.

2

Similarly, in approving the $100 million settlement in *Snyder v. Nationwide Insurance Co.*, Index No. 97/0633 (N.Y. Supreme Court, Onondaga County), a case where Pomerantz served as co-lead counsel, Judge Tormey stated, "It was a pleasure to work with you.  This is a good result.  You've got some great attorneys working on it."

Certifying a class in a securities fraud action against analysts in *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS (S.D.N.Y.), Judge Lynch stated that Pomerantz had "ably and zealously represented the interests of the class." Numerous courts have agreed with that assessment. *See, e.g.*, *Steinberg v. Nationwide Mutual Insurance Co.*, 99 CV 7725 (E.D.N.Y.) (Judge Spatt, in granting class certification and appointing the Firm as class counsel, observed:  "The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification."  2004 U.S. Dist. LEXIS 17669 at *24); *Mercury Savings and Loan*, CV 90-87 LHM (C.D. Cal. 1995) (Judge McLaughlin commended the Firm for the "absolutely extraordinary job in this litigation."); *Boardwalk Marketplace Securities Litigation*, MDL No. 712 (D. Conn.) (Judge Eginton described the Firm's services as "exemplary," praised it for its "usual fine job of lawyering...[in] an extremely complex matter," and concluded that the case was "very well-handled and managed." Tr. at 6, 5/20/92; Tr. at 10, 10/10/92); *Nodar v. Weksel*, 84 Civ. 3870  (S.D.N.Y.) (Judge Broderick acknowledged "that the services rendered [by Pomerantz] were excellent services from the point of view of the class represented, [and] the result was an excellent result . . . ." Tr. at 21-22, 12/27/90); *Klein v. A.G. Becker Paribas, Inc.*, 83 Civ. 6456 (S.D.N.Y. 1987) (Judge Goettel complimented the Firm for providing "excellent . . . absolutely top-drawer representation for the class, particularly in light of the vigorous defense offered by the defense firm." (Tr. at 22, 3/6/87)); *Digital Securities Litigation*, 83-3255Y (D. Mass.) (Judge Young lauded the

Firm for its "[v]ery fine lawyering" (Tr. at 13, 9/18/86); *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 40 (S.D.N.Y. 1977) (Judge Frankel, referring to Pomerantz, said: "Their experience in handling class actions of this nature is known to the court and certainly puts to rest any doubt that the absent class members will receive the quality of representation to which they are entitled."); *Rauch v. Bilzerian,* 88 Civ. 15624 (Sup. Ct. N.J. 1991) (After trial, the Court referred to Pomerantz partners as "exceptionally competent counsel," and as having provided "top drawer, topflight [representation], certainly as good as I've seen in my stay on this court.").

**Pomerantz's Long Legacy
of Setting Important Precedents.**

Most recently, in *Stoneridge Investment Partners v. Scientific-Atlanta*, No. 06-43 (2007), in one of the most important securities cases in recent memory, the Firm obtained a ruling from the United States Supreme Court that provides a firm basis for holding third parties, such as bankers, accountants, and advisors, who do not affirmatively make false public statements, nevertheless liable for securities fraud in certain circumstances pursuant to Section 10(b) of the Securities Exchange Act of 1934. .Among the many other important reported decisions obtained on behalf of Pomerantz clients are: *EBC I, Inc. v. Goldman Sachs & Co*., 2005 N.Y. LEXIS 1178 (June 7, 2005) (New York State's highest court found for the first time that a lead managing underwriter can owe fiduciary duties to an issuer in connection with the issuer's IPO even where the underwriting contract does not establish any fiduciary relationship); *Ross v. Bernhard*, 396 U.S. 531 (1970) ((establishing the right to trial by jury of derivative actions); *Kronfeld v. TWA*, 832 F.2d 726 (2d Cir. 1987) (holding, *before Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), that a corporation may have a duty to disclose ongoing merger negotiations); *In re Summit Medical Systems Secs. Litig.*, 294 F.3d 969, 978 (8th Cir. 2002) (holding that standing existed for aftermarket purchasers who could trace their purchase of shares to

a false registration); *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 740 F.2d 190 (2d Cir. 1984) (establishing limits on advisory fees charged by investment advisors under the Investment Company Act); *Fogel v. Chestnutt*, 533 F.2d 731 (2d Cir. 1975) (private right of action under Investment Advisory Act and duty of fund managers to make full disclosures to outside directors in all areas where there was a possibility of any conflict of interest); *Moses v. Burgin*, 445 F.2d 369 (1st Cir. 1971) (similar); *In re Comverse Technology Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. 2007) (clarifying the standards for calculating the "largest financial interest" in the selection of lead plaintiffs in a manner consistent with the Supreme Court's ruling on loss causation in *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336 (2005)). *See, e.g., Pearlman v. Feldmann*, 219 F.2d 173 (2d Cir. 1955); *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS 2005 (S.D.N.Y. 2005); *Salomon Analyst AT&T Litig.*, 350 F. Supp. 2d 455 (S.D.N.Y. 2004) (GEL); *DeMarco v. Robertson Stephens*, 318 F. Supp. 2d 110 (S.D.N.Y. 2004); *In re Green Tree Fin. Corp. Options Litig.*, No. 97-2679, 2002 U.S. Dist. LEXIS 13986 (D. Minn. July 29, 2002); *Drolet v. Healthsource, Inc.*, 968 F. Supp. 757 (D.N.H. 1997); *In re Texas International Company Sec. Litig.*, [1988-89 Decisions] Fed. Sec. L. Rep. (CCH) ¶ 94,125 (W.D. Okla. 1988); *Fisher v. Kletz*, 266 F. Supp. 180 (S.D.N.Y. 1967).

Moreover, among the class and shareholder derivative actions in which Pomerantz was lead or co-lead counsel are:

> *In re Salomon Analysts AT&T Litig.*, 91 Civ. 5471 (S.D.N.Y.) ($74.75 million recovery);
>
> *In re Charter Communications, Inc. Secs. Litig.*, 4:02CV1186 (E.D. Mo. 2005) ($146.25 million recovery);
>
> *In re Elan Corp. Sec. Litig.*, No. 02-CV-0865(RMB) (S.D.N.Y. 2005) ($75 million recovery);

*In re Safety-Kleen Corp. Stockholders Litigation*, C.A. No. 3:00-CV-736-17 (D.S.C. 2004) ($54.5 million recovery);

*In re Transkaryotic Sec. Litig.*, No. 03-10165 (D. Mass 2008) (member of Executive Committee) ($50 million recovery);

*In re Summit Metals, Inc. v. Gray*, No., 98-2870 (D. Del. 2004) ($43 million judgment and required turnover of the stock of two corporations);

*In re Livent, Inc. Noteholders Securities Litigation* Case No. 98-CV-7161 (S.D.N.Y. 2003) ($17.25 million aggregate settlements; $36 million additional judgment (with interest);

*In re American Italian Pasta Company Sec. Litig.*, No. 05-CV-0725 (W.D. Mo. 2008) ($25 million settlement from the company and $3.5 million from the Company's auditors);

*In re Methionine Antitrust Litigation*, Master File No. C-99-3491-CRB, MDL No. 1311 (N.D. Cal. 2002) ($107 million recovery);

*In re Sorbates Direct Purchaser Antitrust Litigation*, C98-4886 Cal (N.D. Cal. 2000) (over $82 million recovery);

*Snyder v. Nationwide Insurance Co.*, Index No. 97/0633 (Supreme Court, N.Y., Onondaga County 1998) ($100 million recovery);

*In re First Executive Corporation Securities Litigation*, CV-89-7135 DT (Kx) (C.D. Cal. 1994) ($102 million recovery);

*In re Salomon Brothers Treasury Litigation*, 91 Civ. 5471 (RPP) (S.D.N.Y. 1994) ($100 million recovery);

*Mardean Duckworth v. Country Life Insurance Co.*, No. 98 CH 01046 (C.D. Ill. 2000) ($45 million recovery);

*In re National Health Laboratories, Inc. Securities*, CV-92-1949-H (CM) (S.D. Cal. 1995) ($64 million recovery);

*In re Boardwalk Marketplace Securities Litigation*, M.D.L. Docket No. 712 (D. Conn. 1994) (over $66 million benefit);

*In re Woolworth Corporation Securities Class Action Litigation*, 94 Civ. 2217 (RO) (S.D.N.Y. 1997) (recovery of $20 million);

*Frank v. Paul* (CenTrust Savings Bank Securities Litigation), 90-

6

0084-CIV (S.D. Fla. 1996) ($20 million recovery);

*Wallace v. Fox*  Docket No. 3:96 - CV - 00772 (PCD) (D. Conn. 1997) (Northeast Utilities Shareholder Derivative Action) ($25 million recovery);

*Hurley v. FDIC*, Civil Action No. 88-1940-T (D. Mass. 1992) ($29 million judgment after trial against two former officers of First Service Bank for Savings);

*In re Ocean Drilling & Exploration Company Shareholders Litigation*, Civ. No. 11898 (Del. Ch. 1991) ($38 million cash benefit);

*In re Telerate, Inc. Shareholders Litigation*, Civ. 1115 (Del. Ch. 1989) ($95 million benefit).

*In re AM International, Inc. Securities Litigation*, M-21-31, MDL Docket No. 494 (S.D.N.Y. 1987) ($23 million recovery);

*In re Data Point Securities Litigation*, SA-82-CA-338 (W.D. Tex. 1987) ($28.4 million recovery); and

*In re National Student Marketing Securities Litigation*, MDL Docket No. 105 (D.D.C. 1983) ($35 million recovery).

Biographies of the Firm's lawyers are provided below:

## ROBERT J. AXELROD

Robert J. Axelrod is a partner at Pomerantz. Mr. Axelrod practices securities, antitrust, and insurance and consumer litigation. As a member of the Firm's Healthcare and Consumer Group, Mr. Axelrod currently is prosecuting actions on behalf of clients including the American Medical Association, the American Dental Association, and the Medical Society of the State of New York, against such insurers as United Healthcare Corporation, CIGNA, Aetna, Oxford, Health Net, Inc., and Nationwide. Mr. Axelrod was on the successful trial team in *Addison v. American Medical Security*. Additional healthcare cases that Mr. Axelrod has litigated with partner D. Brian Hufford, include *American Medical Association v. United Healthcare Corporation, American Dental Association v. Aetna, Inc.,* and *Wachtel v. Health Net Inc.* In *Health Net*, 01-4183, 03-1801, where a settlement of up to $215 million in cash and benefits was approved by the Court in July 2008. The settlement also included important non-cash benefits, including the revamping of the system for calculating the reimbursements of claimants. Mr. Axelrod also has been involved in the prosecution of numerous securities and antitrust actions.

Mr. Axelrod serves as a member of the Class Action Committee of the New York State Bar Association. He is a member of the Temple University College of Liberal Arts Alumni Board, and serves as a trustee and General Counsel of Temple Beth El in Huntington, New York.

Mr. Axelrod is admitted in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second and Third Circuits.

### DANIEL L. BERGER

Daniel L. Berger graduated from Haverford College in 1976, and Columbia Law School in 1979 where he was a Stone Scholar.

Mr. Berger joined the Firm as a partner in September 2006.  Previously, Mr. Berger was a senior partner of Bernstein Litowitz Berger & Grossmann, where he litigated complex securities and discrimination class actions for 22 years.  While at that firm, Mr. Berger tried two 10b-5 securities class actions to jury verdicts, among the very few such cases ever tried.  He served as principal lead counsel in many of the largest securities litigations in history, achieving successful recoveries for classes of investors in cases including *In re Cendant Corp. Sec. Litig.*, (D. N.J.) ($3.3 Billion); *In re Lucent Technologies, Inc. Sec. Litig.* (D. N.J.) ($675 Million); *In re Bristol-Myers Squibb Sec. Litig.*, (S.D.N.Y.) ($300 Million); *In re Daimler Chrysler A.G. Sec. Litig.*, (D. Del.) ($300 Million); *In re Conseco, Inc. Sec. Litig.*, (S.D. Ind.) ($120 Million); *In re Symbol Technologies Sec. Litig.*, (E.D.N.Y.) ($139 Million); and *In re OM Group Sec. Litig.*, (N.D. Ohio) ($92 Million).  Mr. Berger has successfully argued several appeals that made new law favorable to investors, including *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2005); *McCall v. Scott*, 250 F.3d 997 (6th Cir. 2001) and *Fine v. American Solar King Corp.*, 919 F.2d 290 (5th Cir. 1990).  Mr. Berger also was lead class counsel in several important discrimination class actions, in particular *Roberts v. Texaco, Inc.* (S.D.N.Y.), where he represented African-American employees of Texaco and achieved the largest settlement ($175 Million) of a race discrimination class action.

Mr. Berger's work has received praise from many federal courts.  For example, in commenting on the settlement achieved in *McCall v. Scott*, one of the most significant recoveries in a derivative action, the United States District Court for the Middle District of Tennessee wrote:

9

> [The settlement] confers an exceptional benefit upon the company and the shareholders by way of the corporate governance plan....Counsel's excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great patience by taking this case on a contingent basis, and despite an early setback they have persevered and brought about not only a large cash settlement but sweeping corporate reforms that may be invaluable to the beneficiaries.

In addition, Mr. Berger's work as lead trial counsel in *In re ICN/Viratek Sec. Litig.* was noted by the United States District Court for the Southern District of New York, which said:

> "[P]laintiffs' counsel did a superb job here on behalf of the class. . . This was a very hard fought case. You had very able, superb opponents, and they put you to your task. . . The trial work was beautifully done and I believe very efficiently done. . .

Mr. Berger was a member of the Board of Managers of Haverford College from 2000-2003 and currently serves on the Board of Managers of Columbia Law School. He served on the Board of inMotion, Inc., a non-profit organization providing legal services to victims of domestic violence, for six years, and currently is a member of the Board of Madison Square Park Association.

Mr. Berger is admitted in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second, Third, Fifth, Sixth, Seventh, Ninth and Tenth Circuits.

### MICHAEL M. BUCHMAN

Michael Buchman joined the Firm as a partner in 2007. Mr. Buchman has litigated complex antitrust and consumer protection class actions for over ten years. Mr. Buchman served as an Assistant Attorney General in the Antitrust Bureau of the New York State Attorney General's Office. He has an advanced degree in international antitrust and trade law from Fordham University School of Law.

Mr. Buchman has extensive experience litigating complex commercial matters in federal and state courts. Over the past seven years, he has spearheaded an effort to challenge anticompetitive conduct by pharmaceutical companies designed to artificially inflate the price of brand name prescription drugs. He has served as co-lead counsel in a number of "generic drug" cases, including *In re Buspirone Antitrust Litig.*, MDL 1413 (S.D.N.Y.) ($90m settlement); *In re Relafen Antitrust Litig.*, 01-12222-WGY (D. Mass.) ($75m settlement); and *In re Augmentin Antitrust Litig.*, 02 Civ. 445 (E.D. Va. Norfolk Div.) ($29m settlement). Some of the settlements obtained by Mr. Buchman have resulted in substantial "cy pres" monetary awards for well known charitable organizations. For example, in *Augmentin*, awards exceeding $100,000 were donated on a "cy pres" basis to St. Jude Children's Research Hospital and Children's Rights of New York. Mr. Buchman also has extensive experience in other areas of antitrust law. For example, he was actively involved in *In re NASDAQ Market-Makers Antitrust Litig.*, MDL 1023 (S.D.N.Y.) ($1.027b) and *In re Visa Check/Mastermoney Antitrust Litigation*, CV 96-5238 (E.D.N.Y.) ($3b), two of the largest antitrust settlements ever reached.

Courts have acknowledged the high quality of Mr. Buchman's litigation efforts. For example, former Chief Judge William G. Young noted in *Relafen*, where Mr. Buchman was a co-

lead, "[t]his proposed settlement is the result of a great deal of very fine lawyering . . ." Similarly, in *Buspar*, where he also was a co-lead, Judge John G. Koeltl stated: "Let me say that the lawyers in this case have done a stupendous job. They really have." His "tenacious and skillful" work as a co-lead was also recognized by Judge Lewis A. Kaplan of the Southern District of New York in an international antitrust class action brought on behalf of foreign purchasers and sellers of works of art sold at auction by Christie's and Sotheby's which resulted in a $40 million settlement.

Mr. Buchman frequently speaks on antitrust and consumer protection class action issues. In 2002, he appeared on the *CBS Evening News* and spoke about generic drug litigations. That same year, he presented at the Practicing Law Institute's 10th Annual Consumer Financial Services Litigation on Recent Developments in State Unfair Deceptive Acts and Practices Statutes and Private Attorney General Litigation. On February 7, 2007, he spoke at the 4th National In-House Counsel Conference on Managing Complex Litigation on class certification. Mr. Buchman has also authored or co-authored articles on procedure or competition law, including a Task Force on Dealer Terminations for The Association of the Bar of the City of New York, Committee on Antitrust and Trade Regulation entitled *Dealer Termination in New York* dated June 1, 1998, and *What's in a Name — the Diversity Death-Knell for Underwriters of Lloyd's of London and their Names; Humm v. Lombard World Trade, Inc.*, Vol. 4, Issue 10 International Insurance Law Review 314 (1996).

He is admitted in the states of Connecticut and New York, and the United States Supreme Court, the United States Court of Appeals for the Second Circuit, the United States District Courts for the Southern and Eastern Districts of New York and the Districts of Arizona and Connecticut, and the United States Court of International Trade.

## JASON S. COWART

Jason S. Cowart became a partner at the Firm in July 2008. He focuses on the prosecution of securities fraud class actions. Mr. Cowart graduated *cum laude* from Northwestern University Law School in 1999. While in law school, he won the Moot Court competition and was an editor of the Journal of International Law and Business.

After law school, Mr. Cowart served as a law clerk to United States District Court Judge Richard Enslen. Before joining the Pomerantz Firm, Mr. Cowart was a litigation associate at Sidley Austin Brown & Wood LLP for over four years. During that time, Mr. Cowart concentrated his practice on complex commercial litigation including antitrust, contract, fraud, and health care-related matters.

Mr. Cowart is the co-author of *State Immunity, Political Accountability and Alden v. Maine*, 75 Notre Dame L. Rev. 1069 (2000).

Mr. Cowart is admitted in New York and Washington, D.C., the United States District Court for the Southern and Eastern Districts of New York, the Western District of Michigan, the District of Columbia, and the United States Supreme Court.

## PATRICK V. DAHLSTROM

Mr. Dahlstrom is a 1987 graduate of the Washington College of Law at American University in Washington, D.C., where he was a Dean's Fellow, Editor-in-Chief of the Administrative Law Journal, a member of the Moot Court Board representing Washington College of Law in the New York County Bar Association's Antitrust Moot Court Competition, and a member of the Vietnam Veterans of America Legal Services/Public Interest Law Clinic.

Upon graduating, Mr. Dahlstrom served as the Pro Se Staff Attorney for the United States District Court for the Eastern District of New York and was a law clerk to the Honorable Joan M. Azrack, United States Magistrate Judge. He joined the Pomerantz Firm as an associate in the Fall of 1991 and became a partner in January 1996. Mr. Dahlstrom is the resident partner in the Pomerantz Firm's Chicago Office. He focuses on securities fraud litigation.

Recently, in *In re Comverse Technology Sec. Litig.*, 2007 U.S. LEXIS 14878 (E.D.N.Y. 2007), Mr. Dahlstrom obtained important clarification regarding the calculation of the "largest financial interest" in connection with of the selection of a lead plaintiff, in a manner consistent with *Dura*, 544 U.S. 336 (2005). In *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS (S.D.N.Y. 2005), he obtained the first class certification in a federal securities case involving fraud by analysts. Some examples of other notable litigations by Mr. Dahlstrom are *In re Safety-Kleen Stockholders Securities Litigation,* 3:00-736-17 (D. S.C.) (as co-lead counsel, Firm obtained $54.5 million settlement); *In re Livent, Inc. Noteholders Securities Litigation*, 98 Civ. 7161 (VM) (S.D.N.Y.) (Firm, as sole-lead, obtained $17 million settlement, plus $36 million judgment (with interest)); and *In re Woolworth Corporation Securities Class Action Litigation*, 94 Civ. 2217 (RO) (S.D.N.Y.) (Firm, as co-lead counsel, secured a $20 million settlement). Mr. Dahlstrom was also co-class counsel and a member of the trial team in *In re ICN/Viratek Securities Litigation*, 87 Civ. 4296 (KMW) (S.D.N.Y.).

Mr. Dahlstrom is admitted in New York and Illinois, as well as the United States District Courts for the Southern and Eastern Districts of New York, the Northern District of Illinois, the Northern District of Indiana, the Eastern District of Wisconsin, the District of Colorado, the Western

District of Pennsylvania, the United States Courts of Appeals for the Fourth, Sixth, Seventh and Eight Circuits, and the United States Supreme Court.

## MARC I. GROSS

Marc I. Gross has been associated with the Firm since 1976 and became a partner in 1984. He graduated from New York University Law School in 1976 and received his undergraduate degree from Columbia University in 1973.

Mr. Gross has extensive experience in litigating class (securities, antitrust and consumer) and derivative actions. He is sole or co-lead counsel in many of the Firm's major pending cases, and has won rulings highly favorable to plaintiffs.

Mr. Gross has obtained numerous large recoveries. For example, he was sole Lead Counsel in *In re Charter Communications Inc. Sec. Litig.*, MDL No. 1506 E.D. Mo. (CAS), a case where, as described above, the Court lauded the Firm's efforts in obtaining a $146.25 million settlement. He was also co-lead counsel in *Snyder v. Nationwide Insurance Co.*, Index No. 97/0633 (N.Y. Supreme Court, Onondaga County), which resulted in a settlement valued at $100 million for defrauded life insurance policy customers in New York. In approving the settlement, Judge Tormey stated:

> The Court approves the settlement in all respects. It is so ordered, and I compliment you all, not only the manner in which you arrived at this result today, but the time that you -- in which it was done. And I think you all did a very, very good job for all the people. You made attorneys look good. I thank you very much. It was nice working with you all.

Mr. Gross was the attorney in charge of *Texas Int'l Co. Sec. Litig.* (W.D. Okla.), where, in granting class certification, the Court observed:

> The performance of plaintiffs' counsel thus far leaves the Court with no doubt that plaintiffs' claims will be vigorously and satisfactorily prosecuted throughout the course of this litigation.

15

In the course of approving the subsequent settlement of the case, the Court added:

> I would like to compliment all the parties and attorneys in this case.
> . . . You have all worked together better than I think any case I've had
> that involved these extensive issues and parties and potential
> problems. And I for one appreciate it. And I think it shows certainly
> a great deal of professionalism on all your part.

Other examples of Mr. Gross' representation as sole or co-lead counsel are: *In re Elan Corp.*

*Sec. Litig.*, No. 02-CV-865 (RMB)(FM) (S.D.N.Y.) ($75 million settlement); *In re Salomon Analysts*

*AT&T Litig.* ($74.75 million settlement) (S.D.N.Y.); *In re National Health Labs., Inc. Securities*,

CV-92-1949-H (CM) (S.D. Cal. 1995) ($64 million recovery); *In re American Italian Pasta Co. Sec.*

*Litig*, No 05-CV0725-W-ODS (S.D.N.Y.) ($28.5 million settlement); *Mardean Duckworth v.*

*Country Life Insurance Co*, No. 98 CH 01046 (C.D. Ill. 2000) ($45 million settlement); and *Frank v.*

*Paul* (*Centrust Savings Bank Securities Litigation*), 93 Civ. 1453 (TCP) (E.D.N.Y. 1996) (over $20

million recovery).  He was a member of the Plaintiffs' Executive Committee in *In re Transkaryotic*

*Therapies Sec. Litig.* (03-cv-10165-RWZ) (D. Mass.), which has settled for $50 million (court

approval of settlement has been requested);

Mr. Gross has been a member of the New York City Bar Association's Federal Courts

Committee, an early neutral evaluator for the Eastern District of New York, and a mediator for the

Commercial Division of the Supreme Court of the State of New York.  He is currently a Vice

President of the Institute of Law and Economic Policy ("ILEP"), a not-for profit organization devoted

to promoting academic research and dialogue in securities law issues and litigation.  At the 2006

ILEP Conference, Mr. Gross was a commentator on a panel discussing Sarbanes-Oxley governance

issues.  He was Treasurer of the National Association of Securities and Commercial Law Trial

Attorneys.  He was a guest panelist for a Spring 1998 conference on "Courts on Trial" sponsored by

the Institute of Law and Economics and held at the University of Arizona Law School, and is the author of *"Complex Litigation at the Millennium Loser-Pays - or Whose 'Fault' Is It Anyway: A Response to Hensler-Rowe's "Beyond 'It Just Ain't Worth It'"*, which appeared in the 64 Law & Contemporary Problems (Duke Law School) (2001).

Mr. Gross has also served as Chairman of Neighbors Helping Neighbors, a not-for-profit housing group based in Brooklyn, New York that is affiliated with the Neighborhood Reinvestment Corporation.

Mr. Gross is admitted in New York, the United States District Courts for the Southern, Northern and Eastern Districts of New York, the Eastern and Western Districts of Missouri, District of Nebraska, District of Arizona, the United States Courts of Appeals for the First, Second, Third and Eighth Circuits, and the United States Supreme Court.

## STANLEY M. GROSSMAN

Stanley M. Grossman, the senior partner of the Pomerantz Firm, was featured in the New York Law Journal (August 1, 1983) article: *"Top Litigators in Securities Field -- A Who's Who of City's Leading Courtroom Combatants."* He has been with the Pomerantz Firm since February 1969, and has been a member of the Firm since 1976. Throughout this period, he has mainly represented plaintiffs in securities and antitrust class actions, including many of those listed in the firm biography. *See. e.g., Ross v. Bernhard*, 396 U.S. 531; *Rosenfeld v. Black*, 445 F.2d 137 (2d Cir. 1971); *Wool v. Tandem*, 818 F.2d 1433 (9th Cir.); *In re Salomon Bros. Treasury Litig*, 9 F.3d 230 (2d Cir.). Recently, he appeared before the United States Supreme Court to argue that scheme liability is actionable under Section 10(b) and Rule 10b-5(a) and (c). *See Stoneridge Investment Partners v. Scientific-Atlanta*, No. 06-43 (2007). Other examples of cases where he was the lead or

co-lead counsel for plaintiffs and the class include:  *In re Salomon Brothers Treasury Litigation*, 91

Civ. 5471 (RPP)(S.D.N.Y. 1994) ($100 million cash recovery); *In re First Executive Corporation*

*Securities Litigation*, CV-89-7135 DT (Kx)(C.D. Cal. 1994) ($100 million settlement); *In re*

*Sorbates Direct Purchaser Antitrust Litigation*, C98-4886 CAL (N.D. Cal. 2000) (over $80 million

settlement for the class).

Senior Judge Milton Pollack of the Southern District of New York appointed Mr. Grossman

to the Executive Committee of counsel charged with allocating to claimants hundreds of millions of

dollars obtained in settlements with Drexel Burnham & Co. and Michael Milken.

Many courts have acknowledged the high quality of the legal representation provided by Mr.

Grossman to investors.  For example, in *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 79

Civ. 3123 (S.D.N.Y.), where Mr. Grossman was lead trial counsel for plaintiff, Judge Pollack noted

at the completion of the:

> [I] can fairly say, having remained abreast of the law on the factual
> and legal matters that have been presented, that I know of no case
> that has been better presented so as to give the Court an opportunity
> to reach a determination, for which the court thanks you.

Mr. Grossman was also the lead trial attorney in *Rauch v. Bilzerian* (Super. Ct.

N.J.)(directors owed the same duty of loyalty to preferred shareholders as common shareholders in a

corporate takeover), where the court described the Pomerantz team as "exceptionally competent

counsel."  He headed the six week trial on liability in *Walsh v. Northrop Grumman* (E.D.N.Y.) (a

securities and ERISA class action arising from Northrop's takeover of Grumman), after which a

substantial settlement was reached.

Mr. Grossman has lectured to the profession on various occasions under the auspices of the

Southern Federal Securities Institute, Columbia University School of Law, Duke University Law

18

School, University of Arizona Law School, Brooklyn Law School, ALI-ABA, PLI, the New York State Bar Association, and the Association of the Bar of the City of New York.  Most recently, Mr. Grossman was a featured panelist in a Practicing Law Institute "Hot Topic Briefing" entitled "*Stoneridge*- Is There Scheme Liability or Not?"  He also was a panelist at an April 2008 Conference sponsored by the Institute for Law and Economic Policy, entitled "The Continuing Evolution of Securities Class Actions."  Mr. Grossman also recently presented at the 2008 Meeting of the American Bar Association, in a discussion entitled "Insider's View of the Stoneridge Case: Investor Protection or Frivolous Litigation"; and he participated as a panelist on securities litigation developments at the 2008 annual meeting of the ABA Section of Litigation.  Mr. Grossman is the author of "Commentary: The Social Meaning of Shareholder Suits," 65 BROOKLYN LAW REV. (1999), among other articles.

Mr. Grossman has been active in numerous professional organizations.  He is the former president of the National Association of Securities Attorneys — an organization of attorneys specializing in securities class action litigation.  During his tenure, he represented the organization in meetings with the Chairman of the Securities and Exchange Commission, members of Congress and of the Executive Branch in furnishing input and commentary on legislation which became the Private Securities Litigation Reform Act of 1995 ("PSLRA").  In the summer of 1998, at the invitation of Chairman of the Judiciary Committee Henry Hyde, Mr. Grossman testified before Congress on proposed legislation dealing with "federalization of state class actions." Subsequently, Mr. Grossman was asked to participate with Congressional counsel in drafting proposed legislation.

Mr. Grossman presently serves as a vice president and adviser of ILEP, the public policy research and educational foundation focusing on securities laws.  He is also a member of the United

States Advisory Board of the Institute for Consumer Antitrust Studies at Loyola University Chicago. Additionally, he is on the Advisory Committee for the Abraham L. Pomerantz Lectures at Brooklyn Law School.

He is currently a member of the Judiciary Committee of the New York City Bar Association. Previously he served on the Association's Committee on Professional and Judicial Ethics; State Courts of Superior Jurisdiction; and Trade and Antitrust. He is also a member of the Litigation Section dealing with class actions at the American Bar Association.

Mr. Grossman is actively involved in local and national civic affairs. In June, 1999, he was appointed by the New York City Bar Association to chair a special Blue Ribbon Commission on the future of the City University of New York. Upon the publication of the Commission's Report, the President of the Association described it as "insightful, measured and persuasive . . . a striking example of the very best of what this Association can do."

He is a director of the Lincoln Center Institute for the Arts in Education, as well as a member of the Appleseed Foundation, a national public interest advocacy group. In addition, he is a member of the AFL-CIO Center for Working Capital's National Advisory Council of Employee Benefit Professionals.

Mr. Grossman is admitted in New York, the United States District Courts for the Southern, and Eastern Districts of New York, Central District of California, Eastern District of Wisconsin, District of Arizona, District of Colorado, the United States Courts of Appeals for the First, Second, Third, Ninth and Eleventh Circuits, and the United States Supreme Court.

### D. BRIAN HUFFORD

D. Brian Hufford joined the Pomerantz Firm in April 1993 and became a partner in July 1995. After obtaining a Masters of Urban Affairs from Wichita State University in 1982, Mr. Hufford attended the Yale Law School, where he was Notes and Topics Editor for the *Yale Law and Policy Review* and was awarded the Thomas I. Emerson Prize for the Outstanding Legislative Services Project. Graduating from Yale in 1985, Mr. Hufford subsequently spent two years in Washington, D.C. as an Honors Attorney in the United States Department of the Treasury's Honors Law Program. From 1987 until he joined the Firm in 1993, he was a litigation associate at Davis Polk & Wardwell, where he worked primarily on securities and class actions. His article *"Deterring Fraud vs. Avoiding the Strike Suit: Reaching An Appropriate Balance,"* was published in 61 *Brooklyn Law Rev.* 593 (Summer 1995).

At the Pomerantz Firm, Mr. Hufford has prosecuted not only a number of securities and antitrust cases, but is also the attorney in charge of the Firm's Healthcare and Consumer Group. Mr. Hufford successfully argued before the New York Appellate Division in *Batas v. Prudential*, 281 A.D.2d 260, 724 N.Y.S.2d 3 (1st Dep't 2001), in which the court upheld claims that Prudential relied on improper procedures for the determination of medical necessity in its health insurance contracts. Mr. Hufford also successfully argued *Drolet v. Healthsource, Inc.*, 968 F. Supp. 757 (D.N.H. 1997), in which the court upheld the charge that the defendant breached fiduciary duties under ERISA by misrepresenting the financial incentives it paid to physicians to reduce medical expenditures. In addition, Mr. Hufford received a successful decision upholding claims against United Healthcare in *American Medical Association v. United Healthcare Corp.*, 2002 U.S. Dist. LEXIS 20309 (S.D.N.Y. Oct. 23, 2002), where plaintiffs claimed that the defendant relied on an improper database for

21

determining "usual, customary and reasonable" fees for the purpose of reimbursing subscribers for services received from out-of-network health care providers.  Moreover, Mr. Hufford was the Pomerantz partner in charge in *Addison v. HealthNet*, where a settlement of up to $215 million in cash and other benefits was obtained. The settlement, which was granted final approval in July 2008, is one of the largest settlements in a health insurance litigation. Mr. Hufford was also the partner-in-charge in Addison *v. American Medical Security*, Case No. CA 001455-AB (Cir. Ct., Palm Beach Cty., Fla.), in which plaintiffs won a two-week bench trial, with the Court finding in March 2002 that the defendant had violated Florida law by, among other things, improperly raising health care premiums based on an individual's health history.

Mr. Hufford has written and lectured in the area of healthcare litigation.  Further, he was featured in the book *Net Law: How Lawyers Use the Internet*, by Paul Jacobsen (Jan. 1997), which discusses how he has used the Internet to investigate some of the firm's pending class actions.

Mr. Hufford is admitted in New York and Ohio, and the United States District Courts of the Southern and Eastern Districts of New York.

### <u>CHERYL D. HAMER</u>

Cheryl D. Hamer joined the Firm in February 2003 to head up its Washington, D.C. office and became a partner in January 2007.  She is a 1973 graduate of Columbia University and a 1983 graduate of Lincoln University Law School. She studied tax law at Golden Gate University and holds a Certificate in Journalism from New York University.  At Pomerantz, Ms. Hamer has been involved in numerous securities fraud cases, including *In re Symbol Technologies, Inc. Sec. Litig.*, (E.D.N.Y. filed Aug. 16, 2005) and *In re American Italian Pasta Co. Sec. Litig.*, (W.D. Mo. Filed Aug. 12, 2005).

22

Before joining Pomerantz, Ms. Hamer served as of counsel to nationally known securities class action law firms focusing on plaintiff securities fraud litigation. In private practice for over 20 years, she has litigated, at both the state and federal levels, RICO, Continuing Criminal Enterprise, death penalty and civil rights cases. She has authored numerous criminal writs and appeals.

She was an Adjunct Professor at Pace University, Dyson College of Arts and Sciences, Criminal Justice Program and The Graduate School of Public Administration, where she taught Non-Profit Corporate Law, from 1996 to 1998. She is a member of the American Bar Association's Litigation and Individual Rights Sections, the Corporate, Finance & Securities Law Section of the District of Columbia Bar.

Ms. Hamer is admitted in California, United States District Court for the Northern, Southern, Eastern and Central Districts of California, the District of New Mexico, the District of Columbia, the United States Courts of Appeals for the Second, Third, Fourth, Seventh, Ninth, Tenth and Eleventh Circuits, and the United States Supreme Court.

## H. ADAM PRUSSIN

H. Adam Prussin joined the Firm as of counsel in June 2000, and became a partner in January 2002. He graduated *cum laude* from Yale College in 1969, and after obtaining a Masters Degree from the University of Michigan in 1971, he received his J.D. from Harvard Law School in 1974.

In addition to securities litigation, Mr. Prussin has extensive experience in derivative actions. He has published several articles on the subject of the standards and procedures for obtaining dismissal of shareholder derivative actions, including *"Termination of Derivative Suits Against Directors on Business Judgement Grounds: From Zapata to Aronson,"* 39 The Business Lawyer

23

1503, 1984; "*Dismissal of Derivative Actions Under the Business Judgement Rule:  Zapata One Year Later,*" 38 The Business Lawyer 401, 1983; and "*The Business Judgement Rule and Shareholder Derivative Actions:  Viva Zapata?,*" 37 The Business Lawyer 27, 1981.

Mr. Prussin was special litigation counsel in *Summit Metals, Inc. v. Gray*, a derivative action which resulted in entry of a judgment, after trial, of $43 million in cash, plus an order transferring the stock of two multi-million-dollar companies to the plaintiff.  He was also one of the lead lawyers in *In re Livent Noteholders Securities Litigation.*  Mr. Prussin is co-lead counsel in several of the Firm's pending derivative actions.

Before joining the Firm, Mr. Prussin was a named partner in Silverman, Harnes, Harnes, Prussin & Keller, which specializes in representing plaintiffs in shareholder derivative and class action litigation, particularly those involving self-dealing by corporate officers, directors and controlling shareholders.  Mr. Prussin played a key role in several landmark derivative cases in the Delaware courts, and has appeared frequently before the Delaware Supreme Court.

Before joining Silverman, Harnes in 1994, Mr. Prussin was of counsel to Weil, Gotshal & Manges.  While there, he represented numerous corporate defendants in shareholder derivative actions and class actions, and also in general commercial, bankruptcy and antitrust disputes.

Mr. Prussin is admitted in New York, the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second, Ninth and D.C. Circuits.

## SHAHEEN RUSHD

Shaheen Rushd graduated *summa cum laude* from New York Law School in 1981 and obtained her undergraduate degree from Kalamazoo College in 1977 (*magna cum laude*; elected to Phi Beta Kappa).

Ms. Rushd joined the Firm as an associate in January 1983 and became a partner in July 1991. Previously, Ms. Rushd was a staff attorney at the New York Regional Office of the Federal Trade Commission and served as law clerk to the Honorable Leonard I. Garth, Circuit Court Judge of the United States Court of Appeals for the Third Circuit.

Ms. Rushd specializes in securities and antitrust class actions. She has participated in the litigation of many of the Firm's major cases, including *Stoneridge Investment Partners v. Scientific-Atlanta, Inc.; EBC I, Inc. v. Goldman Sachs & Co.; Comverse Technology, Inc. Sec. Litig ; Kronfeld v. TWA*; and *In re Safety-Kleen Corp. Stockholders Litigation.* She was also part of the successful trial teams in *Walsh v. Northrop Grumman, et al.*, CV-94-5105 (E.D.N.Y.) and *Rauch v. Bilzerian*, 88 Civ. 15624 (Super. Ct. N.J.).

Ms. Rushd was a trustee of Kalamazoo College from 1996 through June 2002. She has served as an Adjunct Instructor at New York Law School and was a member of the New York City Bar Association's Antitrust and Trade Regulation Committee. She is a member of the ABA Section of Business Law.

Ms. Rushd is admitted in New York, the United States District Court for the Southern and Eastern Districts of New York, the United States Courts of Appeals for the Eighth and Eleventh Circuits, and the United States Supreme Court.

## MURIELLE STEVEN WALSH

Murielle Steven Walsh joined the Firm as an associate in April 1998 and became partner in January 2007. Ms. Steven Walsh graduated *cum laude* from New York Law School in 1996, where she was the recipient of the Irving Mariash Scholarship. During law school, Ms. Steven Walsh interned with the Kings County District Attorney and worked within the mergers and acquisitions group of Sullivan & Cromwell.

At Pomerantz, Ms. Steven Walsh specializes in securities and corporate governance-related litigation. Ms. Steven Walsh was part of the trial team in *Lewis v. Beall*, a derivative action in California state court that focused on the duties of corporate directors. More recently, in *In re Livent Noteholders' Securities Litigation*, Ms. Steven Walsh was one of the lead attorneys in prosecuting this securities class action against the company's former chief executive officers, and obtained a $36.6 million judgment against these individuals (which was recently affirmed by the Second Circuit). The Pomerantz Firm also obtained settlements totaling over $17 million from other defendants in the case.

Ms. Steven Walsh is also part of the team working on the *EBC I v. Goldman Sachs* case, in which the Pomerantz firm obtained a landmark ruling from the New York Court of Appeals - that underwriters owe certain fiduciary duties to their issuer clients.

Ms. Steven Walsh currently serves as a member of the editorial board for Class Action Reports. In the past, she has been involved in political asylum work with the Association of the Bar of the City of New York.

Ms. Steven Walsh is admitted in New York and in the United States District Courts for the Eastern and Southern Districts of New York.

## JOSHUA B. SILVERMAN

Joshua B. Silverman joined the Pomerantz Firm in April 2006, as Of Counsel. Mr. Silverman is a 1993 graduate of the University of Michigan, where he received *Phi Beta Kappa* honors, and a 1996 graduate of the University of Michigan Law School. He focuses on prosecution of securities fraud class action lawsuits. He was a key member of the Pomerantz team of lawyers in *Stoneridge Investment Partners v. Scientific-Atlanta, Inc.*

Before joining the Pomerantz Firm, Mr. Silverman was a litigation associate at McGuireWoods LLP and its Chicago predecessor, Ross & Hardies. His practice there focused on complex commercial litigation including class action commodities fraud, civil RICO and antitrust cases. Mr. Silverman also spent two years as a securities trader.

Mr. Silverman is admitted in Illinois, the United States District Court for the Northern District of Illinois, the United States Courts of Appeals for the Seventh and Eighth Circuits, and the United States Supreme Court.

### LEIGH HANDELMAN SMOLLAR

Leigh Handelman Smollar became Of Counsel to the Firm in 2008. She has been associated with the Firm since January 2002.

Ms. Handelman Smollar graduated from Chicago-Kent College of Law in 1996. Upon her graduation, she spent the next 5 years specializing in complex litigation, handling a broad variety of matters.

Ms. Handelman Smollar co-authored an article for the Illinois Institute for Continuing Legal Education (IICLE) entitled "Shareholder Derivative Suits and Stockholder Litigation in Illinois," published in IICLE Chancery and Special Remedies 2004 Practice Handbook.

Ms. Handelman Smollar is admitted in Illinois, the United States District Court for the Northern District of Illinois, Eastern District of Missouri, and the United States Courts of Appeals for the Seventh and Eighth Circuits.

## R. JAMES HODGSON

Jim Hodgson became associated with the Firm in May 2007. He focuses on the prosecution of securities fraud class actions.

Mr. Hodgson graduated from the University of Pennsylvania Law School in 2003. While in law school, he served as a judicial intern to the Honorable John F. Keenan, United States District Judge, Southern District of New York. He also served as a Senior Editor of the University of Pennsylvania Law Review and, upon graduation, was recognized with an award for "Exemplary Public Service while at Penn Law School."

Following law school, Mr. Hodgson was associated with the law firm of Fried, Frank, Harris, Shriver & Jacobson LLP for nearly four years. At Fried, Frank, Mr. Hodgson focused his practice on general commercial and securities litigation, regulatory defense, copyright enforcement, and white-collar criminal defense. In addition, he has tried (on a pro bono basis) numerous asylum law cases on behalf of refugees seeking asylum protection in the United States.

Mr. Hodgson is admitted in New York. He is a member of American Bar Association, New York State Bar Association, and Association of the Bar of the City of New York.

## JEREMY A. LIEBERMAN

Jeremy A. Lieberman became associated with the Firm in August 2004. He focuses on the prosecution of securities fraud class actions. Mr. Lieberman graduated from Fordham University School of Law in 2002. While in law school, Mr. Lieberman served as a staff member of the Fordham Urban Law Journal.

Upon graduation, Mr. Lieberman was a litigation associate at Chadbourne & Parke LLP, where he specialized in complex commercial litigation and products liability.

Mr. Lieberman is admitted in New York. He is a member of the New York State Bar Association.

## FEI-LU QIAN

Fei-Lu Qian became associated with the Firm in July 2005. He focuses on the prosecution of securities fraud class actions. Mr. Qian graduated from Albany Law School of Union University in 2003. He was Associate Editor of the Albany Law Review. While in law school, he interned at the New York State Office of the Attorney General.

Mr. Qian began his legal career as an associate at Lovell Stewart Halebian LLP, where he specialized in securities litigation.

Mr. Qian is admitted in New York and the United States District Courts for the Southern and Eastern Districts of New York.

29

**TAMAR A. WEINRIB**

Tamar A. Weinrib joined Pomerantz as an associate in April 2008.  Ms. Weinrib graduated from Fordham University School of Law in 2004 and, while there, participated in and coached Moot Court competitions.

After law school, Ms. Weinrib worked as a litigation associate in the New York office of Clifford Chance US LLP for over three years, where she focused on complex commercial litigation. In addition, she was involved in pro bono cases, including a criminal appeal and a housing dispute filed with the Human Rights Commission.

Ms. Weinrib is admitted in New York and the United States District Courts for the Southern and Eastern Districts of New York.

**SUSAN J. WEISWASSER**

Susan J. Weiswasser became associated with the Firm in December 2004.  She focuses on health insurance and other class action insurance litigation..

Ms. Weiswasser graduated from Brooklyn Law School in 2000.  While in law school, Ms. Weiswasser served as a law clerk intern to the Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York.  Ms. Weiswasser also served as a legal intern with the New York State Capital Defender Office.

Ms. Weiswasser is admitted in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Third Circuit. She is a member of the New York City Bar Association.