UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------x
In re MERRILL LYNCH & CO., INC.,                :
SECURITIES, DERIVATIVE AND ERISA                :          Master File No.:
LITIGATION                                      :          07 Civ. 9633 (JSR)
                                                :
---------------------------------------x
PERTAINS TO                                     :          OPINION AND ORDER
*Derivative Action*, 07 Civ. 9696 and           :
*Lambrecht v. O'Neal*, 09 Civ. 8259             :
---------------------------------------x

JED S. RAKOFF, U.S.D.J.

Pending before the Court are two derivative actions arising

from the unprecedented losses experienced by Merrill Lynch & Co.,

Inc. ("Merrill") as a result of its aggressive investment in

collateralized debt obligations ("CDOs") and similar mortgage-

backed securities in the period prior to its acquisition by Bank

of America ("BofA").  Both actions -- a consolidated action known

as the "Derivative Action," 07 Civ. 9696, and a later-filed

action, Lambrecht v. O'Neal, originally filed as 08 Civ. 6582 but

now refiled as 09 Civ. 8259  -- are so called "double-derivative"

actions brought by plaintiffs who were shareholders of Merrill at

the time of the alleged wrongdoing and are now shareholders of

BofA as a result of the Merrill-BofA stock-for-stock swap.  Both

actions seek to compel the board of directors of BofA, now the

100% owner of the stock in BofA's Merrill subsidiary, to force

its Merrill subsidiary to bring various claims against certain of

Merrill's officers and directors in connection with Merrill's

allegedly reckless investments.  The key difference between the

two actions is that the plaintiff in the Derivative Action argues

that any demand upon the BofA board to pursue these claims would be futile, whereas the plaintiff in Lambrecht did make a demand upon the BofA board, as well as upon both the pre-merger and post-merger Merrill boards, all of which claims were rejected.

The many defendants in the Derivative and Lambrecht actions have each filed motions to dismiss the respective complaints on various grounds. After careful consideration, and as explained in detail below, the Court concludes that both actions must be dismissed in their entirety. The Court does not take this step lightly, for the allegations of the complaints, if true, describe the kind of risky behavior by high-ranking financiers that helped create the economic crisis from which so many Americans continue to suffer. But a derivative action is brought for the benefit of the company, and nothing here alleged in the complaints raises a reason to doubt that the board of the relevant company, BofA, was at all times fairly positioned to determine whether bringing an action against Merrill's former officers and directors was in the company's interest.

Specifically, with respect to the Derivative Action, the Court concludes that plaintiffs have failed to make a legally adequate showing that the BofA Board was so involved in the underlying wrongdoing alleged in the Derivative complaint that it could not impartially consider a demand to pursue claims against

2

the *Merrill* officers and directors.  And, with respect to the

Lambrecht action, the Court concludes that plaintiff has failed

to carry the considerable burden of showing that the BofA Board's

decision not to bring a lawsuit against the Merrill officers and

directors was made in bad faith or was based on an unreasonable

investigation.

## Background

Both actions have complicated procedural histories.  The

Derivative Action began as a consolidation of various shareholder

derivative actions brought against officers and directors of

Merrill as early as 2007.[1]  Shortly after an agreement was

reached on September 14, 2008 to merge Merrill into BofA, the

consolidated plaintiffs filed a Second Amended Verified Complaint

to incorporate new allegations related to BofA's announcement of

its merger with Merrill (the "Merger").

---

[1] The shareholder derivative actions were only one component of
numerous related actions originally assigned to the Honorable
Leonard B. Sand and combined under the title In re Merrill Lynch
& Co., Inc. Securities, Derivative, and ERISA Litigation.  See
02/17/09 Opinion and Order at 1.  As that title indicates, Judge
Sand divided most of the actions into three categories –
securities class actions, ERISA actions, and derivative actions -
and scheduled motion practice with respect to each; but he was
then obliged to recuse himself after agreement was reached to
merge Merrill into BofA.  Id.  The cases were then reassigned to
the undersigned, who scheduled oral argument on the pending
motions; but before oral argument could be heard, a tentative
settlement was reached in the securities class actions and the
ERISA actions.  Those settlements were subsequently approved by
the Court, leaving only the derivative actions to be resolved.

Separately, back in January, 2008, plaintiff N. A. Lambrecht
had sent a demand letter to the Merrill Board that had been
rejected, following which she had filed her initial Complaint on
July 24, 2008, styled as Lambrecht v. O'Neal, 08 Civ. 6582.
Because Lambrecht, unlike the plaintiffs in the Derivative
Action, had made a demand upon the Merrill Board, the Court
granted Lambrecht leave to separately litigate any motion to
dismiss the Lambrecht Complaint.  See 11/13/2008 Order.

Defendants in both actions filed motions to dismiss, and the
Court heard oral argument on January 14, 2009.  On February 17,
2009, the Court dismissed both actions on the ground that, as a
result of the stock-for-stock swap that implemented BofA's
acquisition of Merrill, plaintiffs were no longer Merrill
shareholders and therefore lacked standing to pursue derivative
claims against Merrill.  See 02/17/09 Opinion and Order.  The
dismissal was without prejudice, however, to plaintiffs, who were
now BofA shareholders, filing double-derivative actions demanding
that BofA, which had become the 100% shareholder of Merrill as a
result of the Merger, pursue the asserted claims against the
former Merrill officers and directors.

On July 27, 2009, plaintiff Miriam Loveman, the named
plaintiff in the consolidated actions that comprise the
Derivative Action, filed a Verified Third Amended Shareholder

4

Derivative and Class Action Complaint ("Third Amended Complaint")
that repleaded her claims as a double derivative action;
similarly, on September 29, 2009, plaintiff Nancy Lambrecht filed
a new, double derivative action under docket number 09 Civ.
8259.[2]  Defendants in both actions again moved to dismiss,
claiming that plaintiffs still lacked standing unless they could
show (a) that they were shareholders of BofA at the time of the
underlying Merrill transactions complained of, and (b) that BofA
itself was a shareholder of Merrill during the same period.
Skeptical of these objections, but finding that Delaware law
provided unsatisfactory guidance on these questions, the Court
certified both issues to the Delaware Supreme Court.  See
03/09/2010 Memorandum Order.  On August 27, 2010, the Delaware
Supreme Court held that neither of the aforementioned showings
was required.  See Lambrecht v. O'Neal, 3 A.3d 277 (Del. 2010).

      After the Delaware Supreme Court rendered its decision, the
Court granted both plaintiffs leave to amend their complaints if
they wished.  Plaintiff Lambrecht filed an Amended Complaint on
September 14, 2010, and the defendants named therein subsequently
filed motions to dismiss.  In the Derivative Action, on the other
hand, plaintiff Loveman declined the opportunity to amend and

---

[2] Following the Merger, Lambrecht had sent a demand letter to the
BofA Board on November 10, 2008, and had renewed her demand on
January 6, 2009.  On January 23, 2009, Lambrecht had made a

rested on her Third Amended Complaint.  The Derivative Action
parties then submitted supplemental briefing addressing the
impact of the Delaware Supreme Court's decision. The Court heard
oral argument on both the Lambrecht motion to dismiss and the
Derivative Action supplemental briefing on December 14, 2010.

## Discussion

### 1.  The Derivative Action

With this lengthy background in mind, the Court turns first
to the Derivative Action.  In her Third Amended Complaint ("3d
Am. Compl."), plaintiff Loveman alleges that Merrill was the lead
underwriter of billions of dollars of CDOs secured by risky,
undercollateralized subprime mortgages.  3d Am. Compl. ¶¶ 20, 98-
101.  She alleges that the individual defendants named in the
complaint -- who were directors and officers of Merrill at the
times of some or all of these underwritings -- were aware of the
decline in demand for CDOs and the risks posed by Merrill's
overexposure to CDO securities, but that they nonetheless ignored
repeated warnings from Merrill's own analysts and executives to
lower Merrill's exposure.  Id. ¶¶ 108, 112, 118, 121, 188, 189.
Instead, plaintiff alleges, the individual defendants further
escalated Merrill's CDO exposure despite the risk.  She alleges,
for example, that in 2005 the individual defendants caused

---

demand upon the board of the new Merrill subsidiary.  All these
demands were rejected.

Merrill to begin purchasing the AAA tranches of the CDO
securities with its own capital to ensure continued receipt of
lucrative underwriting fees, id. 112; that in January 2007 they
caused Merrill to purchase First Franklin bank to gain access to
an even larger number of subprime mortgages, id. ¶ 124; and that
in April 2007 they authorized a $6 billion Stock Repurchase Plan
that allowed Merrill to waste a substantial amount of capital on
repurchases at what the Merrill Defendants knew or should have
known were artificially inflated prices, id. ¶¶ 150-55.

Plaintiff alleges that by the end of June 2007, Merrill had
accumulated at least $43 billion in net exposure to CDO
securities and subprime mortgages. Id. ¶ 132. At that point,
the credit "crunch" intensified and demand for CDOs completely
stagnated. Id. ¶ 131. Plaintiff alleges that the individual
defendants' wrongful conduct forced Merrill to write down more
than $8 billion in the value of its CDOs and led to a $2.2
billion loss in the third quarter of 2007 alone. Id. ¶ 24. This
escalated still further to a $10.3 billion loss in the fourth
quarter. Id. ¶ 237. (The first of the lawsuits now consolidated
as the Derivative Action was filed in late 2007.)

The huge write-downs and losses continued into 2008, leading
ultimately to what plaintiff alleges was defendants' "brokering a
panic sale" of Merrill to BofA on September 14, 2008. Id. at p.

139.  Plaintiff alleges that the Merger was approved within a period of less than 48 hours without any substantive due diligence by the BofA Board.  Id. ¶¶ 4, 291.  The terms of the Merger Agreement included indemnification and insurance provisions that insulated the individual defendants from liability "to the fullest extent permitted by applicable law." Id. ¶ 5 (quoting Merger Agreement at ¶ 6.6).

On November 3, 2008, Merrill Lynch and BofA filed joint proxy statements with the SEC on Schedule 14A (the "Joint Proxy") seeking shareholder approval for the Merger; this Joint Proxy failed to disclose that Merrill's losses were even greater than previously revealed and that the Merrill and BofA Boards had approved Merrill's payment of billions of dollars in bonuses to Merrill employees, to be paid just prior to the Merger's taking effect on January 1, 2009.  Id. ¶¶ 303-06.  Relying on the materially misleading Joint Proxy, the shareholders of Merrill and BofA voted in favor of the Merger on December 5, 2008.  Id. ¶¶ 10-14, 303-06, 309.

Plaintiff still further alleges that Merrill's losses continued to "spiral[] out of control" in the period between the agreement to merge in September, 2008 and the vote of the two companies' shareholders in early December, yet no action was taken to revise the Joint Proxy or inform shareholders.  Id. ¶ 9.

8

Plaintiff alleges that by mid-November, prior to the shareholder votes on December 5, 2008, Merrill's pre-tax quarterly losses approached $9 billion and swelled to $19 billion by December 9, 2008. Id. Faced with these unexpected losses, BofA's CEO Kenneth Lewis informed then-Secretary of Treasury Henry Paulson and Federal Reserve Chairman Ben Bernanke that BofA would seek to cancel the Merger pursuant to a Material Adverse Change ("MAC") clause in the Merger Agreement. Id. ¶ 10. However, Paulson and Bernanke advised Lewis that if BofA invoked the MAC, BofA's management and Board would be replaced. Id. ¶ 11.

> Consequently, although the breaches of fiduciary duty by Merrill Lynch's directors and officers had caused Merrill billions of dollars in damages, including the grant of $3.6 billion in wholly unearned, undeserved and wasteful bonus compensation; and although BofA had full knowledge of Merrill's breaches of fiduciary duty and breaches of covenants and warranties in the Merger Agreement, which would have enabled BofA to terminate the Merger Agreement; the BofA Board elected to proceed with closing the Merger, indemnifying all Merrill directors and officers, and waiving, in violation of their fiduciary duties, the ability of BofA to directly pursue Merrill Lynch's claims post-Merger against Merrill's officers and directors by providing the Merrill officers and directors with a waiver defense.

Id. ¶ 12. The Merger was consummated on January 1, 2009. Id.

Based on these allegations, the Third Amended Complaint alleged twelve causes of action (Counts I-XII), all but one of which (Count XII) related to the pre-Merger activities, plus five additional claims (Counts XIII-XVII) based on activities occurring in connection with the Merger and its approval.

9

However, as part of a separate settlement of a putative class action (<u>County of York Employees Retirement Plan v. Merrill Lynch & Co., Inc.</u>, CA. No. 4066-VCN) in the Delaware Court of Chancery, Counts XIII-XVIII of the Third Amended Complaint were dismissed with prejudice, on consent, on October 20, 2009.  <u>See</u> 10/20/09 Stipulation and Order.  There thus remain in plaintiff's Third Amended Complaint the following twelve causes of action: Count I: "Breach of Fiduciary Duties of Care, Loyalty and Good Faith" (against the Merrill Defendants[3]); Count II: "Corporate Waste" (against E. Stanley O'Neal and the Merrill Director Defendants[4]);

---

[3] The Third Amended Complaint defines the "Merrill Defendants" as the "Merrill Officer Defendants" (defined in this footnote), the "Insider Selling Defendants" (defined in footnote 4) and the "Merrill Director Defendants" (defined in footnote 5). The "Merrill Officer Defendants" are: (1) E. Stanley O'Neal, Merrill's CEO from 2002 to October 30, 2007; (2) Ahmass L. Fakahany, Merrill's COO from May 2007 to February 1, 2008, and Merrill's Co-President from May 16, 2007 to February 1, 2008; (3) Gregory J. Fleming, Merrill's President and COO at all relevant times and its Executive Vice President from October 2003 to May 2007; (4) Jeffrey N. Edwards, Merrill's Senior Vice President and CFO from March 2005 to December 2007; and (5) John A. Thain, Chairman and CEO of Merrill from 2007 to January 22, 2009.

[4] The "Merrill Director Defendants" are: (1) John A. Thain, Chairman and CEO of Merrill from 2007 to January 22, 2009; (2) Carol T. Christ, Member of Merrill's Board from 2007 to January 1, 2009; (3) Armando M. Codina, Member of Merrill's Board from 2005 to January 1, 2009; (4) Virgis W. Colbert, Member of Merrill's Board since 2006 and Member of BofA's Board as of January 28, 2009; (5) Alberto Cribiore, Member of Merrill's Board from 2003 to January 1, 2009; (6) John D. Finnegan, Member of Merrill's Board from 2004 to January 1, 2009; (7) Judith Mayhew Jonas, Member of Merrill's Board from 2006 until January 1, 2009; (8) Joseph W. Prueher, Member of Merrill's Board since 2001 and Member of BofA's Board from January 28, 2009 to June 17, 2009;

Count III: "Abuse of Control" (against the Merrill Defendants);

Count IV: "Gross Mismanagement" (against the Merrill Defendants);

Count V: "Contribution, Indemnification and Declaratory Relief"

(against the Merrill Defendants); Count VI: "Aiding and Abetting

Breach of Fiduciary Duty" (against the Merrill Defendants); Count

VII: "Violations of Section 10(b) and Rule 10b-5 of the

Securities Exchange Act of 1934" (against the Merrill

Defendants); Count VIII: "Breaches of their Duties of Care,

Loyalty, and Candor in Connection with the Purchases of Merrill

Lynch Stock by Merrill Lynch Under the Stock Repurchase Plan"

(against the Merrill Defendants); Count IX: "Breach of Fiduciary

Duties for Insider Selling and Misappropriation of Information"

(against the Insider Selling Defendants[5]); Count X: "Violation of

the Exchange Act §10(b) and Rule 10b-5" (against the Insider

Selling Defendants); Count XI: "Unjust Enrichment" (against the

Merrill Defendants); and Count XII: "Corporate Waste" (against

John A. Thain, Gregory J. Fleming and the Director Defendants).

---

(9) Ann N. Reese, Member of Merrill's Board from 2004 to January
1, 2009; (10) Charles O. Rossotti, Member of Merrill's Board
since 2004 and Member of BofA's Board as of January 28, 2009; and
(11) Aulana L. Peters, Member of Merrill's Board from 1994 to
January 1, 2009.

[5] The "Insider Selling Defendants" are: (1) E. Stanley O'Neal,
Merrill's CEO from 2002 to October 30, 2007; (2) Ahmass L.
Fakahany, Merrill's COO from May 2007 to February 1, 2008, and
Merrill's Co-President from May 16, 2007 to February 1, 2008; and
(3) Gregory J. Fleming, Merrill's President and COO at all

As already noted, no demand was made on any board before the
Third Amended Complaint was filed; rather, plaintiff Loveman
alleges that making a demand would have been futile.
Preliminarily, "Nominal Defendants" Merrill and BofA move to
dismiss plaintiff's Third Amended Complaint on the ground that,
even though the complaint alleges demand futility with respect to
the BofA Board, plaintiff has failed to plead demand futility
with respect to the board of the new Merrill subsidiary.  See
Supplemental Memorandum of Law of Nominal Defendants Merrill
Lynch & Co., Inc. and Bank of America Corporation in Further
Support of Their Motion to Dismiss the Amended Complaint at 16-
17.  Defendants purport to find such a requirement in the
following language from the Delaware Supreme Court's recent
decision in Lambrecht, 3 A.3d at 286 n.31:

> In [Rales v. Blasband, 634 A. 2d 927 (Del. 1993),] this Court
> did identify two of [the procedural requirements that must be
> satisfied for a shareholder to proceed double derivatively],
> both relating to a pre-suit demand. With respect to the
> subsidiary, we held that "[a] plaintiff in a double derivative
> suit is still required to satisfy the Aronson [v. Lewis] test
> in order to establish that demand on the subsidiary's board is
> futile." Rales, 634 A.2d at 934 (emphasis in original). With
> respect to the parent company, we held that a plaintiff
> seeking to sue double derivatively must plead facts with
> sufficient particularity to create a reason to doubt that "as
> of the time the complaint is filed, the [parent company] board
> of directors could have properly exercised its independent and
> disinterested business judgment in responding to a [Court of
> Chancery Rule 23.1] demand. If the derivative plaintiff
> satisfies this burden, then demand will be excused as futile."

relevant times and its executive Vice President from October 2003
to May 2007.

Id.

In response, plaintiff first argues that she *has* pled demand futility with respect to the new Merrill subsidiary.  Paragraph 414 of the Third Amended Complaint states: "Plaintiff did not make a demand on the current Merrill board of directors because: (1) all such directors serve at the pleasure of the BofA Board; and (2) such a demand is not required under Delaware law subsequent to the consummation of the Merger."  3d Am. Compl. ¶ 414.

Plaintiff further argues that, in any event, she is not required to plead demand futility with respect to the new Merrill subsidiary.  She argues that, "[a]s the 100% shareholder of Merrill, BofA has the power to direct the post-merger Merrill Board to take any action, including initiating a lawsuit against the pre-merger Merrill officers and directors for the conduct alleged in the Complaint."  See Plaintiff Miriam Loveman's Memorandum of Law in Opposition to the Supplemental Memorandum of Law of Nominal Defendants Merrill Lynch & Co., Inc. and Bank of America Corporation in Further Support of Their Motion to Dismiss the Amended Complaint at 6.  Moreover, she argues that when the Third Amended Complaint was filed on July 27, 2009, BofA was the sole shareholder of Merrill; consequently, she had no right at that time to make a demand of the Merrill Board, and any such

13

demand would properly have been ignored by the Merrill board
because she was not a shareholder of Merrill.  Id.  Plaintiff
argues that the Delaware Court implicitly recognized the
absurdity of requiring plaintiff to allege demand futility as to
the Merrill board of directors when it found that "BofA's sole
ownership, alone and without more, empowers and entitles BofA,
acting through its own board of directors or authorized officers,
to use its direct control to cause its wholly owned subsidiary,
Merrill Lynch, to do what is necessary to enforce Merrill Lynch's
premerger claim."  Lambrecht, 3 A.3d at 289.[6]

    Post-Lambrecht cases have confirmed the logic of plaintiff's
reasoning.  In Hamilton Partners, L.P. v. Englard, the Delaware
Court of Chancery recognized that the Lambrecht opinion "openly
rests on the practical ability of the sole stockholder to
exercise control over the subsidiary."  11 A.3d 1180, 1205 (Del.
Ch. 2010).  The Hamilton Court therefore concluded that the
"pragmatic view of the double derivative action adopted in

---

[6] See also Lambrecht, 3 A.3d at 288 ("Requirement (2)--that BofA
must have owned Merrill Lynch stock at the time of the pre-merger
wrongdoing--incorrectly presupposes that to be legally capable of
enforcing Merrill Lynch's pre-merger claim, BofA must proceed
derivatively against the persons who were Merrill Lynch directors
at the time of the alleged wrongdoing. That assumption ignores
the legal precept, confirmed in Lewis v. Anderson and its
progeny, that as a result of the merger, Merrill Lynch's claim
becomes the property of BofA as a matter of statutory law. As the
sole owner of Merrill Lynch, BofA is not required to proceed
derivatively; it may enforce that claim by the direct exercise of
its 100 percent control.") (footnote omitted).

14

Lambrecht has significant implications for pleading demand

futility in a double derivative action":

> Because the parent corporation determines, through its 100
> percent control, whether or not the subsidiary will sue,
> "there is no basis in law or logic" to require a separate
> demand futility analysis at the subsidiary level. 3 A.3d at
> 288-89. To do so would treat the parent corporation as "if it
> were a minority shareholder" that only could proceed on behalf
> of its subsidiary by establishing demand futility, when in
> reality the parent corporation simply directs its subsidiary
> to file suit. Id. For this reason, the Lambrecht Court
> repeatedly observed that in a double derivative action
> involving a wholly owned subsidiary, a stockholder plaintiff
> only must plead demand futility (or otherwise satisfy Rule
> 23.1) at the parent level.

Id. at 1206-07.  Accordingly, the court concluded that "[p]ost-

Lambrecht, a plaintiff in a double derivative action brought on

behalf of a wholly owned subsidiary need only show demand

futility or otherwise satisfy Rule 23.1 at the parent level."

Id. at 1207.  A court in this federal district, applying Delaware

law (which governs the issues here relevant), recently reached

the same conclusion.  See In re Bear Stearns Companies, Inc.

Securities, Derivative, and Erisa Litigation, No. 08 MDL 1963,

2011 WL 223540, at *102 (S.D.N.Y. Jan. 19, 2011).

Absent unusual circumstances, this Court must apply the

ruling in Hamilton (the highest Delaware court to rule on the

issue); and, in any event, this Court is in complete agreement

with the interpretation of Delaware law set forth in Hamilton and

in In re Bear Stearns.  This Court therefore concludes that

Loveman need allege futility only with respect to the BofA Board.[7]

With this preliminary issue resolved, the Court must now consider whether plaintiff has pled with particularity facts showing that a demand on the BofA Board would have been futile. Fed. R. Civ. P. 23.1(b)(3); Del. Ch. Ct. R. 23.1(a); Brehm v. Eisner, 746 A.2d 244, 254 (Del. 2000). In Rales v. Blasband, 634 A.2d 927 (Del. 1993), the Delaware Supreme Court held that in a double derivative suit, demand against the parent board will be excused as futile if "the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." 634 A.2d at 934. The board "must be able to act free of personal financial interest and improper extraneous influences." Id. at 935. A director is "interested" if he "will receive a personal financial benefit from a transaction that is not equally shared by the stockholders" or "a corporate decision will have a materially

---

[7] Moreover, even assuming arguendo that plaintiff were required to allege demand futility as to the Merrill subsidiary, plaintiff's recitation that she did not make a demand on the board of the Merrill subsidiary because "all such directors serve at the pleasure of the BofA Board" is, in the unusual circumstances of this case, a satisfactory pleading of demand futility with respect to the current Merrill board.

16

detrimental impact on a director, but not on the corporation and the stockholders." Id. at 936. By contrast, however, the "mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterested of directors," but must rise to "a substantial likelihood." Id. (quoting Aronson v. Lewis, 473 A.2d 805, 815 (Del. 1984)).

Plaintiff argues that members of the BofA Board could not make a disinterested and independent assessment of a demand to pursue the asserted claims against the Merrill Defendants because a majority of the Board on the date the Third Amended Complaint was filed purportedly faced a "substantial likelihood" of liability for events related to the Merger. On the date the Third Amended Complaint was filed, July 27, 2009, the BofA Board consisted of sixteen members, two of whom were on Merrill's pre-Merger board and another ten of whom were on BofA's pre-Merger board; thus, plaintiff alleges that "the vast majority of the current members of the BofA Board approved the Merger," 3d Am. Compl. ¶ 397, and have potential liability resulting from that approval. Specifically, plaintiff alleges that these members agreed to pay "$3.6 billion in 2008 bonuses to Merrill lynch [sic] officers and employees without determining the amount of such bonuses or to whom they would be awarded before approving

17

them," id. ¶ 401; authorized the issuance of the Joint Proxy that failed to disclose material facts concerning the 2008 Merrill bonuses and Merrill's fourth quarter losses, id. ¶¶ 402-03; and failed to terminate the Merger Agreement despite a "material change" because of warnings from Secretary Paulson that the Government would remove the Board members, id. ¶¶ 404-06. Plaintiff alleges that in order to pursue the claims against the Merrill Defendants, the BofA Board members would have to admit these failings and thereby render themselves liable for securities law violations and breaches of their fiduciary duties. See id. ¶¶ 402-405.

But, in fact, no such admissions would be required.  The legal adequacy of a complaint's allegations of demand futility must be assessed on a claim-by-claim basis, see, e.g., In re Citigroup Inc. S'holder Derivative Litig., 964 A.2d 106, 121 (Del. Ch. 2009); MCG Capital Corp. v. Maginn, No. 4521-CC, 2010 Del. Ch. LEXIS 87, at *64 (Del. Ch. May 5, 2010), and, with the exception of Count XII (discussed below), all the remaining Counts of the Third Amended Complaint relate to pre-Merger activity, as to which the overwhelming majority of the members of the BofA Board have no potential liability.  Put another way, while all of the Counts contain boilerplate incorporating by reference all of the previous allegations, the first eleven

18

Counts are carry-overs from the original (pre-Merger) complaints, whereas the last five counts (Counts XIII-XVII), which are expressly premised on the events surrounding the Merger, were all previously dismissed, with prejudice, as part of a settlement. Compare 3d Am. Compl. ¶¶ 416-494 (Counts I-XII) with ¶¶ 495-565 (Counts XIII-XVII).

Plaintiff fails to explain why the BofA Board would be incapable of performing a disinterested assessment of a demand to sue the Merrill Defendants for their *pre-Merger* conduct (mostly relating to CDO underwritings undertaken in 2006-2007 and stock repurchases or sales also made in 2007). The vast majority of the members of the BofA Board at the time of the filing of the Third Amended Complaint had no connection to this conduct and face no personal liability whatsoever with respect to these claims. Thus, plaintiff has failed to demonstrate demand futility with respect to any of the claims of the Third Amended Complaint that relate to pre-Merger conduct, i.e., Counts I-XI.[8]

---

[8] See White v. Panic, 793 A.2d 356, 366 (Del. Ch. 2000) (finding demand not excused where a majority of the directors did not have any personal interest in the underlying transactions), aff'd, 783 A.2d 543, 546 (Del. 2001); Langeland v. JP Morgan Chase & Co., C.A. No. 4970-VCS, at *133-34 (Del. Ch. Mar. 1, 2010) ("[T]he people who inherited [the litigation against Bear Stearns' managers] are JP Morgan's board, none of whom are [sic] implicated by the plaintiff in any way of any wrongdoing that went on at these funds . . . . There is nothing in the record that suggests that the . . . JP Morgan board and management don't have every incentive to approach the litigation regarding the

The sole count of the Complaint that was not previously dismissed and that relates expressly to Merger-related actions, Count XII, alleges corporate waste in connection with the bonus payments.  As an initial matter, defendants argue that this claim is not properly before the Court because it was not pled in plaintiff's Second Amended Complaint, and the Court's February 17, 2009 Order dismissing that complaint specified that plaintiff could replead based only on the "same underlying allegations." See 02/17/09 Opinion and Order at 7.

While this might be a sufficient reason in itself to dismiss Count XII, the Court need not reach that issue because the Court finds that plaintiff has failed in any case to demonstrate demand futility with respect to Count XII.  It is true that that Count, brought against the Merrill Directors and two individual Merrill defendants for approving such large bonuses in the face of huge losses, also alleges that the BofA Board approved the bonus payments "without determining the amount of such bonuses or to whom they would be awarded before approving them."  3d Am. Compl. ¶ 401.  However, a lack of diligence without a personal interest in the bonus payments is insufficient to establish a breach of duty subjecting any member of the BofA Board to liability.  And here there is no such liability, because

Bear Stearns fund in the way that is most advantageous to JP Morgan.").

the BofA charter contains an exculpatory clause limiting the personal liability of BofA's directors to "the fullest extent permitted by the General Corporation Law of the State of Delaware."  See Affidavit of Eric M. Roth (dated September 21, 2009) Ex. B at 25 ¶ 6.

Specifically, Section 102(b)(7) of Delaware General Corporation Law allows for a provision "eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title[9]; or (iv) for any transaction from which the director derived an improper personal benefit."  It is undisputed that the BofA directors received no personal benefit from Merrill's approval of bonuses for Merrill employees.  More generally, BofA's purported failure to conduct adequate due diligence before approving the bonus payments implicates the duty of care rather than the duty of loyalty,

---

[9] Section 174 concerns liability of directors for "unlawful payment of dividend or unlawful stock purchase or redemption; exoneration from liability; contribution among directors; [and] subrogation."

21

especially as there are no allegations of bad faith in this regard.  Accordingly, plaintiff has failed to state allegations sufficient to create a reason to doubt that the BofA Board was capable of properly exercising its independent and disinterested business judgment in responding to a demand to pursue Count XII.[10]

Again, it is important to stress that demand futility must be assessed with respect to the particular causes of action that the board would otherwise be asked to consider if demand were made.  The fact that the Third Amended Complaint alleges that the members of the BofA board allegedly shared liability with the Merrill defendants for other alleged wrongdoings related to the Merger (such as the failure to adequately disclose Merrill's late 2008 losses, the failure to invoke the "material change" clause, etc.) is an insufficient basis on which to premise demand futility as to claims that constitute Counts I-XII.  Indeed, were it otherwise, a plaintiff could always avoid having to make a

---

[10] See also In re Bank of America Corp. Secs., No. MD 2058 (PKC), 2010 U.S. Dist. LEXIS 89199, at *196-97 (S.D.N.Y. Aug. 27, 2010) ("Essentially, plaintiffs' allegations amount to a claim that the BofA board's review and approval of the merger was inadequate. That, however, cannot form the basis of a claim that the directors acted in bad faith. . . . Although the BofA board acted quickly in approving the merger, the Derivative Complaint does not allege that they acted disloyally, or that they were so inadequately informed that they could not exercise their business judgment.").

demand in a double derivative situation by merely alleging that
the members of the board of the acquiring company had some
knowledge at the time of acquisition of the prior wrongdoings
alleged against the officers and directors of the acquired
company. Delaware law, which governs demand futility in this
case, requires far more than such boot-strapping to excuse the
obligation of a demand.[11]

In a variation on such boot-strapping, plaintiff also
argues that demand would be futile because, "[p]ursuant to the
Merger Agreement, a majority of the BofA Board caused BofA to
agree to indemnify and hold harmless each present and former
director and officer of Merrill Lynch from liability for matters
arising out of or prior to the completion of the merger to the
fullest extent provided by applicable law" and agreed "to
maintain in place, for a period of six years after completion of
the merger, Merrill Lynch's current directors' and officers'
liability insurance policy or equivalent policies." 3d Am.
Compl. ¶ 399 (emphasis removed). Plaintiff alleges that these
provisions in the Merger Agreement "effectively waived on behalf

---

[11] See also Seminaris v. Landa, 662 A.2d 1350, 1354-55 (Del. Ch.
1995) (rejecting contention that demand was excused as to
fiduciary duty claims against directors because federal
securities claims were pending against those same directors, and
holding that "[t]his is not the rare case, envisioned by the
Supreme Court in Aronson, where defendants' actions were so
egregious that a substantial likelihood of director liability
exists").

23

of BofA the ability of BofA to pursue the claims of Merrill Lynch alleged herein" and "made BofA directly liable for the costs of recovery on any such claims by BofA based on the insured versus insured exclusion contained in typical directors' and officers' insurance policies."   Id.

However, these provisions are standard in merger agreements and, under Delaware law, do not constitute grounds for questioning the BofA Board's disinterestedness or independence. See, e.g., In re Talley Indus., Inc. S'holders Litig., No. Civ.A. 15961, 1998 WL 191939, at *10 n.4 (Del. Ch. Apr. 13, 1998) ("The indemnification provisions evince no sinister motive on the part of the board. Rather, they are of the type normally found in these situations. The mere existence of this provision without substantial additional evidence is insufficient even to raise an inference that the defendants acted with an improper purpose."); Globis Partners, L.P. v. Plumtree Software, Inc., No. 1577-VCP, 2007 WL 4292024, at *8 (Del. Ch. Nov. 30, 2007) ("There is no basis for inferring the receipt of indemnification benefits is material, or likely to taint the Individual Defendants' judgment.").   Moreover, these provisions do not constitute a waiver of BofA's derivative claims because, under Section 145(b) of Delaware General Corporation Law, indemnification would not apply if a person is "adjudged to be liable to the corporation."

24

Additionally, the "insured versus insured exclusion" in the
insurance policies is irrelevant to the great majority of the
members of the BofA Board, all but two of whom had no relation to
Merrill, and courts have held that such provisions do not
establish director interest in any event. Halpert Enters. Inc. v.
Harrison, 362 F. Supp. 2d 426, 433 (S.D.N.Y. 2005) ("That the
insurance policy indemnifying defendants would not cover their
liability were the corporation itself to bring suit against them
is also not a sufficiently particular basis for inferring demand
futility."). Finally, to the extent that the indemnification
relates to Merger and post-Merger activities, these, as noted,
are irrelevant to Counts I-XI.

Further still, plaintiff argues that demand would be
futile because the BofA Board "prejudged the merits of this
action," as demonstrated by the following statement in the Joint
Proxy:

> Merrill Lynch and Bank of America believe that the class
> claims asserted by Merrill Lynch stockholders relating to the
> merger are without merit and intend to contest them
> vigorously. Upon consummation of the merger, the plaintiffs
> who have asserted derivative claims on behalf of Merrill
> Lynch may lose standing to assert such claims on behalf of
> Merrill Lynch because they will no longer be Merrill Lynch
> stockholders.

Compl. ¶ 407. However, it is clear from the face of this
statement that the BofA Board believed that the (now-settled)
*class claims* were without merit, not the derivative claims that

25

are the subject of this action.  Additionally, the fact that the
BofA Board was aware that the Merrill Board had already rejected
shareholder demands is irrelevant.  As stated in the Court's
February 17, 2009 Opinion and Order, the BofA Board is altogether
different from the Merrill Board, see 02/17/09 at 7, and
Merrill's rejection of shareholder demands says nothing about
whether the BofA Board prejudged the merits of plaintiff's double
derivative claims.

Plaintiff also argues that there is "reasonable doubt as
to whether the BofA directors could independently and
disinterestedly consider a demand to sue other members of the
BofA Board due to disabling personal and professional conflicts
of interest."  3d Am. Compl. ¶ 411.  These conflicts include:
Merrill Defendant Reese formerly served on the CBS Corporation
board with BofA director Gifford; Gifford currently serves on CBS
Board with BofA director Countryman; BofA director Bramble served
as a senior executive of MBNA Corporation when it was acquired by
BofA and was admittedly not an independent director in 2006-2007;
and BofA directors Gifford, Countryman, and May serve as trustees
of NSTAR, of which May is Chairman, President, and CEO.  Id.

This argument is without merit.  The relationships between
BofA directors are irrelevant to the assessment of whether the
BofA Board is sufficiently independent of the former Merrill

26

officers and directors.  The sole relationship alleged between a
BofA and a Merrill director — the former concurrent CBS Board
membership of Reese and Gifford — is insufficient to show
Gifford's lack of independence.  See Beam ex rel. Martha Stewart
Living Omnimedia, Inc. v. Stewart, 845 A.2d 1040, 1050 (Del.
2004) ("[T]o render a director unable to consider demand, a
relationship must be of a bias-producing nature.  Allegations of
mere personal friendship or a mere outside business relationship,
standing alone, are insufficient to raise a reasonable doubt
about a director's independence.").  Nor does this one instance
even remotely suggest that the independence of the Board as a
whole is compromised.

Finally, plaintiff argues that the BofA Board's rejection of
post-Merger demand in Lambrecht resolves the issue of whether a
demand would have been futile.  Compl. ¶ 412.  However, under
Delaware law, a prior demand rejection does not demonstrate
futility unless plaintiff can demonstrate that the first refusal
was wrongful.  See Kaplan v. Peat, Marwick, Mitchell & Co., 529
A.2d 254, 257 (Del. Ch. 1987), aff'd in part and rev'd in part on
other grounds, 540 A.2d 726 (Del. 1988)("The plaintiffs' position
in their complaint is that because Chase's Board has previously
rejected a prior demand by another shareholder that PMM be sued,
a second such demand by plaintiffs would be futile. That argument

27

is legally insufficient, because plaintiffs have not alleged . .
. that the Board's refusal of the prior demand was wrongful.").
It is to this very question that the Court now turns.

### 2. The Lambrecht Action

The factual allegations in the Lambrecht Amended Complaint
are largely the same as those in the Derivative Action, although
the Lambrecht complaint includes some Merger-related counts and
some BofA defendants.  Specifically, the Amended Complaint pleads
the following causes of action: Count I: "Breach of Fiduciary
Duty – Investment Banking Activities" (against the Subprime
Defendants[12]); Count II: "Breach of Fiduciary Duty – Concealment
of the True Financial Condition of the Company" (against the
Subprime Defendants and John A. Thain); Count III: "Aiding and
Abetting Breaches of Fiduciary Duty – Concealment of the True
Financial Condition of the Company" (against the BofA

---

[12] The "Subprime Defendants" are: (1) Jeffrey N. Edwards,
Merrill's Senior Vice President and Chief Financial Officer until
December 2007; (2) Ahmass L. Fakahany, Merrill's Co-Chief
Operating Officer and Co-President from May 2007 until February
2008; (3) Do Woo "Dow" Kim, Merrill's Executive Vice-President
and Co-President of Merrill's Global Markets and Investment
Banking Group until May 2007; (4) Douglas J. Mallach, Merrill's
Co-head of Fixed Income, Currencies & Commodities ("FICC") in the
Americas until October 2007; (5) E. Stanley O'Neal, Merrill's
Chairman and CEO through October 30, 2007; (6) Osman Semerci,
Merrill's Global Head of FICC from mid-2006 until October 2007;
(7) Gregory J. Fleming, Merrill's Co-President of the Global
Markets and Investment Banking Group until November 2007,
Merrill's COO from May 16, 2007 to February 1, 2008, and
Merrill's President and COO from February 1, 2008 to January
2009.

Defendants[13]; Count IV: "Waste of Corporate Assets – Acquisition of CDOs" (against the Subprime Defendants); Count V: "Breach of Fiduciary Duty – Insider Selling" (against the Insider Selling Defendants[14]); Count VI: "Unjust Enrichment/Constructive Trust" (against the Subprime Defendants and John A. Thain); Count VII: "Breach of Fiduciary Duty – Improper Bonuses" (against the Bonus Defendants[15]; Count VIII: "Waste of Corporate Assets – Improper Bonuses" (against the Bonus Defendants); Count IX: "Aiding and Abetting Breaches of Fiduciary Duty – Improper Bonuses" (against Defendants Lewis and Curl); and Count X: "Unjust Enrichment/ Constructive Trust" (against the Bonus Defendants).

As previously explained, the distinguishing element of the Lambrecht action is the fact that the plaintiff made several demands upon the various boards.  On January 22, 2008, plaintiff

---

[13] The "BofA Defendants" are: (1) Gregory L. Curl, BofA's Global Strategic Development and Planning Executive until June 2009 and BofA's Chief Risk Officer as of the filing of the complaint; (2) Brian T. Moynihan, BofA's General Counsel from December 2008 to January 2009 and BofA's CEO as of the filing of the complaint; (3) Joseph L. Price, BofA's CFO at all pertinent times until January 2010; and (4) Kenneth D. Lewis, BofA's CEO at all pertinent times and Chairman of the BofA Board until April 29, 2009.

[14] The "Insider Selling Defendants" are: (1) Ahmass L. Fakahany; (2) Do Woo "Dow" Kim; (3) E. Stanley O'Neal; and (4) Gregory J. Fleming.

[15] The "Bonus Defendants" are: (1) John A. Thain, Merrill's CEO and Chairman from December 2007 to January 1, 2009; and (2) Gregory J. Fleming.

sent a letter to the Merrill Board demanding that it commence legal proceedings against Merrill's present and former senior management, including Stanley O'Neal and Ahmass Fakahany, in connection with the "massive, multi-year mismanagement" of Merrill. Am. Compl. ¶ 141; Am. Compl. Ex. A at 1. By letter dated May 1, 2008, the Merrill Lynch Board rejected the demand. Am. Compl. ¶ 142; Am. Compl. Ex. B. On November 10, 2008, plaintiff sent a letter to the BofA Board demanding that it cause BofA and/or Merrill to initiate legal proceedings against Merrill's present and former directors. Am. Compl. ¶ 144. On January 6, 2009, plaintiff renewed her demand. Id. ¶ 145; Am. Compl. Ex. C. On January 23, 2009, plaintiff made a demand upon the new Merrill subsidiary that incorporated the requests made in the previous demands upon the BofA and Merrill Boards, and also brought to the attention of the BofA and Merrill Boards the preliminary settlement of the factually-related securities fraud litigation. Am. Compl. ¶ 146; Am. Compl. Ex. E. On July 15, 2009, BofA informed plaintiff that it would not cause Merrill to pursue the claims belonging to Merrill. Plaintiff argues that BofA's refusal of her demands was wrongful.

A board's decision to reject a demand is entitled to the benefit of the business judgment rule. See, e.g., Levine v. Smith, 591 A.2d 194, 209 (Del. 1991), overruled in part on other

grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000).  The
business judgment rule presumes that the board made its decision
"on an informed basis, in good faith and in the honest belief
that the action taken was in the best interests of the company."
Spiegel v. Buntrock, 571 A.2d 767, 774 (Del. 1990).  To
demonstrate that the board's refusal of a demand was wrongful,
"the shareholder plaintiff is required to allege with
particularity legally sufficient reasons to call into question
the validity of the Board of Directors' exercise of business
judgment."  Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz Al
Saud, 903 F. Supp. 452, 457 (S.D.N.Y. 1994) (internal quotation
marks and citations omitted), aff'd, 61 F.3d 8 (2d Cir. 1995).
Under Delaware law, the directors' decision "will be shielded by
the business judgment rule unless the shareholder plaintiff can
carry the considerable burden of showing that the decision not to
bring the lawsuit was made in bad faith or was based on an
unreasonable investigation."  RCM Sec. Fund, Inc. v. Stanton, 928
F.2d 1318, 1328 (2d Cir. 1991).  The RCM Court noted that few, if
any, plaintiffs surmount this obstacle.  Id.  See also FLI Deep
Marine LLC v. McKim, C.A. No. 4138-VCN, 2009 Del. Ch. LEXIS 56,
at *8 (Del. Ch. 2009) ("[W]here a shareholder's demand has been
refused, this Court only examines the good faith and
reasonableness of the board's investigation.").

Lambrecht contends she has "pled that the refusal was
wrongful because the Board did not give serious consideration to
her demands, as evidenced by the fact that its consideration of
the demands (if any) was commenced, and concluded, at a single
meeting, and the response was nothing more than an essentially
boilerplate rejection letter."  Plaintiff's Memorandum in
Opposition to Motions to Dismiss ("Lambrecht Opp'n") at 16
(citing Am. Compl. ¶¶ 148-49).  She further contends that BofA's
July 15, 2009 rejection letter makes no reference to any
investigation into the merit of plaintiff's claims, and upon
plaintiff's "information and belief, no such investigation took
place."  Am. Compl. ¶¶ 149-150.  According to plaintiff, while
the focus of a court's "wrongful refusal" analysis is on
procedures rather than the outcome of the investigation, "it does
not necessarily follow that the Court's inquiry should be
entirely divorced from considering the nature (if not necessarily
the merits, per se) of the underlying claims."  Lambrecht Opp'n
at 16.  Lambrecht argues that courts have recognized that there
is no such thing as a "one size fits all" generic response
appropriate for all litigation demands, and that what constitutes
a reasonable investigation will vary depending on the precise
factual circumstances.  See Baron v. Siff, No. 15152, 1997 WL
666973, at *3 (Del. Ch. Oct. 17, 1997) ("The amount of time

32

needed for a response will vary in direct proportion to the complexity of the technological, quantitative, and legal issues raised by the demand.") (internal quotation mark omitted); Miller v. Loucks, No. 91 C 6539, 1992 WL 329313, at *8 (N.D. Ill. Nov. 5, 1992) (where the underlying allegations concerned "egregious criminal conduct," the Board's "decision to refuse demand was not protected by the business judgment rule" regardless of what procedures were employed).

In this case, Lambrecht argues that given the "historic calamity that occurred at Merrill Lynch," her demand letter merited more than just a boilerplate response. Lambrecht Opp'n at 19. In support of this argument, she cites to cases in which the boards at issue performed more thorough investigations than the one seemingly undertaken in this case. See, e.g., Halpert Enters. Inc. v. Harrison, No. 07-1144-cv, 2008 WL 4585466, at *3 (2d Cir. Oct. 15, 2008). She also contends that BofA's response to her demands compares unfavorably to a contemporaneous investigation performed by largely the same BofA Board in response to similar demands; in that instance, plaintiff alleges that the BofA Board created an independent committee which conducted a detailed and extensive investigation. Am. Compl. ¶ 151. Finally, plaintiff makes a number of allegations to the effect that some of the Board members were incapable of

independently and disinterestedly considering plaintiff's demands, and also challenges the substance of the BofA Board's decision not to pursue her claims. See, e.g., Am. Compl. ¶¶ 157-169.

Plaintiff's arguments concerning the purported lack of independence of some or all of the BofA Board members are easily dispensed with. It is well-established that "where a shareholder instead chooses to make a demand upon a board of directors, she concedes the independence of a majority of the board." FLI Deep Marine LLC v. McKim, C.A. No. 4138-VCN, 2009 Del. Ch. LEXIS 56, at *8 (Del. Ch. 2009) ("The Plaintiffs in this action made presuit demand on DMT's board of directors. As a result, they have conclusively conceded the independence of the Board, and are precluded from now arguing that demand should be excused because the directors are conflicted.").[16]  Accordingly, there is no merit to the allegation that the BofA Board's refusal was wrongful because its members were not independent.

Similarly, Delaware law does not permit a plaintiff to overcome the business judgment rule simply by asserting that the substance of a board of director's decision was wrong. See Brehm

---

[16] See also Scattered Corp. v. Chicago Stock Exch., 701 A.2d 70, 76 (Del. 1997), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (2000) (once demand is made, the issue is not one of board independence but of good faith and reasonable investigation).

v. Eisner, 746 A.2d 244, 264 (Del. 2000) (substantive due care is
a concept "foreign to the business judgment rule"); Kamen v.
Kemper Fin. Servs., 500 U.S. 90, 105 (U.S. 1991) (the receipt of
a demand makes it "crystal clear to the directors of a Delaware
corporation that the decision whether to commit the corporation
to litigation lies solely in their discretion").   Thus,
plaintiff's contention that "[t]he reasons asserted by BofA for
not bringing suit as to all of the bases as alleged by Plaintiff
are not credible," Am. Compl. ¶ 165, does not implicate the
reasonableness of the Board's investigation and does not
demonstrate of itself that the BofA Board's refusal was made in
bad faith.

       The remainder of the complaint's allegations on this issue
fail to satisfy the requirements of Rule 23.1(b) of the Federal
Rules of Civil Procedure, which require the plaintiff to "state
with particularity: (A) any effort by the plaintiff to obtain the
desired action from the directors or comparable authority and, if
necessary, from the shareholders or members; and (B) the reasons
for not obtaining the action or not making the effort." See Fed.
R. Civ. P. R. 23.1(b)(3).[17]   See also Levner v. Prince Alwaleed

_____

[17] Lambrecht's allegations similarly fail to satisfy the parallel
standard of Chancery Rule 23.1, which is "either identical to or
consistent with the principles behind Federal R. Civ. P. 23.1."
Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud, 903 F.
Supp. 452, 456 n.4 (S.D.N.Y. 1994).  See also Allison on Behalf
of G.M.C. v. General Motors Corp., 604 F. Supp. 1106, 1116 n.11

Bin Talal Bin Abdulaziz Al Saud, 903 F. Supp. 452, 457 (S.D.N.Y.
1994) ("In a shareholder derivative suit, in order to conform to
the requirements of Rule 23.1, the shareholder plaintiff is
required to allege with particularity 'legally sufficient reasons
to call into question the validity of the Board of Directors'
exercise of business judgment.'") (quoting Allison on behalf of
General Motors Corp. v. General Motors Corp., 604 F. Supp. 1106,
1121 (D. Del. 1985)).

   Plaintiff's contention that the BofA Board acted in bad
faith and undertook no investigation of her claims is almost
entirely conclusory.  It is well-established that conclusory
allegations are insufficient to overcome the business judgment
rule.  See, e.g., Sterling v. Mulholland, No. 98 Civ. 3808, 1998
U.S. Dist. LEXIS 19550, at *6-8 (S.D.N.Y. Dec. 16, 1998.); Levner
v. Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud, 903 F. Supp.
452, 457 (S.D.N.Y. 1994); In re General Motors Class E Stock
Buyout Sec. Litig., 790 F. Supp. 77, 81 (D. Del. 1992)
("Plaintiffs rebut this evidence and the attending business
judgment presumption accorded a refusal of demand with

_____

(D. Del. 1985) ("In practical terms, it is important that the
result of applying Chancery Rule 23.1 is the same as the
application of Fed. R. Civ. P. 23.1. It would be disquieting if a
derivative plaintiff suing a Delaware corporation could achieve a
different answer as to whether demand is excused as futile simply
by filing, quite literally, 'across the street' in Chancery
Court."), aff'd, 782 F.2d 1026 (3d Cir. 1985).  Accordingly,
cases interpreting both standards are equally applicable to the

allegations that do no more than state, in conclusory fashion, plaintiffs' ultimate contentions: that GM's Board failed in the first instance to conduct an adequate inquiry as to the merits of the underlying transaction and failed subsequently to conduct any inquiry in response to plaintiffs' prelitigation demands."); Levine v. Smith, 591 A.2d 194, 214 (Del. 1991), overruled in part on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000); Baron v. Siff, No. 15152, 1997 Del. Ch. LEXIS 152, at *11 (Del. Ch. Oct. 17, 1997).  Yet, by way of specifics, plaintiff relies almost entirely on the text of the BofA Board's July 15, 2009 letter rejecting plaintiff's demand, a letter she describes as inadequate boilerplate.  The letter itself, however, belies plaintiff's assertions.  See Am. Compl. Ex. F.  The letter explains that before reaching its decision, "both the Audit Committee and the full BAC Board considered the potential adverse effect of pursuing the claims outlined in your letters on the defenses of BAC's wholly owned subsidiary, Merrill Lynch & Co., Inc. ('Merrill Lynch') in certain pending litigation and governmental inquiries and weighed that against the likelihood of recovering the amounts sought in those proceedings from the persons your letters propose that BAC and Merrill Lynch sue." Letter from Alice Herald, Deputy General Counsel and Corporate Secretary, to Jonathan W. Cuneo, counsel for N. A. Lambrecht

---

instant question.

(July 15, 2009) (Am. Compl. Ex. F) at 1.  The letter further
explains that Merrill was then named as a defendant in a separate
federal securities class action and in a class action alleging
violations of ERISA.  Id.  The letter notes that although Merrill
had entered into preliminary settlement agreements with respect
to these actions, each settlement remained subject to court
approval.  Id. at 2.  Additionally, objections had been filed to
both settlements, and a number of shareholders had opted out of
the proposed class.  Id.  The letter explains that Merrill also
faced "ongoing governmental inquiries relating to Merrill Lynch's
CDO business, including inquiries by agencies with the authority
to seek the imposition of various penalties against Merrill
Lynch."  Id.

    Against this background of numerous proceedings and
allegations the Board has already had occasion to consider, the
letter states:

> The Audit Committee and the BAC Board have concluded that
> commencing the litigation outlined in your letters would
> impair Merrill Lynch's defenses in these various proceedings.
> For example, your letters demand that BAC cause Merrill Lynch
> to bring suit against certain of its former officers and
> directors for, among other things, allegedly engaging "in a
> continued course of deception by concealing its risk exposure
> from investors and the public, which has subjected Merrill
> [Lynch] to considerable exposure to securities fraud claims
> and other litigation."  The plaintiffs in the securities and
> ERISA actions would likely argue that Merrill Lynch's
> assertion of such a claim constitutes an admission of
> liability by Merrill Lynch.  Moreover, to prevail against the
> former Merrill Lynch officers and directors referenced in your
> letters, Merrill Lynch would need to allege and prove facts

> similar to those that the securities and ERISA plaintiffs have
> been trying to establish in their cases.  Similarly, the
> various governmental agencies that have made inquiries with
> respect to Merrill's CDO business would likely seek to use any
> litigation papers filed by Merrill Lynch against its former
> officers and directors against Merrill Lynch itself.

Id.

The letter further explains that "[b]oth the Audit
Committee and the full BAC Board also considered the amount of
damages claimed in the pending civil litigation against Merill
Lynch and the likelihood of recovering such amounts from the
former Merrill Lynch officers and directors in the lawsuit
proposed by your letters."  Id.  In performing this cost-benefit
analysis, the BofA Board and the audit committee considered the
fact that Merrill's certificate of incorporation contains a
provision that exculpates its directors from personal liability,
except for liability due to "acts or omissions not in good faith
or which involve intentional misconduct or a knowing violation of
the law."  Id.  Additionally, the letter notes that legal theory
of "mismanagement" outlined in plaintiff's letters has been
characterized by Delaware courts as "possibly the most difficult
theory in corporation law upon which a plaintiff might hope to
win a judgment."  Id. (internal quotations omitted).  The letter
concludes that "it is not in BAC's interest to cause Merrill
Lynch to pursue such claims at this time," but notes that the
"Audit Committee will nevertheless continue to monitor these

39

proceedings." Id.

While the letter makes no mention of the amount of time the BofA Board and Audit Committee spent considering plaintiff's claims, other than its statement that the BofA Board considered plaintiff's letters "at its June 25, 2009 meeting," id. at 1, the BofA Board had already considered and rejected a similar demand by the plaintiff on May 1, 2008.  Moreover, there is every reason to believe that the BofA Board was already quite familiar with the allegations in plaintiff's letters from its consideration of the various other proceedings referred to in the letters.

Under these circumstances, it does not appear that the investigation and analysis described in the BofA rejection letter was unreasonable or conducted in bad faith, especially as there is no prescribed procedure or form a Board must follow when responding to a demand letter.[18]  Since plaintiff has offered nothing but the text of this letter and her conclusory assertions that the BofA Board's investigation was inadequate, the Court concludes that the allegations in plaintiff's Amended Complaint

---

[18] See, e.g., Baron v. Siff, No. 15152, 1997 Del. Ch. LEXIS 152, at *10 (Del. Ch. Oct. 17, 1997) ("There is no prescribed procedure that a Board must follow when investigating a demand under Rule 23.1. The refusal letter's failure to state that the Board held a meeting and failure to contain a point-by-point response to all allegations in the demand letter does not stand for the proposition that the Board did not consider the demand before refusing it.") (footnote omitted).

are insufficient to overcome the presumption of the business
judgment rule.

Plaintiff's makes two additional arguments, neither of which
is persuasive.  First, plaintiff contends that even if the Court
finds that BofA's refusal was not wrongful as to most of her
claims, it should consider demand refusal on a claim-by-claim
basis and conclude that BofA's refusal was wrongful as to claims
pertaining to Merrill's acquisition of CDOs.  Lambrecht Opp'n at
23.  Plaintiff argues that the BofA Board could pursue this non-
fraud claim without exposing Merrill to liability in other
litigation.  This argument merits little discussion.  As
explained above, the proper inquiry concerns the reasonableness
and good faith of the Board's investigation of any and all
claims, not the substance of the Board's decision on any or all
claims.  Since, as to any particular claim, as well as the claims
overall, plaintiff has failed to provide a basis for concluding
that the investigation was anything less than reasonable and
conducted in good faith, the business judgment rule shields the
BofA Board from further inquiry.

Second, plaintiff argues that her demand letters made no
demands related to Merrill's payment of bonuses in December 2008,
and that the Court should therefore not treat those claims as
having been rejected by the Board but rather as subject to demand

41

futility analysis.  Lambrecht Opp'n at 28.  This argument is
refuted by the plain language of Lambrecht's demand letters.
Plaintiff's January 23, 2009 letter, which was expressly intended
to "renew and supplement prior demands served upon the Boards of
Bank of American and Old ML *in light of recent events*," see
Letter from Jonathan W. Cuneo, Counsel for N. A. Lambrecht, to
the Boards of Directors of Bank of America and Merrill Lynch
(January 23, 2009) (Am. Compl. Ex. E) (emphasis added),
reiterated plaintiff's November 10, 2008 demand seeking to
recover excessive "fees and/or other compensation" and "any
salaries, bonuses, severance pay and/or 'golden parachutes'" from
former and present Merrill Lynch officers.  Letter from Jonathan
W. Cuneo, Counsel for N. A. Lambrecht, to the Members of the
Board of Bank of America (November 10, 2008) (Am. Compl. Ex. D).
On any fair reading, this combination of demands constituted,
inter alia, a demand concerning the 2008 bonuses.

Moreover, courts have held that "[p]ermitting a stockholder
to demand action involving only one theory or remedy and to argue
later that demand is excused as to other legal theories or
remedies arising out of the same set of circumstances as set
forth in the demand letter would create an undue risk of
harassment."  Grimes v. Donald, 673 A.2d 1207, 1220 (Del. 1996),
overruled in part on other grounds by Brehm v. Eisner, 746 A.2d

42

244 (Del. 2000).  <u>See also</u> <u>Levner v. Prince Alwaleed Bin Talal</u>

<u>Bin Abdulaziz Al Saud</u>, 903 F. Supp. 452, 457 (S.D.N.Y. 1994)

("Once the shareholder plaintiff makes a demand upon the

directors before filing suit, he or she loses the ability to

claim demand futility . . . .").  Additionally, even if plaintiff

had not made a demand as to the 2008 bonuses, her demand futility

argument would be dismissed for the same reasons as those in the

<u>Derivative Action</u>.

   Having concluded that the instant complaint fails to

demonstrate that the BofA Board's refusal of plaintiff's demands

was wrongful or may otherwise be obviated, the Court must now

consider plaintiff's request that the Court defer its final

decision until plaintiff has had the opportunity to obtain the

document inspection "to which she is entitled in the Section 220

Action."[19]  Lambrecht Opp'n at 27.  In other words, Lambrecht

requests that the Court stay this action for an indeterminate

_____

[19] On February 2, 2009, plaintiff demanded that the BofA Board
produce certain corporate books and records for inspection
pursuant 8 Del. C. § 220. Lambrecht Opp'n at 10.  When BofA
refused this demand, plaintiff initiated the "Section 220 Action"
in the Supreme Court of the State of New York for the County of
New York (the "State Court").  <u>See</u> <u>N.A. Lambrecht v. Bank of</u>
<u>America Corporation</u>, Index No. 650182/09.  Plaintiff subsequently
filed a motion for partial summary judgment, and BofA filed a
cross-motion for summary judgment.  Lambrecht Opp'n at 10.  On
October 4, 2010, the State Court entered an order denying
plaintiff's motion for partial summary judgment and granting
BofA's motion for summary judgment.  Id. at 11.  <u>See</u> <u>Lambrecht v.</u>
<u>Bank of Am. Corp.</u>, No. 650182/09E, at 8 (N.Y. Sup. Ct. Oct. 1,
2010).  Plaintiff has since appealed the ruling.

amount of time and then grant her leave to replead her complaint a <u>fourth</u> time, after which there would be still another round of motion practice in a case that has now been ongoing for more than two and a half years.  This the Court is unwilling to do, especially in light of the fact that the Court made clear to Lambrecht that "this is your last bite at that apple" when it granted her leave to replead a third time.  <u>See</u> 03/01/2010 Transcript at 37.  Moreover, plaintiff chose to bring this action before she brought her Section 220 Action, thereby voluntarily incurring the risk that she would not obtain the requested discovery in time to re-draft her pleadings.  The Court is responsible for the swift and efficient management of its own docket, and it is certainly not obliged to cool its heels while plaintiff attempts to once again correct flaws in a complaint that has already been thrice amended.  Nor would it be fair to defendants to further prolong this case.

Further still, the Court concludes that, in any event, granting Lambrecht leave to replead would be futile.  Even if discovery confirms that the BofA Board rejected plaintiff's letter after only one meeting, the text of July 15, 2009 letter makes clear that the plaintiff will be unable to overcome the "considerable burden of showing that the decision not to bring the lawsuit was made in bad faith or was based on an unreasonable

44

investigation." RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1328 (2d Cir. 1991).

The Court has considered the other arguments advanced by the plaintiffs in both actions and finds them without merit. Accordingly, the Court concludes that demand in the Derivative Action was not excused, and that the BofA Board did not wrongfully refuse Lambrecht's demands.  Having concluded that both actions fail on these threshold issues, it follows that both complaints must be dismissed in their entirety.  The Court therefore grants the motions to dismiss submitted in both actions, and instructs the Clerk of the Court to enter final judgment in both the Derivative Action, 07 Civ. 9696, and Lambrecht v. O'Neal, 09 Civ. 8259, dismissing the complaints with prejudice.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated:     New York, New York
           March 28, 2010